**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P.

§
§ Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§
vs. §

3:26-CV-02496-D

**Highland Capital Management, L.P., et al**-Appellee

§
§

**[4689] Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026**

**APPELLANT RECORD**

**VOLUME 10**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02496-D<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ALTER OR AMEND AND FOR RECONSIDERATION OF ORDER DENYING MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4698] on July 24, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689] now files this *Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the Court's June 15, 2026 Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate?

2. Did the Bankruptcy Court err in finding Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate ("Dugaboy's Motion") [Docket No. 4684] was "without merit?"

3. Did the Bankruptcy Court err in denying Dugaboy's Motion without a full record, including that Dugaboy was not allowed to file a reply brief and was not granted a hearing?

4. Did the Bankruptcy Court err in denying Dugaboy the opportunity to file a reply brief to Highland's Opposition to Dugaboy's Motion, including that Dugaboy indicated a date certain for filing a reply?

5. Did the Bankruptcy Court err in finding Dugaboy's Motion was "without merit" without granting a hearing?

6. Did the Bankruptcy Court err by summarily denying Dugaboy's Motion without explaining its reasoning for the denial?

7. Did the Bankruptcy Court err in failing to consider Dugaboy's Notice of Intervening Event?

8. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(2) when it determined that it had not manifestly erred in deciding the evidence of Mark Patrick's misconduct contained in the Cayman Islands proceeding was not "newly discovered" even though that information was not contained in James Dondero's affidavit executed April 16, 2025?

9. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant

to Rule 60(b)(2) when it determined it had not manifestly erred in deciding the Dondero Affidavit indicated information gained in the Cayman Islands proceedings was not "newly discovered" despite the fact the Affidavit lacked any evidence of the restructuring discovered in the Cayman Islands proceedings?

10. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding on the grounds that Rule 60(b)(3) purportedly requires fraud or misconduct to have occurred in the judicial proceeding itself?

11. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding that Highland did not provide misleading or incomplete answers during the discovery of Mark Patrick's misconduct and resulting lack of authority to negotiate the Rule 9019 settlement agreement from Dugaboy leading to the Rule 9019 Order?

12. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding that Dugaboy had not presented a basis for relief under Rule 60(b)(6) that was separate from the grounds presented for Rule 60(b)(2) and Rule 60(b)(3)?

13. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding on the grounds that undoing the Rule 9019 Settlement Order would not restore the original structure of the DAF or Hunter Mountain?

14. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of the Bankruptcy Court's special responsibility to monitor arrangements and settlements made between Highland's appointed managers and third parties?

15. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of its manifest error in failing to consider the Bankruptcy Court's role as a court of equity and responsibility to prevent misconduct before it, such as Mark Patrick's use of stolen assets in the 9019 Settlement?

16. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

Vol. 1 000001 – 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4698] filed by Appellant;

000010 2. The Bankruptcy Court's July 10, 2026 *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000012 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 2 000648 thru Vol 3 | 02/09/2026 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| Vol. 4 001843 | 02/13/2026 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513, Entered on 2/13/2026 (Okafor, M.) |

| | **Date Filed** | **Docket No.** | **Description/Docket Text** |
|---|---|---|---|
| vol. 4 001845 thru vol 6 | 02/27/2026 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol 7 003634 | 02/27/2026 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 003647 | 03/02/2026 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 003650 + 003651 | 03/02/2026 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 003652 | 03/02/2026 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 003663 | 03/03/2026 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 003667 | 03/04/2026 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 003670 | 04/01/2026 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 7 003709 | 04/01/2026 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 004733 | 04/03/2026 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| Vol. 8 004790 | 04/03/2026 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| Vol 9 005207 | 04/03/2026 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 005209 | 04/06/2026 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 005217 | 04/06/2026 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol 9 | | Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026 005222 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026 005225 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026 005227 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026 005229 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026 005233 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol 9 | | Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| 04/17/2026 005330 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| vol 10 04/21/2026 005590 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/22/2026 005594 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/22/2026 005615 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 04/22/2026 005682 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 10 | | | Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| 005692 | 04/22/2026 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 005705 | 04/24/2026 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 005726 | 04/24/2026 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 005727 | 04/25/2026 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005729 | 04/27/2026 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 005737 | 04/28/2026 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| | | | |

Vol. 11

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| 005746 | 04/28/2026 | 4569 | (9 pgs; 3 docs) Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 005755 | 04/28/2026 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005761 | 04/28/2026 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005767 | 04/29/2026 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 005776 | 04/29/2026 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 005783 | 04/29/2026 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |

| Vol. 10 | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| 005785 | 04/29/2026 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005787 | 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 005794 | 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 005796 | 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 005798 | 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 005801 | 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 005884 | 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 005902 | 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 005905 | 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 005907 | 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund |

Vol. 11

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 05/06/2026 005913 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/06/2026 005920 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/06/2026 005927 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 05/07/2026 005929 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/08/2026 005936 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 05/08/2026 005939 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 05/08/2026 005942 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 05/08/2026 005945 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol. 12 05/08/2026 006100 Thru Vol 21 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and* |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| 10).22 008156 05/08/2026 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 008172 05/08/2026 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 008188 05/09/2026 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 22 008256 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008293 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008429 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008465 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008472 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008916 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| Vol 25 009554 | 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| Vol. 26 009868 | 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| Vol. 27 010229 | 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| Vol. 28 010538 | 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| Vol. 28 010664 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010736 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol 30 011150 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol 31 011734 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol 32 013203 Thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014888 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol 35 05/11/2026 015349 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 05/11/2026 015505 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 05/12/2026 015506 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 05/12/2026 015538 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 05/12/2026 015565 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 05/15/2026 015566 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36 05/18/2026 015569 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| Vol 37 05/18/2026 015996 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 05/19/2026 016008 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 05/20/2026 016079 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 05/20/2026 016082 – 016084 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 05/21/2026 016085 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 05/21/2026 016134 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 37 | | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| 016135 | 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016233 | 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016490 | 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s)4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016504 | 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| Vol. 39 016505 | 06/29/2026 | 4684 | (162 pgs; 2 docs) Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Appendix) (Edney, Michael) |
| 016667 | 06/29/2026 | 4685 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s)4679 Order on motion to reconsider). Appellant Designation due by 07/13/2026. (Attachments: # 1 Exhibit)(Edney, Michael) |
| 016674 | 07/06/2026 | 4687 | (32 pgs; 2 docs) Response opposed to (related document(s): 4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 016706 | 07/09/2026 | 4688 | (23 pgs; 2 docs) Notice of Intent to Reply and Request for Hearing on Its Motion to Alter or Amend the Court's June 15, 2026 Order and Notice of Intervening Event filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 39 | | (Attachments: # 1 Appendix)). (Attachments: # 1 Attachment A) (Edney, Michael) |
| 07/10/2026 016729 | 4689 | (2 pgs) Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026. (Okafor, M.) Modified text on 7/10/2026 (mdo). |
| 07/13/2026 016731 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |
| 07/24/2026 016733 | 4698 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)(Edney, Michael) |
| 07/28/2026 016742 | 4704 | (5 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02496-E. (RE: related document(s)4698 Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court;

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J"); and

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No.

4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Case 19-34054-sgj11 Doc 4707 Filed 08/07/26 Entered 08/07/26 19:37:31 Desc
Main Document Page 22 of 23

Dated: August 7, 2026

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* forthcoming)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR CLO HOLDCO, LTD.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | **Re: Docket Nos. 4538, 4533** |

# SUPPLEMENT TO MOTION TO QUASH AND JOINDER TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DUGABOY INVESTMENT TRUST'S DISCOVERY REQUESTS

CLO HoldCo, Ltd. ("CLO Holdco") hereby submits this (i) *Supplement* (the "Supplement") to the *Motion to Quash* (the "Motion to Quash") [Dkt. No. 4538] filed by CLO HoldCo and (ii) *Joinder* (the "Joinder") to the *Motion for Protective Order against the Dugaboy Investment Trust's Discovery Truste's Discovery Request*s [Dkt. No. 4533] (the "Motion for Protective Order").

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

## SUPPLEMENTAL ARGUMENTS

1. In the Motion to Quash, CLO HoldCo moved for an order quashing the requests for document production (the "Requests") by Dugaboy Investment Trust ("Dugaboy") in connection with the *Motion to Reconsider the 9019 Order* [Dkt. No. 4513] (the "Rule 60(b) Motion") because the Requests were sent via email, not by service of a subpoena pursuant to Fed. R. Civ. P. 45. In the Motion to Quash, CLO HoldCo (and co-movants) specifically state that it/they:

> reserve their rights to lodge such substantive objections and move for a protective order to the extent these service defects are cured or the Motion to Quash overruled.
>
> Specifically, this Court will consider the propriety of such extensive discovery requests in connection with the Motion for Protective Order against the Dugaboy Investment Trust's Discovery Truste's Discovery Requests [Dkt. No. 4533] (the "Motion for Protective Order") filed by HCMLP. The Moving Parties believe it is premature to join in a substantive request for protective order as in fact they have not been served so cannot be involved in the proceedings involving the Motion for Protective Order. But the Moving Parties reserve all rights.

Motion to Quash, ¶19.

2. On or about April 17, 2026, CLO HoldCo was served with a subpoena by Dugaboy pursuant to Fed. R. Civ. P. 45.

3. Thus, in keeping with the prior reservation within the Motion to Quash, CLO HoldCo expressly joins in and adopts the arguments set forth in the Motion for Protective Order.

4. Further, the subpoena to and served upon CLO HoldCo states that the requested documents must be provided to counsel for Dugaboy **<u>on May 18, 2026 by 5:00 p.m. CST</u>**.

5. This Court has set a hearing on the Dugaboy Rule 60(b)(6) Motion for May 11, 2026 at 9:00 a.m., and ordered that all discovery related to the Rule 60(b) Motion be completed no later than May 1, 2026. Dkt. No. 4547.

6. Therefore, the requests are impermissible and clearly not designed to obtain discoverable information relating to the Rule 60(b) Motion because they are returnable *after* the close of discovery and even *after* the scheduled hearing on the Rule 60(b)(6) Motion. Thus, there is simply no reason for CLO HoldCo to spend time and effort in responding to the Requests when the documents produced necessarily will not be used in the connection with the Rule 60(b) Motion. The Subpoena should be quashed.

7. CLO HoldCo opposes any attempt by Dugaboy to rely on its own inability to comply with Fed. R. Civ. P. 45 in the first instance, and to serve subpoenas with a proper return date (or of a proper scope) once it learned of the necessity of a subpoena from the Motion to Quash, as cause or basis for any extension of the hearing date or discovery deadlines set by this Court. *See S&W Enters., LLC v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 535 (5th Cir. 2003) ("good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"). Improper transmission of improper discovery followed up with improper subpoenas with an improper return date (after the scheduled hearing), cannot be due diligence.

**CONCLUSION**

8. Thus, for the reasons stated in the Motion for Protective Order, as supplemented by this Supplement, the Served Requests must be quashed.

Respectfully Submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*_____
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643

Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

***Counsel for the CLO HoldCo, Ltd.***

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this April 21, 2026.

*/s/ Louis M. Phillips*_____
Louis M. Phillips (#10505)

## CERTIFICATE OF CONFERENCE

Undersigned counsel gave notice to Dugaboy's counsel of the forgoing' however, given the filing of the Motion for Protective Order and various other discovery disputes before this Court, it is clear that further conference would be futile at this juncture.

*/s/ Louis M. Phillips*_____
Louis M. Phillips (#10505)

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AGAINST THE DUGABOY INVESTMENT TRUST'S DISCOVERY REQUESTS**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................3

I. DUGABOY'S OPPOSITION CONFIRMS THAT IT FAILS TO MAKE A *PRIMA FACIE* SHOWING THAT IT IS ENTITLED TO ANY DISCOVERY. ....................3

A. Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(2), Which Requires "Newly Discovered Evidence." ....................4

B. Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(3), Which Requires A Showing Of Fraud. ....................8

II. DUGABOY'S ASSERTIONS OF "GAMESMANSHIP" OR "WAIVER" ARE BASELESS. ....................11

III. DUGABOY'S OPPOSITION CONFIRMS THAT ITS DISCOVERY REQUESTS ARE OBJECTIONABLE. ....................14

CONCLUSION ....................17

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Brown v. Ft. Hood Fam. Hous. LP*,
2022 WL 22883290 (W.D. Tex. Nov. 17, 2022) ....................7, 15

*Cadence Bank v. Bridgelink Eng'g LLC*,
2024 WL 6893273 (N.D. Tex. Dec. 16, 2024) ....................15

*Compass Bank v. Shamgochian*,
287 F.R.D. 397 (S.D. Tex. 2012) ....................13

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2026 WL 755100 (5th Cir. Mar. 17, 2026) ....................7

*Southmark Props. v. Charles House Corp.*,
742 F.2d 862 (5th Cir. 1984) ....................8, 15

**Rules**

Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015) ....................14

Fed. R. Civ. P. 59(b) ....................4

Fed. R. Civ. P. 60(b)(2) ....................1, 4, 6

Pursuant to this Court's April 10, 2026 Order (the "April 10 Order"; Dkt. No. 4547), HCMLP, by and through its undersigned counsel, respectfully submits this reply (the "Reply") to Dugaboy's Response Opposing HCMLP's Motion For Protective Order Against Dugaboy's Discovery Requests (the "Opposition" or "Opp."; Dkt. No. 4551) and in further support of HCMLP's Motion For A Protective Order Against Dugaboy's Discovery Requests (the "Motion" or "MPO."; Dkt. No. 4533).[2]

## PRELIMINARY STATEMENT

1. Dugaboy's Opposition confirms that it has no valid basis to seek discovery in connection with its Rule 60(b) Motion. Dugaboy admits that, to obtain such discovery, it must identify newly discovered evidence that could not have been discovered earlier with reasonable diligence or make a *prima facie* showing of fraud. Dugaboy devotes little attention to either issue but instead begs this Court not to look at "the ultimate merits." (Opp. at 16, 18.) But Dugaboy admits, as it must, that the *prima facie* standard requires courts to "consider[] the briefing on the merits and the evidence in the record to determine whether the claim has merit." (*Id.* at 16 n.9.) It does not.

2. ***First***, Dugaboy has never identified any "newly discovered evidence" that it could not have discovered "with reasonable diligence" within 28 days of the 9019 Order—*i.e.*, July 28, 2025. Fed. R. Civ. P. 60(b)(2). Dugaboy admits that virtually all of the purportedly "new" evidence was in fact available by July 2025 (and, in fact, all of the core allegations were made *before* the 9019 hearing). Dugaboy's reliance on unspecified evidence from the Cayman Proceeding that was supposedly unavailable until December 2025 is misplaced for several reasons. For starters, to the

[2] All capitalized terms not otherwise defined herein have the same meanings as in the Motion and HCMLP's opposition to Dugaboy's Rule 60(b) Motion (the "Rule 60(b) Opposition"; Dkt. No. 4513). Unless otherwise indicated, all emphasis is added and all alterations, citations, and quotations are omitted.

extent the information was created after July 28, 2025, then, as a matter of law, it cannot be "newly discovered" for purposes of Rule 60(b)(2) because no amount of "diligence" could have uncovered the evidence before that time. Moreover, such "new" evidence would clearly be cumulative of the facts and allegations that had been raised repeatedly by multiple parties—including Dugaboy itself—from even before the objections to the 9019 Settlement through July 2025. In any event, Dugaboy had access to these Cayman Islands filings long before December 2025. Cayman Islands proceedings are public, so Dugaboy could have easily obtained filings with reasonable diligence. And it did: last July, Dugaboy filed its Motion to Stay the 9019 Order just 36 hours after the Cayman Islands JOLs filed their 83-page, single-spaced JOL *Writ* against Patrick and attached a copy of it to their Motion. But even if the pleadings were not directly available to Dugaboy (which they were), Dugaboy could have obtained them from Dondero. Dondero indisputably controls both Dugaboy and the Dondero Foundations, which are members of the liquidation committee in the Cayman Islands and therefore had full access to Cayman Islands filings. Because Dugaboy could have raised all these issues within 28 days of the 9019 Order with reasonable diligence, Dugaboy is not entitled to take discovery now, many months later.

3. ***Second***, Dugaboy fails to make any showing—let alone a *prima facie* showing—of fraud in connection with the 9019 Settlement or 9019 Order. Dugaboy alleges only that Patrick defrauded DAF's beneficiaries (which do not include Dugaboy) by restructuring DAF. This has nothing to do with the settlement between HMIT and Highland or this Court's approval of that settlement. In fact, Dugaboy has no legal interest in the Cayman Proceeding at all.

4. ***Third***, to try to distract from its inability to make a *prima facie* showing, Dugaboy selectively quotes from this Court's Scheduling Orders and the parties' correspondence to falsely claim that HCMLP agreed to reciprocal discovery. In reality, HCMLP objected at every step to

Dugaboy taking any affirmative discovery on its Rule 60(b) Motion, Dugaboy expressly acknowledged HCMLP's right to object, and this Court's Scheduling Orders reflect this preservation.

5. Dugaboy also makes much of its purported document production to HCMLP. But Dugaboy ignores that (1) HCMLP's two document requests sought the very information that Dugaboy—which has the burden of proof—has still failed to disclose (*i.e.*, identifying the "newly discovered evidence" and the evidence of fraud in connection with the 9019 Motion), and (2) in response, Dugaboy simply reproduced the exact same already-filed exhibits to its Rule 60(b) Motion. So, in practice, Dugaboy has not produced any discovery at all.

6. ***Finally***, Dugaboy's demand for 55 Requests to HCMLP, 16 hours of depositions, and 532 requests in third-party Subpoenas are highly objectionable and will serve only to harass, burden, and delay. Dugaboy has not come close to satisfying the requirements to reopen a final judgment and take discovery. This Court should put an end to Dugaboy's tactics and enter a protective order preventing Dugaboy from taking discovery in connection with its Rule 60(b) Motion.

## ARGUMENT

### I. DUGABOY'S OPPOSITION CONFIRMS THAT IT FAILS TO MAKE A *PRIMA FACIE* SHOWING THAT IT IS ENTITLED TO ANY DISCOVERY.

7. Dugaboy admits, as it must, that to obtain discovery for its Rule 60(b) Motion, it must present "new evidence" that was not "readily available or discoverable within the 28-day period following the Court's 9019 Order" or "ma[k]e the required prima facie showing of fraud." (Opp. at 7–8, 16; *see also* MPO at 3–4, 18–19.) Dugaboy's Opposition confirms that it has done neither.

### A. Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(2), Which Requires "Newly Discovered Evidence."

8. Dugaboy's Rule 60(b) Motion claims that the 9019 Settlement "was procured by fraud because Mark Patrick, who executed the agreement as ***the duly authorized control person of the HMIT Entities***, secretly restructured the DAF entities' corporate structure." (Opp. at 1 n.1; *see also id.* at 2, 3 n.2, 16, 19–21; MPO at 5, 19.) Leaving aside, for now, how "the alleged ***DAF*** restructuring fraud" (Opp. at 19) makes the 9019 Settlement between ***Highland and HMIT*** a fraud upon this Court, the threshold for discovery under Rule 60(b)(2) is whether Dugaboy has made a showing that it has "newly discovered evidence that, with reasonable diligence, could not have been discovered" within 28 days of the 9019 Order—here, July 28, 2025.[3] Fed. R. Civ. P. 59(b), 60(b)(2). Dugaboy does not—and cannot—dispute that all the same core allegations in its Rule 60(b) Motion were already repeatedly made before July 28, 2025,[4] by:

- **Dondero** (Dugaboy's controlling person and beneficiary) in his **April 9, 2025**, affidavit in the Cayman Islands (MPO Ex. 7), filed in connection with **the Dondero Foundations'** winding up petition and supervision application filed in the Cayman Islands in **April and May 2025** (*id.* Ex. 6);
- **The Dallas Foundation** in its **June 9, 2025**, Objection to the 9019 Settlement, which was paid for by Dondero (Dkt. No. 4231);
- **Dugaboy** and **The Dallas Foundation** (again) in their depositions of Shawn Raver and Mark Patrick on **June 20 and 23, 2025**, respectively;

---

[3] Dugaboy's Opposition misstates the date of the 9019 Order, which was June 30, 2025 (not June 25, 2025). (Opp. at 16; MPO at 3, 13; Dkt No. 4297.)

[4] In fact, all the core allegations in Dugaboy's Rule 60(b) Motion were already made *before* the June 25, 2025, 9019 hearing itself; regardless of whether some unidentified aspects of the July court filings included additional "detail," they were filed before July 28, 2025, and therefore cannot constitute "newly discovered evidence" as a matter of law. Highland's Rule 60(b) Opposition contains a full list of the "Lead Documents" that were publicly filed between April 9 and July 28, 2025, in four different courts and that collectively contain all of the substantive allegations against Patrick in connection with DAF.

- **Dugaboy** (again) at the **June 25, 2025**, evidentiary hearing (following Dondero's prodding Dugaboy's counsel in the courtroom) on the 9019 Settlement after The Dallas Foundation voluntarily withdrew its Objections (MPO Ex. 11 at 31:4–34:15, 110:9–134:22; 184:3–188:18; 206:4–223:25);
- **The Highland Dallas Foundation**, of which Dondero is President, a Director, the principal officer, and funder in its **July 1, 2025**, petition in the Texas Business Court (MPO Ex. 15), which was supported by yet another declaration from Dondero;
- **The JOLs** when they filed their **July 15, 2025**, JOL *Writ* in the Cayman Proceeding (MPO Ex. 8);
- **Dugaboy** (again) in its **July 17, 2025**, Motion to Stay (Dkt. No. 4326), which attaches the JOLs' *Writ* in its entirety; and
- **The JOLs** (again) in their **July 21, 2025**, Chapter 15 Petition (which has yet to be granted) filed in the Delaware Bankruptcy Court with thousands of pages of ancillary documents.

9. In its Opposition, Dugaboy does not even try to explain how its purportedly "new evidence" could not have been discovered in time. To the contrary, Dugaboy admits ***three times*** that nearly all of the claimed "new evidence" was available by "***July 2025***," which is within 28 days of the 9019 Order. (Opp. at 3, 16–17.) Simply put, all of these parties—including Dondero and Dugaboy itself—could have raised these allegations before the relevant deadline to seek a new trial under Rule 59(b).

10. Accordingly, immediately after Dugaboy filed its Rule 60(b) Motion, HCMLP served an extremely limited discovery request on Dugaboy focused solely on the threshold inquiry of what Dugaboy "contend[s] constitute[s] newly discover[ed] evidence" underlying its Motion. (*Id.* Ex. 8 at 6.) In response, Dugaboy simply ***reproduced the exact same already-filed exhibits to its Rule 60(b) Motion***, virtually all of which Dugaboy and Dondero already knew or could have easily discovered. (*See* MPO at 4.)

11. Dugaboy falsely asserts that unspecified "pieces of evidence were not available to Dugaboy until December 2025," because they "were subject to a protective order" in the "proceedings in the Cayman Islands." (Opp. at 10, 17.) Tellingly, Dugaboy did not offer a

declaration or affidavit in support and—in what is becoming a pattern—withheld from this Court the very order upon which it apparently relies. In reality, the order is actually a "Consent Order" (not a protective order) and does not concern or restrict the sharing of court filings. (Morris Decl. ¶ 2 Ex. 20 (Consent Order, *In re Charitable DAF Holdco, Ltd.*, No. FSD 201 of 2025 (RPJ) (Grand Court, Cayman Islands, Fin. Servs. Div. July 31, 2025)).) Rather, this Consent Order provides simply that (1) the Patrick-controlled entities agree to operate in the ordinary course pending a ruling on the JOL *Writ* (which they did), (2) after July 31, 2025, these entities will disclose limited financial information to the JOLs, and (3) the JOLs will not share that specifically disclosed information with Dondero or the Dondero Foundations. (Ex. 20 ¶ 6.) The Consent Order thus has no impact whatsoever on the pleadings filed in the Cayman Proceeding.[5]

12. All of the filings in the Cayman Proceeding were publicly available. *See* Cayman Islands Law Courts, *Being An Observer* ("Court cases are public events.").[6] Indeed, as noted above, Dugaboy's own Motion to Stay was based entirely on the claims and allegations asserted in the JOL *Writ* filed in the Cayman Islands—which Dugaboy actually called "newly discovered evidence" back in July 2025—so it necessarily had access to those Cayman Islands filings at the time. (Motion to Stay at 7–8, 11.) This directly refutes Dugaboy's claim that it lacked "actual knowledge of this information." (Opp. at 17.)

13. In any event, the standard under Rule 60(b)(2) is not whether Dugaboy had "actual knowledge" of evidence; it is whether Dugaboy could have discovered this evidence "with reasonable diligence." Fed. R. Civ. P. 60(b)(2). It clearly could have. Even if the relevant

[5] Dugaboy's assertion that the DAF entities "were specifically instructed not to share any nonpublic information with Mr. Dondero or those associated with him and did not" (Opp. at 17 n.10) is thus highly misleading, particularly because Dugaboy did not bother to provide the order to this Court.

[6] *Available at* https://judicial.ky/being-an-observer/.

information were not publicly available (which it was), it was available to Dugaboy through Dondero. Dugaboy does not—and cannot—dispute that Dondero controls Dugaboy, his family trust for which he is the lifetime beneficiary. (MPO at 8 (citing *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2026 WL 755100, at *1 (5th Cir. Mar. 17, 2026)).) Dugaboy also does not—and cannot—dispute that Dondero is the founder, funder, director, president, and principal officer of the Dondero Foundations, which are members of the liquidation committee of DAF Holdco in the Cayman Islands. (*Id.* at 10; Opp. at 17 & n.10.) Indeed, the Dondero Foundations' own tax filings state—on the very first page—that Dondero is their "principal officer." (Morris Decl. ¶ 3 Ex. 21.) And the Dondero Foundations received all filings in the Cayman Proceeding, including the Cayman court's draft decision rejecting the JOLs' application for injunctive relief against Patrick. (*Id.* ¶ 4 Ex. 22.) Thus, while nominally "Dugaboy is not a member of the liquidation committee" (Opp. at 17 n.10), Dugaboy could (and did, based on Dugaboy's Motion to Stay filed last July) obtain any filings from the Cayman Islands from Dondero who controlled both Dugaboy and the Dondero Foundations. Dondero may wear multiple hats, but he only has one head and cannot unlearn what he already knows.[7]

[7] Dugaboy's claim that it did not know until "December 2025 [] that Patrick took more than $13 million in fees in 2024 and 2025" as administrator of DAF (Opp. at 2–3), ignores that Dugaboy was well aware of allegations regarding Patrick's compensation before the 9019 Order. In its Objections to the 9019 Settlement, The Dallas Foundation specifically alleged that DAF's "directors' fees increased from $40,000 in 2022 to almost $600,000 in 2023 – and increased even further to around $2.25 million in the first half of 2024 alone." (Dkt. No. 4231 at 9 & n.3; *see also* MPO Ex. 7 (Dondero Apr. 2025 Aff.) ¶ 31 (Dondero directed "Expense Summary" analysis prepared by his team purportedly showing the ***exact same*** Patrick-driven directors' fees **and** DAF expenses for the first half of 2024 of "US$18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. US$18.6 million)")).) So Dugaboy knew that The Dallas Foundation had raised an issue about DAF Directors' fees and expenses during the first half of 2024 based on information it had outside any discovery process. Despite having the information that had prompted The Dallas Foundation objection (again, Dugaboy made no such objection), Dugaboy made no attempt to obtain more recent financial information, as it sought no discovery from HMIT or DAF in connection with the 9019 Settlement. Had it sought discovery and had it been able to obtain such information (we submit that such information would not have been relevant to the 9019 Settlement approval, as it is not relevant here), Dugaboy would have been able to discover that the DAF directors' fees amount now complained of (some $13 million) ***were in fact paid before the hearing on the 9019 Settlement***. Also, the fact that Dugaboy may not have learned the exact dollar amounts of compensation paid for the period of time in 2025 after the hearing on the 9019 Settlement does not make this issue "new," as Patrick's 2025 compensation *after* the 9019 Order was "not in existence at the time of the earlier judgment," so it "is not an available ground for attacking that judgment." *Brown v. Ft. Hood Fam. Hous. LP*, 2022 WL 22883290,

### B. Dugaboy Fails To Satisfy The Requirements To Obtain Discovery Under Rule 60(b)(3), Which Requires A Showing Of Fraud.

14. Dugaboy's Opposition confirms that it has not "made a prima facie showing of fraud entitling it to discovery." (Opp. at 8.) Instead, Dugaboy continues to obscure the fact that even its (far-fetched) claims of "fraud" are not evidence of fraud in connection with the 9019 Settlement or on this Court in entering the 9019 Order.

15. Dugaboy alleges a "DAF restructuring fraud" by Patrick, which Dugaboy claims harmed DAF's beneficiaries (none of which is Dugaboy). (*Id.* at 19.) But DAF is not HMIT—the very fact this Court cited when declining Dugaboy's requests to adjourn the 9019 Hearing and to stay implementation of the 9019 Order. Dugaboy's unproven allegations that Patrick improperly took control of ***DAF*** five years ago in no way show that ***HMIT's*** settlement with Highland is fraudulent. To the contrary, Dugaboy concedes, as it must, that Patrick fully controlled DAF and HMIT for years before the alleged "DAF restructuring fraud," and that the prior control persons (Grant Scott and John Honis, respectively), voluntarily transferred such control to Patrick while he was still effectively under Dondero's employ. (*Id.* at 1 n.1, 2–3.) Dugaboy's allegations that Patrick improperly diverted DAF's assets away from its beneficiaries are not a fraud on this Court, much less do they show that an arm's-length settlement between Highland and HMIT is fraudulent.

16. In any event, Dugaboy's attempt to drag Highland into a dispute between Patrick and the Dondero Foundations (which, it bears repeating, are controlled by Dondero) is entirely unsupported. Dugaboy claims that Highland "knew or should have known of Patrick's misconduct" at DAF. (Opp. at 11, 20.) But as purported support for a *prima facie* case establishing as much, Dugaboy cites a statement by Highland's counsel representing that "I ***have no***

---

at *3 (W.D. Tex. Nov. 17, 2022) (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir. 1984)).

***knowledge***" regarding "Mr. Patrick, I don't know what happened between him and Mr. Dondero." (*Id.* at 3 n.2 (quoting June 25, 2025, Hr'g Tr. at 61:26–62:1, 97:12–17, 98:6–99:1).) If anything, that is a *prima facie* showing Highland did ***not*** have any such knowledge.

17. The Cayman Islands decision does not remotely establish a *prima facie* showing of fraud. For starters, when considering Dugaboy's characterization of that decision, it is important to note that HCMLP actually provided the decision to this Court while Dugaboy did not.[8] So it comes as no surprise that Dugaboy misrepresents what the Cayman Islands court held with selective and misleading partial quotations. Specifically, Dugaboy falsely asserts "the Cayman Court found that ***fraud*** allegations present 'a serious issue to be tried' with a 'real prospect of success.'" (Opp. at 9, 11 (quoting MPO Ex. 4 ¶¶ 253, 255).) Not so. In reality, the Cayman Islands court found that "that there is a serious issue to be tried as to whether the Directors ***acted in breach of duty*** in undertaking the restructuring." (MPO Ex. 4 ¶ 254.) Dugaboy knows this because its own Exhibit shows that, when Highland provided the Cayman Islands decision to the District Court considering Dugaboy's appeal of the 9019 Order, Dugaboy represented to that Court that the Cayman Islands "court was 'persuaded that there is a serious issue to be tried' regarding Patrick and fellow director Paul Murphy ***breached their fiduciary duties*** in restructuring the charitable entities.'" (Opp. Ex. 12 at 1 (quoting MPO Ex. 4 ¶¶ 253–54).) Whether or not Patrick breached his fiduciary duties to DAF in no way shows that the settlement between HMIT and Highland was procured by fraud.[9]

---

[8] Dugaboy claims that it was not aware of the Cayman Islands decision until it was made public the day after it filed its Rule 60(b) Motion. (Opp. at 10.) Dugaboy tellingly does not say that *Dondero*, who controls Dugaboy, and his team were not aware of the decision when it was filed in February 2026. The suspicious timing and letters proving that all of the parties to the Cayman Proceeding (including the Dondero Foundations) received a draft decision on January 28, 2026 (Morris Decl. ¶ 4 Ex. 22) shows that Dondero knew about the decision and strongly suggests that he directed Dugaboy to file the Rule 60(b) Motion the day before it would be made public so that Dugaboy could feign ignorance.

[9] Dugaboy also ignores its prior representation to this Court that "if the Cayman Proceeding determines that Mr. Patrick may retain his control position in the DAF and its subsidiaries, then such a decision would likely remove

18. By contrast, HCMLP proactively provided the decision to this Court and (again, contrary to Dugaboy's misleading and selective quotations) accurately described it as effectively "dismiss[ing] the fraud claims" by "denying a proprietary injunction on a standard akin to a motion to dismiss." (MPO at 15–16.) Specifically, the Cayman Islands court explained that, to obtain a "proprietary injunction," a party "must show a serious issue to be tried" in "respect of facts which, if proven, would afford the claimant a proprietary remedy." (MPO Ex. 4 ¶¶ 87–88.) The court asked whether there was "a serious issue to be tried that [DAF] has a proprietary interest in the asset(s) of which an injunction is sought to be imposed," and answered "these questions in the negative." (*Id.* Ex. 4 ¶¶ 130–31.) The court also held that "there is no seriously arguable case" against Patrick based on "the sums paid to Mr. Patrick as remuneration for his work," and "there is no serious issue to be tried that this remuneration was excessive and in breach of his duty to [DAF]." (*Id.* Ex. 4 ¶¶ 202–03, 206.) Thus, the Cayman Islands court rejected the same theories of fraud Dugaboy alleges here on a standard akin to a motion to dismiss, which is exactly how HCMLP presented the decision in its opening papers. (*Id.* at 15–16.)

19. Likewise, the Texas Business Court proceedings do not come close to establishing a *prima facie* case of fraud. Dugaboy admits, as it must, that that lawsuit concerns ***unadjudicated*** "claims pending against Patrick" brought by the Dondero Foundations, which are "all arising from Patrick's ***alleged*** scheme." (Opp. at 10.) Dugaboy also admits that the court "abated the case pending joinder of the Cayman JOLs as indispensable parties," which, seven months later, still has not happened. (*Id.*) Thus, the Texas Business Court proceedings consist entirely of unproven allegations of "fraud claims against Patrick" (with no current pathway to adjudication and which

---

any additional obstacles to the HMIT settlement." (MPO at 19–20 (quoting Motion to Stay ¶ 31).) Because that determination has come to pass, Dugaboy now tries to obfuscate and distort the decision.

do not implicate any HMIT Entity), which do not constitute *prima facie* evidence of anything. To the extent the Texas Business Court allegations have any relevance, they show that Dugaboy could have made them based on information available on July 1, 2025, and therefore could have raised these same arguments in its objections to the 9019 Settlement or in a motion for a new trial. (*See supra* Section I.A.)

## II. DUGABOY'S ASSERTIONS OF "GAMESMANSHIP" OR "WAIVER" ARE BASELESS.

20. Dugaboy admits that, from the beginning, HCMLP "reserv[ed] its potential objection to presenting testimony on a motion for reconsideration," and "expressed uncertainty about whether discovery was appropriate." (Opp. at 4, 13.) Dugaboy's own exhibits to its Opposition show that, contrary to its protestations about purported "gamesmanship" or "unfair[ness]" (*id.* at 11, 14–15), HCMLP in fact objected to Dugaboy taking offensive discovery at every step and the parties conferred about this issue at length:

- On February 20, 2026, HCMLP's counsel stated that "Highland ***reserves the right to object to the presentation of more testimony*** on a Motion for Reconsideration" (*id.* Ex. 3);
- On March 2, 2026, HCMLP's counsel stated that "Highland sought to depose Dugaboy's witnesses, if any, so that Highland could find out the factual bases for the motion before the hearing. But since Dugaboy's motion is based on 'newly discovered evidence' and fraud, and Dugaboy presumably had the evidence to support its motion when it was filed, ***we didn't anticipate that Dugaboy would seek to take affirmative discovery***; indeed, ***we don't believe Dugaboy can use the discovery process to seek evidence to support a motion under Rule 60***. Rather than debate the point, we would like to secure the schedule ***subject to a reservation of everyone's right to object to discovery by means of a motion to quash or otherwise***" (*id.* Ex. 11);
- That same day, Dugaboy's counsel responded that "we disagree with your arguments but ***agree to a mutual reservation of rights to make objections to the discovery/witness process***" (Morris Decl. ¶ 5 Ex. 23);[10]

[10] Dugaboy omitted including this email with its Opposition, likely because it directly contradicts its arguments.

- On March 4, 2026, this Court entered the parties' agreed-upon scheduling order (signed on March 3), which states that "***[a]ll discovery is subject to the Parties' respective reservation of rights to object to any depositions or written discovery sought by the other party***" (Mar. 4, 2026 Order ("March 4 Order"; Dkt. No. 4528) ¶ 3);

- On March 25, 2026, the day after Dugaboy served its Requests on HCMLP, HCMLP's counsel stated that "***[w]e have reviewed the RFPs and do not believe they are proper*** for a variety of reasons, not least because ***Dugaboy has not established a prima facie case in support of its motion***. Accordingly, ***we intend to file a motion for a protective order, and we believe it makes sense to work out a briefing schedule***" for the Motion (Opp. Exs. 7, 9);

- On March 30, 2026, Dugaboy's counsel responded that "we obviously disagree with your contention that our RFPs are in any way improper, and ***we will oppose your motion for a protective order***," but "***[w]e agree we should set a briefing schedule" on the protective order***, potential discovery, and Rule 60(b) Motion (*id.* Exs. 6, 9);

- From March 30 to April 10, 2026, the parties negotiated this schedule, which was delayed repeatedly because Dugaboy's counsel was "not driving this train" but instead an unnamed "someone who has authority" (presumably Dondero) wanted to make last-minute "changes that may be substantial" (*id.* Ex. 19); and

- On April 10, 2026, this Court entered the parties' agreed-upon scheduling order, which states that "***[a]ll restrictions related to discovery*** that were previously agreed to by the parties, ***which were stated in the Court's March 3 Order" and "subject to the Court's resolution" of HCMLP's Motion and the third parties' motion to quash subpoenas, "remain unchanged.***" (April 10 Order at 1–2.)

21. As the parties' correspondence and the plain language of this Court's Orders make clear, Dugaboy's assertion that HCMLP's Motion for a protective order is "inconsistent with the Agreed Order," which "presupposes both parties would engage in discovery with the right to raise specific objections, not to block discovery entirely," (Opp. at 12), is wrong. This Court's March 4 Order expressly preserved HCMLP's "rights to object to ***any*** depositions or written discovery sought by the other party." And this Court's April 10 Order left this "unchanged" and expressly subject to HCMLP's Motion for a protective order. (April 10 Order at 1–2.) Dugaboy should not be heard to complain about HCMLP exercising the very right to object that Dugaboy agreed to preserve and this Court ordered preserved.

22. The parties' correspondence also demonstrates that HCMLP "confer[r]ed in good faith as required by the Rules." (Opp. at 14–15.) Unlike in Dugaboy's authority (*see id.*), HCMLP did not merely send a "single letter unilaterally identifying flaws" in discovery and "setting an arbitrary response deadline," but instead exchanged detailed email correspondence with Dugaboy's counsel for weeks. *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012). In any event, Dugaboy admits that because HCMLP's "position is that the opposing party should receive no discovery at all, meaningful compromise is impossible," so Court intervention is needed. (Opp. at 14.)

23. Dugaboy makes much of its purported document production to HCMLP, which it uses to lob insults against HCMLP, accusing it of engaging in an "about-face," "a one-way transfer," and even "not a good-faith dispute." (Opp. at 7, 11–14.) Dugaboy ignores that HCMLP told Dugaboy on March 25—***five days before Dugaboy produced any documents***—that HCMLP intended to move for a protective order against all of Dugaboy's Requests. (*Id.* Exs. 7, 9.) This puts the lie to Dugaboy's attempts to attack "[t]he timing of Highland's Motion" as "gamesmanship." (*Id.* at 13–14.) In any event, as discussed above, Dugaboy did not actually produce any new documents. (*See supra* Section I.A.) HCMLP served just two document requests. Those requests asked Dugaboy to produce the documents it contended (1) "constitute[d] newly discover[ed] evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" under Rule 60(b)(2), and (2) "Concern fraud . . . by an opposing party for purposes of Fed. R. Civ. Pro. 60(b)(3)." (*Id.* Ex. 8 at 4–5.) In response, Dugaboy simply ***reproduced the exact same already-filed exhibits to its Rule 60(b) Motion***. (*See* MPO at 4.) Thus, in practice, HCMLP has not actually received any discovery from Dugaboy, nor can Dugaboy credibly claim prejudice. At bottom, Dugaboy seeks to improperly conflate HCMLP's entitlement

to learn the factual basis of the Rule 60(b) Motion (which is a threshold inquiry) with Dugaboy's attempt to conduct wide-ranging post-judgment discovery (which requires a *prima facie* showing).

**III. DUGABOY'S OPPOSITION CONFIRMS THAT ITS DISCOVERY REQUESTS ARE OBJECTIONABLE.**

24. Dugaboy admits that this Court has discretion "to issue a protective order" to "forbid certain disclosures, specify the terms for disclosure, forbid inquiry into certain matters, or limit the scope of disclosure to certain matters." (Opp. at 23 (collecting cases).) Contrary to Dugaboy's assertions, HCMLP's Motion showed "specifically how each discovery request is not relevant or otherwise objectionable." (*Id.* at 15 (collecting cases); *see* MPO at 5–7, 23–30.) Dugaboy, by contrast, does "not march through every Request" (Opp. at 20) because all of the Requests, depositions, and Subpoenas are plainly objectionable for at least six reasons.

25. ***First***, Dugaboy's Request Nos. 1–22, 24–26, and 29–55 are not relevant to Dugaboy's Rule 60(b) Motion.[11] (MPO at 5–6, 21–23.) As discussed above, Dugaboy's Rule 60(b) Motion alleges a "DAF restructuring fraud," which has nothing to do with the 9019 Settlement between HMIT and Highland. (*See supra* Section I.B.) Dugaboy admits that only three of its 55 Requests "go directly to the DAF restructuring fraud," so the remaining 52 Requests—which concern "the negotiation, execution, and background diligence of the 9019 Settlement," the "ownership or control of any HMIT Entity," and the valuation of various entities—are completely irrelevant to the Rule 60(b) Motion. (Opp. at 19–20.)[12] Dugaboy also does not dispute that Request

[11] Dugaboy misstates the standard for relevance, claiming that it can seek discovery into matters "that reasonably could lead to other matters that could bear on[] any issue that is or may be in the case." (Opp. at 19.) In 2015, Rule 26 was amended to delete "the 'reasonably calculated' phrase," which "continued to create problems" and risked "swallow[ing] any other limitation on the scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee notes (2015).

[12] Contrary to Dugaboy's assertions, HCMLP did not "ignore" Request Nos. 23, 27–28, which reference DAF (Opp. at 19); it specifically objected to them as "unreasonably cumulative and duplicative" (MPO at 6).

Nos. 8 and 16 seek documents regarding diligence and actions taken by Patrick and the HMIT Entities, which are not in HCMLP's possession, custody, or control. (MPO at 6, 27.)

26. ***Second***, Dugaboy's Request Nos. 1–5, 8–15, 17, 23–24, 27–33, 39–50, and 53–54 are "unreasonably cumulative or duplicative." (MPO at 6, 23–26.) Dugaboy does not—and cannot—dispute that Highland already produced to Dugaboy all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement on May 19, 2025. (*Id.*)[13] Dugaboy likewise does not—and cannot—dispute that many of its Requests are nearly identical to its 9019 document requests. (*Id.*) To the contrary, Dugaboy admits that "overlap exists." (Opp. at 21.) Dugaboy claims that its current requests cover "new ground" because they "refer to different time periods, including documents created after the 9019 Order." (*Id.*) But it is settled law—to which Dugaboy offers no response—that "'evidence not in existence at the time of an earlier judgment'" could not have caused the judgment to have been procured by fraud and is not "newly discovered evidence," so it "'is not an available ground for attacking that judgment.'" *Brown*, 2022 WL 22883290, at *3 (quoting *Southmark*, 742 F.2d at 873).

27. ***Third***, Dugaboy appears to concede that its Request Nos. 19 and 24—which seek every single internal email HCMLP's CEO sent or received and every communication between HCMLP and third parties regarding the 9019 Settlement, the 9019 Motion, or the HMIT entities—are overbroad. (Opp. at 22; MPO at 6, 26–27.)

28. ***Fourth***, Dugaboy admits that its Requests "encompass privileged information." (Opp. at 22.) Dugaboy argues that ***Patrick*** cannot invoke attorney-client privilege or work-product protection based on the "crime-fraud exception to privilege" or "subject[-]matter waiver" of

[13] This is therefore unlike Dugaboy's authority (*see* Opp. at 21) where "no documents have been turned over that relate to" the issue in dispute. *Cadence Bank v. Bridgelink Eng'g LLC*, 2024 WL 6893273, at *6 (N.D. Tex. Dec. 16, 2024).

privilege. (*Id.* at 23–27.) This in no way limits ***HCMLP's*** attorney-client privilege and work-product protection, which remain intact and apply to many of Dugaboy's Requests. (MPO at 6–7, 27–28.) Indeed, Dugaboy appears to have abandoned its attempt to obtain HCMLP's emails with its bankruptcy and litigation counsel, which are plainly privileged. (*Id.*) In any event, the bare fact that Patrick restructured DAF "with the assistance of the advice of counsel" and referenced the fact that "his attorneys advised him" (without revealing the substance of the advice or communications) (Opp. at 24, 26) fails to satisfy the stringent requirements for the crime-fraud exception or subject-matter waiver of privilege.

29. ***Fifth***, Dugaboy does not dispute that taking 16 hours of depositions would be particularly burdensome and offers no explanation of how it could depose Murphy in the Cayman Islands without his consent. (Opp. at 28–29.) Dugaboy simply rehashes the same reciprocal discovery argument based on the Scheduling Orders (*id.*), which is directly contradicted by the parties' correspondence and the plain language of the Orders (*see supra* Section II). Specifically, these depositions are not "one-way": HCMLP's counsel expressly told Dugaboy's counsel that HCMLP would seek the depositions of Dondero and his sister ***only if*** HCMLP's protective order is denied and discovery is ordered. (*Id.*)

30. ***Finally***, Dugaboy does not even attempt to defend the extraordinary ***532 requests*** in its third-party Subpoenas, which it admits "seek[] documents" from counsel. (Opp. at 28.)

31. At bottom, Dugaboy has served such extensive and improper discovery to harass and burden Highland and others to obtain information it might use in other proceedings, and to delay proceedings on its Rule 60(b) Motion. Indeed, Dugaboy repeatedly seeks to avoid a protective order, to force HCMLP and the third parties to object to each request, and to negotiate

over each one. (Opp. at 2, 6, 20–21.) This Court should put an end to such harassment and delay and enter the requested protective order.

**CONCLUSION**

WHEREFORE, HCMLP respectfully requests that this Court enter an order (1) protecting against Dugaboy's efforts to take discovery in connection with its Rule 60(b) Motion, including its Requests, Subpoenas, and deposition requests, and (2) granting HCMLP such other and further relief the Court deems just and proper under the circumstances.

Dated: April 22, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | ) | |

**DECLARATION OF JOHN A. MORRIS IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AGAINST THE DUGABOY INVESTMENT TRUST'S DISCOVERY REQUESTS**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

I, John A. Morris, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am admitted to this Court *pro hac vice* and am a partner in the law firm of Pachulski, Stang, Ziehl & Jones LLP, counsel to Highland Capital Management, L.P. ("HCMLP"), the reorganized debtor in the above-referenced bankruptcy case. I respectfully submit this Declaration to provide this Court with certain materials cited in *Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests*. Unless stated otherwise, this Declaration is based on my personal knowledge and review of the documents listed below.

2. Attached hereto as **Exhibit 20** is a true and correct copy of a *Consent Order* in *In re Charitable DAF Holdco, Ltd.*, entered by the Grand Court of the Cayman Islands Financial Services Division on July 31, 2025.

3. Attached hereto as **Exhibit 21** are true and correct copies of excerpts of Returns of Organizations Exempt from Income Tax filed on IRS Form 990, dated 2024, for the Highland Dallas Foundation Inc., the Highland Kansas City Foundation Inc., and the Highland Santa Barbara Foundation Inc.

4. Attached hereto as **Exhibit 22** is a true and correct copy of a letter from Maples and Calder (Cayman) LLP to Karen Hoskins, Personal Assistant to the Hon. Justice Raj Parker of the Grand Court of the Cayman Islands Financial Services Division, dated February 3, 2026.

5. Attached hereto as **Exhibit 23** is a true and correct copy of an email thread among counsel for HCMLP and counsel for Dugaboy, dated February 13, 2026 to March 2, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of April 2026, in
New York, New York.

*/s/ John A. Morris*
John A. Morris

EXHIBIT 20

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 201 OF 2025 (RPJ)**

**IN THE MATTER OF THE GRAND COURT ACT**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

Plaintiff

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

Defendants

---

**CONSENT ORDER**

---

**UPON** the Plaintiff's Summons dated 15 July 2025 (the "**Injunction Summons**")

**AND UPON** the First, Third, Fifth, and Sixth Defendants' Summons of dated 21 July 2025 (the "**Directions Summons**")

**AND UPON** the parties listed therein giving to the Court the undertakings recorded in Schedule A to this Order

**AND UPON** the Injunction Summons and the Directions Summons being listed for hearing on 31 July 2025 before the Honourable Justice Parker

**IT IS ORDERED BY CONSENT** that:

1 The Injunction Summons shall be adjourned and listed for hearing on the first available date after 18 September 2025 (the "**Hearing**").

2 The time estimate for the Hearing shall be 2 days.

3 Directions for evidence in the Injunction Summons shall be as follows:

(a) The Defendants shall file and serve any evidence in answer by 4.30pm on 28 August 2025;

(b) The Plaintiff shall (if so advised) serve any evidence in reply by 4.30pm on 11 September 2025.

4 The Plaintiff shall file an agreed hearing bundle for the Hearing in electronic form by 4pm on the date which is 12 days before the date of the hearing (once listed).

5 The parties shall file and exchange skeleton arguments by 4pm on the date which is 7 days before the date of the hearing (once listed).

6 Costs of the Injunction Summons and the Directions Summons are reserved.

7 Liberty to apply.

DATED this 31 day of July 2025

FILED this 31 day of July 2025

**THE HONOURABLE JUSTICE PARKER**
**JUDGE OF THE GRAND COURT**

Approved as to form and content:

Maples and Calder (Cayman) LLP

**Maples and Calder (Cayman) LLP**

Attorneys for the Plaintiff

Campbells LLP

**Campbells LLP**

Attorneys for the First, Third, Fifth and Sixth Defendants

Kobre & Kim (Cayman)

**Kobre & Kim**

Attorneys for the Second Defendant

Baker & Partners (Cayman) Limited

**Baker & Partners LLP**

Attorneys for the Fourth Defendant

## Schedule A

Undertakings given by the Defendants

1 Pending the determination of the JOLs' Summons, the Defendants[1], and the related entities listed in Schedule B hereto (the "**CDM Entities**") and their respective agents, servants, employees, and representatives, agree and undertake to:

(a) not to transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the CDM Entities outside of the ordinary course of business;

(b) not to take any action to increase the remuneration paid to any employee, manager or director of the CDM Entities;

(c) not to take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the CDM Entities;

(d) not to take any action to modify or alter the corporate governance of the CDM Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

(e) not to take any action to sell, exchange, or dispossess any asset of one of the CDM Entities unless (i) the sale is to a bona fide third-party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide purchaser is made aware of this undertaking, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the CDM Entities; and

(f) not to alter, conceal, or destroy any business records concerning the Defendants or the CDM Entities, including any transfers of funds, assets, receivables, or shares to or from the Defendants or CDM Entities.

2 Further, and to the extent not addressed by the foregoing, the Defendants and the CDM Entities undertake and agree that:

[1] Being the First Defendant, Mark Patrick; the Second Defendant, Paul Murphy; the Third Defendant, CDMCFAD, LLC; the Fourth Defendant, DFW Charitable Foundation; the Fifth Defendant, CDH GP, Ltd. as general partner for and on behalf of Charitable DAF Fund, LP, and in its capacity as general partner; and the Sixth Defendant, CLO HoldCo, Ltd.

(a) they will preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the CDM Entities and/or any assets of the Fund other than in the ordinary course of business; and

(b) they shall not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 From the date of this undertaking to the date of the determination of the JOLs' Summons, the Third, Fourth, Fifth and Sixth Defendants (the "**CDM Defendants**") and the CDM Entities will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

4 From the date of this undertaking to the date of the determination of the JOLs' Summons, the First Defendant and the Second Defendant will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$100,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

5 If the JOLs have any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Defendants' or the CDM Entities' business, the CDM Defendants and the CDM Entities undertake to consult with the JOLs and to provide clarification. For the avoidance of doubt, nothing in this undertaking shall prohibit the Defendants and the CDM Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with these proceedings or the official liquidation of Charitable DAF Holdco, Ltd (In Official Liquidation) [FSD 116 of 2025 (JAJ)], or the Chapter 15 Case (defined below). All such transactions of the CDM Defendants and the CDM Entities will be provided for in the monthly transactions report pursuant to paragraph 6 of this undertaking. However, the Defendants agree that the issue of whether

they are permitted to use funds that derive directly or indirectly from the limited partner interest in the Fund to pay their legal fees and other service providers will be determined at the Hearing (as defined in paragraph 1 of the consent order to which these undertakings are appended).

6 From the date of this undertaking to the date of the determination of the JOLs' Summons, the CDM Defendants and the CDM Entities will disclose to the JOLs, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the CDM Defendants or the CDM Entities for the period 30 June 2024 onwards. Any information of whatever nature relating to any member of the Defendants or the CDM Entities which is provided to the JOLs pursuant to this paragraph 5, shall not be disclosed to or shared with Mr James Dondero, the Supporting Organisations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals / entities, subject to where the JOLs' are required to disclose any such information in the discharge of their duties to the Court or as otherwise required by law.

7 With respect to the chapter 15 case, *In re Charitable DAF Holdco, Ltd (In Official Liquidation)*, United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), Case No. 25-11376 (BLS) (the "**Chapter 15 Case**"), (i) The First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities consent to the entry of an order, in the form and substance appended hereto at Schedule C, in the Chapter 15 Case, recognising and enforcing the above undertakings in the United States; (ii) the JOLs agree to adjourn the hearing to recognise the Cayman Islands liquidation of Charitable DAF Holdco, Ltd. (the "**Company**") as a foreign main proceeding from 14 August 2025, to a date as soon as practicable, based on the Bankruptcy Court's availability, following the conclusion of inter parties hearing regarding the JOL's Summons (such, date, the "**Adjourned Recognition Hearing Date**"); (iii) the JOLs and the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities agree that the deadline to object to recognition of the Cayman Islands liquidation of the Company shall be the date that is 21 days before the Adjourned Recognition Hearing Date and the deadline for JOLs to reply to objections, if any, shall be the date that is 7 days before the Adjourned Recognition Hearing Date. For

the avoidance of doubt, (i) the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities reserve their rights regarding any relief sought in the Chapter 15 Case, including the relief sought in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (II) Related Relief Under Chapter 15 of the Bankruptcy Code*, other than with respect to matters expressly addressed in this undertaking; and (ii) the JOLs reserve their right to seek provisional relief against parties as they deem necessary or appropriate in furtherance of their duties as official liquidators, including in furtherance of their ongoing investigation of the business and affairs of the Company from the date hereof through the Adjourned Recognition Hearing Date.

**Schedule B**

List of CDM Entities

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

**Schedule C**

Draft form of Chapter 15 order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD (In Official Liquidation),[2]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS) |

**ORDER GRANTING PROVISIONAL RELIEF PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 1519 TO RECOGNIZE AND ENFORCE AN ORDER ENTERED BY THE CAYMAN COURT IMPLEMENTING AN ASSET PRESERVATION PROTOCOL WITH RESPECT TO THE CDM ENTITIES**

Upon consideration of [a certification of counsel] with respect to the entry by the Cayman Court[3] of an Order Implementing an Asset Preservation Protocol in the Cayman Litigation, dated [July __, 2025] and attached hereto as **Exhibit 1** (the "Asset Preservation Protocol") and it being understood that the JOLs and the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities agree to the terms and form of this order (the "Order") and its entry by the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Asset Preservation Protocol is hereby recognized by this Court and all undertakings as they relate to the First, Third, Fourth, Fifth and Sixth Defendants and the CDM

[2] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[3] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 3] (the "Verified Petition").

Entities, set forth therein are fully enforceable in the United States, including, but not limited to, each of the following:

a. the First, Third, Fourth, Fifth and Sixth Defendants (as defined in the Asset Preservation Protocol) and the related entities listed in and attached hereto as **Exhibit 2** (the "CDM Entities") and their respective agents, servants, employees, and representatives, agree and undertake to:

i. not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the CDM Entities outside of the ordinary course of business;

ii. not take any action to increase the remuneration paid to any employee, manager or director of the CDM Entities;

iii. not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the CDM Entities;

iv. not take any action to modify or alter the corporate governance of the CDM Entities, including but not limited to any amendment to their respective bylaws or organizational documents;

v. not take any action to sell, exchange, or dispossess any asset of one of the CDM Entities unless (i) the sale is to a bona fide third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the bona fide purchaser is made aware of this undertaking, and (iii) the proceeds from that sale, exchange, or disposition remain owned by the CDM Entities;

vi. not alter, conceal, or destroy any business records concerning the First, Third, Fourth, Fifth and Sixth Defendants or the CDM Entities, including any transfers of funds, assets, receivables, or shares to or from the First, Third, Fourth, Fifth and Sixth Defendants or CDM Entities;

b. Further, and to the extent not addressed by the foregoing, the First, Third, Fourth, Fifth and Sixth and the CDM Entities undertake and agree that:

i. they will preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "Fund"), and/or the CDM Entities and/or any assets of the Fund other than in the ordinary course of business; and

ii. they shall not do anything to cause, procure, incite, promote or assist a breach by any other party of this Order;

c. From the date of the Asset Preservation Protocol to the date of the determination JOLs' Summons (as defined in the Asset Preservation Protocol), the CDM Defendants (as defined in the Asset Preservation Protocol) and the CDM Entities will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction;

d. From the date of the Asset Preservation Protocol to the date of the determination of the JOLs' Summons (as defined in the Asset Preservation

Protocol), the First Defendant (as defined in the Asset Preservation Protocol) will give 7 days' written notice to the JOLs of any payment or transaction of any nature (or series of related payments or transactions) he proposes to make at or above US$100,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction;

e. If the JOLs have any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Defendants' or the CDM Entities' business, the CDM Defendants and CDM Entities undertake to consult with the JOLs and to provide clarification. For the avoidance of doubt, nothing in this undertaking shall prohibit the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with the Cayman Litigation, the Cayman Proceeding or this Chapter 15 Case. All such transactions of the CDM Defendants and the CDM Entities will be provided for in the monthly transactions report pursuant to paragraph 1(f) of this Order. However, the First, Third, Fourth, Fifth and Sixth Defendants agree that the issue of whether they are permitted to use funds that derive directly or indirectly from the limited partner interest in the Fund to pay their legal fees and other service providers will be determined at the Hearing (as defined in the Asset Preservation Protocol);

f. from the date of the Asset Preservation Protocol to the date of the determination of the JOLs' Summons (as defined in the Asset Preservation Protocol), the CDM Defendants and the CDM Entities will disclose to the JOLs, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the CDM Defendants or the CDM Entities for the period 30 June 2024 onwards. Any information of whatever nature relating to any member of the First, Third, Fourth, Fifth and Sixth Defendants or the CDM Entities which is provided to the JOLs pursuant to this paragraph 1(e), shall not be disclosed to or shared with Mr James Dondero, the Supporting Organizations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals or entities, subject to where the JOLs' are required to disclose any such information in the discharge of their duties to the Cayman Court or as otherwise required by law;

2. Notwithstanding any provision in the Bankruptcy Rules to the contrary (i) this Order shall be effective immediately and enforceable upon entry; (ii) the JOLs are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) the JOLs are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

3. Each of the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities reserve their rights regarding any relief sought in the Chapter 15 Case, including the relief sought

in the Verified Petition, other than with respect to matters expressly addressed in paragraph 1 of this Order. For the avoidance of doubt, the First, Third, Fourth, Fifth and Sixth Defendants (as defined in the Asset Preservation Protocol) and the CDM Entities hereby consent to the recognition and enforcement of the Asset Preservation Protocol in the United States through and including the date of determination of the JOLs' Summons (as defined in the Asset Preservation Protocol) and shall not oppose the continuation of such relief at any hearing for recognition of the Cayman Proceeding. By agreeing to the entry of this order, the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities have not consented to jurisdiction in this Court. All parties' rights are reserved with respect to jurisdiction

4. This Order is a Final Order within the meaning of 28 U.S.C. § 158(a) and is effective immediately upon entry.

5. This Order shall be binding on and inure to the benefit of the Debtor, the JOLs, the First, Third, Fourth, Fifth and Sixth Defendants, and the CDM Entities.

6. To the extent there is any inconsistency between the terms of this Order and the Asset Preservation Protocol, the terms of the Asset Preservation Protocol as they relate to the First, Third, Fourth, Fifth and Sixth Defendants and the CDM Entities shall control.

7. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, any request for additional relief or any adversary proceeding brought in and through this Chapter 15 Case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Dated: [July __], 2025
Wilmington, Delaware

______________________________

Honorable Brendan L. Shannon
United States Bankruptcy Judge

**Exhibit 1**

[Asset Preservation Protocol]

FILED BY Maples and Calder (Cayman) LLP, attorneys for the Plaintiff, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/858403.02/83824743)

**EXHIBIT 21**

| efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755 |
|---|---|---|

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

Do not enter social security numbers on this form as it may be made public.

**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2024**

**Open to Public Inspection**

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
HIGHLAND DALLAS FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) | Room/suite
2101 CEDAR SPRINGS SUITE 1200

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3961755

E Telephone number
(214) 276-6300

**G** Gross receipts $ 4,709,490

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRINGS SUITE 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No

**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.

**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011

**M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE DALLAS FOUNDATION, A TEXAS NONPROFIT CORPORATION.

2 Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 32,787,503 | 4,709,490 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 32,787,503 | 4,709,490 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 2,284,137 | 3,839,918 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 103,570 | 677,824 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 2,387,707 | 4,517,742 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 30,399,796 | 191,748 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 139,632,832 | 82,073,527 |
| | 21 | Total liabilities (Part X, line 26) | 0 | 405,413 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 139,632,832 | 81,668,114 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | | | Yes | No |
|---|---|---|---|---|---|
| | which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | 17 | | |

Form **990** (2024)





Part VI **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | 3 | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 1 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | 5 | | No |
| 6 | Did the organization have members or stockholders? | | | 6 | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | 7a | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | 7b | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| a | The governing body? | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | | No |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | | |
| 13 | Did the organization have a written whistleblower policy? | 13 | | No |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | | No |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | | No |
| b | Other officers or key employees of the organization | 15b | | No |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |

| | | | | |
|---|---|---|---|---|
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
TORREY LITTLETON 3000 PEGASUS PARK STE 930 DALLAS, TX 75247 (214) 741-9898

Form **990** (2024)





Part VII **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) JAMES DONDERO<br>PRESIDENT, DIRECTOR | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (2) JULIE DIAZ<br>VICE PRESIDENT | 0.50<br>40.00 | X | | X | | | | 518,549 | 0 | 13,576 |
| (3) ANGELA WOODSON<br>SECRETARY | 0.50<br>40.00 | | | X | | | | 182,830 | 0 | 19,002 |
| (4) TORRREY LITTLETON<br>TREASURER | 0.50<br>40.00 | | | X | | | | 260,781 | 0 | 29,957 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**SCHEDULE A**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I** **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . 1

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? Yes | No | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| (A) THE DALLAS FOUNDATION | 752890371 | 7 | Yes | | 3,839,918 | 0 |
| | | | | | | |
| **Total** 1 | | | | | 3,839,918 | 0 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2024**

Page 2

Schedule A (Form 990) 2024 Page **2**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| | | Line | Yes | No |
|---|---|---|---|---|
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | 6 | | No |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | No |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | 9a | | No |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | 9b | | No |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | 9c | | No |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |





**Part IV Supporting Organizations** (continued)

| | | Line | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| **b** | A family member of a person described on 11a above? | 11b | | No |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI.*** | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the* | | | |

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**Schedule J** (Form 990) (Rev. January 2025)
Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . . .<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | **4c** | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . .<br>If "Yes," on line 5a or 5b, describe in Part III. | **5b** | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . .<br>If "Yes," on line 6a or 6b, describe in Part III. | **6b** | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50053T **Schedule J (Form 990) (Rev. 1-2025)**

Page 2

Schedule J (Form 990) (Rev. 1-2025) Page **2**

## Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.
**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| 1 JULIE DIAZ<br>VICE PRESIDENT | (i) | 473,549 | 45,000 | 0 | 13,100 | 476 | 532,125 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 TORRREY LITTLETON<br>TREASURER | (i) | 231,741 | 29,040 | 0 | 10,027 | 19,930 | 290,738 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 ANGELA WOODSON<br>SECRETARY | (i) | 178,504 | 4,326 | 0 | 7,072 | 11,930 | 201,832 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |





**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | COMPENSATION PROCESS FOR TOP OFFICIAL - A SELECT INDEPENDENT GROUP OF THE BOARD ESTABLISHES THE COMPENSATION PACKAGE FOR THE CEO. COMPENSATION SURVEYS, INDICATING NATIONAL INDUSTRY STANDARDS FOR COMPENSATION OF SIMILAR ORGANIZATIONS, ARE CONSULTED IN SETTING THE COMPENSATION PACKAGE FOR THIS POSITION. COMPENSATION PROCESS FOR OFFICERS - THE BOARD HAS DESIGNATED COMPENSATION DECISIONS FOR OTHER OFFICERS AND KEY EMPLOYEES TO THE ORGANIZATION'S CEO. COMPENSATION SURVEYS, INDICATING NATIONAL INDUSTRY STANDARDS FOR COMPENSATION OF SIMILAR ORGANIZATIONS, ARE CONSULTED IN SETTING COMPENSATION PACKAGES FOR THESE POSITIONS. |



**Additional Data** Return to Form

**Software ID:**
**Software Version:**

| efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755 |
|---|---|---|

**SCHEDULE O**
**(Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENTS THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |
| FORM 990, PART XI, LINE 9: | LIABILITY PAYABLE -405,413. |



**Additional Data** Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

# SCHEDULE R (Form 990)

(Rev. January 2025)

Department of the Treasury
Internal Revenue Service

## Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)** THE DALLAS FOUNDATION<br>3000 PEGUSAS PARK DRIVE SUITE 930<br><br>DALLAS, TX 75247<br>75-2893071 | COMMUNITY FOUNDATION | TX | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50135Y **Schedule R (Form 990) (Rev. 1-2025)**

Page 2

Schedule R (Form 990) (Rev. 1-2025) Page **2**

**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |





**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| | | Yes | No |
|---|---|---|---|
| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | |
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | **No** |
| **b** Gift, grant, or capital contribution to related organization(s) | **1b** | **Yes** | |
| **c** Gift, grant, or capital contribution from related organization(s) | **1c** | | **No** |
| **d** Loans or loan guarantees to or for related organization(s) | **1d** | | **No** |
| **e** Loans or loan guarantees by related organization(s) | **1e** | | **No** |
| **f** Dividends from related organization(s) | **1f** | | **No** |
| **g** Sale of assets to related organization(s) | **1g** | | **No** |
| **h** Purchase of assets from related organization(s) | **1h** | | **No** |
| **i** Exchange of assets with related organization(s) | **1i** | | **No** |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | **No** |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | **1k** | | **No** |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | | **No** |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | **Yes** | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | | **No** |
| **o** Sharing of paid employees with related organization(s) | **1o** | | **No** |
| **p** Reimbursement paid to related organization(s) for expenses | **1p** | | **No** |
| **q** Reimbursement paid by related organization(s) for expenses | **1q** | | **No** |
| **r** Other transfer of cash or property to related organization(s) | **1r** | | **No** |
| **s** Other transfer of cash or property from related organization(s) | **1s** | | **No** |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| **(1)**THE DALLAS FOUNDATION | B | 3,839,918 | CASH |
| **(2)**THE DALLAS FOUNDATION | M | 500,000 | CASH |
| | | | |
| | | | |
| | | | |
| | | | |





**Part VI Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Yes** | **No** | | | **Yes** | **No** | | **Yes** | **No** | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

005644

Schedule R (Form 990) (Rev. 1-2025)

Page 5

Schedule R (Form 990) (Rev. 1-2025) Page **5**

**Part VII** **Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|

Schedule R (Form 990) (Rev. 1-2025)

## Additional Data

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

Do not enter social security numbers on this form as it may be made public.

**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2024**

**Open to Public Inspection**

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
HIGHLAND KANSAS CITY FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address)
2101 CEDAR SPRING ROAD 1200

Room/suite

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3961865

E Telephone number
(214) 276-6300

**G** Gross receipts $ 1,103,223

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRING ROAD 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011

**M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE GREATER KANSAS CITY COMMUNITY FOUNDATION, A MISSOURI NONPROFIT CORPORATION.

2 Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 19,810,435 | 1,103,223 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 19,810,435 | 1,103,223 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 2,000,000 | 500,000 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 9,508 | 9,508 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 2,009,508 | 509,508 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 17,800,927 | 593,715 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 91,007,570 | 88,214,035 |
| | 21 | Total liabilities (Part X, line 26) | 0 | 0 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 91,007,570 | 88,214,035 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | | | | |
|---|---|---|---|---|---|
| **a** | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| **c** | Enter the amount of reserves on hand | **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | **16** | | No |
| **17** | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | **17** | | |







Part VI **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year. If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | **1a** | 3 | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 1 | | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | **5** | | No |
| **6** | Did the organization have members or stockholders? | | | **6** | Yes | |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | **7a** | Yes | |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | **7b** | Yes | |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| **a** | The governing body? | | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? | | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | **9** | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | Yes | |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | | No |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? | **13** | | No |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | | No |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | | No |

| | | | | |
|---|---|---|---|---|
| **b** | Other officers or key employees of the organization . . . . . . | 15b | | No |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
DEBORAH WILKERSON 1055 BROADWAY BLVD STE 130 KANSAS, MO 64105 (816) 842-0944





Part VII **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| **(A)** Name and title | **(B)** Average hours per week (list any hours for related organizations below dotted line) | **(C)** Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | **(D)** Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | **(E)** Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | **(F)** Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) JAMES DONDERO<br>PRESIDENT, DIRECTOR | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (2) BRENDA CHUMLEY<br>DIRECTOR | 0.50<br>40.00 | X | | | | | | 0 | 256,661 | 43,745 |
| (3) DEBORAH L WILKERSON<br>SECRETARY, TREASURER | 2.00<br>40.00 | X | | X | | | | 0 | 490,724 | 59,189 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**SCHEDULE A (Form 990)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

**Part I** **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . 1

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? Yes | No | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| (A) GREATER KANSAS CITY COMMUNITY FOUNDATION | 431152398 | 8 | Yes | | 500,000 | 0 |
| | | | | | | |
| **Total** 1 | | | | | 500,000 | 0 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2024**





**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

| | | Line | Yes | No |
|---|---|---|---|---|
| | *If "Yes," explain in* ***Part VI*** *what controls the organization put in place to ensure such use.* | 3c | | |
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* ***Part VI*** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* ***Part VI,*** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* ***Part VI.*** | 6 | | No |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | No |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* ***Part VI.*** | 9a | | No |
| b | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9b | | No |
| c | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9c | | No |
| 10a | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |







**Part IV Supporting Organizations** (continued)

| | | Line | Yes | No |
|---|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| a | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| b | A family member of a person described on 11a above? | 11b | | No |
| c | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI***. | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of | | | |

| efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865 |
|---|---|---|

**SCHEDULE O**
**(Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION A, LINE 6 | THE CORPORATION SHALL HAVE TWO CLASSES OF MEMBERS AND ONE MEMBER IN EACH SUCH CLASS: THE INSTITUTIONAL MEMBER, WHICH SHALL BE THE GREATER KANSAS CITY COMMUNITY FOUNDATION, AND THE INDIVIDUAL MEMBER, WHICH SHALL BE JAMES DONDERO OR AN INDIVIDUAL DESIGNATED AS THE INDIVIDUAL MEMBER IN ACCORDANCE WITH THE BYLAWS. |
| FORM 990, PART VI, SECTION A, LINE 7A | TWO (2) DIRECTORS (THE "INSTITUTIONAL DIRECTORS") SHALL BE ELECTED ANNUALLY BY THE INSTITUTIONAL MEMBER AND ONE (1) DIRECTOR (THE "INDIVIDUAL DIRECTOR") SHALL BE ELECTED ANNUALLY BY THE INDIVIDUAL MEMBER. |
| FORM 990, PART VI, SECTION A, LINE 7B | ONLY THE MEMBERS, BY THE AFFIRMATIVE UNANIMOUS VOTE OF THE MEMBERS ENTITLED TO VOTE, MAY ADOPT, AMEND, OR REPEAL THE BYLAWS, AND ALTERATIONS OR AMENDMENTS OF THE BYLAWS MADE BY THE MEMBERS SHALL NOT BE ALTERED OR AMENDED BY THE BOARD OF DIRECTORS TO THE EXTENT SUCH ALTERATION OR AMENDMENT EXPRESSLY STATES THAT IT CAN ONLY BE ALTERED OR AMENDED BY THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENT THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION B, LINE 12C | NO CONTRACT OR AGREEMENT MAY BE ENTERED INTO BY AND BETWEEN THE CORPORATION AND ANY OF THE FOLLOWING: (A) A DIRECTOR, OFFICER, OR EMPLOYEE OF THE CORPORATION (HEREINAFTER AN "INSIDER"); OR (B) ANY CORPORATION, PARTNERSHIP, TRUST, SOLE PROPRIETORSHIP OR ANY OTHER ENTITY (HEREINAFTER AN "ENTITY") IN WHICH AN INTEREST IS OWNED OR HELD, DIRECTLY OR INDIRECTLY, BY OR FOR THE BENEFIT OF AN INSIDER, UNLESS (I) THE TRANSACTION IS APPROVED IN ACCORDANCE WITH SECTION 144 OF THE DELAWARE GENERAL CORPORATION LAW TO THE EXTENT SUCH PROVISION IS APPLICABLE TO THE TRANSACTION; AND (II) IF ONE OR MORE OF THE PARTIES TO THE CONTRACT OR TRANSACTION IS A "DISQUALIFIED PERSON" WITH RESPECT TO THE CORPORATION WITHIN THE MEANING OF SECTION 4958 OF THE CODE, EITHER (X) SUCH TRANSACTION IS REVIEWED AND APPROVED IN ACCORDANCE WITH THE "REBUTTABLE PRESUMPTION SAFE HARBOR" PROVISIONS SET FORTH IN THE REGULATIONS PROMULGATED UNDER SECTION 4958 OF THE CODE OR (Y) THE BOARD OF DIRECTORS DETERMINES THAT SUCH PROCEDURES ARE NOT NECESSARY FOR THE TRANSACTION INVOLVED AND RECORDS ITS SPECIFIC FINDINGS FOR MAKING SUCH DETERMINATION; PROVIDED, HOWEVER, THAT THE FOLLOWING CONTRACTS AND AGREEMENTS SHALL NOT BE SUBJECT TO THE FOREGOING PROHIBITION: A GRATUITOUS TRANSFER OF ASSETS OR PROMISE TO TRANSFER ASSETS TO THE CORPORATION OF ANY KIND, INCLUDING BUT NOT LIMITED TO, (I) A GIFT ANNUITY, CHARITABLE REMAINDER TRUST, CHARITABLE LEAD TRUST OR SIMILAR SPLIT-INTEREST ARRANGEMENT WHICH BENEFITS BOTH THE INSIDER AND THE CORPORATION; OR (II) A LOAN, LEASE, AGREEMENT OF SALE OR PURCHASE, PLEDGE, GUARANTEE, ASSUMPTION OF LIABILITY, BAILMENT, OR CONSIGNMENT. ALL INSIDERS SHALL, AS A CONDITION OF QUALIFYING AND CONTINUING TO QUALIFY AS A DIRECTOR, OFFICER, AND/OR EMPLOYEE OF THE CORPORATION, ABIDE BY SUCH CONFLICT OF INTEREST POLICIES AS THE BOARD OF DIRECTORS MAY ADOPT FROM TIME TO TIME. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |



## Additional Data

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**SCHEDULE R (Form 990)** (Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**GREATER KANSAS CITY COMMUNITY FOUNDATION<br>1055 BROADWAY<br><br>KANSAS CITY, MO 64105<br>43-1152398 | COMMUNITY FOUNDATION | MO | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50135Y **Schedule R (Form 990) (Rev. 1-2025)**

Page 2



**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |





**Part V** **Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

1 During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV?

| | | Line | Yes | No |
|---|---|---|---|---|
| **a** | Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** | Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| **c** | Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| **d** | Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** | Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** | Dividends from related organization(s) | 1f | | No |
| **g** | Sale of assets to related organization(s) | 1g | | No |
| **h** | Purchase of assets from related organization(s) | 1h | | No |
| **i** | Exchange of assets with related organization(s) | 1i | | No |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** | Sharing of paid employees with related organization(s) | 1o | | No |
| **p** | Reimbursement paid to related organization(s) for expenses | 1p | | No |
| **q** | Reimbursement paid by related organization(s) for expenses | 1q | | No |
| **r** | Other transfer of cash or property to related organization(s) | 1r | | No |
| **s** | Other transfer of cash or property from related organization(s) | 1s | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |





**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

005653

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |





**Part VII Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

Do not enter social security numbers on this form as it may be made public.

**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2024**

Open to Public Inspection

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
HIGHLAND SANTA BARBARA FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 2101 CEDAR SPRINGS ROAD 1200
Room/suite

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3962008

E Telephone number
(214) 276-6300

**G** Gross receipts $ 1,087,722

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRINGS ROAD 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011

**M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

**1** Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE SANTA BARBARA FOUNDATION, A CALIFORNIA NONPROFIT CORPORATION.

**2** Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| Section | Line | Description | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 18,296,113 | 1,087,722 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 18,296,113 | 1,087,722 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 250,000 | 250,000 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 245,186 | 244,007 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 495,186 | 494,007 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 17,800,927 | 593,715 |

| Section | Line | Description | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 91,007,570 | 88,214,035 |
| | 21 | Total liabilities (Part X, line 26) | 0 | 0 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 91,007,570 | 88,214,035 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | | | | |
|---|---|---|---|---|---|
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | 17 | | |







Part VI **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | 3 | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 1 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | 5 | | No |
| 6 | Did the organization have members or stockholders? | | | 6 | Yes | |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | 7a | Yes | |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | 7b | Yes | |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| a | The governing body? | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | | No |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | | No |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | | No |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | | No |
| b | Other officers or key employees of the organization | 15b | | No |

If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions.

| | | | | |
|---|---|---|---|---|
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
JACQUELINE CARRERRA 1111 CHAPALA STREET STE 200 SANTA BARBARA, CA 93101 (805) 963-1873





Part VII **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee): Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) JAMES DONDERO<br>DIRECTOR, PRESIDENT | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (2) JACQUELINE CARRERRA<br>DIRECTOR, SECY/TREASURER | 2.00<br>42.00 | X | | X | | | | 0 | 457,442 | 83,862 |
| (3) TODD YUBA<br>DIRECTOR | 1.00<br>42.00 | X | | | | | | 0 | 297,791 | 56,674 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008 |
|---|---|---|

**SCHEDULE A**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . 1

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| (A) SANTA BARBARA FOUNDATION | 951866094 | 7 | Yes | | 250,000 | 0 |
| | | | | | | |
| **Total** 1 | | | | | 250,000 | 0 |





**Part II Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| | | | Yes | No |
|---|---|---|---|---|
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | 6 | | No |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | No |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | 9a | | No |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | 9b | | No |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | 9c | | No |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |

**Schedule A (Form 990) 2024**

Page 5

Schedule A (Form 990) 2024 Page **5**

**Part IV Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| **b** | A family member of a person described on 11a above? | 11b | | No |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI**.* | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of | | | |

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**Schedule J** (Form 990) (Rev. January 2025)
Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization: HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**: 45-3962008

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . .<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | **4c** | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . .<br>If "Yes," on line 5a or 5b, describe in Part III. | **5b** | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . .<br>If "Yes," on line 6a or 6b, describe in Part III. | **6b** | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50053T **Schedule J (Form 990) (Rev. 1-2025)**





## Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.

Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.
**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| **1** JACQUELINE CARRERRA<br>DIRECTOR, SECY/TREASURER | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 412,296 | 43,856 | 1,290 | 57,500 | 26,362 | 541,304 | 0 |
| **2** TODD YUBA<br>DIRECTOR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 277,711 | 11,000 | 9,080 | 29,919 | 26,755 | 354,465 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |





**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | THE COMPENSATION FOR THE RELATED ORGANIZATION WAS ESTABLISHED BY A COMPENSATION STUDY AND APPROVAL OF THE BOARD. ADDITIONALLY, STARTING WITH THE RECOMMENDATIONS OF THE CEO, THE COMPENSATION COMMITTEE ASSESSES, DETERMINES, AND DOCUMENTS THE REASONABLENESS OF THE TOTAL COMPENSATION RANGES, AND THE TERMS OF ANY EMPLOYMENT AGREEMENTS, SEVERANCE AND/OR RETENTION AGREEMENTS, OF THE V.P., FINANCE & ADMINISTRATION AND ALL EMPLOYEES WITH REPORTABLE COMPENSATION (W-2) RANGES AT OR OVER $150,000. WHEN APPROPRIATE, THE COMMITTEE SELECTS AND ENGAGES PROFESSIONALS TO GATHER AND REVIEW IN ADVANCE, APPROPRIATE MARKET COMPARABILITY DATA ON THE AMOUNT AND FORM OF COMPENSATION PAID FOR COMPARABLE POSITIONS BY OTHER COMPARABLE EMPLOYERS. |



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

| efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008 |
|---|---|---|

**SCHEDULE O**
**(Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION A, LINE 6 | THE CORPORATION SHALL HAVE TWO CLASSES OF MEMBERS AND ONE MEMBER IN EACH SUCH CLASS: THE INSTITUTIONAL MEMBER, WHICH SHALL BE THE SANTA BARBARA FOUNDATION, AND THE INDIVIDUAL MEMBER, WHICH SHALL BE JAMES DONDERO OR AN INDIVIDUAL DESIGNATED AS THE INDIVIDUAL MEMBER IN ACCORDANCE WITH THE BYLAWS. |
| FORM 990, PART VI, SECTION A, LINE 7A | TWO (2) DIRECTORS (THE "INSTITUTIONAL DIRECTORS") SHALL BE ELECTED ANNUALLY BY THE INSTITUTIONAL MEMBER AND ONE (1) DIRECTOR (THE "INDIVIDUAL DIRECTOR") SHALL BE ELECTED ANNUALLY BY THE INDIVIDUAL MEMBER. |
| FORM 990, PART VI, SECTION A, LINE 7B | ONLY THE MEMBERS, BY THE AFFIRMATIVE UNANIMOUS VOTE OF THE MEMBERS ENTITLED TO VOTE, MAY ADOPT, AMEND, OR REPEAL THE BYLAWS, AND ALTERATIONS OR AMENDMENTS OF THE BYLAWS MADE BY THE MEMBERS SHALL NOT BE ALTERED OR AMENDED BY THE BOARD OF DIRECTORS TO THE EXTENT SUCH ALTERATION OR AMENDMENT EXPRESSLY STATES THAT IT CAN ONLY BE ALTERED OR AMENDED BY THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENT THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION B, LINE 12C | NO CONTRACT OR AGREEMENT MAY BE ENTERED INTO BY AND BETWEEN THE CORPORATION AND ANY OF THE FOLLOWING: (A) A DIRECTOR, OFFICER, OR EMPLOYEE OF THE CORPORATION (HEREINAFTER AN "INSIDER"); OR (B) ANY CORPORATION, PARTNERSHIP, TRUST, SOLE PROPRIETORSHIP OR ANY OTHER ENTITY (HEREINAFTER AN "ENTITY") IN WHICH AN INTEREST IS OWNED OR HELD, DIRECTLY OR INDIRECTLY, BY OR FOR THE BENEFIT OF AN INSIDER, UNLESS (I) THE TRANSACTION IS APPROVED IN ACCORDANCE WITH SECTION 144 OF THE DELAWARE GENERAL CORPORATION LAW TO THE EXTENT SUCH PROVISION IS APPLICABLE TO THE TRANSACTION; AND (II) IF ONE OR MORE OF THE PARTIES TO THE CONTRACT OR TRANSACTION IS A "DISQUALIFIED PERSON" WITH RESPECT TO THE CORPORATION WITHIN THE MEANING OF SECTION 4958 OF THE CODE, EITHER (X) SUCH TRANSACTION IS REVIEWED AND APPROVED IN ACCORDANCE WITH THE "REBUTTABLE PRESUMPTION SAFE HARBOR" PROVISIONS SET FORTH IN THE REGULATIONS PROMULGATED UNDER SECTION 4958 OF THE CODE OR (Y) THE BOARD OF DIRECTORS DETERMINES THAT SUCH PROCEDURES ARE NOT NECESSARY FOR THE TRANSACTION INVOLVED AND RECORDS ITS SPECIFIC FINDINGS FOR MAKING SUCH DETERMINATION; PROVIDED, HOWEVER, THAT THE FOLLOWING CONTRACTS AND AGREEMENTS SHALL NOT BE SUBJECT TO THE FOREGOING PROHIBITION: A GRATUITOUS TRANSFER OF ASSETS OR PROMISE TO TRANSFER ASSETS TO THE CORPORATION OF ANY KIND, INCLUDING BUT NOT LIMITED TO, (I) A GIFT ANNUITY, CHARITABLE REMAINDER TRUST, CHARITABLE LEAD TRUST OR SIMILAR SPLIT-INTEREST ARRANGEMENT WHICH BENEFITS BOTH THE INSIDER AND THE CORPORATION; OR (II) A LOAN, LEASE, AGREEMENT OF SALE OR PURCHASE, PLEDGE, GUARANTEE, ASSUMPTION OF LIABILITY, BAILMENT, OR CONSIGNMENT. ALL INSIDERS SHALL, AS A CONDITION OF QUALIFYING AND CONTINUING TO QUALIFY AS A DIRECTOR, OFFICER, AND/OR EMPLOYEE OF THE CORPORATION, ABIDE BY SUCH CONFLICT OF INTEREST POLICIES AS THE BOARD OF DIRECTORS MAY ADOPT FROM TIME TO TIME. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |



## Additional Data

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**SCHEDULE R (Form 990)** (Rev. January 2025)

Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**SANTA BARBARA FOUNDATION<br>1111 CHAPALA STREET SUITE 200<br><br>SANTA BARBARA, CA 93101<br>95-1866094 | COMMUNITY FOUNDATION | CA | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| **(2)**WYATT FAMILY FOUNDATION<br>1111 CHAPALA STREET SUITE 200<br><br>SANTA BARBARA, CA 93101<br>93-1503406 | TO SUPPORT THE CHARITABLE ACTIVITIES OF THE SANTA BARBARA FOUNDATION | CA | 501(C)(3) | LINE 12A, I | SANTA BARBARA FOUNDATION | | No |
| **(3)**ERIC AND KELLY SCHWARTZ CHARITABLE TRUST<br>1776 PLEASANT PLAIN ROAD<br><br>FAIRFIELD, IA 52556<br>47-4959497 | TO SUPPORT THE CHARITABLE ACTIVITIES OF THE SANTA BARBARA FOUNDATION | IA | 501(C)(3) | LINE 12A, I | SANTA BARBARA FOUNDATION | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |





**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of | (b) Primary activity | (c) Legal | (d) Direct controlling | (e) Type of entity | (f) Share of total | (g) Share of end | (h) Percentage | (i) Section 512(b)(13) |
|---|---|---|---|---|---|---|---|---|

| related organization | | domicile (state or foreign country) | entity | corp, S corp, or trust) | income | of-year assets | ownership | controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |





**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| | | Yes | No |
|---|---|---|---|
| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | |
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| **c** Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| **d** Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** Dividends from related organization(s) | 1f | | No |
| **g** Sale of assets to related organization(s) | 1g | | No |
| **h** Purchase of assets from related organization(s) | 1h | | No |
| **i** Exchange of assets with related organization(s) | 1i | | No |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** Sharing of paid employees with related organization(s) | 1o | | No |
| **p** Reimbursement paid to related organization(s) for expenses | 1p | | No |
| **q** Reimbursement paid by related organization(s) for expenses | 1q | | No |
| **r** Other transfer of cash or property to related organization(s) | 1r | | No |
| **s** Other transfer of cash or property from related organization(s) | 1s | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| **(1)**SANTA BARBARA FOUNDATION | B | 250,000 | CASH PAID |
| **(2)**SANTA BARBARA FOUNDATION | M | 234,499 | CASH PAID |
| | | | |
| | | | |
| | | | |
| | | | |





**Part VI Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) (Rev. 1-2025)





**Part VII Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|

Schedule R (Form 990) (Rev. 1-2025)

## Additional Data

Return to Form

**Software ID:**
**Software Version:**

**EXHIBIT 22**

MAPLES
GROUP

**Our ref** CJM//MCL/858403-000002/86423618
**Direct tel** +1 345 814 5245 / +1 345 814 5577
**Email** caroline.moran@maplesandcalder.com / christian.la-rodathomas@maples.com

**By Email**

Ms Karen Hoskins
Personal Assistant to the Hon. Justice Raj Parker
Financial Services Division
Grand Court
Grand Cayman

3 February 2026

Dear Ms Hoskins

**Charitable DAF HoldCo, Ltd (in Official Liquidation) (the "Company") v Mark Eric Patrick & Ors – FSD 201 of 2025 (RPJ)**

**Draft Judgment**

1 We refer to the draft judgment (the "**Draft Judgment**") in relation to the hearing on 15 and 16 December 2025 of the Company's application, by way of Amended Summons dated 4 December 2025 (the "**Amended Summons**"), for an injunction restraining the disposal of and dealing with assets over which the Company asserts a proprietary interest. The Draft Judgment was circulated to the parties on 28 January 2026.

2 This letter addresses the following points: (a) a potential omission from the Draft Judgment; and (b) the timing of the handing down of the final judgment.

<u>Omission from the Draft Judgment</u>

3 The Draft Judgment dismisses the Amended Summons in its entirety. This includes the Company's application, at paragraph 1.1(a) of the Amended Summons, for an order restraining the Defendants from taking steps to dispose of and/or transfer the limited partnership interest (the "**Partnership Interest**") itself that the Company formerly held in Charitable DAF Fund, LP (the "**Fund**") which was previously an asset of the Company and was transferred to the Third Defendant in March 2025. The application for injunctive relief in respect of the Partnership Interest itself is distinct from the injunctive relief sought in respect of the underlying assets of the Fund and/or subsidiaries of the Fund.

4 The Draft Judgment does not, however, appear to address the Company's proprietary interest in the Partnership Interest itself and does not consider whether on the balance of convenience an injunction should be granted in respect of the Partnership Interest. This appears to be an omission from the Draft Judgment. In this regard:

(a) It is not disputed by the Defendants that the Company had a proprietary interest in the Partnership Interest.

(b) The Honourable Judge has determined that there is a serious issue to be tried in respect of the Restructuring which caused the Partnership Interest to be transferred to the Third Defendant.

(c) An injunction over transferring the Partnership Interest itself would plainly not interfere with the underlying business of the Fund. This was the basis on which the Honourable Judge found that the balance of convenience weighed against granting an injunction over the underlying Fund assets.

5 The Company is not attempting to make further submissions in respect of the Amended Summons but respectfully seeks to query whether the Honourable Judge would consider amending the Draft Judgment to determine this issue. As currently drafted, upon delivery of the final judgment, the Company will have no protections in respect of the Partnership Interest, and it is not clear whether this was the intention of the Court.

<u>Timing</u>

6 The Company intends to appeal the final judgment once handed down. The Company will seek to have the appeal listed as soon as practicable. To preserve its position pending the appeal, the Company intends to apply to this Honourable Court for a short interim injunction on the same or similar terms as the interim undertakings set out in the Consent Order dated 31 July 2025 (the "**Interim Undertakings**") to continue until either the determination of (i) the appeal of this Honourable Court's final judgment; or in the alternative (ii) the Company's application to the Cayman Islands Court of Appeal for an interim injunction pending appeal (the "**Interim Application**").

7 To address the risk of further dissipation of assets during the period between the delivery of the final judgment and the determination of the Interim Application, the Company respectfully requests that the Interim Application be listed and determined before or at least simultaneously when the final judgment is delivered. The Company will file the Interim Application promptly once the Honourable Court has had an opportunity to respond to our query above and make any desired consequential amendments to the Draft Judgment. Given the terms of the Interim Undertakings, which have been in place since 31July 2025, we do not consider that the proposed approach would cause any party any undue prejudice.

8 The Company will write to the Defendants to seek their consent to extend the Interim Undertakings pending determination of the appeal. If the Defendants give such consent, the Interim Application may not be necessary.

9 We should be grateful if you would please place this letter before the Honourable Judge at your earliest convenience. Please do not hesitate to contact Caroline Moran or Christian La-Roda Thomas of this firm (details above) if you require any further information.

Yours faithfully

Maples and Calder (Cayman) LLP

Maples and Calder (Cayman) LLP

**From:** John A. Morris
**To:** Gaddis, Mike
**Cc:** Jeff Pomerantz; Jordan A. Kroop; Hayley R. Winograd; Stancil, Mark; "Louis M. Phillips"; Gaddis, Mike; "Geoffrey Harper"
**Subject:** Re: 19-34054-sgj11 Order to set hearing
**Attachments:** image001.png

I think that works, Mike.

Please prepare a draft joint document and we'll respond promptly.

John

Get Outlook for iOS

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Monday, March 2, 2026 12:46:33 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; Gaddis, Mike <MGaddis@winston.com>; 'Geoffrey Harper' <gharper@kslaw.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

I'm happy to draft but this should be a joint or agreed motion given that one of the significant asks (and the original impetus for this conversation) is your request to extend your response deadline by 30 days.

We would like one 8-hour deposition per side, and four hours each for the other two witnesses. We can agree to keeping the reply deadline at April 24 (barring some unforeseen extraordinary circumstance).

On point three, we disagree with your argument but agree to a mutual reservation of rights to make objections to the discovery/witness process.

Does that work? Let me know.

Yours,

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, March 2, 2026 8:58 AM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; 'Geoffrey Harper' <gharper@kslaw.com>
**Subject:** FW: 19-34054-sgj11 Order to set hearing

Mike.

1. Moving the date for witness designations to April 6 is fine.

2. While we question the need for three witnesses, Highland won't object provided (a) we maintain the April 24 deadline for Dugaboy's reply, and (b) limit depositions to four hours of testimony.

3. We're confused by your third point. Originally, Highland sought to depose Dugaboy's witnesses, if any, so that Highland could find out the factual bases for the motion before the hearing. But since Dugaboy's motion is based on "newly discovered evidence" and fraud, and Dugaboy presumably had the evidence to support its motion when it was filed, we didn't anticipate that Dugaboy would seek to take affirmative discovery; indeed, we don't believe Dugaboy can use the discovery process to seek evidence to support a motion under Rule 60. Rather than debate the point, we would like to secure the schedule subject to a reservation of everyone's right to object to discovery by means of a motion to quash or otherwise (having said that, if Dugaboy wants to take the deposition of Highland's principal, we'll make him available at a mutually agreeable time).

Please let us know if that's acceptable. If so, please prepare a draft unopposed motion to adjust the schedule.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Thursday, February 26, 2026 7:50 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; 'Geoffrey Harper' <gharper@kslaw.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

Thanks for working this up. After further consultations with the team, we have three proposed changes.

- First, let's move the witness disclosure deadline to April 6 so we have a couple days to digest your response brief before making our final decision on witnesses. That's only fair since you've had ours for weeks.

- Second, Dugaboy would like to allow for three witnesses per side, rather than two. That doesn't mean we necessarily will call three, just that (at least for now) we want to keep that option open. Three depos per side may require blocking more time for depositions. If so, we can trim a couple days off the 14 days we've allotted from the close of depositions to our reply brief deadline.

- Third, it is possible that one or more Dugaboy's witnesses will be hostile third parties who will fight our subpoenas. Or they may be outside the U.S. and require us to go through Hague Convention process. If we are required to litigate a motion to quash or go through the Hague, that could impose significant delays and make the rest of the proposed schedule unworkable. So we would like to build in some flexibility that leaves room for us to revisit the schedule and push back the reply deadline and hearing date if necessary. Of course, we'll do the same for you if you run into similar witness complications.

  - Again, if the resulting delays are just a few days, we can borrow them from the 14-day reply brief period. But if it looks to stretch to a week or more then we'll need to push things back.

  - One way to prevent or minimize such complications is if the parties to the challenged 9019 settlement can guarantee they will make their principals or directors or other key persons available for deposition if requested. Is that something you can do?

  - I'm not quite sure how to write this into a proposed schedule for the Court, so I'd appreciate your thoughts. It may be best to put something tentative into the

schedule for now, with a note that we will reconvene after April 6 for a more concrete discussion of possible schedule changes once we know who the witnesses are and have a better sense of whether to expect any difficulties.

I'm happy to discuss further and look forward to your thoughts.

Yours,

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, February 25, 2026 3:33 PM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; 'Geoffrey Harper' <gharper@kslaw.com>
**Subject:** FW: 19-34054-sgj11 Order to set hearing

Mike,

Please consider the following:

April 3 Highland Objection
Exchange witness designations (if any)

4/5-10 Depositions (up to two per side)

April 24 Dugaboy Reply

4/27 to 5/8 One day hearing TBD by Court's availability w/ W&E lists filed a week before the hearing date

Please let us know if that works.

Thanks,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777

jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Wednesday, February 25, 2026 11:48 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; 'Geoffrey Harper' <gharper@kslaw.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; 'Mark T. Stancil (mstancil@willkie.com)' <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

Following up on scheduling for the Rule 60(b) motion. Geoff Harper is generally available to do the hearing any day between April 27 and May 8 so you can pick whichever date(s) within that time range work best for you. We should have a few alternate dates to suggest to the Court.

Yours,

MICHAEL GADDIS
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Tuesday, February 24, 2026 4:31 PM
**To:** 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'Jordan A. Kroop' <Jkroop@pszjlaw.com>; 'Hayley R. Winograd' <hwinograd@pszjlaw.com>; 'Geoffrey Harper' <gharper@kslaw.com>; 'Louis M. Phillips' <louis.phillips@kellyhart.com>; 'Mark T. Stancil (mstancil@willkie.com)' <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

I have discussed this with my team and here is our response. Dugaboy believes it is

premature at this early stage to make any commitment on whether or not it will call witnesses (or how many or which ones) given that it will be a while before we see your response and the hearing will be at least two months out under the schedule we're contemplating. Therefore, we believe the best course of action is to go with your well-taken idea of building in time to allow for a few depositions of any witnesses either side may choose to call.

To that end, could you please give me some suggested dates as follows (starting from Highland's proposed response deadline on April 3):

- An adequate time period for a few witness depositions, and a deadline to exchange witness designations (if any) shortly before that.
- Dugaboy's reply to be due two weeks after conclusion of the deposition period.
- Deadline to file exhibit and witness lists and exchange exhibits one week before the hearing
- A range of potential hearing dates starting from at least one week after Dugaboy's reply.

These are suggestions and I'm open to discuss if you have different time frames in mind.

I have no idea about potential third-party joinders, but we can include a deadline for that if you want.

As for your potential objection, you are of course free to make any colorable argument you want and we will respond in due course. But I confess I don't understand a rationale for excluding witness testimony from a Rule 60(b) proceeding where presentation of newly discovered evidence is the whole point. I'm happy to discuss that at a later date (though preferably not this week).

Yours,

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** Gaddis, Mike
**Sent:** Friday, February 20, 2026 10:29 AM
**To:** 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

Noted. Have a good weekend.

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, February 20, 2026 10:23 AM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** Re: 19-34054-sgj11 Order to set hearing

Ok.  For what it's worth, if Dugaboy does not call any witnesses, Highland is very unlikely to do so.

John

Get Outlook for iOS

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Friday, February 20, 2026 5:08:33 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

That's a good question and I don't know the answer, so I need to consult with my team.  It probably won't be today but I'll try to get you some clarification early next week.

Yours,

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>

**Sent:** Friday, February 20, 2026 2:14 AM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>
**Subject:** FW: 19-34054-sgj11 Order to set hearing

Mike,

I have some questions.

1. I understand the Judge set a deadline for the filing of W&E lists, but does Dugaboy intend to call any witnesses in support of its motion? Highland reserves the right to object to the presentation of more testimony on a Motion for Reconsideration, but please identify all such witnesses, if any, so Highland has a reasonable opportunity to depose them.

2. Dugaboy's reply should be filed after depositions (if any) are completed. So, while the two-week period may be fine, it depends on whether and how many witnesses Dugaboy intends to call and whether third parties file joinders or otherwise seek to participate in the adjudication of the Motion.

Please respond at your earliest convenience.

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Wednesday, February 18, 2026 9:47 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>

**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

Here is a proposed schedule. This is not set in stone and we're happy to discuss if you have other dates in mind.

- Highland's response will be due April 3.
- Dugaboy's reply will be due April 17 (two weeks after your response and at least one week before the hearing).
- Both parties to file witness/exhibit lists and exchange exhibits one week before the hearing.
- Hearing date: Any mutually convenient and court-available date starting from April 24 (i.e., at least one week after our reply). Geoff has good availability from April 24 through May 8.

Yours,

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, February 17, 2026 5:28 PM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** Re: 19-34054-sgj11 Order to set hearing

Yes, and a reply deadline.

Get Outlook for iOS

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Wednesday, February 18, 2026 12:18:02 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

We are all agreed on not opposing your response deadline extension to April 3. I'm waiting to hear from people on proposed hearing dates.

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, February 17, 2026 4:44 PM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** Re: 19-34054-sgj11 Order to set hearing

Any update here?

Get Outlook for iOS

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Friday, February 13, 2026 9:13:24 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

Makes sense. I will consult my team on potential dates and then circle back with you.

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, February 13, 2026 12:47 PM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>;

Gaddis, Mike <MGaddis@winston.com>
**Subject:** Re: 19-34054-sgj11 Order to set hearing

Thanks.

Let us know what you're thinking from your end for the reply.

Then we should jointly write to the Court and seek a setting based on the agreed upon briefing schedule.

Make sense?

Get Outlook for iOS

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Friday, February 13, 2026 7:25:28 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

John,

We do not oppose your asking the Court for an extension to April 3 on your response deadline. Before you file that motion, please consult with us so we can agree on a new proposed hearing date and recalculate the other deadlines in Judge Odell's order (Dugaboy's reply and the witness/exhibit list exchanges).

Yours,

MICHAEL GADDIS
OF COUNSEL

T +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, February 13, 2026 11:00 AM
**To:** Gaddis, Mike <MGaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>
**Subject:** RE: 19-34054-sgj11 Order to set hearing

+ Louis Phillips and Mark Stancil

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** John A. Morris
**Sent:** Friday, February 13, 2026 5:56 PM
**To:** Gaddis, Mike <mgaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** FW: 19-34054-sgj11 Order to set hearing

Mike,

I am out of the country (with Jeff Pomerantz) and will not return until February 22 and have a few significant matters to attend to after I return, including the opposition to a Fifth Circuit appeal by NexPoint on March 5 and a mediation in another matter on March 13.

Please let me know if Dugaboy will agree to extend from March 3 to April 3 Highland's time to respond to the Motion for Reconsideration.

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR HMIT PARTIES, CLO HOLDCO, LTD, THE LAW FIRMS, & VALUESCOPE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | **Re: Docket Nos. 4533, 4538, 4555** |

**REPLY IN SUPPORT OF JOINDER TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR A PROTECTIVE ORDER AGAINST THE DUGABOY INVESTMENT TRUST'S DISCOVERY REQUESTS AND REPLY IN SUPPORT OF MOTION TO QUASH AND JOINDER TO HCMLP REPLY**

**NOW INTO COURT**, through undersigned counsel, comes the Sheilds Legal Group, P.C., ("Shields"), Kelly Hart & Pitre ("Kelly Hart" with Shields, the "Law Firms"), CLO HoldCo, Ltd. ("CLO Holdco"), Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities") and ValueScope, LLC ("ValueScope," with the Law Firms, CLO HoldCo, and the HMIT Entities, the "Movants") submit this *Reply* (the "Reply") in support of (i) the *Motion to Quash* (the "Motion to Quash") [Dkt. No. 4538] filed by the Law Firms and CLO HoldCo and (ii) *Joinders* (the "Joinders") to the *Motion for Protective Order against the Dugaboy Investment Trust's Discovery Truste's Discovery Request*s [Dkt. No. 4533] (the "Motion for Protective Order") filed by Highland Capital Management, L.P. ("HCMLP"), (which Joinders are found at Dkt. No. 4540, 4549, and 4554). Further, Movants expressly join in and adopt HCMLP's *Reply in Further Support of its Motion for a Protective Order against the Dugaboy Investment Trust's Discovery Requests* [Dkt. No. 4555] ("HCMLP Reply"). In the Motion for Protective Order and the HCMLP Reply, HCMLP requests that this Court enter an order protecting against Dugaboy Investment Truste ("Dugaboy") efforts to take discovery in connection with its *Motion to Reconsider the 9019 Order* [Dkt. No. 4513] (the "Rule 60(b) Motion"). Movants join in all respects ("Movant's Joinder"). Further, as set forth below, Movants also submit additionally their Reply in support of the Motion to Quash.

## REPLY

### A. The Law Firms and CLO HoldCo conferred with Dugaboy but will not agree to an extension or reset of the Rule 60(b) Hearing.

1. This Court has set a hearing on the Rule 60(b) Motion for May 11, 2026 at 9:00 A.M. CST (the "Rule 60(b) Hearing"). Dkt. No. 4547.

2. The Court also ordered that all discovery related to the Rule 60(b) Motion, unless otherwise agreed by the parties, must be completed no later than May 1, 2026. *Id.*

3. In its Supplements after service of subpoenas, CLO HoldCo and the Law Firms raised the additional objection that the subpoenas served were returnable after the Rule 60(b) Hearing and after the close of discovery. Dkt. Nos. 4554, 4549 (the "Supplements").

4. In response, Dugaboy argues that this Court has not precluded parties from "continuing discovery past May 1, 2026, to the extent they can do so by agreement. But the Moving Parties have made no effort to meet and confer with Dugaboy about the timing or scope of the requested discovery and instead have simply raced to the Court."

5. First, all Movants complied with the requirements for conferral prior to filing any discovery pleading with the Court.

6. On April 6, 2026, undersigned counsel sent an email to Dugaboy noting that undersigned counsel was not authorized to accept email service for the Law Firms or CLO HoldCo, and that a motion to quash for improper service would be filed for non-parties served via email (the Law Firms and CLO HoldCo) but that the HMIT Entities would be joining in Motion for Protective Order. Exhibit A – 4/6/2026 email thread.

7. Counsel for Dugaboy responded that day not raising the issue of requiring a more detailed meet and confer, but rather, discussing an agreed timing for adjudication of the issues. *See* L. Phillips Declaration, Exhibit A – 4/6/2026 email thread.

8. Likewise, after the subpoenas to the Law Firms and CLO HoldCo were served, undersigned counsel again, sent an email to Dugaboy this time attaching the Supplements and advising that undersigned counsel believed a meet and confer was unnecessary given the issues were already joined and hearing set before the Court. See L. Phillips Declaration, Exhibit B – 4/16/2026 email thread. Counsel for Dugaboy responded, agreeing that the requirements for a meet and confer had been satisfied. *Id*.

9. Yet now, Dugaboy blames counsel for "racing to the courthouse" instead of having a more detailed meet and confer—although Dugaboy never mentioned wanting to engage in further discussion and in fact, represented the opposite.

10. And practically, there would be no resolution from a more extensive conferral. Dugaboy sent *hundreds* of documents requests to the Law Firms and CLO HoldCo. Any shorter timeframe than that already given by Dugaboy would necessarily not be the requisite "reasonable time to respond" under Fed. R. Civ. P. 45 and thus, alone a basis to quash. Fed. R. Civ. P. 45(3)(A)(i). But of course, for good reason, the Movants strongly oppose any resetting or extension of the Rule 60(b) Hearing.

11. So the Law Firms and CLO HoldCo would have to either (i) agree to do the impossible (respond to incredibly extensive discovery requests on a far too compressed time frame) or (ii) agree to reset the Rule 60(b) Hearing—which is likely what Dugaboy's aim is in propounding this discovery returnable after the Rule 60(b) Hearing. And it is not just that the documents are to be produced after the close of discovery, they are also to be produced after the Rule 60(b) Hearing, a date which the parties could not modify by agreement, nor would the Movants want to.

12. As the Law Firms and CLO HoldCo have briefed, serving extensive discovery at the end of the discovery cutoff is not cause or basis for any extension of the hearing date or discovery deadlines set by this Court. *See S&W Enters., LLC v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 535 (5th Cir. 2003) ("good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension").

13. In short, Dugaboy's contention that the Law Firms and CLO HoldCo did not confer is not only demonstrably false, but also, is of no moment. The Law Firms and CLO HoldCo could

never have agreed to do something impossible to do (respond to hundreds of documents requests in any shorter of a timeframe). Instead, Dugaboy appears to have been using the subpoenas to manufacture cause for an extension of the Rule 60(b) Hearing.

**B. Dugaboy has not and cannot make any requisite showing that discovery of the Law Firm's communications with their clients are discoverable.**

14. Dugaboy argues that no privilege attaches to any communications between the Law Firms and the HMIT Entities because of Mr. Partick's "misconduct or prior disclosures" but in so doing, Dugaboy greatly misconstrues both doctrines of crime-fraud exception and waiver of privilege.

15. As to the crime-fraud exception, Dugaboy's cursory argument is that because the HMIT Entities had counsel in connection with the 9019 Settlement (as defined in the Rule 60(b) Motion) and Dugaboy alleges the 9019 Settlement was part of the "overarching scheme for Patrick to steal the DAF assets" then no communications between the Law Firms and the HMIT Entities in connection with the 9019 Settlement are privileged.

16. But of course, the crime-fraud exception does not allow movants to hypothesize that a crime or fraud occurred, and then cite to that hypothesis to eviscerate the oldest and most venerated of the common law privileges of confidential communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (describing the importance of the privilege).

17. Instead, courts are quite clear that the party seeking to invoke the crime-fraud exception must produce ***evidence***, not allegations. *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (rejecting the application of the crime fraud exception where there was nothing in the record of fraud except the plaintiff's ***allegations***. Even when the pleadings details allegations of fraud, they are not ***evidence*** to make a prima facie case).

18. As the Fifth Circuit explained, "[i]n order to invoke the crime-fraud exception, the party seeking to breach the walls of privilege must make out a prima facie case. To make such a showing, the party must produce evidence that will satisfy the determination that the exception applies until contradicted or overcome by other evidence. *Lewis v. Crochet*, 105 F.4th 272, 282 (5th Cir. 2024).

19. Here, the only evidence Dugaboy cites is that unsurprisingly Mr. Patrick retained Kelly Hart as counsel for the HMIT Entities in negotiating the 9019 Settlement and relied on legal advice from Shields in restructuring the DAF (as referred to in the Rule 60(b) Motion).

20. Kelly Hart was the law firm representing the HMIT Entities in the 9019 Settlement, yet there is not even a mention of Kelly Hart whatsoever in the Rule 60(b) Motion, let alone evidence.

21. In fact, Dugaboy has not cited to any evidence that the Law Firms assisted the HMIT Entities in a crime or fraud, and on the contrary cite only *allegations* in other pleadings. *See* Rule 60(b) Motion, p. 22 (citing to Statement of Claim in Caymans). Of course, a Statement of Claim is just a *pleading.* *In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2025 WL 2047279, at *1 (Bankr. N.D. Tex. July 21, 2025) (explaining that a statement of claims in the Cayman Islands liquidation proceedings are allegations raised that will be litigated).

22. By express Fifth Circuit law, no matter how "detailed" pleadings are—which here as to the actual allegations relevant to the 9019 Settlement the allegations are not well-detailed—a pleading is not evidence sufficient to make a prima facie case for the crime fraud exception. *Int'l Sys. & Controls*, 693 F.2d at 1242. The Fifth Circuit has specifically denied attempts to do exactly what Dugaboy is doing here: citing to allegations of fraud in pleadings rather than evidence of fraud in support an application of the crime-fraud exception.

23. Further, like its Rule 60(b) Motion generally, Dugaboy cannot make the requisite link in substance of the 9019 Settlement with the *allegations* in the Cayman Islands. As the Fifth Circuit recently explained: discovery of privileged communications and work product is limited to that which is "reasonably related to the furtherance of the ongoing or future crime or fraud at issue" and it has consistently rejected looser limitations on the crime-fraud exception. *Lewis v. Croche*t, 105 F.4th 272, 284 (5th Cir. 2024).

24. As detailed in the *Objection to the 60(b) Motio*n [Dkt. No. 4535], Dugaboy has attempted and failed multiple times to make a link between the 9019 Settlement to the DAF HoldCo liquidation. *See e.g. Memorandum Opinion and Order Regarding Stay Requests* [Dkt. No. 4333].[2] While of course any allegations of wrongdoing in connection with the DAF restructuring by Mr. Patrick are vehemently denied, they are also simply irrelevant to the 9019 Motion.

25. Permitting the allegation of misconduct in an unrelated proceeding to be invade the attorney-client privilege in another would allow "the crime-fraud exception [to] swallow the privilege rule." *In re Grand Jury Subpoena*, 419 F.3d at 347. Therefore in addition to failing to make a prima facia case, Dugaboy has not and clearly cannot make "the proper showing" that the documents are reasonably related "to the furtherance of the ongoing or future crime or fraud." *Id*.

26. Dugaboy's attempt to invade the attorney client privilege based on a subject matter waiver is likewise a misconstruction of applicable law and facts.

---

[2] Judge Jernigan explaining that: As further described herein, there happens to be a "proceeding involving a charitable trust" ongoing in the Cayman Islands. Mark Patrick is apparently accused of misdeeds therein. But, in the bankruptcy case, Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain).

27. Dugaboy argues that because Mr. Patrick disclosed in the Cayman Island proceedings that his attorneys advised him on "the most advantageous tax and corporate structures, compliance implications, and outreach to potential recipients of the Company's Participating Shares," the "DFW Share Issuance," and that the "DAF Restructuring was in the best interest of the DAF Structure," and further shared information about legal memoranda such as the Shields Legal Group "Work Plan" involving "memorandums and opinions relating to potential disputes and corporate reviews and best practices for each, including proactive corporate actions, solidifying defenses, et." that he has waived HMIT's privilege not only as to the specific documents or communications disclosed, but also as to all other documents and communications on the issue of the DAF restructuring…" Dkt. No. 4551, p. 31.

28. Again, glaringly, there is the lack of any connection between the subject matter of the DAF restructuring and the 9019 Settlement. There is no allegation, let alone proof, that the HMIT Entities used the attorney-client privilege with the Law Firms as "sword" in connection with the 9019 Settlement. *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (explaining that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party).

29. While the DAF restructuring is simply not before this Court, it is worth noting that the vast majority of attorney-client privileged communications cited to by Dugaboy do not involve the Law Firms or a waiver of HMIT's privilege. For instance, the communications regarding "the most advantageous tax and corporate structures, compliance implications, and outreach to potential recipients of the Company's Participating Shares," were with Mr. Macino while Mr. Patrick was working at HCMLP *decades* before the complained of actions. *See* Dkt. No. 4551-17 at ¶19. The

communications regarding the "DFW Share Issuance" were with Walkers, not Shields. *See* Dkt. No. 4551-17 at ¶71. There was no subpoena to Walkers.

30. And reason that the JOLs in the Caymans were in possession of the Shield's Work Plan and cite to it in the Statement of Claim was because the JOLs held the privilege for DAF HoldCo (the entity being liquidated). Mr. Patrick could not have waived the privilege over the Work Plan in the cited affidavit because the privilege belonged to the JOLs.

31. It is worth noting, the issue of whether the restructuring of the DAF is proper is simply not before this Court, and the purported subject matter waivers cited to by Dugaboy are irrelevant to the actual issue before this Court—the 9019 Settlement.

32. But even assuming *arguendo* that this Court were determine the propriety of the DAF restructuring, the attorney-client privilege is only waived by disclosure when any other result would be a "manifest unfairness" when a party invokes privileged communications while denying its adversary access to the same. *In re Itron, Inc.*, 883 F.3d 553, 564–65 (5th Cir. 2018). This is what it means to use attorney-client privilege as sword and shield. *Id*. But when while the sword stays sheathed, the privilege stands. *Id*. (citing *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005)).

33. Here, in defending the restructuring of the DAF, while Mr. Patrick referenced using counsel, he did not rest the propriety of the restructuring of the DAF on advice of counsel without elaboration and then claim privilege over what that advice was. In fact, the JOLs are in possession of the "Work Plan" containing much of the advice. Even if that dispute were before this (which it is of course, not), a passing reference to the advice of counsel—particularly advice given by other counsel to other entities, primarily in connection with establishment of the DAF structure and given by other counsel decades earlier—is not what the Fifth Circuit is referring to as a "manifest injustice" and not cause to invade the attorney-client privilege.

**C. Joinder to Reply in Support**

34. The Movants hereby expressly join in and adopt the HCMLP Reply for all purposes.

## CONCLUSION

35. For the reasons stated in the Motion for Protective Order, the Joinders, the Supplements, this Reply, and the HCMLP Reply, the Movants respectfully request that this Court enter an order protecting against Dugaboy's efforts to take discovery from the Movants in connection with the Rule 60(b) Motion.

Respectfully Submitted:

**KELLY HART PITRE**

*<u>/s/ Louis M. Phillips</u>*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

***Counsel for the Law Firms, CLO HoldCo, ValueScope, and the HMIT Entities***

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this April 22, 2026.

*<u>/s/ Louis M. Phillips</u>*
Louis M. Phillips (#10505)

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR THE HMIT ENTITIES, THE LAW FIRMS, CLO HOLDCO, LTD., AND VALUESCOPE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**DECLARATION OF LOUIS M. PHILLIPS IN SUPPORT OF REPLY IN SUPPORT OF THE MOTION TO QUASH AND JOINDER TO REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

I, Louis M. Phillips, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I respectfully submit this Declaration to provide this Court with certain materials cited in in the *Reply in Support of the Motion to Quash and Joinder to Reply in Support of Motion*

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

*for Protective Orde*r [Dkt. No. 4558]. Unless stated otherwise, this Declaration is based on my personal knowledge and review of the documents listed below.

2. Attached hereto as **Exhibit A** is a true and correct copy of correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust ("Dugaboy") and undersigned counsel.

3. Attached hereto as **Exhibit B** is a true and correct copy of correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this April 22, 2026.

***/s/ Louis M. Phillips***
Louis M. Phillips (#10505)

# EXHIBIT A

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 6, 2026 5:00 PM
**To:** Gaddis, Mike <MGaddis@winston.com>; Geoffrey Harper <gharper@kslaw.com>
**Cc:** jpomerantz@pszjlaw.com; Jordan A. Kroop <Jkroop@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; John A. Morris <jmorris@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Document requests to (i) CLO HoldCo, Ltd., Shields Legal Group, P.C., and Kelly Hart; (ii) Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and RandPE Fund Management, LLC; and Subpoena to ValueScope, LLC

This schedule is acceptable. We will file the motion to quash today as well as the Joinder. We will get with the Court to make certain we advise that we accept the schedule and hearing dates.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Monday, April 6, 2026 4:34 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Geoffrey Harper <gharper@kslaw.com>
**Cc:** jpomerantz@pszjlaw.com; Jordan A. Kroop <Jkroop@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; John A. Morris <jmorris@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: Document requests to (i) CLO HoldCo, Ltd., Shields Legal Group, P.C., and Kelly Hart; (ii) Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and RandPE Fund Management, LLC; and Subpoena to ValueScope, LLC

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis,

We appreciate your clarifications below as it's sometimes hard to discern which entities are represented by whom. At least for now, we will not withdraw any of the RFPs or subpoenas because we do not agree that any of them were improper. We will also oppose any motion to quash.

That said, if you do file a motion to quash, we agree with your proposal to brief and argue it on the same schedule as Highland's Motion for Protective Order. It makes sense given the similar arguments we expect you and Highland will make. Working up a separate schedule in our already cluttered calendars would lead to unnecessary headaches.

So unless Highland strongly objects, these would be the relevant dates for your motion to quash (which mirror the schedule for Highland's motion):

- April 6: You file your motion to quash.
- April 15: Dugaboy responds to the motion to quash.
- April 17: You file your reply in support of the motion to quash.
- April 24 (Webex hearing): We argue the motion to quash at the same hearing as Highland's motion for protective order.

Please let us know if this works for everyone.

Regards,

WINSTON & STRAWN LLP

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 6, 2026 1:23 PM
**To:** Geoffrey Harper <gharper@kslaw.com>; Gaddis, Mike <MGaddis@winston.com>
**Cc:** jpomerantz@pszjlaw.com; Jordan A. Kroop <Jkroop@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; John A. Morris <jmorris@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Document requests to (i) CLO HoldCo, Ltd., Shields Legal Group, P.C., and Kelly Hart; (ii) Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and RandPE Fund Management, LLC; and Subpoena to ValueScope, LLC

Counsel,

Kelly Hart is not authorized to accept service of document requests via email or

otherwise for CLO HoldCo, Ltd. ("CLOH") who was not a party to the 9019 contested matter (nor is it authorized to accept service of a subpoena). Also, neither Amelia nor I is authorized to accept service for Kelly Hart Hallman, LLP ("Kelly Hart"), also not a party to the 9019 contested matter (nor is either of us authorized to accept service of a subpoena). Kelly Hart has been retained by the Shields Legal Group, P.C. ("Shields") for the purpose of responding to the improperly served document requests to Shields, and Shields does not accept service of document requests by email, nor will it accept service of a subpoena via email. We submit that you should withdraw the document requests sent by email to CLOH, Kelly Hart, and Shields. We intend to file a short motion to quash today on the basis of improper service, reserving all rights pending proper service, if the Requests are not immediately withdrawn. We reserve all rights. The failure to serve properly is clear, but we are amenable to either (i) having our motion to quash heard according to the current hearing schedule that I understand is agreed to by Highland and Dugaboy, according to the dates provided by the Court, or (ii) to have the motion to quash dealt with separately. We are willing to discuss the scheduling.

We further advise that advise that Kelly Hart has been retained to represent (i) Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and Rand PE Fund Management, LLC ( collectively, the "Settlement Entities") who received email requests for production and (ii) ValueScope, LLC ("ValueScope"), which received service of a subpoena on or about March 25, 2026. In an effort to facilitate the resolution of substantive discovery issues, and given that issue has been joined as to the substantive grounds for a protective order through the Highland motion for [protective order (Dkt.4533) (the "Highland MFPO"), we will file on behalf of the Settlement Entities and ValueScope a joinder to the Highland MFPO today.

We consent to the current pre-hearing schedule and hearing date as described above with respect to the Joinder to the Highland MFPO.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT B

**From:** Gaddis, Mike <MGaddis@winston.com>
**Sent:** Thursday, April 16, 2026 11:31 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Geoffrey Harper <gharper@kslaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Gaddis, Mike <MGaddis@winston.com>
**Subject:** RE: Law Firms Supplemental Response

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Thank you, Louis. I will share these with my team and we will respond in due course. I agree that the meet and confer requirement has been satisfied.

Yours,

WINSTON & STRAWN LLP

**MICHAEL GADDIS**
OF COUNSEL

**T** +1 (214) 453-6466
mgaddis@winston.com

*Admitted to practice in Texas*

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Thursday, April 16, 2026 10:36 AM
**To:** Gaddis, Mike <MGaddis@winston.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Geoffrey Harper <gharper@kslaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>
**Subject:** Law Firms Supplemental Response

Counsel,

Kelly Hart Hallman and Shields Law Group (together, the "Law Firms") are in receipt of the subpoenas served by Dugaboy on or about April 9. As the Law Firms stated in the Motion to Quash, the Law Firms will be formally filing a joinder to the Motion for Protective Order filed by Highland, adding an additional ground of objection based upon the Subpoenas as indicated in the attached. Given that these issues were not resolved with the other parties and the Highland Motion for Protective Order is set for hearing next week, we think a meet and confer is unnecessary here. We plan to file the attached today by EOB.

We have not been advised that as of now CLO HoldCo, Ltd. has been served with any form of discovery.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643

FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# *In re Highland Capital Management, L.P.*

***Bankr. N.D. Tex.*, No. 19-34054-sgj11**

Oral Argument on HCMLP's Motion for Protective Order
Hon. Brad W. Odell
April 24, 2026

WILLKIE

Copyright © 2025 by Willkie Farr & Gallagher LLP. All Rights Reserved.
These materials may not be reproduced or disseminated in any form without the express permission of Willkie Farr & Gallagher LLP.

# Dugaboy Is Not Entitled To Discovery

- "***Post judgment discovery*** into alleged fraud is ***not appropriate***" generally because of courts' "***strong interest in the finality of judgments***." *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 654 (S.D. Tex. 2009) (collecting cases). Accordingly, Bankruptcy Rule 9014 generally does not apply to Rule 60 motions.
- Rather, before seeking affirmative discovery in connection with its Rule 60(b) Motion, Dugaboy must:
  - show it has "**newly discovered evidence**" that could not have been discovered with reasonable diligence within 28 days of the order being challenged and that would have **changed the outcome**, Fed. R. Civ. P. 60(b)(2)**;** or
  - make a "***prima facie* showing of fraud**" under Rule 60(b)(3), *Halliburton*, 618 F. Supp. 2d at 654.

# There Is Nothing New

WILLKIE

# Dugaboy Fails To Satisfy Rule 60(b)(2)

- Rule 60(b)(2) requires Dugaboy to provide "***newly discovered evidence*** that, ***with reasonable diligence, could not have been discovered***" within 28 days of the 9019 Order—*i.e.*, July 28, 2025.
- Dugaboy identifies ***nothing new***.
  - As the timeline shows, everything Dugaboy argues in its Rule 60(b) Motion had already been raised.
  - All of the purportedly "new" evidence was available to Dugaboy with reasonable diligence by July 2025, or often much earlier.
  - The Cayman Proceeding is irrelevant to the 9019 Settlement because it:
    - Does not affect Patrick's authority to enter into the 9019 Settlement on behalf of HMIT;
    - Says nothing about whether the 9019 Settlement was a good settlement; and
    - Rejected the same theory of fraud Dugaboy alleges in its Rule 60(b) Motion.
  - In any event, Dugaboy had full access to the filings in the Cayman Proceeding because:
    - The filings are publicly available, and
    - Dugaboy can obtain them from Dondero who controls both Dugaboy and the Dondero Foundations, which sit on the liquidation committee in the Cayman Proceeding and therefore receive all filings.

# HMIT And Highland Announce The 9019 Settlement

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

- Hunter Mountain Investment Trust (“HMIT”) and related entities, under the control of Mark Patrick, successfully negotiate at arm’s length with Highland to enter into the 9019 Settlement. (Dkt. No. 4216.)

- The 9019 Settlement consists of three main components: (1) dismissal of all pending HMIT litigation against Highland with prejudice and provision of Litigation Protections to Highland; (2) transfer and sale of certain assets to HMIT, including the Dugaboy promissory note and *Kirschner* claims; and (3) liquidation and allowance of HMIT’s Class 10 interests in a fixed amount, permitting distributions to both Class 9 and Class 10 interest holders. (Dkt. No. 4216.)

- On June 30, 2025, the Court approves the 9019 Settlement. (Dkt. No. 4297.)

- The deadline to seek a new trial under Rule 59(b) was “28 days after the entry of judgment,” which was July 28, 2025. Dugaboy failed to do so.

# Dondero Foundations File Petition In The Cayman Islands

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- On April 10, 2025, The Dondero Foundations (The Dallas Foundation Inc., The Kansas City Foundation Inc., The Santa Barbara Foundation Inc., and the HCMLP Charitable Foundation Inc.) file a Winding Up Petition in the Cayman Islands Grand Court seeking to wind up DAF Holdco and appoint Joint Official Liquidators ("JOLs"). (Motion for Protective Order ("MPO") Ex. 6 (Dkt. No. 4534-6).)
- Dondero files an Affidavit, dated April 9, 2025, as part of the Winding Up Petition. (MPO Ex. 7 (Dkt. No. 4534-7).)
- On May 2, 2025, upon learning that Mark Patrick had already begun voluntary liquidation of DAF Holdco, the Dondero Foundations file a Petition for Court Supervision of Voluntary Liquidation. (MPO Ex. 13 (Dkt. No. 4534-13).)
- The Dondero Foundations, in their Cayman filings, ***set forth the same allegations that Dugaboy now claims constitute "newly discovered evidence"*** that Patrick restructured DAF Holdco to fraudulently enrich himself, including:
  - Appointing CDH GP as new general partner
  - Forming DFW Foundation
  - Issuing new shares to DFW Foundation and diluting Dondero Foundations ownership
  - Redeeming DAF Holdco so that it has no remaining assets
  - Pursuing fraudulent transactions related to Creative HEARTS TX and Fortaris Capital Advisors

(MPO Ex. 6 (Dkt. No. 4534-6) ¶¶ 15–53; MPO Ex. 7 (Dkt. No. 4534-7) ¶¶ 23–45.)

# Dondero's Affiliates Object To The 9019 Settlement

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 9, 2025**
The Dallas Foundation and Crown Global file Objection to 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- On June 9, 2025, The Dallas Foundation, a Dondero affiliate, and insurer Crown Global file Dondero-funded Objections to the 9019 Settlement. Dugaboy also files a Dondero-funded Objection. (Dkt. Nos. 4230–31.)
- The Dallas Foundation/Crown Global Objections allege that HMIT has been moved under the DAF Holdco structure and raise identical DAF-related allegations from the Cayman Proceeding. (Dkt. No. 4231 ¶¶ 2–3, 12–34.)

# Parties Exchange Discovery On The 9019 Settlement

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 9, 2025**
The Dallas Foundation and Crown Global file Objection to 9019 Settlement.

**June 9–25, 2025**
Parties exchange discovery related to 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- From June 9–25, 2025, Highland produces over 4,000 pages of documents in response to Dugaboy's discovery requests related to the Settlement, <u>including all documents and communications between Highland and the HMIT Entities up to the execution of the 9019 Settlement</u> on May 19, 2025. (Morris Decl. (Dkt. No. 4534) ¶ 2.)

- Dugaboy and The Dallas Foundation/Crown Global conduct four depositions of key witnesses, including Shawn Raver and Mark Patrick on June 20 and 23, 2025, respectively. (Dkt. No. 4513 Ex. 49; Rule 60(b) Opp. Ex. K. (Dkt. No. 4536-11).)

- On the eve of the June 25 hearing on the Objections to the 9019 Settlement, The Dallas Foundation/Crown Global withdraw their Objection and enter a stipulation barring any claims against Highland. (Dkt. No. 4282.)

# Court Holds Evidentiary Hearing On The 9019 Settlement




- On June 25, 2025, the Court holds an all-day evidentiary hearing on the 9019 Settlement. (MPO Ex. 11 (Dkt. No. 4534-11).)
- The Court considers 128 exhibits totaling 2,899 pages and hears live testimony from James Seery, Mark Patrick, and Jim Dondero, who are subject to cross-examination. (MPO Ex. 11 (Dkt. No. 4534-11) at 110:9–134:22, 184:3–188:18, 206:4–223:25; Dkt. Nos. 4253, 4293.)
- Dugaboy contests Patrick's authority over HMIT and DAF Holdco, at the urging of Dondero in the courtroom. (MPO Ex. 11 (Dkt. No. 4534-11) at 31:4–34:15.)

# Dondero Affiliates File Petition in Texas Business Court




- On July 1, 2025, the day after the 9019 Settlement is approved, the Dondero Foundations file a petition in the Texas Business Court, seeking a TRO, an injunction, and appointment of a receiver to take possession and control of all entities and assets in the DAF structure. (MPO Ex. 15 (Dkt. No. 4534-15).)
- The petition once again repeats the allegations set forth in the Cayman Proceeding and The Dallas Foundation/Crown Global Objection to the 9019 Settlement. (MPO Ex. 15 (Dkt. No. 4534-15) ¶¶ 1.1–1.2, 5.18–6.27.)

# JOLs File *Writ* In The Cayman Proceeding

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 9, 2025**
The Dallas Foundation and Crown Global file Objection to 9019 Settlement.

**June 9–25, 2025**
Parties exchange discovery related to 9019 Settlement.

**June 25, 2025**
The Court holds all-day evidentiary hearing on 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 1, 2025**
The Dondero Foundations file petition in TX Business Court seeking injunctive relief and appointment of a receiver over the DAF structure.

**July 15, 2025**
JOLs file Writ in Cayman Islands action.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- On July 15, 2025, the JOLs appointed in the Cayman Proceeding (who are funded by Dondero) file a *Writ*, yet again alleging that Mark Patrick engaged in fraud and self-dealing by restructuring the DAF entities. (MPO Ex. 8 Ex. A (Dkt. No. 4534-8).)

# Dugaboy Files Motion To Stay The 9019 Settlement

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**June 9, 2025**
The Dallas Foundation and Crown Global file Objection to 9019 Settlement.

**June 9–25, 2025**
Parties exchange discovery related to 9019 Settlement.

**June 25, 2025**
The Court holds all-day evidentiary hearing on 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 1, 2025**
The Dondero Foundations file petition in TX Business Court seeking injunctive relief and appointment of a receiver over the DAF structure.

**July 15, 2025**
JOLs file Writ in Cayman Islands action.

**July 17, 2025**
Dugaboy files Motion to Stay 9019 Settlement.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- On July 17, 2025, Dugaboy files a Motion to Stay the 9019 Settlement Order. (MPO Ex. 8 (Dkt. No. 4534-8).)
- Dugaboy's Motion to Stay attaches the JOLs' *Writ* as an exhibit, and is based entirely on the claims and allegations asserted in the *Writ*. (MPO Ex. 8 Ex. A (Dkt. No. 4534-8).)
- On July 21, 2025, the Court denies Dugaboy's Motion to Stay. (Dkt. No. 4334.)

# JOLs File Chapter 15 Petition In Delaware Bankruptcy Court

**March–May 19, 2025**
HMIT and Highland negotiate Rule 9019 Settlement.

**April 10, 2025 and May 2, 2025**
The Dondero Foundations seek to wind up DAF Holdco in the Cayman Islands.

**June 9, 2025**
The Dallas Foundation and Crown Global file Objection to 9019 Settlement.

**June 9–25, 2025**
Parties exchange discovery related to 9019 Settlement.

**June 25, 2025**
The Court holds all-day evidentiary hearing on 9019 Settlement.

**June 30, 2025**
Court approves 9019 Settlement.

**July 1, 2025**
The Dondero Foundations file petition in TX Business Court seeking injunctive relief and appointment of a receiver over the DAF structure.

**July 15, 2025**
JOLs file Writ in Cayman Islands action.

**July 17, 2025**
Dugaboy files Motion to Stay 9019 Settlement.

**July 21, 2025**
The JOLs file a Chapter 15 Petition in District of Delaware Bankruptcy Court.

**July 28, 2025**
Dugaboy fails to seek a new trial under Rule 59(b).

- On July 21, 2025, the JOLs file a Chapter 15 petition in the United States Bankruptcy Court for the District of Delaware seeking recognition of the Cayman Proceeding and attaching thousands of pages of documents. (Rule 60(b) Opp. Ex. J (Dkt. No. 4536-10).)

# There Is No *Prima Facie* Showing of Fraud

WILLKIE

# Dugaboy Fails To Satisfy Rule 60(b)(3)

### Dugaboy Fails To Make A *Prima Facie* Showing Of Fraud

- Rule 60(b)(3) requires Dugaboy to make a *prima facie* showing of fraud to obtain discovery.
- Dugaboy alleges the ***wrong fraud***.
  - Dugaboy alleges that Mark Patrick defrauded ***DAF's beneficiaries*** by reorganizing DAF.
  - This does not show any fraud in the 9019 Settlement ***between HMIT and Highland***.
  - This does not show any fraud ***on the Court*** in the 9019 Order.
  - This does not implicate Patrick's authority to enter into the 9019 Settlement ***on behalf of HMIT***.

# Dugaboy Fails To Satisfy Rule 60(b)(3)

## The Cayman Islands Court Effectively Rejected The Same Allegations Of Fraud

- Dugaboy relies heavily on filings from the Cayman Proceeding but ***did not provide the Cayman Islands Court decision to this Court***.
- HCMLP provided the Cayman Islands decision to this Court, which denied the JOLs' request for a proprietary injunction:

> *Is there a serious issue to be tried tha* ***[DAF]*** *y has a proprietary interest in the asset(s) over which an injunction is sought to be imposed?*
>
> 130. The Court has carefully considered whethe **[DAF]** y, as a limited partner in the Fund, has a proprietary interest as a limited partner which would entitle it to be protected by way of the injunction sought and/or an indirect beneficial interest in the underlying assets of the Fund.
>
> 131. The Court answers both of these questions in the negative.

(MPO Ex. 4 (Dkt. No. 4534-4) ¶¶ 130–31.)

# Dugaboy Fails To Satisfy Rule 60(b)(3)

## The Cayman Islands Court Effectively Dismissed The Same Allegations Of Fraud

- The Cayman Islands court also rejected claims of fraud based on Patrick's compensation:

*The Injunction against Mr Patrick*

*The Corporate Entity which made the Remuneration Payments*

202. The Court has reviewed the relevant evidence and the pleadings. The Court takes the provisional view that the sums paid to Mr Patrick as remuneration for his work did not come from **[DAF]** funds or assets.

203. Whilst there are **[DAF]** board resolutions in respect of the payments, other companies in the structure actually paid Mr Patrick on behalf of the Company.[73] This may give rise to a proprietary tracing claim by **[DAF]** but there is no seriously arguable case that the payments represent assets which belong to **[DAF]** .

*Excessive Remuneration*

204. **[DAF]** says in contrast to Mr Scott, who was paid US$60,000 per annum, Mr Patrick awarded himself sums comprising a base salary of US$850,000, a bonus of 2.5 times that base salary, and a long-term incentive ("LTI") payment of US$975,000. For the period March 2021 to March 2024, Mr Patrick was entitled to an aggregate LTI payment of US$4,759,000.

205. From disclosure provided pursuant to the Interim Undertakings, the JOLs say that Mr Patrick received, by way of director's fees, a total of US$10,548,778 in 2024 and US$3,325,000 in the first six months of 2025.[74]

206. Having reviewed the affidavit evidence on this question including the detailed report dated 26 August 2024 from Mercer, the Court finds that there is no serious issue to be tried that this remuneration was excessive and in breach of his duty to **[DAF]** .

(MPO Ex. 4 (Dkt. No. 4534-4) ¶¶ 202–03, 204–06.)

# Dugaboy Fails To Satisfy Rule 60(b)(3)

## The Cayman Islands Court Permitted Only Breach-Of-Fiduciary-Duty Claims To Proceed To Trial

- The only issue remaining in the Cayman Proceeding is whether or not Patrick breached his ***fiduciary duties to DAF*** through the restructuring.
  - This does *not* show that the 9019 Settlement ***between HMIT and Highland*** was procured by fraud.
  - This also shows that ***Patrick controlled DAF***; if he did not then he would not owe fiduciary duties.

253. The Court has been persuaded that **[DAF]** and JOLs have a case which the Directors need to answer in relation to the divestiture of **[DAF's]** limited partner interest in the Fund which does withstand a reverse summary judgment application.

254. Weighing all of these points at this stage with a necessarily incomplete picture, the Court is persuaded that there is a serious issue to be tried as to whether the Directors acted in breach of duty in undertaking the restructuring.

255. The Court expresses no view as to whether that case is likely to succeed or not at this stage, merely that it has cleared the relatively low bar of having a real, as opposed to a fanciful, prospect of success at trial.

WILLKIE (MPO Ex. 4 (Dkt. No. 4534-4) ¶¶ 253–55.)

# There Was No "Gamesmanship"

WILLKIE

# Dugaboy Fails To Show Any "Gamesmanship" Or Waiver

- The parties expressly preserved HCMLP's right to object to the discovery process:
  - Feb. 20, 2026: "Highland ***reserves the right to object to the presentation of more testimony*** on a Motion for Reconsideration" (Opp. Ex. 3);
  - Mar. 2, 2026: Highland "***didn't anticipate that Dugaboy would seek to take affirmative discovery***; indeed, ***we don't believe Dugaboy can use the discovery process to seek evidence to support a motion under Rule 60***. Rather than debate the point, we would like to secure the schedule ***subject to a reservation of everyone's right to object to discovery by means of a motion to quash or otherwise***" (Opp. Ex. 11);
  - Mar. 2, 2026: Dugaboy "disagree[s] with your arguments but ***agree to a mutual reservation of rights to make objections to the discovery/witness process***." (Reply Ex. 23.)
- This Court ordered preserved HCMLP's right to object to the discovery process:
  - Mar. 4, 2026 Order (signed Mar. 3): "***All discovery is subject to the Parties' respective reservation of rights to object to any depositions or written discovery sought by the other party***" (Dkt. No. 4528 ¶ 3);
  - Apr. 10, 2026 Order: "***All restrictions related to discovery*** that were previously agreed to by the parties, ***which were stated in the Court's March 3 Order" and "subject to the Court's resolution" of HCMLP's Motion and the third parties' motion to quash subpoenas, "remain unchanged.***" (Dkt. No. 4547 at 1–2.)

# Dugaboy Fails To Show Any "Gamesmanship" Or Waiver

- This is not "one-sided" discovery because Dugaboy did not actually produce any discovery.
  - HCMLP asked Dugaboy to produce (1) the documents it contended were "newly discovered evidence" under Rule 60(b)(2), and (2) concern fraud by an opposing party under Rule 60(b)(3). (Opp. Ex. 8 (Dkt. No. 4551-8).)
  - Dugaboy ***reproduced the exact same already-filed exhibits to its Rule 60(b) Motion***.

WILLKIE

King & Spalding LLP
2601 Olive Street
Suite 2300
Dallas, TX 75201
T: +1 214 764-4600
F: +1 214 764-4601
kslaw.com

**Geoff Harper**
*Counsel*

T: +1 214 764 4453
gharper@kslaw.com

April 24, 2026

The Honorable Brad Odell
United States Bankruptcy Court, Northern District of Texas
Earle Cabell Federal Building
1100 Commerce St., Rm. 1254
Dallas, TX 75242-1496

**Re: In re: Highland Capital Management, L.P., Case No. 19-34054-sgj11**

Dear Judge Odell:

On behalf of The Dugaboy Investment Trust ("Dugaboy"), I write regarding our position on the potential deferral of proceedings on Dugaboy's Federal Rule of Civil Procedure 60(b) motion pending the resolution of the appeal of the underlying order, as promised during today's hearing.

Dugaboy agrees that Federal Rule of Civil Procedure 62.1 and Federal Rule of Bankruptcy Procedure 8008 apply to its pending Rule 60(b) motion. The Court should not defer proceedings on the motion, the option provided by Federal Rule of Civil Procedure 61.1(a)(2). The Court should instead provide an indicative ruling that it would either grant the motion or that the motion presents a substantial issue, asking for remand of the case from the relevant appellate court, as permitted by Federal Rule of Civil Procedure 62.1(a)(3).

The Rule 60(b) motion turns on evidence that may be subject to spoilation during the pendency of the appeal. Witnesses are contemplated, and their memories may fade or they may become unavailable. And the relief sought is time-sensitive, as it concerns assets that may be disposed of or lose value during the pendency of the appeal. Additionally, there may another round of restructuring that would place any recoverable amounts outside the jurisdiction of the Court or the reach of the parties that already have appeared.

Even if the Court were to determine that deferring a decision on the Rule 60(b) motion is warranted, the Court should allow discovery and hold a hearing with live testimony in the near term to secure relevant evidence lest it be spoiled and live witness testimony lest memories fade and witnesses become unavailable.

Respectfully submitted,

Geoffrey S. Harper

WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

**PACHULSKI STANG ZIEHL & JONES**

1700 BROADWAY, 36TH FLOOR
NEW YORK, NY 10019

**VIA ECF**

April 25, 2026

The Honorable Brad W. Odell
United States Bankruptcy Court, Northern District of Texas
George Mahon Federal Building
1205 Texas Avenue
Lubbock, Texas 79401-4002

Re: *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (N.D. Tex.)

On behalf of Highland Capital Management, L.P. ("HCMLP"), we respond to The Dugaboy Investment Trust's ("Dugaboy") letter dated April 24, 2026 (the "Letter"; Dkt. No. 4563), which misstates both the facts and the law and directly contradicts its statements to this Court during yesterday's hearing (the "Hearing").

***First***, this Court "lacks authority to grant" Dugaboy's motion "because an appeal has been docketed and is pending." Fed. R. Civ. P. 62.1(a). Dugaboy's assertion during the Hearing that it can simply ask the District Court to return to this case is therefore wrong as a matter of law. Rather, under Rule 62.1(a), "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id.* As HCMLP explained in detail in its opposition to Dugaboy's Rule 60(b) motion ("Opposition"; Dkt. No. 4535 at 46–49), this Court should take this opportunity to deny Dugaboy's meritless motion, which risks needlessly delaying the closing of this six-and-one-half-year-old case. *See Greon v. Holding Cap. Grp., Inc. (In re PBS Foods, LLC)*, 549 B.R. 586, 598–606 (Bankr. S.D.N.Y. 2016) (denying Rule 60(b) motion in similar circumstances).

***Second***, Dugaboy provides no basis whatsoever to belatedly request "an indicative ruling" that this Court "would either grant the motion or that the motion presents a substantial issue." (Letter at 1.) As HCMLP explained at length in both its Opposition and in briefing in support of its motion for a protective order (Dkt. Nos. 4533, 4556), Dugaboy has not identified any "newly discovered evidence" or relevant "fraud" by an "opposing party" that would justify relief under Rule 60(b) (Fed. R. Civ. P. 60(b)(2)-(3)), nor could Dugaboy do so during yesterday's Hearing. Standing alone, Dugaboy's continued inability to specifically identify such evidence proves its Rule 60(b) motion is meritless.

***Finally***, Dugaboy's assertions that assets "may be disposed of or lose value" or "there may [be] another round of restructuring" (Letter at 1) are pure speculation with no factual support. In fact, Dugaboy knows (and once again fails to disclose) that another restructuring will not happen based on consensual agreements and confirming orders in place in the Texas Business Court litigation and the Cayman Proceeding, which are the proper places for these "intercreditor/equity holder" disputes to be adjudicated.

Accordingly, this Court should enter a protective order against Dugaboy's discovery requests and deny Dugaboy's Rule 60(b) motion.

Respectfully submitted,

*/s/ John A. Morris*

John A. Morris
Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
1700 Broadway, 36th Floor
New York, NY 10019
(212) 561-7700
jmorris@pszjlaw.com
jpomerantz@pszjlaw.com

Mark T. Stancil
Joshua S. Levy
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

Zachery Z. Annable
Texas Bar No. 24053075
Hayward PLLC
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

King & Spalding

King & Spalding LLP
2601 Olive Street
Suite 2300
Dallas, TX 75201
T: +1 214 764-4600
F: +1 214 764-4601
kslaw.com

**Geoffrey S. Harper**
*Partner*

T: +1 214 453-6476
gharper@kslaw.com

April 27, 2026

The Honorable Brad Odell
United States Bankruptcy Court, Northern District of Texas
Earle Cabell Federal Building
1100 Commerce St., Rm. 1254
Dallas, TX 75242-1496

**Re: In re: Highland Capital Management, L.P., Case No. 19-34054-sgj11**

Dear Judge Odell:

Movant The Dugaboy Investment Trust hereby provides notice of supplemental intervening authority that has come to light since the oral argument before this Court on April 24, 2026. In a decision dated April 22, 2026 (included as Attachment 1), the Court of Appeal of the Cayman Islands partially reversed the Grand Court of the Cayman Islands with respect to remedies appropriate for Mark Patrick's alleged misconduct.

A significant feature of the motion for a protective order filed in this Court by Highland and joined by the Patrick-associated entities was that the Cayman Island Grand Court had (i) declined to enter an additional preliminary injunction against Patrick further dissipating or moving assets and funds and (ii) permitted a prior injunction on the same subject to expire. Dkt. 4533 at 15–16. Highland and Patrick asserted that this showed that the allegations of Patrick's misconduct had no merit and that no one should be allowed to ask any further questions about it. *Id.*; Dkt. 4555 at 10. As it turns out, Highland and Patrick misrepresented even the lower court ruling. The lower court did decline to impose an additional preliminary injunction, in part because the Texas Business Court had a remedy in place providing similar protection. But it also held that the allegations of Patrick's misconduct presented serious issues that should proceed to trial. *See Charitable DAF HoldCo, Ltd. (In Official Liquidation) v. Patrick*, No. FSD 201 of 2025 (RPJ), 2026 CIGC (FSD) 9, at ¶¶ 253, 255 (Grand Ct. Cayman Is. Feb. 10, 2026).

In any event, the Cayman Island Court of Appeal reversed the second portion of the Grand Court's remedial ruling in the attached decision. In reinstating the prior injunction, the Court of Appeal held that a preliminary injunction is necessary based on the facts presented of Patrick's wrongdoing and barred Patrick from moving or disposing of assets with limited exceptions. *See* Attachment 1 at 2–4. This undermines any arguments Highland and Patrick have made about the effect of the limited lower court ruling in the Cayman Islands.

Neither the Dugaboy Investment Trust nor its counsel were aware of this new ruling during the oral argument before this Court. The ruling is not published on the Cayman Appellate Court's website. And Dugaboy is not a party to the Cayman proceedings. Importantly, however, Patrick *is a party to the Cayman proceedings*. And Patrick was undoubtedly aware of this appellate reversal before the April 24, 2026, oral argument, as it was entered in final form two days prior.

For these additional reasons, the Court should deny Highland's motion for protective order and grant Dugaboy's Rule 60(b) motion.

Respectfully submitted,



Geoffrey S. Harper

# Attachment 1

**OF APPEAL OF THE CAYMAN ISLANDS**

**CAUSE NO CICA 003 OF 2026**

**ON APPEAL FROM CAUSE NO FSD 201 OF 2025 (RPJ)**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

<u>Plaintiff / Appellant</u>

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

<u>Defendants / Respondents</u>

---

**CERTIFICATE OF THE ORDER OF THE COURT OF APPEAL**

---

**UPON** the Appellant's summons filed on 3 March 2026 (the "**Interim Summons**") seeking interim relief pending the determination of the Appellant's appeal against the order of Justice Raj Parker consequent on the judgment of 10 February 2026 as commenced by the Appellant's Notice of Appeal dated 24 February 2026 (the "**Appeal**")

**AND UPON** reading the First Affidavit of Margot MacInnis dated 3 March 2026, the First Affidavit of Mark Patrick dated 24 March 2026, and the First Affidavit of Paul Murphy dated 24 March 2026 and the other affidavits, exhibits and documents and materials in the bundles put before the Court and referred to as having been read or considered

**AND UPON** reading the written submissions filed on behalf of the Appellant and the Respondents on 18 March 2026

**AND UPON** the Court refusing the Appellant's request to determine the Interim Summons on the papers

**AND UPON** hearing Caroline Moran for the Appellant, Andrew Scott KC for the First, Third, Fifth and Sixth Respondents, David Quest KC for the Second Respondent, and Fleur O'Driscoll for the Fourth Respondent on 27 March 2026 by remote hearing before The Rt Hon Sir John Goldring, President; The Hon Sir Richard Field, Justice of Appeal; and The Rt Hon Sir Jack Beatson, Justice of Appeal

**AND UPON** a decision being given on 31 March 2026 by remote hearing with reasons to follow

**I HEREBY CERTIFY** that an order was made on 31 March 2026 as follows:

1 From the date of this Order to the date of the determination of the Appeal, but subject to paragraphs 2 and 3, the Respondents and the related entities listed in Schedule 1 hereto (the "**Fund Entities**"), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities

unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities;

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

2 Further, and to the extent not addressed by the foregoing, the Respondents and the Fund Entities shall:

2.1 preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the Fund Entities and/or any assets of the Fund other than in the ordinary course of business; and

2.2 not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 The following clarifications and exceptions apply to paragraphs 1 and 2 above:

3.1 payments in an aggregate amount not exceeding US$200,000 per calendar month made to, and then by, the Fourth Respondent to or for the benefit of any charitable organisations or charitable purposes will be permitted for the purpose of paragraphs 1.1 and 2.1 above and therefore not a breach of this Order;

3.2 paragraphs 1 and 2 above shall only apply to the Second Respondent in respect of his position as a director of the Third, Fifth and Sixth Respondents (identified as Fund Entities at paragraphs (ii), (i), and (vi) of Schedule 1, namely: CDH GP Ltd; CDMCFAD, LLC; CLO HoldCo, Ltd.) and those Fund Entities identified at paragraphs (viii) and (xv) of Schedule 1, namely: MGM Studios HoldCo, Ltd.; and CLO HoldCo LLC;

3.3 nothing in paragraphs 1 or 2 above shall apply to, restrict or otherwise affect any funds received by way of remuneration by the Second Respondent in his capacity as a director of the Appellant and/or the Fund Entities, whether received before or after the date of this Order, or his right to use, deal with, or dispose of any such funds; and

3.4 for the avoidance of doubt, compliance with the terms of this Order by the Fund Entities shall not of itself constitute or be deemed to constitute evidence of the insolvency or bankruptcy of any of the Fund Entities.

4 Paragraphs 2, 3, 4 and 5 of the Interim Summons are dismissed.

5 The costs of the Interim Summons shall be costs in the Appeal.

6 The parties shall have liberty to apply.

Given under my hand and the Seal of the Court this 22 day of April 2026

______________________________

Registrar of the Court of Appeal

**Schedule 1**

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

(xxiii) Hunter Mountain Investment Trust

(xxiv) Rand PE Fund Management, LLC

(xxv) Atlas IDF GP, LLC

(xxvi) CDHC Apache Trail, LLC

(xxvii) 41915 Leaseco, LLC

WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

**PACHULSKI STANG ZIEHL & JONES**

1700 BROADWAY, 36TH FLOOR
NEW YORK, NY 10019

**VIA ECF**

April 28, 2026

The Honorable Brad W. Odell
United States Bankruptcy Court, Northern District of Texas
George Mahon Federal Building
1205 Texas Avenue
Lubbock, Texas 79401-4002

Re: *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (N.D. Tex.)

On behalf of Highland Capital Management, L.P. ("HCMLP"), we respond to The Dugaboy Investment Trust's ("Dugaboy") letter dated April 27, 2026 (the "Letter"; Dkt. No. 4567), which once again wildly mischaracterizes (1) the April 22, 2026 Order of the Cayman Islands Court of Appeal (the "Cayman Status Quo Order"; Letter Attach. 1); (2) the February 10, 2026 decision of the Cayman Islands Grand Court (the "Cayman Grand Court Decision"; Dkt. No. 4534-4); (3) HCMLP's briefing (Dkt. Nos. 4533, 4535, 4555); and (4) Dugaboy's knowledge of the Cayman Status Quo Order.

***First***, the Cayman Status Quo Order did ***not*** "reverse[]" ***any*** "portion of the Grand Court's remedial ruling." (Letter at 1.) The Grand Court denied the Joint Official Liquidators' (the "JOLs") request for a sweeping "proprietary injunction" based on alleged fraud and excessive compensation. (Cayman Grand Court Decision ¶¶ 130–31, 202–06.). The JOLs' appeal of that decision remains pending, and the JOLs sought an interim injunction pending appeal. (Ex. 1 (Interim Relief Summons).) The JOLs admitted to the Court of Appeal that they "didn't ask for an order" of interim relief from the Grand Court pending appeal.[1] Thus, the Court of Appeal did not consider the merits of the Grand Court's Decision at all, let alone reverse it.

Specifically, the JOLs asked the Court of Appeal to essentially adopt the voluntary Rule 11 agreement from "the Texas Business Court," which already "had a remedy in place" protecting the DAF Entities' assets, pending appeal in the Cayman Proceeding. (Letter at 1; Ex. 1 (Interim Relief Summons).) The Rule 11 agreement permits the DAF entities to continue to operate in the ordinary course of business under Mark Patrick's control and has been in place since July 11, 2025. The JOLs expressed "concern" that the Rule 11 Agreement is tied to the Texas proceeding and stands or falls "depending on what

[1] HCMLP can provide a full copy of the transcript of the Court of Appeal proceeding to this Court upon request.

happens in that jurisdiction" so they requested an order in the Cayman Islands proceeding. The Court of Appeal described the Cayman Status Quo Order as "belt and braces" of the Rule 11 agreement. HCMLP fully disclosed the Rule 11 agreement to this Court and filed it as an exhibit. (Dkt. No. 4535 at 15, 17 & Ex. F.) Of course, the new Cayman Status Quo Order is long past July 28, 2025.

Contrary to Dugaboy's assertions, the Cayman Status Quo Order did ***not*** hold that "a preliminary injunction is necessary based on the facts presented of [Mark] Patrick's wrongdoing." (Letter at 1.) The order does not even mention Patrick's conduct, and the JOLs represented at the hearing that they were ***not*** addressing the merits of their appeal. Dugaboy also ignores that the Court of Appeal specifically rejected the JOLs' requests for additional relief, including extensive disclosure and reporting obligations. (Ex. 1 (Interim Relief Summons) ¶¶ 3–5.)

***Second***, Dugaboy continues to misstate the holdings of the Cayman Grand Court Decision, which effectively dismissed the claims of fraud and held that only the allegations that Patrick ***breached his fiduciary duties*** "present serious issues that should proceed to trial." (Letter at 1; Cayman Grand Court Decision ¶¶ 130–31, 202–06, 253–55.)

***Third***, Dugaboy mischaracterizes HCMLP's briefing, which did ***not*** say that the Cayman Grand Court Decision "showed that the allegations of Patrick's misconduct had no merit and that no one should be allowed to ask any further questions about it." (Letter at 1.) HCMLP in fact argued—and Dugaboy agreed—that Dugaboy needed to make a "*prima facie* showing of fraud" on this Court to obtain discovery. (Dkt. No. 4533 at 19–21; Dkt No. 4551 at 16; Dkt. No. 4555 at 8–11.) Dugaboy has not and cannot do so. The Cayman Grand Court Decision effectively dismissing Dugaboy's unrelated fraud theories is just one more reason to deny the Rule 60(b) Motion.

***Finally***, Dugaboy's assertion that it was not "aware of this new ruling during the oral argument before this Court" (Letter at 2) is false. It is undisputed that Jim Dondero controls both Dugaboy and the Dondero Foundations, and the Dondero Foundations' counsel was on the call for the Cayman Status Quo Order hearing. The Dondero Foundations were therefore aware of the Court of Appeal proceeding, so Dugaboy was aware through Dondero.

At bottom, this is an "intercreditor/equity holder" dispute among the DAF Entities and their beneficiaries, and "all the parties were agreed Cayman Islands was the correct jurisdictional forum to resolve this dispute." Thus, the Cayman Status Quo Order provides no basis for this Court to revisit its ruling granting in part HCMLP's motion for a protective order, but instead once again provides additional support as to why this Court should deny Dugaboy's Rule 60(b) Motion.

Respectfully submitted,

*/s/ John A. Morris*

John A. Morris
Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
1700 Broadway, 36th Floor
New York, NY 10019
(212) 561-7700
jmorris@pszjlaw.com
jpomerantz@pszjlaw.com

Mark T. Stancil
Joshua S. Levy
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

Zachery Z. Annable
Texas Bar No. 24053075
Hayward PLLC
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**EXHIBIT 1**

**IN THE CAYMAN ISLANDS COURT OF APPEAL**

**ON APPEAL FROM THE GRAND COURT OF THE CAYMAN ISLANDS**

**CICA CIVIL APPEAL NO. 3 OF 2026**

**CAUSE NO. FSD 201 OF 2025 (RPJ)**

**IN THE MATTER OF RULE 24(1) OF THE COURT OF APPEAL RULES (2014 REVISION)**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

Plaintiff / Appellant

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

Defendants / Respondents

---

**SUMMONS**

---

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

**LET ALL PARTIES CONCERNED** attend before the Court of Appeal on the day of 2026 at am / pm upon an application by the Plaintiff pursuant to Rule 24(1)(b) of the Court of Appeal Rules (As Revised) for orders and directions that pending the determination of the appeal of the judgment of the amended summons dated 4 December 2025 filed by the Appellant in Charitable DAF HoldCo, Ltd (in Official Liquidation) v Mark Eric Patrick & Ors (FSD 201 of 2025 (RPJ)) (the "**Appeal**"):

1 The Respondents and the related entities listed in the Schedule hereto (the "**Fund Entities**"), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities; and

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

2 Further, and to the extent not addressed by the foregoing, the Respondents and the Fund Entities shall:

2.1 preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the Fund Entities and/or any assets of the Fund other than in the ordinary course of business; and

2.2 not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 The Third, Fourth, Fifth and Sixth Respondents (the "**CDM Respondents**") and the Fund Entities shall give seven days' written notice to the Appellant of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

4 If the Appellant has any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Respondents or the Fund Entities' business, the CDM Respondents and the Fund Entities shall consult with the JOLs and provide clarification. For the avoidance of doubt, nothing in this Order shall prohibit the Respondents and the Fund Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with these proceedings, the proceedings under FSD 201 of 2025 (RPJ), or the official liquidation of Charitable DAF HoldCo, Ltd (in Official Liquidation) FSD 116 of 2025 (JAJ), or the Chapter 15 proceedings, *In re Charitable DAF Holdco, Ltd (In Official Liquidation)*, United States Bankruptcy Court for the District of Delaware, Case No. 25-11376 (BLS). All

such transactions will be provided for in the monthly transactions report pursuant to paragraph 5 of this Order.

5 The CDM Respondents and the Fund Entities shall disclose to the Appellant, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the Respondents or the Fund Entities for the period 31 December 2025 onwards. Any information of whatever nature relating to any member of the CDM Respondents or the Fund Entities which is provided to the Appellant pursuant to this paragraph 5, shall not be disclosed to or shared with Mr James Dondero, the Supporting Organisations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals / entities, subject to where the Appellant's joint official liquidators are required to disclose any such information in the discharge of their duties to the Court or as otherwise required by law.

DATED this 3rd day of March 2026

Maples and Calder (Cayman) LLP

---

**Maples and Calder (Cayman) LLP**
Attorneys for the Appellant

TO: The Registrar of the Court of Appeal

AND TO: (1) Campbells, Attorneys for the First, Third, Fifth and Sixth Respondents
(2) Kobre & Kim, Attorneys for the Second Respondent
(3) Baker & Partners, Attorneys for the Fourth Respondent

TIME ESTIMATE: The Appellant respectfully submits that the summons is fit to be determined on the papers.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

**Schedule**

List of Fund Entities

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

(xxiii) Hunter Mountain Investment Trust

(xxiv) Rand PE Fund Management, LLC

(xxv) Atlas IDF GP, LLC

(xxvi) CDHC Apache Trail, LLC

(xxvii) 41915 Leaseco, LLC

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**OPPOSED MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING ON THE DUGABOY INVESTMENT TRUST'S MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

The Dugaboy Investment Trust ("Dugaboy") respectfully moves the Court, pursuant to Rule 9006(b)(1)(A) of the Federal Rules of Bankruptcy Procedure, for an enlargement of time with respect to the pre-hearing deadlines and the hearing on Dugaboy's Motion for Relief from Order and Motion to Vacate (the "Rule 60(b) Motion"), as set forth below.

The Court's current schedule sets document production for Friday, May 1, 2026, depositions to be completed by Friday, May 8, 2026, and the hearing on the Rule 60(b) Motion for Monday, May 11, 2026. *See* Dkt. 4566. In conferring on deposition scheduling, counsel for

Highland Capital Management L.P. ("Highland") advised that he will unavailable during the afternoon of May 5, 2026, and all day on May 6 and 7, 2026 due to a mediation in an unrelated matter. A copy of the relevant correspondence is attached hereto as **Exhibit A**. The earlier alternative dates proposed by Highland counsel fall either before the May 1 document production deadline or so shortly thereafter (including over the weekend) that the parties would not have a meaningful opportunity to review the produced documents in advance of taking testimony. Regardless of the availability of Highland's counsel, the interval between document production and the close of depositions is very tight.

Good cause exists to modify the schedule. The interval between the May 1 document production deadline and the May 8 deposition cutoff is only seven calendar days, and once Highland counsel's unavailability during the afternoon of May 5 and all day on May 6 and 7 is taken into account, the parties effectively have less than two business days in which to review the production before taking meaningful depositions. That window does not afford the parties an adequate opportunity to review the production in advance of depositions, and proceeding with depositions before that review can be completed would not produce a useful record. The requested continuance is not sought for purposes of delay. And counsel for Dugaboy at the April 24 hearing on Highland's motion for a protective order alerted the Court of the possibility that extending the hearing and deposition dates might be necessary to accommodate review of produced documents, in response to the Court's question on the subject.

Counsel for Highland and counsel for the HMIT Entities are opposed to the relief requested in this Motion. Dugaboy counsel also attempted to contact counsel for Mark Patrick, but did not receive a response by the time of this filing.

For these reasons, Dugaboy respectfully requests that the Court enter an order: (i)

continuing the hearing on the Rule 60(b) Motion to a date convenient for the Court that is at least two weeks later than the current setting of May 11, 2026 (*i.e.*, no earlier than May 25, 2026); (ii) requiring all depositions to be completed not later than one week prior to the rescheduled hearing date; (iii) requiring the parties to file witness and exhibit lists, and to exchange exhibits, not later than one week prior to the rescheduled hearing date; (iv) requiring Dugaboy's reply brief in support of the Rule 60(b) Motion to be filed not later than the three business days preceding the rescheduled hearing; and (v) granting such other and further relief as the Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Bankruptcy Rule 7007-1(b), the undersigned certifies that on April 28, 2026, counsel for Dugaboy conferred by email with John Morris, counsel for Highland, and Louis Phillips, counsel for the HMIT Entities, and was informed that they oppose the relief requested in this Motion. Dugaboy counsel also emailed Sawnie McEntire, counsel for Mark Patrick, but did not receive a response by the time of this filing.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 28, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

# EXHIBIT A

**Sydney Rose**

---

| | |
|---|---|
| **From:** | John A. Morris <jmorris@pszjlaw.com> |
| **Sent:** | Monday, April 27, 2026 5:17 PM |
| **To:** | Mike Gaddis |
| **Cc:** | jpomerantz; zannable; Mark T. Stancil (mstancil@willkie.com); Levy, Joshua S.; Louis M. Phillips; Amelia L. Hurt; Geoffrey Harper; Sydney Rose |
| **Subject:** | FW: Highland: Meet and Confer on Deposition Dates |
| **Attachments:** | 176052068388.pdf |

CAUTION: **MAIL FROM OUTSIDE THE FIRM**

+ Mike's KS address and Sydney

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** John A. Morris
**Sent:** Monday, April 27, 2026 6:13 PM
**To:** Gaddis, Mike <mgaddis@winston.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Louis M. Phillips <louis.phillips@kellyhart.com>; Amelia L. Hurt <amelia.hurt@kellyhart.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** Highland: Meet and Confer on Deposition Dates

Mike,

In accordance with the attached order, Highland reiterates its prior request to take the depositions of James and Nancy Dondero.

As I told you several weeks ago, I am unavailable on the afternoon of May 5 and all day on May 6 and 7 as I will be in a mediation out of town.

I am available to take the Donderos' depositions on any of April 29 (provided you confirm today) or 30 or May 1, 2, 3, 4, 5 (for Nancy, beginning at 8:30 am Central Time), or 8.

We will make Mr. Seery available on any of the same days.

Please let me know what dates Dugaboy will make the Donderos available and the date you want to depose Mr. Seery.

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**[PROPOSED] ORDER GRANTING DUGABOY'S MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING PURSUANT TO THE DUGABOY INVESTMENT TRUST'S MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Upon the Motion of The Dugaboy Investment Trust ("Dugaboy") to Continue Discovery Deadlines (the "Motion") related to Dugaboy's Motion for Relief from Order and Motion to Vacate (the "Rule 60(b) Motion"), brought pursuant to Rule 9006(b)(1)(A) of the Federal Rules of Bankruptcy Procedure, and good cause appearing, it is ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The hearing on the Rule 60(b) Motion currently set for May 11, 2026, is continued to May 25, 2026, or such later date as is convenient for the Court, but in no event earlier than May 25, 2026.

3. All depositions shall be completed not later than one week before the rescheduled hearing date.

4. The parties shall file and serve witness and exhibit lists, and exchange exhibits, not later than one week before the rescheduled hearing date.

5. Dugaboy's reply brief in support of the Rule 60(b) Motion shall be filed not later than the three business days preceding the rescheduled hearing.

# # # END OF ORDER # #

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

The Dugaboy Investment Trust ("Dugaboy") respectfully moves the Court to modify the relevant time period requested for discovery related to Dugaboy's Motion for Relief from Order and Motion to Vacate (the "Rule 60(b) Motion"), as set forth below.

On April 27, 2026, the Court entered its *Order on Motion for Protective Order and Motion to Quash* [Dkt. No. 4566], which ordered Highland Capital, CLO Holdco, Ltd., Shields Legal Group, P.C., Kelly Hart & Hallman LP, Kelly Hart & Pitre, HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, and ValueScope, LLC to produce documents responsive to Dugaboy's discovery requests with a relevant time frame defined by the period from

May 19, 2025, through February 8, 2026. However, the Court also narrowed the scope of document discovery to two issues: (1) Mark Patrick's authority to sign the *Settlement Agreement & General Release* [Dkt. No. 4217-1] on behalf of the HMIT Entities; and (2) the restructuring and transactions related to the various charitable entities.

In light of this narrowed focus, Dugaboy submits that a more promising time frame for finding responsive documents relating to these two issues is likely to be in the months leading up to the June 2025 settlement rather than the period after it. For this reason, Dugaboy respectfully asks the Court to modify the relevant time frame for responsive discovery to the period starting on October 1, 2024 and ending on June 30, 2025. Dugaboy could not have specified this time frame prior to the Court's April 27, 2026 Order because it did not know on which of its proposed topics the Court would allow discovery to proceed. Because the proposed modified time frame does not cover a greater span of time than the one contemplated in the existing order, such modification will not widen the scope of discovery or increase the burden on the producing parties.

Counsel for Highland and counsel for the HMIT Entities oppose the relief requested in this Motion. Dugaboy's counsel attempted to contact counsel for Mark Patrick but did not receive a response by the time of this filing.

For these reasons, Dugaboy respectfully requests that the Court enter an order: (i) modifying the relevant time frame for discovery to a period starting on October 1, 2024 and ending on June 30, 2025; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Bankruptcy Rule 7007-1(b), the undersigned certifies that on April 28, 2026, counsel for Dugaboy conferred by email with John Morris, counsel for Highland, and Louis Phillips, counsel for the HMIT Entities, and was informed that they oppose the relief requested in this Motion. On the same day, counsel for Dugaboy emailed Sawnie McEntire, counsel for Mark Patrick, but did not receive a response by the time of this filing.

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 28, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**[PROPOSED] ORDER GRANTING DUGABOY'S MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

Upon the Motion of The Dugaboy Investment Trust ("Dugaboy") to modify the relevant time period requested for discovery related to Dugaboy's Motion for Relief from Order and Motion to Vacate (the "Rule 60(b) Motion"), and good cause appearing, it is ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The relevant time frame for document discovery as set forth in the Court's April 27,

2026 Order (Dkt. 4566) is hereby modified to a period starting on October 1, 2024 and ending on June 30, 2025.

# # # END OF ORDER # #

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S UNOPPOSED MOTION FOR EXPEDITED HEARING ON THE (I) MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING, AND**
**(II) MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

The Dugaboy Investment Trust (the "Movant") hereby moves for entry of an order granting an expedited hearing on Movant's (i) *Motion to Continue Discovery Deadlines and Hearing on the Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* (the "Motion to Continue") [filed contemporaneously herewith]; and (ii) *Motion to Modify Relevant Time Period for Discovery* (the "Motion to Modify" [filed contemporaneously herewith], and together with the Motion to Continue, the "Underlying Motions"), and in support thereof respectfully states as

follows:

1. The Underlying Motions seek (i) a continuance of discovery deadlines and the hearing on Dugaboy's Rule 60(b) Motion due to scheduling conflicts and insufficient time to review document production before depositions, and (ii) modification of the relevant time period for discovery from the currently ordered period of May 19, 2025 through February 8, 2026, to a period starting on October 1, 2024 and ending on June 30, 2025.
2. Good cause exists to expedite consideration of the Underlying Motions because the Motion to Continue relates to a proposed scheduling order that seeks to change various deadlines, and some of the existing deadlines will pass before that motion could be heard on a regular schedule. Additionally, the Motion to Modify is a related motion that must be heard before document production may commence because it alters the relevant time frame for identifying responsive documents.
3. Expedited consideration will promote efficiency and avoid unnecessary prejudice to the parties and the estate.
4. Counsel for Highland and for the HMIT Entities do not oppose consideration of the Underlying Motions on an expedited basis. To the contrary, counsel for Highland "demands that any motion be filed today on an emergency basis with a request for a teleconference tomorrow or as soon as counsel can be heard." Dugaboy counsel also attempted to confer with counsel for Mark Patrick but did not receive a response by the time of this filing.
5. For these reasons, Movant respectfully requests that the Court set the Underlying Motions for hearing on an expedited basis at the Court's earliest availability.

WHEREFORE, Movant respectfully requests that the Court enter an order granting this Motion

and setting the Underlying Motions for expedited hearing, and granting such other and further relief as the Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted,

/s/ Geoffrey S. Harper
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Bankruptcy Rule 7007-1(b), the undersigned certifies that on April 28, 2026, counsel for Dugaboy conferred by email with John Morris, counsel for Highland, and Louis Phillips, counsel for the HMIT Entities, and was informed that they do not oppose consideration of the Underlying Motions on an expedited basis. To the contrary, Mr. Morris "demands that any motion be filed today on an emergency basis with a request for a teleconference tomorrow or as soon as counsel can be heard." On the same day, counsel for Dugaboy emailed Sawnie McEntire, counsel for Mark Patrick, but did not receive a response by the time of this filing.

/s/ Geoffrey S. Harper
Geoffrey S. Harper

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 28, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*<u>/s/ Geoffrey S. Harper</u>*
Geoffrey S. Harper

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**[PROPOSED] ORDER GRANTING THE DUGABOY INVESTMENT TRUST'S MOTION FOR EXPEDITED HEARING ON THE (I) MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING, AND (II) MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

On this date the Court considered the motion of the Dugaboy Investment Trust (the "Movant") for an expedited hearing on Movant's (i) *Motion to Continue Discovery Deadlines and Hearing on the Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* (the "Motion to Continue") [Dkt. No. 4569]; and (ii) *Motion to Modify Relevant Time Period for*

*Discovery* (the "Motion to Modify" [Dkt. No. 4570], and together with the Motion to Continue, the "Underlying Motions"). The Court finds that good cause exists for the relief requested.

IT IS THEREFORE ORDERED that the Motion is GRANTED. IT IS FURTHER ORDERED that the Court shall conduct a hearing on the Underlying Motions on _____________________ at ______ _.m. (Central Time), or at such other time as the Court may determine.

# # # END OF ORDER # #

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S OPPOSITION TO THE DUGABOY INVESTMENT TRUST'S (1) MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING, AND (2) MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

Pursuant to Federal Rules of Civil Procedure 16 and 26, as made applicable in bankruptcy cases by the Federal Rules of Bankruptcy Procedure 7016 and 7026, and this Court's April 27, 2026 Order granting in part Highland Capital Management, L.P.'s ("HCMLP") Motion for Protective Order Against The Dugaboy Investment Trust's ("Dugaboy") Discovery Requests (the "Order"; Dkt. No. 4566), HCMLP opposes all relief sought in Dugaboy's Motion To Continue Discovery Deadlines And Hearing (the "Motion To Continue" or "MTC"; Dkt. No. 4569) and Dugaboy's Motion To Modify Relevant Time Period For Discovery (the "Motion To Modify" or "MTM" and together with the MTC, the "Disruptor Motions"); Dkt. No. 4570), and states as follows:[2]

1. Dugaboy's Disruptor Motions are its latest efforts to improperly disrupt and delay litigation of its own Rule 60 Motion, undermine the finality of judgments, and seek discovery for use in unrelated proceedings. Dugaboy's Disruptor Motions should be denied; the Court should adhere to the Order it entered on Monday.

2. On June 30, 2025, after an all-day evidentiary hearing, this Court entered a judgment approving the settlement between the Highland Entities and the HMIT Entities pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §363 (the "9019 Settlement"; Dkt. No. 4297).[3] On February 9, 2026, more than seven months later, Dugaboy moved to vacate that judgment pursuant to Federal Rule of Civil Procedure 60(b) (the "Rule 60(b) Motion"; Dkt. No. 4513). This Motion was extended multiple times and ultimately set for a hearing on May 11, 2026. (Dkt. No. 4528, 4546.) On April 27, 2026, after full briefing and nearly three hours of argument, this Court entered

[2] Unless otherwise indicated, all emphasis is added and all alterations, citations, and quotations are omitted.

[3] For purposes of the 9019 Settlement, the "Highland Entities" were collectively comprised of (i) HCMLP, (ii) the Highland Claimant Trust, (iii) the Highland Litigation Sub-Trust, and (iv) the Highland Indemnity Trust; the "HMIT Entities" were collectively comprised of (i) Hunter Mountain Investment Trust, (ii) Beacon Mountain LLC, (iii) Rand Advisors, LLC, (iv) Rand PE Fund I, LP, (v) Rand PE Fund Management, LLC, (vi) Atlas IDF, LP, and (vii) Atlas IDF GP, LLC.

the Order permitting Dugaboy to take "limited discovery in connection with the Rule 60(b) Motion," and setting a schedule that ensured that the Rule 60(b) Motion would be fully litigated on May 11. (Order at 2, 5.) While HCMLP respectfully disagrees that Dugaboy should be permitted to take any offensive discovery in the hopes of finding "newly discovered evidence" for its meritless Rule 60(b) Motion, Dugaboy fails to demonstrate "good cause" to modify this Court's Order. Fed. R. Civ. P. 16(b)(4), 26(b)(2)(B), 26(c)(1).

3. As to the Motion To Continue, the 9019 Settlement has been final for nearly 10 months and has been fully consummated (but for conditional, future obligations) but has been subject to challenge for nearly three months by Dugaboy's Rule 60(b) Motion. Indeed, Dugaboy waited until March 23, 2026, six weeks after its Motion, to even begin the discovery process. (Dkt. No. 4534-1.) The parties negotiated and agreed to the May 11, 2026 hearing date (*see* Dkt. No. 4526.), and Dugaboy's Motion To Continue will serve only to delay further the final resolution of Dugaboy's Rule 60(b) Motion.

4. Dugaboy complains that "the interval between document production" on May 1, 2026, and "the close of depositions" on May 8, 2026 that this Court set in its Order "is very tight." (MTC at 1–2.) Dugaboy's argument, in essence, is that it dislikes this Court's Order and it wishes that this Court set a more leisurely schedule in its Order. But Court Orders are not optional, and Dugaboy's complaints do not come close to satisfying the "good cause" standard required to modify a Court-ordered schedule. Fed. R. Civ. P. 16(b)(4).

5. Dugaboy next tries to blame HCMLP's lead trial counsel because he will be "unavailable during the afternoon of May 5, 2026, and all day on May 6, and 7, 2026 due to a mediation in an unrelated matter," which Dugaboy claims will affect "deposition scheduling." (MTC at 1–2.) This excuse is nonsense. For starters, subject to the Court's decision on HCMLP's

motion for a protective order, Dugaboy was told on April 8 of the limitations on counsel's schedule and asked at that time to schedule the Donderos' depositions between May 1 and May 4. (Ex. 1 (Apr. 8, 2026 email from J. Morris to M. Gaddis).) Dugaboy ignored the request and has *never* proposed dates for the Donderos' depositions (or for any other deposition, for that matter)—even after HCLMP's counsel offered multiple additional dates for depositions immediately after entry of the Court's Order. (MTC Ex. A.) Scheduling depositions should not be this hard. To accommodate Dugaboy's position that document production be completed before depositions take place, HCMLP asks the Court to order the depositions as follows: (a) Nancy Dondero, Tuesday May 5; (b) James P. Seery, Jr., Wednesday, May 6; (c) Mark Patrick, Thursday, May 7; and (d) James Dondero, Friday, May 8, all beginning at 9:00 am Central Time.[4] Counsel to HCMLP other than Mr. Morris can defend Mr. Seery and attend the deposition of Mr. Patrick. Manufactured problem solved.

6. As to the Motion To Modify, Dugaboy does not even try to show "good cause" to modify the detailed time periods this Court set for document discovery in its Order. Fed. R. Civ. P. 26(b)(2)(B), 26(c)(1). Dugaboy's vague assertion that October 1, 2024 to June 30, 2025 is "a more promising time frame for finding responsive documents" than May 19, 2025 to February 8, 2026 (MTM at 2) only highlights further the improper nature of this whole exercise. Dugaboy and the Dallas Foundation had the right under Bankruptcy Rule 9014 to take all the discovery it wanted concerning Patrick's authority to bind the HMIT Entities and the restructuring of the DAF in connection with the 9019 Motion litigated nearly a year ago—and they did so without objection or complaint.[5] By definition, then, any documents or information that existed as of June 25, 2025,

[4] Dugaboy's Disruptor Motions do not assert that James and Nancy Dondero are unavailable to be deposed on or before May 8; notably, all depositions will be remote.

[5] *See* Dkt No. 4535 ¶¶ 14-17.

could have been obtained with "reasonable diligence" as part of that discovery process. Considering that, it would be highly improper to permit Dugaboy to effectively convert its Rule 60(b) Motion into a "do over" of the 9019 settlement litigation, but that is exactly what Dugaboy seeks to do. Moreover, Dugbaoy's assertion highlights yet again that it lacks any evidence to support its Rule 60(b) Motion; otherwise, discovery would be unnecessary. There is simply no basis under the circumstances to permit Dugaboy to go fishing in waters it has already trolled (*i.e.*, to obtain discovery on any matters occurring before June 25, 2025 since it already had that opportunity).

WHEREFORE, HCMLP respectfully requests that this Court deny Dugaboy's Motion To Continue and Motion To Modify in their entirety.

[*Remainder of Page Intentionally Blank*]

Dated: April 29, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**EXHIBIT 1**

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, April 8, 2026 7:54 AM
**To:** Gaddis, Mike
**Cc:** Jeff Pomerantz; Jordan A. Kroop; Zachery Annable; Geoffrey Harper; 'Louis M. Phillips'; Amelia L. Hurt; Mark T. Stancil (mstancil@willkie.com); Levy, Joshua S.
**Subject:** Highland: Scheduling Order (PSZJ comments)
**Attachments:** Proposed Order for Agreed Joint Motion to Amend and Set Deadlines and Hearing Dates-4915-8918-0317-v4.docx; Litera Compare Redline - Proposed Order for Agreed Joint Motion to Amend and Set Deadlines and Hearing Dates-4915-8918-0317-v3 and Proposed Order for Agreed Joi.docx

Mike,

Thank you for your comments.

Attached is a revised version marked to show the changes Highland accepts.

A few notes:

- Highland (and Louis' clients) expect to complete document production, if required, by April 28. But we need to retain the common concept of "substantial completion" to avoid disputes. While I don't think its necessary, if you want to build in a reservation of rights to seek relief upon good cause shown, please draft the language.
- We've compromised on the period for depositions but because of other commitments and to the extent the Court permits depositions, I want to take Nancy Dondero's deposition on May 1 and Jim Dondero's deposition on any day out of May 2-4. Please check their schedules now so we can secure the dates.
- We've changed the date for W&E lists to May 8 as you requested, but we'll highlight that for the Court because my understanding is the Judge usually requires W&E lists seven days in advance (so it will subject the Court's approval).

Please let us know if this works.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR HMIT PARTIES & VALUESCOPE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | **Relates to Dkt. Nos. 4569, 4570** |

**OPPOSITION TO MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY AND MOTION TO CONTINUE**

**NOW INTO COURT**, through undersigned counsel, comes Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities") and ValueScope, LLC ("ValueScope," with the HMIT Parties, "Responding Parties") file this

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

*Opposition* (the "Opposition") to the *Modify Relevant Time Period for Discovery* [Dkt. No. 4570] (the "Motion to Modify") and *Motion to Continue Hearing* [Dkt. No. 4569] (the "Motion to Continue," the "Dugaboy Motions")) filed by Partner Dugaboy Investment Trust ("Dugaboy"). The Dugaboy Motions lay bare that Dugaboy is not, in fact, moving for relief based on newly discovered evidence, but instead, asking the Court to re-litigate from scratch the 9019 Settlement (as defined in the Motion for Relief [Dkt. No. 4513] (the "Rule 60(b) Motion"). This cannot be permitted.

## OBJECTION

**A. The timeframe in the Discovery Order must remain because any evidence Dugaboy could have obtained through discovery prior to the approval of the 9019 Settlement is not relevant.**

1. In its *Order on Motion for Protective Order and Motion to Quash* [Dkt. No. 4566] (the "Discovery Order"), the Court limited to the timeframe for discovery requests to May 19, 2025 through February 8, 2026, i.e. from the date of the 9019 Settlement (and filing of the motion seeking approval) through the filing of the Rule 60(b) Motion.

2. While the Responding Parties disagree that Dugaboy should be entitled to any discovery with relation to the Rule 60(b) Motion, the Court's limitations preventing Dugaboy from propounding discovery that it could have easily obtained with even a cursory effort prior to the 9019 Settlement's approval is well supported by existing law.

3. Dugaboy argues that it should be able to pick the time period for its discovery requests because there would be not greater burden on the Responding Parties. But it is not about burden. Rather, Dugaboy "is plainly not entitled to discovery of documents that it did not request in pre-trial discovery." *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118

(6th Cir. 1976); *Dage v. Johnson,* 537 F. Supp. 2d 43, 55 (D.D.C. 2008) (a motion for reconsideration is not a proper vehicle for requesting additional discovery),

4. As applied to the Responding Parties, any expansion or alteration of the applicable timeframe is acutely problematic because (i) the issue of Mark Patrick's authority to enter into the 9019 Settlement specifically based on allegations of misconduct in restructuring of the DAF Entities in the Cayman Islands was indisputably well-known to Dugaboy in advance of the hearing on the 9019 Settlement [*see e.g.* Dkt. No. 4231], yet (ii) Dugaboy did not propound *any* document discovery on the Responding Parties.

5. Because Dugaboy did not even attempt to obtain any documents from the Responding Parties prior to the hearing on the 9019 Settlement, Dugaboy is precluded from demonstrating that it exercised due diligence in obtaining discovery from the Responding Parties. As such, any document or communication that Dugaboy would obtain from the Responding Parties that existed as of May 19, 2025 by black letter law could not be used to support its Rule 60(b) Motion. *Alegria v. Texas*, No. CIV.A. G-06-0212, 2008 WL 686161, at *3 (S.D. Tex. Mar. 7, 2008) (explaining that Rule 60(b)(2) requires a movant to demonstrate, in part, that it exercised due diligence in obtaining the information because the unexcused failure to produce the relevant evidence at the original trial can be sufficient without more to warrant denial of a[R]ule 60(b) motion).

6. While the Responding Parties strongly refute any allegations of misconduct or lack of authority, any "new evidence" that Dugaboy would obtain from the Responding Parties for the time period prior to May 19, 2025 necessarily cannot be used to support its Rule 60(b) Motion rendering discovery wholly inappropriate.

7. This is not about conveniences or burdens, but rather, about the limitations that Fifth Circuit has placed on setting aside judgments based on "newly discovered evidence." When parties fail to pursue discovery with due diligence, this failure prevents them from prevailing on a motion for new trial on the basis of newly discovery evidence. *Sangi v. Fairbanks Cap. Corp.*, 219 F. App'x 359, 362 at n. 2 (5th Cir. 2007) (explaining a party's failure to pursue discovery with due diligence prevents them from prevailing on a motion for new trial on the basis of newly discovered evidence).

8. The Responding Parties reserve all rights regarding whether the Responding Parties can rely on evidence not in existence as of the date of the 9019 Settlement hearing in support of the Rule 60(b) Motion. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 771 (5th Cir. 1995) (newly discovered evidence must be in existence at the time of trial and not discovered until after trial).

9. Particularly as to the Responding Parties, Dugaboy cannot be permitted to conduct the discovery it had every opportunity to conduct prior to the 9019 Settlement hearing through a Rule 60(b) Motion because it failed to engage in any discovery whatsoever (let alone diligent efforts) prior to the 9019 Settlement hearing. This is not about convenience or burden but the rules that the Fifth Circuit (and all other circuits) apply to preserve the finality of judgments.

**B. There is no cause to continue or extend current deadlines.**

10. The Responding Parties adopt the briefing of Highland Capital Management, L.P. ("HCMLP") with respect to the request for an extension of current deadlines and continuance of the hearing. *See* Dkt. No. 4572 (the "HCLMP Response").

11. Dugaboy created the timing that it now complains of by waiting months to propound discovery and then propounding facially objectionable discovery. Because Dugaboy

refuses to even consider itself subject to the Fifth Circuit binding authority regarding what evidence it can even seek, it does not really understand that it cannot simply command this Court to allow a "do-over" of discovery it should have sought pre-June 25, 2025 hearing, when it made not a single discovery request of any of these Responding Parties in connection with the 9019 Settlement. This cannot be "good cause" for the relief it seeks. *See S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"). Despite the Responding Parties' view that under applicable Fifth Circuit law no discovery is appropriate—particularly because Dugaboy declined to propound any document discovery on the Responding Parties in connection with the 9019 Settlement hearing—the Responding Parties have responded to Dugaboy's discovery responses, as modified by the Discovery Order, to agree that they will each:

- conduct a reasonable search for, and produce, non-privileged documents and communications that relate directly to Mark Patrick's authority to sign the Settlement Agreement & General Release on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026; and

- conduct a reasonable search for, and produce, non-privileged documents and communications involve the restructuring of and transactions directly involved in the restructuring of Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC (the "DAF Entities") that are identified in Dugaboy's Motion for Relief from Order and Motion to Vacate [Dkt. No. 4513] within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026.[2]

[2] While not moving to reconsider the Discovery Order to preserve the current schedule, for the avoidance of doubt, the Responding Parties expressly object to the timeframe in the Discovery Order and reserve all rights to object to the admission of any such documents in support of the Rule 60(b) Motion. "The Fifth Circuit is clear that 'evidence not in existence at the time of an earlier judgment is not an available ground for attacking that judgment[]'" as "newly discovered evidence" under Rule 60(b)(2). *Brown v. Ft. Hood Fam. Hous. LP*, 2022 WL 22883290, at *3 (W.D. Tex. Nov. 17, 2022) (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir. 1984)); *see also Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 158 (5th Cir. 2004) ("'[T]he newly discovered evidence must be in existence at the time of trial and not discovered until after trial.'") (quoting *Longden v. Sunderman*, 979 F.2d 1095, 1102–03 (5th

12. The Responding Parties will timely produce the documents it has agreed to and has made extensive efforts to coordinate the availability of Mr. Mark Patrick for a deposition withing the current time restrictions.

13. The deadlines in the Discovery Order impose a burden is on the Responding Parties, not Dugaboy, and the Responding Parties oppose any extension or continuance.

## CONCLUSION

14. For the reasons set forth herein, and the reasons set forth in the HCMLP Response, the Responding Parties respectfully request that the Court deny the Dugaboy Motions in their entirety.

Respectfully Submitted:

**KELLY HART PITRE**

***/s/ Louis M. Phillips***
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

***Counsel for ValueScope and the HMIT Entities***

Cir. 1992)). Similarly, "Rule 60(b)(3) is aimed at misconduct which occurs between the time the plaintiff files a lawsuit and the time the court enters judgment," not conduct that occurred after judgment. *Optimal Health Care Servs., Inc. v. Travelers Ins. Co*., 801 F. Supp. 1558, 1561 (E.D. Tex. 1992).

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this April 29, 2026.

***/s/ Louis M. Phillips***
Louis M. Phillips (#10505)

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 29, 2026**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**ORDER GRANTING THE DUGABOY INVESTMENT TRUST'S MOTION FOR EXPEDITED HEARING ON THE (I) MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING, AND (II) MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

On this date the Court considered the motion of the Dugaboy Investment Trust (the "Movant") for an expedited hearing on Movant's (i) *Motion to Continue Discovery Deadlines and Hearing on the Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* (the "Motion to Continue") [Dkt. No. 4569]; and (ii) *Motion to Modify Relevant Time Period for*

*Discovery* (the "Motion to Modify" [Dkt. No. 4570], and together with the Motion to Continue, the "Underlying Motions"). The Court finds that good cause exists for the relief requested.

IT IS THEREFORE ORDERED that the Motion is GRANTED. IT IS FURTHER ORDERED that the Court shall conduct a hearing on the Underlying Motions on **April 29, 2026** at **4:00 p.m. (CT)** by WebEx. WebEx attendance information is posted on the Court's website, www.txnb.uscourts.gov, under Judge Odell's "Hearing Dates and Calendar" tab.

# # # END OF ORDER # #

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**NOTICE OF DEPOSITION OF MARK PATRICK**

To: Mark Patrick, by and through his counsel of record, Louis M. Phillips, louis.phillips@kellyhart.com, Kelly Hart & Pitre, 301 Main Street Suite 1600, Baton Rouge, LA 70801.

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court for the Northern District of Texas, The Dugaboy Investment Trust, by and through the undersigned counsel in the above-styled and numbered cause of action, will take the oral

deposition of Mark Patrick on Wednesday, May 6, 2026, beginning at 8:00 AM, at the offices of King & Spalding, LLP, 2601 Olive St., 2300, Dallas, TX 75201 or at such other time and place as may be agreed among counsel for the parties. The deposition will proceed before an officer authorized by law to administer oaths, and will be recorded by audio, video, and/or stenographic means.

Dated: April 29, 2026

/s/ Geoffrey S. Harper
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
**KING & SPALDING LLP**
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

United States Department of Justice
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967

Joseph R. Schlotzhauer
Trial Attorney,
62138MO

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Highland Capital Management, LP,**[1] | § | **Case No. 19-34054-BWO-11** |
| | § | |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | |

**United States Trustee's Comment**

Lisa L. Lambert, the United States Trustee for Region 6, files this Comment with respect to Dugaboy Investment Trust's ("Dugaboy") Motion (1) for Reconsideration of the Court's Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith, ("Settlement Order"); (2) seeking relief under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b); and (3) asking the Court to use its inherent power to vacate the Rule 9019 Settlement Order ("Motion"). ECF No. 4513;[2] *see also* ECF No. 4521 (Dugaboy's

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and service address for the Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2] ECF No. 4513 is actually entitled "Memorandum of Law in Support of Dugaboy Investment Trust's Motion from Relief from Order and Motion to Vacate." There is no separately filed motion.

Supplemental Exhibits); ECF No. 4297 (Settlement Order). Highland Capital Management, L.P., the reorganized debtor, and the Highland Claimant Trust (collectively, "Highland") objected to the Motion ("Objection"). ECF No. 4535.

**I. Although the United States Trustee Has Limited Authority Over Post-Confirmation Matters in Chapter 11, the Motion and the Objection Appear to Raise Important Issues About the Integrity of the Bankruptcy System.**

1. Highland Capital, LP ("Debtor") filed for chapter 11 relief on October 16, 2019, ECF No. 1. The Court confirmed its plan of reorganization ("Plan") on February 22, 2021, ECF No. 1943, which went effective on August 11, 2021, ECF No. 1948.

2. After a chapter 11 plan is confirmed and effective—as happened here—the bankruptcy estate and debtors-in-possession cease to exist. *In re Worldcom, Inc.*, 401 B.R. 637, 652 (Bankr. S.D.N.Y. 2009) ("[A]fter confirmation of a plan under Chapter 11, administration of the estate ends and the estate ceases to exist.") (citation omitted); *In re Jamesway Corp.*, 202 B.R. 697, 701 (Bankr. S.D.N.Y. 1996) ("Upon plan confirmation, the debtor-in-possession and the bankruptcy estate cease to exist, even though the case may not be closed and the bankruptcy court retains jurisdiction over certain matters.").[3]

3. "[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner of the debtor." 11 U.S.C. § 1141(a).

4. Most of the United States Trustee Program's statutory authority relates to

[3] Federal Rule of Bankruptcy Procedure 9019 by its terms does not apply to reorganized debtors because it only authorizes trustees, which the Code defines as including debtors in possession, to file a motion to approve a settlement. The Court nevertheless approved the settlement and entered the Settlement Order under Rule 9019 on June 30, 2025, almost four years after the plan went effective, presumably because the plan included broad retention of jurisdiction provisions.

monitoring the estate and debtor-in-possession, 28 U.S.C. § 586, and the United States Trustee's authority in chapter 11 cases over post-effective date conduct and activities is relatively narrow.[4] This temporal limitation makes sense given that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b).

5. Nevertheless, the United States Trustee, as the watchdog of the bankruptcy system, seeks to preserve the integrity and efficiency of the bankruptcy system for all stakeholders. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. For this reason, the United States Trustee respectfully files this Comment on the Motion, which together with Highland's Objection appear to raise important questions about the integrity of the bankruptcy process.

## II. The Motion Represents Dugaboy Has Newly Discovered Evidence That, if True, Might Have Affected the Court's Decision to Enter the Settlement Order.

7. Dugaboy asserts that it has obtained and submitted newly discovered evidence that, if true, might have affected the Court's decision to issue the Settlement Order in June 2025.

8. Dugaboy submitted a July 15, 2025, Writ of Summons and Statement of Claim from the Grand Court of the Cayman Islands Financial Services Division. *See* ECF No. 4521-1 ("Writ"). The Writ reflects a Statement of Claim between Charitable DAF Holdco Ltd. ("DAF") and DFW Charitable Foundation ("DFW"), among other parties. DAF is a charitable

[4] The United States Trustee, however, does monitor and object as appropriate after confirmation to matters relating to pre-confirmation activity, including, for example, professionals' final fee applications.

organization that Dondero has alleged, and Highland acknowledges, that Mark Patrick ("Patrick") owns or has an interest in.

9. The Writ—dated after the June 2025 Settlement Order—states that Patrick sought advice about whether DAF would issue shares to a new non-profit organization to dilute the supporting organizations[5] "to weaken any winding-up petition brought by the Supporting Organisations on just and equitable grounds." *See* Writ at ¶ 91. The Writ also states the following about Patrick:

> On 9 December 2024, DFW was incorporated as a non-profit non-stock company in Delaware, by or with the assistance of Mr. Douglas Mancino, partner of U.S. firm, Seyfarth Shaw LLP (Seyfarth), who worked alongside Mr. Patrick in the establishment of the Company and the Fund structure. The sole member of DFW was and is Mr. Patrick.

*Id.*

10. In addition, the Writ appears to show that Patrick paid himself significant and allegedly abnormal amounts of money for running the charitable organization. *See* Writ at ¶¶ 86–88 (listing, among other things, an increase to Patrick's salary; a payment to Patrick of $975,000; a discretionary bonus to Patrick of 2.5 times his base salary; a base salary of $850,000 for Patrick; and a payment of $4.7 million to Patrick).

11. Finally, an Independent Auditor's Report from Cohen & Co., which was allegedly not issued until after the Court's hearing on the 9019 Settlement, shows that Rand Fund's sole asset was Beacon Mountain (the beneficiary of Hunter Mountain—an affiliate of Mark Patrick). *See* ECF No. 4513-51. If these allegations are proven to be true, that might violate relevant governing documents prohibiting Rand Fund from selling Hunter Mountain—the holder of 99.5%

[5] The supporting organizations are Highland Kansas City Foundation, Inc., Highland Dallas Foundation, Inc., and Highland Santa Barbara Foundation, Inc. ECF No. 4513-51 at ¶ 19.1-3.

of the Debtor's limited partnership interests and the class 10 interest under the confirmed Plan—to an affiliate of Patrick without investor consent.

12. Highland contests that these allegations are true or that they are newly discovered. In its Objection, Highland contends, among other things, that Dugaboy failed to disclose the adverse judgment issued by the Grand Court of the Cayman Islands on February 10, 2026, "rejecting virtually all of the claims asserted in the JOL Writ filed on July 15, 2025." ECF 4535 at ¶ 40. Highland further alleges that "Dugaboy possessed an advance draft of the Cayman Decision before filing the Motion but failed to disclose its existence or contents to this Court." *Id.* at ¶ 41.

13. The United States Trustee does not know whether Dugaboy's allegations are true or the evidence is newly discovered. But if Dugaboy can establish the truth of its allegations and that the evidence qualifies as newly discovered, the Court may not have had the benefit of considering it before entering the Settlement Order in June 2025. If Dugaboy can establish through newly discovered evidence that Patrick engaged in impermissible self-dealing, breach of fiduciary duty, or fraud, that might affect the Court's conclusion in the Settlement Order that the Settlement Agreement was reached "in good faith."

14. To be clear, the United States Trustee expresses no view on whether Dugaboy's allegations are true or would warrant vacating the Settlement Order if they are newly discovered and proven after proper fact finding.

15. Unless and until the Court concludes that Dugaboy's evidence is newly discovered, and the allegations are proven true and require vacating the Settlement Order, the Settlement Order should remain in effect. Moreover, the United States Trustee is not suggesting that the entire bankruptcy case must be reexamined. Rather, the United States Trustee's Comment is limited to whether the Settlement Order should be reconsidered based on this alleged new evidence.

### III. Bankruptcy Rule 8008 Governs this Court's Action on the Motion.

16. Dugaboy appealed the Settlement Order on July 14, 2025.[6] *See The Dugaboy Inv. Trust v. Highland Capital Mgmt. L.P.*, No. 35-1876 (N.D. Tex.). Highland argues that this Court lacks jurisdiction to vacate the Settlement Order because of the pending appeal, and instead Bankruptcy Rule 8008 specifies the actions the Court may take. Fed. R. Bankr. P. 8008.

17. The "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985). This rule applies with equal force to appeals from bankruptcy court orders. *See Texas Comptroller of Public Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 579 (5th Cir. 2002). Although a motion under Bankruptcy Rule 9024 may revest the bankruptcy court with jurisdiction if filed within fourteen days of the appealed order, *see id.*; Fed. R. Bankr. P. 8002(b)(1)(D), Dugaboy did not file its motion within that time period.

18. Under Bankruptcy Rule 8008, the Court can: (1) deny the Motion; (2) defer consideration of the Motion; (3) enter an indicative ruling stating that the Court would grant the Motion if the appellate court remanded for that purpose; or (4) state that the Motion raises a substantial issue. *Id.* If the Court does either of the latter two things, Highland must notify the appellate court, which may remand for further proceedings while retaining jurisdiction over the appeal. *Id.*

19. The United States Trustee expresses no view on how the Court should proceed

[6] The District Court has entered an order "administratively closing" the appeal for "statistical purposes" while it considers a pending motion to dismiss. *See The Dugaboy Inv. Trust*, No. 35-1876, Dkt. 66. In so doing, it expressly stated: "Nothing in this Order shall be considered a dismissal or disposition of this case." *Id*.

under Rule 8008.

Dated: April 29, 2026

Respectfully Submitted,

LISA L. LAMBERT,
UNITED STATES TRUSTEE

*/s/ Joseph R. Schlotzhauer*
Joseph R. Schlotzhauer
Trial Attorney
62138MO
Office of the U.S. Trustee
111 South 10th Street, Suite 6.353
St. Louis, Missouri 63102
(314) 539-2980
Joseph.Schlotzhauer@usdoj.gov

**Certificate of Service**

I certify that on April 29, 2026, this document was sent via email to those parties entitled to receive service via ECF.

*/s/ Joseph R. Schlotzhauer*

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 1, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | ) | |

**ORDER DENYING MOTION TO CONTINUE DISCOVERY DEADLINES AND HEARING ON THE DUGABOY INVESTMENT TRUST'S MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Having considered (a) the *Opposed Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* [Docket No. 4569] (the "Motion")[2] filed by The Dugaboy Investment Trust ("Dugaboy"), (b) *Highland Capital Management L.P.'s Opposition to The Dugaboy Investment Trust's (1) Motion to Continue Discovery Deadlines and Hearing, and (2) Motion to Modify Relevant Time Period for Discovery*

[1] Highland's last four digits of its taxpayer identification number are (8357). The service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

[Docket No. 4572], (c) the *Opposition to Motion to Modify Relevant Time Period for Discovery and Motion to Continue* [Docket No. 4575] filed by the parties listed therein, and (d) the arguments of counsel presented during a hearing held on April 29, 2026 (the "Hearing"),[3] and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as Article XI of the Plan; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) notice of the Motion was proper and sufficient under the circumstances and no further or additional notice need be given; **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. For the reasons stated on the record at the conclusion of the Hearing, the Motion is **DENIED** in its entirety.

2. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

###End of Order###

[3] The Hearing was held on an expedited basis after the Court granted Dugaboy's unopposed motion [Docket No. 4571] for such relief [Docket No. 4576].

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 1, 2026**

**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | ) | |

**ORDER DENYING MOTION TO MODIFY RELEVANT TIME PERIOD FOR DISCOVERY**

Having considered (a) the *Motion to Modify Relevant Time Period for Discovery* [Docket No. 4570] (the "Motion")[2] filed by The Dugaboy Investment Trust ("Dugaboy"), (b) *Highland Capital Management L.P.'s Opposition to The Dugaboy Investment Trust's (1) Motion to Continue Discovery Deadlines and Hearing, and (2) Motion to Modify Relevant Time Period for Discovery* [Docket No. 4572], (c) the *Opposition to Motion to Modify Relevant Time Period for Discovery*

[1] Highland's last four digits of its taxpayer identification number are (8357). The service address for Highland is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

*and Motion to Continue* [Docket No. 4575] filed by the parties listed therein, and (d) the arguments of counsel presented during a hearing held on April 29, 2026 (the "Hearing"),[3] and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as Article XI of the Plan; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) notice of the Motion was proper and sufficient under the circumstances and no further or additional notice need be given; **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. For the reasons stated on the record at the conclusion of the Hearing, the Motion is **DENIED** in its entirety.

2. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

###End of Order###

[3] The Hearing was held on an expedited basis after the Court granted Dugaboy's unopposed motion [Docket No. 4571] for such relief [Docket No. 4576].

B2550 (Form 2550 – Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Northern District of Texas

In re __Highland Capital Management L.P.______________
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. ___19-34054-SGJ-11___

Chapter _11______

_____________________________
Plaintiff
v.
_____________________________
Defendant

Adv. Proc. No. ________________

## SUBPOENA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: ______**Mark Patrick**______________________________
*(Name of person to whom the subpoena is directed)*

☒ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case (or adversary proceeding). When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE | COURTROOM 306 |
|---|---|
| 1205 Texas Avenue, Room 306, Lubbock, TX 79401-4002 | DATE AND TIME May 11, 2026 at 9:00AM CT |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 5/1/2026

CLERK OF COURT

_________________________
*Signature of Clerk or Deputy Clerk*

OR



*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Dugaboy Investment Trust, who issues or requests this subpoena, are:

Geoffrey Harper, King & Spalding LLP, 2601 Olive St, Dallas, TX 75201, gharper@kslaw.com, mgaddis@kslaw.com, srose@kslaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**PROOF OF SERVICE**
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ________________________________________
________________________________________________________________________________
________________________________ on (*date*) __________________ ; or

☐ I returned the subpoena unexecuted because: ________________________________________________________
________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

______________________________________________
*Server's signature*

______________________________________________
*Printed name and title*

______________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR HMIT ENTITIES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | |

**EMERGENCY MOTION FOR PROTECTIVE ORDER CONCERNING DEPOSITION**

**NOW INTO COURT**, through undersigned counsel, comes Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities") which file this *Emergency Motion for Protective Order relating to that certain Deposition Notice* (the

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

"Deposition Notice") filed but not served by Dugaboy Investment Trust ("Dugaboy") and for the reasons stated herein request that this Court order the deposition of Mr. Mark Patrick on May 7, 2026 (the "Patrick Deposition") to be: limited as set forth herein and in the order proposed herewith to evidence relevant and properly limited in scope regarding the *Motion for Relief* [Dkt. No. 4513] (the "Rule 60(b) Motion"), as set forth in the *Order on Motion for Protective Order and Motion to Quash* [Dkt. No. 4566] and the *Order Denying Motion to Modify Relevant Time Period for Discovery* [Dkt. No. 4584] (the "Discovery Orders").

## Preliminary Statement

With apologies to the Court, the HMIT Entities have been unable to resolve a dispute concerning the proper scope of a discovery deposition of Mark Patrick, and therefore bring this motion for protective order so this Court can direct the proper scope of the Mr. Patrick's Deposition. As shown, the HMIT Entities are in a peculiar posture, as Dugaboy has not issued or served a deposition subpoena (that undersigned counsel is aware of), and the unserved *Notice of Deposition* filed on April 29, 2026 [Dkt. No. 4577], also unserved, is for a date that has now been superseded by the agreement of the parties. Nevertheless, the HMIT Entities have been forced to bring this matter to the Court's attention, to maintain the scheduling of the currently set hearing on the Motion for Relief – May 11, 2026.

## Relevant Background

1. On February 9, 2026, Dugaboy filed its Rule 60(b) Motion seeking relief from the *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Dkt. No. 4297] (the "9019 Order") which approved that certain settlement between Highland Capital Management, L.P. ("HCMLP") and the HMIT Entities (the settlement, the "9019 Settlement").

2. The Motion for Relief has been briefed, and this Court has issued the Discovery Orders regarding Dugaboy's rights to take discovery related to the Motion For Relief.

3. In the first Discovery Order, this Court ordered that any document request was limited to two topics: (a) Mark Patrick's authority to sign the 9019 Settlement ("Patrick Authority") and (b) the restructuring of and transitions related to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC (the "DAF Restructuring"). The Court specifically instructed that the time period for these requests should be May 19, 2025, to February 8, 2026.

4. As to depositions this Court ordered that:

> All depositions taken by Dugaboy in connection with the Rule 60(b) Motion are limited in scope to Mark Patrick's authority to sign the Settlement Agreement & General Release [Dkt. No. 4217-1] on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP and the restructuring of and transactions related to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC.

5. Dugaboy then filed the *Motion to Modify Relevant Time Period for Discovery* [Dkt. No. 4570] (the "Motion to Modify") asking the Court to adjust the relevant time periods in the Discovery Order to be before the 9019 Settlement.

6. The Court declined to modify the Discovery Order and the HMIT Entities produced all relevant documents for the time period May 18, 2025, through February 8, 2026, in its possession on May 1, 2026, as required.

7. Dugaboy has sought to take the deposition of Mark Patrick, but as of filing of this Motion, has not effected service of a deposition subpoena nor filed a corrected notice of deposition. Undersigned counsel has likewise not been provided with a notice of deposition despite multiple requests.

8. Undersigned counsel has informed Dugaboy that the scope of the deposition should be limited to conform to the limitations in the Discovery Orders, such that the deposition of Mark Patrick should (i) necessarily not include questions that could have been but were not asked at the 2025 Patrick Deposition, conducted prior to the 9019 Settlement Hearing, and (ii) be limited in scope to the issues time frame and allowed by this Court for document discovery.

9. Dugaboy counsel responded on May 3, 2026, at 7:07 p.m. stating that it disagreed with the scope of the deposition and argued that HMIT was making Mr. Patrick "substantively unavailable."[2]

10. On the evening of May 4, Dugaboy counsel seems to have agreed to a deposition conducted remotely, and also suggested that the agreement to a remote deposition resolved all issues. Undersigned counsel responded that the agreement to a remote deposition did not resolve the issue related to the scope of the deposition.[3]

11. As the HMIT Entities have disclosed to counsel for Dugaboy and the Court [Dkt. No. 4525, ¶11], the HMIT Entities agreed to:

- conduct a reasonable search for, and produce, non-privileged documents and communications that relate directly to Mark Patrick's authority to sign the Settlement Agreement & General Release on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026; and

- conduct a reasonable search for, and produce, non-privileged documents and communications involve the restructuring of and transactions directly involved in the restructuring of Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC (the "DAF Entities") that are identified in Dugaboy's Motion for Relief from Order and Motion to Vacate [Dkt. No. 4513]

---

[2] Exhibit A – M. Edney Email, 5/3/2026 at 7:07 p.m.

[3] Exhibit C -Email Exchange, 5/4/2026.

> within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026

12. In keeping with this interpretation, the HMIT Entities have informed Dugaboy that:

> [Mr. Patrick's] deposition must be limited in scope to actions within the date range contained in the Court's Order, reaffirmed by the Court's ruling upon Dugaboy's request for relief from that order. In its ruling the Court made clear that Dugaboy is not entitled to discovery it could have obtained but did not, except for the time period between May 19, 2025 and February 8, 2026.[4]

13. In attempt to prevent this dispute from continuing to linger and then being used to justify a further continuance of the hearing, the HMIT Entities move for this protective order despite Mark Patrick not having been served with a deposition subpoena (Undersigned counsel would be willing to accept service to trigger a served subpoena to respond to, but has never seen a subpoena, despite multiple requests).

## Relief Requested

14. The HMIT Entities seek protection from the Court clarifying that the scope of Mr. Patrick's deposition shall not be duplicative of the discovery already taken on the same subject matter, *i.e.* be temporally limited in the same manner as document discovery – both as to the issues and time frame of activity regarding the issues, as set forth herein.

## Basis For Relief

15. At the time that Dugaboy took Mr. Patrick's deposition in June 2025 (the "June 2025 Patrick Deposition"), Dugaboy indisputably knew of the same allegations that it now raises regarding Patrick Authority and the DAF Restructuring, yet declined to seek any real discovery

---

[4] Exhibit A – L. Phillips 5/3/2026 Email at 9:54 A.M.

into those matters. Other parties (admittedly funded by Mr. Dondero) objected to the 9019 Settlement on those grounds and explored them through deposition testimony of Mark Patrick and Shawn Raver. Yet, Dugaboy declined to ask Mr. Patrick with any level of detail about either issue at his deposition in this matter. Dugaboy also confirmed that Mr. Patrick was the control person of the HMIT Entities and then confirmed the changes to DAF structure—but sought nothing else regarding Patrick Authority and the DAF Restructuring.[5]

16. Therefore, Dugaboy is plainly not entitled to discovery that it did not elicit in pre-trial discovery. *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976).

17. The Court's Discovery Orders are in accordance with case law. As stated above, the HMIT Entities interpret this Court's Discovery Order to require:

- a reasonable search for, and produce, non-privileged documents and communications that relate directly to Patrick Authority within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026; and
- a reasonable search for, and produce, non-privileged documents and communications involve the restructuring of and transactions directly involved in the DAF Restructuring that are identified in Dugaboy's Motion for Relief from Order and Motion to Vacate [Dkt. No. 4513] within their possession, custody, and control that were created and that occurred during the period May 19, 2025 through February 8, 2026

---

[5] Exhibit B – June 23, 2025, Deposition Transcript of Mark Patrick (12:9-23 "And what is your role with Hunter Mountain Investment Trust? A. My understanding is I'm the -- an administrator which is a -- the control person for that trust. Q.· Are you the control person for Beacon Mountain LLP? A.· Yes. Q.· Are you the control person for CLO HOLD CO LLC? A.· Yes. Q Are you the control person for RAND Advisers LLC? A. Yes. Q.· Are you the control person for RAND PE FUND Management LLC? A.· Yes. Q.· Are you the control person for Atlas IDF GP LLC? A.· Yes.").

18. While the HMIT Entities recognize that the reference to depositions does not involve the express temporal limitation, the case law preventing parties to obtaining discovery via document requests that it could have obtained at trial should apply with full weight to depositions. This is not about burden; it is about protecting the finality of judgments and the litigation process.

19. The HMIT Entities submit that the deposition should be limited to correspond to the above-described limit on document discovery The HMIT Entities submit that the best interpretation of the Discovery Orders should be that document discovery and scope of deposition discovery to be taken by Dugaboy should be subject to the same limitations. Any other interpretation would allow Dugaboy to get its inappropriate "do-over" or "second bite at the apple" through deposition testimony, where it could not through document discovery - in pursuit of a Rule 60(b) Motion seeking a retrial on the basis of information that was available to Dugaboy prior to the June 2025 9019 Settlement hearing.

20. Dugaboy served no document requests on the HMIT Entities and conducted a very cursory deposition of Mr. Patrick as to the topics of Patrick Authority and the DAF Restructuring, prior to the 9019 Settlement hearing despite indisputably knowing of the allegations upon which it now rests its Rule 60(b) Motion. This Court's ruling clearly contemplated this and limited document discovery to correspond to this reality.

21. As such, the HMIT Entities move this Court for an order limiting the deposition of Mr. Patrick to the same temporal limitations as the discovery requests, to ensure that Dugaboy is not using a motion to reconsider to obtain evidence that it could have obtained with diligence during the 9019 Settlement litigation, and request a protective order limiting the scope of the Mark Patrick deposition as follows:

> transactions or events for the time period between May 19, 2025, and February 8, 2026: (a) relating to Mark Patrick's authority to sign the Settlement Agreement &

General Release [Dkt. No. 4217-1] on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP and (b) the involving the restructuring of and transactions involving the restructuring of Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC.

## CONCLUSION

22. For the reasons set forth herein, the HMIT Entities move this Court for a protective order that the scope of the deposition of Mark Patrick be limited in scope as set forth herein.

Respectfully Submitted:

**KELLY HART PITRE**

***/s/ Louis M. Phillips***
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

***Counsel for the HMIT entities***

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this May 5, 2026.

***/s/ Louis M. Phillips*****_____**
Louis M. Phillips (#10505)

## CERTIFICATE OF CONFERENCE

I, undersigned counsel, hereby certify that I have conferred in good faith via email with counsel for Dugaboy regarding these issues and have been unable to reach a resolution. These emails are submitted *in globo* as Exhibit C hereto to confirm.

***/s/ Louis M. Phillips*****_____**
Louis M. Phillips (#10505)

# EXHIBIT A

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Sunday, May 3, 2026 6:14 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Dear Messrs. Morris and Phillips:

Thank you for your respective notes. One some fronts, we appear to be narrowing the issues. On others, we seem to be widening them.

We appear to have the dates sorted (let's start the depositions at 9am Central Time). We have streamlined the deposition schedule down to two. We have addressed the issue with respect to Ms.

Dondero.

Now to the new, late-breaking complication. Mr. Phillips, we disagree with your view as to the proper scope of deposition discovery. To the extent your view stems from the Court's order as to the scope of document production and limiting the burden of the production process, nothing in that order controls the scope of depositions. Indeed, I am confident that Mr. Morris intends to question Mr. Dondero at length regarding events before May 19, 2025.

You are certainly welcome to object to questions in Mr. Patrick's deposition on the grounds articulated in your email and other grounds to preserve a record. I hope you are not telling us that you intend to instruct your client not to answer my questions (to the extent they do not call for privileged material) on the grounds articulated in your email. If that is your intention, please clarify now. That would be quite extraordinary.

Generally speaking, we would address improper instructions not to answer questions in a deposition after the deposition (or perhaps during it) through a motion to compel and for other relief. But given the compressed schedule here, if it is your intention to make such an instruction, we will need to take this up with the Court.

As for the method and location of the deposition, I am willing to have a discussion about location and logistics. But the prospect of Mr. Patrick being made substantively unavailable is a priority question that needs to be resolved first.

Please get back to me on this by 11 AM Central time tomorrow. Thank you.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Sunday, May 3, 2026 9:54 AM
**To:** John A. Morris <jmorris@pszjlaw.com>; Edney, Michael <michael.edney@morganlewis.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Counsel,

In an attempt to complete the stipulation discussed by Mr. Morris in his message below, and to advise as to our interpretation of the scope of any deposition, I offer the following:

Again, I have been authorized to accept service of a deposition subpoena via email for a remote deposition of Mark Patrick on May 7, 2026, commencing at 8:00 am Central. The deposition shall not exceed 7 hours.

I am authorized to accept service of a trial subpoena, though Mr. Patrick will be at trial in Lubbock.

Given that Mr. Patrick is out of the state, if a deposition subpoena is served seeking to compel his testimony at a place as provided in Rule 45(c), this will cause undue and unnecessary hardship and prejudice. Mr. Patrick would have to travel to a deposition site, travel back to his out of state location, only to have to travel to Lubbock on May 10. Also, as I represent the HMIT entities, I will be defending the deposition, and would have to travel for an in-person deposition, when such would be unnecessary for a remote deposition. If Dugaboy serves Mr. Patrick with a deposition subpoena that seeks to compel in person testimony in Dallas, we will seek relief from the Court.

If Dugaboy would try to serve Mr. Patrick personally in an attempt to conduct the deposition out of the state of Texas (in other words, not in compliance with Rule 45(c)) we would seek protection from the Court as such an attempt at compelling a deposition out of state is at odds with Rule 45 (See *Planet Fitness International Franchise v. JEG-United, LLC*, 602 F.Supp.3d 258 (D. NH, 2022).

Again, we will seek relief from the Court if Dugaboy takes either of the two above described actions. And again (again), I will accept service of a remote deposition subpoena for a remote deposition on the date and commencing at the time stated above (we assume you have made up your mind, as between May 6 and 7).

With respect to the scope of a deposition of Mark Patrick, our interpretation of the court's order is that the deposition must be limited in scope to actions within the date range contained in the Court's Order, reaffirmed by the Court's ruling upon Dugaboy's request for relief from that order. In its ruling the Court made clear that Dugaboy is not entitled to discovery it could have obtained but did not, except for the time period between May 19, 2025 and February 8, 2026. As you know, Dugaboy sought no written discovery from any HMIT Entity, and took the deposition of Mr. Patrick prior to the 9019 Settlement hearing for an agreed amount of time. Also, and over objection, Dugaboy counsel was allowed to question Mr. Patrick on the same topics that form the basis for Dugaboy's Rule 60 motion at the hearing. While it is clear that Dugaboy seeks to relitigate the 9019 Settlement hearing, the Court has made clear that will not occur at the hearing on Dugaboy's Rule 60 Motion and it should not at a deposition of Mark Patrick. Neither will Dugaboy's anticipated attempt to relitigate the Cayman proceeding. This position is fully consistent with both our responses and objections to discovery and our objections to the Dugaboy post-Court ruling motions (both our objection and our discovery responses and objections are attached).

The offers herein are our good faith effort to resolve the last issue mentioned by John below without Court action for purposes Rule 26(c)(1). We are available to discuss further but we think (or at least hope) that our positions are clear.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

# EXHIBIT B

**In the Matter Of:**

IN RE: HIGHLAND CAPITAL MNGMT

19-34054-sgj11

---

**MARK PATRICK**

*June 23, 2025*

---

ESQUIRE
DEPOSITION SOLUTIONS

*800.211.DEPO (3376)*
*EsquireSolutions.com*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| In re | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P, | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

-------------------------------------------------

ORAL DEPOSITION OF

MARK PATRICK

JUNE 23, 2025

(Reported remotely)

-------------------------------------------------

ORAL DEPOSITION OF MARK PATRICK, produced as a witness duly sworn by me at the instance of the Defendant, taken in the above-styled and numbered cause on the 23RD day of June, 2025, from 12:05 p.m. to 1:14 p.m., via Zoom videoconference before Ida Alcala, Certified Shorthand Reporter No. 12565, in and for the State of Texas, reported by oral stenographic means, pursuant to the Texas Rules of Civil Procedure, and the provisions stated on the record or attached hereto.

APPEARANCES

Mr. Sawnie A. Mcentire (Via Videoconference)
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Ave Ste 4400
Dallas, Texas 75201-7324
214-237-4300

Mr. Michael Lang (Videoconference)
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave Ste 2390
Dallas, Texas 75201
214-817-4500

Mr. Louis M. Phillips (Via Videoconference)
KELLY HART ATTORNEYS AT LAW (LOUISIANA)
Baton Rouge Office
301 N. Main Street Ste. 1600
Baton Rouge, LA 70801
225-381-9643

Mr. John R. Morris (Via Videoconference)
ATTORNEY AT LAW
P.O. Box 470472
Fort Worth, Texas 76147-0472
817-262-7762

Ms. Deborah A. 'Deborah' Newman (Via Videoconference)
NEWMAN LAW FIRM
245 W. 18th Street
Houston, Texas 77008-4005
713-942-2501

Mr. Matthew Okin (Via Videoconference)
OKIN ADAMS LLP
1113 Vine St Ste 240
Houston, Texas 77002-1044
713-228-4100

(CONTINUED ON NEXT PAGE)

(CONTINUED)

Mr. Andrew Kohl 'Drew' York (Via Videoconference)
GRAY REED & MCGRAW
1601 Elm St. Ste 4600
Dallas, Texas 75201-7212
469-320-6114

Ms. Kathryn George (Via Videoconference)
LATHAM AND WATKINS LLP
Chicago Office
330 North Wabash Avenue Ste 2800
Chicago, IL 60611
312-876-7700

ALSO PRESENT:

Ms. Amelia Hurt (Videoconference)

Mr. Jeff Pomerantz (Videoconference)

Mr. Gregory Demo (Videoconference)

I N D E X

| | |
|---|---|
| | PAGE |
| WITNESS: MARK PATRICK | |
| Appearances | 2 |
| Examination by Mr. Lang | 5 |
| Examination by Mr. York | 24 |
| Further Examination by Mr. Lang | 42 |
| Changes and Signature | 44 |
| Reporter's Certification | 46 |

INFORMATION REQUESTED TO BE FURNISHED

(None)

EXHIBITS INDEX

COUNSEL FOR DUGABOY INVESTMENT TRUST

| EXHIBITS | DESCRIPTION | PAGE IDENTIFIED |
|---|---|---|
| 1 | Charitable DAF/CLO HoldCo Structure Chart | 8 |
| 2 | Rand Structure Chart | 8 |
| 3 | Proposed settlement agreement | 16 |

P R O C E E D I N G S

MARK PATRICK,

having been duly sworn, testified as follows:

EXAMINATION

BY MR. LANG:

Q. Please state your name for the record.
A. Mark Patrick.
Q. And, Mr. Patrick, how are you currently employed?
A. I -- what do you mean by --
Q. Who's your -- who do you work for?
A. I work for DAF entities.
Q. And when you say the DAF entities, can you be more specific into which entities that are?
A. You know, there -- it's just a group of entities that hold investment assets for charitable purposes.
Q. Specifically, do you have the names of these entities?
A. Some -- some of them such as CLO HoldCO.
Q. Anybody else?
A. Liberty, I think. Charitable DAF HoldCo Inc, US entity, Charitable DAF Fund LP. I'm probably missing several others. It's a sophisticated structure, but that's generally the gist of when I refer to DAF entities.
Q. And what about Hunter Mountain? Are you employed by Hunter Mountain?

A. Well, no -- I know -- I appreciate that. I'm -- like, when I think of employment, I'm also the preferred manager for Wind Advisers, which is an investment adviser that advises investment funds -- and then -- so then I have roles and that's why when you ask about employment, you know, there's -- it's kind of a different question than roles.

Q. That's fair. Tell you what. Why don't I put up a work chart and we'll talk through it. Will that work?

A. Yeah, I'll take a look anything.

Q. Okay. Do you see this chart?

A. Yes, I do.

Q. Okay. So this is the charitable DAFs, you know, the whole structure comp chart. Do you see that at the top?

A. Yes.

Q. Okay. Is this how the DAF CLO HoldCo structure currently looks today?

A. No, it does not.

Q. Okay. What is different?

A. Well, there's a lot of differences. I'd have to kind of see the specific documentation to be exact.

Q. Well, can you generally describe the -- the changes that have been made to this flowchart?

MR. MCENTIRE: I'll object as to form and relevance.

A. Yeah. I mean, I -- I think I have already, you know, with respect to the listing of entities. You'd have to show me some documents with respect to these entities and I can, you know, walk you through it.

Q. Would charitable DAF GP LLC still the GP for charitable DAF CLO Co?

A. I don't -- I don't recall precisely and I, you know, I want -- I want to be -- when I give you an answer, a hundred percent accurate.

Q. Okay. Does charitable DAF Fund LP still own a hundred percent of CLO Hold Co?

A. Yes, that is my understanding.

Q. And this charitable DAF CLO CO limited still own a hundred percent of charitable DAF Fund LP?

MR. MCENTIRE: Objection, form.

A. No.

Q. (By Mr. Lang) Okay. Charitable DAF FUND LP, is that owned by CDM CFAD LLP?

MR. MCENTIRE: Objection, form.

A. That's my general -- that's my general understanding.

Q. (By Mr. Lang) Okay. And who owns CDM CFAD LLC?

A. Yeah, again, without corporate documents that you can present to me, I -- you know -- I -- I just don't want to be inaccurate.

Q. Does DFW Charities own CDM CFAD LLC?

MR. MCENTIRE: Objection, form. Relevant.

A. Yeah, again, you know, Mr. Lang, you know, there are several entities in this structure, and I -- I just don't want to go beyond what I have a hundred percent knowledge of.

Q. I'm sharing this charitable DAF CLO CO structure chart as Exhibit 1, to be fair. And this is a RAND structured chart, which I'm marking as Exhibit 2. Do you recognize this document?

MR. MCENTIRE: Mark, at this time he's only asking whether you recognize it.

A. Yeah, I haven't made it to the bottom, I apologize.

MR. MCENTIRE: Okay.

A. What is the question now?

Q. (By Mr. Lang) Well, do you recognize this organizational structure? Let me change the question.

A. Do I recognize this structure. Generally -- very generally.

Q. Okay. And starting at the top, charitable DAF Holdings Corp, do you see that box?

A. Yes, I do.

Q. Is that owned by CLO HOLD CO?

MR. MCENTIRE: Objection, form.

A. I don't know -- I don't know. I can't recall

precisely if there's other entities in -- in between that, you know, whether that links up to CLO Hold Co.

Q. (By Mr. Lang) Does CLO Hold Co indirectly own charitable -- charitable DAF holdings Corp.?

MR. MCENTIRE: Objection, form.

A. Yeah, again, I can't answer with accuracy here unless you showed me a corporate -- some actual corporate filings or something like that.

Q. (By Mr. Lang) Is this generally the structure for the RAND -- structure -- is it generally a structure it looks like today?

MR. MCENTIRE: Objection, form.

A. What part of the structure are you referring to, Mr. Lang?

Q. (By Mr. Lang) Well, the whole thing. Charitable DAF Holdings Corp?

A. No.

Q. Does it own Rand Advises LLC?

A. Yeah, can you restate that question, again?

Q. Does charitable DAF Holdings Corp, top box, the sole member of Rand Advisers LLC? The green box to the left.

A. Yes, that is -- that is my understanding.

Q. Okay. Does charitable DAF holdings Corp, the box at the top, is it still the sole member of Rand PD fund

management LLC?
A. I would -- I would believe so.
Q. Okay. And is RAND PE fund management LLP still the general partner for RAND PE Fund One LP? See it just below it?
A. Yes, I would believe so.
Q. And then charitable DAF Holdings Corp, the box at the top, is it still the sole member for Atlas IDF GP PLLC?
MR. MCENTIRE: Objection, form.
A. Yes, I would believe so.
Q. (By Mr. Lang) Okay. And is Atlas IDF GP LLC still the general corporate for Atlas IDF LP?
MR. MCENTIRE: Objection, form?
A. Yes, I would believe so.
Q. (By Mr. Lang) Okay. And is Atlas IDF LP still the 99 percent limited partner for RAND PE FUND I LP?
MR. MCENTIRE: Objection, form.
A. I'm trying to recall because I have RAND PE FUND in a wind down situation. So I -- I don't know if that is accurate or not offhand.
Q. (By Mr. Lang) And does RAND PE FUND ONE LP still the sole member of Beacon LLC?
MR. MCENTIRE: Objection, form.
A. No.
Q. (By Mr. Lang) Okay. Who -- who owns Beacon

Mountain LLC?

A. An entity called CLO HOLD CO LLC.

Q. And that's different than CLO HOLD CO limited?

A. Yes.

Q. Who owns CLO HOLD CO LLP?

A. I believe it's CLO HOLD CO limited, from my understanding.

Q. And the CLO HOLD CO LLC owned Hunter Mountain?

A. No.

Q. Who owns Hunter Mountain?

A. Beacon Mountain LLC. And I would clarify one thing. I -- it's beneficial -- it's a beneficial ownership. Hunter Mountain investment trust is a trust.

Q. Okay. I appreciate that.

A. Can you do -- if you don't mind, do a summary? I just want to make sure that we're sort of accurate here?

Q. Okay. From what I understand --

A. Yeah, from Beacon Mountain ownership. I just want to make sure you are understanding is --

Q. Beacon Mountain LLC is owned by CLO HOLD CO LLC?

A. Yes.

Q. Beacon Mountain LLC owns Hunter or -- Hunter Mountain Investment Trust is owned by Beacon Mountain LLP?

A. Yes.

MR. MCENTIRE: Objection.

A. (inaudible) beneficial.

MR. MCENTIRE: Yeah, I would object to mischaracterizing his testimony.

MR. LANG: Nobody's mischaracterizing.

Q. (By Mr. Lang) The beneficial owner of Hunter Mountain Investment Trust.

A. Yeah, this is all a current state.

Q. Current state.

And what is your role with Hunter Mountain Investment Trust?

A. My understanding is I'm the -- an administrator which is a -- the control person for that trust.

Q. Are you the control person for Beacon Mountain LLP?

A. Yes.

Q. Are you the control person for CLO HOLD CO LLC?

A. Yes.

Q. Are you the control person for RAND Advisers LLC?

A. Yes.

Q. Are you the control person for RAND PE FUND Management LLC?

A. Yes.

Q. Are you the control person for Atlas IDF GP LLC?

A. Yes.

Q. Are you the control person for the Charitable DAF Holdings Corp?

A. Yes.
Q. And you're the control person for Charitable DAF Fund LP?
I'll -- I'll go back here.
MR. MCENTIRE: Objection, form.
Q. (By Mr. Lang) Are you the control person for Charitable DAF Fund LP?
MR. MCENTIRE: Objection, form.
A. It's -- no, but you should ask me a follow-up question.
Q. What's your role at Charitable DAF Fund LP?
A. Yeah, I'm the control person for the general partner of that limited partnership.
Q. And who's the general partner of the limited partnership?
A. Yeah, and then this is where my memory is -- is -- I'd have to kind of revisit the actual organizational documents to give you a confident a hundred percent answer.
MR. MCENTIRE: Yeah, Mark, let's don't -- let's don't speculate unless he has a document, okay?
A. Yes.
Q. (By Mr. Lang) Are you the control person for CDMCFAD LLC?
MR. MCENTIRE: Can you repeat the question, I didn't hear it, Mr. Lang.

Q. (By Mr. Lang) Mr. Patrick, are you the control person for CDMCFAD LLC?
A. I believe I am.
Q. Does that stand for anything out of curiosity?
A. I don't remember.
Q. All right.
MR. PHILLIPS: Objection, formatting.
Q. (By Mr. Lang) Did you -- you negotiated the settlement agreement that is the subject of (inaudible) correct?
A. Correct.
Q. Did you initiate settlement discussion with about events?
A. What do you mean by initiate.
Q. Well, did you approach them about settlement or did they approach you?
A. I'm sorry, you were slightly muffled there.
Q. I said did they approach you about settling or did you approach them about a potential settlement?
MR. PHILLIPS: Objection to the form of the question?
A. I can't -- I can't recall offhand. Who approached who or -- yeah.
Q. Under the settlement agreement, Hunter Mountain is to receive among other things the Dugaboy note and the

Kirschner claims. Do you know what I'm referring to when I refer to the Dugaboy note and the Kirschner claims?

A. I -- I would appreciate it if you could pull up the -- the Dugaboy note document that you are referring to. There's an awful lot of Dugaboy notes out there, and -- and as a starter and I'd also appreciate if you could pull up for me the -- what you're referring to as the Kirschner Litigation complaint.

Q. I'm referring to what's in the settlement agreement. It refers to the Dugaboy note --

A. Well, then the document speaks for itself, sir. If you want to show me the document, I'll definitely testify to the accuracy of what I signed.

Q. I'm asking if you know what I'm referring to when I refer to the Dugaboy note and the Kirschner claims as re restricted at that point out from Patricia claims as referenced in the settlement agreement.

A. Yeah, and I'm asking you to show me the settlement agreement with the lines and then I -- and I'll verify that for you if you don't mind.

There's a lot of Dugaboy notes out there you have to appreciate that, Mr. Lang.

Q. Which one have you bargained to receive in the settlement agreement?

A. And -- and there's a lot of Kirschner litigation as

well.

Q. Well, the Kirschner litigation is that -- Styled Kirschner versus Dondero Adversary Proceeding 2103076.

Are you familiar with that one?

A. I'm not familiar with that caption. If you could just show me the document that you're -- the complaint that you're referring to, then I will say that is -- that is the litigation that -- that we negotiated for.

Q. Okay.

A. You can bring up the settlement agreement, I'll happily verify that whatever is referenced in there is what I negotiated for, but I'm not gonna broad brush generically say that I negotiated for some Dugaboy note without a little more precision, if you don't mind.

Q. Can you see my screen?

A. Here we go. Yes.

Q. Okay. When I refer to the Dugaboy note, that's the note that I'm referring to. Does that help you?

MR. MCENTIRE: Well, for the record, Mr. Lang, can we just identify that you have put up the actual settlement agreement, is that correct?

MR. LANG: Yes. Sorry. Exhibit 3 will be the settlement agreement. The proposed settlement agreement.

A. Yes, so you're having me refer to the Dugaboy note dated May 31st, 2017, with a face amount of roughly

24 million as the maker and with Highland Capital Management collectively as the payee. That's what -- that's what you're referring me to.

Q. That's what I'm referring you to.

A. And what is your question?

Q. I'm -- I was just asking if you understand what I'm referring to when I say the Dugaboy note?

A. Okay. I understand now what you're referring to.

Q. And then the Kirchner claims are -- means all claims and causes of action that were asserted or could've been asserted by litigation trustee or the litigation subtrust in the capital amended. Do you see that?

A. Yes, I do.

Q. Okay. Let's go up and see the amenities claims. The amended complaint means the Amended Complaint and objection to claims Docket number 158 in Kirschner versus Dondero adversary proceeding 21-03076, do you see that?

A. Yes, I do.

Q. Okay. So if I refer to the Kirchner claims, you know what I'm referring to now?

A. Yes, I do. Thank you.

Q. Okay. How does Hunter Mountain value the Kirchner claims?

MR. MORRIS: Objection to the form of the question.

A. Hunter Mountain is a non-living entity. It's a trust.
Q. (By Mr. Lang) Have you valued the Kirchner claims?
A. I have not had an appraised evaluation. I'm not qualified to appraise value.
Q. Do you have an estimated value of the Kirchner claims?
A. Estimate. Estimate. Who? Are you asking if I've estimated the value?
Q. Yes.
A. Of the Kirchner claim?
Q. Yes.
A. No.
Q. Have you done anything to determine the value of the Kirchner claims?
A. No.
Q. What does Hunter Mountain plan to do with the Kirchner claims after the settlement agreement if it's approved?
MR. MCENTIRE: Objection to the form of the question.
MR. PHILLIPS: Objection, form.
A. So you're asking me to speculate about my future actions --
Q. (By Mr. Lang) I'm not asking you --

A. -- with respect that claim?

Q. What does Hunter Mountain plan to do with the Kirschner claims if the settlement agreement is pursued or --

A. What do you mean by plan?

Q. What is it's intention to do with the Kirschner claims if the settlement agreement is approved?

MR. PHILLIPS: Objection, form.

A. And again, what do you mean by to do?

Q. (By Mr. Lang) What -- are you going to dismiss the claims?

A. I don't -- I won't be the owner of the claim so I couldn't dismiss it.

Q. Is Hunter Mountain going to dismiss the claim?

A. I wouldn't want to -- want to speculate.

Q. Do you have any plans whatsoever sitting here today on what you're going to do -- what Hunter Mountain is going to do with the Kirchner claim if the settlement agreement is approved?

MR. PHILLIPS: Objection, form.

MR. MCENTIRE: Joined objection.

A. And again, help me understand better what you mean by plan because, you know, I have a -- it's -- I have a lot of plans for the weekend, but whether I do it or not, you know, is fairly speculative. You just got to help me kind

of understand what you mean by that.

Q. (By Mr. Lang) I mean, what is your intent? What do you plan to do with the Kirchner claims if the settlement agreement is approved. Why is it such a hard question to answer? It seems very basic?

MR. PHILLIPS: Objection, form.

A. To be fair, Mr. Lang, if the agreement -- the settlement agreement is approved, then Hunter Mountain will have ownership over that claim, and -- one thing -- I guess one thing that is certain that I can tell you as far as a plan is to evaluate and decide what we are going to do.

Q. (By Mr. Lang) And that means pursuing the claims?

MR. MCENTIRE: Objection, form.

A. Wait. I'm sorry. Say that, again.

Q. (By Mr. Lang) I said, and does that include potentially pursuing the claims?

A. By whom?

Q. Hunter Mountain.

A. Oh, pursuing the claim. Well, yes, I would imagine it -- it involves a range of options.

Q. And what -- what is within that range of options that you can think of sitting here right now?

MR. PHILLIPS: Objection, form.

A. I don't know because I'll reach out to my legal advisors and they'll give me a range of options, but, you

know, I would say either move forward or not or whatnot, but I'll let the legal advisors tell me.

MR. MCENTIRE: Yeah, Mark, let me jump in here. You can try to answer the question if you can to the extent you're not relying upon legal advice, okay? And so feel free to do that. If you have to rely upon legal advice, then I instruct you not to answer.

A. At some point in the future, I'll rely upon legal advice to determine what my range of options are.

Q. Has Hunter Mountain performed any analysis of the Dugaboy note?

A. Has Hunter Mountain performed any analysis regarding the Dugaboy note?

Q. Like the valve of the Dugaboy note.

A. Oh, has Hunter Mountain itself determined the --

Q. Yes.

A. -- the -- the value of it. We'll, again, it's an entity and it doesn't, you know, think for itself so I would say, no.

Q. Has anybody with Hunter Mountain analyzed the value of the Dugaboy note?

A. Anybody with? Again, what you are -- I'm the administrator but -- are you talking about people with a role?

Q. Have you? Have you performed any analysis of the

value of the Dugaboy note?
A. No, again, because I'm not a qualified appraiser.
Q. Have you requested anyone to provide an analysis of the valve of the Dugaboy note?
A. Yes.
Q. Who have you requested the value of Dugaboy note?
A. A qualified appraisal company.
Q. Who is that qualified appraisal company?
A. It's a company called Weaver.
Q. Okay. Have they provided you with an opinion on the value of the Dugaboy note?
A. No.
Q. When do expect them -- let me ask this, have they told you when they may be able to provide the opinion of a value of the Dugaboy note?
MR. PHILLIPS: Objection to form?
A. I can't -- I can't recall offhand when they'll provide me an evaluation on that Dugaboy note?
Q. (By Mr. Lang) Okay.
MR. LANG: I'll pass the witness.
MR. MCENTIRE: I'm sorry, Mr. Lang, I couldn't hear you. I apologize.
MR. LANG: I said -- I said I'll pass the witness.
I think David or there are other attorneys

that have questions.

MR. MCENTIRE: Okay.

Is there anyone else who wants to ask Mr. Patrick any questions?

MR. PHILLIPS: Michael could you take down a document?

MR. LANG: Yup, sorry. Thank you.

MR. PHILLIPS: I read it seven times now.

MR. LANG: I got it. I forgot it was up.

MR. MCENTIRE: Anybody else have any questions for Mr. Patrick?

MR. YORK: Go ahead, Matthew.

MR. OKIN: Can everybody hear me okay?

MR. PHILLIPS: Yes.

MR. OKIN: I think, Louis, you and I have an agreement that we were going to postpone our asking questions til tomorrow, is that correct?

MR. PHILLIPS: Correct, at 2:00 o'clock, right? 2:00 o'clock, right?

MR. OKIN: 2:00 o'clock tomorrow. So we'll defer our questions. We are going to take Mr. Patrick's deposition when we recommence at 2:00 o'clock tomorrow.

MR. MCENTIRE: Okay. Anyone else have any questions of Mr. Patrick.

MR. YORK: So -- this is Drew York, I do.

Mr. Phillips, are you okay with me going forward now.

MR. PHILLIPS: I think we -- I forgot, I didn't get a chance to tell you, Mr. York, that I think Mr. Patrick --

Mr. Patrick you want to -- we don't want to wait til 2:00, so --

THE WITNESS: Yeah, let's just keep going.

MR. PHILLIPS: We can keep going. We can move straight on to you. I just didn't know if he wanted a five minute break.

MR. YORK: Let's take five minutes. Let's do that. Let's go off the record, take a five-minute break and come back, how's that?

MR. PHILLIPS: Okay.

(Recess at 12:33 p.m.)

(Resume at 12:41 p.m.)

MR. YORK: Let's go on the record.

EXAMINATION

BY MR. YORK:

Q. Mr. Patrick, good afternoon, my name is Drew York and I represent Patrick Daugherty in this matter. Are you familiar with Mr. Daugherty?

A. Yes.

Q. And how do you know Mr. Daugherty?

A. I knew him from Highland.
Q. Were you also employed at Highland at one point in time?
A. Yes.
Q. What position?
A. I was in the tax department.
Q. Okay. Did you have a title?
A. I was a tax professional.
Q. How long were you employed at Highland?
A. Oh, from 2008 to 2021.
Q. And were you always employed in the position as a taxpayer professional at Highland during that time?
A. Yes.
Q. You mentioned earlier in response to some questions from Mr. Lang that you're currently the administrator or control person for Hunter Mountain, is that correct?
A. Yes.
Q. Okay. When did you take on that role?
A. I believe in 2022.
Q. Did you have -- do you remember when in 2022?
A. I think the latter part of the summer.
Q. Did you have any role at Hunter Mountain trust prior to that time in 2022 when you became the administrator?
A. Can you ask that question one more time?

Q. Sure. Did you have any role at the Hunter Mountain trust prior to the time you became the administrator in 2022?

(Zoom call froze)

THE COURT REPORTER: Is everyone still there?

A. -- recall specifically, you know, so I, you know, I had no formal role.

Q. Okay. When you say you would speak to Mr. Hanus from time to time when he was the administrator, can you describe for me what it was that you would be conferring with him about?

A. Probably would have to be -- involved taxes.

Q. And why was he conferring with you on that based on your -- I assume role at Highland at the time, right?

MR. MCENTIRE: Objection, form.

Q. (By Mr. York) Actually, that's fair. I'll back up and let me ask this question. Did Mr. Hanus reach out to you in his role as the administrator for the Hunter Mountain trust while you were still in the tax department at Highland?

A. I can't recall specifically, but I'm confident that he and I spoke on occasion.

Q. And what do you recall the two of you speaking about?

A. It had to involve tax -- some sort of tax related

type questions.

Q. Did you have any other involvement with the Hunter Mountain Trust at all? Not even in a formal role, but any involvement with the Hunter Mountain Trust at all prior to your becoming the administrator in 2022?

A. No.

Q. Were you ever counsel for the Hunter Mountain Trust?

A. No.

Q. Were you ever counsel to the Hunter Mountain Trust in any fashion?

A. No.

Q. Did you ever conduct any tax analysis with regard to the Hunter Mountain Trust when you were at Highland?

A. I can't recall, specifically.

Q. Can you recall even if you did, when?

A. Well, it'd probably be around -- I mean, it would be when that trust was, you know, created and after it was created.

Q. When was the trust created?

A. I don't recall, specifically.

Q. Do you recall who came up with the idea to create the trust?

A. The idea to create the trust. You know what, I actually do.

Q. Who was that?
A. It was Thomas Surgeon. That's what I seem to recall. He -- he wanted that trust created.
Q. Why?
A. Well, I can't recall specifically, but he was in the compliance department at Highland.
Q. Earlier today Mr. Lang showed you those organizational structure charts that we looked at. I think Exhibit 1 which was the charitable DAF structure chart. And I -- as I understood from your testimony the chart that he put up is no longer accurate. Do you know why it's changed?
MR. PHILLIPS: Objection, form.
MR. MCENTIRE: Following the objection. He's already asked and answered this question too.
A. I'm trying to remember when that exhibit was put in to place, but -- any variably kind of complex sophisticated corporate structures, you know, they're generally -- just don't -- a lot of different reasons for -- for structures to kind of shift throughout the years.
Q. (By Mr. York) And you don't recall specifically when those changes were made to the structure?
A. Well, I think there's -- I guess I'm trying to expresses this -- it's rather fluid. A lot of these kind of structures, you know, just for an example, sometimes you make an investment of certain types and so then you want to

have a special purpose vehicle formed for that investment, and, you know, to hold it, and it can be for a variety of reasons and purposes and whatnot. So that's what I'm kind of saying that, that these structures are always sort of fluid when you have a variety of investment holdings as one reason, and as, you know, tax law changes can influence development of structures, legal -- corporate legal changes. That's why it's -- it's a very complex structure that has a lot of different things, and so you really have to see it and snapshot it in time, you know, but -- but it's always evolving in light of different considerations.

Q. Let's switch gears. Did you have any involvement in the creation and development of the charitable DAF?

MR. MCENTIRE: Objection, form.

MR. PHILLIPS: Objection, form.

A. If you don't mind, could you be a little more specific to what you're referring to charitable DAF?

Q. (By Mr. York) Sure.

Mr. Lang, can you put up the chart for me please, Exhibit 1.

MR. PHILLIPS: I'm having a hard time -- I know there's not a question pending, but what does this have to do with the Daugherty objection?

MR. MCENTIRE: I don't think it has anything to do with the objection.

So, Mr. Lang -- I mean, Mr. York, I don't know how we go here.

MR. PHILLIPS: We're not going to allow any kind of amendment to pleadings or by additional evidence and that sort of thing. I'm just having a hard time with this folderol about -- Daugherty has an objection, but this is not part of it.

MR. YORK: Take down the exhibit for now, I'll go a different route.

Mr. Patrick, have you read Mr. Daugherty objection to the proposed settlement between Highland and the HMIT entities?

A. Yes.

Q. Are you aware that Highland has separately filed an adversary proceeding against Mr. Daugherty?

A. I have an awareness, yes.

Q. Okay. Have you ever read the settlement agreement between Highland and Mr. Daugherty?

A. No.

Q. In the course of the negotiations of the proposed settlement between Highland and the HMIT entities, was there ever any discussions about Mr. Daugherty unresolved class a claim?

MR. PHILLIPS: Objection to form.

A. Yes.

Q. (By Mr. York) When did those take place?
A. I believe during the period of the -- the discussions around the settlement.
Q. Before or after the settlement agreement -- I'm sorry, strike that. Before or after the motion for entry for approval of settlement was filed with the Bankruptcy Court?
A. Oh, I can't recall with that sort of precision.
Q. Did it come up before the parties, that is Highland and HMIT entities reached an agreement in principle to the proposed settlement?
A. Yes, I --
Q. Who brought it up?
A. Not me, is what I can say because it's nothing that was really in my radar screen.
Q. Was it brought up by anybody else on the HMIT entities side?
MR. PHILLIPS: Objection, form.
MR. MCENTIRE: Let me jump in here. I would object to the extent that he's asking you to talk about discussions you've had with Mr. Lewis or other attorneys representing Hunter Mountain. If you can answer that without making reference to any such privileged discussions, you can do so. Otherwise, I will instruct you not to answer.

A. Yeah, no -- I mean, we had substantial all legal involvement and so I think a lot of those discussions -- I mean, it wasn't necessarily me, but is lawyers to lawyers.

Q. (By Mr. York) Did you ever have any communications yourself with anyone on the Highland side regarding Mr. Daugherty unresolved Class A claim in the bankruptcy?

A. I just remember generally speaking -- and it coming up in the settlement negotiations.

Q. I understand that. So is your answer then, no, you did not have any direct conversations with anyone from Highland regarding Mr. Daugherty Class A claim?

A. I wish I could be that precise. I just don't recall. Maybe.

Q. Well, if you did, who would those conversations have been with?

A. Yeah, I don't want to speculate.

MR. MORRIS: Objection form.

Q. (By Mr. York) Are you aware that Highland is engaged in a dispute with the IRS regarding its tax filings from 2008 to 2010?

A. Yes.

Q. Okay. And have you been aware of that since, you know, since the time that you became the administrator at Hunter Mountain Trust?

A. Yes.

Q. And before that?
A. Yes.
Q. All right. What is your understanding of that dispute?
MR. PHILLIPS: Objection, form.
A. That there's a proposed adjustment with respect to the Highland tax return for 2007 and 2008.
Q. Have you had any discussions with anyone from Highland regarding that dispute?
A. When?
Q. At any point in time.
A. Oh, yeah, when I was employed by Highland, yes.
Q. Okay. What about since?
A. When I was employed by Skyview.
Q. When you were employed by Skyview?
A. Yeah.
Q. Okay. Who owns Skyview?
A. My understanding is a Scott Ellington.
Q. Okay. And who did you have those conversations with?
A. Oh, outside counsel.
Q. Other than counsel, have you had discussions with anyone else about the IRS audit dispute?
A. Oh, I'm sure I have.
Q. Do you recall who?

A. Not really, specifically.
Q. Do you recall the last time you did?
A. No.
Q. Do you recall what was said?
A. No.
Q. Are you familiar with what's known an FPAA, F-P-A-A?
A. Yes, I am.
Q. What does that stand for?
A. Final partnership administrator adjustment.
Q. And is that a document or form, I guess, that is issued by the IRS with respect to an audit?
A. Yes, it is.
Q. All right. Do you know whether an FPAA has been issued with regard to Highlands tax filings for 2007-2008?
A. I may have known, but I may have forgotten. That's -- so I don't want to say, I don't know because I just can't -- I can't recall, but I may have known.
Q. I'm not sure -- so you just don't know as you sit here?
A. Well, I'm saying I guess I can't remember, but it's within a realm of possibility that I may have known at some point.
Q. Have you seen it?
A. It's been many years, and that's why my memory

isn't precise enough to give you kind of an affirmative.

MR. MCENTIRE: Mark, don't speculate if you don't remember.

A. Yeah.

Q. (By Mr. York) Have you ever had any discussions with anyone concerning the FPAA if one has actually been issued for either Highland's 2007 at 2008 tax returns?

MR. PHILLIPS: Objection, form.

A. Can you state that again?

Q. (By Mr. York) Sure. Have you ever had any discussions with anyone to the best of your recollection about an FPAA if one has actually been issued concerning Highland's either 2007 or 2008 tax returns?

A. Yeah, I don't recall. If I have or have not, I just don't remember.

Q. You were asked earlier by Mr. Lang about who reached out first on the settlement discussions. Am I correct the settlement discussions between Highland and Hunter Mountain began sometime in, I think, March of this year? Is that right?

A. I -- I don't know with absolute precision, like, I was thinking April.

Q. Did you personally have any direct negotiations with anyone on the Highland side?

MR. MORRIS: Objection.

A. Yes.
Q. (By Mr. York) Who was that?
A. Wait, so restate your question again.
Q. Yeah, my question was did you -- did you have any direct negotiations with anyone on Highland side relating to the proposed settlement?
A. Yes, I did.
Q. And my question then was, who --
MR. MCENTIRE: Objection.
A. The professionals at Highland.
Q. (By Mr. York) So you spoke just with the professionals at Highland? Nobody else?
A. No, I spoke to a lot of, you know, like, my team.
Q. Sure. I'm asking on the Highland side, who did you speak with?
A. Oh, the professionals there at Highland.
Q. Okay, which ones?
A. You know, Mr. Starey, and I guess when you say spoke with, I mean, do you, like, general discussions within a group typesetting. You know, Dave Clause and Tim Corinoir. Those are the names that come to mind.
Q. And you can't recall who initiated the settlement discussions -- the discussions about potentially settling the dispute between Highland and the Hunter Mountain entities, correct?

A. Yeah, I can't, specifically.
Q. You consider yourself to have had a close relationship with Jim Dondero in the past?
MR. MCENTIRE: Objection, form.
MR. PHILLIPS: Objection, form.
A. No.
MR. YORK: So you know that Highland at one point did characterize you as having a close relationship with Mr. Dondero over a more than decade period of time that you worked at Highland.
MR. PHILLIPS: Objection, form.
MR. MCENTIRE: Joined in the objection.
A. I didn't have that awareness.
Q. (By Mr. York) Do you still communicate with Mr. Dondero?
MR. PHILLIPS: Objection, form.
A. No.
Q. (By Mr. York) When was the last time you recall communicating with him?
MR. MCENTIRE: Objection, form.
A. I can't recall precisely.
Q. (By Mr. York) Was it some time within this calendar year?
MR. MCENTIRE: Same objection.
A. No.

Q. (By Mr. York) Last year?
A. Yes.
Q. Do you recall when last year?
A. No.
Q. Can you tell me -- was it, you know, spring, summer, fall 2024? Any idea?
MR. PHILLIPS: Objection, form.
A. Well, I'm pretty confident it was in the summer.
Q. Okay.
A. But it may have been later, but at least the summer.
Q. All right. What do you recall the two of you discussing in the last conversation?
MR. MCENTIRE: Objection, form.
MR. PHILLIPS: Objection, form.
MR. MCENTIRE: Can we have an agreement that one attorney objects, it's good for all?
MR. YORK: Sure.
MR. PHILLIPS: It's fine with me. I can't speak for Mr. Lang or Okin.
MR. LANG: That's fine.
A. I just don't specifically remember.
Q. (By Mr. York) Has Highland capital ever had an ownership interest in Hunter Mountain Trust?
A. Highland Capital Management having an ownership in

Hunter Mountain?

Q. Yeah.

A. To my understanding, no.

Q. Okay. Do you know how Hunter Mountain came to own Class B and Class C limited partnership interest in Highland Capital Management?

A. Yes.

Q. How?

A. Purchase and contribution.

Q. So are you saying that Hunter Mountain purchased Class B Limited partnership interest in Highland Capital?

MR. PHILLIPS: I'm going to object to form.

And counsel, where are we headed here?

MR. YORK: Just trying to make sure we have a full understanding when we go into this hearing. Hunter Mountain interest is as set forth in the -- in the proposed settlement relating to the capital account balance, that's all.

A. What was the question?

Q. Yeah, so did -- I was trying to understand when you said purchase and contribution, what do you mean by that? What's -- what's that number?

A. Yeah, yeah, my understanding is that Hunter Mountain had purchased the -- some interest in Highland Capital Management LP. I don't recall precisely the class

and then it had also acquired interest in Highland Capital Management LP via a contribution contributing a note or an asset into it. Is what I -- is my general understanding.

Q. And is that note, that you're referring to, is that what Coakley has been called the Hunter Mountain Investment Trust note?

MR. PHILLIPS: Objection to form.

A. Yeah, I don't know what you're referring to. I'm just -- my general -- my general knowledge is that -- that there was a note contributed by Hunter Mountain into Highland in exchange for an interest.

Q. (By Mr. York) When did that occur to your knowledge?

MR. PHILLIPS: Objection, form.

A. I can't remember the years gone by.

Q. (By Mr. York) Was it while you were employed with Highland?

A. Yes.

Q. The last couple of questions here, I think, is Hunter Mountain paying the legal expenses for Mr. Phillips and his firm? Relating to the proposed settlement and, I guess, the defense of the proposed settlement at the upcoming hearing?

A. I believe so.

Q. Okay. Is there --

MR. PHILLIPS: I'll answer that, yes.

MR. YORK: Mr. Phillips, if you want to go under oath we can put you under oath as a witness too, but --

MR. PHILLIPS: Let me rephrase. I hope so.

A. Yeah.

Q. (By Mr. York) Is there anyone that's making any payment or contribution to Hunter Mountain in relation to those legal expenses? In other words, is any third party paid Hunter Mountain or reimbursed Hunter Mountain for any legal expenses associated with the proposed settlement?

A. No, but -- except for the current ownership, you know, is probably funding it that way. So CLO HoldCo LLC would be making a contribution into Hunter Mountain to pay legal bills.

Q. All right.

A. And probably -- I'm kinda jumping -- probably go to Beacon Mountain first and then it would go to Hunter Mountain like that.

Q. On up the chain, so to speak?

A. Yeah. Well, I don't know how -- on up the chain -- yeah, until there's cash which would be CLO HoldCo.

Q. Okay. Are there any indemnifications agreements that Hunter Mountain has entered into where it is being indemnified by any parties relating to -- relating to the

settlement at all?

MR. PHILLIPS: Objection, form.

A. Not to my -- not to my knowledge.

Q. Okay. All right.

MR. PHILLIPS: I would qualify that. If you're asking about the settlement agreement, could you put the settlement agreement up because there may be indemnification provisions in the settlement agreement. If you're asking for outside the settlement agreement, that's a different story.

MR. YORK: You took care of that for me Lewis.

A. Yeah, yeah, and no, I appreciate that clarification because I guess I should have asked you either or because I was getting confused thinking that maybe it also includes the settlement agreement. No, my answer is with respect to anything outside of a settlement agreement. There are no indignities to my general understanding.

Q. All right.

With that, I think, at this point, I'll pass the witness back to Mr. Lang, if he's got any further questions.

FURTHER EXAMINATION

BY MR. LANG:

Q. I have one question. You said that Rand PE Fund I, LP was in liquidation, do you recall that?

A. Yeah, yeah, well, I call it a windup.

Q. Windup, okay.

A. Yeah, yeah. It's a windup.

Q. And then I could be wrong, but I think I recall that Mr. Raver testified that Atlas IDF LP was in liquidation, does that sound right?

MR. MCENTIRE: Objection, form.

A. Yeah, windup.

Q. (By Mr. Lang) You said windup also?

A. Yeah, but, but loosely termed they're one and the same.

MR. LANG: Okay. That's all I've got.

MR. MCENTIRE: Anybody else?

MR. OKIN: Well, we'll be back at 2:00 tomorrow.

MR. MCENTIRE: Yeah. Okay. I think that adjourns the deposition Ms. Court Reporter.

(End of Proceedings.)

CHANGES AND SIGNATURE

| PAGE | LINE | CHANGE | REASON |
| --- | --- | --- | --- |
| | | | |

I, MARK PATRICK, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

____________________
MARK PATRICK

THE STATE OF TEXAS
COUNTY OF ________

Before me, _____________________, on this day personally appeared MARK PATRICK, known to me (or proved to me under oath or through ____________________)(description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _______ day of _______________, 20___.

_________________________
Notary Public in and for
the State of Texas

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| | § |
| In re | § Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P, | § Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § |
| | § |

REPORTER'S CERTIFICATION

DEPOSITION OF MARK PATRICK

JUNE 23, 2025

I, IDA ALCALA, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, MARK PATRICK, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on __________________, 2025, to the witness or to the attorney for the witness for examination, signature and return to me by _________________, 2025;

That the amount of time used by each party at the deposition is as follows:

Mr. Lang : (00:28)
Mr. York : (00:27)

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record:

Mr. Michael Lang, Attorney for Dugaboy Investment Trust.
Mr. Sawnie Mcentire, Attorney for Mark Patrick.
Mr. Drew York, Attorney for Patrick Daugherty.

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action

in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of the Texas Rules of Civil Procedure will be certified to after they have occurred.

Certified to by me this 23rd day of June, 2025.

[signature]
Ida Alcala, CSR#12565
CSR Expiration Date: 12/31/26
Firm Registration No. CRF-3
1235 North Loop West
Suite 510
Houston, Texas 77008

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on ___________, 2025.

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Mr. Mcentire, Custodial Attorney;

That $____________ is the deposition officer's charges to the Defendant for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3 and that a copy of this certificate was served on all parties shown herein and filed with the Clerk.

Certified to by me this ______ day of ____________, 2025.

[signature]
Ida Alcala, CSR#12565
Firm Registration No. CRF-3
1235 North Loop West
Suite 510
Houston, Texas 77008
CSR Expiration Date: 12/31/26

**Exhibits**

**13092805 Mark.Patrick.EXHIBIT1**
8:8 28:9 29:20

**13092805 Mark.Patrick.EXHIBIT2**
8:9

**13092805 Mark.Patrick.EXHIBIT3**
16:22

**1**
8:8 28:9 29:20

**12:33**
24:16

**12:41**
24:17

**158**
17:16

**2**

**2**
8:9

**2007**
33:7 35:7,13

**2007-2008**
34:15

**2008**
25:10 32:20 33:7 35:7,13

**2010**
32:20

**2017**
16:25

**2021**
25:10

**2022**
25:19,20, 23 26:3 27:5

**2024**
38:6

**21-03076**
17:17

**2103076**
16:3

**24**
17:1

**2:00**
23:18,19, 20,22 24:7 43:14

**3**

**3**
16:22

**31st**
16:25

**9**

**99**
10:16

**A**

**absolute**
35:21

**account**
39:17

**accuracy**
9:6 15:13

**accurate**
7:9 10:20 11:16 28:11

**acquired**
40:1

**action**
17:10

**actions**
18:24

**actual**
9:7 13:17 16:20

**additional**
30:4

**adjourns**
43:17

**adjustment**
33:6 34:10

**administrator**
12:11 21:23 25:15,24 26:2,9,18 27:5 32:23 34:10

**adversary**
16:3 17:17 30:15

**advice**
21:5,7,9

**adviser**
6:3

**Advisers**
6:3 9:21 12:17

**advises**
6:4 9:18

**advisors**
20:25 21:2

**affirmative**
35:1

**afternoon**
24:21

**agreement**
14:9,24 15:10,17, 19,24 16:10,21, 23 18:18 19:3,7,18 20:4,7,8 23:16 30:17 31:4,10 38:16 42:6,7,8, 9,15,16

**agreements**
41:23

**ahead**
23:12

**amended**
17:12,15

**amendment**
30:4

**amenities**
17:14

**amount**
16:25

**analysis**
21:10,12, 25 22:3
27:13

**analyzed**
21:20

**apologize**
8:13 22:22

**appraisal**
22:7,8

**appraise**
18:5

**appraised**
18:4

**appraiser**
22:2

**approach**
14:15,16, 18,19

**approached**
14:22

**approval**
31:6

**approved**
18:19 19:7,19 20:4,8

**April**
35:22

**asserted**
17:10,11

**asset**
40:3

**assets**
5:15

**assume**
26:14

**Atlas**
10:8,11, 12,15 12:22 43:5

**attorney** 38:17
**attorneys** 22:25 31:21
**audit** 33:23 34:12
**aware** 30:14 32:18,22
**awareness** 30:16 37:13
**awful** 15:5

B

**back** 13:4 24:14 26:16 42:20 43:14
**balance** 39:17
**bankruptcy** 31:6 32:6
**bargained** 15:23
**based** 26:13
**basic** 20:5
**Beacon** 10:22,25 11:11,18, 20,22,23 12:13 41:18
**began** 35:19
**beneficial** 11:12 12:1,5
**bills** 41:15
**bottom** 8:13
**box** 8:21 9:20,21, 24 10:7
**break** 24:11,13
**bring** 16:10
**broad** 16:12
**brought** 31:13,16
**brush** 16:12

C

**calendar** 37:23
**call** 26:4 43:1
**called** 11:2 22:9 40:5
**capital** 17:1,12 38:23,25 39:6,11, 17,25 40:1
**caption** 16:5
**care** 42:11
**cash** 41:22
**CDM** 7:18,22 8:1
**CDMCFAD** 13:23 14:2
**CFAD** 7:18,22 8:1
**chain** 41:20,21
**chance** 24:4
**change** 8:17
**changed** 28:11
**characterize** 37:8
**charitable** 5:15,20, 21 6:13 7:5,6,10, 13,14,17 8:7,20 9:4,15, 20,24 10:7 12:24 13:2,7,11 28:9 29:13,17
**Charities** 8:1
**chart** 6:9,11,14 8:8,9 28:9,10 29:19
**charts** 28:8
**claim** 18:11 19:1,12, 14,18 20:9,19 30:23 32:6,11
**claims** 15:1,2, 15,16 17:9,10, 14,16,19, 23 18:3, 7,15,18 19:3,7,11 20:3,12, 16
**clarification** 42:12
**clarify** 11:11
**class** 30:22 32:6,11 39:5,11, 25
**Clause** 36:20
**CLO** 5:18 6:16 7:6,11,13 8:7,23 9:2,3 11:2,3,5, 6,8,20 12:15
**close** 41:13,22 37:2,8
**Coakley** 40:5
**collectively** 17:2
**communicate** 37:14
**communicating** 37:19
**communications** 32:4
**comp** 6:14
**company** 22:7,8,9
**complaint** 15:8 16:6 17:15
**complex** 28:16 29:8
**compliance** 28:6
**conduct** 27:13
**conferring** 26:10,13
**confident** 13:18 26:21 38:8
**confused** 42:14

**considerations**
29:11

**contributed**
40:10

**contributing**
40:2

**contribution**
39:9,21
40:2
41:8,14

**control**
12:12,13,
15,17,19,
22,24
13:2,6,
12,22
14:1
25:16

**conversation**
38:13

**conversations**
32:10,14
33:19

**Corinoir**
36:21

**Corp**
8:21 9:4,
16,20,24
10:7
12:25

**corporate**
7:23 9:7
10:12
28:17
29:7

**correct**
14:10,11
16:21
23:17,18
25:16
35:18
36:25

**could've**
17:10

**counsel**
27:7,10
33:21,22
39:13

**couple**
40:19

**Court**
26:5 31:7
43:17

**create**
27:22,24

**created**
27:18,19,
20 28:3

**creation**
29:13

**curiosity**
14:4

**current**
12:7,8
41:12

**D**

**DAF**
5:11,12,
20,21,23
6:16 7:5,
6,10,13,
14,17
8:7,20
9:4,16,
20,24
10:7
12:24
13:2,7,11
28:9
29:13,17

**DAFS**
6:13

**dated**
16:25

**Daugherty**
24:22,23,
25 29:23
30:6,10,
15,18,22
32:6,11

**Dave**
36:20

**David**
22:25

**decade**
37:9

**decide**
20:11

**defense**
40:22

**defer**
23:21

**department**
25:6
26:19
28:6

**deposition**
23:22
43:17

**describe**
6:22
26:10

**determine**
18:14
21:9

**determined**
21:15

**development**
29:7,13

**DFW**
8:1

**differences**
6:20

**direct**
32:10
35:23
36:5

**discussing**
38:13

**discussion**
14:12

**discussions**
30:22
31:3,21,
23 32:2
33:8,22
35:5,11,
17,18
36:19,23

**dismiss**
19:10,13,
14

**dispute**
32:19
33:4,9,23
36:24

**Docket**
17:16

**document**
8:10
13:20
15:4,11,
12 16:6
23:6
34:11

**documentation**
6:21

**documents**
7:3,23
13:18

**Dondero**
16:3
17:17
37:3,9,15

**Drew**
23:25
24:21

**Dugaboy**
14:25
15:2,4,5,
10,15,21
16:13,17,
24 17:7
21:11,13,
14,21
22:1,4,6,
11,15,18

**duly**
5:3

**E**

**earlier**
25:14
28:7
35:16

**Ellington**
33:18

**employed**
5:8,24
25:2,9,11
33:12,14,
15 40:16

**employment**
6:2,5

**end**
43:18

**engaged**
32:19

**entered** 41:24
**entities** 5:11,12, 13,14,17, 23 7:2,3 8:4 9:1 30:12,21 31:10,17 36:25
**entity** 5:21 11:2 18:1 21:18
**entry** 31:5
**Estimate** 18:8
**estimated** 18:6,9
**evaluate** 20:11
**evaluation** 18:4 22:18
**events** 14:13
**evidence** 30:4
**evolving** 29:11
**exact** 6:21
**EXAMINATION** 5:4 24:19 42:22
**exchange** 40:11
**exhibit** 8:8,9 16:22 28:9,15 29:20 30:8
**expect** 22:13
**expenses** 40:20 41:9,11
**expresses** 28:23
**extent** 21:5 31:20

**F**

**F-P-A-A** 34:7
**face** 16:25
**fair** 6:8 8:8 20:7 26:16
**fairly** 19:25
**fall** 38:6
**familiar** 16:4,5 24:23 34:6
**fashion** 27:11
**feel** 21:6
**filed** 30:14 31:6
**filings** 9:8 32:19 34:15
**Final** 34:10
**fine** 38:19,21
**firm** 40:21
**five-minute** 24:13
**flowchart** 6:23
**fluid** 28:23 29:5
**folderol** 30:6
**follow-up** 13:9
**forgot** 23:9 24:3
**forgotten** 34:16
**form** 6:24 7:15,19 8:2,24 9:5,12 10:9,13, 17,23 13:5,8 14:20 17:24 18:20,22 19:8,20 20:6,13, 23 22:16 26:15 28:12 29:14,15 30:24 31:18 32:17 33:5 34:11 35:8 37:4,5, 11,16,20 38:7,14, 15 39:12 40:7,14 42:2 43:7
**formal** 26:7 27:3
**formatting** 14:7
**formed** 29:1
**forward** 21:1 24:2
**FPAA** 34:6,14 35:6,12
**free** 21:6
**froze** 26:4
**full** 39:15
**fund** 5:21 7:10,14, 17 9:25 10:3,4, 16,18,21 12:19 13:3,7,11 42:24
**funding** 41:13
**funds** 6:4
**future** 18:23 21:8

**G**

**gears** 29:12
**general** 7:20 10:4,12 13:12,14 36:19 40:3,9 42:17
**generally** 5:23 6:22 8:18,19 9:9,10 28:17 32:7
**generically** 16:12
**gist** 5:23
**give** 7:8 13:18 20:25 35:1
**good** 24:21 38:17
**GP** 7:5 10:8, 11 12:22
**green** 9:21
**group** 5:14 36:20
**guess**

20:9
28:22
34:11,21
36:18
40:22
42:13

**H**

**Hanus**
26:8,17

**happily**
16:11

**hard**
20:4
29:21
30:5

**headed**
39:13

**hear**
13:25
22:22
23:13

**hearing**
39:15
40:23

**Highland**
17:1
25:1,2,9,
12 26:14,
20 27:14
28:6
30:11,14,
18,21
31:9
32:5,11,
18 33:7,
9,12
35:18,24
36:5,10,
12,14,16,
24 37:7,
10 38:23,
25 39:5,
11,24
40:1,11,
17

**Highland's**
35:7,13

**Highlands**
34:15

**HMIT**
30:12,21
31:10,16

**hold**
5:15 7:11
8:23 9:2,
3 11:2,3,
5,6,8,20
12:15
29:2

**Holdco**
5:18,20
6:16
41:13,22

**holdings**
8:21 9:4,
16,20,24
10:7
12:25
29:5

**hope**
41:5

**how's**
24:14

**hundred**
7:9,11,14
8:5 13:18

**Hunter**
5:24,25
11:8,10,
13,22
12:5,9
14:24
17:22
18:1,17
19:2,14,
17 20:8,
18 21:10,
12,15,20
25:16,22
26:1,18
27:2,4,7,
10,14
31:22
32:24
35:19
36:24
38:24
39:1,4,
10,15,23
40:5,10,
20 41:8,
10,14,18,
24

**I**

**idea**
27:22,24
38:6

**identify**
16:20

**IDF**
10:8,11,
12,15
12:22
43:5

**imagine**
20:19

**inaccurate**
7:25

**inaudible**
12:1 14:9

**include**
20:15

**includes**
42:14

**indemnification**
42:8

**indemnifications**
41:23

**indemnified**
41:25

**indignities**
42:17

**indirectly**
9:3

**influence**
29:6

**initiate**
14:12,14

**initiated**
36:22

**instruct**
21:7
31:24

**intent**
20:2

**intention**
19:6

**interest**
38:24
39:5,11,
16,24
40:1,11

**investment**
5:15 6:3,
4 11:13,
23 12:6,
10 28:25
29:1,5
40:5

**involve**
26:25

**involved**
26:12

**involvement**
27:2,4
29:12
32:2

**involves**
20:20

**IRS**
32:19
33:23
34:12

**issued**
34:12,15
35:7,12

**J**

**Jim**
37:3

**Joined**
19:21
37:12

**jump**
21:3
31:19

**jumping**
41:17

**K**

**kind**
6:6,21
13:17
19:25
28:16,19,
23 29:3
30:4 35:1

**kinda**
41:17

**Kirchner**
17:9,19,

22 18:3, 6,11,15, 18 19:18 20:3

**Kirschner** 15:1,2,7, 15,25 16:2,3 17:16 19:3,6

**knew** 25:1

**knowledge** 8:6 40:9, 13 42:3

**L**

**Lang** 5:5 7:17, 22 8:3,16 9:3,9,14, 15 10:11, 15,21,25 12:4,5 13:6,22, 25 14:1,8 15:22 16:19,22 18:3,25 19:10 20:2,7, 12,15 22:19,20, 21,23 23:7,9 25:15 28:7 29:19 30:1 35:16 38:20,21 42:20,23 43:9,12

**law** 29:6

**lawyers** 32:3

**left** 9:22

**legal** 20:24 21:2,5,6, 8 29:7 32:1 40:20 41:9,11, 15

**Lewis** 31:21 42:11

**Liberty** 5:20

**light** 29:11

**limited** 7:13 10:16 11:3,6 13:13,14 39:5,11

**lines** 15:19

**links** 9:2

**liquidation** 42:25 43:6

**listing** 7:2

**litigation** 15:8,25 16:2,8 17:11

**LLC** 7:5,22 8:1 9:18, 21 10:1, 11,22 11:1,2,8, 11,20,22 12:15,17, 20,22 13:23 14:2 41:13

**LLP** 7:18 10:3 11:5,23 12:13

**long** 25:9

**longer** 28:11

**looked** 28:8

**loosely** 43:10

**lot** 6:20 15:5,21, 25 19:23 28:18,23 29:9 32:2 36:13

**Louis** 23:15

**LP** 5:21 7:10,14, 17 10:4, 12,15,16, 21 13:3, 7,11 39:25 40:2 42:25 43:5

**M**

**made** 6:23 8:13 28:21

**make** 11:16,19 28:25 39:14

**maker** 17:1

**making** 31:23 41:7,14

**management** 10:1,3 12:20 17:1 38:25 39:6,25 40:2

**manager** 6:3

**March** 35:19

**Mark** 5:2,7 8:11 13:19 21:3 35:2

**marking** 8:9

**matter** 24:22

**Matthew** 23:12

**MCENTIRE** 6:24 7:15,19 8:2,11, 14,24 9:5,12 10:9,13, 17,23 11:25 12:2 13:5,8, 19,24 16:19 18:20 19:21 20:13 21:3 22:21 23:2,10, 23 26:15 28:13 29:14,24 31:19 35:2 36:9 37:4,12, 20,24 38:14,16 43:7,13, 16

**means** 17:9,15 20:12

**member** 9:21,25 10:8,22

**memory** 13:16 34:25

**mentioned** 25:14

**Michael** 23:5

**million** 17:1

**mind** 11:15 15:20 16:14

29:16 36:21

**minute** 24:11

**minutes** 24:12

**mischaracterizing** 12:3,4

**missing** 5:21

**MORRIS** 17:24 32:17 35:25

**motion** 31:5

**Mountain** 5:24,25 11:1,8, 10,11,13, 18,20,22, 23 12:6, 9,13 14:24 17:22 18:1,17 19:2,14, 17 20:8, 18 21:10, 12,15,20 25:16,22 26:1,18 27:3,4,7, 10,14 31:22 32:24 35:19 36:24 38:24 39:1,4, 10,16,24 40:5,10, 20 41:8, 10,14,18, 19,24

**move** 21:1 24:9

**muffled** 14:17

**N**

**names** 5:16 36:21

**necessarily** 32:3

**negotiated** 14:8 16:8,12, 13

**negotiations** 30:20 32:8 35:23 36:5

**Nobody's** 12:4

**non-living** 18:1

**note** 14:25 15:2,4, 10,15 16:13,17, 18,24 17:7 21:11,13, 14,21 22:1,4,6, 11,15,18 40:2,4,6, 10

**notes** 15:5,21

**number** 17:16 39:22

**O**

**oath** 41:3

**object** 6:24 12:2 31:20 39:12

**objection** 7:15,19 8:2,24 9:5,12 10:9,13, 17,23 11:25 13:5,8 14:7,20 17:16,24 18:20,22 19:8,20, 21 20:6, 13,23 22:16 26:15 28:12,13 29:14,15, 23,25 30:6,11, 24 31:18 32:17 33:5 35:8,25 36:9 37:4,5, 11,12,16, 20,24 38:7,14, 15 40:7, 14 42:2 43:7

**objects** 38:17

**occasion** 26:22

**occur** 40:12

**offhand** 10:20 14:22 22:17

**Okin** 23:13,15, 20 38:20 43:14

**opinion** 22:10,14

**options** 20:20,21, 25 21:9

**organizational** 8:17 13:17 28:8

**owned** 7:18 8:23 11:8,20, 23

**owner** 12:5 19:12

**ownership** 11:12,18 20:9 38:24,25 41:12

**owns** 7:22 10:25 11:5,10, 22 33:17

**P**

**p.m.** 24:16,17

**paid** 41:10

**part** 9:13 25:21 30:7

**parties** 31:9 41:25

**partner** 10:4,16 13:13,14

**partnership** 13:13,15 34:10 39:5,11

**party** 41:9

**pass** 22:20,23 42:19

**past** 37:3

**Patricia** 15:16

**Patrick** 5:2,7,8 14:1 23:4,11, 24 24:5, 6,21,22 30:10

**Patrick's** 23:21

**pay**
41:14

**payee**
17:2

**paying**
40:20

**payment**
41:8

**PD**
9:25

**PE**
10:3,4, 16,18,21 12:19 42:24

**pending**
29:22

**people**
21:23

**percent**
7:9,11,14 8:5 10:16 13:18

**performed**
21:10,12, 25

**period**
31:2 37:9

**person**
12:12,13, 15,17,19, 22,24 13:2,6, 12,22 14:2 25:16

**personally**
35:23

**Phillips**
14:7,20 18:22 19:8,20 20:6,23 22:16 23:5,8, 14,18 24:1,3,9, 15 28:12 29:15,21 30:3,24 31:18 33:5 35:8 37:5,11, 16 38:7, 15,19 39:12 40:7,14, 20 41:1, 2,5 42:2, 5

**place**
28:16 31:1

**plan**
18:17 19:2,5,23 20:3,11

**plans**
19:16,24

**pleadings**
30:4

**PLLC**
10:8

**point**
15:16 21:8 25:2 33:11 34:23 37:8 42:19

**position**
25:5,11

**possibility**
34:22

**postpone**
23:16

**potential**
14:19

**potentially**
20:16 36:23

**precise**
32:12 35:1

**precisely**
7:7 9:1 37:21 39:25

**precision**
16:14 31:8 35:21

**preferred**
6:2

**present**
7:24

**pretty**
38:8

**principle**
31:10

**prior**
25:23 26:2 27:4

**privileged**
31:23

**proceeding**
16:3 17:17 30:15

**Proceedings**
43:18

**professional**
25:8,12

**professionals**
36:10,12, 16

**proposed**
16:23 30:11,20 31:11 33:6 36:6 39:16 40:21,22 41:11

**provide**
22:3,14, 18

**provided**
22:10

**provisions**
42:8

**pull**
15:3,6

**purchase**
39:9,21

**purchased**
39:10,24

**purpose**
29:1

**purposes**
5:15 29:3

**pursued**
19:3

**pursuing**
20:12,16, 19

**put**
6:8 16:20 28:11,15 29:19 41:3 42:6

**Q**

**qualified**
18:5 22:2,7,8

**qualify**
42:5

**question**
6:6 8:15, 17 9:19 13:10,24 14:21 17:5,25 18:21 20:4 21:4 25:25 26:17 28:14 29:22 36:3,4,8 39:19 42:24

**questions**
23:1,4, 10,17,21, 24 25:14 27:1 40:19 42:21

**R**

**radar**
31:15

**Rand**
8:8 9:10, 18,21,25 10:3,4, 16,18,21 12:17,19 42:24

**range**

20:20,21, 25 21:9

**Raver**
43:5

**reach**
20:24 26:17

**reached**
31:10 35:17

**read**
23:8 30:10,17

**realm**
34:22

**reason**
29:6

**reasons**
28:18 29:3

**recall**
7:7 8:25 10:18 14:22 22:17 26:6,21, 23 27:15, 16,21,22 28:3,5,20 31:8 32:13 33:25 34:2,4,18 35:14 36:22 37:18,21 38:3,12 39:25 42:25 43:4

**receive**
14:25 15:23

**recess**
24:16

**recognize**
8:10,12, 16,18

**recollection**
35:11

**recommence**
23:22

**record**
5:6 16:19 24:13,18

**refer**
5:23 15:2,15 16:17,24 17:19

**reference**
31:23

**referenced**
15:17 16:11

**referring**
9:13 15:1,4,7, 9,14 16:7,18 17:3,4,7, 8,20 29:17 40:4,8

**refers**
15:10

**regard**
27:13 34:15

**reimbursed**
41:10

**related**
26:25

**relating**
36:5 39:17 40:21 41:25

**relation**
41:8

**relationship**
37:3,8

**relevance**
6:25

**Relevant**
8:2

**rely**
21:6,8

**relying**
21:5

**remember**
14:5 25:20 28:15 32:7 34:21 35:3,15 38:22 40:15

**repeat**
13:24

**rephrase**
41:5

**Reporter**
26:5 43:17

**represent**
24:22

**representing**
31:22

**requested**
22:3,6

**respect**
7:2,3 19:1 33:6 34:12 42:15

**response**
25:14

**restate**
9:19 36:3

**restricted**
15:16

**resume**
24:17

**return**
33:7

**returns**
35:7,13

**revisit**
13:17

**role**
12:9 13:11 21:24 25:18,22 26:1,7, 14,18 27:3

**roles**
6:5,7

**roughly**
16:25

**route**
30:9

**S**

**Scott**
33:18

**screen**
16:15

31:15

**separately**
30:14

**set**
39:16

**settlement**
14:9,12, 15,19,24 15:9,17, 18,24 16:10,21, 23 18:18 19:3,7,18 20:3,8 30:11,17, 21 31:3, 4,6,11 32:8 35:17,18 36:6,22 39:17 40:21,22 41:11 42:1,6,7, 8,9,15,16

**settling**
14:18 36:23

**sharing**
8:7

**shift**
28:19

**show**
7:3 15:12,18 16:6

**showed**
9:7 28:7

**side**
31:17 32:5 35:24 36:5,14

**signed** 15:13
**sir** 15:11
**sit** 34:19
**sitting** 19:16 20:22
**situation** 10:19
**Skyview** 33:14,15, 17
**slightly** 14:17
**snapshot** 29:10
**sole** 9:21,25 10:8,22
**sophisticated** 5:22 28:16
**sort** 11:16 26:25 29:4 30:5 31:8
**sound** 43:6
**speak** 26:8 36:15 38:20 41:20
**speaking** 26:23 32:7
**speaks** 15:11
**special** 29:1
**specific** 5:13 6:21 29:17
**specifically** 5:16 26:6,21 27:15,21 28:5,20 34:1 37:1 38:22
**speculate** 13:20 18:23 19:15 32:16 35:2
**speculative** 19:25
**spoke** 26:22 36:11,13, 19
**spring** 38:5
**stand** 14:4 34:9
**Starey** 36:18
**starter** 15:6
**starting** 8:20
**state** 5:6 12:7, 8 35:9
**story** 42:10
**straight** 24:10
**strike** 31:5
**structure** 5:22 6:14,16 8:4,7,17, 18 9:9, 10,13 28:8,9,21 29:8
**structured** 8:9
**structures** 28:17,18, 24 29:4,7
**Styled** 16:2
**subject** 14:9
**substantial** 32:1
**subtrust** 17:12
**summary** 11:15
**summer** 25:21 38:6,8,11
**Surgeon** 28:2
**switch** 29:12
**sworn** 5:3

**T**

**talk** 6:9 31:20
**talking** 21:23
**tax** 25:6,8 26:19,25 27:13 29:6 32:19 33:7 34:15 35:7,13
**taxes** 26:12
**taxpayer** 25:12
**team** 36:13
**termed** 43:10
**testified** 5:3 43:5
**testify** 15:12
**testimony** 12:3 28:10
**thing** 9:15 11:12 20:9,10 30:5
**things** 14:25 29:9
**thinking** 35:22 42:14
**Thomas** 28:2
**til** 23:17 24:7
**Tim** 36:20
**time** 8:11 25:3,12, 23,25 26:2,9,14 29:10,21 30:5 32:23 33:11 34:2 37:9,18, 22
**times** 23:8
**title** 25:7
**today** 6:17 9:11 19:16 28:7
**told** 22:14
**tomorrow** 23:17,20, 22 43:15
**top** 6:14 8:20 9:20,25 10:8
**trust** 11:13,23 12:6,10, 12 18:2 25:22

26:2,19 27:3,4,8, 10,14,18, 20,23,24 28:3 32:24 38:24 40:6

**trustee** 17:11

**type** 27:1

**types** 28:25

**typesetting** 36:20

**U**

**understand** 11:17 17:6,8 19:22 20:1 32:9 39:20

**understanding** 7:12,21 9:23 11:7,19 12:11 33:3,18 39:3,15, 23 40:3 42:17

**understood** 28:10

**unresolved** 30:22 32:6

**upcoming** 40:23

**V**

**valued** 18:3

**valve** 21:14 22:4

**variably** 28:16

**variety** 29:2,5

**vehicle** 29:1

**verify** 15:19 16:11

**versus** 16:3 17:16

**W**

**wait** 20:14 24:7 36:3

**walk** 7:4

**wanted** 24:10 28:3

**Weaver** 22:9

**weekend** 19:24

**whatnot** 21:1 29:3

**whatsoever** 19:16

**wind** 6:3 10:19

**windup** 43:1,2,3, 8,9

**words** 41:9

**work** 5:10,11 6:9

**worked** 37:10

**wrong** 43:4

**Y**

**year** 35:20 37:23 38:1,3

**years** 28:19 34:25 40:15

**York** 23:12,25 24:4,12, 18,20,21 26:16 28:20 29:18 30:1,8 31:1 32:4,18 35:5,10 36:2,11 37:7,14, 18,22 38:1,18, 23 39:14 40:12,16 41:2,7 42:11

**Yup** 23:7

**Z**

**zoom** 26:4

# EXHIBIT C

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 4, 2026 9:48 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

Mr. Edney,

Thank you for your message, though it not reflective of my prior communications, and represents a misstatement of what I think has been and is our clear position. I respond as follows:

First, we appreciate your agreement to a remote deposition. Please send your revised notice reflecting a remote deposition commencing May 7, 2026 at 9:00 am Central. We assume there will be no subpoena. We actually have been counsel at remote depositions before, and are fully aware of the dictates to insure integrity. So we will not be in the room with the witness, will not

communicate with the witness while he is testifying, and will observe all deposition requirements as though we were present.

Regarding scope of deposition, my messages have been clear. Our interpretation of the Court's order is that the deposition should be limited in scope as we have set forth in multiple messages. So, while I have assured you that on my own I will not instruct Mark Patrick not to answer on a substantive basis, that assurance is modified by my clear assertion that my assurance is conditioned – "unless the Court by order agrees with our position and limits the scope in accordance with our interpretation of what we think was the intention of the Court."

So our issues with respect to scope are not resolved. We are prepared to file a motion for entry of a protective order regarding the scope of Mr. Patrick's deposition testimony, along with a motion for emergency expedited hearing for some time tomorrow. The Court is at a conference but as the Judge said in open Court, if we need him he will try to make himself available.

To summarize: (i) we do not have an agreement as to all issues; and (ii) now that you have agreed to a remote deposition, please advise if you do or do not consent to an expedited hearing on a motion for protective order with respect to scope of the deposition. We will send our motion for protective order and motion for expedited hearing in the morning before we file unless we have a full scale agreement (which, unless we can have an agreement as to scope of the deposition, we will not). Again, while we appreciate that you say you will revise the deposition notice, we assume we will not receive it before the morning, so we will proceed with what we have – an outdated, unserved and wrongly dated notice, without subpoena, as basis for our motion.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Monday, May 4, 2026 7:37 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Dear Mr. Phillips:

If I am reading your email correctly, thank you for your confirmation that you will not instruct Mr. Patrick not to answer questions based on your date range contention.

I understand that you continue to insist on Mr. Patrick's deposition to be held remotely. We have the right to specify the place and manner of the deposition, and the Court reiterated its understanding that this proceeding will result in live testimony.

At the same time, given that you seem intent to seek judicial intervention in favor of a remote deposition, I am willing to accede to your request that the deposition be held remotely in order to avoid the consumption of judicial resources. We do so on the understanding and condition that Mr. Patrick will not be physically sitting with counsel or their agents or anyone else at the place from which he will be deposed, that he will be cut off from communications during questioning save the deposition platform itself, and such other reasonable measures to ensure the deposition's integrity.

We will issue an amended notice. I am hopeful that doing so completely resolves any issues regarding these upcoming depositions. We are mindful of the Court's admonition to work to eliminate the need for its further intervention, and we are doing our part.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

**Sent:** Monday, May 4, 2026 4:25 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Mr. Edney,

I do not propose to instruct the witness not to answer as long as the questions are limited to the topics allowed by the Court. Also, I do not propose to instruct the witness not to answer substantive questions that are within the prescribed issues as ordered by the Court but that might not be limited to the Court imposed time frame as to document discovery, unless the Court by order agrees with our position and limits the scope in accordance with our interpretating of what we think was the intention of the Court.

First order of business: Attached is the current version of the notice of deposition that I have received. I assume you have issued a subpoena seeking to compel attendance at a deposition on May 7, 2026 at 9:00 am (we have not seen one). Please send me that subpoena (which refers to a correct notice of deposition). While we want to start a remote deposition at 8:00 am, which you apparently were willing to do earlier (though in person), we are not fighting about a commencement time. We are considering the possibility of accepting service of a subpoena seeking to compel the deposition and because we want to get a ruling on the proper scope of the deposition, are preparing a motion for protective order assuming the issues are ripe for review by the Court (which seems to require service). We suggest that it makes seems to streamline issues to be resolved.

Resolving the remote issue would lead to a streamlined presentation to the Court that will allow us to present our (very succinct) position and allow you to counter so the all parties will know the proper scope of the deposition. But, if we are going to accept service of a deposition subpoena, it makes sense that (i) we see the subpoena, and (ii) the deposition notice refer to the deposition date and time that you have agreed to. Thank you for your attention to this.

Finally, this message will confirm again that I have accepted service of the trial subpoena (also attached), and that Mr. Patrick will be at the May 11 hearing, in person.

**Louis M. Phillips**
*Partner*

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763

DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Monday, May 4, 2026 2:24 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Dear Mr. Phillips:

I am willing to discuss the logistics of the deposition. But I have to insist that you answer my questions. Given your Sunday morning email, are you going to instruct Mr. Patrick not answer questions regarding events outside the 5/19/25 to February 2026 date range set for document production? I note that the paragraph in the Court's order regarding depositions contains no such date limitation. I certainly hope the answer my substantive question is "no" so we can move on to the finer mechanical details.

I look forward to working with you further on these important matters.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 4, 2026 12:17 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Counsel,

I appreciate the email. Please advise if you are amenable to a remote deposition. If that issue is resolved we can discuss the remainder of what we see as the issues. While it might involve the Court, at least we could have an agreed process for involving the Court to best insure an efficient process and a quick resolution.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | |

**PROTECTVE ORDER REGARDING DEPOSISTION OF MARK PATRICK**

Having considered that certain *Emergency Motion for Protective Order relating to that certain Deposition Subpoena* (the "Motion for Protective Order") filed by Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities"); and the

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as Article XI of the Plan; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) notice of the Motion was proper and sufficient under the circumstances and no further or additional notice need be given; **IT IS ORDERED, ADJUDGED, AND DECREED THAT**

**1.** For the reasons stated on the record at the conclusion of the Hearing, Mark Patrick shall appear for a remote deposition in this contested matter on May 7, 2026 at 9:00 A.M. CST (the "Patrick Deposition"), not to exceed seven (7) hours.

**2.** The Patrick Deposition will take place by remote means with such remote means to be provided by Dugaboy Investment Trust to counsel at least twenty-four (24) hours prior to the Patrick Deposition.

**3.** The Patrick Deposition shall be limited be limited in scope to transactions or events after May 18, 2025: (a) relating to Mark Patrick's authority to sign the Settlement Agreement & General Release [Dkt. No. 4217-1] on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP and (b) the restructuring of and transactions related to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC.

### End of Order ###

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR HMIT ENTITIES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |

**UNOPPOSED MOTION FOR EXPEDITED HEARING ON THE EMERGENCY MOTION FOR PROTECTIVE ORDER**

**NOW INTO COURT**, through undersigned counsel, comes Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities") which move for the entry of an order granting an expedited hearing on the *Emergency Motion for*

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

*Protective Order relating to that certain Deposition Notice* (the "Motion for Protective Order"). In support of their request for an expedited hearing, the HMIT Entities states as follows:

1. The Motion for Protective Order relates to that certain deposition of Mr. Mark Patrick, that the parties have agreed, despite the lack of deposition notice or subpoena, will take place on May 7, 2026 (the "Patrick Deposition").

2. The HMIT Entities filed the Motion for Protective Order and this Motion seeking expedited consideration on the morning of May 5, 2026, to facilitate the resolution of this dispute without any delay of the Patrick Deposition or the May 11, 2026 hearing on *Motion for Relief* [Dkt. No. 4513] (the "Rule 60(b) Motion").

3. The HMIT Entities are in an unusual posture of not being served a deposition notice or subpoena reflecting the agreed upon date and time for the Patrick Deposition. On April 29, 2026, Dugaboy filed a Notice of Deposition seeking to set the Patrick Deposition for May 6, 2026 at 8:00 a.m. to be conducted as the offices of King & Spalding, LLP in Dallas, Texas. Dkt. No. 4577. This Notice of Deposition has not been served. Given the parties' discussions outlined in the Motion for Protective Order, showing that the parties set aside May 7, 2026 (commencing at 9:00 a.m. Central as the date and time of the Patrick Deposition), the HMIT Entities believe this notice is withdrawn. But it has not been replaced. Despite this quandary, the HMIT entities believe there is a dispute concerning the scope of the Patrick Deposition, that cannot be resolved without the Court's intervention.

4. The HMIT Entities have asked counsel for a deposition notice (or subpoena) in three separate email correspondences, but as of filing of this Motion for Protective Order have not received any notice, though on the evening of May 4, Dugaboy counsel advised that they would send an updated notice.[2]

5. Nonetheless, the HMIT Entities are wary that any delay in addressing the issues surrounding the Patric\k Deposition may be cited as basis to further delay adjudication and, as such, have moved proactively for a protective order.

6. Undersigned counsel confirms that counsel for Dugaboy and Highland Capital Management, L.P. consent to an expedited setting on the Motion for Protective Order. Undersigned counsel provided the Motion for Protective Order along with the proposed order thereupon, along with this Motion and the proposed order prior to filing with the Court.

**CONCLUSION**

7. The HMIT Entities move this Court to set the Motion for Protective Order on an emergency basis, as quickly as the Court is available so the Patrick Deposition (and scheduled May 11, 2026 hearing) may proceed as scheduled.

Respectfully Submitted:

**KELLY HART PITRE**

***/s/ Louis M. Phillips***

Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)

---

2 Exhibit A – 5/4/2026 Email Trail.

400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

***Counsel for the HMIT entities***

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this May 5, 2026.

***/s/ Louis M. Phillips*****_____**
Louis M. Phillips (#10505)

## CERTIFICATE OF CONFERENCE

I, undersigned counsel, hereby certify that counsel for Highland consent to an emergency hearing on the Motion for Protective Order. Counsel for Dugaboy has responded that it "stands ready to [litigate this issue" which the HMIT Entities interpret as consenting to an expedited hearing.[3]

***/s/ Louis M. Phillips*****_____**
Louis M. Phillips (#10505)

---

3 Exhibit B – 5/5/2026 Email Trail.

# EXHIBIT A

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 4, 2026 9:48 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

Mr. Edney,

Thank you for your message, though it not reflective of my prior communications, and represents a misstatement of what I think has been and is our clear position. I respond as follows:

First, we appreciate your agreement to a remote deposition. Please send your revised notice reflecting a remote deposition commencing May 7, 2026 at 9:00 am Central. We assume there will be no subpoena. We actually have been counsel at remote depositions before, and are fully aware of the dictates to insure integrity. So we will not be in the room with the witness, will not

communicate with the witness while he is testifying, and will observe all deposition requirements as though we were present.

Regarding scope of deposition, my messages have been clear. Our interpretation of the Court's order is that the deposition should be limited in scope as we have set forth in multiple messages. So, while I have assured you that on my own I will not instruct Mark Patrick not to answer on a substantive basis, that assurance is modified by my clear assertion that my assurance is conditioned – "unless the Court by order agrees with our position and limits the scope in accordance with our interpretation of what we think was the intention of the Court."

So our issues with respect to scope are not resolved. We are prepared to file a motion for entry of a protective order regarding the scope of Mr. Patrick's deposition testimony, along with a motion for emergency expedited hearing for some time tomorrow. The Court is at a conference but as the Judge said in open Court, if we need him he will try to make himself available.

To summarize: (i) we do not have an agreement as to all issues; and (ii) now that you have agreed to a remote deposition, please advise if you do or do not consent to an expedited hearing on a motion for protective order with respect to scope of the deposition. We will send our motion for protective order and motion for expedited hearing in the morning before we file unless we have a full scale agreement (which, unless we can have an agreement as to scope of the deposition, we will not). Again, while we appreciate that you say you will revise the deposition notice, we assume we will not receive it before the morning, so we will proceed with what we have – an outdated, unserved and wrongly dated notice, without subpoena, as basis for our motion.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Monday, May 4, 2026 7:37 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Dear Mr. Phillips:

If I am reading your email correctly, thank you for your confirmation that you will not instruct Mr. Patrick not to answer questions based on your date range contention.

I understand that you continue to insist on Mr. Patrick's deposition to be held remotely. We have the right to specify the place and manner of the deposition, and the Court reiterated its understanding that this proceeding will result in live testimony.

At the same time, given that you seem intent to seek judicial intervention in favor of a remote deposition, I am willing to accede to your request that the deposition be held remotely in order to avoid the consumption of judicial resources. We do so on the understanding and condition that Mr. Patrick will not be physically sitting with counsel or their agents or anyone else at the place from which he will be deposed, that he will be cut off from communications during questioning save the deposition platform itself, and such other reasonable measures to ensure the deposition's integrity.

We will issue an amended notice. I am hopeful that doing so completely resolves any issues regarding these upcoming depositions. We are mindful of the Court's admonition to work to eliminate the need for its further intervention, and we are doing our part.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

**Sent:** Monday, May 4, 2026 4:25 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Mr. Edney,

I do not propose to instruct the witness not to answer as long as the questions are limited to the topics allowed by the Court. Also, I do not propose to instruct the witness not to answer substantive questions that are within the prescribed issues as ordered by the Court but that might not be limited to the Court imposed time frame as to document discovery, unless the Court by order agrees with our position and limits the scope in accordance with our interpretating of what we think was the intention of the Court.

First order of business: Attached is the current version of the notice of deposition that I have received. I assume you have issued a subpoena seeking to compel attendance at a deposition on May 7, 2026 at 9:00 am (we have not seen one). Please send me that subpoena (which refers to a correct notice of deposition). While we want to start a remote deposition at 8:00 am, which you apparently were willing to do earlier (though in person), we are not fighting about a commencement time. We are considering the possibility of accepting service of a subpoena seeking to compel the deposition and because we want to get a ruling on the proper scope of the deposition, are preparing a motion for protective order assuming the issues are ripe for review by the Court (which seems to require service). We suggest that it makes seems to streamline issues to be resolved.

Resolving the remote issue would lead to a streamlined presentation to the Court that will allow us to present our (very succinct) position and allow you to counter so the all parties will know the proper scope of the deposition. But, if we are going to accept service of a deposition subpoena, it makes sense that (i) we see the subpoena, and (ii) the deposition notice refer to the deposition date and time that you have agreed to. Thank you for your attention to this.

Finally, this message will confirm again that I have accepted service of the trial subpoena (also attached), and that Mr. Patrick will be at the May 11 hearing, in person.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763

DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Monday, May 4, 2026 2:24 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Dear Mr. Phillips:

I am willing to discuss the logistics of the deposition. But I have to insist that you answer my questions. Given your Sunday morning email, are you going to instruct Mr. Patrick not answer questions regarding events outside the 5/19/25 to February 2026 date range set for document production? I note that the paragraph in the Court's order regarding depositions contains no such date limitation. I certainly hope the answer my substantive question is "no" so we can move on to the finer mechanical details.

I look forward to working with you further on these important matters.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 4, 2026 12:17 PM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Counsel,

I appreciate the email. Please advise if you are amenable to a remote deposition. If that issue is resolved we can discuss the remainder of what we see as the issues. While it might involve the Court, at least we could have an agreed process for involving the Court to best insure an efficient process and a quick resolution.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

# EXHIBIT B

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Tuesday, May 5, 2026 10:03 AM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

Mr. Edney,

Appreciate the message. I think we are where we are (not adverse to the Court's Order, but standing by our interpretation of it). And you are where you are. I do not see any way to resolve this problem. I understand I am seeking relief from the court, and on an interesting ground – one where I have not seen a deposition subpoena nor a notice providing for the correct time and place of the deposition. While we are seeking Court involvement, the issue should be easily resolved by the Court. Perhaps I am missing a middle ground, but I think it is an either/or proposition.

To be clear, again. We agree to accept service of the Trial subpoena and Mr. Patrick will be in Lubbock for trial. We assume there will be a notice of deposition for the correct date and time and Mr. Patrick will appear remotely. We will be filing our revised motion and motion for emergency hearing shortly, recognizing the effect of your message below. Thank you again.

**Louis M. Phillips**
*Partner*

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Edney, Michael <michael.edney@morganlewis.com>
**Sent:** Tuesday, May 5, 2026 9:55 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Dear Mr. Phillips:

Solely to reduce or eliminate the need for judicial intervention, we have agreed to make the deposition remote and to hold it on Thursday, starting at 9am, as clearly stated in my email yesterday. Consistent with the Court's instructions to avoid disputes, we have (albeit reluctantly and solely in an effort to honor the Court's wishes with respect to proactive dispute resolution) taken that issue off the board.

As for your assertions about the scope of the deposition, we are fully committed to complying with the Court's order, which limits the deposition to two substantive topics but does not (as you contend) constrain deposition questions to events occurring within a certain date range. If you are seeking the transpose the date range for documents as a constraint on deposition questions, your dispute is not really with Dugaboy. Your dispute is with the Court's order.

The Court was clear that it did not want disputes fomenting this week. It would be unfortunate if you created a further motion practice (as it was unfortunate that you did not seek clarity when the order governing these matters was issued, as Dugaboy did with respect to document production). But it is obviously your right to petition the Court. If you would like to discuss this matter before bringing further motion practice to the Court, I stand ready to do so.

My very best regards,

Mike

**Michael Edney**
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW | Washington, DC 20004-2541
Direct: +1.202.739.5429 | Main: +1.202.739.3000 | Fax: +1.202.739.3001
michael.edney@morganlewis.com | www.morganlewis.com

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Tuesday, May 5, 2026 10:02 AM
**To:** Edney, Michael <michael.edney@morganlewis.com>; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Zachery Annable <zannable@haywardfirm.com>; Mark T. Stancil (mstancil@willkie.com) <mstancil@willkie.com>; Levy, Joshua S. <jlevy@willkie.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Sawnie A. McEntire <smcentire@pmmlaw.com>; Sydney Rose <srose@kslaw.com>; Nancy Bello <nbello@kslaw.com>; Geoffrey Harper <gharper@kslaw.com>; Mike Gaddis <mgaddis@kslaw.com>
**Subject:** RE: Meet and confer on deposition and hearing scheduling

[EXTERNAL EMAIL]
Mr. Edney and counsel,

This is a follow up to my message below. We have been clear that we have a dispute as to the scope of the Mark Patrick Deposition. As of now we are on a tight time table, and need to get this issue before the Court. I requested last night that you advise me whether, in light of our intention to bring the scope of the Mark Patrick deposition before the Court, you maintain your agreement as to a remote deposition or withdraw such consent (it seems to us that you require resolution of all issues as a condition to a remote deposition, but we could be wrong).

Given our uncertainty, we have drafted two alternative forms of motion for protective order, one limited to the issue of deposition scope and the other including the issue of requiring a remote deposition (along with proposed orders). As well we attach a motion for expedited consideration (with proposed order). We note in the certificate of counsel that counsel for all parties agree to expedited consideration, but if that is not correct, please advise. Please tell us whether the issue of remote deposition has been resolved or if consent has been withdrawn.

We need to file shortly. If we do not hear from you quickly we will assume that consent has been withdrawn re the remote deposition and adjust the version including both concerns for that assumption. Also, if we do not hear regarding consent to expedited consideration we will assume Dugaboy objects. I have visited with Mr. Morris and HCMP consents to expedited consideration.

**Louis M. Phillips**
*Partner*

KELLY HART PITRE
ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

Case 3:26-cv-02496-D Document 17-10 Filed 09/08/26 Page 335 of 347 PageID 6470

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | |

**ORDER GRANTING EXPEDITED HEARING ON MOTION FOR PROTECTVE ORDER REGARDING DEPOSITION OF MARK PATRICK**

Having considered that certain *Motion for Emergency Hearing* on the *Emergency Motion for Protective Order relating to that certain Deposition Subpoena* (the "Motion for Protective Order") filed by Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"),

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Rand PE Fund Management, LLC ("Rand GP" with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, the "HMIT Entities"); and the Court having found that good cause for an emergency hearing, **IT IS ORDERED THAT**

The Court shall conduct a hearing on the Motion for Protective Order on May [], 2026 at [] p.m. (CT) by WebEx. WebEx attendance information is posted on the Court's website, www.txnb.uscourts.gov, under Judge Odell's "Hearing Dates and Calendar" tab.

### End of Order ###

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (BWO) |

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICE AND PLEADINGS**

Michael J. Edney of Morgan, Lewis & Bockius LLP on behalf of The Dugaboy Investment Trust ("Dugaboy") hereby repeats his notice of his appearance in this case pursuant to Bankruptcy Rule 9010, in order to ensure that ECF notifications are received.

Please serve copies of all notices and other documents issued by the Clerk of the Court and all other pleadings and notices to parties in interest filed by Debtor, the Creditors' Committee, or any other interested parties in this case, including disclosure statements and/or schedules, in accordance with Bankruptcy Rules 2002, 3017, and 9013 and any other Bankruptcy Rules or local rules governing notice to the following address:

Michael J. Edney
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541

Dated: May 5, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ *Michael J. Edney*

Sydney A. Rose
Texas Bar No. 24150011
Geoffrey S. Harper
Texas Bar No. 00795408
John Michael Gaddis
Texas Bar No. 24069747
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
T. (214) 764-4600
F. (214) 764-4601
gharper@kslaw.com
mgaddis@kslaw.com
srose@kslaw.com

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice of Appearance and Request for Service of Notice and Pleadings was served on May 5, 2026 on all parties entitled to receive service through the Court's ECF system.

/s/ *Michael J. Edney*
Michael J. Edney

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 5, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj11** |
| | § | |
| | § | |
| **Debtor.** | § | |

**ORDER DENYING MOTION FOR EXPEDITED HEARING**

On May 5, 2026, Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and Rand PE Fund Management, LLC moved for expedited consideration (the "Expedited Hearing Motion") [Dkt. No. 4593] of their *Emergency Motion for Protective Order Concerning Deposition* (the "Motion for Protective Order") [Dkt. No. 4592]. The Court will permit an opportunity to respond to the Motion for Protective Order and enter its decision without a hearing. It is, therefore,

ORDERED that the Expedited Hearing Motion is denied; it is further

ORDERED that Dugaboy Investment Trust shall, no later than May 6, 2026, at 8:00 am prevailing central time, file its response, if any, to the Motion for

Protective Order. After such deadline, the Court will enter a decision based on the pleadings; and it is finally

ORDERED that this Court retains jurisdiction to interpret and enforce the terms of this Order.

### End of Order ###

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S RESPONSE IN OPPOSITION TO THE MOVING PARTIES' EMERGENCY MOTION FOR PROTECTIVE ORDER CONCERNING DEPOSITION**

NOW INTO COURT, through undersigned counsel, comes the Dugaboy Investment Trust ("Dugaboy"), which opposes the Emergency Motion for Protective Order [Dkt. 4592] (the "Motion") filed by Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain, LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), and Rand PE Fund Management, LLC ("Rand G," and with HMIT, Beacon Mountain, Rand Advisors, and Rand PE Fund, the "HMIT Entities"). In support thereof, Dugaboy states as follows:

1. On April 27, 2026, the Court entered its Order on Motion for Protective Order and Motion to Quash (Dkt. 4566) (the "Discovery Order"). Paragraph 15 provides that "[a]ll depositions taken by Dugaboy in connection with the Rule 60(b) Motion are limited in scope to Mark Patrick's authority to sign the Settlement Agreement & General Release (Dkt. 4217–1) on behalf of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP and the restructuring of and transactions related to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDF GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC."

2. The Discovery Order limits depositions to two substantive topics without temporal limitation. It does not constrain deposition questions, as the HMIT Entities now contend, to events occurring within the May 19, 2025 through February 8, 2026 date range that applies to document production. The date range in Paragraphs 1 through 14 of the Discovery Order governs the production of "documents and communications." Paragraph 15 regarding depositions contains no temporal limitation. The HMIT Entities themselves concede this point. Motion ¶ 18.

3. There are grounds for the distinction that the Court made. Those moving for the protective order complained about the burden of searching for documents far into the past. The Court's

limitation on the document production addressed those burden arguments. And those burden arguments do not apply to a witness answering oral questions under oath. In addition, the "documents and communications from May 19, 2025, through February 8, 2026," while created during that period, are about events occurring prior to that date range, as the principal substantive topic of the discovery—the restructuring—by and large occurred previously. Order ¶¶ 1-14. The Court correctly did not place a restraint on the timing of events about which Dugaboy could ask questions. *Compare* Order ¶¶ 1-14 (placing limitations on document production) with *id*. ¶ 15 (limiting deposition questions to two substantive topics, but declining to place a time scope limit on those questions); *see, e.g., Adkins v. Vilsack*, 252 F. Supp. 3d 588, 600 (N.D. Tex. 2017) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

4. The HMIT Entities' reliance on *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976), does not save their argument. The Court was fully aware of Mr. Patrick's prior June 2025 deposition when it entered the Discovery Order granting Dugaboy the right to take depositions on these two topics. The Court's decision to permit further testimony is itself the answer to the "second bite theory" and it was an argument the HMIT Entities could have raised, but did not, before the Discovery Order was entered.

5. The restructuring of and transactions related to the entities identified in the Discovery Order occurred almost exclusively before May 19, 2025. Imposing the document-production date range as a limitation on discovery testimony would effectively prohibit Dugaboy from asking Mr. Patrick any meaningful questions about the very topics the Court authorized for deposition. The HMIT Entities' interpretation would render Mr. Patrick's deposition a nullity.

6. The HMIT Entities have created an unnecessary emergency with this filing. The Discovery Order was entered on April 27, 2026, giving the HMIT Entities more than a week to seek modification of the Order. Dugaboy, for its part, within 24 hours sought and argued for a change to the order with respect to document production, a request that this Court denied. Dkt. 4570. The HMIT Entities responded in briefing and at the hearing on Dugaboy's request and could have used that opportunity to raise any changes they wanted to the Order but instead asked the Court not to change its Order in any way. Dkt. 4572. They instead waited until two days before the agreed deposition to bring their request to the Court and seek emergency relief.[1]

7. By contrast, Dugaboy has taken the Court's admonition at its last hearing seriously and endeavored to avoid any disputes reaching this Court. Dugaboy worked with counsel for the Debtor to reduce the total number of depositions from five to two. Dugaboy reached agreement with counsel for the Debtor on witnesses for the hearing. And Dugaboy set aside its strongly held desire and entitlement to depose Mr. Patrick in person, given the HMIT Entities' insistence that he be deposed remotely and their stated intention to seek this Court's intervention if the deposition were not held remotely. The HMIT Entities' view that the deposition questions should be limited to events occurring within a certain date range came at the latest possible moment, where all other issues were nearly worked out.

8. Dugaboy respectfully requests that the Court deny the Motion and permit the deposition of Mark Patrick to proceed as scheduled on May 7, 2026, without changes to this Court's order governing the discovery process.

[1] To the extent the HMIT Entities' Motion complained of the absence of a deposition subpoena (Motion ¶¶ 17, 13), that issue is now moot. On the morning of May 5, 2026, Dugaboy served an updated deposition subpoena and notice for Mr. Patrick's deposition.

Dated: May 5, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney A. Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 5, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper