**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P.

§
§ Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§
vs. §

3:26-CV-02496-D

**Highland Capital Management, L.P., et al**-Appellee
§
§

**[4689] Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026**

**APPELLANT RECORD**

**VOLUME 11**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02496-D<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ALTER OR AMEND AND FOR RECONSIDERATION OF ORDER DENYING MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4698] on July 24, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689] now files this *Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the Court's June 15, 2026 Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate?

2. Did the Bankruptcy Court err in finding Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate ("Dugaboy's Motion") [Docket No. 4684] was "without merit?"

3. Did the Bankruptcy Court err in denying Dugaboy's Motion without a full record, including that Dugaboy was not allowed to file a reply brief and was not granted a hearing?

4. Did the Bankruptcy Court err in denying Dugaboy the opportunity to file a reply brief to Highland's Opposition to Dugaboy's Motion, including that Dugaboy indicated a date certain for filing a reply?

5. Did the Bankruptcy Court err in finding Dugaboy's Motion was "without merit" without granting a hearing?

6. Did the Bankruptcy Court err by summarily denying Dugaboy's Motion without explaining its reasoning for the denial?

7. Did the Bankruptcy Court err in failing to consider Dugaboy's Notice of Intervening Event?

8. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(2) when it determined that it had not manifestly erred in deciding the evidence of Mark Patrick's misconduct contained in the Cayman Islands proceeding was not "newly discovered" even though that information was not contained in James Dondero's affidavit executed April 16, 2025?

9. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant

to Rule 60(b)(2) when it determined it had not manifestly erred in deciding the Dondero Affidavit indicated information gained in the Cayman Islands proceedings was not "newly discovered" despite the fact the Affidavit lacked any evidence of the restructuring discovered in the Cayman Islands proceedings?

10. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding on the grounds that Rule 60(b)(3) purportedly requires fraud or misconduct to have occurred in the judicial proceeding itself?

11. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding that Highland did not provide misleading or incomplete answers during the discovery of Mark Patrick's misconduct and resulting lack of authority to negotiate the Rule 9019 settlement agreement from Dugaboy leading to the Rule 9019 Order?

12. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding that Dugaboy had not presented a basis for relief under Rule 60(b)(6) that was separate from the grounds presented for Rule 60(b)(2) and Rule 60(b)(3)?

13. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding on the grounds that undoing the Rule 9019 Settlement Order would not restore the original structure of the DAF or Hunter Mountain?

14. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of the Bankruptcy Court's special responsibility to monitor arrangements and settlements made between Highland's appointed managers and third parties?

15. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of its manifest error in failing to consider the Bankruptcy Court's role as a court of equity and responsibility to prevent misconduct before it, such as Mark Patrick's use of stolen assets in the 9019 Settlement?

16. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

Vol. 1 000001 – 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4698] filed by Appellant;

000010 2. The Bankruptcy Court's July 10, 2026 *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000012 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

Vol. 2 000648 thru Vol. 3

Vol. 4 001843

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 02/09/2026 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| 02/13/2026 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513, Entered on 2/13/2026 (Okafor, M.) |
| | | |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| vol. 4 001845 thru vol 6 | 02/27/2026 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol 7 003634 | 02/27/2026 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 003647 | 03/02/2026 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 003650 & 003651 | 03/02/2026 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 003652 | 03/02/2026 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 003663 | 03/03/2026 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 003667 | 03/04/2026 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 003670 | 04/01/2026 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 7<br>003709 | 04/01/2026 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 004733 | 04/03/2026 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| Vol. 8<br>004790 | 04/03/2026 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| Vol 9<br>005207 | 04/03/2026 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 005209 | 04/06/2026 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 005217 | 04/06/2026 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to |

vol 9

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026 005222 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026 005225 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026 005227 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026 005229 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026 005233 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol 9 | | Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| 04/17/2026<br>005330 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| Vol 10<br>04/21/2026<br>005590 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/22/2026<br>005594 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/22/2026<br>005615 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 04/22/2026<br>005682 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol 10 | | Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| 04/22/2026<br>005692 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 04/24/2026<br>005705 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 04/24/2026<br>005726 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 04/25/2026<br>005727 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/27/2026<br>005729 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 04/28/2026<br>005737 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |

Vol. II

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 04/28/2026 005746 | 4569 | (9 pgs; 3 docs) Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 04/28/2026 005755 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 04/28/2026 005761 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 04/29/2026 005767 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 04/29/2026 005776 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 04/29/2026 005783 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |

| Vol. 10 | **Date Filed** | **Docket No.** | **Description/Docket Text** |
|---|---|---|---|
| 005785 | 04/29/2026 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005787 | 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 005794 | 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 005796 | 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 005798 | 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 005801 | 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 005884 | 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 005902 | 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 005905 | 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 005907 | 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund |

Vol. 11

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 05/06/2026 005913 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/06/2026 005920 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/06/2026 005927 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 05/07/2026 005929 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 05/08/2026 005936 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 05/08/2026 005939 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 05/08/2026 005942 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 05/08/2026 005945 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol. 12 05/08/2026 006100 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and* |

Thru Vol 21

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| 10).22 05/08/2026 008156 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 05/08/2026 008172 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 05/09/2026 008188 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 22 008256 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008293 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008429 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008465 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008472 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008916 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| Vol 25 009554 | 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| Vol. 26 009868 | 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| Vol 27 010229 | 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| Vol. 28 010538 | 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| Vol. 28 010664 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010736 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol 30 011150 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol 31 011734 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol 32 013203 Thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014888 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol 35<br>05/11/2026<br>015349 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 05/11/2026<br>015505 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 05/12/2026<br>015506 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 05/12/2026<br>015538 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 05/12/2026<br>015565 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 05/15/2026<br>015566 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36<br>05/18/2026<br>015569 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| Vol 37 05/18/2026 015996 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 05/19/2026 016008 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 05/20/2026 016079 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 05/20/2026 016082 – 016084 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 05/21/2026 016085 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 05/21/2026 016134 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 37 | | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| 016135 | 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016233 | 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016490 | 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s)4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016504 | 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| Vol. 39 016505 | 06/29/2026 | 4684 | (162 pgs; 2 docs) Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Appendix) (Edney, Michael) |
| 016667 | 06/29/2026 | 4685 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s)4679 Order on motion to reconsider). Appellant Designation due by 07/13/2026. (Attachments: # 1 Exhibit)(Edney, Michael) |
| 016674 | 07/06/2026 | 4687 | (32 pgs; 2 docs) Response opposed to (related document(s): 4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 016706 | 07/09/2026 | 4688 | (23 pgs; 2 docs) Notice of Intent to Reply and Request for Hearing on Its Motion to Alter or Amend the Court's June 15, 2026 Order and Notice of Intervening Event filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 39 | | (Attachments: # 1 Appendix)). (Attachments: # 1 Attachment A) (Edney, Michael) |
| 07/10/2026 016729 | 4689 | (2 pgs) Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026. (Okafor, M.) Modified text on 7/10/2026 (mdo). |
| 07/13/2026 016731 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |
| 07/24/2026 016733 | 4698 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)(Edney, Michael) |
| 07/28/2026 016742 | 4704 | (5 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02496-E. (RE: related document(s)4698 Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court;

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J"); and

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No.

4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* forthcoming)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S NOTICE OF SERVICE OF A DEPOSITION SUBPOENA FOR JAMES DONDERO

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable herein by Rule 9016 of the Federal Rules of Bankruptcy Procedure, Highland Capital Management, L.P. ("Highland"), the reorganized debtor in the above-

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the above-captioned Reorganized Debtor is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

referenced bankruptcy case, by and through its undersigned counsel, caused a *Subpoena to Appear and Testify at a Hearing in a Bankruptcy Case* (the "Subpoena"), a copy of which is attached hereto as **Exhibit A**, to be served upon James Dondero, in his individual capacity and as agent for The Dugaboy Investment Trust, for appearance at a deposition on **Friday, May 8, 2026** commencing at **9:00 a.m. Central Time**, or at such other day and time as Highland may agree in writing, in connection with *The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* [Docket No. 4513].

The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and shall take place **remotely** via an online platform such that no one will need to be in the same location as anyone else in order to participate in the deposition and by use of Interactive Realtime. Parties who wish to participate in the deposition should contact John A. Morris, Pachulski Stang Ziehl & Jones LLP, at jmorris@pszjlaw.com for more information regarding participating in this deposition remotely.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 6, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*<u>/s/ Zachery Z. Annable</u>*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

In re HIGHLAND CAPITAL MANAGEMENT, L.P.
Reorganized Debtor

Case No. 19-34054-sgj11

Chapter ___________

*(Complete if issued in an adversary proceeding)*

Plaintiff
v.

Adv. Proc. No.

Defendant

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

To: James Dondero, individually and as agent for The Dugaboy Investment Trust, c/o Michael Gaddis, King & Spalding LLP, 2601 Olive Street, Suite 2300, Dallas, TX 75201
*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters:

| PLACE | DATE AND TIME |
|---|---|
| Remotely via Zoom | Friday, May 8, 2026 at 9:00 a.m. (CT) |

The deposition will take place before a court reporter and will be recorded by stenographic means, may be videotaped, and shall continue from day to day until it has been completed.

☐ *Production*: **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or object at the place, date and time specified below:

| PLACE: | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: May 4, 2026

CLERK OF COURT

OR

_________________________
*Signature of Clerk or Deputy Clerk*

*/s/ John A. Morris*
*Attorney's signature*
John A. Morris, Esq.

The name, address, email address, and telephone number of the attorney representing *(name of party)* Highland Capital Management, L.P., and the Highland Claimant Trust , who issues or requests this subpoena, are:

John A. Morris, Esq., Pachulski Stang Ziehl & Jones LLP, 1700 Broadway, 36th Fl., New York, NY 10019

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.
www.FormsWorkFlow.com

**PROOF OF SERVICE**
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* ______________________
on *(date)* __________.

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________

[____________] ______________________________________________

______________________ on *(date)* ______________; or

☐ I returned the subpoena unexecuted because: ______________________

______________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________.

My fees are $ _________for travel and $ ________for services, for a total of $_________.

I declare under penalty of perjury that this information is true and correct.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information concerning attempted service, etc.:

American LegalNet, Inc.
www.FormsWorkFlow.com

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B)Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S NOTICE OF SERVICE OF A SUBPOENA FOR JAMES DONDERO TO APPEAR AND TESTIFY AT A HEARING IN A BANKRUPTCY CASE**

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable herein by Rule 9016 of the Federal Rules of Bankruptcy Procedure,

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the above-captioned Reorganized Debtor is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-referenced bankruptcy case, by and through its undersigned counsel, caused a *Subpoena to Appear and Testify at a Hearing in a Bankruptcy Case* (the "Subpoena"), a copy of which is attached hereto as **Exhibit A**, to be served upon James Dondero, in his individual capacity and as agent for The Dugaboy Investment Trust, for appearance at a hearing on **May 11, 2026 at 9:00 a.m. Central Time**.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 6, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

NORTHERN District of TEXAS

In re HIGHLAND CAPITAL MANAGEMENT, L.P.,
Reorganized Debtor

Case No. 19-34054-sgj11

Chapter 11

*(Complete if issued in an adversary proceeding)*

Plaintiff
v.
Defendant

Adv. Proc. No. ________________

**SUBPOENA TO APPEAR AND TESTIFY**
**AT A HEARING OR TRIAL IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

To: **James Dondero, individually and as agent for The Dugaboy Investment Trust, c/o Michael Gaddis, King & Spalding, 2601 Olive Street, Ste 2300, Dallas TX 75201**
*(Name of person to whom the subpoena is directed)*

☐ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the time, date, and place set forth below to testify at a hearing or trial in this bankruptcy case (or adversary proceeding). When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE | COURTROOM 314 - Judge Odell |
|---|---|
| George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, TX | DATE AND TIME May 11, 2026 at 9:00 a.m. CT |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: May 4, 2026

CLERK OF COURT

OR

________________________ *Signature of Clerk or Deputy Clerk*

*/s/ John A. Morris*
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* ________________________ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________________
______________________________________________________________________
______________________________ on (*date*) ______________ ; or

☐ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 6, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj11** |
| | § | |
| | § | |
| **Debtor.** | § | |

**<u>ORDER DENYING REQUEST FOR PROTECTIVE ORDER</u>**

On May 5, 2026, Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, and Rand PE Fund Management, LLC filed their *Emergency Motion for Protective Order Concerning Deposition* (the "Motion for Protective Order") [Dkt. No. 4592]. Dugaboy Investment Trust ("Dugaboy") filed a response [Dkt. No. 4596], and the Court took the matter under advisement based on the pleadings.

The Motion for Protective Order seeks to clarify the Court's prior discovery order, which stated,

> All depositions taken by Dugaboy in connection with the Rule 60(b) Motion are limited in scope to Mark Patrick's authority to sign the Settlement Agreement & General Release [Dkt. No. 4217-1] on behalf

> of HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand Management, Atlas IDF, and Atlas GP and the restructuring of and transactions related to Charitable DAF Holdco, Ltd., Charitable DAF Fund, LP, Charitable DAF GP, LLC, CDH GP, Ltd., CDMCFAD, LLC, DFW Charitable Foundation, CLO Holdco, LLC.

Dkt. No. 4566. As the quoted language plainly states, there is no temporal limitation related to depositions Dugaboy takes in connection with its Rule 60(b) Motion, only subject matter limitations. It is, therefore,

ORDERED that the Motion for Protective Order is denied; it is further

ORDERED that Dugaboy may inquire about the above quoted subject matter at Mark Patrick's deposition without temporal restrictions; and it is finally

ORDERED that this Court retains jurisdiction to interpret and enforce the terms of this Order.

### End of Order ###

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 19-34054-sgj11 |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S NOTICE OF SERVICE OF A SUBPOENA FOR THE DUGABOY INVESTMENT TRUST, BY AND THROUGH ITS TRUSTEE, NANCY DONDERO, TO APPEAR AND TESTIFY AT A HEARING IN A BANKRUPTCY CASE**

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable herein by Rule 9016 of the Federal Rules of Bankruptcy Procedure,

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the above-captioned Reorganized Debtor is 6333 E. Mockingbird Lane, Suite 147 #5045, Dallas, TX 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-referenced bankruptcy case, by and through its undersigned counsel, caused a *Subpoena to Appear and Testify at a Hearing in a Bankruptcy Case* (the "Subpoena"), a copy of which is attached hereto as **Exhibit A**, to be served upon Nancy Dondero, in her capacity as the Trustee of The Dugaboy Investment Trust, for appearance at a hearing on **May 11, 2026 at 9:00 a.m. Central Time**.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 7, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

NORTHERN District of TEXAS

In re HIGHLAND CAPITAL MANAGEMENT, L.P.,
Reorganized Debtor

Case No. 19-34054-sgj11

*(Complete if issued in an adversary proceeding)*

Chapter ___________

Plaintiff
v.

Adv. Proc. No.

Defendant

**SUBPOENA TO APPEAR AND TESTIFY**
**AT A HEARING IN A BANKRUPTCY CASE**

To: Nancy Dondero, as Trustee of The Dugaboy Investment Trust, c/o Michael Gaddis, King & Spalding, 2601 Olive Street, Ste 2300, Dallas TX 75201
*(Name of person to whom the subpoena is directed)*

☒ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a hearing in this bankruptcy case. When you arrive, you must remain at the court until the judge or a court official allows you to leave.

| PLACE: | COURTROOM 314 |
|---|---|
| George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, TX | DATE AND TIME: May 11, 2026 at 9:00 a.m. (CT) |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: May 5, 2026

CLERK OF COURT

OR

*/s/ John A. Morris*

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Highland Capital Management, L.P. and the Highland Claimant Trust , who issues or requests this subpoena, is:
John A. Morris, Esq., Pachulski Stang Ziehl & Jones LLP, 1700 Broadway, 36th Floor New York, New York 10019 (jmorris@pszjlaw.com); phone: 1.212.561.7700

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* ______________________
on *(date)* __________.

☐ I served the subpoena by delivering a copy to the named person as follows: ______________

**Michael Gaddis, King & Spalding, 2601 Olive Street, Ste 2300, Dallas TX 75201**

______________________ on *(date)* ______________; or

☐ I returned the subpoena unexecuted because: ______________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________.

My fees are $ ________for travel and $ ________for services, for a total of $________.

I declare under penalty of perjury that this information is true and correct.

Date: ______________

/s/ ______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B)Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

**NOTICE OF HEARING ON REORGANIZED DEBTOR'S MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING THE PERIOD WITHIN WHICH IT MAY REMOVE ACTIONS PURSUANT TO 28 U.S.C. § 1452 AND RULE 9027 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters service address for the above-captioned Reorganized Debtor is 6333 Mockingbird Ln., Ste. 147 #5045, Dallas, Texas 75214.

**PLEASE TAKE NOTICE** that the following matter is scheduled for hearing on **Wednesday, June 10, 2026, at 3:00 p.m. (Central Time)** (the "Hearing") in the above-captioned bankruptcy case (the "Bankruptcy Case"):

1. *Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure* [Docket No. 4602] (the "Motion").

The Hearing on the Motion will be held via WebEx videoconference before The Honorable Brad W. Odell, United States Bankruptcy Judge. The WebEx attendance information will be posted to the Court's website, www.txnb.uscourts.gov, under Judge Odell's Hearing Dates and Calendar tab prior to the Hearing.

Any response (each, a "Response") to the relief requested in the Motion shall be filed with the Clerk of the Court on or before **Friday, May 29, 2026** (the "Response Deadline").

The Reorganized Debtor may file a reply (each, a "Reply") to any Response. Any Reply shall be filed with the Clerk of the Court on or before **Friday, June 5, 2026**.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 8, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**COUNSEL FOR THE HMIT ENTITIES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | **Re: Docket No. 4513** |

**HMIT ENTITIES' WITNESS AND EXHIBIT LIST REGARDING HEARING MOTION TO RECONSIDER THE 9019 ORDER [DKT. NO. 4513] SET FOR MONDAY, MAY 11, 2026 AT 9:00 A.M.**

Hunter Mountain Investment Trust ("HMIT"), Beacon Mountain LLC ("Beacon Mountain"), Rand Advisors, LLC ("Rand Advisors"), Rand PE Fund I, LP ("Rand PE Fund"), Rand PE Fund Management, LLC ("Rand GP"), Atlas IDF, LP ("Atlas IDF"), and Atlas IDF GP, LLC ("Atlas GP" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund,

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Rand GP, and Atlas IDF, the "HMIT Entities") hereby submit this Exhibit and Witness List (the "Exhibit & Witness List") regarding the May 11, 2026 9:00 A.M. CST (the "Hearing") *Motion to Reconsider the 9019 Order* [Dkt. No. 4513] (the "Rule 60(b) Motion").

**A. Witnesses**:

1. Any witness identified by or called by another party;
2. Any witness necessary for rebuttal; and
3. Any witness necessary to authenticate a document if such an objection is raised.

**B. Exhibits**:

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 1. | Any document entered or filed in the Bankruptcy Case, including exhibits thereto | | |
| 2. | All exhibits identified by or offered by any other party at the Hearing | | |

The HMIT Entities reserve the right to amend this *Exhibit and Witness List* before the Hearing to identify additional witnesses or exhibits.

Respectfully Submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com
***Counsel for the HMIT Entities***

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that a copy of the forgoing was served on all parties receiving notice in this chapter 11 case through this Court's CM/ECF System on this May 8, 2026.

*/s/ Louis M. Phillips*_____
Louis M. Phillips (#10505)

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S WITNESS LIST**
**<u>FOR THE MAY 11, 2026 HEARING</u>**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Witness List for the May 11, 2026 Hearing in the Bankruptcy Case. Dugaboy may, in its sole discretion, call the following witness(es) to testify at the May 11, 2026 Hearing in the Bankruptcy Case.

| | WITNESS |
|---|---|
| 1 | Lucy Bannon |
| 2 | Margot McInnis |

| | WITNESS |
|---|---|
| 3 | Mark Patrick |

Dugaboy also reserves the right to call or cross-examine any witness called by any other party, to supplement and/or amend this Witness List, and to call additional witnesses as necessary to rebut testimony or evidence introduced at the hearing.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 8, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

## TABLE OF CONTENTS

A. This Court Can and Should Issue an Indicative Ruling to Assist the District Court's Resolution of the Pending Appeal ........ 3

B. Highland's Cayman Argument Is Incorrect, Overreads the February Ruling, and Does Not Defeat Dugaboy's Rule 60 Motion ........ 5

C. Dugaboy Has Met the Standard for Newly Discovered Evidence under Rule 60(b)(2)... 10

1. Highland's Rule 60(b)(2) Argument Uses the Wrong Deadline: In Bankruptcy, the Relevant Rule 59 Window Closed on July 14, Not July 28........ 10

2. Highland Misunderstands What Counts As Newly Discovered Evidence ........ 15

3. Highland's Case Law Does Not Support its Argument ........ 17

4. Highland's Chart Grossly Oversimplifies Events ........ 18

D. Dugaboy Has Established Fraud Under Rule 60(b)(3) ........ 24

1. Patrick's Reorganization Scheme Directly Implicates HMIT and the Settlement ....... 25

2. The HMIT Trust Agreement *Automatically* Removed Mark Patrick's Authority........ 27

E. Dugaboy Did Not Ratify or Waive its Challenge to Mark Patrick's Authority........ 30

F. This Court Has Broad Discretion to Vacate the Settlement Order Due To Chief Judge Jernigan's Refusal to Recuse Herself ........ 32

1. 28 U.S.C. § 455(a) Required Chief Judge Jernigan To Recuse ........ 33

2. The Court Should Vacate The 9019 Settlement Order Under Rule 60(b)(6) If It Determines That 28 U.S.C. § 455(a) Required Chief Judge Jernigan To Recuse ........ 38

CERTIFICATE OF SERVICE ........................................................................................... 41

## INTRODUCTION

Dugaboy respectfully asks the Court to grant its Motion under Federal Rule of Civil Procedure 60(b) and reconsider and vacate the predecessor judge's approval of the Rule 9019 Settlement. There are many reasons both legal and factual and equitable why it should do so.

***First***, Highland spends very little effort arguing that Mark Patrick's conduct was not wrongful. It instead argues that Dugaboy should have pierced through Mr. Patrick's deception more quicky. In cases of such alleged misconduct, rarely do courts—much less courts of equity—fault parties for not detecting concealed misconduct more quickly. And this Court should not fault Dugaboy here. Mr. Patrick concealed his misconduct, and the evidence detailing it was revealed after the prior judge's ruling approving the settlement in question.

***Second***, Highland's efforts to show Dugaboy and/or Jim Dondero had known of (let alone "ratified") Patrick's conduct from the outset founder on both facts and law. Not only does Highland cite the wrong Rule and misstate the time limit for its "new trial" argument by two weeks; i. t has tangled itself up during the worst, most consequential, and outcome-determinative two weeks it could possibly have chosen. In those extra two weeks that Highland erroneously seeks to include in the time period where a motion for new trial was possible, the Liquidators that had stepped into the shoes of Cayman Island entities Mr. Patrick purported to control detailed the mechanism and the lack of justification for his restructuring of assets away from the charities for which they were intended. These revelations showed the self-dealing at issue here. Even with this July 15 filing from the Cayman Liquidators, only the Liquidators' allegations were revealed. The admissible evidence—the emails, corporate documents, and other evidence uncovered by the Liquidators—was only provided in subsequent filings by the Liquidators over the next six months. It is this *evidence* that enabled the motion to vacate before the Court now.

Highland's argument that Dugaboy could have somehow replicated the results of the Liquidators' investigation through the limited discovery provided prior to the 9019 approval order is without merit. The Liquidators were able to unpack Patrick's fraud only by stepping into the shoes of the Cayman Charitable DAF Holdco entity and getting access to the corporate restructuring documents from that Company's lawyers and advisers. The period of time between the motion to approve the 9019 settlement to the order doing so was just a touch over a month. As Highland's counsel described at the recent hearing on the motion for protective order, the discovery process attendant to such bankruptcy proceedings is not like that in district courts; it is time compressed and "imperfect" (Mr. Morris's words). That this "imperfect" process would have laid bare the scope and depth of Mr. Patrick's actions—especially when Mr. Patrick said during his deposition that he did not know whether he had moved Hunter Mountain under the chain of ownership of the charity run from his basement (DFW Charitable)—is far-fetched. It is for this reason that everyone—Dugaboy, the Liquidators, and the Texas Attorney General—asked the Court to wait before approving the settlement for the results of the pending investigations. Rule 60 and this Court's equitable powers are the appropriate vehicles for addressing the evidence later uncovered by the pending Liquidators' investigation. .***Third***, Highland's efforts to divorce Mr. Patrick's misconduct from these bankruptcy proceedings or from Mr. Patrick's authority to enter into the settlement are not well taken. What the Court and the bankruptcy process deserved was an honest broker acting in the best interests of third-party charities. What it got was Mr. Patrick, who had reorganized all the entities so that any settlement would redound solely for his own benefit, and he made decisions accordingly. He was a different person than the actor honoring fiduciary duties who should have been negotiating with Highland. Had Mr. Patrick's conduct not been concealed prior to the 9019 proceedings, a court would have removed him from his position

or enjoined his from dealing away an asset of Hunter Mountain's magnitude. But this is not just a prediction of what judicial action would have been. It is the automatic operation of the governing documents. That is because the founders of the Hunter Mountain Investment Trust provided that its administrator would lose authority to act ***automatically*** if he engaged in misconduct or breached fiduciary duties, not just with respect to Hunter Mountain but ***in any capacity***. The governing documents demanded an above-board actor as administrator. And the evidence revealed by the Liquidators subsequent to the settlement approval order shows the misconduct and breaches prior to the order that automatically stripped him of authority at the time of that misconduct. Mr. Patrick did not have authority to cause Hunter Mountain to enter into the settlement at issue.

***Finally***, Highland's attempts to fault Dugaboy for somehow concealing or misrepresenting to this Court either the content of the Cayman court's ruling or the circumstances of Chief Judge Jernigan's recusal fail on the evidence. Dugaboy did no such thing, and this Court was in no way misled.

## ARGUMENT

### A. This Court Can and Should Issue an Indicative Ruling to Assist the District Court's Resolution of the Pending Appeal

For the reasons Dugaboy explained at the April 24, 2026 hearing and in its follow-up letter to the Court (Dkt. 4563), this Court can and should keep the Rule 60(b) motion and issue an indicative ruling that will aid the District Court's resolution of the pending appeal. The Fifth Circuit has recognized that when new evidence relevant to a district court's order is discovered while an appeal of that order is pending, the "proper procedure for addressing such newly discovered evidence would be . . . to file a Rule 60(b)(2) motion to set aside the judgment in the district court and to seek an indicative ruling pursuant to Rule 62.1." *Malik v. United States Dep't of Homeland Sec.*, 78 F.4th 191, 202 (5th Cir. 2023); *see also* Wright & Miller, Fed. Prac. & Proc.

Civ. § 2911 (3d ed.) ("When a district court concludes that newly discovered evidence warrants vacatur of a judgment that is already on appeal, the court can issue an indicative ruling, thereby allowing the court of appeals to remand the matter to the district court and obviating the need for the appeal.") (citing *Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437 (D.D.C. 2015)). The Court should not, as Highland prefers (Dkt. 4564), simply drop the matter in a way that will be helpful to no one.

Furthermore, Dugaboy's Motion under Rule 60(b) also seeks this Court's reconsideration of several rulings made by the predecessor bankruptcy judge. Dkt. 4513 at 33–50. A bankruptcy court's decision on a motion for reconsideration is generally an interlocutory order. *See, e.g.*, *In re ProvideRX of Grapevine, LLC*, 507 B.R. 132, 141–43 (Bankr. N.D. Tex. 2014). That further supports this Court's authority to consider the Rule 60(b) motion and make an indicative ruling pending the District Court's resolution of the appeal.

Highland's only real argument against an indicative ruling is its contention that the newly discovered evidence is not relevant. *See* Dkt. 4535 at 46–49. That is both wrong and misplaced, being a fact-heavy argument that should be resolved at the merits stage and not a preemptive strike to bar the Court from ever reaching the merits. Furthermore, Highland's assertions that Patrick's transactions "have nothing to do with Highland, Dugaboy, the 9019 Settlement . . .or the manner in which Patrick exercised such authority and control in entering into the 9019 Settlement," *id.* at 27, ignores entirely the actual substance of Dugaboy's argument. As Dugaboy has established, the newly discovered evidence shows that the Rule 9019 settlement was not in fact "negotiated and entered into by . . . the HMIT Entities without collusion or fraud [and] in good faith." Dkt. 4513 at 27–29. It shows that "Patrick remained in his position only because of fraudulent efforts to cover up his misconduct and that, indeed, he was seeking the settlement to deter investigation

into it." *Id.* at 34.

This evidence is relevant because Highland cannot legitimately dispute that a finding of good faith by Mark Patrick was a necessary prerequisite to the predecessor judge's approval of the settlement. In fact, Highland essentially concedes that finding *was* necessary. *See* Dkt. 4535 at 53 ¶ 27 (arguing that "any complaint . . . regarding the terms of the 9019 Settlement is completely undercut by the public disclosure and Court approval of those terms," and that the record shows that the settlement was "negotiated at arm's-length in good faith"). Accordingly, Highland's reliance on *Greon v. Holding Cap. Grp., Inc. (In re PBS Foods, LLC)*, 549 B.R. 586, 598–606 (Bankr. S.D.N.Y. 2016), is misplaced. That case involved newly discovered evidence that was concededly *not* relevant. *Greon*, 549 B.R. at 599, 603 (stating that the new documents did "not contain information that is directly relevant to this action" and did "not substantiate, or even support" the movant's allegations of misrepresentation, fraud, or misconduct). Here, by contrast, the newly discovered evidence is central to the merits arguments set forth in Sections D and E below.

Lastly, and tellingly, Highland offers no response to Dugaboy's point that the Court should allow testimony and evidence on the Rule 60(b) motion now lest it be spoiled because memories fade and witnesses become unavailable—exactly Highland's preferred outcome. *See* Dkt. 4563.

### B. Highland's Cayman Argument Is Incorrect, Overreads the February Ruling, and Does Not Defeat Dugaboy's Rule 60 Motion

Highland's reliance on the February 10, 2026 Cayman Grand Court ruling does not defeat Dugaboy's Rule 60 motion. Highland treats that ruling as if it were a merits determination exonerating Patrick, eliminating concerns about the challenged restructuring, and undermining Dugaboy's standing in this Court. It did none of those things. The Grand Court denied a stringent form of interim "proprietary" relief because, under the Cayman Exempted Limited Partnership Act

("ELP Act"), the Donor-Advised Fund ("DAF") Holdco had not shown a sufficiently arguable proprietary interest in downstream Fund assets for purposes of that specific remedy. *Charitable DAF Holdco, Ltd. (in Official Liquidation) v. Patrick*, [2026] CIGC (FSD) 9, ¶¶ 130–40, 146–57 (Grand Ct. Cayman Is. Feb. 10, 2026). That was a Cayman-specific remedy for interim injunctive relief. It is not a merits judgment exonerating Patrick from wrongdoing, not a finding that the challenged restructuring was proper, and is not controlling on any issue before this Court under U.S. law.

The balance of the Grand Court's order confirms the point. It did not dismiss the underlying breach-of-duty theory as insubstantial. It described the principal allegation as a serious one: that the directors had stripped the company of its only asset to seize control and enrich themselves without the scrutiny of the charitable entities. *Id.* ¶¶ 246–52. The court then held that DAF and the Joint Official Liquidators had "a case which the Directors need to answer" and that there was "a serious issue to be tried" as to whether the restructuring was carried out in breach of duty. *Id.* ¶¶ 253–54. Just as importantly, the Grand Court expressly declined to decide whether that case was likely to succeed. *Id.* ¶ 255. Highland's narrative therefore omits the part of the February ruling most important to this Court: that it refused one form of interim relief but did not reject the core fiduciary-breach allegations on the merits.

The contention that Dugaboy possessed or knew of an advance draft of the Grand Court's order is simply false. Highland tries to connect the disparate dots by pointing to Dondero's involvement in Dugaboy and the charitable entities as justifying imputing his knowledge to Dugaboy. This ignores a fundamental tenet of U.S. corporate law that "separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Dewberry Grp., Inc. v. Dewberry Eng'gs Inc.*, 604 U.S. 321, 327 (2025) (quoting *Agency for Int'l Development v.*

*All. for Open Soc'y Int'l Inc.*, 591 U.S. 430, 435 (2020)). Even if entities share common ownership or are affiliated, they are separate and distinct individuals under the law. *Id.* Such distinctions may only be disregarded in extraordinary circumstances, such as veil-piercing or in cases of alter ego, none of which Highland pleads here. Nor could it, as Dugaboy and the charitable entities are distinct corporate entities with individual identities and purposes.

Even if Dondero might have served as a conduit for actual knowledge to the entities, imputation is improper. An individual's knowledge is imputed to the corporation only if "acquired [in] furtherance of the corporation's business or within the course of the employment of an individual serving in some corporate representative capacity[.]" *In re Sunpoint Sec., Inc.*, 377 B.R. 513, 562 (E.D. Tex. Bankr. 2007). The key is therefore on which entity's behalf Dondero acted when allegedly receiving knowledge of the Grand Court's decision. Although Highland fails to allege exactly when Dondero learned of the decision, it claims that the "Foundations' counsel was on the call for the Cayman Status Quo hearing" which indicates the Foundations' knowledge of the decision. Dkt. 4568 at 2. Its accusation rests on inference, not evidence. Even if Dondero received advance notice of the decision from the Foundations' counsel, this information cannot be imputed to Dugaboy as Dondero was acting in his capacity with the Foundations, rather than on behalf of Dugaboy. Highland has shown no actual transmission of knowledge to Dugaboy, no agency relationship making Dondero's knowledge Dugaboy's knowledge, and no domination so complete as to warrant the extreme remedy of disregarding corporate formalities.

In addition, Highland continues to misread the content of the Grand Court's ruling in briefing and in letters before this Court. Dugaboy is mindful of this Court's admonition against "mudslinging" but Highland's continued insistence that Dugaboy is "misleading" the Court cannot go unanswered.

Highland contends that the Grand Court "effectively dismissed the claims of fraud" and only maintained the fiduciary duty claims. Dkt. 4568 at 2. This is wrong. The Grand Court discussed both fraud and fiduciary allegations at length, stating it "has been persuaded that [DAF] and the Joint Official Liquidators have a claim which "the Directors need to answer in relation to the divestiture of [DAF's] limited partner interest in the Fund[.]" Dkt. 4534-4 at ¶ 253. Further, the Grand Court states that "there is a serious issue to be tried as to whether the Directors acted in breach of duty *in undertaking the restructuring*." *Id.* at ¶ 254 (emphasis added). While Highland focuses narrowly on the words "breach of duty," the Grand Court's decision is clear that the allegations forming the basis of the Company's fraud claim—namely Patrick's scheme to restructure away hundreds of millions of dollars devoted to charitable endeavors to line his own pockets—present "a serious issue to be tried[.]" *Id.* Nowhere does the Grand Court dispose of any claims of fraud. Its narrow holding is limited to denying the requested preliminary injunction under its consideration of the balance of convenience in exercise of its discretion, *id.* at ¶ 256, despite the "serious issue to be tried" and "real . . . prospect of success at trial" on the underlying claims. *Id.* at ¶¶ 254–55.

Highland also complains of Dugaboy mischaracterizing its briefing as asserting "that the allegations of Patrick's misconduct had no merit and that no one should be allowed to ask any further questions about it." Dkt. 4568 at 2 (citing Dkt. 4567 at 1). But Highland's briefing speaks for itself, where it claimed "the Cayman Islands court . . . dismissed the claims of fraud" under "a standard akin to a motion to dismiss." Dkt. 4533 at 16, 15 (emphasis omitted). Highland did so in its unsuccessful Motion for a Protective Order to block any further discovery into Patrick's fraud, which this Court has denied. *See* Dkt. 4599 (May 6, 2026 order).

Finally, the entire discussion of the Grand Court's February ruling is mooted by the Cayman Court of Appeal's April 22, 2026 decision granting the preliminary injunction the Joint Official Liquidators had sought in the Grand Court. *See* Dkt. 4567-1. The Court of Appeal reinstated broad interim restraints that prohibit Patrick and other respondents and fund entities from transferring assets outside the ordinary course of business, increasing remuneration, altering governance, winding down entities, or destroying records pending disposition of the appeal. Ex. 6, Certificate of Order ¶¶ 1–3 & sch. 1, *Charitable DAF Holdco, Ltd. (in Official Liquidation) v. Patrick*, Cause No. CICA 003 of 2026 (Ct. App. Cayman Is. Apr. 22, 2026) (Dkt. 4567-1). On the same record, the Court of Appeal found an injunction is necessary to protect the assets targeted by Patrick's fraudulent scheme. *Id.* at 2–4.

While this interim order does not adjudicate the ultimate merits of the claims against Patrick, it effectively overrules the Grand Court's finding that good reason did not support the belief that "the relevant assets will be adversely dealt with" due to the safeguards provided by the "Texas Rule 11 Agreement." Dkt. 4534-4 at ¶ 240. While Highland contends that the April decision "did not reverse any portion of the Grand Court's remedial ruling," Dkt. 4568 at 1 (revisions omitted), it effectively supersedes and nullifies the Grand Court's order. And it extends to numerous Fund Entities,[1] most significantly Patrick's own sham DFW charitable entity as well as HMIT. That breadth matters because Highland asks this Court to treat the February Grand Court ruling as if it eliminated any live concern about asset transfers, compensation changes, governance changes, wind-downs, or record preservation. It also matters because Highland asks this Court to

[1] CDH GP, Ltd.; CDMCFAD, LLC; Charitable DAF Fund, LP; Charitable DAF Fund 2, LP; CLO HoldCo, Ltd.; Liberty CLO HoldCo, Ltd.; HCT Holdco 2, Ltd.; MGM Studios HoldCo, Ltd.; CLO HoldCo LLC; Rand Advisors LLC; and—most significantly—DFW Charitable Foundation, as well as HMIT. April 22, 2026 Order at sched. 1.

believe that the Cayman liquidation proceeding has no bearing on HMIT. That is wrong for the reasons discussed in Section E below.

### C. Dugaboy Has Met the Standard for Newly Discovered Evidence under Rule 60(b)(2)

Dugaboy shows that its new evidence meets the appropriate definition of newly discovered evidence under Rule 60(b)(3) and does so within the correct time frame prescribed by the rules on motion for new trial. This showing begins from two first principles and then proceeds to clear and consequential facts.

***First***, "newly discovered" does not mean the same thing as "new." In other words, what matters is when ***Dugaboy (or James Dondero) learned*** (or reasonably should have learned) of the evidence or conduct, not when it actually occurred. That is why wrongful conduct by Patrick prior to the Settlement can be "newly discovered" to the extent Dugaboy or Dondero only learned about it after the Settlement.

***Second***, to the extent Dugaboy or Dondero were aware of some discrete facts prior to the Settlement, they lacked sufficient context to reveal the full scope of Patrick's scheme. Prior to the two major disclosures from the Caymans in July and December of 2025, as Dugaboy has showed at length, they had only pieces of the puzzle and could not discern the whole picture. *See* Opening Brief, Dkt. 4513 at 27–29.

Now comes a baffling misreading of the law with spectacularly bad consequences for Highland.

#### 1. Highland's Rule 60(b)(2) Argument Uses the Wrong Deadline: In Bankruptcy, the Relevant Rule 59 Window Closed on July 14, Not July 28

Highland's "no newly discovered evidence" argument rests on a threshold error about the governing deadline. Highland repeatedly asserts that because the Settlement Order was entered on

June 30, 2025, Dugaboy had until July 28, 2025—28 days later—to move for a new trial under Civil Rule 59(b). Obj. ¶¶ 6, 33, 58–63. That is the ordinary civil deadline, but it is not the deadline in a bankruptcy case. Civil Rule 60(b)(2) permits relief from a final order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). In bankruptcy, however, Civil Rule 59 applies only as modified by Bankruptcy Rule 9023, which provides that a motion for a new trial or to alter or amend a judgment "must be filed within 14 days after the judgment is entered." Fed. R. Bankr. P. 9023(a), (b). Bankruptcy Rule 9024 then makes Civil Rule 60 applicable in bankruptcy cases. Fed. R. Bankr. P. 9024(a). Thus, Rule 60(b)(2)'s diligence inquiry asks whether the evidence could reasonably have been discovered in time to file within the bankruptcy Rule 9023 period, not within Civil Rule 59's ordinary 28-day period.

That distinction is dispositive. The Settlement Order was entered on June 30, 2025. Dkt. 4297. Applying Bankruptcy Rule 9023 and the time-computation rules in Bankruptcy Rule 9006(a), the deadline to file a Rule 9023 motion was July 14, 2025. Fed. R. Bankr. P. 9006(a)(1), 9023(b). The Court could not enlarge that deadline. Fed. R. Bankr. P. 9006(b)(2). Highland's July 28 date impermissibly tacks two extra weeks onto the period of time during which Dugaboy could theoretically have moved for a new trial. That matters because the central Cayman materials were not discovered by the actual new-trial deadline of July 14. The Cayman Court sanctioned the JOL litigation on July 14, 2025—the final day of the bankruptcy Rule 9023 window. Cayman Sanction Order, Reply Ex. __. The Joint Official Liquidators filed their Statement of Claim the next day, July 15, 2025. Dkt. 4326, Ex. A; Obj. ¶ 34. The Chapter 15 petition and MacInnis Declaration were filed on July 21, 2025. Dkt. 4521, Ex. G; Obj. ¶ 34.

Highland's timing argument depends on treating those July 15 and July 21 materials as if

they could have supported a Rule 9023 motion merely because they existed before July 28. But July 28 is not the operative date. Once the Settlement Order was entered on June 30, the bankruptcy new-trial deadline expired on July 14. Fed. R. Bankr. P. 9023(b). And even though the Cayman Court sanctioned the JOL litigation on July 14, Dugaboy could not reasonably have obtained, analyzed, authenticated, and incorporated into a Rule 9023 motion that same day foreign-court materials that were not even filed in the Cayman court until July 15. Rule 60(b)(2) requires reasonable (emphasis added) diligence. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005) (requiring due diligence and materiality for Rule 60(b)(2) relief); *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 597 (5th Cir. 1980) (same). The compressed bankruptcy deadline is precisely why Rule 60(b)(2), through Bankruptcy Rule 9024, is the proper procedural vehicle here.

The following timeline identifies the material evidence that came to light only after the July 14, 2025 expiration of the Rule 9023 window.

| DATE | EVENT | SOURCE |
|---|---|---|
| June 26, 2025 | Cohen & Co issued the Rand PE Fund I, L.P. 2024 Audit dated as of February 24, 2025. Revealed<br>• Beacon Mountain was sold on February 12, 2025,<br>• The $1 million sale value was set solely on the transaction price,<br>• The auditors were not informed of the subsequent $23.5 million value of Beacon/HMIT,<br>• Auditors did not know Patrick dealt Beacon/HMIT to himself;<br>• Patrick redeemed out the investors of Rand PE Fund before he sold Beacon/HMIT, and<br>• First admissible evidence of $1 million sale price.<br>The audit was issued one day after the 9019 Hearing and only four days before the Settlement Order was entered on June 30, 2025, leaving Dugaboy without a meaningful opportunity to obtain, analyze, and present it | Dkt. 4513-48, Rand Fund 2024 Audit (dated June 26, 2025). |



005959

| | | |
|---|---|---|
| | before the Court approved the Settlement. | |
| July 14, 2025 | Cayman Court grants sanction to JOLs to commence litigation against Patrick and other defendants for breaches of fiduciary duty, unlawful means conspiracy, unjust enrichment, and equitable relief. **This occurred on the final day of the Rule 9023 window—too late for Dugaboy to incorporate into a same-day motion.** | Dkt. 4513-G, MacInnis Decl. ¶ 72 (Dkt. 4-60, Case 25-11376-BLS, Filed 07/21/25). |
| July 15, 2025 | JOLs file the sealed Writ and Statement of Claim in the Cayman Court, commencing litigation against Patrick, Murphy, CDMCFAD ("CDM"), DFW Charitable Foundation, CDF GP, and CLO HoldCo. The Statement of claim, for the first time, revealed<br>• The extent of Patrick's compensation take,<br>• The self-dealing by which he took such compensation,<br>• The internal, otherwise privileged communications of Charitable DAF Holdco, Ltd. that demonstrated the intent and planning to commit fraud and breach of fiduciary duty, and<br>• The exact timing and mechanics of how Patrick restructured the DAF.<br>**However, these only were allegations and Dugaboy had to wait for publicly filed evidence in support of these allegations.** | Dkt. 4513-B, Statement of Claim (FSD 201 of 2025 (RPJ) (Filed 07/15/25)); First MacInnis Aff., TDIT004967–TDIT006484. |
| July 15, 2025 | First application of Margot MacInnis sworn and filed in Cayman Court in support of the Statement of Claim. This was not obtained by Dugaboy or its affiliates until at the earliest October 2025. The Affidavit presents, for the first time, the JOLs' investigation findings with 94 supporting exhibits, including:<br>• Internal Patrick emails directing creation of untraceable entities (Ex. 2, First MacInnis Aff., TDIT005476);<br>• The November 26, 2024 email laying out Patrick's DFW Foundation scheme (Ex. 2, First MacInnis Aff., TDIT005481);<br>• Director resolutions awarding Patrick $975,000 LTI and 2.5x base salary bonus (Ex. 2, First MacInnis Aff. TDIT005735-38);<br>• Employment agreement backdated to March 2021 with $4,759,000 LTI (Ex. 2, First MacInnis Aff., TDIT005743); and<br>• Documents showing the CDM Assignment and Redemption that left CLO HoldCo with only $1.6 million from a $270 million interest. (Ex. 2, First MacInnis Aff., TDIT005903-77). | Ex. 2, First MacInnis Aff.. |

| | | |
|---|---|---|
| July 15, 2025 | JOLs file application for proprietary injunction to prevent defendants from dealing with HoldCo's assets, together with disclosure orders and leave to serve U.S.-based defendants. | Dkt. 4513-G, MacInnis Decl. ¶ 73, Exs. 59, 82–83 (Case 25-11376-BLS, Dkt. 4, Filed 07/21/25). |
| July 17, 2025 | Dugaboy files its Motion to Stay 9019 Order (Dkt. 4326), promptly alerting the Court to the JOL petition and requesting 90 days to investigate allegations of fraud. **This confirms Dugaboy's diligence. It moved within two days of receiving the JOL materials, but after the Rule 9023 window had already expired.** | Dkt. 4513-30, Motion to Stay 9019 Order (Dkt. 4326, Filed 07/17/25). |
| July 21, 2025 | Declaration of Margot MacInnis is filed in Chapter 15 Petition for Recognition of Foreign Main Proceeding in the U.S. Bankruptcy Court for the District of Delaware (Case No. 25-11376-BLS). The MacInnis Declaration provides a comprehensive account of<br>• Patrick's elimination of his fiduciary duties through insertion of CDMCFAD (¶104),<br>• The DAF restructuring documents (¶¶ 26-39),<br>• ValueScope's fraudulent March 25, 2025 valuation disclosed(¶35);<br>• The lack of transparency (¶¶ 43-61), and<br>• The Cayman litigation (¶¶ 62-76).<br>**<b>This filing provided the first comprehensive, U.S.-court-of-record account synthesizing the JOLs' findings into a single narrative for Dugaboy's use.</b>** | Dkt. 4513-G, 3-46, MacInnis Decl. in Support of Delaware Chapter 15 Petition (Case 25-11376-BLS, Dkt. 4, Filed 07/21/25). |
| July 31, 2025 | Cayman Court enters Consent Order imposing undertakings on Named Defendants and CDM Entities to prevent asset dissipation and provide transparency/disclosure to JOLs. | Ex. 1, MacInnis Supplemental Decl. ¶¶ 8–10 (Case 25-11376-BLS, Dkt. 22, Filed 08/27/25). |
| August 27, 2025 | JOLs file Supplemental Declaration of Margot MacInnis and Motion for Provisional Relief (turnover of books and records) in the Chapter 15 case, revealing that service providers Carrington Coleman internal memoranda; ValueScope, Hunton, and Seyfarth Shaw refused to produce records in connection with their engagement by HoldCo. | Ex. 1, MacInnis Supplemental Decl. ¶15 (Case 25-11376-BLS, Dkt. 22, Filed 08/27/25). |
| September 12, 2025 | Defendants provide income statements as the first substantive financial disclosure to JOLs, showing directors' fees of approximately $11.6 million for 2024 alone across three entities controlled by Patrick. **This far exceeds what was known at the time of the 9019** | Dkt. 4315-I, Third Affidavit of Margot MacInnis (Filed Under Seal, November 2025) ¶¶ |



005961

| | | |
|---|---|---|
| | **Hearing on June 25, 2025. This also provides the first admissible evidence of such payments.** | 63–64. |
| November 2025 | Third Affidavit of Margot MacInnis filed under seal, detailing:<br>• Total payments to Patrick of $10,548,778 in salary bonuses, and LTI in 2024 (¶65);<br>• Patrick's transfer of his family home to a trust and discharge of mortgage in January 2025 (¶53);<br>• Ongoing breaches of the Interim Undertakings (¶106); and<br>• Discovery that the Defendants transferred $2.68 million to law firms and ValueScope before the July 31 injunction hearing (¶106). | Dkt. 4315-I, MacInnis Affidavit 3 (Filed Under Seal, November 2025). |
| December 15–16, 2025 | Two-day injunction hearing in the Cayman Court. | Dkt. 4315-I, Third Affidavit of Margot MacInnis (Filed Under Seal, November 2025) ¶ 150. |

### 2. Highland Misunderstands What Counts As Newly Discovered Evidence

Highland's contrary position misunderstands what counts as "newly discovered" evidence. Highland argues that Dugaboy's evidence fails to satisfy Rule 60(b)(2) because it "did not exist at the time of trial," or else could have been discovered earlier, is cumulative, immaterial, or outcome-neutral. Obj. ¶ 59. But Rule 60(b)(2) does not require that the documentary form of the evidence exist before judgment; it requires that the evidence concern facts that existed and could not, with reasonable diligence, have been discovered in time to move under Rule 59(b), as modified here by Rule 9023. Fed. R. Civ. P. 60(b)(2); Fed. R. Bankr. P. 9023(b), 9024(a). The Fifth Circuit made that distinction in *Chilson v. Metropolitan Transit Authority*, 796 F.2d 69 (5th Cir. 1986). There, the plaintiff claimed he was fired for criticizing MTA's contract with a consultant; after judgment, he relied on a later internal audit showing MTA had overpaid that consultant by about $2.6 million during the same period. *Id.* at 69–70. The district court rejected the audit as later-

created evidence, but the Fifth Circuit reversed because the relevant evidence was not the post-trial audit as a document—it was the preexisting overpayment the audit revealed. *Id.* at 70–72; *see also id.* at 72 ("[W]hat is critical is the content of the evidence, not the form in which it comes."). That principle defeats Highland's attempt to label the Cayman materials as categorically too late. The Patrick-related conduct existed before the Settlement Order, but the filed JOL pleadings, the MacInnis Declaration, and the supporting materials that exposed, organized, and authenticated that conduct did not become available to Dugaboy in time to file a Rule 9023 motion by July 14.

The cases Highland cites do not change the result. Decisions such as *General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004),[2] and *NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357 (5th Cir. 1978),[3] reject Rule 60(b)(2) relief for after-occurring facts or later-created evidence that is not evidence of facts existing at the relevant time. Dugaboy is not relying on a later event that changed the facts after the Settlement Order. Dugaboy relies on later-disclosed evidence of preexisting misconduct, ownership transfers, self-dealing, compensation, concealment, and control issues that bore directly on whether the 9019 Settlement was negotiated and presented in good faith. That is the *Chilson* scenario, not the *General Universal* or the *Decker* scenario. *Chilson*, 796 F.2d at 72–73.

Highland may establish Dugaboy or Dondero knew some facts before July 14. Obj. ¶¶ 34–36. But partial suspicion is not the same as possession of material, admissible, court-authorized evidence sufficient to support a post-judgment motion. Rule 60(b)(2) asks whether the evidence

[2] In *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004), after GUS lost its copyright claims, it relied on statements made in a later proceeding and on an expert report prepared after final judgment, contending that those materials showed HAL had copied portions of its software. *Id.* at 156–58.

[3] In *NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357 (5th Cir. 1978), the employer relied on felony convictions that occurred after the administrative hearing. *Id.* at 363–65.

could have been discovered with reasonable diligence in time to file the Rule 59 motion; it does not penalize a movant for lacking the full evidentiary picture until after the deadline. Fed. R. Civ. P. 60(b)(2); *see Chilson*, 796 F.2d at 73; *Harrison v. Byrd*, 765 F.2d 501, 503 (5th Cir. 1985). Here, before July 14, Dugaboy had only pieces of the puzzle and not the whole picture. The JOL Statement of Claim and MacInnis materials supplied the missing evidentiary context after the bankruptcy Rule 9023 deadline expired.

This is also why Dugaboy's prompt July 17 stay motion does not undermine its Rule 60(b)(2) position. To the contrary, it confirms diligence. Once the JOL Statement of Claim was filed on July 15, Dugaboy promptly brought the issue to this Court's attention. *See* Dkt. 4326. By then, of course, the Rule 9023 period had already expired. At the same time, the MacInnis Declaration and Chapter 15 materials, *i.e.*, the 94 Cayman exhibits, still had not been filed in the Delaware bankruptcy court. Dkt. 4521, Ex. G; Obj. ¶ 34. Highland cannot convert Dugaboy's prompt effort to alert the Court into proof that Dugaboy could have filed a fully supported Rule 9023 motion by July 14.

Accordingly, Highland's Rule 60(b)(2) timing objection should be rejected at the threshold. Even accepting Highland's premise that Rule 59's new-trial framework applies to this contested Rule 9019 settlement order, the applicable deadline in bankruptcy was July 14, 2025, not July 28, 2025. Fed. R. Bankr. P. 9023(b). The key Cayman evidentiary materials were not reasonably available in a filed and usable form by that date. Rule 60(b)(2), made applicable by Bankruptcy Rule 9024, is therefore the proper vehicle for Dugaboy's newly discovered evidence arguments.

**3. Highland's Case Law Does Not Support its Argument**

In *Gov't Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767 (5th Cir. 1995), key language—on which that court based its holding—clearly distinguishes the case from this one.

*See* Dkt. 4535 at 33 n.97. In *Peyton Place*, the movant "did not contend in its memoranda in support of its Rule 60(b)(2) motion or in its brief on appeal that it did not have access to the document either before or during the trial." *Peyton Place, Inc.*, 62 F.3d at 771. "Therefore," the Fifth Circuit "conclude[d] that Peyton Place failed to demonstrate to the district court that it could not have obtained the information before or during the trial even if it had exercised due diligence." *Id.; see also id*. at 772 (similar, regarding additional documents). Highland also selectively cites *Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992). Dkt. 4535 at 33 n. 97. In that case, it was "undisputed that the evidence offered by [the movant] *was in her files prior to the May 1 hearing*." *Longden*, 979 F.2d at 1103 (emphasis added).

Here, by contrast, Dugaboy has explained that the proceedings in the Cayman Islands investigating Patrick's and his associates' malfeasance were subject to a confidentiality restriction until December 2025. Dkt. 4513 at 28–29; *see also id.* at 39–40. Therefore, Dugaboy did not know of the particular documents or "have access to" them or have them "in [their] files" when the Rule 9019 motion was heard and decided, and *Peyton Place* and *Longden* provide no support to Highland. Moreover, other evidence came out after the June 2025 settlement hearing, notwithstanding Dugaboy's diligent inquiry, because of Patrick's own obfuscation. Dkt. 4513 at 39; *see* Sections C(5). and E(1).

**4. Highland's Chart Grossly Oversimplifies Events**

Highland attempts to demonstrate that Dugaboy knew every material fact well in advance of the 9019 Settlement by presenting a chart that purports to show that each item of allegedly newly discovered evidence was already known to Dugaboy before July 28, 2025. Reply at 21–22. Highland's chart, however, is a gross oversimplification that conflates Dugaboy's awareness of certain underlying corporate events with knowledge of the specific facts and concealment that

form the basis of Dugaboy's Rule 60(b)(2) motion. As demonstrated in the chart below, the sources Highland cites do not establish prior knowledge of the material facts at issue, and therefore do not refute Dugaboy's showing under Rule 60(b)(2):

| Highland's Alleged "Old" Information | Highland's Cited Sources of Prior Knowledge | Why This Does Not Refute Rule 60(b)(2) |
|---|---|---|
| "Patrick has controlled DAF Entities since 2021." | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025). | The Dondero Affidavit and Winding Up Petition raised *concerns* about Patrick's control but did not contain the transactional documentation (share transfers, resolutions, assignments) that would be necessary at an evidentiary hearing to prove the scope and method of control. Ex. 3, Affidavit of Jim Dondero; Dkt. 4315-E (Winding Up Petition). The Dallas Foundation Objection (Dkt. 4231) expressed suspicion but explicitly stated it lacked sufficient information to make detailed allegations and requested further investigation.<br><br>None of these documents contained the actual April 2, 2021, CLOH shareholder resolutions or the March 21, 2021, DAF GP Assignment & DAF Holdco Share Transfer. Those documents first appeared in connection with the MacInnis Affidavit. *See* Ex. 2 First MacInnis Aff., (2021 CLOH Shareholder Resolution, MM-1, 1439 n.13); (DAF GP Assignment & DAF Holdco Share Transfer, MM-1, 1439 n.1). Suspicion of control is not the same as possession of authenticated evidence proving, how, when, and through what mechanism control was obtained. |
| "Patrick has controlled HMIT Entities since 2022" | Dondero Affidavit (April 16, 2025); Dallas Foundation Objection (June 9, 2025); MIPA (Aug. 1, 2022); Atlas GP Consents (Oct. 13, 2022); HMIT Appointment (Aug. 12, 2022). | Highland cites the Membership Interest Purchase Agreement, Atlas GP Consents, and HMIT Appointment documents with Bates references (Dkt. 4255, Exs. 75, 82, 86–88), but these are Highland's own trial exhibits that it introduced at the 9019 Hearing. **Critically, at his June 23, 2025 deposition, Patrick could not identify who owned CDMCFAD, stating he would need to "revisit the actual organizational documents."** 4315-49, 6/23/2025 Patrick Deposition, 7:22–25. Two days later at the 9019 Hearing, Patrick readily confirmed that |

| | | |
|---|---|---|
| | | CDMCFAD owned Charitable DAF Fund, LP and that DFW Charitable Foundation was the "ultimate beneficial owner." 4315-23, 6/25/25 Hearing Transcript, 174:8–14. Yet when pressed on the December 2024 transaction (in which Patrick caused Charitable DAF Holdco to transfer its entire $270 million interest in the Fund to CDMCFAD), Patrick repeatedly claimed not to recognize "Charitable DAF Holdco," demanding corporate documents and asserting "there could be a lot of entities called that." *Id.* at 177:21–24. The Court "fe[lt] like [Patrick was] feigning confusion." *Id.* at 182:4–15. Immediately thereafter, Patrick confirmed he was involved in the transaction and that CDMCFAD obtained its interest "from an entity called Charitable DAF Holdco, Ltd." *Id.* at 187:7–12. **This was the first time Dugaboy learned of Patrick's ownership in these entities.** |
| "CDH GP replaced DAF GP as general partner of DAF Fund" | Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Raver Deposition (June 20, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | Highland's own chart concedes that the JOL Writ (July 15, 2025) and Chapter 15 Petition (July 21, 2025) are among the sources both of which post-date July 14, 2025. The earlier sources (Dkt. 4315-E, ¶¶ 38–40, Winding Up Petition, Dkt. 4231, 10, Dallas Foundation Objection) mentioned that CDF GP had replaced DAF GP but **did not contain the underlying GP Assignment document or explain that CDH GP was a newly formed shell entity, incorporated February 27, 2024, with Patrick as sole director, created specifically to wrest control from the existing governance structure.** The replacement's significance, as part of a broader scheme to funnel $270 million away from the charities, was not evident from the bare fact of the GP change. |
| "DFW Foundation was formed by Patrick with Patrick as its sole member." | Supervision Application (May 2, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July | The Supervision Application (filed May 2, 2025) was filed in the Cayman Court; it is a protective filing requesting court oversight of the liquidation. Dkt. 4521-G, Ex. 67. **It did not detail DFW Foundation's role as the vehicle through which Patrick would become the ultimate beneficial owner of $270 million in charitable assets. The Dallas Foundation Objection raised "suspicions" about Patrick** |

| | | |
|---|---|---|
| | 21, 2025). | **and referenced the existence of DFW Foundation but expressly noted it lacked discovery to make full allegations.** Dkt 4315-3, 3. Notably, at his June 23 deposition, Patrick himself refused to confirm whether DFW Foundation was the ultimate owner, testifying he "just [didn't] want to go beyond what [he had] a hundred percent knowledge of." Dkt. 4513-49 at 8:1-6. The full picture that DFW Foundation was created in December 2024 specifically to receive participating shares and become the sole remaining member of CDM after Redemption, came from the July 15, 2025 MacInnis Affidavit and its internal communications. *See* Ex. 2 First MacInnis Aff, ¶38. |
| "DAF HoldCo issued participating shares to DFW Foundation, diluting supporting organizations." | Supervision Application (May 2, 2025); Dallas Foundation Objection (June 9, 2025); Raver Deposition (June 20, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | Again, Highland's own chart concedes the JOL Writ and Chapter 15 Petition as sources, both post-dating July 14. The Supervision Application did not attach or describe the share issuance resolution, the amended Memorandum and Articles (filed February 21, 2025), or quantify the dilution (from 100% to 48.96%). The Raver Deposition (June 20, 2025) was taken only five days before the 9019 Hearing and ten days before the Settlement Order. **At the hearing itself, the Court was not presented with the full transactional chain.** The first document to lay out the complete dilution mechanism, with attached resolutions, valuations and the FTI/ValueScope analyses showing the shares were issued at approximately a 95% discount, was the July 15, 2025 MacInnis Affidavit. *See* Ex. 2 First MacInnis Aff., TDIT005636. The attachments to that affidavit revealed for the first time privileged communications showing the dilution was not to issue additional shares to a charitable beneficiary as provided by the documents, but rather to better position Patrick and his coconspirators in future litigation against the Charities. *Id.* at TDIT005481–005486. |
| "DAF HoldCo transferred DAF Fund to CDM, DCM redeemed DAF HoldCo, | Supervision Application (May 2, 2025); Dallas Foundation Objection (June 9, 2025); Patrick | **This is the heart of the scheme:** the exchange of an approximately $270 million limited partnership interest for a $1.6 million CDM membership interest. The pre-July 14 sources Highland identifies did not contain the |



005968

| | | |
|---|---|---|
| supporting organizations left with no remaining interest in DAF Fund." | Deposition (June 23, 2025); Raver Deposition (June 20, 2025); 9019 Hearing Transcript; JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | underlying transactional documents and did not establish that the $270 million interest was exchanged for a $1.6 million CDM membership interest as part of a coordinated scheme. Patrick himself actively obstructed inquiry into the transaction at his June 23, 2025 deposition and at the 9019 Hearing. Dkt. 4513-23 at 173:13–177:22. Dugaboy was not aware of full picture with supporting documentation until the First MacInnis Affidavit was released on July 15, 2025. *See* Ex. 2 First MacInnis Aff., at ¶40. In particular, the ValueScope March 25, 2025 valuation used to justify Patrick's actions was not available until it was filed by MacInnis on July 21, 2025. *See* 4315-G, at Ex. 50. Finally, it was not known until Dugaboy obtained the First Affidavit of MacInnis that these actions were taken because Patrick was leaked information about the Charities intent to file DAF Holdco for liquidation, and the actions were taken with the intention of relocating the assets before that filing. *See* Ex. 2, First MacInnis Aff. at MM-1, p. 1058. The 9019 Hearing Transcript thus demonstrates the *absence* of available evidence: objectors raised concerns but lacked the underlying documents to prove the scheme. |
| "Beacon Mountain (and HMIT indirectly) was sold to CLOH, Patrick controlled CLOH, DFW Foundation is ultimate owner." | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Raver Dep. (June 20, 2025); Patrick Dep. (June 23, 2025); Littleton Dep. (June 23, 2025); Highland Ex. 95; 9019 Hearing Transcript; Email (Mar. 12, 2025); Beacon Mountain LLC Agreement (Feb. 12, 2025). | The depositions were taken only days before the hearing, June 20 and 23, 2025, and Patrick evaded questions about the ultimate ownership of the entities. He testified that Beacon Mountain was the ultimate owner of Hunter Mountain when in fact DFW Foundation sat above it. Highland's Exhibit 95 at the 9019 Hearing did not disclose that fact. Dkt. 4255–95. The truth was not exposed until the July 15, 2025 JOL filings. The Beacon Mountain LLC Agreement (February 12, 2025) was a Patrick-controlled document that Dugaboy did not possess until it was produced as an exhibit to the JOL pleadings. |
| "Atlas IDF placed into dissolution" | Dondero Affidavit (Apr. 16, 2025); | **Here, Highland is wrong. Atlas IDF, L.P. never was in dissolution, rather it was its** |

| | | |
|---|---|---|
| | Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025). | **subsidiary Rand PE Fund I, L.P. That Dondero did not even know which entity was dissolving demonstrates the lack of information available at that time.** Moreover, the Rand Fund 2024-2025 Liquidating Audit, which confirmed that Rand Fund's sole asset (Beacon Mountain) had been disposed of on February 12, 2025, was not issued until June 26, 2025, only **one day after the 9019 Hearing and four days before the Settlement Order was entered, and was not provided to Rand Fund's limited partners until months later.** Dkt. 4513-48. |
| "Allegations regarding DAF directors' fees, expenses and remuneration" | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025); JOL Writ (July 15, 2025); Ch. 15 Petition (July 21, 2025). | Highland labels these "allegations" that were precisely known, but the pre-hearing documents contained only general references to "increased expenses." At the time, Dugaboy had no admissible evidence of expenses or specific amounts. The actual quantum, $10,548,778 paid to Patrick in 2024, including $850,000 base salary, $4,759,000 LTI (backdated to 2021), $975,000 additional LTI, and a 2.5x base salary bonus, was first documented in the July 2025. Ex. 2, First MacInnis Affidavit (MM-1, 694–722). Moreover, the Third MacInnis Affidavit (November 2025) revealed that total directors' fees across three entities were $11.6 million for 2024 alone, information that was not disclosed until September 12, 2025, when Defendants first produced income statements to the JOLs. The Dallas Foundation Objection and Winding Up Petition mentioned "concerns" about expenses but did not have access to those numbers. (Winding Up Petition - Dkt. 4315-E, Dallas Foundation Objection – Dkt. 4231) |
| "Allegations regarding Creative HEARTS TX donation." | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025). | The Creative HEARTS TX donation of $10,000 to Patrick's family-run nonprofit was a well-known, if small example of his fraudulent intent. This was provided as evidence of Patrick's pattern and practice of self-dealing with DAF assets, but the CREATIVE HEARTS transaction was not part of the series of transactions that composed Patrick's later $270 million fraudulent scheme. Under *Chilson*, what matters is whether the *full evidentiary picture* was available, not whether one fragment was. 796 F.2d at 70–71. |

| | | |
|---|---|---|
| "Allegations regarding proposed fee split with Cronin/Fortaris Capital Advisors" | Dondero Affidavit (Apr. 16, 2025); Winding Up Petition (Apr. 23, 2025); Dallas Foundation Objection (June 9, 2025); Foundations Action (July 1, 2025). | Same analysis as Creative HEARTS TX. Patrick's proposed (and rejected) kickback scheme from September 2023 is another example of his pattern and practice of self-dealing with DAF assets, but the inchoate Fortaris transaction was not part of the series of transactions that composed Patrick's later $270 million fraudulent scheme. *See* 796 F.2d at 70–71. |

**D. Dugaboy Has Established Fraud Under Rule 60(b)(3)**

As argued at the April 24, 2026 hearing, it is Dugaboy's contention that Mark Patrick's systematic concealment of his misconduct constitutes a "fraud on the court" even within the narrow scope of Rule 60(b)(3). More particularly, a "fraud on the court" requires concealing facts that would have caused the Court to rule differently if it had known the truth. Patrick pulled this off at several stages:

- The predecessor judge would not have approved the Settlement had she known how Patrick's misconduct nullified HMIT's capacity to make that Settlement.
- 
- The Cayman Grand Court and/or the Texas Business Court might have ruled sooner or differently on injunctive relief if they knew what Patrick had concealed.
- Dugaboy and the DAF would have raised certain objections sooner than they did (or sought discovery on certain topics sooner than they did), if they had known then what we learned later. But at the time of the Settlement they only had pieces of the puzzle and not the whole picture.
- That is why both Dugaboy and the Texas Attorney General's Office both asked the predecessor judge to delay or stay its ruling on the 9019 Settlement for a few weeks to await the results of the Joint Official Liquidators' investigations in the Cayman Islands—which the court denied. *See* Dkts. 4326 and 4308; Dkt. 4333 (order).

Finally, it bears emphasis that to the extent Dugaboy establishes evidence of "fraud" under Rule 60(b)(3), it does ***not*** also have to show that same evidence was "newly discovered" and can avoid all of the timing difficulties discussed in the previous section.

**1. Patrick's Reorganization Scheme Directly Implicates HMIT and the Settlement**

Highland repeatedly assures the Court that there is "nothing to see here," denying any connection between the Donor-Advised Fund ("DAF") reorganization and HMIT and the Rule 9019 Settlement while noting that the Cayman Decision "never mentions HMIT (or any other HMIT Entity) or the 9019 Settlement." *See* Highland's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate, Dkt. 4535, at ¶¶ 38 n. 76, 40. But this obfuscates the reality that Mark Patrick's fraud against the DAF and the charitable entities is directly relevant to the Settlement—as Dugaboy explained in its opening brief. *See* Dugaboy's Motion for Relief from Order and Motion to Vacate, Dkt. 4513, at 3–4, 7–29, 33–43.

Documents filed by the Joint Official Liquidators in the Cayman Islands show how Patrick made sure that HMIT was folded into the DAF structure through the sale of Beacon Mountain's interest in HMIT to CLO HoldCo. This transaction ensured Patrick's control over HMIT's assets, enabling him to take over $270 million in assets belonging to the charitable entities. Patrick also took care to ensure this restructuring was virtually untraceable. *See* Caymans Ex. B, Statement of Claim, ¶ 82 (instructing his attorneys to make the new entity "***hard to find or track, or trace. Or find owners, etc. Generic name. Strong litigation protection***." (emphasis added)). Of course HMIT and its related entities were not mentioned by name in the documents arising from the Caymans proceedings—the JOLs' July 2025 Statement of Claim, the Grand Court's February 10, 2026 decision, or the Court of Appeal's April 22, 2026 decision—or the 9019 Settlement—because that was exactly what Patrick intended by weaving his complex web of intermediary companies. *See* Exhibit 49, Transcript of Deposition of Mark Patrick, 8:1–6; 11:10–12:7. This Court should not credit Highland's argument, which is made possible only by the very fraud at issue.

The Cayman Liquidators' July 2025 filings showed that Patrick's sham charity, the DFW Foundation, was reorganized into its role as the ultimate beneficial owner of Hunter Mountain, the settling entity. Documents from the Cayman filings reveal that Patrick is the registered director, sole member, and president of the DFW Foundation—despite Patrick's best attempts to avoid identifying himself as the sole economic beneficiary of the DFW Foundation. *See* Caymans Ex. G, First Affidavit of Margot MacInnis dated July 15, 2025 at ¶¶ 11.5, 31.4, and 31.5. *See also* Exhibit 49, Deposition Transcript of Mark Patrick, 8:1–6, 11:10–12:7 (June 23, 2025). The DFW Foundation enabled Patrick to steal the DAF's more than $270 million in charitable assets. Patrick intentionally misled the charitable entities about his self-dealing transactions. The transactions resulted in Patrick having complete control of HMIT's new buyer. *See* Caymans Ex. G (MacInnis Declaration dated July 21, 2025) at Ex. 44–47, 49, 52–55, 60–65, 70–71, 75–76, and 86. Had this series of transactions been revealed before the June 25, 2025 hearing on the 9019 settlement, the Court would have known that the HMIT owners who signed the 9019 settlement came to their ownership only recently and through Patrick's fraud and breach of fiduciary duty.

Further, Patrick's self-dealing transactions to transfer the economic benefit of HMIT from the Dallas Foundation to himself violated Sections 206 and 215 of the Investment Advisors Act.[4] When Patrick caused HMIT to be traded to the DAF structure under his new DFW Foundation, he was the control person of Rand Advisors. Thus, the transaction was a prohibited principal transaction that is void and subject to recission. *See* Securities and Exchange Commission, Interpretation of Section 206(3) of the Investment Advisers Act of 1940, Inv. Adv. Act Rel. No. 1732 (July 17, 1998), 63 Fed. Reg. 39,056 (July 23, 1998) (internal citations omitted); 15 U.S.C.

---

[4] Highland fails to address this point in its Response.

§80b-15(b); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 367 (S.D.N.Y. 2011) (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979)).

Accordingly, rescission of that trade renders the 9019 Settlement void because Highland signed the agreement with the wrong owner of HMIT. Patrick's concealment of the DFW Foundation's ownership of HMIT and his relationship to the Foundation prevented the objecting parties from making the connection between the 9019 Settlement and HMIT sooner. Accordingly, Highland's argument here is not only wrong–it is also enabled by Patrick's complex fraud and material omission. Crediting Highland on this point would only reward that fraud.

### 2. The HMIT Trust Agreement *Automatically* Removed Mark Patrick's Authority

And finally, this Court's proper consideration of the evidence of Patrick's fraud is critically important because that fraud *automatically stripped his authority* to act on behalf of Hunter Mountain. Hunter Mountain's governing Trust Agreement—which was designed to protect the Trust's corpus from the type of theft perpetrated by Patrick—automatically removes Hunter Mountain's Administrator upon any one of several "Trigger Event[s]." The term "Trigger Event" includes "any conduct by [the Administrator] constituting . . . Cause." Reply Exhibit 4, Trust Agreement, Reply, § 1.[5] "Cause" includes, among other things, "a breach of fiduciary duties" and

[5] The original Trust Agreement, dated December 17, 2015, contemplated that John Honis would serve as Administrator of Hunter Mountain. *See* Ex. 4, Trust Agreement, at 1. Consequently, Honis was defined in the Agreement as the "Administrator." *Id.* Other terms in the Trust Agreement explicitly refer to Honis by name, including the terms "Honis Cause" and "Honis Trigger Event." But the Agreement also made clear that "[w]henever this Trust Agreement refers to the Administrator, such reference shall include any successor Administrator appointed under this paragraph." *Id.*, § 17. Further, the Agreement made clear that "each successor Administrator shall be deemed to have assumed the duties hereby undertaken by the Administrator." On August 12, 2022, Mark Patrick was appointed the successor Administrator of Hunter Mountain, making all provisions of the Trust Agreement applicable to him as if he stepped into the shoes of Honis.

"dishonesty, fraud, or willful misconduct." It also includes bad faith or theft on the part of [the Administrator]that is injurious to any of the Applicable Entities," *Id.* at 1.[6] And the Trust Agreement makes clear that *any* act constituting "Cause" is a "Trigger Event," upon which "the Administrator shall immediately be removed without any action by the Delaware Trustee or any other party." *Id.*, § 16. So the removal provision of Hunter Mountain's Trust Agreement is self-executing and effectuated Patrick's immediate removal upon any act of dishonesty, fraud, willful misconduct, or fiduciary breach.

As set forth in Dugaboy's opening brief and above, Patrick's myriad bad acts constituted cause that automatically removed him as Administrator long before the Rule 9019 Settlement was executed. As a preliminary matter, there is no question that Mark Patrick as the Hunter Mountain Trust Administrator had fiduciary duties. The Trust Agreement specifically provides that Patrick had "all implied duties (including fiduciary duties) or liabilities existing at law or in equity with respect to the Trust" and was required to "perform [his] duties in good faith." Trust Agreement §8(b).

Even more to the point, the Trust Agreement provides that "whenever a conflict of interest exists or arises," the Administrator was required to "resolve such conflict of interest, take such action or provide such terms, considering in each case solely the interests of the Trust and the beneficial owner." As set forth in greater detail in the Dugaboy's Motion, Patrick acted in myriad ways for his own personal benefit and contrary to the interests of the Trust and the Trust's ultimate

---

*See* Exhibit 5, Appointment of Successor Administrator, Reply Thus, for the ease of reference and to avoid confusion, Dugaboy has dropped the name "Honis" from the terms "Honis Cause" and "Honis Trigger Event" to make clear that those terms apply to Patrick as successor Administrator.

[7] Furthermore, actions by James Dondero—such as approving a payment—are not imputed to Dugaboy or other entities for purposes of ratification absent a formal agency relationship. *See* Section B above.

beneficial owner, the Dallas Foundation, whose interests Patrick obliterated to benefit a sham charity he created and ran.

Specifically, in February 2025, Patrick caused Rand PE Fund to sell its interest in Beacon Mountain (and therefore Beacon Mountain's interest in Hunter Mountain) to CLO Holdco (an entity he controlled and which provided no benefit to the Dallas Foundation) for $1 million. *See* Exhibit 23, Transcript of Hearing dated June 25, 2025 ("9019 Hrg. Tr.") at 173:22–174:14. [Opening Brief Exs. 20 and 21 (emails between Raver and Rice) and Ex 23 (June 25, 2025 9019 Hearing Tr). The effect of this transfer was to deprive the ultimate beneficial owner of Hunter Mountain (a venerable Dallas charity) of an asset that within weeks would become worth as much as 100 times more by virtue of the 9019 Settlement Agreement Patrick sought and negotiated. Patrick's consummation of the restructuring of HMIT's ownership while negotiating for vastly more than the Trust had obtained for its prior beneficial owner alone effectuated Patrick's removal as Administrator and his authority to act for Hunter Mountain.

And Patrick committed numerous other "dishonest" and "fraud[ulent]" acts as well as breaches of fiduciary duty that triggered his automatic termination, stripping him of authority to enter into the Settlement. He did not tell the other Rand PE Fund limited partners that he was looking to sell Beacon Mountain's interest in Hunter Mountain, nor that he had actually sold the interest. He did not engage a legitimate third-party firm to value the interest (and if he did, did not disclose that he was negotiating the 9019 for substantially more value). He did not tell the Atlas IDF limited partners that he was selling the Beacon Mountain Interest in Hunter Mountain to a company he controlled, nor obtain their written consent, as required. *See* 4513-50, Amended & Restated Limited Partnership Agreement of Atlas IDF, LP (as of Nov. 30, 2015), § 3.01. All of this breached his fiduciary duties and was very definitely "dishonest."

In sum, there can be no doubt that Patrick's acts constituted "Cause" that initiated a "Trigger Event" that automatically removed him as Administrator of Hunter Mountain. And because he was stripped of his authority to act for Hunter Mountain, Patrick had no authority to enter into the Rule 9019 Settlement Agreement on its behalf, rendering his execution of that settlement a nullity.

**E. Dugaboy Did Not Ratify or Waive its Challenge to Mark Patrick's Authority**

Highland contends in its Response that "Dugaboy and other Dondero-controlled entities have, when it suits them, openly and repeatedly recognized Patrick's authority and control over" HMIT Entities and DAF Entities. *See* Resp. at 14. In making this assertion, Highland points to a slew of Dugaboy contractual obligations and performances as demonstrating that such acts "validated and ratified Patrick's control over" HMIT Entities and DAF Entities. *See* Resp. at 15–16. Highland's position is legally wrong as it not only conflates ratification of a contract with ratification of authority but, even assuming Dugaboy's contractual performances could show an intent to ratify Patrick's authority, Highland fails to demonstrate the necessary elements of ratification under Texas law.

Highland overstretches the doctrine of ratification, wrongly arguing that Dugaboy's contractual performances operate to validate, ratify and waive challenges to Patrick's authority. As an example, Highland points to the fact that "Dugaboy recognized the 9019 Settlement transfer of the Dugaboy Note from Highland to HMIT as well as Patrick's control of HMIT by paying HMIT the $1.357 million in principal and interest then due on the Dugaboy Note" to support its contentions. *See* Obj. at 15. But Highland cannot reasonably argue that Dugaboy was required to breach a contract and default on an eight-figure loan obligation just to preserve its Rule 60(b) argument that Patrick lacks authority over the HMIT Entities and DAF Entities. In fact, the Fifth

Circuit has held that performance under a contract (such as a payment obligation), by itself, is insufficient to establish ratification of authority.[7] In *Global Towing, L.L.C. v. Marine Technical Services, Inc.*, 2000 WL 1901699, at *3–*4 (5th Cir. Dec. 15, 2000), the court rejected an argument that payments for survey work under a contract signed by an agent of a company (which were later ratified by another agent who did have authority to sign contracts) ratified said agent's authority, at large, to sign contracts on behalf of his company. The court noted that "an earlier ratification of an unauthorized act does not necessarily ratify all future unauthorized acts," and, thus, distinguished between ratifying a specific contract via fulfilling a payment obligation and ratifying an agent's general authority. *See id.* Here, Dugaboy's payment under the Dugaboy Note to HMIT, while effectively operating to validate and ratify the Dugaboy Note, does not go as far as to validate and ratify Patrick's authority in all other respects. Such a premise extends equally to the other six examples Highland cites. *See* Resp. at 14–15. Thus, Highland's recitation of a handful of contracts and performances cannot demonstrate that Dugaboy ratified Patrick's authority.

Furthermore, the ratification and waiver arguments are meaningless here because they are contract-law doctrines that might help Highland if it were suing Dugaboy for ***refusing*** to pay the Note. But Dugaboy reasonably chose to pay the Note exactly to avoid that lawsuit. Those contract doctrines are not issue-preservation rules and in no way preclude Dugaboy from challenging Patrick's authority in the very different context of the Rule 60(b) proceeding.

Even assuming Highland can establish Patrick's authority to make decisions on behalf of HMIT Entities and DAF Entities by simply pointing to Dugaboy's contractual performances, Highland fails to demonstrate the necessary and well-established elements of ratification. Under

---

[7] Furthermore, actions by James Dondero—such as approving a payment—are not imputed to Dugaboy or other entities for purposes of ratification absent a formal agency relationship. *See* Section B above.

Texas law, to establish the ratification of an act or contract, a party must show "(1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act." *In re Gulley*, 436 B.R. 878, 877 (Bankr. N.D. Tex. 2010) (internal citations omitted); *see also Yturria v. Kerr-Mcgee Oil & Gas Onshore, LLC*, 291 F. App'x 626, 636 (5th Cir. 2008).

Highland fails to establish elements (2) and (3). *First,* for Dugaboy to ratify Patrick's authority, Dugaboy must have had full knowledge of the facts supporting or undermining Patrick's supposed authority. A central contention in this case is that Dugaboy lacked knowledge of facts undermining Patrick's authority because Patrick fraudulently concealed those facts. Thus, Dugaboy could not have ratified Patrick's authority as it lacked the requisite knowledge to do so. *Second,* and independently of the previous element, Highland cannot establish that Dugaboy had any intention of validating Patrick's authority when, again, its central contention in this case is that Patrick lacked authority. One cannot simultaneously validate a person's authority and challenge the same person's authority. It is an all or nothing proposition, and Dugaboy has consistently held that Patrick lacks authority over the HMIT Entities and DAF Entities. More importantly, Highland's contention that Dugaboy recognizes Patrick's authority "when it suits them" (Resp. 14) is fundamentally at odds with the consistency requirement necessary to establish the third element of demonstrating ratification. Accordingly, Highland fails to show that Dugaboy either ratified or waived its challenge to Patrick's authority.

### F. This Court Has Broad Discretion to Vacate the Settlement Order Due To Chief Judge Jernigan's Refusal to Recuse Herself

The Court should vacate the 9019 Settlement Order if it concludes that: (1) 28 U.S.C. § 455(a) required Chief Judge Jernigan to disqualify herself; or (2) that Rule 60(b)(6) justifies vacatur on account of Chief Judge Jernigan's unlawful failure to recuse. Highland does not deny that vacatur

would be required if the Court reaches these conclusions. But it insists that Chief Judge Jernigan was under no statutory obligation to recuse—and that even Rule 60(b)(6) would not authorize vacatur of the 9019 Settlement Order. Highland is mistaken on both counts.

**1. 28 U.S.C. § 455(a) Required Chief Judge Jernigan To Recuse**

Highland contends Chief Judge Jernigan was under no statutory obligation to recuse because it insists that Chief Judge Jernigan recused herself "voluntarily" rather than in response to the Fifth Circuit's "corrective action." The premise of Highland's argument is false, and even if it were true the conclusion does not follow.

Highland fixates on whether the Fifth Circuit Judicial Council's resolutions of the judicial complaints filed against Chief Judge Jernigan should be characterized as "corrective action" that prompted Chief Judge Jernigan to recuse—or whether this Court should believe that Chief Judge Jernigan, after denying no fewer than five separate motions to recuse in the bankruptcy court,[8] abruptly changed her mind and "voluntarily" recused herself on December 18, 2025, for reasons having nothing to do with the Fifth Circuit Judicial Council's investigation and resolution of the numerous judicial-misconduct complaints that had been filed against her. *See* Highland's Obj., ECF No. 4535, at pp. 40–44. But Chief Judge Elrod's orders to make clear Chief Judge Jernigan's recusal was part and parcel of the "corrective action" needed to secure dismissal of the judicial-misconduct complaints. The order dismissing Complaint No. 05-26-90042 states:

> While the judge remains steadfast that she has no bias or animus against any party in any matter pending before her, she has also recused herself from all matters related to the company's bankruptcy case that are currently pending before her.

[8] *See* Dkt. 2060 (first Motion to Recuse); Dkt. 3406 (second Motion to Recuse); Dkt. 3570 (third Motion to Recuse); Motion to Recuse Pursuant to 18 U.S.C. §§ 144 and 455, *Kirschner v. Dondero et al.*, Case No. 21-03076-sgj, Dkt. 309 (N.D. Tex. Feb. 27, 2023) (fourth Motion to Recuse, filed in the *Kirschner* adversary litigation); Dkt. 4372 (fifth Motion to Recuse).

> I find, without regard to the veracity of the allegations in the complaint, *that these actions constitute appropriate corrective action that acknowledges and remedies the problems raised by the complaint*. This aspect of the complaint is therefore subject to conclusion under 28 U.S.C. § 352(b)(2).

*In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, Case No. 05-26-90042 at 7 (Dec. 29, 2025), available at https://tinyurl.com/yynh3u67 (emphasis added); *see also In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002*, Case No. 05-26-90045 at 3 (Dec. 29, 2025), available at https://tinyurl.com/2vka5dn6. Chief Judge Elrod specifically found that Chief Judge Jernigan's recusal constitutes "appropriate corrective action" and that her recusal "acknowledges and remedies the problems raised by the complaint." So it is entirely truthful for Dugaboy to describe the recusal decision as "corrective action" necessary for Chief Judge Elrod to dismiss the judicial-misconduct complaints. And this resolution of the judicial-misconduct complaints against Chief Judge Jernigan was unusually serious. Apart from these complaints against Chief Judge Jernigan, only three of the more than 400 Fifth Circuit judicial-misconduct complaints resolved since December 2019 have been resolved by the Chief Judge through corrective action, rather than a finding of insubstantiality. And the Fifth Circuit's Chief Judge has not referred a complaint to a special committee for imposition of sanctions since 2015.

Highland seizes on a footnote in which Chief Judge Elrod disclaimed ruling on whether Chief Judge Jernigan was statutorily compelled to recuse herself:

> Neither the judge's recusal nor anything in this order should be interpreted as an opinion or reflection on the merits of the judge's prior decision not to recuse, which has been addressed by the Fifth Circuit and is currently pending before the Supreme Court, or the validity of any decision, ruling, or order that she has issued in any judicial proceeding.

*In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002,* Case No. 05-26-90042 at 6 n. 3 (Dec. 29, 2025). But Dugaboy never asserted or even suggested that Chief Judge Elrod had found that Chief Judge Jernigan had violated 28 U.S.C. § 455(a) by failing to recuse. And Dugaboy is not claiming that the Fifth Circuit Judicial Council ruled on whether 28 U.S.C. § 455(a) required Chief Judge Jernigan's recusal. To the contrary, Dugaboy's Rule 60(b) motion made clear that the 28 U.S.C. § 455(a) issue needs to be resolved in the ongoing court proceedings and *not* by the Fifth Circuit Judicial Council, as judicial-misconduct proceedings cannot be used to vacate previously issued rulings. *See* Rule 60(b) Motion, ECF No. 4513, at 45 ("[T]here are judicial proceedings to address consequences for rulings in a case. The Judicial Conduct and Discipline Rules are clear that proceedings thereunder are not to be used to reverse rulings in pending cases, because all the parties to those cases should be heard on such rulings.").

Yet none of this changes the fact that Chief Judge Jernigan's recusal was "corrective action" needed to resolve the judicial-misconduct proceedings and induce Chief Judge Elrod to dismiss the judicial-misconduct complaints, as Chief Judge Elrod's orders explicitly describe Chief Judge Jernigan's recusal decisions as "corrective action" to those ends. So Highland's objection to Dugaboy's characterizations of Chief Judge Elrod's orders are baseless, as is its claim that Chief Judge Jernigan "voluntarily" recused herself. Chief Judge Jernigan recused to resolve the judicial-misconduct complaints against her, and she would not have done so absent the Fifth Circuit Judicial Council's investigation and resolution of those complaints.

It also does not matter whether Chief Judge Jernigan's recusal was "voluntary" or taken in response to the Fifth Circuit Judicial Council's investigation and resolution of the judicial-misconduct complaints. The issue for this Court to resolve is whether Chief Judge Jernigan's recusal was required by 28 U.S.C. § 455(a). The answer to that question does not depend on

whether or to what extent the Fifth Circuit Judicial Council nudged Chief Judge Jernigan into finally recusing herself after years of refusing to do so. Dugaboy readily acknowledges that neither Chief Judge Elrod nor the Fifth Circuit Judicial Council ruled on whether Chief Judge Jernigan was statutorily compelled to recuse herself, even as they described her recusal as "appropriate corrective action that acknowledges and remedies the problems raised by the complaint." *In re Complaint of Judicial Misconduct Under the Judicial Improvements Act of 2002,* Case No. 05-26-90042 at 7 (Dec. 29, 2025). It is the responsibility of *this* Court to determine whether 28 U.S.C. § 455(a) required Chief Judge Jernigan to recuse—as she finally did in December of 2025 after years of steadfast refusals. It is not bound to rule one way or the other on that question by anything the Fifth Circuit Judicial Council did.

As for the merits of the recusal issue, Highland insists that Chief Judge Jernigan "*never* had a duty to recuse herself under Section 455." Highland's Obj., ECF No. 4535, at p. 42. But Highland presents no argument to this effect. It simply points out that Chief Judge Jernigan denied five previous recusal motions before changing her stance and recusing herself in December 2025, and it notes that the Fifth Circuit had refused to order Chief Judge Jernigan's recusal on mandamus. Chief Judge Jernigan's previous rulings on the recusal issue are not binding on this Court, especially now that she has recused herself from this case. And the Fifth Circuit held only that the Dondero parties had failed to make the demanding showing needed to compel Chief Judge Jernigan's recusal on a writ of mandamus. *See Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *3 (5th Cir. Apr. 16, 2025) ("Mandamus relief is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). The Fifth Circuit never conducted de novo review of whether 28 U.S.C. § 455(a) required Chief Judge Jernigan to recuse herself. It acknowledged that Chief Judge Jernigan's

rulings on the recusal issue were reviewable only for abuse of discretion,[9] and then it applied an extra layer of deference while conducting mandamus review, where the writ can issue only when a petitioner shows that his entitlement to the writ is "clear and indisputable." *Id.* at *4 ("[T]he Dondero Parties must show that their right to the writ is 'clear and indisputable.' That is, it must be clear and indisputable that Chief Judge Jernigan is required to recuse. . . . The Dondero Parties fail to meet this high burden." (citation omitted)). The Fifth Circuit also acknowledged that "a strong argument could be made that [Chief Judge Jernigan] had a duty to recuse," yet made clear that it was denying relief only because of the highly deferential standard of review that governed its consideration of the appeal:

> Due to the similarities between the characters in Chief Judge Jernigan's novel and the litigants currently before her court, *a strong argument could be made that she had a duty to recuse*. But, while some similarities between the books and the cases before Chief Judge Jernigan may raise cause for concern, *the similarities are not close enough to find that the district court abused its discretion denying the petition*.

*Id.* at *7 (emphasis added). For Highland to claim that the Fifth Circuit ruled as a matter of binding precedent that Chief Judge Jernigan's novel-writing "is 'insufficient' to warrant 'a recusal order' " is nothing short of misrepresentation. Highland's Obj., ECF No. 4535, at p. 43. The Fifth Circuit merely held that this evidence was insufficient to qualify as a "clear and indisputable showing" that Chief Judge Jernigan had abused her discretion by failing to recuse. That hardly precludes this Court from determining as a de novo matter that recusal was warranted under 28 U.S.C. § 455(a), and there is no "law of the case" on that question.

---

9. *See Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *4 (5th Cir. Apr. 16, 2025) ("Recusal decisions are reviewed for abuse of discretion").

### 2. The Court Should Vacate The 9019 Settlement Order Under Rule 60(b)(6) If It Determines That 28 U.S.C. § 455(a) Required Chief Judge Jernigan To Recuse

Highland contends it would be impractical to undo Chief Judge Jernigan's previous rulings if this Court determines that 28 U.S.C. § 455(a) required her recusal. Highland's Obj., ECF No. 4535, at p. 44. But the decision whether to vacate the 9019 Settlement Order is governed by the three factors established in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), which requires courts to consider "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864. And as Dugaboy explained in its Rule 60(b) motion, Chief Judge Jernigan's novel-writing activities undermine public confidence in the judicial process because she wrote and published two novels *while this case was pending* that pit a heroic Texas bankruptcy judge who resembles Chief Judge Jernigan against a villainous hedge-fund manager named Cade Graham who resembles Mr. Dondero. The protagonist of the books, Bankruptcy Judge Avery Lassiter, serves in the Northern District of Texas, graduated from the University of Texas School of Law,[10] is married to a retired police officer,[11] and owns two Cavalier King Charles dogs.[12] The bankruptcy judge has acknowledged that "the protagonist characters in her books (Judge Avery Lassiter and Max Lassiter) may resemble herself and her spouse." *In re Highland*

10. *Compare* Stacey Jernigan, *He Watches All My Paths* 165 (referring to Lassiter's "University of Texas Law School days") *with* Judge Stacey G. C. Jernigan Bio ("J.D., University of Texas School of Law, 1989"), http://bit.ly/4ndIg2r.

11. *Compare* Stacey Jernigan, *Hedging Death* 18 ("Max [Lassiter] had 'escaped the confinement of the police department' and retired a couple of years ago . . . ."); *with* About Me, *SJ Novels* (noting that Judge Jernigan "is married to a retired police officer"), https://sjnovels.com/about-the-author ("About Me").

12. *Compare* Stacey Jernigan, *Hedging Death* 79 ("'Baxter Squared' was Max's nickname for the two new Cavalier King Charles Spaniel puppies that Avery recently adopted[.]") *with* About Me, *SJ Novels* (noting that Chief Judge Jernigan has "two Cavalier King Charles Spaniels"), About Me.

*Capital Management, L.P.*, No. 19-34054-SGJ-11, 2023 WL 2395677, at *16 (Bankr. N.D. Tex. Mar. 6, 2023).

The similarities between the fictional Mr. Graham and Mr. Dondero are even more striking. Mr. Dondero's Highland was for years known as "Ranger Asset Management,"[13] while Mr. Graham's hedge fund is called "Ranger Capital." See Stacey Jernigan, *Hedging Death* 18. The fictional Mr. Graham and the real Mr. Dondero even have the same hair color and height.[14] And the books paint an exceeding dark picture of Mr. Graham and the entire hedge-fund industry, deriding "high-flying hedge fund managers [that] essentially suck up money ("fresh powder" they call it) like an i-Robot vacuum cleaner from every corner of the universe and invest it, generally earning compensation of 20% of the assets they invest and another 2% of the profits that the assets earn." Stacey Jernigan, *He Watches All My Paths* 78; *see also id.* ("They make money no matter what—whether their investments are successful or not—because of their 20% cut."); *id.* at 61 ("[M]aybe they were hedge fund managers—they had that air of hubris about them that was so characteristic of those Wall Street assholes.").

Highland does not deny any of these similarities. Nor does Highland attempt to explain how leaving Chief Judge Jernigan's previous rulings in this case undisturbed would *not* present a "risk of undermining the public's confidence in the judicial process," especially now that Chief Judge Jernigan has recused herself from the case. *Liljeberg*, 486 U.S. at 864. Instead, Highland relies on the Fifth Circuit's refusal to issue a writ of mandamus and acts as though that disposes of Dugaboy's Rule 60(b)(6) arguments. *See* Highland's Obj., ECF No. 4535, at p. 45 ("Dugaboy's

---

13. *Kirschner v. Dondero*, No. 3:21-03076-sgj (Bankr. N.D. Tex. Feb. 27, 2023), Dkt. 310 at 16–17.

14. *See* Stacey Jernigan, *Hedging Death* 22, 107 (describing Graham as "fifty-something" with "silver hair" and "a tanned complexion" and "tall, well-built, and handsome, with a confident Texas swagger").

argument fails here just as it has previously failed at the Fifth Circuit."). But the Fifth Circuit did not resolve whether Chief Judge Jernigan's novel-writing activities might cause an objective observer to question her impartiality, and it did not rule on whether public confidence in the judicial process would be undermined by leaving Chief Judge Jernigan's previous rulings in place. And the Fifth Circuit certainly did not regard the recusal arguments as lacking merit.[15] Rather, it acknowledged that "a strong argument could be made that [Chief Judge Jernigan] had a duty to recuse." *Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *7 (5th Cir. Apr. 16, 2025).

Dated: May 8, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com

KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

15. Highland's Obj., ECF No. 4535, at p. 45.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 8, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*<u>/s/ Geoffrey S. Harper</u>*
Geoffrey S. Harper

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS)<br><br>**Re: D.I. 21** |

**DECLARATION OF MARGOT MACINNIS IN SUPPORT OF MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

I, Margot MacInnis, pursuant to 28 U.S.C. § 1746, hereby declare (this "Supplemental Declaration") under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**A. The Joint Official Liquidators and Original MacInnis Declaration**

1. My colleague, Sandipan Bhowmik, and I (the "Petitioners"),[2] both of Grant Thornton Specialist Services (Cayman) Limited ("Grant Thornton"), are the duly appointed Joint Official Liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd. (in Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court") by an order dated May 6, 2025 (Cause No. FSD 116 of 2025)(JAJ) (the "Supervision Order").

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[3] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd.*, FSD 116 of 20256 (JAJ).

2. On July 21, 2025, by its undersigned United States counsel, Reed Smith LLP, the JOLs commenced the above-captioned chapter 15 case in respect of the Debtor (the "Chapter 15 Case") by filing the respective chapter 15 petition [D.I. 1] (the "Petition Form") and a *Verified Petition for (I) Recognition of the Foreign Main Proceeding, (II) Recognition of the Foreign Representatives, and (III) Certain Related Relief* [D.I. 2] (the "Verified Petition," and together with the Petition Form, the "Petitions") seeking recognition of (a) the Cayman Proceeding as a "foreign main proceeding", and (b) the JOLs as "foreign representatives" of HoldCo.

3. On July 21, 2025, the Debtor filed the *Declaration of Margot MacInnis in Support of Chapter 15 Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4] (the "Original MacInnis Declaration"). This Supplemental Declaration incorporates the statements made in the Original MacInnis Declaration as if made herein.

4. I respectfully submit this Supplemental Declaration in support of the *Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(A), 542, 1519 and 1521* (the "Motion") seeking immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require Carrington Coleman, Valuescope, Hunton, and Mancino, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.

5. I am duly authorized to make this Supplemental Declaration on behalf of the JOLs. I am fully familiar with the facts of this matter. Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon my personal knowledge of

HoldCo's operations and financial condition, my review of relevant documents and my conversations with relevant personnel. I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

6. I make this Supplemental Declaration in my statutory capacity as an officer of the Cayman Court and request an extension of comity for the benefit of all of HoldCo's creditors and investors, whose interests I represent. For the reasons discussed below, I submit that provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require the Turnover Targets, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo, is appropriate and warranted under the circumstances.

## B. Conduct of Cayman Proceeding and Cayman Litigation Since the Commencement of the Chapter 15 Case

7. Since the Petition Date, the JOLs have progressed in discharging their duties under the Companies Act both in relation to HoldCo's assets and in investigating HoldCo's assets and affairs.

8. On July 31, 2025, the Cayman Court entered the Cayman Consent Order, in which it ordered by consent, among other things, that the Named Defendants in the Cayman Litigation and the CDM Entities shall abide by certain undertakings intended to prevent asset dissipation and provide transparency and disclosure to the JOLs pending the Cayman Court's determination of the Injunction Summons.

9. On August 5, 2025, the JOLs filed the *Certification of Counsel Regarding Agreed Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 18] (the "Certification of Counsel"), seeking approval of a stipulation (the "Stipulation")

among the JOLs, the Applicable Named Defendants, and the CDM Entities that, among other things: (a) recognizes and enforces the Cayman Consent Order, and (b) adjourns the hearing to recognize the Cayman Proceeding under chapter 15 of the Bankruptcy Code (the "Recognition Hearing") from its originally scheduled date of August 14, 2025 (the "Original Recognition Hearing Date"), *sine die*, pending the scheduling of the hearing on the Injunction Summons by the Cayman Court.

10. On August 6, 2025, this Court entered the U.S. Court Order approving the Stipulation [D.I. 19]. The entry of the Cayman Consent Order and the U.S. Court Order recognizing and enforcing the Stipulation significantly furthers the JOLs' goal of preventing the dissipation of assets subject to HoldCo's potential proprietary and other claims pending the resolution of the Cayman Litigation.

11. On August 19, 2025, DFW issued a summons seeking the removal of the Petitioners as Joint Official Liquidators of HoldCo and made various allegations regarding the Petitioners' purported lack of independence and other matters related to their handling of the liquidation. The JOLs are reviewing the summons and will respond in due course in the Cayman Proceeding.

## C. JOLs' Investigations into HoldCo's Assets and Affairs

12. Consistent with the purpose of official liquidation under Part V of the Companies Act, the JOLs are empowered to investigate: (a) the causes for the failure of HoldCo, as necessary; and (b) generally, the promotion, business, dealings and financial affairs of HoldCo. *See* Companies Act, § 110(2).

13. To identify, secure, and recover HoldCo's books and records, the JOLs have: (a) issued formal correspondence to over 50 parties, including directors, shareholders, banks, service providers, various third parties, and the prior appointed joint voluntary liquidators,

notifying them of the JOLs' appointment and requesting books and records; and (b) held discussions with various parties to discuss the history and financial affairs of HoldCo.

14. Furthermore, since the date of their appointment, the JOLs have been conducting an extensive and detailed ongoing investigation into HoldCo's affairs. This investigation has involved a review of HoldCo's books and records (to the extent that they have been able to obtain them and to the extent that they are complete) and numerous inquiries and requests for information directed to persons previously involved with HoldCo.

15. While the vast majority of parties that the JOLs have contacted have cooperated with the JOLs, certain US-based service providers have asserted that they do not recognize the JOLs' authority under the Supervision Order and have refused to provide copies of the requested information absent an order from this Court. In particular, Carrington Coleman,[4] who provided advice in respect to HoldCo's affairs, Valuescope,[5] HoldCo's historic financial advisor and valuation services provider, and Hunton,[6] who provided HoldCo tax law advice, have declined to voluntarily turn over to the JOLs HoldCo's books and records in their possession despite numerous requests by HoldCo and its counsel requesting the same. Additionally, Mancino,[7] one of HoldCo's tax consultants, previously indicated a willingness to cooperate with the JOLs' turnover requests but has yet to comply.

[4] Ex. 1, May 7 Carrington Coleman Letter; Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 6, July 9 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter; Ex. 8, August 6 Carrington Coleman Letter.

[5] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 11, May 30 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[6] Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter; Ex. 22, August 8 Hunton Email; Ex. 23, August 20 Hunton Letter.

[7] Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.



CONFIDENTIAL 

(i) **Carrington Coleman**

16. On May 7, 2025, the JOLs made their first request to Carrington Coleman to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Carrington Coleman possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[8]

17. Carrington Coleman responded that "it is unlikely [it] would have many, if any, documents to provide"[9] in response to the JOLs' requests for HoldCo's books and records,[10] despite its prior work for HoldCo.[11] Upon further investigation, Carrington Coleman admitted it is in possession of documents related to a memo prepared by Carrington Coleman regarding U.S. tax issues as they relate to HoldCo and its related affiliates.[12]

18. Despite numerous requests from HoldCo and its counsel,[13] Carrington Coleman has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo. Carrington Coleman's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is recognized by the U.S. Bankruptcy Court in Delaware in the Chapter 15 Case.

---

[8] Ex. 1, May 7 Carrington Coleman Letter.

[9] Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.

[10] Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

[11] Ex. 3, May 28 Carrington Coleman Email.

[12] Ex. 3, May 28 Carrington Coleman Email.

[13] Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

**(ii) Valuescope**

19. On May 7, 2025, and May 15, 2025, the JOLs made their initial requests to Valuescope to produce all of HoldCo's files in their possession, including, without limitation, all engagement letters with HoldCo, any books and records held by Valuescope on behalf of HoldCo, all instructions, work papers and documents reviewed by, provided to or prepared by Valuescope in connection with the valuation analyses it conducted for HoldCo as of December 31, 2020 and onwards concerning 100 Participating Shares in HoldCo and/or HoldCo's 100% membership interest in CDM.[14]

20. Valuescope acknowledges that it possesses records relating to its prior valuation work for HoldCo.[15]

21. However, despite numerous requests by HoldCo and its counsel,[16] Valuescope has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with its engagement by, HoldCo. Valuescope's refusal rests on its assertion that, absent recognition of the Cayman Court's appointment of the JOLs by a U.S. bankruptcy court or other U.S. legal authority, Valuescope has no obligation to turn over the requested records.[17]

**(iii) Hunton**

22. On May 8, 2025, the JOLs made their first request to Hunton to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust

[14] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter.

[15] Ex. 11, May 30 Valuescope Letter.

[16] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[17] Ex. 11, May 30 Valuescope Letter.

accounts or other funds held on behalf of HoldCo, the AML or KYC files Hunton possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[18]

23. Hunton acknowledges that HoldCo is a former client and that it possesses documents on its representation of HoldCo.[19] Additionally, Hunton responded that it "has not held, and does not hold, trust funds of HoldCo, there are no outstanding debts HoldCo owes Hunton, and thus [it has] no document with a statement of a HoldCo account that is due, and Hunton holds no retainer funds of HoldCo."[20]

24. Despite numerous requests from HoldCo and its counsel,[21] Hunton has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo. Hunton's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is validated in the Chapter 15 Case as the parties with the rights to assert HoldCo's privileges and rights to receive HoldCo's legal file held by Hunton.[22]

**(iv) <u>Douglas Mancino of Seyfarth Shaw LLP</u>**

25. On May 6, 2025, the JOLs made their first request to Mancino to produce a copy of his complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Mancino possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[23]

---

[18] Ex. 20, May 8 Hunton Letter.

[19] Ex. 23, August 20 Hunton Letter.

[20] *Id.*

[21] Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter.

[22] Ex. 23, August 20 Hunton Letter.

[23] Ex. 15, May 6 Seyfarth Shaw Letter.

26. Mancino acknowledges that he possesses the requested documents.[24]

27. Initially, Mancino had indicated a willingness to cooperate with the JOLs, including during a May 12, 2025 meeting with the JOLs, as well as in subsequent correspondence, and was seemingly prepared for document production.[25] Yet, without explanation, to date Mancino has failed to produce HoldCo's books and records.

28. I believe, based on correspondence received from Carrington Coleman, that Carrington Coleman maintains at least certain books and records belonging to HoldCo that are relevant to the JOLs in our investigation of the facts and circumstances surrounding the Relevant Transactions, pursuant to which HoldCo's primary and most valuable asset was transferred to DFW. Likewise, I believe that HoldCo's books and records held by Valuescope go directly to valuation issues that are critical to these transactions and the JOLs' investigation of the same. Finally, I believe that as HoldCo's tax advisor, the books and records held by Mancino and Hunton may be central to the investigation of the Relevant Transactions.

29. In particular, Carrington Coleman, Valuescope, Hunton, and Mancino may have possession, custody, or control of books and records belonging to, or otherwise arising in connection with their engagement by, HoldCo, including files regarding the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.

[24] Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain.

[25] Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.



CONFIDENTIAL

**D. Need for Discovery from the Turnover Targets**

30. On the Petition Date and in my capacity as one of the JOLs of the Debtor, I, alongside Mr. Bhowmik, filed the Petitions, thereby commencing the Debtor's Chapter 15 Case.

31. I was authorized pursuant to the Supervision Order to act as one of the JOLs of the Cayman Proceeding and to seek recognition and approval of the Cayman Proceeding as necessary, including the power to seek recognition of the JOLs and the Cayman Proceeding for the purpose connected with the exercise of the JOLs' power to commence legal proceedings in the name and on behalf of HoldCo to obtain the provision of information and/or documents in the United States.

32. I am aware that this Court can afford the JOLs broad discovery rights pursuant to sections 105(a), 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code.

33. I am of the belief that the JOLs must be afforded discovery rights in the United States with respect to the Turnover Targets to facilitate their investigations. Affording the JOLs the ability to compel the Turnover Targets to return files belonging to the Debtor expeditiously is imperative to enable the JOLs to: (a) progress their investigation of the Debtor's assets and affairs, and, in particular, their examination into the Relevant Transactions and the Remuneration Transactions, in a timely manner for the benefit of all stakeholders, (b) avoid incurring burdensome costs by needlessly extending the duration of the JOLs' investigations, and (c) align incentives with respect to all potential discovery targets to promote cooperation with the JOLs in their efforts to discharge their statutory duties in lieu of encouraging such parties to obstruct and delay.

34. I submit that granting the Provisional Relief would result in the JOLs obtaining return of HoldCo's books and records from the Turnover Targets on timing that is broadly consistent with the JOLs' expectations based on the scheduling of the Original Recognition Hearing Date. Moreover, I submit that granting the Provisional Relief is particularly necessary

because, based on scheduling constraints in the Cayman Proceeding, the JOLs now expect that the Injunction Summons will be heard some time in November or December 2025, which is many weeks later than the JOLs originally anticipated, thereby significantly lengthening the "gap" period between the Petition Date in this Chapter 15 Case and the date when the Recognition Hearing will be scheduled.

35. I understand that in the Third Circuit, the general standards for the Provisional Relief requested in the Motion require a showing of: (1) a substantial likelihood of obtaining recognition of the Cayman Proceeding; (2) the likelihood of irreparable injury if the Provisional Relief is not granted; (3) the hardships in granting the Provisional Relief balance in favor of the JOLs; and (4) the Provisional Relief will serve the public interest.

36. I submit that there is no reason why this Court should not recognize the Cayman Proceeding on the Adjourned Recognition Hearing Date. As set forth in the Verified Petition, the Cayman Proceeding is clearly a "foreign proceeding" under chapter 15, and the Debtor's center of main interests is in the Cayman Islands. *See* Verified Petition, ¶¶ 132-144. The Petitioners satisfy the requirements of a "foreign representative" under Bankruptcy Code section 101(24). Id. ¶¶ 148-149. There can be no serious question that the Petitioners are entitled to and will succeed in obtaining relief under sections 1517 and 1520 of the Bankruptcy Code on the Adjourned Recognition Hearing Date and would have obtained such relief by the Original Recognition Hearing Date absent the Stipulation. Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition.

37. I also submit that the Petitioners need the Provisional Relief to avert irreparable harm. Not being able to seek turnover of the Debtor's own books and records to uncover the facts

and circumstances surrounding the Relevant Transactions—which divested the charitable organizations for whose benefit the Debtor was formed of their most valuable and primary asset—and the Remuneration Transactions until after the Adjourned Recognition Hearing Date will cause irreparable injury by delaying the Petitioners from progressing their investigation in accordance with their duties as officers of the Cayman Court for potentially several months. This delay burdens the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders.

38. I also submit that granting the Provisional Relief will not result in significant hardships to the Turnover Targets, while their delay in turning over the Debtor's own books and records will substantially hinder the Debtor's stakeholders by delaying the JOLs' investigation and burdening the estate with unnecessary costs. The relief requested by the Motion will benefit the Debtor and its stakeholders by ensuring an equitable and orderly implementation of the Cayman Proceeding. The requested Provisional Relief provides the JOLs with the ability to expeditiously carry out their investigatory duties, reducing estate costs and preventing unnecessary delays.

39. The Provisional Relief will not meaningfully harm the Turnover Targets, and any potential harm is far outweighed by the benefit to HoldCo's estate. The Turnover Targets would eventually be subject to turnover requests in the context of this Chapter 15 Case regardless of the Motion. Moreover, there is no credible basis to claim that granting Provisional Relief would cause any hardship, let alone significant hardship. Carrington Coleman, for example, has repeatedly stated that "it is unlikely [it] would have many, if any, documents to provide."[26]

40. I also submit that granting the Provisional Relief will serve the public interest because the Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs,

---

[26] Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.



CONFIDENTIAL

which should be respected and enforced in the United States. The Provisional Relief is also in the public interest because it will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing efficient discovery tools. Additionally, the Provisional Relief conforms with the public interest because it facilitates the Debtor's cross-border liquidation for the benefit of all of its creditors. In particular, the Provisional Relief aligns incentives with respect to all of the JOLs' potential discovery targets to promote cooperation with the JOLs in discharging their duties under the Companies Act rather than obstruction.

41. For all of these reasons, I respectfully request that this Court (i) grant the Motion in its entirety, (ii) enter the Proposed Order, substantially in the form attached to the Motion as Exhibit A, granting immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of the Bankruptcy Code to require the Turnover Targets within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by HoldCo, and (iii) grant such other relief as the Court deems appropriate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 27, 2025
Cayman Islands

*/s/ Margot MacInnis*______________
MARGOT MACINNIS

*Joint Official Liquidator of*
*Charitable DAF HoldCo, Ltd*
*(in Official Liquidation)*

# EXHIBIT 1

Grant Thornton

Our Ref: 20250507 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Carrington Coleman LLP
FAO Mr. Shaw
901 Main Street
Suite 5500
Dallas
Texas 75202

Via email: bshaw@ccsb.com

7 May 2025

Dear Mr. Shaw,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you might be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators ("**JVLs**") of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

grantthornton.ky

We ask that this file includes but is not limited to the following documentation:

1. A copy of your engagement letter dated 22 March 2024;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to you;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order – 2025-116 (JAJ)
- Proof of Debt – CWR 24

# EXHIBIT 2

CARRINGTON COLEMAN

Kelli Hinson
Partner

214.855.3110
khinson@ccsb.com

May 22, 2025

***Via Email***
Jamie Gallagher jamie.r.gallagher@uk.gt.com
Michael Aquino michael.aquino@uk.gt.com
Sandipan Bhowmik cdaf.core@uk.gt.com
Grant Thornton
2nd Floor, Century Yard, Cricket Square
P.O. Box 10144
Grand Cayman, Cayman islands KY 1-1102

Re: Charitable DAF HoldCo, Ltd.

Dear Sirs:

I am the General Counsel of Carrington Coleman Sloman & Blumenthal, LLP, and I am responding to your letter dated May 7, 2025 to my law partner, Brian Shaw. Please direct any future communications regarding this matter to me.

We are, of course, willing to comply with our ethical duties to provide client files upon an appropriate request. However, we must do so in a way that comports with our other legal obligations. I understand your position that the Joint Official Liquidators ("JOLs") have been appointed as such by the Grand Court of the Cayman Islands and that you make your request in that capacity. It is my understanding, however, that such appointment by a foreign court is not recognized under United States law unless or until the order is recognized by a United States Bankruptcy Court pursuant to 11 U.S. Code Chapter 15. If you have obtained such recognition, please let me know. Otherwise, we cannot comply with your request to release confidential and privileged client files.

In addition, I understand you purport to represent and seek documents concerning only Charitable DAF HoldCo, Ltd. (the "Company"). We have not represented the Company in any lawsuits, arbitrations, or other proceedings, and I am unaware of any legal advice we have provided specifically to the Company. We have not sent invoices to or, to our knowledge, received payment from the Company. Accordingly, even if the JOLs had authority to request this information, it is unlikely we would have many, if any, documents to provide.

Sincerely,



Kelli M. Hinson

# EXHIBIT 3

| | |
|---|---|
| **From:** | Kelli M. Hinson <khinson@CCSB.com> |
| **Sent:** | Wednesday, May 28, 2025 3:19 PM |
| **To:** | Jamie R Gallagher; Michael Aquino; CDAF Core |
| **Cc:** | Brian P. Shaw |
| **Subject:** | Follow up to Carrington Coleman response to letter from JOLs |

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

I write to follow up on my letter dated May 22, 2025. In that letter, I stated that I was unaware of any legal advice CCSB had provided specifically to Charitable DAF HoldCo, Ltd. (the "Company"). Since sending the letter, it has come to my attention that one of our lawyers, David Corkern, prepared a memo regarding U.S. tax issues as they related to the Company and its related affiliates. Accordingly, there may be a small number of documents related to that project that the Company may be entitled to. That being said, we still have the same reservations concerning the JOLs' authority to speak for the Company in the United States prior to complying with Chapter 15 of the U.S. Bankruptcy Code.

**Kelli M. Hinson**
*Partner*

CARRINGTON COLEMAN

O 214.855.3110 / M 214.289.9982
khinson@CCSB.com / ccsb.com

Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main St / Suite 5500 / Dallas, TX 75202

**From:** Kelli M. Hinson <khinson@CCSB.com>
**Sent:** Thursday, May 22, 2025 4:37 PM
**To:** jamie.r.gallagher@uk.gt.com; michael.aquino@uk.gt.com; cdaf.core@uk.gt.com
**Cc:** Brian P. Shaw <bshaw@CCSB.com>
**Subject:** Carrington Coleman response to letter from JOLs

Please see the attached correspondence in response to the May 7, 2025 letter from the Charitable DAF HoldCo Ltd. JOLs.

**Kelli M. Hinson**
*Partner*

CARRINGTON COLEMAN

O 214.855.3110 /
khinson@CCSB.com / ccsb.com

Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main St / Suite 5500 / Dallas, TX 75202

This electronic message is confidential and is intended only for the use of the individual to whom it is addressed. The information may also be legally privileged. This transmission is sent in trust, for the sole

purpose of delivery to the intended recipient. If you have received this transmission in error, you are hereby notified that any use, dissemination, distribution or reproduction of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify me by electronic message or telephone at 214-855-3000, and delete the message from your system. Carrington, Coleman, Sloman & Blumenthal, L.L.P. www.carringtoncoleman.com

# EXHIBIT 4

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 2, 2025

**Via Email (khinson@ccsb.com)**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in response to your letter, dated May 23, 2025, which responded to the JOLs' letter, dated May 7, 2025, requesting the Company's complete file.

Although Carrington Coleman insists that it is "willing to comply with" the JOLs' request for the Company's file, the May 23, 2025 letter and delay suggests otherwise. The letter states that Carrington Coleman is unwilling to comply with the JOLs' reasonable requests because the JOLs' appointment has not yet been recognized under Chapter 15 of the Bankruptcy Code. However, Chapter 15 recognition is irrelevant for Carrington Coleman to comply with the JOLs' request.

The JOLs have been duly appointed by the Grand Court of the Cayman Islands and are requesting that Carrington Coleman provide them with the Company's files pursuant to the JOLs' statutory and court mandated powers. There is nothing about the JOLs' appointment or their status in the United States precluding Carrington Coleman's cooperation with the JOLs' reasonable requests, and Carrington Coleman's argument to the contrary is wrong.

The JOLs therefore renew their request that Carrington Coleman **immediately** provide them with Company's files. Should Carrington Coleman decline to cooperate, the JOLs will have no choice but to assume that Carrington Coleman intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for Carrington Coleman's stonewalling. The JOLs sincerely hope and expect, however, that those measures will not be necessary.

ReedSmith

Kelli Hinson
June 2, 2025
Page 2

Sincerely,

Casey D. Laffey

cc: Aaron Javian (ajavian@reedsmith.com)

# EXHIBIT 5

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 25, 2025

**By Electronic Mail**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
khinson@ccsb.com

**Re**: **Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Carrington Coleman dated June 2, 2025, wherein the JOLs "renew[ed] their request that Carrington Coleman **immediately** provide them with Company's files."

We have yet to receive a response to our June 2, 2025 letter. Please respond immediately, as we hope and expect to resolve this matter amicably. As we stated in our letter, should "Carrington Coleman decline to cooperate, the JOLs will have no choice but to assume that Carrington Coleman intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for Carrington Coleman's stonewalling." Again, the JOLs sincerely hope and expect that those measures will not be necessary.

Very truly yours,

Casey D. Laffey

Casey D. Laffey

# EXHIBIT 6

CARRINGTON COLEMAN

Kelli Hinson
Partner

214.855.3110
khinson@ccsb.com

July 9, 2025

***Via Email** claffey@reedsmith.com*
Casey Laffey
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650

Re: Charitable DAF HoldCo, Ltd.

Dear Casey:

I am responding to your letter dated June 25, 2025 on behalf of the "joint official liquidators" or "JOLs" of Charitable DAF HoldCo, Ltd. Although you accuse Carrington Coleman of "stonewalling" and "obstruct[ing] the JOLs' duties," you have failed to meaningfully respond to the concerns stated in my letter dated May 23, 2025 other than to say they are "irrelevant" and "wrong." If you have authority supporting your assertion that the appointment of JOLs by a court in the Cayman Islands is appropriately recognized in the United States in the absence of a Chapter 15 proceeding, please provide that to me and I'm happy to take a look at it. *See, contra, Rsrv. Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021 (PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010) ("If this Court were to allow the Liquidators to take the place of the Fund Board, such an action would constitute a tacit recognition that the BVI liquidation proceeding is valid and, as a result, the Liquidators are in control of the Fund. This is precisely the kind of determination that must be made in a Chapter 15 proceeding.").

I also reiterate my earlier point that, even if the JOLs had authority to request this information, it is unlikely we would have many, if any, documents to provide.

Sincerely,

Kelli M. Hinson

# EXHIBIT 7

ReedSmith
Driving progress
through partnership

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 30, 2025

**Via Email**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
khinson@ccsb.com

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Carrington Coleman dated June 25, 2025, wherein the JOLs "renew[ed] their request that Carrington Coleman **immediately** provide them with the Company's files," and in response to your July 9, 2025 letter to the JOLs declining that request.

In its July 9, 2025 letter, Carrington Coleman demanded that the JOLs adequately demonstrate their authority to demand and obtain the Company's records. But the JOLs already have provided the necessary proof. Indeed, Carrington Coleman does not dispute that the Company exists under the laws of the Cayman Islands, and that the Grand Court of the Cayman Islands has ordered that the JOLs stand in the shoes of the Company. Carrington Coleman lacks standing and authority to question the propriety of that order (the "**Liquidation Order**"), especially given that the order is final and unchallenged.

Carrington Coleman argues that Chapter 15 recognition is a precondition of the firm's obligation to produce the requested records. That is wrong for at least two reasons:

***First***, as stated in *Rsrv. Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021 (PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010), the case cited in Carrington Coleman's July 9, 2025 letter, Chapter 15 recognition is a gatekeeper to U.S. *judicial* intervention on grounds of comity. "[R]ecognition is required before a foreign representative may avail themselves ***of the federal courts***." *Id.* at *14 (emphasis added). Carrington Coleman is not a federal court, and the firm is not authorized to dispense judicial remedies.

***Second***, judicial intervention is not required to trigger Carrington Coleman's duty to produce the requested records. Rather, as you are aware, Carrington Coleman and its attorneys are subject to the Texas Disciplinary Rules of Professional Conduct, pursuant to which "the documents, papers and other

ReedSmith

information received from a client or received or generated in the course of representing the client (including the lawyer's notes and work product) ***are the property of the client and must be transferred to a former client on request***." Tex. Comm. On Professional Ethics, Op. 657 (2016) (emphasis added). That duty inures immediately and by default to all Carrington Coleman's former clients—whether foreign or domestic—including the Company.

Thus, neither the Company nor the JOLs must, as you suggest, obtain U.S. judicial approval, intervention, or compulsion to obtain the Company's own records pursuant to the Texas Disciplinary Rules of Professional Conduct. Rather, Carrington Coleman must produce the records or justify its failure to do so.

Regardless, on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (the "Verified Petition"). *In re: Charitable DAF HoldCo, Ltd. (In official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware court to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code. If necessary, the JOLs are prepared to use powers afforded by the Bankruptcy Court to compel Carrington Coleman to return to the Company its own records. For all the reasons stated herein, including pursuant to the JOLs powers under the undisputed Liquidation Order and as required pursuant to the Texas Disciplinary Rules of Professional Conduct, however, it should not have to come to that.

Accordingly, the JOLs demand, for the final time, that Carrington Coleman immediately produce the Company's requested records. Carrington Coleman's failure to comply will result in legal action, including a request for sanctions for Carrington Coleman's noncooperation.

Very truly yours,

/s/ Casey D. Laffey

# EXHIBIT 8

CARRINGTON COLEMAN

Kelli Hinson
Partner
214.855.3110
khinson@ccsb.com

August 6, 2025

***Via Email** claffey@reedsmith.com*
Casey Laffey
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650

Re: Charitable DAF HoldCo, Ltd.

Dear Casey:

I am responding to your letter dated July 30, 2025 on behalf of the "joint official liquidators" or "JOLs" of Charitable DAF HoldCo, Ltd. I respectfully disagree with your conclusion that Carrington Coleman must recognize the authority of the JOLs absent such recognition by a United States court.

It is not our position that we do not have to honor requests from foreign former clients. Our position is that the alleged authority of the JOLs to speak for any such client has not been recognized in the United States. Although I readily concede that Carrington Coleman "is not a federal court," and I have not suggested otherwise, the point of the *Rsrv. Int'l Liquidity Fund* case is that the question of whether Liquidators appointed by a foreign court are actually in control of a foreign entity is a question that must be made in a Chapter 15 proceeding. Despite two requests, you have failed to provide any authority to support your assertion otherwise.

In any event, I understand that you have now instituted a Chapter 15 proceeding in the United States, so it seems this issue should be resolved in due course. If and when the authority of the JOLs is recognized by the Court in Delaware, the firm will respond to your request.

Sincerely,

Kelli M. Hinson

# EXHIBIT 9

Commercial in Confidence

Grant Thornton

Our Ref: 20250507 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Valuescope Inc.
950 E. State Highway 114
Suite 120
Southlake
TX 76092
USA

Via email to: info@valuescopeinc.com & shastings@valuescopeinc.com

7 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

We write to advise that the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

We also write to advise that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (together the "**Petitioners**"), in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited ("**GTSS**"), be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the sealed order confirming their appointment is attached for your records.

In accordance with the Cayman Islands Companies Act (As Revised) (the "**Act**") and the powers conferred on the JOLs as per the sealed order, the JOLs act in the name and on behalf of the Company. As such, with effect from the date of our appointment, the JOLs are empowered to take control of the Company's assets and investigate its affairs. Although you may be aware, our responsibilities as JOLs require that we advise you that you can no longer act on instructions from the directors of the Company as their powers ceased upon our appointment.

**Delivery of Books & Records**

We understand that you may have been engaged by the Company or its subsidiaries. Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you:

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

1. Arrange for any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter. Non-receipt of a claim from you by the aforesaid date will be taken to mean you have no claim against the Company.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of the Company



Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Supervisory Court Order – 2025-116 (JAJ)
-Proof of Debt – CWR 24

# EXHIBIT 10

Commercial in Confidence

Grant Thornton

Our Ref: 20250515 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Valuescope Inc.
950 E. State Highway 114
Suite 120
Southlake
TX 76092
USA

Via email to: info@valuescopeinc.com & shastings@valuescopeinc.com

15 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Request for information on Valuation Analysis for the Company and CDMCFAD LLC**

I refer to my letter dated 7 May 2025 notifying your office that Margot MacInnis and I, both of Grant Thornton Specialist Services (Cayman) Limited, were appointed as Joint Official Liquidators ("**JOLs**") of the Company by the Grand Court of the Cayman Islands.

We understand that Valuescope were engaged by the Company to perform the valuation of the participating shareholders for the Company, and a valuation on the membership interest in CDMCFAD LLC. Copies of the reports are enclosed for ease of reference.

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format.

As such, we request that you:

1. Provide a copy of your engagement letter and instructions for the Valuation Analysis prepared as of 31 December 2020, 31 December 2021, 31 December 2022, 31 December 2023 and 30 September 2024 concerning 100 Participation Shares of the Company.

2. If you were engaged by the Company for the purpose of preparing the valuation analysis of a 100% Membership Interest in CDMCFAD, LLC dated 25 March 2025, please provide a copy of this engagement letter and the associated instructions;

3. Provide copies of all documents provided to Valuescope by the Company that assisted with the Valuation Analyses; and

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

4. Provide copies of any research or reference material obtained / prepared by Valuescope during the Valuation Analyses.

In addition, we would appreciate that our previous requests in our 7 May 2025 letter be fulfilled. For ease of reference this includes that you:

1. Arrange for any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter. Non-receipt of a claim from you by the aforesaid date will be taken to mean you have no claim against the Company.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of the Company

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Proof of Debt – CWR 24
-Valuation report for CDMCFAD LLC dated 25 March 2025
-Valuation reports for the Company dated:
- 31 December 2020
- 31 December 2021
- 31 December 2022
- 31 December 2023
- 30 September 2024

# EXHIBIT 11

**VALUESCOPE**
a marshall + stevens company

May 30, 2025

**Via Email to:**
Sandipan Bhowmik | Sandipan.bhowmik@uk.gt.com |cdaf.core@uk.gt.com
Jamie Gallagher | jamie.r.gallagher@uk.gt.com
Michael Aquino | michael.aquino@uk.gt.com

**Re: Request for information pertaining to Charitable DAF HoldCo, Ltd.**

Dear Sirs:

Thank you for your correspondence regarding the records relating to our prior valuation work for Charitable DAF HoldCo, Ltd.

We are committed to meeting our ethical and professional obligations, including providing client records where appropriate. At the same time, we are bound by legal duties, including the obligation to protect confidential and privileged information.

We understand that you have been appointed as Joint Official Liquidators by the Grand Court of the Cayman Islands, and we acknowledge your request is made in that capacity. However, under U.S. law, a foreign court appointment does not automatically grant authority over records or compel disclosure unless the foreign proceeding has been formally recognized by a U.S. Bankruptcy Court pursuant to Chapter 15 of the U.S. Bankruptcy Code.

If such recognition has been granted, please provide the relevant documentation for our review. In the absence of that, we are unable to release confidential materials or client records. Please let us know if you have obtained recognition under Chapter 15 or other legal authority in the U.S. We remain open to reviewing any such documentation and cooperating as appropriate under applicable law.

Sincerely,

Steven Hastings, CPA/ABV/CFF/CGMA, ASA, CVA
Principal
ValueScope, LLC

# EXHIBIT 12

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 2, 2025

**Via Email (shastings@valuescopeinc.com)**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, Suite 120
Southlake, TX 76092

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in response to ValueScope, LLC's letter, dated May 30, 2025, which responded to the JOLs' letters, dated May 7, 2025 and May 15, 2025, and emails, dated May 20, 2025 and May 26, 2025, each of which requested the Company's files.

Although ValueScope insists that it is "committed to meeting our ethical and professional obligations, including providing client records where appropriate," its correspondence and delay suggests otherwise. ValueScope states that it is unwilling to cooperate with the JOLs' reasonable requests because the JOLs' appointment has not yet been recognized under Chapter 15 of the Bankruptcy Code. However, Chapter 15 recognition is irrelevant for ValueScope to comply with the JOLs' request.

The JOLs have been duly appointed by the Grand Court of the Cayman Islands and are requesting that ValueScope provide them with the Company's files pursuant to the JOLs' statutory and court mandated powers. There is nothing about the JOLs' appointment or their status in the United States precluding ValueScope's cooperation with the JOLs' reasonable requests, and ValueScope's argument to the contrary is wrong.

The JOLs therefore renew their request that ValueScope **immediately** provide them with Company's files. Should ValueScope decline to cooperate, the JOLs will have no choice but to assume that ValueScope intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for ValueScope's stonewalling. The JOLs sincerely hope and expect, however, that those measures will not be necessary.

Sincerely,

Casey D. Laffey

cc: Aaron Javian (ajavian@reedsmith.com)

# EXHIBIT 13

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 25, 2025

**By Electronic Mail**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, Suite 120
Southlake, TX 76092
shastings@valuescopeinc.com

Re: **Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to ValueScope dated June 2, 2025, wherein the JOLs "renew[ed] their request that ValueScope **immediately** provide them with Company's files."

We have yet to receive a response to our June 2, 2025 letter. Please respond immediately, as we hope and expect to resolve this matter amicably. As we stated in our letter, should "ValueScope decline to cooperate, the JOLs will have no choice but to assume that ValueScope intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for ValueScope's stonewalling." Again, the JOLs sincerely hope and expect that those measures will not be necessary.

Very truly yours,

Casey D. Laffey

# EXHIBIT 14

ReedSmith
Driving progress through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 30, 2025

**By Email (shastings@valuescopeinc.com)**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, 120
Southlake, Texas 76092

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of my letters, dated June 2, 2025 and June 25, 2025, which ValueScope has not responded to.

Be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (the "Verified Petition"). *In re: Charitable DAF HoldCo, Ltd. (In official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware court to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code. Although the JOLs are prepared to use powers afforded by the Bankruptcy Court to compel ValueScope to return to the Company its own records, it should not have to come to that.

Accordingly, the JOLs demand, for the final time, that ValueScope immediately produce the Company's requested records. ValueScope's failure to comply will result in legal action, including a request for sanctions for ValueScope's noncooperation.

Very truly yours,

/s/ Casey D. Laffey

# EXHIBIT 15

Commercial in Confidence

Grant Thornton

Our Ref: 20250506 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

**Seyfarth Shaw LLP**
Douglas Mancino
1075 Peachtree St NE
Suite 2500,
Atlanta GA 30309

Via email: dmancino@seyfarth.com

6 May 2025

Dear Mr. Mancino,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you may be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

We ask that this file includes but is not limited to the following documentation:

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

1. A copy of your engagement letter;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Supervision Order – 2025-116 (JAJ)
-Proof of Debt – CWR 24

# EXHIBIT 16

**From:** Mancino, Douglas <DMancino@seyfarth.com>
**Sent:** Tuesday, May 6, 2025 10:31 PM
**To:** Michael Aquino
**Cc:** CDAF Core
**Subject:** Re: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth)
**Attachments:** image001.png; image002.png; 2025.05.06 CDAF HoldCo - Ntc. of Appt. OL - Legal (Seyfarth Shaw LLP).pdf

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

I want to acknowledge receipt of your letter. I am traveling to Washington, DC tomorrow morning and will return Friday night.
I would like to schedule a call Monday to discuss attorney client and work product privileges.
I am completely unfamiliar with this Cayman Islands process.
Let me know some times Monday that work, considering the three hour time difference.
Doug Mancino

Sent from my iPhone

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

On May 6, 2025, at 6:01 PM, Michael Aquino <Michael.Aquino@uk.gt.com> wrote:

Commercial in Confidence

Dear Mr. Mancino,

**Charitable DAF HoldCo Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-0116 (JAJ)**

Please find attached correspondence in relation to the Company for your attention.

Should you have any queries, please do not hesitate to contact us.

Yours sincerely,

For and on behalf of
The Joint Official Liquidators of the Company

**Michael Aquino**
Insolvency Administrator Trainee, OFC
Grant Thornton Specialist Services (Cayman) Limited

**T** +1345-949-7100
**E** Michael.Aquino@uk.gt.com

**grantthornton.ky** [grantthornton.ky]

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands KY1-1102

Grant Thornton is a brand name under which Grant Thornton UK LLP (registered number OC307742) and Grant Thornton UK Advisory & Tax LLP (registered number OC454533) provide professional services. Each of them is a limited liability partnership, registered in England and Wales, whose registered office is at 30 Finsbury Square, London EC2A 1AG. Lists of their members are available from the registered office.

For the purposes of designated investment business, Grant Thornton UK Advisory & Tax LLP is an appointed representative of Grant Thornton UK LLP, which is authorised and regulated by the Financial Conduct Authority.

Grant Thornton UK LLP and Grant Thornton UK Advisory & Tax LLP are member firms of Grant Thornton International Limited ("GTIL"). GTIL and its member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of and do not bind one another and are not liable for one another's acts or omissions.

This email is confidential. It cannot be guaranteed to be secure or free from error or virus. All email communication with Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is monitored and a record is kept. If you are not the intended recipient, please accept our apologies. It is intended for the addressee only. If you are not the addressee, please do not use it in any way. If received in error please inform the sender and delete all copies.

Anything in this email which does not relate to the official business of Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is neither given nor endorsed by them. To the extent permitted by law, neither of them accepts any responsibility for any use by anyone other than the intended addressee. Where relevant, please note that, unless expressly stated otherwise, any written advice contained in or attached to this email is not intended and cannot be used by any person for avoiding any US penalties that may be imposed under the US Internal Revenue Service Code.

For further information please visit our website grantthornton.co.uk [grantthornton.co.uk]

# EXHIBIT 17

**From:** Bradley J Graham
**Sent:** Monday, May 12, 2025 8:42 PM
**To:** dmancino@seyfarth.com
**Cc:** CDAF Core
**Subject:** RE: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth)

Commercial in Confidence

Dear Douglas

I refer to our discussion on Teams earlier today in relation to the above matter.

As discussed, a banker's box of physical books and records is being prepared for postage to us by this Friday.

I confirm that we are able to receive the books and records via Reed Smith LLC in LA, the contact details are below:

**Ruben Montoya, Paralegal**
Reed Smith LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071
Telephone: 213-457-6409

Mr Montoya has been notified of the above and is expecting your contact.

We appreciate your assistance to date and look forward to further discussion once the records are received and reviewed.

Kind regards,

Brad Graham
Assistant Manager, Insolvency, Forensics & Restructuring
Grant Thornton Specialist Services (Cayman) Limited

T + 1345 3258462
E bradley.j.graham@uk.gt.com

grantthornton.ky

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands. KY1-1102

Grant Thornton

**From:** Mancino, Douglas <DMancino@seyfarth.com>
**Sent:** 06 May 2025 21:31
**To:** Michael Aquino <Michael.Aquino@uk.gt.com>
**Cc:** CDAF Core <CDAF.Core@uk.gt.com>
**Subject:** Re: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth)

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

---

I want to acknowledge receipt of your letter. I am traveling to Washington, DC tomorrow morning and will return Friday night.
I would like to schedule a call Monday to discuss attorney client and work product privileges.
I am completely unfamiliar with this Cayman Islands process.
Let me know some times Monday that work, considering the three hour time difference.
Doug Mancino

Sent from my iPhone

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

On May 6, 2025, at 6:01 PM, Michael Aquino <Michael.Aquino@uk.gt.com> wrote:

Commercial in Confidence

Dear Mr. Mancino,

**Charitable DAF HoldCo Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-0116 (JAJ)**

Please find attached correspondence in relation to the Company for your attention.

Should you have any queries, please do not hesitate to contact us.

Yours sincerely,

For and on behalf of
The Joint Official Liquidators of the Company

Michael Aquino

Insolvency Administrator Trainee, OFC
Grant Thornton Specialist Services (Cayman) Limited

T +1345-949-7100
E Michael.Aquino@uk.gt.com

**grantthornton.ky** [grantthornton.ky]

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands KY1-1102

Grant Thornton is a brand name under which Grant Thornton UK LLP (registered number OC307742) and Grant Thornton UK Advisory & Tax LLP (registered number OC454533) provide professional services. Each of them is a limited liability partnership, registered in England and Wales, whose registered office is at 30 Finsbury Square, London EC2A 1AG. Lists of their members are available from the registered office.

For the purposes of designated investment business, Grant Thornton UK Advisory & Tax LLP is an appointed representative of Grant Thornton UK LLP, which is authorised and regulated by the Financial Conduct Authority.

Grant Thornton UK LLP and Grant Thornton UK Advisory & Tax LLP are member firms of Grant Thornton International Limited ("GTIL"). GTIL and its member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of and do not bind one another and are not liable for one another's acts or omissions.

This email is confidential. It cannot be guaranteed to be secure or free from error or virus. All email communication with Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is monitored and a record is kept. If you are not the intended recipient, please accept our apologies. It is intended for the addressee only. If you are not the addressee, please do not use it in any way. If received in error please inform the sender and delete all copies.

Anything in this email which does not relate to the official business of Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is neither given nor endorsed by them. To the extent permitted by law, neither of them accepts any responsibility for any use by anyone other than the intended addressee. Where relevant, please note that, unless expressly stated otherwise, any written advice contained in or attached to this email is not intended and cannot be used by any person for avoiding any US penalties that may be imposed under the US Internal Revenue Service Code.

For further information please visit our website grantthornton.co.uk [grantthornton.co.uk]

# EXHIBIT 18

**From:** Margot MacInnis
**Sent:** Tuesday, May 13, 2025 3:32 PM
**To:** Mancino, Douglas
**Subject:** RE: Request for clarification

Commercial in Confidence

Hi Doug

The call yesterday was attended by me along with Bradley Graham who is supporting the joint official liquidators (JOLs) and is an employee of Grant Thornton Specialist Services in the Cayman Islands. Andrew Johnstone who is the JOLs' Cayman counsel was also in attendance and on screen. There was no one else dialed into the call or in attendance.

With regard to preservation of privilege I don't follow the concern. We have stepped into the shoes of the Company for which we act, any advice provided to which privilege attaches is retained by the Liquidators. We have engaged Reed Smith as our US counsel and accordingly the privilege is preserved if you provide the documents directly to them.

We look forward to receiving the documents.

Kind regards
Margot

Margot MacInnis
Practice Leader Insolvency, Forensics & Restructuring Advisory
Grant Thornton Specialist Services (Cayman) Limited

D +1 (345) 769 7218
E margot.macinnis@uk.gt.com

grantthornton.ky

**Address**
2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands, KY1-1102

Grant Thornton

**From:** Mancino, Douglas <DMancino@seyfarth.com>
**Sent:** 13 May 2025 13:21
**To:** Margot MacInnis <margot.macinnis@uk.gt.com>
**Subject:** Request for clarification

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

Ms. MacInnis,

Thank you for arranging the Zoom call yesterday to discuss your role in the liquidation of Charitable DAF Holdco Ltd. and attorney-client privilege matters.

I understand your role on the Zoom call as a liquidator, but can you confirm the role of the others on the call? As I said, I am new to this process and not a litigator.

I am consulting with my partners on my ability to preserve the privilege when I provide the requested documents to your firm through Reed Smith so it will take more time to gather and provide the requested documents than I projected. And I would like to know the roles of the others shown on the screen and confirm whether any others were listening in to the call but not shown on the screen.

Doug

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# EXHIBIT 19

Commercial in Confidence

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 13, 2025

**Via Email (dmancino@seyfarth.com)**

Douglas Mancino, Esq.
Seyfarth Shaw LLP
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation)**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

Dear Douglas:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Seyfarth Shaw LLP ("**Seyfarth**"), dated May 6, 2025, and the subsequent emails and calls between the parties.

As you know, in accordance with the Cayman Islands Companies Act (As Revised) and the powers conferred on the JOLs pursuant to the order entered by the Grand Court of the Cayman Islands on May 6, 2025 (the "**Appointment Order**"), the JOLs act in the name and on behalf of the Company. As such, with effect from the date of their appointment, the JOLs are empowered to exercise their fiduciary duties to preserve the value of the Company's assets—including by taking control of such assets through legal proceedings or other appropriate means in the JOLs' discretion—and to do all other things incidental to the exercise of the JOLs' powers to act for and on behalf of the Company. And, in furtherance of their fiduciary duties, and with effect from the date of their appointment, the JOLs have assumed control of the Company pursuant to the powers granted in the Appointment Order, and the powers of the Company's directors are suspended unless expressly authorized by the JOLs.

In the JOLs' May 6, 2025 letter, the JOLs requested that Seyfarth provide them with the complete file relating to its engagement by the Company, including:

1. A copy of your engagement letter with the Company;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to Seyfarth;
4. Statement of account and evidence of the associated remittance;

ReedSmith

5. Historical statements of trust account(s) held on behalf of the Company;

6. Summary of any books and records held on behalf of the Company;

7. The details of any retainer or funds held on behalf of the Company;

8. Details of any Company bank accounts that you are aware of;

9. A summary of the matters that you were engaged to assist the Company with; and

10. The AML and KYC files Seyfarth has on the Company and the Company Directors.

On May 12, 2025, you spoke with the JOLs and confirmed that you would prepare a banker's box of physical books and records that were responsive to the foregoing requests and mail them to Reed Smith LLP, the JOLs' counsel in the United States, by May 16, 2025.

To date, however, Seyfarth has not produced any of the promised documents or any documents in its possession.

Accordingly, the JOLs reiterate their request that Seyfarth **immediately** provide them with the Company's files. Should Seyfarth decline to cooperate, the JOLs will be compelled to pursue all appropriate legal remedies to obtain the requested documents, including seeking legal fees and costs if necessary.

To that end, be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code. *In re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

Nothing in this letter should be construed as a waiver of the JOLs' rights, remedies, or arguments, all of which are expressly preserved.

Very truly yours,

Casey D. Laffey

# EXHIBIT 20

Commercial in Confidence

Grant Thornton

Our Ref: 20250508 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Hunton Andrews Kurth LLP
FAO Alexander McGeoch
1445 Ross Ave Ste 3700
Dallas
TX 75202

Via email: amcgeoch@hunton.com

8 May 2025

Dear Mr. McGeoch,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

I write to advise that the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators ("**JVLs**") of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

**grantthornton.ky**

We ask that this file includes but is not limited to the following documentation:

1. A copy of your engagement letter with the Company;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to you;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order – 2025-116 (JAJ)
- Proof of Debt – CWR 24

# EXHIBIT 21

Commercial in Confidence

ReedSmith
Driving progress
through partnership

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 6, 2025

**Via Email (amcgeoch@hunton.com)**

Alexander G. McGeoch
Hunton Andrews Kurth LLP
1445 Ross Ave. Ste 3700
Dallas, Texas 75202

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation)**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

Dear Mr. McGeoch:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Hunton Andrews Kurth LLP ("**Hunton**"), dated May 8, 2025.

As you know, in accordance with the Cayman Islands Companies Act (As Revised) and the powers conferred on the JOLs pursuant to the order entered by the Grand Court of the Cayman Islands on May 6, 2025 (the "**Appointment Order**"), the JOLs act in the name and on behalf of the Company. As such, with effect from the date of their appointment, the JOLs are empowered to exercise their fiduciary duties to preserve the value of the Company's assets—including by taking control of such assets through legal proceedings or other appropriate means in the JOLs' discretion—and to do all other things incidental to the exercise of the JOLs' powers to act for and on behalf of the Company. And, in furtherance of their fiduciary duties, and with effect from the date of their appointment, the JOLs have assumed control of the Company pursuant to the powers granted in the Appointment Order, and the powers of the Company's directors are suspended unless expressly authorized by the JOLs.

In the JOLs' May 8, 2025 letter, the JOLs requested that Hunton provide them with the complete file relating to its engagement by the Company, including:

1. A copy of your engagement letter with the Company;

2. All invoices from engagement to present;

3. Details of any outstanding debts owed by the Company to Hunton;

4. Statement of account and evidence of the associated remittance;

5. Historical statements of trust account(s) held on behalf of the Company;

6. Summary of any books and records held on behalf of the Company;

7. The details of any retainer or funds held on behalf of the Company;

8. Details of any Company bank accounts that you are aware of;

9. A summary of the matters that you were engaged to assist the Company with; and

10. The AML and KYC files Hunton has on the Company and the Company Directors.

To date, however, Hunton has not responded to the JOLs' May 8, 2025 letter.

Accordingly, the JOLs reiterate their request that Hunton **immediately** provide them with the Company's files. Should Hunton decline to cooperate, the JOLs will be compelled to pursue all appropriate legal remedies to obtain the requested documents, including seeking legal fees and costs if necessary.

To that end, be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code. *In re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

Nothing in this letter should be construed as a waiver of the JOLs' rights, remedies, or arguments, all of which are expressly preserved.

Very truly yours,

Casey D. Laffey

# EXHIBIT 22

**From:** Turetsky, Ian M.
**Sent:** Friday, August 8, 2025 2:56 PM
**To:** CDAF Core
**Cc:** Charitable DAF Team (S)
**Subject:** FW: Charitable DAF Holdco, Ltd.--Letter to Hunton Andrews Kurth LLP
**Attachments:** 2025-08-06 - Hunton Andrews Kurth(207566116.2).pdf

All,

Please see the below email we received from Hunton Andrews Kurth. We will keep you posted with any further developments.

Thanks.

Ian

**Ian M. Turetsky**
ituretsky@reedsmith.com
D: +1 212.549.0352
M: +1 917.514.8747

reedsmith.com

---

**From:** Locher, Scott <SLocher@hunton.com>
**Sent:** Friday, August 8, 2025 2:51:11 PM
**To:** Laffey, Casey D. <CLaffey@ReedSmith.com>
**Subject:** Charitable DAF Holdco, Ltd.--Letter to Hunton Andrews Kurth LLP

**External E-Mail - FROM Locher, Scott <slocher@hunton.com>**

This message needs your attention

- This is their first email to your company.

Report or Mark Safe

Powered by Mimecast

Mr. Laffey: I'm in Hunton's General Counsel office. I'm writing to acknowledge our receipt of your August 6, 2025 letter to Alex McGeoch. I will be Hunton's point of contact with respect to your letter's request, so please have all further communications about this directed to me. Previously, our General Counsel's office did not receive nor know about your May 8, 2025 letter due to an internal miscommunication, and so I apologize for us not acknowledging receipt of your letter sooner. In the coming days I will be working to get my arms around this internally, and externally.

**Scott Locher**
Partner
slocher@hunton.com
p 713.220.4416

bio | vCard

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002

Hunton.com

# EXHIBIT 23

HUNTON

HUNTON ANDREWS KURTH LLP
600 TRAVIS, SUITE 4200
HOUSTON, TEXAS 77002-2929

TEL 713 • 220 • 4200
FAX 713 • 220 • 4285

SCOTT LOCHER
DIRECT DIAL: 713 • 220 • 4416
EMAIL: slocher@hunton.com

August 20, 2025

*VIA EMAIL: CLAFFEY@REEDSMITH.COM*
Casey D. Laffey
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022-7650

Re: Letter Request to Hunton Andrews Kurth LLP regarding Charitable DAF HoldCo Ltd. ("Holdco")

Dear Mr. Laffey:

I am an Assistant General Counsel of Hunton Andrews Kurth LLP ("Hunton"), and I write as a follow-up to my email to you of August 8, 2025, to respond to your August 6, 2025 letter addressed to Alexander G. McGeoch, a Hunton partner.

As your letter advises, your firm has filed a petition under Chapter 15 of the Bankruptcy Code ("Chapter 15") for recognition of the JOLs[1] as Holdco's foreign representatives pursuant to the Cayman Court's May 6, 2025 Appointment Order. It is my understanding that Chapter 15, which largely adopted the UNCITRAL Model Law on Cross-Border Insolvency ("Model Law") and replaced 11 U.S.C. § 304, provides legal process through which the JOLs obtain United States court validation of their authority to act on behalf of the foreign entity. *See Reserve Intern. Liquidity Fund, Ltd. v. Caxton Intern. Ltd.*, 2010 WL 1779282, at **5-6 (S.D.N.Y. Apr. 29, 2010); *Orchard Enterps. NY, Inc. v. Megabop Records, Ltd.*, 2011 WL 832881, at *2 (S.D.N.Y. Mar. 4, 2011). Congress stated that the purpose of Chapter 15 adopting the Model Law included providing "greater legal certainty for trade and investment" and "fair and efficient administration of cross-border insolvencies that protects interests of all creditors, and other interested parties, including the debtor," 11 U.S.C. § 501(a)(2-3), and that Chapter 15 applies where "assistance is sought in the United States by . . . a foreign representative in connection with a foreign proceeding." *Id.* at § 501(b)(1). Other "interested parties" the Chapter 15 process protects should include law firms facing requests from foreign liquidators for the foreign debtor's legal files. The Chapter 15 process gives assurance to U.S. firms in carrying out their legal and ethical obligations to former clients, including in preserving the confidentiality of and privileges attaching to information in its legal files, that the foreign liquidation proceeding and the appointed liquidators are in fact legitimate and valid in the eyes of U.S. law. Once the Chapter 15 recognition is finally granted, unless Hunton

[1] Unless otherwise defined in this letter, this letter will use the defined terms in your August 6, 2025 letter.

were to learn or be directed to the contrary, I recognize the U.S. court authorities which hold that the foreign appointed liquidators validated in a Chapter 15 proceeding are the parties with the rights to assert the in-liquidation foreign entity's privileges and, thus also, the rights to receive such entity's legal file held by its former U.S. firm. *See In re China Medical Techns., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015); *In re Gold & Appel Transfer S.A.*, 342 B.R. 386, 388 (Bankr. D.D.C. 2006) (holding under repealed section 304 ancillary proceeding).

For these reasons, Hunton believes that its and its former client's interests are best served and protected by awaiting the bankruptcy court's final determination of your firm's pending Chapter 15 petition before complying with your request on behalf of the JOLs for Hunton to provide its file on its representation of Holdco to the JOLs. As stated, upon an order granting the petition becoming final, Hunton then will be in position to comply. In the meantime, Hunton will prepare a copy of its file for transfer if and when the recognition order becomes final without need of further court intervention. Should you have authorities which you believe compel U.S. attorneys to turnover their file to liquidators of a foreign company appointed by a foreign court in a foreign proceeding before a filed Chapter 15 recognition petition has been ruled upon, we will consider those authorities further in consideration of your letter request.

In the interim, however, I can answer some of your inquiries in your August 6, 2025 letter. Per Hunton's accounting department, Hunton has not held, and does not hold, trust funds of Holdco, there are no outstanding debts Holdco owes Hunton, and thus we have no document with a statement of a Holdco account that is due, and Hunton holds no retainer funds of Holdco.

Sincerely,

W. Scott Locher

# EXHIBIT 2

# FILED UNDER SEAL

Case 3:26-cv-02496-D Document 17-11 Filed 09/08/26 Page 180 of 211 PageID 6662

# EXHIBIT 3

Digitally signed by Advance Performance Exponents Inc
Date: 2025.04.16 20:39:55 -05:00
Reason: Apex Certified
Location: Apex



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**FSD NO. OF 2025 ( )**

**IN THE MATTER OF SECTION 92 OF THE COMPANIES ACT (2025 REVISION)**

**AND IN THE MATTER OF CHARITABLE DAF HOLDCO LTD AND THE CHARITABLE DAF FUND LP**

---

## AFFIDAVIT OF JAMES DAVID DONDERO

---

I, **JAMES DAVID DONDERO**, of 300 Crescent Court, Suite 700, Dallas, Texas, United States, 75201, **MAKE OATH AND SAY** as follows:

1. I am the President of NexPoint Advisors, L.P. (***NexPoint***), an investment advisor registered with the U.S. Securities and Exchange Commission (***SEC***). I am a Certified Public Accountant and Chartered Financial Analyst with over forty years of investment advisory experience managing billions of dollars of investments across various assets classes.

2. I make this affidavit in support of the petition (the ***Petition***) filed by the Supporting Organizations (as defined below) seeking the winding up on the just and equitable basis of Charitable DAF HoldCo, Ltd (the ***LP***) and the Charitable DAF Fund, LP (the ***Fund***) pursuant to section 92(e) of the Companies Act (2025 Revision) (the ***Act***) and Order 3, rule 3 of the Companies Winding Up Rules (2025 Consolidation) (the ***CWR***).

3. I make this affidavit from matters within my own personal knowledge and believe the information contained herein to be true and accurate in all respects.

4. Now produced and shown to me and marked "**JDD-1**" is a bundle of true copy documents to which I refer in this affidavit. References to page numbers in this affidavit are references to that exhibit unless otherwise specified.

**BACKGROUND**

5. I founded NexPoint in 2012. NexPoint is an alternative investment firm, with a particular focus on investment in the real estate sector. NexPoint has assets under management exceeding US$16 billion in value.

6. I was formerly the President of Highland Capital Management, L.P. (***Highland***), also an SEC registered investment advisor which I founded in 1993. From that time until 2015, Highland was majority owned by me and/or my affiliates. In December 2015, I divested my majority stake of Highland (***2015 Transaction***). On 16 October 2019, Highland filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code (***Highland Bankruptcy***) in the Northern District of Texas. The Highland Bankruptcy plan was confirmed in February 2021, and the estate remains open as it makes distributions to creditors.

7. In February 2021, as part of the Highland Bankruptcy, the employment contracts of the majority of Highland's employees were terminated. Many of the former back-office employees of Highland thereafter became employees of a newly formed company called Skyview Group (***Skyview***) that provides middle and back-office services to various clients, including companies in which I hold an interest such as NexPoint.

**THE FUND**

8. In addition to my business interests, I am a regular donor to philanthropic and charitable causes. The Fund is one of the vehicles I utilize to donate such funds to charitable organizations.

9. In 2010, the finance, accounting, and tax staff of Highland identified certain assets to be donated to a charitable foundation. In 2011, I requested the Donor Advised Fund (or DAF) to be formed and structured in a way that allowed these donations to be receipted and distributed to certain charitable foundations, as the ultimate beneficial owners of the Fund's economic interest. The structure proposed by the tax and legal advisors to effect this was for the Fund to have one limited partner (i.e. the LP) which would issue 'participation shares' to be held by certain charitable supporting organizations (together, the ***Supporting Organizations***) and in turn each of those entities would provide funding directly to certain charitable foundations in the U.S. (together, the ***Charities***).

10. The Amended and Restated Limited Partnership Agreement of the Fund dated 7 November 2011 (***ARLPA***), and the Amended and Restated Memorandum and Articles of Association of the LP dated 19 January 2015 (***Articles***), govern the Fund and its partners.

11. The LP holds 99% ninety-nine percent (99%) of the economic interest in the Fund. The remaining one percent (1%) is (or at least was as at the time of the Fund's formation) held by its general partner, Charitable DAF GP, LLC (the ***GP***), a Delaware company incorporated on 25 October 2011.

12. In addition to the Participation Shares, the LP issued 100 management shares (the ***Management Shares***) with the only voting rights for any and all shareholders in the LP. In essence, the Articles and ARLPA therefore grant complete control of the Fund structure to the holder of the Management Shares in the LP and the entirety of the issued share capital of the GP. Those shares have at all material times been held by a single individual, who as a result has substantial control over the entire Fund structure (the ***Control Position***).

13. The ARLPA provides that the Fund was formed to make investments, directly or indirectly, on behalf of certain entities "*for the economic benefit of the Limited Partner and its Indirect Charitable Owners*" and contemplates the engagement of investment (and other service) advisors to effect this. In this context, the Control Position is responsible for the governance and management functions of the Fund as required in order for the Fund to carry out its sole purpose of benefiting the Supporting Organizations and the Charities they support.

**GRANT SCOTT**

14. I initially selected Grant Scott for the Control Position, a person I have known for years who also has great integrity.

15. From 2010 until the 2015 Transaction, the Fund operated as a non-discretionary advised account of Highland, meaning Highland provided back-and-middle-office staff to the Fund and also provided recommendations regarding potential investments to Mr Scott as the Control Person. However, Mr Scott had complete discretion in adopting or rejecting the investment recommendations provided to the Fund by Highland. He also had final discretion over payments made by the Fund to third parties. In his position as the Control Person, Mr Scott was paid $60,000 USD per annum.

16. After the 2015 Transaction, my affiliates and I no longer owned a majority stake in Highland. Subsequently, I was advised that, as a result of the change of ownership, the Fund was permitted to enter into a paying Investment Advisory Agreement with Highland. This form of investment advisory agreement was in place from January 2017 until it was terminated effective March 2021.

**MARK PATRICK**

17. Mark Patrick was hired as Tax Counsel at Highland in 2008. His job duties included maximizing tax saving to Highland's limited partners, including me and my affiliates. In that role, Mr. Patrick directly represented me as my personal tax counsel. He represented me in tax efficiency planning and tax-deductible charitable giving, among other things. He provided the same services for various trusts and companies affiliated with me. Mr Patrick served that role at Highland from 2008 until his departure in February 2021.

18. In March 2021, Mr Patrick was hired by Skyview as Tax Counsel and continued to perform

substantially similar tax counsel duties for me. At Mr Patrick's request, his job title was changed to "Managing Director, Tax" in September 2021, although his role with respect to me and my affiliates remained substantially the same.

19. The legal structure of the Fund (including as regards its partners and ultimate beneficiaries as discussed above) was created in 2011 on the advice of Mr Patrick working with outside counsel. Mr Patrick advised me that, to avoid potential negative findings by the U.S. Internal Revenue Service, as the donor/grantor of assets to the Fund, I could not have any control over the Fund or its entities. I followed his advice as my tax counsel.

20. In March 2021, Mr Scott informed me that he wanted to resign from the Control Position. The Fund had become engaged in certain disputes arising from the Highland Bankruptcy, and he did not believe he was equipped to handle those disputes. Mr Patrick suggested to Mr Scott and me that he was prepared to take on the Control Position and, in that role, to handle the litigation related to the Highland Bankruptcy as it affected the Fund. At the time, Mr Patrick was my attorney and Mr Scott was my trusted friend, and I was happy for Mr Scott to pass the Control Position to Mr Patrick.

21. On 25 March 2021, Mr Scott: (i) resigned as director of the LP, (ii) appointed Mr Patrick as director of the LP, and (iii) transferred to Mr Patrick the Management Shares for nominal consideration. Mr Patrick therefore assumed the Control Position from that date.

22. At some point, I understand that a person named Paul Murphy based in the Cayman Islands also was appointed as director to the LP and a portion of the Fund's subsidiaries, giving those entities two directors. However, I understand that in the event of a dissenting vote by Mr Murphy, Mr Patrick's vote counts as the tiebreaker for corporate voting.

**MR PATRICK'S CONTROL OF THE FUND**

23. In the initial period following Mr Patrick's assumption of the Control Position, there was no noticeable change in the management of the Fund. NexPoint provided, without charge, investment ideas to the Fund, as Highland previously had done, and Mr Patrick was free (as Mr Scott had been) to decide whether or not the Fund wished to follow NexPoint's recommendations. This approach was similar to the non-discretionary advised account status of the Fund prior to 2017.

24. Subsequently, however, communications between Mr Patrick and Skyview and me began to become less frequent, and over time I came to suspect that Mr Patrick was utilizing the Control Position not for the benefit of the Supporting Organizations, the Charities or the Fund, but rather for his own personal enrichment.

25. On 28 June 2023, Mr Patrick sent an email to Lauren Short, an employee of NexPoint, requesting that the Highland Dallas Foundation (i.e. the Supporting Organization that supports the Dallas

Foundation) "*direct $10,000*" to Creative HEARTS TX, a non-profit entity formed on 13 June 2023. Following due diligence, Ms Short learned that the directors of the entity were Mr Patrick, Darees Patrick and Alyse Patrick (his daughter and wife). Mr Patrick had made the grant request without disclosing his and/or his family's involvement.

26. Ms Short discussed the matter with Mr Patrick, who did not provide many details, but said the non-profit was formed to facilitate paying for trainers or speakers on self-defense training for teenage girls. Ms Short understood that Patrick's expectation was that this would be an annual donation to a "club" at his daughter's school. While Ms Short inquired, there was no detail forthcoming as to whether or not Creative Hearts would be a pass-through donating the monies to other charities or would directly do any work with the trainers or speakers itself. There also was not clarity if Creative Hearts' members intended to take a salary from the grant. The grant payment was authorized on 5 September 2023, but Mr Patrick was informed that further payments were unlikely. I was informed of this process by Ms Short and her supervisor. Contemporaneously with the grant approval, my team also informed the Dallas Foundation of the situation.

27. As another example, in or around September 2023, I was contacted by Kevin Cronin of Fortaris Capital Advisors (***Fortaris***). Fortaris provides litigation support services including due diligence, internal investigations, fraud detection, asset verification and in-depth background checks. Mr Cronin is a former police sergeant and Special Agent with the Department of Homeland Security.

28. Fortaris was at the time engaged by the Fund in respect of an unrelated matter and Mr Cronin was known to me personally. In September 2023, Mr Cronin and I met, and he informed me that he had been approached by Mr Patrick with a proposition whereby Mr Patrick (on behalf of the Fund) would engage an entity controlled by Mr Cronin (other than Fortaris) at a monthly fee of between $25,000 and $50,000, and that this fee would be split between Fortaris and Mr Patrick as a supplement to Mr Patrick's compensation. Mr Cronin informed me that he had asked Mr Patrick if this arrangement would amount to fraud, and that Mr Patrick's response had been: "*you can't steal from yourself.*"

29. Mr Cronin informed me that he understood from this statement that Mr Patrick believed he owned the Fund and could use the funds controlled by it however he pleased. Mr Cronin further informed me that he was uncomfortable about Mr Patrick's proposal and that he subsequently communicated this to Mr Patrick, Mr Patrick cut off all further communications between them.

30. Mr Cronin's allegations that Mr Patrick was seeking to make a secret, undisclosed personal profit from the Fund were extremely concerning. I have subsequently been informed by my U.S. attorneys that, had Mr Cronin agreed with this proposal, it would have likely constituted U.S. federal wire fraud, and/or violations of the Texas Penal Code's prohibitions on bribery and misapplication of fiduciary property. Shortly after Mr Cronin contacted me, I met with Mr Patrick and confronted him about the allegations, which he admitted to me were true. I informed the Supporting Organizations

about the matter and Mr Patrick's admission. However, at the time, both the Supporting Organizations and I were concerned that under the Articles, the Supporting Organizations did not have the power (in their capacity as Participating Shareholders) to limit Mr Patrick's powers or remove him from his position.

31. Given the situations described above, and the lack of communication about the Fund, I became increasingly concerned about Mr Patrick's management of the Fund, including the potential misuse and/or misappropriation of its assets. In June 2024 therefore I requested that my team at NexPoint analyze the financial information of the Fund that I had in my possession, covering the calendar years ending 2018 to 2023 and the first half of 2024. My team produced an annual expense summary of that information (the ***Expense Summary***) which indicated substantial increases in expenditures during Mr Patrick's tenure, particularly during early 2023 and mid-2024, as follows:

   (a) Directors' fees increased from around US$40,000 in 2022 to almost US$600,000 in 2023 – and increased even further to around US$2.25 million in the first half of 2024 alone.

   (b) Expenses overall for the first half of 2024 were around US$18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. US$18.6 million).

32. The Expense Summary reinforced my concern that Mr Patrick is using the Control Position for his own enrichment rather than to benefit the Supporting Organizations and the causes they support. I therefore directed my employees at NexPoint to provide the Expense Summary to the Supporting Organizations, and which they promptly did.

33. In August 2024, I became aware of yet another issue concerning Mr Patrick. NexPoint and its affiliates, through their investment activities, regularly obtain material non-public information (***MNPI***) related to those investments. As a service provider to NexPoint and its affiliates, Skyview employees also obtain the same MNPI. Trading on the basis of MNPI amounts to 'insider trading' which is prohibited under U.S. securities laws. As a result, NexPoint and its affiliates, and Skyview, all have the same robust regulatory compliance program to prevent, among other things, insider trading (***Compliance Policy***). NexPoint and its affiliates, and Skyview, require their employees to abide by the Compliance Policy at all times and employees are required to confirm in writing on a quarterly basis that they will not use MNPI while trading. Mr Patrick completed the annual 2023, Q4 2023, Q1 2024, and Q2 2024 certifications, among others.

34. I was informed that my director of charitable giving had been contacted by Ms Diaz, the CEO of the Highland Dallas Foundation, Inc. (***Dallas Foundation***), one of the Charities. Ms Diaz stated that on 28 August 2024, Mr Patrick contacted the Dallas Foundation's attorney to provide information about an asset held by the Dallas Foundation, which was held directly and separately from the Fund. This information was obtained by Mr Patrick through his employment at Skyview and constituted MNPI,

which is prohibited by U.S. securities laws from being disclosed and/or acted upon. On the basis of this MNPI, Mr Patrick advised the Dallas Foundation to exercise a put option it held in a NexPoint affiliated asset. The Dallas Foundation did not act on the information or recommendation provided by Mr Patrick, but in the event it had exercised the put option, both the Dallas Foundation and Mr Patrick would have committed violations of the U.S. securities laws that prohibit insider trading.

35. Upon receipt of the allegations against Mr Patrick, Skyview's compliance department commenced an internal investigation which, due to the serious nature of the allegations, was conducted without Mr Patrick's knowledge, so as to avoid potentially tipping off Mr Patrick about the investigation. By the end of September 2024, the investigation was substantially complete, and the conclusion had been reached that Mr Patrick's actions constituted a serious breach of his compliance and employee obligations. On 1 October 2024, as part of the finalisation of the investigation report, Skyview's chief compliance officer interviewed Ms Diaz about the allegations against Mr Patrick, which I understand confirmed Skyview's conclusions. The final investigation report was issued on 11 October 2024 and concluded that Mr Patrick had attempted a serious breach of U.S. securities laws. A copy of the report and its attachments is at **page 1**.

36. On 2 October 2024, Mr Patrick abruptly resigned his position from Skyview and thereafter became openly hostile towards the Charities, my affiliated companies, and me. Although neither I nor anyone at Skyview has direct evidence of Mr Patrick having been tipped off about the investigation, the timing of his resignation causes me to conclude that Mr Patrick became aware of the investigation into his behaviour and resigned before the report was published.

37. On the same day that Mr Patrick resigned his position at Skyview, he also terminated Skyview's service agreement with the Fund, and as a result all legal, compliance, back office and other services provided to the Fund. Mr. Patrick and Mr. Murphy have stated that that they intend to take on the role of investment advisors for the Fund. I am not aware of Mr. Murphy's qualifications for this role, nor am I aware of any third-party investment advisor that has been retained by the Fund to fill this role. Based on my knowledge and expertise in investment management, and my sixteen years working with Mr Patrick as my counsel, I believe that Mr Patrick is a well-qualified tax counsel, but does not have the experience, training, or expertise to be an investment professional.

38. After his resignation from Skyview and the termination of Skyview's services agreement with the Fund, I have received repeated reports and evidence of Mr Patrick causing certain DAF entities to liquidate their assets, some at below-market value. For example, on 20 February 2025, Mr Patrick's subordinate Shawn Raver asked for the in-bound wire instructions for one of my affiliates that owned a position in a trust called Hunter Mountain. Hunter Mountain owns most of the distribution rights of the equity position in the Highland Bankruptcy, meaning most of the residual value of the estate should be distributed to Hunter Mountain at the close of the Highland Bankruptcy. According to

Hunter Mountain's own filings, this value has been calculated in excess of $100 million gross, with approximately $17 million net value.

39. After additional inquiries from accounting staff, Mr Raver disclosed that the entire Hunter Mountain position had been sold to an unidentified party for $1 million. The Fund has not disclosed the identity of the purchaser. I am familiar with the Highland Bankruptcy estate and there is no valuation, net, gross, or otherwise, that I can imagine that would support a $1 million sales price. Additionally, given my founding and my affiliates' ownership of Highland, Mr Patrick would know that I was one of a few natural buyers of the Hunter Mountain position. While Mr Patrick of course would not be obliged to sell Hunter Mountain to me, the fact that Mr Patrick authorized the sale of Hunter Mountain at a below-market value without even approaching a natural buyer indicates a non-market, non-fiduciary reason for the sale.

40. Atlas IDF, L.P. is a fund controlled by its general partner Atlas IDF GP, LLC, a wholly owned subsidiary of the DAF. The economic beneficiaries of Atlas IDF are the holders of annuity policies issued by Crown Global Insurance Company. The majority annuity policy holder is Empower Dallas Foundation, a charitable foundation for which I serve as President whose purpose is to benefit the Dallas Foundation.

41. On 20 February 2025, Mr Patrick in his capacity as the general partner of Atlas IDF GP, LLC, sent a letter to Crown Global Insurance advising of the intention to dissolve Atlas in accordance with the partnership agreement dated 30 November 2015 on the basis of (i) concerns about the long-term availability and viability of back-office support; (ii) unsuccessful efforts to sell the defaulted Notes issued by HCRE Partners (one of my affiliates) dated 7 May 2014 in the amount of $2,3M and 27 May 2014 in the amount of $5M, held by the Partnership; and (iii) the decision by an affiliate of the GP to purchase the Notes at a price above their appraised value of zero dollars to facilitate an orderly wind-up. At the time, the amounts outstanding on the two Notes, including accumulated interest, was in excess of $13M. The intention was to sell the Notes collectively for $500,000. Mr Patrick launched litigation related to these Notes prior to the 20 February 2025 attempted sale of the Notes to an affiliate.

42. On 27 February 2025, H&K as counsel for the Empower Dallas Foundation (the policyholder), sent an email to Crown Global advising that the foundation was gathering information and requested that Crown Global therefore withdraw its consent to the proposed sale of the Notes to CLO Holdco. On 28 February 2025, Mr Patrick sent a further letter to Crown Global noting the revocation of consent to sell the Notes, and noting that: "*in addition to the purchase of the "Notes" for $500,000, we also intend to include a provision in the purchase and sale documents that, if the Notes are repaid in full within 12 months, all amounts received (minus fees and expenses of collection and purchase price) will be remitted to you as the sole limited partner of Atlas IDF, LP.*" The initial zero valuation and

proposed $500,000 sale price was confusing given that HCRE Partners had offered to pay the full amounts due in an amortizing schedule. After the withholding of consent, the revised offer of 28 February 2025 still is confusing given that the amortization schedule is longer than 12 months.

**ATTORNEY GENERAL INVESTIGATION**

43. I have become aware that, on 14 March 2025, the Texas Attorney General (***Texas AG***) commenced an investigation into Charitable DAF GP, LLC (the Fund's former general partner) in relation to the organization, conduct and management of Charitable DAF GP, LLC, and its related entities.

44. I understand that the Texas AG has the power to investigate a charity, should it deem necessary, to determine whether a charity is complying with Texas law.

45. I understand that the Charities have requested information about the investigation from the Texas AG, but do not have knowledge of any further details.

**DONATIONS TO THE CHARITIES**

46. Until Mr Patrick's departure in October 2024, I regularly donated to through the Charities to the Fund as part of my charitable giving program. My affiliates and I, which donated through the Charities to the DAF entities in 2023 and in various years prior, and are the primary funding source for the Fund. As allowed pursuant to US law, I direct the Charities to utilize the Fund's assets to sponsor charitable causes I particularly value, including underprivileged youth education, cancer research, heart health, veterans' services, and local institutions such as zoos and museums. Though I wish to continue to support these charitable causes, I will not give any future donations through the Charities to the Fund while it is under Mr Patrick's management and/or control.

**FUNDING OF PROCEEDINGS**

47. As stated above, I do not hold a controlling interest in any of the Charities or the Supporting Organizations. However, I sit on the boards of the Supporting Organizations simply for the purpose of overseeing how the Charities are deploying the Fund's assets for charitable purposes, and the impact of those donations in the community. In this context, I became aware that the Supporting Organizations were meeting to vote on the decision to take legal action to take steps to preserve the assets of the Charities they exist to support. Given my connection with the Fund and personal relationship with Mr Patrick, I recused myself from that meeting and was not otherwise involved in the decision taken by the Supporting Organizations to commence these proceedings.

48. The Supporting Organizations approached me about the costs associated with legal action and their reticence to use funds that should and otherwise would be used for charitable purposes, and asked whether I would be prepared to fund the action personally. I agreed to do so. I have not and will not

at any time receive a benefit, nor do I have control of the proceedings, because of this funding arrangement. The Supporting Organizations have decision making authority in relation to these proceedings. My concern is solely to ensure that the Fund, and the funds that I have donated over time that are held in the Fund, are used only to benefit the Charities and the causes they support.

**SWORN** by the above named )
**JAMES DAVID DONDERO** )
This 9th day of April 2025 )
at 4:46 pm )

**JAMES DAVID DONDERO**

**BEFORE ME:**

Krystal Hughes
**NOTARY PUBLIC**

KRYSTAL HUGHES
Notary ID #129488160
My Commission Expires
July 12, 2025
NOTARY PUBLIC STATE OF TEXAS

**THIS AFFIDAVIT** was presented by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

# EXHIBIT 4

# TRUST AGREEMENT

This Trust Agreement is dated as of December 17, 2015 (this "Trust Agreement"), between Beacon Mountain, LLC, a Delaware limited liability company, as sponsor (in such capacity, the "Sponsor"), John Honis as administrator (in such capacity, the "Administrator"), and Wilmington Trust, National Association, a national banking association, as Delaware trustee (the Delaware Trustee").

1. Definitions. Certain capitalized terms used in this Trust Agreement shall have the respective meaning assigned to them in this Section 1. All references herein to "the Agreement" or "this Agreement" are to this Trust Agreement as it may be amended and supplemented from time to time, and all references herein to Articles, Sections and subsections are to Articles, Sections and subsections of this Trust Agreement unless otherwise specified.

"Account" means the trust account or other account established by the Administrator in the name of the Trust for the benefit of the Sponsor at any financial institution selected from time to time by the Administrator in his sole and absolute discretion.

"Delaware Act" means the Delaware Statutory Trust Act, Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq.

"Honis Cause" means conduct by Honis, in any capacity, amounting to (i) Honis's conviction or plea of nolo contendere for any criminal offense; (ii) dishonesty, fraud, willful misconduct, unlawful discrimination, bad faith or theft on the part of Honis that is injurious to any of the Applicable Entities; (iii) Honis's using for his own benefit any confidential or proprietary information of any of the Applicable Entities, or willfully or negligently divulging any such information to third parties without the prior written consent of the Partnership, in each case, other than as provided herein; (iv) a breach or violation of the terms of this Agreement or other agreement to which Honis or any of his Affiliates and any of the Applicable Entities are party in any manner that adversely affects any of the Applicable Entities; or (v) a breach of fiduciary duties. Any determination of whether conduct constitutes Honis Cause pursuant to this Agreement shall be made in the reasonable discretion of the Partnership, shall be made in good faith and shall be binding upon all parties affected thereby.

"Honis Trigger Event" means, with respect to Honis or any of his Affiliates, (i) the Bankruptcy of Honis; (ii) the death of Honis; (iii) the Disability of Honis; (iv) any conduct by Honis amounting to Honis Cause; (v) the termination of Honis's employment with, or the failure of Honis to be actively engaged in the management of, Rand Advisors; (vi) a change in the ownership of Rand Advisors, such that Honis fails to retain, directly or indirectly, majority voting control of Rand Advisors; (vii) a sale of all or substantially all of the assets of Rand Advisors; or (viii) the termination of this Agreement pursuant to Section 16. Honis agrees to give the Partnership ten (10) days' written notice of his Bankruptcy. "Limited Partnership" means Highland Capital Management, L.P., a Delaware limited partnership.

"Limited Partnership Agreement" means the Agreement of Limited Partnership of Highland Capital Management, L.P., as amended from time to time.

"Limited Partner Interests" means limited partner interests in the Limited Partnership.

"Person" means any individual or any corporation, association, partnership, limited liability company, joint venture, business trust, trust, organization, governmental entity or other entity of any kind.

"Trust" means the Delaware statutory trust established and governed by this Trust Agreement.

"Trust Property" means all Limited Partnership Interests and all amounts in the Account, unless and until any of such Limited Partnership Interests are disposed of in accordance with this Trust Agreement.

2. Scope. This Trust Agreement governs the Trust and the disposition of all Trust Property, including amounts in the Account or otherwise held by the Trust now existing or hereafter arising. Each of the Sponsor, the Administrator and the Delaware Trustee hereby acknowledges that the Trust Property shall be held in trust for Beacon Mountain LLC under Delaware law solely for the use and purposes set forth herein.

3. Name; Certificate of Trust. The Trust shall be known as "HUNTER MOUNTAIN INVESTMENT TRUST", in which name the Administrator may conduct the business of the Trust, make and execute contracts and other instruments on behalf of the Trust and sue and be sued on behalf of the Trust, to the extent herein provided. The Delaware Trustee is authorized and directed to file a Certificate of Trust of the Trust with the Office of the Secretary of State of the State of Delaware in accordance with the applicable provisions of the Delaware Act. It is the intention of the parties hereto that the Trust created hereby constitute a statutory trust under the Delaware Act and that this Trust Agreement constitute the governing instrument of the Trust.

4. Account Establishment. The Administrator shall establish and control the Account. The Account shall include Trust Property and may include other assets in the sole discretion of the Administrator.

5. Beneficial Owner; Liability of Beneficial Owner. The beneficial owner of the trust shall be Beacon Mountain LLC. Beacon Mountain LLC, as beneficial owner of the Trust, shall be entitled to the same limitation of liability extended to stockholders of private corporations for profit organized under the General Corporation Laws of the State of Delaware.

6. Title to Trust Property. Legal title to all Trust Property, including the Account, shall be vested at all times in the Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Trust Property or the Account, to be vested in a trustee or trustees, in which case title shall may be vested in a trustee, a co-trustee and/or a separate trustee, as the case may be, as selected by the Administrator. Title to Trust Property shall not be vested in the name of the Delaware Trustee without the Delaware Trustee's prior written consent.

7. Purpose and Powers of the Trust; Administrator's Powers. The Trust shall have the power and authority (i) to accept funds and other assets, (ii) to contribute or otherwise transfer funds and other assets to the Account, (iii) to acquire Limited Partnership Interests from (a) the limited partners of the Limited Partnership and (b) the Limited Partnership, in each case, with funds in the Account or other sources of funds, including through the incurrence of debt, and to hold such Limited Partnership Interests in the Account or otherwise and (iv) to dispose of or otherwise allocate such Limited Partnership Interests pursuant to and accordance with the terms and conditions of the Limited Partnership Agreement. The Administrator shall pursuant to Section 3806(b)(7) of the Delaware Act have the power and authority, and shall be duly authorized, from time to time, in his sole discretion to manage the business and affairs of the Trust, and to take the actions described in (i) through (iv) on behalf of the Trust. The Administrator shall have all additional powers and authority necessary or desirable, in the sole discretion of the Sponsor, for prompt and effective administration of the Trust created hereunder, unless the particular power or authority is specifically denied by this Trust Agreement. The Administrator shall also have the power to settle, compromise, submit to arbitration, or submit to any court having jurisdiction in the matter any matters in dispute.

8. Fiduciary Duties of Administrator. (a) The Administrator is authorized to acquire and retain the Limited Partnership Interests in accordance with the terms of this Trust Agreement without regard to any law limiting the nature of investments of fiduciaries.

(b) The Administrator agrees to perform his duties under this Trust Agreement in good faith and in the best interests of the Trust, but only upon the express terms of this Trust Agreement. To the fullest extent permitted by law, the Administrator shall have all implied duties (including fiduciary duties) or liabilities existing at law or in equity with respect to the Trust. For the avoidance of doubt, to the fullest extent permitted by law, no Person other than the Administrator (including any such Person that may control or be under common control with the Administrator) shall have any duties (including fiduciary duties) or liabilities at law or in equity to the Trust, any beneficial owner or any other Person.

(c) To the extent that, at law or in equity, the Administrator has duties (including fiduciary duties) and liabilities relating thereto to the Trust or to any other Person, the Administrator shall not be liable to the Trust or to any other Person for his good faith reliance on the provisions of this Trust Agreement.

(d) Unless otherwise expressly provided herein:

(i) whenever a conflict of interest exists or arises between the Administrator or any of its affiliates, on the one hand, and the Trust or the beneficial owner, on the other hand; or

(ii) whenever this Trust Agreement or any other agreement contemplated herein or therein provides that the Administrator shall act in a manner that is, or provides terms that are, fair and reasonable to the Trust or the beneficial owner,

the Administrator shall resolve such conflict of interest, take such action or provide such terms, considering in each case solely the interests of the Trust and the beneficial owner.

(e) Notwithstanding any other provision of this Trust Agreement or otherwise applicable law, whenever in this Trust Agreement the Administrator is permitted or required to make a decision:

(i) in his "discretion" or under a grant of similar authority, the Administrator shall be entitled to consider such interests and factors as it desires, including its own interest, and, to the fullest extent permitted by applicable law, shall have no duty or obligation to give any consideration to any interest of or factors affecting the Trust or any other Person; or

(ii) in his "good faith" or under another express standard, the Administrator shall act under such express standard and shall not be subject to any other or different standard. The term "good faith" as used in this Trust Agreement shall mean subjective good faith as such term is understood and interpreted under Delaware law.

(f) The Administrator and any of his affiliates may engage in or possess an interest in other profit-seeking or business ventures of any nature or description, independently or with others, whether or not such ventures are competitive with the Trust and the doctrine of corporate opportunity, or any analogous doctrine, shall not apply to the Administrator. The Administrator insofar as he acquires knowledge of a potential transaction, agreement, arrangement or other matter that may be an opportunity for the Trust shall not have any duty to communicate or offer such opportunity to the Trust, and the Administrator shall not be liable to the Trust or to the beneficial owners for breach of any fiduciary or other duty by reason of the fact that the Administrator pursues or acquires for, or directs such opportunity to another Person or does not communicate such opportunity or information to the Trust. Neither the Trust nor any beneficial owner shall have any rights or obligations by virtue of this Trust Agreement or the trust relationship created hereby in or to such independent ventures or the income or profits or losses derived therefrom, and the pursuit of such ventures, even if competitive with the activities of the Trust, shall not be deemed wrongful or improper. The Administrator may engage or be interested in any financial or other transaction with the Trust or any affiliate of the Trust, or may act as depositary for, trustee or agent for, or act on any committee or body of holders of, securities or other obligations of the Trust or its affiliates.

9. Recordkeeping and Accounting. The Administrator shall maintain appropriate records in which he shall record the Trust Property and the acquisition and disposition of Limited Partnership Interests.

10. Tax Treatment. The Sponsor and the Administrator acknowledge and agree that for United States Federal Income Tax purposes (i) the Trust shall be disregarded as an entity for federal income tax purposes. The Administrator shall comply with the information reporting requirements applicable to the Trust under the Internal Revenue Code and prepare and furnish to Beacon Mountain LLC any appropriate Internal Revenue Service forms required to be provided to Beacon Mountain LLC as beneficial owner of the Trust.

11. No Other Interests

(a) The Sponsor acknowledges that it has no rights or claims to specific Trust Property, including funds in the Account, and otherwise has no interest in the Trust Property or the Account other than a beneficial interest in the Trust Property and the Account.

(b) The Administrator acknowledges that he has no right, title, or interest in the Trust, the Trust Property, or the Account in his personal capacity and has no beneficial interest in the Trust.

12. Compensation; Administrator Liability. The Administrator shall not receive any compensation for his role as Administrator. Nothing herein shall be construed to limit the Administrator's ability to receive compensation pursuant to other agreements for services he may provide other than his role as Administrator. The Administrator shall be indemnified, defended and held harmless by the Trust for any liability incurred by him while acting hereunder, and shall not be liable to the Trust or the Sponsor, except for a breach of his fiduciary duties hereunder, his own bad faith, willful misconduct or gross negligence in the performance of his express duties under this Trust Agreement.

13. Amendment. The Administrator, solely with the consent of the beneficial owner, shall have the right at any time or times to amend or supplement the provisions of this Trust Agreement, in each case by a writing or writings signed by the Administrator; provided that no such amendment shall be permitted if it would subject any amount held hereunder to any right, charge, security interest, lien or claim by, of or for the benefit of any creditor or creditors of the Sponsor or its subsidiaries and affiliates in its corporate or personal capacity. If any such amendment or supplement affects the rights, immunities or obligations of the Delaware Trustee, the Administrator shall be required to obtain the prior written consent of the Delaware Trustee.

14. Duration. The Trust shall be perpetual unless otherwise dissolved and terminated pursuant to paragraph 15 below.

15. Termination. The Administrator shall have the power solely upon the prior written consent of the beneficial owner to dissolve the Trust and to distribute all Trust Property held in the Account to, or for the benefit of, such persons (including the Sponsor) as the Administrator shall determine in his sole discretion and after satisfying the claims and obligations of the Trust in accordance with the Delaware Act. Following any such dissolution, the Administrator shall proceed to wind up the affairs of the Trust in an orderly manner and within a reasonable period of time considering relevant circumstances and shall have the powers necessary to wind up the Trust's affairs, including but not limited to the power to fulfill or discharge the contracts of the Trust, collect its assets, sell, convey, exchange or otherwise dispose of all or any part of the remaining property of the Trust to one or more Persons at public or private sale (for consideration which may consist in whole or part of cash, securities or other property of any kind), discharge or pay its liabilities, defend or prosecute suits or administrative proceedings and do all other acts appropriate to the winding up and liquidation of the property and affairs of the Trust. After paying or making reasonable provision for the payment of all claims and obligations of the Trust as required by the Delaware Act, and upon receipt of such releases, indemnities or like documentation as the Administrator may reasonably deem necessary

for the protection of the Administrator, the Administrator shall distribute the remaining property of the Trust as contemplated by this Trust Agreement. Upon the completion of winding up, the Trust shall terminate and the Administrator shall provide written notice directing the Delaware Trustee to file an appropriate form of Certificate of Cancellation to be filed in the Office of the Secretary of State of the State of Delaware by the Delaware Trustee.

16. Removal of Administrator. Upon any Honis Trigger Event, the Administrator shall immediately be removed without any action by the Delaware Trustee or any other party.

17. Successor Administrator. The Administrator may resign as Administrator hereunder, without leave of court, at any time, and, in such event, the Adminstrator shall appoint a successor Administrator unless, prior to the effective date of his resignation, the Administrator dissolves the Trust in accordance with paragraph 15 above. Any appointment of a successor Administrator shall be in writing signed by the appointing Administrator, or by a duly authorized officer or officers of the appointing Administrator, if an entity. Whenever this Trust Agreement refers to the Administrator, such reference shall include any successor Administrator appointed under this paragraph. All powers hereby granted to the Administrator shall be exercisable by any successor Administrator, and each successor Administrator shall be deemed to have assumed the duties hereby undertaken by the Administrator.

Upon the termination of the Administrator in accordance with paragraph 16 above, Beacon Mountain, LLC shall appoint a successor Administrator within a reasonable period of time.

The Administrator shall not be required to furnish any bond or surety. No one dealing with the Administrator need inquire concerning the validity of anything the Administrator purports to do or see to the application of any money paid upon the Administrator's order.

18. Delaware Trustee.

(a) For purposes of satisfying Sections 3807 of the Delaware Act, during the existence of the Trust, there shall at all times be a "Delaware Trustee" hereunder who shall, in the case of a natural person, be a person who is a resident of the State of Delaware, or, in all other cases, is a trustee with its principal place of business in the State of Delaware. The Delaware Trustee shall not have any duties (including fiduciary duties) or liabilities except to the extent and for the limited purposes described in this paragraph. Accordingly, no reference in this Trust Agreement to the "Administrator" shall include, or be deemed to refer to, the Delaware Trustee. The sole power and duty of the Delaware Trustee shall be to accept service of process in accordance with Section 3804 of the Delaware Act and to execute and deliver for filing all documents required to be filed with the State of Delaware as required by the Delaware Act.

(b) The Sponsor and the Administrator hereby appoint Wilmington Trust, National Association as the initial Delaware Trustee. The initial Delaware Trustee and any successor Delaware Trustee may resign and may be removed by the Sponsor then serving for any reason, with or without cause. If the Delaware Trustee resigns or is removed, or if there is no Delaware Trustee serving at any time for any other reason, the Administrator shall appoint a successor Delaware Trustee who qualifies under the terms of this paragraph 18. Upon each

appointment of a successor Delaware Trustee, the Administrator shall cause an amendment to the Certificate of Trust of the Trust that reflects such change to be filed with the Secretary of State of the State of Delaware in accordance with the Delaware Act.

(c) By its execution hereof, the Delaware Trustee accepts its appointment hereunder. Except as otherwise expressly required by clause (a) above, the Delaware Trustee shall not have any duty or liability with respect to the administration of the Trust, the investment of the Trust Property or the payment of any distributions of income or principal to the beneficial owners.

(d) The Delaware Trustee shall not be liable for the acts or omissions of the Administrator, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of or performing the duties and obligations of the Administrator, the Sponsor or the Trust under this Trust Agreement or any other document. The Delaware Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, bad faith or gross negligence in the performance of its express duties under this Trust Agreement. In particular, but not by way of limitation:

(i) the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes gross negligence on its part;

(ii) no provision of this Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder, if the Delaware Trustee shall have reasonable grounds for believing that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii) under no circumstances shall the Delaware Trustee be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Trust;

(iv) the Delaware Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Trust Agreement or for the due execution hereof by the Sponsor or the Administrator;

(v) the Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Administrator, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi) in the exercise or administration of the Trust hereunder, the Delaware Trustee (a) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and with due care and (b) may consult with counsel, accountants and other skilled persons to be selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons; and

(vii) except as expressly provided in this Section, in accepting and performing the Trust hereby created the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all Persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Trust Agreement or the Trust Agreement shall look only to the Trust's property for payment or satisfaction thereof.

(e) The Delaware Trustee (or any successor Delaware Trustee) shall be entitled to receive compensation from the Sponsor or from the Trust for its services in accordance with such fee agreements and schedules as shall have been separately agreed to from time to time by the Delaware Trustee and the Sponsor. The Delaware Trustee may consult with counsel (who may be counsel for the Sponsor or for the Delaware Trustee). The reasonable legal fees incurred in connection with such consultation shall be reimbursed to the Delaware Trustee pursuant to this Section, provided that no such fees shall be payable to the extent that they are incurred as a result of the Delaware Trustee's gross negligence, bad faith or willful misconduct.

(f) The Delaware Trustee shall serve for the duration of the Trust and until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days written notice to the Administrator; provided, however, said resignation shall not be effective until such time as a successor Delaware Trustee has accepted such appointment. The Delaware Trustee may be removed at any time by the Administrator by providing thirty (30) days written notice to the Delaware Trustee; provided, however, such removal shall not be effective until such time as a successor Delaware Trustee has accepted such appointment. Upon the resignation or removal of the Delaware Trustee, the Administrator shall appoint a successor Delaware Trustee. If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may, at the expense of the Sponsor, petition any court of competent jurisdiction for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Trust Agreement, with like effect as if originally named as Delaware Trustee.

(g) The Delaware Trustee or any officer, affiliate, director, employee, or agent of the Delaware Trustee (each an "Indemnified Person") shall be entitled to indemnification from the Sponsor, to the fullest extent permitted by law, from and against any and all losses, claims, actions, suits, taxes, damages, reasonable expenses, and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever (collectively, "Expenses"), to

the extent that such Expenses arise out of or are imposed upon or asserted against such Indemnified Persons with respect to the creation, operation or termination of the Trust, the execution, delivery or performance of this Trust Agreement or the transactions contemplated hereby; provided, however, that the Sponsor shall not be required to indemnify any Indemnified Person for any Expenses which are a result of the willful misconduct, bad faith or gross negligence of such Indemnified Person. The obligations of the Sponsor to indemnify the Indemnified Persons as provided herein shall survive the termination of this Trust Agreement and the resignation or removal of the Delaware Trustee.

(h) The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder.

19. Waiver of Jury Trial. THE PARTIES HERETO HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO A TRIAL BY JURY IN ANY LITIGATION RELATING TO ANY CLAIM ARISING HEREUNDER OR RELATED HERETO.

20. Governing Law. The validity and construction of this Trust Agreement and all amendments hereto shall be governed by the laws of the State of Delaware, and the rights of all parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof; provided, however, that the parties hereto intend that the provisions hereof shall control over any contrary or limiting statutory or common law of the State of Delaware (other than the Delaware Act) and that, to the maximum extent permitted by applicable law, there shall not be applicable to the Trust, the Sponsor, or the Delaware Trustee any provision of the laws (statutory or common) of the State of Delaware (other than the Delaware Act) pertaining to trusts which relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, (g) the existence of rights or interests (beneficial or otherwise) in trust assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Sponsor or the Delaware Trustee set forth or referenced in this Trust Agreement. Sections 3540, 3542 and 3561 of Title 12 of the Delaware Code shall not apply to the Trust.

21. Exclusive Jurisdiction. Each of the parties hereto, to the fullest extent permitted by law, (i) irrevocably agrees that any claims, suits, actions or proceedings arising out of or relating in any way to this Agreement (including any claims, suits or actions to interpret, apply or enforce (A) the provisions of this Agreement or (B) the duties, obligations or liabilities of the Sponsor, the Administrator and the Delaware Trustee, or (C) the rights or powers of, or

restrictions on, the Trust, Sponsor, the Delaware Trustee or the Administrator, or (D) any provision of the Delaware Act, or (E) any other instrument, document, agreement or certificate contemplated by any provision of the Delaware Act relating to the Trust (regardless of whether such claims, suits, actions or proceedings (x) sound in contract, tort, fraud or otherwise, (y) are based on common law, statutory, equitable, legal or other grounds, or (z) are derivative or direct claims)), shall be exclusively brought in the Court of Chancery of the State of Delaware or, if such court does not have subject matter jurisdiction thereof, any other court in the State of Delaware with subject matter jurisdiction, (ii) irrevocably submits to the exclusive jurisdiction of such courts in connection with any such claim, suit, action or proceeding, (iii) irrevocably agrees not to, and waives any right to, assert in any such claim, suit, action or proceeding that (A) it is not personally subject to the jurisdiction of such courts or any other court to which proceedings in such courts may be appealed, (B) such claim, suit, action or proceeding is brought in an inconvenient forum, or (C) the venue of such claim, suit, action or proceeding is improper, (iv) expressly waives any requirement for the posting of a bond by a party bringing such claim, suit, action or proceeding, and (v) consents to process being served in any such claim, suit, action or proceeding by mailing, certified mail, return receipt requested, a copy thereof to such party at the address set forth in the books and records of the Trust, and agrees that such service shall constitute good and sufficient service of process and notice thereof; provided, nothing in clause (v) hereof shall affect or limit any right to serve process in any other manner permitted by law.

22. Application to Successors. This Trust Agreement shall extend to and be binding upon the successors, executors, administrators and assigns of each of the Sponsor, the Delaware Trustee and the Administrator.

23. Transfer of Beneficial Ownership. Beacon Mountain LLC shall be the sole beneficial owner of the Trust to the extent provided herein and the interests of Beacon Mountain LLC hereunder shall not be represented by a certificate. To the fullest extent permitted by law, the beneficial interest of Beacon Mountain LLC in the Trust may not be offered, sold, transferred, pledged, hypothecated or otherwise disposed of.

[SIGNATURE PAGE FOLLOWS]

Case 3:26-cv-02496-D Document 17-11 Filed 09/08/26 Page 202 of 211 PageID 6684

IN WITNESS WHEREOF, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

BEACON MOUNTAIN, LLC, as Sponsor

By: ______________________
Name: John Honis
Title: President

JOHN HONIS, as Administrator

______________________
1-11-16

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee

By: ______________________
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

BEACON MOUNTAIN, LLC, as Sponsor

By:____________________________
Name: John Honis
Title: President

JOHN HONIS, as Administrator

____________________________

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee

By:____________________________
Name:
Title: Jennifer A. Luce
Vice President

# EXHIBIT 5

HUNTER MOUNTAIN INVESTMENT TRUST

APPOINTMENT OF SUCCESSOR ADMINISTRATOR

August 12, 2022

Reference is made to that certain Trust Agreement of Hunter Mountain Investment Trust dated December 17, 2015 (the "Trust Agreement"). Capitalized terms not otherwise defined shall have the meaning given them in the Trust Agreement. Pursuant to section 16 of the Trust Agreement, upon the occurrence of a Honis Trigger Event, the current Administrator is immediately removed. Pursuant to that certain Membership Interest Purchase Agreement dated August 1, 2022 ("MIPA"), by and among John Honis (as "Seller"), Rand Advisors Holding Corp., a Delaware corporation (as "Buyer"), and CLO Holdco, Ltd., a Cayman limited company (as "Guarantor"), the Buyer acquired all the membership interests in, and therefore voting control of, Rand Advisors, LLC ("Rand"). A Honis Trigger Event under the Trust Agreement includes a change in ownership of Rand, such that John Honis fails to retain majority voting control.

Pursuant to section 17 of the Trust Agreement, upon the occurrence of a Honis Trigger Event and the immediate removal of John Honis as Administrator, Beacon Mountain, LLC ("Beacon") shall appoint a successor Administrator. Accordingly, Beacon hereby appoints Mark E. Patrick as Administrator of Hunter Mountain Investment Trust, effective as of the date first written above.

BEACON MOUNTAIN, LLC, a Delaware limited liability company
By: Rand PE Fund I, L.P., its sole member
By: Rand PE Fund Management, LLC, its general partner
By: Rand Advisors Holding Corp., its sole member

By:______________________________________
Name: Mark Patrick
Title: President

# EXHIBIT 6

OF APPEAL OF THE CAYMAN ISLANDS

**CAUSE NO CICA 003 OF 2026**

**ON APPEAL FROM CAUSE NO FSD 201 OF 2025 (RPJ)**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

Plaintiff / Appellant

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

Defendants / Respondents

---

**CERTIFICATE OF THE ORDER OF THE COURT OF APPEAL**

---

**UPON** the Appellant's summons filed on 3 March 2026 (the "**Interim Summons**") seeking interim relief pending the determination of the Appellant's appeal against the order of Justice Raj Parker consequent on the judgment of 10 February 2026 as commenced by the Appellant's Notice of Appeal dated 24 February 2026 (the "**Appeal**")

**AND UPON** reading the First Affidavit of Margot MacInnis dated 3 March 2026, the First Affidavit of Mark Patrick dated 24 March 2026, and the First Affidavit of Paul Murphy dated 24 March 2026 and the other affidavits, exhibits and documents and materials in the bundles put before the Court and referred to as having been read or considered

**AND UPON** reading the written submissions filed on behalf of the Appellant and the Respondents on 18 March 2026

**AND UPON** the Court refusing the Appellant's request to determine the Interim Summons on the papers

**AND UPON** hearing Caroline Moran for the Appellant, Andrew Scott KC for the First, Third, Fifth and Sixth Respondents, David Quest KC for the Second Respondent, and Fleur O'Driscoll for the Fourth Respondent on 27 March 2026 by remote hearing before The Rt Hon Sir John Goldring, President; The Hon Sir Richard Field, Justice of Appeal; and The Rt Hon Sir Jack Beatson, Justice of Appeal

**AND UPON** a decision being given on 31 March 2026 by remote hearing with reasons to follow

**I HEREBY CERTIFY** that an order was made on 31 March 2026 as follows:

1 From the date of this Order to the date of the determination of the Appeal, but subject to paragraphs 2 and 3, the Respondents and the related entities listed in Schedule 1 hereto (the "**Fund Entities**"), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities

unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities;

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

2 Further, and to the extent not addressed by the foregoing, the Respondents and the Fund Entities shall:

2.1 preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the Fund Entities and/or any assets of the Fund other than in the ordinary course of business; and

2.2 not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 The following clarifications and exceptions apply to paragraphs 1 and 2 above:

3.1 payments in an aggregate amount not exceeding US$200,000 per calendar month made to, and then by, the Fourth Respondent to or for the benefit of any charitable organisations or charitable purposes will be permitted for the purpose of paragraphs 1.1 and 2.1 above and therefore not a breach of this Order;

3.2 paragraphs 1 and 2 above shall only apply to the Second Respondent in respect of his position as a director of the Third, Fifth and Sixth Respondents (identified as Fund Entities at paragraphs (ii), (i), and (vi) of Schedule 1, namely: CDH GP Ltd; CDMCFAD, LLC; CLO HoldCo, Ltd.) and those Fund Entities identified at paragraphs (viii) and (xv) of Schedule 1, namely: MGM Studios HoldCo, Ltd.; and CLO HoldCo LLC;

3.3 nothing in paragraphs 1 or 2 above shall apply to, restrict or otherwise affect any funds received by way of remuneration by the Second Respondent in his capacity as a director of the Appellant and/or the Fund Entities, whether received before or after the date of this Order, or his right to use, deal with, or dispose of any such funds; and

3.4 for the avoidance of doubt, compliance with the terms of this Order by the Fund Entities shall not of itself constitute or be deemed to constitute evidence of the insolvency or bankruptcy of any of the Fund Entities.

4 Paragraphs 2, 3, 4 and 5 of the Interim Summons are dismissed.

5 The costs of the Interim Summons shall be costs in the Appeal.

6 The parties shall have liberty to apply.

Given under my hand and the Seal of the Court this 22 day of April 2026

JBSurg

Registrar of the Court of Appeal

**Schedule 1**

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

(xxiii) Hunter Mountain Investment Trust

(xxiv) Rand PE Fund Management, LLC

(xxv) Atlas IDF GP, LLC

(xxvi) CDHC Apache Trail, LLC

(xxvii) 41915 Leaseco, LLC