**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P**.**

§
§ Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§
vs. §

3:26-CV-02496-D

**Highland Capital Management, L.P., et al**-Appellee
§
§

**[4689] Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026**

**APPELLANT RECORD**

**VOLUME 22**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br><br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02496-D<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ALTER OR AMEND AND FOR RECONSIDERATION OF ORDER DENYING MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4698] on July 24, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689] now files this *Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the Court's June 15, 2026 Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate?

2. Did the Bankruptcy Court err in finding Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate ("Dugaboy's Motion") [Docket No. 4684] was "without merit?"

3. Did the Bankruptcy Court err in denying Dugaboy's Motion without a full record, including that Dugaboy was not allowed to file a reply brief and was not granted a hearing?

4. Did the Bankruptcy Court err in denying Dugaboy the opportunity to file a reply brief to Highland's Opposition to Dugaboy's Motion, including that Dugaboy indicated a date certain for filing a reply?

5. Did the Bankruptcy Court err in finding Dugaboy's Motion was "without merit" without granting a hearing?

6. Did the Bankruptcy Court err by summarily denying Dugaboy's Motion without explaining its reasoning for the denial?

7. Did the Bankruptcy Court err in failing to consider Dugaboy's Notice of Intervening Event?

8. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(2) when it determined that it had not manifestly erred in deciding the evidence of Mark Patrick's misconduct contained in the Cayman Islands proceeding was not "newly discovered" even though that information was not contained in James Dondero's affidavit executed April 16, 2025?

9. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant

to Rule 60(b)(2) when it determined it had not manifestly erred in deciding the Dondero Affidavit indicated information gained in the Cayman Islands proceedings was not "newly discovered" despite the fact the Affidavit lacked any evidence of the restructuring discovered in the Cayman Islands proceedings?

10. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding on the grounds that Rule 60(b)(3) purportedly requires fraud or misconduct to have occurred in the judicial proceeding itself?

11. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding that Highland did not provide misleading or incomplete answers during the discovery of Mark Patrick's misconduct and resulting lack of authority to negotiate the Rule 9019 settlement agreement from Dugaboy leading to the Rule 9019 Order?

12. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding that Dugaboy had not presented a basis for relief under Rule 60(b)(6) that was separate from the grounds presented for Rule 60(b)(2) and Rule 60(b)(3)?

13. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding on the grounds that undoing the Rule 9019 Settlement Order would not restore the original structure of the DAF or Hunter Mountain?

14. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of the Bankruptcy Court's special responsibility to monitor arrangements and settlements made between Highland's appointed managers and third parties?

15. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of its manifest error in failing to consider the Bankruptcy Court's role as a court of equity and responsibility to prevent misconduct before it, such as Mark Patrick's use of stolen assets in the 9019 Settlement?

16. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Vol. 1 000001 – 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4698] filed by Appellant;

000010 2. The Bankruptcy Court's July 10, 2026 *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000012 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

Vol. 2

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 02/09/2026 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| 02/13/2026 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513, Entered on 2/13/2026 (Okafor, M.) |
| | | |

000648 thru Vol 3

Vol. 4 001843

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| vol. 4<br>001845<br>thru vol 6 | 02/27/2026 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol 7<br>003634 | 02/27/2026 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 003647 | 03/02/2026 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 003650 &<br>003651 | 03/02/2026 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 003652 | 03/02/2026 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 003663 | 03/03/2026 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 003667 | 03/04/2026 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 003670 | 04/01/2026 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 7<br>003709 | 04/01/2026 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 004733 | 04/03/2026 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| Vol. 8<br>004790 | 04/03/2026 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| Vol 9<br>005207 | 04/03/2026 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 005209 | 04/06/2026 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 005217 | 04/06/2026 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol 9 | | Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026<br>005222 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026<br>005225 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026<br>005227 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026<br>005229 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026<br>005233 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol 9 | | Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| 04/17/2026 005330 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| vol 10 04/21/2026 005590 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/22/2026 005594 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/22/2026 005615 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 04/22/2026 005682 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 10 | | | Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| 005692 | 04/22/2026 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 005705 | 04/24/2026 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 005726 | 04/24/2026 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 005727 | 04/25/2026 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005729 | 04/27/2026 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 005737 | 04/28/2026 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| | | | |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| vol. 11<br>005746 | 04/28/2026 | 4569 | (9 pgs; 3 docs) Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 005755 | 04/28/2026 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005761 | 04/28/2026 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005767 | 04/29/2026 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 005776 | 04/29/2026 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 005783 | 04/29/2026 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |

| Vol. 10 | **Date Filed** | **Docket No.** | **Description/Docket Text** |
|---|---|---|---|
| 005785 | 04/29/2026 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005787 | 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 005794 | 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 005796 | 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 005798 | 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 005801 | 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 005884 | 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 005902 | 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 005905 | 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 005907 | 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 11 | | | Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005913 | 05/06/2026 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005920 | 05/06/2026 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005927 | 05/06/2026 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 005929 | 05/07/2026 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005936 | 05/08/2026 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 005939 | 05/08/2026 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 005942 | 05/08/2026 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 005945 | 05/08/2026 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol. 12 006100 Thru Vol 21 | 05/08/2026 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and* |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| 05/08/2026 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 05/08/2026 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 05/09/2026 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 22 008256 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008293 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008429 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008465 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008472 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008916 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| vol 25 009554 | 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| vol. 26 009868 | 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| vol. 27 010229 | 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| vol. 28 010538 | 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| Vol. 28 010664 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010736 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol 30 011150 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol 31 011734 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol 32 013203 thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014888 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol 35 015349 | 05/11/2026 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 015505 | 05/11/2026 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 015506 | 05/12/2026 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 015538 | 05/12/2026 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 015565 | 05/12/2026 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 015566 | 05/15/2026 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36 015569 | 05/18/2026 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| Vol 37 015996 | 05/18/2026 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 016008 | 05/19/2026 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 016079 | 05/20/2026 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 016082 – 016084 | 05/20/2026 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 016085 | 05/21/2026 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 016134 | 05/21/2026 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 37 | | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| 016135 | 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016233 | 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016490 | 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s)4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016504 | 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| Vol. 39 016505 | 06/29/2026 | 4684 | (162 pgs; 2 docs) Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Appendix) (Edney, Michael) |
| 016667 | 06/29/2026 | 4685 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s)4679 Order on motion to reconsider). Appellant Designation due by 07/13/2026. (Attachments: # 1 Exhibit)(Edney, Michael) |
| 016674 | 07/06/2026 | 4687 | (32 pgs; 2 docs) Response opposed to (related document(s): 4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 016706 | 07/09/2026 | 4688 | (23 pgs; 2 docs) Notice of Intent to Reply and Request for Hearing on Its Motion to Alter or Amend the Court's June 15, 2026 Order and Notice of Intervening Event filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 39 | | (Attachments: # 1 Appendix)). (Attachments: # 1 Attachment A) (Edney, Michael) |
| 07/10/2026 016729 | 4689 | (2 pgs) Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026. (Okafor, M.) Modified text on 7/10/2026 (mdo). |
| 07/13/2026 016731 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |
| 07/24/2026 016733 | 4698 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)(Edney, Michael) |
| 07/28/2026 016742 | 4704 | (5 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02496-E. (RE: related document(s)4698 Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court;

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J"); and

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No.

4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Dated: August 7, 2026

Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* forthcoming)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S EXHIBIT LIST**
**FOR THE MAY 11, 2026 HEARING**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021-HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019-HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022-HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001-HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002-HCM-D10000013 |
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014-HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016-HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017-HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019-HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021-HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037-HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039-HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046-HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053-HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056-HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070-HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073-HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074-HCM-D10000090 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 67 | Register for CDH GP, Ltd. | HCM-D10000091- HCM-D10000091 |
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092- HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093- HCM-D10000094 |
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095- HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096- HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097- HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125- HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264- HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266- HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268- HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270- HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272- HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273- HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274- HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275- HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277- HCM-D10000278 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279-HCM-D10000280 |
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048- HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052- HMIT_Entities_000054 |
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055- HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058- HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059- HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060- HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061- HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062- HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064- HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066- HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067- HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071- HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075- HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077- HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079- HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080- HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081- HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084- HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085- HMIT Entities_000086 |
| 122 | Financial statement audit | HMIT_Entities_000087- HMIT_Entities_000103 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104-HMIT_Entities_000114 |
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115-HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125-HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126-HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134-HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135-HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260-HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262-HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264-HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265-HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267-HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001-VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002-VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003-VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008-VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027-VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028-VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030-VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396–TDIT003398 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 180 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 181 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 182 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 182 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 183 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 184 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 185 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 186 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 187 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 188 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 189 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 190 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |
| 191 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |
| 192 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 193 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 194 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 195 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 196 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 197 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 198 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 199 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 200 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 201 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 202 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 203 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 204 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 205 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 206 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 207 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 208 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 209 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |
| 210 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |
| 211 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 212 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 213 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 214 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 215 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 216 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 217 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 218 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 219 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 220 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 221 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 222 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 223 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 224 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 225 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 226 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 227 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 228 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 229 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |
| 230 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to

supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 8, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S AMENDED EXHIBIT LIST**
**FOR THE MAY 11, 2026 HEARING**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021-HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019-HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022-HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001- HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002- HCM-D10000013 |
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014- HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016- HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017- HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019- HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021- HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037- HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039- HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046- HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053- HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056- HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070- HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073- HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074- HCM-D10000090 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 67 | Register for CDH GP, Ltd. | HCM-D10000091-HCM-D10000091 |
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092-HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093-HCM-D10000094 |
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095-HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096-HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097-HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125-HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264-HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266-HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268-HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270-HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272-HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273-HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274-HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275-HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277-HCM-D10000278 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279-HCM-D10000280 |
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048- HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052- HMIT_Entities_000054 |
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055- HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058- HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059- HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060- HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061- HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062- HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064- HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066- HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067- HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071- HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075- HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077- HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079- HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080- HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081- HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084- HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085- HMIT Entities_000086 |
| 122 | Financial statement audit | HMIT_Entities_000087- HMIT_Entities_000103 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104- HMIT_Entities_000114 |
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115- HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125- HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126- HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134- HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135- HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260- HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262- HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264- HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265- HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267- HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001- VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002- VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003- VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008- VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027- VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028- VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030- VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396– TDIT003398 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 190 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 191 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 192 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 193 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 194 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 195 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 196 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 197 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 198 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 199 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 200 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 201 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |
| 202 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |
| 203 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 204 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 205 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 206 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 207 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 208 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 209 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 210 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 211 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 212 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 213 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 214 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 215 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 216 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 217 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 218 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 219 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 220 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |
| 221 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |
| 222 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 223 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 224 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 225 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 226 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 227 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 228 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 229 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 230 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 231 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 232 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 233 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 234 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 235 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 236 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 237 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 238 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 239 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 240 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |
| 241 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to

supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 8, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*<u>/s/ Geoffrey S. Harper</u>*
Geoffrey S. Harper

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P. AND
THE HIGHLAND CLAIMANT TRUST'S AMENDED WITNESS AND EXHIBIT LIST
WITH RESPECT TO HEARING TO BE HELD ON MAY 11, 2026**

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the Reorganized Debtor is 6333 Mockingbird Ln., Ste 147 #5045, Dallas, Texas 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the Highland Claimant Trust (together, "Highland"), by and through its undersigned counsel, submits the following amended witness and exhibit list with respect to the *Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] ("Motion for Relief") filed by The Dugaboy Investment Trust ("Dugaboy") which the Court has set for hearing on May 11, 2026 at 9:00 a.m. (Central Time) (the "Hearing") at the George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, Texas 79401.

**A. Witnesses:**

1. James Dondero;
2. James P. Seery, Jr.;
3. Nancy Dondero, as Trustee to The Dugaboy Investment Trust;
4. Mark Patrick;
5. Any witness identified by or called by any other party; and
6. Any witness necessary for rebuttal.

**B. Amended Exhibits:**[2]

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| **A.** | **Patrick Authority** | | | |
| 1. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | 70 | | |

[2] The amendments to the original exhibit list, filed at Docket No. 4608, include the additions in bold font below.

[3] Highland's Witness and Exhibit List for the June 25, 2025 hearing (the "9019 Hearing") on the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] can be found at Docket No. 4255 and as further amended at Docket Nos. 4277 and 4280. Exhibit reference is to the exhibit list (and copies of the exhibits themselves) found at Docket No. 4255 unless otherwise noted.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 2. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | 75 | | |
| 3. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | 94 | | |
| 4. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | 95 | | |
| 5. | Membership Interest Purchase Agreement, dated February 12, 2025, between Rand PE Fund I, L.P. and CLO Holdco, LLC | | | |
| 6. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] | 86 | | |
| 7. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | 73 | | |
| 8. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | 83 | | |
| 9. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | 82 | | |
| 10. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | 76 | | |
| 11. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | 85 | | |
| 12. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] | 88 | | |
| 13. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | 77 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 14. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | 84 | | |
| 15. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] | 87 | | |
| 16. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] | 89 | | |
| 17. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | 78 | | |
| 18. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | 81 | | |
| 19. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | 93 | | |
| 20. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | 79 | | |
| 21. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | 80 | | |
| 22. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | 92 | | |
| 23. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | 90 | | |
| 24. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | 91 | | |
| 25. | Crown Global Rand Participation Agreement (Executed) | 102 | | |
| 26. | Crown Global DVA Policy 30218 (signed) | 98 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 27. | Crown Global DVA Termsheet 30218 | 99 | | |
| 28. | Crown Global DVA Policy 30219 (signed) | 100 | | |
| 29. | Crown Global DVA Termsheet 30219 | 101 | | |
| 30. | Bylaws of The Okada Family Foundation, Inc. (final version) | 96 | | |
| 31. | Bylaws of Empower Dallas Foundation, Inc. | 97 | | |
| 32. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | 103 | | |
| 33. | S&G HMIT Opinion dated January 29, 2016 | 104 | | |
| 34. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | 74 | | |
| 35. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | 71 | | |
| 36. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | 72 | | |
| **B.** | **<u>Validation of Patrick's Authority</u>** | | | |
| 37. | *Remittance Agreement* between the NexPoint Small Bay and Charitable DAF and Liberty CLO Holdco, Ltd. (as those terms are defined), dated January 10, 2025 [Docket No. 4536-E] | 22 | | |
| 38. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | 13 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 39. | *Stipulation Withdrawing Objection of the Dallas Foundation and Crown Global Life Insurance, Ltd. to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With the HMIT Entities and Authorizing Actions Consistent Therewith* dated June 27, 2025 [Docket No. 4291] | | | |
| 40. | The Rule 11 Agreement filed in the TX Business Court on July 13, 2025 [Docket No. 4356-F] | | | |
| 41. | *Consent Order in In re Charitable DAF Holdco, Ltd.*, entered by the Grand Court of the Cayman Islands Financial Services Division on July 31, 2025 [Docket No. 4556-20] | | | |
| 42. | *Order* in *The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on September 18, 2025 [Docket No. 4534-16] | | | |
| 43. | An amendment to a loan agreement executed by, among others, certain Dondero-controlled entities and CLO Holdco, Ltd., dated September 30, 2025 [Docket No. 4536-G] | | | |
| 44. | *Stipulation [Proposed] Order of Dismissal With Prejudice* between Liberty CLO HoldCo, Ltd. and Dugaboy and others aligned with or controlled by Dondero, dated December 3, 2025 [Docket No. 4536-H] | | | |
| 45. | *Agreed Final Judgment* between Atlas IDF, LP (an HMIT affiliate) and certain Dondero-controlled entities, dated December 8, 2025 [Docket No. 4536-I] | | | |
| **C.** | **<u>Dugaboy's Knowledge of the Principal Allegations Against Patrick</u>** | | | |
| 46. | Excerpts of Returns of Organizations Exempt from Income Tax filed on IRS Form 990, dated 2024, for the Highland Dallas Foundation Inc., the Highland Kansas City Foundation Inc., and the Highland Santa Barbara Foundation Inc. [Docket No. 4556-21] | | | |
| 47. | The *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-6] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 48. | The *Affidavit of James David Dondero*, notarized on April 9, 2025 and filed in support of the *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-7] | 119 | | |
| 49. | *Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on May 2, 2025 [Docket No. 4534-13] | | | |
| 50. | *Order Granting Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, entered in the Grand Court of the Cayman Islands Financial Services Division on May 6, 2025 [Docket No. 4534-14] | | | |
| 51. | The *Affidavit of Mark Eric Patrick*, notarized on June 4, 2025, in *In re Charitable DAF Holdco, Ltd.* and filed in the Grand Court of the Cayman Islands Financial Services Division on June 4, 2025 [Docket No. 4534-10] | | | |
| 52. | *Objection of The Dallas Foundation and Crown Global Life Insurance, Ltd to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4231], filed in the United States Bankruptcy Court for the Northern District of Texas on June 9, 2025 [Docket No. 4534-18] | | | |
| 53. | *Dugaboy Investment Trust's Discovery Related to Rule 9019 Motion* in the above-captioned bankruptcy case, dated June 10, 2025 [Docket No. 4534-19] | | | |
| 54. | *Highland Capital Management, L.P., the Highland Claimant Trust, and the Highland Litigation Sub-Trust's Responses and Objections to Dugaboy's Discovery Related to Rule 9019* Motion, dated June 13, 2025 [Docket No. 4534-12] | | | |
| 55. | Deposition transcript of Shawn Raver dated June 20, 2025 | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 56. | Deposition transcript of Julie Diaz dated June 22, 2025 | 124 (at Dkt. 4277) | | |
| 57. | Deposition transcript of Torrey Littleton dated June 22, 2025 | 125 (at Dkt. 4277) | | |
| 58. | Deposition Transcript of Mark Patrick dated June 23, 2025 | | | |
| 59. | The transcript of the June 25, 2025 hearing in the United States Bankruptcy Court for the Northern District of Texas on the *Motion for an Order Further Extending Duration of Trusts* [Docket No. 4213] and *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [Docket No. 4216]* [Docket No. 4534-11] | | | |
| 60. | Highland Rule 9019 Presentation dated June 25, 2025 [Docket No. 4536-L] | L (at Dkt. 4536)[4] | | |
| 61. | *Declaration of James David Dondero* filed in the Texas Business Court, Dallas, Texas and dated July 1, 2025 [Case No. 19-34054, [Docket No. 4521-H-6] | | | |
| 62. | *Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver in The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on July 1, 2025 [Docket No. 4534-15] | | | |
| 63. | *JOL Writ of Summons and Statement of Claim*, filed in the Cayman Proceeding on July 15, 2025 [Docket No. 4536-B] | | | |
| 64. | *The Dugaboy Investment Trust's Motion to Stay 9019 Order* [Docket No. 4326] and accompanying exhibits, filed in the United States Bankruptcy Court for the Northern District of Texas on July 17, 2025 [Docket No. 4326] | | | |

[4] This demonstrative was used at the 9019 Hearing on June 25, 2025 and admitted into evidence at the request of Mr. Lang, Dugaboy's attorney. *See* June 25, 2025 transcript (Exhibit 62) at 171:15-25.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 65. | *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ##4326 & 4308]* (Denying Stay) dated July 21, 2025 [Docket No. 4333] | | | |
| 66. | Charitable DAF Holdco, Ltd. Guidance Notes for Members of the Liquidation Committee (not dated) [Docket No. 4534-9] | | | |
| 67. | CWR Form No. 15, Liquidator's Certificate (Composition of Liquidation Committee) (O. 9, r. 1) in the Grand Court of the Cayman Islands Financial Services Division, dated July 21, 2025 [Docket No. 4534-17] | | | |
| 68. | *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Court, filed in the United States District Court for the District of* Delaware, dated July 21, 2025 [Docket No. 4536-J] | | | |
| 69. | *Declaration of Margot MacInnis*, sworn to on July 21, 2025, and filed in the United States Bankruptcy Court for the District of Delaware in connection with the Ch. 15 Recognition Petition [Docket 4521-6 (Exhibit G)] | | | |
| 70. | *Third Affidavit of Margot MacInnis* filed in Grand Court of the Cayman Islands November 2025 (Under Seal) | | | |
| **D.** | **<u>The Cayman Court Rejects the Dondero Foundation's Fraud Claims</u>** | | | |
| 71. | Letter from Maples and Calder (Cayman) LLP to Karen Hoskins, Personal Assistant to the Hon. Justice Raj Parker of the Grand Court of the Cayman Islands Financial Services Division, dated February 3, 2026 [Docket No. 4556-22] | | | |
| 72. | *Judgment in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on February 10, 2026 [Docket No. 4534-4] | | | |
| **E.** | **<u>Other</u>** | | | |
| 73. | Settlement Agreement and General Release dated May 19, 2025 [Docket No. 4217-7] | 1 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 74. | *Notice of Appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* dated July 15, 2025 [Docket No. 4311] | | | |
| 75. | Dugaboy's Index (compiled from all documents Dugaboy filed at Docket Nos. 4513 and 4521), a document prepared by professionals employed by my firm at my direction dated April 3, 2026 [Docket No. 4536-A] | | | |
| 76. | Executed Withdrawal Letters – Dolomiti and Hakusan dated February 6, 2025 | | | |
| 77. | Deposition Transcript of James Dondero dated May 8, 2026 | | | |
| 78. | *Highland Capital Management, L.P.'s Requests for the Production of Documents Directed to the Dugaboy Investment Trust* dated February 2026 [Dkt 4551-8] | | | |
| 79. | Membership Interest Purchase Agreement, dated August 1, 2022 by and among John Honis, as seller, DAF Holdings Corp., as buyer, and CLO Holdco, Ltd., as guarantor | | | |
| 80. | Amended and Restated Limited Partnership Agreement of Rand PE Fund, dated as of November 30, 2015 | | | |
| 81. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Atlas IDF | | | |
| 82. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Rand PE Fund | | | |
| 83. | Assignment and Assumption of Membership Interest Agreement, dated March 24, 2021, between Grant J. Scott and Mark E. Patrick | | | |
| 84. | Amended and Restated Limited Liability Company Agreement of DAF GP, dated as of January 1, 2012 | | | |
| 85. | Second Amended and Restated Exempted Limited Partnership Agreement of DAF Fund, dated March 11, 2024 | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 86. | Contribution and Assignment Agreement, dated April 27, 2023, by and among DAF Fund, CLO Holdco, Ltd, Liberty CLO Holdco, Ltd., and DAF Holdings Corp. | | | |
| 87. | Highland Demonstrative Exhibit: Highland's Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 88. | ***Summons* filed March 3, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal** | | | |
| 89. | **March 27, 2026 Hearing Transcript from proceedings in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal** | | | |
| 90. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 Bankruptcy Case or any associated contested matter or adversary proceeding, including any exhibits thereto | | | |
| 91. | All exhibits necessary for impeachment and/or rebuttal purposes | | | |
| 92. | All exhibits identified by or offered by any other party at the Hearing | | | |

[*Remainder of Page Intentionally Blank*]

Dated: May 9, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**EXHIBIT 88**

**IN THE CAYMAN ISLANDS COURT OF APPEAL**

**ON APPEAL FROM THE GRAND COURT OF THE CAYMAN ISLANDS**

**CICA CIVIL APPEAL NO. 3 OF 2026**

**CAUSE NO. FSD 201 OF 2025 (RPJ)**

**IN THE MATTER OF RULE 24(1) OF THE COURT OF APPEAL RULES (2014 REVISION)**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

Plaintiff / Appellant

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

Defendants / Respondents

---

**SUMMONS**

---

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

**LET ALL PARTIES CONCERNED** attend before the Court of Appeal on the day of 2026 at am / pm upon an application by the Plaintiff pursuant to Rule 24(1)(b) of the Court of Appeal Rules (As Revised) for orders and directions that pending the determination of the appeal of the judgment of the amended summons dated 4 December 2025 filed by the Appellant in Charitable DAF HoldCo, Ltd (in Official Liquidation) v Mark Eric Patrick & Ors (FSD 201 of 2025 (RPJ)) (the "**Appeal**"):

1 The Respondents and the related entities listed in the Schedule hereto (the "**Fund Entities**"), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities; and

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

2 Further, and to the extent not addressed by the foregoing, the Respondents and the Fund Entities shall:

2.1 preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the Fund Entities and/or any assets of the Fund other than in the ordinary course of business; and

2.2 not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 The Third, Fourth, Fifth and Sixth Respondents (the "**CDM Respondents**") and the Fund Entities shall give seven days' written notice to the Appellant of any payment or transaction of any nature (or series of related payments or transactions) they propose to make at or above US$50,000. Such notice must include full supporting information and documentation as well as an explanation of the rationale for the transaction.

4 If the Appellant has any queries regarding a transaction (or series of related payments or transactions) and whether it is in the ordinary course of the CDM Respondents or the Fund Entities' business, the CDM Respondents and the Fund Entities shall consult with the JOLs and provide clarification. For the avoidance of doubt, nothing in this Order shall prohibit the Respondents and the Fund Entities from making payments to any attorney, lawyer, third party consultant, accountant, or external professional services advisor which is required, either in the ordinary course of business, or in respect of their reasonable legal fees and expenses in connection with these proceedings, the proceedings under FSD 201 of 2025 (RPJ), or the official liquidation of Charitable DAF HoldCo, Ltd (in Official Liquidation) FSD 116 of 2025 (JAJ), or the Chapter 15 proceedings, *In re Charitable DAF Holdco, Ltd (In Official Liquidation)*, United States Bankruptcy Court for the District of Delaware, Case No. 25-11376 (BLS). All

such transactions will be provided for in the monthly transactions report pursuant to paragraph 5 of this Order.

5 The CDM Respondents and the Fund Entities shall disclose to the Appellant, at the end of each calendar month: (i) a full listing of payments or other transactions undertaken by them below US$50,000 in the calendar month just passed; and (ii) copies of all existing and up to date balance sheets and financial statements or records prepared in relation to the Respondents or the Fund Entities for the period 31 December 2025 onwards. Any information of whatever nature relating to any member of the CDM Respondents or the Fund Entities which is provided to the Appellant pursuant to this paragraph 5, shall not be disclosed to or shared with Mr James Dondero, the Supporting Organisations (being Highland Santa Barbara Foundation, Highland Dallas Foundation, and Highland Kansas City Foundation), or any known affiliates or service providers of these individuals / entities, subject to where the Appellant's joint official liquidators are required to disclose any such information in the discharge of their duties to the Court or as otherwise required by law.

DATED this 3rd day of March 2026

Maples and Calder (Cayman) LLP

______________________________

**Maples and Calder (Cayman) LLP**
Attorneys for the Appellant

TO: The Registrar of the Court of Appeal

AND TO: (1) Campbells, Attorneys for the First, Third, Fifth and Sixth Respondents
(2) Kobre & Kim, Attorneys for the Second Respondent
(3) Baker & Partners, Attorneys for the Fourth Respondent

TIME ESTIMATE: The Appellant respectfully submits that the summons is fit to be determined on the papers.

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

**Schedule**

List of Fund Entities

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

(xxiii) Hunter Mountain Investment Trust

(xxiv) Rand PE Fund Management, LLC

(xxv) Atlas IDF GP, LLC

(xxvi) CDHC Apache Trail, LLC

(xxvii) 41915 Leaseco, LLC

FILED by Maples and Calder (Cayman) LLP, attorneys for the Appellant, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/LRA/TQR/858403.02/86574964)

**EXHIBIT 89**

Case 3:26-cv-02496-D Document 17-22 Filed 09/08/26 Page 76 of 340 PageID 9065

OPUS2

CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION) v Mark Patrick \& Ors.

Day 1

March 27, 2026

Opus 2 - Official Court Reporters

Phone: 020 4518 8448
Email: transcripts@opus2.com
Website: https://www.opus2.com

Friday, 27 March 2026

(1.00 pm)

PRESIDENT: After you have done your introductions, Ms Moran, perhaps I might say a few words.

MS MORAN: Thank you, my Lords, and thank you very much to your Lordships for convening this special sitting at short notice this morning as well.

My Lords, I appear on behalf of the joint official liquidators of Charitable DAF Holdco. Mr Scott appears for the 1st, 3rd, 5th and 6th respondents, instructed by Campbells. Mr Quest appears for the second respondent, instruct you had by Kobre & Kim. And Ms O'Driscoll, from Baker & Partners, appears for the fourth defendant, DFW.

PRESIDENT: Thank you very much, Ms Moran. May I say a few things.

First, we will finish by -- by -- 6.00 pm UK time, which will be noon Cayman time. There will be a break because, as we know, Melanie is doing the Opus recording.

May I just say this about the question of a special hearing of the substantive appeal -- and there is an appeal by right, as I understand it,



so that would take place in any event -- there are, I am bound to observe, great demands on the court at the moment, which makes a hearing date slightly problematic. I just mention that so that everybody knows. It is not entirely straightforward.

That's the first -- those are the first few matters I wanted to mention. There is something else.

This is, and I think I am right in saying it, Ms Moran, a case in which leave to appeal is not required. That is so, isn't it?

MS MORAN: That's right, my Lord.

PRESIDENT: If it were, I think it would be helpful if we make it plain that we would have granted leave to appeal on the basis that there is, in our view, a seriously arguable case for appeal. So we shall approach the matter on that basis.

Among other things, given that position, we shall want to hear, Ms Moran, from you, as to why any Rule 11 order is insufficient. Obviously it is not the only topic with which you have to deal, but we shall want to know about that, and we shall want to hear from the respondents as to why



the court should not make an order in the terms of Rule 11, which you all know about.

So, with those few words, and emphasising that this is an application for an interim injunction -- this is not the hearing of the substantive appeal -- we have to concentrate on the issues that are presently relevant.

Ms Moran, we leave it to you to start.

Submissions by MS MORAN

MS MORAN: Thank you very much, my Lord, and I am very grateful for those clear indications.

My Lord, I think in light of that guidance I will address your Lordships under the following headings, and I will give just some brief background and context to the proceedings and to this application, and then I think I can skip quite lightly over our serious issue to be tried on appeal, given your Lordship's directions.

PRESIDENT: Correct.

MS MORAN: I will turn then, my Lord, to the meat of this application as to why the balance of convenience favours granting the interim injunction, which will deal with the Rule 11 Agreement and the risk of prejudice to the parties.



So, turning to -- I am sorry, my Lord, before I start, could I just confirm that your Lordships do have access to the electronic bundles? Your Lordship should have received them.

PRESIDENT: We do.

MS MORAN: Very good. Thank you.

JUSTICE BEATSON: Can I just say, we had access to electronic bundles. They are fragmented and in bits. So you will just have to -- speaking for myself, you will have to take care in getting us to the right place. It was a particular problem, I'm afraid, with the Maples bundles.

MS MORAN: Apologies, my Lord.

JUSTICE BEATSON: Let me tell you what I have. I have a companies bundle for this hearing, which is perfect. There is nothing wrong with that. Then I have five bundles, which I think are the papers and exhibits and authorities that were before the judge. And I have an e-mail saying there is some pagination problem in it, which I have not got to the bottom of, because that only arrived last night. That's my -- then I have a bundle of respondents' evidence and authorities, together with the respondents' submissions, but it is a bit fragmented.

MS MORAN: Thank you, my Lord. Apologies for that.
JUSTICE BEATSON: Well, it is your time. Anyway, there we are.
MS MORAN: We will do our best. I think we will be able to make our way through them, my Lord.
My Lords, turning to the background, as your Lordships will have seen from the judgment and the skeleton argument, the company's claim in the Grand Court is that, prior the liquidation, the two directors, Mr Patrick and Mr Murphy, transferred away the company's primary asset, being a valuable limited partnership interest, in breach of fiduciary duty and at a gross undervalue, to entities under their sole control. This was what we refer to, somewhat euphemistically, as "the DAF restructuring".
At the same time as this was going on, the directors were paying themselves excessive remuneration and bonuses, and refusing to give information to the limited partner, the underlying charities, as to the conduct of the business of the partnership. And this is explained in detail in the Grand Court skeleton argument at paragraphs 33 to 56.



As your Lordships will have seen, the company's position is this conduct is all the more egregious because the underlying beneficiaries of the company are four large US charities that support education and community initiatives in under-privileged areas. And as a result of the directors' actions, these charities are being deprived of the funds that they need in order to carry out these charitable commitments.
So, unsurprisingly, in these circumstances, Justice Parker found there was a serious issue to be found in respect of the DAF restructuring, and that is consistent with your Lordship's determination that there is a serious issue to be tried here on appeal.
Surprisingly, and disappointingly, Justice Parker declined to grant an injunction to protect the company's proprietary rights to the limited partnership interest pending trial, notwithstanding that they are under the sole control of the wrongdoers. This risks the company's claim being rendered nugatory by the time we get to trial.
We are currently left without any protection whatsoever in this court over assets to



which the company can demonstrate a proprietary claim.
My Lords, what this means is, pending the trial -- and this is notwithstanding the Rule 11 Agreement --
PRESIDENT: Could Mr Goodman please turn off his -- I don't know who Mr Goodman is, but somebody called Mr Goodman appears to have just spoken and appeared very briefly.
MR GOODMAN: Apologies, my Lord. I accidentally came off mute.
MS MORAN: Without having any injunctive relief over these assets, it leaves the directors free to continue to pay themselves excessive remuneration, potentially carry out another restructuring, and to transfer away the limited partnership interest out of the structure.
But even leaving aside the question of whether or not the directors would or wouldn't act in bad faith in this manner, allowing them to continue to operate this structure in the ordinary course, on their case means they can make charitable distributions to DFW, currently the sole beneficiary of this structure, and DFW can then make charitable distributions not to our



charities, not to the four charities who are the intended beneficiaries of this structure, but to charities of its choosing.
So there is a clear risk of dissipation of assets in the manner in which the directors consider it is appropriate to conduct the business of (inaudible). There is no question whether the assets are going to be dissipated.
The respondents have declined to offer any undertakings to us pending trial, even over the limited partnership interest, and have expressly refused to give undertakings to this court pending hearing of this application today.
So in our notice of appeal we seek an injunction in substantially similar terms to that refused by Justice Parker, save that we have made a concession in that we are no longer seeking to prevent the respondents from dealing with their salaries, and we have also amended the disclosure orders to take into account some of the information that's already been received and by this application we are seeking an interim injunction on more limited terms, pending the hearing on that appeal, and the terms of the interim injunction are on page 174 of the

company's appeal bundle.

The terms of the interim injunction reflect the consent undertakings that --

PRESIDENT: Forgive me interrupting, Ms Moran. Was there any reason you did not ask for an order from the judge below?

MS MORAN: Excuse me, my Lord, is there any reason I didn't ask for an order from the judge below?

PRESIDENT: Yes. I think you indicated that you were going to ask, were you not, for some sort of order below, but I'm not sure I have seen anything which indicates -- because this is a point taken against you -- why you didn't.

MS MORAN: Yes, my Lord. I think on the jurisdiction point, my Lord, I think the point taken against me is a bad one. I don't think this is a case where the Grand Court and the Court of Appeal have concurrent jurisdiction in the same way as they would for a leave to appeal application or a stay application. I think this is an application where, under the court rules, there is a right to go directly to the Court of Appeal for an injunction, pending the appeal.

JUSTICE BEATSON: Can I ask --

PRESIDENT: In any event -- I am so sorry.



JUSTICE BEATSON: Can I ask, let's assume you are right about that. You have a right to come straight here. But the question that was asked was: why didn't you ask the judge? Quite often people ask the first instance judge for relief when they feel they need it at the time. I mean, we have all seen this. So, that was the question I believe that was asked, and I am not sure I understand -- are you saying the judge had no jurisdiction to give you any relief pending appeal?

MS MORAN: Well, my Lord, I think that there -- while there will may have been jurisdiction for the Grand Court judge, I don't think that it is a situation where that jurisdiction precludes this court from exercising jurisdiction.

JUSTICE BEATSON: No, but that's not the question. That's not the question. The question is: why didn't you ask?

MS MORAN: We didn't ask, my Lord, because the judgment was not handed down -- the judgment was not handed down in person, and the judge at the Grand Court had categorically just refused us an injunction on the basis that we didn't have any proprietary interest in the assets.



We had gone back to the judge seeking to clarify the terms of the order -- excuse me -- seeking to clarify the terms of the judgment and asking whether the judge did, in fact, realise that there did not appear to be any reasons in the judgment about why we didn't have a proprietary interest in the partnership interest as opposed to the underlying assets, and --

PRESIDENT: Forgive me interrupting. I think the answer, which I sense we are coming to, is you didn't think he would grant it, because he was so against you. I think that's what you want to say. I am not sure -- forgive me interrupting. That not an answer to why you didn't ask him -- well, it is an answer to why you didn't ask him; nevertheless you plainly should have asked him. But you did not think he would grant it. That's I think what you are saying or moving to say.

We undoubtedly have the discretion to permit you to ask us, and that's really what you are seeking from us, isn't it?

MS MORAN: As I understand it, my Lord, yes, that's -- perhaps that's right.

I do think it is a strange situation to be in, having been just refused an injunction by



Justice Parker, to then turn around and say "Could you give us an injunction for a shorter period of time until we get to the Court of Appeal?" It wasn't a stay application. It would have been exercising an original jurisdiction to grant the injunction, my Lords. So it did feel more appropriate to come directly to this court in the circumstances.

PRESIDENT: I see.

MS MORAN: My Lords, I think in relation to -- I think I was speaking about the risk of the dissipation of the assets, which is why we sought the injunction in the Grand Court and then why we are seeking the interim injunction today.

I think, just before I turn to the substance of the application, as a preliminary point I do need today address the allegations that are being made that the liquidators are being controlled by Mr Dondero.

The liquidators are court officers and they obtained sanction to bring these proceedings from Justice Asif, the liquidation judge. They also obtained sanction from Justice Asif for the initial tranche of funding from (inaudible) Limited. If there had been any element of control

in that funding agreement, sanction just would not have been granted.

These are very serious allegations to make against court officers. Mr Scott resiled from these allegations under questioning from Justice Parker in the Grand Court, but now we see those allegations being made here again, and I also see that in the MidWave complaint that's been exhibited to Mr Patrick's recent affidavit to this court, he is referring to the liquidators as civil co-conspirators with Mr Dondero.

So, my Lords, it is not an issue for today. No doubt this is all going to be aired in the removal application that they have listed before the Grand Court at the end of June, and -- but these are serious allegations, and obviously they are denied categorically by the liquidators.

Tactically, I understand, of course, why they are making these allegations, because it is clear that there's considerable animosity between Mr Dondero and Mr Patrick, but that's nothing to do with the liquidators.

My learned friends are well aware that returning the assets to the company doesn't mean that the assets go back into the control -- or go



into the control of Mr Dondero. They will be controlled by the liquidators and to the extent that there is any real evidence that Mr Dondero will siphon off money that should be going to the charities the liquidators will be able to deal with this.

The only way they can get around this inconvenient obstacle to what's a key plank in their defence is to impugn our integrity.

So, my Lords, I will say no more about that and then I'll see if I need to address it any further in reply, but it is telling that Mr Patrick's complaints about Mr Dondero trying to take money away from the charities are only being made by him. There are no such complaints being made by the charities, and, in fact, it is the charities that brought the petition to the Grand Court to appoint the liquidators as a result of mismanagement by Mr Patrick.

Turning, my Lord, to the issue about there being a serious issue to try on appeal --

SIR RICHARD FIELD: I am so sorry. I didn't have my microphone on and I wanted to ask you a question. I am sorry to interrupt your submission.



MS MORAN: Not at all.

SIR RICHARD FIELD: I am right to assume, am I, that it's by reason of the (inaudible) that the original participating shareholders, the four non-profit companies that were acting on behalf of the original four charities, are no longer treated as beneficiaries to receive dividends under the new arrangement?

MS MORAN: That's right, my Lord, yes.

SIR RICHARD FIELD: So, as you have mentioned, the current situation is that the sole recipient of charitable funding is DFW.

MS MORAN: That's right, my Lord. Would it be helpful to see a structure chart?

SIR RICHARD FIELD: No, it wouldn't. I just wanted to make sure that I have got it right --

MS MORAN: Yes.

SIR RICHARD FIELD: -- and give myself a small pat on the back. I at least got that from the documents. Thank you very much.

MS MORAN: That's right, my Lord. DFW is currently the sole beneficiary of the structure and the company and underlying charities have no further --

SIR RICHARD FIELD: That was the situation when



the Rule 11 Agreement was entered into?

MS MORAN: Sorry. That was the situation when what was entered into?

SIR RICHARD FIELD: The Rule 11 Agreement in Texas.

MS MORAN: Correct, my Lord, yes. That was the situation at the start of the liquidation proceedings in 2005.

So, my Lords, given that your Lordships are with me on there being a serious issue to be tried on appeal, I don't propose to go through the grounds in any detail. The only point I do just want to deal with briefly is the nature of the proprietary interest that we have. I think your Lordships are in agreement that we have a serious issue to be tried, that the company has a proprietary interest in the limited partnership interest itself and also either a proprietary interest or at least an interest capable of being protected in the underlying assets.

The nature of the company's proprietary right to the limited partnership interest is important here and it is important for the purposes of this application because it goes to the balance of convenience. When an applicant has

a proprietary right and is entitled to a proprietary injunction, the balance of convenience, as your Lordships know, favours the granting of that injunction, and that gives me a fair wind at my back, as it were.

I think the other point to reiterate here, my Lords, is prior to this DAF restructuring the company was the sole limited partner in the structure. It had all of the particular interests of the partnership. The company was the one initially that contributed the assets into the partnership and the company was the original owner of the $270 million worth of assets. It restructured that into the partnership in 2011 in order to set up the charitable structure. So it is not the case, as seems to be misunderstood by Justice Parker, that the company was effectively a shell and a pass—through vehicle. It actually contributed to the economic value in the first instance and in return got its partnership interest.

In these circumstances if the charities had been able to get to court seeking to appoint —— if the company had come to court on behalf of the charities prior to the DAF

17

restructuring as the sole limited partner with the economic interest in these circumstances trying to appoint liquidators, this would absolutely have been a situation where, as a limited partner, deference would have been given to their views, to their economic interests, and the liquidators would have been appointed on a just and equitable basis to control the structure. We would be squarely within Aquapoint territory and the line of authorities and directions coming out of the Adamas line of authorities and (inaudible), where the court below and this court is consistently finding that in the context of exempted limited partnerships, where you have a limited partner with the substantial economic interests, deference needs to be given to their views.

My Lords, it is unfortunate that I am in a worse situation now because the directors managed to effect the DAF restructuring before the (inaudible) company had come to court to prevent it. That's really what we are trying to remedy here, my Lords. The company as the sole limited partner having the economic interest in the structure has had its assets taken away from it.

So, my Lords, unless I can answer any more

18

questions on the merits of the substantive claim or the grounds of appeal, perhaps I will turn directly to the balance of convenience question.

PRESIDENT: Yes, please.

SIR RICHARD FIELD: I am so sorry. Could I ask you one further question? Imagine the situation where DFW before any other restructuring had occurred had been made a participating shareholder. Could that have been objected to by the other four participating shareholders?

MS MORAN: So ——

SIR RICHARD FIELD: There is a fifth charity entering the list.

MS MORAN: Yes.

SIR RICHARD FIELD: What's the answer to my question?

MS MORAN: That is actually what happened, my Lord. DFW was admitted as a fifth charity ——

SIR RICHARD FIELD: Yes.

MS MORAN: —— prior to the liquidation. Yes, my Lord, that is absolutely something that could have been objected to at the time and it is something that has been objected to now on the basis it was done for an improper purpose.

SIR RICHARD FIELD: I see what's said about that,

19

that it is to give a majority to DFW and so can be in a commanding position as amongst the other participating shareholders, but just continuing my line of questioning, before any of the restructuring we see DFW coming in as a participating shareholder. Would it have been within the —— I will use the word "remit" —— remit of this charitable structure to make donations only to DFW for a period of time in the belief that they needed some catching up?

MS MORAN: My Lord, I think that there are two questions here. DFW was admitted as a shareholder of the company and the company had duties —— the director of the company had duties to the company represented by the interests of the shareholders.

The first question would be was it in their interests to admit DFW, and in relation to the catch—up query and the dividends again I think the question would have been to the directors: is it in the best interests of all the charities to give a catch—up to DFW?

I think, my Lord, that is the analysis that would have had to have been done, but I think it is correct, my Lord, that there is a discretion for the directors to declare distribution other

20

than simply on a pro rata basis.
SIR RICHARD FIELD: That's what lies behind my question. So before the restructuring it could have been within the directors' discretion to have taken in DFW as a participating shareholder and to have marked time for a period so far as the other participating shareholders are concerned to allow DFW to catch up.
MS MORAN: Yes, my Lord. I think that would possibly have been permitted at least under the articles. At least under the articles I think that would have been permitted, my Lord, but, of course, that's not what happened here, and the result of what has happened is that the company -- the existing charities -- the four charities are no longer entitled to be considered for any distributions at all.
SIR RICHARD FIELD: Yes. I understand that. I understand that. I will come back to this when we start looking at Rule 11. I just wanted to clear up one or two things before we come that. So thank you. Do forgive me for interrupting you.
MS MORAN: Thank you, my Lord.
So, my Lord, turning to the balance of convenience on this application, I think, my

21

Lords, perhaps we could turn up the Rule 11 Agreement. So this is at page 195 of the company's appeal bundle.
JUSTICE BEATSON: 195 did you say --
MS MORAN: 195, my Lord, that's right.
JUSTICE BEATSON: -- because the electronic bundles have a slight slippage in the numbering.
MS MORAN: It shouldn't.
JUSTICE BEATSON: You are right. It is the ones from the Grand Court. So this is the letter from Duane Morris?
MS MORAN: That's right. Would it be helpful for me to give a brief explanation as to what proceedings are in Texas in terms of the (inaudible) supporting organisations rather than the liquidators?
PRESIDENT: I think it would be helpful for us to understand exactly what the position is.
MS MORAN: Certainly, my Lord. These proceedings were issued in Texas by three of the shareholders of the company, three of what we call the supporting organisations. The liquidators weren't aware that these proceedings were being brought and they are now a party to them.
The claims being made in Texas are

22

effectively the same claims that are being made here in this court. The supporting organisations are claiming that they are owed direct fiduciary duties by the directors and that therefore they are entitled to recover the assets themselves.
The court in Texas considered this question and at first instance in Texas decided that this didn't appear to be the case, that these were -- it seemed they were company claims and that the liquidators needed to be a party. They were not direct claims by the supporting organisations, they were derivative, and therefore stayed the proceedings.
The supporting organisations then sought an order of mandamus from the Supreme Court, seeking to overturn this decision, and the Supreme Court has just recently confirmed and upheld the decision of the court at first instance. So those proceedings in Texas are stayed unless the liquidators join as a party -- the company and the liquidators join as a party to advance the claims.
Now, my Lords, I should say that the Respondents who are in the Texas proceedings challenged jurisdiction in Texas initially. They said Texas was not the correct jurisdiction

23

and that the Cayman Islands were the correct jurisdiction. They consented to jurisdiction here. We didn't have to get permission for leave to serve out. They consented to jurisdiction. So all the parties were agreed Cayman Islands was the correct jurisdictional forum to resolve this dispute.
It is only since the supporting organisations got the favourable decision from Justice Parker that they are now saying we should be -- they are taking advantage of the fact that the Texas proceedings won't continue without our involvement, and they are saying that we should be now required to join into the Texas proceedings to benefit from the Rule 11 Agreement rather than them having to give any further undertakings in this court.
JUSTICE BEATSON: Forgive me. Can I just ask: the parties that submitted to the Cayman jurisdiction were the Texas Claimants did you say?
MS MORAN: The Texas Defendants.
JUSTICE BEATSON: Sorry. I am glad I asked you that.
MS MORAN: So the Defendants in Texas --
JUSTICE BEATSON: Who are the Respondents here.

24

MS MORAN: —— who are the Respondents here —— not all of the Respondents but the majority of the Respondents, yes.
JUSTICE BEATSON: I see. Okay.
MS MORAN: So, my Lords, perhaps I'll turn to the terms —— sorry. Just to explain the background to the Rule 11 Agreement, what happened in Texas was the supporting organisations were seeking a temporary restraining order —— their version of an injunction —— pending the hearing of the —— a temporary restraining order pending the hearing of their main application for TRO. Instead of granting a TRO the judge said these parties should enter into this Rule 11 Agreement, which was a more limited form of protection over the assets pending the hearing. So that's the genesis of the Rule 11 Agreement, which was entered into in July of last year.
So turning to the terms of the Rule 11 Agreement, let's look at the parties to it, because, of course, the primary point is the company is not a party to this agreement and cannot enforce it. It is not appropriate for the liquidators to go ahead and join the proceedings in Texas simply to get the perceived benefit of



this agreement in light of all parties agreeing to submit to the jurisdiction here and the liquidators having got sanction to commence the proceedings here.
In order to join proceedings in Texas we would, of course, have to go back to Justice Asif and ask for sanction to do so. It is not a simple thing. We can't simply go to Texas under the Rule 11 Agreement.
Looking then at the Respondent parties to the Rule 11 Agreement —— because I am going to take your Lordships through why the Rule 11 Agreement is more limited than the terms of the interim injunction and why it doesn't give us sufficient protection —— so the first point, my Lords, is that the parties to the Rule 11 Agreement, which your Lordships can see in the first paragraph on page 195, are Mark Patrick, DFW, CDM and CDH GP. That's the general partner of the partnership. So those are the parties to the Texas proceedings. They are the parties to the Rule 11 Agreement, but they also agree that the covered entities, which are the subsidiaries of the Corporate Defendant, will be bound by the terms of this agreement. Now the subsidiaries



aren't actually a party to this agreement, but rather Mark Patrick in his capacity as a manager or director is agreeing to procure they will be bound.
The first point of concern is that the term "covered entities" refers to the subsidiaries of the fund, DFW and CDM. It doesn't refer to subsidiaries and indirect subsidiaries, and the indirect subsidiaries are where the valuable portfolio companies are. So that's the first concern.
The second concern is that Mr Murphy is not a party to this agreement, and Mr Murphy, who is a Respondent in this case, is also a director of some of the subsidiaries of the covered entities. He is wrong in his evidence when he says that the entities to which he is a director are bound by the Rule 11 Agreement, because, as we have just seen, the subsidiaries are not a party. Rather it is a personal obligation on the directors to procure compliance.
So, my Lords, we need Mr Murphy and Mr Patrick to agree to procure that the subsidiaries will comply with the terms of any undertakings. So that is the second point.



The third point is that the Rule 11 Agreement —— if your Lordships go down the page to 196, at paragraph 7(b) the undertaking is:
"Not take any action to increase the compensation paid to any employee of the Covered Entities."
That's a restriction not to increase employee remuneration. It doesn't say anything about remuneration of directors.
JUSTICE BEATSON: That is 7(b), isn't it?
MS MORAN: 7(b).
JUDGE CHARMAN: I heard 7(a). No doubt that's a mishearing by me.
MS MORAN: 7(b). The Rule 11 Agreement does not prevent any increase in the compensation of directors' fees and remuneration, which is, of course, one of the things we are most concerned about in light of the tens of millions of dollars that are being paid out to the directors.
Fourthly, the Rule 11 Agreement is tied to the Texas proceedings and stands or falls depending on what happens in that jurisdiction. We need protection tied to the Cayman Islands, which is on an entirely different timetable.
My Lords, I know that Mr Patrick has

submitted evidence which tries to suggest that there is no risk of the Rule 11 Agreement falling away pending the appeal, but he doesn't deal anywhere in his evidence as to whether they could bring any challenges now to the Rule 11 Agreement in light of the order of the Supreme Court saying that the proceedings in Texas can't go ahead without the liquidators. If that was in this court, you could perhaps see an application for a strike-out for failure to prosecute and to advance the proceedings. They can't advance the proceedings in Texas without us, and Mr Patrick doesn't address that is at all.

Fifthly, the Rule 11 Agreement contains no disclosure orders, so the liquidators can't police the terms of the injunction with the undertakings. In the context of proprietary injunctions disclosure orders are even more important, because they go beyond really policing the injunction and are aimed at identifying the (inaudible) and location of assets owned by a Claimant. That's not covered by the Rule 11 Agreement.

Then as a final point, my Lord, it is also entirely unclear as to if legal fees are being paid in this structure. The Rule 11 Agreement



allows payments to continue to be made in the ordinary course of business. DFW in particular seems to be being paid their legal fees out of this structure. We have asked whether there is any indemnification or contractual rights to be paid these legal fees. As an ultimate shareholder in the structure we would not expect there to be any indemnification rights. The normal rule is where there is a dispute about ownership of a company the disputing shareholders are not allowed to be paid their legal fees out of the assets of that company. That is undoubtedly what is happening in this case. So we need the injunction to prevent that -- the main injunction to prevent that and the interim injunction which will give us oversight over the disclosure orders as to payments that are being made out.

The other point that I have already alluded to, my Lords, is this point about charitable payments can continue to be made to DFW under the Rule 11 Agreement. In the direct view of ordinary course of business that's entirely permissible. It has not been prevented by the Rule 11 Agreement as distributions can still be made to DFW. DFW can still pay them out of the



structure, and without the disclosure orders and our interim injunction we will have no visibility about these payments.

JUSTICE BEATSON: I just didn't hear you. Without the disclosure orders ...?

MS MORAN: Without the disclosure orders that we are seeking in our interim injunction we would have no visibility over those payments.

SIR RICHARD FIELD: So you accept, do you, that 7(a) does not prohibit the making of donations to DFW?

MS MORAN: I think, my Lord, 7(a) permits the use of the asset in the ordinary course of the business and we know that the directors' position is that making distributions to DFW is entirely in the ordinary course of business and that DFW's view of the world is that in the ordinary course of business they are entitled to make charitable donations.

SIR RICHARD FIELD: Right. Sorry. I put the question the wrong way round. Under 7(a) donations could be made to DFW on the basis this was the ordinary course of business?

MS MORAN: That's right, my Lord. This is why we want the main injunction, because we say that's



not the ordinary course of business and it shouldn't be permitted.

SIR RICHARD FIELD: Is there any evidence as to what has been transferred in favour of DFW by way of charitable donation since the restructuring?

MS MORAN: Yes, my Lord. I think there's about 500,000 in donations has been paid out, my Lord. I will pull up the evidence reference for you now. It is in the third MacInnis affidavit I believe.

While we are looking for that reference, DFW has continued to make charitable donations to a variety of different charities since the DAF restructuring.

SIR RICHARD FIELD: Well, I would be interested to know -- you don't need to deal with this right away -- maybe a member of your team can deal with it -- what the last donation to DFW for charitable purposes was and the date that it was last received, a distribution from the directors. Please don't -- that may take some time to find. I am sure one of your team can do that and come back to the court.

JUSTICE BEATSON: Could I just add a footnote to that question: to break down the recipients of these as between the original four charities and

other charitable bodies, ie charitable bodies that were not within the original package.
MS MORAN: Yes, my Lord. The original charities have received no donations from DFW since the restructuring.
JUSTICE BEATSON: Right. None at all?
MS MORAN: None at all. I can confirm that. There is a table in the evidence which has the list of donations and we will find that.
JUSTICE BEATSON: You will be much more familiar with its location than me.
MS MORAN: Thank you, my Lord. Clearly not familiar enough, my Lord, but hopefully somebody sitting beside me will be able to put their hands on it.
JUSTICE BEATSON: Absolutely.
MS MORAN: My Lord, those are my primary submissions on the Rule 11 Agreement as to why that's not sufficient.

In terms of the difference between the Rule 11 Agreement and the interim undertakings that we are seeking the main difference is really the disclosure orders. The terms in respect of how the Respondents are entitled to operate the business mirror the terms of the Rule 11

33

Agreement. I have just explained to your Lordships why it is important we have those disclosure orders.

Unless your Lordships have any more questions on the Rule 11 Agreement what I might turn to is the risk of prejudice that would be suffered by us without this interim injunction.
SIR RICHARD FIELD: One last question. Sorry. I am looking at the Notice of Appeal and I am looking at paragraph 2.1, and what is sought is that:

"... the Defendants will:

"Preserve and will not in any way dispose of, deal with, encumber, transfer or diminish any assets in their possession or control, whether they are in or outside the Cayman Islands, which were, are or may be received (whether directly or indirectly):

"By way of distribution ..."

And so on.

"... and/or their wholly-owned subsidiaries."

Now, that remains part of the order you seek. Is that right?
MS MORAN: That's the main injunction. That

34

remains part of the main injunction. The interim injunction is at page 173 of the appeal bundle.
JUSTICE BEATSON: I am sorry to be really boring, but, as I said to you, I don't have -- the paginated thing is not helpful. I will try 173, but ...
MS MORAN: In the appeal bundle if your Lordship is looking at the electronic bundle it is 173 of the pdf.
JUSTICE BEATSON: 173 of the pdf starts "Summons".
MS MORAN: That's right. That's the summons that is before us today for --
JUSTICE BEATSON: That's right.
MS MORAN: Your Lordships will see at paragraph 1 these are the terms which mirror the Rule 11 Agreement in terms of how the Respondents deal with the assets of the fund.
JUSTICE BEATSON: Yes. Is that what you call the main injunction?
MS MORAN: That is the interim injunction, my Lord.
JUSTICE BEATSON: That's the interim injunction. Right.
MS MORAN: That's the interim. We have a surplus of injunctions and yet not one --

35

JUSTICE BEATSON: At least you don't give them all the same names like the various corporate entities in this case. Yes. Okay. So that is the interim injunction and paragraph 1.1(c) of your Notice of Appeal was the -- you call it the main injunction. Do you mean that was the order that was in place until the judgment?
MS MORAN: No, my Lord. That is the injunction that Justice Parker refused. That's the subject of the appeal.
JUSTICE BEATSON: Oh, I see. So the main injunction -- it is actually the main application -- it is what you wanted.
MS MORAN: It is what I wanted, yes -- what I still want, my Lord.
JUSTICE BEATSON: Well, there we go. Thank you.
MS MORAN: I hope that's a bit clearer. Paragraph 1 of the interim injunction reflects what is in the Rule 11 Agreement in terms of how the Respondent can manage the business, and then paragraph 2 is an additional paragraph which is not contained in the Rule 11 Agreement. That's really simply for the "avoidance of doubt" paragraph that they cannot deal with the limited partnership interest, but I don't think that

36

changes the substance of the Rule 11 Agreement, which makes that clear in any event.

Then paragraphs 3, 4 and 5 contains the disclosure orders which are not part of the Rule 11 Agreement, but, as I have said, our submission is the disclosure orders are necessary to protect us in light of the payments that can be made and in light of the fact that our interest is proprietary in nature, and it follows that disclosure orders should be made in support.

So, my Lords, just moving on from the Rule 11 Agreement, I think I have two additional points to make -- three additional points to make as to why the balance of convenience favours us on the interim injunction.

The first is that damages are not an adequate remedy for us. If they pay away the assets and we try to be compensated in damages, we will be compensated out of the very structure that we claim to own and that is not a true compensation when your interest is proprietary.

Secondly, my Lord, the Respondents don't appear to have any significant assets other than what's in the DAF structure. So if they improperly deplete or transfer away the assets,



then the company will be left without redress. So damages aren't an adequate remedy for us, particularly if in circumstances where DFW makes multiple charitable donations to different parties, as it has been doing, it is going to be impossible to get that money back.

So in those circumstances where damages aren't an adequate remedy it is entirely appropriate for the court to grant us the injunction on an interim basis for a short period of time pending the appeal.

JUSTICE BEATSON: What happens if there is a long time until the appeal? I mean, when I first read the papers, I thought the special sitting had already been arranged it was presented so presently, but I now understand that you haven't -- you are nowhere near arranging a special hearing.

MS MORAN: We had actually applied for -- we had applied for --

JUSTICE BEATSON: But that's like applying for an injunction. You sometimes get the injunction you seek and you sometimes don't.

MS MORAN: My Lord, what happened was we applied for a special sitting and we were told that the



court would grant the special sitting. We had asked for this application to be dealt with on the papers, and when the Respondents objected to that, the court agreed to hear this application on an oral basis, which has resulted in us being before your Lordships today, but my understanding is the Court of Appeal has agreed to grant a special sitting for the main appeal. Certainly that was the original position.

PRESIDENT: Just so it is quite clear, the court has in principle decided there will be a special sitting. The question is arranging it, because this is not the only application for a special sitting, I have to say, which the court currently has. We have a number of special sittings which are quite lengthy special sittings already. So that is the reality of the position.

JUSTICE BEATSON: That's why I raised the point.

So I think you need to have your submissions tailored to a situation where you will get your special sitting, but it may not be as soon as you want it or as soon as the court would like to give it in an ideal world.

PRESIDENT: That's fair.

MS MORAN: Thank you, my Lord. If there is going



to be a long gap, then the disclosure orders become even more important, my Lord, because the longer the Respondents are able to operate the structure, the more payments are going to be made. We need to be able to track those, my Lord. We need to be able to track those in real time, because if we start to see significant donations, for example, being paid out of the structure or significant amounts of remuneration being paid to the directors, which, as I said, is not covered by the Rule 11 Agreement, we may need to come back to the court for urgent relief. At the very least we will know where those funds have gone.

My Lords, I now have the reference for the table of donations by DFW. I think it is worth having a look at them, my Lord. This is at the Grand Court bundle B. Apologies to my Lord Beatson for descending into the Grand Court bundles, but hopefully your Lordship can see that there. Grand Court bundle B at page 4728 of the pdf.

JUSTICE BEATSON: Right. Could you please say the number again?

MS MORAN: 4728.

JUSTICE BEATSON: Thank you very much. Of 6894?

MS MORAN: Yes.
JUSTICE BEATSON: Right. Thank you very much. Headed "Santa Barbara Foundation"?
MS MORAN: It is headed "DFW Charitable Foundation".
JUSTICE BEATSON: Well, 728 is headed ‑‑
MS MORAN: Sorry, my Lord. 4728.
JUSTICE BEATSON: Ah! There you go. That's no doubt my hearing again. 4728. Right. I have got that.
MS MORAN: Headed "DFW Charitable Foundation". Your Lordship can see these are US dates. From 11th July 2025 we see various small donations to multiple charities being made out by DFW. This table goes up to 28th August 2025. I don't think we have information going beyond that date, but one can see these are continuing.
So, my Lords, as your Lordships can see from this table, notwithstanding the terms of the Rule 11 Agreement, they are continuing to make these donations, because they consider this to be ordinary course of business. Not one of those donations has gone to our charities. They have gone to multiple different charities at the decision of DFW, and it would be absolutely



impossible to recover those donations.
JUSTICE BEATSON: You mean that one of them has gone to the original ‑‑ the original charities? You are the JOLs.
MS MORAN: Sorry. The original charities, my Lord, yes. Your Lordship will probably ‑‑
JUSTICE BEATSON: So everything is appropriated in this way. Okay. Thank you.
MS MORAN: So, my Lords, to your point about there being a risk between this hearing and the date of the special sitting for the appeal, I think this really illustrates why we need the disclosure orders if the fund is going to be entitled to operate in the ordinary course of business.
The other point, my Lord, in respect of sort of the balance of the prejudices, the Respondents are already operating the business under the terms of the Rule 11 Agreement, so there can be no additional prejudice to them in operating the business in accordance with the same terms under the interim undertakings, and rather, you know, what they are saying is that they don't want to give disclosure. They don't want to give the disclosure orders. These orders aren't onerous. They reflect what was agreed by the



Defendants in the consent orders and the orders seek financial information that should be readily available. In circumstances where a company has a proprietary interest, as I said, disclosure orders should follow as a matter of course.
If your Lordships would like to briefly look at the disclosure orders that we are seeking, this is at page 175 of the appeal bundle ‑‑
JUSTICE BEATSON: Right.
MS MORAN: ‑‑ paragraph 3. They need to give advance notice of any payment above $50,000. That was a limit agreed to by the Respondents, so clearly they thought that this was workable.
Paragraph 4 gives the liquidators the right to raise any queries about any transactions.
JUSTICE BEATSON: Do you have any observation ‑‑ don't answer this now, but in due course. What is said against you is the disclosures caused prejudice because of what is described as collateral use of the Cayman proceedings by entities controlled by Mr Dondero using the interim undertakings. Don't deal with it now. Don't let me take you out of your way, but it is linked with the point you are making.
MS MORAN: Thank you, my Lord.



I am happy to deal with it now, my Lord. I think I have already addressed the point at the outset about the falsity of the allegation the assets are controlled by Dondero, but paragraph 5 contains an express confirmation that the company and the liquidators won't disclose any information provided by the disclosure orders to Mr Dondero or any entities affiliated with him. Your Lordships can see that on page 176.
JUSTICE BEATSON: Right.
MS MORAN: Paragraph 5 also contains the reporting obligations. So the entities each month will need to give us a full listing of any payments undertaking below 50,000 and then the balance sheet and financial statements prepared on a monthly basis.
So this is information that should be easily and readily available if the fund is being operated correctly and, as I said, those are undertakings that they agreed to previously, so clearly are capable of being complied with without too much difficulty.
Finally, my Lords, I would say that no fortification or cross‑undertaking should be required for the interim injunction. None was

sought by the Respondents in respect of the consent undertakings, which were in place for over six months, and no new evidence has been put forward as to why it should be required now. Obviously there is no cross—undertaking as to damages in the Rule 11 Agreement.

My Lord, unless I can help your Lordships any further, I think those are my submissions on the interim injunction.

PRESIDENT: Do you have anything to say about the cross—undertaking in relation to damages, Ms Moran?

MS MORAN: Yes. Apologies if perhaps you didn't hear my last submissions.

JUSTICE BEATSON: You went blurry on that.

MS MORAN: It happens after an hour and fifteen minutes on my feet, my Lord.

JUSTICE BEATSON: No, no, I think it is an electronic blurriness.

MS MORAN: My Lord, my submissions in relation to the cross—undertaking, I said one should not be required. When the consent undertakings were put in place last July, no cross—undertaking or fortification was requested in respect of those undertakings. They were in place for over



six months and no request was made. No new evidence has been put forward as to why it should be required now, and obviously there is no cross—undertaking in damages in place in respect of the Rule 11 Agreement either.

PRESIDENT: Yes. Thank you.

MS MORAN: My Lords, if there is nothing further, I will pass it over to the Respondents.

PRESIDENT: Thank you.

Mr Scott, I think.

Submissions by MR SCOTT

MR SCOTT: My Lord, yes.

We oppose this interim relief application on five grounds, any one of which would be sufficient to justify its dismissal.

My Lords, let me summarise each of them and then I will develop each of them in turn, if I may.

The first is the JOLs unjustified and unjustifiable failure to apply to the judge. We respectfully submit that is a complete answer to this application. It is an application ——

PRESIDENT: You don't submit that we don't have discretion if we think it in the interests of justice to exercise?



MR SCOTT: Not at all, my Lord. I accept, of course, that the court has discretion. It is for the JOLs to persuade you to exercise it against the backdrop of their unjustified breach of the rules, and my submission to this court is there is simply no basis upon which that discretion can properly be exercised here.

So that is the first objection.

The second is that, even if the court were prepared to grant the JOLs the indulgence, their interim relief application is advanced on the basis that there is a risk of unjustified asset dissipation. But there is no such risk. There is simply no evidence of it, the undisputed facts contradict it, and the historic and contested matters upon which the JOLs rely, relating to the restructuring, do not come close to making it out, and I will develop that.

Our third objection is that even if this court thought there were otherwise a risk of unjustified asset dissipation, it is adequately protected against by the Rule 11 Agreement in Texas, which will remain in place for the foreseeable future, with which my clients continue to comply, as they have confirmed in their sworn



evidence to this court earlier this week.

I will address in that context why the JOLs' requests for parallel undertakings in this jurisdiction are both unnecessary and unjustified, particularly where the prior undertakings that we have given or offered in this jurisdiction have, I'm afraid to say, been misrepresented by the JOLs and, even worse, misused for collateral purposes by their funder, Mr Dondero.

My Lords, fourth, any theoretical risk of asset dissipation in this case is outweighed by the real prejudice to which my clients would be exposed if the interim relief sought were granted.

That's not just the prejudice that any freezing injunction imposes upon entities who are carrying on a business. It is not just the risk of prejudice in the form of further improper manoeuvres by Mr Dondero, but it's also the prejudice cost of continuing to give the unnecessary disclosure that the JOLs seek.

Fifth, even if the court were against me on each of the foregoing points, the absence of a cross—undertaking in damages, let alone a properly fortified one, is of itself a sufficient reason to dismiss the interim relief

application. There is no reason why the JOLs should not pay the usual price for seeking draconian relief of this kind, and indeed there is every reason why they should.

My Lords, can I turn then to the first ground of objection, the JOLs' unjustifiable failure to apply to the judge in the first instance. The JOLs have thereby breached Rule 21(4) of the Court of Appeal rules, assumed to which, and I quote:

"Wherever, under the Act or these Rules, an application may be made either to the court below or to this Court, it shall be made in the first instance to the court below." (As read)

And I don't ask you to turn it up, but you have that rule in our authorities bundle, behind tab 2, page 4.

The Rule is cast in mandatory terms, as the word "shall" makes clear, and there is no doubt that the JOLs could have made their application to the judge.

My learned friend, Ms Moran, in her oral submissions sought to suggest otherwise. With respect to her, she was fundamentally wrong.

JUSTICE BEATSON: She didn't suggest —— she did not answer the question first.

MR SCOTT: Indeed.

JUSTICE BEATSON: But she did accept from the President that she thought —— having lost on every point, when they were seeking an injunction —— that it was —— she gave a reason for it. You may say that's not a good reason, but she gave a reason.

MR SCOTT: Indeed she did, my Lord. I will deal with that reason. I had understood her submission to be that it would not have been possible to apply to the judge, because he would not have had the jurisdiction to grant the relief that they seek, having dismissed the application. But if I have misunderstood, then I apologise.

What we do say is this. The submission that it would have been impossible or difficult to apply to the judge is flatly contradicted by the JOLs' own correspondence to the judge after the draft judgment was circulated.

If I can ask your Lordships, please, to take up our skeleton argument at this point for today's hearing, and please turn to paragraph 10, we quote there, at paragraph (b), from a letter that my learned friend's firm, Maples, sent to the judge on 3 February, a few days after his draft judgment had been circulated.

JUSTICE BEATSON: You quote the letter —— I want to clarify something, if I may.

You quote the letter and you give us a reference where we can find the letter, I think it is in one of the exhibits, but what you put in the exhibit is not the letter to the judge, but it is the letter to your opponents, which does refer to the letter to the judge. So this may just be —— this just may be a mistake or something or —— but I could not find it and I —— you refer to something and you say it is exhibited, but it is not. This was not a capital offence, Mr Scott.

MR SCOTT: I am certainly grateful for that my Lord. I apologise if it has not found its way into the bundle.

JUSTICE BEATSON: Perhaps somebody put the wrong letter in. It is the same date.

MR SCOTT: Perhaps while I am on my feet ——

JUSTICE BEATSON: As it were, virtually.

MR SCOTT: Virtually, indeed I have sat down. But perhaps my team might take steps either to give me a correct reference or to remedy it.

As your Lordship sees from the passages quoted in the skeleton, what the company was saying to the judge on 3 February is that they intended to make their application to him. And it was necessary for us to set out the terms of this letter in our skeleton because the JOLs had failed to tell this court about it at all.

They had also failed to tell this court that when the judge directed us to respond to the Maples' letter, we did so on 5 February, explaining that the application would be opposed.

The JOLs did not thereafter apply to the judge, whether promptly, as had been represented in Maples' 3 February letter, or at all. Nor did the JOLs tell the judge, or us, that they had decided instead to apply to this court, as they eventually did on 3 March. Of course, by that stage, a full month had passed since the intended application was first mentioned in Maples' letter, and where the JOLs had known since the end of January that they had comprehensively lost and that the interim undertakings we had given in July last year would fall away upon the judgment being handed down.

Now, I will address in due course the implications of that delay for the JOLs'

suggestions to this court that there is a real risk of unjustified asset dissipation here. The JOLs' conduct is, we say, one of several examples that contradicts the existence of any such risk.

What I want to focus on at this stage are the implications of the JOLs decision not to proceed with their application before the judge when it comes to evaluating the application that is now before your Lordships. Because the upshot is that the judge who was steeped in the detail of this case, who heard argument over two full days, had considered many hundreds, if not thousands, of pages of evidence and submissions, and who had delivered a 56—page reserve judgment, that judge has been deprived of the opportunity to express his view either on whether the appeal has any merit or whether interim relief in support of it is just and convenient.

We suggest that by requiring applications to be brought first to the lower courts, as Rule 21(4) does, there is a recognition that the lower court will usually be best placed to determine applications such as these, and that this court usually benefits from their determinations if it is called upon to look at the



matter again.

The JOLs have deprived the court of those benefits. No explanation was offered in their skeleton or in Ms MacInnis' affidavit in support of the application to your Lordships. But, with respect, the explanation is obvious. It is a pure and simple example of judge shopping. The JOLs no doubt hope to improve their chances by by—passing the judge steeped in the detail of the case and proceeding to this court, which has had no prior involvement with it.

To make matters worse, they then attempted to persuade this court to decide the matter on the papers, a process that was obviously inappropriate, obviously unfair; and we are very grateful to this court for refusing entertain it.

As I said at the outset, I don't press the submission that the JOLs' breach of the rule deprives this court of jurisdiction to determine the application, but they do need you to indulge them in their breach of the rules. And we respectfully submit that judge shopping is not a good reason for that indulgence.

If you accept that submission, that is the end of this interim relief application.



Can I turn next to say a few words about the merits? I do so mindful of the President's indication at the outset that the court would have been minded to grant leave to appeal, had it been necessary to seek it.

It will not surprise the court, I apprehend, that my clients fundamentally disagree with the vast majority of Ms Moran's presentation of the background to this matter and as to its merits.

Can I make three initial observations in this regard? The first is that the company has no ownership, whether legal or beneficial, in the assets of the fund. It has no pleaded case to ownership of those assets, and there could be no case to ownership of those assets, as the judge correctly found in his judgment.

So, the repeated references in my learned friend's submission to these being assets which are "ours", to use her words, is simply wrong. That's the first point.

The second is that my learned friend was fundamentally wrong to suggest that the company has any economic interest in this structure. Contrary to the submission she falsely made to



your Lordships, the company contributed no capital whatsoever to this structure. It has never received any benefit from it by way of distributions. All of the distributions have gone through the company as a conduit, as it was intended under the partnership agreement and the articles of the company, to the benefit of the four charities that sat above it.

Third, my learned friend was, I'm afraid to say, fundamentally wrong to suggest that distributions to DWF are in the nature of unjustified asset dissipation. The partnership agreement, the ARLPA, to which the judge refers expensively in his judgment, expressly contemplated the possibility of introducing new limited partners and removing existing limited partners. The only constraint upon that was that if a new limited partner was to be introduced, it had to be owned by a qualifying charity. That's exactly what happened when DWF was introduced into the structure.

If I can answer Justice of Appeal Field's question as to whether there could have been any objection to the introduction of DWF as a charitable beneficiary of this structure, the

answer is there could have been no objection whatsoever. That is the deal that all the participating entities in this structure made.

That is among the matters correctly recognised in the judgment, and I don't understand there to be any dispute about upon appeal, that the deal made upon entry to the structure was one whereby the participating shareholders in the company and the charitable entities that sat above it would receive very limited rights indeed. Indeed, a number of charitable entities were offered the possibility of participating in the fund and they declined to do so exactly because of the limited nature of the rights that were available.

If I can also attempt to assist Justice of Appeal Field's question as to the extent to which DFW has benefited, it has benefitted in amounts that are commensurate to the sums paid to the four charities before the restructuring.

JUSTICE BEATSON: Could you say that again. I just lost you.

MR SCOTT: I am so sorry, my Lord.

DFW has benefitted from charitable distributions in amounts commensurate to the



amount that were previously distributed to the four charities in place prior to the restructuring. I think the last distribution, or certainly the last that is referenced in the evidence, is a distribution of around 100,000 to fix a church roof in Texas.

If I can just show you some of the evidence on this from below, we have it in our bundle, that's the respondents' bundle, at page 549, please.

JUSTICE BEATSON: A paginated bundle, Mr Scott, arrived during the submissions by the applicants. I am not complaining, but I think you ought to know, this is a most amazing -- we all go electronic, because it is also good, but actually it is all much more difficult.

Now, whereabouts? What I have is -- I have not managed -- I decided to listen to the submissions rather than downloading the thing. So I have the first affidavit of Mr Patrick, I have the affidavit of Mr Murphy, and I have the exhibits to the two of them. Is it anywhere there or where would I find it?

MR SCOTT: I believe that is the right document, my Lord.



JUSTICE BEATSON: Which document? I have five documents.

MR SCOTT: I am in the exhibit to Mr Patrick's affidavit, and it is page 549 of the bundle.

JUSTICE BEATSON: The exhibit to Mr Patrick's affidavit only has 347 pages in it. I don't have the bundle yet. I will no doubt have it after the hearing. So can you just --

MR SCOTT: Does your Lordship have a bundle which, on its title page, says "Respondents' bundle for hearing on 27th March 2026"?

JUSTICE BEATSON: Do you know, that's the one that arrived while I was listening to your opponent's submissions.

MR SCOTT: I see.

JUSTICE BEATSON: What I have got is what I cobbled together, which I just told you about. Why don't you just tell me. I have an index to MEP1. Why don't you tell me where that's going to be there.

MR SCOTT: If your Lordship will give me a moment, I will endeavour to --

JUSTICE BEATSON: I really don't want to be difficult. I mean, it is your guys' job to get this stuff to us.



MR SCOTT: I understand. In our defence --

JUSTICE BEATSON: All sorts of things. I am not complaining. Let's find where we are.

MR SCOTT: We have had to do this in a very considerable rush because of the irregular process that the JOLs followed.

JUSTICE BEATSON: Well, not in as much rush as the court, and the court is trying to be very user-friendly to both parties.

So whereabouts in this? I have -- the index to the exhibits has 99 items in it. Which item is it?

MR SCOTT: Does your Lordship have the -- I am sorry, I am having to do this I think --

JUSTICE BEATSON: Is there nobody in your team who can help you?

MR SCOTT: There is no-one with me here, because I am sat in London and my team is in Cayman.

The document I want your Lordship to look at is the third affidavit of Mark Eric Patrick, which should be in the exhibits.

JUSTICE BEATSON: Yes, so I have the third affidavit. It is that affidavit you want which starts at page 122 of the bundle that I have got. This is the bundle, actually, where there is

a dissonance between the -- yes, okay. So, I now have the third affidavit. What paragraph do you want me to go to?

MR SCOTT: It is paragraphs 46 and 47.

JUSTICE BEATSON: 46 and 47, right.

Starting:

"Between 11th July ..."

Is that right?

MR SCOTT: That's the passages.

Can I ask your Lordship, please, to read those passages which were the latest evidence below on the amount of distributions to DWF.

I misspoke earlier when I said the donation to the church was $100,000; it is $157,120.50.

Making distributions on that scale is the ordinary business of this fund. It has been the ordinary business so far as DWF is concerned since the restructuring, and it was the ordinary business of the fund in relation to the four charities prior to the restructuring.

It is fundamentally wrong to suggest to this court, as my learned friend did, that making distributions of this kind is somehow outside the ordinary course of business. It is the absolute



core of this fund's business: the business of making charitable distributions to the needy, such as the entities mentioned in these paragraphs.

JUSTICE BEATSON: So you are really looking at paragraphs 46 to 48, is what you draw to our attention?

MR SCOTT: I am very happy for you to read 48 as well.

JUSTICE BEATSON: Well, I just want to get the end point. Thank you.

Can I ask you, having stopped you, I'm sorry to say, but you said in your earlier submission that it was wrong to say that there was funding from your opponents -- I mean, not the JOLs, but the people behind them. So who did fund? Where did the money come from to make all these lovely charitable donations?

MR SCOTT: It came from a trust, as I understand it, behind which, ultimately, sat Mr Dondero.

JUSTICE BEATSON: That's the 2011 arrangement?

MR SCOTT: As I understand it, yes, my Lord.

JUSTICE BEATSON: Yes. So it came from -- I will call it the Dondero side of things.

MR SCOTT: Yes.

JUSTICE BEATSON: And this is -- like a



consequence of after a hostile takeover?

MR SCOTT: Indeed. It came from the Dondero side of things to benefit charities under a structure which only worked for tax purposes if the benefitted entities were not under his control.

My client's perspective, Mr Patrick's perspective, upon taking over the fund is that, contrary to the very premise on which it was built, the four charities were very much under Mr Dondero's control. And as a consequence, the fund's purpose was compromised, and, what is more, it was exposed to very substantial litigation risk, the litigation risk arising because Mr Dondero is a serial vexatious litigant.

Those are not my words, they are the words of the US bankruptcy judge that has been dealing with litigation involving him for more than a decade.

The litigation risk to which the fund was exposed is illustrated by the claims which UBS brought against CLO Holdco, the sixth Respondent and the principal asset-holding vehicle, seeking to assert more than $1 billion worth of liability against it on the basis that it was the alter ego for Mr Dondero, who owes an unpaid judgment to UBS



in that amount.

The purpose of the restructuring -- and the judge found there were serious arguments here that would need to be tried -- was to protect the fund from the risks that Mr Dondero posed to it.

The judge recognised that the allegations being made on either side in relation to the restructuring were not capable of summary determination. They raised serious issues for trial and they will need to be a tried. But this is not a case, as, for example, some Mareva injunction cases are, in which no defence to the allegations of wrongdoing is put forward, nor is it a case in which the defence put forward is a shadowy one. It is a case in which there is serious arguments on both sides.

I will come back to that point later in my submissions when I address the alleged risk of unjustified asset dissipation, because ultimately what the JOLs' submission amounts to is an assertion that their allegations are correct, but those allegations are hotly disputed and there will need to be a trial to resolve them.

My Lords, before I leave the merits, can I make a number of overarching submissions to

frame the nature of the appeal in this case? That's relevant to your assessment of whether to grant interim injunctive relief, because one of the things that you can properly take account of, and in my submission should take account of, is whether this appeal is likely to succeed.

The fact that leave would have been granted for it, had it been necessary, by no means suggests that this is going to be a successful appeal. That's a relevant consideration when it comes to the balance of hardship.

The first overarching submission I make is the need to be crystal clear about what the judge's decision under appeal was. It was a decision to dismiss the injunction that the JOLs moved for, by which they sought, and only sought, the most wide-ranging proprietary injunction in relation to the fund and all of its underlying assets, and without any exception whereby to permit dealings in the ordinary course.

The judge was not concerned with an application for other relief, because no such application was ever made to him. The JOLs did not apply for a Mareva injunction, no doubt because they recognised that they could not show



the requisite real risk of unjustified asset dissipation, and no doubt because of their determination to obtain interim relief which would instead prevent the fund from continuing its ordinary business, and instead vest the control of their business in them.

Nor did the JOLs apply, even on an alternative basis, for a lesser form of proprietary injunction confined to the three specific assets which were the subject matter of their pleaded proprietary claims. And they are: the limited partner interest that the company formerly held; the participating shares that are now held by DFW; and the membership interest which DFW also holds in CDM, which is an entity which has been inserted into the structure.

Those three assets are the full extent of the JOLs' pleaded proprietary claims in relation to the restructuring. There is no pleaded proprietary claim to the underlying assets of the fund.

One of the submissions which I made to the judge, which he accepted, and which I will be repeating on appeal, if I am instructed, is that the absence of a claim, proprietary claim, to the



underlying assets of the fund is simply fatal to the injunction that the JOLs sought.

If I can ask you, please, to turn up the company's bundle at page 62. I want to show you some passages from the judgment below, where the judge correctly identify the issue that he had to resolve.

To give the court it bearings, by this stage in his judgment the judge had set out the relevant background, the submissions made and the relevant law, as to which there was no dispute, and the judge then sets out his decision.

As your Lordship sees from the heading, the first issue was, quoting from the unbolded italics:

"Is there a serious issue to be tried that the Company has a proprietary interest in the asset(s) over which an injunction is sought to be imposed?"

The judge ——

SIR RICHARD FIELD: I am so sorry, Mr Scott. Can you give me the paragraph of the judgment.

MR SCOTT: I can. It is paragraph 130, and I was quoting from the title.

SIR RICHARD FIELD: That's fine. Thank you very



much.

MR SCOTT: As your Lordships see from paragraph 130 itself, the judge more precisely formulates the issue this way and I quote:

"The Court has carefully considered whether the Company, as a limited partner in the Fund, has a proprietary interest as a limited partner which would entitle it to be protected by way of the injunction sought and/or an indirect beneficial interest in the assets of the Fund."

He answered that question in the negative, because he concluded that the company never had and, if it acquired a limited partnership interest again, never would have beneficial ownership of the assets of the fund.

As you will see in the passages that follow in this section, that was a conclusion which he reached both having regard to general and established principles of Cayman law in relation to exempted limited liability partnerships, and moreover, it was a conclusion that he reached having regard to the very particular and, in my experience, unique features of this fund as a structure which exists to serve charitable purposes.

As your Lordships look through grounds of appeal, we would invite you to ask which of those grounds impugn the judge's core conclusion that the JOLs had no beneficial ownership interest in the assets of the fund; and the vast majority of them do not. Grounds 1, 2, 5, 7 and 6 have no bearing at all upon that core conclusion.

What is more, and this is the second overarching submission I make on the merits, is that even if the JOLs were able, on appeal, to challenge the judge's core conclusion that they had no beneficial interest in the assets of the fund, that would not make for a viable appeal. That is so because the judge would in any event have declined to make the injunction sought, based upon his discretionary assessment of where the balance of convenience lay in the presence case.

If I can ask you, please, to turn ahead in his judgment to page 79 in the bundle. The judge deals with balance of convenience from paragraph 239. He there says this:

"Had the Court been persuaded that there was a serious interest to be tried in relation to the proprietary interest of the Company and there was a legitimate juridical basis to grant



a proprietary injunction, it would not have granted the injunction against any of the Defendants because it is not persuaded that there is a real risk that the assets are in danger."

As your Lordships see, that is a conclusion reached independently from the judge's prior conclusions on serious issue to be tried. It is a conclusion which he reached based on his assessment of the facts and the evidence, which was a matter for him in the exercise of his discretion, and which can only be challenged and appeal if it can be showed he abused that discretion.

Your Lordships see from paragraph 240—242 the factors of which the judge took account on the question whether assets were in danger, and at the heart of it is paragraph 240, where he says this:

"There is no good reason to believe that the relevant assets will be adversely dealt with given the evidence that the Court has considered on this application, and following the undertakings in July 2025 and suggested in November 2025, as well as the Texas Rule 11 Agreement."

As the judge said, he had had regard to



all the evidence relied upon below. In the time available, it is simply not possible for me to take this court through it, but just to give you a flavour of it, the evidence included the vehement and reasoned denials by Mr Patrick and Mr Murphy in their affidavits that they had done anything wrong whatsoever in restructuring the fund, which was something they did on legal and professional advice and because they believed it to be necessary to combat Mr Dondero's predations and the risks that they posed to the fund.

The evidence also included the fact that in the Texas proceedings bought by Mr Dondero's Highland foundations against my client, the Texas judge, having considered the record, was not persuaded there was any risk of asset dissipation following the restructuring.

The judge also took into account —— Justice Parker —— the Rule 11 Agreement that had been entered into in the Texas proceedings, whereby my clients committed not to alter the fund structure or its governance, not to engage in any dealings outside the ordinary course of business, and not to increase the remuneration that is being paid by any of the covered entities as referred to



in that agreement, which includes the fund and all of its subsidiaries and obviously includes my client, Mr Patrick, as one of the directors, and Mr Murphy too.

The judge also took account, as you see, of the fact that my clients offered the interim undertakings in July of last year. It is important to be clear about the circumstances in which they did so. They were bounced into a hearing on the last day of term with around two weeks to prepare for what was, on any view, a very heavy injunction application. They had no choice in those circumstances but to give interim undertakings to cover the period down to an effective hearing of the injunction summons on proper notice. And that is what took place in December last year over two days.

The judge also took account, as you see from paragraph 240, of the undertakings that my clients offered in November 2025 in a pragmatic effort to avoid the need for a contested hearing.

Now, those undertakings were refused by the JOLs, because they contained an exception for continued dealings in the ordinary course of business, and because the JOLs were determined to

press on for the wider restraints that the judge concluded were unjustified.

The evidence also includes the fact that, despite the voluminous disclosure that has been given pursuant to the interim undertakings over that six months or so, which includes information about historic transactions going back prior to the JOLs' appointment, they have been unable to establish a single instance in which assets have been dealt with outside the ordinary course of business.

The judge gave an additional reason on balance of convenience which is also of relevance to your Lordship's assessment of the present application. Those were the reasons given at 243 down to 245 under the heading "Lock Down and Transference of Control to JOLs". The judge said this at paragraph 243:

"The balance of convenience would also come down firmly in favour of the Defendants because the effect of the relief if granted would be to lockdown the charitable activities of the Fund and place it under the control of the JOLs, which the Court regards as unjustified at this interlocutory stage."



So, even if the company had a viable proprietary claim, which is the premise upon which the balance of convenience is being considered here, it was not an interest that would entitle the company to control the fund, and the judge rightly recognised this.

The judge was also entitled, as he did, at paragraph 244, that:

"The Court is not persuaded that the carve outs for specific projects proposed by the JOLs remedy the issue."

They did not remedy the issue, because what those carve-outs would have done would have been to vest control in the JOLs over whether to make expenditures pursuant to those projects.

PRESIDENT: Forgive me interrupting, Mr Scott. It is just that I am conscious, and my Lords may be conscious, of the fact that two hours has just about elapsed. Somebody is having to take a shorthand note and I think it would be convenient to have a ten-minute break, if that's convenient to you.

MR SCOTT: It is convenient to me. I am very happy to take the break at that point.

PRESIDENT: Thank you.



May I just ask you how long -- this is not in any way trying to put pressure on you. How long do you anticipate you are going to be.

MR SCOTT: I would anticipate being another 45 minutes or so.

PRESIDENT: Right. Okay. Thank you very much.

MR SCOTT: If it is any consolation, my Lord, I will be the longest of the respondents making submissions.

PRESIDENT: I think that goes without saying, and we shall make that absolutely clear to those who follow you: we don't want a repetition of your very well put, if I may say so, submissions.

JUSTICE BEATSON: Yes.

You all know when it's going to finish, so you can sort it out yourselves during the break if there is a problem.

PRESIDENT: So, we will resume again, I will say -- so it is -- shall we say 3.20?

JUSTICE BEATSON: Good idea.

(3.03 pm)

(Short break)

(3.21 pm)

PRESIDENT: Mr Scott, I see you are present.

MR SCOTT: I am, my Lord. I see my learned friend Ms Moran is as well.



PRESIDENT: It seems we are all -- there's a few of us -- ah, the courtroom is still not --

THE CLERK OF THE COURT: Yes, my Lord.

PRESIDENT: Right. I think we are ready to continue.

MR SCOTT: I am grateful, my Lord.

Returning to the judge's assessment of the balance of convenience --

PRESIDENT: Yes.

MR SCOTT: -- the third reason he gave was that his conclusion that there are serious issues to be tried as to whether the restructuring was done in breach of directors' duty made no difference to his assessment of where the balance of convenience lay.

He dealt with that from paragraph 246 of his judgment. Perhaps I can ask the court, please, to read from 246 down to 257, so that you have the judge's words rather than my paraphrase of them.

(Pause)

JUSTICE BEATSON: 256 was the bit that you focused on before giving us the whole passage to read?

MR SCOTT: Indeed.

PRESIDENT: I have certainly read it. I think my colleagues have. Thank you.

MR SCOTT: I am very grateful, my Lord.

Our submission here, as before, is that these passages illustrate the very substantial difficulty there will be in the way of the JOLs in successfully appealing this case. They are passages in which the judge was conducting a discretionary assessment on all the evidence before him, but they are also passages which reflect an analysis of the judge steeped in the detail, which is relevant for today's purposes in ascertaining where the balance of convenience lies.

It is of particular relevance when your Lordship Lordships come to evaluate the JOLs' submission that the directors' conduct in connection with the restructuring supports the proposition that there is a real risk of unjustified asset dissipation now.

And, of course, that is a proposition which the judge roundly rejected, as we saw earlier in the passages on assets not being in danger.

The judge's next reason, his fourth



reason, on the balance of convenience was the absence of a cross-undertaking that was secure as a means by which to protect the respondents to the injunction sought against the risk of prejudice that they face. And the judge dealt with that at paragraphs 258 through to 261.

As your Lordships see at 259, the judge said this, and I quote:

"Given the wide nature of the injunction applied for and the significant costs which the Defendants would need to spend to comply with it, the absence of a secure cross undertaking is a good reason to not grant the injunction."

He elaborates on that analysis at paragraph 261 and I quote:

"The Court has concluded that if the injunction were granted, significant loss would be likely to be caused to the Fund and its charitable recipients. There might also be business related and reputational impact on individuals, including most obviously the Directors, which may be hard to quantify."

Much the same points apply in relation to the interim relief that the JOLs ask this court to make.



The judge's final reason, his fifth on the balance of convenience, was his conclusion from paragraph 262, again a discretionary conclusion, as he expressly says, that this was a proper case for fortification.

Again, to avoid my paraphrase, can I ask your Lordships, please, to read what the judge said on fortification from 262 down to 269.

PRESIDENT: Certainly.

(Pause)

Thank you.

JUSTICE BEATSON: Can I ask a question to think about or come back later? I have marked in the judgment paragraph 123, on page 32 of 56, which starts out with your invitation to endorse the court's recognition there is no risk of remedial harm. It then talks about the Rule 11 Agreement, which says that -- was that something that was part of your invitation -- you said the Rule 11 Agreement provides all the protection they need.

MR SCOTT: That was among the submissions that I made to the judge, among the submissions he accepted, as your Lordship -- (overspeaking) --

JUSTICE BEATSON: My question is that the prejudice that's said is to -- I will call them



"your charities" -- I use "your" in big inverted commas -- as opposed to the JOLs' charities, but charities -- this is not a question of entitlement, is it?

MR SCOTT: No.

JUSTICE BEATSON: So it is a balance between two groups who don't necessarily have an entitlement. They can be the object of the trustees' discretion.

MR SCOTT: Indeed.

JUSTICE BEATSON: So, in terms of the -- what you are really saying is to have an injunction which requires policing and disclosure by you is going to cost the respondents a lot of money, and so you effectively say, "So, we can't just hold the ring steady till the substantial hearing."

It is an unusual position, isn't it? Normally speaking, there is something you can do that safeguards people's proper interests, eg by not restricting their entitlement to salaries at the levels they had, etc, etc, and you can hold it till a less ignorant Court of Appeal than this one -- you have all been very kind in the way you've put it, but that's what you are really saying -- gets hold of it.

To say -- to do nothing, you say, well, there is no great risk, because everybody who has had their fingers on this case has come down in favour of no irremediable risk of asset dissipation. So what is it -- what could be given that would partly hold the ring in place? You just say, "We just have to wait until the hearing"?

MR SCOTT: My Lord, I say this, the premise, if I may say, to your Lordship's question is that there is a problem against which protection is needed, and the problem suggested by the JOLs is a risk of unjustified asset dissipation.

We say fundamentally there is simply no such risk.

JUSTICE BEATSON: I understand. The problem on which my premise -- my question was premised is there is a dispute which this court is not in a position to do very much about at the moment. Normally speaking you can lock the gold in a safe and it will be safe and quiet until it is sorted out, and we can't do that here.

MR SCOTT: Indeed. And the judge was not prepared to do that, because the judge concluded that it would be wrong, at this interlocutory stage, to



lock down the charitable activities of the fund.

JUSTICE BEATSON: You know, I am a trustee of various charities. We don't count on anybody giving us things. We rather hope they will.

MR SCOTT: Indeed.

JUSTICE BEATSON: So what -- I mean, it is not as though this is income. A distressed church comes along and makes a case, and they may get money, but they may be told "Actually the stock market is not very good at the moment, we can't spare anything."

MR SCOTT: Possibly, my Lord. This is a fund the current net asset value of which is $300 million.

JUSTICE BEATSON: It is a fund on which vicious litigation is being fought.

MR SCOTT: Indeed. I, of course, accept that.

JUSTICE BEATSON: Okay. I just wondered whether paragraph 123 gave us any basis for some via media, but I think you have told me that it doesn't.

MR SCOTT: If I can just complete the reasons why it doesn't. Your Lordship has my submission that there is no risk of unjustified asset dissipation in this case. We also, in any event, make the further submission that if there were such a risk,



it is adequately protected against by the Rule 11 Agreement. And I will come on to develop that in due course.

But there is a third point here, which goes directly to your Lordship's observation about competing charities, the DWF charities on the one hand, the four prior charities on the other.

The Rule 11 Agreement does not prevent the DAF structure from making distributions to the [DWF] charities, because that's in the ordinary course of its business since the restructuring.

And nor, moreover, would the interim injunction that the JOLs ask the court to make prevent distributions to the DWF charity. Again, because that's in the ordinary course of the structure's business.

So, no-one is suggesting here that the charitable activities of the fund should be locked down on an interim basis.

I say no-one is suggesting it for today's purposes, because, of course, that is the JOLs' case on the appeal. On the appeal they will be saying there should be a proprietary injunction with no exception for ordinary course dealings, as a consequence of which the fund is locked down.



But for today's purposes they are not saying that. As my learned friend put it, what they want to do is mirror the Rule 11 Agreement. And as I will be submitting in due course, there is no need or justification for that. To do so risks prejudice in the form of the collateral use that Mr Patrick mentions in his witness statement, and with which I will deal fully in due course.

JUSTICE BEATSON: I am sorry to track you off.

MR SCOTT: Not at all. It is helpful to answer the court's questions.

JUSTICE BEATSON: You always have to say that don't you? You meant DFW, didn't you?

MR SCOTT: I did. I worried I had put the initials the wrong way round.

JUSTICE BEATSON: They are all such similar acronyms that one gets ...

MR SCOTT: My Lords, that completes what I want to say on the balance of convenience.

If the court stands back, having read this judgment, and puts it alongside the 11 grounds of appeal that are pursued, we respectfully suggest that the only sensible assessment can be that the JOLs have an absolute mountain to climb on this appeal.

Not only do they have to establish the novel proposition that a partner in this fund beneficially owns its assets, but they also have to successfully challenge the judge's discretionary conclusions on balance of convenience, supported by the various reasons I have set out, and they have to challenge the judge's discretionary conclusion on falsification.

While this court may have formed the view -- has formed the view that the appeal raises real prospects of success, that is not the same as concluding the appeal is likely to succeed.

In this case, that is a factor that does weigh in the balance in deciding whether to grant interim relief.

We make the further submission that exactly the same factors which informed the judge's assessment on discretion, on the balance of convenience, all those factors equally apply now. Nothing has changed on the balance of convenience since the two-day hearing in December.

Or, let me slightly caveat that. Nothing has got better for the JOLs on the balance of convenience since December indeed, matters have got worse, because since December we have had the



MidWave issue in the US, where one of Mr Dondero's vehicles has used the undertakings given in this jurisdiction as a basis to purport to treat the structure as a defaulting lender, thereby putting in jeopardy more than $100 million worth of its assets.

That was not a factor that it was possible to address the judge upon, because it is something that Mr Dondero's vehicles did during the course of the hearing. You have the detail of that in Mr Patrick's affidavit, and I will come back to it.

Can I then turn to our second main objection to this application, which concerns the absence of any real risk of unjustified asset dissipation? I have covered much of the ground here, but I want to draw out five points in particular, if I may.

The first is that the JOLs are not seeking Mareva relief, a point which the judge himself emphasised at paragraph 80 of his judgment, which I showed the court earlier.

Because the JOLs are not seeking to do so, there was no need below to get into the well-known authorities which established the need for cogent



evidence to make out the requisite real risk of unjustified asset dissipation, and the inadequacy of mere inference or assertion, authorities with which I have no doubt this court is well familiar.

The second point we make is the findings that the judge made applying the lower threshold of asking whether the assets were in any danger, they of themselves firmly tell against the suggestion that there is a real risk of asset dissipation in the present case.

As your Lordships saw earlier, the judge asked himself whether there was any real risk that the assets of the structure were in danger. He concluded at 239 to 242 of his judgment that they were not.

That is a conclusion that he said he would have reached regardless of whether the company had a seriously arguable proprietary claim. It is a conclusion which aligned with the same observations made by the Texas court and it is a conclusion which, with respect, reflects the reality that the whole purpose of the restructuring was to remove assets from the control and predations of Mr Dondero. That's the reason why it happened.



That having now happened, there is to reason to think that the assets will move any further. That's exactly the language that the Texas judge used. Yes, the Highland foundations were asserting that monies had gone under the restructuring. Yes, they were concerned or they said they were concerned to avoid it moving any further. But the Texas judge saw nothing in the record to indicate an immediate threat to that happening, and nor did Justice Parker. And, we respectfully say, nor should your Lordships. There is simply no evidence to suggest that there will be any unjustified dissipation of the assets within the structure. All the available evidence suggests the structure will simply continue to conduct its ordinary charitable activity.

My Lords, our third point on the lack of any real risk of unjustified asset dissipation is to ask the court to keep firmly in mind my client's conduct since the JOLs took up their office, because it is entirely inconsistent with the asserted risk of unjustified asset dissipation.

If I can just summarise the chronology here, the JOLs took up their appointment on 6 May

last year. Just ten days later the fund and CLO Holdco, who are the asset holding entities, they made an offer to the JOLs to enter into a financial reporting protocol expressly to assuage any concerns that the JOLs might have about dealing with assets outside the ordinary course of the fund's charitable activities.

The making of that proposal was inconsistent with any intention on the part of my clients unjustifiably to dissipate assets. It was a proposal that they repeatedly made in various forms over the months that followed, and it was a proposal that the JOLs have repeatedly rebuffed. They have rebuffed it because what they want to achieve is relief whereby they can lock down the fund and prevent its ordinary course activities and subject them to their control.

When the JOLs were able, I think on 15 July, to obtain a listing of their injunction summons before Justice Parker on the last day of term, which was the 31st, we agreed to give the interim undertakings, again inconsistent with the suggestion that my clients intend to unjustifiably dissipate assets.

In addition to replicating the



restrictions in place under the Rule 11 Agreement, we undertook to provide advance notice of transactions above a certain value. We undertook to consult with the JOLs and provide clarification on any queries they may have about transactions and whether they were in the ordinary course of business, including queries about historic transactions. We also undertook to provide monthly transaction reports and other financial information.

In the six months or so since, the JOLs have not sought, much less obtained, any finding that my clients have failed to comply with those undertakings. Pursuant to them, the JOLs have received, at very considerable cost to my clients, voluminous information.

They do not suggest to this court, whether in their evidence or in their skeleton or in my learned friend's submission, that the disclosure given has revealed a single instance of unjustified asset dissipation, whether before the JOLs' appointment or subsequent to it.

That is so in circumstances where, if there really was a risk of unjustified asset dissipation, one might have expected it to have



eventuated before the JOLs were appointed or before the Rule 11 Agreement was entered, or before the consent order was agreed upon. Yet there is no evidence that that happened. And that is because it did not, because the asserted risk of unjustified asset dissipation is simply illusory, as the judge correctly found.

My Lords, our fourth point is that the JOLs' conduct is inconsistent with the suggestion that there is a real risk of unjustified asset dissipation in this case.

If there had been such a risk, they would no doubt have applied for a Mareva injunction, but no such application has ever been brought. Not only that; there was no application for any injunctive relief in the six weeks that followed the JOLs' appointment.

During that period, what instead happened was that the JOLs chose to fight a sanctions application, by which they sought to have appointed conflicted lawyers. They abandoned that application at the last minute, resulting in an indemnity costs order for more than $1 million. They still have not paid that order to this date.

If there had been a real risk of



unjustified asset dissipation, the JOLs would surely have moved in those early stages for an injunction. They did not.

What instead happened is that Mr Dondero's Highland foundations moved for lockdown relief in Texas. And it is only when that failed, with the Rule 11 Agreement allowing the fund to continue its ordinary business, that Mr Dondero's attentions turned to funding the JOLs to seek lockdown relief in the Cayman Islands by their injunction summons.

Now, had that injunction summons been listed for inter partes hearing on a proper and orderly timetable, we would simply have opposed it, as we did when the matter came on in December.

It was only because of the pressure that was created by the JOLs bouncing us into court on the last day of the summer term that we were compelled to give the interim undertaking, expressly without prejudice to our position that there was no basis for the relief being sought, as the judge later concluded.

I don't ask your Lordships to turn it up, given the time, but Mr Murphy served an affidavit earlier this week that explains the circumstances

in the summer when the interim undertakings were entered into. He was in South Africa at the time with his family dealing with a bereavement. He had no fair opportunity, as he explains in his affidavit, to consider the many thousands of pages' worth of material that was relied upon. The pressure upon him and upon my clients to agree those undertakings was very considerable.

And that also goes to explain why it was not possible to press for a properly fortified cross-undertaking in damages.

We do ask the court to bear very carefully in mine the circumstances in which those interim undertakings were given, because it is simply not fair to suggest, as my learned friend repeatedly did in her submissions, that those undertakings can cause no difficulty, because otherwise we wouldn't have entered into them.

With respect, that entirely ignores the tactical way in which the JOLs procured a listing, no doubt for the object, or in any event with the effect, of putting considerable pressure on us and extracting the interim undertakings as a result.

My Lords, a further example of the JOLs' conduct that is inconsistent with the asserted

93

risk of unjustified asset dissipation is what happened earlier this year when the judge circulated his draft judgment. The JOLs did not move promptly to obtain interim relief pending appeal from the judge, nor even did they move promptly to move this court for such relief. They instead sat on their hands for more than a month. Again, that cannot be reconciled with a genuine belief on their part that there is a real risk of unjustified asset dissipation in this case.

My Lords, fifthly and finally, we do ask the court to examine with conspicuous care the supposed evidence that is put forward in support of the asserted risk of asset dissipation.

And if I can ask you, please, to take up the JOLs' skeleton argument for today at paragraph 14, your Lordships see in paragraph 14 that the asserted risk is said to be, and I am quoting now from the second sentence:

"... evidenced by the Directors' past and present conduct."

Well, what is the conduct said to provide cogent evidence of a real risk of an unjustified asset dissipation? Just two matters, both of which are hotly contested.

94

The first is the dealing with the company's partnership interest as part of the restructuring, which the judge concluded raised serious issues to be tried, as I have said.

They are allegations about historic conduct which took place now several years ago. The allegation of wrongdoing is vehemently denied by the directors on the reasoned grounds set out in their sworn evidence, supported by the various legal and other professional advice which they received at the time, all documented in the voluminous materials before the judge below.

The existence of contested allegations such as these does not continue to suggest that there is now a real risk of unjustified asset dissipation, nor does the judge's conclusion that a trial will be necessary to resolve the serious arguments that are made on either side.

The second matter that is relied on is the remuneration that Mr Patrick was paid from the assets of the fund in 2024 and 2025. What the JOLs did not trouble to tell the court in its application, but, as you see very clearly from the judgment, is that Mr Patrick's remuneration was paid following benchmarking work and advice from

95

Mercer, the global consulting firm. It was done in accordance with legal advice, including the establishment of a remuneration committee.

The JOLs filed below no expert evidence to dispute Mercer's recommendations. They instead confined themselves to the argument that Mr Patrick's remuneration had to be excessive because it was greater than what his predecessor, Mr Scott -- who I should say is not me -- what the other Mr Scott earned.

But the JOLs' argument ignored the fundamentally different nature and scope of Mr Scott's role. His role was essentially passive, whereas Mr Patrick's role has entailed active and intense management of the fund, with the fund's assets having grown very substantially on his watch to now approaching 300 million. And this in the face of multiple litigation and other risks to which Mr Patrick and the fund have been exposed by Mr Dondero.

The JOLs' simplistic comparison with Mr Scott also ignored Mr Scott's connections to Mr Dondero as a long-time business associate, best man at his wedding, and someone described in the US litigation as merely an empty suit.

96

It was in those circumstances that you see in the judgment, at paragraph 206 and following, the judge's conclusion that there was simply to serious issue to be tried as to whether the remuneration was excessive or in breach of Mr Patrick's duties to the company.

The judge reached the same conclusion in relation to the remuneration of the other director, Mr Murphy. That's at paragraph 216 and following.

My Lords, we do say, against that backdrop, the suggestion that the directors remuneration evidences a real risk of unjustified asset dissipation is simply unarguable.

So, for those five reasons we simply submit there is to basis for the assertion, for that is all it is: that there is a risk of unjustified asset dissipation in this case.

For that reason, if not other, there is no basis for the interim relief TAS sought.

My Lords, even if that were otherwise, the Texas Rule 11 Agreement adequately protects against the risk. That's our third ground for objecting to the interim relief application.

The JOLs accepted in their skeleton at



paragraph 22 that, and I quote:

"The Interim Relief Application simply seeks to reflect the Rule 11 Agreement ..."

My learned friend made the same point this morning. She described it as an attempt to mirror the protections in place under the Rule 11 Agreement, save for the additional provisions in relation to disclosure.

We respectfully submit there is simply no need and no justification to replicate the Rule 11 Agreement with an injunction.

The JOLs put forward five reasons at paragraph 15 of their skeleton to support the submission that the Rule 11 Agreement is not adequate. Respectfully, none of those reasons withstands scrutiny.

What I want to do is give the court our answer to each of those five points and then I will identify the passages in Mr Patrick's recent affidavit which supports them.

Firstly, the JOLs say, correctly, that the Rule 11 Agreement is not enforceable in the Cayman Islands. However, it is enforceable in Texas, where Mr Patrick resides, and is subject to the jurisdiction of the Texas court. There is no



evidence, and it is utterly fanciful to suppose, in my submission, that Mr Patrick is likely to act in contempt of the Texas court.

Fanciful aside, even if he did so, the action would no doubt be met with steps to enforce the Rule 11 Agreement by the Highland foundations, who are in the hands of serial vexatious litigant Mr Dondero.

Second, the JOLs say that the company cannot enforce the Rule 11 Agreement because it is not a party to the Texas proceedings. But, with respect, that ignores the fact that the Highland foundations can ignore it. It also ignores the fact that the individual who stands behind the Highland foundations, Mr Dondero, is the very same individual who is funding the JOLs to pursue these Cayman proceedings, with his Highland foundations being the principal stakeholders in the liquidation.

So the notion that the Rule 11 Agreement would not be enforced in Texas, at the behest of Mr Dondero, if the need to do so arose, is again, with respect, fanciful.

What is more, the company's status as a non-party to the Texas proceedings needs to be



understood in the light of the rulings in Texas that the company should be joined to the proceedings, with the proceedings stayed in the meantime to allow that to happen. So, if the company wishes to participate in Texas, it can do so.

My Lords, third, the JOLs say that the Rule 11 Agreement is not tied to the appeal. That is irrelevant where there is no real prospect that the Rule 11 Agreement will fall away before the appeal is heard, as Mr Patrick has explained in his sworn evidence.

In my learned friend's submissions this morning a new point was taken. She speculated that it might be open to the defendants to apply to strike out the Rule 11 Agreement. She was unable to refer to any evidence to support that speculation because there is no such evidence. And the speculation also makes no sense.

The Rule 11 Agreement is an agreement between the parties to it. Putting aside discharge by frustration or discharge by agreement between the parties, the agreement stands.

My Lords, fourth, the JOLs say that Mr Murphy and CLO Holdco are not parties to the

Texas proceedings, and so they are not bound personally by the Rule 11 Agreement. That is true, but it is also entirely irrelevant. CLO Holdco is the principal asset of the fund. It is wholly owned by the fund. Mr Murphy is one of its directors along with Mr Patrick.

Mr Patrick and the fund are parties to the Texas proceedings, and they are bound by the Rule 11 Agreement. When the Rule 11 Agreement prevents dealings with fund assets otherwise than in the ordinary course of business, it is fanciful to suppose that Mr Patrick or the fund would allow CLO Holdco or any of its subsidiaries to act inconsistently with the Rule 11 Agreement. And it is likewise fanciful to suppose Mr Murphy would do so in his capacity as a fellow director.

Now, in my friend's submissions this morning, a series of newspaper points were taken ——

JUSTICE BEATSON: Can I just stop you a moment with a quick question. You know about some people who like wearing a belt and braces.

MR SCOTT: Yes.

JUSTICE BEATSON: So what you are saying is the existing protections are adequate. So they



provide a belt. The real force of where you're going is to say that winning this relief —— some sort of relief here is not just belt and braces; it is doing positive harm.

MR SCOTT: Indeed.

JUSTICE BEATSON: That's what you say. What would you —— would you say, other than the idea that who wants to spend money on lawyers and just duplicating something, and lawyers want to do that and we can see a lot of spending here.

What would be —— if, in fact, all you were doing was duplicating those in Cayman, for a Cayman LP, with all the Cayman interest in this case, the Cayman JOLs would have to go to court to get permission to intervene in Texas litigation, what's —— why am I just being a pessimist by suggesting that it might be good to have a belt and braces?

MR SCOTT: Can I answer your Lordship's question this way? We say there was to justification in this case for even a belt. There was no risk of unjustified asset dissipation, but nonetheless we entered into the Rule 11 Agreement.

We also say, respectfully, that belt and braces is not the principle that should inform



granting draconian interim injunctive relief such as this. The relevant principle is: is there a real risk of unjustified asset dissipation? If there is, is it just inconvenient to grant the relief that is sought. And it is not whether the Rule 11 Agreement is in place.

But we go further. We do say that granting an injunction or giving equivalent undertakings would be prejudice. Indeed, it would be seriously prejudicial. The evidence of that is the MidWave issue. The MidWave issue occurred during the hearing before Justice Parker.

Perhaps I can deal with it at this point. You have the detail, as I have said, in Mr Patrick's affidavit.

Now, MidWave is an entity under the control of Mr Dondero. It has borrowed substantial sums from CLO Holdco and those sums, the debt that is owed, are among the principal assets of the fund.

During the hearing before Justice Parker, MidWave took the position that, by virtue of giving the undertakings, CLO Holdco had become a defaulting lender, and, on the basis it was a defaulting lender, a series of amendments were



purportedly made to the facility agreement under which the debt arose ——

JUSTICE BEATSON: To think they'd have had to have consented otherwise, and the changes were made without their consent.

MR SCOTT: Indeed. Indeed, they're issues that are being ventilated in New York.

JUSTICE BEATSON: Yes.

MR SCOTT: But the position that MidWave has adopted is that by virtue of giving the undertaking, it is able to defer the maturity dates under the facility agreement, remove or defer the substantial finance fees which are payable, and put in jeopardy more than $100 million worth of assets.

That's what happens when we give undertakings in Cayman. That's what Mr Dondero and his vehicles have done.

Your Lordship is entirely right, we dispute entirely the validity of that exercise. We have had to bring proceedings in New York to vindicate our position, but all of that has stemmed from the giving of interim undertakings.

Among other concerns is if we give those undertakings again to this court, or if the court

grants an injunction simply because it regards it as belt and braces, there will be exactly the same weaponisation of the development by Mr Dondero as occurred with the undertakings that we gave last year.

So we do very much say this is a case where the giving of undertakings or the making of an injunction will do harm.

There is, of course, the harm of the continued substantial cost of having to give disclosure, disclosure which we say is entirely unnecessary in support of a purported proprietary claim that doesn't exist. There is, of course, that prejudice. There is, of course, also the prejudice inherent in any freezing injunction, because, as anyone who has represented a respondent to a freezing injunction will know, as soon as one is made, banks and other counterparties, they won't deal with you, notwithstanding the ordinary course exception, if there is any risk that the applicant will take the position that the proposed dealing is outwith the ordinary course of dealing.

You can see the willingness of the JOLs to take that position from the submission my friend



made this morning that it is not the ordinary course of the structure's business to continue making charitable distribution to an entity which has benefitted from them for several years.

Freezing injunctions are a draconian remedy. They are among the nuclear weapons in the law's arsenal. They require caution before granting them because of the impacts that they have on the responds' ordinary business, regardless of the exception.

So, there are those forms of prejudice that would arise on any case in which a freezing injunction is sought, but the Dondero factor in this case just makes it so much worse.

I hope that gives your Lordship our —— (overspeaking) ——

JUSTICE BEATSON: Yes.

MR SCOTT: These are dangerous braces that the court is being asked to apply, without, in our submission, any justification to do so.

SIR RICHARD FIELD: Mr Scott, could I ask you a question, please? I am looking at the summons for interim relief which you are seeking. I beg your pardon, you are —— (overspeaking) ——

MR SCOTT: I'm resisting.



SIR RICHARD FIELD: —— not seeking.

Paragraph 1 more or less tracks the Rule 11 Agreement, using the expression "outside the ordinary course of business".

Now, I understood counsel for the JOLs to be accepting that it was within the ordinary course of business to make donations to the DFW charity or charities.

MR SCOTT: I didn't understand counsel for the JOLs to accept that. I understood her position to be that the JOLs do not accept that distributions to DFW are within the ordinary business of the structure.

SIR RICHARD FIELD: Well, the expression is in the Rule 11 Agreement, and it is in the summons. Perhaps we can hear in reply what is finally being said.

Is the company —— I ask this of counsel to deal with in reply —— maintaining that the Rule 11 Agreement is an agreement that prevents any distributions to DFW, because that would not be in the ordinary course of business?

JUSTICE BEATSON: I think this is where the exchange about our charities came in.

SIR RICHARD FIELD: Yes.



MR SCOTT: It is, of course, for my learned friend to clarify her position. My understanding is that the company's position is indeed that the Rule 11 Agreement prohibits distribution to DFW, as would the interim injunction sought, because the JOLs maintain that distributions to DFW are not in the ordinary course of business, because they are distributions to our charities rather than theirs, to use my learned friend's phrase.

SIR RICHARD FIELD: Yes.

Is there any evidence as to whether there have been any distributions to DFW since the Rule 11 Agreement?

MR SCOTT: Yes. It is the evidence I showed the court earlier. It deals with the position from I think July, by which stage the Rule 11 Agreement had been entered into, down to December when the affidavit was ——

SIR RICHARD FIELD: Was there any ——

JUSTICE BEATSON: There was no payment to any of the original four in those?

MR SCOTT: No, because across the restructuring, the original four are no longer the objects of the charitable structure.

JUSTICE BEATSON: Yes.

SIR RICHARD FIELD: But Mr Dondero's corporations, Highland Dallas and Highland Kansas and so on, they haven't asserted that the Rule 11 Agreement has been breached by reason of those three donations, I will call them, distributions, that you have shown us in the evidence.

MR SCOTT: I don't know the answer to that question, my Lord. If an answer can be found, it will be fed to me by my team. I don't know if Mr Dondero has taken that decision.

SIR RICHARD FIELD: Okay.

MR SCOTT: I can certainly say our position is plainly there is no breach at all.

SIR RICHARD FIELD: I understand that. I apologise. Thank you. I am sorry to interrupt. That's very helpful there, thanks.

MR SCOTT: Not at all, my Lord.

I was going to deal at this stage with a series of news points on the Rule 11 Agreement which emerged from my friend's submissions this morning. If I can just briefly deal with these. Respectfully, we say they are all wrong.

The first was the suggestion that the Rule 11 Agreement is inadequate because it only applies to direct subsidiaries of the funds.



I don't see in the language of the Rule 11 Agreement any basis for that submission. As the court saw earlier, it applies to any subsidiaries, but in any event the critical subsidiary of relevance is CLO Holdco, because it is the asset. It is the asset holding company. And plainly it is a subsidiary of the fund, because it is wholly owned by the fund.

The second new point that was taken was the suggestion that the Rule 11 Agreement would not prevent increasing the fees payable to directors. Respectfully, I didn't understand that point. It flies in the face of sub-paragraph 7(b), which provides that there can be no increase to the remuneration of employees of the covered entities.

Prior to my learned friend's submissions this morning, I had not understood it to be suggested by anyone that the Rule 11 Agreement left open the possibility of increasing directors' remuneration.

Third is the point I have already addressed on DFW distributions. The court has my submission that paragraph 7(a) of the Rule 11 Agreement permits this because it would be



a distribution in the ordinary course of business.

As I say, I had understood Ms Moran to dispute that. We will find that what the true position is when she gets on her feet for reply.

I then turn to the suggested fifth inadequacy of the Rule 11 Agreement, according to the JOLs, which is the fact it makes no provision for disclosure.

Now, that is true, but, in my submission, it is not an inadequacy. It is an acknowledgement that there is no need or justification for disclosure, particularly where, as the judge found, the costs of providing it pursuant to the interim undertakings have been prejudicial to the defendant, that being among the reasons why, on the balance of convenience, he would not have made the injunction even if the underlying claims were arguable.

SIR RICHARD FIELD: Well, tracing orders backed by discovery usually come after the trial.

MR SCOTT: Indeed. As we stand at the moment, there will be no trial of any tracing claim, because, as the judge held, in our submission correctly, there is no seriously arguable tracing claim to be brought here.



Your Lordship is, with respect, entirely right. Even if there were viable tracing claims, and even if they do succeed at trial, that will be the point at which the court can grant the relief necessary to make that tracing exercise effective.

The only reason to pre-empt it now would be if the court had been satisfied that there were a risk of unjustified asset dissipation in the meantime. And the court has my submission, there is no such risk here.

I said I was going to show the court some of Mr Patrick's evidence on these issues. Can I make good on that now?

If we can go, please, to the respondents' bundle. And I do so with some trepidation given the difficulties we had earlier identifying the relevant pages.

The page I want to go to is in his first affidavit to this court, served last week, which at page 290 of the bundle. It is from paragraph 28. I hope that gives some help to help the court find it.

JUSTICE BEATSON: The first affidavit?

MR SCOTT: Yes.

JUSTICE BEATSON: So that will be in the exhibited

bundle.

MR SCOTT: No, because it has been renumbered.

JUSTICE BEATSON: Well, there you go. It is really good, this.

MR SCOTT: As I understand it --

JUSTICE BEATSON: I read that this morning, the e-mail about that. Right.

MR SCOTT: It is the first affidavit he has sworn in relation to these Court of Appeal proceedings.

JUSTICE BEATSON: No. That's not a problem, no. It is the lower ones. Right.

So, there we are.

MR SCOTT: I want to go, please, to paragraph 28 to start.

JUSTICE BEATSON: I am sorry to be -- not tetchy, but I am keen not to slow you down. 28.

MR SCOTT: Paragraph 28.

JUSTICE BEATSON: Starting:

"In addition ... "

MR SCOTT: Exactly so.

JUSTICE BEATSON: I am there.

MR SCOTT: Having referred to Justice Parker's findings in relation to the Rule 11 Agreement, the court will see that Mr Patrick says this in the second sentence:



"I and the CDM respondents confirm to this court that the Rule 11 Agreement continues to be complied with. That agreement, which for the avoidance of doubt is a voluntary commercial standstill among solvent entities, not an insolvency receivership or analogous proceeding, ensures that assets will only be dealt with in the ordinary course of business, that there will be no increase in current levels of remuneration and that the holding structure will not be changed."

Now, my Lord, the need for Mr Patrick to spell out the obvious fact that the Rule 11 Agreement has nothing to do with insolvency, that's a consequence of Mr Dondero's manoeuvres with MidWave. And I will show you the evidence on that in a moment.

But the key point I want you to take from paragraph 28 is that Mr Patrick is confirming to this court on his behalf, and on behalf of the other respondents, that the Rule 11 Agreement will be complied with.

Mr Patrick then deals at paragraph 25 with the JOLs' arguments that the Rule 11 Agreement was not adequate, and he says that these arguments



miss the point for the reasons that I have been submitting to the court, namely that the Rule 11 Agreement is enforceable where he is resident and it is inconceivable that Mr Dondero would not cause it to be enforced if the need to do so were ever to arise.

Can I please ask the court to read paragraph 29?

(Pause)

PRESIDENT: For myself, I have read it, Mr Scott. I think my colleagues may have done.

JUSTICE BEATSON: Yes, I have read it.

SIR RICHARD FIELD: Yes.

MR SCOTT: I am very grateful.

Paragraph 30 then explains why there appears to us to be no real prospect of the Rule 11 Agreement falling away before the appeal to this court is determined.

Again, perhaps to avoid paraphrasing, can I ask the court, please, to read paragraph 30.

(Pause)

JUSTICE BEATSON: The reference to the August date, that -- so this affidavit is very, very recent, isn't it, so there's no change since this affidavit?



MR SCOTT: This affidavit was, I think, Tuesday afternoon. Obviously Mr Patrick doesn't know and I don't know when the special sitting will be convened to hear the JOLs' appeal, but what you can see is that nothing is going to happen in the near term in Texas that will cause the Rule 11 Agreement to fall away.

(Pause)

PRESIDENT: Yes, Mr Scott.

MR SCOTT: I'm grateful.

Then, at paragraph 31 down to 33, Mr Patrick exchanges his reluctance to give an undertaking to this court. As your Lordship sees in the second sentence of 31, he says this:

"I am also reluctant to provide one because of the history of the undertakings previously offered or given in these proceedings being misrepresented by the appellants [that's the JOLs] and Mr Dondero and his affiliates and misused by the latter for improper purposes." (As read)

Now, so far as concerned the misrepresentations by the JOLs -- and this is dealt with at paragraph 32 -- at the hearing before Justice Parker, at which I appeared, on

a number of occasions the JOLs' leading counsel portrayed the undertakings that my clients had offered as an acceptance that interim relief was appropriate in this case, and it was unfortunately necessary for me on several occasions to rise to correct the record.

The true position, as Mr Patrick explains here, is that the undertakings were offered expressly without --

PRESIDENT: We have covered this ground, Mr Scott. I think we understand perfectly well what you are saying about that.

MR SCOTT: And I won't also belabour the point on MidWave, which I have already addressed.

PRESIDENT: Yes, and which is referred to as well, isn't it?

MR SCOTT: Indeed, at paragraph 33. I also won't go over again the points on prejudice, but you have the evidential impacts in terms of the prejudice caused by disclosure at paragraph 35 of Mr Patrick's affidavit. He addresses the points I have made on the circumstances in which the undertakings were given at 36. And he addresses the point on prejudice, given the absence of any undertaking, at 37.



Given the time, I can't take the court through all the detail on collateral use, but you will no doubt have read what Mr Patrick has said about MidWave and the other issues in section E of his affidavit.

So, for all those reasons, we do say it would be unnecessary to add belt to braces or braces to belt, and indeed to do so would be seriously prejudicial, and that is another reason why this interim relief application should be refused.

The fourth ground for our objection I have already covered: the various forms of prejudice that the interim relief sought, in granted, would cause to us or risk causing to us.

I have already addressed why it is unfair and wrong for the JOLs to submit that there can't be any prejudice here, otherwise we would not have agreed the interim undertakings.

Can I finally deal with our fifth and final objection to the interim relief application? I will going to take this briefly, not because the point is unimportant, but because it is really straightforward and it is a short and complete answer to this application.



The JOLs offer no cross-undertaking in damages, nor even do they offer a cross-undertaking from their funder, Mr Dondero's vehicle Crossvine. Still less do they offer any fortification. There is simply no protection on offer for what they ask your Lordship Lordships to make, which is, in substance, a freezing injunction.

We respectfully suggest that there is no remote justification for granting interim relief of that kind without the usual protections that courts in this jurisdiction require by way of a secure cross-undertaking, which is essential so as to enable the court to do full justice in due course, if it turns out that the injunction was wrongly made, by making orders for compensation for loss caused that will be satisfied.

The JOLs are unwilling or unable to put forward any such protection. The only reason given for it, so far as I could discern in my learned friend's submissions this morning, was that because no cross-undertaking was given on the interim undertakings in July, there is no need for one to be provided now. But the court has my submissions and that simply ignores the context in



which the July undertakings were given.

It also ignores the fact that the litigation has now very substantially moved on. The JOLs have had two days in which to persuade a Grand Court judge that their injunction was justified. They failed to do so. Comprehensively.

They have an appeal as of right and they appear to wish to pursue that appeal. That is a matter for them. But what is not just and what is not fair is to seek interim freezing relief such as this without paying the usual price of a cross-undertaking in damages that is properly fortified so that the court can do justice in due course if the need to do so arises.

Unless I can assist the court any further, those are the submissions I wanted to make.

PRESIDENT: Thank you very much indeed, Mr Scott. I don't know if any of my colleagues has anything they would like to ask you.

SIR RICHARD FIELD: No. Thank you very much for your submissions, Mr Scott.

MR SCOTT: In which case it falls to Mr Quest to take up the baton for Mr Murphy.

PRESIDENT: Yes.

Submissions by MR QUEST

PRESIDENT: Mr Quest.

MR QUEST: Yes, my Lord.

MR JUSTICE MARCUS SMITH: I hope you are going to be much briefer, because obviously quite a lot of the submissions cover ground that you would wish to cover in any event, that has been dealt with, so you are dealing specifically with the position of the second respondent, aren't you?

MR QUEST: That's right. I will be limiting my submissions to those aspects of the application that will are particular to Mr Murphy as the second respondent.

PRESIDENT: Thank you very much.

MR QUEST: Sir, I should say, we, of course, adopt and support Mr Scott's arguments as they apply to the defendants generally, but we do also say that Mr Murphy's position is, in some respects, materially different from the other defendants, such that there is no basis in any event for the grant of any relief against him personally.

Mr Murphy's position can perhaps be conveniently taken from the judgment.

If I can ask your Lordships to turn to Mr Justice Parker's judgment at page 79 of the



bundle, the appeal bundle.

SIR RICHARD FIELD: Could you give me the paragraph, please?

MR QUEST: It begins at paragraph 216.

SIR RICHARD FIELD: Thank you very much.

MR QUEST: It is under the heading "The injunction against Mr Murphy". As your Lordship will see, the judge rightly considered separately the application as it applied specifically to Mr Murphy.

As you can see, he said, at paragraph 216:

"Mr Ayres", who then appeared for the liquidators, "made clear that as Mr Murphy still plays a role in the Fund and the Company, the JOLs apply to injunct him in respect of all the Fund entities.

"217. However, it is undisputed, on the evidence before the court, that Mr Murphy does not hold any interest in the Fund or in its limited or general partner and has no shareholding or any other interest in any of the companies connected with the Fund."

At 218:

"The Company's proprietary claim", as against Mr Murphy, "concerns only money that



was paid to him as remuneration under his director's service agreements.

"219. The Court takes the view that the damages and compensation claimed based on his participation in the restructuring are not proprietary claims in nature."

Just to elaborate slightly what the judge is saying there about Mr Murphy's position, the role that Mr Murphy plays or currently plays in the fund is as director of some, but not all, of the companies in the fund structure, including the third, fifth and sixth defendants.

However, as the judge noted, and was then and is now undisputed, Mr Murphy does not himself hold any disputed property other than the money that was paid to him by way of remuneration, and his total remuneration over the five years that he acted was about $1.2 million, so a relatively modest amount, and certainly not the tens of millions that Ms Moran referred to.

So he holds none of the disputed fund property himself.

Now, in relation to those companies in the fund structure of which he is a director, it is, of course, right that Mr Murphy would, in the



usual way, be bound not to frustrate any proprietary injunction that the court might grant against the companies in respect of their property. That follows from the making of an injunction against the company.

But it is important that the mere fact that Mr Murphy is a director of some of these companies does not in itself justify granting proprietary injunctive relief against him personally.

So, whether or not the court thinks it is appropriate to grant relief against those entities that hold the assets, there is, in my submission, no justification for extending that relief to Mr Murphy personally.

This, if I may say, is not merely a formality. Mr Murphy has a particular concern about the way in which the relief is framed and in his being brought in as a Respondent to it.

If I can just to explain the difficulty, if I can ask your Lordships to look at the summons, which you will find at page 176 of the bundle -- so this is a summons for the relief that's sought by the liquidators today. Your Lordships have already seen paragraph 1, which is

negative in form, if I can put it that way, but Mr Murphy's particular concern is over paragraph 2 on the next page, which provides that:

"The respondents [which includes Mr Murphy and the Fund entities] shall preserve and will not in any way dispose of ... their or any interest of whatsoever nature whether held directly or indirectly in the Fund, the Fund Entities, or any assets of the Fund, other than in the ordinary course of business." (As read)

So, on the face of it this is —— and I should say, sorry, the Fund Entities —— the capital F, capital E, Fund Entities —— are defined two pages on, on page 180. You should see there is a list of 27 companies in various jurisdictions which are defined as being the "Fund Entities".

So, just going back to paragraph 2, the positive obligation to preserve assets applies not only to assets that are not assets that are held by Mr Murphy himself, but applies to the assets of a very large number of companies, the 27 that are set out in the schedule, of which Mr Murphy is only a director of five of them. So the vast majority of the fund entities that are scheduled to the order are companies with which Mr Murphy



has no direct involvement.

In those circumstances, it is, in my submission, for the liquidators to justify not just why the court should grant injunctive proprietary relief against corporate entities in the structure, but, in addition, why they should extend —— why the court should extend that relief to Mr Murphy personally. Neither in writing nor orally have the liquidators offered any explanation or any principle basis on which they say the court should grant relief of a proprietary nature against Mr Murphy in respect of fund property that he does not hold.

The position, we say, a fortiori , where the property is not openly not held by Mr Murphy; it is held by companies of which he is not even a director.

So, we say that there is simply no basis, and certainly no basis has been articulated, to join Mr Murphy as a personal Respondent to these applications for proprietary relief in respect of the fund assets.

As I say, to the extent that he is a director of particular companies, he would, as any director would, be bound against that company,



but that's not a justification for making an order against him.

So, that was what I wanted to say about the orders sought against him —— the proprietary orders sought against him in relation to the fund assets.

As to the claim that's also made in respect of the receipt by him of remuneration, it was and is somewhat unclear to us, even from listening to the oral submissions from the liquidators today, whether the liquidators are still seeking any order which seeks to restrain in any way Mr Murphy's use of his personal assets. If they are, then just a couple of points I would like to make about that.

Your Lordships will have seen from the judgment, that was certainly the primary basis on which the case was pursued against Mr Murphy below, the judge held in terms that Mr Murphy's remuneration was not excessive, and indeed he held there was no serious issue to be tried that Mr Murphy had been paid or had received ——

MS MORAN: Apologies for interrupting, my Lords, my learned friend, just to clarify , on the interim injunction we are not seeking any restriction on



(inaudible) Mr Murphy's remuneration (inaudible).

MR QUEST: All right. That's a helpful clarification .

So, as I understand the position, no relief is now being sought —— let me make sure I have it right —— no relief is now being sought which would have the effect of applying any restraint to Mr Murphy in relation to his dealings in his own personal assets.

MS MORAN: That's correct.

MR QUEST: Thank you.

In that case, I need only, I think, just add just two points in general as to why relief against Mr Murphy is further unjustified.

One is that it is, of course, for the plaintiff seeking this interim relief pending appeal to identify some risk of prejudice that liquidators might suffer as between now and the appeal. And obviously Mr Scott has already dealt with the position in relation to the companies and his clients, but certainly as regards Mr Murphy there is no allegation as against him and no evidence that there is any risk of him doing anything between now and the hearing of the appeal that might undermine the efficacy of the appeal

process. So there is simply no case as regards Mr Murphy that he is going to do something that requires the court to restrain him so as to maintain the efficacy of the appeal. Without that, there is no simply no basis for the court to intervene as against him.

Any suggestion that there might be some risk of prejudice arising from Mr Murphy's conduct is, of course, belied by the fact, as Mr Scott has already explained to you, that, even though the undertakings -- the undertaking that Mr Murphy gave formally expired on 10 February, when judgment was handed down, the liquidators waited until 3 March before the present application, with no reason for that delay given.

It is said as regards Mr Murphy, on behalf of the liquidators, that the orders sought against him would cause him little hardship, including, they say, because he was previously prepared to give a voluntary undertaking. As to that we say, first of all, absence of hardship to a Respondent is clearly not a justification in itself for making an injunctive order. It is only a relevant consideration if the court is satisfied that there is otherwise some basis for the court to make



an order against Mr Murphy.

As for the undertaking, as Mr Scott has already explained, that was offered by Mr Murphy, as it was by the other defendants, in very particular circumstances.

PRESIDENT: I think we understand that, Mr Quest. Mr Murphy sets out quite a lot of detail, as I recall, in his affidavit which we have received, I think, this morning.

MR QUEST: Thank you. Then I needn't say anything more about that. Your Lordships have the point.

I think the only other point I just need to emphasise -- again, it is a point Mr Scott made -- about the lack of a cross-undertaking, not just the lack of a fortified cross-undertaking, the lack of a cross-undertaking at all. Mr Murphy in particular is justifiably concerned about this. Else a Cayman Islands attorney, resident and practising as a professional in the Cayman Islands. There is obviously a risk that injunctive relief against him may be seen, rightly or wrongly, by those he deals with on the island as reflecting badly on his reputation. If it does, he would expect to be compensated for that. And it is only fair, in those circumstances, that



the liquidators should pay the usual price, as it were, for obtaining relief of this sort, which is that they agree to compensate Mr Murphy for any loss that may be caused by it.

There has been no real explanation about why a cross-undertaking hasn't been volunteered in the normal way. The most that seems to be said by the liquidators is that there are no assets in the company available to financially support such an undertaking. That may be, but there are clearly persons behind the company who have an interest in the outcome of the liquidation, not least because they are presumably funding the liquidators to bring this application, and they, in our submission, can be fairly expected to provide financial support for a cross-undertaking as a price, as a condition, in the usual way of bringing this application.

My Lords, those are the points that apply specifically to Mr Murphy. Unless there are any points I can help your Lordships on, those are my submissions.

PRESIDENT: Not from me, thank you very much, Mr Quest. Again, I don't know if either of my colleagues would like your help on anything.



SIR RICHARD FIELD: No, thank you.

JUSTICE BEATSON: Not from me, thank you.

PRESIDENT: Thank you very much indeed, Mr Quest.

MS MORAN: My Lords, I am conscious of the time. I think the respondents have had more than their fair share at this stage, but I understand that Ms O'Driscoll is going to be very brief.

PRESIDENT: They are entitled to make their submissions, Ms Moran.

JUSTICE BEATSON: You should have all agreed a time.

PRESIDENT: They think it is necessary. This litigation is being conducted, if I may say so, with enough antagonism -- wholly unproductive, as far as the court is concerned, antagonism, as far as it is -- and I think some of the correspondence was unattractive to read, to put it mildly. But there we are.

Submissions by MS O'DRISCOLL

MS O'DRISCOLL: I intend to be exceptionally brief on behalf of the fourth defendant, DFW.

I had originally planned to address the court on the proportionate proprietary claims against DFW as distinct from CDM, but in light of the President's comments at the outset of the

hearing in respect of (inaudible) of the application, the President's comments just before the break in respect of repetition, and the nature and scope of Mr Scott's submissions, I respectfully intend to do no more than gratefully rely on Mr Scott's submissions on behalf of DFW.

PRESIDENT: Thank you very much indeed. That's very helpful.

JUSTICE BEATSON: Thank you very much.

Reply by MS MORAN

MS MORAN: My Lords, I do apologise to the court and to Ms O'Driscoll. I misunderstood the time difference with England and I thought we were due to finish in ten minutes' time. So I apologise for that.

PRESIDENT: Don't worry, Ms Moran.

Now, obviously in your response you will simply deal with the matters that have specifically been raised and there are a number. I am not going to go through them, but I will leave you to it, but obviously you will do it succinctly.

MS MORAN: Thank you, my Lord. I am grateful.

I think the key point I need to address



your Lordships on in reply is this idea about whether it is in the ordinary course of business to make the donations to DFW and the idea that has been propounded by the respondents, and that seems to be taking root, that this is a charitable structure that was entirely discretionary where the four original charities had no real interest.

My Lord, this really goes to the heart of the case. We say it absolutely is —— it was not in the ordinary course of business, it was improper in the manner in which it was conducted to admit DFW into the structure and that now it is not in the ordinary course of business to make those payments to DFW.

The Respondents say they were absolutely entitled to do what they did, that this was a structured set—up for charitable purposes at large and that they were entitled to disenfranchise "my charities", to adopt the terminology, because it was not a disenfranchisement, we weren't really entitled to anything and we had no expectation to receive anything, and that they could therefore give it all to DFW in their sole discretion, or to anybody else that they might choose.



I think that also illustrates the problem that we have with the Rule 11 Agreement. They say it is —— the Rule 11 Agreement permits ordinary course of business transactions. They will be making contributions to DFW. And my learned friend Mr Scott said that that would be the case.

As I say, we can't go to Texas to have that debate over ordinary course of business, whether it is or not ordinary course of business. It is also not appropriate on this interim injunction to have that fight, because, as I said, it goes to the heart of the case.

So, therefore, what we are looking for from this court is a way to hold the ring, to adopt your Lordship's phrase, about the charities can continue —— excuse me, DFW can continue to make those donations, but we get (inaudible) apportion protocol which shows us just how much is being made and to whom and in which ——

PRESIDENT: I am being a bit slow here. I am not quite understanding what exactly you are saying.

You are saying that you would be content for payments to be made to charities —— is that correct? —— provided you knew what the payments were, knew something about them. Is that what you



are saying? Albeit that because, fundamentally, you say, what took place shouldn't have taken place, it is not the ordinary course of business anyway. Do I correctly understand what you are saying?

MS MORAN: That's right. That is the —— the way the application is framed today is that it permits an ordinary course of business exception. Now, we do not think that an ordinary course of business exception should permit payments to DFW but the other side do and that is the dispute at the heart of the case.

PRESIDENT: But you are prepared for that to happen, are you?

MS MORAN: My Lord, I think —— if I am pushing at an open door, I would ideally like to have that shut down. And if your Lordships are prepared to make that order today, that would go a long way towards protecting the interests of the estate.

However, if your Lordships are not prepared to make that order, at the very least I should be given the reporting protocols that I ask for in my ——

PRESIDENT: I understand that you are saying.

MS MORAN: Thank you, my Lord.

JUSTICE BEATSON: The reporting protocols that you ask for, just for my note, can you just remind me where they are?

MS MORAN: Yes, my Lord.

JUSTICE BEATSON: Are they the ones in the summons?

MS MORAN: Yes, that's right, my Lord.

JUSTICE BEATSON: So, paragraphs 3 ——

MS MORAN: 3, 4 and 5.

JUSTICE BEATSON: 3, 4 and 5. Thank you very much.

MS MORAN: Now, my Lord, if I could just spend a little bit of time dealing with this point about what is the company's interest in the structure and this idea of general charitable purposes or whether the structure was set up to benefit specific charities.

Fist of all, my Lords, if you could turn up, please, the terms of the limited partnership agreement. I think it is worth going to the agreement itself. This is at Grand Court Bundle E.

JUSTICE BEATSON: Right.

MS MORAN: If your Lordships turn to page 495 of the pdf —— do your Lordships have that? The title

137

is "Article III Capital Accounts and Division of Profits and Losses".

JUSTICE BEATSON: This is Article III of the agreement?

MS MORAN: In the limited partnership agreement, my Lords, yes.

JUSTICE BEATSON: Okay.

MS MORAN: This is the agreement that governed the partnership at the time when the company was the sole limited partner. Your Lordship will see at paragraph 3.1(a), it says:

"Each Partner has made the capital contributions to the Partnership in the amount set forth ..."

And it says:

"The Limited Partner [that's the company] has contributed to the Partnership all of the ... equity interests of CLO HoldCo."

So, that's a recognition that when the structure was being set up, the company contributed the assets into the structure, the assets which now form the underlying assets of the partnership controlled by the Respondents.

I think it is common ground, my Lord, that those assets came originally from Highland

138

entities or Mr Dondero entities and were put into the company. So it is simply not correct, as my learned friend Mr Scott suggested, that the company did not make any capital contribution to the partnership. It absolutely did. It made the sole contribution which is now being used to benefit his clients.

My Lords, if you could then turn, please, to page 489 of this pdf, and to clause 1.6 down at the end of the page.

1.6(a), and your Lordships will see this is a very typical type of clause that you see in a partnership agreement, which gives powers to the general partner exclusively to manage the business of the partnership.

But if your Lordships continue down the clause over the page, your Lordship will see at the end of this it says, in the second to last line, after the semicolon:

"... provided, however that the Partnership's assets and investments shall be for the benefit of the Limited Partners and not for the economic benefit of the General Partner."

If your Lordships could then turn to page 495 of the agreement, and at clause 3.2(c) ——

139

JUSTICE BEATSON: Forgive me. I lost the page number you gave me. What was it?

MS MORAN: 495.

JUSTICE BEATSON: Thank you very much.

MS MORAN: It is 3.2(c). Here it says that:

"... the General Partner's capital account and contributions shall be the minimum required by [law], all income, deductions, gains, losses and credits ... shall be for the benefit of the Limited Partner ..."

So, again, general partner, no economic interest. All the economic interest is with the limited partner.

Finally, my Lords, and this is a really critical point which goes to the economic interests of my client —— excuse me —— of the company, at 4.2(a), which is on page 496. So the first part of the clause is the part which says distributions are made at the discretion of the general partner, based on the need of the indirect charitable ownership.

I should say, it is in a manner and in the aggregate amounts determined by the general partner taking into consideration the cash and the needs of the indirect charitable owners(?).

140

This (inaudible) is the part of the clause that my learned friends are making much of, and which Justice Parker relied on in the Grand Court. However, my learned friends conveniently ignore the second part of this clause, and this simply was not considered at all by Justice Parker, which is, starting at the fourth line up from the bottom, that:

"Notwithstanding the foregoing, distributions made in connection with a sale of all ... [of the] assets or a liquidation ... [are] made in accordance with the ... account balances of the Partners ..."

As we just saw, my Lord, the account balance of the general partners is nil, or at a minimum, and the account balance of the limited partner is going to be the majority of the account balances.

So, on a sale or on a liquidation of the partnership, the limited partner, the company, gets all of the assets.

So, it is simply not correct to say that the company had no economic interest in the partnership. It absolutely did. It then was required to pass on any distributions or assets



received from the partnership to the underlying charities, but that does not take away from the nature of the relationship between the company as a limited partner and the partnership itself, and the obligations that the general partner had to it.

The next point, my Lord, is that this structure was set up to benefit the specific charities. It wasn't a discretionary trust, as I think my Lord, Lord Justice Beatson, was drawing a parallel. This was a corporate structure where the charities were actually given shares, and did have participating shares in the company.

Why was it set up that way? Well, we have seen in the statement of claim that this is partially for tax reasons. But what the structure was trying to do it is to mirror what's known as a donor-advised fund in the US. That's where we get the word "DAF" in the companies name: Charitable DAF Fund.

If your Lordships could quickly turn up bundle B in the Grand Court bundles, and this is at page 1008.

JUSTICE BEATSON: Can I put away Bundle E or are we going back to that?



MS MORAN: You can put away Bundle E. Thank you, my Lord.

JUSTICE BEATSON: Bundle B. Which page do you want in bundle B?

MS MORAN: 1008.

JUSTICE BEATSON: 008.

MS MORAN: Do your Lordships have it?

JUSTICE BEATSON: I have a page 8. What is this document? This is the articles?

MS MORAN: 1008.

JUSTICE BEATSON: I'm sorry, I keep on proving I ought to do something about my hearing. 1008.

Ah, that looks more like it. Yes.

MS MORAN: This is a letter from Haynes and Boone, lawyers, to Mark Patrick in July 2021. At paragraph 1 of this letter, Haynes and Boone explain what a DAF is, a donor-advised fund is. You will see here -- perhaps my Lords can read it to yourselves, but the point I wanted to highlight is that the donor retains advisory privilege over the DAF funds or account, specifically with respect to charities that should receive donations.

My Lords, what we see here is if this had been set up through a DAF structure in the US, the



donor, which is the company, or, indirectly, the Highland entities of Mr Dondero, would have retained advisory privileges over the DAF -- over the charitable funds, and could have directed which charities got the distributions.

Now, as we have explained in the statement of claim, for tax reasons they didn't set it up in quite that manner, and indeed they tried to mirror it through the corporate structure that we now have here, using the Cayman Islands (inaudible) and the company.

So, my Lords, this is the intention. And, importantly, this was also understood by Mr Patrick. If I can ask your Lordships to turn up the appeal bundle at page 212.

JUSTICE BEATSON: The company's appeal bundle?

MS MORAN: The company's appeal bundle, yes.

JUSTICE BEATSON: 212.

MS MORAN: 212.

Now, this is a letter -- it starts on page 211. This is a letter from April 2022 that Mr Patrick wrote to the Securities and Exchange Commission. In it -- I think the purpose of this letter was to complaining about Mr Dondero's activities, but the point I want to draw to your

attention is what Mr Patrick said to the SEC about the Charitable DAF Fund, the company and its mission.

This starts at paragraph 1 down the bottom of page 211.

JUSTICE BEATSON: Uh-huh. On to 212.

MS MORAN: It is 212 that I want to really highlight. Here he makes the point -- at the top of page 212 -- that the DAF's charitable supporting organisations are the indirect equity owners of the limited partner, Charitable DAF Holdco, the company. This is the reference to the original four charities.

It is the next paragraph that's particularly relevant. He says:

"Since its inception ... DAF has had a significant impact on the communities ..."

And that the charitable organisations "donate tens of millions of dollars" to different charitable causes.

This sentence here, my Lord, starting with "More specifically", he says:

"... since 2012, [the] supporting organisations have committed over $42 million to nonprofit organisations ..."



So they have committed 42 million, and they:

"... have funded $32 million ... with the remaining commitments scheduled for further installments. These commitments include donations to [the various organisations], with average annual grant payments of approximately $3.7 million."

So what this shows us here is that the charities did expect to receive dividends, that they made commitments to their various charitable endeavours in reliance on those charitable commitments. So they've committed 42 million and they've only received 32 million, and Mr Patrick is acknowledging that the balance of the 10 million is going to be funded by way of future distributions.

So, it's simply wrong to suggest that the charities, that the four original charities, had no real entitlement or expectation from this structure whatsoever, and it's simply wrong to suggest that the company had no economic -- (overspeaking) --

SIR RICHARD FIELD: Isn't the question as to the entitlement of these participating entities,



shareholders, resolved solely by construing the constitutional documents? This is somebody's letter who is not referring to those documents in any detail at all.

MS MORAN: Well, I think, my Lords --

SIR RICHARD FIELD: That must be so, mustn't it?

MS MORAN: So, let me -- perhaps I'll take it in stages, my Lords.

We are talking about an exempted limited partnership in the first instance, and I have shown you the provisions of the Limited Partnership Act, which explain that the company does have an economic interest in the partnership agreement. And the partnership agreement itself also recognises the interests of the underlying owners of the company.

The recent authority from the Privy Council in Aquapoint makes clear that in the context of exempted limited partnerships, sometimes it is acceptable to look outside the terms of the agreements.

Now, we say, and this will be a matter for trial, that actually the terms of the agreements themselves do support our analysis, and that this is not purely a situation of looking outside at



external evidence. But the second point is that, in an exempted limited partnership context, it is permissible to look beyond the four corners of the documents in appropriate circumstances.

SIR RICHARD FIELD: Whoever said that? Can you refer me to some authority?

MS MORAN: Yes, my Lord.

SIR RICHARD FIELD: Just let me finish. You depart from the constitutional documents by referring to some external evidence, some letter writing or whatever, in order to decide what, in fact, the enforceable actionable entitlements are of the limited partnership.

MS MORAN: That was the Privy Council decision in Aquapoint.

JUSTICE BEATSON: Isn't there just a dicta to that. I mean, you know --

PRESIDENT: Forgive me interrupting. Where are we going here? I just wanted to follow where are we going, so far, Ms Moran, as your submissions in response are concerned. What point are you seeking to deal with here?

MS MORAN: I am seeking to address -- the question was asked about whether we believe it is in the ordinary course of business to make payments to

DFW. The submission was also made by my learned friends that, in considering whether to grant this injunction, your Lordships needed to consider the strength of my (inaudible) when assessing the balance of convenience. And he majored(?) very significantly on this point that the company had no proprietary interest, that it was entirely in the ordinary course of business to do what they did, and that I would not be able to succeed on my claims ——

PRESIDENT: You are seeking to submit to us that there's a sufficiently strong case to found your application?

MS MORAN: A sufficiently strong case to found the application, my Lords, yes.

PRESIDENT: I think we follow that. I am not sure —— perhaps my Lords would like some further submissions, but I am not sure.

I think we understand what your case is, and I don't know that we want to spend a lot of time, but perhaps, my Lords, if either of my colleagues has any questions.

SIR RICHARD FIELD: No, I don't have any further follow—up questions. Thank you.

JUSTICE BEATSON: I just have a question. You

149

referred, when answering Justice of Appeal Field, you said you would refer us to the statute on this. Probably because my note is inadequate, but I can't find it. Can you just remind me which statute you referred to on this point?

SIR RICHARD FIELD: I think it is the exempted partnership.

JUSTICE BEATSON: I know, but it has a lot of sections. I just wondered which one was referred to.

MS MORAN: I think I might have misspoken. I think I was referring to the limited partnership —— to the EL —— to the limited partnership agreement.

JUSTICE BEATSON: Well, that's fine. I have lots of references to that.

MS MORAN: Thank you. Thank you, my Lord.

My Lords, I think the next point I wanted to address is this idea about no real risk of dissipation. I can take this shortly and I can take the balance of my submissions very shortly, my Lords, as well.

My learned friend submitted that the charitable donations that were made —— that had been made since the DAF restructuring are at the

150

same level as had been made previously. That is not the case. Only approximately 500,000 has been given to DFW, and we saw that in the table that I took your Lordships to earlier on, which is at Grand Court bundle B, at page 4728. And I have just shown you the letter from the SEC —— the letter to the SEC where we saw that millions of dollars in grants were being paid to the charities. They were saying annual grants of 3.5 million per year, whereas DFW has received only 500,000 in about a year and a half.

Prior to —— at the same time as the millions of dollars of donations were being made to my charities, the salaries and remuneration of the directors were being paid at $60,000 per annum, whereas now what we have seen is that since the structure has moved under the control of Mr Patrick, with DFW as the sole beneficiary, the directors have been paid more than $15 million.

JUSTICE BEATSON: You don't respond to the point that's made on paper —— I don't know that Mr Scott made it orally —— but actually one the reasons for that was that the former person was doing a passive management, where there is a lot more management, and a lot of stuff was outsourced.

151

And if you add the outsourcing income —— outsourcing of fees, that's quite a lot. You haven't responded to that at all.

MS MORAN: My Lord, on this point —— I can respond to this. So, the investment activities were outsourced to an entity called Skyview prior to the restructuring, but, my Lord, the fees that were paid to Skyview are still —— were still, in fact, less than what is being paid to Mark Patrick.

JUSTICE BEATSON: Where do I see that on the papers?

MS MORAN: This is in the second affidavit of Mr Patrick. Apologies, I am just trying to find the reference.

(Pause)

Let me ask my colleagues to check the reference.

JUSTICE BEATSON: Do that.

MS MORAN: But effectively I think Skyview was paid —— it works out that Mr Patrick is basically being paid double what Skyview is being paid.

JUSTICE BEATSON: But you didn't make a comparison with the total. You just compared it with the 60,000.

152

MS MORAN: Sorry -- excuse me, my Lord?
JUSTICE BEATSON: It is good to have that figure, but I note that in both the written and oral submissions, until this moment the comparison was just with the 60,000 a year paid to the former advisor, the former director.
MS MORAN: That's right, my Lord. I think that --
JUSTICE BEATSON: You find that a reasonable thing to do?
MS MORAN: A reasonable thing for me --
JUSTICE BEATSON: I mean, are we comparing chickens and rabbits? Was it a fair comparison to compare --
MS MORAN: (inaudible) perhaps, my Lord, it wasn't the full picture just to compare it to the 60,000. However, my Lord, I think it was fair because of the comparison that was being drawn is that the former director who was receiving the 60,000 was a -- had had no investment management experience, and similarly Mr Patrick has no investment management experience. He is a tax attorney. He is not an investment advisor. So, I think that was the point that was being made in relation to the 60,000.
JUSTICE BEATSON: Right. Thank you.

153

MS MORAN: My Lord, the next point that was taken against me is there is no jurisdiction to grant me a proprietary injunction over the underlying assets. I think your Lordships have the point that, you know, we have the argument that, as a matter of partnership law, there is a proprietary interest capable of being protected, and that also, where you have a proprietary interest in a share or a limited partnership interest, then it is appropriate to grant ancillary relief over the underlying assets to protect the value of that interest, and that's the Koza case, my Lords. I don't think we need to turn it up, but for the purposes of your Lordship's notes, paragraph 62 of that case clearly shows that there are two sources of jurisdiction to grant relief over underlying assets to protect the value of, in that case, a share. The first is an original jurisdiction to grant a direct injunction and the second is an ancillary jurisdiction to protect the primary injunction or undertaking over the share in question. At paragraph 98 of that decision we see that the judge in Koza exercised the ancillary jurisdiction --

154

JUSTICE BEATSON: This is Koza, is it?
MS MORAN: That's right, my Lord, yes.
JUSTICE BEATSON: Thank you. I didn't hear it first time.
MS MORAN: My Lords, two final points, which I can take shortly. The point that's been taken against us on MidWave, the MidWave litigation, I think the point my learned friend made was that the fact of giving the undertakings in this court are what caused MidWave to declare the fund as a defaulting lender and to refuse to pay.

To be clear, Mr MidWave is controlled by Mr Dondero, as I understand it, and Mr Dondero no doubt does not want to put any more money into this structure for so long as it is under the control of Mr Patrick. So, I think it is very clear that it is not any undertakings given in this court that are going to be the reasons for Mr Dondero refusing to put any more money into the structure. It is a more fundamental issue than that. So I think that's a bad point, my Lord.

Then, finally, my Lord, on the cross-undertaking, one factor that the court did not take into account in the Grand Court, and which is equally applicable here, is that the

155

court is entitled to take into account the inability to give a cross-undertaking (inaudible) has been caused by the actions of the respondents. That's all the more so when we are talking about a liquidator, a neutral party, trying to get to the bottom of this control dispute and return the assets to those who are rightfully entitled to them.

So, my Lord, let me just check if I have that reference for you. My Lord, the reference is at bundle A in the Grand Court bundles and it is page 303, paragraph 137 of Mr Patrick's second affidavit.
JUSTICE BEATSON: Thank you very much.
MS MORAN: That sets out the fees that I referenced earlier.

My Lords, unless I can assist your Lordships any further, I think those are the points I wanted to address in reply.
PRESIDENT: Do you want to say anything about Mr Murphy particularly, Ms Moran?
MS MORAN: My Lords, I think I made my submissions on Mr Murphy in opening. We are seeking -- as I clarified to my learned friend Mr Quest, we are not seeking at this time in respect of the interim

156

injunction anything preventing him from dealing with his personal assets. The injunction that we seek against him is in his capacity as a director of the underlying subsidiaries so that he can procure their compliance with the interim injunction.

PRESIDENT: I understand. Is there anything else you want to say, Ms Moran?

MS MORAN: No, my Lords, unless I can assist the court any further.

PRESIDENT: Thank you very much.

I don't know again if my Lords would have any questions of Ms Moran.

SIR RICHARD FIELD: No. Thank you very much for your submissions, Ms Moran.

JUSTICE BEATSON: Thank you from me too.

PRESIDENT: We will adjourn briefly to talk among ourselves and then -- so if everyone would wait, I hope -- well, we shall be back no later than 5.35 UK time, which I think will be 11.35 Cayman time.

MS MORAN: Thank you, my Lords. I am grateful.

(5.24 pm)

(Short break)

(5.43 pm)



PRESIDENT: As you will see, Justice of Appeal Field is not with us. He is, in fact -- his connection has gone down, so he's actually on my phone and he can hear what I'm saying. I hope you take my word for it, but that is the case. I am on speaker.

SIR RICHARD FIELD: I confirm what the President is saying. Do accept my Apologies.

PRESIDENT: So you know.

Can I tell you what we have decided? We have decided we are not going to immediately give our decision; in other words, not today. We hopefully will do so -- and we will give you an exact date -- by Wednesday, 31st March (sic), probably on that date. It may be without reasons. So we will adjourn. The whole court will probably not be sitting, because a number of us have commitments which make it extremely difficult, but you will see I confidently say a decision before Easter.

MS MORAN: Thank you, my Lord. I am grateful.

PRESIDENT: Thank you all very much indeed and I wish you the best for Easter anyway. Thank you.

(5.46 pm GMT)

(Hearing concluded)



I N D E X

Submissions by MS MORAN ..............................3
Submissions by MR SCOTT .............................46
Submissions by MR QUEST ............................121
Submissions by MS O'DRISCOLL .......................132
Reply by MS MORAN ..................................133

**A**

**abandoned (1)** 91:21
**able (11)** 5:6 14:5 17:23 33:14 40:3,5,6 69:10 89:18 104:11 149:9
**above (4)** 43:11 56:8 57:9 90:3
**absence (7)** 48:22 66:25 78:2,12 86:15 117:24 129:21
**absolute (2)** 61:25 84:24
**absolutely (9)** 18:3 19:21 33:16 41:25 75:11 134:9,15 139:5 141:24
**abused (1)** 70:12
**accept (8)** 31:9 47:1 50:3 54:24 82:16 107:10,11 158:8
**acceptable (1)** 147:20
**acceptance (1)** 117:3
**accepted (3)** 66:23 79:23 97:25
**accepting (1)** 107:6
**access (2)** 4:3,7
**accidentally (1)** 7:10
**accordance (3)** 42:20 96:2 141:12
**according (1)** 111:6
**account (15)** 8:20 65:4,5 70:15 71:18 72:5,18 140:6 141:12,14,16,17 143:21 155:24 156:1
**accounts (1)** 138:1
**achieve (1)** 89:15
**acknowledgement (1)** 111:10
**acknowledging (1)** 146:15
**acquired (1)** 68:13
**acronyms (1)** 84:17
**across (1)** 108:22
**acted (1)** 123:18
**acting (1)** 15:5
**action (2)** 28:4 99:5
**actionable (1)** 148:12
**actions (2)** 6:7 156:3
**active (1)** 96:15
**activities (7)** 73:22 82:1 83:18 89:7,16 144:25 152:5
**activity (1)** 88:16
**actually (12)** 17:18 19:17 27:1 36:12 38:19 58:15 60:25 82:9 142:12 147:23 151:22 158:3
**adamas (1)** 18:11
**add (4)** 32:23 118:7 128:13 152:1
**addition (3)** 89:25 113:19 126:6
**additional (6)** 36:21 37:12,13 42:19 73:12 98:7
**address (13)** 3:13 12:17 14:11 29:13 48:2 52:24 64:18 86:8 132:22 133:25 148:23 150:19 156:19
**addressed (4)** 44:2 110:23 117:14 118:16
**addresses (2)** 117:21,23
**adequate (6)** 37:17 38:2,8 98:15 101:25 114:25
**adequately (3)** 47:21 83:1 97:22
**adjourn (2)** 157:17 158:16
**admit (2)** 20:17 134:12
**admitted (2)** 19:18 20:12
**adopt (3)** 121:15 134:19 135:15
**adopted (1)** 104:10
**advance (5)** 23:21 29:11,11 43:11 90:2
**advanced (1)** 47:11
**advantage (1)** 24:11
**adversely (1)** 70:19
**advice (4)** 71:9 95:10,25 96:2
**advisor (2)** 153:6,22
**advisory (2)** 143:20 144:3
**affidavit (28)** 13:9 32:9 54:4 58:20,21 59:4,6 60:20,23,23 61:2 86:11 92:24 93:5 98:20 103:15 108:18 112:19,23 113:8 115:23,25 116:1 117:21 118:5 130:8 152:13 156:13
**affidavits (1)** 71:6
**affiliated (1)** 44:8
**affiliates (1)** 116:19
**afraid (3)** 4:12 48:7 56:9
**africa (1)** 93:2
**after (8)** 1:3 45:16 50:19 51:1 59:7 63:1 111:20 139:19
**afternoon (1)** 116:2
**again (21)** 13:7 20:18 40:23 41:9 54:1 57:21 68:14 75:18 79:3,6 83:14 89:22 94:8 99:22 104:25 115:19 117:18 130:13 131:24 140:11 157:12
**against (42)** 9:13,16 11:12 13:4 43:18 47:3,22 48:21 63:21,24 70:2 71:14 78:4 81:11 83:1 87:8 97:11,23 121:21 122:7,25 124:3,5,9,12 126:5,12,25 127:2,4,5,18 128:14,22 129:6,17 130:1,21 132:24 154:2 155:6 157:3
**aggregate (1)** 140:23
**ago (1)** 95:6
**agree (4)** 26:22 27:23 93:7 131:3
**agreed (10)** 24:5 39:4,7 42:25 43:12 44:20 89:21 91:3 118:19 132:10
**agreeing (2)** 26:1 27:3
**agreement (122)** 3:24 7:5 13:1 16:1,4,15 22:2 24:15 25:7,14,17,20,22 26:1,9,11,13,17,22,25 27:1,13,18 28:2,14,20 29:2,5,14,22,25 30:21,24 33:18,21 34:1,5 35:16 36:19,22 37:1,5,12 40:11 41:20 42:18 45:6 46:5 47:22 56:6,13 70:24 71:19 72:1 79:17,20 83:2,8 84:3 90:1 91:2 92:7 97:22 98:3,7,11,14,22 99:6,10,20 100:8,10,16,20,20,22,23 101:2,9,9,14 102:23 103:6 104:1,12 107:3,15,20,20 108:4,13,16 109:3,19,24 110:2,10,19,25 111:6 113:23 114:2,3,14,21,24 115:3,17 116:7 135:2,3 137:20,21 138:4,5,8 139:13,25 147:14,14 150:14
**agreements (3)** 123:2 147:21,23
**ah (3)** 41:8 76:3 143:13
**ahead (3)** 25:24 29:7 69:18
**aimed (1)** 29:20
**aired (1)** 13:13
**albeit (1)** 136:1
**aligned (1)** 87:19
**allegation (3)** 44:3 95:7 128:22
**allegations (12)** 12:17 13:3,5,7,16,19 64:6,13,21,22 95:5,13
**alleged (1)** 64:18
**allow (3)** 21:7 100:4 101:12
**allowed (1)** 30:11
**allowing (2)** 7:20 92:7
**allows (1)** 30:1
**alluded (1)** 30:19
**alone (1)** 48:23
**along (2)** 82:8 101:6
**alongside (1)** 84:21
**already (14)** 8:21 30:18 38:15 39:16 42:17 44:2 110:22 117:14 118:13,16 124:25 128:19 129:10 130:3
**also (45)** 8:19 12:23 13:8 16:18 26:22 27:14 29:23 44:11 48:18 52:7 57:16 58:15 66:15 71:12,18 72:5,18 73:3,13,19 74:7 77:10 78:19 82:24 85:3 90:8 93:9 96:22 99:13 100:19 101:3 102:24 105:14 116:15 117:13,17 120:2 121:17 127:7 135:1,10 144:13 147:15 149:1 154:8
**alter (2)** 63:24 71:21
**alternative (1)** 66:8
**always (1)** 84:12
**amazing (1)** 58:14
**amended (1)** 8:19
**amendments (1)** 103:25
**among (10)** 2:20 57:4 79:21,22 103:19 104:24 106:6 111:15 114:5 157:17
**amongst (1)** 20:2
**amount (5)** 58:1 61:12 64:1 123:19 138:13
**amounts (5)** 40:9 57:18,25 64:20 140:23
**analogous (1)** 114:6
**analysis (4)** 20:22 77:11 78:14 147:24
**ancillary (3)** 154:11,21,24
**andor (2)** 34:21 68:9
**animosity (1)** 13:20
**annual (2)** 146:7 151:9
**annum (1)** 151:16
**another (3)** 7:15 75:4 118:9
**answer (16)** 11:10,14,15 18:25 19:15 43:17 46:21 50:1 56:22 57:1 84:10 98:18 102:19 109:7,8 118:25
**answered (1)** 68:11
**answering (1)** 150:1
**antagonism (2)** 132:14,15
**anticipate (2)** 75:3,4
**anybody (2)** 82:3 134:24
**anyone (2)** 105:16 110:19
**anything (14)** 9:11 28:8 45:10 71:7 82:11 120:19 128:24 130:10 131:25 134:22,23 156:20 157:1,7
**anyway (3)** 5:3 136:4 158:23
**anywhere (2)** 29:4 58:22
**apologies (8)** 4:13 5:1 7:10 40:17 45:13 127:23 152:14 158:8
**apologise (5)** 50:15 51:16 109:15 133:12,15
**appeal (74)** 1:24,25 2:11,16,18 3:6,18 6:15 8:14,24 9:1,18,19,23,23 10:11 12:3 14:21 16:11 19:2 22:3 29:3 34:9 35:2,7 36:5,10 38:11,13 39:7,8 42:11 43:8 49:9 53:16 55:4 56:22 57:6,17 65:1,6,10,14 66:24 69:2,10,13 70:12 80:22 83:22,22 84:22,25 85:10,12 94:5 100:8,11 113:9 115:17 116:4 120:8,9 122:1 128:17,19,24,25 129:4 144:15,16,17 150:1 158:1
**appealing (1)** 77:7
**appear (5)** 1:9 11:5 23:8 37:23 120:9
**appeared (3)** 7:9 116:25 122:12
**appears (5)** 1:11,13,15 7:8 115:16
**appellants (1)** 116:18
**applicable (1)** 155:25
**applicant (2)** 16:25 105:21
**applicants (1)** 58:12
**application (60)** 3:4,16,21 8:13,22 9:20,20,21 12:4,16 13:14 16:24 21:25 25:12 29:9 36:13 39:2,4,13 46:13,22,22 47:11 49:1,12,21 50:14 52:3,10,18 53:7,8 54:5,20,25 65:22,23 70:21 72:12 73:15 86:14 91:14,15,20,22 95:23 97:24 98:2 118:10,21,25 121:11 122:9 129:14 131:14,18 133:2 136:7 149:13,15
**applications (3)** 53:19,23 126:21
**applied (6)** 38:19,20,24 78:10 91:13 122:9
**applies (4)** 109:25 110:3 125:18,20
**apply (15)** 46:20 49:7 50:12,18 52:11,15 65:24 66:7 78:23 85:19 100:15 106:19 121:16 122:15 131:19
**applying (3)** 38:21 87:6 128:7
**appoint (3)** 14:18 17:24 18:3
**appointed (3)** 18:7 91:1,21
**appointment (4)** 73:8 88:25 90:22 91:17
**apportion (1)** 135:18
**apprehend (1)** 55:7
**approach (1)** 2:18
**approaching (1)** 96:17
**appropriate (9)** 8:6 12:7 25:23 38:9 117:4 124:12 135:10 148:4 154:10
**appropriated (1)** 42:7
**approximately (2)** 146:7 151:2
**april (1)** 144:21
**aquapoint (3)** 18:9 147:18 148:15
**areas (1)** 6:6
**arent (5)** 27:1 38:2,8 42:24 121:9
**arguable (4)** 2:17 87:18 111:18,24
**argument (8)** 5:9,24 50:22 53:11 94:16 96:6,11 154:5
**arguments (6)** 64:3,16 95:18 114:24,25 121:16
**arise (2)** 106:12 115:6
**arises (1)** 120:15
**arising (2)** 63:13 129:8
**arlpa (1)** 56:13
**arose (2)** 99:22 104:2
**around (4)** 12:1 14:7 58:5 72:10
**arranged (1)** 38:15
**arrangement (2)** 15:8 62:20
**arranging (2)** 38:17 39:12
**arrived (3)** 4:22 58:12 59:13
**arsenal (1)** 106:7
**article (2)** 138:1,3
**articles (4)** 21:11,11 56:7 143:9
**articulated (1)** 126:19
**ascertaining (1)** 77:13
**aside (3)** 7:18 99:4 100:21
**asif (3)** 12:22,23 26:6
**ask (46)** 9:5,8,10,24 10:1,4,5,19,20 11:14,15,20 14:23 19:5 24:18 26:7 49:15 50:21 61:10 62:11 67:3 69:2,18 75:1 76:18 78:24 79:6,12 83:13 88:19 92:23 93:12 94:11,15 106:21 107:18 115:7,20 119:6 120:20 121:24 124:21 136:23 137:2 144:14 152:17
**asked (9)** 10:3,8 11:16 24:22 30:4 39:2 87:12 106:19 148:24
**asking (2)** 11:4 87:7
**aspects (1)** 121:11
**assert (1)** 63:23
**asserted (6)** 88:22 91:5 93:25 94:14,18 109:3
**asserting (1)** 88:5
**assertion (3)** 64:21 87:3 97:16
**assessing (1)** 149:4
**assessment (9)** 65:2 69:16 70:9 73:14 76:8,15 77:9 84:23 85:18
**asset (39)** 5:12 31:13 47:12,21 48:11 53:2 56:12 64:19 66:1 71:16 77:20 81:4,13 82:13,23 86:15 87:2,9 88:18,22 89:2 90:21,24 91:6,10 92:1 94:1,10,14,24 95:15 97:14,18 101:4 102:22 103:3 110:5,6 112:8
**assetholding (1)** 63:22
**assets (82)** 6:25 7:13 8:5,8 10:25 11:8 12:12 13:24,25 16:20 17:11,13 18:24 23:5 25:15 29:21 30:12 34:15 35:17 37:18,23,25 44:4 55:14,15,16,19 65:19 66:10,17,20 67:1,18 68:10,15 69:5,12 70:4,16,19 73:9 77:23 85:3 86:6 87:7,13,23 88:2,13 89:6,10,24 95:21 96:16 101:10 103:20 104:15 114:7 124:13 125:9,18,19,19,20 126:22 127:6,13 128:9 131:8 138:21,22,22,25 139:21 141:11,21,25 154:4,11,18 156:7 157:2
**assist (4)** 57:16 120:16 156:17 157:9
**associate (1)** 96:23
**assuage (1)** 89:5
**assume (2)** 10:1 15:2
**assumed (1)** 49:9
**attempt (2)** 57:16 98:5
**attempted (1)** 54:12
**attention (2)** 62:6 145:1
**attentions (1)** 92:9
**attorney (2)** 130:18 153:22
**august (2)** 41:15 115:22
**authorities (7)** 4:18,23 18:10,11 49:16 86:25 87:3
**authority (2)** 147:17 148:6
**available (6)** 43:3 44:18 57:15 71:2 88:14 131:9
**average (1)** 146:6
**avoid (4)** 72:21 79:6 88:7 115:19
**avoidance (2)** 36:23 114:4
**aware (2)** 13:23 22:23
**away (15)** 5:12 7:16 14:14 18:24 29:3 32:16 37:17,25 52:22 100:10 115:17 116:7 142:2,24 143:1
**ayres (1)** 122:12

**B**

**b (7)** 40:17,20 50:24 142:22 143:3,4 151:5
**back (17)** 11:1 13:25 15:19 17:5 21:19 26:6 32:22 38:6 40:11 64:17 73:7 79:13 84:20 86:11 125:17 142:25 157:19
**backdrop (2)** 47:4 97:12
**backed (1)** 111:19
**background (5)** 3:15 5:7 25:6 55:9 67:10
**bad (3)** 7:20 9:16 155:21
**badly (1)** 130:23
**baker (1)** 1:15
**balance (32)** 3:21 16:25 17:2 19:3 21:24 37:14 42:16 44:14 65:11 69:17,20 73:13,19 74:3 76:9,15 77:13 78:1 79:2 80:6 84:19 85:5,14,18,20,23 111:16 141:15,16 146:15 149:5 150:21
**balances (2)** 141:12,18
**bankruptcy (1)** 63:16
**banks (1)** 105:18
**barbara (1)** 41:3
**based (4)** 69:15 70:8 123:4 140:20
**basically (1)** 152:21
**basis (30)** 2:16,19 10:24 18:8 19:23 21:1 31:22 38:10 39:5 44:16 47:6,12 63:24 66:8 69:25 82:18 83:19 86:3 92:21 97:16,20 103:24 110:2 121:20 126:10,18,19 127:17 129:5,25
**baton (1)** 120:24
**bear (1)** 93:12
**bearing (1)** 69:7
**bearings (1)** 67:8
**beatson (136)** 4:7,14 5:3 9:24 10:1,17 22:4,6,9 24:18,22,25 25:4 28:10 31:4 32:23 33:6,10,16 35:3,10,13,18,22 36:1,11,16 38:12,21 39:18 40:18,22,25 41:2,6,8 42:2,7 43:9,16 44:10 45:15,18 49:25 50:3 51:3,18,21 57:21 58:11 59:1,5,12,16,23 60:2,7,15,22 61:5 62:4,9,20,22,25 75:14,20 76:23 79:12,24 80:6,11 81:16 82:2,6,14,17 84:9,12,16 101:20,24 102:6 104:3,8 106:17 107:23 108:20,25 112:23,25 113:3,6,10,15,18,21 115:12,22 132:2,10 133:10 137:1,5,8,10,23 138:3,7 140:1,4 142:10,24 143:3,6,8,11 144:16,18 145:6 148:16 149:25 150:8,15 151:20 152:11,19,23 153:2,8,11,25 155:1,3 156:14 157:16
**become (2)** 40:2 103:23
**before (34)** 4:2,19 12:15 13:15 18:19 19:7 20:4 21:3,21 35:12 39:6 53:7,9 57:20 64:24 76:24 77:4,10 89:20 90:21 91:1,2,3 95:12 100:10 103:12,21 106:7 115:17 116:25 122:18 129:14 133:2 158:19
**beg (1)** 106:23
**begins (1)** 122:4
**behalf (8)** 1:9 15:5 17:25 114:20,20 129:16 132:21 133:7
**behest (1)** 99:21
**behind (6)** 21:2 49:16 62:15,19 99:14 131:11
**being (59)** 5:13 6:7,22 12:18,18 13:7 14:14,15,21 16:10,19 22:23,25 23:1 28:19 29:24 30:3,17 39:5 40:8,9 41:14 42:10 44:18,21 52:22 55:19 64:7 71:24 74:3 75:4 77:23 82:15 92:21 99:18 102:16 104:7 106:19 107:16 111:15 116:18 124:19 125:16 128:5,6 132:13 135:19,20 138:20 139:6 151:8,13,15 152:9,22,22
**belabour (1)** 117:13
**belied (1)** 129:9
**belief (2)** 20:9 94:9
**believe (5)** 10:8 32:9 58:24 70:18 148:24
**believed (1)** 71:9
**below (15)** 9:6,8,11 18:12 44:14 49:13,14 58:8 61:12 67:5 71:1 86:24 95:12 96:4 127:19
**belt (9)** 101:22 102:1,3,17,21,24 105:2 118:7,8
**benchmarking (1)** 95:25
**beneficial (5)** 55:13 68:10,14 69:4,12
**beneficially (1)** 85:3
**beneficiaries (3)** 6:3 8:2 15:7
**beneficiary (4)** 7:24 15:22 56:25 151:18
**benefit (11)** 24:15 25:25 56:3,7 63:3 137:16 139:7,22,23 140:9 142:8
**benefited (1)** 57:18
**benefits (2)** 53:24 54:3
**benefitted (4)** 57:18,24 63:5 106:4
**bereavement (1)** 93:3
**beside (1)** 33:14
**best (5)** 5:5 20:20 53:22 96:24 158:23
**better (1)** 85:23
**between (12)** 13:20 32:25 33:20 42:10 61:1,7 80:6 100:21,23 128:18,24 142:3
**beyond (3)** 29:19 41:16 148:3
**big (1)** 80:1
**billion (1)** 63:23
**bit (5)** 4:25 36:17 76:23 135:20 137:13
**bits (1)** 4:9
**blurriness (1)** 45:19
**blurry (1)** 45:15
**bodies (2)** 33:1,1
**bonuses (1)** 5:20
**boone (2)** 143:14,16
**boring (1)** 35:3
**borrowed (1)** 103:17
**both (6)** 48:4 60:9 64:16 68:18 94:24 153:3
**bottom (4)** 4:21 141:8 145:4 156:6
**bought (1)** 71:13
**bounced (1)** 72:9
**bouncing (1)** 92:17
**bound (8)** 2:2 26:24 27:4,18 101:1,8 124:1 126:25
**braces (8)** 101:22 102:3,18,25 105:2 106:18 118:7,8
**breach (7)** 5:14 47:4 54:18,21 76:14 97:5 109:13
**breached (2)** 49:8 109:4
**break (8)** 1:21 32:24 74:21,24 75:16,22 133:3 157:24
**brief (4)** 3:14 22:13 132:7,20
**briefer (1)** 121:5
**briefly (6)** 7:9 16:13 43:6 109:21 118:22 157:17
**bring (4)** 12:21 29:5 104:21 131:14
**bringing (1)** 131:18
**brought (7)** 14:17 22:23 53:20 63:21 91:14 111:25 124:19
**built (1)** 63:9
**bundle (40)** 4:15,23 9:1 22:3 35:2,7,8 40:17,20 43:8 49:16 51:17 58:9,9,11 59:4,7,9,10 60:24,25 67:4 69:19 112:15,20 113:1 122:1,1 124:23 137:22

142:22,24 143:1,3,4 144:15,16,17 151:5 156:11
**bundles (8)** 4:4,8,12,17 22:7 40:19 142:22 156:11
**business (56)** 5:22 8:6 30:2,22 31:14,16,18,23 32:1 33:25 36:20 41:22 42:14,17,20 48:16 61:17,18,20,25 62:1,1 66:5,6 71:23 72:25 73:11 78:19 83:11,16 90:7 92:8 96:23 101:11 106:2,9 107:4,7,12,22 108:7 111:1 114:8 125:10 134:2,10,13 135:4,8,9 136:3,8,9 139:15 148:25 149:8
**bypassing (1)** 54:8

**C**

**call (6)** 22:21 35:18 36:5 62:23 79:25 109:5
**called (3)** 7:8 53:25 152:6
**came (7)** 7:11 62:18,22 63:2 92:15 107:24 138:25
**campbells (1)** 1:12
**cannot (4)** 25:23 36:24 94:8 99:10
**cant (11)** 26:8 29:7,11,15 80:15 81:22 82:10 118:1,17 135:7 150:4
**capable (4)** 16:19 44:21 64:8 154:7
**capacity (3)** 27:2 101:16 157:3
**capital (8)** 51:14 56:1 125:13,13 138:1,12 139:4 140:6
**care (2)** 4:10 94:12
**carefully (2)** 68:5 93:12
**carry (2)** 6:9 7:15
**carrying (1)** 48:16
**carve (1)** 74:9
**carveouts (1)** 74:13
**cases (1)** 64:12
**cash (1)** 140:24
**cast (1)** 49:18
**catch (1)** 21:8
**catching (1)** 20:10
**catchup (2)** 20:18,21
**categorically (2)** 10:23 13:17
**cause (5)** 93:17 115:5 116:6 118:15 129:18
**caused (7)** 43:18 78:18 117:20 119:17 131:4 155:10 156:3
**causes (1)** 145:20
**causing (1)** 118:15
**caution (1)** 106:7
**caveat (1)** 85:22
**cayman (21)** 1:20 24:1,5,19 28:23 34:16 43:20 60:18 68:19 92:10 98:22 99:17 102:12,13,13,14 104:17 130:18,19 144:10 157:21
**cdh (1)** 26:19
**cdm (5)** 26:19 27:7 66:15 114:1 132:24
**certain (1)** 90:3
**challenge (3)** 69:11 85:4,7
**challenged (2)** 23:24 70:11
**challenges (1)** 29:5
**chances (1)** 54:8
**change (1)** 115:24
**changed (2)** 85:20 114:11
**changes (2)** 37:1 104:4
**charitable (47)** 1:10 6:9 7:23,25 15:12 17:15 20:8 30:20 31:18 32:5,11,17 33:1,1 38:4 41:4,11 56:25 57:9,11,24 62:2,17 68:24 73:22 78:18 82:1 83:18 88:16 89:7 106:3 108:24 134:5,17 137:15 140:21,25 142:20 144:4 145:2,9,11,18,20 146:11,12 150:24
**charities (58)** 5:22 6:4,7 8:1,1,3 14:5,14,16,17 15:6,23 17:22,25 20:20 21:15,15 32:12,25 33:3 41:14,23,24 42:3,5 56:8 57:20 58:2 61:21 63:3,9 80:1,2,3 82:3 83:6,6,7,10 107:8,24 108:8 134:7,19 135:15,23 137:17 142:2,9,12 143:22 144:5 145:13 146:10,19,19 151:9,14
**charity (5)** 19:12,18 56:19 83:14 107:8
**charman (1)** 28:12
**chart (1)** 15:14
**check (2)** 152:17 156:9
**chickens (1)** 153:12
**choice (1)** 72:13
**choose (1)** 134:25
**choosing (1)** 8:3
**chose (1)** 91:19
**chronology (1)** 88:24
**church (3)** 58:6 61:14 82:7
**circulated (3)** 50:20 51:2 94:3
**circumstances (18)** 6:11 12:8 17:22 18:2 38:3,7 43:3 72:8,13 90:23 92:25 93:13 97:1 117:22 126:2 130:5,25 148:4
**civil (1)** 13:11
**claimant (1)** 29:21
**claimants (1)** 24:20
**claimed (1)** 123:4
**claiming (1)** 23:3
**claims (13)** 22:25 23:1,9,11,21 63:20 66:11,18 111:17 112:2 123:6 132:23 149:10
**clarification (2)** 90:4 128:3
**clarified (1)** 156:24
**clarify (5)** 11:2,3 51:4 108:2 127:24
**clause (7)** 139:9,12,17,25 140:18 141:1,5
**clear (14)** 3:11 8:4 13:20 21:21 37:2 39:10 49:19 65:13 72:8 75:11 122:13 147:18 155:12,17
**clearer (1)** 36:17
**clearly (7)** 33:12 43:13 44:21 95:23 129:22 131:11 154:16
**clerk (1)** 76:4
**client (3)** 71:14 72:3 140:16
**clients (16)** 47:24 48:12 55:7 63:6 71:21 72:6,20 88:20 89:10,23 90:13,15 93:7 117:2 128:21 139:7
**climb (1)** 84:24
**clo (9)** 63:21 89:2 100:25 101:4,13 103:18,23 110:5 138:18
**close (1)** 47:17
**cobbled (1)** 59:17
**coconspirators (1)** 13:11
**cogent (2)** 86:25 94:23
**collateral (4)** 43:20 48:8 84:6 118:2
**colleagues (6)** 77:2 115:11 120:19 131:25 149:22 152:17
**combat (1)** 71:10
**come (18)** 10:2 12:7 17:24 18:20 21:19,21 32:21 40:11 47:17 62:16 64:17 73:20 77:16 79:13 81:3 83:2 86:11 111:20
**comes (3)** 53:8 65:11 82:7
**coming (3)** 11:10 18:10 20:5
**commanding (1)** 20:2
**commas (1)** 80:2
**commence (1)** 26:3
**commensurate (2)** 57:19,25
**comments (2)** 132:25 133:2
**commercial (1)** 114:4
**commission (1)** 144:23
**commitments (6)** 6:9 146:4,5,11,13 158:18
**committed (4)** 71:21 145:24 146:1,13
**committee (1)** 96:3
**common (1)** 138:24
**communities (1)** 145:17
**community (1)** 6:5
**companies (15)** 4:15 15:5 27:10 122:21 123:11,23 124:3,8 125:15,21,25 126:16,24 128:20 142:19
**company (70)** 6:4 7:1 13:24 15:23 16:16 17:8,10,12,17,24 18:20,22 20:13,13,14,14 21:14 22:21 23:9,20 25:22 30:10,12 38:1 43:3 44:5 52:1 55:12,23 56:1,5,7 57:9 66:12 67:17 68:6,12 69:24 74:1,5 87:17 97:6 99:9 100:2,5 107:18 110:6 122:14 124:5 126:25 131:9,11 138:9,16,20 139:2,4 140:17 141:20,23 142:3,13 144:1,11 145:2,12 146:22 147:12,16 149:6
**companys (16)** 5:9,12 6:2,18,22 9:1 16:21 22:3 67:4 95:2 99:24 108:3 122:24 137:14 144:16,17
**compare (2)** 153:13,15
**compared (1)** 152:24
**comparing (1)** 153:11
**comparison (5)** 96:21 152:23 153:4,12,17
**compelled (1)** 92:19
**compensate (1)** 131:3
**compensated (3)** 37:18,19 130:24
**compensation (5)** 28:5,15 37:21 119:16 123:4
**competing (1)** 83:6
**complaining (3)** 58:13 60:3 144:24
**complaint (1)** 13:8
**complaints (2)** 14:13,15
**complete (3)** 46:21 82:21 118:24
**completes (1)** 84:18
**compliance (2)** 27:21 157:5
**complied (3)** 44:21 114:3,22
**comply (4)** 27:24 47:25 78:11 90:13
**comprehensively (2)** 52:20 120:7
**compromised (1)** 63:11
**concentrate (1)** 3:6
**concern (5)** 27:5,11,12 124:17 125:2
**concerned (10)** 21:7 28:17 61:18 65:21 88:6,7 116:22 130:17 132:15 148:21
**concerns (4)** 86:14 89:5 104:24 122:25
**concession (1)** 8:17
**concluded (8)** 68:12 73:2 78:16 81:24 87:14 92:22 95:3 158:25
**concluding (1)** 85:12
**conclusion (17)** 68:17,21 69:3,7,11 70:6,8 76:12 79:2,3 85:8 87:16,19,21 95:16 97:3,7
**conclusions (2)** 70:7 85:5
**concurrent (1)** 9:18
**condition (1)** 131:17
**conduct (13)** 5:22 6:2 8:6 53:3 77:17 88:16,20 91:9 93:25 94:21,22 95:6 129:8
**conducted (2)** 132:13 134:11
**conducting (1)** 77:8
**conduit (1)** 56:5
**confidently (1)** 158:19
**confined (2)** 66:9 96:6
**confirm (4)** 4:2 33:7 114:1 158:7
**confirmation (1)** 44:5
**confirmed (2)** 23:17 47:25
**confirming (1)** 114:19
**conflicted (1)** 91:21
**connected (1)** 122:21
**connection (3)** 77:18 141:10 158:3
**connections (1)** 96:22
**conscious (3)** 74:17,18 132:4
**consent (6)** 9:3 43:1 45:2,22 91:3 104:5
**consented (3)** 24:2,4 104:4
**consequence (4)** 63:1,10 83:25 114:15
**consider (4)** 8:6 41:21 93:5 149:3
**considerable (5)** 13:20 60:5 90:15 93:8,22
**consideration (3)** 65:10 129:24 140:24
**considered (9)** 21:16 23:6 53:12 68:5 70:20 71:15 74:3 122:8 141:6
**considering (1)** 149:2
**consistent (1)** 6:13
**consistently (1)** 18:12
**consolation (1)** 75:7
**conspicuous (1)** 94:12
**constitutional (2)** 147:2 148:9
**constraint (1)** 56:17
**construing (1)** 147:1
**consult (1)** 90:4
**consulting (1)** 96:1
**contained (2)** 36:22 72:23
**contains (4)** 29:14 37:3 44:5,11
**contemplated (1)** 56:15
**contempt (1)** 99:3
**content (1)** 135:22
**contested (4)** 47:15 72:21 94:25 95:13
**context (7)** 3:15 18:13 29:17 48:2 119:25 147:19 148:2
**continue (14)** 7:14,21 24:12 30:1,20 47:24 76:6 88:15 92:7 95:14 106:2 135:16,16 139:16
**continued (3)** 32:11 72:24 105:10
**continues (1)** 114:2
**continuing (5)** 20:3 41:17,20 48:19 66:4
**contractual (1)** 30:5
**contradict (1)** 47:15
**contradicted (1)** 50:18
**contradicts (1)** 53:4
**contrary (2)** 55:25 63:8
**contributed (5)** 17:11,19 56:1 138:17,21
**contribution (2)** 139:4,6
**contributions (3)** 135:5 138:13 140:7
**control (20)** 5:15 6:21 12:25 13:25 14:1 18:8 34:15 63:5,10 66:5 73:17,23 74:5,14 87:24 89:17 103:17 151:17 155:16 156:6
**controlled (6)** 12:19 14:2 43:21 44:4 138:23 155:12
**convened (1)** 116:4
**convenience (23)** 3:22 16:25 17:3 19:3 21:25 37:14 69:17,20 73:13,19 74:3 76:9,15 77:13 78:1 79:2 84:19 85:6,19,21,24 111:16 149:5
**convenient (4)** 53:18 74:21,22,23
**conveniently (2)** 121:23 141:4
**convening (1)** 1:7
**core (4)** 62:1 69:3,7,11
**corners (1)** 148:3
**corporate (5)** 26:24 36:2 126:5 142:11 144:9
**corporations (1)** 109:1
**correct (13)** 3:19 16:6 20:24 23:25 24:1,6 51:24 64:21 117:6 128:10 135:24 139:2 141:22
**correctly (8)** 44:19 55:17 57:4 67:6 91:7 98:21 111:24 136:4
**correspondence (2)** 50:19 132:16
**cost (4)** 48:19 80:14 90:15 105:10
**costs (3)** 78:10 91:23 111:13
**council (2)** 147:18 148:14
**counsel (4)** 107:5,9,18 117:1
**count (1)** 82:3
**counterparties (1)** 105:19
**couple (1)** 127:14
**course (70)** 7:22 13:18 21:13 25:21 26:6 28:17 30:2,22 31:13,16,17,23 32:1 41:22 42:14 43:5,17 47:2 52:16,24 61:25 65:20 71:23 72:24 73:10 77:21 82:16 83:3,11,15,21,24 84:4,8 86:9 89:7,16 90:6 101:11 105:9,13,14,20,23 106:2 107:4,7,22 108:1,7 111:1 114:8 119:15 120:15 121:15 123:25 125:10 128:15 129:9 134:2,10,13 135:4,8,9 136:3,8,9 148:25 149:8
**courtroom (1)** 76:3
**courts (4)** 53:20 79:16 84:11 119:12
**cover (3)** 72:14 121:6,7
**covered (11)** 26:23 27:6,15 28:5 29:22 40:10 71:25 86:16 110:16 117:10 118:13
**created (1)** 92:17
**credits (1)** 140:9
**critical (2)** 110:4 140:15
**cross (1)** 78:12
**crossundertaking (21)** 44:24 45:5,11,21,23 46:4 48:23 78:2 93:11 119:1,3,13,22 120:13 130:14,15,16 131:6,16 155:23 156:2
**crossvine (1)** 119:4
**crystal (1)** 65:13
**current (3)** 15:11 82:13 114:9
**currently (5)** 6:24 7:23 15:22 39:14 123:9

**D**

**d (1)** 159:1
**daf (19)** 1:10 5:17 6:12 17:7,25 18:19 32:12 37:24 83:9 142:19,20 143:17,21,25 144:3 145:2,11,16 150:25
**dafs (1)** 145:9
**dallas (1)** 109:2
**damages (12)** 37:16,18 38:2,7 45:6,11 46:4 48:23 93:11 119:2 120:13 123:4
**danger (5)** 70:4,16 77:24 87:7,13
**dangerous (1)** 106:18
**date (9)** 2:3 32:18 41:16 42:10 51:19 91:24 115:23 158:14,15
**dates (2)** 41:12 104:12
**day (3)** 72:10 89:20 92:18
**days (5)** 51:1 53:11 72:17 89:1 120:4
**deal (24)** 2:24 3:23 14:5 16:13 29:3 32:15,16 34:14 35:16 36:24 43:22 44:1 50:9 57:2,7 84:8 103:13 105:19 107:19 109:18,21 118:20 133:19 148:22
**dealing (10)** 8:18 63:16 89:6 93:3 95:1 105:22,23 121:8 137:13 157:1
**dealings (6)** 65:20 71:23 72:24 83:24 101:10 128:8
**deals (4)** 69:20 108:15 114:23 130:22
**dealt (9)** 39:2 70:19 73:10 76:17 78:5 114:7 116:24 121:7 128:19
**debate (1)** 135:8
**debt (2)** 103:19 104:2
**decade (1)** 63:18
**december (6)** 72:17 85:21,24,25 92:15 108:17
**decide (2)** 54:13 148:11
**decided (6)** 23:7 39:11 52:15 58:18 158:10,11
**deciding (1)** 85:14
**decision (13)** 23:16,18 24:9 41:25 53:6 65:14,15 67:12 109:10 148:14 154:23 158:12,19
**declare (2)** 20:25 155:10
**declined (4)** 6:17 8:9 57:13 69:15
**deductions (1)** 140:8
**defaulting (4)** 86:4 103:24,25 155:10
**defendant (4)** 1:16 26:24 111:15 132:21
**defendants (12)** 24:21,24 34:12 43:1 70:3 73:20 78:11 100:15 121:17,19 123:12 130:4
**defer (2)** 104:11,13
**deference (2)** 18:5,15
**defined (2)** 125:13,16
**delay (2)** 52:25 129:15
**delivered (1)** 53:14
**demands (1)** 2:2
**demonstrate (1)** 7:1
**denials (1)** 71:5
**denied (2)** 13:17 95:7
**depart (1)** 148:9
**depending (1)** 28:22
**deplete (1)** 37:25
**deprived (3)** 6:8 53:15 54:2
**deprives (1)** 54:19
**derivative (1)** 23:12
**descending (1)** 40:18
**described (3)** 43:19 96:24 98:5
**despite (1)** 73:4
**detail (10)** 5:23 16:12 53:10 54:9 77:12 86:10 103:14 118:2 130:7 147:4
**determination (3)** 6:14 64:9 66:3
**determinations (1)** 53:25
**determine (2)** 53:23 54:19
**determined (3)** 72:25 115:18 140:23
**develop (3)** 46:17 47:18 83:2
**development (1)** 105:3
**dfw (60)** 1:16 7:23,24 15:12,21 19:7,18 20:1,5,9,12,17,21 21:5,8 26:19 27:7 30:2,20,25,25 31:11,15,22 32:4,11,17 33:4 38:3 40:15 41:4,11,14,25 57:18,24 66:14,15 84:13 107:7,12,21 108:4,6,12 110:23 132:21,24 133:7 134:3,12,14,24 135:5,16 136:10 149:1 151:3,10,18
**dfws (1)** 31:16
**dicta (1)** 148:16
**didnt (22)** 9:8,13 10:4,19,20,24 11:6,11,14,15 14:22 23:8 24:3 31:4 45:13 49:25 84:13 107:9 110:12 144:7 152:23 155:3
**difference (4)** 33:20,22 76:14 133:14
**different (7)** 28:24 32:12 38:4 41:24 96:12 121:19 145:19
**difficult (4)** 50:17 58:16 59:24 158:18
**difficulties (1)** 112:16
**difficulty (4)** 44:22 77:6 93:17 124:20
**diminish (1)** 34:14
**direct (6)** 23:3,11 30:21 109:25 126:1 154:20
**directed (2)** 52:8 144:4
**directions (2)** 3:18 18:10
**directly (6)** 9:22 12:7 19:3 34:17 83:5 125:7
**director (16)** 20:14 27:3,14,17 97:9 101:16 123:10,24 124:7 125:23 126:17,24,25 153:6,18 157:3
**directors (31)** 5:11,19 6:7 7:13,19 8:5 18:18 20:19,25 21:4 23:4 27:21 28:9,16,19 31:14 32:19 40:10 72:3 76:14 77:17 78:21 94:20 95:8 97:12 101:6 110:12,20 123:2 151:15,19
**disagree (1)** 55:8
**disappointingly (1)** 6:16
**discern (1)** 119:20
**discharge (2)** 100:22,22
**disclose (1)** 44:6
**disclosure (29)** 8:19 29:15,18 30:16 31:1,5,6 33:23 34:3 37:4,6,10 40:1 42:12,23,24 43:4,7 44:7 48:20 73:4 80:13 90:19 98:8 105:11,11 111:8,12 117:20
**disclosures (1)** 43:18
**discovery (1)** 111:20
**discretion (12)** 11:19 20:24 21:4 46:24 47:2,6 70:11,13 80:9 85:18 134:24 140:19
**discretionary (7)** 69:16 77:9 79:3 85:5,8 134:6 142:9
**disenfranchise (1)** 134:19
**disenfranchisement (1)** 134:21
**dismiss (2)** 48:25 65:15
**dismissal (1)** 46:15
**dismissed (1)** 50:14
**dispose (2)** 34:13 125:6
**dispute (10)** 24:7 30:9 57:6 67:11 81:18 96:5 104:20 111:3 136:11 156:6
**disputed (3)** 64:22 123:15,21
**disputing (1)** 30:10
**dissipate (2)** 89:10,24
**dissipated (1)** 8:8
**dissipation (36)** 8:4 12:12 47:13,21 48:11 53:2 56:12 64:19 66:2 71:16 77:20 81:5,13 82:23 86:16 87:2,10 88:13,18,23 90:21,25 91:6,11 92:1 94:1,10,14,24 95:16 97:14,18 102:22 103:3 112:8 150:20
**dissonance (1)** 61:1
**distinct (1)** 132:24
**distressed (1)** 82:7
**distributed (1)** 58:1
**distribution (8)** 20:25 32:19 34:19 58:3,5 106:3 108:4 111:1
**distributions (27)** 7:23,25 21:17 30:24 31:15 56:4,4,11 57:25 61:12,16,24 62:2 83:9,14 107:11,21 108:6,8,12 109:5 110:23 140:19

141:10,25 144:5 146:17
**dividends (3)** 15:7 20:18 146:10
**division (1)** 138:1
**document (4)** 58:24 59:1 60:19 143:9
**documented (1)** 95:11
**documents (6)** 15:20 59:2 147:2,3 148:4,9
**does (18)** 28:14 31:10 51:9 53:21 59:9 60:13 83:8 85:13 95:14,16 122:18 123:14 124:8 126:13 130:24 142:2 147:13 155:14
**doesnt (10)** 13:24 26:14 27:7 28:8 29:3,13 82:20,22 105:13 116:2
**doing (6)** 1:22 38:5 102:4,12 128:23 151:23
**dollars (4)** 28:18 145:19 151:8,13
**donate (1)** 145:19
**donation (3)** 32:5,17 61:14
**donations (24)** 20:8 31:10,19,22 32:7,11 33:4,9 38:4 40:7,15 41:13,21,23 42:1 62:17 107:7 109:5 134:3 135:17 143:23 146:5 150:24 151:13
**dondero (35)** 12:19 13:11,21 14:1,3,13 43:21 44:4,7 48:9,18 62:19,23 63:2,14,25 64:5 87:24 96:20,23 99:8,15,22 103:17 104:17 105:3 106:13 109:10 115:4 116:19 139:1 144:2 155:13,13,19
**donderos (11)** 63:10 71:10,13 86:1,9 92:4,8 109:1 114:15 119:4 144:24
**done (9)** 1:3 19:24 20:23 71:6 74:13 76:13 96:1 104:18 115:11
**donor (2)** 143:20 144:1
**donoradvised (2)** 142:18 143:17
**dont (44)** 7:7 9:16 10:14 16:11 32:15,20 35:4 36:1,25 37:22 38:23 41:15 42:22,23 43:17,22,23 46:23,23 49:15 54:17 57:5 59:6,18,19,23 75:12 80:7 82:3 84:13 92:23 109:7,9 110:1 116:3 120:19 131:24 133:17 149:20,23 151:20,21 154:13 157:12
**door (1)** 136:16
**double (1)** 152:22
**doubt (16)** 13:13 28:12 36:23 41:9 49:20 54:8 59:7 65:24 66:2 87:4 91:13 93:21 99:5 114:4 118:3 155:14
**down (26)** 10:21,22 28:2 32:24 51:22 52:23 72:14 73:16,16,20 76:19 79:8 81:3 82:1 83:19,25 89:15 108:17 113:16 116:11 129:13 136:17 139:9,16 145:4 158:3
**downloading (1)** 58:19
**draconian (3)** 49:3 103:1 106:5
**draft (3)** 50:20 51:1 94:3
**draw (3)** 62:5 86:17 144:25
**drawing (1)** 142:10
**drawn (1)** 153:17
**duane (1)** 22:11
**due (8)** 43:17 52:24 83:3 84:4,8 119:14 120:14 133:14
**duplicating (2)** 102:9,12
**during (6)** 58:12 75:16 86:9 91:18 103:12,21
**duties (4)** 20:13,14 23:4 97:6
**duty (2)** 5:14 76:14
**dwf (8)** 56:11,20,24 61:12,18 83:6,10,14

E

**e (6)** 118:4 125:13 137:22 142:24 143:1 159:1
**earlier (13)** 48:1 61:13 62:12 77:23 86:22 87:11 92:25 94:2 108:15 110:3 112:16 151:4 156:16
**early (1)** 92:2
**earned (1)** 96:10
**easily (1)** 44:18
**easter (2)** 158:20,23
**economic (13)** 17:19 18:2,6,15,23 55:24 139:23 140:11,12,15 141:23 146:22 147:13
**education (1)** 6:5
**effect (4)** 18:19 73:21 93:22 128:7
**effective (2)** 72:15 112:5
**effectively (4)** 17:17 23:1 80:15 152:20
**efficacy (2)** 128:25 129:4
**effort (1)** 72:21
**eg (1)** 80:19
**ego (1)** 63:24
**egregious (1)** 6:3
**either (9)** 16:18 46:5 49:12 51:23 53:16 64:7 95:18 131:24 149:21
**el (1)** 150:13
**elaborate (1)** 123:7
**elaborates (1)** 78:14
**elapsed (1)** 74:19
**electronic (6)** 4:3,8 22:6 35:8 45:19 58:15
**element (1)** 12:25
**else (4)** 2:9 130:18 134:25 157:7
**email (2)** 4:19 113:7
**emerged (1)** 109:20
**emphasise (1)** 130:13
**emphasised (1)** 86:21
**emphasising (1)** 3:3
**employee (2)** 28:5,8
**employees (1)** 110:15
**empty (1)** 96:25
**enable (1)** 119:14
**encumber (1)** 34:14
**end (6)** 13:15 52:19 54:25 62:9 139:10,18
**endeavour (1)** 59:22
**endeavours (1)** 146:12
**endorse (1)** 79:15
**enforce (3)** 25:23 99:5,10
**enforceable (4)** 98:22,23 115:3 148:12
**enforced (2)** 99:21 115:5
**engage (1)** 71:22
**england (1)** 133:14
**enough (2)** 33:13 132:14
**ensures (1)** 114:7
**entailed (1)** 96:14
**enter (2)** 25:14 89:3
**entered (9)** 16:1,3 25:17 71:20 91:2 93:2,18 102:23 108:17
**entering (1)** 19:13
**entertain (1)** 54:16
**entirely (15)** 2:5 28:24 29:24 30:22 31:15 38:8 88:21 93:19 101:3 104:19,20 105:11 112:1 134:6 149:7
**entities (33)** 5:15 26:23 27:6,16,17 28:6 36:2 43:21 44:8,12 48:15 57:3,9,11 62:3 63:5 71:25 89:2 110:16 114:5 122:16 124:12 125:5,8,12,13,16,24 126:5 139:1,1 144:2 146:25
**entitle (2)** 68:8 74:4
**entitled (13)** 17:1 21:16 23:5 31:18 33:24 42:13 74:7 132:8 134:16,18,21 156:1,7
**entitlement (5)** 80:4,8,20 146:20,25
**entitlements (1)** 148:12
**entity (4)** 66:15 103:16 106:3 152:6
**entry (1)** 57:7
**equally (2)** 85:19 155:25
**equitable (1)** 18:7
**equity (2)** 138:18 145:10
**equivalent (1)** 103:8
**eric (1)** 60:20
**essential (1)** 119:13
**essentially (1)** 96:13
**establish (2)** 73:9 85:1
**established (2)** 68:19 86:25
**establishment (1)** 96:3
**estate (1)** 136:19
**etc (2)** 80:21,21
**euphemistically (1)** 5:17
**evaluate (1)** 77:16
**evaluating (1)** 53:8
**even (22)** 7:18 8:10 29:18 40:2 47:9,19 48:8,21 66:7 69:10 74:1 94:5 97:21 99:4 102:21 111:17 112:2,3 119:2 126:16 127:9 129:10
**event (9)** 2:1 9:25 37:2 69:14 82:24 93:21 110:4 121:7,20
**eventually (1)** 52:16
**eventuated (1)** 91:1
**ever (3)** 65:23 91:14 115:6
**every (2)** 49:4 50:4
**everybody (2)** 2:5 81:2
**everyone (1)** 157:18
**everything (1)** 42:7
**evidence (46)** 4:23 14:3 27:16 29:1,4 32:3,8 33:8 45:3 46:2 47:14 48:1 53:13 58:5,8 61:11 70:9,20 71:1,4,12 73:3 77:9 87:1 88:12,14 90:18 91:4 94:13,23 95:9 96:4 99:1 100:12,17,18 103:10 108:11,14 109:6 112:12 114:16 122:18 128:23 148:1,10
**evidenced (1)** 94:20
**evidences (1)** 97:13
**evidential (1)** 117:19
**exact (1)** 158:14
**exactly (8)** 22:18 56:20 57:13 85:17 88:3 105:2 113:20 135:21
**examine (1)** 94:12
**example (4)** 40:8 54:7 64:11 93:24
**examples (1)** 53:3
**exception (7)** 65:19 72:23 83:24 105:20 106:10 136:8,10
**exceptionally (1)** 132:20
**excessive (5)** 5:19 7:14 96:7 97:5 127:20
**exchange (2)** 107:24 144:22
**exchanges (1)** 116:12
**exclusively (1)** 139:14
**excuse (5)** 9:7 11:2 135:16 140:16 153:1
**exempted (6)** 18:13 68:20 147:9,19 148:2 150:6
**exercise (5)** 46:25 47:3 70:10 104:20 112:5
**exercised (2)** 47:7 154:24
**exercising (2)** 10:16 12:5
**exhibit (3)** 51:8 59:3,5
**exhibited (3)** 13:9 51:13 112:25
**exhibits (5)** 4:18 51:7 58:22 60:11,21
**exist (1)** 105:13
**existence (2)** 53:4 95:13
**existing (3)** 21:15 56:16 101:25
**exists (1)** 68:24
**expect (3)** 30:7 130:24 146:10
**expectation (2)** 134:22 146:20
**expected (2)** 90:25 131:15
**expenditures (1)** 74:15
**expensively (1)** 56:14
**experience (3)** 68:23 153:20,21
**expert (1)** 96:4
**expired (1)** 129:12
**explain (5)** 25:6 93:9 124:20 143:17 147:12
**explained (6)** 5:23 34:1 100:11 129:10 130:3 144:6
**explaining (1)** 52:10
**explains (4)** 92:25 93:4 115:15 117:7
**explanation (5)** 22:13 54:3,6 126:10 131:5
**exposed (4)** 48:13 63:12,20 96:20
**express (2)** 44:5 53:15
**expression (2)** 107:3,14
**expressly (6)** 8:11 56:14 79:4 89:4 92:20 117:9
**extend (2)** 126:7,7
**extending (1)** 124:14
**extent (4)** 14:2 57:17 66:17 126:23
**external (2)** 148:1,10
**extracting (1)** 93:23
**extremely (1)** 158:18

F

**f (1)** 125:13
**face (4)** 78:5 96:18 110:13 125:11
**facility (2)** 104:1,12
**factor (4)** 85:13 86:7 106:13 155:23
**factors (3)** 70:15 85:17,19
**failed (5)** 52:5,7 90:13 92:6 120:6
**failure (3)** 29:10 46:20 49:7
**fair (9)** 17:5 39:24 93:4,15 120:11 130:25 132:6 153:12,16
**fairly (1)** 131:15
**faith (1)** 7:20
**fall (3)** 52:22 100:10 116:7
**falling (2)** 29:2 115:17
**falls (2)** 28:21 120:23
**falsely (1)** 55:25
**falsification (1)** 85:8
**falsity (1)** 44:3
**familiar (3)** 33:10,13 87:4
**family (1)** 93:3
**fanciful (5)** 99:1,4,23 101:11,15
**far (7)** 21:6 61:18 116:22 119:20 132:15,15 148:20
**fatal (1)** 67:1
**favour (3)** 32:4 73:20 81:4
**favourable (1)** 24:9
**favours (3)** 3:22 17:3 37:14
**features (1)** 68:23
**february (5)** 51:1 52:2,9,13 129:12
**fed (1)** 109:9
**feel (2)** 10:6 12:6
**fees (10)** 28:16 29:24 30:3,6,11 104:13 110:11 152:2,7 156:15
**feet (3)** 45:17 51:20 111:4
**fellow (1)** 101:16
**few (7)** 1:4,18 2:8 3:3 51:1 55:1 76:2
**fiduciary (2)** 5:14 23:3
**field (46)** 14:22 15:2,10,15,18,25 16:4 19:5,12,15,19,25 21:2,18 31:9,20 32:3,14 34:8 67:21,25 106:21 107:1,14,25 108:10,19 109:1,11,14 111:19 115:13 120:21 122:2,5 132:1 146:24 147:6 148:5,8 149:23 150:1,6 157:14 158:2,7
**fields (2)** 56:22 57:17
**fifteen (1)** 45:17
**fifth (7)** 19:12,18 48:21 79:1 111:5 118:20 123:12
**fifthly (2)** 29:14 94:11
**fight (2)** 91:19 135:11
**figure (1)** 153:2
**filed (1)** 96:4
**final (4)** 29:23 79:1 118:21 155:5
**finally (6)** 44:23 94:11 107:16 118:20 140:14 155:22
**finance (1)** 104:13
**financial (5)** 43:2 44:15 89:4 90:9 131:16
**financially (1)** 131:9
**find (12)** 32:20 33:9 51:6,12 58:23 60:3 111:3 112:22 124:22 150:4 152:14 153:8
**finding (2)** 18:13 90:12
**findings (2)** 87:5 113:23
**fine (2)** 67:25 150:15
**fingers (1)** 81:3
**finish (4)** 1:19 75:15 133:15 148:8
**firm (2)** 50:25 96:1
**firmly (3)** 73:20 87:8 88:19
**first (38)** 1:19 2:7,7 10:5 17:19 20:16 23:7,18 26:15,18 27:5,10 37:16 38:13 46:19 47:8 49:5,7,14 50:1 52:18 53:20 55:12,21 58:20 65:12 67:14 86:19 95:1 109:23 112:18,23 113:8 129:21 140:18 140:24 154:19 155:4
**firstly (1)** 98:21
**fist (1)** 137:18
**five (9)** 4:17 46:14 59:1 86:17 97:15 98:12,18 123:17 125:23
**fix (1)** 58:6
**flatly (1)** 50:18
**flavour (1)** 71:4
**flies (1)** 110:13
**focus (1)** 53:5
**focused (1)** 76:23
**follow (5)** 43:5 68:17 75:12 148:19 149:16
**followed (3)** 60:6 89:12 91:16
**following (6)** 3:13 70:21 71:17 95:25 97:2,10
**follows (2)** 37:9 124:4
**followup (1)** 149:24
**footnote (1)** 32:23
**force (1)** 102:1
**foregoing (2)** 48:22 141:9
**foreseeable (1)** 47:24
**forgive (8)** 9:4 11:9,13 21:22 24:18 74:16 140:1 148:18
**form (6)** 25:15 48:17 66:8 84:6 125:1 138:22
**formality (1)** 124:17
**formally (1)** 129:12
**formed (2)** 85:9,10
**former (4)** 151:23 153:5,6,18
**formerly (1)** 66:13
**forms (3)** 89:12 106:11 118:13
**formulates (1)** 68:4
**forth (1)** 138:14
**fortification (5)** 44:24 45:24 79:5,8 119:5
**fortified (4)** 48:24 93:10 120:14 130:15
**fortiori (1)** 126:14
**forum (1)** 24:6
**forward (7)** 45:4 46:2 64:13,14 94:13 98:12 119:19
**fought (1)** 82:15
**found (10)** 6:11,12 51:16 55:17 64:3 91:7 109:8 111:13 149:12,14
**foundation (3)** 41:3,5,11
**foundations (7)** 71:14 88:4 92:5 99:6,13,15,17
**four (19)** 6:4 8:1 15:4,6 19:10 21:15 32:25 56:8 57:19 58:2 61:20 63:9 83:7 108:21,23 134:7 145:13 146:19 148:3
**fourth (8)** 1:16 48:10 77:25 91:8 100:24 118:12 132:21 141:7
**fourthly (1)** 28:20
**fragmented (2)** 4:8,25
**frame (1)** 65:1
**framed (2)** 124:18 136:7
**free (1)** 7:13
**freezing (7)** 48:15 105:15,17 106:5,12 119:8 120:11
**friday (1)** 1:1
**friends (13)** 13:23 50:25 55:19 90:19 100:13 101:17 108:9 109:20 110:17 119:21 141:2,4 149:2
**frustrate (1)** 124:1
**frustration (1)** 100:22
**full (6)** 44:13 52:17 53:11 66:17 119:14 153:15
**fully (1)** 84:8
**fund (73)** 27:7 35:17 42:13 44:18 55:14 57:13 61:17,20 62:16 63:7,19 64:5 65:18 66:4,21 67:1 68:7,10,15,23 69:5,13 71:8,11,21 72:1 73:23 74:5 78:18 82:1,12,14 83:18,25 85:2 89:1,16 92:7 95:21 96:15,19 101:4,5,7,10,12 103:20 110:7,8 122:14,15,19,22 123:10,11,21,24 125:5,8,8,9,12,13,16,24 126:12,22 127:5 142:18,20 143:17 145:2 155:10
**fundamental (1)** 155:20
**fundamentally (8)** 49:24 55:7,23 56:10 61:22 81:14 96:12 136:1
**funded (2)** 146:3,16
**funder (2)** 48:9 119:3
**funding (7)** 12:24 13:1 15:12 62:14 92:9 99:16 131:13
**funds (9)** 6:8 40:13 62:1 63:11 89:7 96:16 109:25 143:21 144:4
**further (20)** 14:12 15:24 19:6 24:16 45:8 46:7 48:17 82:25 85:16 88:3,8 93:24 103:7 120:16 128:14 146:4 149:17,23 156:18 157:10
**future (2)** 47:24 146:16

G

**gains (1)** 140:8
**gap (1)** 40:1
**gave (8)** 50:6,7 73:12 76:11 82:18 105:4 129:12 140:2
**general (13)** 26:19 68:18 122:20 128:13 137:15 139:14,23 140:6,11,20,23 141:15 142:5
**generally (1)** 121:17
**genesis (1)** 25:16
**genuine (1)** 94:8
**get (17)** 6:23 12:3 14:7 17:23 24:3 25:25 38:6,22 39:21 59:24 62:9 82:8 86:24 102:15 135:17 142:19 156:5
**gets (4)** 80:25 84:17 111:4 141:21
**getting (1)** 4:10
**give (39)** 3:14 5:20 8:12 10:10 12:2 15:18 20:1,21 22:13 24:16 26:14 30:16 36:1 39:23 42:23,23 43:10 44:13 48:19 51:5,23 59:21 67:8,22 71:3 72:13 89:21 92:19 98:17 104:16,24 105:10 116:12 122:2 129:20 134:23 156:2 158:11,13
**given (29)** 2:20 3:18 16:9 18:5,16 48:6 52:21 70:20 73:5,15 78:9 81:5 86:2 90:20 92:24 93:14 112:15 116:17 117:23,24 118:1 119:20,22 120:1 129:15 136:22 142:12 151:3 155:17
**gives (5)** 17:4 43:14 106:15 112:21 139:13
**giving (8)** 76:24 82:4 103:8,23 104:10,23 105:7 155:9
**glad (1)** 24:22
**global (1)** 96:1
**gmt (1)** 158:24
**goes (8)** 16:24 41:15 75:10 83:5 93:9 134:8 135:12 140:15
**going (35)** 5:18 8:8 9:10 13:13 14:4 26:11 38:5 39:25 40:4 41:16 42:13 59:19 65:9 73:7 75:3,15 80:13 102:2 109:18 112:11 116:5 118:22 121:4 125:17 129:2 132:7 133:21 137:20 141:17 142:25 146:16 148:19,20 155:18 158:11
**gold (1)** 81:20
**gone (8)** 11:1 40:13 41:23,24 42:3 56:4 85:24 158:3
**good (12)** 4:6 50:7 54:23 58:15 70:18 75:20 78:13 82:10 102:17 112:13 113:4 153:2
**goodman (4)** 7:6,7,8,10
**governance (1)** 71:22
**governed (1)** 138:8
**gp (1)** 26:19
**grand (20)** 5:10,24 9:17 10:14,23 12:13 13:6,15 14:18 22:10 40:17,18,20 120:5 137:21 141:3 142:22 151:5 155:24 156:11
**grant (27)** 6:17 11:11,17 12:5 38:9 39:1,7 47:10 50:13 55:4 65:3 69:25 78:13 85:14 103:4 112:4 121:21 124:3,12 126:4,11 146:7 149:2 154:2,10,17,20
**granted (8)** 2:16 13:2 48:13 65:8 70:2 73:21 78:17 118:14
**granting (8)** 3:22 17:4 25:13 103:1,8 106:8 119:10 124:8
**grants (3)** 105:1 151:8,9
**grateful (10)** 3:11 51:15 54:16 76:7 77:3 115:14 116:10 133:24 157:22 158:21
**gratefully (1)** 133:6
**great (2)** 2:2 81:2
**greater (1)** 96:8
**gross (1)** 5:14
**ground (7)** 49:6 86:16 97:23 117:10 118:12 121:6 138:24
**grounds (8)** 16:12 19:2 46:14 69:1,3,6 84:21 95:8
**groups (1)** 80:7
**grown (1)** 96:16

**guidance (1)** 3:12
**guys (1)** 59:24

**H**

**half (1)** 151:11
**hand (1)** 83:7
**handed (4)** 10:21,22 52:23 129:13
**hands (3)** 33:14 94:7 99:7
**happen (3)** 100:4 116:5 136:14
**happened (12)** 19:17 21:13,14 25:7 38:24 56:20 87:25 88:1 91:4,18 92:4 94:2
**happening (2)** 30:13 88:10
**happens (4)** 28:22 38:12 45:16 104:16
**happy (3)** 44:1 62:7 74:24
**hard (1)** 78:21
**hardship (3)** 65:11 129:18,21
**harm (4)** 79:17 102:4 105:8,9
**hasnt (1)** 131:6
**havent (3)** 38:17 109:3 152:3
**having (19)** 7:12 11:25 18:23 24:16 26:3 40:16 50:4,14 60:14 62:11 68:18,22 71:15 74:19 84:20 88:1 96:16 105:10 113:22
**haynes (2)** 143:14,16
**headed (4)** 41:3,4,6,11
**heading (3)** 67:13 73:16 122:6
**headings (1)** 3:14
**hear (9)** 2:21,25 31:4 39:4 45:14 107:16 116:4 155:3 158:4
**heard (3)** 28:12 53:11 100:11
**hearing (30)** 1:24 2:3 3:5 4:15 8:13,24 25:10,11,16 38:18 41:9 42:10 50:23 59:8,11 72:10,15,21 80:16 81:8 85:21 86:10 92:13 103:12,21 116:24 128:24 133:1 143:12 158:25
**heart (4)** 70:17 134:8 135:12 136:11
**heavy (1)** 72:12
**held (9)** 66:13,14 111:23 125:7,19 126:15,16 127:19,20
**help (6)** 45:7 60:16 112:21,21 131:21,25
**helpful (9)** 2:15 15:14 22:12,17 35:5 84:10 109:16 128:2 133:9
**here (42)** 6:15 10:3 13:7 16:23 17:6 18:22 20:12 21:13 23:2 24:3,25 25:1 26:2,4 47:7 53:2 60:17 64:3 74:4 77:4 81:22 83:4,17 86:17 88:25 102:3,10 111:25 112:10 117:8 118:18 135:20 140:5 143:18,24 144:10 145:8,21 146:9 148:19,22 155:25
**hes (1)** 158:3
**highland (11)** 71:14 88:4 92:5 99:6,12,15,17 109:2,2 138:25 144:2
**highlight (2)** 143:19 145:8
**himself (5)** 86:20 87:12 123:14,22 125:20
**historic (4)** 47:15 73:7 90:7 95:5
**history (1)** 116:16
**hold (9)** 80:15,21,25 81:6 122:19 123:15 124:13 126:13 135:14
**holdco (11)** 1:10 63:21 89:2 100:25 101:4,13 103:18,23 110:5 138:18 145:12
**holding (3)** 89:2 110:6 114:10
**holds (2)** 66:15 123:21
**hope (8)** 36:17 54:8 82:4 106:15 112:21 121:4 157:19 158:4
**hopefully (3)** 33:13 40:19 158:13
**hostile (1)** 63:1
**hotly (2)** 64:22 94:25
**hour (1)** 45:16
**hours (1)** 74:18
**however (7)** 98:23 122:17 123:13 136:20 139:20 141:4 153:16
**hundreds (1)** 53:12

**I**

**idea (6)** 75:20 102:7 134:1,3 137:15 150:19
**ideal (1)** 39:23
**ideally (1)** 136:16
**identify (3)** 67:6 98:19 128:17
**identifying (2)** 29:20 112:16
**ie (1)** 33:1
**ignorant (1)** 80:22
**ignore (2)** 99:13 141:4
**ignored (2)** 96:11,22
**ignores (5)** 93:19 99:12,13 119:25 120:2
**iii (2)** 138:1,3
**ill (3)** 14:11 25:5 147:7
**illusory (1)** 91:7
**illustrate (1)** 77:5
**illustrated (1)** 63:20
**illustrates (2)** 42:12 135:1
**im (9)** 4:12 9:11 48:7 56:9 62:11 106:25 116:10 143:11 158:4
**imagine (1)** 19:6
**immediate (1)** 88:9
**immediately (1)** 158:11
**impact (2)** 78:20 145:17
**impacts (2)** 106:8 117:19
**implications (2)** 52:25 53:6
**important (7)** 16:23,23 29:18 34:2 40:2 72:8 124:6
**importantly (1)** 144:13
**imposed (1)** 67:19
**imposes (1)** 48:15
**impossible (3)** 38:6 42:1 50:17
**improper (4)** 19:24 48:17 116:20 134:11
**improperly (1)** 37:25
**improve (1)** 54:8
**impugn (2)** 14:9 69:3
**inability (1)** 156:2
**inadequacy (3)** 87:2 111:6,10
**inadequate (2)** 109:24 150:3
**inappropriate (1)** 54:15
**inaudible (16)** 8:7 12:24 15:3 18:11,20 22:15 29:20 128:1,1 133:1 135:17 141:1 144:10 149:4 153:14 156:2
**inception (1)** 145:16
**include (1)** 146:5
**included (2)** 71:4,12
**includes (5)** 72:1,2 73:3,6 125:4
**including (5)** 78:20 90:7 96:2 123:11 129:18
**income (3)** 82:7 140:8 152:1
**inconceivable (1)** 115:4
**inconsistent (5)** 88:21 89:9,22 91:9 93:25
**inconsistently (1)** 101:14
**inconvenient (2)** 14:8 103:4
**increase (6)** 28:4,7,15 71:24 110:15 114:9
**increasing (2)** 110:11,20
**indemnification (2)** 30:5,8
**indemnity (1)** 91:23
**independently (1)** 70:6
**index (2)** 59:18 60:11
**indicate (1)** 88:9
**indicated (1)** 9:9
**indicates (1)** 9:12
**indication (1)** 55:3
**indications (1)** 3:11
**indirect (6)** 27:8,9 68:9 140:20,25 145:10
**indirectly (3)** 34:18 125:8 144:1
**individual (2)** 99:14,16
**individuals (1)** 78:20
**indulge (1)** 54:20
**indulgence (2)** 47:10 54:23
**inference (1)** 87:3
**inform (1)** 102:25
**information (9)** 5:21 8:21 41:16 43:2 44:6,17 73:6 90:10,16
**informed (1)** 85:17
**inherent (1)** 105:15
**initial (2)** 12:24 55:11
**initially (2)** 17:11 23:24
**initials (1)** 84:14
**initiatives (1)** 6:5
**injunct (1)** 122:15
**injunction (95)** 3:5,23 6:17 8:15,23,25 9:2,23 10:24 11:25 12:2,6,13,14 17:2,4 25:10 26:14 29:16,19 30:14,14,15 31:2,7,25 34:7,25 35:1,2,19,20,22 36:4,5,8,12,18 37:15 38:10,22,22 44:25 45:9 48:15 50:5 64:12 65:15,17,24 66:9 67:2,18 68:9 69:15 70:1,2 72:12,15 78:4,9,13,17 80:12 83:13,23 89:19 91:13 92:3,11,12 98:11 103:8 105:1,8,15,17 106:13 108:5 111:17 119:8,15 120:5 122:6 124:2,5 127:25 135:11 149:3 154:3,20,22 157:1,2,6
**injunctions (3)** 29:17 35:25 106:5
**injunctive (8)** 7:12 65:3 91:16 103:1 124:9 126:4 129:23 130:21
**inserted (1)** 66:16
**insolvency (2)** 114:6,14
**installments (1)** 146:5
**instance (9)** 10:5 17:20 23:7,18 49:8,14 73:9 90:20 147:10
**instead (8)** 25:12 52:15 66:4,5 91:18 92:4 94:7 96:5
**instruct (1)** 1:14
**instructed (2)** 1:12 66:24
**insufficient (1)** 2:22
**integrity (1)** 14:9
**intend (3)** 89:23 132:20 133:5
**intended (4)** 8:2 52:3,17 56:6
**intense (1)** 96:15
**intention (2)** 89:9 144:12
**inter (1)** 92:13
**interest (49)** 5:13 6:19 7:16 8:11 10:25 11:7,7 16:14,17,18,19,19,22 17:21 18:2,23 36:25 37:8,21 43:4 55:24 66:12,14 67:17 68:7,10,13 69:4,12,23,24 74:4 95:2 102:13 122:19,21 125:6 131:12 134:7 137:14 140:12,12 141:23 147:13 149:7 154:7,9,10,12
**interested (1)** 32:14
**interests (12)** 17:9 18:6,15 20:15,17,20 46:24 80:19 136:19 138:18 140:16 147:15
**interim (67)** 3:4,22 8:22,25 9:2 12:14 26:14 30:15 31:2,7 33:21 34:7 35:1,20,22,24 36:3,18 37:15 38:10 42:21 43:22 44:25 45:9 46:13 47:11 48:13,25 52:21 53:17 54:25 65:3 66:3 72:6,13 73:5 78:24 83:12,19 85:15 89:22 92:19 93:1,13,23 94:4 97:20,24 98:2 103:1 104:23 106:23 108:5 111:14 117:3 118:10,14,19,21 119:10,23 120:11 127:24 128:16 135:10 156:25 157:5
**interlocutory (2)** 73:25 81:25
**interrupt (2)** 14:24 109:15
**interrupting (7)** 9:4 11:9,13 21:22 74:16 127:23 148:18
**intervene (2)** 102:15 129:6
**into (32)** 8:20 13:25 14:1 16:1,3 17:11,14 24:14 25:14,17 40:18 51:17 56:20 66:16 71:18,20 72:9 86:24 89:3 92:17 93:2,18 102:23 108:17 134:12 138:21 139:1 140:24 155:14,19,24 156:1
**introduced (2)** 56:18,20
**introducing (1)** 56:15
**introduction (1)** 56:24
**introductions (1)** 1:4
**inverted (1)** 80:1
**investment (4)** 152:5 153:19,21,22
**investments (1)** 139:21
**invitation (2)** 79:15,19
**invite (1)** 69:2
**involvement (3)** 24:13 54:11 126:1
**involving (1)** 63:17
**irregular (1)** 60:5
**irrelevant (2)** 100:9 101:3
**irremediable (1)** 81:4
**island (1)** 130:22
**islands (9)** 24:1,5 28:23 34:16 92:10 98:23 130:18,20 144:10
**isnt (8)** 2:12 11:21 28:10 80:17 115:24 117:16 146:24 148:16
**issued (1)** 22:20
**issues (7)** 3:7 64:9 76:12 95:4 104:6 112:12 118:4
**italics (1)** 67:15
**item (1)** 60:12
**items (1)** 60:11
**its (30)** 8:3 15:3 17:20 18:24 33:11 46:15 48:18 51:16 55:10 59:10 65:18 66:4 71:22 72:2 75:15 78:18 83:11 85:3 86:5 88:16 89:16 92:8 95:22 101:6,13 122:19 145:2,16 146:18,21
**itself (8)** 16:18 48:24 68:3 124:8 129:22 137:21 142:4 147:14

**J**

**january (1)** 52:20
**jeopardy (2)** 86:5 104:14
**job (1)** 59:24
**join (6)** 23:20,21 24:14 25:24 26:5 126:20
**joined (1)** 100:2
**joint (1)** 1:9
**jols (100)** 42:4 46:19 47:3,10,16 48:3,7,20 49:1,6,8,20 50:19 52:5,11,14,19,25 53:3,6 54:2,7,18 60:6 62:15 64:20 65:15,23 66:7,18 67:2 69:4,10 72:23,25 73:8,17,23 74:10,14 77:6,16 78:24 80:2 81:12 83:13,21 84:24 85:23 86:19,23 88:20,25 89:3,5,13,18 90:4,11,14,22 91:1,9,17,19 92:1,9,17 93:20,24 94:3,16 95:22 96:4,11,21 97:25 98:12,21 99:9,16 100:7,24 102:14 105:24 107:5,10,11 108:5 111:7 114:24 116:4,19,23 117:1 118:17 119:1,18 120:4 122:14
**judge (87)** 4:19 9:6,8 10:4,5,9,14,22 11:1,4 12:22 25:13 28:12 46:20 49:7,21 50:12,18,19 51:1,8,10 52:2,8,12,14 53:7,10,14 54:7,9,22 55:16 56:13 63:16 64:3,6 65:21 66:23 67:6,9,12,20 68:3 69:14,19 70:15,25 71:15,18 72:5,18 73:1,12,17 74:5,7 77:8,11,22 78:5,7 79:7,22 81:23,24 86:8,20 87:6,11 88:4,8 91:7 92:22 94:2,5 95:3,12 97:7 111:12,23 120:5 122:8 123:7,13 127:19 154:24
**judges (13)** 65:14 69:3,11 70:7 76:8,20 77:25 79:1 85:4,8,18 95:16 97:3
**judgment (30)** 5:8 10:21,21 11:3,6 36:7 50:20 51:2 52:22 53:14 55:17 56:14 57:5 63:25 67:5,9,22 69:19 76:18 79:14 84:21 86:21 87:14 94:3 95:24 97:2 121:23,25 127:17 129:13
**july (12)** 25:17 41:13 45:23 52:21 61:7 70:22 72:7 89:19 108:16 119:23 120:1 143:15
**june (1)** 13:15
**juridical (1)** 69:25
**jurisdiction (27)** 9:15,18 10:10,13,15,16 12:5 23:24,25 24:2,2,4,19 26:2 28:22 48:4,6 50:13 54:19 86:3 98:25 119:12 154:2,17,19,21,25
**jurisdictional (1)** 24:6
**jurisdictions (1)** 125:15
**justifiably (1)** 130:17
**justification (9)** 84:5 98:10 102:20 106:20 111:11 119:10 124:14 127:1 129:22
**justified (1)** 120:6
**justify (3)** 46:15 124:8 126:3

**K**

**kansas (1)** 109:2
**keen (1)** 113:16
**keep (2)** 88:19 143:11
**key (3)** 14:8 114:18 133:25
**kim (1)** 1:14
**kind (4)** 49:3 61:24 80:23 119:11
**knew (2)** 135:24,25
**know (29)** 1:21 2:24 3:2 7:7 17:3 28:25 31:14 32:15 40:13 42:22 58:14 59:12 75:15 82:2 101:21 105:17 109:7,9 116:2,3 120:19 131:24 148:17 149:20 150:8 151:21 154:5 157:12 158:9
**known (2)** 52:19 142:17
**knows (1)** 2:5
**kobre (1)** 1:14
**koza (3)** 154:13,24 155:1

**L**

**lack (4)** 88:17 130:14,15,16
**language (2)** 88:3 110:1
**large (3)** 6:4 125:21 134:18
**last (20)** 4:22 25:18 32:17,18 34:8 45:14,23 52:22 58:3,4 72:7,10,17 89:1,20 91:22 92:18 105:4 112:19 139:18
**later (5)** 64:17 79:13 89:1 92:22 157:19
**latest (1)** 61:11
**latter (1)** 116:20
**lawyers (4)** 91:21 102:8,9 143:15
**lay (2)** 69:17 76:16
**leading (1)** 117:1
**learned (26)** 13:23 49:22 50:25 55:18,22 56:9 61:23 75:25 84:2 90:19 93:15 98:4 100:13 108:1,9 110:17 119:21 127:24 135:5 139:3 141:2,4 149:1 150:23 155:8 156:24
**least (8)** 15:19 16:19 21:10,11 36:1 40:12 131:13 136:21
**leave (9)** 2:11,16 3:8 9:19 24:3 55:4 64:24 65:7 133:22
**leaves (1)** 7:13
**leaving (1)** 7:18
**left (3)** 6:24 38:1 110:20
**legal (8)** 29:24 30:3,6,11 55:13 71:8 95:10 96:2
**legitimate (1)** 69:25
**lender (4)** 86:4 103:24,25 155:11
**lengthy (1)** 39:16
**less (5)** 80:22 90:12 107:2 119:4 152:9
**lesser (1)** 66:8
**let (10)** 4:14 43:23 46:16 48:23 85:22 128:5 147:7 148:8 152:17 156:9
**lets (3)** 10:1 25:20 60:3
**letter (22)** 22:10 50:24 51:3,5,6,8,9,10,19 52:5,9,13,18 143:14,16 144:20,21,24 147:3 148:10 151:6,7
**level (1)** 151:1
**levels (2)** 80:21 114:9
**liability (2)** 63:23 68:20
**lies (2)** 21:2 77:14
**light (8)** 3:12 26:1 28:18 29:6 37:7,8 100:1 132:24
**lightly (1)** 3:17
**like (12)** 36:2 38:21 39:23 43:6 62:25 101:22 120:20 127:15 131:25 136:16 143:13 149:17
**likely (4)** 65:6 78:18 85:12 99:2
**likewise (1)** 101:15
**limit (1)** 43:12
**limited (48)** 5:13,21 6:19 7:16 8:11,23 12:25 16:17,22 17:8 18:1,4,13,14,22 25:15 26:13 36:24 56:16,16,18 57:10,14 66:12 68:6,7,13,20 122:19 137:19 138:5,10,16 139:22 140:10,13 141:16,20 142:4 145:11 147:9,11,19 148:2,13 150:12,13 154:9
**limiting (1)** 121:10
**line (5)** 18:9,11 20:4 139:19 141:7
**linked (1)** 43:24
**liquidation (8)** 5:10 12:22 16:7 19:20 99:19 131:12 141:11,19
**liquidator (1)** 156:5
**liquidators (34)** 1:10 12:18,20 13:10,17,22 14:2,5,18 18:3,6 22:16,22 23:10,20,21 25:24 26:3 29:8,15 43:14 44:6 122:13 124:24 126:3,9 127:11,11 128:18 129:13,17 131:1,8,14
**list (3)** 19:13 33:9 125:15
**listed (2)** 13:14 92:13
**listen (1)** 58:18
**listening (2)** 59:13 127:10
**listing (3)** 44:13 89:19 93:20
**litigant (2)** 63:14 99:7
**litigation (11)** 63:12,13,17,19 82:15 96:18,25 102:15 120:3 132:13 155:7
**little (2)** 129:18 137:13
**location (2)** 29:21 33:11
**lock (4)** 73:16 81:20 82:1 89:15
**lockdown (3)** 73:22 92:5,10
**locked (2)** 83:18,25
**london (1)** 60:18
**long (6)** 38:12 41:23 75:1,3 136:18 155:15
**longer (5)** 8:17 15:6 21:16 40:3 108:23
**longest (1)** 75:8
**longtime (1)** 96:23
**look (9)** 25:20 40:16 43:7 53:25 60:19 69:1 124:21 147:20 148:3
**looking (10)** 21:20 26:10 32:10 34:9,10 35:8 62:4 106:22 135:13 147:25
**looks (1)** 143:13
**lords (65)** 1:6,9 5:7 7:3 12:6,10 13:12 14:10 16:9 17:7 18:17,22,25 22:1 23:22 25:5 26:16 27:22 28:25 30:19 37:11 40:14 41:18 42:9 44:23 46:7,16 48:10 49:5 64:24 74:17 84:18 88:17 91:8 93:24 94:11 97:11,21 100:7,24 127:23 131:19 132:4 133:12 137:18 138:6 139:8 140:14 143:18,24 144:12 147:5,8 149:15,17,21 150:18,22 154:13 155:5 156:17,22 157:9,12,22
**lordship (23)** 4:4 35:7 40:19 41:12 42:6 51:25 59:9,21 60:13,19 61:10 67:13 77:16 79:23 82:22 104:19 106:15 112:1 116:13 119:7 122:7 138:10 139:17
**lordships (64)** 1:7 3:13,18 4:3 5:8 6:1,14 16:9,15 17:3 26:12,17 28:2 34:2,4 35:14 39:6 41:18 43:6 44:8 45:7 50:21 53:9 54:5 56:1 68:2 69:1 70:5,14 73:14 77:16 78:7 79:7 81:10 83:5 87:11 88:11 92:23 94:17 102:19 119:7 121:24 124:21,25 127:16 130:11 131:21 134:1 135:15 136:17,20 137:24,25 139:11,16,24 142:21 143:7 144:14 149:3 151:4 154:4,15 156:18
**loss (3)** 78:17 119:17 131:4
**losses (2)** 138:2 140:8
**lost (4)** 50:4 52:20 57:22 140:1
**lot (9)** 80:14 102:10 121:5 130:7 149:20 150:8 151:24,25 152:2
**lots (1)** 150:15
**lovely (1)** 62:17
**lower (4)** 53:20,22 87:6 113:11
**lp (1)** 102:13

**M**

**macinnis (2)** 32:9 54:4
**main (12)** 25:12 30:14 31:25 33:22 34:25 35:1,19 36:5,11,12 39:8 86:13
**maintain (2)** 108:6 129:4

**maintaining (1)** 107:19
**majored (1)** 149:5
**majority (6)** 20:1 25:2 55:8 69:5 125:24 141:17
**makes (10)** 2:3 37:2 38:3 49:19 82:8 100:19 106:14 111:7 145:8 147:18
**making (19)** 13:19 31:10,15 43:24 47:17 61:16,23 62:2 75:8 83:9 89:8 105:7 106:3 119:16 124:4 127:1 129:23 135:5 141:2
**man (1)** 96:24
**manage (2)** 36:20 139:14
**managed (2)** 18:19 58:18
**management (5)** 96:15 151:24,25 153:19,21
**manager (1)** 27:2
**mandamus (1)** 23:15
**mandatory (1)** 49:18
**manner (5)** 7:20 8:5 134:11 140:22 144:8
**manoeuvres (2)** 48:18 114:15
**many (2)** 53:12 93:5
**maples (5)** 4:12 50:25 52:9,13,18
**march (5)** 1:1 52:16 59:11 129:14 158:14
**marcus (1)** 121:4
**mareva (4)** 64:11 65:24 86:20 91:13
**mark (5)** 26:18 27:2 60:20 143:15 152:10
**marked (2)** 21:6 79:13
**market (1)** 82:9
**material (1)** 93:6
**materially (1)** 121:19
**materials (1)** 95:12
**matter (12)** 2:18 43:5 54:1,13 55:9 66:10 70:10 92:15 95:19 120:10 147:22 154:6
**matters (7)** 2:8 47:16 54:12 57:4 85:24 94:24 133:19
**maturity (1)** 104:11
**maybe (1)** 32:16
**mean (10)** 10:6 13:24 36:6 38:13 42:2 59:24 62:14 82:6 148:17 153:11
**means (4)** 7:3,22 65:8 78:3
**meant (1)** 84:13
**meantime (2)** 100:4 112:9
**meat (1)** 3:20
**media (1)** 82:19
**melanie (1)** 1:21
**member (1)** 32:16
**membership (1)** 66:14
**mention (2)** 2:4,8
**mentioned (3)** 15:10 52:18 62:3
**mentions (1)** 84:7
**mep1 (1)** 59:19
**mercer (1)** 96:1
**mercers (1)** 96:5
**mere (2)** 87:3 124:6
**merely (2)** 96:25 124:16
**merit (1)** 53:17
**merits (5)** 19:1 55:2,10 64:24 69:9
**met (1)** 99:5
**microphone (1)** 14:23
**midwave (14)** 13:8 86:1 103:11,11,16,22 104:9 114:16 117:14 118:4 155:7,7,10,12
**might (14)** 1:4 34:5 51:23 78:19 89:5 90:25 100:15 102:17 124:2 128:18,25 129:7 134:25 150:11
**mildly (1)** 132:17
**million (16)** 17:13 82:13 86:5 91:23 96:17 104:15 123:18 145:24 146:1,3,8,13,14,16 151:10,19
**millions (5)** 28:18 123:20
145:19 151:7,13
**mind (1)** 88:19
**minded (1)** 55:4
**mindful (1)** 55:2
**mine (1)** 93:13
**minimum (2)** 140:7 141:16
**minute (1)** 91:22
**minutes (3)** 45:17 75:5 133:15
**mirror (6)** 33:25 35:15 84:3 98:5 142:17 144:8
**mishearing (1)** 28:13
**mismanagement (1)** 14:19
**misrepresentations (1)** 116:23
**misrepresented (2)** 48:7 116:18
**miss (1)** 115:1
**mission (1)** 145:3
**misspoke (1)** 61:13
**misspoken (1)** 150:11
**mistake (1)** 51:11
**misunderstood (3)** 17:16 50:15 133:13
**misused (2)** 48:8 116:20
**modest (1)** 123:19
**moment (8)** 2:3 59:21 81:19 82:10 101:20 111:21 114:17 153:4
**money (11)** 14:4,14 38:6 62:16 80:14 82:8 102:8 122:25 123:15 155:14,19
**monies (1)** 88:5
**month (3)** 44:12 52:17 94:7
**monthly (2)** 44:16 90:9
**months (5)** 45:3 46:1 73:6 89:12 90:11
**moran (143)** 1:4,6,17 2:11,13,21 3:8,9,10,20 4:6,13 5:1,5 7:12 9:4,7,14 10:12,20 11:22 12:10 15:1,9,13,17,21 16:2,6 19:11,14,17,20 20:11 21:9,23 22:5,8,12,19 24:21,24 25:1,5 28:11,14 31:6,12,24 32:6 33:3,7,12,17 34:25 35:7,11,14,20,24 36:8,14,17 38:19,24 39:25 40:24 41:1,4,7,11 42:5,9 43:10,25 44:11 45:12,13,16,20 46:7 49:22 76:1 111:2 123:20 127:23 128:10 132:4,9 133:11,12,17,24 136:6,15,25 137:4,7,9,12,24 138:5,8 140:3,5 143:1,5,7,10,14 144:17,19 145:7 147:5,7 148:7,14,20,23 149:14 150:11,17 152:4,13,20 153:1,7,10,14 154:1 155:2,5 156:15,21,22 157:8,9,13,15,22 158:21 159:2,4
**morans (1)** 55:8
**more (35)** 6:2 8:23 12:6 14:10 18:25 25:15 26:13 29:18 33:10 34:4 40:2,4 58:16 63:11,17,23 68:3 69:8 86:5 91:23 94:7 99:24 104:14 107:2 130:11 132:5 133:5 143:13 145:22 151:19,24 155:14,19,20 156:4
**moreover (2)** 68:21 83:12
**morning (10)** 1:8 98:5 100:14 101:18 106:1 109:21 110:18 113:6 119:21 130:9
**morris (1)** 22:11
**most (5)** 28:17 58:14 65:17 78:21 131:7
**mountain (1)** 84:24
**move (4)** 88:2 94:4,5,6
**moved (5)** 65:16 92:2,5
120:3 151:17
**moving (3)** 11:18 37:11 88:7
**ms (151)** 1:4,6,15,17 2:11,13,21 3:8,9,10,20 4:6,13 5:1,5 7:12 9:4,7,14 10:12,20 11:22 12:10 15:1,9,13,17,21 16:2,6 19:11,14,17,20 20:11 21:9,23 22:5,8,12,19 24:21,24 25:1,5 28:11,14 31:6,12,24 32:6 33:3,7,12,17 34:25 35:7,11,14,20,24 36:8,14,17 38:19,24 39:25 40:24 41:1,4,7,11 42:5,9 43:10,25 44:11 45:12,13,16,20 46:7 49:22 54:4 55:8 76:1 111:2 123:20 127:23 128:10 132:4,7,9,19,20 133:11,12,13,17,24 136:6,15,25 137:4,7,9,12,24 138:5,8 140:3,5 143:1,5,7,10,14 144:17,19 145:7 147:5,7 148:7,14,20,23 149:14 150:11,17 152:4,13,20 153:1,7,10,14 154:1 155:2,5 156:15,21,22 157:8,9,13,15,22 158:21 159:2,3,4
**much (36)** 1:7,17 3:10 15:20 33:10 40:25 41:2 44:22 58:16 60:7 63:9 68:1 75:6 78:23 81:19 86:16 90:12 105:6 106:14 120:18,21 121:5,14 122:5 131:23 132:3 133:8,10 135:18 137:11 140:4 141:2 156:14 157:11,14 158:22
**multiple (4)** 38:4 41:14,24 96:18
**murphy (49)** 5:11 27:12,13,22 58:21 71:6 72:4 92:24 97:9 100:25 101:5,15 120:24 121:12 122:7,10,13,18,25 123:9,14,25 124:7,15,17 125:4,20,22,25 126:8,12,15,20 127:18,22 128:8,14,21 129:2,11,16 130:1,3,7,16 131:3,20 156:21,23
**murphys (8)** 121:18,22 123:8 125:2 127:13,19 128:1 129:8
**must (1)** 147:6
**mustnt (1)** 147:6
**mute (1)** 7:11
**myself (3)** 4:10 15:18 115:10

N

**n (1)** 159:1
**name (1)** 142:19
**namely (1)** 115:2
**names (1)** 36:2
**nature (13)** 16:13,21 37:9 56:11 57:14 65:1 78:9 96:12 123:6 125:7 126:12 133:3 142:3
**near (2)** 38:17 116:6
**necessarily (1)** 80:7
**necessary (9)** 37:6 52:4 55:5 65:8 71:10 95:17 112:5 117:5 132:12
**need (38)** 6:8 10:6 12:17 14:11 27:22 28:23 30:13 32:15 39:19 40:5,6,11 42:12 43:10 44:12 54:20 64:4,10,23 65:13 72:21 78:11 79:20 84:4 86:24,25 98:10 99:22 111:11 114:12 115:5 119:23 120:15 128:12 130:12 133:25 140:20 154:13
**needed (4)** 20:10 23:10 81:12 149:3
**neednt (1)** 130:10
**needs (3)** 18:16 99:25 140:25
**needy (1)** 62:2
**negative (2)** 68:11 125:1
**neither (1)** 126:8
**net (1)** 82:13
**neutral (1)** 156:5
**never (3)** 56:2 68:12,14
**nevertheless (1)** 11:16
**news (1)** 109:19
**newspaper (1)** 101:18
**next (7)** 55:1 77:25 125:3 142:7 145:14 150:18 154:1
**night (1)** 4:22
**nil (1)** 141:15
**nobody (1)** 60:15
**none (5)** 33:6,7 44:25 98:15 123:21
**nonetheless (1)** 102:22
**nonparty (1)** 99:25
**nonprofit (2)** 15:5 145:25
**noon (1)** 1:20
**noone (3)** 60:17 83:17,20
**nor (10)** 52:13 64:13 66:7 83:12 88:10,11 94:5 95:16 119:2 126:8
**normal (2)** 30:8 131:7
**normally (2)** 80:18 81:20
**note (4)** 74:20 137:2 150:3 153:3
**noted (1)** 123:13
**notes (1)** 154:15
**nothing (9)** 4:16 13:21 46:7 81:1 85:20,22 88:8 114:14 116:5
**notice (7)** 1:8 8:14 34:9 36:4 43:11 72:16 90:2
**notion (1)** 99:20
**notwithstanding (5)** 6:20 7:4 41:19 105:20 141:9
**novel (1)** 85:2
**november (2)** 70:23 72:20
**nowhere (1)** 38:17
**nuclear (1)** 106:6
**nugatory (1)** 6:22
**number (9)** 39:15 40:23 57:11 64:25 117:1 125:21 133:20 140:2 158:17
**numbering (1)** 22:7

O

**object (2)** 80:8 93:21
**objected (4)** 19:9,22,23 39:3
**objecting (1)** 97:24
**objection (8)** 47:8,19 49:6 56:24 57:1 86:14 118:12,21
**objects (1)** 108:23
**obligation (2)** 27:20 125:18
**obligations (2)** 44:12 142:5
**observation (2)** 43:16 83:5
**observations (2)** 55:11 87:20
**observe (1)** 2:2
**obstacle (1)** 14:8
**obtain (3)** 66:3 89:19 94:4
**obtained (3)** 12:21,23 90:12
**obtaining (1)** 131:2
**obvious (2)** 54:6 114:13
**obviously (14)** 2:22 13:16 45:5 46:3 54:14,15 72:2 78:21 116:2 121:5 128:19 130:20 133:18,22
**occasions (2)** 117:1,5
**occurred (3)** 19:8 103:11 105:4
**odriscoll (6)** 1:15 132:7,19,20 133:13 159:3
**offence (1)** 51:14
**offer (6)** 8:9 89:3 119:1,2,5,6
**offered (10)** 48:6 54:3 57:12 72:6,20 116:17 117:3,8 126:9 130:3
**office (1)** 88:21
**officers (2)** 12:20 13:4
**official (1)** 1:10
**often (1)** 10:4
**oh (1)** 36:11
**okay (8)** 25:4 36:3 42:8 61:1 75:6 82:17 109:11 138:7
**onerous (1)** 42:25
**ones (3)** 22:9 113:11 137:5
**open (3)** 100:15 110:20 136:16
**opening (1)** 156:23
**openly (1)** 126:15
**operate (4)** 7:21 33:24 40:3 42:14
**operated (1)** 44:19
**operating (2)** 42:17,20
**opponents (3)** 51:9 59:13 62:14
**opportunity (2)** 53:15 93:4
**oppose (1)** 46:13
**opposed (4)** 11:7 52:10 80:2 92:14
**opus (1)** 1:22
**oral (4)** 39:5 49:22 127:10 153:3
**orally (2)** 126:9 151:22
**order (26)** 2:22 3:1 6:8 9:5,8,11 11:2 17:15 23:15 25:9,11 26:5 29:6 34:23 36:6 91:3,23,24 125:25 127:1,12 129:23 130:1 136:18,21 148:11
**orderly (1)** 92:14
**orders (26)** 8:20 29:15,18 30:16 31:1,5,6 33:23 34:3 37:4,6,10 40:1 42:13,24,24 43:1,1,5,7 44:7 111:19 119:16 127:4,5 129:17
**ordinary (51)** 7:21 30:2,22 31:13,16,17,23 32:1 41:22 42:14 61:17,18,19,25 65:20 66:5 71:23 72:24 73:10 83:10,15,24 88:16 89:6,16 90:6 92:8 101:11 105:20,23 106:1,9 107:4,6,12,22 108:7 111:1 114:8 125:9 134:2,10,13 135:3,8,9 136:3,8,9 148:25 149:8
**organisations (12)** 22:15,22 23:2,12,14 24:9 25:8 145:10,18,24,25 146:6
**original (17)** 12:5 15:4,6 17:12 32:25 33:2,3 39:9 42:3,3,5 108:21,23 134:7 145:13 146:19 154:19
**originally (2)** 132:22 138:25
**otherwise (8)** 47:20 49:23 93:17 97:21 101:10 104:4 118:18 129:25
**ought (2)** 58:13 143:12
**ours (1)** 55:20
**ourselves (1)** 157:18
**outcome (1)** 131:12
**outs (1)** 74:10
**outset (4)** 44:3 54:17 55:3 132:25
**outside (8)** 34:16 61:24 71:23 73:10 89:6 107:3 147:20,25
**outsourced (2)** 151:25 152:6
**outsourcing (2)** 152:1,2
**outweighed (1)** 48:11
**outwith (1)** 105:22
**over (30)** 3:17 6:25 7:13 8:10 25:15 30:16 31:8 45:2,25 46:8 53:11 63:7 67:18 72:17 73:5 74:14 89:12 117:18 123:17 125:2 135:8 139:17 143:20 144:3,3 145:24 154:3,11,17,22
**overarching (3)** 64:25 65:12 69:9
**oversight (1)** 30:16
**overspeaking (4)** 79:23 106:16,24 146:23
**overturn (1)** 23:16
**owed (2)** 23:3 103:19
**owes (1)** 63:25
**own (3)** 37:20 50:19 128:9
**owned (4)** 29:21 56:19 101:5 110:8
**owner (1)** 17:12
**owners (3)** 140:25 145:11 147:16
**ownership (7)** 30:9 55:13,15,16 68:14 69:4 140:21
**owns (1)** 85:3

P

**package (1)** 33:2
**pages (5)** 53:13 59:6 93:6 112:17 125:14
**paginated (2)** 35:5 58:11
**pagination (1)** 4:20
**paid (26)** 28:5,19 29:25 30:3,6,11 32:7 40:8,9 57:19 71:25 91:24 95:20,25 123:1,16 127:22 151:8,15,19 152:8,9,21,22,22 153:5
**paper (1)** 151:21
**papers (5)** 4:18 38:14 39:3 54:14 152:12
**paragraph (64)** 26:18 28:3 34:10 35:14 36:4,18,21,21,24 43:10,14 44:4,11 50:23,24 61:2 67:22,23 68:3 69:21 70:14,17 72:19 73:18 74:8 76:17 78:15 79:3,14 82:18 86:21 94:17,17 97:2,9 98:1,13 107:2 110:24 112:21 113:13,17 114:19,23 115:8,15,20 116:11,24 117:17,20 122:3,4,11 124:25 125:2,17 138:11 143:16 145:4,14 154:15,23 156:12
**paragraphs (7)** 5:25 37:3 61:4 62:3,5 78:6 137:8
**parallel (2)** 48:3 142:11
**paraphrase (2)** 76:20 79:6
**paraphrasing (1)** 115:19
**pardon (1)** 106:24
**parker (16)** 6:11,17 8:16 12:1 13:6 17:17 24:10 36:9 71:19 88:10 89:20 103:12,21 116:25 141:3,6
**parkers (2)** 113:22 121:25
**part (11)** 34:23 35:1 37:4 79:19 89:9 94:9 95:2 140:18,18 141:1,5
**partes (1)** 92:13
**partially (1)** 142:16
**participate (1)** 100:5
**participating (13)** 15:4 19:8,10 20:3,6 21:5,7 57:3,8,12 66:13 142:13 146:25
**participation (1)** 123:5
**particular (12)** 4:11 17:9 30:2 68:22 77:15 86:18 121:12 124:17 125:2 126:24 130:5,17
**particularly (5)** 38:3 48:5 111:12 145:15 156:21
**parties (16)** 3:25 24:5,19 25:13,20 26:1,10,16,20,21 38:5 60:9 100:21,23,25 101:7
**partly (1)** 81:6
**partner (28)** 5:21 17:8 18:1,4,14,23 26:19 56:18 66:12 68:6,8 85:2 122:20 138:10,12,16 139:14,23 140:10,11,13,20,24 141:17,20 142:4,5 145:11
**partners (7)** 1:15 56:16,17 139:22 140:6 141:13,15
**partnership (42)** 5:13,23 6:19 7:16 8:11 11:7 16:17,22 17:10,12,14,20 26:20 36:25 56:6,12 68:13 95:2 137:19 138:5,9,13,17,23 139:5,13,15 141:20,24 142:1,4 147:10,12,13,14 148:2,13 150:7,13,14 154:6,9
**partnerships (4)** 18:14 68:20 139:21 147:19
**party (10)** 22:24 23:10,20,21 25:22 27:1,13,19 99:11 156:5
**pass (2)** 46:8 141:25
**passage (1)** 76:24
**passages (10)** 51:25 61:9,11 67:5 68:16 77:5,8,10,23 98:19
**passed (1)** 52:17
**passive (2)** 96:14 151:24
**passthrough (1)** 17:18
**past (1)** 94:20
**pat (1)** 15:18
**patrick (40)** 5:11 13:21 14:19 26:18 27:2,23 28:25 29:12 58:20 60:20 71:5 72:3 84:6 95:20 96:19 98:24 99:2 100:11 101:6,7,12 113:24 114:12,19,23 116:2,12 117:7 118:3 143:15 144:14,22 145:1 146:14 151:18 152:10,14,21 153:20 155:16
**patricks (15)** 13:9 14:13 59:3,5 63:6 86:11 95:24 96:7,14 97:6 98:19 103:15 112:12 117:21 156:12
**pause (6)** 76:22 79:10 115:9,21 116:8 152:16
**pay (6)** 7:14 30:25 37:17 49:2 131:1 155:11
**payable (2)** 104:14 110:11
**paying (2)** 5:19 120:12
**payment (2)** 43:11 108:20
**payments (14)** 30:1,17,20 31:3,8 37:7 40:4 44:13 134:14 135:23,24 136:10 146:7 148:25
**pdf (5)** 35:9,10 40:21 137:25 139:9
**pending (14)** 6:19 7:3 8:10,12,23 9:23 10:10 25:10,11,16 29:3 38:11 94:4 128:16
**people (3)** 10:5 62:15 101:21
**peoples (1)** 80:19
**per (2)** 151:10,15
**perceived (1)** 25:25
**perfect (1)** 4:16
**perfectly (1)** 117:11
**perhaps (20)** 1:4 11:23 19:2 22:1 25:5 29:9 45:13 51:18,20,23 76:18 103:13 107:16 115:19 121:22 143:18 147:7 149:17,21 153:14
**period (6)** 12:2 20:9 21:6 38:10 72:14 91:18
**permissible (2)** 30:23 148:3
**permission (2)** 24:3 102:15
**permit (3)** 11:20 65:20 136:10
**permits (4)** 31:12 110:25 135:3 136:7
**permitted (3)** 21:10,12 32:2
**person (2)** 10:22 151:23
**personal (5)** 27:20 126:20 127:13 128:9 157:2
**personally (5)** 101:2 121:21 124:10,15 126:8
**persons (1)** 131:11
**perspective (2)** 63:6,7
**persuade (3)** 47:3 54:13

120:4
**persuaded (4)** 69:22 70:3 71:16 74:9
**pessimist (1)** 102:16
**petition (1)** 14:17
**phone (1)** 158:4
**phrase (2)** 108:9 135:15
**picture (1)** 153:15
**place (18)** 2:1 4:11 36:6 45:2,23,25 46:4 47:23 58:2 72:16 73:23 81:6 90:1 95:6 98:6 103:6 136:2,3
**placed (1)** 53:22
**plain (1)** 2:15
**plainly (3)** 11:16 109:13 110:6
**plaintiff (1)** 128:16
**plank (1)** 14:8
**planned (1)** 132:22
**plays (3)** 122:14 123:9,9
**pleaded (4)** 55:14 66:11,18,19
**please (21)** 7:6 19:4 32:20 40:22 50:21,23 58:10 61:10 67:3 69:18 76:19 79:7 94:15 106:22 112:14 113:13 115:7,20 122:3 137:19 139:8
**pm (7)** 1:2,20 75:21,23 157:23,25 158:24
**points (16)** 37:13,13 48:22 78:23 86:17 98:18 101:18 109:19 117:18,21 127:14 128:13 131:19,21 155:5 156:19
**police (1)** 29:15
**policing (2)** 29:19 80:13
**portfolio (1)** 27:10
**portrayed (1)** 117:2
**posed (2)** 64:5 71:11
**position (29)** 2:20 6:2 20:2 22:18 31:14 39:9,17 80:17 81:19 92:20 103:22 104:9,22 105:22,25 107:10 108:2,3,15 109:12 111:4 117:7 121:8,18,22 123:8 126:14 128:4,20
**positive (2)** 102:4 125:18
**possession (1)** 34:15
**possibility (3)** 56:15 57:12 110:20
**possible (4)** 50:11 71:2 86:7 93:10
**possibly (2)** 21:10 82:12
**potentially (1)** 7:15
**powers (1)** 139:13
**practising (1)** 130:19
**pragmatic (1)** 72:20
**precisely (1)** 68:3
**precludes (1)** 10:15
**predations (2)** 71:10 87:24
**predecessor (1)** 96:8
**preempt (1)** 112:6
**prejudice (23)** 3:24 34:6 42:19 43:19 48:12,14,17,19 78:4 79:25 84:5 92:20 103:9 105:14,15 106:11 117:18,20,24 118:13,18 128:17 129:8
**prejudices (1)** 42:16
**prejudicial (3)** 103:10 111:14 118:9
**preliminary (1)** 12:16
**premise (4)** 63:8 74:2 81:9,17
**premised (1)** 81:17
**prepare (1)** 72:11
**prepared (7)** 44:15 47:10 81:23 129:19 136:13,17,21
**presence (1)** 69:17
**present (5)** 73:14 75:24 87:10 94:21 129:14
**presentation (1)** 55:9
**presented (1)** 38:15
**presently (2)** 3:7 38:16
**preserve (3)** 34:13 125:5,18
**president (60)** 1:3,17 2:14 3:19 4:5 7:6 9:4,9,25 11:9 12:9 19:4 22:17 39:10,24 45:10 46:6,9,23 50:4 74:16,25 75:6,10,18,24 76:2,5,10 77:1 79:9 115:10 116:9 117:10,15 120:18,25 121:2,14 130:6 131:23 132:3,8,12 133:8,17 135:20 136:13,24 148:18 149:11,16 156:20 157:7,11,17 158:1,7,9,22
**presidents (3)** 55:2 132:25 133:2
**press (3)** 54:17 73:1 93:10
**pressure (4)** 75:2 92:16 93:7,22
**presumably (1)** 131:13
**prevent (10)** 8:18 18:20 28:15 30:14,15 66:4 83:8,14 89:16 110:11
**prevented (1)** 30:23
**preventing (1)** 157:1
**prevents (2)** 101:10 107:20
**previously (5)** 44:20 58:1 116:17 129:19 151:1
**price (4)** 49:2 120:12 131:1,17
**primary (5)** 5:12 25:21 33:17 127:17 154:21
**principal (4)** 63:22 99:18 101:4 103:19
**principle (4)** 39:11 102:25 103:2 126:10
**principles (1)** 68:19
**prior (14)** 5:10 17:7,25 19:20 48:5 54:10 58:2 61:21 70:7 73:7 83:7 110:17 151:12 152:6
**privilege (1)** 143:20
**privileges (1)** 144:3
**privy (2)** 147:17 148:14
**pro (1)** 21:1
**probably (4)** 42:6 150:3 158:15,16
**problem (8)** 4:11,20 75:17 81:11,12,16 113:10 135:1
**problematic (1)** 2:4
**proceed (1)** 53:7
**proceeding (2)** 54:10 114:7
**proceedings (32)** 3:15 12:21 16:8 22:14,19,23 23:13,19,23 24:12,14 25:24 26:4,5,21 28:21 29:7,11,12 43:20 71:13,20 99:11,17,25 100:3,3 101:1,8 104:21 113:9 116:17
**process (3)** 54:14 60:5 129:1
**procure (4)** 27:3,21,23 157:5
**procured (1)** 93:20
**professional (3)** 71:9 95:10 130:19
**profits (1)** 138:2
**prohibit (1)** 31:10
**prohibits (1)** 108:4
**projects (2)** 74:10,15
**promptly (3)** 52:12 94:4,6
**proper (4)** 72:16 79:4 80:19 92:13
**properly (5)** 47:7 48:24 65:4 93:10 120:13
**property (5)** 123:15,22 124:4 126:13,15
**proportionate (1)** 132:23
**proposal (3)** 89:8,11,13
**propose (1)** 16:11
**proposed (2)** 74:10 105:22
**proposition (3)** 77:19,21 85:2
**propounded (1)** 134:4
**proprietary (41)** 6:18 7:1 10:25 11:6 16:14,17,18,21 17:1,2 29:17 37:9,21 43:4 65:17 66:9,11,18,20,25 67:17 68:7 69:24 70:1 74:2 83:23 87:18 105:12 122:24 123:6 124:2,9 126:5,11,21 127:4 132:23 149:7 154:3,7,8
**prosecute (1)** 29:10
**prospect (2)** 100:9 115:16
**prospects (1)** 85:11
**protect (7)** 6:18 37:7 64:4 78:3 154:12,18,21
**protected (5)** 16:20 47:22 68:8 83:1 154:7
**protecting (1)** 136:19
**protection (8)** 6:25 25:15 26:15 28:23 79:20 81:11 119:6,19
**protections (3)** 98:6 101:25 119:11
**protects (1)** 97:22
**protocol (2)** 89:4 135:18
**protocols (2)** 136:22 137:1
**provide (7)** 90:2,4,8 94:22 102:1 116:15 131:16
**provided (4)** 44:7 119:24 135:24 139:20
**provides (3)** 79:20 110:14 125:3
**providing (1)** 111:13
**proving (1)** 143:11
**provision (1)** 111:7
**provisions (2)** 98:7 147:11
**pull (1)** 32:8
**pure (1)** 54:6
**purely (1)** 147:25
**purport (1)** 86:3
**purported (1)** 105:12
**purportedly (1)** 104:1
**purpose (5)** 19:24 63:11 64:2 87:22 144:23
**purposes (12)** 16:24 32:18 48:8 63:4 68:25 77:12 83:21 84:1 116:20 134:17 137:15 154:14
**pursuant (4)** 73:5 74:15 90:14 111:13
**pursue (2)** 99:16 120:9
**pursued (2)** 84:22 127:18
**pushing (1)** 136:15
**puts (1)** 84:21
**putting (3)** 86:4 93:22 100:21

**Q**

**qualifying (1)** 56:19
**quantify (1)** 78:22
**queries (3)** 43:15 90:5,7
**query (1)** 20:18
**quest (17)** 1:13 120:23 121:1,2,3,10,15 122:4,6 128:2,11 130:6,10 131:24 132:3 156:24 159:3
**question (38)** 1:23 7:18 8:7 10:3,7,17,18,18 14:24 19:3,6,16 20:16,19 21:3 23:7 31:21 32:24 34:8 39:12 50:1 56:23 57:17 68:11 70:16 79:12,24 80:3 81:10,17 101:21 102:19 106:22 109:8 146:24 148:23 149:25 154:23
**questioning (2)** 13:5 20:4
**questions (7)** 19:1 20:12 34:5 84:11 149:22,24 157:13
**quick (1)** 101:21
**quickly (1)** 142:21
**quiet (1)** 81:21
**quite (9)** 3:17 10:4 39:10,16 121:5 130:7 135:21 144:8 152:2
**quote (8)** 49:10 50:24 51:3,5 68:4 78:8,15 98:1
**quoted (1)** 52:1
**quoting (3)** 67:14,24 94:19

**R**

**rabbits (1)** 153:12
**raise (1)** 43:15
**raised (4)** 39:18 64:9 95:3 133:20
**raises (1)** 85:10
**rata (1)** 21:1
**rather (9)** 22:15 24:15 27:2,20 42:21 58:19 76:20 82:4 108:8
**reached (6)** 68:18,21 70:6,8 87:17 97:7
**read (19)** 38:13 49:14 61:10 62:7 76:19,24 77:1 79:7 84:20 113:6 115:7,10,12,20 116:21 118:3 125:10 132:17 143:18
**readily (2)** 43:2 44:18
**ready (1)** 76:5
**real (27)** 14:3 40:6 48:12 53:1 66:1 70:4 77:19 85:11 86:15 87:1,9,12 88:18 91:10,25 94:9,23 95:15 97:13 100:9 102:1 103:3 115:16 131:5 134:7 146:20 150:19
**realise (1)** 11:4
**reality (2)** 39:17 87:22
**really (18)** 11:20 18:21 29:19 33:22 35:3 36:23 42:12 59:23 62:4 80:12,24 90:24 113:4 118:23 134:8,21 140:14 145:7
**reason (26)** 9:5,7 15:3 48:25 49:1,4 50:6,7,8,10 54:23 70:18 73:12 76:11 77:25 78:1,13 79:1 87:25 88:2 97:19 109:4 112:6 118:9 119:19 129:15
**reasonable (2)** 153:8,10
**reasoned (2)** 71:5 95:8
**reasons (15)** 11:5 73:15 82:21 85:6 97:15 98:12,15 111:15 115:1 118:6 142:16 144:7 151:22 155:18 158:15
**rebuffed (2)** 89:13,14
**recall (1)** 130:8
**receipt (1)** 127:8
**receive (5)** 15:7 57:10 134:22 143:22 146:10
**received (13)** 4:4 8:21 32:19 33:4 34:17 56:3 90:15 95:11 127:22 130:8 142:1 146:14 151:10
**receivership (1)** 114:6
**receiving (1)** 153:18
**recent (4)** 13:9 98:20 115:24 147:17
**recently (1)** 23:17
**recipient (1)** 15:11
**recipients (2)** 32:24 78:19
**recognised (4)** 57:5 64:6 65:25 74:6
**recognises (1)** 147:15
**recognition (3)** 53:21 79:16 138:19
**recommendations (1)** 96:5
**reconciled (1)** 94:8
**record (3)** 71:15 88:9 117:6
**recording (1)** 1:22
**recover (2)** 23:5 42:1
**redress (1)** 38:1
**refer (7)** 5:16 27:7 51:9,12 100:17 148:6 150:2
**reference (11)** 32:8,10 40:14 51:6,24 115:22 145:12 152:15,18 156:10,10
**referenced (2)** 58:4 156:16
**references (2)** 55:18 150:16
**referred (7)** 71:25 113:22 117:15 123:20 150:1,5,9
**referring (4)** 13:10 147:3 148:10 150:12
**refers (2)** 27:6 56:13
**reflect (4)** 9:3 42:25 77:11 98:3
**reflecting (1)** 130:23
**reflects (2)** 36:18 87:21
**refuse (1)** 155:11
**refused (7)** 8:12,16 10:23 11:25 36:9 72:22 118:11
**refusing (3)** 5:20 54:16 155:19
**regard (4)** 55:12 68:18,22 70:25
**regardless (2)** 87:17 106:10
**regards (5)** 73:24 105:1 128:21 129:1,16
**reiterate (1)** 17:6
**rejected (1)** 77:22
**related (1)** 78:19
**relating (1)** 47:16
**relation (20)** 12:10 20:17 45:11,20 61:20 64:7 65:18 66:18 68:19 69:23 78:23 97:8 98:8 113:9,23 123:23 127:5 128:8,20 153:24
**relationship (1)** 142:3
**relatively (1)** 123:18
**relevance (3)** 73:13 77:15 110:5
**relevant (11)** 3:7 65:2,10 67:10,11 70:19 77:12 103:2 112:17 129:23 145:15
**reliance (1)** 146:12
**relied (4)** 71:1 93:6 95:19 141:3
**relief (59)** 7:12 10:5,10 40:12 46:13 47:11 48:13,25 49:3 50:13 53:17 54:25 65:3,22 66:3 73:21 78:24 85:15 86:20 89:15 91:16 92:5,10,21 94:4,6 97:20,24 98:2 102:2,3 103:1,5 106:23 112:4 117:3 118:10,14,21 119:10 120:11 121:21 124:9,12,14,18,23 126:5,7,11,21 128:5,6,13,16 130:21 131:2 154:11,17
**reluctance (1)** 116:12
**reluctant (1)** 116:15
**rely (2)** 47:16 133:6
**remain (1)** 47:23
**remaining (1)** 146:4
**remains (2)** 34:23 35:1
**remedial (1)** 79:16
**remedy (8)** 18:21 37:17 38:2,8 51:24 74:11,12 106:6
**remind (2)** 137:2 150:4
**remit (2)** 20:7,7
**remote (1)** 119:10
**removal (1)** 13:14
**remove (2)** 87:23 104:12
**removing (1)** 56:16
**remuneration (24)** 5:20 7:14 28:8,9,16 40:9 71:24 95:20,24 96:3,7 97:5,8,13 110:15,21 114:10 123:1,16,17 127:8,20 128:1 151:14
**rendered (1)** 6:22
**renumbered (1)** 113:2
**repeated (1)** 55:18
**repeatedly (3)** 89:11,13 93:15
**repeating (1)** 66:24
**repetition (2)** 75:12 133:3
**replicate (1)** 98:10
**replicating (1)** 89:25
**reply (8)** 14:12 107:16,19 111:4 133:11 134:1 156:19 159:4
**reporting (4)** 44:11 89:4 136:22 137:1
**reports (1)** 90:9
**represented (3)** 20:15 52:12 105:16
**reputation (1)** 130:23
**reputational (1)** 78:20
**request (1)** 46:1
**requested (1)** 45:24
**requests (1)** 48:3
**require (2)** 106:7 119:12
**required (8)** 2:12 24:14 44:25 45:4,22 46:3 140:7 141:25
**requires (2)** 80:13 129:3
**requiring (1)** 53:19
**requisite (2)** 66:1 87:1
**reserve (1)** 53:14
**resident (2)** 115:3 130:18
**resides (1)** 98:24
**resiled (1)** 13:4
**resisting (1)** 106:25
**resolve (4)** 24:6 64:23 67:7 95:17
**resolved (1)** 147:1
**respect (22)** 6:12 33:23 42:15 45:1,24 46:4 49:24 54:6 87:21 93:19 99:12,23 112:1 122:15 124:3 126:12,21 127:8 133:1,3 143:22 156:25
**respectfully (11)** 46:21 54:22 84:22 88:11 98:9,15 102:24 109:22 110:12 119:9 133:5
**respects (1)** 121:18
**respond (3)** 52:8 151:20 152:4
**responded (1)** 152:3
**respondent (11)** 1:13 26:10 27:14 36:20 63:21 105:17 121:9,13 124:19 126:20 129:21
**respondents (34)** 1:12 2:25 4:23,24 8:9,18 23:23 24:25 25:1,2,3 33:24 35:16 37:22 39:3 40:3 42:17 43:12 45:1 46:8 58:9 59:10 75:8 78:3 80:14 112:14 114:1,21 125:4 132:5 134:4,15 138:23 156:3
**responds (1)** 106:9
**response (2)** 133:18 148:21
**restrain (2)** 127:12 129:3
**restraining (2)** 25:9,11
**restraint (1)** 128:8
**restraints (1)** 73:1
**restricting (1)** 80:20
**restriction (2)** 28:7 127:25
**restrictions (1)** 90:1
**restructured (1)** 17:14
**restructuring (32)** 5:17 6:13 7:15 17:7 18:1,19 19:7 20:5 21:3 32:5,13 33:5 47:17 57:20 58:3 61:19,21 64:2,8 66:19 71:7,17 76:13 77:18 83:11 87:23 88:6 95:3 108:22 123:5 150:25 152:7
**result (4)** 6:6 14:18 21:14 93:23
**resulted (1)** 39:5
**resulting (1)** 91:22
**resume (1)** 75:18
**retained (1)** 144:3
**retains (1)** 143:20
**return (2)** 17:20 156:6
**returning (2)** 13:24 76:8
**revealed (1)** 90:20
**richard (44)** 14:22 15:2,10,15,18,25 16:4 19:5,12,15,19,25 21:2,18 31:9,20 32:3,14 34:8 67:21,25 106:21 107:1,14,25 108:10,19 109:1,11,14 111:19 115:13 120:21 122:2,5 132:1 146:24 147:6 148:5,8 149:23 150:6 157:14 158:7
**rightfully (1)** 156:7
**rightly (3)** 74:6 122:8 130:21
**rights (5)** 6:18 30:5,8 57:10,14
**ring (3)** 80:15 81:6 135:14
**rise (1)** 117:5
**risk (60)** 3:24 8:4 12:11 29:2 34:6 42:10 47:12,13,20 48:10,16 53:2,4 63:13,13,19 64:18 66:1 70:4 71:16 77:19 78:4 79:16 81:2,4,13,15 82:23,25 86:15 87:1,9,12 88:18,22 90:24 91:5,10,12,25 94:1,9,14,18,23 95:15 97:13,17,23 102:21 103:3 105:21 112:8,10 118:15 128:17,23 129:8 130:20 150:19
**risks (5)** 6:21 64:5 71:11 84:5 96:19
**role (5)** 96:13,13,14 122:14 123:9
**roof (1)** 58:6
**root (1)** 134:5
**round (2)** 31:21 84:15
**roundly (1)** 77:22
**rules (5)** 9:21 47:5 49:9,11 54:21
**rulings (1)** 100:1
**rush (2)** 60:5,7

**S**

**safe (2)** 81:20,21
**safeguards (1)** 80:19
**salaries (3)** 8:19 80:20 151:14
**sale (2)** 141:10,19
**same (16)** 5:18 9:18 23:1 36:2 42:20 51:19 78:23 85:11,17 87:19 97:7 98:4 99:15 105:2 151:1,12
**sanction (5)** 12:21,23 13:1 26:3,7
**sanctions (1)** 91:19
**santa (1)** 41:3
**sat (6)** 51:22 56:8 57:9 60:18 62:19 94:7
**satisfied (3)** 112:7 119:17 129:24
**save (2)** 8:16 98:7
**saw (7)** 77:22 87:11 88:8 110:3 141:14 151:3,7
**saying (25)** 2:10 4:19 10:9 11:18 24:10,13 29:6 42:22 52:2 75:10 80:12,25 83:23 84:1 101:24 117:12 123:8 135:21,22 136:1,5,24 151:9 158:4,8
**scale (1)** 61:16
**schedule (1)** 125:22
**scheduled (2)** 125:24 146:4
**scope (2)** 96:12 133:4
**scott (101)** 1:11 13:4 46:10,11,12 47:1 50:2,9 51:14,15,20,22 57:23 58:11,24 59:3,9,15,21 60:1,4,13,17 61:4,9 62:7,18,21,24 63:2 67:21,23 68:2 74:16,23 75:4,7,24,25 76:7,11,25 77:3 79:21 80:5,10 81:9,23 82:5,12,16,21 84:10,14,18 96:9,10,22 101:23 102:5,19 104:6,9 106:18,21,25 107:9 108:1,14,22 109:7,12,17 111:21 112:24 113:2,5,8,13,17,20,22 115:10,14 116:1,9,10 117:10,13,17 120:18,22,23 128:19 129:9 130:2,13 135:6 139:3 151:21 159:2
**scotts (5)** 96:13,22 121:16 133:4,6
**scrutiny (1)** 98:16

**sec (3)** 145:1 151:6,7
**second (22)** 1:13 27:12,25 47:9 55:22 69:8 86:13 87:5 94:19 95:19 99:9 110:9 113:25 116:14 121:9,13 139:18 141:5 148:1 152:13 154:20 156:12
**secondly (1)** 37:22
**section (2)** 68:17 118:4
**sections (1)** 150:9
**secure (3)** 78:2,12 119:13
**securities (1)** 144:22
**see (50)** 12:9 13:6,8 14:11 15:14 19:25 20:5 25:4 26:17 29:9 35:14 36:11 40:7,19 41:12,13,17,18 44:9 59:15 68:2,16 70:5,14 72:5,18 75:24,25 78:7 94:17 95:23 97:1 102:10 105:24 110:1 113:24 116:5 122:7,11 125:14 138:10 139:11,12,17 143:18,24 152:11 154:23 158:1,19
**seek (10)** 8:14 34:24 38:23 43:2 48:20 50:14 55:5 92:9 120:11 157:3
**seeking (27)** 8:17,22 11:1,3,21 12:14 17:23 23:16 25:8 31:7 33:22 43:7 49:2 50:5 63:22 86:19,23 106:23 107:1 127:12,25 128:16 148:22,23 149:11 156:23,25
**seeks (2)** 98:3 127:12
**seemed (1)** 23:9
**seems (5)** 17:16 30:3 76:2 131:7 134:4
**seen (10)** 5:8 6:1 9:11 10:7 27:19 124:25 127:16 130:21 142:15 151:16
**sees (3)** 51:25 67:13 116:14
**semicolon (1)** 139:19
**sense (2)** 11:10 100:19
**sensible (1)** 84:23
**sent (1)** 50:25
**sentence (4)** 94:19 113:25 116:14 145:21
**separately (1)** 122:8
**serial (2)** 63:14 99:7
**series (3)** 101:18 103:25 109:19
**serious (19)** 3:17 6:12,15 13:3,16 14:21 16:10,15 64:3,9,16 67:16 69:23 70:7 76:12 95:4,17 97:4 127:21
**seriously (5)** 2:17 87:18 103:10 111:24 118:9
**serve (2)** 24:4 68:24
**served (2)** 92:24 112:19
**service (1)** 123:2
**set (13)** 17:15 52:4 67:9 85:7 95:8 125:22 137:16 138:13,20 142:8,14 143:25 144:7
**sets (3)** 67:12 130:7 156:15
**setup (1)** 134:17
**several (4)** 53:3 95:6 106:4 117:5
**shadowy (1)** 64:15
**shall (13)** 2:18,21,24,25 49:13,19 75:11,19 125:5 139:21 140:7,9 157:19
**share (4)** 132:6 154:9,19,22
**shareholder (5)** 19:9 20:6,12 21:5 30:6
**shareholders (9)** 15:4 19:10 20:3,15 21:7 22:20 30:10 57:8 147:1
**shareholding (1)** 122:20
**shares (3)** 66:13 142:12,13
**sheet (1)** 44:15
**shell (1)** 17:18
**shopping (2)** 54:7,22
**short (5)** 1:8 38:10 75:22 118:24 157:24
**shorter (1)** 12:2
**shorthand (1)** 74:20
**shortly (3)** 150:20,21 155:6
**should (40)** 3:1 4:4 11:16 14:4 23:22 24:10,13 25:13 37:10 43:2,5 44:17,24 45:4,21 46:2 49:2,4 60:21 65:5 83:18,23 88:11 96:9 100:2 102:25 118:10 121:15 125:12,14 126:4,6,7,11 131:1 132:10 136:10,22 140:22 143:22
**shouldnt (3)** 22:8 32:2 136:2
**show (5)** 58:7 65:25 67:4 112:11 114:16
**showed (3)** 70:12 86:22 108:14
**shown (3)** 109:6 147:11 151:6
**shows (3)** 135:18 146:9 154:16
**shut (1)** 136:17
**sic (1)** 158:14
**side (5)** 62:23 63:2 64:7 95:18 136:11
**sides (1)** 64:16
**significant (6)** 37:23 40:7,9 78:10,17 145:17
**significantly (1)** 149:6
**similar (2)** 8:15 84:16
**similarly (1)** 153:20
**simple (2)** 26:7 54:7
**simplistic (1)** 96:21
**since (19)** 24:8 32:5,12 33:4 52:17,19 61:18 83:11 85:21,24,25 88:20 90:11 108:12 115:24 145:16,23 150:25 151:16
**single (2)** 73:9 90:20
**siphon (1)** 14:4
**sir (45)** 14:22 15:2,10,15,18,25 16:4 19:5,12,15,19,25 21:2,18 31:9,20 32:3,14 34:8 67:21,25 106:21 107:1,14,25 108:10,19 109:1,11,14 111:19 115:13 120:21 121:15 122:2,5 132:1 146:24 147:6 148:5,8 149:23 150:6 157:14 158:7
**sitting (12)** 1:8 33:14 38:14,25 39:1,8,12,14,21 42:11 116:3 158:17
**sittings (2)** 39:15,16
**situation (11)** 10:15 11:24 15:11,25 16:2,7 18:4,18 19:6 39:20 147:25
**six (5)** 45:3 46:1 73:6 90:11 91:16
**sixth (2)** 63:21 123:12
**skeleton (10)** 5:9,24 50:22 52:1,5 54:4 90:18 94:16 97:25 98:13
**skip (1)** 3:16
**skyview (4)** 152:6,8,20,22
**slight (1)** 22:7
**slightly (3)** 2:4 85:22 123:7
**slippage (1)** 22:7
**slow (2)** 113:16 135:20
**small (2)** 15:18 41:13
**smith (1)** 121:4
**sole (12)** 5:15 6:20 7:24 15:11,22 17:8 18:1,22 134:24 138:10 139:6 151:18
**solely (1)** 147:1
**solvent (1)** 114:5
**somebody (4)** 7:8 33:13 51:18 74:19
**somebodys (1)** 147:2
**somehow (1)** 61:24
**someone (1)** 96:24
**something (14)** 2:9 19:21,22 51:4,11,13 71:8 79:18 80:18 86:8 102:9 129:2 135:25 143:12
**sometimes (3)** 38:22,23 147:20
**somewhat (2)** 5:16 127:9
**soon (3)** 39:22,22 105:18
**sort (5)** 9:10 42:16 75:16 102:3 131:2
**sorted (1)** 81:21
**sorts (1)** 60:2
**sought (27)** 12:12 23:14 34:10 45:1 48:13 49:23 65:16,16 67:2,18 68:9 69:15 78:4 90:12 91:20 92:21 97:20 103:5 106:13 108:5 118:14 124:24 127:4,5 128:5,6 129:17
**sources (1)** 154:16
**south (1)** 93:2
**spare (1)** 82:10
**speaker (1)** 158:6
**speaking (4)** 4:9 12:11 80:18 81:20
**special (14)** 1:7,24 38:14,18,25 39:1,8,11,13,15,16,21 42:11 116:3
**specific (4)** 66:10 74:10 137:17 142:8
**specifically (5)** 121:8 122:9 131:20 133:20 143:21 145:22
**speculated (1)** 100:14
**speculation (2)** 100:18,19
**spell (1)** 114:13
**spend (4)** 78:11 102:8 137:12 149:20
**spending (1)** 102:10
**spoken (1)** 7:9
**squarely (1)** 18:9
**stage (8)** 52:17 53:5 67:9 73:25 81:25 108:16 109:18 132:6
**stages (2)** 92:2 147:8
**stakeholders (1)** 99:18
**stand (1)** 111:21
**stands (4)** 28:21 84:20 99:14 100:23
**standstill (1)** 114:5
**start (6)** 3:8 4:2 16:7 21:20 40:7 113:14
**starting (4)** 61:6 113:18 141:7 145:21
**starts (5)** 35:10 60:24 79:15 144:20 145:4
**statement (3)** 84:7 142:15 144:6
**statements (1)** 44:15
**status (1)** 99:24
**statute (2)** 150:2,5
**stay (2)** 9:20 12:4
**stayed (3)** 23:13,19 100:3
**steady (1)** 80:16
**steeped (3)** 53:10 54:9 77:11
**stemmed (1)** 104:23
**steps (2)** 51:23 99:5
**still (10)** 30:24,25 36:15 76:3 91:24 119:4 122:13 127:12 152:8,8
**stock (1)** 82:9
**stop (1)** 101:20
**stopped (1)** 62:11
**straight (1)** 10:3
**straightforward (2)** 2:6 118:24
**strange (1)** 11:24
**strength (1)** 149:4
**strike (1)** 100:16
**strikeout (1)** 29:10
**strong (2)** 149:12,14
**structure (55)** 7:17,21,24 8:2 15:14,22 17:9,15 18:8,24 20:8 29:25 30:4,7 31:1 37:19,24 40:4,8 55:24 56:2,21,25 57:3,7 63:3 66:16 68:24 71:22 83:9 86:4 87:13 88:14,15 107:13 108:24 114:10 123:11,24 126:6 134:6,12 137:14,16 138:20,21 142:8,11,16 143:25 144:9 146:21 151:17 155:15,20
**structured (1)** 134:17
**structures (2)** 83:16 106:2
**stuff (2)** 59:25 151:25
**subject (4)** 36:9 66:10 89:17 98:24
**submit (8)** 26:2 46:21,23 54:22 97:16 98:9 118:17 149:11
**submitted (3)** 24:19 29:1 150:23
**submitting (2)** 84:4 115:2
**subparagraph (1)** 110:14
**subsequent (1)** 90:22
**subsidiaries (15)** 26:23,25 27:6,8,8,9,15,19,24 34:22 72:2 101:13 109:25 110:3 157:4
**subsidiary (2)** 110:4,7
**substance (3)** 12:16 37:1 119:8
**substantial (7)** 18:15 63:12 77:5 80:16 103:18 104:13 105:10
**substantially (3)** 8:15 96:16 120:3
**substantive (3)** 1:24 3:6 19:1
**succeed (4)** 65:6 85:12 112:3 149:9
**success (1)** 85:11
**successful (1)** 65:9
**successfully (2)** 77:7 85:4
**succinctly (1)** 133:23
**suffer (1)** 128:18
**suffered (1)** 34:7
**sufficient (4)** 26:15 33:19 46:15 48:25
**sufficiently (2)** 149:12,14
**suggest (15)** 29:1 49:23,25 53:19 55:23 56:10 61:22 84:22 88:12 90:17 93:15 95:14 119:9 146:18,22
**suggested (5)** 70:22 81:12 110:19 111:5 139:3
**suggesting (3)** 83:17,20 102:17
**suggestion (7)** 87:9 89:23 91:9 97:12 109:23 110:10 129:7
**suggestions (1)** 53:1
**suggests (2)** 65:9 88:15
**suit (1)** 96:25
**summarise (2)** 46:16 88:24
**summary (1)** 64:8
**summer (2)** 92:18 93:1
**summons (11)** 35:10,11 72:15 89:20 92:11,12 106:22 107:15 124:22,23 137:6
**sums (3)** 57:19 103:18,18
**support (12)** 6:5 37:10 53:17 54:4 94:13 98:13 100:17 105:12 121:16 131:9,16 147:24
**supported (2)** 85:6 95:9
**supporting (9)** 22:15,22 23:2,11,14 24:8 25:8 145:10,23
**supports (2)** 77:18 98:20
**suppose (3)** 99:1 101:12,15
**supposed (1)** 94:13
**supreme (3)** 23:15,16 29:6
**sure (8)** 9:11 10:8 11:13 15:16 32:21 128:5 149:17,18
**surely (1)** 92:2
**surplus (1)** 35:24
**surprise (1)** 55:6
**surprisingly (1)** 6:16
**sworn (4)** 47:25 95:9 100:12 113:8

**T**

**tab (1)** 49:17
**table (5)** 33:8 40:15 41:15,19 151:3
**tactical (1)** 93:20
**tactically (1)** 13:18
**tailored (1)** 39:20
**taken (12)** 9:12,16 18:24 21:5 100:14 101:19 109:10 110:9 121:23 136:2 154:1 155:6
**takeover (1)** 63:1
**takes (1)** 123:3
**taking (4)** 24:11 63:7 134:5 140:24
**talk (1)** 157:17
**talking (2)** 147:9 156:4
**talks (1)** 79:17
**tas (1)** 97:20
**tax (4)** 63:4 142:16 144:7 153:21
**team (6)** 32:16,21 51:23 60:15,18 109:9
**telling (1)** 14:12
**temporary (2)** 25:9,11
**ten (2)** 89:1 133:15
**tenminute (1)** 74:21
**tens (3)** 28:18 123:19 145:19
**term (5)** 27:6 72:10 89:21 92:18 116:6
**terminology (1)** 134:20
**terms (31)** 3:1 8:15,23,24 9:2 11:2,3 22:14 25:6,19 26:13,25 27:24 29:16 33:20,23,25 35:15,16 36:19 41:19 42:18,21 49:18 52:4 80:11 117:19 127:19 137:19 147:21,23
**territory (1)** 18:9
**tetchy (1)** 113:15
**texas (47)** 16:5 22:14,20,25 23:6,7,19,23,24,25 24:12,14,20,21,24 25:7,25 26:5,8,21 28:21 29:7,12 47:23 58:6 70:23 71:13,14,20 87:20 88:4,8 92:6 97:22 98:23,25 99:3,11,21,25 100:1,5 101:1,8 102:15 116:6 135:7
**thank (55)** 1:6,6,17 3:10 4:6 5:1 15:20 21:22,23 33:12 36:16 39:25 40:25 41:2 42:8 43:25 46:6,9 62:10 67:25 74:25 75:6 77:2 79:11 109:15 120:18,21 121:14 122:5 128:11 130:10 131:23 132:1,2,3 133:8,10,24 136:25 137:10 140:4 143:1 149:24 150:17,17 153:25 155:3 156:14 157:11,14,16,22 158:21,22,23
**thanks (1)** 109:16
**thats (94)** 2:7,13 4:22 8:21 10:17,18 11:12,17,20,23,23 13:8,21 15:9,13,21 18:21 21:2,13 22:5,12 25:16 26:19 27:10 28:7,12 29:21 30:22 31:24,25 33:19 34:25 35:11,11,13,22,24 36:9,17,22 38:21 39:18,24 41:8 48:14 50:7 55:21 56:19 58:9 59:12,19 61:9 62:20 65:2,10 67:25 74:21 79:25 80:24 83:10,15 87:24 88:3 97:9,23 102:6 104:16,17 109:16 113:10 114:15 116:18 121:10 124:24 127:1,7 128:2,10 133:8 136:6 137:7 138:16,19 142:18 145:14 150:15 151:21 152:2 153:7 154:12 155:2,6,21 156:4
**theirs (1)** 108:8
**themselves (6)** 5:19 7:14 23:5 87:8 96:6 147:24
**theoretical (1)** 48:10
**thereafter (1)** 52:11
**thereby (2)** 49:8 86:4
**therefore (4)** 23:4,12 134:23 135:13
**theres (5)** 13:20 32:6 76:2 115:24 149:12
**theyd (1)** 104:3
**theyre (1)** 104:6
**theyve (2)** 146:13,14
**thing (5)** 26:8 35:5 58:19 153:8,10
**thinks (1)** 124:11
**third (14)** 28:1 32:9 47:19 56:9 60:20,22 61:2 76:11 83:4 88:17 97:23 100:7 110:22 123:12
**though (2)** 82:7 129:10
**thought (5)** 38:14 43:13 47:20 50:4 133:14
**thousands (2)** 53:12 93:5
**threat (1)** 88:9
**three (7)** 22:20,21 37:13 55:11 66:9,17 109:4
**threshold (1)** 87:6
**through (11)** 5:6 16:11 26:12 56:5 69:1 71:3 78:6 118:2 133:21 143:25 144:9
**tied (3)** 28:20,23 100:8
**till (2)** 80:16,22
**time (31)** 1:20,20 5:3,18 6:23 10:6 12:3 19:22 20:9 21:6 32:20 38:11,13 40:6 71:1 92:24 93:2 95:11 118:1 132:4,11 133:13,15 137:13 138:9 149:21 151:12 155:4 156:25 157:20,21
**timetable (2)** 28:24 92:14
**title (3)** 59:10 67:24 137:25
**today (12)** 8:13 12:14,17 13:13 35:12 39:6 94:16 124:24 127:11 136:7,18 158:12
**todays (4)** 50:23 77:12 83:20 84:1
**together (2)** 4:24 59:17
**told (4)** 38:25 59:17 82:9,19
**too (3)** 44:22 72:4 157:16
**took (11)** 70:15 71:18 72:5,16,18 88:20,25 95:6 103:22 136:2 151:4
**topic (1)** 2:23
**total (2)** 123:17 152:24
**towards (1)** 136:19
**tracing (5)** 111:19,22,24 112:2,5
**track (3)** 40:5,6 84:9
**tracks (1)** 107:2
**tranche (1)** 12:24
**transaction (1)** 90:9
**transactions (6)** 43:15 73:7 90:3,5,8 135:4
**transfer (3)** 7:16 34:14 37:25
**transference (1)** 73:17
**transferred (2)** 5:12 32:4
**treat (1)** 86:3
**treated (1)** 15:6
**trepidation (1)** 112:15
**trial (11)** 6:19,23 7:4 8:10 64:10,23 95:17 111:20,22 112:3 147:23
**tried (14)** 3:17 6:15 16:11,16 64:4,10 67:16 69:23 70:8 76:13 95:4 97:4 127:21 144:8
**tries (1)** 29:1
**tro (2)** 25:12,13
**trouble (1)** 95:22
**true (5)** 37:20 101:3 111:3,9 117:7
**trust (2)** 62:18 142:9
**trustee (1)** 82:2
**trustees (1)** 80:9
**try (3)** 14:21 35:5 37:18
**trying (8)** 14:13 18:2,21 60:8 75:2 142:17 152:14 156:5
**tuesday (1)** 116:1
**turn (26)** 3:20 7:6 12:1,15 19:2 22:1 25:5 34:6 46:17 49:5,15 50:23 55:1 67:3 69:18 86:13 92:23 111:5 121:24 137:18,24 139:8,24 142:21 144:14 154:14
**turned (1)** 92:9
**turning (5)** 4:1 5:7 14:20 21:24 25:19
**turns (1)** 119:15
**twoday (1)** 85:21
**type (1)** 139:12
**typical (1)** 139:12

**U**

**ubs (2)** 63:20,25
**uhhuh (1)** 145:6
**uk (2)** 1:20 157:20
**ultimate (1)** 30:6
**ultimately (2)** 62:19 64:19
**unable (3)** 73:8 100:17 119:18
**unarguable (1)** 97:14
**unattractive (1)** 132:17
**unbolded (1)** 67:14
**unclear (2)** 29:24 127:9
**underlying (16)** 5:21 6:3 11:8 15:23 16:20 65:18 66:20 67:1 111:17 138:22 142:1 147:15 154:3,11,17 157:4
**undermine (1)** 128:25
**underprivileged (1)** 6:6
**understand (26)** 1:25 10:9 11:22 13:18 21:18,19 22:18 38:16 57:5 60:1 62:18,21 81:16 107:9 109:14 110:12 113:5 117:11 128:4 130:6 132:6 136:4,24 149:19 155:13 157:7
**understanding (3)** 39:6 108:2 135:21
**understood (7)** 50:10 100:1 107:5,10 110:18 111:2 144:13
**undertaking (12)** 28:3 44:14 78:12 92:19 104:11 116:13 117:25 129:11,20 130:2 131:10 154:22
**undertakings (48)** 8:10,12 9:3 24:16 27:25 29:16 33:21 42:21 43:22 44:20 45:2,22,25 48:3,5 52:21 70:22 72:7,14,19,22 73:5 86:2 89:22 90:14 93:1,8,14,16,23 103:9,23 104:17,23,25 105:4,7 111:14 116:16 117:2,8,23 118:19 119:23 120:1 129:11 155:9,17
**undertook (3)** 90:2,3,8
**undervalue (1)** 5:15
**undisputed (3)** 47:14 122:17 123:14
**undoubtedly (2)** 11:19 30:12
**unfair (2)** 54:15 118:16
**unfortunate (1)** 18:17
**unfortunately (1)** 117:4
**unimportant (1)** 118:23
**unique (1)** 68:23
**unjustifiable (2)** 46:20 49:6
**unjustifiably (2)** 89:10,23
**unjustified (34)** 46:19 47:4,12,21 48:4 53:2 56:12 64:19 66:1 73:2,24 77:20 81:13 82:23 86:15 87:2 88:13,18,22 90:21,24 91:6,10 92:1 94:1,10,23 95:15 97:13,18 102:22 103:3 112:8 128:14
**unless (8)** 18:25 23:19 34:4 45:7 120:16 131:20 156:17 157:9

**unnecessary (4)** 48:4,20 105:12 118:7
**unpaid (1)** 63:25
**unproductive (1)** 132:14
**unsurprisingly (1)** 6:10
**until (7)** 12:3 36:7 38:13 81:7,21 129:14 153:4
**unusual (1)** 80:17
**unwilling (1)** 119:18
**upheld (1)** 23:17
**upon (18)** 47:6,16 48:15 52:22 53:25 56:17 57:6,7 63:7 69:7,16 71:1 74:2 86:8 91:3 93:6,7,7
**upshot (1)** 53:9
**urgent (1)** 40:12
**used (3)** 86:2 88:4 139:6
**userfriendly (1)** 60:9
**using (3)** 43:21 107:3 144:10
**usual (6)** 49:2 119:11 120:12 124:1 131:1,17
**usually (3)** 53:22,24 111:20
**utterly (1)** 99:1

**V**

**validity (1)** 104:20
**valuable (2)** 5:13 27:9
**value (5)** 17:19 82:13 90:3 154:12,18
**variety (1)** 32:12
**various (10)** 36:2 41:13 82:3 85:6 89:11 95:9 118:13 125:15 146:6,11
**vast (3)** 55:8 69:5 125:23
**vehement (1)** 71:5
**vehemently (1)** 95:7
**vehicle (3)** 17:18 63:22 119:4
**vehicles (3)** 86:2,9 104:18
**ventilated (1)** 104:7
**version (1)** 25:9
**vest (2)** 66:5 74:14
**vexatious (2)** 63:14 99:7
**via (1)** 82:18
**viable (3)** 69:13 74:1 112:2
**vicious (1)** 82:14
**views (2)** 18:5,16
**vindicate (1)** 104:22
**virtually (2)** 51:21,22
**virtue (2)** 103:22 104:10
**visibility (2)** 31:2,8
**voluminous (3)** 73:4 90:16 95:12
**voluntary (2)** 114:4 129:20
**volunteered (1)** 131:6

**W**

**wait (2)** 81:7 157:18
**waited (1)** 129:13
**wants (1)** 102:8
**wasnt (3)** 12:4 142:9 153:14
**watch (1)** 96:17
**way (33)** 5:6 9:19 14:7 31:21 32:4 34:13,19 42:8 43:23 51:16 56:3 68:4,9 75:2 77:6 80:23 84:15 93:20 102:20 119:12 123:16 124:1,18 125:1,6 127:13 131:7,17 135:14 136:6,18 142:14 146:16
**weaponisation (1)** 105:3
**weapons (1)** 106:6
**wearing (1)** 101:22
**wedding (1)** 96:24
**wednesday (1)** 158:14
**week (3)** 48:1 92:25 112:19
**weeks (2)** 72:11 91:16
**weigh (1)** 85:14
**wellknown (1)** 86:24
**went (1)** 45:15
**werent (2)** 22:22 134:21
**whatever (1)** 148:11
**whats (6)** 14:8 19:15,25 37:24 102:16 142:17
**whatsoever (6)** 6:25 56:2 57:2 71:7 125:7 146:21
**whereabouts (2)** 58:17 60:10
**whereas (3)** 96:14 151:10,16
**whereby (4)** 57:8 65:19 71:21 89:15
**wherever (1)** 49:11
**whoever (1)** 148:5
**whole (3)** 76:24 87:22 158:16
**wholly (3)** 101:5 110:7 132:14
**whollyowned (1)** 34:21
**whom (1)** 135:19
**wide (1)** 78:9
**wider (1)** 73:1
**wideranging (1)** 65:17
**willingness (1)** 105:24
**wind (1)** 17:5
**winning (1)** 102:2
**wish (3)** 120:9 121:6 158:23
**wishes (1)** 100:5
**withstands (1)** 98:16
**witness (1)** 84:7
**wondered (2)** 82:17 150:9
**wont (5)** 24:12 44:6 105:19 117:13,17
**work (1)** 95:25
**workable (1)** 43:13
**worked (1)** 63:4
**works (1)** 152:21
**world (2)** 31:17 39:23
**worried (1)** 84:14
**worry (1)** 133:17
**worse (5)** 18:18 48:8 54:12 85:25 106:14
**worth (7)** 17:13 40:15 63:23 86:5 93:6 104:15 137:20
**wouldnt (3)** 7:19 15:15 93:18
**writing (2)** 126:8 148:11
**written (1)** 153:3
**wrong (17)** 4:16 27:16 31:21 49:24 51:18 55:20,23 56:10 61:22 62:13 71:7 81:25 84:15 109:22 118:17 146:18,21
**wrongdoers (1)** 6:21
**wrongdoing (2)** 64:13 95:7
**wrongly (2)** 119:16 130:22
**wrote (1)** 144:22

**X**

**x (1)** 159:1

**Y**

**year (10)** 25:18 52:22 72:7,17 89:1 94:2 105:5 151:10,11 153:5
**years (3)** 95:6 106:4 123:17
**yet (3)** 35:25 59:7 91:3
**york (2)** 104:7,21
**youre (1)** 102:1
**yourselves (2)** 75:16 143:19
**youve (1)** 80:24

**0**

**008 (1)** 143:6

**1**

**1 (9)** 35:14 36:18 63:23 69:6 91:23 107:2 124:25 143:16 145:4
**10 (3)** 50:23 129:12 146:16
**100 (3)** 1:2 86:5 104:15
**100000 (2)** 58:5 61:14
**1008 (4)** 142:23 143:5,10,12
**11 (99)** 2:22 3:2,23 7:4 16:1,4 21:20 22:1 24:15 25:7,14,17,19 26:9,11,12,16,22 27:18 28:1,14,20 29:2,5,14,22,25 30:21,24 33:18,21,25 34:5 35:15 36:19,22 37:1,5,12 40:11 41:20 42:18 45:6 46:5 47:22 70:23 71:19 79:17,19 83:1,8 84:3,21 90:1 91:2 92:7 97:22 98:3,6,10,14,22 99:6,10,20 100:8,10,16,20 101:2,9,9,14 102:23 103:6 107:3,15,19 108:3,13,16 109:3,19,24 110:1,10,19,24 111:6 113:23 114:2,13,21,24 115:2,17 116:6 135:2,3
**1135 (1)** 157:20
**11c (1)** 36:4
**11th (2)** 41:13 61:7
**12 (1)** 123:18
**121 (1)** 159:3
**122 (1)** 60:24
**123 (2)** 79:14 82:18
**130 (2)** 67:23 68:3
**132 (1)** 159:3
**133 (1)** 159:4
**137 (1)** 156:12
**14 (2)** 94:17,17
**15 (3)** 89:19 98:13 151:19
**15712050 (1)** 61:15
**16 (1)** 139:9
**16a (1)** 139:11
**173 (4)** 35:2,5,8,10
**174 (1)** 8:25
**175 (1)** 43:8
**176 (2)** 44:9 124:22
**180 (1)** 125:14
**195 (4)** 22:2,4,5 26:18
**196 (1)** 28:3
**1st (1)** 1:11

**2**

**2 (5)** 36:21 49:17 69:6 125:2,17
**2005 (1)** 16:8
**2011 (2)** 17:14 62:20
**2012 (1)** 145:23
**2021 (1)** 143:15
**2022 (1)** 144:21
**2024 (1)** 95:21
**2025 (6)** 41:13,15 70:22,23 72:20 95:21
**2026 (2)** 1:1 59:11
**206 (1)** 97:2
**21 (1)** 34:10
**211 (2)** 144:21 145:5
**212 (6)** 144:15,18,19 145:6,7,9
**214 (2)** 49:9 53:21
**216 (3)** 97:9 122:4,11
**217 (1)** 122:17
**218 (1)** 122:23
**219 (1)** 123:3
**22 (1)** 98:1
**239 (2)** 69:21 87:14
**240 (2)** 70:17 72:19
**240242 (1)** 70:14
**242 (1)** 87:14
**243 (2)** 73:15,18
**244 (1)** 74:8
**245 (1)** 73:16
**246 (2)** 76:17,19
**25 (1)** 114:23
**256 (1)** 76:23
**257 (1)** 76:19
**258 (1)** 78:6
**259 (1)** 78:7
**261 (2)** 78:6,15
**262 (2)** 79:3,8
**269 (1)** 79:8
**27 (3)** 1:1 125:15,21
**270 (1)** 17:13
**27th (1)** 59:11
**28 (5)** 112:21 113:13,16,17 114:19
**28th (1)** 41:15
**29 (1)** 115:8
**290 (1)** 112:20

**3**

**3 (11)** 37:3 43:10 51:1 52:2,13,16 129:14 137:8,9,10 159:2
**30 (2)** 115:15,20
**300 (2)** 82:13 96:17
**303 (2)** 75:21 156:12
**31 (2)** 116:11,14
**31a (1)** 138:11
**31st (2)** 89:21 158:14
**32 (4)** 79:14 116:24 146:3,14
**320 (1)** 75:19
**321 (1)** 75:23
**32c (2)** 139:25 140:5
**33 (3)** 5:25 116:11 117:17
**347 (1)** 59:6
**35 (2)** 117:20 151:10
**36 (1)** 117:23
**37 (2)** 117:25 146:8
**3rd (1)** 1:11

**4**

**4 (5)** 37:3 43:14 49:17 137:9,10
**42 (3)** 145:24 146:1,13
**42a (1)** 140:17
**45 (1)** 75:5
**46 (4)** 61:4,5 62:5 159:2
**47 (2)** 61:4,5
**4728 (5)** 40:20,24 41:7,9 151:5
**48 (2)** 62:5,7
**489 (1)** 139:9
**495 (3)** 137:24 139:25 140:3
**496 (1)** 140:17

**5**

**5 (7)** 37:3 44:4,11 52:9 69:6 137:9,10
**50000 (2)** 43:11 44:14
**500000 (3)** 32:7 151:2,11
**524 (1)** 157:23
**535 (1)** 157:20
**543 (1)** 157:25
**546 (1)** 158:24
**549 (2)** 58:10 59:4
**56 (2)** 5:25 79:14
**56page (1)** 53:14
**5th (1)** 1:11

**6**

**6 (2)** 69:6 88:25
**600 (1)** 1:20
**60000 (6)** 151:15 152:25 153:5,15,18,24
**62 (2)** 67:4 154:15
**6894 (1)** 40:25
**6th (1)** 1:12

**7**

**7 (1)** 69:6
**728 (1)** 41:6
**79 (2)** 69:19 121:25
**7a (5)** 28:12 31:10,12,21 110:24
**7b (5)** 28:3,10,11,14 110:14

**8**

**8 (1)** 143:8
**80 (1)** 86:21

**9**

**98 (1)** 154:23
**99 (1)** 60:11

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S SECOND AMENDED**
**EXHIBIT LIST FOR THE MAY 11, 2026 HEARING**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021- HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019- HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022- HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001- HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002- HCM-D10000013 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014-HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016-HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017-HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019-HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021-HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037-HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039-HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046-HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053-HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056-HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070-HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073-HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074-HCM-D10000090 |
| 67 | Register for CDH GP, Ltd. | HCM-D10000091-HCM-D10000091 |
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092-HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093-HCM-D10000094 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095-HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096-HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097-HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125-HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264-HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266-HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268-HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270-HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272-HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273-HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274-HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275-HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277-HCM-D10000278 |
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279-HCM-D10000280 |
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048-HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052-HMIT_Entities_000054 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055-HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058-HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059-HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060-HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061-HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062-HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064-HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066-HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067-HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071-HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075-HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077-HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079-HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080-HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081-HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084-HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085-HMIT Entities_000086 |
| 122 | Financial statement audit | HMIT_Entities_000087-HMIT_Entities_000103 |
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104-HMIT_Entities_000114 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115-HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125-HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126-HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134-HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135-HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260-HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262-HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264-HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265-HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267-HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001-VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002-VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003-VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008-VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027-VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028-VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030-VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396–TDIT003398 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 190 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 191 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 192 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 193 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 194 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 195 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 196 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 197 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 198 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 199 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 200 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 201 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |
| 202 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 203 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |
| 204 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 205 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 206 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 207 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 208 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 209 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 210 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 211 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 212 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 213 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 214 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 215 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 216 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 217 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 218 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 219 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 220 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |
| 221 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 222 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |
| 223 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 224 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 225 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 226 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 227 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 228 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 229 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 230 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 231 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 232 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 233 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 234 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 235 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 236 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 237 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 238 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 239 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 240 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |
| 241 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 242 | Demonstrative: DAF-Rand Structure Chart | |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 10, 2026

Respectfully submitted,

*/s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 10, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

# EXHIBIT 242

# DAF Restructuring

**DAF Structure Chart**
*(as of 3/6/2024)*






008274

**DAF Structure Chart**
*(as of 3/6/2024)*



**DAF Structure Chart**
*(3/7/24 – 12/17/24)*





**DAF Structure Chart**
*(12/18/24 – 2/6/25)*




008277

**DAF Structure Chart**
*(2/7/25 – 3/26/25)*




008278

**DAF Structure Chart**
*(as of 3/27/2025)*






*The Charitable Foundations received $1.61 m in cash based on a 99.4% discount on their $270 million in assets

**DAF Structure Chart**
*(as of 3/27/2025)*




008280

**DAF Structure Chart**
*(as of 3/27/2025)*




008281

**Net effect of DAF Transactions**
*(12/18/24 - 3/27/2025)*



# Hunter Mountain Restructuring

**Rand Structure Chart**
*(effective as of 12/2015 – 8/2022)*




Rand Structure Chart
(8/1/22 – Feb. 2025)
Dallas Foundation
Supported Organization
100% support
100% support
Empower Dallas
Okada Family Trust
82%
18%
Annuity Policy
Charitable DAF Holdings Corp.
(Delaware corporation)
(Director: Mark Patrick)
Sole Member
Sole Member
Sole Member
Rand Advisors, LLC
(Delaware LLC)
Investment Adviser
(Manager: Mark Patrick)
Rand PE Fund Management, LLC
(Delaware LLC)
(Manager: Mark Patrick)
Atlas IDF GP, LLC
(Delaware LLC)
(Manager: Mark Patrick)
Crown Global
Insurance Company
GP
Limited Partnership Interest
IMA
Atlas IDF, LP
(Delaware limited partnership)
(General Partner Managed)
GP
96% LP
4% LP
Dolomiti / Hakusan
Rand PE Fund I, L.P.
(Delaware limited partnership)
(General Partner Managed)
Sole Member
Beacon Mountain, LLC
(Delaware LLC)
(Sole Member Managed)
Sponsor and Sole Beneficiary
Hunter Mountain Investment Trust
(Delaware statutory trust)
(Administrator: Mark Patrick)
(DE Trustee: Wilmington Trust)
Key
Control/ Fiduciary
Assets
Economic Benefit

008285

**DAF/Rand Structure Chart**
*(effective as of 4/27/2023)*



**Rand Structure Chart**
*(8/1/22 – Feb. 2025)*



**Rand Structure Chart**
*(Feb. 12, 2025)*



**DAF/Rand Structure Chart**
*(Apr. 2025)*




*DFW Charitable Foundation completed it acquisition of 100% of CDMCFAD between December 2024 and March 2025. The final result of this transaction is shown here for simplicity's sake.

**DAF/Rand Structure Chart**
*(May 2025)*




008290

**DAF/Rand Structure Chart**
*(Feb. 2025)*




008291


Mark Patrick
Fiduciary Control
Sole known economic beneficiary
Dallas Foundation
$1 million cash
DFW Charitable Foundation
(Delaware)
(Director: Mark Patrick)
$23.5 million cash + "valuable" litigation claims

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P. AND
THE HIGHLAND CLAIMANT TRUST'S SECOND AMENDED WITNESS AND
EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON MAY 11, 2026**

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the Reorganized Debtor is 6333 Mockingbird Ln., Ste 147 #5045, Dallas, Texas 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the Highland Claimant Trust (together, "Highland"), by and through its undersigned counsel, submits the following second amended witness and exhibit list with respect to the *Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] ("Motion for Relief") filed by The Dugaboy Investment Trust ("Dugaboy") which the Court has set for hearing on May 11, 2026 at 9:00 a.m. (Central Time) (the "Hearing") at the George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, Texas 79401.

**A. Witnesses:**

1. James Dondero;
2. James P. Seery, Jr.;
3. Nancy Dondero, as Trustee to The Dugaboy Investment Trust;
4. Mark Patrick;
5. Any witness identified by or called by any other party; and
6. Any witness necessary for rebuttal.

**B. Amended Exhibits:**[2]

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| **A.** | **Patrick Authority** | | | |

[2] The amendments to *Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026* [Docket No. 4608] and *Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026* [Docket No. 4611] include the additions in bold font below.

[3] Highland's Witness and Exhibit List for the June 25, 2025 hearing (the "9019 Hearing") on the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] can be found at Docket No. 4255 and as further amended at Docket Nos. 4277 and 4280. Exhibit reference is to the exhibit list (and copies of the exhibits themselves) found at Docket No. 4255 unless otherwise noted.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 1. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | 70 | | |
| 2. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | 75 | | |
| 3. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | 94 | | |
| 4. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | 95 | | |
| 5. | Membership Interest Purchase Agreement, dated February 12, 2025, between Rand PE Fund I, L.P. and CLO Holdco, LLC | | | |
| 6. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] | 86 | | |
| 7. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | 73 | | |
| 8. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | 83 | | |
| 9. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | 82 | | |
| 10. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | 76 | | |
| 11. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | 85 | | |
| 12. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] | 88 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 13. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | 77 | | |
| 14. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | 84 | | |
| 15. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] | 87 | | |
| 16. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] | 89 | | |
| 17. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | 78 | | |
| 18. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | 81 | | |
| 19. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | 93 | | |
| 20. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | 79 | | |
| 21. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | 80 | | |
| 22. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | 92 | | |
| 23. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | 90 | | |
| 24. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | 91 | | |
| 25. | Crown Global Rand Participation Agreement (Executed) | 102 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 26. | Crown Global DVA Policy 30218 (signed) | 98 | | |
| 27. | Crown Global DVA Termsheet 30218 | 99 | | |
| 28. | Crown Global DVA Policy 30219 (signed) | 100 | | |
| 29. | Crown Global DVA Termsheet 30219 | 101 | | |
| 30. | Bylaws of The Okada Family Foundation, Inc. (final version) | 96 | | |
| 31. | Bylaws of Empower Dallas Foundation, Inc. | 97 | | |
| 32. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | 103 | | |
| 33. | S&G HMIT Opinion dated January 29, 2016 | 104 | | |
| 34. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | 74 | | |
| 35. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | 71 | | |
| 36. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | 72 | | |
| **B.** | **Validation of Patrick's Authority** | | | |
| 37. | *Remittance Agreement* between the NexPoint Small Bay and Charitable DAF and Liberty CLO Holdco, Ltd. (as those terms are defined), dated January 10, 2025 [Docket No. 4536-E] | 22 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 38. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | 13 | | |
| 39. | *Stipulation Withdrawing Objection of the Dallas Foundation and Crown Global Life Insurance, Ltd. to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With the HMIT Entities and Authorizing Actions Consistent Therewith* dated June 27, 2025 [Docket No. 4291] | | | |
| 40. | The Rule 11 Agreement filed in the TX Business Court on July 13, 2025 [Docket No. 4356-F] | | | |
| 41. | *Consent Order in In re Charitable DAF Holdco, Ltd.*, entered by the Grand Court of the Cayman Islands Financial Services Division on July 31, 2025 [Docket No. 4556-20] | | | |
| 42. | *Order* in *The Highland Dallas Foundation, Inc.*, *et al. v. Patrick*, *et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on September 18, 2025 [Docket No. 4534-16] | | | |
| 43. | An amendment to a loan agreement executed by, among others, certain Dondero-controlled entities and CLO Holdco, Ltd., dated September 30, 2025 [Docket No. 4536-G] | | | |
| 44. | *Stipulation [Proposed] Order of Dismissal With Prejudice* between Liberty CLO HoldCo, Ltd. and Dugaboy and others aligned with or controlled by Dondero, dated December 3, 2025 [Docket No. 4536-H] | | | |
| 45. | *Agreed Final Judgment* between Atlas IDF, LP (an HMIT affiliate) and certain Dondero-controlled entities, dated December 8, 2025 [Docket No. 4536-I] | | | |
| **C.** | **Dugaboy's Knowledge of the Principal Allegations Against Patrick** | | | |
| 46. | Excerpts of Returns of Organizations Exempt from Income Tax filed on IRS Form 990, dated 2024, for the Highland Dallas Foundation Inc., the Highland Kansas City Foundation Inc., and the Highland Santa Barbara Foundation Inc. [Docket No. 4556-21] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 47. | The *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-6] | | | |
| 48. | The *Affidavit of James David Dondero*, notarized on April 9, 2025 and filed in support of the *Winding Up Petition in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-7] | 119 | | |
| 49. | *Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on May 2, 2025 [Docket No. 4534-13] | | | |
| 50. | *Order Granting Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd.*, entered in the Grand Court of the Cayman Islands Financial Services Division on May 6, 2025 [Docket No. 4534-14] | | | |
| 51. | The *Affidavit of Mark Eric Patrick*, notarized on June 4, 2025, in *In re Charitable DAF Holdco, Ltd.* and filed in the Grand Court of the Cayman Islands Financial Services Division on June 4, 2025 [Docket No. 4534-10] | | | |
| 52. | *Objection of The Dallas Foundation and Crown Global Life Insurance, Ltd to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4231], filed in the United States Bankruptcy Court for the Northern District of Texas on June 9, 2025 [Docket No. 4534-18] | | | |
| 53. | *Dugaboy Investment Trust's Discovery Related to Rule 9019 Motion* in the above-captioned bankruptcy case, dated June 10, 2025 [Docket No. 4534-19] | | | |
| 54. | *Highland Capital Management, L.P., the Highland Claimant Trust, and the Highland Litigation Sub-Trust's Responses and Objections to Dugaboy's Discovery Related to Rule 9019* Motion, dated June 13, 2025 [Docket No. 4534-12] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 55. | Deposition transcript of Shawn Raver dated June 20, 2025 | | | |
| 56. | Deposition transcript of Julie Diaz dated June 22, 2025 | 124 (at Dkt. 4277) | | |
| 57. | Deposition transcript of Torrey Littleton dated June 22, 2025 | 125 (at Dkt. 4277) | | |
| 58. | Deposition Transcript of Mark Patrick dated June 23, 2025 | | | |
| 59. | The transcript of the June 25, 2025 hearing in the United States Bankruptcy Court for the Northern District of Texas on the *Motion for an Order Further Extending Duration of Trusts* [Docket No. 4213] and *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [Docket No. 4216]* [Docket No. 4534-11] | | | |
| 60. | Highland Rule 9019 Presentation dated June 25, 2025 [Docket No. 4536-L] | L (at Dkt. 4536)[4] | | |
| 61. | *Declaration of James David Dondero* filed in the Texas Business Court, Dallas, Texas and dated July 1, 2025 [Case No. 19-34054, [Docket No. 4521-H-6] | | | |
| 62. | *Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver in The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on July 1, 2025 [Docket No. 4534-15] | | | |
| 63. | *JOL Writ of Summons and Statement of Claim*, filed in the Cayman Proceeding on July 15, 2025 [Docket No. 4536-B] | | | |

[4] This demonstrative was used at the 9019 Hearing on June 25, 2025 and admitted into evidence at the request of Mr. Lang, Dugaboy's attorney. *See* June 25, 2025 transcript (Exhibit 62) at 171:15-25.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 64. | *The Dugaboy Investment Trust's Motion to Stay 9019 Order* [Docket No. 4326] and accompanying exhibits, filed in the United States Bankruptcy Court for the Northern District of Texas on July 17, 2025 [Docket No. 4326] | | | |
| 65. | *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ##4326 & 4308]* (Denying Stay) dated July 21, 2025 [Docket No. 4333] | | | |
| 66. | Charitable DAF Holdco, Ltd. Guidance Notes for Members of the Liquidation Committee (not dated) [Docket No. 4534-9] | | | |
| 67. | CWR Form No. 15, Liquidator's Certificate (Composition of Liquidation Committee) (O. 9, r. 1) in the Grand Court of the Cayman Islands Financial Services Division, dated July 21, 2025 [Docket No. 4534-17] | | | |
| 68. | *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Court, filed in the United States District Court for the District of* Delaware, dated July 21, 2025 [Docket No. 4536-J] | | | |
| 69. | *Declaration of Margot MacInnis*, sworn to on July 21, 2025, and filed in the United States Bankruptcy Court for the District of Delaware in connection with the Ch. 15 Recognition Petition [Docket 4521-6 (Exhibit G)] | | | |
| 70. | *Third Affidavit of Margot MacInnis* filed in Grand Court of the Cayman Islands November 2025 (Under Seal) | | | |
| **D.** | **<u>The Cayman Court Rejects the Dondero Foundation's Fraud Claims</u>** | | | |
| 71. | Letter from Maples and Calder (Cayman) LLP to Karen Hoskins, Personal Assistant to the Hon. Justice Raj Parker of the Grand Court of the Cayman Islands Financial Services Division, dated February 3, 2026 [Docket No. 4556-22] | | | |
| 72. | *Judgment in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on February 10, 2026 [Docket No. 4534-4] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| **E.** | **<u>Other</u>** | | | |
| 73. | Settlement Agreement and General Release dated May 19, 2025 [Docket No. 4217-7] | 1 | | |
| 74. | *Notice of Appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* dated July 15, 2025 [Docket No. 4311] | | | |
| 75. | Dugaboy's Index (compiled from all documents Dugaboy filed at Docket Nos. 4513 and 4521), a document prepared by professionals employed by my firm at my direction dated April 3, 2026 [Docket No. 4536-A] | | | |
| 76. | Executed Withdrawal Letters – Dolomiti and Hakusan dated February 6, 2025 | | | |
| 77. | Deposition Transcript of James Dondero dated May 8, 2026 | | | |
| 78. | *Highland Capital Management, L.P.'s Requests for the Production of Documents Directed to the Dugaboy Investment Trust* dated February 2026 [Dkt 4551-8] | | | |
| 79. | Membership Interest Purchase Agreement, dated August 1, 2022 by and among John Honis, as seller, DAF Holdings Corp., as buyer, and CLO Holdco, Ltd., as guarantor | | | |
| 80. | Amended and Restated Limited Partnership Agreement of Rand PE Fund, dated as of November 30, 2015 | | | |
| 81. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Atlas IDF | | | |
| 82. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Rand PE Fund | | | |
| 83. | Assignment and Assumption of Membership Interest Agreement, dated March 24, 2021, between Grant J. Scott and Mark E. Patrick | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 84. | Amended and Restated Limited Liability Company Agreement of DAF GP, dated as of January 1, 2012 | | | |
| 85. | Second Amended and Restated Exempted Limited Partnership Agreement of DAF Fund, dated March 11, 2024 | | | |
| 86. | Contribution and Assignment Agreement, dated April 27, 2023, by and among DAF Fund, CLO Holdco, Ltd, Liberty CLO Holdco, Ltd., and DAF Holdings Corp. | | | |
| 87. | Highland Demonstrative Exhibit: Highland's Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 88. | *Summons* filed March 3, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 89. | March 27, 2026 Hearing Transcript from proceedings in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 90. | **Highland Santa Barbara Foundation Inc.'s 2024 Form 990** | | | |
| 91. | **Highland Kansas City Foundation Inc.'s 2024 Form 990** | | | |
| 92. | **Highland Dallas Foundation Inc.'s 2024 Form 990** | | | |
| 93. | **Certificate of the Order of the Court of Appeal dated April 22, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal** | | | |
| 94. | **Highland Demonstrative Exhibit: Highland's Opening Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate** | | | |
| 95. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 Bankruptcy Case or any associated contested matter or adversary proceeding, including any exhibits thereto | | | |
| 96. | All exhibits necessary for impeachment and/or rebuttal purposes | | | |
| 97. | All exhibits identified by or offered by any other party at the Hearing | | | |

Dated: May 11, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*<u>/s/ Zachery Z. Annable</u>*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**EXHIBIT 90**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**
Do not enter social security numbers on this form as it may be made public.
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
HIGHLAND SANTA BARBARA FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 2101 CEDAR SPRINGS ROAD 1200 | Room/suite

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3962008

**E** Telephone number
(214) 276-6300

**G** Gross receipts $ 1,087,722

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRINGS ROAD 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011 **M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE SANTA BARBARA FOUNDATION, A CALIFORNIA NONPROFIT CORPORATION.

2 Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| Section | Line | Description | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 18,296,113 | 1,087,722 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 18,296,113 | 1,087,722 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 250,000 | 250,000 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 245,186 | 244,007 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 495,186 | 494,007 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 17,800,927 | 593,715 |
| Net Assets or Fund Balances | | | Beginning of Current Year | End of Year |
| | 20 | Total assets (Part X, line 16) | 91,007,570 | 88,214,035 |
| | 21 | Total liabilities (Part X, line 26) | 0 | 0 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 91,007,570 | 88,214,035 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | |
|---|---|---|
| **Sign Here** | Signature of officer<br>JAMES DONDERO PRESIDENT, DIRECTOR<br>Type or print name and title | 2025-11-14<br>Date |

| | | | | | |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date<br>2025-11-14 | Check ☐ if self-employed | PTIN<br>P01333193 |
| | Firm's name DELOITTE TAX LLP | | | Firm's EIN 86-1065772 | |
| | Firm's address 1111 BAGBY STREET SUITE 4500<br>HOUSTON, TX 77002 | | | Phone no. (713) 982-2000 | |

May the IRS discuss this return with the preparer shown above? See Instructions. . . . . . . . . . . . . . ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.** Cat. No. 11282Y Form **990** (2024)

Page 2

Form 990 (2024) Page **2**

Part III **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

SEE 4A BELOW

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 250,000 including grants of $ 250,000 ) (Revenue $ )

THE HIGHLAND SANTA BARBARA FOUNDATION IS ORGANIZED AND OPERATED EXCLUSIVELY AS A SUPPORTING ORGANIZATION WITHIN THE MEANING OF SECTION 509(A)(3) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), TO SUPPORT AND BENEFIT THE SANTA BARBARA FOUNDATION ("SBF"), A CALIFORNIA NONPROFIT CORPORATION. SBF IS EXEMPT FROM FEDERAL INCOME TAXATION UNDER SECTION 501(A) OF THE CODE AS AN ORGANIZATION DESCRIBED IN SECTION 501(C)(3) OF THE CODE AND A PUBLIC CHARITY DESCRIBED IN SECTION 509(A)(1) OF THE CODE.THE ORGANIZATION RECEIVED ITS FUNDING AS ONE OF THREE CHARITABLE REMAINDER BENEFICIARIES OF A CHARITABLE REMAINDER TRUST CREATED BY JAMES DONDERO, WHICH TERMINATED ON NOVEMBER 30, 2011. THE CHARITABLE PURPOSE OF THE ORGANIZATION'S SUPPORTED ORGANIZATION, WHICH WAS FOUNDED IN 1928, IS TO ENRICH THE LIVES OF THE PEOPLE OF SANTA BARBARA COUNTY THROUGH PHILANTHROPY. SBF SUPPORTS DIVERSE CHARITABLE CAUSES IN THE COMMUNITY, SUCH AS EDUCATION, THE ARTS, MENTAL HEALTH, AND NUMEROUS OTHER CHARITABLE AREAS IN WHICH ITS DONORS ARE INTERESTED. IN 2024, SBF AWARDED OVER 2,000 GRANTS TOTALING OVER $40 MILLION. THE ORGANIZATION SUPPORTS AND BENEFITS SBF BY MAKING GRANTS DIRECTLY TO SBF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF SBF, THE ORGANIZATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT SBF WISHES TO BENEFIT IN FURTHERANCE OF SBF'S EXEMPT PURPOSES.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

| | | | |
|---|---|---|---|
| 4d | Other program services (Describe in Schedule O.) | | |
| | (Expenses $ | including grants of $ | ) (Revenue $ ) |
| 4e | **Total program service expenses** | 250,000 | |

Form **990** (2024)

Page 3



**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions | 2 | | No |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | | No |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | Yes | |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | No |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | No |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |

| | | | | |
|---|---|---|---|---|
| 20a | Did the organization prepare or more ... | 20a | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | Yes | |

Form **990** (2024)

Page 4



**Part IV Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a 0 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | 1c | | |





**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | Yes | No |
|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a 0 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | 2b | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | 8 | | No |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | |
| a | Gross income from members or shareholders | 11a | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | 13a | | |

| | | | | | |
|---|---|---|---|---|---|
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| **c** | Enter the amount of reserves on hand | **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | **16** | | No |
| **17** | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | **17** | | |





**Part VI** **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year<br>If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | **1a** | 3 | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 1 | | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | **5** | | No |
| **6** | Did the organization have members or stockholders? | | | **6** | Yes | |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | **7a** | Yes | |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | **7b** | Yes | |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| **a** | The governing body? | | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? | | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | **9** | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | Yes | |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | | No |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? | **13** | | No |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | | No |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | | No |
| **b** | Other officers or key employees of the organization | **15b** | | No |

| | | | |
|---|---|---|---|
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
JACQUELINE CARRERRA 1111 CHAPALA STREET STE 200 SANTA BARBARA, CA 93101 (805) 963-1873

Form **990** (2024)

Page 7

Form 990 (2024) Page **7**

Part VII **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee): Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) JAMES DONDERO<br>DIRECTOR, PRESIDENT | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (2) JACQUELINE CARRERRA<br>DIRECTOR, SECY/TREASURER | 2.00<br>42.00 | X | | X | | | | 0 | 457,442 | 83,862 |
| (3) TODD YUBA<br>DIRECTOR | 1.00<br>42.00 | X | | | | | | 0 | 297,791 | 56,674 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |





Part VII **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| **(A)** Name and title | **(B)** Average hours per week (list any hours for related organizations below dotted line) | **(C)** Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | **(D)** Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | **(E)** Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | **(F)** Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . . . . . . . . . . | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . | | | | | | | | 0 | 755,233 | 140,536 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization 0

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . | **3** | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for | | | |

**Section B. Independent Contractors**

1 Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

2 Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization 0

Form **990** (2024)

Page 9

Form 990 (2024) Page **9**

**Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . ☐

Contributions, Gifts, Grants and Other Similar Amounts

| | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|
| ederated campaigns | 1a | | | | |
| embership dues | 1b | | | | |
| undraising events | 1c | | | | |
| elated organizations | 1d | | | | |
| overnment grants (contributions) | 1e | | | | |
| All other contributions, gifts, grants, and similar amounts not included above | 1f | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | | | | |
| h **Total.** Add lines 1a-1f | | | | | |

Program Service Revenue

| | Business Code | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|
| 2a | | | | | |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| f All other program service revenue. | | | | | |
| g **Total.** Add lines 2a–2f. | | | | | |

| | | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|
| 3 Investment income (including dividends, interest, and other similar amounts) | | | 1,087,722 | | | 1,087,722 |
| 4 Income from investment of tax-exempt bond proceeds | | | | | | |
| 5 Royalties | | | | | | |
| | (i) Real | (ii) Personal | | | | |
| 6a Gross rents 6a | | | | | | |
| b Less: rental 6b | | | | | | |

**Other Revenue**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| expenses | | | | | | | |
| c Rental income or (loss) | 6c | | | | | | |
| d Net rental income or (loss) | | | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| 7a Gross amount from sales of assets other than inventory | 7a | | | | | | |
| b Less: cost or other basis and sales expenses | 7b | | | | | | |
| c Gain or (loss) | 7c | | | | | | |
| d Net gain or (loss) | | | | | | | |
| 8a Gross income from fundraising events (not including $ ____ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | | |
| b Less: direct expenses | 8b | | | | | | |
| c Net income or (loss) from fundraising events | | | | | | | |
| 9a Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | | |
| b Less: direct expenses | 9b | | | | | | |
| c Net income or (loss) from gaming activities | | | | | | | |
| 10a Gross sales of inventory, less returns and allowances | 10a | | | | | | |
| b Less: cost of goods sold | 10b | | | | | | |
| c Net income or (loss) from sales of inventory | | | | | | | |
| | | Business Code | | | | | |
| 11a | | | | | | | |
| b | | | | | | | |
| c OtherRevenueMiscAmt | | | | | | | |
| d All other revenue | | | | | | | |
| e **Total.** Add lines 11a–11d | | | | | | | |
| 12 **Total revenue.** See instructions | | | | 1,087,722 | 0 | 0 | 1,087,722 |

Form **990** (2024)

Page 10

Form 990 (2024) Page **10**

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX ☐

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 250,000 | 250,000 | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | | | | |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in | | | | |

| | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | | | | |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| 9 Other employee benefits | | | | |
| 10 Payroll taxes | | | | |
| 11 Fees for services (non-employees): | | | | |
| a Management | 234,499 | | 234,499 | |
| b Legal | | | | |
| c Accounting | 9,508 | | 9,508 | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | | | | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | | | | |
| 12 Advertising and promotion | | | | |
| 13 Office expenses | | | | |
| 14 Information technology | | | | |
| 15 Royalties | | | | |
| 16 Occupancy | | | | |
| 17 Travel | | | | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | | | | |
| 20 Interest | | | | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | | | | |
| 23 Insurance | | | | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | | | | |
| e All other expenses | | | | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 494,007 | 250,000 | 244,007 | 0 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation.Check here ☐ if following SOP 98-2 (ASC 958-720). | | | | |

Form **990** (2024)





Part X **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX ☐

| | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|
| 1 | Cash–non-interest-bearing | | 1 | |
| 2 | Savings and temporary cash investments | | 2 | |
| 3 | Pledges and grants receivable, net | | 3 | |
| 4 | Accounts receivable, net | | 4 | |
| 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | |
| 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | 6 | |
| 7 | Notes and loans receivable, net | | 7 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Assets | 8 | Inventories for sale or use | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | | 9 | |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | | | |
| | b | Less: accumulated depreciation | 10b | | 10c | |
| | 11 | Investments—publicly traded securities | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | 91,007,570 | 12 | 88,214,035 |
| | 13 | Investments—program-related. See Part IV, line 11 | | | 13 | |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | | 15 | |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | 91,007,570 | 16 | 88,214,035 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 17 | |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | | 25 | |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 0 | 26 | 0 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here** ☑ **and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions | | 91,007,570 | 27 | 88,214,035 |
| | 28 | Net assets with donor restrictions | | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶** ☐ **and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | 31 | |
| | 32 | Total net assets or fund balances | | 91,007,570 | 32 | 88,214,035 |
| | 33 | Total liabilities and net assets/fund balances | | 91,007,570 | 33 | 88,214,035 |







**Part XI Reconcilliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 1,087,722 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 494,007 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | 593,715 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 91,007,570 |
| 5 | Net unrealized gains (losses) on investments | 5 | -3,387,250 |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 88,214,035 |

**Part XII Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______ If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |

| | | | |
|---|---|---|---|
| **2a** Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **b** Were the organization's financial statements audited by an independent accountant? | **2b** | | No |
| If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **c** If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | | |
| If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| **3a** As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? | **3a** | | No |
| **b** If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

Form **990** (2024)

Form 990 (2024)

## Additional Data

Return to Form

**Software ID:**

**Software Version:**

**Form 990, Special Condition Description:**

| Special Condition Description |
|---|

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**SCHEDULE A**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . 1

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? Yes | No | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| (A) SANTA BARBARA FOUNDATION | 951866094 | 7 | Yes | | 250,000 | 0 |
| | | | | | | |
| Total 1 | | | | | 250,000 | 0 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2024**





**Part II Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4. | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

12 Gross receipts from related activities, etc. (see instructions) . . . . . 12

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2024 (line 6, column (f) divided by line 11, column (f)) . . . . . 14

15 Public support percentage for 2023 Schedule A, Part II, line 14 . . . . . 15

16a **33 1/3% support test—2024.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

b **33 1/3% support test—2023.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2024.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

b **10%-facts-and-circumstances test—2023.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . ▶ ☐





Part III **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | to or expended on its behalf | | | | | | |
| 5 | The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 | **Total.** Add lines 1 through 5 | | | | | | |
| 7a | Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b | Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| c | Add lines 7a and 7b. | | | | | | |
| 8 | **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| | Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|---|
| 9 | Amounts from line 6. | | | | | | |
| 10a | Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| b | Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c | Add lines 10a and 10b. | | | | | | |
| 11 | Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 | Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| 13 | **Total support.** (Add lines 9, 10c, 11, and 12.). | | | | | | |

14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| 15 | Public support percentage for 2024 (line 8, column (f) divided by line 13, column (f)) | 15 | |
| 16 | Public support percentage from 2023 Schedule A, Part III, line 15 | 16 | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| 17 | Investment income percentage for **2024** (line 10c, column (f) divided by line 13, column (f)) | 17 | |
| 18 | Investment income percentage from **2023** Schedule A, Part III, line 17 | 18 | |

19a **33 1/3% support tests-2024.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

b **33 1/3% support tests—2023.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐





**Part IV Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | 1 | Yes | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | 2 | | No |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | 3a | | No |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | 3b | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | 6 | | No |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | No |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | 9a | | No |
| b | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | 9b | | No |
| c | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | 9c | | No |
| 10a | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |





**Part IV Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| a | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| b | A family member of a person described on 11a above? | 11b | | No |
| c | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI.*** | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of | | | |

supporting organization was vested in the same persons that controlled or managed the supported organization(s).

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* ***Part VI*** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | 2 | | |
| 3 | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* ***Part VI*** *the role the organization's supported organizations played in this regard.* | 3 | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

1 Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- a ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- b ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- c ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

2 Activities Test. **Answer lines 2a and 2b below.**

| | | | Yes | No |
|---|---|---|---|---|
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* ***Part VI identify those supported organizations and explain*** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | 2a | | |
| b | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* ***Part VI*** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | 2b | | |
| 3 | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in* ***Part VI.*** | 3a | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* ***Part VI.*** *the role played by the organization in this regard.* | 3b | | |

**Schedule A (Form 990) 2024**

Page 6

Schedule A (Form 990) 2024 Page **6**

**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in* ***Part VI****)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors | | | |

| | | | | |
|---|---|---|---|---|
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990) 2024**

Page 7

Schedule A (Form 990) 2024 Page **7**

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| | **Section D - Distributions** | | **Current Year** |
|---|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | 1 | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | 2 | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | 3 | |
| 4 | Amounts paid to acquire exempt-use assets | 4 | |
| 5 | Qualified set-aside amounts (*prior IRS approval required - provide details in **Part VI***) | 5 | |
| 6 | Other distributions (*describe in **Part VI***). See instructions | 6 | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | 7 | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (*provide details in **Part VI***). See instructions | 8 | |
| 9 | Distributable amount for 2024 from Section C, line 6 | 9 | |
| 10 | Line 8 amount divided by Line 9 amount | 10 | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** Excess Distributions | **(ii)** Underdistributions Pre-2024 | **(iii)** Distributable Amount for 2024 |
|---|---|---|---|
| 1 Distributable amount for 2024 from Section C, line 6 | | | |
| 2 Underdistributions, if any, for years prior to 2024 (reasonable cause required-- *explain in **Part VI***). See instructions. | | | |
| 3 Excess distributions carryover, if any, to 2024: | | | |
| a From 2019. . . . . . . . | | | |
| b From 2020. . . . . . . . | | | |
| c From 2021. . . . . . . . | | | |
| d From 2022. . . . . . . . | | | |
| e From 2023. . . . . . . . | | | |
| f **Total** of lines 3a through e | | | |
| g Applied to underdistributions of prior years | | | |
| h Applied to 2024 distributable amount | | | |
| i Carryover from 2019 not applied (see instructions) | | | |
| j Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| 4 Distributions for 2024 from Section D, line 7: $ | | | |
| a Applied to underdistributions of prior years | | | |
| b Applied to 2024 distributable amount | | | |

| | | | |
|---|---|---|---|
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2024, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2024. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2025.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2020. . . . . | | | |
| **b** Excess from 2021. . . . . | | | |
| **c** Excess from 2022. . . . . | | | |
| **d** Excess from 2023. . . . . | | | |
| **e** Excess from 2024. . . . . | | | |



Page 8



**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

| Facts And Circumstances Test |
|---|
| |

| Return Reference | Explanation |
|---|---|



## Additional Data

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**SCHEDULE D** (Form 990)

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

**Name of the organization**
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I** **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II** **Conservation Easements.** Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education) ☐ Preservation of an historically important land area
☐ Protection of natural habitat ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶

4 Number of states where property subject to conservation easement is located ▶

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $

(ii) Assets included in Form 990, Part X ▶ $

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $

b Assets included in Form 990, Part X ▶ $

Schedule D (Form 990) (Rev. 1-2025) Page **2**

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition
**b** ☐ Scholarly research
**c** ☐ Preservation for future generations
**d** ☐ Loan or exchange programs
**e** ☐ Other ..........

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ **Yes** ☐ **No**

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ **Yes** ☐ **No**

| | | | **Amount** |
|---|---|---|---|
| **b** | If "Yes," explain the arrangement in Part XIII and complete the following table: | | |
| **c** | Beginning balance . . . | **1c** | |
| **d** | Additions during the year . . . | **1d** | |
| **e** | Distributions during the year . . . | **1e** | |
| **f** | Ending balance . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . | | | | | |
| **b** Contributions . . . | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ ..........
**b** Permanent endowment ▶ ..........
**c** Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | | **Yes** | **No** |
|---|---|---|---|---|
| | **(i)** Unrelated organizations . . . | **3a(i)** | | |
| | **(ii)** Related organizations . . . | **3a(ii)** | | |
| **b** | If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . | | | | |
| **b** Buildings . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . | | | | |
| **e** Other . . . | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . ▶ | | | | 0 |

**Schedule D (Form 990) (Rev. 1-2025)**

**Part VII Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3) Other | | |
| (A) CHARITABLE DAF HOLDCO, LTD. | 88,214,035 | F |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | 88,214,035 | |

**Part VIII Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Schedule D (Form 990) (Rev. 1-2025)**



**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|

**Schedule D (Form 990) (Rev. 1-2025)**

## Additional Data

Return to Form

Software ID:

**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**SCHEDULE F (Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

Part I **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

**1** **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ☐ Yes ☐ No

**2** **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

**3** Activites per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| CENTRAL AMERICA AND THE CARIBBEAN | | | INVESTMENT IN FOREIGN INVESTMENT COMPANY | N/A | 88,214,035 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **3a** Sub-total | 0 | 0 | | | 88,214,035 |
| **b** Total from continuation sheets to Part I | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 88,214,035 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50082W **Schedule F (Form 990) (Rev. 1-2025)**

Page 2

Schedule F (Form 990) (Rev. 1-2025) Page **2**

Part II **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**2** Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-

exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . ▶

3 Enter total number of other organizations or entities . . . ▶

Schedule F (Form 990) (Rev. 1-2025)

Page 3

Schedule F (Form 990) (Rev. 1-2025) Page 3

**Part III** **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Schedule F (Form 990) (Rev. 1-2025)

Page 4

Schedule F (Form 990) (Rev. 1-2025) Page 4

**Part IV** **Foreign Forms**

1 Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* . . . ☐ Yes ☑ No

2 Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* . . . ☐ Yes ☑ No

3 Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* . . . ☑ Yes ☐ No

4 Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* . ☑ Yes ☐ No

5 Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* . . . ☐ Yes ☑ No

6 Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990).* . . . ☐ Yes ☑ No

Schedule F (Form 990) (Rev. 1-2025)

Page 5

Schedule F (Form 990) (Rev. 1-2025) Page 5

**Part V** **Supplemental Information**

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Schedule F (Form 990) (Rev. 1-2025)

**Additional Data**

Software ID:
Software Version:

Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.

**Schedule I (Form 990)**

(Rev. January 2025)

Department of the Treasury Internal Revenue Service

## Grants and Other Assistance to Organizations, Governments and Individuals in the United States

**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I General Information on Grants and Assistance**

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . ☐ Yes ☑ No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II Grants and Other Assistance to Domestic Organizations and Domestic Governments.** Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) SANTA BARBARA FOUNDATION 1111 CHAPALA STREET SUITE 200 SANTA BARBARA, CA 93101 | 95-1866094 | 501(C)(3) | 250,000 | 0 | | | GENERAL PROGRAM SUPPORT |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . ▶

3 Enter total number of other organizations listed in the line 1 table . . . ▶

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50055P **Schedule I (Form 990) Rev. 1-2025**

Page 2

Schedule I (Form 990) Rev. 1-2025 Page **2**

**Part III Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | THE FOUNDATION SUPPORTS AND BENEFITS SBF BY MAKING GRANTS DIRECTLY TO SBF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF SBF, THE FOUNDATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT SBF WISHES TO BENEFIT IN FURTHERANCE OF SBF'S EXEMPT PURPOSES. THESE ORGANIZATIONS ARE EXPECTED TO MAINTAIN ADEQUATE INTERNAL CONTROLS CONCERNING USE OF THESE FUNDS. |

**Schedule I (Form 990) Rev. 1-2025**

**Additional Data** Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**Schedule J** (Form 990) (Rev. January 2025)

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**► Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**► Attach to Form 990.**
**► Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement?<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | **4c** | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | **5a** | | No |
| **b** | Any related organization?<br>If "Yes," on line 5a or 5b, describe in Part III. | **5b** | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | **6a** | | No |
| **b** | Any related organization?<br>If "Yes," on line 6a or 6b, describe in Part III. | **6b** | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** | | |





## Part II **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.
**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 JACQUELINE CARRERRA<br>DIRECTOR, SECY/TREASURER | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 412,296 | 43,856 | 1,290 | 57,500 | 26,362 | 541,304 | 0 |
| 2 TODD YUBA<br>DIRECTOR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 277,711 | 11,000 | 9,080 | 29,919 | 26,755 | 354,465 | 0 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Page 2



**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | THE COMPENSATION FOR THE RELATED ORGANIZATION WAS ESTABLISHED BY A COMPENSATION STUDY AND APPROVAL OF THE BOARD. ADDITIONALLY, STARTING WITH THE RECOMMENDATIONS OF THE CEO, THE COMPENSATION COMMITTEE ASSESSES, DETERMINES, AND DOCUMENTS THE REASONABLENESS OF THE TOTAL COMPENSATION RANGES, AND THE TERMS OF ANY EMPLOYMENT AGREEMENTS, SEVERANCE AND/OR RETENTION AGREEMENTS, OF THE V.P., FINANCE & ADMINISTRATION AND ALL EMPLOYEES WITH REPORTABLE COMPENSATION (W-2) RANGES AT OR OVER $150,000. WHEN APPROPRIATE, THE COMMITTEE SELECTS AND ENGAGES PROFESSIONALS TO GATHER AND REVIEW IN ADVANCE, APPROPRIATE MARKET COMPARABILITY DATA ON THE AMOUNT AND FORM OF COMPENSATION PAID FOR COMPARABLE POSITIONS BY OTHER COMPARABLE EMPLOYERS. |



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

**SCHEDULE O**
**(Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION A, LINE 6 | THE CORPORATION SHALL HAVE TWO CLASSES OF MEMBERS AND ONE MEMBER IN EACH SUCH CLASS: THE INSTITUTIONAL MEMBER, WHICH SHALL BE THE SANTA BARBARA FOUNDATION, AND THE INDIVIDUAL MEMBER, WHICH SHALL BE JAMES DONDERO OR AN INDIVIDUAL DESIGNATED AS THE INDIVIDUAL MEMBER IN ACCORDANCE WITH THE BYLAWS. |
| FORM 990, PART VI, SECTION A, LINE 7A | TWO (2) DIRECTORS (THE "INSTITUTIONAL DIRECTORS") SHALL BE ELECTED ANNUALLY BY THE INSTITUTIONAL MEMBER AND ONE (1) DIRECTOR (THE "INDIVIDUAL DIRECTOR") SHALL BE ELECTED ANNUALLY BY THE INDIVIDUAL MEMBER. |
| FORM 990, PART VI, SECTION A, LINE 7B | ONLY THE MEMBERS, BY THE AFFIRMATIVE UNANIMOUS VOTE OF THE MEMBERS ENTITLED TO VOTE, MAY ADOPT, AMEND, OR REPEAL THE BYLAWS, AND ALTERATIONS OR AMENDMENTS OF THE BYLAWS MADE BY THE MEMBERS SHALL NOT BE ALTERED OR AMENDED BY THE BOARD OF DIRECTORS TO THE EXTENT SUCH ALTERATION OR AMENDMENT EXPRESSLY STATES THAT IT CAN ONLY BE ALTERED OR AMENDED BY THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENT THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION B, LINE 12C | NO CONTRACT OR AGREEMENT MAY BE ENTERED INTO BY AND BETWEEN THE CORPORATION AND ANY OF THE FOLLOWING: (A) A DIRECTOR, OFFICER, OR EMPLOYEE OF THE CORPORATION (HEREINAFTER AN "INSIDER"); OR (B) ANY CORPORATION, PARTNERSHIP, TRUST, SOLE PROPRIETORSHIP OR ANY OTHER ENTITY (HEREINAFTER AN "ENTITY") IN WHICH AN INTEREST IS OWNED OR HELD, DIRECTLY OR INDIRECTLY, BY OR FOR THE BENEFIT OF AN INSIDER, UNLESS (I) THE TRANSACTION IS APPROVED IN ACCORDANCE WITH SECTION 144 OF THE DELAWARE GENERAL CORPORATION LAW TO THE EXTENT SUCH PROVISION IS APPLICABLE TO THE TRANSACTION; AND (II) IF ONE OR MORE OF THE PARTIES TO THE CONTRACT OR TRANSACTION IS A "DISQUALIFIED PERSON" WITH RESPECT TO THE CORPORATION WITHIN THE MEANING OF SECTION 4958 OF THE CODE, EITHER (X) SUCH TRANSACTION IS REVIEWED AND APPROVED IN ACCORDANCE WITH THE "REBUTTABLE PRESUMPTION SAFE HARBOR" PROVISIONS SET FORTH IN THE REGULATIONS PROMULGATED UNDER SECTION 4958 OF THE CODE OR (Y) THE BOARD OF DIRECTORS DETERMINES THAT SUCH PROCEDURES ARE NOT NECESSARY FOR THE TRANSACTION INVOLVED AND RECORDS ITS SPECIFIC FINDINGS FOR MAKING SUCH DETERMINATION; PROVIDED, HOWEVER, THAT THE FOLLOWING CONTRACTS AND AGREEMENTS SHALL NOT BE SUBJECT TO THE FOREGOING PROHIBITION: A GRATUITOUS TRANSFER OF ASSETS OR PROMISE TO TRANSFER ASSETS TO THE CORPORATION OF ANY KIND, INCLUDING BUT NOT LIMITED TO, (I) A GIFT ANNUITY, CHARITABLE REMAINDER TRUST, CHARITABLE LEAD TRUST OR SIMILAR SPLIT-INTEREST ARRANGEMENT WHICH BENEFITS BOTH THE INSIDER AND THE CORPORATION; OR (II) A LOAN, LEASE, AGREEMENT OF SALE OR PURCHASE, PLEDGE, GUARANTEE, ASSUMPTION OF LIABILITY, BAILMENT, OR CONSIGNMENT. ALL INSIDERS SHALL, AS A CONDITION OF QUALIFYING AND CONTINUING TO QUALIFY AS A DIRECTOR, OFFICER, AND/OR EMPLOYEE OF THE CORPORATION, ABIDE BY SUCH CONFLICT OF INTEREST POLICIES AS THE BOARD OF DIRECTORS MAY ADOPT FROM TIME TO TIME. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |



**Additional Data** Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349311420 - Submission: 2025-11-14 | TIN: 45-3962008

# SCHEDULE R (Form 990)

(Rev. January 2025)

Department of the Treasury Internal Revenue Service

## Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND SANTA BARBARA FOUNDATION INC

**Employer identification number**
45-3962008

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| (1)SANTA BARBARA FOUNDATION<br>1111 CHAPALA STREET SUITE 200<br><br>SANTA BARBARA, CA 93101<br>95-1866094 | COMMUNITY FOUNDATION | CA | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| (2)WYATT FAMILY FOUNDATION<br>1111 CHAPALA STREET SUITE 200<br><br>SANTA BARBARA, CA 93101<br>93-1503406 | TO SUPPORT THE CHARITABLE ACTIVITIES OF THE SANTA BARBARA FOUNDATION | CA | 501(C)(3) | LINE 12A, I | SANTA BARBARA FOUNDATION | | No |
| (3)ERIC AND KELLY SCHWARTZ CHARITABLE TRUST<br>1776 PLEASANT PLAIN ROAD<br><br>FAIRFIELD, IA 52556<br>47-4959497 | TO SUPPORT THE CHARITABLE ACTIVITIES OF THE SANTA BARBARA FOUNDATION | IA | 501(C)(3) | LINE 12A, I | SANTA BARBARA FOUNDATION | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |



Page 2



**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of | (b) Primary activity | (c) Legal | (d) Direct controlling | (e) Type of entity | (f) Share of total | (g) Share of end | (h) Percentage | (i) Section 512(b)(13) |
|---|---|---|---|---|---|---|---|---|

| related organization | | (state or foreign country) | | corp, S corp, or trust) | income | end-of-year assets | ownership | controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Schedule R (Form 990) (Rev. 1-2025)**

Page 3

Schedule R (Form 990) (Rev. 1-2025) Page **3**

**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | Yes | No |
|---|---|---|---|
| **1** During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| **c** Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| **d** Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** Dividends from related organization(s) | 1f | | No |
| **g** Sale of assets to related organization(s) | 1g | | No |
| **h** Purchase of assets from related organization(s) | 1h | | No |
| **i** Exchange of assets with related organization(s) | 1i | | No |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** Sharing of paid employees with related organization(s) | 1o | | No |
| **p** Reimbursement paid to related organization(s) for expenses | 1p | | No |
| **q** Reimbursement paid by related organization(s) for expenses | 1q | | No |
| **r** Other transfer of cash or property to related organization(s) | 1r | | No |
| **s** Other transfer of cash or property from related organization(s) | 1s | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| (1) SANTA BARBARA FOUNDATION | B | 250,000 | CASH PAID |
| (2) SANTA BARBARA FOUNDATION | M | 234,499 | CASH PAID |
| | | | |
| | | | |
| | | | |
| | | | |

**Schedule R (Form 990) (Rev. 1-2025)**

Page 4

Schedule R (Form 990) (Rev. 1-2025) Page **4**

**Part VI Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? Yes | No | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) (Rev. 1-2025)

Schedule R (Form 990) (Rev. 1-2025) Page **5**

**Part VII Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

Schedule R (Form 990) (Rev. 1-2025)

## Additional Data

Return to Form

**Software ID:**
**Software Version:**

**EXHIBIT 91**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

Do not enter social security numbers on this form as it may be made public.

**Go to *www.irs.gov/Form990* for instructions and the latest information.**

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0047

**2024**

Open to Public Inspection

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
HIGHLAND KANSAS CITY FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) | Room/suite
2101 CEDAR SPRING ROAD 1200

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3961865

**E** Telephone number
(214) 276-6300

**G** Gross receipts $ 1,103,223

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRING ROAD 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011 | **M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE GREATER KANSAS CITY COMMUNITY FOUNDATION, A MISSOURI NONPROFIT CORPORATION.

2 Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 19,810,435 | 1,103,223 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 19,810,435 | 1,103,223 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 2,000,000 | 500,000 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 9,508 | 9,508 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 2,009,508 | 509,508 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 17,800,927 | 593,715 |
| Net Assets or Fund Balances | | | **Beginning of Current Year** | **End of Year** |
| | 20 | Total assets (Part X, line 16) | 91,007,570 | 88,214,035 |
| | 21 | Total liabilities (Part X, line 26) | 0 | 0 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 91,007,570 | 88,214,035 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | |
|---|---|---|
| **Sign Here** | Signature of officer<br>JAMES DONDERO PRESIDENT, DIRECTOR<br>Type or print name and title | 2025-11-14<br>Date |

| | | | | | |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date<br>2025-11-14 | Check ☐ if self-employed | PTIN<br>P01333193 |
| | Firm's name DELOITTE TAX LLP | | | Firm's EIN 86-1065772 | |
| | Firm's address 1111 BAGBY STREET SUITE 4500<br>HOUSTON, TX 77002 | | | Phone no. (713) 982-2000 | |

May the IRS discuss this return with the preparer shown above? See Instructions. . . . . . . . . . . . . ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.** Cat. No. 11282Y Form **990** (2024)

Page 2



Part III **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

1 Briefly describe the organization's mission:

SEE 4A BELOW

2 Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these new services on Schedule O.

3 Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe these changes on Schedule O.

4 Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

4a (Code: ) (Expenses $ 500,000 including grants of $ 500,000 ) (Revenue $ )

THE HIGHLAND KANSAS CITY FOUNDATION IS ORGANIZED AND OPERATED EXCLUSIVELY AS A SUPPORTING ORGANIZATION WITHIN THE MEANING OF SECTION 509(A)(3) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), TO SUPPORT AND BENEFIT THE GREATER KANSAS CITY COMMUNITY FOUNDATION ("GKCCF"), A MISSOURI NONPROFIT CORPORATION. GKCCF IS EXEMPT FROM FEDERAL INCOME TAXATION UNDER SECTION 501(A) OF THE CODE AS AN ORGANIZATION DESCRIBED IN SECTION 501(C)(3) OF THE CODE AND A PUBLIC CHARITY DESCRIBED IN SECTION 509(A)(1) OF THE CODE.THE ORGANIZATION RECEIVED ITS FUNDING AS ONE OF THREE CHARITABLE REMAINDER BENEFICIARIES OF A CHARITABLE REMAINDER TRUST CREATED BY JAMES DONDERO, WHICH TERMINATED ON NOVEMBER 30, 2011. THE CHARITABLE PURPOSES OF THE ORGANIZATION'S SUPPORTED ORGANIZATION ARE TO IMPROVE THE QUALITY OF LIFE IN THE GREATER KANSAS CITY COMMUNITY BY INCREASING CHARITABLE GIVING, CONNECTING DONORS TO THE NEEDS OF THE COMMUNITY THEY CARE ABOUT, AND PROVIDING LEADERSHIP ON CRITICAL COMMUNITY ISSUES. IN 2024, GKCCF PAID OUT $357,753,871 IN GRANTS TO CHARITABLE ORGANIZATIONS, THE GREAT MAJORITY OF WHICH ARE IN THE GREATER KANSAS CITY REGION AND INCLUDE THE CHARITABLE SECTORS OF ARTS AND CULTURE, EDUCATION, HEALTH, MEDICINE AND SCIENCE, HUMAN SERVICES, AND PHILANTHROPY. THE ORGANIZATION WILL SUPPORT AND BENEFIT GKCCF BY MAKING GRANTS DIRECTLY TO GKCCF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF GKCCF, THE ORGANIZATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT GKCCF WISHES TO BENEFIT IN FURTHERANCE OF GKCCF'S EXEMPT PURPOSES. THE TOTAL ANNUAL GRANTS FROM THE ORGANIZATION TO OR ON BEHALF OF GKCCF ARE EXPECTED TO AVERAGE APPROXIMATELY $475,000 PER YEAR.

4b (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

4c (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

| | | |
|---|---|---|
| 4d | Other program services (Describe in Schedule O.) (Expenses $ including grants of $ ) (Revenue $ ) | |
| 4e | **Total program service expenses** | 500,000 |

Form **990** (2024)

Page 3



## Part IV Checklist of Required Schedules

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | 2 | | No |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | | No |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | Yes | |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | No |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | Yes | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes,"* | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | Yes | |

Form **990** (2024)

Page 4

Form 990 (2024) Page **4**

**Part IV Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a | 0 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | | |

Form **990** (2024)

Page 5

Form 990 (2024) Page **5**

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 0 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | | 2b | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | No |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| a | Note. See the instructions for additional information the organization must report on Schedule O. | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | 17 | | |



Page 6



**Part VI Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*
Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | 3 | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 1 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | 5 | | No |
| 6 | Did the organization have members or stockholders? | | | 6 | Yes | |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | 7a | Yes | |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | 7b | Yes | |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| a | The governing body? | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | 9 | | No |

**Section B. Policies** *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | | No |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | | No |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | | No |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | | No |

| | | | |
|---|---|---|---|
| **b** Other officers or key employees of the organization . . . | **15b** | | No |
| If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . | **16a** | | No |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
DEBORAH WILKERSON 1055 BROADWAY BLVD STE 130 KANSAS, MO 64105 (816) 842-0944

Form **990** (2024)

Page 7

Form 990 (2024) Page **7**

Part VII **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) JAMES DONDERO<br>PRESIDENT, DIRECTOR | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (2) BRENDA CHUMLEY<br>DIRECTOR | 0.50<br>40.00 | X | | | | | | 0 | 256,661 | 43,745 |
| (3) DEBORAH L WILKERSON<br>SECRETARY, TREASURER | 2.00<br>40.00 | X | | X | | | | 0 | 490,724 | 59,189 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |





Part VII **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee): Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** . . . . . . . . . . . . . . . . . . | | | |
| **c Total from continuation sheets to Part VII, Section A** . . | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . . | 0 | 747,385 | 102,934 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization 0

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . | **3** | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | Yes | |

| | | |
|---|---|---|
| 5 Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* | 5 | No |

**Section B. Independent Contractors**

1 Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

2 Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization 0

Form **990** (2024)

Page 9

Form 990 (2024) Page **9**

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

| Contributions, Gifts, Grants and Other Similar Amounts | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| 1a Federated campaigns | 1a | | | | | |
| b Membership dues | 1b | | | | | |
| c Fundraising events | 1c | | | | | |
| d Related organizations | 1d | | | | | |
| e Government grants (contributions) | 1e | | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | | | | | |
| h **Total.** Add lines 1a-1f | | | | | | |

| Program Service Revenue | Business Code | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|
| 2a | | | | | |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| f All other program service revenue. | | | | | |
| g **Total.** Add lines 2a–2f. | | | | | |

| | | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|
| 3 Investment income (including dividends, interest, and other similar amounts) | | | 1,103,223 | | | 1,103,223 |
| 4 Income from investment of tax-exempt bond proceeds | | | | | | |
| 5 Royalties | | | | | | |
| | | (i) Real | (ii) Personal | | | |
| 6a Gross rents | 6a | | | | | |

| | | (i) | (ii) | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|---|
| **b** Less: rental expenses | 6b | | | | | | |
| **c** Rental income or (loss) | 6c | | | | | | |
| **d** Net rental income or (loss) | | | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| **7a** Gross amount from sales of assets other than inventory | 7a | | | | | | |
| **b** Less: cost or other basis and sales expenses | 7b | | | | | | |
| **c** Gain or (loss) | 7c | | | | | | |
| **d** Net gain or (loss) | | | | | | | |
| **8a** Gross income from fundraising events (not including $ ____ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | | |
| **b** Less: direct expenses | 8b | | | | | | |
| **c** Net income or (loss) from fundraising events | | | | | | | |
| **9a** Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | | |
| **b** Less: direct expenses | 9b | | | | | | |
| **c** Net income or (loss) from gaming activities | | | | | | | |
| **10a** Gross sales of inventory, less returns and allowances | 10a | | | | | | |
| **b** Less: cost of goods sold | 10b | | | | | | |
| **c** Net income or (loss) from sales of inventory | | | | | | | |
| | | Business Code | | | | | |
| **11a** | | | | | | | |
| **b** | | | | | | | |
| **c** OtherRevenueMiscAmt | | | | | | | |
| **d** All other revenue | | | | | | | |
| **e Total.** Add lines 11a–11d | | | | | | | |
| **12 Total revenue.** See instructions | | | | 1,103,223 | 0 | 0 | 1,103,223 |

Other Revenue

Form **990** (2024)





Part IX **Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX ☐

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 500,000 | 500,000 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | | | | |

| | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages | | | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| **9** Other employee benefits | | | | |
| **10** Payroll taxes | | | | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management | | | | |
| **b** Legal | | | | |
| **c** Accounting | 9,508 | | 9,508 | |
| **d** Lobbying | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | | | | |
| **12** Advertising and promotion | | | | |
| **13** Office expenses | | | | |
| **14** Information technology | | | | |
| **15** Royalties | | | | |
| **16** Occupancy | | | | |
| **17** Travel | | | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings | | | | |
| **20** Interest | | | | |
| **21** Payments to affiliates | | | | |
| **22** Depreciation, depletion, and amortization | | | | |
| **23** Insurance | | | | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** | | | | |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 509,508 | 500,000 | 9,508 | 0 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation.Check here ☐ if following SOP 98-2 (ASC 958-720). | | | | |

Form **990** (2024)

Page 11

Form 990 (2024) Page **11**

Part X **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX ☐

| | (A) Beginning of year | | (B) End of year |
|---|---|---|---|
| **1** Cash–non-interest-bearing | | 1 | |
| **2** Savings and temporary cash investments | | 2 | |
| **3** Pledges and grants receivable, net | | 3 | |
| **4** Accounts receivable, net | | 4 | |
| **5** Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | |
| **6** Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | 6 | |

| | | | | | |
|---|---|---|---|---|---|
| Assets | 7 | Notes and loans receivable, net | | 7 | |
| | 8 | Inventories for sale or use | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | 9 | |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D — 10a | | | |
| | b | Less: accumulated depreciation — 10b | | 10c | |
| | 11 | Investments—publicly traded securities | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | 91,007,570 | 12 | 88,214,035 |
| | 13 | Investments—program-related. See Part IV, line 11 | | 13 | |
| | 14 | Intangible assets | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | 15 | |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | 91,007,570 | 16 | 88,214,035 |
| Liabilities | 17 | Accounts payable and accrued expenses | | 17 | |
| | 18 | Grants payable | | 18 | |
| | 19 | Deferred revenue | | 19 | |
| | 20 | Tax-exempt bond liabilities | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 25 | |
| | 26 | **Total liabilities.** Add lines 17 through 25 | 0 | 26 | 0 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ☑ and complete lines 27, 28, 32, and 33.** | | | |
| | 27 | Net assets without donor restrictions | 91,007,570 | 27 | 88,214,035 |
| | 28 | Net assets with donor restrictions | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | |
| | 29 | Capital stock or trust principal, or current funds | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | 31 | |
| | 32 | Total net assets or fund balances | 91,007,570 | 32 | 88,214,035 |
| | 33 | Total liabilities and net assets/fund balances | 91,007,570 | 33 | 88,214,035 |

Form **990** (2024)





Part XI **Reconcilliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 1,103,223 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 509,508 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | 593,715 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 91,007,570 |
| 5 | Net unrealized gains (losses) on investments | 5 | -3,387,250 |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 88,214,035 |

Part XII **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other | | | |

If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O.

| | | | | |
|---|---|---|---|---|
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |





## Additional Data

Return to Form

**Software ID:**

**Software Version:**

**Form 990, Special Condition Description:**

| Special Condition Description |
|---|

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**SCHEDULE A** (Form 990)

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . 1

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? Yes | No | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| (A) GREATER KANSAS CITY COMMUNITY FOUNDATION | 431152398 | 8 | Yes | | 500,000 | 0 |
| | | | | | | |
| **Total** 1 | | | | | 500,000 | 0 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2024**

Page 2

Schedule A (Form 990) 2024 Page **2**

**Part II Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4. | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

12 Gross receipts from related activities, etc. (see instructions) . . . . 12

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2024 (line 6, column (f) divided by line 11, column (f)) . . . . 14

15 Public support percentage for 2023 Schedule A, Part II, line 14 . . . . 15

16a **33 1/3% support test—2024.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

b **33 1/3% support test—2023.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2024.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

b **10%-facts-and-circumstances test—2023.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . ▶ ☐





Part III **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5 | The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 | **Total.** Add lines 1 through 5 | | | | | | |
| 7a | Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b | Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| c | Add lines 7a and 7b. | | | | | | |
| 8 | **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| | Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|---|
| 9 | Amounts from line 6. | | | | | | |
| 10a | Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| b | Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c | Add lines 10a and 10b. | | | | | | |
| 11 | Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 | Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| 13 | **Total support.** (Add lines 9, 10c, 11, and 12.). | | | | | | |

14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here.** . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| 15 | Public support percentage for 2024 (line 8, column (f) divided by line 13, column (f)) | 15 | |
| 16 | Public support percentage from 2023 Schedule A, Part III, line 15 | 16 | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| 17 | Investment income percentage for **2024** (line 10c, column (f) divided by line 13, column (f)) | 17 | |
| 18 | Investment income percentage from **2023** Schedule A, Part III, line 17 | 18 | |

19a **33 1/3% support tests-2024.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

b **33 1/3% support tests—2023.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . ▶ ☐





## Part IV Supporting Organizations

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | 1 | Yes | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | 2 | | No |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | 3a | | No |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | 3b | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? | | | |

| | | | |
|---|---|---|---|
| If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use. | 3c | | |
| **4a** Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| **b** Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| **c** Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| **5a** Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| **b** **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| **c** **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| **6** Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | 6 | | No |
| **7** Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990)* . | 7 | | No |
| **8** Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| **9a** Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | 9a | | No |
| **b** Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | 9b | | No |
| **c** Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | 9c | | No |
| **10a** Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| **b** Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |

**Schedule A (Form 990) 2024**

Page 5

Schedule A (Form 990) 2024 Page **5**

**Part IV Supporting Organizations** (continued)

| | | Yes | No |
|---|---|---|---|
| **11** Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| **b** A family member of a person described on 11a above? | 11b | | No |
| **c** A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI.*** | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| **2** Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees | | | |

each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | 1 | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | 2 | | |
| 3 | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | 3 | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

1 Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

a ☐ The organization satisfied the Activities Test. Complete **line 2** below.

b ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

c ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

2 Activities Test. **Answer lines 2a and 2b below.**

| | | | Yes | No |
|---|---|---|---|---|
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | 2a | | |
| b | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | 2b | | |
| 3 | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in **Part VI.*** | 3a | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | 3b | | |





**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |

| | | | | |
|---|---|---|---|---|
| **e** | Discount claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by 0.035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990) 2024**

Page 7

Schedule A (Form 990) 2024 Page **7**

**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in **Part VI***) | **5** | |
| **6** Other distributions (*describe in **Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in **Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2024 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2024** | **(iii)** **Distributable Amount for 2024** |
|---|---|---|---|
| **1** Distributable amount for 2024 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2024 (reasonable cause required-- *explain in **Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2024: | | | |
| **a** From 2019. . . . . . . . | | | |
| **b** From 2020. . . . . . . . | | | |
| **c** From 2021. . . . . . . . | | | |
| **d** From 2022. . . . . . . . | | | |
| **e** From 2023. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2024 distributable amount | | | |
| **i** Carryover from 2019 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2024 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |

| | | | |
|---|---|---|---|
| **b** Applied to 2024 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2024, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2024. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2025.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2020. . . . . | | | |
| **b** Excess from 2021. . . . . | | | |
| **c** Excess from 2022. . . . . | | | |
| **d** Excess from 2023. . . . . | | | |
| **e** Excess from 2024. . . . . | | | |



Page 8



**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

| Facts And Circumstances Test |
|---|
| |

| Return Reference | Explanation |
|---|---|



## Additional Data

**Return to Form**

**Software ID:**
**Software Version:**

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

**Name of the organization**
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

**Part I** **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II** **Conservation Easements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ____________

4 Number of states where property subject to conservation easement is located ▶ ____________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ____________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ____________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

(ii) Assets included in Form 990, Part X ▶ $ ____________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

b Assets included in Form 990, Part X ▶ $ ____________

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

- **a** ☐ Public exhibition
- **b** ☐ Scholarly research
- **c** ☐ Preservation for future generations
- **d** ☐ Loan or exchange programs
- **e** ☐ Other ............

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ **Yes** ☐ **No**

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | | Amount |
|---|---|---|---|
| **c** | Beginning balance . . . . . | **1c** | |
| **d** | Additions during the year . . . . . | **1d** | |
| **e** | Distributions during the year . . . . . | **1e** | |
| **f** | Ending balance . . . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . . | | | | | |
| **b** Contributions . . . | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . . | | | | | |
| **g** End of year balance . . . . . . | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

- **a** Board designated or quasi-endowment ▶ ............
- **b** Permanent endowment ▶ ............
- **c** Term endowment ▶ ............

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations . . . . . | **3a(i)** | | |
| **(ii)** Related organizations . . . . . | **3a(ii)** | | |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | | | |
| **e** Other . . . . . . | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . ▶ | | | | 0 |

**Part VII Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely-held equity interests | | |
| **(3)** Other | | |
| (A) CHARITABLE DAF HOLDCO, LTD. | 88,214,035 | F |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | 88,214,035 | |

**Part VIII Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| **(a)** Description of investment | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| **(a)** Description | **(b)** Book value |
|---|---|
| **(1)** | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| **1.** **(a)** Description of liability | **(b)** Book value |
|---|---|
| **(1)** Federal income taxes | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Schedule D (Form 990) (Rev. 1-2025)**

Page 4

Schedule D (Form 990) (Rev. 1-2025) Page **4**

**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|

**Schedule D (Form 990) (Rev. 1-2025)**

**Additional Data** **Return to Form**

Software ID:

**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**SCHEDULE F (Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

Employer identification number
45-3961865

**Part I** **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

**1** **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . ☐ Yes ☐ No

**2** **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

**3** Activites per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| CENTRAL AMERICA AND THE CARIBBEAN | | | INVESTMENT IN FOREIGN INVESTMENT COMPANY | N/A | 88,214,035 |
| **3a** Sub-total . . . . | 0 | 0 | | | 88,214,035 |
| **b** Total from continuation sheets to Part I . . . | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 88,214,035 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50082W **Schedule F (Form 990) (Rev. 1-2025)**

Page 2

Schedule F (Form 990) (Rev. 1-2025) Page **2**

**Part II** **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**2** Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-

exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . ▶

3 Enter total number of other organizations or entities . . . . . . ▶

Schedule F (Form 990) (Rev. 1-2025)

Page 3

Schedule F (Form 990) (Rev. 1-2025) Page 3

**Part III Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| **(a)** Type of grant or assistance | **(b)** Region | **(c)** Number of recipients | **(d)** Amount of cash grant | **(e)** Manner of cash disbursement | **(f)** Amount of noncash assistance | **(g)** Description of noncash assistance | **(h)** Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Schedule F (Form 990) (Rev. 1-2025)

Page 4

Schedule F (Form 990) (Rev. 1-2025) Page 4

**Part IV Foreign Forms**

1 Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* . . . ☐ Yes ☑ No

2 Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* . . . ☐ Yes ☑ No

3 Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* . . . ☑ Yes ☐ No

4 Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* . ☑ Yes ☐ No

5 Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* . . . ☐ Yes ☑ No

6 Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990).* . . . ☐ Yes ☑ No

Schedule F (Form 990) (Rev. 1-2025)

Page 5

Schedule F (Form 990) (Rev. 1-2025) Page 5

**Part V Supplemental Information**

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Schedule F (Form 990) (Rev. 1-2025)

**Additional Data**

Software ID:
Software Version:

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.

**Schedule I (Form 990)**

(Rev. January 2025)

Department of the Treasury Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments and Individuals in the United States

**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

Part I **General Information on Grants and Assistance**

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ☑ Yes ☐ No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

Part II **Grants and Other Assistance to Domestic Organizations and Domestic Governments.** Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) GREATER KANSAS CITY COMMUNITY FOUNDATION 1055 BROADWAY KANSAS CITY, MO 64105 | 43-1152398 | 501(C)(3) | 500,000 | 0 | | | GENERAL PROGRAM SUPPORT |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ▶

3 Enter total number of other organizations listed in the line 1 table ▶

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50055P **Schedule I (Form 990) Rev. 1-2025**

Page 2

Schedule I (Form 990) Rev. 1-2025 Page **2**

Part III **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

Part IV **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | THE FOUNDATION SUPPORTS AND BENEFITS GKCCF BY MAKING GRANTS DIRECTLY TO GKCCF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF GKCCF, THE FOUNDATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT GKCCF WISHES TO BENEFIT IN FURTHERANCE OF GKCCF'S EXEMPT PURPOSES. THESE ORGANIZATIONS ARE EXPECTED TO MAINTAIN ADEQUATE INTERNAL CONTROLS CONCERNING USE OF THESE FUNDS. |

**Schedule I (Form 990) Rev. 1-2025**

**Additional Data** Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**Schedule J** (Form 990) (Rev. January 2025)
Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization: HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**: 45-3961865

**Part I Questions Regarding Compensation**

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . .<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | **4c** | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . .<br>If "Yes," on line 5a or 5b, describe in Part III. | **5b** | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . .<br>If "Yes," on line 6a or 6b, describe in Part III. | **6b** | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . | **9** | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50053T **Schedule J (Form 990) (Rev. 1-2025)**

Page 2

Schedule J (Form 990) (Rev. 1-2025) Page **2**

**Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 DEBORAH L WILKERSON<br>SECRETARY, TREASURER | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 390,208 | 100,000 | 516 | 34,500 | 24,689 | 549,913 | 0 |
| 2 BRENDA CHUMLEY<br>DIRECTOR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 215,290 | 40,579 | 792 | 22,752 | 20,993 | 300,406 | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Schedule J (Form 990) (Rev. 1-2025)

Page 2

Schedule J (Form 990) (Rev. 1-2025) Page 3

**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | THE COMPENSATION COMMITTEE OF THE RELATED ORGANIZATION IS COMPRISED OF INDEPENDENT BOARD MEMBERS. THE COMMITTEE SETS THE CEO COMPENSATION BASED ON ANNUAL INDUSTRY COMPENSATION STUDIES AS WELL A COMPREHENSIVE COMPENSATION STUDY CONDUCTED EVERY THREE YEARS BY AN INDEPENDENT COMPENSATION CONSULTANT FOR THE ORGANIZATION. |

Schedule J (Form 990) (Rev. 1-2025)

**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

# SCHEDULE O (Form 990)

(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

## Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION A, LINE 6 | THE CORPORATION SHALL HAVE TWO CLASSES OF MEMBERS AND ONE MEMBER IN EACH SUCH CLASS: THE INSTITUTIONAL MEMBER, WHICH SHALL BE THE GREATER KANSAS CITY COMMUNITY FOUNDATION, AND THE INDIVIDUAL MEMBER, WHICH SHALL BE JAMES DONDERO OR AN INDIVIDUAL DESIGNATED AS THE INDIVIDUAL MEMBER IN ACCORDANCE WITH THE BYLAWS. |
| FORM 990, PART VI, SECTION A, LINE 7A | TWO (2) DIRECTORS (THE "INSTITUTIONAL DIRECTORS") SHALL BE ELECTED ANNUALLY BY THE INSTITUTIONAL MEMBER AND ONE (1) DIRECTOR (THE "INDIVIDUAL DIRECTOR") SHALL BE ELECTED ANNUALLY BY THE INDIVIDUAL MEMBER. |
| FORM 990, PART VI, SECTION A, LINE 7B | ONLY THE MEMBERS, BY THE AFFIRMATIVE UNANIMOUS VOTE OF THE MEMBERS ENTITLED TO VOTE, MAY ADOPT, AMEND, OR REPEAL THE BYLAWS, AND ALTERATIONS OR AMENDMENTS OF THE BYLAWS MADE BY THE MEMBERS SHALL NOT BE ALTERED OR AMENDED BY THE BOARD OF DIRECTORS TO THE EXTENT SUCH ALTERATION OR AMENDMENT EXPRESSLY STATES THAT IT CAN ONLY BE ALTERED OR AMENDED BY THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENT THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION B, LINE 12C | NO CONTRACT OR AGREEMENT MAY BE ENTERED INTO BY AND BETWEEN THE CORPORATION AND ANY OF THE FOLLOWING: (A) A DIRECTOR, OFFICER, OR EMPLOYEE OF THE CORPORATION (HEREINAFTER AN "INSIDER"); OR (B) ANY CORPORATION, PARTNERSHIP, TRUST, SOLE PROPRIETORSHIP OR ANY OTHER ENTITY (HEREINAFTER AN "ENTITY") IN WHICH AN INTEREST IS OWNED OR HELD, DIRECTLY OR INDIRECTLY, BY OR FOR THE BENEFIT OF AN INSIDER, UNLESS (I) THE TRANSACTION IS APPROVED IN ACCORDANCE WITH SECTION 144 OF THE DELAWARE GENERAL CORPORATION LAW TO THE EXTENT SUCH PROVISION IS APPLICABLE TO THE TRANSACTION; AND (II) IF ONE OR MORE OF THE PARTIES TO THE CONTRACT OR TRANSACTION IS A "DISQUALIFIED PERSON" WITH RESPECT TO THE CORPORATION WITHIN THE MEANING OF SECTION 4958 OF THE CODE, EITHER (X) SUCH TRANSACTION IS REVIEWED AND APPROVED IN ACCORDANCE WITH THE "REBUTTABLE PRESUMPTION SAFE HARBOR" PROVISIONS SET FORTH IN THE REGULATIONS PROMULGATED UNDER SECTION 4958 OF THE CODE OR (Y) THE BOARD OF DIRECTORS DETERMINES THAT SUCH PROCEDURES ARE NOT NECESSARY FOR THE TRANSACTION INVOLVED AND RECORDS ITS SPECIFIC FINDINGS FOR MAKING SUCH DETERMINATION; PROVIDED, HOWEVER, THAT THE FOLLOWING CONTRACTS AND AGREEMENTS SHALL NOT BE SUBJECT TO THE FOREGOING PROHIBITION: A GRATUITOUS TRANSFER OF ASSETS OR PROMISE TO TRANSFER ASSETS TO THE CORPORATION OF ANY KIND, INCLUDING BUT NOT LIMITED TO, (I) A GIFT ANNUITY, CHARITABLE REMAINDER TRUST, CHARITABLE LEAD TRUST OR SIMILAR SPLIT-INTEREST ARRANGEMENT WHICH BENEFITS BOTH THE INSIDER AND THE CORPORATION; OR (II) A LOAN, LEASE, AGREEMENT OF SALE OR PURCHASE, PLEDGE, GUARANTEE, ASSUMPTION OF LIABILITY, BAILMENT, OR CONSIGNMENT. ALL INSIDERS SHALL, AS A CONDITION OF QUALIFYING AND CONTINUING TO QUALIFY AS A DIRECTOR, OFFICER, AND/OR EMPLOYEE OF THE CORPORATION, ABIDE BY SUCH CONFLICT OF INTEREST POLICIES AS THE BOARD OF DIRECTORS MAY ADOPT FROM TIME TO TIME. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202503189349301990 - Submission: 2025-11-14 | TIN: 45-3961865

**SCHEDULE R (Form 990)** (Rev. January 2025)
Department of the Treasury Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
Open to Public Inspection

Name of the organization
HIGHLAND KANSAS CITY FOUNDATION INC

**Employer identification number**
45-3961865

Part I **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Part II **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**GREATER KANSAS CITY COMMUNITY FOUNDATION<br>1055 BROADWAY<br><br>KANSAS CITY, MO 64105<br>43-1152398 | COMMUNITY FOUNDATION | MO | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50135Y **Schedule R (Form 990) (Rev. 1-2025)**

Page 2

Schedule R (Form 990) (Rev. 1-2025) Page **2**

Part III **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

Part IV **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |





**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| | | Yes | No |
|---|---|---|---|
| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | |
| 1 During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| a Receipt of (i) interest, (ii)annuities, (iii) royalties, or (iv) rent from a controlled entity | 1a | | No |
| b Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| c Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| d Loans or loan guarantees to or for related organization(s) | 1d | | No |
| e Loans or loan guarantees by related organization(s) | 1e | | No |
| f Dividends from related organization(s) | 1f | | No |
| g Sale of assets to related organization(s) | 1g | | No |
| h Purchase of assets from related organization(s) | 1h | | No |
| i Exchange of assets with related organization(s) | 1i | | No |
| j Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| k Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| l Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| m Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| n Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| o Sharing of paid employees with related organization(s) | 1o | | No |
| p Reimbursement paid to related organization(s) for expenses | 1p | | No |
| q Reimbursement paid by related organization(s) for expenses | 1q | | No |
| r Other transfer of cash or property to related organization(s) | 1r | | No |
| s Other transfer of cash or property from related organization(s) | 1s | | No |

2 If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |





**Part VI Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**Part VII Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

**EXHIBIT 9**

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

Do not enter social security numbers on this form as it may be made public.

**Go to *www.irs.gov/Form990* for instructions and the latest information.**

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0047

**2024**

Open to Public Inspection

**A For the 2024 calendar year, or tax year beginning 01-01-2024 , and ending 12-31-2024**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
HIGHLAND DALLAS FOUNDATION INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 2101 CEDAR SPRINGS SUITE 1200 | Room/suite

City or town, state or province, country, and ZIP or foreign postal code
DALLAS, TX 75201

**D Employer identification number**
45-3961755

E Telephone number
(214) 276-6300

**G** Gross receipts $ 4,709,490

**F** Name and address of principal officer:
JAMES DONDERO
2101 CEDAR SPRINGS SUITE 1200
DALLAS, TX 75201

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other

**L** Year of formation: 2011

**M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

**1** Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND BENEFIT THE DALLAS FOUNDATION, A TEXAS NONPROFIT CORPORATION.

**2** Check this box ☐

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 1 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | | | |
| 8 | Contributions and grants (Part VIII, line 1h) | 0 | 0 |
| 9 | Program service revenue (Part VIII, line 2g) | 0 | 0 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 32,787,503 | 4,709,490 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 32,787,503 | 4,709,490 |
| **Expenses** | | | |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 2,284,137 | 3,839,918 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) 0 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 103,570 | 677,824 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 2,387,707 | 4,517,742 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 30,399,796 | 191,748 |
| **Net Assets or Fund Balances** | | **Beginning of Current Year** | **End of Year** |
| 20 | Total assets (Part X, line 16) | 139,632,832 | 82,073,527 |
| 21 | Total liabilities (Part X, line 26) | 0 | 405,413 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 139,632,832 | 81,668,114 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| | | |
|---|---|---|
| **Sign Here** | Signature of officer<br>JAMES DONDERO PRESIDENT, DIRECTOR<br>Type or print name and title | 2025-11-17<br>Date |

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date 2025-11-17 | Check ☐ if self-employed | PTIN P01333193 |
|---|---|---|---|---|---|
| | Firm's name DELOITTE TAX LLP | | | Firm's EIN 86-1065772 | |
| | Firm's address 1111 BAGBY STREET SUITE 4500<br>HOUSTON, TX 77002 | | | Phone no. (713) 982-2000 | |

May the IRS discuss this return with the preparer shown above? See Instructions. ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.** Cat. No. 11282Y Form **990** (2024)



**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III ☑

**1** Briefly describe the organization's mission:

SEE 4A BELOW

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? ☐ Yes ☑ No
If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? ☐ Yes ☑ No
If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 3,839,918 including grants of $ 3,839,918 ) (Revenue $ )

THE HIGHLAND DALLAS FOUNDATION IS ORGANIZED AND OPERATED EXCLUSIVELY AS A SUPPORTING ORGANIZATION WITHIN THE MEANING OF SECTION 509(A)(3) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), TO SUPPORT AND BENEFIT THE DALLAS FOUNDATION ("TDF"), A TEXAS NONPROFIT CORPORATION. TDF IS EXEMPT FROM FEDERAL INCOME TAXATION UNDER SECTION 501(A) OF THE CODE AS AN ORGANIZATION DESCRIBED IN SECTION 501(C)(3) OF THE CODE AND A PUBLIC CHARITY DESCRIBED IN SECTION 509(A)(1) OF THE CODE.THE ORGANIZATION RECEIVED ITS FUNDING AS ONE OF THREE CHARITABLE REMAINDER BENEFICIARIES OF A CHARITABLE REMAINDER TRUST CREATED BY JAMES DONDERO, WHICH TERMINATED ON NOVEMBER 30, 2011. THE ORGANIZATION'S SUPPORTED ORGANIZATION, TDF, IS THE OLDEST COMMUNITY FOUNDATION IN TEXAS AND SERVES DONORS AND NONPROFIT AGENCIES THROUGHOUT NORTH TEXAS. THE ORGANIZATION SUPPORTS AND BENEFITS TDF BY MAKING GRANTS DIRECTLY TO TDF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF TDF, THE ORGANIZATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT TDF WISHES TO BENEFIT IN FURTHERANCE OF TDF'S EXEMPT PURPOSES. THE TOTAL ANNUAL GRANTS FROM THE ORGANIZATION TO OR ON BEHALF OF TDF ARE EXPECTED TO AVERAGE APPROXIMATELY $1,000,000 PER YEAR.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)

(Expenses $ including grants of $ ) (Revenue $ )

| | | |
|---|---|---|
| 4e | **Total program service expenses** | 3,839,918 |

Form **990** (2024)

Page 3

Form 990 (2024) Page **3**

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions | 2 | | No |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | | No |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | Yes | |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | Yes | |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | Yes | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | Yes | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | No |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | No |

| | | | | |
|---|---|---|---|---|
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | Yes | |





**Part IV Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a | 1 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | | |

Form **990** (2024)

Page 5

Form 990 (2024) Page **5**

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 0 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | | 2b | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | No |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | 17 | | |





**Part VI Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*
Check if Schedule O contains a response or note to any line in this Part VI ☑

**Section A. Governing Body and Management**

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year. If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | 1a | 3 | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 1 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | | | 5 | | No |
| 6 | Did the organization have members or stockholders? | | | 6 | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | | 7a | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | | 7b | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| a | The governing body? | | | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | | | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | | No |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | | |
| 13 | Did the organization have a written whistleblower policy? | 13 | | No |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | | No |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | | No |
| b | Other officers or key employees of the organization | 15b | | No |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |

| | | | |
|---|---|---|---|
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
TORREY LITTLETON 3000 PEGASUS PARK STE 930 DALLAS, TX 75247 (214) 741-9898

Form **990** (2024)

Page 7

Form 990 (2024) Page **7**

**Part VII Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) JAMES DONDERO<br>PRESIDENT, DIRECTOR | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (2) JULIE DIAZ<br>VICE PRESIDENT | 0.50<br>40.00 | X | | X | | | | 518,549 | 0 | 13,576 |
| (3) ANGELA WOODSON<br>SECRETARY | 0.50<br>40.00 | | | X | | | | 182,830 | 0 | 19,002 |
| (4) TORRREY LITTLETON<br>TREASURER | 0.50<br>40.00 | | | X | | | | 260,781 | 0 | 29,957 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Form **990** (2024)

Page 8

Form 990 (2024) Page **8**

Part VII **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** | | | |
| **c Total from continuation sheets to Part VII, Section A** | | | |
| **d Total (add lines 1b and 1c)** | 962,160 | 0 | 62,535 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization 0

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |

**5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for

services rendered to the organization? If "Yes," complete Schedule J for such person . . . . . . . . . | 5 | | No

**Section B. Independent Contractors**

1 Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

2 Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization 0

Form **990** (2024)

Page 9

Form 990 (2024) Page **9**

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

| | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** 1a Federated campaigns . . | 1a | | | | |
| b Membership dues . . | 1b | | | | |
| c Fundraising events . . | 1c | | | | |
| d Related organizations | 1d | | | | |
| e Government grants (contributions) | 1e | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | | | | |
| h **Total.** Add lines 1a-1f . . . . . . . . | | | | | |
| **Program Service Revenue** | Business Code | | | | |
| 2a | | | | | |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| f All other program service revenue. | | | | | |
| g **Total.** Add lines 2a–2f. . . . . | | | | | |
| 3 Investment income (including dividends, interest, and other similar amounts) . . . . . . . | | 4,709,490 | | | 4,709,490 |
| 4 Income from investment of tax-exempt bond proceeds | | | | | |
| 5 Royalties . . . . . . . . . . . . | | | | | |

| | | (i) Real | (ii) Personal |
|---|---|---|---|
| 6a Gross rents | 6a | | |

**Other Revenue**

| | | (i) Securities | (ii) Other | | | | |
|---|---|---|---|---|---|---|---|
| expenses | | | | | | | |
| **c** Rental income or (loss) | 6c | | | | | | |
| **d** Net rental income or (loss) | | | | | | | |
| **7a** Gross amount from sales of assets other than inventory | 7a | | | | | | |
| **b** Less: cost or other basis and sales expenses | 7b | | | | | | |
| **c** Gain or (loss) | 7c | | | | | | |
| **d** Net gain or (loss) | | | | | | | |
| **8a** Gross income from fundraising events (not including $ ______ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | | |
| **b** Less: direct expenses | 8b | | | | | | |
| **c** Net income or (loss) from fundraising events | | | | | | | |
| **9a** Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | | |
| **b** Less: direct expenses | 9b | | | | | | |
| **c** Net income or (loss) from gaming activities | | | | | | | |
| **10a** Gross sales of inventory, less returns and allowances | 10a | | | | | | |
| **b** Less: cost of goods sold | 10b | | | | | | |
| **c** Net income or (loss) from sales of inventory | | | | | | | |
| | | | Business Code | | | | |
| **11a** | | | | | | | |
| **b** | | | | | | | |
| **c** OtherRevenueMiscAmt | | | | | | | |
| **d** All other revenue | | | | | | | |
| **e** **Total.** Add lines 11a–11d | | | | | | | |
| **12** **Total revenue.** See instructions | | | | 4,709,490 | 0 | 0 | 4,709,490 |

Form **990** (2024)





Part IX **Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX ☐

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 3,839,918 | 3,839,918 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | | | | |
| **6** Compensation not included above, to disqualified persons (as | | | | |

| | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | | | | |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| 9 Other employee benefits | | | | |
| 10 Payroll taxes | | | | |
| 11 Fees for services (non-employees): | | | | |
| a Management | 500,000 | | 500,000 | |
| b Legal | | | | |
| c Accounting | | | | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | 13,751 | | 13,751 | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 164,073 | | 164,073 | |
| 12 Advertising and promotion | | | | |
| 13 Office expenses | | | | |
| 14 Information technology | | | | |
| 15 Royalties | | | | |
| 16 Occupancy | | | | |
| 17 Travel | | | | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | | | | |
| 20 Interest | | | | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | | | | |
| 23 Insurance | | | | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | | | | |
| e All other expenses | | | | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 4,517,742 | 3,839,918 | 677,824 | 0 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation.Check here ☐ if following SOP 98-2 (ASC 958-720). | | | | |

Form **990** (2024)

Page 11

Form 990 (2024) Page **11**

Part X **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX ☐

| | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|
| 1 | Cash–non-interest-bearing | 0 | 1 | 36,231 |
| 2 | Savings and temporary cash investments | | 2 | |
| 3 | Pledges and grants receivable, net | | 3 | |
| 4 | Accounts receivable, net | | 4 | |
| 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | |
| 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | 6 | |
| 7 | Notes and loans receivable, net | | 7 | |

| Section | Line | Description | | (A) Beginning of year | Line | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 8 | Inventories for sale or use | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | | 9 | |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | | | |
| | b | Less: accumulated depreciation | 10b | | 10c | |
| | 11 | Investments—publicly traded securities | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | 119,297,562 | 12 | 61,702,026 |
| | 13 | Investments—program-related. See Part IV, line 11 | | | 13 | |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | 20,335,270 | 15 | 20,335,270 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | 139,632,832 | 16 | 82,073,527 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 17 | |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 0 | 25 | 405,413 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 0 | 26 | 405,413 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here** ☑ **and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions | | 139,632,832 | 27 | 81,668,114 |
| | 28 | Net assets with donor restrictions | | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶** ☐ **and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | 31 | |
| | 32 | Total net assets or fund balances | | 139,632,832 | 32 | 81,668,114 |
| | 33 | Total liabilities and net assets/fund balances | | 139,632,832 | 33 | 82,073,527 |





## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI ☑

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 4,709,490 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 4,517,742 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | 191,748 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 139,632,832 |
| 5 | Net unrealized gains (losses) on investments | 5 | -57,751,053 |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | -405,413 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 81,668,114 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______ If the organization changed its method of accounting from a prior year or checked "Other," explain on | | | |

Schedule O.

| | | | | |
|---|---|---|---|---|
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

Form **990** (2024)

Form 990 (2024)

## Additional Data

Return to Form

**Software ID:**

**Software Version:**

**Form 990, Special Condition Description:**

| Special Condition Description |
|---|

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**SCHEDULE A** (Form 990)

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2024**
Open to Public Inspection

**Name of the organization**
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . 1

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| (A) THE DALLAS FOUNDATION | 752890371 | 7 | Yes | | 3,839,918 | 0 |
| | | | | | | |
| **Total** 1 | | | | | 3,839,918 | 0 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2024**





**Part II Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4. | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

12 Gross receipts from related activities, etc. (see instructions) . . . . 12

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2024 (line 6, column (f) divided by line 11, column (f)) . . . . 14

15 Public support percentage for 2023 Schedule A, Part II, line 14 . . . . 15

16a **33 1/3% support test—2024.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

b **33 1/3% support test—2023.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2024.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

b **10%-facts-and-circumstances test—2023.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . ▶ ☐







**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | to or expended on its behalf | | | | | | |
| 5 | The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 | **Total.** Add lines 1 through 5 | | | | | | |
| 7a | Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b | Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| c | Add lines 7a and 7b. | | | | | | |
| 8 | **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|---|
| 9 | Amounts from line 6. | | | | | | |
| 10a | Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| b | Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c | Add lines 10a and 10b. | | | | | | |
| 11 | Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 | Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| 13 | **Total support.** (Add lines 9, 10c, 11, and 12.). | | | | | | |

14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| 15 | Public support percentage for 2024 (line 8, column (f) divided by line 13, column (f)) | 15 | |
| 16 | Public support percentage from 2023 Schedule A, Part III, line 15 | 16 | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| 17 | Investment income percentage for **2024** (line 10c, column (f) divided by line 13, column (f)) | 17 | |
| 18 | Investment income percentage from **2023** Schedule A, Part III, line 17 | 18 | |

19a **33 1/3% support tests-2024.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

b **33 1/3% support tests—2023.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . ▶ ☐





**Part IV Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | 1 | Yes | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | 2 | | No |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | 3a | | No |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | 3b | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | | | |

| | | | |
|---|---|---|---|
| **4a** Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | No |
| **b** Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* ***Part VI*** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| **c** Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| **5a** Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* ***Part VI,*** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | No |
| **b** **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| **c** **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| **6** Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* ***Part VI.*** | 6 | | No |
| **7** Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | No |
| **8** Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | No |
| **9a** Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* ***Part VI.*** | 9a | | No |
| **b** Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9b | | No |
| **c** Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9c | | No |
| **10a** Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | No |
| **b** Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |





**Part IV Supporting Organizations** (continued)

| | | Yes | No |
|---|---|---|---|
| **11** Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | 11a | | No |
| **b** A family member of a person described on 11a above? | 11b | | No |
| **c** A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI.*** | 11c | | No |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | Yes | |
| **2** Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | 2 | | No |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of | | | |

supporting organization was vested in the same persons that controlled or managed the supported organization(s).

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | 2 | | |
| 3 | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | 3 | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

1 Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

a ☐ The organization satisfied the Activities Test. Complete **line 2** below.

b ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

c ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

| | | | Yes | No |
|---|---|---|---|---|
| 2 | Activities Test. **Answer lines 2a and 2b below.** | | | |
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | 2a | | |
| b | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | 2b | | |
| 3 | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in **Part VI.*** | 3a | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | 3b | | |





**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors | | | |

| | | | | |
|---|---|---|---|---|
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |
| | **Section C - Distributable Amount** | | | Current Year |
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990) 2024**

Page 7



**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| | **Section D - Distributions** | | **Current Year** |
|---|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | 1 | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | 2 | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | 3 | |
| 4 | Amounts paid to acquire exempt-use assets | 4 | |
| 5 | Qualified set-aside amounts (*prior IRS approval required - provide details in **Part VI***) | 5 | |
| 6 | Other distributions (*describe in **Part VI***). See instructions | 6 | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | 7 | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (*provide details in **Part VI***). See instructions | 8 | |
| 9 | Distributable amount for 2024 from Section C, line 6 | 9 | |
| 10 | Line 8 amount divided by Line 9 amount | 10 | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2024** | **(iii)** **Distributable Amount for 2024** |
|---|---|---|---|
| 1 Distributable amount for 2024 from Section C, line 6 | | | |
| 2 Underdistributions, if any, for years prior to 2024 (reasonable cause required-- *explain in **Part VI***). See instructions. | | | |
| 3 Excess distributions carryover, if any, to 2024: | | | |
| a From 2019. . . . . . . . | | | |
| b From 2020. . . . . . . . | | | |
| c From 2021. . . . . . . . | | | |
| d From 2022. . . . . . . . | | | |
| e From 2023. . . . . . . . | | | |
| f **Total** of lines 3a through e | | | |
| g Applied to underdistributions of prior years | | | |
| h Applied to 2024 distributable amount | | | |
| i Carryover from 2019 not applied (see instructions) | | | |
| j Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| 4 Distributions for 2024 from Section D, line 7: $ | | | |
| a Applied to underdistributions of prior years | | | |
| b Applied to 2024 distributable amount | | | |

| | | | |
|---|---|---|---|
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2024, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2024. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2025.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2020. . . . . | | | |
| **b** Excess from 2021. . . . . | | | |
| **c** Excess from 2022. . . . . | | | |
| **d** Excess from 2023. . . . . | | | |
| **e** Excess from 2024. . . . . | | | |

**Schedule A (Form 990)** (2024)

Page 8

Schedule A (Form 990) 2024 Page **8**

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

| Facts And Circumstances Test |
|---|
| |

| Return Reference | Explanation |
|---|---|

**Schedule A (Form 990) 2024**

## Additional Data

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

**Name of the organization**
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II Conservation Easements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ____________

4 Number of states where property subject to conservation easement is located ▶ ____________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ____________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ____________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

(ii) Assets included in Form 990, Part X ▶ $ ____________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

b Assets included in Form 990, Part X ▶ $ ____________

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition
b ☐ Scholarly research
c ☐ Preservation for future generations
d ☐ Loan or exchange programs
e ☐ Other ..........

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ Yes ☐ No

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| c Beginning balance . . . . | 1c | |
| d Additions during the year . . . . | 1d | |
| e Distributions during the year . . . . | 1e | |
| f Ending balance . . . . | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| 1a Beginning of year balance . . . . . | | | | | |
| b Contributions . . . | | | | | |
| c Net investment earnings, gains, and losses | | | | | |
| d Grants or scholarships . . . | | | | | |
| e Other expenditures for facilities and programs . . . | | | | | |
| f Administrative expenses . . . . | | | | | |
| g End of year balance . . . . . . | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:
a Board designated or quasi-endowment ▶ ..........
b Permanent endowment ▶ ..........
c Term endowment ▶ ..........
The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| (i) Unrelated organizations . . . . | 3a(i) | | |
| (ii) Related organizations . . . . | 3a(ii) | | |
| b If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a Land . . . . . . | | | | |
| b Buildings . . . . | | | | |
| c Leasehold improvements | | | | |
| d Equipment . . . . | | | | |
| e Other . . . . . . | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . ▶ | | | | 0 |

**Schedule D (Form 990) (Rev. 1-2025)**

**Part VII Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3) Other | | |
| (A) CHARITABLE DAF HOLDCO, LTD. | 44,285,479 | F |
| (B) HIGHLAND MULTI STRATEGY CREDIT FUND, LTD | 300,996 | F |
| (C) CHARLES SCHWAB ACCOUNT | 8,580,551 | F |
| (D) NHT | 8,535,000 | F |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | 61,702,026 | |

**Part VIII Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1)GUN COLLECTION | 20,335,270 |
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | 20,335,270 |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |

| | |
|---|---|
| TDF ADMIN FEE PAYABLE | 405,413 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 405,413 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Schedule D (Form 990) (Rev. 1-2025)**

Page 4



**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART IV LINE 11F | THE FOUNDATION FOLLOWS THE PROVISIONS OF ASC 740-10, INCOME TAXES, RELATED TO UNRECOGNIZED TAX POSITIONS. THE FOUNDATION RECOGNIZES THE TAX BENEFITS FROM UNCERTAIN TAX POSITIONS ONLY IF IT IS MORE LIKELY THAN NOT THAT THE TAX POSITIONS WILL BE SUSTAINED ON EXAMINATION BY THE TAXING AUTHORITIES, BASED ON THE TECHNICAL MERITS OF THE POSITIONS. THE TAX BENEFITS RECOGNIZED IN THE CONSOLIDATED FINANCIAL STATEMENTS FROM SUCH POSITIONS ARE MEASURED BASED ON THE LARGEST BENEFIT THAT HAS A GREATER THAN 50% LIKELIHOOD OF BEING REALIZED UPON ULTIMATE SETTLEMENT. THE FOUNDATION DOES NOT BELIEVE THERE ARE ANY MATERIAL UNCERTAIN TAX POSITIONS AND |

ACCORDINGLY, IT WILL NOT RECOGNIZE ANY LIABILITY FOR UNRECOGNIZED TAX BENEFITS. FOR THE YEAR ENDED DECEMBER 31, 2024, THERE WERE NO INTEREST OR PENALTIES RECORDED OR INCLUDED IN THE FINANCIAL STATEMENTS. THE FOUNDATION RECOGNIZES INTEREST AND PENALTIES, IF ANY, RELATED TO UNCERTAIN TAX POSITIONS AS INCOME TAX EXPENSE. THE FOUNDATION'S INFORMATIONAL RETURNS ARE GENERALLY SUBJECT TO EXAMINATION FOR THREE YEARS AFTER THE LATER OF THE DUE DATE OR DATE OF FILING. AS A RESULT, THE FOUNDATION IS NO LONGER SUBJECT TO INCOME TAX EXAMINATIONS BY TAX AUTHORITIES FOR YEARS PRIOR TO 2019.



**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**SCHEDULE F (Form 990)** (Rev. January 2025)

Department of the Treasury Internal Revenue Service

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

Employer identification number
45-3961755

Part I **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

1 **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . ☐ Yes ☐ No

2 **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

3 Activites per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| CENTRAL AMERICA AND THE CARIBBEAN | | | INVESTMENT IN FOREIGN INVESTMENT COMPANY | N/A | 44,285,479 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **3a** Sub-total . . . . | 0 | 0 | | | 44,285,479 |
| **b** Total from continuation sheets to Part I . . . | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 44,285,479 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50082W **Schedule F (Form 990) (Rev. 1-2025)**

Page 2

Schedule F (Form 990) (Rev. 1-2025) Page **2**

Part II **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-

2 Enter total number of recipient organizations listed in the table above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter ▶

3 Enter total number of other organizations or entities ▶

**Schedule F (Form 990) (Rev. 1-2025)**

Page 3

Schedule F (Form 990) (Rev. 1-2025) Page **3**

**Part III Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Schedule F (Form 990) (Rev. 1-2025)**

Page 4

Schedule F (Form 990) (Rev. 1-2025) Page **4**

**Part IV Foreign Forms**

1 Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* ☐ Yes ☑ No

2 Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* ☐ Yes ☑ No

3 Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* ☑ Yes ☐ No

4 Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* ☑ Yes ☐ No

5 Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* ☐ Yes ☑ No

6 Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990).* ☐ Yes ☑ No

**Schedule F (Form 990) (Rev. 1-2025)**

Page 5

Schedule F (Form 990) (Rev. 1-2025) Page **5**

**Part V Supplemental Information**

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |



**Additional Data**

Software ID:
Software Version:

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.

**Schedule I (Form 990)**

(Rev. January 2025)

Department of the Treasury Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments and Individuals in the United States

**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization: HIGHLAND DALLAS FOUNDATION INC

Employer identification number: 45-3961755

**Part I General Information on Grants and Assistance**

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . ☑ Yes ☐ No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II Grants and Other Assistance to Domestic Organizations and Domestic Governments.** Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) THE DALLAS FOUNDATION 3000 PEGASUS PARK DRIVE STE 930 DALLAS, TX 75247 | 75-2890371 | 501(C)(3) | 3,839,918 | 0 | | | GENERAL PROGRAM SUPPORT |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . ▶

3 Enter total number of other organizations listed in the line 1 table . . . ▶

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50055P **Schedule I (Form 990) Rev. 1-2025**

Page 2

Schedule I (Form 990) Rev. 1-2025 Page **2**

**Part III Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | THE FOUNDATION SUPPORTS AND BENEFITS TDF BY MAKING GRANTS DIRECTLY TO TDF IN SUPPORT OF ITS CHARITABLE PURPOSES. IN ADDITION, UPON THE DIRECTION AND ON BEHALF OF TDF, THE FOUNDATION MAY MAKE GRANTS TO SUCH OTHER PUBLIC CHARITIES THAT TDF WISHES TO BENEFIT IN FURTHERANCE OF TDF'S EXEMPT PURPOSES. THESE ORGANIZATIONS ARE EXPECTED TO MAINTAIN ADEQUATE INTERNAL CONTROLS CONCERNING USE OF THESE FUNDS. |

**Schedule I (Form 990) Rev. 1-2025**

**Additional Data**

Return to Form

**Software ID:**
**Software Version:**

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**Schedule J** (Form 990) (Rev. January 2025) Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
▶ **Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
▶ **Attach to Form 990.**
▶ **Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I Questions Regarding Compensation**

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | 1b | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | 2 | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | 4a | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | 4b | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement?<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | 4c | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | 5a | | No |
| **b** | Any related organization?<br>If "Yes," on line 5a or 5b, describe in Part III. | 5b | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | 6a | | No |
| **b** | Any related organization?<br>If "Yes," on line 6a or 6b, describe in Part III. | 6b | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | 7 | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | 8 | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | 9 | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50053T **Schedule J (Form 990) (Rev. 1-2025)**

Page 2

Schedule J (Form 990) (Rev. 1-2025) Page **2**

**Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.
**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| 1 JULIE DIAZ<br>VICE PRESIDENT | (i) | 473,549 | 45,000 | 0 | 13,100 | 476 | 532,125 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 TORRREY LITTLETON<br>TREASURER | (i) | 231,741 | 29,040 | 0 | 10,027 | 19,930 | 290,738 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 ANGELA WOODSON<br>SECRETARY | (i) | 178,504 | 4,326 | 0 | 7,072 | 11,930 | 201,832 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Schedule J (Form 990) (Rev. 1-2025)

Page 2

Schedule J (Form 990) (Rev. 1-2025) Page 3

**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | COMPENSATION PROCESS FOR TOP OFFICIAL - A SELECT INDEPENDENT GROUP OF THE BOARD ESTABLISHES THE COMPENSATION PACKAGE FOR THE CEO. COMPENSATION SURVEYS, INDICATING NATIONAL INDUSTRY STANDARDS FOR COMPENSATION OF SIMILAR ORGANIZATIONS, ARE CONSULTED IN SETTING THE COMPENSATION PACKAGE FOR THIS POSITION. COMPENSATION PROCESS FOR OFFICERS - THE BOARD HAS DESIGNATED COMPENSATION DECISIONS FOR OTHER OFFICERS AND KEY EMPLOYEES TO THE ORGANIZATION'S CEO. COMPENSATION SURVEYS, INDICATING NATIONAL INDUSTRY STANDARDS FOR COMPENSATION OF SIMILAR ORGANIZATIONS, ARE CONSULTED IN SETTING COMPENSATION PACKAGES FOR THESE POSITIONS. |

Schedule J (Form 990) (Rev. 1-2025)

**Additional Data** Return to Form

Software ID:
Software Version:

| efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755 |
|---|---|---|

**SCHEDULE O**
**(Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | PURSUANT TO SECTION 2.2 OF THE ORGANIZATION'S BYLAWS, THE INSTITUTIONAL MEMBER SHALL BE ENTITLED TO TWO (2) VOTES UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS, AND THE INDIVIDUAL MEMBER SHALL BE ENTITLED TO ONE (1) VOTE UPON EACH MATTER SUBMITTED TO A VOTE OF THE MEMBERS. |
| FORM 990, PART VI, SECTION B, LINE 11B | MANAGEMENT, INCLUDING THE DIRECTORS, WORKS DILIGENTLY TO COMPLETE THE FORM 990 AND ATTACHED SCHEDULES IN A THOROUGH MANNER. MANAGEMENT PRESENTS THE FORM TO THE BOARD FOR REVIEW AND COMMENTS. PRIOR TO FILING THE RETURN, ALL BOARD MEMBERS ARE PROVIDED THE FORM 990 AND MANAGEMENT TEAM MEMBERS ARE AVAILABLE TO ANSWER ANY BOARD MEMBERS' QUESTIONS. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE MADE AVAILABLE UPON REQUEST. |
| FORM 990, PART XI, LINE 9: | LIABILITY PAYABLE -405,413. |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ. Cat. No. 51056K Schedule O (Form 990) (Rev. 1-2025)

**Additional Data** Return to Form

Software ID:
Software Version:

efile Public Visual Render | ObjectId: 202523219349325902 - Submission: 2025-11-17 | TIN: 45-3961755

**SCHEDULE R (Form 990)**
(Rev. January 2025)
Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**Attach to Form 990.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
Open to Public Inspection

Name of the organization
HIGHLAND DALLAS FOUNDATION INC

**Employer identification number**
45-3961755

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**THE DALLAS FOUNDATION<br>3000 PEGUSAS PARK DRIVE SUITE 930<br><br>DALLAS, TX 75247<br>75-2893071 | COMMUNITY FOUNDATION | TX | 501(C)(3) | LINE 7: 170(B)(1)(A) | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Cat. No. 50135Y **Schedule R (Form 990) (Rev. 1-2025)**

Page 2



**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? Yes | No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Schedule R (Form 990) (Rev. 1-2025)

Page 3

Schedule R (Form 990) (Rev. 1-2025) Page 3

**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| **Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | Yes | No |
|---|---|---|---|
| 1 During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| a Receipt of (i) interest, (ii) annuities, (iii) royalties, or (iv) rent from a controlled entity | 1a | | No |
| b Gift, grant, or capital contribution to related organization(s) | 1b | Yes | |
| c Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| d Loans or loan guarantees to or for related organization(s) | 1d | | No |
| e Loans or loan guarantees by related organization(s) | 1e | | No |
| f Dividends from related organization(s) | 1f | | No |
| g Sale of assets to related organization(s) | 1g | | No |
| h Purchase of assets from related organization(s) | 1h | | No |
| i Exchange of assets with related organization(s) | 1i | | No |
| j Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| k Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| l Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| m Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| n Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| o Sharing of paid employees with related organization(s) | 1o | | No |
| p Reimbursement paid to related organization(s) for expenses | 1p | | No |
| q Reimbursement paid by related organization(s) for expenses | 1q | | No |
| r Other transfer of cash or property to related organization(s) | 1r | | No |
| s Other transfer of cash or property from related organization(s) | 1s | | No |

2 If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| (1) THE DALLAS FOUNDATION | B | 3,839,918 | CASH |
| (2) THE DALLAS FOUNDATION | M | 500,000 | CASH |
| | | | |
| | | | |
| | | | |
| | | | |

Schedule R (Form 990) (Rev. 1-2025)

Page 4

Schedule R (Form 990) (Rev. 1-2025) Page 4

**Part VI Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? Yes | (e) No | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? Yes | (h) No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | (j) No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |





Part VII **Supplemental Information**

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|



**Additional Data** Return to Form

**Software ID:**
**Software Version:**

**EXHIBIT 9**

OF APPEAL OF THE CAYMAN ISLANDS

**CAUSE NO CICA 003 OF 2026**

**ON APPEAL FROM CAUSE NO FSD 201 OF 2025 (RPJ)**

**BETWEEN:**

**CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION)**

Plaintiff / Appellant

**AND**

**(1) MARK ERIC PATRICK**

**(2) PAUL MURPHY**

**(3) CDMCFAD, LLC**

**(4) DFW CHARITABLE FOUNDATION**

**(5) CDH GP, LTD. AS GENERAL PARTNER FOR AND ON BEHALF OF CHARITABLE DAF FUND, LP, AND IN ITS CAPACITY AS GENERAL PARTNER**

**(6) CLO HOLDCO, LTD.**

Defendants / Respondents

---

**CERTIFICATE OF THE ORDER OF THE COURT OF APPEAL**

---

**UPON** the Appellant's summons filed on 3 March 2026 (the "**Interim Summons**") seeking interim relief pending the determination of the Appellant's appeal against the order of Justice Raj Parker consequent on the judgment of 10 February 2026 as commenced by the Appellant's Notice of Appeal dated 24 February 2026 (the "**Appeal**")

**AND UPON** reading the First Affidavit of Margot MacInnis dated 3 March 2026, the First Affidavit of Mark Patrick dated 24 March 2026, and the First Affidavit of Paul Murphy dated 24 March 2026 and the other affidavits, exhibits and documents and materials in the bundles put before the Court and referred to as having been read or considered

**AND UPON** reading the written submissions filed on behalf of the Appellant and the Respondents on 18 March 2026

**AND UPON** the Court refusing the Appellant’s request to determine the Interim Summons on the papers

**AND UPON** hearing Caroline Moran for the Appellant, Andrew Scott KC for the First, Third, Fifth and Sixth Respondents, David Quest KC for the Second Respondent, and Fleur O’Driscoll for the Fourth Respondent on 27 March 2026 by remote hearing before The Rt Hon Sir John Goldring, President; The Hon Sir Richard Field, Justice of Appeal; and The Rt Hon Sir Jack Beatson, Justice of Appeal

**AND UPON** a decision being given on 31 March 2026 by remote hearing with reasons to follow

**I HEREBY CERTIFY** that an order was made on 31 March 2026 as follows:

1 From the date of this Order to the date of the determination of the Appeal, but subject to paragraphs 2 and 3, the Respondents and the related entities listed in Schedule 1 hereto (the “**Fund Entities**”), and their respective agents, servants, employees, and representatives, shall:

1.1 not transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds, assets, receivables, or shares of the Fund Entities outside of the ordinary course of business;

1.2 not take any action to increase the remuneration paid to any employee, manager or director of the Fund Entities;

1.3 not take any action to dissolve, wind-down, liquidate, or otherwise alter the corporate standing of the Fund Entities;

1.4 not take any action to modify or alter the corporate governance of the Fund Entities, including but not limited to any amendment to their respective bylaws or organisational documents;

1.5 not take any action to sell, exchange, or dispossess any asset of one of the Fund Entities

unless (i) the sale is to a *bona fide* third party purchaser for reasonably equivalent value, (ii) except in the case of marketable securities, the *bona fide* purchaser is made aware of this undertaking; and (iii) the proceeds from that sale, exchange, or disposition remain owned by the Fund Entities;

1.6 not alter, conceal, or destroy any business records concerning the Respondents or the Fund Entities, including any transfers of funds, assets, receivables, or shares to or from the Respondents or Fund Entities.

2 Further, and to the extent not addressed by the foregoing, the Respondents and the Fund Entities shall:

2.1 preserve and will not in any way dispose of, deal with, encumber, transfer or diminish the value of (as applicable) their or any interest (of whatsoever nature), whether held directly or indirectly, in Charitable DAF Fund, LP (the "**Fund**"), and/or the Fund Entities and/or any assets of the Fund other than in the ordinary course of business; and

2.2 not do anything to cause, procure, incite, promote or assist a breach by any other party of this undertaking.

3 The following clarifications and exceptions apply to paragraphs 1 and 2 above:

3.1 payments in an aggregate amount not exceeding US$200,000 per calendar month made to, and then by, the Fourth Respondent to or for the benefit of any charitable organisations or charitable purposes will be permitted for the purpose of paragraphs 1.1 and 2.1 above and therefore not a breach of this Order;

3.2 paragraphs 1 and 2 above shall only apply to the Second Respondent in respect of his position as a director of the Third, Fifth and Sixth Respondents (identified as Fund Entities at paragraphs (ii), (i), and (vi) of Schedule 1, namely: CDH GP Ltd; CDMCFAD, LLC; CLO HoldCo, Ltd.) and those Fund Entities identified at paragraphs (viii) and (xv) of Schedule 1, namely: MGM Studios HoldCo, Ltd.; and CLO HoldCo LLC;

3.3 nothing in paragraphs 1 or 2 above shall apply to, restrict or otherwise affect any funds received by way of remuneration by the Second Respondent in his capacity as a director of the Appellant and/or the Fund Entities, whether received before or after the date of this Order, or his right to use, deal with, or dispose of any such funds; and

3.4 for the avoidance of doubt, compliance with the terms of this Order by the Fund Entities shall not of itself constitute or be deemed to constitute evidence of the insolvency or bankruptcy of any of the Fund Entities.

4 Paragraphs 2, 3, 4 and 5 of the Interim Summons are dismissed.

5 The costs of the Interim Summons shall be costs in the Appeal.

6 The parties shall have liberty to apply.

Given under my hand and the Seal of the Court this 22 day of April 2026

_______________________________

Registrar of the Court of Appeal

**Schedule 1**

(i) CDH GP, Ltd. (Cayman Islands)

(ii) CDMCFAD, LLC (Delaware)

(iii) Charitable DAF Fund 2, LP (Cayman Islands)

(iv) Charitable DAF Fund, LP (Cayman Islands)

(v) CLO HoldCo, Ltd. (Cayman Islands)

(vi) Liberty CLO HoldCo, Ltd. (Cayman Islands)

(vii) HCT Holdco 2, Ltd. (Cayman Islands)

(viii) MGM Studios Holdco, Ltd. (Cayman Islands)

(ix) Liberty CLO HoldCo, LLC (Delaware)

(x) Liberty Sub, Ltd. (Delaware)

(xi) Charitable DAF Holdings Corp. (Delaware)

(xii) DST Investco, LLC (Delaware)

(xiii) Allanon Capital Management LLC (Texas)

(xiv) DFW Charitable Foundation (Delaware)

(xv) CLO HoldCo LLC (Delaware)

(xvi) Rand Advisors LLC (Delaware)

(xvii) CDHC Royse City Land LLC (Texas)

(xviii) Royse City Land Company LLC (Texas)

(xix) CDHC Assets LLC (Texas)

(xx) CDHC Fort Worth Land LLC (Texas)

(xxi) CDHC Stewart Creek LLC (Texas)

(xxii) BVP Property LLC (Delaware with CA registration)

(xxiii) Hunter Mountain Investment Trust

(xxiv) Rand PE Fund Management, LLC

(xxv) Atlas IDF GP, LLC

(xxvi) CDHC Apache Trail, LLC

(xxvii) 41915 Leaseco, LLC

**EXHIBIT 9**

HIGHLAND CAPITAL MANAGEMENT

# Highland Capital Management, L.P.

## Dugaboy's Motion to Vacate

[Docket No. 4513]

May 11, 2026

PSZJ PACHULSKI STANG ZIEHL & JONES

# The High Standard to Obtain Relief From an Order Under Rule 60(b)(2)

- Dugaboy seeks relief from the 9019 Order under Rule 60(b)(2), made applicable by Bankruptcy Rule 9024.
- Dugaboy must come forward with "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."
- Whether you use July 14 (14 days from judgment) or July 28 (28 days from judgment), is of no moment. [1, 2]
- Dugaboy cannot show that the newly discovered evidence is "material and controlling and clearly would have produced a different result If present before the original judgment." [3]
- The evidence cannot be cumulative and "must be in existence at the time of [the final judgment] and not discovered until after the final judgment." [3]

1. Dugaboy contends that the 14-day period for a new trial under Bankruptcy Rule 9023 should apply. Dugaboy's contention is misplaced. Dugaboy did not move under Bankruptcy Rule 9023, but under Bankruptcy Rule 9024—and that Rule adopts Fed. R. Civ. P. 60 in its entirety, including its reference to the 28-day period for moving for new trial under Fed. R. Civ. P. 59(b).
2. Docket No. 4297
3. Highland Objection to Dugaboy's Motion to Vacate [Docket No. 4535] ¶ 58.

# Despite the Noise Dugaboy Creates, The Cayman Proceeding Was and Remains Irrelevant

- The Bankruptcy Court determined the Cayman Proceeding was irrelevant: "Whatever the misdeeds may or may not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) to justify a stay." [1]
- The Bankruptcy Court's finding that the Cayman Proceeding is irrelevant is subject to Dugaboy's fully briefed appeal of the 9019 Order pending before Judge Kinkeade. [2]
- ***All*** the so-called "newly discovered evidence" (identified for the first time in Dugaboy's reply) concern the Cayman Proceeding and the DAF restructuring. [3]
- ***All*** the JOLs' evidence—including the so-called "newly discovered" evidence—was presented to the Cayman Court and rejected in the February 2026 decision when the Court refused to grant any aspect of the propriety injunction. [4]

1. Highland Ex. 65 at 4; *see also* Highland Ex. 59 at 259:12-261:11.
2. Case No. 3:25-cv-01876-K, Document No. 52 at 5 (Issue No. 2).
3. Dugaboy Reply at 12-15.
4. Highland Ex. 72. Contrary to Dugaboy's inaccurate statement, the Cayman appellate Court has not considered, let alone reversed the trial court's decision; it merely granted the JOL's motion (Highland Ex. 88)for injunctive relief pending appeal by adopting the "ordinary course" limitations set forth in the consensual Rule 11 agreement for the Cayman Islands pending appeal

# Based on Information Available as of July 28, Nothing Dugaboy Learned Thereafter Could Have Changed the Outcome of the 9019 Order

**February 2025**
Dugaboy learns that:
a) Its interest (through Dolomiti) in Rand is redeemed,[1]
b) Atlas was being dissolved, and
c) HMIT was sold for $1 million.[2]

**April 16, 2025**
The Supporting Organizations file a Windup Up Petition in the Cayman Islands for Charitable DAF Holdco Ltd. based on Dondero's Affidavit in which he accuses Patrick of fraud and self-dealing.[3]

**May 2, 2025**
The Supporting Organizations petition for Court supervision of the liquidation and the appointment of the JOLs.[4]

**June 4, 2025**
Patrick files a 64-page Affidavit in which he rebuts the charges against him in excruciating detail, including his concerns that Dondero was jeopardizing the DAF's tax status be exercising effective control.[5]

**June 9, 2025**
The Dallas Foundation (on behalf of Empower Dallas and the Okada Family Foundation) and Crown Global object to the 9019 Motion contending that Patrick lacked authority to bind the HMIT Entities because of self-dealing and breaches of fiduciary duty.[5]

**July 1, 2025**
The Supporting Organizations petition the Texas Business Court for injunctive relief and the appointment of a receiver based on Dondero's Affidavit.[6]

**July 9, 2025**
The Supporting Organizations (including Julie Diaz) are appointed to the Liquidation Committee in the Cayman Proceeding.[7]

**July 15, 2025**
The JOLs file their Writ and Summons in the Cayman Islands seeking a proprietary injunction and other relief, all based on reiterating allegations of self-dealing and breaches of fiduciary duty.[8]

**July 21, 2025**
The JOLs file a Ch. 15 petition for recognition based on MacInnis' declaration detailing extensive allegations of fraud and self-dealing by Patrick.[9]

2025

FEB | MAR | APR | MAY | JUN | JUL

1. Highland Ex. 76.
2. Highland Ex. 48 ¶ 38-41.
3. Highland Exs. 47-48.
4. Highland Ex. 49-50.
5. Highland Ex. 52.
6. Highland Exs. 61-62.
7. Highland Ex. 66 at 5; *see also* Ex. 67.
8. Highland Ex. 63. *See also* Highland Ex. 64 (Dugaboy motion for a stay of enforcement of the 9019 Order based on the JOLs' Writ and Summons).
9. Highland Exs. 68-69.

# No Evidence Was Discovered After July 28 That Could Not Have Been Discovered With "Reasonable Diligence" Before That Time

- Dondero was designated as Dugaboy's agent for all purposes with respect to all the Relevant Litigation and this Motion to Vacate.[1] Therefore, knowledge acquired by Dondero in the course of his duties is imputed to Dugboy, his principal.[2]
- With Dondero acting as Dugaboy's agent, Dugaboy objected to the 9019 Motion; the Dallas Foundation and Crown Global also objected.[3]
- The objections created a "contested matter" granting Dugaboy and the Dallas Foundation all rights of discovery under Bankruptcy Rule 9014(c).
- Dugaboy and the Dallas Foundation exercised those rights.[4]
- Highland answered Dugaboy's interrogatories and produced over 4,000 pages of documents, including all communications between Highland and HMIT before the Settlement Agreement was signed.[5]
- Dugaboy and the Dallas Foundation deposed Mark Patrick and his associate, Shawn Raver as well as James Seery and David Klos.[6]
- No limits of any kind were placed on the scope of discovery.

1. Highland Ex. __.
2. *In re Black Elk Energy Offshore Operations, LLC,* No. 23-20386 (5th Cir. 2024) at 12.
3. Docket No. 4230; Highland Ex. 52.
4. *See*, *e.g.*, Highland Ex. 53.
5. Highland Ex. 54 (Highland's written responses and objections to Dugaboy's document requests and interrogatories); Docket No. 4255, Exs. 2-57.
6. Highland Exs. 55 and 58; Docket Nos. 4243-45, 4259-60.

# The High Standard to Obtain Relief From an Order Under Rule 60(b)(3)

- Under Fed. R. Civ. P. 60(b)(3), made applicable by Bankruptcy Rule 9024, Dugaboy must prove by clear and convincing evidence that (a) an adverse party engaged in misconduct that (b) prevented the moving party from fully and fairly presenting [its] case." [1]
- After filing its objection, Dugaboy obtained the right to use all available discovery tools under Bankruptcy Rule 9014, and Dugaboy exercised those rights.
- Dugaboy served interrogatories and document requests on Highland and took two depositions of Highland representatives. [2]
- Dugaboy and the Dallas Foundation also deposed Patrick and Raver. [3]
- Neither Dugaboy nor the Dallas Foundation ever moved to compel discovery or objected to or complained about any aspect of the discovery provided in response to their requests
- Nearly 8 months later, Dugaboy contends that Patrick did not answer a handful of questions. Even if true, that does not come close to being "clear and convincing evidence" of fraud.
- Finally, Dugaboy's allegations that Patrick engaged in fraud with respect to the restructuring of the DAF and HMIT structures is legally irrelevant because (a) the HMIT Entities were not the opposing party (Highland was), (b) the Cayman Court heard the same evidence and rejected the JOLs' request for a proprietary injunction, and (c) the issues may be grist for an intercreditor dispute, but not for 60(b)(3) purposes.

1. Highland Objection to Dugaboy's Motion to Vacate [Docket No. 4535] ¶ 68 (citing and quoting cases).
2. *See*, *e.g.,* Highland Ex. 53; Docket Nos. 4243, 4245.
3. Highland Exs. 55, 58.

# Dondero and the JOLs Repeatedly Validated Patrick's Authority Over the HMIT and DAF Entities

- Dugaboy's last-second assertion that Patrick's authority was *void ab initio* when he allegedly breached his fiduciary duty is wrong and contradicted by an uninterrupted series of contradictory actions by Dondero and the JOLs.
- This argument could have been made at any time during the 9019 Proceeding or even in Dugaboy's Motion to Vacate; instead, it was floated for the first time during Dondero's deposition on Friday.
- Notably, (a) no action has ever been taken by anyone anywhere to replace Patrick as the sole representative of the HMIT Entities and (b) there has never been a determination by any court that Patrick breached any duty.
- Under the governing documents, Highland is the only party authorized with determining whether Patrick breached his fiduciary duty and it has not made such a determination.
- Rather than contending that Patrick lacked authority to act on behalf of the HMIT and DAF Entities, Dondero and his affiliates (as well as the JOLs) have continuously validated Patrick's control of those entities. [1]

1. Highland Exs. 37-45; [cite statements in Dondero/MacInnis declarations].

# Dugaboy's Recusal Arguments Are Meritless

- Dugaboy does not contend that Judge Jernigan did anything during the 9019 Proceeding that evidenced bias or prejudice against Dugaboy.
- Dugaboy never asked Judge Jernigan to recuse herself from the 9019 Proceeding and therefore failed to preserve this issue for appeal, let alone as a basis to vacate under Rule 60.
- The Fifth Circuit considered three different appeals/petitions concerning recusal and rejected every one without ever finding that Judge Jernigan was biased or prejudiced.
- Dugaboy's reliance on Orders resulting from non-public complaints filed by Dondero and his supporters is misguided. Chief Judge Elrod expressly stated that Judge Jernigan's *voluntarily* recusal **"should not be interpreted as an opinion or reflection on the merits of judge's prior decision not to recuse, which has been addressed by the Fifth Circuit**," or "**the validity of any decision, ruling, or order that she has issued in any judicial proceeding."**

# Who Is Present and Who Is Not

| Present: **Dugaboy** | Absent: **The Dallas Foundation/ Empower Dallas/ Okada Family Foundation** | Absent: **Crown Global** | Absent: **The Supporting Organizations** |
|---|---|---|---|
| • Former holder of subordinated 0.1866% LP interest in HCMLP<br>• Current holder of Class 11 interest fixed at $740,801 [1]<br>• No direct or indirect interest in any of the HMIT Entities or the DAF Entities<br>• Dugaboy designated James Dondero as its agent for all purposes related to all relevant litigation [2] | • With Crown Global, DF objected to the HMIT 9019 Settlement on behalf of Empower Dallas and the Okada Family Foundation [4]<br>• After taking discovery, DF and Crown Global withdrew their objection to the 9019 Settlement with prejudice pursuant to a Binding Term Sheet that left Patrick in control of the HMIT Entities [5] | • Sole LP of Atlas IDF, LP, the former indirect parent of HMIT<br>• Was informed of the Beacon Mountain sale (which included HMIT) and did not object<br>• After taking discovery, Crown Global and DF withdrew their objection to the 9019 Settlement with prejudice pursuant to a Binding Term Sheet that left Patrick in control of the HMIT Entities [5] | • As the holder of “Participation Shares” in Charitable DAF Holdco Ltd., the entity subject of the Cayman Proceeding, they were entitled to distributions from Charitable DAF Fund if the general partner made them in its sole discretion, but they had no voting or control rights whatsoever<br>• The Supporting Organizations commenced the Cayman Proceeding (4/16) and the Texas Business Litigation (7/1) with Dondero’s money and affidavits [6]<br>• The Supporting Organizations have been members of the DAF Holdco Ltd. Liquidating Committee since July 2, 2025, and had complete access to the information in the Cayman Proceeding [7] |

1. Docket No. 4401 ¶ 12.
2. Docket No. ___.
3. Highland Exs. 26-29.
4. Highland Ex. 52.
5. Highland Ex. 39.
6. Highland Exs. 47-49, 61-62.
7. Highland Ex. 67.

# Context Is Everything: Dugaboy's Motion to Vacate Must Be Denied

- Dondero's goal is to regain control of the HMIT Entities so he can perpetuate litigation against Highland—because unless the 9019 Order is overturned, Dugaboy is hopelessly out of the money.
- Rule 60 is not an opportunity for a do-over, but that's exactly what Dugaboy is attempting to do here.
- Dugaboy does not contend that the 9019 Settlement was not in Highland's best interests; or that the 9019 Settlement was not the product of arm's length, good faith negotiations. Instead, Dugaboy relies on evidence developed by the JOLs in a foreign proceeding that—as Judge Jernigan found—has nothing to do with Highland or the Settlement. Indeed, Dugaboy is not even calling a Highland representative to testify.
- Dugaboy and its agent, Dondero, knew all they needed by July to object to Patrick's authority, yet they failed to do so.
- This a dispute between and among affiliates that should be resolved in the Cayman Islands or the Texas Business Court, but not here.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| | § | |

# HIGHLAND CAPITAL MANAGEMENT, L.P. AND THE HIGHLAND CLAIMANT TRUST'S THIRD AMENDED WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON MAY 11, 2026

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The service address for the Reorganized Debtor is 6333 Mockingbird Ln., Ste 147 #5045, Dallas, Texas 75214.

Highland Capital Management, L.P., the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), and the Highland Claimant Trust (together, "Highland"), by and through its undersigned counsel, submits the following third amended witness and exhibit list with respect to the *Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] ("Motion for Relief") filed by The Dugaboy Investment Trust ("Dugaboy") which the Court has set for hearing on May 11, 2026 at 9:00 a.m. (Central Time) (the "Hearing") at the George Mahon Federal Building, 1205 Texas Avenue, Room 314, Lubbock, Texas 79401.

**A. Witnesses:**

1. James Dondero;
2. James P. Seery, Jr.;
3. Nancy Dondero, as Trustee to The Dugaboy Investment Trust;
4. Mark Patrick;
5. Any witness identified by or called by any other party; and
6. Any witness necessary for rebuttal.

**B. Amended Exhibits:**[2]

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
| --- | --- | --- | --- | --- |
| **A.** | **Patrick Authority** | | | |

[2] The amendments to *Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026* [Docket No. 4613] include the additions in bold font below.

[3] Highland's Witness and Exhibit List for the June 25, 2025 hearing (the "9019 Hearing") on the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] can be found at Docket No. 4255 and as further amended at Docket Nos. 4277 and 4280. Exhibit reference is to the exhibit list (and copies of the exhibits themselves) found at Docket No. 4255 unless otherwise noted.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 1. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | 70 | | |
| 2. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | 75 | | |
| 3. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | 94 | | |
| 4. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | 95 | | |
| 5. | Membership Interest Purchase Agreement, dated February 12, 2025, between Rand PE Fund I, L.P. and CLO Holdco, LLC | | | |
| 6. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] | 86 | | |
| 7. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | 73 | | |
| 8. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | 83 | | |
| 9. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | 82 | | |
| 10. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | 76 | | |
| 11. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | 85 | | |
| 12. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] | 88 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 13. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | 77 | | |
| 14. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | 84 | | |
| 15. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] | 87 | | |
| 16. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] | 89 | | |
| 17. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | 78 | | |
| 18. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | 81 | | |
| 19. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | 93 | | |
| 20. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | 79 | | |
| 21. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | 80 | | |
| 22. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | 92 | | |
| 23. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | 90 | | |
| 24. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | 91 | | |
| 25. | Crown Global Rand Participation Agreement (Executed) | 102 | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 26. | Crown Global DVA Policy 30218 (signed) | 98 | | |
| 27. | Crown Global DVA Termsheet 30218 | 99 | | |
| 28. | Crown Global DVA Policy 30219 (signed) | 100 | | |
| 29. | Crown Global DVA Termsheet 30219 | 101 | | |
| 30. | Bylaws of The Okada Family Foundation, Inc. (final version) | 96 | | |
| 31. | Bylaws of Empower Dallas Foundation, Inc. | 97 | | |
| 32. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | 103 | | |
| 33. | S&G HMIT Opinion dated January 29, 2016 | 104 | | |
| 34. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | 74 | | |
| 35. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | 71 | | |
| 36. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | 72 | | |
| **B.** | **<u>Validation of Patrick's Authority</u>** | | | |
| 37. | *Remittance Agreement* between the NexPoint Small Bay and Charitable DAF and Liberty CLO Holdco, Ltd. (as those terms are defined), dated January 10, 2025 [Docket No. 4536-E] | 22 | | |

| **Number** | **Exhibit** | **HCMLP Prior W&E Ref.**[3] | **Offered** | **Admitted** |
|---|---|---|---|---|
| 38. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | 13 | | |
| 39. | *Stipulation Withdrawing Objection of the Dallas Foundation and Crown Global Life Insurance, Ltd. to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With the HMIT Entities and Authorizing Actions Consistent Therewith* dated June 27, 2025 [Docket No. 4291] | | | |
| 40. | The Rule 11 Agreement filed in the TX Business Court on July 13, 2025 [Docket No. 4356-F] | | | |
| 41. | *Consent Order in In re Charitable DAF Holdco, Ltd.*, entered by the Grand Court of the Cayman Islands Financial Services Division on July 31, 2025 [Docket No. 4556-20] | | | |
| 42. | *Order* in *The Highland Dallas Foundation, Inc.*, *et al. v. Patrick*, *et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on September 18, 2025 [Docket No. 4534-16] | | | |
| 43. | An amendment to a loan agreement executed by, among others, certain Dondero-controlled entities and CLO Holdco, Ltd., dated September 30, 2025 [Docket No. 4536-G] | | | |
| 44. | *Stipulation [Proposed] Order of Dismissal With Prejudice* between Liberty CLO HoldCo, Ltd. and Dugaboy and others aligned with or controlled by Dondero, dated December 3, 2025 [Docket No. 4536-H] | | | |
| 45. | *Agreed Final Judgment* between Atlas IDF, LP (an HMIT affiliate) and certain Dondero-controlled entities, dated December 8, 2025 [Docket No. 4536-I] | | | |
| **C.** | **<u>Dugaboy's Knowledge of the Principal Allegations Against Patrick</u>** | | | |
| 46. | Excerpts of Returns of Organizations Exempt from Income Tax filed on IRS Form 990, dated 2024, for the Highland Dallas Foundation Inc., the Highland Kansas City Foundation Inc., and the Highland Santa Barbara Foundation Inc. [Docket No. 4556-21] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 47. | The *Winding Up Petition in In re Charitable DAF Holdco, Ltd*., filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-6] | | | |
| 48. | The *Affidavit of James David Dondero*, notarized on April 9, 2025 and filed in support of the *Winding Up Petition in In re Charitable DAF Holdco, Ltd*., filed in the Grand Court of the Cayman Islands Financial Services Division on April 16, 2025 [Docket No. 4534-7] | 119 | | |
| 49. | *Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd*., filed in the Grand Court of the Cayman Islands Financial Services Division on May 2, 2025 [Docket No. 4534-13] | | | |
| 50. | *Order Granting Petition for Court Supervision of a Voluntary Liquidation in In re Charitable DAF Holdco, Ltd*., entered in the Grand Court of the Cayman Islands Financial Services Division on May 6, 2025 [Docket No. 4534-14] | | | |
| 51. | The *Affidavit of Mark Eric Patrick*, notarized on June 4, 2025, in *In re Charitable DAF Holdco, Ltd*. and filed in the Grand Court of the Cayman Islands Financial Services Division on June 4, 2025 [Docket No. 4534-10] | | | |
| 52. | *Objection of The Dallas Foundation and Crown Global Life Insurance, Ltd to Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4231], filed in the United States Bankruptcy Court for the Northern District of Texas on June 9, 2025 [Docket No. 4534-18] | | | |
| 53. | *Dugaboy Investment Trust's Discovery Related to Rule 9019 Motion* in the above-captioned bankruptcy case, dated June 10, 2025 [Docket No. 4534-19] | | | |
| 54. | *Highland Capital Management, L.P., the Highland Claimant Trust, and the Highland Litigation Sub-Trust's Responses and Objections to Dugaboy's Discovery Related to Rule 9019* Motion, dated June 13, 2025 [Docket No. 4534-12] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 55. | Deposition transcript of Shawn Raver dated June 20, 2025 | | | |
| 56. | Deposition transcript of Julie Diaz dated June 22, 2025 | 124 (at Dkt. 4277) | | |
| 57. | Deposition transcript of Torrey Littleton dated June 22, 2025 | 125 (at Dkt. 4277) | | |
| 58. | Deposition Transcript of Mark Patrick dated June 23, 2025 | | | |
| 59. | The transcript of the June 25, 2025 hearing in the United States Bankruptcy Court for the Northern District of Texas on the *Motion for an Order Further Extending Duration of Trusts* [Docket No. 4213] and *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith [Docket No. 4216]* [Docket No. 4534-11] | | | |
| 60. | Highland Rule 9019 Presentation dated June 25, 2025 [Docket No. 4536-L] | L (at Dkt. 4536)[4] | | |
| 61. | *Declaration of James David Dondero* filed in the Texas Business Court, Dallas, Texas and dated July 1, 2025 [Case No. 19-34054, [Docket No. 4521-H-6] | | | |
| 62. | *Plaintiffs' Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver in The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, No. 25-BC01B-0027, filed in the Texas Business Court, 1st Division on July 1, 2025 [Docket No. 4534-15] | | | |
| 63. | *JOL Writ of Summons and Statement of Claim*, filed in the Cayman Proceeding on July 15, 2025 [Docket No. 4536-B] | | | |

[4] This demonstrative was used at the 9019 Hearing on June 25, 2025 and admitted into evidence at the request of Mr. Lang, Dugaboy's attorney. *See* June 25, 2025 transcript (Exhibit 62) at 171:15-25.

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 64. | *The Dugaboy Investment Trust's Motion to Stay 9019 Order* [Docket No. 4326] and accompanying exhibits, filed in the United States Bankruptcy Court for the Northern District of Texas on July 17, 2025 [Docket No. 4326] | | | |
| 65. | *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ##4326 & 4308]* (Denying Stay) dated July 21, 2025 [Docket No. 4333] | | | |
| 66. | Charitable DAF Holdco, Ltd. Guidance Notes for Members of the Liquidation Committee (not dated) [Docket No. 4534-9] | | | |
| 67. | CWR Form No. 15, Liquidator's Certificate (Composition of Liquidation Committee) (O. 9, r. 1) in the Grand Court of the Cayman Islands Financial Services Division, dated July 21, 2025 [Docket No. 4534-17] | | | |
| 68. | *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Court, filed in the United States District Court for the District of* Delaware, dated July 21, 2025 [Docket No. 4536-J] | | | |
| 69. | *Declaration of Margot MacInnis*, sworn to on July 21, 2025, and filed in the United States Bankruptcy Court for the District of Delaware in connection with the Ch. 15 Recognition Petition [Docket 4521-6 (Exhibit G)] | | | |
| 70. | *Third Affidavit of Margot MacInnis* filed in Grand Court of the Cayman Islands November 2025 (Under Seal) | | | |
| **D.** | **<u>The Cayman Court Rejects the Dondero Foundation's Fraud Claims</u>** | | | |
| 71. | Letter from Maples and Calder (Cayman) LLP to Karen Hoskins, Personal Assistant to the Hon. Justice Raj Parker of the Grand Court of the Cayman Islands Financial Services Division, dated February 3, 2026 [Docket No. 4556-22] | | | |
| 72. | *Judgment in In re Charitable DAF Holdco, Ltd.*, filed in the Grand Court of the Cayman Islands Financial Services Division on February 10, 2026 [Docket No. 4534-4] | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| **E.** | **Other** | | | |
| 73. | Settlement Agreement and General Release dated May 19, 2025 [Docket No. 4217-7] | 1 | | |
| 74. | *Notice of Appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* dated July 15, 2025 [Docket No. 4311] | | | |
| 75. | Dugaboy's Index (compiled from all documents Dugaboy filed at Docket Nos. 4513 and 4521), a document prepared by professionals employed by my firm at my direction dated April 3, 2026 [Docket No. 4536-A] | | | |
| 76. | Executed Withdrawal Letters – Dolomiti and Hakusan dated February 6, 2025 | | | |
| 77. | Deposition Transcript of James Dondero dated May 8, 2026 | | | |
| 78. | *Highland Capital Management, L.P.'s Requests for the Production of Documents Directed to the Dugaboy Investment Trust* dated February 2026 [Dkt 4551-8] | | | |
| 79. | Membership Interest Purchase Agreement, dated August 1, 2022 by and among John Honis, as seller, DAF Holdings Corp., as buyer, and CLO Holdco, Ltd., as guarantor | | | |
| 80. | Amended and Restated Limited Partnership Agreement of Rand PE Fund, dated as of November 30, 2015 | | | |
| 81. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Atlas IDF | | | |
| 82. | Investment Management Agreement, dated as of November 30, 2015, by and among Rand Advisors and Rand PE Fund | | | |
| 83. | Assignment and Assumption of Membership Interest Agreement, dated March 24, 2021, between Grant J. Scott and Mark E. Patrick | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 84. | Amended and Restated Limited Liability Company Agreement of DAF GP, dated as of January 1, 2012 | | | |
| 85. | Second Amended and Restated Exempted Limited Partnership Agreement of DAF Fund, dated March 11, 2024 | | | |
| 86. | Contribution and Assignment Agreement, dated April 27, 2023, by and among DAF Fund, CLO Holdco, Ltd, Liberty CLO Holdco, Ltd., and DAF Holdings Corp. | | | |
| 87. | Highland Demonstrative Exhibit: Highland's Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 88. | *Summons* filed March 3, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 89. | March 27, 2026 Hearing Transcript from proceedings in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 90. | Highland Santa Barbara Foundation Inc.'s 2024 Form 990 | | | |
| 91. | Highland Kansas City Foundation Inc.'s 2024 Form 990 | | | |
| 92. | Highland Dallas Foundation Inc.'s 2024 Form 990 | | | |
| 93. | Certificate of the Order of the Court of Appeal dated April 22, 2026 in CICA Civil Appeal No. 3 of 2026 pending in the Cayman Islands Court of Appeal | | | |
| 94. | Highland Demonstrative Exhibit: Highland's Opening Slide Deck for Hearing on Motion for Relief from Order and Motion to Vacate | | | |
| 95. | **May 9, 2025 Notice Letter from Skyview Group to Charitable DAF Fund, L.P.** | | | |
| 96. | **May 9, 2025 Notice Letter from Skyview Group to Rand Advisors** | | | |
| 97. | **May 12, 2025 Letter from Margot MacInnis to Shawn Raver re: Notice of Liquidation and Appointment of Official Liquidators for Charitable DAF HoldCo, Ltd** | | | |

| Number | Exhibit | HCMLP Prior W&E Ref.[3] | Offered | Admitted |
|---|---|---|---|---|
| 98. | Any document entered or filed in Highland Capital Management, L.P.'s chapter 11 Bankruptcy Case or any associated contested matter or adversary proceeding, including any exhibits thereto | | | |
| 99. | All exhibits necessary for impeachment and/or rebuttal purposes | | | |
| 100. | All exhibits identified by or offered by any other party at the Hearing | | | |

[*Remainder of Page Intentionally Blank*]

Dated: May 11, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

**EXHIBIT 95**

Baker McKenzie.

**Baker & McKenzie LLP**

1900 North Pearl Street
Suite 1500
Dallas, TX 75201
United States

Tel: +1 214 978 3000
Fax: +1 214 978 3099
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

Europe, Middle East & Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Munich
Paris
Prague
Riyadh*
Rome
Stockholm
Vienna
Warsaw
Zurich

The Americas
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Washington, DC

* Associated Firm
** In cooperation with Trench, Rossi e Watanabe Advogados

May 09, 2025

**By overnight FedEx and email**

Charitable DAF Fund, L.P.
c/o Charitable DAF GP, LLC
Walkers Corporate Services Limited
Walker House, 87 Mary Street
George Town, Grand Cayman KY-1 9005
Cayman Islands
Attn: Paul Murphy

**Notice of Disclosure Pursuant to Court Order**

Dear Mr. Murphy,

We are counsel to Highgate Consulting Group, Inc. d/b/a Skyview Group ("Skyview"). Our client has received a Notice dated May 6, 2025 ("Notice") from the Joint Official Liquidators ("JOLs") for Charitable DAF HoldCo, Ltd., appointed pursuant to a Supervision Order issued by the Grand Court of the Cayman Islands on May 6, 2025 ("Order"), both attached.

Pursuant to the Order and Order 26, Rule 3(1) of the Companies Winding-up rules (As Amended), the Notice requires that Skyview (1) "[a]rrange for any books or records held by [Skyview] on behalf of [Charitable DAF HoldCo, Ltd.] and its current and former subsidiaries to be immediately delivered up to the JOLs" and (2) inform the JOLs of the location of any "such books and records[that] are not in [Skyview's] possession and/or custody."

In accordance with Section 5.04(d) of the Services Agreement between Skyview and Charitable DAF Fund, L.P., dated April 27, 2021 (the "Agreement"), formal notice is hereby given that Skyview intends to comply with the Notice and Order, including by producing responsive documents that may include Confidential Information under the Agreement. Skyview intends to make an initial production on or about May 12, 2025.

Regards,

*/s Michelle M Hartmann*

Michelle M Hartmann
Partner
+1 214 978 3421
Michelle.Hartmann@bakermckenzie.com

Encl.

Cc: Geoffrey Sykes
Walkers
By email: geoffrey.sykes@walkersglobal.com

Jennifer Colegate
Baker & Partners LLP
By email: jennifercolegate@bakerpartners.com

Sandipan Bhowmik
By email: cdaf.core@uk.gt.com

Grant Thornton

Our Ref: 20250506 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

**Skyview Group**
**J.P. Sevilla and Isaac Leventon**
c/o 2101 Cedar Springs Road
Suite 1200, Dallas, Texas
75201, Unites States

Via email: jsevilla@skyviewgroup.com;
Ileventon@skyviewgroup.com

6 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you may be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (together the "**Petitioners**"), in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited ("**GTSS**"), be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the sealed order confirming their appointment is attached for your records.

In accordance with the Cayman Islands Companies Act (As Revised) (the "**Act**") and the powers conferred on the JOLs as per the sealed order, the JOLs act in the name and on behalf of the Company. As such, with effect from the date of our appointment, the JOLs are empowered to take control of the Company's assets and investigate its affairs. Although you may be aware, our responsibilities as JOLs require that we advise you that you can no longer act on instructions from the directors of the Company as their powers ceased upon our appointment.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

As such, we request that you:

1. Arrange for any books and records held by you on behalf of the Company and its current and former subsidiaries to be immediately delivered up to the JOLs. Should you be aware of any property of the Company or its current or former subsidiaries that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

**Contact**

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order - 2025-116 (JAJ)
- Proof of Debt (CWR Form 24)

FSD NO. 116 OF 2025 (JAJ)

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

**IN THE MATTER OF SECTION 131 OF THE COMPANIES ACT (2025 REVISION)**
**AND IN THE MATTER OF CHARITABLE DAF HOLDCO, LTD**

**BEFORE THE HONOURABLE JUSTICE JALIL ASIF KC**
**IN CHAMBERS**

**6 MAY 2025**

## SUPERVISION ORDER

**UPON** the petition filed on 2 May 2025 by (1) the Highland Dallas Foundation, Inc., (2) the Highland Kansas City Foundation, Inc., (3) the Highland Santa Barbara Foundation, Inc., and (4) the HCMLP Charitable Fund for an order that the voluntary liquidation of Charitable DAF HoldCo, Ltd continue under the supervision of the Court pursuant to s.131 Companies Act (2025 Revision)

**AND UPON** hearing counsel for the Petitioners and counsel for DFW Charitable Foundation

**AND UPON** reading the petition herein, the affidavit of Julie Diaz and exhibit JD-2 sworn on 29 April 2025 and the affirmation of Rhiannon Zanetic and exhibit RMZ-1 signed (but not affirmed) on 29 April 2025

**AND UPON** reading the following documents filed in Cause FSD 2025-0099 (JAJ): the winding up petition filed on 10 April 2025, the first affidavit of Julie Diaz and exhibit JD-1 sworn on 10 April 2025, the affidavit of James Dondero and exhibit JDD-1 sworn on 9 April 2025 and the affidavit of Geoffrey Sykes and exhibit GS-1 sworn on 27 April 2025

**AND UPON** reading the affidavit of Margot Macinnis and exhibit MM-1 sworn on 28 April 2025 and the affidavit of Sandipan Bhowmik and exhibit SB-1 sworn on 28 April 2025 providing their consents to act as official liquidators of Charitable DAF HoldCo, Ltd

**IT IS HEREBY ORDERED that:**

1. The voluntary liquidation of Charitable DAF HoldCo, Ltd ("the Company") be continued under the supervision of the Court pursuant to s.131 of the Act and O.15, r.8 of the Companies Winding Up Rules (2023 Consolidation).

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

2. The following persons are appointed as joint official liquidators of the Company:

| Name | Address | Contact Details |
|---|---|---|
| Margot MacInnis | Grant Thornton Specialist Services (Cayman) Limited, 2nd Floor, Century Yard, Cricket Square, Grand Cayman, KY1-1102, Cayman Islands | +1 345 949 8588 margot.macinnis@uk.gt.com |
| Sandipan Bhowmik | | +1 345 949 8588 sandipan.bhowmik@uk.gt.com |

3. The joint official liquidators may act jointly and severally.

4. The joint official liquidators are not required to give security for their appointment.

5. The joint official liquidators are authorised to exercise the following powers in Part I of Third Schedule 3 to the Companies Act, without requiring further sanction by the Court:

   a) the power to commence legal proceedings in the name and on behalf of the Company to obtain the provision of information and/or documents and/or the examination of individuals in the Cayman Islands or the United States; and

   b) the power to apply in the Cayman Islands or the United States for the preservation, freezing or attachment of assets to which the Company is or may arguably be entitled.

6. The joint official liquidators are in addition authorised to exercise the following powers and to take the following steps without further sanction by the Court:

   a) the power to present a petition for the winding up of Charitable DAF Fund, LP (the Fund) if so advised;

   b) the power to file a summons and to apply for an order appointing provisional liquidators of the Fund if so advised; and

   c) the power to seek registration or recognition of themselves and/or the Official Liquidation in any State in the United States for any purpose connected with the exercise of the powers specified in paragraphs 5(a) or 5(b) of this Order.

7. The Court dispenses with the requirement for the summons herein and the hearing of the summons to be advertised pursuant to CWR O.15.

8. The joint official liquidators' reasonable remuneration and expenses be paid out of the assets of the Company in accordance with s.109 of the Act, Part III of the Insolvency Practitioners Regulations and CWR O.20.

9. The joint voluntary liquidators shall prepare a final report and accounts for the period from the commencement of the voluntary liquidation until the date of this Order and shall deliver such report to the joint official liquidators within 28 days of this Order.

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

10. The costs of this summons shall be paid out of the assets of the Company as an expense in the liquidation, such costs to be taxed on the indemnity basis if not agreed with the joint official liquidators.

**Dated 6 May 2025**

Filed 6 May 2025

________________________________________

**THE HONOURABLE JUSTICE JALIL ASIF KC**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

Commercial in Confidence

**CWR Form No. 24**

**Proof of Debt (standard form) (O.16, r.2)**

**THE COMPANIES ACT**

**PROOF OF DEBT**

**Charitable DAF HoldCo, Ltd (In Official Liquidation)**
**Registration No: 263805**
**Date of liquidation: 6 May 2025**
**FSD CAUSE NO: 2025-116 (JAJ)**

| | | |
|---|---|---|
| 1 | Creditor's Name | |
| 2 | Creditor's Address<br><br>and relevant contact details | |
| 3 | Amount of claim | |
| | Principal | |
| | Interest (if any) | |
| | Total | |
| 4 | Summarise the basis upon which the claim arises | |
| 5 | List of supporting documentation (copies of which must be attached) | |

| | | |
|---|---|---|
| 6 | Summarise basis for interest claim, if any | |
| 7 | Interest calculation | |
| 8 | Particulars of any security held including a list of the relevant documentation | |
| 9 | Value of the security and date of valuation | |

Where necessary, please use supplementary attachments to respond in detail.

Dated: ______________

________________________________
Creditor's signature

________________________________
Name of authorised signatory

________________________________
Title

Contact Details:

Address……………………………………………………………………………………..
……..………………………………………………………………………………………..

Telephone/Fax #...........................................................................................................

Email address ……………………………………………………………………………..

**EXHIBIT 96**

Baker McKenzie.

**Baker & McKenzie LLP**

1900 North Pearl Street
Suite 1500
Dallas, TX 75201
United States

Tel: +1 214 978 3000
Fax: +1 214 978 3099
www.bakermckenzie.com

Asia Pacific
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

Europe, Middle East & Africa
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Munich
Paris
Prague
Riyadh*
Rome
Stockholm
Vienna
Warsaw
Zurich

The Americas
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Washington, DC

* Associated Firm
** In cooperation with Trench, Rossi e Watanabe Advogados

May 09, 2025

Rand Advisors
87 Railroad Place - 403
Saratoga Springs, NY 12866
Attn: John Honis

**By overnight FedEx and email**
jhonis@randadvisors.com

**Notice of Disclosure Pursuant to Court Order**

Dear Mr. Honis,

We are counsel to Highgate Consulting Group, Inc. d/b/a Skyview Group ("Skyview"). Our client has received a Notice dated May 6, 2025 ("Notice") from the Joint Official Liquidators ("JOLs") for Charitable DAF HoldCo, Ltd., appointed pursuant to a Supervision Order issued by the Grand Court of the Cayman Islands on May 6, 2025 ("Order"), both attached.

Pursuant to the Order and Order 26, Rule 3(1) of the Companies Winding-up rules (As Amended), the Notice requires that Skyview (1) "[a]rrange for any books or records held by [Skyview] on behalf of [Charitable DAF HoldCo, Ltd.] and its current and former subsidiaries to be immediately delivered up to the JOLs" and (2) inform the JOLs of the location of any "such books and records[that] are not in [Skyview's] possession and/or custody."

In accordance with Section 5.06 of the Services Agreement between Skyview and Recipients affiliated with Rand Advisors, LLC, dated March 30, 2021 (the "Agreement"), formal notice is hereby given that Skyview intends to comply with the Notice and Order, including by producing responsive documents that may include Confidential Information under the Agreement. Skyview intends to make an initial production on or about May 12, 2025.

Regards,

*/s Michelle M Hartmann*

Michelle M Hartmann
Partner
+1 214 978 3421
Michelle.Hartmann@bakermckenzie.com

Encl.

Cc: Geoffrey Sykes
Walkers
By email: geoffrey.sykes@walkersglobal.com

Jennifer Colegate
Baker & Partners LLP
By email: jennifercolegate@bakerpartners.com

Sandipan Bhowmik
By email: cdaf.core@uk.gt.com

Commercial in Confidence

Grant Thornton

Our Ref: 20250506 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

**Skyview Group**
**J.P. Sevilla and Isaac Leventon**
c/o 2101 Cedar Springs Road
Suite 1200, Dallas, Texas
75201, Unites States

Via email: jsevilla@skyviewgroup.com; Ileventon@skyviewgroup.com

6 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you may be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (together the "**Petitioners**"), in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited ("**GTSS**"), be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the sealed order confirming their appointment is attached for your records.

In accordance with the Cayman Islands Companies Act (As Revised) (the "**Act**") and the powers conferred on the JOLs as per the sealed order, the JOLs act in the name and on behalf of the Company. As such, with effect from the date of our appointment, the JOLs are empowered to take control of the Company's assets and investigate its affairs. Although you may be aware, our responsibilities as JOLs require that we advise you that you can no longer act on instructions from the directors of the Company as their powers ceased upon our appointment.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

**grantthornton.ky**

Commercial in Confidence

As such, we request that you:

1. Arrange for any books and records held by you on behalf of the Company and its current and former subsidiaries to be immediately delivered up to the JOLs. Should you be aware of any property of the Company or its current or former subsidiaries that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

**Contact**

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)



Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order - 2025-116 (JAJ)
- Proof of Debt (CWR Form 24)

**FSD NO. 116 OF 2025 (JAJ)**

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**IN THE MATTER OF SECTION 131 OF THE COMPANIES ACT (2025 REVISION)**
**AND IN THE MATTER OF CHARITABLE DAF HOLDCO, LTD**

**BEFORE THE HONOURABLE JUSTICE JALIL ASIF KC**
**IN CHAMBERS**

**6 MAY 2025**

## SUPERVISION ORDER

**UPON** the petition filed on 2 May 2025 by (1) the Highland Dallas Foundation, Inc., (2) the Highland Kansas City Foundation, Inc., (3) the Highland Santa Barbara Foundation, Inc., and (4) the HCMLP Charitable Fund for an order that the voluntary liquidation of Charitable DAF HoldCo, Ltd continue under the supervision of the Court pursuant to s.131 Companies Act (2025 Revision)

**AND UPON** hearing counsel for the Petitioners and counsel for DFW Charitable Foundation

**AND UPON** reading the petition herein, the affidavit of Julie Diaz and exhibit JD-2 sworn on 29 April 2025 and the affirmation of Rhiannon Zanetic and exhibit RMZ-1 signed (but not affirmed) on 29 April 2025

**AND UPON** reading the following documents filed in Cause FSD 2025-0099 (JAJ): the winding up petition filed on 10 April 2025, the first affidavit of Julie Diaz and exhibit JD-1 sworn on 10 April 2025, the affidavit of James Dondero and exhibit JDD-1 sworn on 9 April 2025 and the affidavit of Geoffrey Sykes and exhibit GS-1 sworn on 27 April 2025

**AND UPON** reading the affidavit of Margot Macinnis and exhibit MM-1 sworn on 28 April 2025 and the affidavit of Sandipan Bhowmik and exhibit SB-1 sworn on 28 April 2025 providing their consents to act as official liquidators of Charitable DAF HoldCo, Ltd

**IT IS HEREBY ORDERED that:**

1. The voluntary liquidation of Charitable DAF HoldCo, Ltd ("the Company") be continued under the supervision of the Court pursuant to s.131 of the Act and O.15, r.8 of the Companies Winding Up Rules (2023 Consolidation).

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

2. The following persons are appointed as joint official liquidators of the Company:

| Name | Address | Contact Details |
|---|---|---|
| Margot MacInnis | Grant Thornton Specialist Services (Cayman) Limited, 2nd Floor, Century Yard, Cricket Square, Grand Cayman, KY1-1102, Cayman Islands | +1 345 949 8588<br>margot.macinnis@uk.gt.com |
| Sandipan Bhowmik | | +1 345 949 8588<br>sandipan.bhowmik@uk.gt.com |

3. The joint official liquidators may act jointly and severally.

4. The joint official liquidators are not required to give security for their appointment.

5. The joint official liquidators are authorised to exercise the following powers in Part I of Third Schedule 3 to the Companies Act, without requiring further sanction by the Court:

   a) the power to commence legal proceedings in the name and on behalf of the Company to obtain the provision of information and/or documents and/or the examination of individuals in the Cayman Islands or the United States; and

   b) the power to apply in the Cayman Islands or the United States for the preservation, freezing or attachment of assets to which the Company is or may arguably be entitled.

6. The joint official liquidators are in addition authorised to exercise the following powers and to take the following steps without further sanction by the Court:

   a) the power to present a petition for the winding up of Charitable DAF Fund, LP (the Fund) if so advised;

   b) the power to file a summons and to apply for an order appointing provisional liquidators of the Fund if so advised; and

   c) the power to seek registration or recognition of themselves and/or the Official Liquidation in any State in the United States for any purpose connected with the exercise of the powers specified in paragraphs 5(a) or 5(b) of this Order.

7. The Court dispenses with the requirement for the summons herein and the hearing of the summons to be advertised pursuant to CWR O.15.

8. The joint official liquidators' reasonable remuneration and expenses be paid out of the assets of the Company in accordance with s.109 of the Act, Part III of the Insolvency Practitioners Regulations and CWR O.20.

9. The joint voluntary liquidators shall prepare a final report and accounts for the period from the commencement of the voluntary liquidation until the date of this Order and shall deliver such report to the joint official liquidators within 28 days of this Order.

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

10. The costs of this summons shall be paid out of the assets of the Company as an expense in the liquidation, such costs to be taxed on the indemnity basis if not agreed with the joint official liquidators.

**Dated 6 May 2025**

Filed 6 May 2025

________________________________________

**THE HONOURABLE JUSTICE JALIL ASIF KC**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

Commercial in Confidence

**CWR Form No. 24**

**Proof of Debt (standard form) (O.16, r.2)**

**THE COMPANIES ACT**

**PROOF OF DEBT**

**Charitable DAF HoldCo, Ltd (In Official Liquidation)**
**Registration No: 263805**
**Date of liquidation: 6 May 2025**
**FSD CAUSE NO: 2025-116 (JAJ)**

| | | |
|---|---|---|
| 1 | Creditor's Name | |
| 2 | Creditor's Address<br><br>and relevant contact details | |
| 3 | Amount of claim | |
| | Principal | |
| | Interest (if any) | |
| | Total | |
| 4 | Summarise the basis upon which the claim arises | |
| 5 | List of supporting documentation (copies of which must be attached) | |

| | | |
|---|---|---|
| 6 | Summarise basis for interest claim, if any | |
| 7 | Interest calculation | |
| 8 | Particulars of any security held including a list of the relevant documentation | |
| 9 | Value of the security and date of valuation | |

Where necessary, please use supplementary attachments to respond in detail.

Dated: ______________

________________________________
Creditor's signature

________________________________
Name of authorised signatory

________________________________
Title

Contact Details:

Address…………………………………………………………………………………..
…………………………………………………………………………………………..

Telephone/Fax #.............................................................................................

Email address ………………………………………………………………………..

**EXHIBIT 97**

Grant Thornton

Our Ref: 20250512 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Shawn Raver
2620 White Rock Rd.
Dallas
TX 75214

Via email to: sraver@hotmail.com & sraver@charitabledaf.com

12 May 2025

Dear Mr. Raver,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

We write to advise that the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

We also write to advise that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (together the "**Petitioners**"), in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited ("**GTSS**"), be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the sealed order confirming their appointment is attached for your records.

In accordance with the Cayman Islands Companies Act (As Revised) (the "**Act**") and the powers conferred on the JOLs as per the sealed order, the JOLs act in the name and on behalf of the Company. As such, with effect from the date of our appointment, the JOLs are empowered to take control of the Company's assets and investigate its affairs. Although you may be aware, our responsibilities as JOLs require that we advise you that you can no longer act on instructions from the directors of the Company as their powers ceased upon our appointment.

**Delivery of Books & Records**

We understand that you were engaged by the Company as its Chief Operating Officer and Assistant General Counsel effective 1 January 2023. Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you:

1. Arrange for any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency;

2. To the extent that such books and records are not in your possession and / or custody, please inform us of the location of these books and records;

3. The details of any retainer or funds held on behalf of the Company; and

4. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter. Non-receipt of a claim from you by the aforesaid date will be taken to mean you have no claim against the Company.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of the Company

Margot MacInnis
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Supervisory Court Order – 2025-116 (JAJ)
-Proof of Debt – CWR 24

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | ) | |

**STIPULATION CONCERNING THE DUGABOY INVESTMENT TRUST'S AGENT FOR CERTAIN PURPOSES**

This stipulation (the "Stipulation") is made and entered into by and between Highland Capital Management, L.P. ("HCMLP"), the reorganized debtor in the above-referenced

[1] Highland's last four digits of its taxpayer identification number are (8357). The service address for Highland is 6333 E. Mockingbird Ln., Ste 147 #5045, Dallas, TX 75214.

bankruptcy case, and the Highland Claimant Trust (the "Claimant Trust," and together with HCMLP, "Highland"), on the one hand, and The Dugaboy Investment Trust ("Dugaboy", and together with Highland, the "Parties"), on the other hand, by and through their respective undersigned counsel.

**RECITALS**

**WHEREAS**, since in or around 2015, Nancy Dondero ("Nancy") has served as the sole Trustee of Dugaboy;

**WHEREAS**, in her capacity as Dugaboy's Trustee, Nancy represents that, as of the commencement of each Relevant Litigation (as that term is defined below) and Dugaboy's Motion to Vacate, she appointed her brother, James Dondero ("Dondero"), to serve as Dugaboy's agent (the "Agent") for all purposes with respect to the prosecution of claims, defenses, objections, and all other matters concerning or relating to the Relevant Litigation and Dugaboy's Motion to Vacate;

**WHEREAS**, on April 16, 2025, a *Winding Up Petition* was filed in the Grand Court of the Cayman Islands, Financial Services Division, Cause No. FSD 201 of 2025 (all litigation and matters arising out of, emanating from, or relating to such Winding Up Petition, the "Winding Up Petition") in which they sought, among other things, (a) an order that Charitable DAF Holdco, Ltd. ("DAF Holdco") be wound up pursuant to the laws of the Cayman Islands, and (b) the appointment of Margot MacInnis and Sandipan Bhowmik to serve as the joint official liquidators of DAF Holdco (together, the "JOLs");

**WHEREAS**, on May 2, 2025, a *Petition for Court Supervision of a Voluntary Liquidation* was filed in the Cayman Proceeding (all litigation and matters arising out of, emanating from, or

relating to such Petition, the "Liquidation Proceeding," and together with the Winding Up Petition, the "Cayman Proceeding");

**WHEREAS**, on May 19, 2025, Highland filed a *Motion for Entry of an Order Pursuant to Bankruptcy Court Rule 9019 and 11 U.S.C. §363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216] (all litigation and matters arising out of, emanating from, or relating to such motion, the "9019 Motion");

**WHEREAS**, on June 30, 2025, the Bankruptcy Court entered an order granting the 9019 Motion [Docket No. 4297] (the "HMIT Settlement Order");

**WHEREAS**, on July 1, 2025, an *Original Petition, Application for Temporary Restraining Order and Temporary Injunction, and Emergency Request for Appointment of Receiver* was filed in the Texas Business Court, Case No. 25-BC01B—0027 (all litigation and matters arising out of, emanating from, or relating to such *Original Petition*, the "Texas Business Litigation");

**WHEREAS**, on July 17, 2025, Dugaboy filed a *Motion to Stay 9019 Order* [Docket No. 4326] (all litigation and matters arising out of, emanating from, or relating to such , the "Motion to Stay") in which Dugaboy sought a 90-day stay of the HMIT Settlement Order;

**WHEREAS**, on July 21, 2025, a *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 3] in case no. 25-11376-BLS was filed in the United States Bankruptcy Court for the District of Delaware (the "Recognition Proceeding," and together with the Cayman Proceeding, the 9019 Motion, the Texas Business Litigation and the Motion to Stay, the "Relevant Litigation");

**WHEREAS**, on February 9, 2026, Dugaboy filed a *Memorandum of Law in Support of The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* [Docket No.

4513] ("Dugaboy's Motion to Vacate") in which Dugaboy seeks to set aside and/or vacate the HMIT Settlement Order;

**WHEREAS**, Highland sought to depose Nancy in her capacity as Dugaboy's Trustee in connection with Dugaboy's Motion to Vacate and/or call her to testify during the hearing to be held on May 11, 2026 in connection with such motion (the "Hearing");

**WHEREAS**, the parties have conferred and agreed to enter into this Stipulation in lieu of having Nancy testify in connection with Dugaboy's Motion to Vacate and as part of a broader agreement by which both sides reduced the number of depositions taken in this matter;

**NOW, THEREFORE**, it is hereby jointly stipulated and agreed as follows:

1. The Dugaboy Investment Trust agrees and acknowledges as follows: Dugaboy previously designated Mr. Dondero as agent on Dugaboy's behalf for all purposes relating to the Relevant Litigation and Dugaboy's Motion to Vacate.

2. In reliance on the foregoing, Highland agrees not to call Nancy to testify at deposition or trial in connection with Dugaboy's Motion to Vacate.

3. The Parties agree that Highland may offer this Stipulation into evidence without objection during the hearing on Dugaboy's Motion to Vacate scheduled for May 11, 2026.

4. This Stipulation may be executed in counterparts. A facsimile, electronic copy, or photocopy of this Stipulation and the signatures hereto shall have the same effect and may be accepted with the same authority as if it were an original.

5. The Parties agree that the Bankruptcy Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Stipulation and any order related thereto.

**SO STIPULATED AND AGREED:**

Dated: May 10, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**-and-**

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

**KING & SPALDING LLP**

/s/ Michael Gaddis
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Attorneys for The Dugaboy Investment Trust

**THE DUGABOY INVESTMENT TRUST**

/s/ [INSERT]
Nancy Dondero, Trustee