**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P. § § Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§

vs. §

3:26-CV-02496-D

**Highland Capital Management, L.P., et al**-Appellee §

§

**[4689] Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026**

**APPELLANT RECORD**

**VOLUME 27**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02496-D<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ALTER OR AMEND AND FOR RECONSIDERATION OF ORDER DENYING MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4698] on July 24, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689] now files this *Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the Court's June 15, 2026 Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate?

2. Did the Bankruptcy Court err in finding Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate ("Dugaboy's Motion") [Docket No. 4684] was "without merit?"

3. Did the Bankruptcy Court err in denying Dugaboy's Motion without a full record, including that Dugaboy was not allowed to file a reply brief and was not granted a hearing?

4. Did the Bankruptcy Court err in denying Dugaboy the opportunity to file a reply brief to Highland's Opposition to Dugaboy's Motion, including that Dugaboy indicated a date certain for filing a reply?

5. Did the Bankruptcy Court err in finding Dugaboy's Motion was "without merit" without granting a hearing?

6. Did the Bankruptcy Court err by summarily denying Dugaboy's Motion without explaining its reasoning for the denial?

7. Did the Bankruptcy Court err in failing to consider Dugaboy's Notice of Intervening Event?

8. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(2) when it determined that it had not manifestly erred in deciding the evidence of Mark Patrick's misconduct contained in the Cayman Islands proceeding was not "newly discovered" even though that information was not contained in James Dondero's affidavit executed April 16, 2025?

9. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant

to Rule 60(b)(2) when it determined it had not manifestly erred in deciding the Dondero Affidavit indicated information gained in the Cayman Islands proceedings was not "newly discovered" despite the fact the Affidavit lacked any evidence of the restructuring discovered in the Cayman Islands proceedings?

10. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding on the grounds that Rule 60(b)(3) purportedly requires fraud or misconduct to have occurred in the judicial proceeding itself?

11. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding that Highland did not provide misleading or incomplete answers during the discovery of Mark Patrick's misconduct and resulting lack of authority to negotiate the Rule 9019 settlement agreement from Dugaboy leading to the Rule 9019 Order?

12. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding that Dugaboy had not presented a basis for relief under Rule 60(b)(6) that was separate from the grounds presented for Rule 60(b)(2) and Rule 60(b)(3)?

13. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding on the grounds that undoing the Rule 9019 Settlement Order would not restore the original structure of the DAF or Hunter Mountain?

14. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of the Bankruptcy Court's special responsibility to monitor arrangements and settlements made between Highland's appointed managers and third parties?

15. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of its manifest error in failing to consider the Bankruptcy Court's role as a court of equity and responsibility to prevent misconduct before it, such as Mark Patrick's use of stolen assets in the 9019 Settlement?

16. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

**DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**

Vol. 1 000001 – 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4698] filed by Appellant;

000010 2. The Bankruptcy Court's July 10, 2026 *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000012 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

Vol. 2 000648 thru Vol. 3

Vol. 4 001843

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 02/09/2026 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| 02/13/2026 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513. Entered on 2/13/2026 (Okafor, M.) |
| | | |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 4 001845 thru Vol 6 | 02/27/2026 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol 7 003634 | 02/27/2026 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 003647 | 03/02/2026 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 003650 & 003651 | 03/02/2026 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 003652 | 03/02/2026 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 003663 | 03/03/2026 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 003667 | 03/04/2026 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 003670 | 04/01/2026 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 7 003709 | 04/01/2026 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 004733 | 04/03/2026 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| Vol. 8 004790 | 04/03/2026 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| Vol 9 005207 | 04/03/2026 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 005209 | 04/06/2026 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 005217 | 04/06/2026 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| vol 9 | | Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026 005222 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026 005225 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026 005227 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026 005229 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026 005233 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol 9 | | Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| 04/17/2026 005330 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| Vol 10 04/21/2026 005590 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/22/2026 005594 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/22/2026 005615 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 04/22/2026 005682 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 10 | | | Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| 005692 | 04/22/2026 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 005705 | 04/24/2026 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 005726 | 04/24/2026 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 005727 | 04/25/2026 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005729 | 04/27/2026 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 005737 | 04/28/2026 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |

| Vol. II | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| 005746 | 04/28/2026 | 4569 | (9 pgs; 3 docs) Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 005755 | 04/28/2026 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005761 | 04/28/2026 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005767 | 04/29/2026 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 005776 | 04/29/2026 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 005783 | 04/29/2026 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |

| Vol. 10 | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| 005785 | 04/29/2026 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005787 | 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 005794 | 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 005796 | 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 005798 | 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 005801 | 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 005884 | 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 005902 | 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 005905 | 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 005907 | 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 11 | | | Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005913 | 05/06/2026 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005920 | 05/06/2026 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005927 | 05/06/2026 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 005929 | 05/07/2026 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005936 | 05/08/2026 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 005939 | 05/08/2026 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 005942 | 05/08/2026 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 005945 | 05/08/2026 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol. 12 006100 Thru Vol 21 | 05/08/2026 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and* |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| 10).22 008156 05/08/2026 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 008172 05/08/2026 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 008188 05/09/2026 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 22 008256 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008293 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008429 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008465 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008472 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008916 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| vol 25 009554 | 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| vol. 26 009868 | 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| vol 27 010229 | 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| vol. 28 010538 | 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 28 | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| 010664 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010736 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol 30 011150 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol 31 011734 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol 32 013203 Thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014888 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol 35 05/11/2026 015349 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 05/11/2026 015505 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 05/12/2026 015506 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 05/12/2026 015538 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 05/12/2026 015565 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 05/15/2026 015566 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36 05/18/2026 015569 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| Vol 37 05/18/2026 015996 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 05/19/2026 016008 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 05/20/2026 016079 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 05/20/2026 016082 – 016084 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 05/21/2026 016085 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 05/21/2026 016134 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 37 | | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| 016135 | 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016233 | 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016490 | 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s)4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016504 | 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| Vol. 39 016505 | 06/29/2026 | 4684 | (162 pgs; 2 docs) Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Appendix) (Edney, Michael) |
| 016667 | 06/29/2026 | 4685 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s)4679 Order on motion to reconsider). Appellant Designation due by 07/13/2026. (Attachments: # 1 Exhibit)(Edney, Michael) |
| 016674 | 07/06/2026 | 4687 | (32 pgs; 2 docs) Response opposed to (related document(s): 4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 016706 | 07/09/2026 | 4688 | (23 pgs; 2 docs) Notice of Intent to Reply and Request for Hearing on Its Motion to Alter or Amend the Court's June 15, 2026 Order and Notice of Intervening Event filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | (Attachments: # 1 Appendix)). (Attachments: # 1 Attachment A) (Edney, Michael) |
| 07/10/2026 | 4689 | (2 pgs) Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026. (Okafor, M.) Modified text on 7/10/2026 (mdo). |
| 07/13/2026 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |
| 07/24/2026 | 4698 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)(Edney, Michael) |
| 07/28/2026 | 4704 | (5 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02496-E. (RE: related document(s)4698 Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court;

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J"); and

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No.

4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Case 19-34054-sgj11 Doc 4707 Filed 08/07/26 Entered 08/07/26 19:37:31 Desc
Main Document Page 22 of 23

Dated: August 7, 2026

Respectfully submitted,

*/s/ Michael J. Edney*
Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* forthcoming)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |

**THE DUGABOY INVESTMENT TRUST'S THIRD AMENDED**
**<u>EXHIBIT LIST FOR THE MAY 11, 2026 HEARING</u>**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Exhibit List for the May 11, 2026 Hearing in the Bankruptcy Case.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | HCM-D10000002-HCM-D10000013 |
| 2 | Settlement Agreement and General Release | 000813-000836 |
| 3 | 6/4/2024 First Affidavit of Mark Patrick | Dkt. 401-2 (21-03076-sgj) |
| 4 | 7/21/2025 [4-33] Original DAF Org Chart | Dkt. 4-33 (25-11376-BLS) |
| 5 | 7/11/2011 Amended and Restated Exempted Limited Partnership Agreement of Charitable DAF Fund, LP | Dkt. 4-36 (25-11376-BLS) |
| 6 | 2/20/2025 Amended and Restated Memorandum and Articles of Association of Charitable DAF HoldCo, Ltd. | Dkt. 4-06 (25-11376-BLS) |
| 7 | 11/9/2023 Shields Work Plan Memorandum | |
| 8 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 9 | 12/12/2024 Certificate of Formation of CDFMCAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 10 | 12/18/2024 Charitable DAF HoldCo, Ltd. Unanimous Written Resolutions of all of the Directors of the Company | Dkt. 4-45 (25-11376-BLS) |
| 11 | 9/30/2024 Valuation Analysis of 100 Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 12 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 13 | 3/27/2025 CDMCFAD, LLC Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 14 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D100000330 |
| 15 | 2/12/2025 Membership Interest Purchase Agreement | HCM-D10000021-HCM-D10000036 |
| 16 | 2/12/2025 Member Consent of Beacon Mountain | HCM-D10000019-HCM-D10000020 |
| 17 | 11/30/2015 Amended and Restated Limited Partnership Agreement of Atlas IDF, LP | |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 18 | 6/26/2025 Audit of RAND PE Fund I, LP | HMIT_Entities_000022-HMIT_Entities_000039 |
| 19 | 3/6/2024 DAF Structure Chart in 2024 and 2025 | |
| 20 | 12/17/2015 Beacon Mountain / HMIT Trust Agreement | |
| 21 | 12/2015-8/2022 Rand Structure Chart | |
| 22 | 2/12/2025 Feb. and May 2025 Rand Structure Chart | |
| 23 | 10/15/2019 Empower Dallas Foundation, Inc. Partial Surrender Request | |
| 24 | 2/22/2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | Dkt. 1943 (19-34054-sgj11) |
| 25 | 4/8/2025 Email regarding Settlement Agreement | HCMLPHMIT00000656-HCMLPHMIT00000661 |
| 26 | 12/16/2015 Crown Global Deferred Variable Annuity Policy for Empower Dallas Foundation, Inc. | |
| 27 | 11/30/2015 Participation Agreement between Crown Global Life Insurance Ltd. and Other Entities | |
| 28 | 9/12/2025 First Affidavit of Mark Eric Patrick | |
| 29 | 10/21/2025 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 9/30/2025 | Dkt. 4438 (19-34054-sgj11) |
| 30 | 10/21/2025 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 9/30/2025 | Dkt. 4439 (19-34054-sgj11) |
| 31 | 1/21/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 12/31/2025 | Dkt. 4503 (19-34054-sgj11) |
| 32 | 1/21/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 12/31/2025 | Dkt. 4504 (19-34054-sgj11) |
| 33 | 4/20/2026 Post-Confirmation Report Reorganized Debtor – Quarter Ending Date 3/31/2026 | Dkt. 4552 (19-34054-sgj11) |
| 34 | 4/20/2026 Post-Confirmation Report for Highland Claimant Trust – Quarter Ending 3/31/2026 | Dkt. 4553 (19-34054-sgj11) |
| 35 | 6/25/2025 Hearing Transcript for Case No. 19-34054-sgj-11 | |
| 36 | 4/16/2025 Affidavit of James David Dondero | Dkt. 4534-7 (19-34054-sgj11) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 37 | 6/9/2025 Preliminary Objection of the Dugaboy Investment Trust to the Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 USC § 363 Approving Settlement with the HMIT Entities | Dkt. 4230 (19-34054-sgj11) |
| 38 | HMIT Structure as of 8/12/2022 – 2/12/2025 | |
| 39 | 2/6/2025 Letter to Dolomiti LLC re Notice of Your Withdrawal from Rand PE Fund I, L.P. | |
| 40 | 2024 Tax Form 990 – Highland Dallas Foundation Inc. | Dkt. 4556-2 (19-34054-sgj11) |
| 41 | 3/27/2025 Admission and Amendment to No. 1 Agreement | Dkt. 4-54 (25-11376-BLS) |
| 42 | 12/12/2024 Certificate of Formation of CDMCFAD, LLC | Dkt. 4-48 (25-11376-BLS) |
| 43 | 2/7/2015 Unanimous Written Resolutions of the Board of Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-22 (25-11376-BLS) |
| 44 | 12/18/2024 Unanimous Written Resolutions of all of the Directors of the Company passed on 18 December 2024 in accordance with the Articles of Association of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-45 (25-11376-BLS) |
| 45 | 4/2/2025 Written Resolutions of the Directors of the Company for Charitable DAF HoldCo, Ltd. | Dkt. 4-47 (25-11376-BLS) |
| 46 | 12/9/2024 Certificate of Incorporation of DFW Charitable Foundation | Dkt. 4-50 (25-11376-BLS) |
| 47 | 7/21/2025 Defendants' Motion to Dismiss and Plea to the Jurisdiction filed in Cause No. 25-BC-01B-0027, The Highland Foundation, Inc. et al. v. Mark Patrick, et al., The Business Court of Texas, First Division | Dkt. 4-91 (25-11376-BLS) |
| 48 | 3/27/2025 Redemption and Amendment No. 2 Agreement | Dkt. 4-55 (25-11376-BLS) |
| 49 | 3/25/2025 Valuation Analysis of Certain Participation Shares of Charitable DAF HoldCo, Ltd. | Dkt. 4-51 (25-11376-BLS) |
| 50 | 9/30/2024 Valuation Analysis of 100 Participation Shars of Charitable DAF HoldCo, Ltd. | Dkt. 4-52 (25-11376-BLS) |
| 51 | 3/7/2024 Written Consent of the Managing Member of Charitable DAF GP, LLC | Dkt. 4-38 (25-11376-BLS) |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 52 | 6/9/2025 Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000001-HCM-D10000001 |
| 53 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) on December 17, 2015 | HCM-D10000002-HCM-D10000013 |
| 54 | Email chain regarding the sale of Class C limited partnership interests from Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Mark Patrick | HCM-D10000014-HCM-D10000015 |
| 55 | Email from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer. | HCM-D10000016-HCM-D10000016 |
| 56 | Email chain from Highland Capital Management requests corporate formation documents for Charitable DAF Holdings Corp. from Wolters Kluwer | HCM-D10000017-HCM-D10000018 |
| 57 | CLO Holdco, LLC's purchase of all membership interests in Beacon Mountain, LLC from Rand PE Fund I, L.P. | HCM-D10000019-HCM-D10000020 |
| 58 | Membership Interest Purchase Agreement - | HCM-D10000021-HCM-D10000036 |
| 59 | Organizational structure of HMIT entities before and after February 12, 2025. | HCM-D10000037-HCM-D10000038 |
| 60 | Investment Management Agreement -establishes Rand Advisors, LLC as the investment manager for Atlas IDF, LP. | HCM-D10000039-HCM-D10000045 |
| 61 | Investment Management Agreement - establishes Rand Advisors, LLC as the investment manager for Rand PE Fund I, L.P. | HCM-D10000046-HCM-D10000052 |
| 62 | Register of Members for CLO Holdco, Ltd. | HCM-D10000053-HCM-D10000055 |
| 63 | Unanimous Written Consent - executed by Mark Patrick as sole director of Rand Advisors Holding Corp. | HCM-D10000056-HCM-D10000069 |
| 64 | Charitable DAF Fund, LP transferred DAF Holdings stock to CLO HoldCo, Ltd | HCM-D10000070-HCM-D10000072 |
| 65 | Register of Members for Liberty CLO Holdco, Ltd. CLO Holdco, Ltd. | HCM-D10000073-HCM-D10000073 |
| 66 | Limited Liability Company Agreement - establishing Liberty CLO Holdco, LLC as a Delaware limited liability company. | HCM-D10000074-HCM-D10000090 |
| 67 | Register for CDH GP, Ltd. | HCM-D10000091-HCM-D10000091 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 68 | Register of Members for CDH GP, Ltd. | HCM-D10000092- HCM-D10000092 |
| 69 | Register for CLO HoldCo, Ltd. | HCM-D10000093- HCM-D10000094 |
| 70 | Register of General Partners for Charitable DAF Fund, LP. | HCM-D10000095- HCM-D10000095 |
| 71 | Register of Limited Partners for Charitable DAF Fund, LP | HCM-D10000096- HCM-D10000096 |
| 72 | Limited Liability Company Agreement for CDMCFAD, LLC. | HCM-D10000097- HCM-D10000124 |
| 73 | Collation of various documents including resolutions from CDMCFAD, LLC, and a March 2025 letter from Seyfarth Shaw LLP to the IRS reporting potential tax violations by Highland Dallas Foundation, Inc. (Jim Dondero). | HCM-D10000125- HCM-D10000251 |
| 74 | Letter from three Highland foundations to Paul Murphy | HCM-D10000264- HCM-D10000265 |
| 75 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000266- HCM-D10000267 |
| 76 | Email exchange concerning a $500,000 wire transfer payment made pursuant to a settlement agreement. David Klos, representing Highland Capital Management, sent the payment reference to Hunter Mountain. | HCM-D10000268- HCM-D10000269 |
| 77 | Email chain between K. Hendrix and J. Seery, et al. | HCM-D10000270- HCM-D10000271 |
| 78 | Email chain James Seery to Mark Patrick and Shawn Raver | HCM-D10000272- HCM-D10000272 |
| 79 | Email chain from Shawn Raver to J. Seery, et al. | HCM-D10000273- HCM-D10000273 |
| 80 | Email chain from M. Tax to S. Raver, et al. | HCM-D10000274- HCM-D10000274 |
| 81 | Email chain from K. Hendrix to S. Raver, et al. | HCM-D10000275- HCM-D10000276 |
| 82 | Email chain from S. Raver to K. Hendrix, et al. | HCM-D10000277- HCM-D10000278 |
| 83 | Email chain from S. Raver to M. Tax, et al. | HCM-D10000279- HCM-D10000280 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 84 | Note Elevation and Assignment Agreement | HCM-D10000281-HCM-D10000301 |
| 85 | Email from A. Hurt to T. Cournoyer, et al. | HCM-D10000302-HCM-D10000303 |
| 86 | Letter to Dugaboy Investment Trust | HCM-D10000304-HCM-D10000308 |
| 87 | Claims Assignment Agreement | HCM-D10000309-HCM-D10000315 |
| 88 | Email from David Klos at Highland Capital Management to James Seery | HCM-D10000316-HCM-D10000316 |
| 89 | Trust Agreement establishes the Hunter Mountain Investment Trust on December 17, 2015 | HCM-D10000317-HCM-D10000328 |
| 90 | Email from David Klos of Highland Capital Management to Jim Seery | HCM-D10000329-HCM-D10000329 |
| 91 | 8/12/2022 HMIT Appointment of Successor Administrator | HCM-D10000330-HCM-D10000330 |
| 92 | Email from K. Hendrix to A. Gunther, et al. | HCM-D10000331-HCM-D10000332 |
| 93 | Email from K. Hendrix to D. Klos, et al. | HCM-D10000333-HCM-D10000334 |
| 94 | Letter from Campbells LLP to James Seery (CEO of Highland Capital Management, L.P.) and Marc Kirschner | HCM-D10000335-HCM-D10000338 |
| 95 | Email chain from A. Kapuria to S. Raver, et al. | HMIT_Entities_000001-HMIT_Entities_000006 |
| 96 | Email chain from K. Jackson to S. Raver, et al. | HMIT_Entities_000007-HMIT_Entities_000010 |
| 97 | Email chain from S. Reynolds to S. Raver, et al. | HMIT_Entities_000011-HMIT_Entities_000015 |
| 98 | Email from Chris Rice to K. Jackson, et al. | HMIT_Entities_000016-HMIT_Entities_000020 |
| 99 | Email from Chris Rice to S. Raver, et al. | HMIT Entities 000021-HMIT Entities 000021 |
| 100 | Audited financial statements for Rand PE Fund I, L.P. | HMIT_Entities_000022-HMIT_Entities_000039 |
| 101 | Email chain from K. Jackson to S. Raver | HMIT_Entities_000040-HMIT_Entities_000043 |
| 102 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000044-HMIT_Entities_000047 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 103 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities_000048- HMIT Entities 000051 |
| 104 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000052- HMIT_Entities_000054 |
| 105 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000055- HMIT Entities 000057 |
| 106 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000058- HMIT Entities 000058 |
| 107 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT Entities 000059- HMIT Entities 000059 |
| 108 | Email chain between Crown Global Insurance and Rand Advisors. | HMIT_Entities_000060- HMIT_Entities_000060 |
| 109 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000061- HMIT Entities 000061 |
| 110 | Email chain between Crown Global Insurance and Rand Advisors | HMIT Entities 000062- HMIT Entities 000063 |
| 111 | Email chain between Crown Global Insurance and Rand Advisors | HMIT_Entities_000064- HMIT_Entities_000065 |
| 112 | Email from Robert Kipp to M. Patrick, et al. | HMIT Entities 000066- HMIT Entities 000066 |
| 113 | Email chain from A. Gunther to S. Raver, et al. | HMIT Entities 000067- HMIT Entities 000070 |
| 114 | Email chain from S. Raver to A. Gunther, et al. | HMIT_Entities_000071- HMIT_Entities_000074 |
| 115 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000075- HMIT_Entities_000076 |
| 116 | Email chain from S. Raver to J. Seery, et al. | HMIT Entities 000077- HMIT Entities 000078 |
| 117 | Email from C. Rice to S. Raver, et al. | HMIT Entities_000079- HMIT Entities_000079 |
| 118 | Bloomberg invoice | HMIT Entities 000080- HMIT Entities 000080 |
| 119 | Email thread with S&P Global | HMIT_Entities_000081- HMIT_Entities_000083 |
| 120 | S&P Global invoice | HMIT Entities_000084- HMIT Entities_000084 |
| 121 | Email exchange between auditors Chris Rice (NexPoint Services) and Patrick Casale (Cohen & Co) | HMIT Entities_000085- HMIT Entities_000086 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 122 | Financial statement audit | HMIT_Entities_000087-HMIT_Entities_000103 |
| 123 | Email chain C. Rice to S. Raver | HMIT_Entities_000104-HMIT_Entities_000114 |
| 124 | Email chain from S. Raver to C. Rice | HMIT_Entities_000115-HMIT_Entities_000124 |
| 125 | Email from K. Longwell to M. Tax, et al. | HMIT Entities_000125-HMIT Entities_000125 |
| 126 | Civil Investigative Demand issued by the Texas Attorney General's Office to Hunter Mountain Investment Trust (HMIT) on July 14, 2025 | HMIT_Entities_000126-HMIT_Entities_000133 |
| 127 | Email from K. Longwell to M. Tax, et al. | HMIT Entities 000134-HMIT Entities 000134 |
| 128 | Dkt. 23, Notice of Hearing dated 8/27/2025 | HMIT_Entities_000135-HMIT_Entities_000254 |
| 129 | Email chain from S. Raver to K. Hendrix, et al. | HMIT_Entities_000260-HMIT_Entities_000261 |
| 130 | Email chain from D. Klos to K. Hendrix, et al. | HMIT_Entities_000262-HMIT_Entities_000263 |
| 131 | Email chain from M. Tax to J. Seery, et al. | HMIT_Entities_000264-HMIT_Entities_000264 |
| 132 | Email chain from K. Hendrix to S. Raver, et al. | HMIT_Entities_000265-HMIT_Entities_000266 |
| 133 | Email chain from K. Hendrix to A. Gunther, et al. | HMIT_Entities_000267-HMIT_Entities_000268 |
| 134 | DAF entity structure | VALUESCOPE 000001-VALUESCOPE 000001 |
| 135 | DAF/Rand entity structure | VALUESCOPE_000002-VALUESCOPE_000002 |
| 136 | Law firm forwards legal filing to Mark Patrick (DAF HoldCo) re Chapter 15 filing | VALUESCOPE_000003-VALUESCOPE_000007 |
| 137 | Chapter 15 Petition filing | VALUESCOPE_000008-VALUESCOPE_000026 |
| 138 | Charitable DAF Org structure | VALUESCOPE_000027-VALUESCOPE_000027 |
| 139 | Letter from Reed Smith LLP | VALUESCOPE_000028-VALUESCOPE_000029 |
| 140 | ValueScope, LLC Response | VALUESCOPE_000030-VALUESCOPE_000030 |
| 141 | Certificate of Incorporation, Charitable DAF HoldCo, Ltd. | TDIT004698 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 142 | Legal Relationship Agreement, Highland Kansas City Foundation | TDIT003396–TDIT003398 |
| 143 | Supporting Organization Operating Agreement - Highland Dallas Foundation, Inc. | TDIT003399–TDIT003406 |
| 144 | Supporting Organization Operating Agreement - Highland Santa Barbara Foundation, Inc. | TDIT003407–TDIT003413 |
| 145 | Letter - Highland Dallas Foundation, Inc. | TDIT003389–TDIT003390 |
| 146 | Letter - Highland Santa Barbara Foundation, Inc. | TDIT003391–TDIT003393 |
| 147 | Letter - Highland Kansas City Foundation, Inc. | TDIT003394–TDIT003395 |
| 148 | Employment Agreement - Mark Patrick | TDIT003971–TDIT003988 |
| 149 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011256–TDIT011268 |
| 150 | Memo - Harneys (H&B) | TDIT004274–TDIT004278 |
| 151 | Invoice - G.K. Management Limited | TDIT011038–TDIT011039 |
| 152 | Invoice - G.K. Management Limited | TDIT011040 |
| 153 | Invoice - G.K. Management Limited | TDIT011041 |
| 154 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011058–TDIT011062 |
| 155 | Certificate of Incorporation - Highland Kansas City Foundation, Inc. | TDIT003304–TDIT003306 |
| 156 | Certificate of Incorporation - Highland Dallas Foundation, Inc. | TDIT003326–TDIT003328 |
| 157 | Certificate of Incorporation - Highland Santa Barbara Foundation, Inc. | TDIT003344–TDIT003346 |
| 158 | Invoice - G.K. Management Limited | TDIT011042–TDIT011043 |
| 159 | Invoice - G.K. Management Limited | TDIT011044–TDIT011045 |
| 160 | Invoice - G.K. Management Limited | TDIT011046–TDIT011047 |
| 161 | Invoice - G.K. Management Limited | TDIT011048–TDIT011049 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 162 | Invoice - G.K. Management Limited | TDIT011050–TDIT011051 |
| 163 | Invoice - G.K. Management Limited | TDIT011052–TDIT011053 |
| 164 | Invoice - G.K. Management Limited | TDIT011054–TDIT011055 |
| 165 | Expense Reimbursement - G.K. Management Limited | TDIT011056–TDIT011057 |
| 166 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011088–TDIT011092 |
| 167 | Memorandum – Work Plan - Shields Legal Group | TDIT004699–TDIT004706 |
| 168 | Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT011093–TDIT011128 |
| 169 | Email - Shields Legal Group | TDIT003704 |
| 170 | Limited Partnership Agreement - Charitable DAF Fund, LP | TDIT003414–TDIT003431 |
| 171 | ValueScope Report - ValueScope, Inc. | TDIT004017–TDIT004075 |
| 172 | Expense Report - CLO HoldCo, Ltd. | TDIT003432–TDIT003435 |
| 173 | Audited Financial Statements - Highland Santa Barbara Foundation, Inc. | TDIT003989–TDIT004016 |
| 174 | Resolution of the Directors - Mark Patrick | TDIT003961–TDIT003962 |
| 175 | Resolution of the Directors - Mark Patrick | TDIT003963–TDIT003970 |
| 176 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011129–TDIT011136 |
| 177 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011137–TDIT011150 |
| 178 | Letter - Highland Dallas Foundation, Inc. | TDIT003707–TDIT003708 |
| 179 | Email - Paul Murphy | TDIT003709–TDIT003713 |
| 180 | Email - Walkers | TDIT003714–TDIT003719 |
| 181 | Certificate of Incorporation - DFW Charitable Foundation | TDIT003701–TDIT003703 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 182 | Director Services Agreement - Charitable DAF HoldCo, Ltd. | TDIT011151–TDIT011164 |
| 183 | Written Resolution - Charitable DAF HoldCo, Ltd. | TDIT011165–TDIT011170 |
| 184 | Resolution - Charitable DAF HoldCo, Ltd. | TDIT003720–TDIT003726 |
| 185 | Assignment - Charitable DAF HoldCo, Ltd. | TDIT003727–TDIT003732 |
| 186 | Agreement - CDMCFAD, LLC | TDIT003733–TDIT003760 |
| 187 | Email - David N. Corkern | TDIT003791–TDIT003792 |
| 188 | ValueScope Report - ValueScope, LLC | TDIT004076–TDIT004130 |
| 189 | Draft Legal Advice - Walkers | TDIT003761–TDIT003765 |
| 190 | Share Issuance Resolution - Charitable DAF HoldCo, Ltd. | TDIT003766–TDIT003790 |
| 191 | Email - PricewaterhouseCoopers (PwC) | TDIT004305–TDIT004323 |
| 192 | Memorandum and Articles of Association - Charitable DAF HoldCo, Ltd. | TDIT003267–TDIT003303 |
| 193 | Form ADV - Rand Advisors, LLC | TDIT003646–TDIT003674 |
| 194 | Brochure - Rand Advisors, LLC | TDIT003675–TDIT003700 |
| 195 | Email - Mark Patrick | TDIT004324–TDIT004340 |
| 196 | ValueScope Report - ValueScope, LLC | TDIT004131–TDIT004205 |
| 197 | Email - FTI Consulting | TDIT004341–TDIT004358 |
| 198 | Director Services Agreement - CDMCFAD, LLC | TDIT011171–TDIT011185 |
| 199 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003955–TDIT003957 |
| 200 | Resolution of the Directors - Charitable DAF HoldCo, Ltd. | TDIT003958–TDIT003959 |
| 201 | Prospectus - NexPoint Real Estate Strategies Fund | TDIT003463–TDIT003599 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 202 | Proxy Statement - NexPoint Capital, Inc. | TDIT003440–TDIT003462 |
| 203 | Written Resolution - CLO HoldCo, Ltd. | TDIT011196–TDIT011197 |
| 204 | Texas Petition - Highland Dallas Foundation, Inc. | TDIT004443–TDIT004688 |
| 205 | Rule 11 Agreement - Highland Dallas Foundation, Inc. | TDIT004693–TDIT004695 |
| 206 | Exhibit Index to Affidavit - Margot MacInnis | TDIT003261-TDIT004712 |
| 207 | Affidavit - Jim Dondero Dugaboy Investment Trust | TDIT004713-TDIT004778 |
| 208 | Texas Petition (Amended) - Highland Dallas Foundation, Inc. | TDIT006527–TDIT006580 |
| 209 | Liquidator's Certificate - Margot MacInnis (JOL) | TDIT006492 |
| 210 | Form ADV - Mark Patrick, Rand PE Fund | TDIT006581-TDIT006609 |
| 211 | Affidavit & Exhibit Index - Margot MacInnis | TDIT004967-TDIT006484 |
| 212 | Affidavit & Exhibit Index | TDIT006485-TDIT006580 |
| 213 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011394-TDIT011405 |
| 214 | Post-Confirmation Quarterly Report - Highland Capital Management L.P. | TDIT011382-TDIT011393 |
| 215 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011425-TDIT011443 |
| 216 | Objection filed by Highland Dallas Foundation, Inc. Grant James Scott III | TDIT011444-TDIT011475 |
| 217 | Objection filed by James D. Dondero, Dugaboy Investment Trust | TDIT011476-TDIT011509 |
| 218 | Supplemental Declaration - DFW Charitable Foundation CDMCFAD LLC | TDIT004869-TDIT004945 |
| 219 | Trust Agreement establishes Hunter Mountain Investment Trust (HMIT) | TDIT006664-TDIT006675 |
| 220 | Affirmation by Mark Patrick | TDIT010529-TDIT010532 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 221 | Operating agreement between Highland Dallas Foundation, Inc. and The Dallas Foundation. | TDIT011406-TDIT011406 |
| 222 | Email exchange between Michael Stockham and Paul Murphy | TDIT010831-TDIT010840 |
| 223 | Form ADV Instructions - None | TDIT006628-TDIT006663 |
| 224 | Declaration by Caroline Maron | TDIT004846-TDIT004868 |
| 225 | Email from Louis M. Phillips requesting execution of two letters with attached documents | TDIT011318-TDIT011323 |
| 226 | Auditor's Report - Highland Capital Management L.P. | TDIT006610-TDIT006627 |
| 227 | Email chain from March 2025 | TDIT011407-TDIT011424 |
| 228 | Amended and Restated Limited Partnership Agreement - Atlas IDF LP | TDIT004779-TDIT004812 |
| 229 | Participation Agreement establishes the framework for Crown Global Life Insurance Ltd to purchase | TDIT004813-TDIT004845 |
| 230 | Investment Management Agreement - Rand PE Fund I | TDIT004946-TDIT004952 |
| 231 | Investment Management Agreement - Rand PE Fund I, L.P. | TDIT004953-TDIT004959 |
| 232 | Limited Partnership Agreement - Rand PE Fund | TDIT004960-TDIT004966 |
| 233 | By-Laws - Highland Kansas City Foundation, Inc. | TDIT003307–TDIT003325 |
| 234 | By-Laws - Highland Dallas Foundation, Inc. | TDIT003329–TDIT003343 |
| 235 | By-Laws - Highland Santa Barbara Foundation, Inc. | TDIT003347–TDIT003361 |
| 236 | Organizational Procedures - Greater Kansas City Community Foundation | TDIT003362–TDIT003388 |
| 237 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003705 |
| 238 | Structure Chart - Charitable DAF HoldCo, Ltd. | TDIT003706 |
| 239 | Expenses Table - Charitable DAF HoldCo, Ltd. | TDIT003960 |
| 240 | Delaware Division of Corporations Search Results - DFW Charitable Foundation | TDIT004696 |

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 241 | Delaware Division of Corporations Search Results - CDMCFAD, LLC | TDIT004697 |
| 242 | Demonstrative: DAF-Rand Structure Chart | |
| 243 | Certificate of Incorporation of CDH GP, Ltd. | Dkt. 4-95 (25-11376-BLS) |

Dugaboy also reserves the right to introduce any exhibit designated by any other party, to supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

Dated: May 11, 2026

Respectfully submitted,

*/s/ Avery Joseph Welker*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
Sydney Rose
Texas Bar No. 24150011
srose@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney*
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* pending)

New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

**Admitted to the bar of this Court*

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 11, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Avery Joseph Welker*
Avery Joseph Welker

**From:** Karla Jackson [kjackson@crownglobalinsurance.com]
**Sent:** 1/20/2026 7:44:19 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Subject:** RE: 30218, 30219 Atlas -Q4 2025 VALUATIONS

Hello Shawn and Team,

Could you please confirm when can we expect the values as of December 31, 2025?

Kind Regards,
Karla

Karla Jackson
Administrator

Suite 3206A, 2nd Floor, 38 Market Street, P.O. Box 10467
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 F: (345) 945-6121
kjackson@crownglobalinsurance.com

CROWNGLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:19 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice

<CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Circulated at issuance.

Looks like you were not cc'd Suzanne, but a few others at Crown were. Apologies for that error.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1797
crice@nexpointservices.com | www.nexpoint.com

---

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:15 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Ok thanks. Please could you send the 2023 audited report?

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:14 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Audit is still ongoing. I believe we typically issue financials at or around 120 days after year end.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1797
crice@nexpointservices.com | www.nexpoint.com

---

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:02 PM
**To:** Karla Jackson <kjackson@crownglobalinsurance.com>; Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Hello,

Please could you provide the most recent audited Financial Statements for the Atlas Fund?

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration

Suite 3206A, 2nd Floor, 38 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 x4 M: (345) 925-4004 F: (345) 945-6121
sreynolds@crownglobalinsurance.com

CROWNGLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, February 24, 2025 11:09 AM
**To:** 'Chris Rice' <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q1'2025 Fees Request

Dear John & Chris,

Please find the attached withdrawal request to process at your convenience, also can you confirm the confirm the wire date.

Thank you,

Kind Regards,
Karla

**Karla Jackson**
Administrator

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10487,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 F: (345) 945-6121
kjackson@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DISCLAIMER Securities offered through NexPoint Securities, Inc. ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which is subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an offering or solicitation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future results. Investments may lose money and such investment losses are not insured.

**From:** Suzanne Reynolds [sreynolds@crownglobalinsurance.com]
**Sent:** 5/20/2025 3:37:10 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Chris Rice [CRice@nexpointservices.com]; Akshey Kapuria [Akshey.Kapuria@ky.ey.com]
**CC:** Jonathan Rugamba [Jonathan.Rugamba1@ky.ey.com]; Janat Namutebi [Janat.Namutebi@bm.ey.com]; Miyuru M Jinasena [Miyuru.M.Jinasena@ky.ey.com]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49cc9a466c9f2df0a6a38acd23-MPatrick]
**Subject:** RE: 30218, 30219 Atlas - audit queries

Hi Shawn,

The auditors have a query regarding the amounts booked as at 12.31.2024:

| Policy No. | Audited NAV of the Investment fund | Ownership % (as per confirmation response) | EY Re-calculated share | Amount booked by Crown | Variance |
|---|---|---|---|---|---|
| 30218 | 18,825,313 | 81% | 15,256,420 | 24,252,826 | (8,996,406) |
| 30219 | 18,825,313 | 19% | 3,561,844 | 5,573,103 | (2,011,259) |

Do you know what the difference relates to, please?

Thanks
Suzanne

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, May 6, 2025 5:24 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Chris Rice <CRice@nexpointservices.com>; Akshey Kapuria <Akshey.Kapuria@ky.ey.com>
**Cc:** Jonathan Rugamba <Jonathan.Rugamba1@ky.ey.com>; Janat Namutebi <Janat.Namutebi@bm.ey.com>; Miyuru M Jinasena <Miyuru.M.Jinasena@ky.ey.com>; Mark Patrick <MPatrick@randadvisors.com>
**Subject:** Re: 30218, 30219 Atlas - audit queries

30218 - 81.04%

30219 - 18.92%

---

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, May 6, 2025 5:06 PM
**To:** Shawn Raver <SRaver@randadvisors.com>; Chris Rice <CRice@nexpointservices.com>; Akshey Kapuria <Akshey.Kapuria@ky.ey.com>
**Cc:** Jonathan Rugamba <Jonathan.Rugamba1@ky.ey.com>; Janat Namutebi <Janat.Namutebi@bm.ey.com>; Miyuru M Jinasena <Miyuru.M.Jinasena@ky.ey.com>; Mark Patrick <MPatrick@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas - audit queries

Hi Shawn,

Thank you. Please could you confirm the percentage holding that both 30218 and 30219 held in Atlas on 31.12.2024?

Many thanks

Suzanne

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, May 6, 2025 5:03 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Akshey Kapuria <Akshey.Kapuria@ky.ey.com>
**Cc:** Jonathan Rugamba <Jonathan.Rugamba1@ky.ey.com>; Janat Namutebi <Janat.Namutebi@bm.ey.com>; Miyuru M Jinasena <Miyuru.M.Jinasena@ky.ey.com>; Mark Patrick <MPatrick@randadvisors.com>
**Subject:** Re: 30218, 30219 Atlas - audit queries

Hi Suzanne -

Attached are the 2024 audited financials for Atlas IDF, L.P. I apologize for the slight delay in getting these issued.

Please let me know of any questions.

Thank you.

Shawn

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, May 6, 2025 4:50 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Akshey Kapuria <Akshey.Kapuria@ky.ey.com>
**Cc:** Jonathan Rugamba <Jonathan.Rugamba1@ky.ey.com>; Janat Namutebi <Janat.Namutebi@bm.ey.com>; Miyuru M Jinasena <Miyuru.M.Jinasena@ky.ey.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas - audit queries

+ Shawn Raver

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 530-4549 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, May 6, 2025 2:32 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Akshey Kapuria <Akshey.Kapuria@ky.ey.com>
**Cc:** Jonathan Rugamba <Jonathan.Rugamba1@ky.ey.com>; Janat Namutebi <Janat.Namutebi@bm.ey.com>; Miyuru M Jinasena <Miyuru.M.Jinasena@ky.ey.com>
**Subject:** RE: 30218, 30219 Atlas - audit queries

Hi Chris,

I wanted to confirm if the 2024 audit has been completed yet for Altas, and if you have timing when these audited Financials will be issued? We already have 2023 AFS on file. Our auditors would like details on the percentage holding that Crown had on the date of the most recent audited Financials.

Thanks
Suzanne

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:14 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Audit is still ongoing. I believe we typically issue financials at or around 120 days after year end.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4649 | C: (801) 660-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:02 PM
**To:** Karla Jackson <kjackson@crownglobalinsurance.com>; Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Hello,

Please could you provide the most recent audited Financial Statements for the Atlas Fund?

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration
Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 x4 M: (345) 925-4004 F: (345) 945-6121
sreynolds@crownglobalinsurance.com
CROWNGLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective

investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, February 24, 2025 11:09 AM
**To:** 'Chris Rice' <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q1'2025 Fees Request

Dear John & Chris,

Please find the attached withdrawal request to process at your convenience, also can you confirm the confirm the wire date.

Thank you,

Kind Regards,
Karla

Karla Jackson
Administrator

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box [illegible]
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 F: (345) 945-6121
kjackson@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If

verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DISCLAIMER-Securities offered through NexPoint Securities, Inc. ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of [illegible] herein. [illegible] performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

**The information contained in this communication is intended solely for the use of the individual or entity to whom it is addressed and others authorized to receive it. It may contain confidential or legally privileged information. If you are not the intended recipient you are hereby notified that any disclosure, copying, distribution or taking any action in reliance on the contents of this information is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by responding to this email and then delete it from your system. EY is neither liable for the proper and complete transmission of the information contained in this communication nor for any delay in its receipt.**

Our privacy notice which explains how EY collects and uses personal data and which describes the rights you have with respect to your personal data is available here: Privacy statement.

**From:** Chris Rice [CRice@nexpointservices.com]
**Sent:** 7/14/2025 5:29:37 PM
**To:** Karla Jackson [kjackson@crownglobalinsurance.com]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]; Chris Rice [CRice@skyviewgroup.com]
**CC:** Frank Waterhouse [fwaterhouse@skyviewgroup.com]; Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c1e8eb444bab91fb8ae5337d6500-SRaver]; Mirna Dinan [mdinan@crownglobalinsurance.com]
**Subject:** RE: 30218, 30219 Atlas -Q2 2025 VALUATIONS

I am no longer involved with Atlas IDF.

You'll need to coordinate with Mark, Shawn, and the new team of accountants.

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
C: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, July 14, 2025 11:14 AM
**To:** Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q2'2025 VALUATIONS

Hello Chris and Team,

Could you please confirm when can we expect the values as of June 30, 2025?

Kind Regards,
Karla

Karla Jackson
Administrator

Suite [illegible], 2nd Floor, [illegible] Market Street, P.O. Box [illegible]
Camana Bay, Grand Cayman [illegible], Cayman Islands
T: [illegible] F: [illegible]
kjackson@crownglobalinsurance.com

CROWN GLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending

to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:19 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Circulated at issuance.

Looks like you were not cc'd Suzanne, but a few others at Crown were. Apologies for that error.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4540 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:15 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Ok thanks. Please could you send the 2023 audited report?

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:14 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Audit is still ongoing. I believe we typically issue financials at or around 120 days after year end.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: [illegible] | C: [illegible]
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:02 PM
**To:** Karla Jackson <kjackson@crownglobalinsurance.com>; Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Hello,

Please could you provide the most recent audited Financial Statements for the Atlas Fund?

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration
Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 x4 M: (345) 925-4004 F: (345) 945-6121
sreynolds@crownglobalinsurance.com
CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, February 24, 2025 11:09 AM
**To:** 'Chris Rice' <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q1'2025 Fees Request

Dear John & Chris,

Please find the attached withdrawal request to process at your convenience, also can you confirm the confirm the wire date.

Thank you.

Kind Regards,
Karla

**Karla Jackson**
Administrator

Suite 3206A, 2nd Floor 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 F: (345) 945-6121
kjackson@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DISCLAIMER-Securities offered through NexPoint Securities, Inc., ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

DISCLAIMER: This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter

into or conclude any transaction. It may contain confidential, proprietary, or legally privileged information. If you received this message in error, please immediately delete it.

**From:** Chris Rice [crice@nexpoint.com]
**Sent:** 7/3/2025 12:53:50 AM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Patrick Casale [pcasale@cohenco.com]; Lori Novak [lnovak@cohenco.com]
**Subject:** Rand PE 2024 Audit
**Attachments:** Rand PE Fund I 2024 Financial Statements_Final (06.26.2025).pdf

Mark / Shawn –

My understanding is that the attached represents the final audited financials of Rand PE Fund I for 2024.

Pat and Lori to confirm that there are no versioning issues which would nullify my previous statement.

Thanks

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (301) 669-1297
crice@nexpoint.com | www.nexpoint.com

DISCLAIMER-Securities offered through NexPoint Securities, Inc., ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security and is not an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future results. Investments may lose money and such investment losses are not insured.

# RAND PE FUND I, L.P.

(A DELAWARE "SERIES" LIMITED PARTNERSHIP)

## FINANCIAL STATEMENTS

INDEPENDENT AUDITOR'S REPORT

FOR THE YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24,2025 (LIQUIDATION DATE)

# RAND PE FUND I, L.P.
TABLE OF CONTENTS
DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24,2025 (LIQUIDATION DATE)

**Page**

**Independent Auditor's Report** ... 1

**Financial Statements**

Statements of Assets, Liabilities and Partners' Capital ... 3

Schedule of Investments ... 4

Statements of Operations ... 5

Statements of Changes in Partners' Capital ... 6

Statements of Cash Flows ... 7

Notes to Financial Statements ... 8

Cohen & Co

Independent Auditor's Report

To the Partners of
Rand PE Fund I, L.P.

***Opinion***

We have audited the accompanying financial statements and financial statements in liquidation of Rand PE Fund I, L.P., which comprise the statement of asset and liabilities, including the schedule of investments, as of December 31, 2024 and as of February 24, 2025 (liquidation date), and the related statements of operations, changes in partners' capital and cash flows for the year and period then ended, and the related notes to the financial statements.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Rand PE Fund I, L.P. as of December 31, 2024 and as of February 24, 2025 (liquidation date), and the results of its operations, changes in its partners' capital and cash flows for the year and period then ended in accordance with accounting principles generally accepted in the United States of America.

***Basis for Opinion***

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of Rand PE Fund I, L.P. and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audits. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

***Partnership Liquidation***

As discussed in Note 1 to the financial statements, in February 2025, in accordance with the Partnership's operating agreement, the Manager approved a plan for the orderly liquidation of the Partnership and notified the partners of their intentions to liquidate the partnership effective February 24, 2025 (liquidation date). Our opinion is not modified with respect to this matter.

***Responsibilities of Management for the Financial Statements***

Management is responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

***Auditor's Responsibilities for the Audit of the Financial Statements***

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.

In performing an audit in accordance with generally accepted auditing standards, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of Rand PE Fund I, L.P.'s internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

Cohen & Company, Ltd.

Cleveland, Ohio
June 26, 2025

# RAND PE FUND I, L.P.

## STATEMENTS OF ASSETS, LIABILITIES AND PARTNERS' CAPITAL

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | December 31,2024 | February 24, 2025 (liquidation date) |
|---|---|---|
| **Assets** | | |
| Investment, at fair value (cost $15,986,892 and $0, respectively) | $ 1,000,000 | $ - |
| Cash and cash equivalents | 19,891 | 1,019,678 |
| Total assets | $ 1,019,891 | $ 1,019,678 |
| **Liabilities** | | |
| Accrued expenses | $ 43,900 | $ 69,965 |
| Distributions payable | - | 949,713 |
| Total liabilities | 43,900 | 1,019,678 |
| **Partners' capital** | 975,991 | - |
| Total liabilities and partners' capital | $ 1,019,891 | $ 1,019,678 |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.
## SCHEDULE OF INVESTMENTS
YEAR ENDED DECEMBER 31, 2024

| Ownership Percentage | Description | Fair Value | % of Partners' Capital |
|---|---|---|---|
| | **Investment in LLC interests** | | |
| | United States | | |
| | Financial | | |
| 100% | *Beacon Mountain, LLC (cost $15,986,892)* | $ 1,000,000 | 102.46% |
| | **Total Investment (cost $15,986,892)** | $ 1,000,000 | 102.46% |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.

## STATEMENTS OF OPERATIONS

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | Year ended December 31, 2024 | Period ended February 24, 2025 (liquidation date) |
|---|---|---|
| **Investment income and expenses** | | |
| **Income** | | |
| Investment income | $ - | $ - |
| **Expenses** | | |
| Professional fees | 43,900 | 25,000 |
| Custodian fees | 2,650 | 1,278 |
| Other expense | - | - |
| Total expenses | 46,550 | 26,278 |
| Net investment loss | (46,550) | (26,278) |
| **Realized gain** | | |
| Net realized loss from settlement income | (52,242) | - |
| Net realized loss on investments | - | (14,986,892) |
| Net change in unrealized depreciation on investments | 1,000,000 | 14,986,892 |
| | 947,758 | - |
| **Net increase (decrease) in partners' capital resulting from operations** | $ 901,208 | $ (26,278) |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.

## STATEMENTS OF CHANGES IN PARTNERS' CAPITAL

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | General Partner | Series I Limited Partners | Total |
|---|---|---|---|
| **Partners' capital at December 31, 2023** | $ - | $ 74,783 | $ 74,783 |
| **Operating activities** | | | |
| Net investment loss | - | (46,550) | (46,550) |
| Net realized loss from settlement income | - | (52,242) | (52,242) |
| Net change in unrealized depreciation on investments | - | 1,000,000 | 1,000,000 |
| Net increase in partners' capital resulting from operations | - | 901,208 | 901,208 |
| **Partners' capital at December 31, 2024** | **$ -** | **$ 975,991** | **$ 975,991** |

| | General Partner | Series I Limited Partners | Total |
|---|---|---|---|
| **Partners' capital at December 31, 2024** | $ - | $ 975,991 | $ 975,991 |
| **Operating activities** | | | |
| Net investment loss | - | (26,278) | (26,278) |
| Net realized loss on investments | - | (14,986,892) | (14,986,892) |
| Net change in unrealized depreciation on investments | - | 14,986,892 | 14,986,892 |
| Net decrease in partners' capital resulting from operations | - | (26,278) | (26,278) |
| **Capital activities** | | | |
| Capital distributions* | - | (949,713) | (949,713) |
| Net change in partners' capital resulting from capital activities | - | (949,713) | (949,713) |
| **Partners' capital at February 24, 2025 (liquidation date)** | **$ -** | **$ -** | **$ -** |

**Capital distributions have not been paid as of the date of the audit opinion*

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.

## STATEMENTS OF CASH FLOWS

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | December 31,2024 | February 24, 2025 (liquidation date) |
|---|---|---|
| **Cash flows from operating activities** | | |
| Net increase (decrease) in partners' capital resulting from operations | $ 901,208 | $ (26,278) |
| Adjustments to reconcile net increase (decrease) in partners' capital resulting from operations to net cash provided by (used in) operating activities: | | |
| Proceeds from the disposition of investments | - | 1,000,000 |
| Net realized loss on investment transactions | - | (14,986,892) |
| Net change in unrealized depreciation on investments | (1,000,000) | 14,986,892 |
| Net changes in operating assets and liabilities | | |
| Increase in other assets | 62,242 | - |
| Increase in accrued expenses | (5,100) | 26,065 |
| Net cash provided by (used in) operating activities | (41,650) | 999,787 |
| **Cash flows from financing activities** | | |
| Capital distributions, net of payable* | - | - |
| Net cash provided by financing activities | - | - |
| Net increase (decrease) in cash | (41,650) | 999,787 |
| Cash and cash equivalents, beginning of year | 61,541 | 19,891 |
| Cash and cash equivalents, end of year | $ 19,891 | $ 1,019,678 |

**Capital distributions have not been paid as of the date of the audit opinion*

The accompanying notes are an integral part of these financial statements.

**1. Organization**

Rand PE Fund I, L.P. (the "Partnership") was organized as a "series" limited partnership under the laws of Delaware Revised Uniform Limited Partnership Act on October 29, 2015, and commenced operations on December 17, 2015. The Partnership offered partner interests in the Partnership ("Interests") in a private placement pursuant to section 4(a)(2) of the Securities Act of 1933, as amended ("Securities Act"), and Regulation D promulgated thereunder.

Rand PE Fund Management, LLC, a Delaware limited liability company (the "General Partner"), is the general partner of the Partnership and is responsible for the management of the Partnership's affairs. Rand Advisors, LLC, a Delaware limited liability company (the "Investment Manager"), is the investment manager of the Partnership and has discretionary investment authority over the Partnership's assets. The Investment Manager is registered as an investment adviser with the U.S. Securities and Exchange Commission ("SEC"). The Investment Manager has a shared services agreement with Skyview Group ("Skyview") to provide certain limited back office services including, but not limited to, bookkeeping, financial reporting, tax preparation, operations, and IT support. Neither the Investment Manager nor Skyview receives any compensation from the Partnership for these services.

The Partnership was formed to pool investment funds of its investors (each, a "Limited Partner" and, collectively, "Limited Partners"; and, together with the General Partner (as defined above), "Partners") for the purpose of investing and trading in a wide variety of securities, financial instruments and other assets and investments, including other investment vehicles, as more fully described herein.

The Partnership is governed by the Agreement of Limited Partnership (the "Partnership Agreement") dated October 29, 2015. Interests in the Partnership will be offered in separate series of interests ("Series"). All current Limited Partners have been enrolled in "Series 1 Interests". Each Series will have separate rights and obligations. In addition, each Series may correspond to a separate portfolio of assets, which may have different investment objectives and strategies. The Partnership may issue additional Series in the future, which may have rights and obligations that differ from those of the Series 1 Interests with respect to any matters, including without limitation, fees, withdrawal rights, participation in Side Pocket Accounts (as defined in the Partnership Agreement) and other rights and terms. The terms of such additional Series will be determined by the General Partner, in its sole discretion.

Each Series shall have separate rights, powers and duties with respect to its investment portfolio and other property and obligations and the profits and losses associated with such portfolio, property and obligations. The Partnership will maintain separate and distinct records for each Series and shall hold and account for the assets and liabilities of such Series separately from other Series.

On June 21, 2022, the Partnership entered into a confidential settlement agreement with certain third-parties who agreed to pay all legal, audit, and custody expenses incurred by Hunter Mountain Investment Trust ("HMIT"), an entity which the Partnership had owned indirectly through its investment in Beacon Mountain, LLC, and the Partnership for the duration of the Highland Capital Management, L.P. ("HCMLP") bankruptcy. As of December 31, 2024 this agreement is not expected to result in any further actual reimbursement to the Partnership and all related income and receivables have been written off.

On August 1, 2022, Rand Advisors, LLC was acquired by Rand Advisors Holding Corp, effecting a change in control of the Investment Manager.

On February 6, 2025, the General Partner redeemed certain limited partners in the Partnership for their Capital Account value of $0. Following the sale of the Partnership's sole investment thereafter, the Partnership caused distributions to be made to such limited partners for their respective share of such sale proceeds pursuant to the "side pocket" status of such investment.

On February 12, 2025, the Partnership's sole investment was sold and thereafter on February 24, 2025, the Investment Manager decided to dissolve the Partnership at which point liquidation became imminent. Under the plan of liquidation, the Partnership plans to settle all outstanding liabilities and pay out distributions to the partners. The adoption of the liquidation basis of accounting did not have a material effect on the carrying value of the Partnership's assets and liabilities and was therefore not adopted.

## 2. Significant Accounting Policies

The following is a summary of the significant accounting policies followed by the Partnership in the preparation of its financial statements.

**Basis of Accounting**
The Partnership's financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("U.S. GAAP") and are stated in United States dollars. The Partnership is an investment company in conformity with U.S. GAAP and as such follows the accounting and reporting guidance under Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 946, *Financial Services – Investment Companies*.

**Use of Estimates**
The preparation of financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of increases and decreases in partners' capital from operations during the period. The Partnership's significant estimates include the fair value of its investments and derivative contracts. Actual results could differ from those estimates.

**Investment Transactions**
Investment transactions are recorded on a trade-date basis. Realized gains and losses on investment transactions are determined based on specific identification using the first-in, first-out method.

Investments are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Statements of operations.

See Note 6 for the Partnership's fair value hierarchy disclosures.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. banks or brokers and deposits with original maturities of less than 90 days. Cash equivalents are carried at cost, which approximates fair value. At December 31, 2025, the Partnership held cash balances at certain financial institutions within the federally insured limit of $250,000. At February 24, 2025 the Partnership held cash balances at certain financial institutions which exceeded the federally insured limit of $250,000 by approximately $770,000. The Investment Manager regularly monitors the credit quality of these institutions.

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums are accreted or amortized to interest income except for deeply discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis. Amendment fees are recognized when received. Operating expenses are recorded on the accrual basis as incurred.

**Allocation of Gains and Losses**
Net capital change as a result of operations is generally allocated to the capital accounts of each limited partner in proportion to their respective ownership percentages as determined at the beginning of each accounting period adjusted for any additional contributions or withdrawals.

**3. Taxes**

The Partnership is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of the Partnership's net taxable income. Interest, dividends and other income realized by the Partnership from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

The Partnership applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the application of this guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2024.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2024, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from December 31, 2021 forward.

The Partnership recognizes interest and penalties, if any, related to unrecognized tax benefits as income tax expense in the Statements of operations. During the year ended December 31, 2024 and period ended February 24, 2025 (liquidation date), the Partnership did not incur any interest or penalties.

**4. Limited Partnership Agreement**

**Capital Contributions and Withdrawals**
The minimum initial capital contribution that will be accepted from a new Limited Partner is $500,000. The minimum additional capital contribution that will be accepted from an existing Limited Partner is $500,000. In each case, the General Partner has discretion to accept lesser amounts. Generally, new Limited Partners will be admitted on the first day of each month, and withdrawals may be made on the last day of each calendar quarter upon 91 days' prior written notice and subject to certain other restrictions as described herein (unless, in each case, the General Partner, in its sole discretion, permits subscriptions or withdrawals at another time).

There is no public market for the limited partner interests in the Partnership ("Interests") nor is any expected to develop. Even if such a market develops, no distribution, resale or transfer of an Interest will be permitted, except in accordance with the provisions of the Securities Act, the rules and regulations promulgated thereunder, any applicable state securities laws and the terms and conditions of the Partnership Agreement. Any transfer of an Interest by a Limited Partner, public or private, will require the consent of the General Partner.

Each Limited Partner may withdraw a minimum of $100,000 as of the last day of each calendar quarter and at such other times as the General Partner may determine in its sole discretion, upon at least 91 days' prior written notice. Unless the General Partner consents, partial withdrawals may not be made if they would reduce a Limited Partner's capital account balance below $500,000. Generally, not less than 90% of the withdrawal proceeds (excluding any amounts held in any Side Pocket Accounts) will be paid within 90 days after the applicable withdrawal date. The balance of the amount payable upon such withdrawal will be paid without interest, within 90 days after the completion of the audited financial statements for the fiscal year in which the withdrawal occurs.

**Limitations on Withdrawals**
The Partnership or a Series may suspend (or postpone) withdrawals, subscriptions, calculations of Net Asset Value and/or payments upon any withdrawals (in whole or in part) from capital accounts: (i) during the existence of any state of affairs which, in the opinion of the General Partner, makes the disposition of the Partnership's investments impractical or prejudicial to the Partners, or where such state of affairs, in the opinion of the General Partner, makes the determination of the price or value of the Partnership's investments impractical or prejudicial to the Partners; (ii) where any such withdrawals, subscriptions, calculations and/or payments, in the opinion of the General Partner, would result in the violation of any applicable law or regulation; (iii) if the General Partner determines, in its sole discretion, that such suspension or postponement is prudent in order to prevent the Partnership from being subject to adverse tax or regulatory implications; or (iv) for such other reasons or for such other periods as the General Partner may in good faith determine.

**Side Pocket Accounts**
A Limited Partner may not withdraw any of the amounts in its capital account that are attributable to the value of an illiquid investment held in a Side Pocket Account until such time that such illiquid investment (or the sales proceeds thereof) is reallocated to such Limited Partner's capital account. At the sole discretion of the Investment Manager, an illiquid investment may be held in a Side Pocket Account until the occurrence of a Realization Event (as defined in the Partnership Agreement). At December 31, 2024, the Partnership's investment was held in a side pocket account. At February 24, 2025 (liquidation date), the investment had been sold.

**Management Fees**
The Partnership has entered into an investment management agreement (as the same may be amended and/or restated from time to time, the "Investment Management Agreement") by and among the Partnership and the Investment Manager. In consideration for services provided pursuant to the Investment Management Agreement, the Investment Manager will receive a quarterly management fee ("Management Fee"), equal to a percentage of each Limited Partner's share of the Partnership's Net Asset Value (as defined herein), and based on the Partnership's total Net Asset Value, as follows:

| Partnership's Total Net Asset Value | Management Fee (per annum) |
|---|---|
| $0 - $99,999,999 | 0.5500% |
| $100,000,000 - $199,999,999 | 0.5000% |
| $200,000,000 - $249,999,999 | 0.4500% |

| | |
|---|---|
| $250,000,000 - $499,999,999 | 0.3500% |
| > $500,000,000 | 0.3400% |

The Management Fee will be calculated and payable to the Investment Manager quarterly, in advance, as of the first day of each calendar quarter. A pro rata Management Fee will be charged to Limited Partners on any amounts accepted by the General Partner during a calendar quarter. No management fees were paid to the Investment Manager during the year or period presented, as the Investment Manager elected to waive its management fees. The Investment Manager can, at its discretion, waive or reduce the management fee.

**Allocation of Net Increase/(Decrease) in Partners' Capital Resulting from Operations**
The Partnership Agreement specifies the allocation of net income or loss (increases and decreases in net worth, as defined in the Limited Partnership Agreement) to each partner's capital account. Net income or loss includes all gains and losses, whether realized or unrealized, plus all other items of income (such as interest) and less all expenses. Generally, net income and loss for each month (or other period, as the case may be) will be allocated to the partners in proportion to their capital account balances at the start of such month (or such other period). Capital account balances will reflect capital contributions, previous allocations of increases and decreases in net worth and withdrawals.

**5. Financial Instruments with Concentration of Credit Risk and Other Risks**

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership due to a change in the market value of its investments. The Partnership's exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations. These factors may affect the level and volatility of securities prices and the liquidity of the Partnership's investments. Volatility or illiquidity could impair the Partnership's performance or result in losses. The Partnership may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets.

**Liquidity Risk**
The Partnership's limited partner interests have not been registered under the Securities Act or any other applicable securities laws. There is no public market for the interests and neither the Partnership nor the Investment Manager expects such a market to develop.

**Market Concentration**
The Partnership was formed to invest in small to medium-sized companies (i.e., generally with market capitalization of under $1 billion) that are involved in (or are the target of) acquisition attempts or tender offers, and/or in companies involved in work-outs, liquidations, spin-offs, reorganizations, bankruptcies or similar transactions. All of the assets attributable to Series I have been invested in LLC interests of Beacon Mountain, LLC. This limited diversification could expose the Partnership to losses that are disproportionate to market movements as a whole.

**Litigation Risk**
The Partnership is periodically subject to legal actions arising from the ordinary course of business. The ultimate outcome of these cases is inherently uncertain and could result in material losses to the Partnership.

**Limited Diversification**
The Partnership's portfolio could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of risk may increase the losses suffered by the Partnership. In addition, it is possible that the Investment Manager may select investments that

are concentrated in certain classes of financial instruments. This limited diversification could expose the Partnership to losses that are disproportionate to market movements as a whole. As of December 31, 2024, the Partnership's portfolio consisted of one investment in the LLC interests of Beacon Mountain, LLC. At February 24, 2025 (liquidation date), the investment had been sold.

**Custody Risk**
The clearing operations for the Partnership's investments are provided by major financial institutions. In addition, all of the Partnership's cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of major securities exchanges. The Partnership may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership might be unable to recover the full value of its assets or incur losses due to its assets being unavailable for a period of time.

**Concentration of Investor Risk**
One affiliated entity, Atlas IDF, L.P., held approximately 96.5% of the Partnership's capital balance as of December 31, 2024.

**6. Fair Value Hierarchy of Financial Instruments**

In accordance with the authoritative guidance on fair value measurements and disclosures under U.S. GAAP, the Partnership discloses the fair value of its investments in a hierarchy that prioritizes the inputs to valuation techniques used to measure the fair value. The hierarchy gives the highest priority to valuations based upon unadjusted quoted prices in active markets for identical assets or liabilities (level 1 measurements) and the lowest priority to valuations based upon unobservable inputs that are significant to the valuation (level 3 measurements). The guidance establishes three levels of the fair value hierarchy as follows:

Level 1 – Valuations based on unadjusted prices in active markets for identical assets and liabilities that the Partnership has the ability to access as of the measurement date. Valuations utilizing Level 1 inputs do not require any degree of judgment.

Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for which identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction. When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs. For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above. In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership uses prices and inputs that are current as of the measurement dates. The Partnership also considers the counterparty's nonperformance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership uses actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available or are determined to be unreliable, the Partnership develops methodologies that provide appropriate fair value estimates. Management reviews these methodologies on a continuous basis to account for changing market conditions.

The Investment Manager has established policies, as described above, processes and procedures intended to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent.

As of December 31, 2024, the Partnership's investment consisted of an LLC interest. As of February 24, 2025 (liquidation date), the investment had been sold.

**LLC interests**
As of December 31, 2024, the Partnership's investment was comprised entirely of a membership interest in a nonpublic limited liability company that was valued using commonly accepted valuation methodologies due to not having a readily determinable fair value. The LLC's sole investment is an indirect non-voting limited partner interest in 99.5% of a private investment management firm. This private investment management firm owns equity in a company that is in bankruptcy. The LLC interest is classified as level 3 as it is priced using inputs that are not readily observable.

The following table provides a summary of the investment recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2024. As of February 24,2025, no investments were held by the partnership.

| | Level 1 | Level 2 | Level 3 | Total fair value at December 31, 2024 |
|---|---|---|---|---|
| LLC interests | $ - | $ - | $ 1,000,000 | $ 1,000,000 |

The following table provides a roll forward of the amounts for the year ended December 31, 2024 and February 24, 2025 for financial instruments classified within Level 3. The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement.

| | LLC interests |
|---|---|
| Fair value as of December 31, 2023 | $ - |
| Purchases | - |
| Sales and maturities | - |
| Transfers in | - |
| Transfers out | - |
| Net realized gains/(losses) | - |
| Net change in unrealized gains/(losses) | 1,000,000 |
| Fair value as of December 31, 2024 | $ 1,000,000 |

| | LLC interests |
|---|---|
| Fair value as of December 31, 2024 | $ 1,000,000 |
| Purchases | - |
| Sales and maturities | (1,000,000) |
| Transfers in | - |
| Transfers out | - |
| Net realized gains/(losses) | (14,986,892) |
| Net change in unrealized gains/(losses) | 14,986,892 |
| Fair value as of February 24, 2025 (liquidation date) * | $ - |

*The values in the preceding table are equal to zero.

No transfers between levels occurred during the year ended December 31, 2024, or period ended February 24, 2025.

The following is a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy as of December 31, 2024. As of February 24, 2025 no investments were held by the Partnership.

| Category | Fair Value at December 31, 2024 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| LLC interests | $ 1,000,000 | Transaction Indication of Value | Sales Price | $ 1,000,000 |

## 7. Commitments and Contingencies

In the normal course of business, the Partnership may enter into contracts that provide general indemnifications and contain a variety of representations and warranties that may expose the Partnership to some risk of loss. The amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

## 8. Related Party Transactions

**Management Fees**
For its services to the Partnership, the Investment Manager is entitled to management fees as described in Note 4. For the year ended December 31, 2024 and period ended February 24, 2025 (liquidation

date), the Investment Manager did not earn management fees. The Investment Manager does not charge a management fee on investments in related funds.

## 9. Financial Highlights

Financial highlights for the year ended December 31, 2024 and February 24, 2025 are as follows:

| | Year ended December 31, 2024 Series I | Period ended February 24, 2025 (liquidation date) Series I |
|---|---|---|
| Total return [1] | 1205.10 % | (17.87)% |
| Ratios to average limited partners' capital [2] | | |
| Investment income | 0.0 % | 0.0 % |
| Operating expenses | (37.18)% | (17.87)% |
| Net investment loss | (37.18)% | (17.87)% |

[1] Total return is determined using a time-weighted rate of return methodology in which rates of return are geometrically linked. Total return is reflected after all investment related and operating expenses. An individual investor's return may vary from these returns based on timing of capital transactions.

[2] Expense ratios are determined by dividing the total investment related and operating expenses by the average limited partners' capital. The ratio of net investment income/(loss) is determined by dividing the net investment income/(loss) by the average limited partners' capital.

## 10. Subsequent Events

The General Partner has evaluated subsequent events through June 26, 2025, which is the date the financial statements were available for issuance and has determined no subsequent event disclosure is necessary.

**From:** Karla Jackson [kjackson@crownglobalinsurance.com]
**Sent:** 7/18/2025 2:02:49 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]
**CC:** Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]; Mirna Dinan [mdinan@crownglobalinsurance.com]; Pauline McGettigan [pmcgettigan@crownglobalinsurance.com]
**Subject:** Re: 30218, 30219 Atlas -Q2'2025 VALUATIONS

Thanks for your reply Shawn.

Have a nice day
Karla Jackson

On 17 Jul 2025, at 8:31 PM, Shawn Raver <SRaver@randadvisors.com> wrote:

Hi Karla -

Apologies for not responding earlier. I hope to have it tomorrow or Monday at the latest.

I have also removed Chris and the other Skyview folks.

Thanks,
Shawn

---

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, July 14, 2025 11:14 AM
**To:** 'Chris Rice' <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q2'2025 VALUATIONS

Hello Chris and Team,

Could you please confirm when can we expect the values as of June 30, 2025?

Kind Regards,
Karla

<image003.png>

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding

penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:19 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Circulated at issuance.

Looks like you were not cc'd Suzanne, but a few others at Crown were. Apologies for that error.

Chris Rice CPA
Director – Fund Analysis
<image001.jpg>
O: (214) 550-4349 | C: (801) 669-?297
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:15 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas Q1'2025 Fees Request

Ok thanks. Please could you send the 2023 audited report?

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 18, 2025 7:14 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Audit is still ongoing. I believe we typically issue financials at or around 120 days after year end.

Chris Rice CPA
Director – Fund Analysis
<image004.jpg>
O: (214) 550-4549 | C: (80') 609-'297
crice@nexpointservices.com | www.nexpoint.com

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, March 18, 2025 7:02 PM
**To:** Karla Jackson <kjackson@crownglobalinsurance.com>; Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: 30218, 30219 Atlas -Q1'2025 Fees Request

Hello,

Please could you provide the most recent audited Financial Statements for the Atlas Fund?

Kind regards
Suzanne

<image005.png>

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Karla Jackson <kjackson@crownglobalinsurance.com>
**Sent:** Monday, February 24, 2025 11:09 AM
**To:** 'Chris Rice' <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** 30218, 30219 Atlas -Q1'2025 Fees Request

Dear John & Chris,

Please find the attached withdrawal request to process at your convenience, also can you confirm the confirm the wire date.

Thank you.

Kind Regards,
Karla

<image003.png>

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DISCLAIMER: Securities offered through NexPoint Securities, Inc. [illegible]

**From:** Suzanne Reynolds [sreynolds@crownglobalinsurance.com]
**Sent:** 1/21/2026 9:06:37 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mirna Dinan [mdinan@crownglobalinsurance.com]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]; Colleen Artuch [cartuch@crownglobalinsurance.com]
**Subject:** RE: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Shawn,

Do you have a date when this withdrawal wire will be sent, please?

Thanks
Suzanne

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, December 16, 2025 11:36 AM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>; Colleen Artuch <cartuch@crownglobalinsurance.com>
**Subject:** Re: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Suzanne -

I expect the withdrawal request will be satisfied in Q1 of the new year.

Thanks,
Shawn

---

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Tuesday, December 16, 2025 7:57 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>; Colleen Artuch <cartuch@crownglobalinsurance.com>
**Subject:** RE: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Shawn,

Do you have an idea when payment will be made, please? Will this be before year end? We would like to provide the policyholder with a schedule of timing.

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T. (345) 747-4000 ext. M. (345) 925-4004 F: (345) 946-6121
sreynolds@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, December 8, 2025 9:54 AM
**To:** Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30218 Atlas Partial Surrender Withdrawal Request

Hi Mirna -

We received the withdrawal request and will process on or before the applicable Withdrawal Date.

Thanks,
Shawn

---

**From:** Mirna Dinan <mdinan@crownglobalinsurance.com>
**Sent:** Monday, December 8, 2025 8:51 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** FW: 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Could you please confirm if the attached withdrawal has been processed?

Thank you.

Best Regards,

Mirna Dinan

Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay

P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands

Telephone +1 345 747 4000 Facsimile +1 345 945 6121

CROWNGLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan
**Sent:** Monday, December 1, 2025 4:21 PM
**To:** 'Shawn Raver' <sraver@randadvisors.com>; 'Mark Patrick' <mpatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Please find the attached withdrawal request to process at your earliest convenience.

Thank you.

Best Regards,

Mirna Dinan

Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay

P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands

Telephone +1 345 747 4000 Facsimile 1 345 945 6121

CROWNGLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Pauline McGettigan [pmcgettigan@crownglobalinsurance.com]
**Sent:** 6/6/2025 5:42:56 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** RE: 30219 Atlas - withdrawal request

Ok, thanks for the confirmation Shawn.

Kind regards,
Pauline.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, June 6, 2025 12:39 PM
**To:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30219 Atlas - withdrawal request

Hi Pauline -

I expect to pay the funds next week.

Thanks,
Shawn

---

**From:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>
**Sent:** Friday, June 6, 2025 9:39 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** RE: 30219 Atlas - withdrawal request

Hello Shawn,

Do you have an update on when we can expect to receive the funds ?

Kind regards,
Pauline.

**Pauline McGettigan | CAMS**
Compliance Analyst

Suite 3206A, 2nd Floor, 30 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747-4000 x1 F: (345) 946-6121
pmcgettigan@crownglobalinsurance.com

CROWN GLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, May 28, 2025 2:49 PM
**To:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30219 Atlas - withdrawal request

Received. Please just send to Mark and me for now.

Thanks,
Shawn

---

**From:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>
**Sent:** Wednesday, May 28, 2025 12:40 PM
**To:** Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** RE: 30219 Atlas - withdrawal request

Thank you for the update Chris.

Shawn, Mark, can you please confirm receipt of the attached request & advise who else should be copied going forward ?

Many thanks,
Pauline.

**Pauline McGettigan | CAMS**
Compliance Analyst

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands.
T: (345) 747-4000 x1 F: (345) 946-6121
pmcgettigan@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Wednesday, May 28, 2025 12:29 PM
**To:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** RE: 30219 Atlas - withdrawal request

Pauline –

I am no longer involved with the funds, so you'll have to coordinate with the Mark, Shawn, and the new accounting team.

Thanks

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Pauline McGettigan <pmcgettigan@crownglobalinsurance.com>
**Sent:** Wednesday, May 28, 2025 12:14 PM

**To:** Chris Rice <CRice@nexpointservices.com>; Mark Patrick <MPatrick@randadvisors.com>; Chris Rice <CRice@skyviewgroup.com>
**Cc:** Frank Waterhouse <fwaterhouse@skyviewgroup.com>; Shawn Raver <SRaver@randadvisors.com>; Finance <finance@crownglobalinsurance.com>
**Subject:** 30219 Atlas - withdrawal request

Hello Chris,

please see attached withdrawal for processing at your earliest convenience.
Can you please confirm the wire date ?

Many thanks,
Pauline.

**Pauline McGettigan | CAMS**
Compliance Analyst

Suite 3206A, 2nd Floor, 30 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T: (345) 747 4000 x1 F: (345) 945 6121
pmcgettigan@crownglobalinsurance.com

CROWNGLOBAL
*Partnering to Enhance Alternatives*

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

DISCLAIMER-Securities offered through NexPoint Securities, Inc., ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which is subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

**From:** Suzanne Reynolds [sreynolds@crownglobalinsurance.com]
**Sent:** 12/16/2025 1:57:06 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mirna Dinan [mdinan@crownglobalinsurance.com]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]; Colleen Artuch [cartuch@crownglobalinsurance.com]
**Subject:** RE: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Shawn,

Do you have an idea when payment will be made, please? Will this be before year end? We would like to provide the policyholder with a schedule of timing.

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T (345) 747-4000 x4 M (345) 925-4904 F (345) 946-6121
sreynolds@crownglobalinsurance.com

CROWNGLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, December 8, 2025 9:54 AM
**To:** Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Mirna -

We received the withdrawal request and will process on or before the applicable Withdrawal Date.

Thanks,
Shawn

---

**From:** Mirna Dinan <mdinan@crownglobalinsurance.com>
**Sent:** Monday, December 8, 2025 8:51 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** FW: 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Could you please confirm if the attached withdrawal has been processed?
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CrownGlobal

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan
**Sent:** Monday, December 1, 2025 4:21 PM
**To:** 'Shawn Raver' <sraver@randadvisors.com>; 'Mark Patrick' <mpatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Please find the attached withdrawal request to process at your earliest convenience.

Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CROWNGLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company

**From:** Suzanne Reynolds [sreynolds@crownglobalinsurance.com]
**Sent:** 12/17/2025 7:38:48 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]; Karla Jackson [kjackson@crownglobalinsurance.com]
**Subject:** RE: 30218 / 30219 - Q4'2025 Redemption Requests (Sent Registered)

Thank you Shawn.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, December 17, 2025 2:35 PM
**To:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>
**Subject:** Re: 30218 / 30219 - Q4'2025 Redemption Requests (Sent Registered)

Hi Suzanne -

Apologies for not getting these out. I will have the payments made asap (likely tomorrow).

Thanks,
Shawn

---

**From:** Suzanne Reynolds <sreynolds@crownglobalinsurance.com>
**Sent:** Wednesday, December 17, 2025 10:38 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>
**Subject:** FW: 30218 / 30219 - Q4'2025 Redemption Requests (Sent Registered)

Hello Shawn and Mark,

Please could you advise on the payment of the two attached fee requests? We need this to be settled before the year end.

Kind regards
Suzanne

Suzanne Reynolds
Assistant Vice President, Finance & Administration

Suite 3206A, 2nd Floor, 39 Market Street, P.O. Box 10467,
Camana Bay, Grand Cayman KY1-1004, Cayman Islands
T. (345) 747-1000 ext. M. (345) 925-4004 F. (345) 949-0121
sreynolds@crownglobalinsurance.com

CROWNGLOBAL
Partnering to Enhance Alternatives

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan
**Sent:** Wednesday, November 5, 2025 11:01 AM
**To:** 'Shawn Raver' <sraver@randadvisors.com>; 'Mark Patrick' <mpatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>; Karla Jackson <kjackson@crownglobalinsurance.com>
**Subject:** 30218 / 30219 - Q4'2025 Redemption Requests (Sent Registered)

Dear Shawn and Mark,

Please find the attached withdrawal requests to process at your convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 11/5/2025 4:01:21 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** finance@crownglobalinsurance.com; kjackson@crownglobalinsurance.com
**Subject:** 30218 / 30219 - Q4'2025 Redemption Requests
**Attachments:** 30218 Q4'2025 Withdrawal Request. Atlas IDF LP_signed_.pdf; 30219 Q4'25 Fees Withdrawal Request. Atlas IDF LP_signed_.pdf

R REGISTERED EMAIL™ | CERTIFIED DELIVERY

This is a Registered Email™ message from Mirna Dinan

Dear Shawn and Mark,

Please find the attached withdrawal requests to process at your convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile + 1 345 945 6121

CROWNGLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to whom it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 7/30/2025 8:51:06 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** 30218 / 30219 - Q3'2025 Redemption Requests
**Attachments:** 30218 Q3'2025_Withdrawal Request. Atlas IDF LP_signed.pdf; 30219 Q3'2025 Withdrawal Request. Atlas IDF LP_signed.pdf

Dear Shawn and Mark,

Please find the attached withdrawal requests to process at your convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone +1 345 747 4000 Facsimile +1 345 945 6121

**Please note that my email address has changed from** mgarcia@crownglobalinsurance.com to mdinan@crownglobalinsurance.com

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 12/1/2025 9:21:20 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** 30218 - Atlas - Partial Surrender - Withdrawal Request
**Attachments:** 30218 Partial Surrender_Withdrawal Request. Atlas IDF LP_Dec 01_2025_signed.pdf

Dear Shawn and Mark,

Please find the attached withdrawal request to process at your earliest convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 9/10/2025 9:05:39 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb5ae5337d6500-SRaver], Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** 30219 Atlas - withdrawal request 250K
**Attachments:** 30219 Policyholder Withdrawal Request. Atlas IDF LP_250K_signed.pdf

Dear Shawn/Mark,

Please find the attached withdrawal request for processing at your earliest convenience.
Thanks.

Best Regards,

Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 12/8/2025 2:57:51 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver], Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** RE: 30218 - Atlas - Partial Surrender - Withdrawal Request

Great. Thanks for confirming, Shawn.

Regards,
Mirna

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, December 8, 2025 9:54 AM
**To:** Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30218 - Atlas - Partial Surrender - Withdrawal Request

Hi Mirna -

We received the withdrawal request and will process on or before the applicable Withdrawal Date.

Thanks,
Shawn

---

**From:** Mirna Dinan <mdinan@crownglobalinsurance.com>
**Sent:** Monday, December 8, 2025 8:51 AM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** FW: 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Could you please confirm if the attached withdrawal has been processed?
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone +1 345 747 4000 Facsimile +1 345 945 6121

CROWNGLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to wh ch t s addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly proh b ted. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan
**Sent:** Monday, December 1, 2025 4:21 PM
**To:** 'Shawn Raver' <sraver@randadvisors.com>; 'Mark Patrick' <mpatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** 30218 - Atlas - Partial Surrender - Withdrawal Request

Dear Shawn and Mark,

Please find the attached withdrawal request to process at your earliest convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to wh ch t s addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly proh b ted. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Mirna Dinan [mdinan@crownglobalinsurance.com]
**Sent:** 7/31/2025 1:51:06 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]; Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]
**CC:** Finance [finance@crownglobalinsurance.com]
**Subject:** RE: 30218 / 30219 - Q3'2025 Redemption Requests

Thank you for the confirmation, Shawn.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone +1 345 747 4000 Facsimile +1 345 945 6121

**Please note that my email address has changed from** mgarcia@crownglobalinsurance.com to mdinan@crownglobalinsurance.com

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, July 30, 2025 5:31 PM
**To:** Mirna Dinan <mdinan@crownglobalinsurance.com>; Mark Patrick <MPatrick@randadvisors.com>
**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** Re: 30218 / 30219 Q3'2025 Redemption Requests

Received. I will get it processed asap. Thank you.

Shawn

**From:** Mirna Dinan <mdinan@crownglobalinsurance.com>
**Sent:** Wednesday, July 30, 2025 3:51 PM
**To:** Shawn Raver <SRaver@randadvisors.com>; Mark Patrick <MPatrick@randadvisors.com>

**Cc:** Finance <finance@crownglobalinsurance.com>
**Subject:** 30218 / 30219 - Q3'2025 Redemption Requests

Dear Shawn and Mark,

Please find the attached withdrawal requests to process at your convenience.
Thank you.

Best Regards,
Mirna Dinan
Suite 3206A, 2nd Floor, 39 Market Street, Camana Bay
P.O Box 10467, Grand Cayman KY1-1004, Cayman Islands
Telephone + 1 345 747 4000 Facsimile +1 345 945 6121

**Please note that my email address has changed from** mgarcia@crownglobalinsurance.com to mdinan@crownglobalinsurance.com

CROWN GLOBAL

Please click here for Crown Global's Privacy Policy and contact us at info@crownglobalinsurance.com if you have any questions.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient, you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. Any U.S. Federal Tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein. Prospective investors should consult their own tax advisors regarding such issues. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Messages sent to and from us may be monitored. Internet communications cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late, or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this message, or any attachment, that have arisen as a result of e-mail transmission. If verification is required, please request a hard-copy version. Any views or opinions presented are solely those of the author and do not necessarily represent those of the company.

**From:** Robert Kipp [RKipp@thekippgroupllc.com]
**Sent:** 8/6/2025 3:36:25 PM
**To:** Mark Patrick [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=b3b12a49ec9a466e9f2df0a6a38acd23-MPatrick]; Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]
**CC:** Sonal Patel [SPatel@thekippgroupllc.com]
**Subject:** RAND PE Fund

Mark and Shawn

I represent Mark Okada. Skyview told us that the RAND PE Fund is no longer under their umbrella. They said to talk to you both about these items:

- 2024 K-1
- Request for wire instructions for a distribution back in February. I requested for someone to call me regarding this and nobody did. Therefore we never sent wire instructions.

Please advise.

Thanks.

**ROBERT KIPP**
**THE KIPP GROUP, PLLC**
**5310 HARVEST HILL ROAD**
**SUITE 203**
**DALLAS, TEXAS 75230**
**214-564-7292 - Mobile**
**972-707-2390 - Direct**
**972-707-2395 - Main**
**rkipp@thekippgroupllc.com**
**www.thekippgroupllc.com**

* The Kipp Group PLLC Internet Email Confidentiality Footer *

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Nothing contained in this message or in any attachment shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.

**From:** Ashley Gunther [AGunther@nexpoint.com]
**Sent:** 12/30/2025 4:12:31 PM
**To:** Shawn Raver [sraver@dafholdco.com]
**Subject:** Re: DIT Note Pmt
**Attachments:** Cust Out Wire Advice

Good morning!

Attached is the wire confirmation for the payment.

Best,
Ashley

---

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:33 PM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Yes, the bank account is held by CLO Holdco. LLC. And yes, once the funds are received, I will be happy to acknowledge that the funds were applied against the note owed by Dugaboy to HMIT. You can also send the amortization schedule previously provided by Highland and I will note the payment on it as well once received.

On Mon, Dec 29, 2025 at 2:29 PM Ashley Gunther <AGunther@nexpoint.com> wrote:

Just to clarify and forgive me for my limited knowledge on this, I don't have the documents for this note being assigned to HMIT, but the bank account holder is CLO Holdco LLC. Is that correct and I'm ***not*** sending this directly to a HMIT bank account?

Once payment is received, will you be able to send documentation that the funds were received and acknowledged that these were applied to the DIT note under HMIT? I've connected with legal on this end but if I don't hear from them prior to the wire being sent, I want to make sure I have support to pass along to them just in case.

Best,
Ashley

---

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:21 PM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Sounds good. Thank you.

On Mon, Dec 29, 2025 at 2:15 PM Ashley Gunther <AGunther@nexpoint.com> wrote:

Tomorrow - Im coordinating with Nancy and most likely won't make the cut off time today. I'll send over the wire confirmation when it's available as well!

Best,

Ashley

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:11 PM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Ashley -

When do you think you will send the wire? Just wanted to know when I should be looking for it.

Thank you,

Shawn

On Mon, Dec 29, 2025 at 11:04 AM Shawn Raver <sraver@dafholdco.com> wrote:

Hi Ashley -

See below for wiring instructions:

CLO Holdco, LLC
6716 Glenhurst Dr.
Dallas, TX 75254
Hancock Whitney
5728 State Highway 121
Plano, TX 75024
Routing: 113000968
Account #: 071173413
FBO: Hunter Mountain Investment Trust

Kristin's amounts are accurate, and as she mentions, principal was overpaid by $2,000 last year, so you can reduce the principal payment this year by that amount if you wish.

Please let me know if you have any additional questions.

Thanks,
Shawn

On Mon, Dec 29, 2025 at 10:49 AM Ashley Gunther <AGunther@nexpoint.com> wrote:

Hi Shawn,

Can you please confirm wire information for me? I have the amortization schedule that Kristin had but if you would like to send me one from you? Or let me know if you want the one I have on file already.

Thank you in advance,
Ashley

**From:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Sent:** Monday, December 29, 2025 10:43:00 AM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Cc:** sraver@dafholdco.com <sraver@dafholdco.com>
**Subject:** RE: DIT Note Pmt

Ashley,

I hope you had a wonderful holiday!

As a reminder, pursuant to court order of June 30, 2025 the Dugaboy note was assigned by Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Accordingly, while we can confirm that the payment amounts you reference below are consistent with our calculations, payment instructions and point of contact on the note are different this year.

I've cc'd Shawn Raver who should be able to assist you with payment instructions and can independently confirm amounts. As a reminder, Dugaboy paid an extra $2,000.00 last year, which, consistent with the terms of the note, was applied to principal. So assuming the continued amortization of the note with minimum principal and interest payments, the final principal payment will be smaller as a result of last year's small principal prepayment. I've attached a copy of our correspondence from last year.

Thanks,
Kristin

**From:** Ashley Gunther <AGunther@nexpoint.com>
**Sent:** Wednesday, December 24, 2025 9:49 AM
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** DIT Note Pmt

Hi Kristin!

Can you confirm payment details for me for the upcoming Dugaboy note payment?

Total Due: $1,356,891.38
  Principal - $790,214.64
  Interest - $566,676.74

Bank Info from last year's pmt:
  East West Bank - account ending 7745
  Name on account Highland Capital Management LP

Have a Merry Christmas!

Ashley Gunther | Executive Accountant
NEXPOINT
300 Crescent Ct, Suite 700 |Dallas, TX 75201
C: 214.681.8795 | O: 214.550.8339

confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future results, and these investments may lose money and are not insured/guaranteed by [illegible]

DISCLAIMER: This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**From:** Shawn Raver [sraver@dafholdco.com]
**Sent:** 12/30/2025 4:23:45 PM
**To:** Ashley Gunther [AGunther@nexpoint.com]
**Subject:** Re: DIT Note Pmt
**Attachments:** image001.png

Hi Ashley -

We have received the wire and will apply it against the note from Dugaboy to HMIT for the payment due 12/31/25.

Thank you,

Shawn

On Tue, Dec 30, 2025 at 10:12 AM Ashley Gunther <AGunther@nexpoint.com> wrote:
Good morning!

Attached is the wire confirmation for the payment.

Best,
Ashley

---

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:33 PM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Yes, the bank account is held by CLO Holdco, LLC. And yes, once the funds are received, I will be happy to acknowledge that the funds were applied against the note owed by Dugaboy to HMIT. You can also send the amortization schedule previously provided by Highland and I will note the payment on it as well once received.

On Mon, Dec 29, 2025 at 2:29 PM Ashley Gunther <AGunther@nexpoint.com> wrote:
Just to clarify and forgive me for my limited knowledge on this, I don't have the documents for this note being assigned to HMIT, but the bank account holder is CLO Holdco LLC. Is that correct and I'm *not* sending this directly to a HMIT bank account?

Once payment is received, will you be able to send documentation that the funds were received and acknowledged that these were applied to the DIT note under HMIT? I've connected with legal on this end but if I don't hear from them prior to the wire being sent, I want to make sure I have support to pass along to them just in case.

Best,
Ashley

---

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:21 PM

**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Sounds good. Thank you.

On Mon, Dec 29, 2025 at 2:15 PM Ashley Gunther <AGunther@nexpoint.com> wrote:
Tomorrow - Im coordinating with Nancy and most likely won't make the cut off time today. I'll send over the wire confirmation when it's available as well!

Best,
Ashley

---

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, December 29, 2025 2:11 PM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Subject:** Re: DIT Note Pmt

Ashley -

When do you think you will send the wire? Just wanted to know when I should be looking for it.

Thank you,

Shawn

On Mon, Dec 29, 2025 at 11:04 AM Shawn Raver <sraver@dafholdco.com> wrote:
Hi Ashley -

See below for wiring instructions:

CLO Holdco, LLC
6716 Glenhurst Dr.
Dallas, TX 75254
Hancock Whitney
5728 State Highway 121
Plano, TX 75024
Routing: 113000968
Account #: 071173413
FBO: Hunter Mountain Investment Trust

Kristin's amounts are accurate, and as she mentions, principal was overpaid by $2,000 last year, so you can reduce the principal payment this year by that amount if you wish.

Please let me know if you have any additional questions.

Thanks,
Shawn

On Mon, Dec 29, 2025 at 10:49 AM Ashley Gunther <AGunther@nexpoint.com> wrote:
Hi Shawn,

Can you please confirm wire information for me? I have the amortization schedule that Kristin had but if you would like to send me one from you? Or let me know if you want the one I have on file already.

Thank you in advance,
Ashley

---

**From:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Sent:** Monday, December 29, 2025 10:43:00 AM
**To:** Ashley Gunther <AGunther@nexpoint.com>
**Cc:** sraver@dafholdco.com <sraver@dafholdco.com>
**Subject:** RE: DIT Note Pmt

Ashley,

I hope you had a wonderful holiday!

As a reminder, pursuant to court order of June 30, 2025 the Dugaboy note was assigned by Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Accordingly, while we can confirm that the payment amounts you reference below are consistent with our calculations, payment instructions and point of contact on the note are different this year.

I've cc'd Shawn Raver who should be able to assist you with payment instructions and can independently confirm amounts. As a reminder, Dugaboy paid an extra $2,000.00 last year, which, consistent with the terms of the note, was applied to principal. So assuming the continued amortization of the note with minimum principal and interest payments, the final principal payment will be smaller as a result of last year's small principal prepayment. I've attached a copy of our correspondence from last year.

Thanks,
Kristin

**From:** Ashley Gunther <AGunther@nexpoint.com>
**Sent:** Wednesday, December 24, 2025 9:49 AM
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** DIT Note Pmt

Hi Kristin!

Can you confirm payment details for me for the upcoming Dugaboy note payment?

Total Due: $1,356,891.38
  Principal - $790,214.64
  Interest - $566,676.74

Bank Info from last year's pmt:

East West Bank - account ending 7745

Name on account Highland Capital Management LP

Have a Merry Christmas!

Ashley Gunther | Executive Accountant
NEXPOINT
300 Crescent Ct, Suite 700 | Dallas, TX 75201
C: 214.681.8795 | O: 214.550.8339

DISCLAIMER: Securities offered through NexPoint Securities, Inc., ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**From:** Shawn Raver [sraver@datholdco.com]
**Sent:** 7/1/2025 9:25:24 PM
**To:** Kristin Hendrix [KHendrix@highlandcapital.com]
**CC:** David Klos [DKlos@highlandcapital.com]
**Subject:** Re: $500k payment

Received, thank you!

On Tue, Jul 1, 2025 at 4:17 PM Kristin Hendrix <KHendrix@highlandcapital.com> wrote:

Shawn,

This wire for $500k has been re-sent. Can you please confirm receipt?

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Tuesday, July 1, 2025 3:17 PM
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>
**Subject:** Re: $500k payment

Yes, the account is held by CLO Holdco, LLC. Sorry, that is why we had the c/o in the instructions. I think Dave is going to send directly to CLO Holdco, LLC and reference Hunter Mountain.

Thanks,
Shawn

On Tue, Jul 1, 2025 at 3:12 PM Kristin Hendrix <KHendrix@highlandcapital.com> wrote:

Shawn,

Can you confirm the account name?

Get Outlook for iOS

---

**From:** David Klos <DKlos@HighlandCapital.com>
**Sent:** Tuesday, July 1, 2025 2:41:57 PM
**To:** Shawn Raver <sraver@dafholdco.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** RE: $500k payment

Odd – ok the funds haven't bounced back to our account, so maybe they just haven't been applied. Fed ref number is below. Try sharing this with your bank to see if they can locate the funds.

20250701MMQFMP27001749

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Tuesday, July 1, 2025 2:37 PM
**To:** David Klos <DKlos@HighlandCapital.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** Re: $500k payment

Hi Dave -

I still don't see the wire on my end. Everything looks good on the instructions provided but let me know if it is a problem on my end.

Thanks,

Shawn

On Tue, Jul 1, 2025 at 10:13 AM David Klos <DKlos@highlandcapital.com> wrote:

Hi Shawn,

We released the $500k payment this morning pursuant to the settlement agreement and to the wire instructions included in the agreement. Can you please confirm receipt at your earliest convenience. Thank you.

Dave

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**From:** Shawn Raver [sraver@datholdco.com]
**Sent:** 7/2/2025 5:34:43 PM
**To:** jpseeryjr@gmail.com
**CC:** Mark Tax [mpatricktax1040@gmail.com]; Louis M. Phillips [Louis.Phillips@kellyhart.com]; John A. Morris [jmorris@pszjlaw.com]; David Klos [DKlos@highlandcapital.com]; Kristin Hendrix [KHendrix@highlandcapital.com]; James P. Seery Jr [jseery@highlandcapital.com]; Tim Cournoyer [TCournoyer@highlandcapital.com]
**Subject:** Re: NOTICE

Jim -

Confirmed. Thank you.

Shawn

On Wed, Jul 2, 2025 at 11:24 AM jpseeryjr@gmail.com <jpseeryjr@gmail.com> wrote:

Mark and Shawn:

Wilmington Trust sent a **$9,707,830.82 wire** this morning to the instructions highlighted below. Can you please confirm receipt.

Thank you.

Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** Mark Tax <mpatricktax1040@gmail.com>
**Date:** Tuesday, July 1, 2025 at 4:49 PM
**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Cc:** Shawn Raver <sraver@dafholdco.com>, Louis M. Phillips <Louis.Phillips@kellyhart.com>, John A. Morris <jmorris@pszjlaw.com>, David Klos <DKlos@highlandcapital.com>, Kristin Hendrix <KHendrix@highlandcapital.com>, James P. Seery Jr <jseery@highlandcapital.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>
**Subject:** Re: NOTICE

Confirmed!

On Tue, Jul 1, 2025, 3:46 PM jpseeryjr@gmail.com <jpseeryjr@gmail.com> wrote:

Mark and Sean:

Capitalized terms used herein have the meanings ascribed to them in the May 19, 2025 Settlement Agreement & General Release.

As Shawn discussed with David Klos , the wire instructions you provided in section 3 of the Agreement do not work for Hunter Mountain Investment Trust. On behalf of the Indemnity Trust, Wilmington Trust

and East-West Bank both attempted to wire funds to the account today and those funds were returned.

We understand from Shawn that HMIT and the HMIT Entities are expressly **directing** the Highland Entities and the Indemnity Trust to wire **ALL** funds required to made under the Agreement to CLO Holdco LLC on behalf of Hunter Mountain Investment Trust as follows:

| | |
|---|---|
| Account Name: | CLO Holdco LLC |
| Bank Name: | Hancock Whitney Bank |
| Account #: | 071173413 |
| Routing #: | 113000968 |
| Reference: | Highland Distributions FBO Hunter Mountain Investment Trust |

**Would you both confirm by return email to all (one email from each of you) the above direction by Hunter Mountain Investment Trust and the HMIT entities. Upon receipt of both emails directing payment to the above account, we will direct Wilmington Trust to make the payment required by section 5(a) of the Agreement and East-West Bank to make the payment required by section 3 of the Agreement.**

Best, Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

**From:** Chris Rice [crice@nexpointservices.com]
**Sent:** 6/25/2025 1:32:19 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]
**Subject:** FW: Bloomberg Payer# 0030552734: Bloomberg Service Suspension Notice
**Attachments:** Invoice 5608864709.PDF

Chris Rice CPA
Director - Fund Analysis

O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

-----Original Message-----
From: cgutierre137@bloomberg.net <cgutierre137@bloomberg.net>
Sent: Wednesday, June 25, 2025 8:03 AM
To: MPATRICK@RANDADVISORS.COM; Chris Rice <crice@nexpointservices.com>
Subject: Bloomberg Payer# 0030552734: Bloomberg Service Suspension Notice

Dear Valued Customer,

We attempted to reach you over the phone earlier, but were unsuccessful. We are following up on the payment status of the following past due balance.

| Account | Date | Invoice | Currency | Amount | Arrears |
|---|---|---|---|---|---|
| 30552734 | 05/05/2025 | 5608864709 | USD | 7,995.00 | 51 |
| | | | | ============ | |
| Amount to Pay: | | | | 7,995.00 | |

To avoid interruption of your service, scheduled to begin on 07/07/2025, please forward confirmation of payment via e-mail as soon as possible. Should you have any questions or concerns, please do not hesitate to contact me.

Please Note:
Remittance should be emailed to cashteam1@bloomberg.net at least 24 hours prior to submitting your payment.

Thank you,

Christian Gutierrez
1-646-324-3135
cgutierre137@bloomberg.net
1-212-318-2000

IMPORTANT:

Please remember to log on to {https://service.bloomberg.com} service in order to access your billing account online. If you would like to be enabled, please contact me to obtain your username and password.

DISCLAIMER-Securities offered through NexPoint Securities, Inc., ("NexPoint Securities" ) Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

Bloomberg

FOR INVOICE INQUIRY, PLEASE CALL: Customer Support 1-212-318-2000

**BLOOMBERG FINANCE L.P.**
**731 Lexington Avenue**
**New York, NY 10022**
**(Do not send checks to this location)**

PLEASE SEND ALL CORRESPONDENCE TO:
**BLOOMBERG L.P.**
**731 Lexington Avenue**
**New York, NY 10022**
**(Do not send checks to this location)**

# INVOICE

**Bill To:**
RAND ADVISORS, LLC
2101 CEDAR SPRINGS RD
SUITE 1200
DALLAS TX 75201-2104
USA
**Attn:** MARK PATRICK

PY 30552734

**Customer:**
RAND ADVISORS, LLC
2101 CEDAR SPRINGS RD
SUITE 1200
DALLAS TX 75201-2104
USA
**Attn:** MARK PATRICK

**Please pay upon receipt**

| INVOICE NUMBER | INVOICE DATE | ACCOUNT NUMBER | FEDERAL TAX I.D. NO. |
|---|---|---|---|
| 5608864709 | 05/05/2025 | 30552734 | 06-1818168 |

| LINE | QTY | CHANGE ACTIVITY | RELATED ACCT | DESCRIPTION | RATE | PERIOD START | PERIOD END | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | | Bloomberg Terminal | 2,500.00 | 05/02/25 | 08/01/25 | 7,500.00 |

"By directing the payment of and/or paying this invoice, you agree that the payment for and use of the products and services listed above do not violate any applicable ERISA or securities laws, breach any fiduciary, contractual, or other obligation of Customer, and, if applicable, satisfy the requirements of Section 28(e) of the Securities Exchange Act of 1934, as amended.

* This invoice is due upon receipt. If payment is not received within 28 days of the invoice date, you will receive a late notice. Soon afterward, the Bloomberg users on this account will receive a message on their Bloomberg terminal notifying them that the account is overdue and their service is in jeopardy of suspension. If the invoice remains unpaid for 56 days after the invoice date, the Bloomberg service will be suspended until payment is received, as per the terms of your contract with BFLP. If you have any questions, please call the telephone number on the upper right hand corner of this invoice.

**PLEASE REMIT PAYMENTS IN U.S. DOLLARS TO:**
**Bank of America, Bloomberg Finance LP, Account 94017-33396**
**Via WIRE: Routing 026009593 / S.W.I.F.T. BIC: BOFAUS3N**
**Via ACH: Routing 011900571; Via Check: Bloomberg Finance LP**
**Mail to: Bloomberg Finance LP, P.O. Box 416604, Boston, MA 02241-6604**

**PLEASE REFERENCE INVOICE NUMBER 5608864709 WITH PAYMENT**

| | |
|---|---|
| SUBTOTAL | 7,500.00 |
| 8.250% TAX | 495.00 |
| **TOTAL (USD )** | **7,995.00** |

**From:** Matthew Kern [mkern@nexpoint.com]
**Sent:** 7/10/2025 7:13:58 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb5ae5337d6500-SRaver]
**Subject:** FW: [AI Processed]***Payment Reminder*** - NEXPOINT ASSET MANAGEMENT, LP - FM
**Attachments:** 70016172.pdf

Hey Shawn,

Attached is a RAND Advisors invoice.

Thanks,

Matthew Kern
Operations
NEXPOINT
O: (737) 947-1026
mkern@nexpoint.com | www.nexpoint.com

**From:** anubhav.saxena2@spglobal.com <anubhav.saxena2@spglobal.com>
**Sent:** Thursday, July 10, 2025 5:33 AM
**To:** Matthew Kern <mkern@nexpoint.com>
**Cc:** bhawna.jain2@spglobal.com; I-Operations <I-Operations@NexPoint.com>
**Subject:** RE: [AI Processed]***Payment Reminder*** - NEXPOINT ASSET MANAGEMENT, LP - FM

Hello Matthew,

Hope you are doing well..!!

Attached is a copy of the statement for your reference. If you require any assistance, please don't hesitate to reach out to me.

Best Regards,
**Anubhav Saxena**
Account Receivable Specialist
**S&P Global** Business Services - Finance
Candor TechSpace, Sector-62, Noida, India
anubhav.saxena2@spglobal.com

**From:** Matthew Kern <mkern@nexpoint.com>
**Sent:** Thursday, July 10, 2025 1:53 AM
**To:** Saxena, Anubhav <anubhav.saxena2@spglobal.com>
**Cc:** Jain, Bhawna <bhawna.jain2@spglobal.com>; I-Operations <I-Operations@NexPoint.com>
**Subject:** RE: [AI Processed]***Payment Reminder*** - NEXPOINT ASSET MANAGEMENT, LP - FM

Hello Anubhav,

Can you please provide PDFs for the outstanding invoices?

Thanks,

Matthew Kern
Operations
NEXPOINT
O: (737) 947-1976
mkern@nexpoint.com | www.nexpoint.com

**From:** anubhav.saxena2@spglobal.com <anubhav.saxena2@spglobal.com>
**Sent:** Wednesday, July 9, 2025 3:27 AM
**To:** Invoices <ap@skyviewgroup.com>
**Cc:** Kristin Hendrix <khendrix@highlandcapital.com>; bhawna.jain2@spglobal.com
**Subject:** [AI Processed]***Payment Reminder*** - NEXPOINT ASSET MANAGEMENT, LP - FM

Hello Team,

I hope this email finds you well, we wanted to remind you about the outstanding balances .

As of today, the outstanding balance is USD.

$567.09

If you have any questions or concerns about the statements, please feel free to contact us. We are here to help you resolve any issues quickly.

We appreciate your attention to this matter and kindly request an update on the outstanding payment at your earliest convenience.

Thank you for your continued support.

I will also want to confirm we need to update the distribution list for this Fund.

Best Regards,
**Anubhav Saxena**
Account Receivable Specialist
**S&P Global** Business Services - Finance
Candor TechSpace, Sector-62, Noida, India
anubhav.saxena2@spglobal.com

---

The information contained in this message is intended only for the recipient, and may be a confidential attorney-client communication or may otherwise be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, please be aware that any dissemination or copying of this communication is strictly prohibited. If you have

received this communication in error, please immediately notify us by replying to the message and deleting it from your computer. S&P Global Inc. reserves the right, subject to applicable local law, to monitor, review and process the content of any electronic message or information sent to or from S&P Global Inc. e-mail addresses without informing the sender or recipient of the message. By sending electronic message or information to S&P Global Inc. e-mail addresses you, as the sender, are consenting to S&P Global Inc. processing any of your personal data therein.

DISCLAIMER: This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary, or legally privileged information. If you received this message in error, please immediately delete it.

DISCLAIMER: Securities offered through NexPoint Securities, Inc. ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation, or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representations as to the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

Case 3:26-cv-02496-D Document 17-27 Filed 09/08/26 Page 119 of 333 PageID 11301

S&P Global

# Buyside Fees Invoice Statement

Markit North America Inc, 55 Water Street, 45th Floor, New York, NY 10041 US — Fed Tax ID: 13-4153988

**Bill-To: Rand Advisors Series I Insurance Fund Series Interests Of The Sali** 70016172

ATTN:
300 Crescent Court, Suite 700
Dallas, TX 75201 US
9724196292 vpatel@highlandcapital.com

**Statement of Account**

Statement Date 07/08/2025
Customer Number 70016172

**Fund Admin:**
**Statement Number:** US0M017X99-20250710
**Fund Manager:** NEXPOINT ASSET MANAGEMENT, LP
**Fund:** RAND ADVISORS SERIES I INSURANCE FUND SERIES INTERESTS OF THE SALI
**Fund MEI:** [US0M017X99]
**Payment Terms:** 30 Days
**Fund Contact:** Vishal Patel
**All amounts in USD**

| Doc Ref | Document Period MM/YY | Days Outstanding | Transaction Type | Amount | Tax Amount | Total Amount |
|---|---|---|---|---|---|---|
| US0M017X99 | 08/23 | 647 | Buyside Fees | 76.00 | 5.02 | 81.02 |
| US0M017X99 | 09/23 | 617 | Buyside Fees | 76.00 | 5.02 | 81.02 |
| | | | **Balance Due** | **152.00** | **10.04** | **162.04** |

Please pay by bank transfer only (all charges borne by payer bank) to:

Bank: HSBC Bank USA, N.A., 452 Fifth Avenue, New York, NY 10018
Bank Routing Code: 021 001 088
Account Number: 480 259 151
Account Name: Markit North America
SWIFT Code: MRMDUS33

**Reference the Fund MEI number in transfer details.**
Markit North America Inc.
Tax ID Number: 13-4153988

Kindly send all your remittance/payment advice to MK-FinanceCreditControl0141@ihsmarkit.com

**Cheque Remit To:**
Markit North America Inc.
PO Box 122360, Dallas, TX 75312-2360

Expressed Check Payments

**From:** Chris Rice [crice@nexpointservices.com]
**Sent:** 6/18/2025 8:43:12 PM
**To:** Patrick Casale [PCasale@cohenco.com]
**CC:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]
**Subject:** RE: Rand PE Fund I
**Attachments:** 12.31.24 Rand PE Fund I Audit Schedules.xlsx; Rand PE Fund I 2024 Financial Statements_v3.pdf

Adding workbook as attachment, so you can verify annualization on FIHI comment.

Let me know if I missed anything, or if you have any additional comments.

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Patrick Casale <PCasale@cohenco.com>
**Sent:** Wednesday, June 18, 2025 12:32 PM
**To:** Chris Rice <crice@nexpointservices.com>
**Cc:** Shawn Raver <sraver@randadvisors.com>
**Subject:** Rand PE Fund I

Hi All,

See attached for comments from Lori and I on the latest draft. I expect these to be the final comments.

Shawn - since the Atlas audit is complete, please pay the attached related to that audit. Also, we are substantially complete with Rand, please pay the attached for the 12/31/2024 audit period. Once we have formally released these financial statements for Rand Lori and I will determine that amount to be billed specific to the Rand liquidation (no more than $15,000 according to our engagement letter for the liquidation) and we'll discuss that with you before we send the bill.

Let me know if you have any questions.

Thanks,

**Patrick Casale, CPA**
Senior Accountant

Cohen & Co
1350 Euclid Ave., Suite 800 | Cleveland, OH 44115
Direct: 216.923.5155 | Fax: 866.818.4538
LinkedIn | X | Facebook | Blog

**DISCLOSURE**
"Cohen & Co" is the brand name under which Cohen & Company, Ltd. and Cohen & Co Advisory, LLC, and its subsidiary entities, provide professional services. Cohen & Company, Ltd. and Cohen & Co Advisory, LLC practice in an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. Cohen & Company, Ltd. is a licensed independent CPA firm that provides attest services to its clients. Cohen & Co Advisory, LLC and its subsidiary entities provide tax, advisory and business

consulting services to their clients and are not licensed CPA firms. The entities operating under the Cohen & Co brand are independently owned and are not responsible for the services provided by any other entity operating under the Cohen & Co brand. Our use of terms such as "our firm," "we," "us" and other terms of similar import denote the alternative practice structure of Cohen & Company, Ltd. and Cohen & Co Advisory, LLC.

DISCLAIMER: Securities offered through NexPoint Securities, Inc. ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. [illegible] This email is for informational purposes only [illegible] NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

# RAND PE FUND I, L.P.
(A DELAWARE "SERIES" LIMITED PARTNERSHIP)

## FINANCIAL STATEMENTS
INDEPENDENT AUDITOR'S REPORT
FOR THE YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24,2025 (LIQUIDATION DATE)

# RAND PE FUND I, L.P.

## TABLE OF CONTENTS

DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24,2025 (LIQUIDATION DATE)


| | Page |
|---|---|
| **Independent Auditor's Report** | 1 |
| **Financial Statements** | |
| Statements of Assets, Liabilities and Partners' Capital | 3 |
| Schedule of Investments | 4 |
| Statements of Operations | 5 |
| Statements of Changes in Partners' Capital | 6 |
| Statements of Cash Flows | 7 |
| Notes to Financial Statements | 8 |

PLACEHOLDER

March 31, 2025

# RAND PE FUND I, L.P.

## STATEMENTS OF ASSETS, LIABILITIES AND PARTNERS' CAPITAL

### YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | December 31,2024 | February 24, 2025 (liquidation date) |
|---|---|---|
| **Assets** | | |
| Investment, at fair value (cost $15,986,892 and $0, respectively) | $ 1,000,000 | $ - |
| Cash and cash equivalents | 19,891 | 1,019,678 |
| Total assets | $ 1,019,891 | $ 1,019,678 |
| | | |
| **Liabilities** | | |
| Accrued expenses | $ 43,900 | $ 69,965 |
| Distributions payable | - | 949,713 |
| Total liabilities | 43,900 | 1,019,678 |
| | | |
| **Partners' capital** | 975,991 | - |
| Total liabilities and partners' capital | $ 1,019,891 | $ 1,019,678 |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.
## SCHEDULE OF INVESTMENTS
YEAR ENDED DECEMBER 31, 2024

| Ownership Percentage | Description | Fair Value | % of Partners' Capital |
|---|---|---|---|
| | **Investment in LLC interests** | | |
| | United States | | |
| | Financial | | |
| 100% | *Beacon Mountain, LLC (cost $15,986,892)* | $ 1,000,000 | 102.46% |
| | **Total Investment (cost $15,986,892)** | $ 1,000,000 | 102.46% |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.
## STATEMENTS OF OPERATIONS
YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | Year ended December 31, 2024 | Period ended February 24, 2025 (liquidation date) |
|---|---|---|
| **Investment income and expenses** | | |
| **Income** | | |
| Investment income | $ - | $ - |
| **Expenses** | | |
| Professional fees | 43,900 | 25,000 |
| Custodian fees | 2,650 | 1,278 |
| Other expense | - | - |
| Total expenses | 46,550 | 26,278 |
| Net investment loss | (46,550) | (26,278) |
| **Realized gain** | | |
| Net realized loss from settlement income | (52,242) | - |
| Net realized loss on investments | - | (14,986,892) |
| Net change in unrealized depreciation on investments | 1,000,000 | 14,986,892 |
| | 947,758 | - |
| **Net increase (decrease) in partners' capital resulting from operations** | $ 901,208 | $ (26,278) |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.

## STATEMENTS OF CHANGES IN PARTNERS' CAPITAL

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | General Partner | Series I Limited Partners | Total |
|---|---|---|---|
| **Partners' capital at December 31, 2023** | $ - | $ 74,783 | $ 74,783 |
| **Operating activities** | | | |
| Net investment loss | - | (46,550) | (46,550) |
| Net realized loss from settlement income | - | (52,242) | (52,242) |
| Net change in unrealized depreciation on investments | - | 1,000,000 | 1,000,000 |
| Net increase in partners' capital resulting from operations | - | 901,208 | 901,208 |
| **Partners' capital at December 31, 2024** | **$ -** | **$ 975,991** | **$ 975,991** |

| | General Partner | Series I Limited Partners | Total |
|---|---|---|---|
| **Partners' capital at December 31, 2024** | $ - | $ 975,991 | $ 975,991 |
| **Operating activities** | | | |
| Net investment loss | - | (26,278) | (26,278) |
| Net realized loss on investments | - | (14,986,892) | (14,986,892) |
| Net change in unrealized depreciation on investments | - | 14,986,892 | 14,986,892 |
| Net decrease in partners' capital resulting from operations | - | (26,278) | (26,278) |
| **Capital activities** | | | |
| Distributions payable | - | (949,713) | (949,713) |
| Net change in partners' capital resulting from capital activities | - | (949,713) | (949,713) |
| **Partners' capital at February 24, 2025 (liquidation date)** | **$ -** | **$ -** | **$ -** |

The accompanying notes are an integral part of these financial statements.

# RAND PE FUND I, L.P.

## STATEMENTS OF CASH FLOWS

YEAR ENDED DECEMBER 31, 2024 AND PERIOD ENDED FEBRUARY 24, 2025 (LIQUIDATION DATE)

| | December 31,2024 | February 24, 2025 (liquidation date) |
|---|---|---|
| **Cash flows from operating activities** | | |
| Net increase (decrease) in partners' capital resulting from operations | $ 901,208 | $ (26,278) |
| Adjustments to reconcile net increase (decrease) in partners' capital resulting from operations to net cash provided by (used in) operating activities: | | |
| Proceeds from the disposition of investments | - | 1,000,000 |
| Net realized loss on investment transactions | - | (14,986,892) |
| Net change in unrealized depreciation on investments | (1,000,000) | 14,986,892 |
| Net changes in operating assets and liabilities | | |
| Increase in other assets | 62,242 | - |
| Increase in accrued expenses | (5,100) | 26,065 |
| Net cash provided by (used in) operating activities | (41,650) | 999,787 |
| **Cash flows from financing activities** | | |
| Capital distributions, net of payable* | - | - |
| Net cash provided by financing activities | - | - |
| Net increase (decrease) in cash | (41,650) | 999,787 |
| Cash and cash equivalents, beginning of year | 61,541 | 19,891 |
| Cash and cash equivalents, end of year | $ 19,891 | $ 1,019,678 |

**Capital distributions have not been paid as of the date of the audit opinion*

The accompanying notes are an integral part of these financial statements.

**1. Organization**

Rand PE Fund I, L.P. (the "Partnership") was organized as a "series" limited partnership under the laws of Delaware Revised Uniform Limited Partnership Act on October 29, 2015, and commenced operations on December 17, 2015. The Partnership offers partner interests in the Partnership ("Interests") in a private placement pursuant to section 4(a)(2) of the Securities Act of 1933, as amended ("Securities Act"), and Regulation D promulgated thereunder.

Rand PE Fund Management, LLC, a Delaware limited liability company (the "General Partner"), is the general partner of the Partnership and is responsible for the management of the Partnership's affairs. Rand Advisors, LLC, a Delaware limited liability company (the "Investment Manager"), is the investment manager of the Partnership and has discretionary investment authority over the Partnership's assets. The Investment Manager is registered as an investment adviser with the U.S. Securities and Exchange Commission ("SEC"). The Investment Manager has a shared services agreement with Skyview Group ("Skyview") to provide certain limited back office services including, but not limited to, bookkeeping, financial reporting, tax preparation, operations, and IT support. Neither the Investment Manager nor Skyview receives any compensation from the Partnership for these services.

The Partnership was formed to pool investment funds of its investors (each, a "Limited Partner" and, collectively, "Limited Partners"; and, together with the General Partner (as defined above), "Partners") for the purpose of investing and trading in a wide variety of securities, financial instruments and other assets and investments, including other investment vehicles, as more fully described herein.

The Partnership is governed by the Agreement of Limited Partnership (the "Partnership Agreement") dated October 29, 2015. Interests in the Partnership will be offered in separate series of interests ("Series"). All current Limited Partners have been enrolled in "Series 1 Interests". Each Series will have separate rights and obligations. In addition, each Series may correspond to a separate portfolio of assets, which may have different investment objectives and strategies. The Partnership may issue additional Series in the future, which may have rights and obligations that differ from those of the Series 1 Interests with respect to any matters, including without limitation, fees, withdrawal rights, participation in Side Pocket Accounts (as defined in the Partnership Agreement) and other rights and terms. The terms of such additional Series will be determined by the General Partner, in its sole discretion.

Each Series shall have separate rights, powers and duties with respect to its investment portfolio and other property and obligations and the profits and losses associated with such portfolio, property and obligations. The Partnership will maintain separate and distinct records for each Series and shall hold and account for the assets and liabilities of such Series separately from other Series.

On June 21, 2022, the Partnership entered into a confidential settlement agreement with certain third-parties who agreed to pay all legal, audit, and custody expenses incurred by Hunter Mountain Investment Trust ("HMIT"), an entity which the Partnership had owned indirectly through its investment in Beacon Mountain, LLC, and the Partnership for the duration of the Highland Capital Management, L.P. ("HCMLP") bankruptcy. As of December 31, 2024 this agreement is not expected to result in any further actual reimbursement to the Partnership and all related income and receivables have been written off.

On August 1, 2022, Rand Advisors, LLC was acquired by Rand Advisors Holding Corp, effecting a change in control of the Investment Manager.

On February 6, 2025, the General Partner redeemed certain limited partners in the Partnership for their Capital Account value of $0. Following the sale of the Partnership's sole investment thereafter, the Partnership caused distributions to be made to such limited partners for their respective share of such sale proceeds pursuant to the "side pocket" status of such investment.

On February 12, 2025, the Partnership's sole investment was sold and thereafter on February 24, 2025, the Investment Manager decided to dissolve the Partnership at which point liquidation became imminent. Under the plan of liquidation, the Partnership plans to settle all outstanding liabilities and pay out distributions to the partners. The adoption of the liquidation basis of accounting did not have a material effect on the carrying value of the Partnership's assets and liabilities as of the date of adoption.

## 2. Significant Accounting Policies

The following is a summary of the significant accounting policies followed by the Partnership in the preparation of its financial statements.

**Basis of Accounting**
The Partnership's financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("U.S. GAAP") and are stated in United States dollars. The Partnership is an investment company in conformity with U.S. GAAP and as such follows the accounting and reporting guidance under Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 946, *Financial Services – Investment Companies*.

**Use of Estimates**
The preparation of financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of increases and decreases in partners' capital from operations during the period. The Partnership's significant estimates include the fair value of its investments and derivative contracts. Actual results could differ from those estimates.

**Investment Transactions**
Investment transactions are recorded on a trade-date basis. Realized gains and losses on investment transactions are determined based on specific identification using the first-in, first-out method.

Investments are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Statements of operations.

See Note 6 for the Partnership's fair value hierarchy disclosures.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. banks or brokers and deposits with original maturities of less than 90 days. Cash equivalents are carried at cost, which approximates fair value. At December 31, 2025, the Partnership held cash balances at certain financial institutions within the federally insured limit of $250,000. At February 24, 2025 the Partnership held cash balances at certain financial institutions which exceeded the federally insured limit of $250,000 by approximately $770,000. The Investment Manager regularly monitors the credit quality of these institutions.

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums are accreted or amortized to interest income except for deeply discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis. Amendment fees are recognized when received. Operating expenses are recorded on the accrual basis as incurred.

**Allocation of Gains and Losses**
Net capital change as a result of operations is generally allocated to the capital accounts of each limited partner in proportion to their respective ownership percentages as determined at the beginning of each accounting period adjusted for any additional contributions or withdrawals.

## 3. Taxes

The Partnership is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of the Partnership's net taxable income. Interest, dividends and other income realized by the Partnership from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

The Partnership applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the application of this guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2024.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2024, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from December 31, 2020 forward.

The Partnership recognizes interest and penalties, if any, related to unrecognized tax benefits as income tax expense in the Statements of operations. During the year ended December 31, 2024 and period ended February 24, 2025 (liquidation date), the Partnership did not incur any interest or penalties.

## 4. Limited Partnership Agreement

**Capital Contributions and Withdrawals**
The minimum initial capital contribution that will be accepted from a new Limited Partner is $500,000. The minimum additional capital contribution that will be accepted from an existing Limited Partner is $500,000. In each case, the General Partner has discretion to accept lesser amounts. Generally, new Limited Partners will be admitted on the first day of each month, and withdrawals may be made on the last day of each calendar quarter upon 91 days' prior written notice and subject to certain other restrictions as described herein (unless, in each case, the General Partner, in its sole discretion, permits subscriptions or withdrawals at another time).

There is no public market for the limited partner interests in the Partnership ("Interests") nor is any expected to develop. Even if such a market develops, no distribution, resale or transfer of an Interest will be permitted, except in accordance with the provisions of the Securities Act, the rules and regulations promulgated thereunder, any applicable state securities laws and the terms and conditions of the Partnership Agreement. Any transfer of an Interest by a Limited Partner, public or private, will require the consent of the General Partner.

Each Limited Partner may withdraw a minimum of $100,000 as of the last day of each calendar quarter and at such other times as the General Partner may determine in its sole discretion, upon at least 91 days' prior written notice. Unless the General Partner consents, partial withdrawals may not be made if they would reduce a Limited Partner's capital account balance below $500,000. Generally, not less than 90% of the withdrawal proceeds (excluding any amounts held in any Side Pocket Accounts) will be paid within 90 days after the applicable withdrawal date. The balance of the amount payable upon such withdrawal will be paid without interest, within 90 days after the completion of the audited financial statements for the fiscal year in which the withdrawal occurs.

**Limitations on Withdrawals**
The Partnership or a Series may suspend (or postpone) withdrawals, subscriptions, calculations of Net Asset Value and/or payments upon any withdrawals (in whole or in part) from capital accounts: (i) during the existence of any state of affairs which, in the opinion of the General Partner, makes the disposition of the Partnership's investments impractical or prejudicial to the Partners, or where such state of affairs, in the opinion of the General Partner, makes the determination of the price or value of the Partnership's investments impractical or prejudicial to the Partners; (ii) where any such withdrawals, subscriptions, calculations and/or payments, in the opinion of the General Partner, would result in the violation of any applicable law or regulation; (iii) if the General Partner determines, in its sole discretion, that such suspension or postponement is prudent in order to prevent the Partnership from being subject to adverse tax or regulatory implications; or (iv) for such other reasons or for such other periods as the General Partner may in good faith determine.

**Side Pocket Accounts**
A Limited Partner may not withdraw any of the amounts in its capital account that are attributable to the value of an illiquid investment held in a Side Pocket Account until such time that such illiquid investment (or the sales proceeds thereof) is reallocated to such Limited Partner's capital account. At the sole discretion of the Investment Manager, an illiquid investment may be held in a Side Pocket Account until the occurrence of a Realization Event (as defined in the Partnership Agreement). At December 31, 2024, the Partnership's investment was held in a side pocket account. At February 24, 2025 (liquidation date), the investment had been sold.

**Management Fees**
The Partnership has entered into an investment management agreement (as the same may be amended and/or restated from time to time, the "Investment Management Agreement") by and among the Partnership and the Investment Manager. In consideration for services provided pursuant to the Investment Management Agreement, the Investment Manager will receive a quarterly management fee ("Management Fee"), equal to a percentage of each Limited Partner's share of the Partnership's Net Asset Value (as defined herein), and based on the Partnership's total Net Asset Value, as follows:

| Partnership's Total Net Asset Value | Management Fee (per annum) |
|---|---|
| $0 - $99,999,999 | 0.5500% |
| $100,000,000 - $199,999,999 | 0.5000% |
| $200,000,000 - $249,999,999 | 0.4500% |

| | |
|---|---|
| $250,000,000 - $499,999,999 | 0.3500% |
| > $500,000,000 | 0.3400% |

The Management Fee will be calculated and payable to the Investment Manager quarterly, in advance, as of the first day of each calendar quarter. A pro rata Management Fee will be charged to Limited Partners on any amounts accepted by the General Partner during a calendar quarter. No management fees were paid to the Investment Manager during the year, as the Investment Manager elected to waive its management fees. The Investment Manager can, at its discretion, waive or reduce the management fee.

**Allocation of Net Increase/(Decrease) in Partners' Capital Resulting from Operations**
The Partnership Agreement specifies the allocation of net income or loss (increases and decreases in net worth, as defined in the Limited Partnership Agreement) to each partner's capital account. Net income or loss includes all gains and losses, whether realized or unrealized, plus all other items of income (such as interest) and less all expenses. Generally, net income and loss for each month (or other period, as the case may be) will be allocated to the partners in proportion to their capital account balances at the start of such month (or such other period). Capital account balances will reflect capital contributions, previous allocations of increases and decreases in net worth and withdrawals.

**5. Financial Instruments with Concentration of Credit Risk and Other Risks**

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership due to a change in the market value of its investments. The Partnership's exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations. These factors may affect the level and volatility of securities prices and the liquidity of the Partnership's investments. Volatility or illiquidity could impair the Partnership's performance or result in losses. The Partnership may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets.

**Liquidity Risk**
The Partnership's limited partner interests have not been registered under the Securities Act or any other applicable securities laws. There is no public market for the interests and neither the Partnership nor the Investment Manager expects such a market to develop.

**Market Concentration**
The Partnership was formed to invest in small to medium-sized companies (i.e., generally with market capitalization of under $1 billion) that are involved in (or are the target of) acquisition attempts or tender offers, and/or in companies involved in work-outs, liquidations, spin-offs, reorganizations, bankruptcies or similar transactions. All of the assets attributable to Series I have been invested in LLC interests of Beacon Mountain, LLC. This limited diversification could expose the Partnership to losses that are disproportionate to market movements as a whole.

**Litigation Risk**
The Partnership is periodically subject to legal actions arising from the ordinary course of business. The ultimate outcome of these cases is inherently uncertain and could result in material losses to the Partnership.

**Limited Diversification**
The Partnership's portfolio could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of risk may increase the losses suffered by the Partnership. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversification could expose the

Partnership to losses that are disproportionate to market movements as a whole. As of December 31, 2024, the Partnership's portfolio consisted of one investment in the LLC interests of Beacon Mountain, LLC. At February 24, 2025 (liquidation date), the investment had been sold.

**Custody Risk**
The clearing operations for the Partnership's investments are provided by major financial institutions. In addition, all of the Partnership's cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of major securities exchanges. The Partnership may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership might be unable to recover the full value of its assets or incur losses due to its assets being unavailable for a period of time.

**Concentration of Investor Risk**
One affiliated entity, Atlas IDF, L.P., held approximately 96.5% of the Partnership's capital balance as of December 31, 2024.

**6. Fair Value Hierarchy of Financial Instruments**

In accordance with the authoritative guidance on fair value measurements and disclosures under U.S. GAAP, the Partnership discloses the fair value of its investments in a hierarchy that prioritizes the inputs to valuation techniques used to measure the fair value. The hierarchy gives the highest priority to valuations based upon unadjusted quoted prices in active markets for identical assets or liabilities (level 1 measurements) and the lowest priority to valuations based upon unobservable inputs that are significant to the valuation (level 3 measurements). The guidance establishes three levels of the fair value hierarchy as follows:

Level 1 – Valuations based on unadjusted prices in active markets for identical assets and liabilities that the Partnership has the ability to access as of the measurement date. Valuations utilizing Level 1 inputs do not require any degree of judgment.

Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for which identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction. When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs. For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above. In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership uses prices and inputs that are current as of the measurement dates. The Partnership also considers the counterparty's nonperformance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership uses actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available or are determined to be unreliable, the Partnership develops methodologies that provide appropriate fair value estimates. Management reviews these methodologies on a continuous basis to account for changing market conditions.

The Investment Manager has established policies, as described above, processes and procedures intended to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent.

As of December 31, 2024, the Partnership's investment consisted of an LLC interest. As of February 24, 2025 (liquidation date), the investment had been sold.

**LLC interests**
As of December 31, 2024, the Partnership's investment was comprised entirely of a membership interest in a nonpublic limited liability company that was valued using commonly accepted valuation methodologies due to not having a readily determinable fair value. The LLC's sole investment is an indirect non-voting limited partner interest in 99.5% of a private investment management firm. This private investment management firm owns equity in a company that is in bankruptcy. The LLC interest is classified as level 3 as it is priced using inputs that are not readily observable.

The following table provides a summary of the investment recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2024. As of February 24,2025, no investments were held by the partnership.

| | Level 1 | Level 2 | Level 3 | Total fair value at December 31, 2024 |
|---|---|---|---|---|
| LLC interests | $ - | $ - | $ 1,000,000 | $ 1,000,000 |

The following table provides a roll forward of the amounts for the year ended December 31, 2024 and February 24, 2025 for financial instruments classified within Level 3. The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement.

| | LLC interests |
|---|---|
| Fair value as of December 31, 2023 | $ - |
| Purchases | - |
| Sales and maturities | - |
| Transfers in | - |
| Transfers out | - |
| Net realized gains/(losses) | - |
| Net change in unrealized gains/(losses) | 1,000,000 |
| Fair value as of December 31, 2024 | $ 1,000,000 |

| | LLC interests |
|---|---|
| Fair value as of December 31, 2024 | $ 1,000,000 |
| Purchases | - |
| Sales and maturities | (1,000,000) |
| Transfers in | - |
| Transfers out | - |
| Net realized gains/(losses) | (14,986,892) |
| Net change in unrealized gains/(losses) | 14,986,892 |
| Fair value as of February 24, 2025 (liquidation date) * | $ - |

*The values in the preceding table are equal to zero.

No transfers between levels occurred during the year ended December 31, 2024, or period ended February 24, 2025.

The following is a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy as of December 31, 2024. As of February 24, 2025 no investments were held by the Partnership.

| Category | Fair Value at December 31, 2024 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| LLC interests | $ 1,000,000 | Transaction Indication of Value | Sales Price | $ 1,000,000 |

## 7. Commitments and Contingencies

In the normal course of business, the Partnership may enter into contracts that provide general indemnifications and contain a variety of representations and warranties that may expose the Partnership to some risk of loss. The amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

## 8. Related Party Transactions

**Management Fees**

For its services to the Partnership, the Investment Manager is entitled to management fees as described in Note 4. For the year ended December 31, 2024 and period ended February 24, 2025 (liquidation

date), the Investment Manager did not earn management fees. The Investment Manager does not charge a management fee on investments in related funds.

## 9. Financial Highlights

Financial highlights for the year ended December 31, 2024 and February 24, 2025 are as follows:

| | Year ended December 31, 2024<br>**Series I** | Period ended February 24, 2025 (liquidation date)<br>**Series I** |
|---|---|---|
| Total return [1] | 1205.10 % | (17.87)% |
| Ratios to average limited partners' capital [2] | | |
| Investment income | 0.0 % | 0.0 % |
| Operating expenses | (37.18)% | (17.87)% |
| Net investment loss | (37.18)% | (17.87)% |

[1] Total return is determined using a time-weighted rate of return methodology in which rates of return are geometrically linked. Total return is reflected after all investment related and operating expenses. An individual investor's return may vary from these returns based on timing of capital transactions.

[2] Expense ratios are determined by dividing the total investment related and operating expenses by the average limited partners' capital. The ratio of net investment income/(loss) is determined by dividing the net investment income/(loss) by the average limited partners' capital.

## 10. Subsequent Events

The General Partner has evaluated subsequent events through June 18, 2024, which is the date the financial statements were available for issuance and has determined no subsequent event disclosure is necessary.

**From:** Chris Rice [crice@nexpoint.com]
**Sent:** 6/12/2025 1:06:08 PM
**To:** Shawn Raver [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=5884c4e8eb444bab91fb8ae5337d6500-SRaver]
**Subject:** RE: Transition

I can check on the limits this morning.

I thought that the limits would have basically been nonexistent because of how I set you up, but I can confirm.

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, June 11, 2025 2:30 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Would you have time to increase my limit for account transfers at PNC? I can't do it myself, another admin has to do it. Not sure what my limit is for Fund Transfers (wires) either, but may need help with that too.

I can explain how to do it if necessary.

Thanks!

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 2:15 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Yea, I do not see myself when I login either. I think they lock it down, so that an admin user cannot alter their own profile.

Are you still not seeing any account balances or anything like that?

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 9, 2025 2:13 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

It is weird. When I go to manage Operators, the only Operators I see are you, Honis, Jonathan and Joye.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 1:00 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Shows that you have all rights., so I would think that the active accounts would be linked to your profile since you are a user under the same company.

I have clicked through all of the hyperlinked options and I do not see anything that indicates assigning accounts or anything like that a profile.




**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 9, 2025 11:39 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Understood. Thanks for looking into it.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 7:47 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

I was OOO on Friday, but I will take some time this morning and check on this again.

**Chris Rice CPA**
Director – Fund Analysis

NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, June 6, 2025 12:23 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Any luck?

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Tuesday, June 3, 2025 3:52 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Let me do some digging. I selected the option to add you as admin, so not sure what the issue would be.

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, June 3, 2025 1:21 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Just following up on this email regarding the PNC accounts. Thank you.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 2, 2025 9:13 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

I am able to login and see the accounts, but it doesn't show me as an operator under the Administration tab. I tried to add myself but apparently I don't have the right to do that.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, May 29, 2025 9:00 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Kind of a clunky site, but I found the area where I could add account access to the two accounts shown below.

I also updated your rights to that of an additional system admin.

Go ahead and login at some point and make sure that the accounts are showing up on the main landing page.

Let me know if there is anything else.

Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-1549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, May 29, 2025 8:57 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

| Account |
|---|
| 4947563461<br>ATLAS IDF LP |
| 4947568529<br>RAND PE FUND I LP |

Logging in to see if I can add accounts for you.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-1549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Thursday, May 29, 2025 8:52 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Can you send me the PNC account numbers again? Thanks.

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Wednesday, May 28, 2025 3:10 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** Re: Transition

I think that's the admin 1 account, which was Honis.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, May 28, 2025 3:08:27 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Are you the Company Administrator on the PNC accounts?

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, May 28, 2025 1:17 PM
**To:** Chris Rice <crice@nexpoint.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Thanks. I got in. Now I just need to add accounts to my operator ID.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Wednesday, May 28, 2025 12:35 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

You should receive emails from PNC now that I have set you up as a user.

Temporary password should be included with one of those emails.

Let me know if you do not receive.

Thanks

**Chris Rice CPA**
Director – Fund Analysis

NEXPOINT

O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, May 27, 2025 1:42 PM
**To:** Chris Rice <crice@nexpoint.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Great, thanks.

2620 White Rock Rd.
Dallas, TX 75214
214-288-9555
Sraver@randadvisors.com

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Tuesday, May 27, 2025 1:21 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

Shawn

I figured out how to add you to the PNC accounts. Please confirm the information that I have highlighted below, so that I can create your account.




Thanks

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550-1549 C: (801) 669-1397
crice@nexpoint.com | www.nexpoint.com

**From:** Chris Rice
**Sent:** Monday, May 5, 2025 9:19 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

Shawn

What do you need from me in terms of transitioning the accounting related work for the monthly NAV closes on Rand PE Fund I, Atlas IDF, and Rand Series I?

Thanks

Chris Rice CPA
Director – Fund Analysis

NEXPOINT

O: (714) 550-4549 | C: (801) 669-1797
crice@nexpointservices.com | www.nexpoint.com

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 3:26 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

maybe I missed something on the settings. You can login and I will text you the code.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 3:01:34 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

It still shows your number and Honis' (I assume) to send the authorization code when I try log into BofA.

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 2:25 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

For BofA, your phone is now main contact priority with your email as second.

I placed myself and Honis with no contact priority.

Business Banking, Credit Cards & Loans - Bank of America

Link to the site above and login credentials are as follows:

- User ID: RANDADVISORS
- PW: Rand4567

Chris Rice CPA
Director – Fund Analysis

NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 2:06 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

214-288-9555

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 2:05 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

What's your cell phone number? I think that some of these require a soft token or something similar linked to you phone.

Chris Rice CPA
Director – Fund Analysis

NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 1:43 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Hi Chris -

I know you have been busy with the audits but wanted to follow up on transitioning access to these accounts (specifically PNC and Bank of America).

Regarding the State Street account, do you have a contact with SALI that would be best to reach out to receive that daily cash activity reports?

Thank you,

Shawn

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, March 26, 2025 10:43 AM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Thanks for the info. The contract would be terminated 60 days from March 17, which I calculated as May 16. It can be handled next week when you are back in town. I just wanted to get the ball rolling on the bank accounts.

Shawn

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 25, 2025 3:01 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

This is the first time that it has been mentioned to me but understood.

As of what date will the contract be terminated? Audits for the funds are ongoing.

We can work with the various banks to figure out access and all that. I will be out Thursday and Friday of this week. Is this something that we can handle this week, or something that needs to be handled more urgently?

**PNC**
All the accounts would be covered once you're set up. Note that there might be some inactive accounts.

- Rand PE
- Atlas IDF
- Atlas IDF GP

**US Bank**

I think that you and Mark already have access to this account. If you are not receiving the cash/activity reports, we can work with them to get their distribution list updated.

- Atlas IDF

**State Street**

You will have to coordinate with SALI on this one because they control the account. I only receive daily cash activity reports that are used to complete the NAV close process.

- RS1

**BofA**

Will need to get you added.

- Rand Advisors

I don't think that I missed any accounts but let me know if you're thinking of any entities that I might have missed.

Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, March 25, 2025 2:26 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>
**Subject:** Transition

Chris -

With Skyview sending notification last week that it is terminating the Services Agreement with Rand Advisors, LLC and its managed funds, I will need to get Mark and myself access (including wire access) to all the active bank accounts.

Please let me know who I need to reach out to get us access to the various bank accounts.

Thanks,
Shawn

DISCLAIMER: Securities offered through NexPoint Securities, Inc. ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

**From:** Shawn Raver [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=5884C4F8FB444BAB91FB8AF5337D6500-SRAVER]
**Sent:** 6/12/2025 7:11:31 PM
**To:** Chris Rice [crice@nexpoint.com]
**Subject:** Re: Transition

Dang. Too much to ask you to approve a wire to US Bank to satisfy a redemption request.... ☺

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, June 12, 2025 2:06 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

I believe so. You'll likely need to get mark set up for this purpose.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Thursday, June 12, 2025 1:57 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

When you do a wire from PNC, does another Admin need to approve once it is entered?

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, June 12, 2025 12:16 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Should be the same as the transfer limits

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Thursday, June 12, 2025 11:27 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Great, thank you. Do you know what my wire limits are?

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, June 12, 2025 10:38 AM

**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Think you should be good now.




Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, June 12, 2025 8:06 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

I can check on the limits this morning.

I thought that the limits would have basically been nonexistent because of how I set you up, but I can confirm.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, June 11, 2025 2:30 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Would you have time to increase my limit for account transfers at PNC? I can't do it myself, another admin has to do it. Not sure what my limit is for Fund Transfers (wires) either, but may need help with that too.

I can explain how to do it if necessary.

Thanks!

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 2:15 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Yea, I do not see myself when I login either. I think they lock it down, so that an admin user cannot alter their own profile.

Are you still not seeing any account balances or anything like that?

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 9, 2025 2:13 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

It is weird. When I go to manage Operators, the only Operators I see are you, Honis, Jonathan and Joye.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 1:00 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Shows that you have all rights., so I would think that the active accounts would be linked to your profile since you are a user under the same company.

I have clicked through all of the hyperlinked options and I do not see anything that indicates assigning accounts or anything like that a profile.



Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 9, 2025 11:39 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Understood. Thanks for looking into it.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Monday, June 9, 2025 7:47 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

I was OOO on Friday, but I will take some time this morning and check on this again.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, June 6, 2025 12:23 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Any luck?

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Tuesday, June 3, 2025 3:52 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Let me do some digging. I selected the option to add you as admin, so not sure what the issue would be.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, June 3, 2025 1:21 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Just following up on this email regarding the PNC accounts. Thank you.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Monday, June 2, 2025 9:13 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

I am able to login and see the accounts, but it doesn't show me as an operator under the Administration tab. I tried to add myself but apparently I don't have the right to do that.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, May 29, 2025 9:00 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

Kind of a clunky site, but I found the area where I could add account access to the two accounts shown below.

I also updated your rights to that of an additional system admin.

Go ahead and login at some point and make sure that the accounts are showing up on the main landing page.

Let me know if there is anything else.

Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Thursday, May 29, 2025 8:57 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** RE: Transition

| Account |
| --- |
| 4947583481<br>ATLAS IDF LP |
| 4047568520<br>RAND PE FUND I LP |

Logging in to see if I can add accounts for you.

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Thursday, May 29, 2025 8:52 AM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Can you send me the PNC account numbers again? Thanks.

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Wednesday, May 28, 2025 3:10 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Subject:** Re: Transition

I think that's the admin 1 account, which was Honis.

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, May 28, 2025 3:08:27 PM
**To:** Chris Rice <crice@nexpoint.com>
**Subject:** Re: Transition

Are you the Company Administrator on the PNC accounts?

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, May 28, 2025 1:17 PM
**To:** Chris Rice <crice@nexpoint.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Thanks. I got in. Now I just need to add accounts to my operator ID.

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Wednesday, May 28, 2025 12:35 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

You should receive emails from PNC now that I have set you up as a user.

Temporary password should be included with one of those emails.

Let me know if you do not receive.

Thanks

**Chris Rice CPA**
Director – Fund Analysis
NEXPOINT
O: (214) 550 4549 C: (801) 669 1297
crice@nexpoint.com | www.nexpoint.com

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, May 27, 2025 1:42 PM
**To:** Chris Rice <crice@nexpoint.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Great, thanks.

2620 White Rock Rd.
Dallas, TX 75214
214-288-9555
Sraver@randadvisors.com

---

**From:** Chris Rice <crice@nexpoint.com>
**Sent:** Tuesday, May 27, 2025 1:21 PM
**To:** Shawn Raver <SRaver@randadvisors.com>

**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

Shawn –

I figured out how to add you to the PNC accounts. Please confirm the information that I have highlighted below, so that I can create your account.




Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpoint.com | www.nexpoint.com

---

**From:** Chris Rice
**Sent:** Monday, May 5, 2025 9:19 AM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

Shawn

What do you need from me in terms of transitioning the accounting related work for the monthly NAV closes on Rand PE Fund I, Atlas IDF, and Rand Series I?

Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-1297
crice@nexpointservices.com | www.nexpoint.com

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 3:26 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

maybe I missed something on the settings. You can login and I will text you the code.

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 3:01:34 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

It still shows your number and Honis' (I assume) to send the authorization code when I try log into BofA.

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 2:25 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

For BofA, your phone is now main contact priority with your email as second.

I placed myself and Honis with no contact priority.

Business Banking, Credit Cards & Loans - Bank of America

Link to the site above and login credentials are as follows:

- User ID: RANDADVISORS
- PW: Rand4567

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-?297
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 2:06 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

214-288-9555

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Friday, May 2, 2025 2:05 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

What's your cell phone number? I think that some of these require a soft token or something similar linked to you phone.

Chris Rice CPA
Director – Fund Analysis

NEXPOINT
O: (214) 550-4349 | C: (601) 669-7297
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Friday, May 2, 2025 1:43 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Hi Chris -

I know you have been busy with the audits but wanted to follow up on transitioning access to these accounts (specifically PNC and Bank of America).

Regarding the State Street account, do you have a contact with SALI that would be best to reach out to receive that daily cash activity reports?

Thank you.

Shawn

---

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Wednesday, March 26, 2025 10:43 AM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** Re: Transition

Thanks for the info. The contract would be terminated 60 days from March 17, which I calculated as May 16. It can be handled next week when you are back in town. I just wanted to get the ball rolling on the bank accounts.

Shawn

---

**From:** Chris Rice <CRice@nexpointservices.com>
**Sent:** Tuesday, March 25, 2025 3:01 PM
**To:** Shawn Raver <SRaver@randadvisors.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>; Frank Waterhouse <fwaterhouse@skyviewgroup.com>
**Subject:** RE: Transition

This is the first time that it has been mentioned to me but understood.

As of what date will the contract be terminated? Audits for the funds are ongoing.

We can work with the various banks to figure out access and all that. I will be out Thursday and Friday of this week. Is this something that we can handle this week, or something that needs to be handled more urgently?

**PNC**
All the accounts would be covered once you're set up. Note that there might be some inactive accounts.

- Rand PE
- Atlas IDF
- Atlas IDF GP

**US Bank**
I think that you and Mark already have access to this account. If you are not receiving the cash/activity reports, we can work with them to get their distribution list updated.

- Atlas IDF

**State Street**
You will have to coordinate with SALI on this one because they control the account. I only receive daily cash activity reports that are used to complete the NAV close process.

- RS1

**BofA**
Will need to get you added.

- Rand Advisors

I don't think that I missed any accounts but let me know if you're thinking of any entities that I might have missed.

Thanks

Chris Rice CPA
Director – Fund Analysis
NEXPOINT
O: (214) 550-4549 | C: (801) 669-7797
crice@nexpointservices.com | www.nexpoint.com

**From:** Shawn Raver <SRaver@randadvisors.com>
**Sent:** Tuesday, March 25, 2025 2:26 PM
**To:** Chris Rice <CRice@nexpointservices.com>
**Cc:** Mark Patrick <MPatrick@randadvisors.com>
**Subject:** Transition

Chris -

With Skyview sending notification last week that it is terminating the Services Agreement with Rand Advisors, LLC and its managed funds, I will need to get Mark and myself access (including wire access) to all the active bank accounts.

Please let me know who I need to reach out to get us access to the various bank accounts.

Thanks,
Shawn

DISCLAIMER Securities offered through NexPoint Securities, Inc., ("NexPoint Securities") Member FINRA/SIPC. This email may contain privileged and/or confidential information. Use by other than intended recipients is prohibited. If received in error, please immediately delete this email from your computer, destroy any hard copies and notify the sender. NexPoint Securities archives email, which are subject to review by NexPoint Securities and various regulators. This email is for informational purposes only and is not an offer, recommendation or solicitation to purchase or sell any security nor is it an official confirmation of terms. NexPoint Securities makes no representation about the accuracy or completeness of information herein. Past performance is not indicative of future returns. Investments may lose money and such investment losses are not insured.

**From:** Longwell, Katie [klongwell@wilmingtontrust.com]
**Sent:** 7/25/2025 6:31:50 PM
**To:** Mark Tax [mpatricktax1040@gmail.com]
**CC:** John Honis [jhonis@randadvisors.com]; Shawn Raver [sraver@hotmail.com]
**Subject:** Hunter Mountain Investment Trust notice 7.25
**Attachments:** DOC072325 HUNTER MTN.pdf

Hello,

Please find attached a noticed received by Wilmington Trust in relation to Hunter Mountain Investment Trust. Please confirm receipt and further handling.

Thanks!!

**Katie Longwell**
Vice President | Wilmington Trust
Global Capital Markets | Structured Products
(D) 302-636-6372 (F) 302-636-4140
klongwell@wilmingtontrust.com | wilmingtontrust.com
1100 North Market Street Wilmington, DE 19890

Wilmington Trust

This email may contain privileged and/or confidential information that is intended solely for the use of the addressee. If you are not the intended recipient or entity, you are strictly prohibited from disclosing, copying, distributing or using any of the information contained in the transmission. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act and the Sarbanes-Oxley Act. You may not directly or indirectly reuse or disclose such information for any purpose other than to provide the services for which you are receiving the information. There are risks associated with the use of electronic transmission. The sender of this information does not control the method of transmittal or service providers and assumes no duty or obligation for the security, receipt, or third party interception of this transmission.

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 14, 2025

Hunter Mountain Investment Trust
c/o Wilmington Trust, National Association, Registered Agent
Rodney Square North
1100 North Market Street
Wilmington, DE 19890

***CMRRR*#9589071052701780148491**
and Regular Mail

RE: Civil Investigative Demand to Hunter Mountain Investment Trust

To Whom It May Concern:

Enclosed please find a Civil Investigative Demand ("CID") issued to Hunter Mountain Investment Trust by the Office of the Attorney General. If you require additional information, please do not hesitate to contact me at 210-270-1110 or via email at gabriella.gonzalez@oag.texas.gov.

Thank you for your attention to this matter.

Sincerely,

*/s/ Gabriella M. Gonzalez*
GABRIELLA M. GONZALEZ
Assistant Attorney General

**STATE OF TEXAS**
**OFFICE OF THE ATTORNEY GENERAL**
**CONSUMER PROTECTION DIVISION**

# CIVIL INVESTIGATIVE DEMAND

**TO:** Hunter Mountain Investment Trust
c/o Wilmington Trust, National Association, Registered Agent
Rodney Square North,
1100 North Market Street
Wilmington, DE 19890

Via:**CMRRR#9589071052701780148491** and Regular Mail

Pursuant to the authority of § 17.61 of the Texas Deceptive Trade Practices and Consumer Protection Act, § 17.41 *et seq.*, Tex. Bus. & Com. Code (DTPA), Hunter Mountain Investment Trust is hereby directed to produce the documentary material listed in Attachment A.

You are to make available the documentary material described in Attachment A to the State of Texas's authorized agent designated below. This material may be sent electronically or by courier or certified mail to the Office of Attorney General, 300 W. 15th St., 9th Floor, Austin, TX 78701, and is due by close of business on July 29, 2025. Please contact the authorized agent to arrange for the secure transmittal of your materials. Also, please review the Definitions and Instructions applicable to this Civil Investigative Demand which are included here as Attachments B and C, respectively.

This Civil Investigative Demand is relevant to the subject matter of an investigation of possible violations of § 17.46(a) and (b) of the DTPA in relation to an investigation of misrepresentations regarding, and the potential misuse of, charitable funds.

**TAKE NOTICE THAT pursuant to section 17.62, Texas Business and Commerce Code, any person who attempts to avoid, evade, or prevent compliance, in whole or in part, with this directive by removing, concealing, withholding, destroying, mutilating, altering, or by any other means falsifying any documentary material may be guilty of a misdemeanor and on conviction is punishable by a fine of not more than $5,000.00 or by confinement in the county jail for not more than one year, or both.**

ISSUED THIS 14th day of July 2025.

***/s/ Gabriella Gonzalez***
Gabriella Gonzalez
Assistant Attorney General
Telephone: (210) 270-1110
Email: Gabriella.Gonzalez@oag.texas.gov

**Authorized Agent:**
Christopher Krhovjak, Investigator
Telephone: (512) 475-4175
Email: christopher.krhovjak@oag.texas.gov

**ATTACHMENT A**
**DOCUMENTS TO BE PRODUCED**

1. The articles of incorporation or certificate of formation, including any and all amendments, and all by-laws of Hunter Mountain Investment Trust.

2. Documents that identify all of Hunter Mountain Investment Trust's officers, directors, and compensation paid to each.

3. Copies of all minutes and resolutions from Hunter Mountain Investment Trust's board of directors' meetings, or meetings of any committees created by the board of directors for the time period of June 1, 2023 to present.

4. Copies of any valuations or appraisals of Hunter Mountain Investment Trust for the time period of June 1, 2023 to present.

5. All Documents evidencing Hunter Mountain Investment Trust's internal policies related to asset management.

6. Hunter Mountain Investment Trust's financial statements for the time period of June 1, 2023, to present.

7. All contracts or agreements between Hunter Mountain Investment Trust and any entity, including but not limited to the following entities or individuals:
   a. Liberty CLO HoldCo, Ltd.
   b. Highland Capital Management, L.P.
   c. Charitable DAF HoldCo Ltd.
   d. Charitable DAF Fund, LP
   e. MGM Studios Holdco, Ltd.
   f. HCT Holdco 2, Ltd.
   g. Charitable DAF Holdings Corp.
   h. CLO Holdco, Ltd.
   i. Liberty Sub, Ltd.
   j. Charitable DAF GP, LLC
   k. CDHC Stewart Creek, LLC
   l. CDHC Fort Worth Land, LLC
   m. CDHC Assets, LLC
   n. Royse City Land Company, LLC
   o. CDHC Royse City Land, LLC
   p. Allanon Capital Management LLC
   q. BVP Property, LLC
   r. Rand Advisors, LLC
   s. Rand PE Fund I, LP
   t. Rand PE Fund Management
   u. DST Investco, LLC
   v. Beacon Mountain LLC
   w. CDH GP, Ltd.

x. CDMCFAD, LLC
y. CDMCFAD, Ltd.
z. DFW Charitable Foundation
aa. Charitable DAF Fund 2, LP
bb. Highland Park Cayman Holdings, Ltd.
cc. Brentwood Cayman Holdings, Ltd.
dd. Brentwood Panda Holdings, Ltd.
ee. Mark E. Patrick
ff. James Dondero
gg. Grant J. Scott

8. All correspondence between Hunter Mountain Investment Trust and any entity or individual including but not limited to those identified in Request #7 for the time period of June 1, 2023 to present.

9. Documents evidencing all payments, transfers, or distributions made to Hunter Mountain Investment Trust by any entity or individual including but not limited to those identified in Request #7 for the time period of June 1, 2023 to present.

10. Documents evidencing all payments, transfers, distributions, and/or gifts made by Hunter Mountain Investment Trust for the time period of June 1, 2023 to present.

11. Documents that identify all accounts with financial institutions held in the name of Hunter Mountain Investment Trust, or in which Hunter Mountain Investment Trust's funds are now or have been held for the time period of June 1, 2023 to present.

**ATTACHMENT B**
**DEFINITIONS**

For the purposes of this Demand:

1. "**Document**" means the original (or duplicate, identical copies when originals are not available), and any non-identical copies (whether different from the original because of notes made on such copies or otherwise) of writings or recordings of every kind and description whether inscribed by hand or by mechanical, facsimile, electronic, magnetic, digital, microfilm, photographic or other means, as well as phonic or visual reproductions of oral statements, conversations, and including, but not limited to, any manual, book, pamphlet, periodical, letter, report, memorandum, notation, message, telegram, cable, facsimile, record, study, working paper, accounting paper, telephone log, teletype message, chart, graph, index, tape, minutes, computer printout, contract, lease, invoice, record of purchase or sale, correspondence, electronic or other transcription of taping of telephone or personal conversations or conferences, or any and all other written, printed, typed, punched, taped, filmed or graphic matter however produced or reproduced and any electronic, mechanical, computer, e-mail, or Internet records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer and electronic memories). "**Document**" also includes the file, folder tabs and/or containers and labels appended thereto associated with each such aforesaid original and/or copy.

2. "**You**" and "**your**" as used herein means the person or entity to which this Administrative Subpoena is directed and includes, but is not limited to, all owners, shareholders, parent entities, affiliated entities, predecessor entities, successor entities, members, partners (general and limited), directors, franchisees, managers, employees, agents, brokers, marketers, contractors, representatives, and all other business entities or individuals acting, or purporting to act, on its behalf.

3. The term "**any**" shall be construed as synonymous with "every" and "all," and shall be all-inclusive.

**ATTACHMENT C**
**INSTRUCTIONS**

1. Documents in Possession, Custody, or Control: This subpoena calls for all described documents in your possession, custody, or control without regard to the person or person by whom or for whom the documents were prepared or prepared by (*e.g.*, any of your employees, agents, business partners, or others).

2. Documents No Longer in Possession of Respondent/Destroyed Documents: If any responsive document was, but no longer is, in your possession, custody, or control, produce a description of each such document. The description shall include the following:

   (a) the name of each author, sender, creator, and initiator of such document;

   (b) the name of each recipient, addressee, and party for whom such document was intended;

   (c) the date the document was created;

   (d) the date(s) the document was in use;

   (e) a detailed description of the content of the document;

   (f) the reason the document is no longer in your possession, custody, or control; and

   (g) the document's present whereabouts.

   If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3. Organization of Responses: Documents produced in response to this subpoena shall be organized as follows:

   (a) The documents produced shall be identified and segregated to correspond with the number and subsection of the request.

   (b) Identical copies of responsive documents need not be produced. However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, shall be produced.

   (c) All attachments to responsive documents shall be produced attached to the responsive documents or with clear references that refer to the corresponding, responsive documents.

   (d) Mark each page of a paper or electronic document and each tangible thing containing audio, video, computer or other electronic document with corporate

identification and consecutive document control numbers (*e.g.*, "COMPANY" 001, "COMPANY" hard drive 001). Number each box of documents produced and mark each with the name(s) of the person(s) whose files are contained therein, the request(s) to which they are responsive, and the document control numbers contained therein.

(e) For each document that may be responsive to more than one numbered request of this subpoena, indicate all of the numbered requests to which the document is responsive.

(f) No portion of any document shall be edited, cut, masked, or redacted other than to preserve a claim of privilege, and the entire document shall be produced.

(g) Provide a key to all abbreviations used in the documents. The key shall be attached to the appropriate documents or shall make clear reference to the corresponding, responsive documents.

4. <u>Audio and Video Recordings</u>: For each audio or video recording produced in response to this subpoena, provide both the recording and a transcript.

5. <u>Electronic Documents</u>: If any responsive document is available in electronic format, the document shall be provided in electronic format in addition to hard copy.

6. <u>Format of Electronic Documents</u>: Produce electronic documents in a single page Tagged Image File Format (TIFF) with associated OCR text, together with industry standard Everlaw load files and associated files including, but not limited to, all dat., opt., txt., and tiff files. Preserve all metadata in the documents that are produced. To the extent available, produce all data in an Excel format, otherwise as a Comma Separated Value text file with a txt. or csv. extension. Provide Microsoft Outlook files as PST files. All documents should also be produced in their native format with reference to any associated document ID. Such electronic records or data should be provided on generally supported storage media, including CD-readable disks, DVD-ROMs, or portable storage devices. Responsive documents produced in electronic format must: (i) be properly identified, (ii) be produced in a format that accurately captures each version of the document, including handwritten notes, signatures, etc., (iii) include all associated electronically searchable text files for the document, (iv) include all metadata associated with the document, and (v) otherwise comply with other provisions of these instructions. All responsive documents that are produced in database format shall be provided along with all keys and indexes necessary to search and access such documents using the appropriate database program.

7. <u>Language</u>: Produce the requested documents in all languages in which they are or were made available to consumers.

8. <u>Privileged Documents</u>: If any responsive document is withheld or redacted under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document that you have withheld:

(a) the name of each author, writer, sender, creator, or initiator of such document;

(b) the name of each recipient, addressee, and party for whom such document was intended;

(c) the date of such document, or an estimate thereof if unknown;

(d) the general subject matter of the document; and

(e) the claimed grounds for withholding the document, including but not limited to, the nature of any claimed privilege and grounds in support thereof.

9. Duty to Supplement: All document requests are continuing in nature so as to require supplementary documents if you obtain further responsive documents. This includes documents created or discovered after the date of this subpoena and responsive to the subject matter of the Requests.

10. Duty to Preserve Documents: All documents and/or other data which relate to the subject matter or requests of this subpoena must be preserved. Any destruction involving such documents must cease, even if it is your normal or routine course of business to delete or destroy such documents or data and even if you believe such documents or data are privileged or otherwise need not be produced.

11. Time Period: Unless otherwise specified, the time period covered by this subpoena shall be January 2010 to the present.

**From:** Longwell, Katie [klongwell@wilmingtontrust.com]
**Sent:** 9/10/2025 6:23:15 PM
**To:** Mark Tax [mpatricktax1040@gmail.com]
**CC:** John Honis' [jhonis@randadvisors.com]; 'Shawn Raver' [sraver@hotmail.com]
**Subject:** Hunter Mountain Investment Trust notice 9.10
**Attachments:** hunter mtn 9.3.25.pdf

Hello,

Please find attached a noticed received by Wilmington Trust in relation to Hunter Mountain Investment Trust. Please confirm receipt and further handling.

Thanks!!

**Katie Longwell**
Vice President | Wilmington Trust
Global Capital Markets | Structured Products
(D) 302-636-6372 (F) 302-636-4140
klongwell@wilmingtontrust.com | wilmingtontrust.com
1100 North Market Street Wilmington, DE 19890

Wilmington Trust

---

This email may contain privileged and/or confidential information that is intended solely for the use of the addressee. If you are not the intended recipient or entity, you are strictly prohibited from disclosing, copying, distributing or using any of the information contained in the transmission. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act and the Sarbanes-Oxley Act. You may not directly or indirectly reuse or disclose such information for any purpose other than to provide the services for which you are receiving the information. There are risks associated with the use of electronic transmission. The sender of this information does not control the method of transmittal or service providers and assumes no duty or obligation for the security, receipt, or third party interception of this transmission.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS)<br><br>**Hearing Date: September 10, 2025, at 11:00 a.m. (ET)**<br>**Obj. Deadline: September 3, 2025, at 4:00 p.m. (ET)**<br><br>**Re: D.I. 21** |

**NOTICE OF HEARING ON MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

**PLEASE TAKE NOTICE** that on August 27, 2025, Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Debtor"), filed the *Motion of the Petitioners for Entry of Order Granting Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(a), 542, 1519 and 1521* [D.I. 21] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must (a) be in writing; (b) be filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before September 3, 2025, at 4:00 p.m. (ET) (the "Objection Deadline"); and (c) be served so as to be received on or before the Objection Deadline by counsel for the Petitioners, Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, Delaware 19801 (Attention: Jason D. Angelo, Esq.) and Reed Smith LLP, 599 Lexington Avenue, New York, New York 100220 (Attention: Casey Laffey, Esq., Aaron Javian, Esq., Ian M. Turetsky, Esq., and Richard C. Solow, Esq.).

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on September 10, 2025, at 11:00 a.m. (ET) before the Honorable Brendan Linehan Shannon, United States Bankruptcy Judge for the District of Delaware, at 824 Market Street, 6th Floor, Courtroom #1, Wilmington, Delaware, 19801.

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

**PLEASE TAKE FURTHER NOTICE** that only objections made in writing and timely filed and received, in accordance with the procedures above, will be considered by the Bankruptcy Court at such hearing.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: August 27, 2025
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*
Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: +1.302.778.7500
Facsimile: +1.302.778.7575
E-mail: jangelo@reedsmith.com

-and-

Casey Laffey, Esq. (admitted *pro hac vice*)
Aaron Javian, Esq. (admitted *pro hac vice*)
Ian M. Turetsky, Esq. (admitted *pro hac vice*)
Richard C. Solow, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 100220
Telephone: +1.212.521.5400
Facsimile: +1.212.521.5450
E-mail: claffey@reedsmith.com
ajavian@reedsmith.com
ituretsky@reedsmith.com
rsolow@reedsmith.com

*Counsel to Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators of Chapter 15 Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1] | Case No. 25-11376 (BLS) |
| Debtor in a foreign proceeding. | **Hearing Date: September 10, 2025, at 11:00 a.m. (ET)**<br>**Obj. Deadline: September 3, 2025, at 4:00 p.m. (ET)** |

**MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"),[2] the duly appointed joint official liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd (In Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court"), by its undersigned United States counsel, Reed Smith LLP, and having commenced the above-captioned chapter 15 case in respect of the Debtor (the "Chapter 15 Case") by filing the respective chapter 15 petition [D.I. 1] (the "Petition Form") and a *Verified Petition for (i) Recognition of the Foreign Main Proceeding, (ii) Recognition of the Foreign Representatives, and (iii) Certain Related Relief* [D.I. 2] (the "Verified Petition" and together with the Petition Form, the "Petitions") seeking foreign main recognition of the Cayman Proceeding, hereby move (this "Motion"), pursuant to sections 105(a),

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Verified Petition. Additionally, the facts set forth in the Verified Petition are incorporated in this Motion by reference in their entirety.

[3] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd.* FSD 116 of 2025 (JAJ).

542(e), 1519, and 1521 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the JOLs immediate provisional relief as described in detail below.

In support of this Motion, Petitioners rely upon the (a) Verified Petition; (b) *Declaration of Margot MacInnis in Support of Chapter 15 Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4]; (c) *Declaration of Caroline Moran as Cayman Islands Counsel to the Debtor in Support of the Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code to the Honorable United States Bankruptcy Judge* [D.I. 5]; and (d) *Declaration of Margot MacInnis in Support of Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(a), 542, 1519, and 1521* (the "Supplemental MacInnis Decl.") filed contemporaneously herewith, all of which, together with the exhibits attached thereto, are incorporated herein by reference. In further support of the Motion, Petitioners respectfully state as follows:

## PRELIMINARY STATEMENT

1. Since filing the Petitions commencing this Chapter 15 Case on July 21, 2025 (the "Petition Date"), the JOLs have progressed in discharging their duties under the Companies Act both in relation to HoldCo's assets and in investigating HoldCo's assets and affairs.

2. Importantly, on July 31, 2025, the Cayman Court entered a *Consent Order* (the "Cayman Consent Order"), in which it ordered by consent, among other things, that the Named Defendants in the Cayman Litigation and the CDM Entities shall abide by certain undertakings

intended to prevent asset dissipation and provide transparency and disclosure to the JOLs pending the Cayman Court's determination of the Injunction Summons.

3. On August 5, 2025, the JOLs filed the *Certification of Counsel Regarding Agreed Order Granting Provisional Relief Pursuant to Sections 105(A) and 1519 of the Bankruptcy Code* [D.I. 18] (the "Certification of Counsel"), seeking approval of a stipulation (the "Stipulation") among the JOLs, the Applicable Named Defendants and the CDM Entities that, among other things: (a) recognizes and enforces the Cayman Consent Order[4] and (b) adjourns the hearing to recognize the Cayman Proceeding under chapter 15 of the Bankruptcy Code (the "Recognition Hearing") from its originally scheduled date of August 14, 2025 (the "Original Recognition Hearing Date"), *sine die*, pending the scheduling of the hearing on the Injunction Summons by the Cayman Court. On August 6, 2025, this Court entered an order (the "U.S. Court Order") approving the Stipulation [D.I. 19]. The entry of the Cayman Consent Order and the U.S. Court Order recognizing and enforcing it significantly furthers the JOLs' goal of preventing the dissipation of assets subject to HoldCo's potential proprietary and other claims pending the resolution of the Cayman Litigation.

4. In addition, the JOLs have continued to progress their investigation regarding HoldCo's assets and affairs, sending numerous information requests and receiving constructive responses in return from the vast majority of information custodians. The JOLs also have begun to analyze the first batch of information transmitted by the Named Defendants in accordance with the Cayman Consent Order. Unfortunately, however, certain of HoldCo's historic service providers—namely Carrington Coleman LLP ("Carrington Coleman"), who provided advice in

[4] The terms "Applicable Named Defendants", "CDM Entities", and "Injunction Summons" are defined in the Certification of Counsel or Stipulation, as applicable.



010378
HMIT_Entities_000139

Case 25-11376-BLS Doc 21 Filed 08/27/25 Page 4 of 22

respect to HoldCo's affairs, Valuescope, LLC ("Valuescope"), one of HoldCo's valuation consultants, and Hunton Andrews Kurth LLP ("Hunton"), one of HoldCo's historic tax counsel—have declined to turnover HoldCo's books and records, despite repeated requests to do so made by the JOLs and their counsel. These service providers do not deny that they hold records that belong to HoldCo. Rather, they take the position that they are under no obligation to respect the JOLs' authority in the United States absent compulsion to do so by a U.S. court. Their position is transparently (and nonsensically) obstructionist. Additionally, Douglas Mancino of Seyfarth Shaw LLP ("Mancino," and collectively with Carrington Coleman, Valuescope, and Hunton, the "Turnover Targets"), one of HoldCo's tax consultants, previously indicated a willingness to cooperate with the JOLs' turnover requests but has yet to comply.

5. Having reached the agreements embodied in the Cayman Consent Order with the Named Defendants with respect to asset dissipation, the JOLs see no reason to permit uncooperative (or unresponsive) service providers to delay their ability to discharge their duty to investigate HoldCo's assets and affairs pending scheduling of the Adjourned Recognition Hearing. Every day that passes without recovering HoldCo's books and records extends the timeline of the Cayman Proceeding and causes HoldCo's estate to bear additional, unnecessary expenses.

6. Accordingly, by this Motion, the Petitioners are seeking limited—but necessary—provisional relief to obtain turnover of HoldCo's books and records from Carrington Coleman, Valuescope, Hunton and Mancino. This relief is essential to uncovering the facts and circumstances surrounding transactions that ultimately divested HoldCo—and, ultimately, the charitable organizations for whose benefit HoldCo was formed—of its primary and most valuable asset.

## JURISDICTION AND VENUE

7. The Petitioners have properly commenced this Chapter 15 Case under sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of the Cayman Proceeding under section 1515 of the Bankruptcy Code.

8. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9. For the reasons set forth in the Petitions, venue is proper in this district pursuant to 28 U.S.C. § 1410(3).

10. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Petitioners consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11. The statutory bases for the relief requested herein are sections 105(a), 542, 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

12. On May 6, 2025, the Cayman Court entered the Supervision Order, which appointed the Petitioners as the JOLs of HoldCo.

13. Consistent with the purpose of official liquidation under Part V of the Companies Act, the Petitioners are empowered to investigate: (a) the causes for the failure of HoldCo, as necessary; and (b) generally, the promotion, business, dealings and financial affairs of HoldCo. *See* Companies Act, section 110(2); *see also* Supplemental MacInnis Decl., at ¶12.

14. To identify, secure, and recover HoldCo's books and records, the JOLs have: (a) issued formal correspondence to over 50 parties, including directors, shareholders, banks, service providers, various third parties, and the prior appointed joint voluntary liquidators, notifying them of the JOLs' appointment and requesting books and records, and (b) held discussions with various parties to discuss the history and financial affairs of HoldCo. *See* Supplemental MacInnis Decl., at ¶13.

15. Furthermore, since the date of their appointment, the JOLs have been conducting an extensive and detailed ongoing investigation into HoldCo's affairs. This investigation has involved a review of HoldCo's books and records (to the extent that they have been able to obtain them and to the extent that they are complete) and numerous inquiries and requests for information directed to persons previously involved with HoldCo. *See* Supplemental MacInnis Decl., at ¶14.

16. While the vast majority of parties that the JOLs have contacted have cooperated with the JOLs, certain US-based service providers have asserted that they do not recognize the JOLs' authority under the Supervision Order and have refused to provide copies of the requested information absent an order from this Court. *See* Supplemental MacInnis Decl., at ¶15. In particular, Carrington Coleman, who provided advice in respect to HoldCo's affairs, Valuescope, HoldCo's historic financial advisor and valuation services provider, and Hunton, who provided HoldCo tax law advice, have declined to voluntarily turn over to the JOLs HoldCo's books and records in their possession despite numerous requests by HoldCo and its counsel requesting the same. *See* Supplemental MacInnis Decl., at ¶15 and exhibits 1-14, 21-23.

17. Furthermore, HoldCo's tax advisor, Mancino, had initially cooperated with the JOLs and was seemingly prepared for document production, but has since failed to turn over the

Case 25-11376-BLS Doc 21 Filed 08/27/25 Page 7 of 22

requested books and records. *See* Supplemental MacInnis Decl., at ¶¶15, 25-27 and exhibits 15-19.[5]

18. As a service provider who provided advice in respect of HoldCo's affairs, the JOLs believe, based on correspondence received from Carrington Coleman, that Carrington Coleman maintains at least certain books and records belonging to HoldCo that are relevant to the JOLs, in their investigation of the facts and circumstances surrounding the Relevant Transactions, pursuant to which all of HoldCo's assets were transferred to DFW. *See* Supplemental MacInnis Decl., at ¶28. Likewise, the JOLs believe that HoldCo's books and records held by Valuescope go directly to valuation issues that are critical to these transactions and the JOLs' investigation of the same. *See id.* Finally, the JOLs believe that HoldCo's books and records held by Hunton and Mancino relate to tax issues that could be central to the investigation of the Relevant Transactions. *See id.*

19. In particular, Carrington Coleman, Valuescope, Hunton and Mancino may have possession, custody or control of books and records belonging to, or otherwise arising in connection with their engagement by, HoldCo, including files regarding the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation. *See* Supplemental MacInnis Decl., at ¶29.

20. Accordingly, it is imperative that the JOLs be afforded the provisional assistance of this Court to direct the turnover of such documents at once.

[5] The Supplemental MacInnis Decl. contains a detailed summary of the correspondence between the JOLs and their counsel, on the one hand, with each of Carrington Coleman, Valuescope, Hunton and Mancino, on the other hand, and attaches copies of all relevant correspondence.

**RELIEF REQUESTED**

21. The Petitioners seek entry of an order, substantially in the form of the Proposed Order, granting immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require Carrington Coleman, Valuescope, Hunton and Mancino within seven (7) days of entry of the Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo (the "Provisional Relief").

22. Specifically, the turnover of HoldCo's books and records sought by the Petitioners will assist them in investigating the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.

**BASIS FOR RELIEF**

23. The requested Provisional Relief falls squarely within the ambit of the relief available under section 1519 of the Bankruptcy Code, pursuant to which the Court can grant provisional relief to the Petitioners pending a ruling on recognition of the Verified Petition. Absent the requested Provisional Relief, there is a significant risk that HoldCo will incur unnecessary costs due to delay, which may substantially impair the JOLs' prospects of recovery on behalf of stakeholders in the Cayman Proceeding.

**I. Turnover Pursuant to Bankruptcy Code Sections 105(a), 542(e), 1519(a)(3), 1521(a)(4), and 1521(a)(7) Should Be Allowed**

24. It is crucial that the Turnover Targets be compelled to turn over all books and records held on behalf of the Debtor pursuant to sections 105(a), 1519(a)(3), 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code. Section 542(e) of the Bankruptcy Code provides that a

court may order the turnover of any books, documents, records, and papers that relate to a debtor's property or financial affairs. 11 U.S.C. § 542(e). Foreign representatives in chapter 15 cases seeking court-ordered discovery at times seek relief pursuant to section 542(e), which is either directly applicable to chapter 15 cases or, in the alternative, delineate relief which can be granted by the court pursuant to section 1521(a)(4). *See In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 810 (Bankr. S.D.N.Y. 2018); *see also In re AJW Offshore Ltd.*, 488 B.R. 551, 564 (Bankr. E.D.N.Y. 2013) (finding that a foreign representative may seek disclosure pursuant to section 542(e)); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 341 (Bankr. D. Del. 2010) (allowing the right to seek turnover under section 542).

25. Section 1521(a)(4) authorizes discovery into "the debtor's assets, affairs, rights, obligations or liabilities" without any limitation based on how the foreign representative intends to use the fruits of the requested discovery. *See* 11 U.S.C. § 1521(a)(4). Additionally, Section 1519(a)(3) incorporates this provision into provisional relief that the Court may provide. *See* 11 U.S.C. § 1519(a)(3). Cases applying these sections hold that relief under section 1521(a)(4) is available to petitioners investigating potential causes of action irrespective of how any future litigation proceeds might be used. *See, e.g., Estate of Fontana v. ACFB Administração Judicial Ltda (In re Transbrasil S.A. Linhas Aéreas)*, 860 F. App'x. 163, 165 (11th Cir. 2021) (affirming bankruptcy court's decision to authorize discovery alleged to be relevant "to support the Trustee's claims against the Affected Parties in the Brazilian Bankruptcy Case" and "to investigate potential claims"), *cert. denied sub nom. Est. of Fontana v. ACFB Administração Judicial LTDA-ME*, 142 S. Ct. 1229 (2022); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. at 822 (granting foreign representative's motion seeking "pre-litigation discovery"); *In re Glitnir banki hf*, No. 08-14757 (SMB), 2011 Bankr. LEXIS 3296, at *12 (Bankr. S.D.N.Y. Aug. 19, 2011)

(granting discovery to "enable the Foreign Representative to . . . assess the viability of additional claims"); *In re Comair Ltd. (In Bus. Rescue)*, No. 21-10298(JLG), 2021 Bankr. LEXIS 3137, at *39 (Bankr. S.D.N.Y. Nov. 14, 2021), *appeal dismissed sub nom. Boeing Co. v. Ferguson (In re Comair Ltd. (In Bus. Rescue))* 2023 U.S. Dist. LEXIS 6146 (S.D.N.Y. Jan. 12, 2023) (granting foreign representative's motion seeking discovery "relating to causes of action that Comair may hold against Boeing and the extent of Comair's potential monetary recovery from Boeing").

26. Additionally, courts have found that a foreign representative may be authorized to take discovery in accordance with section 542(e) pursuant to section 1521(a)(7), which is made applicable to requests for provisional relief by section 1519(a)(3). *See, e.g.*, *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 644 (Bankr. D. Del. 2016) ("By referring to § 363, a section which authorizes the trustee to use, sell, or lease . . . property of the estate, the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate [under § 541] (the equivalent term of art used in chapter 15 is property of the debtor within the territorial jurisdiction of the United States).") (internal quotation marks omitted); *In re ABC Learning Centers Ltd.*, 445 B.R. 318, 341 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (recognizing foreign main proceeding, and without further discussion, ordering right to use of sections 542 and 543 turnover provisions); *CohnReznick LLP v. Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (In re Platinum Partners Value Arbitrage Fund L.P.)*, No. 18-cv-5176 (DLC), 2018 U.S. Dist. LEXIS 109684, at *12 (S.D.N.Y. June 29, 2018); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. at 810. Section 1521(a)(7) broadly affords a foreign representative "any additional relief that may be available to a trustee . . ." 11 U.S.C. § 1521(a)(7). Similar to section 1521(a)(4), section 1519(a)(3) incorporates this provision into provisional relief that the Court may provide.

27. Congress has recognized the need for foreign debtors to conduct discovery with respect to their assets, liabilities and affairs, including the investigation of potential causes of actions. *See, e.g., In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at *16; *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012); *In re Hughes*, 281 B.R. 224, 229 (Bankr. S.D.N.Y. 2002).

28. Specifically, the Petitioners seek relief that, if granted, will assist them in fully investigating potential causes of action against third parties. Those causes of action may be significant "contingent property interests" of the Debtor. *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 346 (citing *In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2000) (noting that property of the estate "encompass[es] contingent property interests such as causes of action")). The Petitioners seek discovery that "qualif[ies] as the taking of evidence 'concerning the debtors' assets' under § 1521(a)(4)." *Id.* Thus, "[b]road discovery under section 1521" would "promot[e] a significant chapter 15 objective" by permitting the Petitioners to "comply with their duties." *In re Markus*, 607 B.R. 379, 390 (Bankr. S.D.N.Y. 2019), *aff'd in part, vacated in part on other grounds, and remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) (quoting *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. at 821).

29. Here, the Petitioners understand from their investigation conducted to date and the Turnover Targets' own admissions that each such target maintains books and records belonging to, or otherwise arising in connection with their engagement by, the Debtor. Re-establishing control over the Debtor's books and records, including books and records currently in the possession of the Turnover Targets, is critical to assisting the Petitioners in their investigation of the Debtor's affairs, including the facts and circumstances surrounding the Relevant Transactions and Remuneration Transactions. Specifically, the Petitioners request that the Court mandate that

Carrington Coleman, Valuescope, Hunton and Mancino turn over all books and records in their possession, custody or control, belonging to, or otherwise arising in connection with their engagement by, the Debtor within seven (7) days of entry of the Proposed Order. Importantly, as previously noted, three of the Turnover Targets, Carrington Coleman, Valuescope, and Hunton, have indicated that they will not cooperate with the JOLs absent an order from this Court. There is no reason to delay compelling the Turnover Targets' "cooperation" until on or after the Adjourned Recognition Hearing Date.[6]

30. Affording the JOLs the ability to compel the Turnover Targets to return files belonging to the Debtor expeditiously is imperative to enable the JOLs: (a) to progress their investigation of the Debtor's assets and affairs, and, in particular, their examination into the Relevant Transactions and the Remuneration Transactions, in a timely manner for the benefit of all stakeholders, (b) to avoid incurring burdensome costs by needlessly extending the duration of the JOLs' investigations, and (c) to align incentives with respect to all potential discovery targets to promote cooperation with the JOLs in their efforts to discharge their statutory duties in lieu of encouraging such parties to obstruct and delay. *See* Supplemental MacInnis Decl., at ¶33.

## II. <u>Provisional Relief is Needed to Protect the Debtor, the Debtor's Assets, and Liquidation Efforts in the Cayman Proceeding</u>

31. The Provisional Relief is needed here to protect the Debtor, its assets and the interests of all stakeholders. *See* 11 U.S.C. § 1519(a). Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap

[6] Entry of the Provisional Relief would result in the JOLs obtaining return of HoldCo's books and records from the Turnover Targets on timing that is broadly consistent with the JOLs' expectations based on the scheduling of the Original Recognition Hearing Date. Moreover, entry of the Provisional Relief is particularly necessary because, based on scheduling constraints in the Cayman Proceeding, the JOLs now expect that the Injunction Summons will be heard some time in November or December, which is many weeks later than the JOLs originally anticipated, thereby significantly lengthening the "gap" period between the Petition Date in this Chapter 15 Case and the date when the Recognition Hearing will be scheduled. *See* Supplemental MacInnis Decl., at ¶34.



010387
HMIT_Entities_000148

between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized. 11 U.S.C. § 1517(c). Prior to recognition, a chapter 15 debtor is not automatically entitled to discovery, or any other provisions of the Bankruptcy Code, which, in this case, necessitates an order granting provisional relief. Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Similar to section 1521(a)(4) of the Bankruptcy Code, relief that seeks "discovery concerning . . . potential claims . . . falls squarely within the scope" of section 1519(a) because it is useful to protect the assets of the debtor or the interests of the creditors. *See In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at *39 (granting the foreign representative's request to proceed with discovery under section 1521(a)(4) of the Code after having considered the interests protected by the statute and having acknowledged that discovery is required to the foreign representative to complete its investigation and satisfy its duties under foreign laws). Absent the Provisional Relief, there is a significant risk that HoldCo will incur unnecessary costs due to delay, which may substantially impair the JOLs' prospects of recovery on behalf of stakeholders in the Cayman Proceeding.

## III. Standard for Relief Under Section 1519

32. Section 1519 of the Bankruptcy Code provides for granting provisional relief to Petitioners pending a ruling on recognition of a petition. Section 1519 provides, in pertinent part:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including—
>
> (1) staying execution against the debtor's assets;
>
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States

> to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
>
> (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519.

33. Section 1521(a)(4) provides for "the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521(a)(4). Section 1521(a)(7) broadly affords a foreign representative "any additional relief that may be available to a trustee . . ." 11 U.S.C. § 1521(a)(7).

34. The Court's authority to issue provisional relief under section 1519(a) is not limited to the remedies specified in subsections (a)(1) through (a)(3). *See, e.g.*, *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) ("[Sections 1519(a)(1)-(3) represent a] non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive [and] [t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end."). The Court may also look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning provisional relief as is necessary to protect a chapter 15 debtor and its creditors. Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", can be invoked by foreign representatives in chapter 15 cases by section 103(a) of the Bankruptcy Code. *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15). The Court

therefore has discretion under both sections 1519(a) and 105(a) to grant the requested Provisional Relief.

35. Section 1519(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under" section 1519. 11 U.S.C. § 1519(e); *see also In re Innua Canada Ltd.*, No. 09-16362 (DHS), 2009 Bankr. LEXIS 994, at *1 (Bankr. D.N.J. Mar. 25, 2009).

36. In the Third Circuit, the general standards for a provisional injunctive relief require a showing of:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017). In other words:

> "[A] movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not[]) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief []. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."

*Id.* at 179.

37. The Petitioners contend that the four factors for issuing the requested relief under section 1519 of the Bankruptcy Code are easily met.

## IV. The Petitioners Satisfy the Elements for Provisional Relief

### A. *There Is a Substantial Likelihood of Recognition*

38. In connection with a request for provisional relief in a chapter 15 case, the petitioner must show that he or she is likely to obtain recognition of the relevant foreign proceeding. *See, .e.g., In re Qimonda*, No. 09-14766 (RGM), 2009 Bankr. LEXIS 2330, at *7-8 (Bankr. E.D. Va. July 16, 2009) ("The issue upon which [the petitioner] must prevail for an injunction to issue is whether an order of recognition will be entered . . ."); *In re Takata Corp.*, No. 17-11713 (BLS) (Bankr. D. Del. Aug. 11, 2017) [D.I. 25] (granting provisional relief under section 1519 where the foreign representative had demonstrated a "substantial likelihood" that the elements of recognition under section 1517 would be satisfied).

39. There is no reason why this Court should not recognize the Cayman Proceeding on the Adjourned Recognition Hearing Date. As set forth in the Verified Petition, the Cayman Proceeding is clearly a "foreign proceeding" under chapter 15, and the Debtor's center of main interests is in the Cayman Islands. *See* Verified Petition, ¶¶ 132-144. The Petitioners satisfy the requirements of a "foreign representative" under Bankruptcy Code section 101(24). *Id.* ¶¶ 148-149. There can be no serious question that the Petitioners are entitled to and will succeed in obtaining relief under sections 1517 and 1520 of the Bankruptcy Code on the Adjourned Recognition Hearing Date and would have obtained such relief by the Original Recognition Hearing Date absent the Stipulation. Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition.[7] *See In re STX Pan Ocean Co.*, No. 13-12046 (SCC), 2013 Bankr. LEXIS 5775, at

[7] On August 19, 2025, DFW issued a summons seeking the removal of the Petitioners as Joint Official Liquidators of HoldCo and made various allegations regarding the Petitioners' purported lack of independence and other matters related to their handling of the liquidation. The Petitioners are reviewing the summons and will respond in due

*3 (Bankr. S.D.N.Y. July 1, 2013) (granting provisional relief because the petitioner demonstrated a likelihood of success that the company is subject to a pending foreign main proceeding); *In re Gerova Fin. Grp., Ltd.*, No. 12-13641 (ALG) (Bankr. S.D.N.Y. Aug. 24, 2012), ECF No. 21 (same).

40. Because there is a strong likelihood that the Court will recognize the Cayman Proceeding as the foreign main proceeding with respect to the Debtor, Petitioners have demonstrated a reasonable probability of success on the merits.

**B. *Likelihood of Irreparable Injury if Provisional Relief is Not Granted***

41. Petitioners need the Provisional Relief to avert irreparable harm. Not being able to seek turnover of the Debtor's own books and records to uncover the facts and circumstances surrounding the Relevant Transactions—which divested the charitable organizations for whose benefit the Debtor was formed of their most valuable and primary asset—and the Remuneration Transactions until after the Adjourned Recognition Hearing Date will cause irreparable injury by delaying the Petitioners from progressing their investigation in accordance with their duties as officers of the Cayman Court. Indeed, "[t]his delay burdens the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders." Supplemental MacInnis Decl., at ¶37. The

course in the Cayman Proceeding. From their initial review, the Petitioners believe that the summons is misconceived, misleading and inaccurate. It will be for the Cayman Court to assess its merits. The issuance of the summons has no present impact on the Supervision Order appointing the Petitioners as JOLs of HoldCo, which remains in full force and effect in the Cayman Proceeding. Likewise, the summons has no present bearing on the Petitioners' status as the duly authorized JOLs of HoldCo (who have been empowered by the Cayman Court to act as the Foreign Representatives of the Cayman Proceeding in this Chapter 15 Case), for the purpose of assessing whether the JOLs satisfy the requirements of Bankruptcy Code section 101(24). We note that in other chapter 15 cases, courts have required parties to respond to discovery requests made by foreign representatives even after the foreign bankruptcy court supervising the foreign proceeding had ordered such foreign representatives to be removed. *See, e.g., In re Sam Industrias S.A.*, Case No. 18-23941-RAM [D.I 244], Tr. 11:20 – 12:20 (Bankr. S.D.Fla. April 6, 2021) (notwithstanding that the foreign representative had been ordered to be removed from office by the judge overseeing the foreign proceeding, declining to modify discovery deadlines in the chapter 15 case for that reason, where the effectiveness of the removal order had been stayed pending appeal) (the "Sam Industrias Transcript"). A copy of the Sam Industrias Transcript is attached hereto as **Exhibit B**.

Petitioners respectfully submit that these facts satisfy the second prong of the injunctive relief standard.

**C. *The Hardships Balance in Favor of the Petitioners***

42. Granting the Provisional Relief will not result in significant hardships to the Turnover Targets, while their consistent and unjustifiable delay in turning over the Debtor's own books and records will substantially hinder the Debtor's stakeholders by delaying the JOLs' investigation and burdening the estate with unnecessary costs. Section 1522 of the Bankruptcy Code permits courts to grant relief under section 1519 if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The Bankruptcy Code does not define "sufficiently protected" and courts "have great leeway to determine what that is." *In re Hanjin Shipping Co.*, No. 16-27041 (JKS), 2016 Bankr. LEXIS 3986, at *18 (Bankr. D.N.J. Sept. 20, 2016). In general, courts will determine sufficient protection by balancing the respective parties' competing interests. *See CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A., de C.V.)*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief."). Section 1522's legislative history suggests this section was intended to ensure "the foreign proceeding [is not] *seriously and unjustifiably* injuring United States creditors." H.R. Rep. No. 109-31, at 11 (2005) (emphasis added). If a foreign representative seeks to obtain discovery, factors in favor of granting relief are: (a) the non-availability of the information in the public domain; (b) the discovery is required for completing an investigation into the assets of the debtor, including causes of action; and (c) by obtaining discovery, the foreign representative can fulfill its duties under relevant foreign laws. *See In re Comair Ltd.*, 2021 Bankr. LEXIS 3137, at *16.

43. The relief requested herein will benefit the Debtor and its stakeholders by ensuring an equitable and orderly implementation of the Cayman Proceeding. Significantly, discovery will benefit the Debtor and its stakeholders by protecting the Debtor's estate and the interests of its stakeholders. The "Provisional Relief provides the JOLs the ability to expeditiously carry out their investigatory duties, reducing estate costs and preventing unnecessary delays." Supplemental MacInnis Decl., at ¶38.

44. Importantly, the Provisional Relief will not meaningfully harm any of the Turnover Targets, and any potential harm is far outweighed by the benefit to HoldCo's estate. Carrington Coleman, Valuescope, Hunton and Mancino would not be seriously and unjustifiably harmed by the requested Provisional Relief, as those parties would eventually be subject to turnover requests in the context of this Chapter 15 Case regardless of this Motion. Moreover, the Turnover Targets have been on notice for months that the JOLs are seeking return of HoldCo's books and records and their responses to the JOLs' correspondence suggest that they have already searched for, and identified, responsive documents. Carrington Coleman, for example, has conceded that complying with the Petitioner's request for books and records would be neither voluminous nor burdensome, repeatedly stating that "it is unlikely [it] would have many, if any, documents to provide." *See* Supplemental MacInnis Decl., at ¶39. On the other hand, delaying the JOLs' ability to progress their investigation with respect to the Turnover Targets until after the Adjourned Recognition Hearing Date needlessly increases the costs associated with the JOLs' administration of the Debtor's estate and unnecessarily burdens the Debtor and its stakeholders.

45. Ultimately, proceeding with discovery now (as opposed to after the Court recognizes the foreign proceeding) will cause minimal, if any, burden to Carrington Coleman, Valuescope, Hunton and Mancino, while the benefit to the Debtor—the acceleration of its

investigation and greater efficiency in the administration of the Cayman Proceeding and progressing the collection of the Debtor's books and records—would be significant.

**D. *Provisional Relief Will Serve the Public Interest***

46. The public interest—specifically, the goals of comity and cooperation, which are embodied in chapter 15 of the Bankruptcy Code, and which serve as the underlying spirit of the UNCITRAL Model Law on Cross-Border Insolvency (1997) upon which chapter 15 was based—would be best served by granting the Petitioners the Provisional Relief sought herein. The Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs, which should be respected and enforced in the United States. *See* Supplemental MacInnis Decl., at ¶40.

47. Also, the requested Provisional Relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing for efficient discovery tools. *See, e.g., In re Tribune Co.*, 477 B.R. 465, 475 (Bankr. D. Del. 2012) ("there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings").

48. Finally, the relief requested under section 1519 conforms with the public interest because it facilitates the Debtor's cross-border liquidation for the benefit of all of its creditors. *See, e.g., In re Energy Coal S.P.A.*, 582 B.R. 619, 627 (Bankr. D. Del. 2018) ("Particularly in the bankruptcy context, American courts have long recognized the need to extend comity to foreign bankruptcy proceedings, because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding") (cleaned up); *see also Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an

equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."). In particular, the Provisional Relief aligns incentives with respect to all of the JOLs' potential discovery targets to promote cooperation with the JOLs in discharging their duties under the Companies Act rather than obstruction.

**E. *The Request for Provisional Relief Should Be Granted***

49. As set forth above, the Petitioners have satisfied the standards for provisional relief under section 1519 of the Bankruptcy Code. Granting the Provisional Relief for a short time pending the hearing on recognition will allow for expeditious discovery and, by doing so, avoid burdensome expenses caused by an unnecessary delay. None of the Turnover Targets will suffer meaningful prejudice as a result of the Provisional Relief. Accordingly, the Motion should be granted.

## RESERVATION OF RIGHTS

50. For the avoidance of doubt, in seeking the Provisional Relief requested herein, the Petitioners expressly reserve all rights to request additional discovery or examination of the Turnover Targets and other parties in this Chapter 15 Case, as necessary or appropriate, whether on a provisional basis or otherwise.

## NO PRIOR REQUEST

51. No previous request for the relief sought herein has been made to this Court.

## NOTICE

52. Notice of this Motion will be provided to the following parties, through their counsel, if represented: (a) each of the Turnover Targets; (b) the Office of the United States Trustee for the District of Delaware; (c) all parties requesting notice under Rule 2002 of which the Petitioners are aware and (d) all parties as indicated on the Petitioners' service list. In light of the

relief requested, the Petitioners submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Petitioners respectfully request that this Court (i) grant this Motion in its entirety, (ii) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (iii) grant such other and further relief as is appropriate.

Dated: August 27, 2025
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*

Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: +1.302.778.7500
Facsimile: +1.302.778.7575
E-mail: jangelo@reedsmith.com

-and-

Casey Laffey, Esq. (admitted *pro hac vice*)
Aaron Javian, Esq. (admitted *pro hac vice*)
Ian M. Turetsky, Esq. (admitted *pro hac vice*)
Richard C. Solow, Esq. (admitted *pro hac vice*)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 100220
Telephone: +1.212.521.5400
Facsimile: +1.212.521.5450
E-mail: claffey@reedsmith.com
ajavian@reedsmith.com
ituretsky@reedsmith.com
rsolow@reedsmith.com

*Counsel to Margot MacInnis and Sandipan Bhowmik, as Joint Official Liquidators of Chapter 15 Debtor*

Case 25-11376-BLS Doc 21-1 Filed 08/27/25 Page 1 of 5

**EXHIBIT A**

Proposed Form of Order

(Attached)

Case 25-11376-BLS Doc 21-1 Filed 08/27/25 Page 2 of 5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD. (In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS)<br><br>**Re: D.I. ___** |

**ORDER GRANTING MOTION FOR PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521**

Upon consideration of the *Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(a), 542, 1519, and 1521* (the "Motion")[2] filed by Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd (In Official Liquidation), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court") ("HoldCo" or the "Debtor"), and the Debtor in the above-captioned chapter 15 proceeding, for entry of an order (this "Order") granting the Provisional Relief as more fully described in the Motion; and due notice having been provided given the circumstances and all objections and responses having been withdrawn,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[3] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd.* FSD 116 of 2025 (JAJ).

A. This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

B. Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(P).

C. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1410(1) and 1410(3).

D. This Court has the authority to grant the Provisional Relief requested by the Motion under 11 U.S.C. §§ 105(a), 542, 1519 and 1521.

E. There is a substantial likelihood that the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code and the other prerequisites to recognition of the foreign proceeding will be established. Accordingly, the Petitioners have shown a substantial likelihood of success that recognition will be granted.

F. The requested Provisional Relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor and the interest of creditors and other parties-in-interest as contemplated by sections 1521 and 1507 of the Bankruptcy Code.

G. Without the requested Provisional Relief, the Petitioners would be unable to seek turnover of the Debtor's own books and records for the purpose of uncovering the facts and circumstances surrounding the Relevant Transactions and the Renumeration Transactions until after the Adjourned Recognition Hearing Date.

H. The Provisional Relief is necessary to avert irreparable harm resulting from: (i) any further delay in their investigation in accordance with their duties as officers of the Cayman Court and (ii) burdening the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders. There is accordingly a material risk of irreparable harm if the Provisional Relief set forth in this Order is not granted.

I. The Provisional Relief will not prejudice any other parties, and the balance of hardships favors the granting of such relief.

J. The Provisional Relief is in the public interest because: (1) the Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs, which should be respected and enforced in the United States; and (2) granting the Provisional Relief will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing for efficient discovery tools.

K. All creditors and other parties-in-interest, including the Debtor, are sufficiently protected by the grant of the relief ordered hereby in compliance with section 1522(a) of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION, AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED:**

1. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. The Motion is GRANTED as set forth herein.

3. In accordance with sections 105(a), 542(e), 1519(a)(3), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code, within seven (7) days of the entry of this Order, the Turnover Targets shall disclose and turn over to the Petitioners all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.

4. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary: (i) this Order shall be effective immediately and enforceable upon entry; (ii) the Petitioners are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) the Petitioners are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

5. The Petitioners and their successors, representatives, advisors, and counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

6. This Court retains jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, any request for additional relief or any adversary proceeding brought in and through the Chapter 15 Case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

**EXHIBIT B**

Sam Industrias Transcript

(Attached)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE: CASE NO. 18-23941-RAM
Chapter 15

SAM INDUSTRIAS S.A.,

Debtor.
_____________________________________/

ECF# 195

April 6, 2021

The above-entitled cause came on for hearing before the Honorable ROBERT A. MARK, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, remotely via Zoom Video Conference, at 301 North Miami Avenue, Miami, Miami-Dade County, Florida, on April 6, 2021, commencing at or about 2:00 p.m., and the following proceedings were had:

Transcribed from a Digital Audio Recording by:
Margaret Franzen, Court Reporter

APPEARANCES VIA ZOOM VIDEO CONFERENCE:

SEQUOR LAW, by
GREGORY S. GROSSMAN, ESQUIRE
NYANA MILLER, ESQUIRE
On behalf of the Foreign Representative

FARROW LAW, P.A., by
JAY L. FARROW, ESQUIRE
On behalf of David Pobiak, Nanoshield Technologies LLC, Paerosol Global Partners LLC and PureCycle LLC

ALSO PRESENT VIA ZOOM VIDEO CONFERENCE:

JACKIE ANTILLON,
ECRO - Electronic Court Reporting Operator

- - - - - - -

Case 25-23946-BLS Doc 224 Filed 08/24/25 Page 4 of 18



THE COURT: Okay. Good afternoon. We're ready to proceed.

Let's get appearances first from the foreign representative's counsel.

MS. MILLER: Good afternoon, Your Honor.

Nyana Miller and Greg Grossman for the foreign representative.

THE COURT: Okay, and Mr. Koodie.

MR. FARROW: Actually for whatever reason my associate's name is coming up on my computer, Your Honor. This is Jay Farrow on behalf of the Pobiak parties.

I can say that Ms. Koodie was supposed to be here, unfortunately she was taken for emergency medical care right now due to some sharp pains in her abdomen, so she is -- she is not going to be with us today.

THE COURT: Okay. I hope it's nothing serious.

All right. So anything to report that's not in the papers, Mr. Farrow?

MR. FARROW: Yes, Your Honor.

We just became aware that there was an order issued by apparently the Brazilian appellate court on or about March 12th that indicates that -- that the current trustee is still no longer the trustee.

There was an order that was entered on

February 12th, I believe, that for the second time the trustee was removed. I believe that there was some type of an appeal.

There was an initial request, I believe for stay in the Brazilian court, and then that was granted, but then there's a subsequent order, which I don't have translated. I just -- I just -- just a couple minutes before the hearing was made aware of it.

So it appears that -- that -- that the current trustee has been replaced by someone named Solomon, I believe. So, you know, the grounds for which we were seeking an extension of time seem to remain in that the trustee may no longer be the trustee.

THE COURT: Okay. So the -- what was filed with a notice of filing on March 10th was the March 4th order, which stayed the February order, that's when it was entered, removing the foreign representative, and you're saying there was a subsequent order of the appellate court or the trial court?

MR. FARROW: I -- I -- I want to say it's the appellate court, Your Honor.

Maybe the trust -- the trustee's counsel would have more information about that particular order.

MS. MILLER: I have no idea what other order was or could have been issued on March 12th.

I consulted with my instructing counsel as of yesterday. They informed me that the stay is still the last and effective order governing this issue.

THE COURT: Okay. So just to set the stage, the -- after a long hearing, and we entered a fairly lengthy order, the Court entered an order on February 3rd, Docket Entry 193, that set some deadlines. I think it was February 16th for additional documents, February 25th for a privilege log, and an agreement I think by the 16th of February to set a deposition sometime before the -- before March 29th.

So then this motion was filed on the 15th of February based on the order removing the foreign rep, and then March 10th the foreign rep filed the order staying -- the order of the appellate court staying it.

So I guess my concern, Mr. Farrow, is why wasn't there some effort to work out new deadlines and new dates or a new date for deposition basically a month ago, almost a month ago, when your side was aware that the foreign rep was still in place?

MR. FARROW: Well, Your Honor, when Your Honor entered the -- the -- the January order, what had happened to that point was the trustee had been removed once and there was an appeal filed.

From my understanding, the -- the appellate

court issued a final decision sometime in January on that appeal in effect allowing the trustee to remain on the case.

In this -- subsequently, in February, the trustee is removed for a second time. He makes a move to appeal the case, and whether or not he may or may not be in, we're not sure as we (inaudible).

The answer to your question in part is that the appellate court had not issued a final decision on keeping him in the case.

THE COURT: Okay. Ms. Miller or Mr. Grossman.

MS. MILLER: Yes, Your Honor.

The appellate court has issued a final decision on keeping him in the case, and I'm sure Your Honor reviewed the notice of filing that we made, I believe it was at Docket Entry 200, with the second order where the appellate court refers back to the first order and says, I'm staying the second removal order, you know, see prior decision, which was a final decision of a three-judge panel of the appellate court deciding that this trustee needs to stay in the case, and ruling on the legal issue, which is whether the judge can make a removal of a trustee without providing any reasons therefore, which is exactly what this second judge purports to do.

Case 25-11946-BLS Doc 244 Filed 08/14/25 Page 8 of 18



So the second judge has repeated the actions of the first judge, which is simply to remove the trustee without providing any justification for that action, and the appellate court has now spoken for the second time in staying the second decision and saying this follows the same rule that we have already decided before.

THE COURT: Okay. But is it procedurally just an order staying, not a final order reversing?

MS. MILLER: Correct. The second order or the second removal attempt is currently at the procedural state of a stay by the appellate court simply because it takes more time to bring together the three-judge panel necessary to do a full ruling on the merits.

THE COURT: Okay, and the three-judge panel may not -- well, in all likelihood would not be the same panel from the first removal?

MS. MILLER: I'm not entirely sure whether the individual judges on the panel rotate.

I know that the reporter judge stays with the case. So the reporter judge is highly familiar, not only with these actions to remove the trustee, but also with the substance of the case.

THE COURT: All right. So you want to move forward. Just in connection with one of the deadlines that I read or referred to, did you receive a privilege

log or that's something you're also still waiting on based on the motion to extend?

MS. MILLER: Correct, Your Honor.

We have not received a privilege log, we haven't received a single responsive document from the subpoena targets in this case.

And I would just point out that Mr. Farrow's argument today is that there has apparently been an order in place since March 12th, and he's made no attempts to send me a copy of that order, to confer with me about that order, to translate that order, to file it with the Court, and so I see no reason why the Court should entertain his verbal allegation that that order exists and says what he purports that it says.

THE COURT: Okay. Yeah, it is awfully ambiguous as to what you think happened on March 12th.

Is this something you were just advised of by Brazilian counsel or what?

MR. FARROW: No, actually my -- my associate attorney has been following the case. She -- she called me just two minutes before, and she just was reviewing the docket in prepare -- in preparation for this hearing, and she noticed that this thing was on the docket. So this is what -- what she saw, and this is what I have to report.

I have no reason to -- I mean, I know that she's -- she's done the research before. I know that she does her own way of translating these -- these orders and -- and just getting it -- you know, what they say.

This is the information that I have, Your Honor, to report, and -- and I have no reason to doubt that this is -- this is what she's saying. She said that his appeal was denied, and I just got a text with respect to that. So ---

THE COURT: By the three-judge panel of the appellate court?

MR. FARROW: Your Honor, I -- I don't know and I wish I did.

THE COURT: All right. Ms. -- Ms. Miller, you believe you would have been advised if something had happened or you had recently spoken to Brazilian counsel to confirm that the appeal was pending or what's your latest?

MS. MILLER: Yes, Your Honor.

I would object to any statement by a person who doesn't speak English, purported to have her own way of translating these documents.

The only way to translate a document is either to read the language in which the document is written or to send it to a translator who reads that

Case 23-23946-RAM Doc 2142 Filed 08/24/25 Page 10 of 18



language.

It is very dangerous to try to read legal documents, particularly to understand a docket. So any number of things could have happened on the docket, related or unrelated to the actual removal of the trustee.

There are frequently notices that go out later, publications in the Gazette that go out after the fact. There's a long delay often times between the judge actually signing the order and the order becoming technically effective because it's now been published in the Gazette and stamped 13 times or whatever the procedures are.

And so to have an American lawyer, who doesn't even speak the language, try to tell us what something maybe says that I haven't seen a copy of is -- is, quite frankly, completely unreliable.

I did speak to a Brazilian lawyer yesterday who is counsel of record in this case, and he told me that the final actions that have effectiveness over the removal of the trustee is the appellate court, the reporter judge of the appellate court issuing the stay order.

THE COURT: All right. Well, Mr. Farrow, I know you're -- you're at a disadvantage if Ms. Koodie was the one with more direct knowledge, but if -- if she had become aware -- well, when did -- when did -- I hate to

draw this out further, but when did she become aware, Ms. Koodie, that is, of the --

MR. FARROW: (Inaudible.)

THE COURT: -- March 12th order because it's -- now it's three and a half weeks from March 12th?

MR. FARROW: I understand, Your Honor, and to be completely candid with the Court, my understanding is that it was pursuant to her review of the docket this morning.

So I just got the chance to speak to her, she's been going through a lot this morning, with respect. She had called out sick yesterday. She is currently seeking emergency medical care for what's going on with her, so I -- I am at a little bit of a disadvantage, but I do see the Court's point.

I'm not going to make it that there's a larger issue with respect to what we could have done with respect to this before and in preparation of today. So I can appreciate that, certainly.

THE COURT: Okay. Well, the record at this point is simply the stay of the removal order, and it's more than just staying the removal because of the fact that it essentially adopted very specific and strong findings from the order reversing the first removal.

Regardless of whether that foreshadows with

Case 23-23346-RAM Doc 2144 Filed 08/24/25 Page 12 of 18



some degree of certainty that the appeal will be granted and the removal reversed ultimately, this is not a finding I can make.

However, I -- I've traditionally acted in these Chapter 15 cases based on whatever orders are in place. This is slightly different, I understand, because the order -- the trial court order, at least, is -- is removing the foreign trustee.

Typically I'm looking at orders that are on appeal, but not stayed, and giving weight to them and recognition to them in some instances specifically under Chapter 15.

But at this point I do think we need to move forward and act based on the foreign representative having the authority based -- at this stage of the proceeding because it's -- certainly I can take judicial notice that it's about like predicting weather in the -- in the mountains to predict when an appellant decision is going to come down in -- in Brazil. So we're not going to hold -- hold off on this discovery indefinitely.

So, Ms. Miller, what form of order would you request? I know what you said in your response, you want the documents tomorrow and a deposition in a week, but we've come this far and there was a basis for the motion to extend, although as Mr. Farrow concedes, also a basis

to try to work things out once the March 10th notice of filing was made.

But what -- what realistically and reasonably would you request be in an order based on where we are right now?

MS. MILLER: Well, Your Honor, I guess I would ask what efforts the subpoena recipients have made to gather the documents.

They should have, quite frankly, made some efforts. They didn't file their motion to extend time until the day before the production was done. They have known since March 10th that -- since I think before March 10th when I sent a meet and confer e-mail to Mr. Farrow asking him if he would be amenable to an agreed extension, to which his clients never responded, and so what efforts did they make to identify the potentially responsive documents?

We know from the interrogatory responses that the relationship between Mr. Pobiak and Mr. Birmann was not particularly long, so, you know, what effort needs to be made and what efforts have already been commenced in responding to the subpoena?

THE COURT: Yeah. Mr. Farrow, before you respond, it's not simply the time span between the February 3rd order, which actually that one I pulled up.

Let me see when the hearing date was, the long hearing we had going through all these issues, and some of the objections were sustained or sustained in part by clarification. The order started with background, so let me -- we had an initial hearing back in November.

I mean, my point is the discovery requests themselves go back several months, and the hearing that gave rise to the February 3rd order was January 26th.

So as of the 26th, there was a deadline in place of the 16th, and so I'll, with -- with -- with that in mind, ask you to essentially respond to Ms. Miller's question, which is with the length of time that this has all been pending and the rulings made on January 26th, prior to any issue about the foreign representative, what -- what's been done to assemble documents and prepare a privilege log, if you know?

MR. FARROW: I know that Ms. Koodie has gone through e-mails and efforts, substantial efforts were made during that time period. I don't know where she is exactly with the privilege log.

But as far as getting documents to -- to the trustee, you know, we're not -- we're not asking for any more than 10 days to be able to do that, plus by that time we should have our privilege logs finished, as well.

So, you know, we're -- I just -- I'm asking

for that in part because Ms. Koodie is not here, she wasn't here in my office yesterday. But, you know, I have the ability to see what she's done and to start working through that myself, and to get whatever we -- whatever is responsive over to the -- to the trustee.

THE COURT: Okay, and I'm willing to give them at this point, with all the time that's passed and the medical situation Ms. Koodie is dealing with, the ten days, Ms. Miller.

Then you'd want to -- if I set a deadline of the 16th for the documents and the log, can we use the 16th as a date to also reach agreement on a deposition?

MR. FARROW: That's fine, Your Honor.

MS. MILLER: Yes, Judge.

THE COURT: Which we can say the deposition by April 30th unless otherwise agreed, if the scheduling, just with the number of parties involved, if it requires you to push it back a little, if you agree to it.

Okay. Anything else that you would request in the order?

MS. MILLER: No, Your Honor.

THE COURT: Okay. Then I'll grant the motion in part. The order should provide that it's granted in terms of extending the deadlines as -- as set forth below. I'm putting the words into what you'll put

in the order, set forth below, and then overrule to the extent -- to the extent that the Pobiak parties are requesting that discovery be stayed pending a final ruling on the appeal.

And then with that, I think it -- it just flows into the deadlines, April 16th for the -- well, it's really I guess basically two months. The February 16th deadlines in the February 3rd order will be April 16th, and the -- well, the depo is actually only pushed by a month, and April 16th also to agree on a deposition date no later than April 30th unless otherwise agreed to by the parties.

Okay. Anything else?

MR. FARROW: No, Your Honor.

MS. MILLER: No, Your Honor.

THE COURT: Okay. All right.

Then, Mr. Farrow, I hope Ms. Koodie is okay. If -- if there's another few days because of her health, then just talk to Ms. Miller. I don't think that's going to be an issue, but if everything has pretty much been assembled, hopefully these deadlines can be met.

MR. FARROW: I think that it can, Your Honor, and I appreciate you saying that, but we'll do -- you know, we know what the marching orders are and we will comply.

Case 25-21946-BLSM Doc 2144 Filed 08/24/25 Page 18 of 18



THE COURT: Okay.

MR. FARROW: So thank you for saying that.

THE COURT: All right. If -- if the lawyers can drop off, I just want to talk to Jackie for a moment, my -- my calendar clerk.

All right. Thank you. Be safe everybody.

MR. FARROW: Thank you.

MS. MILLER: Thank you.

(Thereupon, the hearing was concluded.)

Case 28-21946-RAM Doc 2242 Filed 06/24/25 Page 18 of 18



CERTIFICATION

STATE OF FLORIDA :

COUNTY OF MIAMI-DADE :

I, Margaret Franzen, Court Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 14th day of September 2021.

______________________________

MARGARET FRANZEN

Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #GG187411
April 14, 2022

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD.<br>(In Official Liquidation),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-11376 (BLS)<br><br>**Re: D.I. 21** |

## DECLARATION OF MARGOT MACINNIS IN SUPPORT OF MOTION OF PETITIONERS FOR ENTRY OF ORDER GRANTING PROVISIONAL RELIEF COMPELLING TURNOVER OF THE DEBTOR'S BOOKS AND RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 542, 1519 AND 1521

I, Margot MacInnis, pursuant to 28 U.S.C. § 1746, hereby declare (this "Supplemental Declaration") under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

### A. The Joint Official Liquidators and Original MacInnis Declaration

1. My colleague, Sandipan Bhowmik, and I (the "Petitioners"),[2] both of Grant Thornton Specialist Services (Cayman) Limited ("Grant Thornton"), are the duly appointed Joint Official Liquidators (the "JOLs") of Charitable DAF HoldCo, Ltd. (in Official Liquidation) ("HoldCo" or the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"),[3] before the Grand Court of the Cayman Islands (the "Cayman Court") by an order dated May 6, 2025 (Cause No. FSD 116 of 2025)(JAJ) (the "Supervision Order").

---

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 263805. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

[3] Entitled *In the matter of section 131 of the Companies Act (2025 Revision) and in the matter of Charitable DAF HoldCo Ltd.*, FSD 116 of 20256 (JAJ).

2. On July 21, 2025, by its undersigned United States counsel, Reed Smith LLP, the JOLs commenced the above-captioned chapter 15 case in respect of the Debtor (the "Chapter 15 Case") by filing the respective chapter 15 petition [D.I. 1] (the "Petition Form") and a *Verified Petition for (I) Recognition of the Foreign Main Proceeding, (II) Recognition of the Foreign Representatives, and (III) Certain Related Relief* [D.I. 2] (the "Verified Petition," and together with the Petition Form, the "Petitions") seeking recognition of (a) the Cayman Proceeding as a "foreign main proceeding", and (b) the JOLs as "foreign representatives" of HoldCo.

3. On July 21, 2025, the Debtor filed the *Declaration of Margot MacInnis in Support of Chapter 15 Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 4] (the "Original MacInnis Declaration"). This Supplemental Declaration incorporates the statements made in the Original MacInnis Declaration as if made herein.

4. I respectfully submit this Supplemental Declaration in support of the *Motion of Petitioners for Provisional Relief Compelling Turnover of the Debtor's Books and Records Pursuant to Bankruptcy Code Sections 105(A), 542, 1519 and 1521* (the "Motion") seeking immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require Carrington Coleman, Valuescope, Hunton, and Mancino, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo.

5. I am duly authorized to make this Supplemental Declaration on behalf of the JOLs. I am fully familiar with the facts of this matter. Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon my personal knowledge of

HoldCo's operations and financial condition, my review of relevant documents and my conversations with relevant personnel. I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

6. I make this Supplemental Declaration in my statutory capacity as an officer of the Cayman Court and request an extension of comity for the benefit of all of HoldCo's creditors and investors, whose interests I represent. For the reasons discussed below, I submit that provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of title 11 of the Bankruptcy Code to require the Turnover Targets, within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by, HoldCo, is appropriate and warranted under the circumstances.

**B. Conduct of Cayman Proceeding and Cayman Litigation Since the Commencement of the Chapter 15 Case**

7. Since the Petition Date, the JOLs have progressed in discharging their duties under the Companies Act both in relation to HoldCo's assets and in investigating HoldCo's assets and affairs.

8. On July 31, 2025, the Cayman Court entered the Cayman Consent Order, in which it ordered by consent, among other things, that the Named Defendants in the Cayman Litigation and the CDM Entities shall abide by certain undertakings intended to prevent asset dissipation and provide transparency and disclosure to the JOLs pending the Cayman Court's determination of the Injunction Summons.

9. On August 5, 2025, the JOLs filed the *Certification of Counsel Regarding Agreed Order Granting Provisional Relief Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code* [D.I. 18] (the "Certification of Counsel"), seeking approval of a stipulation (the "Stipulation")

among the JOLs, the Applicable Named Defendants, and the CDM Entities that, among other things: (a) recognizes and enforces the Cayman Consent Order, and (b) adjourns the hearing to recognize the Cayman Proceeding under chapter 15 of the Bankruptcy Code (the "Recognition Hearing") from its originally scheduled date of August 14, 2025 (the "Original Recognition Hearing Date"), *sine die*, pending the scheduling of the hearing on the Injunction Summons by the Cayman Court.

10. On August 6, 2025, this Court entered the U.S. Court Order approving the Stipulation [D.I. 19]. The entry of the Cayman Consent Order and the U.S. Court Order recognizing and enforcing the Stipulation significantly furthers the JOLs' goal of preventing the dissipation of assets subject to HoldCo's potential proprietary and other claims pending the resolution of the Cayman Litigation.

11. On August 19, 2025, DFW issued a summons seeking the removal of the Petitioners as Joint Official Liquidators of HoldCo and made various allegations regarding the Petitioners' purported lack of independence and other matters related to their handling of the liquidation. The JOLs are reviewing the summons and will respond in due course in the Cayman Proceeding.

## C. JOLs' Investigations into HoldCo's Assets and Affairs

12. Consistent with the purpose of official liquidation under Part V of the Companies Act, the JOLs are empowered to investigate: (a) the causes for the failure of HoldCo, as necessary; and (b) generally, the promotion, business, dealings and financial affairs of HoldCo. *See* Companies Act, § 110(2).

13. To identify, secure, and recover HoldCo's books and records, the JOLs have: (a) issued formal correspondence to over 50 parties, including directors, shareholders, banks, service providers, various third parties, and the prior appointed joint voluntary liquidators,

notifying them of the JOLs' appointment and requesting books and records; and (b) held discussions with various parties to discuss the history and financial affairs of HoldCo.

14. Furthermore, since the date of their appointment, the JOLs have been conducting an extensive and detailed ongoing investigation into HoldCo's affairs. This investigation has involved a review of HoldCo's books and records (to the extent that they have been able to obtain them and to the extent that they are complete) and numerous inquiries and requests for information directed to persons previously involved with HoldCo.

15. While the vast majority of parties that the JOLs have contacted have cooperated with the JOLs, certain US-based service providers have asserted that they do not recognize the JOLs' authority under the Supervision Order and have refused to provide copies of the requested information absent an order from this Court. In particular, Carrington Coleman,[4] who provided advice in respect to HoldCo's affairs, Valuescope,[5] HoldCo's historic financial advisor and valuation services provider, and Hunton,[6] who provided HoldCo tax law advice, have declined to voluntarily turn over to the JOLs HoldCo's books and records in their possession despite numerous requests by HoldCo and its counsel requesting the same. Additionally, Mancino,[7] one of HoldCo's tax consultants, previously indicated a willingness to cooperate with the JOLs' turnover requests but has yet to comply.

[4] Ex. 1, May 7 Carrington Coleman Letter; Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 6, July 9 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter; Ex. 8, August 6 Carrington Coleman Letter.

[5] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 11, May 30 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[6] Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter; Ex. 22, August 8 Hunton Email; Ex. 23, August 20 Hunton Letter.

[7] Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.

(i) **Carrington Coleman**

16. On May 7, 2025, the JOLs made their first request to Carrington Coleman to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Carrington Coleman possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[8]

17. Carrington Coleman responded that "it is unlikely [it] would have many, if any, documents to provide"[9] in response to the JOLs' requests for HoldCo's books and records,[10] despite its prior work for HoldCo.[11] Upon further investigation, Carrington Coleman admitted it is in possession of documents related to a memo prepared by Carrington Coleman regarding U.S. tax issues as they relate to HoldCo and its related affiliates.[12]

18. Despite numerous requests from HoldCo and its counsel,[13] Carrington Coleman has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo. Carrington Coleman's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is recognized by the U.S. Bankruptcy Court in Delaware in the Chapter 15 Case.

---

[8] Ex. 1, May 7 Carrington Coleman Letter.

[9] Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.

[10] Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

[11] Ex. 3, May 28 Carrington Coleman Email.

[12] Ex. 3, May 28 Carrington Coleman Email.

[13] Ex. 1, May 7 Carrington Coleman Letter; Ex. 4, June 2 Carrington Coleman Letter; Ex. 5, June 25 Carrington Coleman Letter; Ex. 7, July 30 Carrington Coleman Letter.

**(ii) Valuescope**

19. On May 7, 2025, and May 15, 2025, the JOLs made their initial requests to Valuescope to produce all of HoldCo's files in their possession, including, without limitation, all engagement letters with HoldCo, any books and records held by Valuescope on behalf of HoldCo, all instructions, work papers and documents reviewed by, provided to or prepared by Valuescope in connection with the valuation analyses it conducted for HoldCo as of December 31, 2020 and onwards concerning 100 Participating Shares in HoldCo and/or HoldCo's 100% membership interest in CDM.[14]

20. Valuescope acknowledges that it possesses records relating to its prior valuation work for HoldCo.[15]

21. However, despite numerous requests by HoldCo and its counsel,[16] Valuescope has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with its engagement by, HoldCo. Valuescope's refusal rests on its assertion that, absent recognition of the Cayman Court's appointment of the JOLs by a U.S. bankruptcy court or other U.S. legal authority, Valuescope has no obligation to turn over the requested records.[17]

**(iii) Hunton**

22. On May 8, 2025, the JOLs made their first request to Hunton to produce a copy of their complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust

[14] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter.

[15] Ex. 11, May 30 Valuescope Letter.

[16] Ex. 9, May 7 Valuescope Letter; Ex. 10, May 15 Valuescope Letter; Ex. 12, June 2 Valuescope Letter; Ex. 13, June 25 Valuescope Letter; Ex. 14, July 30 Valuescope Letter.

[17] Ex. 11, May 30 Valuescope Letter.

accounts or other funds held on behalf of HoldCo, the AML or KYC files Hunton possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[18]

23. Hunton acknowledges that HoldCo is a former client and that it possesses documents on its representation of HoldCo.[19] Additionally, Hunton responded that it "has not held, and does not hold, trust funds of HoldCo, there are no outstanding debts HoldCo owes Hunton, and thus [it has] no document with a statement of a HoldCo account that is due, and Hunton holds no retainer funds of HoldCo."[20]

24. Despite numerous requests from HoldCo and its counsel,[21] Hunton has declined to voluntarily turn over books and records in its possession belonging to, or otherwise arising in connection with their engagement by, HoldCo. Hunton's position is that it is only required to respond and only will respond to the JOLs' requests if and when the JOLs' authority is validated in the Chapter 15 Case as the parties with the rights to assert HoldCo's privileges and rights to receive HoldCo's legal file held by Hunton.[22]

(iv) **Douglas Mancino of Seyfarth Shaw LLP**

25. On May 6, 2025, the JOLs made their first request to Mancino to produce a copy of his complete file relating to the engagement by HoldCo, including, without limitation, copies of engagement letters with HoldCo, invoices, statements of account, details of any retainer, trust accounts or other funds held on behalf of HoldCo, the AML or KYC files Mancino possesses with respect to HoldCo and its directors, and any books and records held on behalf of HoldCo.[23]

---

[18] Ex. 20, May 8 Hunton Letter.

[19] Ex. 23, August 20 Hunton Letter.

[20] *Id.*

[21] Ex. 20, May 8 Hunton Letter; Ex. 21, August 6 Hunton Letter.

[22] Ex. 23, August 20 Hunton Letter.

[23] Ex. 15, May 6 Seyfarth Shaw Letter.

26. Mancino acknowledges that he possesses the requested documents.[24]

27. Initially, Mancino had indicated a willingness to cooperate with the JOLs, including during a May 12, 2025 meeting with the JOLs, as well as in subsequent correspondence, and was seemingly prepared for document production.[25] Yet, without explanation, to date Mancino has failed to produce HoldCo's books and records.

28. I believe, based on correspondence received from Carrington Coleman, that Carrington Coleman maintains at least certain books and records belonging to HoldCo that are relevant to the JOLs in our investigation of the facts and circumstances surrounding the Relevant Transactions, pursuant to which HoldCo's primary and most valuable asset was transferred to DFW. Likewise, I believe that HoldCo's books and records held by Valuescope go directly to valuation issues that are critical to these transactions and the JOLs' investigation of the same. Finally, I believe that as HoldCo's tax advisor, the books and records held by Mancino and Hunton may be central to the investigation of the Relevant Transactions.

29. In particular, Carrington Coleman, Valuescope, Hunton, and Mancino may have possession, custody, or control of books and records belonging to, or otherwise arising in connection with their engagement by, HoldCo, including files regarding the facts, circumstances and alleged justifications for: (1) the Directors to execute the Relevant Transactions, which ultimately divested HoldCo of its interest in the Fund; and (2) the Remuneration Transactions, which dramatically increased the Directors' compensation.

---

[24] Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain.

[25] Ex. 15, May 6 Seyfarth Shaw Letter; Ex. 16, May 6 Seyfarth Shaw Email; Ex. 17, May 12 Grant Thornton Email; Ex. 18, May 13 Seyfarth Shaw/Grant Thornton Email Chain; Ex. 19, August 13 Seyfarth Shaw Letter.

**D. Need for Discovery from the Turnover Targets**

30. On the Petition Date and in my capacity as one of the JOLs of the Debtor, I, alongside Mr. Bhowmik, filed the Petitions, thereby commencing the Debtor's Chapter 15 Case.

31. I was authorized pursuant to the Supervision Order to act as one of the JOLs of the Cayman Proceeding and to seek recognition and approval of the Cayman Proceeding as necessary, including the power to seek recognition of the JOLs and the Cayman Proceeding for the purpose connected with the exercise of the JOLs' power to commence legal proceedings in the name and on behalf of HoldCo to obtain the provision of information and/or documents in the United States.

32. I am aware that this Court can afford the JOLs broad discovery rights pursuant to sections 105(a), 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code.

33. I am of the belief that the JOLs must be afforded discovery rights in the United States with respect to the Turnover Targets to facilitate their investigations. Affording the JOLs the ability to compel the Turnover Targets to return files belonging to the Debtor expeditiously is imperative to enable the JOLs to: (a) progress their investigation of the Debtor's assets and affairs, and, in particular, their examination into the Relevant Transactions and the Remuneration Transactions, in a timely manner for the benefit of all stakeholders, (b) avoid incurring burdensome costs by needlessly extending the duration of the JOLs' investigations, and (c) align incentives with respect to all potential discovery targets to promote cooperation with the JOLs in their efforts to discharge their statutory duties in lieu of encouraging such parties to obstruct and delay.

34. I submit that granting the Provisional Relief would result in the JOLs obtaining return of HoldCo's books and records from the Turnover Targets on timing that is broadly consistent with the JOLs' expectations based on the scheduling of the Original Recognition Hearing Date. Moreover, I submit that granting the Provisional Relief is particularly necessary

because, based on scheduling constraints in the Cayman Proceeding, the JOLs now expect that the Injunction Summons will be heard some time in November or December 2025, which is many weeks later than the JOLs originally anticipated, thereby significantly lengthening the "gap" period between the Petition Date in this Chapter 15 Case and the date when the Recognition Hearing will be scheduled.

35. I understand that in the Third Circuit, the general standards for the Provisional Relief requested in the Motion require a showing of: (1) a substantial likelihood of obtaining recognition of the Cayman Proceeding; (2) the likelihood of irreparable injury if the Provisional Relief is not granted; (3) the hardships in granting the Provisional Relief balance in favor of the JOLs; and (4) the Provisional Relief will serve the public interest.

36. I submit that there is no reason why this Court should not recognize the Cayman Proceeding on the Adjourned Recognition Hearing Date. As set forth in the Verified Petition, the Cayman Proceeding is clearly a "foreign proceeding" under chapter 15, and the Debtor's center of main interests is in the Cayman Islands. *See* Verified Petition, ¶¶ 132-144. The Petitioners satisfy the requirements of a "foreign representative" under Bankruptcy Code section 101(24). Id. ¶¶ 148-149. There can be no serious question that the Petitioners are entitled to and will succeed in obtaining relief under sections 1517 and 1520 of the Bankruptcy Code on the Adjourned Recognition Hearing Date and would have obtained such relief by the Original Recognition Hearing Date absent the Stipulation. Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition.

37. I also submit that the Petitioners need the Provisional Relief to avert irreparable harm. Not being able to seek turnover of the Debtor's own books and records to uncover the facts

and circumstances surrounding the Relevant Transactions—which divested the charitable organizations for whose benefit the Debtor was formed of their most valuable and primary asset—and the Remuneration Transactions until after the Adjourned Recognition Hearing Date will cause irreparable injury by delaying the Petitioners from progressing their investigation in accordance with their duties as officers of the Cayman Court for potentially several months. This delay burdens the Debtor's estate with unnecessary costs to the detriment of all of its stakeholders.

38. I also submit that granting the Provisional Relief will not result in significant hardships to the Turnover Targets, while their delay in turning over the Debtor's own books and records will substantially hinder the Debtor's stakeholders by delaying the JOLs' investigation and burdening the estate with unnecessary costs. The relief requested by the Motion will benefit the Debtor and its stakeholders by ensuring an equitable and orderly implementation of the Cayman Proceeding. The requested Provisional Relief provides the JOLs with the ability to expeditiously carry out their investigatory duties, reducing estate costs and preventing unnecessary delays.

39. The Provisional Relief will not meaningfully harm the Turnover Targets, and any potential harm is far outweighed by the benefit to HoldCo's estate. The Turnover Targets would eventually be subject to turnover requests in the context of this Chapter 15 Case regardless of the Motion. Moreover, there is no credible basis to claim that granting Provisional Relief would cause any hardship, let alone significant hardship. Carrington Coleman, for example, has repeatedly stated that "it is unlikely [it] would have many, if any, documents to provide."[26]

40. I also submit that granting the Provisional Relief will serve the public interest because the Supervision Order provides for the JOLs' ability to investigate HoldCo's affairs,

---

[26] Ex. 2, May 22 Carrington Coleman Letter; Ex. 3, May 28 Carrington Coleman Email; Ex. 6, July 9 Carrington Coleman Letter.

which should be respected and enforced in the United States. The Provisional Relief is also in the public interest because it will facilitate the Debtor's efforts to pursue and complete a successful liquidation for the benefit of the Debtor's stakeholders by providing efficient discovery tools. Additionally, the Provisional Relief conforms with the public interest because it facilitates the Debtor's cross-border liquidation for the benefit of all of its creditors. In particular, the Provisional Relief aligns incentives with respect to all of the JOLs' potential discovery targets to promote cooperation with the JOLs in discharging their duties under the Companies Act rather than obstruction.

41. For all of these reasons, I respectfully request that this Court (i) grant the Motion in its entirety, (ii) enter the Proposed Order, substantially in the form attached to the Motion as Exhibit A, granting immediate provisional relief, pending recognition by this Court of the Cayman Proceeding, in the form of discovery under sections 105(a), 542(e), 1519, and 1521 of the Bankruptcy Code to require the Turnover Targets within seven (7) days of entry of the Proposed Order, to turn over all books and records in their possession belonging to, or otherwise arising in connection with their engagement by HoldCo, and (iii) grant such other relief as the Court deems appropriate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 27, 2025
Cayman Islands

*/s/ Margot MacInnis*
MARGOT MACINNIS

*Joint Official Liquidator of*
*Charitable DAF HoldCo, Ltd*
*(in Official Liquidation)*

# EXHIBIT 1

Grant Thornton

Our Ref: 20250507 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Carrington Coleman LLP
FAO Mr. Shaw
901 Main Street
Suite 5500
Dallas
Texas 75202

Via email: bshaw@ccsb.com

7 May 2025

Dear Mr. Shaw,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you might be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators ("**JVLs**") of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

We ask that this file includes but is not limited to the following documentation:

1. A copy of your engagement letter dated 22 March 2024;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to you;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order – 2025-116 (JAJ)
- Proof of Debt – CWR 24

# EXHIBIT 2

CARRINGTON COLEMAN

Kelli Hinson
Partner
214.855.3110
khinson@ccsb.com

May 22, 2025

***Via Email***
Jamie Gallagher jamie.r.gallagher@uk.gt.com
Michael Aquino michael.aquino@uk.gt.com
Sandipan Bhowmik cdaf.core@uk.gt.com
Grant Thornton
2nd Floor, Century Yard, Cricket Square
P.O. Box 10144
Grand Cayman, Cayman islands KY 1-1102

Re: Charitable DAF HoldCo, Ltd.

Dear Sirs:

I am the General Counsel of Carrington Coleman Sloman & Blumenthal, LLP, and I am responding to your letter dated May 7, 2025 to my law partner, Brian Shaw. Please direct any future communications regarding this matter to me.

We are, of course, willing to comply with our ethical duties to provide client files upon an appropriate request. However, we must do so in a way that comports with our other legal obligations. I understand your position that the Joint Official Liquidators ("JOLs") have been appointed as such by the Grand Court of the Cayman Islands and that you make your request in that capacity. It is my understanding, however, that such appointment by a foreign court is not recognized under United States law unless or until the order is recognized by a United States Bankruptcy Court pursuant to 11 U.S. Code Chapter 15. If you have obtained such recognition, please let me know. Otherwise, we cannot comply with your request to release confidential and privileged client files.

In addition, I understand you purport to represent and seek documents concerning only Charitable DAF HoldCo, Ltd. (the "Company"). We have not represented the Company in any lawsuits, arbitrations, or other proceedings, and I am unaware of any legal advice we have provided specifically to the Company. We have not sent invoices to or, to our knowledge, received payment from the Company. Accordingly, even if the JOLs had authority to request this information, it is unlikely we would have many, if any, documents to provide.

Sincerely,

Kelli M. Hinson

# EXHIBIT 3

**From:** Kelli M. Hinson <khinson@CCSB.com>
**Sent:** Wednesday, May 28, 2025 3:19 PM
**To:** Jamie R Gallagher; Michael Aquino; CDAF Core
**Cc:** Brian P. Shaw
**Subject:** Follow up to Carrington Coleman response to letter from JOLs

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

I write to follow up on my letter dated May 22, 2025. In that letter, I stated that I was unaware of any legal advice CCSB had provided specifically to Charitable DAF HoldCo, Ltd. (the "Company"). Since sending the letter, it has come to my attention that one of our lawyers, David Corkern, prepared a memo regarding U.S. tax issues as they related to the Company and its related affiliates. Accordingly, there may be a small number of documents related to that project that the Company may be entitled to. That being said, we still have the same reservations concerning the JOLs' authority to speak for the Company in the United States prior to complying with Chapter 15 of the U.S. Bankruptcy Code.

**Kelli M. Hinson**
*Partner*

CARRINGTON COLEMAN

O 214.855.3110 / M 214.289.9982
khinson@CCSB.com / ccsb.com

Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main St / Suite 5500 / Dallas, TX 75202

**From:** Kelli M. Hinson <khinson@CCSB.com>
**Sent:** Thursday, May 22, 2025 4:37 PM
**To:** jamie.r.gallagher@uk.gt.com; michael.aquino@uk.gt.com; cdaf.core@uk.gt.com
**Cc:** Brian P. Shaw <bshaw@CCSB.com>
**Subject:** Carrington Coleman response to letter from JOLs

Please see the attached correspondence in response to the May 7, 2025 letter from the Charitable DAF HoldCo Ltd. JOLs.

**Kelli M. Hinson**
*Partner*

CARRINGTON COLEMAN

O 214.855.3110 /
khinson@CCSB.com / ccsb.com

Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main St / Suite 5500 / Dallas, TX 75202

This electronic message is confidential and is intended only for the use of the individual to whom it is addressed. The information may also be legally privileged. This transmission is sent in trust, for the sole

Case 25-11370-BLS Doc 22-3 Filed 08/27/25 Page 3 of 3

purpose of delivery to the intended recipient. If you have received this transmission in error, you are hereby notified that any use, dissemination, distribution or reproduction of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify me by electronic message or telephone at 214-855-3000, and delete the message from your system. Carrington, Coleman, Sloman & Blumenthal, L.L.P. www.carringtoncoleman.com

# EXHIBIT 4

ReedSmith
Driving progress through partnership

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 2, 2025

**Via Email (khinson@ccsb.com)**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in response to your letter, dated May 23, 2025, which responded to the JOLs' letter, dated May 7, 2025, requesting the Company's complete file.

Although Carrington Coleman insists that it is "willing to comply with" the JOLs' request for the Company's file, the May 23, 2025 letter and delay suggests otherwise. The letter states that Carrington Coleman is unwilling to comply with the JOLs' reasonable requests because the JOLs' appointment has not yet been recognized under Chapter 15 of the Bankruptcy Code. However, Chapter 15 recognition is irrelevant for Carrington Coleman to comply with the JOLs' request.

The JOLs have been duly appointed by the Grand Court of the Cayman Islands and are requesting that Carrington Coleman provide them with the Company's files pursuant to the JOLs' statutory and court mandated powers. There is nothing about the JOLs' appointment or their status in the United States precluding Carrington Coleman's cooperation with the JOLs' reasonable requests, and Carrington Coleman's argument to the contrary is wrong.

The JOLs therefore renew their request that Carrington Coleman **immediately** provide them with Company's files. Should Carrington Coleman decline to cooperate, the JOLs will have no choice but to assume that Carrington Coleman intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for Carrington Coleman's stonewalling. The JOLs sincerely hope and expect, however, that those measures will not be necessary.

Sincerely,

Casey D. Laffey

cc: Aaron Javian (ajavian@reedsmith.com)

# EXHIBIT 5

ReedSmith
Driving progress
through partnership
Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 25, 2025

**By Electronic Mail**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
khinson@ccsb.com

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)
FSD No. 2025-116 (JAJ)
Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Carrington Coleman dated June 2, 2025, wherein the JOLs "renew[ed] their request that Carrington Coleman **immediately** provide them with Company's files."

We have yet to receive a response to our June 2, 2025 letter. Please respond immediately, as we hope and expect to resolve this matter amicably. As we stated in our letter, should "Carrington Coleman decline to cooperate, the JOLs will have no choice but to assume that Carrington Coleman intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for Carrington Coleman's stonewalling." Again, the JOLs sincerely hope and expect that those measures will not be necessary.

Very truly yours,

Casey D. Laffey

# EXHIBIT 6

CARRINGTON COLEMAN

Kelli Hinson
Partner
214.855.3110
khinson@ccsb.com

July 9, 2025

***Via Email claffey@reedsmith.com***
Casey Laffey
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650

Re: Charitable DAF HoldCo, Ltd.

Dear Casey:

I am responding to your letter dated June 25, 2025 on behalf of the "joint official liquidators" or "JOLs" of Charitable DAF HoldCo, Ltd. Although you accuse Carrington Coleman of "stonewalling" and "obstruct[ing] the JOLs' duties," you have failed to meaningfully respond to the concerns stated in my letter dated May 23, 2025 other than to say they are "irrelevant" and "wrong." If you have authority supporting your assertion that the appointment of JOLs by a court in the Cayman Islands is appropriately recognized in the United States in the absence of a Chapter 15 proceeding, please provide that to me and I'm happy to take a look at it. *See, contra, Rsrv. Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021 (PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010) ("If this Court were to allow the Liquidators to take the place of the Fund Board, such an action would constitute a tacit recognition that the BVI liquidation proceeding is valid and, as a result, the Liquidators are in control of the Fund. This is precisely the kind of determination that must be made in a Chapter 15 proceeding.").

I also reiterate my earlier point that, even if the JOLs had authority to request this information, it is unlikely we would have many, if any, documents to provide.

Sincerely,

Kelli M. Hinson

# EXHIBIT 7

ReedSmith
Driving progress through partnership
Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 30, 2025

**Via Email**

Kelli Hinson
Carrington, Coleman, Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
khinson@ccsb.com

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Ms. Hinson:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Carrington Coleman dated June 25, 2025, wherein the JOLs "renew[ed] their request that Carrington Coleman **immediately** provide them with the Company's files," and in response to your July 9, 2025 letter to the JOLs declining that request.

In its July 9, 2025 letter, Carrington Coleman demanded that the JOLs adequately demonstrate their authority to demand and obtain the Company's records. But the JOLs already have provided the necessary proof. Indeed, Carrington Coleman does not dispute that the Company exists under the laws of the Cayman Islands, and that the Grand Court of the Cayman Islands has ordered that the JOLs stand in the shoes of the Company. Carrington Coleman lacks standing and authority to question the propriety of that order (the "**Liquidation Order**"), especially given that the order is final and unchallenged.

Carrington Coleman argues that Chapter 15 recognition is a precondition of the firm's obligation to produce the requested records. That is wrong for at least two reasons:

***First***, as stated in *Rsrv. Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021 (PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010), the case cited in Carrington Coleman's July 9, 2025 letter, Chapter 15 recognition is a gatekeeper to U.S. *judicial* intervention on grounds of comity. "[R]ecognition is required before a foreign representative may avail themselves ***of the federal courts***." *Id.* at *14 (emphasis added). Carrington Coleman is not a federal court, and the firm is not authorized to dispense judicial remedies.

***Second***, judicial intervention is not required to trigger Carrington Coleman's duty to produce the requested records. Rather, as you are aware, Carrington Coleman and its attorneys are subject to the Texas Disciplinary Rules of Professional Conduct, pursuant to which "the documents, papers and other

ReedSmith

information received from a client or received or generated in the course of representing the client (including the lawyer's notes and work product) ***are the property of the client and must be transferred to a former client on request.***" Tex. Comm. On Professional Ethics, Op. 657 (2016) (emphasis added). That duty inures immediately and by default to all Carrington Coleman's former clients—whether foreign or domestic—including the Company.

Thus, neither the Company nor the JOLs must, as you suggest, obtain U.S. judicial approval, intervention, or compulsion to obtain the Company's own records pursuant to the Texas Disciplinary Rules of Professional Conduct. Rather, Carrington Coleman must produce the records or justify its failure to do so.

Regardless, on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (the "Verified Petition"). *In re: Charitable DAF HoldCo, Ltd. (In official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware court to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code. If necessary, the JOLs are prepared to use powers afforded by the Bankruptcy Court to compel Carrington Coleman to return to the Company its own records. For all the reasons stated herein, including pursuant to the JOLs powers under the undisputed Liquidation Order and as required pursuant to the Texas Disciplinary Rules of Professional Conduct, however, it should not have to come to that.

Accordingly, the JOLs demand, for the final time, that Carrington Coleman immediately produce the Company's requested records. Carrington Coleman's failure to comply will result in legal action, including a request for sanctions for Carrington Coleman's noncooperation.

Very truly yours,

/s/ Casey D. Laffey

# EXHIBIT 8

CARRINGTON COLEMAN

Kelli Hinson
Partner
214.855.3110
khinson@ccsb.com

August 6, 2025

***<u>Via Email claffey@reedsmith.com</u>***
Casey Laffey
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650

Re: Charitable DAF HoldCo, Ltd.

Dear Casey:

I am responding to your letter dated July 30, 2025 on behalf of the "joint official liquidators" or "JOLs" of Charitable DAF HoldCo, Ltd. I respectfully disagree with your conclusion that Carrington Coleman must recognize the authority of the JOLs absent such recognition by a United States court.

It is not our position that we do not have to honor requests from foreign former clients. Our position is that the alleged authority of the JOLs to speak for any such client has not been recognized in the United States. Although I readily concede that Carrington Coleman "is not a federal court," and I have not suggested otherwise, the point of the *Rsrv. Int'l Liquidity Fund* case is that the question of whether Liquidators appointed by a foreign court are actually in control of a foreign entity is a question that must be made in a Chapter 15 proceeding. Despite two requests, you have failed to provide any authority to support your assertion otherwise.

In any event, I understand that you have now instituted a Chapter 15 proceeding in the United States, so it seems this issue should be resolved in due course. If and when the authority of the JOLs is recognized by the Court in Delaware, the firm will respond to your request.

Sincerely,

Kelli M. Hinson

# EXHIBIT 9

Grant Thornton

Our Ref: 20250507 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Valuescope Inc.
950 E. State Highway 114
Suite 120
Southlake
TX 76092
USA

Via email to: info@valuescopeinc.com & shastings@valuescopeinc.com

7 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

We write to advise that the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

We also write to advise that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund (together the "**Petitioners**"), in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited ("**GTSS**"), be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the sealed order confirming their appointment is attached for your records.

In accordance with the Cayman Islands Companies Act (As Revised) (the "**Act**") and the powers conferred on the JOLs as per the sealed order, the JOLs act in the name and on behalf of the Company. As such, with effect from the date of our appointment, the JOLs are empowered to take control of the Company's assets and investigate its affairs. Although you may be aware, our responsibilities as JOLs require that we advise you that you can no longer act on instructions from the directors of the Company as their powers ceased upon our appointment.

**Delivery of Books & Records**

We understand that you may have been engaged by the Company or its subsidiaries. Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you:

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

1. Arrange for any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter. Non-receipt of a claim from you by the aforesaid date will be taken to mean you have no claim against the Company.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of the Company

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Supervisory Court Order – 2025-116 (JAJ)
-Proof of Debt – CWR 24

# EXHIBIT 10

Grant Thornton

Our Ref: 20250515 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Valuescope Inc.
950 E. State Highway 114
Suite 120
Southlake
TX 76092
USA

Via email to: info@valuescopeinc.com & shastings@valuescopeinc.com

15 May 2025

Dear Sirs,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Request for information on Valuation Analysis for the Company and CDMCFAD LLC**

I refer to my letter dated 7 May 2025 notifying your office that Margot MacInnis and I, both of Grant Thornton Specialist Services (Cayman) Limited, were appointed as Joint Official Liquidators ("**JOLs**") of the Company by the Grand Court of the Cayman Islands.

We understand that Valuescope were engaged by the Company to perform the valuation of the participating shareholders for the Company, and a valuation on the membership interest in CDMCFAD LLC. Copies of the reports are enclosed for ease of reference.

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format.

As such, we request that you:

1. Provide a copy of your engagement letter and instructions for the Valuation Analysis prepared as of 31 December 2020, 31 December 2021, 31 December 2022, 31 December 2023 and 30 September 2024 concerning 100 Participation Shares of the Company.

2. If you were engaged by the Company for the purpose of preparing the valuation analysis of a 100% Membership Interest in CDMCFAD, LLC dated 25 March 2025, please provide a copy of this engagement letter and the associated instructions;

3. Provide copies of all documents provided to Valuescope by the Company that assisted with the Valuation Analyses; and

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

4. Provide copies of any research or reference material obtained / prepared by Valuescope during the Valuation Analyses.

In addition, we would appreciate that our previous requests in our 7 May 2025 letter be fulfilled. For ease of reference this includes that you:

1. Arrange for any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

2. To the extent that such books and records are not in your possession and/or custody, please inform us of the location of these books and records.

3. Please send all future correspondence relating to the Company to our attention at cdaf.core@uk.gt.com.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter. Non-receipt of a claim from you by the aforesaid date will be taken to mean you have no claim against the Company.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours faithfully,
For and on behalf of the Company

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Proof of Debt – CWR 24
-Valuation report for CDMCFAD LLC dated 25 March 2025
-Valuation reports for the Company dated:
- 31 December 2020
- 31 December 2021
- 31 December 2022
- 31 December 2023
- 30 September 2024

# EXHIBIT 11

VALUESCOPE
a marshall + stevens company

May 30, 2025

**Via Email to:**
Sandipan Bhowmik | Sandipan.bhowmik@uk.gt.com | cdaf.core@uk.gt.com
Jamie Gallagher | jamie.r.gallagher@uk.gt.com
Michael Aquino | michael.aquino@uk.gt.com

**Re: Request for information pertaining to Charitable DAF HoldCo, Ltd.**

Dear Sirs:

Thank you for your correspondence regarding the records relating to our prior valuation work for Charitable DAF HoldCo, Ltd.

We are committed to meeting our ethical and professional obligations, including providing client records where appropriate. At the same time, we are bound by legal duties, including the obligation to protect confidential and privileged information.

We understand that you have been appointed as Joint Official Liquidators by the Grand Court of the Cayman Islands, and we acknowledge your request is made in that capacity. However, under U.S. law, a foreign court appointment does not automatically grant authority over records or compel disclosure unless the foreign proceeding has been formally recognized by a U.S. Bankruptcy Court pursuant to Chapter 15 of the U.S. Bankruptcy Code.

If such recognition has been granted, please provide the relevant documentation for our review. In the absence of that, we are unable to release confidential materials or client records. Please let us know if you have obtained recognition under Chapter 15 or other legal authority in the U.S. We remain open to reviewing any such documentation and cooperating as appropriate under applicable law.

Sincerely,

Steven Hastings, CPA/ABV/CFF/CGMA, ASA, CVA
Principal
ValueScope, LLC

# EXHIBIT 12

ReedSmith
Driving progress
through partnership
Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 2, 2025

**Via Email (shastings@valuescopeinc.com)**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, Suite 120
Southlake, TX 76092

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in response to ValueScope, LLC's letter, dated May 30, 2025, which responded to the JOLs' letters, dated May 7, 2025 and May 15, 2025, and emails, dated May 20, 2025 and May 26, 2025, each of which requested the Company's files.

Although ValueScope insists that it is "committed to meeting our ethical and professional obligations, including providing client records where appropriate," its correspondence and delay suggests otherwise. ValueScope states that it is unwilling to cooperate with the JOLs' reasonable requests because the JOLs' appointment has not yet been recognized under Chapter 15 of the Bankruptcy Code. However, Chapter 15 recognition is irrelevant for ValueScope to comply with the JOLs' request.

The JOLs have been duly appointed by the Grand Court of the Cayman Islands and are requesting that ValueScope provide them with the Company's files pursuant to the JOLs' statutory and court mandated powers. There is nothing about the JOLs' appointment or their status in the United States precluding ValueScope's cooperation with the JOLs' reasonable requests, and ValueScope's argument to the contrary is wrong.

The JOLs therefore renew their request that ValueScope **immediately** provide them with Company's files. Should ValueScope decline to cooperate, the JOLs will have no choice but to assume that ValueScope intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for ValueScope's stonewalling. The JOLs sincerely hope and expect, however, that those measures will not be necessary.

ReedSmith

Sincerely,

Casey D. Laffey

Casey D. Laffey

cc: Aaron Javian (ajavian@reedsmith.com)

# EXHIBIT 13

ReedSmith
Driving progress
through partnership

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 25, 2025

**By Electronic Mail**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, Suite 120
Southlake, TX 76092
shastings@valuescopeinc.com

Re: **Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to ValueScope dated June 2, 2025, wherein the JOLs "renew[ed] their request that ValueScope **immediately** provide them with Company's files."

We have yet to receive a response to our June 2, 2025 letter. Please respond immediately, as we hope and expect to resolve this matter amicably. As we stated in our letter, should "ValueScope decline to cooperate, the JOLs will have no choice but to assume that ValueScope intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for ValueScope's stonewalling." Again, the JOLs sincerely hope and expect that those measures will not be necessary.

Very truly yours,

Casey D. Laffey

# EXHIBIT 14

ReedSmith
Driving progress through partnership

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 30, 2025

**By Email (shastings@valuescopeinc.com)**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, 120
Southlake, Texas 76092

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of my letters, dated June 2, 2025 and June 25, 2025, which ValueScope has not responded to.

Be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (the "Verified Petition"). *In re: Charitable DAF HoldCo, Ltd. (In official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware court to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code. Although the JOLs are prepared to use powers afforded by the Bankruptcy Court to compel ValueScope to return to the Company its own records, it should not have to come to that.

Accordingly, the JOLs demand, for the final time, that ValueScope immediately produce the Company's requested records. ValueScope's failure to comply will result in legal action, including a request for sanctions for ValueScope's noncooperation.

Very truly yours,

/s/ Casey D. Laffey

# EXHIBIT 15

Grant Thornton

Our Ref: 20250506 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

**Seyfarth Shaw LLP**
Douglas Mancino
1075 Peachtree St NE
Suite 2500,
Atlanta GA 30309

Via email: dmancino@seyfarth.com

6 May 2025

Dear Mr. Mancino,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

As you may be aware, the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

We ask that this file includes but is not limited to the following documentation:

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

grantthornton.ky

1. A copy of your engagement letter;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
-Supervision Order – 2025-116 (JAJ)
-Proof of Debt – CWR 24

# EXHIBIT 16

| | |
|---|---|
| **From:** | Mancino, Douglas <DMancino@seyfarth.com> |
| **Sent:** | Tuesday, May 6, 2025 10:31 PM |
| **To:** | Michael Aquino |
| **Cc:** | CDAF Core |
| **Subject:** | Re: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth) |
| **Attachments:** | image001.png; image002.png; 2025.05.06 CDAF HoldCo - Ntc. of Appt. OL - Legal (Seyfarth Shaw LLP).pdf |

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

I want to acknowledge receipt of your letter. I am traveling to Washington, DC tomorrow morning and will return Friday night.
I would like to schedule a call Monday to discuss attorney client and work product privileges.
I am completely unfamiliar with this Cayman Islands process.
Let me know some times Monday that work, considering the three hour time difference.
Doug Mancino

Sent from my iPhone

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

On May 6, 2025, at 6:01 PM, Michael Aquino <Michael.Aquino@uk.gt.com> wrote:

Commercial in Confidence

Dear Mr. Mancino,

**Charitable DAF HoldCo Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-0116 (JAJ)**

Please find attached correspondence in relation to the Company for your attention.

Should you have any queries, please do not hesitate to contact us.

Yours sincerely,

For and on behalf of
The Joint Official Liquidators of the Company

**Michael Aquino**
Insolvency Administrator Trainee, OFC
Grant Thornton Specialist Services (Cayman) Limited

**T** +1345-949-7100
**E** Michael.Aquino@uk.gt.com

**grantthornton.ky [grantthornton.ky]**

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands KY1-1102

Grant Thornton is a brand name under which Grant Thornton UK LLP (registered number OC307742) and Grant Thornton UK Advisory & Tax LLP (registered number OC454533) provide professional services. Each of them is a limited liability partnership, registered in England and Wales, whose registered office is at 30 Finsbury Square, London EC2A 1AG. Lists of their members are available from the registered office.

For the purposes of designated investment business, Grant Thornton UK Advisory & Tax LLP is an appointed representative of Grant Thornton UK LLP, which is authorised and regulated by the Financial Conduct Authority.

Grant Thornton UK LLP and Grant Thornton UK Advisory & Tax LLP are member firms of Grant Thornton International Limited ("GTIL"). GTIL and its member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of and do not bind one another and are not liable for one another's acts or omissions.

This email is confidential. It cannot be guaranteed to be secure or free from error or virus. All email communication with Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is monitored and a record is kept. If you are not the intended recipient, please accept our apologies. It is intended for the addressee only. If you are not the addressee, please do not use it in any way. If received in error please inform the sender and delete all copies.

Anything in this email which does not relate to the official business of Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is neither given nor endorsed by them. To the extent permitted by law, neither of them accepts any responsibility for any use by anyone other than the intended addressee. Where relevant, please note that, unless expressly stated otherwise, any written advice contained in or attached to this email is not intended and cannot be used by any person for avoiding any US penalties that may be imposed under the US Internal Revenue Service Code.

For further information please visit our website grantthornton.co.uk [grantthornton.co.uk]

Case 25-11376-BLS Doc 22-17 Filed 08/27/25 Page 1 of 4

# EXHIBIT 17

**From:** Bradley J Graham
**Sent:** Monday, May 12, 2025 8:42 PM
**To:** dmancino@seyfarth.com
**Cc:** CDAF Core
**Subject:** RE: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth)

Commercial in Confidence

Dear Douglas

I refer to our discussion on Teams earlier today in relation to the above matter.

As discussed, a banker's box of physical books and records is being prepared for postage to us by this Friday.

I confirm that we are able to receive the books and records via Reed Smith LLC in LA, the contact details are below:

**Ruben Montoya, Paralegal**
Reed Smith LLP
515 South Flower Street, Suite 4300
Los Angeles, CA 90071
Telephone: 213-457-6409

Mr Montoya has been notified of the above and is expecting your contact.

We appreciate your assistance to date and look forward to further discussion once the records are received and reviewed.

Kind regards,

Brad Graham
Assistant Manager, Insolvency, Forensics & Restructuring
Grant Thornton Specialist Services (Cayman) Limited

T + 1345 3258462
E bradley.j.graham@uk.gt.com

grantthornton.ky

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands. KY1-1102

Grant Thornton

**From:** Mancino, Douglas <DMancino@seyfarth.com>
**Sent:** 06 May 2025 21:31
**To:** Michael Aquino <Michael.Aquino@uk.gt.com>
**Cc:** CDAF Core <CDAF.Core@uk.gt.com>
**Subject:** Re: Charitable DAF HoldCo Ltd (In Official Liquidation) - Legal Notice (Seyfarth)

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

---

I want to acknowledge receipt of your letter. I am traveling to Washington, DC tomorrow morning and will return Friday night.
I would like to schedule a call Monday to discuss attorney client and work product privileges.
I am completely unfamiliar with this Cayman Islands process.
Let me know some times Monday that work, considering the three hour time difference.
Doug Mancino

Sent from my iPhone

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

On May 6, 2025, at 6:01 PM, Michael Aquino <Michael.Aquino@uk.gt.com> wrote:

Commercial in Confidence

Dear Mr. Mancino,

**Charitable DAF HoldCo Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-0116 (JAJ)**

Please find attached correspondence in relation to the Company for your attention.

Should you have any queries, please do not hesitate to contact us.

Yours sincerely,

For and on behalf of
The Joint Official Liquidators of the Company

Michael Aquino

Insolvency Administrator Trainee, OFC
Grant Thornton Specialist Services (Cayman) Limited

T +1345-949-7100
E Michael.Aquino@uk.gt.com

grantthornton.ky [grantthornton.ky]

2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands KY1-1102

Grant Thornton is a brand name under which Grant Thornton UK LLP (registered number OC307742) and Grant Thornton UK Advisory & Tax LLP (registered number OC454533) provide professional services. Each of them is a limited liability partnership, registered in England and Wales, whose registered office is at 30 Finsbury Square, London EC2A 1AG. Lists of their members are available from the registered office.

For the purposes of designated investment business, Grant Thornton UK Advisory & Tax LLP is an appointed representative of Grant Thornton UK LLP, which is authorised and regulated by the Financial Conduct Authority.

Grant Thornton UK LLP and Grant Thornton UK Advisory & Tax LLP are member firms of Grant Thornton International Limited ("GTIL"). GTIL and its member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of and do not bind one another and are not liable for one another's acts or omissions.

This email is confidential. It cannot be guaranteed to be secure or free from error or virus. All email communication with Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is monitored and a record is kept. If you are not the intended recipient, please accept our apologies. It is intended for the addressee only. If you are not the addressee, please do not use it in any way. If received in error please inform the sender and delete all copies.

Anything in this email which does not relate to the official business of Grant Thornton UK LLP or Grant Thornton UK Advisory & Tax LLP is neither given nor endorsed by them. To the extent permitted by law, neither of them accepts any responsibility for any use by anyone other than the intended addressee. Where relevant, please note that, unless expressly stated otherwise, any written advice contained in or attached to this email is not intended and cannot be used by any person for avoiding any US penalties that may be imposed under the US Internal Revenue Service Code.

For further information please visit our website grantthornton.co.uk [grantthornton.co.uk]

Case 25-11376-BLS Doc 22-18 Filed 08/27/25 Page 1 of 3

# EXHIBIT 18

**From:** Margot MacInnis
**Sent:** Tuesday, May 13, 2025 3:32 PM
**To:** Mancino, Douglas
**Subject:** RE: Request for clarification

Commercial in Confidence

Hi Doug

The call yesterday was attended by me along with Bradley Graham who is supporting the joint official liquidators (JOLs) and is an employee of Grant Thornton Specialist Services in the Cayman Islands. Andrew Johnstone who is the JOLs' Cayman counsel was also in attendance and on screen. There was no one else dialed into the call or in attendance.

With regard to preservation of privilege I don't follow the concern. We have stepped into the shoes of the Company for which we act, any advice provided to which privilege attaches is retained by the Liquidators. We have engaged Reed Smith as our US counsel and accordingly the privilege is preserved if you provide the documents directly to them.

We look forward to receiving the documents.

Kind regards
Margot

Margot MacInnis
Practice Leader Insolvency, Forensics & Restructuring Advisory
Grant Thornton Specialist Services (Cayman) Limited

D +1 (345) 769 7218
E margot.macinnis@uk.gt.com

grantthornton.ky

**Address**
2nd Floor, Century Yard, Cricket Square
PO Box 1044, Grand Cayman, Cayman Islands, KY1-1102

GrantThornton

**From:** Mancino, Douglas <DMancino@seyfarth.com>
**Sent:** 13 May 2025 13:21
**To:** Margot MacInnis <margot.macinnis@uk.gt.com>
**Subject:** Request for clarification

**Email from EXTERNAL source - Please exercise caution and validate email before accessing links or files**

Ms. MacInnis,

Thank you for arranging the Zoom call yesterday to discuss your role in the liquidation of Charitable DAF Holdco Ltd. and attorney-client privilege matters.

I understand your role on the Zoom call as a liquidator, but can you confirm the role of the others on the call? As I said, I am new to this process and not a litigator.

I am consulting with my partners on my ability to preserve the privilege when I provide the requested documents to your firm through Reed Smith so it will take more time to gather and provide the requested documents than I projected. And I would like to know the roles of the others shown on the screen and confirm whether any others were listening in to the call but not shown on the screen.

Doug

**Douglas Mancino** (he/him/his) | Partner | Seyfarth Shaw LLP
2029 Century Park East | Suite 3500 | Los Angeles, California 90067-3021
Direct: +1-310-201-5241 | Fax: +1-310-551-8326
DMancino@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

Case 25-11376-BLS Doc 22-19 Filed 08/27/25 Page 1 of 3

# EXHIBIT 19

ReedSmith
Driving progress through partnership

Commercial in Confidence

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 13, 2025

**Via Email (dmancino@seyfarth.com)**

Douglas Mancino, Esq.
Seyfarth Shaw LLP
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation)**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

Dear Douglas:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Seyfarth Shaw LLP ("**Seyfarth**"), dated May 6, 2025, and the subsequent emails and calls between the parties.

As you know, in accordance with the Cayman Islands Companies Act (As Revised) and the powers conferred on the JOLs pursuant to the order entered by the Grand Court of the Cayman Islands on May 6, 2025 (the "**Appointment Order**"), the JOLs act in the name and on behalf of the Company. As such, with effect from the date of their appointment, the JOLs are empowered to exercise their fiduciary duties to preserve the value of the Company's assets—including by taking control of such assets through legal proceedings or other appropriate means in the JOLs' discretion—and to do all other things incidental to the exercise of the JOLs' powers to act for and on behalf of the Company. And, in furtherance of their fiduciary duties, and with effect from the date of their appointment, the JOLs have assumed control of the Company pursuant to the powers granted in the Appointment Order, and the powers of the Company's directors are suspended unless expressly authorized by the JOLs.

In the JOLs' May 6, 2025 letter, the JOLs requested that Seyfarth provide them with the complete file relating to its engagement by the Company, including:

1. A copy of your engagement letter with the Company;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to Seyfarth;
4. Statement of account and evidence of the associated remittance;

5. Historical statements of trust account(s) held on behalf of the Company;

6. Summary of any books and records held on behalf of the Company;

7. The details of any retainer or funds held on behalf of the Company;

8. Details of any Company bank accounts that you are aware of;

9. A summary of the matters that you were engaged to assist the Company with; and

10. The AML and KYC files Seyfarth has on the Company and the Company Directors.

On May 12, 2025, you spoke with the JOLs and confirmed that you would prepare a banker's box of physical books and records that were responsive to the foregoing requests and mail them to Reed Smith LLP, the JOLs' counsel in the United States, by May 16, 2025.

To date, however, Seyfarth has not produced any of the promised documents or any documents in its possession.

Accordingly, the JOLs reiterate their request that Seyfarth **immediately** provide them with the Company's files. Should Seyfarth decline to cooperate, the JOLs will be compelled to pursue all appropriate legal remedies to obtain the requested documents, including seeking legal fees and costs if necessary.

To that end, be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code. *In re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

Nothing in this letter should be construed as a waiver of the JOLs' rights, remedies, or arguments, all of which are expressly preserved.

Very truly yours,

Casey D. Laffey

Casey D. Laffey

# EXHIBIT 20

Commercial in Confidence

Grant Thornton

Our Ref: 20250508 – Charitable DAF HoldCo, Ltd

**Grant Thornton Specialist Services (Cayman) Limited**
2nd floor Century Yard,
Cricket Square,
PO Box 1044,
Grand Cayman, KY1-1102
Cayman Islands

T +1 (345) 949 8588
F +1 (345) 949 7120

Hunton Andrews Kurth LLP
FAO Alexander McGeoch
1445 Ross Ave Ste 3700
Dallas
TX 75202

Via email: amcgeoch@hunton.com

8 May 2025

Dear Mr. McGeoch,

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Company")**
**FSD Cause No: 2025-116 (JAJ)**
**Reg. No: 263805**

**Notice of Liquidation and Appointment of Official Liquidators**

I write to advise that the Company was placed in voluntary liquidation on 2 April 2025, with Mitchell Mansfield and William Clarke of Kroll (Cayman) Ltd appointed as Joint Voluntary Liquidators ("**JVLs**") of the Company.

Please be advised that pursuant to an application made by (1) The Highland Dallas Foundation, Inc, (2) The Highland Kansas City Foundation, Inc, (3) The Highland Santa Barbara Foundation, Inc, (4) The HCMLP Charitable Fund, in their capacity as participating shareholders of the Company, it was ordered on 6 May 2025, that the voluntary liquidation of the Company be continued under supervision of the Grand Court of the Cayman Islands (the "**Court**") and that Margot MacInnis and Sandipan Bhowmik, both of Grant Thornton Specialist Services (Cayman) Limited, be appointed as Joint Official Liquidators ("**JOLs**") of the Company. A copy of the order confirming their appointment is attached for your records.

We understand that your firm was engaged to act on behalf of the Company. As a result of our appointment, you are no longer to act on instructions from the directors or former JVLs of the Company, unless explicit authorisation to do so is supplied by us, or any other party previously authorised to give instructions and should only take instructions from the JOLs on matters pertaining to the Company. Please also be advised that pursuant to the Order no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company in accordance with section 97 of the Companies Act (As Revised) except with the leave of the Court and subject to such terms as the Court may impose.

**Delivery of Books & Records**

Pursuant to Order 26, Rule 3 (1) of the Companies Winding-up rules (As Amended) ("**CWRs**"), the JOLs are required to take possession or control of all the Company's books and records, including those maintained in electronic format. As such, we request that you supply the JOLs with a copy of your complete file relating to the engagement by the Company, both prior to and after the appointment of JVLs.

Chartered Accountants. Grant Thornton Specialist Services (Cayman) Limited is a member firm of Grant Thornton International Ltd (GTIL) and a subsidiary of Grant Thornton UK LLP. GTIL and the member firms are not a worldwide partnership. Services are delivered by the member firms. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. Please see grantthornton.ky for further details. Subject to local regulations.

grantthornton.ky

We ask that this file includes but is not limited to the following documentation:

1. A copy of your engagement letter with the Company;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to you;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;
6. Summary of any books and records held on behalf of the Company;
7. The details of any retainer or funds held on behalf of the Company;
8. Details of any Company bank accounts that you are aware of. If your firm has any information identifying the bank accounts or clearing banks used by the Company, we ask that you look at the records of the payments your firm received from the Company to see if you have records that can assist us in this regard;
9. Summary of the matters that you were engaged to assist the Company with; and
10. The AML and KYC files you have on the Company and the Company Directors.

Please arrange for the above as well as any books and records held by you on behalf of the Company to be immediately delivered up to the JOLs. Should you be aware of any property of the Company that is currently not in your possession, please let us know of their whereabouts as a matter of urgency.

**Proof of Debt**

If you believe you are a creditor of the Company, please provide full details of any amounts owed to you by completing the attached proof of debt form which should be returned to our office with any supporting documentation within 21 days of the date of this letter.

If you have any questions or concerns, please contact us via e-mail at cdaf.core@uk.gt.com.

Yours sincerely,
For and on behalf of Charitable DAF HoldCo Ltd (in Official Liquidation)

Sandipan Bhowmik
**Joint Official Liquidator**
As agent and without personal liability

Encl.
- Supervision Order – 2025-116 (JAJ)
- Proof of Debt – CWR 24

# EXHIBIT 21

ReedSmith
Driving progress through partnership

Commercial in Confidence

Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 6, 2025

**Via Email (amcgeoch@hunton.com)**

Alexander G. McGeoch
Hunton Andrews Kurth LLP
1445 Ross Ave. Ste 3700
Dallas, Texas 75202

**Re: Charitable DAF HoldCo, Ltd (In Official Liquidation)
FSD Cause No: 2025-116 (JAJ)
Reg. No: 263805**

Dear Mr. McGeoch:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in furtherance of the JOLs' letter to Hunton Andrews Kurth LLP ("**Hunton**"), dated May 8, 2025.

As you know, in accordance with the Cayman Islands Companies Act (As Revised) and the powers conferred on the JOLs pursuant to the order entered by the Grand Court of the Cayman Islands on May 6, 2025 (the "**Appointment Order**"), the JOLs act in the name and on behalf of the Company. As such, with effect from the date of their appointment, the JOLs are empowered to exercise their fiduciary duties to preserve the value of the Company's assets—including by taking control of such assets through legal proceedings or other appropriate means in the JOLs' discretion—and to do all other things incidental to the exercise of the JOLs' powers to act for and on behalf of the Company. And, in furtherance of their fiduciary duties, and with effect from the date of their appointment, the JOLs have assumed control of the Company pursuant to the powers granted in the Appointment Order, and the powers of the Company's directors are suspended unless expressly authorized by the JOLs.

In the JOLs' May 8, 2025 letter, the JOLs requested that Hunton provide them with the complete file relating to its engagement by the Company, including:

1. A copy of your engagement letter with the Company;
2. All invoices from engagement to present;
3. Details of any outstanding debts owed by the Company to Hunton;
4. Statement of account and evidence of the associated remittance;
5. Historical statements of trust account(s) held on behalf of the Company;

Commercial in Confidence

ReedSmith

6. Summary of any books and records held on behalf of the Company;

7. The details of any retainer or funds held on behalf of the Company;

8. Details of any Company bank accounts that you are aware of;

9. A summary of the matters that you were engaged to assist the Company with; and

10. The AML and KYC files Hunton has on the Company and the Company Directors.

To date, however, Hunton has not responded to the JOLs' May 8, 2025 letter.

Accordingly, the JOLs reiterate their request that Hunton **immediately** provide them with the Company's files. Should Hunton decline to cooperate, the JOLs will be compelled to pursue all appropriate legal remedies to obtain the requested documents, including seeking legal fees and costs if necessary.

To that end, be advised that on July 21, 2025, the Company filed a Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code. *In re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)*, Case No. 25-11376 (D. Del.). In it, the JOLs formally petitioned the United States Bankruptcy Court for the District of Delaware to recognize the Cayman liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

Nothing in this letter should be construed as a waiver of the JOLs' rights, remedies, or arguments, all of which are expressly preserved.

Very truly yours,

Casey D. Laffey

# EXHIBIT 22

| | |
|---|---|
| **From:** | Turetsky, Ian M. |
| **Sent:** | Friday, August 8, 2025 2:56 PM |
| **To:** | CDAF Core |
| **Cc:** | Charitable DAF Team (S) |
| **Subject:** | FW: Charitable DAF Holdco, Ltd.--Letter to Hunton Andrews Kurth LLP |
| **Attachments:** | 2025-08-06 - Hunton Andrews Kurth(207566116.2).pdf |

All,

Please see the below email we received from Hunton Andrews Kurth. We will keep you posted with any further developments.

Thanks.

Ian

**Ian M. Turetsky**
ituretsky@reedsmith.com
D: +1 212.549.0352
M: +1 917.514.8747

reedsmith.com

---

**From:** Locher, Scott <SLocher@hunton.com>
**Sent:** Friday, August 8, 2025 2:51:11 PM
**To:** Laffey, Casey D. <CLaffey@ReedSmith.com>
**Subject:** Charitable DAF Holdco, Ltd.--Letter to Hunton Andrews Kurth LLP

**External E-Mail - FROM Locher, Scott <slocher@hunton.com>**

---

**This message needs your attention**

- This is their first email to your company.

Report or Mark Safe

Powered by Mimecast

Mr. Laffey: I'm in Hunton's General Counsel office. I'm writing to acknowledge our receipt of your August 6, 2025 letter to Alex McGeoch. I will be Hunton's point of contact with respect to your letter's request, so please have all further communications about this directed to me. Previously, our General Counsel's office did not receive nor know about your May 8, 2025 letter due to an internal miscommunication, and so I apologize for us not acknowledging receipt of your letter sooner. In the coming days I will be working to get my arms around this internally, and externally.

**Scott Locher**
Partner
slocher@hunton.com
p 713.220.4416

bio | vCard

Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002

Hunton.com

# EXHIBIT 23

HUNTON

HUNTON ANDREWS KURTH LLP
600 TRAVIS, SUITE 4200
HOUSTON, TEXAS 77002-2929

TEL 713 • 220 • 4200
FAX 713 • 220 • 4285

SCOTT LOCHER
DIRECT DIAL 713 • 220 • 44[illegible]
EMAIL slocher@hunton.com

August 20, 2025

***VIA EMAIL: CLAFFEY@REEDSMITH.COM***
Casey D. Laffey
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022-7650

Re: Letter Request to Hunton Andrews Kurth LLP regarding Charitable DAF HoldCo Ltd. ("Holdco")

Dear Mr. Laffey:

I am an Assistant General Counsel of Hunton Andrews Kurth LLP ("Hunton"), and I write as a follow-up to my email to you of August 8, 2025, to respond to your August 6, 2025 letter addressed to Alexander G. McGeoch, a Hunton partner.

As your letter advises, your firm has filed a petition under Chapter 15 of the Bankruptcy Code ("Chapter 15") for recognition of the JOLs[1] as Holdco's foreign representatives pursuant to the Cayman Court's May 6, 2025 Appointment Order. It is my understanding that Chapter 15, which largely adopted the UNCITRAL Model Law on Cross-Border Insolvency ("Model Law") and replaced 11 U.S.C. § 304, provides legal process through which the JOLs obtain United States court validation of their authority to act on behalf of the foreign entity. *See Reserve Intern. Liquidity Fund, Ltd. v. Caxton Intern. Ltd.*, 2010 WL 1779282, at **5-6 (S.D.N.Y. Apr. 29, 2010); *Orchard Enterps. NY, Inc. v. Megabop Records, Ltd.*, 2011 WL 832881, at *2 (S.D.N.Y. Mar. 4, 2011). Congress stated that the purpose of Chapter 15 adopting the Model Law included providing "greater legal certainty for trade and investment" and "fair and efficient administration of cross-border insolvencies that protects interests of all creditors, and other interested parties, including the debtor," 11 U.S.C. § 501(a)(2-3), and that Chapter 15 applies where "assistance is sought in the United States by . . . a foreign representative in connection with a foreign proceeding." *Id.* at § 501(b)(1). Other "interested parties" the Chapter 15 process protects should include law firms facing requests from foreign liquidators for the foreign debtor's legal files. The Chapter 15 process gives assurance to U.S. firms in carrying out their legal and ethical obligations to former clients, including in preserving the confidentiality of and privileges attaching to information in its legal files, that the foreign liquidation proceeding and the appointed liquidators are in fact legitimate and valid in the eyes of U.S. law. Once the Chapter 15 recognition is finally granted, unless Hunton

[1] Unless otherwise defined in this letter, this letter will use the defined terms in your August 6, 2025 letter.

were to learn or be directed to the contrary, I recognize the U.S. court authorities which hold that the foreign appointed liquidators validated in a Chapter 15 proceeding are the parties with the rights to assert the in-liquidation foreign entity's privileges and, thus also, the rights to receive such entity's legal file held by its former U.S. firm. *See In re China Medical Techns., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015); *In re Gold & Appel Transfer S.A.*, 342 B.R. 386, 388 (Bankr. D.D.C. 2006) (holding under repealed section 304 ancillary proceeding).

For these reasons, Hunton believes that its and its former client's interests are best served and protected by awaiting the bankruptcy court's final determination of your firm's pending Chapter 15 petition before complying with your request on behalf of the JOLs for Hunton to provide its file on its representation of Holdco to the JOLs. As stated, upon an order granting the petition becoming final, Hunton then will be in position to comply. In the meantime, Hunton will prepare a copy of its file for transfer if and when the recognition order becomes final without need of further court intervention. Should you have authorities which you believe compel U.S. attorneys to turnover their file to liquidators of a foreign company appointed by a foreign court in a foreign proceeding before a filed Chapter 15 recognition petition has been ruled upon, we will consider those authorities further in consideration of your letter request.

In the interim, however, I can answer some of your inquiries in your August 6, 2025 letter. Per Hunton's accounting department, Hunton has not held, and does not hold, trust funds of Holdco, there are no outstanding debts Holdco owes Hunton, and thus we have no document with a statement of a Holdco account that is due, and Hunton holds no retainer funds of Holdco.

Sincerely,

W. Scott Locher

**From:** Shawn Raver <sraver@dafholdco.com>
**To:** Kristin Hendrix <KHendrix@highlandcapital.com>
**CC:** David Klos <DKlos@highlandcapital.com>
**Subject:** Re: $500k payment
**Date:** Tue, 1 Jul 2025 15:16:52 -0500

---

Yes, the account is held by CLO Holdco, LLC. Sorry, that is why we had the c/o in the instructions. I think Dave is going to send directly to CLO Holdco, LLC and reference Hunter Mountain.

Thanks,
Shawn

On Tue, Jul 1, 2025 at 3:12 PM Kristin Hendrix <KHendrix@highlandcapital.com> wrote:

> Shawn,
>
> Can you confirm the account name?
>
> Get Outlook for iOS
>
> ---
>
> **From:** David Klos <DKlos@HighlandCapital.com>
> **Sent:** Tuesday, July 1, 2025 2:41:57 PM
> **To:** Shawn Raver <sraver@dafholdco.com>
> **Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
> **Subject:** RE: $500k payment
>
> Odd – ok the funds haven't bounced back to our account, so maybe they just haven't been applied. Fed ref number is below. Try sharing this with your bank to see if they can locate the funds.
>
> 20250701MMQFMP27001749
>
> **From:** Shawn Raver <sraver@dafholdco.com>
> **Sent:** Tuesday, July 1, 2025 2:37 PM
> **To:** David Klos <DKlos@HighlandCapital.com>
> **Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
> **Subject:** Re: $500k payment
>
> Hi Dave -
>
> I still don't see the wire on my end. Everything looks good on the instructions provided but let me know if it is a problem on my end.

Thanks,

Shawn

On Tue, Jul 1, 2025 at 10:13 AM David Klos <DKlos@highlandcapital.com> wrote:

> Hi Shawn,
>
> We released the $500k payment this morning pursuant to the settlement agreement and to the wire instructions included in the agreement. Can you please confirm receipt at your earliest convenience. Thank you.
>
> -Dave
>
> ---
>
> DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**From:** David Klos <DKlos@HighlandCapital.com>
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>, Shawn Raver <sraver@dafholdco.com>
**Subject:** RE: $500k payment
**Date:** Tue, 1 Jul 2025 20:18:02 +0000

---

Kristin,
I just hung up with Shawn. The account name is actually CLO Holdco, LLC. In the memo line, it should mention Hunter Mountain Investment Trust distribution.

**From:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Sent:** Tuesday, July 1, 2025 3:13 PM
**To:** David Klos <DKlos@HighlandCapital.com>; Shawn Raver <sraver@dafholdco.com>
**Subject:** Re: $500k payment

Shawn,

Can you confirm the account name?

Get Outlook for iOS

---

**From:** David Klos <DKlos@HighlandCapital.com>
**Sent:** Tuesday, July 1, 2025 2:41:57 PM
**To:** Shawn Raver <sraver@dafholdco.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** RE: $500k payment

Odd – ok the funds haven't bounced back to our account, so maybe they just haven't been applied. Fed ref number is below. Try sharing this with your bank to see if they can locate the funds.

20250701MMQFMP27001749

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Tuesday, July 1, 2025 2:37 PM
**To:** David Klos <DKlos@HighlandCapital.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** Re: $500k payment

Hi Dave -

I still don't see the wire on my end. Everything looks good on the instructions provided but let me know if it is a problem on my end.

Thanks,
Shawn

On Tue, Jul 1, 2025 at 10:13 AM David Klos <DKlos@highlandcapital.com> wrote:

> Hi Shawn,
> We released the $500k payment this morning pursuant to the settlement agreement and to the wire instructions included in the agreement. Can you please confirm receipt at your earliest convenience. Thank you.

Dave

[illegible]

**From:** Mark Tax <mpatricktax1040@gmail.com>
**To:** "jpseeryjr@gmail.com" <jpseeryjr@gmail.com>
**CC:** Shawn Raver <sraver@dafholdco.com>, "Louis M. Phillips" <Louis.Phillips@kellyhart.com>, "John A. Morris" <jmorris@pszjlaw.com>, David Klos <DKlos@highlandcapital.com>, Kristin Hendrix <KHendrix@highlandcapital.com>, "James P. Seery Jr" <jseery@highlandcapital.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>
**Subject:** Re: NOTICE
**Date:** Tue, 1 Jul 2025 15:49:35 -0500

---

Confirmed!

On Tue, Jul 1, 2025, 3:46 PM jpseeryjr@gmail.com <jpseeryjr@gmail.com> wrote:

Mark and Sean:

Capitalized terms used herein have the meanings ascribed to them in the May 19, 2025 Settlement Agreement & General Release.

As Shawn discussed with David Klos , the wire instructions you provided in section 3 of the Agreement do not work for Hunter Mountain Investment Trust. On behalf of the Indemnity Trust, Wilmington Trust and East-West Bank both attempted to wire funds to the account today and those funds were returned.

We understand from Shawn that HMIT and the HMIT Entities are expressly **directing** the Highland Entities and the Indemnity Trust to wire **ALL** funds required to made under the Agreement to CLO Holdco LLC on behalf of Hunter Mountain Investment Trust as follows:

| | |
|---|---|
| Account Name: | CLO Holdco LLC |
| Bank Name: | Hancock Whitney Bank |
| Account #: | 071173413 |
| Routing #: | 113000968 |
| Reference: | Highland Distributions FBO Hunter Mountain Investment Trust |

**Would you both confirm by return email to all (one email from each of you) the above direction by Hunter Mountain Investment Trust and the HMIT entities. Upon receipt of both emails directing payment to the above account, we will direct Wilmington Trust to make the payment required by section 5(a) of the Agreement and East-West Bank to make the payment required by section 3 of the Agreement.**

Best, Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department [illegible] Highland Capital Management. This message and [illegible] without prior consent of a member of the legal department at Highland Capital Management.

**From:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**To:** Shawn Raver <sraver@dafholdco.com>
**CC:** David Klos <DKlos@HighlandCapital.com>
**Subject:** RE: $500k payment
**Date:** Tue, 1 Jul 2025 21:17:53 +0000

---

Shawn,

This wire for $500k has been re-sent. Can you please confirm receipt?

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Tuesday, July 1, 2025 3:17 PM
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>
**Subject:** Re: $500k payment

Yes, the account is held by CLO Holdco, LLC. Sorry, that is why we had the c/o in the instructions. I think Dave is going to send directly to CLO Holdco, LLC and reference Hunter Mountain.

Thanks,
Shawn

On Tue, Jul 1, 2025 at 3:12 PM Kristin Hendrix <KHendrix@highlandcapital.com> wrote:

> Shawn,
>
> Can you confirm the account name?
>
> Get Outlook for iOS
>
> ---
>
> **From:** David Klos <DKlos@HighlandCapital.com>
> **Sent:** Tuesday, July 1, 2025 2:41:57 PM
> **To:** Shawn Raver <sraver@dafholdco.com>
> **Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
> **Subject:** RE: $500k payment
>
> Odd ok the funds haven't bounced back to our account, so maybe they just haven't been applied. Fed ref number is below. Try sharing this with your bank to see if they can locate the funds.
>
> 20250701MMQFMP27001749
>
> **From:** Shawn Raver <sraver@dafholdco.com>
> **Sent:** Tuesday, July 1, 2025 2:37 PM
> **To:** David Klos <DKlos@HighlandCapital.com>

**Cc:** Kristin Hendrix <khendrix@highlandcapital.com>
**Subject:** Re: $500k payment

Hi Dave -

I still don't see the wire on my end. Everything looks good on the instructions provided but let me know if it is a problem on my end.

Thanks,

Shawn

On Tue, Jul 1, 2025 at 10:13 AM David Klos <DKlos@highlandcapital.com> wrote:

> Hi Shawn,
>
> We released the $500k payment this morning pursuant to the settlement agreement and to the wire instructions included in the agreement. Can you please confirm receipt at your earliest convenience. Thank you.
>
> -Dave

---

DISCLAIMER: This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

**From:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**To:** Ashley Gunther <AGunther@nexpoint.com>
**CC:** "sraver@dafholdco.com" <sraver@dafholdco.com>
**Subject:** RE: DIT Note Pmt
**Date:** Mon, 29 Dec 2025 16:43:00 +0000
**Embedded:** unnamed
**Inline-Images:** image001.png

---

Ashley,

I hope you had a wonderful holiday!

As a reminder, pursuant to court order of June 30, 2025 the Dugaboy note was assigned by Highland Capital Management, L.P. to Hunter Mountain Investment Trust. Accordingly, while we can confirm that the payment amounts you reference below are consistent with our calculations, payment instructions and point of contact on the note are different this year.

I've cc'd Shawn Raver who should be able to assist you with payment instructions and can independently confirm amounts. As a reminder, Dugaboy paid an extra $2,000.00 last year, which, consistent with the terms of the note, was applied to principal. So assuming the continued amortization of the note with minimum principal and interest payments, the final principal payment will be smaller as a result of last year's small principal prepayment. I've attached a copy of our correspondence from last year.

Thanks,
Kristin

**From:** Ashley Gunther <AGunther@nexpoint.com>
**Sent:** Wednesday, December 24, 2025 9:49 AM
**To:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** DIT Note Pmt

Hi Kristin!

Can you confirm payment details for me for the upcoming Dugaboy note payment?

Total Due: $1,356,891.38
  Principal - $790,214.64
  Interest - $566,676.74

Bank Info from last year's pmt:
  East West Bank - account ending 7745
  Name on account Highland Capital Management LP

Have a Merry Christmas!

Ashley Gunther | Executive Accountant
NEXPOINT
300 Crescent Ct, Suite 700 | Dallas, TX 75201
C: 214.681.8795 | O: 214.550.8339

[illegible]

[illegible]

# Current - DAF




010508
VALUESCOPE_000001

DAF/Rand Structure Chart




010509
VALUESCOPE_000002

**From:** Mark Patrick [mpatrick@dafholdco.com]
**Sent:** 7/22/2025 6:02:40 AM
**To:** Michael Hanan [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=43bd877b63ab45198cfb5d5d392a1a74 Michael.Han]
**Subject:** Fwd: Charitable DAF HoldCo Ltd., Highland Capital Management LP FILING ALERT: Dondero Affiliate Charitable DAF HoldCo Files Chapter 15 in Delaware Seeking Recognition of Cayman Islands Liquidation Proceeding
**Attachments:** image25e50f.PNG; image19f210.PNG; DAF - Chp. 15 Petition.pdf

Chapt 15 petition filed and more discrediting of ValueScope report.

---------- Forwarded message ---------
From: **Brandon R. Schaller** <bschaller@shieldslegal.com>
Date: Mon, Jul 21, 2025, 9:40 PM
Subject: Fwd: Charitable DAF HoldCo Ltd., Highland Capital Management LP - FILING ALERT: Dondero Affiliate Charitable DAF HoldCo Files Chapter 15 in Delaware Seeking Recognition of Cayman Islands Liquidation Proceeding
To: Mark Patrick <mpatrick@dafholdco.com>, Paul Murphy <paul@gkmanagement.com.ky>, Shawn Raver <sraver@dafholdco.com>
Cc: Mark Goodman Campbells <MGoodman@campbellslegal.com>, Ronan O'Doherty | Campbells <rodoherty@campbellslegal.com>, Brian P. Shaw <bshaw@ccsb.com>, Monica Gaudioso <MGaudioso@ccsb.com>, Bart Higgins <bhiggins@shieldslegal.com>, Brian Shields <bshields@shieldslegal.com>, Jennifer Colegate <JenniferColegate@bakerandpartners.com>, Nia Statham <NiaStatham@bakerandpartners.com>

FYI

Begin forwarded message:

**From:** "Steele, Amanda R." <Steele@rlf.com>
**Date:** July 21, 2025 at 9:24:51 PM CDT
**To:** Jim Shields <jshields@shieldslegal.com>, "Brandon R. Schaller" <bschaller@shieldslegal.com>
**Cc:** "Koch, Rudolf" <Koch@rlf.com>, "Murphy, Matthew W." <Murphy@rlf.com>, "Milam, Andrew L." <Milam@rlf.com>
**Subject: FW: Charitable DAF HoldCo Ltd., Highland Capital Management LP - FILING ALERT: Dondero Affiliate Charitable DAF HoldCo Files Chapter 15 in Delaware Seeking Recognition of Cayman Islands Liquidation Proceeding**

CAUTION: This email originated from outside of the organization.

FYI. They have only filed the attached Petition so far. We will monitor the docket tonight/tomorrow morning to see if they file a request for any immediate relief. No judge has been assigned yet.

**Amanda R. Steele**
**Richards, Layton & Finger, P.A.**
Steele@RLF.com

920 N. King Street Wilmington, DE 19801
O: 302-651-7838 M: 302-354-3340 | F: 302-498-7838
vCard, bio, www.rlf.com,

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e mail or telephone (302 651 7700) and destroy the original message. Thank you.

---

**From:** Octus Alert <dockets@octus.com>
**Sent:** Monday, July 21, 2025 10:17 PM
**To:** Steele, Amanda R. <Steele@RLF.com>
**Subject:** Charitable DAF HoldCo Ltd., Highland Capital Management LP - FILING ALERT: Dondero Affiliate Charitable DAF HoldCo Files Chapter 15 in Delaware Seeking Recognition of Cayman Islands Liquidation Proceeding

* EXTERNAL EMAIL *

OCTUS

**Charitable DAF HoldCo Ltd., Highland Capital Management LP**

FILING ALERT: Dondero Affiliate Charitable DAF HoldCo Files Chapter 15 in Delaware Seeking Recognition of Cayman Islands Liquidation Proceeding

Mon Jul 21, 2025 10:16 PM ET

**Summary** ✦Powered by AI at Octus

Charitable DAF HoldCo, Ltd., an affiliate of former Highland Capital Management CEO James Dondero, is seeking U.S. recognition of its Cayman Islands liquidation process. The company, which is the sole limited partner of the donor-advised fund through which Hunter Mountain Investment Trust (HMIT) makes distributions to charities, is investigating the conduct of HMIT's sole manager, Mark Patrick, as part of its liquidation proceedings. The company is represented by Reed Smith and has appointed Margot MacInnis and Sandipan Bhowmik as joint official liquidators. It is also noted that several corporations, including Highland Dallas Foundation, Inc. and DFW Charitable Foundation, hold significant ownership interests in the debtor.

*Relevant Document*:
Petition

Charitable DAF HoldCo, Ltd., a non-profit foundation affiliate of former Highland Capital Management President and CEO James Dondero, is seeking foreign main recognition of its Grand Court of the Cayman Islands liquidation proceeding in the U.S. Bankruptcy Court for the District of Delaware. Charitable DAF HoldCo is the sole limited partner of the donor advised fund through which Hunter Mountain Investment Trust, or HMIT, entities make distribution to certain charitable organizations.

The conduct of Mark Patrick, HMIT's sole manager, is being investigated in Charitable DAF's Cayman Islands liquidation proceedings. Judge Stacey G.C. Jernigan issued a decision in Highland Capital's bankruptcy case this afternoon, July 21, denying the Dugaboy Investment Trust's and the Texas attorney general's requests to stay reorganized debtor Highland Capital's settlement with HMIT and related entities.

According to the petition, the company is represented by Reed Smith in Wilmington, Delaware. Margot MacInnis and Sandipan Bhowmik of Grant Thorton Specialist Services (Cayman) Limited are appointed as joint official liquidators of the company.

The petition states that the following corporations hold 10% or more of the ownership interests in the

debtor:

- Highland Dallas Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares;
- Highland Kansas City Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares;
- Highland Santa Barbara Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares;
- DFW Charitable Foundation: owns 51.04% of the Debtor's Participating Shares; and
- Mark Patrick: owns 100% of the Debtor's Management Shares.

View on Octus →

Have Questions About This Story?

Contact Us

*Content Types:*

Octus News

*Products:*

Americas Core Credit

First Day

Americas Middle Market

You are receiving this alert because you are subscribing to **New Coverage - Recent Additions**, **All Reorg Coverage**, **Intel** Watchlist(s). Click here to adjust your alerts settings.

iOS | Android | Spotify | Apple | LinkedIn

This publication, prepared by Octus Intelligence, Inc. or its affiliates ("Octus"), is for general informational purposes only and should not be construed as legal, investment, accounting, or other professional advice. Octus obtains information from various sources but does not guarantee its accuracy, completeness, or fitness for any particular purpose. Use of this content is subject to Octus Terms of Use or other terms governing your subscription. Recipients are solely responsible for their decisions, must comply with applicable laws, and may not redistribute or republish any portion of this content without express written consent from Octus. Octus and its personnel disclaim all liability related to actions taken or not taken based on this publication. © 2024 Octus. All rights reserved.

Unsubscribe From All Product Alerts | Modify Octus Product Alerts | Modify FinDox Preferences.

CAUTION RLF: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Delaware

Case number *(If known)*: ____________________ Chapter 15

☐ Check if this is an amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding

12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

1. **Debtor's name** Charitable DAF HoldCo, Ltd

2. **Debtor's unique identifier**

   **For non-individual debtors:**

   ☐ Federal Employer Identification Number (EIN) ___ – _______

   ☑ Other 263805. Describe identifier Cayman Registration No.

   **For individual debtors:**

   ☐ Social Security number: xxx – xx– ___ ___ ___ ___

   ☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ___ ___ ___ ___

   ☐ Other ____________. Describe identifier ____________.

3. **Name of foreign representative(s)** Margot MacInnis and Sandipan Bhowmik

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred** Grand Court of the Cayman Islands Cause No. FSD 116 of 2025 (JAJ)

5. **Nature of the foreign proceeding**

   *Check one:*

   ☐ Foreign main proceeding
   ☐ Foreign nonmain proceeding
   ☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

   ☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

   ☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

   ☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

   ________________________________________

   ________________________________________

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

   ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

   ☑ Yes



010515
VALUESCOPE_000008

Debtor Charitable DAF HoldCo, Ltd
Name

Case number (if known) ____________________

8. **Others entitled to notice**

Attach a list containing the names and addresses of:

(i) all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii) all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

9. **Addresses**

**Country where the debtor has the center of its main interests:**

Cayman Islands

**Debtor's registered office:**

68 Fort Street
Number Street

P.O. Box 31726
P.O. Box

George Town KY1-1207
City State/Province/Region ZIP/Postal Code

Cayman Islands
Country

**Individual debtor's habitual residence:**

Number Street

P.O. Box

City State/Province/Region ZIP/Postal Code

Country

**Address of foreign representative(s):**

2nd Floor, Century Yard, Cricket Square
Number Street

P.O. Box 1044
P.O. Box

George Town KY1-1102
City State/Province/Region ZIP/Postal Code

Cayman Islands
Country

10. **Debtor's website** (URL)

https://dafholdco.com/

11. **Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

☐ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

☐ Partnership

☑ Other. Specify: Cayman Islands exempted company

☐ Individual

Debtor Charitable DAF HoldCo, Ltd
Name

Case number (if known) ____________________

**12. Why is venue proper in *this district*?**

*Check one:*

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

____________________.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

____________________.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✘ /s/ Margot MacInnis — Signature of foreign representative

Margot MacInnis — Printed name

Executed on 07/21/2025
MM / DD / YYYY

✘ /s/ Sandipan Bhowmik — Signature of foreign representative

Sandipan Bhowmik — Printed name

Executed on 07/21/2025
MM / DD / YYYY

**14. Signature of attorney**

✘ /s/ Jason D. Angelo — Signature of Attorney for foreign representative

Date 07/21/2025
MM / DD / YYYY

Jason D. Angelo
Printed name

Reed Smith LLP
Firm name

1201 North Market Street, Suite 1500
Number Street

Wilmington — City
DE — State
19801 — ZIP Code

(302) 778-7500 — Contact phone

jangelo@reedsmith.com — Email address

6009 — Bar number

DE — State



010517
VALUESCOPE_000010

# EXHIBIT 1

FSD NO. 116 OF 2025 (JAJ)

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**IN THE MATTER OF SECTION 131 OF THE COMPANIES ACT (2025 REVISION)**
**AND IN THE MATTER OF CHARITABLE DAF HOLDCO, LTD**

**BEFORE THE HONOURABLE JUSTICE JALIL ASIF KC**
**IN CHAMBERS**

**6 MAY 2025**

## SUPERVISION ORDER

**UPON** the petition filed on 2 May 2025 by (1) the Highland Dallas Foundation, Inc., (2) the Highland Kansas City Foundation, Inc., (3) the Highland Santa Barbara Foundation, Inc., and (4) the HCMLP Charitable Fund for an order that the voluntary liquidation of Charitable DAF HoldCo, Ltd continue under the supervision of the Court pursuant to s.131 Companies Act (2025 Revision)

**AND UPON** hearing counsel for the Petitioners and counsel for DFW Charitable Foundation

**AND UPON** reading the petition herein, the affidavit of Julie Diaz and exhibit JD-2 sworn on 29 April 2025 and the affirmation of Rhiannon Zanetic and exhibit RMZ-1 signed (but not affirmed) on 29 April 2025

**AND UPON** reading the following documents filed in Cause FSD 2025-0099 (JAJ): the winding up petition filed on 10 April 2025, the first affidavit of Julie Diaz and exhibit JD-1 sworn on 10 April 2025, the affidavit of James Dondero and exhibit JDD-1 sworn on 9 April 2025 and the affidavit of Geoffrey Sykes and exhibit GS-1 sworn on 27 April 2025

**AND UPON** reading the affidavit of Margot Macinnis and exhibit MM-1 sworn on 28 April 2025 and the affidavit of Sandipan Bhowmik and exhibit SB-1 sworn on 28 April 2025 providing their consents to act as official liquidators of Charitable DAF HoldCo, Ltd

**IT IS HEREBY ORDERED that:**

1. The voluntary liquidation of Charitable DAF HoldCo, Ltd ("the Company") be continued under the supervision of the Court pursuant to s.131 of the Act and O.15, r.8 of the Companies Winding Up Rules (2023 Consolidation).

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 8, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref: AJ/RZ/0016**)

2. The following persons are appointed as joint official liquidators of the Company:

| Name | Address | Contact Details |
|---|---|---|
| Margot MacInnis | Grant Thornton Specialist Services (Cayman) Limited, 2nd Floor, Century Yard, Cricket Square, Grand Cayman, KY1-1102, Cayman Islands | +1 345 949 8588 margot.macinnis@uk.gt.com |
| Sandipan Bhowmik | | +1 345 949 8588 sandipan.bhowmik@uk.gt.com |

3. The joint official liquidators may act jointly and severally.

4. The joint official liquidators are not required to give security for their appointment.

5. The joint official liquidators are authorised to exercise the following powers in Part I of Third Schedule 3 to the Companies Act, without requiring further sanction by the Court:

   a) the power to commence legal proceedings in the name and on behalf of the Company to obtain the provision of information and/or documents and/or the examination of individuals in the Cayman Islands or the United States; and

   b) the power to apply in the Cayman Islands or the United States for the preservation, freezing or attachment of assets to which the Company is or may arguably be entitled.

6. The joint official liquidators are in addition authorised to exercise the following powers and to take the following steps without further sanction by the Court:

   a) the power to present a petition for the winding up of Charitable DAF Fund, LP (the Fund) if so advised;

   b) the power to file a summons and to apply for an order appointing provisional liquidators of the Fund if so advised; and

   c) the power to seek registration or recognition of themselves and/or the Official Liquidation in any State in the United States for any purpose connected with the exercise of the powers specified in paragraphs 5(a) or 5(b) of this Order.

7. The Court dispenses with the requirement for the summons herein and the hearing of the summons to be advertised pursuant to CWR O.15.

8. The joint official liquidators' reasonable remuneration and expenses be paid out of the assets of the Company in accordance with s.109 of the Act, Part III of the Insolvency Practitioners Regulations and CWR O.20.

9. The joint voluntary liquidators shall prepare a final report and accounts for the period from the commencement of the voluntary liquidation until the date of this Order and shall deliver such report to the joint official liquidators within 28 days of this Order.

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 8, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

10. The costs of this summons shall be paid out of the assets of the Company as an expense in the liquidation, such costs to be taxed on the indemnity basis if not agreed with the joint official liquidators.

**Dated 6 May 2025**
Filed 6 May 2025

**THE HONOURABLE JUSTICE JALIL ASIF KC**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was filed by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 8, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (**Ref:AJ/RZ/0016**)

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-_____ (___) |

**CORPORATE OWNERSHIP STATEMENT OF THE DEBTOR PURSUANT TO RULE 1007(a)(4) AND 7007.1 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"), which was brought under the supervision of the Grand Court of the Cayman Islands Financial Services Division by an order dated May 6, 2025 (Cause No. FSD 116 of 2025) (JAJ), hereby files this Corporate Ownership Statement of the Debtor Pursuant to Rule 1007(A)(4) And 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition")[2] for the Debtor, filed contemporaneously herewith.

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 170388. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

As of the date of this statement, the Petitioners submit the below list of corporations that hold 10% or more of the ownership interests in the Debtor. No other parent corporation or publicly held corporation owns 10% or more of the ownership interests of the Debtor.

- Highland Dallas Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares
- Highland Kansas City Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares
- Highland Santa Barbara Foundation, Inc.: owns 16.05% of the Debtor's Participating Shares
- DFW Charitable Foundation: owns 51.04% of the Debtor's Participating Shares
- Mark Patrick: owns 100% of the Debtor's Management Shares

[*Remainder of Page Intentionally Left Blank*]

Dated: July 21, 2025
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*

Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: +1.302.778.7500
Facsimile: +1.302.778.7575
E-mail: jangelo@reedsmith.com

-and-

Casey Laffey, Esq. (*pro hac vice* forthcoming)
Aaron Javian, Esq. (*pro hac vice* forthcoming)
Ian M. Turetsky, Esq. (*pro hac vice* forthcoming)
Richard C. Solow, Esq. (*pro hac vice* forthcoming)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 100220
Telephone: +1.212.521.5400
Facsimile: +1.713.521.5450
E-mail: claffey@reedsmith.com
ajavian@reedsmith.com
ituretsky@reedsmith.com
rsolow@reedsmith.com

*Counsel to Margot MacInnis and Sandipan Bhowmik as Joint Official Liquidators of Chapter 15 Debtor*

# EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-_____ (___) |

**DISCLOSURE PURSUANT TO RULE 1007(a)(4) OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"), which was brought under the supervision of the Grand Court of the Cayman Islands Financial Services Division by an order dated May 6, 2025 (Cause No. FSD 116 of 2025) (JAJ), hereby files this Disclosure Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition") for the Debtor, filed contemporaneously herewith.

## I. Administrators in Foreign Proceeding Concerning the Debtor

1. The Petitioners are the duly authorized foreign representatives of the Debtor in the Cayman Proceeding. The Petitioners' address is:

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 170388. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

c/o Grant Thornton Specialist Services (Cayman) Limited
2nd Floor, Century Yard, Cricket Square
P.O. Box 1044
Grand Cayman KY1-1102
Cayman Islands

**II. Entities Against Whom Provisional Relief is Sought Pursuant to 11 U.S.C. § 1519**

2. N/A

**III. All Parties to Litigation Pending in the United States in which the Debtor is a Party at the Time of the Filing of the Verified Petition**

3. Debtor is not a party to any litigation pending in the United States.

[*Remainder of Page Intentionally Left Blank*]



010528
VALUESCOPE_000021

Dated: July 21, 2025
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Jason D. Angelo*

Jason D. Angelo (No. 6009)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: +1.302.778.7500
Facsimile: +1.302.778.7575
E-mail: jangelo@reedsmith.com

-and-

Casey Laffey, Esq. (*pro hac vice* forthcoming)
Aaron Javian, Esq. (*pro hac vice* forthcoming)
Ian M. Turetsky, Esq. (*pro hac vice* forthcoming)
Richard C. Solow, Esq. (*pro hac vice* forthcoming)
**REED SMITH LLP**
599 Lexington Avenue
New York, NY 100220
Telephone: +1.212.521.5400
Facsimile: +1.713.521.5450
E-mail: claffey@reedsmith.com
ajavian@reedsmith.com
ituretsky@reedsmith.com
rsolow@reedsmith.com

*Counsel to Margot MacInnis and Sandipan Bhowmik as Joint Official Liquidators of Chapter 15 Debtor*

# EXHIBIT 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARITABLE DAF HOLDCO, LTD (IN OFFICIAL LIQUIDATION),[1]<br><br>Debtor in a foreign proceeding. | Chapter 15<br><br>Case No. 25-_____ (___) |

**STATEMENT OF THE FOREIGN REPRESENTATIVES**
**PURSUANT TO SECTION 1515(C) OF THE BANKRUPTCY CODE**

Margot MacInnis and Sandipan Bhowmik of Grant Thornton Specialist Services (Cayman) Limited (the "Petitioners"), the duly appointed joint official liquidators of Charitable DAF HoldCo, Ltd (In Official Liquidation) (the "Debtor"), a Cayman Islands exempted company in official liquidation in the Cayman Islands (the "Cayman Proceeding"), which was brought under the supervision of the Grand Court of the Cayman Islands Financial Services Division by an order dated May 6, 2025 (Cause No. FSD 116 of 2025) (JAJ), hereby submit this Statement of Foreign Representatives pursuant to Section 1515(c) of the Bankruptcy Code in support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* for the Debtor, filed contemporaneously herewith.

## I. Statement of the Foreign Representatives Pursuant to 11 U.S.C. § 1515(c)

The Petitioners, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

[1] The Debtor is incorporated in the Cayman Islands as an exempted company and registered with registration number 170388. The Debtor's registered office is located at HSM Corporate Services Limited, P.O. Box 31726, 68 Fort Street, George Town, Grand Cayman, KY1-1207, Cayman Islands.

1. We are the duly authorized "foreign representatives" of the Debtor in the Cayman Proceeding, as that term is defined in section 101(24) of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

2. The Cayman Proceeding is a "foreign proceeding" as that term is defined in section 101(23) of the Bankruptcy Code.

3. We have been informed that section 1515(c) of the Bankruptcy Code provides that a "petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

4. Pursuant to the requirements of section 1515(c) of the Bankruptcy Code, to the best of our knowledge, the Cayman Proceeding is the only known pending "foreign proceeding" with respect to the Debtor as that term is defined in section 101(23) of the Bankruptcy Code.

[*Signature Page Follows*]

Dated: July 21, 2025
Cayman Islands

*/s/ Margot MacInnis*
By: Margot MacInnis
Petitioner

-and-

*/s/ Sandipan Bhowmik*
By: Sandipan Bhowmik
Petitioner

# Charitable DAF




010534
VALUESCOPE_000027

ReedSmith
Driving progress through partnership
Casey D. Laffey
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

June 2, 2025

**Via Email (shastings@valuescopeinc.com)**

Steven Hastings
ValueScope, LLC
950 E. State Highway 114, Suite 120
Southlake, TX 76092

**Re: Charitable DAF HoldCo, Ltd. (In Official Liquidation)**
**FSD No. 2025-116 (JAJ)**
**Reg. No. 263805**

Dear Mr. Hastings:

We represent Sandipan Bhowmik and Margot MacInnis of Grant Thornton Specialist Services (Cayman) Limited in their capacity as joint official liquidators ("**JOLs**") of Charitable DAF HoldCo, Ltd. (In Official Liquidation) ("**Company**"). We write in response to ValueScope, LLC's letter, dated May 30, 2025, which responded to the JOLs' letters, dated May 7, 2025 and May 15, 2025, and emails, dated May 20, 2025 and May 26, 2025, each of which requested the Company's files.

Although ValueScope insists that it is "committed to meeting our ethical and professional obligations, including providing client records where appropriate," its correspondence and delay suggests otherwise. ValueScope states that it is unwilling to cooperate with the JOLs' reasonable requests because the JOLs' appointment has not yet been recognized under Chapter 15 of the Bankruptcy Code. However, Chapter 15 recognition is irrelevant for ValueScope to comply with the JOLs' request.

The JOLs have been duly appointed by the Grand Court of the Cayman Islands and are requesting that ValueScope provide them with the Company's files pursuant to the JOLs' statutory and court mandated powers. There is nothing about the JOLs' appointment or their status in the United States precluding ValueScope's cooperation with the JOLs' reasonable requests, and ValueScope's argument to the contrary is wrong.

The JOLs therefore renew their request that ValueScope **immediately** provide them with Company's files. Should ValueScope decline to cooperate, the JOLs will have no choice but to assume that ValueScope intends to obstruct the JOLs' duties and the JOLs will pursue all appropriate legal remedies to compel production of the requested documents, including seeking legal fees and costs for ValueScope's stonewalling. The JOLs sincerely hope and expect, however, that those measures will not be necessary.

ReedSmith

Sincerely,

Casey D. Lafley

cc: Aaron Javian (ajavian@reedsmith.com)

VALUESCOPE
a marshall + stevens company

May 30, 2025

**Via Email to:**
Sandipan Bhowmik | Sandipan.bhowmik@uk.gt.com | cdaf.core@uk.gt.com
Jamie Gallagher | jamie.r.gallagher@uk.gt.com
Michael Aquino | michael.aquino@uk.gt.com

**Re: Request for information pertaining to Charitable DAF HoldCo, Ltd.**

Dear Sirs:

Thank you for your correspondence regarding the records relating to our prior valuation work for Charitable DAF HoldCo, Ltd.

We are committed to meeting our ethical and professional obligations, including providing client records where appropriate. At the same time, we are bound by legal duties, including the obligation to protect confidential and privileged information.

We understand that you have been appointed as Joint Official Liquidators by the Grand Court of the Cayman Islands, and we acknowledge your request is made in that capacity. However, under U.S. law, a foreign court appointment does not automatically grant authority over records or compel disclosure unless the foreign proceeding has been formally recognized by a U.S. Bankruptcy Court pursuant to Chapter 15 of the U.S. Bankruptcy Code.

If such recognition has been granted, please provide the relevant documentation for our review. In the absence of that, we are unable to release confidential materials or client records. Please let us know if you have obtained recognition under Chapter 15 or other legal authority in the U.S. We remain open to reviewing any such documentation and cooperating as appropriate under applicable law.

Sincerely,

[signature]

Steven Hastings, CPA/ABV/CFF/CGMA, ASA, CVA
Principal
ValueScope, LLC