**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P**.**

§

§ Case No 19-34054-sgj11

**The Dugaboy Investment Trust**

**- Appellant**

§

vs. §

3:26-CV-02496-D

**Highland Capital Management, L.P., et al**-Appellee

§

§

**[4689] Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026**

**APPELLANT RECORD**

**VOLUME 38**

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| THE DUGABOY INVESTMENT TRUST,<br>Appellant,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. *et al.*,<br><br>Appellees. | Case No. 3:26-cv-02496-D<br><br>INDEX |

**APPELLANT THE DUGABOY INVESTMENT TRUST'S DESIGNATIONS OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES TO BE PRESENTED FROM THE BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION TO ALTER OR AMEND AND FOR RECONSIDERATION OF ORDER DENYING MOTION FOR RELIEF FROM ORDER AND MOTION TO VACATE**

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant" or "Dugaboy"), having filed a Notice of Appeal [Docket No. 4698] on July 24, 2026, from the Bankruptcy Court's June 15, 2026, *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689] now files this *Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented* and respectfully requests that the Clerk prepare and forward the listed items to the District Court for inclusion in the record in connection with this appeal.

**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

1. Did the Bankruptcy Court err in declining to vacate, modify, or otherwise reconsider the Court's June 15, 2026 Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate?

2. Did the Bankruptcy Court err in finding Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate ("Dugaboy's Motion") [Docket No. 4684] was "without merit?"

3. Did the Bankruptcy Court err in denying Dugaboy's Motion without a full record, including that Dugaboy was not allowed to file a reply brief and was not granted a hearing?

4. Did the Bankruptcy Court err in denying Dugaboy the opportunity to file a reply brief to Highland's Opposition to Dugaboy's Motion, including that Dugaboy indicated a date certain for filing a reply?

5. Did the Bankruptcy Court err in finding Dugaboy's Motion was "without merit" without granting a hearing?

6. Did the Bankruptcy Court err by summarily denying Dugaboy's Motion without explaining its reasoning for the denial?

7. Did the Bankruptcy Court err in failing to consider Dugaboy's Notice of Intervening Event?

8. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(2) when it determined that it had not manifestly erred in deciding the evidence of Mark Patrick's misconduct contained in the Cayman Islands proceeding was not "newly discovered" even though that information was not contained in James Dondero's affidavit executed April 16, 2025?

9. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant

to Rule 60(b)(2) when it determined it had not manifestly erred in deciding the Dondero Affidavit indicated information gained in the Cayman Islands proceedings was not "newly discovered" despite the fact the Affidavit lacked any evidence of the restructuring discovered in the Cayman Islands proceedings?

10. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding on the grounds that Rule 60(b)(3) purportedly requires fraud or misconduct to have occurred in the judicial proceeding itself?

11. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(3) when it determined that it had not manifestly erred in deciding that Highland did not provide misleading or incomplete answers during the discovery of Mark Patrick's misconduct and resulting lack of authority to negotiate the Rule 9019 settlement agreement from Dugaboy leading to the Rule 9019 Order?

12. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding that Dugaboy had not presented a basis for relief under Rule 60(b)(6) that was separate from the grounds presented for Rule 60(b)(2) and Rule 60(b)(3)?

13. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision pursuant to Rule 60(b)(6) when it determined that it had not manifestly erred in deciding on the grounds that undoing the Rule 9019 Settlement Order would not restore the original structure of the DAF or Hunter Mountain?

14. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of the Bankruptcy Court's special responsibility to monitor arrangements and settlements made between Highland's appointed managers and third parties?

15. Did the Bankruptcy Court err when it declined to alter or amend its Rule 60 decision on the basis of its manifest error in failing to consider the Bankruptcy Court's role as a court of equity and responsibility to prevent misconduct before it, such as Mark Patrick's use of stolen assets in the 9019 Settlement?

16. Such other Bankruptcy Court errors of fact and law that are identified in Dugaboy's opening appellate brief on the merits.

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Vol. 1 000001 – 1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4698] filed by Appellant;

000010 2. The Bankruptcy Court's July 10, 2026 *Order Denying Dugaboy's Motion to Alter or Amend and for Reconsideration of Order Denying Motion for Relief from Order and Motion to Vacate* [Docket No. 4689];

3. Any opinion, findings of fact, and conclusions of law of the Bankruptcy Court relating to the issues on appeal;

000012 4. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

5. Each of the documents and items designated below:

Vol. 2

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 02/09/2026 | 4513 | (1195 pgs; 66 docs) Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order # 2 Index of Exhibits # 3 Appendix A # 4 Exhibit 1 # 5 Exhibit 2 # 6 Exhibit 3 # 7 Exhibit 4 # 8 Exhibit 5 # 9 Exhibit 6 # 10 Exhibit 7 # 11 Exhibit 8 # 12 Exhibit 9 # 13 Exhibit 10 # 14 Exhibit 11 # 15 Exhibit 12 # 16 Exhibit 13 # 17 Exhibit 14 # 18 Exhibit 15 # 19 Exhibit 16 # 20 Exhibit 17 # 21 Exhibit 18# 22 Exhibit 19 # 23 Exhibit 20 # 24 Exhibit 21 # 25 Exhibit 22 # 26 Exhibit 23 # 27 Exhibit 24 # 28 Exhibit 25 # 29 Exhibit 26 # 30 Exhibit 27 # 31 Exhibit 28 # 32 Exhibit 29 # 33 Exhibit 30 # 34 Exhibit 31# 35 Exhibit 32 # 36 Exhibit 33 # 37 Exhibit 34 # 38 Exhibit 35 # 39 Exhibit 36 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44# 48 Exhibit 45 # 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit A # 59 Exhibit B # 60 Exhibit C #61 Exhibit D # 62 Exhibit E # 63 Exhibit F # 64 Exhibit G # 65 Exhibit H) (Gaddis, John Michael) |
| 02/13/2026 | 4515 | (2 pgs) Order setting hearing on Motion to reconsider (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 3/12/2026 at 10:00 Via WebEx for 4513, Entered on 2/13/2026 (Okafor, M.) |

000648 thru Vol. 3

Vol. 4 001843

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 4 001845 thru Vol 6 | 02/27/2026 | 4521 | (1789 pgs; 9 docs) Support/supplemental document/ *Supplemental Exhibits* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate*). (Attachments: # 1 Exhibit B # 2 Exhibit C # 3 Exhibit D # 4 Exhibit E # 5 Exhibit F # 6 Exhibit G- Part 1 # 7 Exhibit G - Part 2 # 8 Exhibit H) (Gaddis, John Michael) |
| Vol 7 003634 | 02/27/2026 | 4522 | (13 pgs; 4 docs) Motion to file document under seal. *Pursuant to Section 107 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 [UNOPPOSED]* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order # 2 Exhibit I # 3 Exhibit J) (Gaddis, John Michael) |
| 003647 | 03/02/2026 | 4524 | (3 pgs) Order granting motion to seal exhibits (related document # 4522) Entered on 3/2/2026. (Okafor, M.) |
| 003650 + 003651 | 03/02/2026 | 4525 | SEALED document regarding: Sealed Exhibits I & J per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4524 Order on motion to seal). (Attachments: # 1 Exhibit J - Sealed) (Gaddis, John Michael) |
| 003652 | 03/02/2026 | 4526 | (11 pgs; 2 docs) Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael) |
| 003663 | 03/03/2026 | 4527 | (4 pgs) *Notice of Revised Order* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4526 Motion to extend time to Briefing and Hearing Date for Dugaboy's Motion for Relief from Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Gaddis, John Michael)). (Gaddis, JohnMichael) |
| 003667 | 03/04/2026 | 4528 | (3 pgs) Order granting Agreed Joint Motion to Extend Briefing and Hearing Dates for Dugaboy's Motion for Relief From Stay Order and Motion to Vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing reset to 4/27/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 4513, Entered on 3/4/2026 (Okafor, M.) |
| 003670 | 04/01/2026 | 4533 | (39 pgs; 2 docs) Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 7<br>003709 | 04/01/2026 | 4534 | (1024 pgs; 20 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17# 18 Exhibit 18 # 19 Exhibit 19) (Annable, Zachery) |
| 004733 | 04/03/2026 | 4535 | (57 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Annable, Zachery) |
| Vol. 8<br>004790 | 04/03/2026 | 4536 | (417 pgs; 14 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P. and the Highland Claimant Trust's Objection to Dugaboy's Motion for Relief from Order and Motion to Vacate)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4535 Objection). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I# 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M) (Annable, Zachery) |
| Vol 9<br>005207 | 04/03/2026 | 4537 | (2 pgs) Objection to (related document(s): 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust)*Joinder to Objection [Dkt. No. 4535]* filed by Creditor Hunter Mountain Investment Trust. (Phillips, Louis) |
| 005209 | 04/06/2026 | 4538 | (8 pgs; 2 docs) Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order) (Phillips, Louis) |
| 005217 | 04/06/2026 | 4540 | (5 pgs) Joinder by *To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by ValueScope, LLC, Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (RE: related document(s) 4513 Motion to |

vol 9

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate, 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*). (Phillips, Louis) |
| 04/07/2026 005222 | 4544 | (3 pgs) Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM via WebEx for 4533, (Annable, Zachery)Modified on 4/7/2026 (sdw). |
| 04/07/2026 005225 | 4545 | (2 pgs) Notice of hearing filed by CLO Holdco, Ltd., Shields Legal Group, P.C., Attorney Kelly Hart & Pitre (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy Investment Trust) Filed by Shields Legal Group, P.C., CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (Attachments: # 1 Proposed Order)). Hearing to be held on 4/24/2026 at 09:30 AM Lubbock for 4538, (Phillips, Louis) |
| 04/10/2026 005227 | 4546 | (2 pgs) Order rescheduling hearing on motion for relief from order and motion to vacate (RE: related document(s) 4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Hearing to be held on 5/11/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513, Entered on 4/10/2026 (Okafor, M.) |
| 04/16/2026 005229 | 4549 | (4 pgs) Support/supplemental document *Supplement To Motion To Quash And Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests* filed by Attorney Kelly Hart & Pitre, Creditor Shields Legal Group, P.C. (RE: related document(s) 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate filed by Partner Dugaboy In). (Phillips, Louis) |
| 04/17/2026 005233 | 4550 | (97 pgs; 4 docs) Response opposed to (related document(s): 4538 Motion to quash *Requests For Production Of Documents Served Improperly* (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In filed by Attorney Kelly Hart & Pitre, Creditor CLO Holdco, Ltd., |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 9 | | | Interested Party CLO Holdco, Ltd., Creditor Shields Legal Group, P.C.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit A - Kelly Hart Proof of Service # 2 Exhibit B - Shields Legal Group Proof of Service # 3 Exhibit C - CLO Holdco Ltd. Proof of Service) (Harper, Geoffrey) |
| 005330 | 04/17/2026 | 4551 | (260 pgs; 20 docs) Response opposed to (related document(s): 4533 Motion for protective order (*Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19) (Harper, Geoffrey) |
| Vol. 10 005590 | 04/21/2026 | 4554 | (4 pgs) Support/supplemental document *To Motion To Quash And Joinder To Highland Capital Management, L.P.s Motion For A Protective Order Against The Dugaboy Investment Trusts Discovery Requests* filed by Interested Party CLO Holdco, Ltd. (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)*, 4538 Motion to quash Requests For Production Of Documents Served Improperly (related documents 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* filed by Partner Dugaboy In). (Phillips, Louis) |
| 005594 | 04/22/2026 | 4555 | (21 pgs) Reply to (related document(s): 4551 Response filed by Partner Dugaboy Investment Trust) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005615 | 04/22/2026 | 4556 | (67 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Reply in Further Support of Its Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4555 Reply). (Attachments: # 1 Exhibit 20 # 2 Exhibit 21 # 3 Exhibit 22 # 4 Exhibit 23) (Annable, Zachery) |
| 005682 | 04/22/2026 | 4558 | (10 pgs) Reply to (related document(s): 4550 Response filed by Partner Dugaboy Investment Trust, 4551 Response filed by Partner Dugaboy Investment Trust) *Reply In Support Of Joinder To Highland Capital Management, L.P.'s Motion For A Protective Order Against The Dugaboy Investment Trust's Discovery Requests And Reply In Support Of Motion To Quash And Joinder To HCMLP Reply* filed by Beacon Mountain, LLC, |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol 10 | | Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre. (Phillips, Louis) |
| 04/22/2026 005692 | 4559 | (12 pgs; 3 docs) Declaration re: *(Declaration Of Louis M. Phillips In Support Of Reply In Support Of The Motion To Quash And Joinder To Reply In Support Of Motion For Protective Order)* filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Shields Legal Group, P.C., ValueScope, LLC, Interested Party CLO Holdco, Ltd., Attorney Kelly Hart & Pitre (RE: related document(s) 4558 Reply). (Attachments: # 1 Exhibit A - Correspondence on April 6, 2026 between counsel for Dugaboy Investment Trust (Dugaboy) and undersigned counsel # 2 Exhibit B - Correspondence on April 16, 2026 between counsel for Dugaboy and undersigned counsel) (Phillips, Louis) |
| 04/24/2026 005705 | 4561 | (22 pgs) Support/supplemental document *(Highland Capital Management, L.P.'s Slide Deck for Oral Argument on Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4533 Motion for protective order (Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)). (Annable, Zachery) |
| 04/24/2026 005726 | 4563 | (1 pg) Notice *of position* filed by Creditor The Dugaboy Investment Trust. (Harper, Geoffrey) |
| 04/25/2026 005727 | 4564 | (2 pgs) Response opposed to (related document(s): 4563 Notice (generic) filed by Creditor The Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 04/27/2026 005729 | 4567 | (8 pgs; 2 docs) Notice to *Judge Odell regarding Supplemental Intervening Authority* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4533 Motion for protective order *(Highland Capital Management, L.P.'s Motion for a Protective Order Against The Dugaboy Investment Trust's Discovery Requests)* Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Proposed Order)). (Attachments: # 1 Exhibit Attachment 1 - Decision Dated April 22, 2026) (Harper, Geoffrey) |
| 04/28/2026 005737 | 4568 | (9 pgs; 2 docs) Response opposed to (related document(s): 4567 Notice (generic) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| | | |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 11 005746 | 04/28/2026 | 4569 | (9 pgs; 3 docs) Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Meet and Confer Email #2 Proposed Order) (Rose, Sydney) |
| 005755 | 04/28/2026 | 4570 | (6 pgs; 2 docs) Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005761 | 04/28/2026 | 4571 | (6 pgs; 2 docs) Motion for expedited hearing(related documents 4569 Motion to continue, 4570 Motion to extend/shorten time) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Proposed Order) (Rose, Sydney) |
| 005767 | 04/29/2026 | 4572 | (9 pgs; 2 docs) Response opposed to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P.. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 005776 | 04/29/2026 | 4575 | (7 pgs) Objection to (related document(s): 4569 Motion to continue hearing on (related documents 4562 Hearing held)*Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* filed by Partner Dugaboy Investment Trust, 4570 Motion to extend time to Modify Relevant Time Period for Discovery (RE: related document(s) 4566 Order on motion for protective order, Order on motion to quash) filed by Partner Dugaboy Investment Trust)*Opposition To Motion To Modify Relevant Time Period For Discovery And Motion To Continue filed* by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, ValueScope, LLC. (Phillips, Louis) |
| 005783 | 04/29/2026 | 4576 | (2 pgs) Order granting the Dugaboy Investment Trust's motion for expedited hearing (Related Doc #4571) (document set for hearing: 4569 Motion to continue, 4570 Motion to extend/shorten time) Hearing to be held on 4/29/2026 at 04:00 PM WebEx for 4569 and for 4570, Entered on 4/29/2026. (Sherman, J.) |

| Vol. 10 | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| 005785 | 04/29/2026 | 4577 | (2 pgs) Notice to take deposition of Mark Patrick filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005787 | 04/29/2026 | 4579 | (7 pgs) US Trustee's comment(s) regarding *Dugaboy Investment Trust's Motion for Reconsideration of the Courts Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* (Schlotzhauer, Joseph) |
| 005794 | 05/01/2026 | 4583 | (2 pgs) Order Denying Motion to Continue Discovery Deadlines and Hearing on The Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate Filed by Partner Dugaboy Investment Trust (related document # 4569) Entered on 5/1/2026. (Gotay, Camille) |
| 005796 | 05/01/2026 | 4584 | (2 pgs) Order denying 4570 Motion to Modify Relevant Time Period for Discovery Entered on 5/1/2026. (Gotay, Camille) |
| 005798 | 05/04/2026 | 4589 | (3 pgs) Subpoena on Mark Patrick filed by Creditor The Dugaboy Investment Trust. (Rose, Sydney) |
| 005801 | 05/05/2026 | 4592 | (83 pgs; 5 docs) Motion for protective order *concerning deposition (Emergency)* Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.03.26 Email # 2 Exhibit B - M. Patrick June 23,2025 Deposition Transcript # 3 Exhibit C - 05.04.26 Email # 4 Proposed Order) (Phillips, Louis) |
| 005884 | 05/05/2026 | 4593 | (18 pgs; 4 docs) Motion for expedited hearing(related documents 4592 Motion for protective order) Filed by Beacon Mountain, LLC, Hunter Mountain Investment Trust, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC (Attachments: # 1 Exhibit A - 05.04.26 Email # 2 Exhibit B - 05.05.26 Email # 3 Proposed Order) (Phillips, Louis) |
| 005902 | 05/05/2026 | 4594 | (3 pgs) Notice of Appearance and Request for Notice by Michael J Edney filed by Creditor The Dugaboy Investment Trust. (Edney, Michael) |
| 005905 | 05/05/2026 | 4595 | (2 pgs) Order denying motion for expedited hearing (Related Doc# 4593) Entered on 5/5/2026. (Noble, Nicholas) |
| 005907 | 05/05/2026 | 4596 | (6 pgs) Response opposed to (related document(s): 4592 Motion for protective order *concerning deposition (Emergency)* filed by Creditor Beacon Mountain, LLC, Creditor Hunter Mountain Investment Trust, Creditor Rand Advisors, LLC, Creditor Rand PE Fund I, LP, Creditor Rand PE Fund |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 11 | | | Management, LLC) filed by Partner Dugaboy Investment Trust. (Rose, Sydney) |
| 005913 | 05/06/2026 | 4597 | (7 pgs) Notice to take deposition of James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005920 | 05/06/2026 | 4598 | (7 pgs) Subpoena on James Dondero filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005927 | 05/06/2026 | 4599 | (2 pgs) Order denying motion for protective order (related document # 4592) Entered on 5/6/2026. (Noble, Nicholas) |
| 005929 | 05/07/2026 | 4600 | (7 pgs) Subpoena on Nancy Dondero, as Trustee of The Dugaboy Investment Trust, filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 005936 | 05/08/2026 | 4603 | (3 pgs) Notice of hearing *(Notice of Hearing on Reorganized Debtor's Motion for Entry of an Order Further Extending the Period Within Which It May Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure)* filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4602 Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s) 4471 Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 6/10/2026 at 03:00 PM by WebEx for 4602, (Annable, Zachery)Modified on 5/8/2026 (sdw). |
| 005939 | 05/08/2026 | 4604 | (3 pgs) Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Phillips, Louis) |
| 005942 | 05/08/2026 | 4605 | (3 pgs) Witness List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 005945 | 05/08/2026 | 4607 | (155 pgs; 7 docs) Reply to (related document(s): 4535 Objection filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust) filed by Partner Dugaboy Investment Trust. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6) (Rose, Sydney) |
| Vol. 12 006100 Thru Vol 21 | 05/08/2026 | 4608 | (4743 pgs; 100 docs) Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Witness and* |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | *Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18# 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31# 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34--Part 1 # 35 Exhibit 34--Part 2 # 36 Exhibit 35--Part 1 #37 Exhibit 35--Part 2 # 38 Exhibit 36--Part 1 # 39 Exhibit 36--Part 2 # 40 Exhibit 37 # 41 Exhibit 38 # 42 Exhibit 39 # 43 Exhibit 40 # 44 Exhibit 41 # 45 Exhibit 42 # 46 Exhibit 43 # 47 Exhibit 44 # 48 Exhibit 45# 49 Exhibit 46 # 50 Exhibit 47 # 51 Exhibit 48 # 52 Exhibit 49 # 53 Exhibit 50 # 54 Exhibit 51 # 55 Exhibit 52 # 56 Exhibit 53 # 57 Exhibit 54 # 58 Exhibit 55 # 59 Exhibit 56 # 60 Exhibit 57 # 61 Exhibit 58# 62 Exhibit 59--Part 1 # 63 Exhibit 59--Part 2 # 64 Exhibit 60 # 65 Exhibit 61 # 66 Exhibit 62 # 67 Exhibit 63 # 68 Exhibit 64 # 69 Exhibit 65 # 70 Exhibit 66 # 71 Exhibit 67 # 72 Exhibit 68 # 73 Exhibit 69--Part 1 # 74 Exhibit 69--Part 2 # 75 Exhibit 69--Part 3 # 76 Exhibit 69--Part 4 # 77 Exhibit 69--Part 5 #78 Exhibit 69 -- Part 6 # 79 Exhibit 69--Part 7 # 80 Exhibit 69--Part 8 # 81 Exhibit 69--Part 9 # 82 Exhibit 70 # 83 Exhibit 71 # 84 Exhibit 72 # 85 Exhibit 73 # 86 Exhibit 74 # 87 Exhibit 75 # 88 Exhibit 76 # 89 Exhibit 77 # 90 Exhibit 78 # 91 Exhibit 79 # 92 Exhibit 80 # 93 Exhibit 81 # 94 Exhibit 82 # 95 Exhibit 83# 96 Exhibit 84 # 97 Exhibit 85 # 98 Exhibit 86 # 99 Exhibit 87) (Annable, Zachery) |
| 10).22 008156 05/08/2026 | 4609 | (16 pgs) Exhibit List *for the May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust(RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Rose, Sydney) |
| 008172 05/08/2026 | 4610 | (16 pgs) Amended Exhibit List *for May 11, 2026 Hearing* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4609 List (witness/exhibit/generic)). (Rose, Sydney) |
| 008188 05/09/2026 | 4611 | (68 pgs; 3 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust(RE: related document(s) 4608 List (witness/exhibit/generic)). ~~(Attachments: # 1 Exhibit 88 # 2 Exhibit 89) (Annable, Zachery)~~ |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol 22 008256 | 05/10/2026 | 4612 | (37 pgs; 2 docs) Amended Exhibit List *Second Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 242) (Rose, Sydney) |
| 008293 | 05/11/2026 | 4613 | (136 pgs; 6 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 469 List (witness/generic)). (Attachments: # 1 Exhibit 90 # 2 Exhibit 91 # 3 Exhibit 92 # 4 Exhibit 93 # 5 Exhibit 94) (Annable, Zachery) |
| 008429 | 05/11/2026 | 4614 | (36 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Third Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 95 # 2 Exhibit 96 # 3 Exhibit 97) (Annable, Zachery) |
| 008465 | 05/11/2026 | 4615 | (7 pgs) Stipulation by Highland Capital Management, L.P., Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Annable, Zachery) |
| Vol. 23 008472 | 05/11/2026 | 4617 | (444 pgs; 23 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 001 # 2 Exhibit 002 # 3 Exhibit 003 # 4 Exhibit 004 # 5 Exhibit 005 # 6 Exhibit 006 # 7 Exhibit 007 # 8 Exhibit 008 # 9 Exhibit 009 # 10 Exhibit 010 # 11 Exhibit 011 # 12 Exhibit 012 # 13 Exhibit 013 # 14 Exhibit 014 # 15 Exhibit 015 # 16 Exhibit 016 # 17 Exhibit 017 # 18 Exhibit 018 # 19 Exhibit 019 # 20 Exhibit 020 # 21 Exhibit 021 # 22 Exhibit 022) (Welker, Avery) |
| Vol. 24 008916 | 05/11/2026 | 4618 | (638 pgs; 14 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 023 # 2 Exhibit 024 # 3 Exhibit 025 # 4 Exhibit 026 # 5 Exhibit 027 # 6 Exhibit 028 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 029 # 8 Exhibit 030 # 9 Exhibit 031 # 10 Exhibit 032 # 11 Exhibit 033 # 12 Exhibit 034 # 13 Exhibit 035) (Welker, Avery) |
| Vol 25 009554 | 05/11/2026 | 4619 | (314 pgs; 17 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 036 # 2 Exhibit 037 # 3 Exhibit 038 # 4 Exhibit 039 # 5 Exhibit 040 # 6 Exhibit 041 # 7 Exhibit 042 # 8 Exhibit 043 # 9 Exhibit 044 # 10 Exhibit 045 # 11 Exhibit 046 # 12 Exhibit 047 # 13 Exhibit 048 # 14 Exhibit 049 # 15 Exhibit 050 # 16 Exhibit 051) (Welker, Avery) |
| Vol. 26 009868 | 05/11/2026 | 4620 | (361 pgs; 45 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 052 # 2 Exhibit 053 # 3 Exhibit 054 # 4 Exhibit 055 # 5 Exhibit 056 # 6 Exhibit 057 # 7 Exhibit 058 # 8 Exhibit 059 # 9 Exhibit 060 # 10 Exhibit 061 # 11 Exhibit 062 # 12 Exhibit 063 # 13 Exhibit 064 # 14 Exhibit 065 # 15 Exhibit 066 # 16 Exhibit 067 # 17 Exhibit 068 # 18 Exhibit 069 # 19 Exhibit 070 # 20 Exhibit 071 # 21 Exhibit 072 # 22 Exhibit 073 # 23 Exhibit 074 # 24 Exhibit 075 # 25 Exhibit 076 # 26 Exhibit 077 # 27 Exhibit 078 # 28 Exhibit 079 # 29 Exhibit 080 # 30 Exhibit 081 # 31 Exhibit 082 # 32 Exhibit 083 # 33 Exhibit 084 # 34 Exhibit 085 # 35 Exhibit 086 # 36 Exhibit 087 # 37 Exhibit 088 # 38 Exhibit 089 # 39 Exhibit 090 # 40 Exhibit 091 # 41 Exhibit 092 # 42 Exhibit 093 # 43 Exhibit 094 # 44 Exhibit 095) (Welker, Avery) |
| Vol. 27 010229 | 05/11/2026 | 4621 | (309 pgs; 46 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 096 # 2 Exhibit 097 # 3 Exhibit 098 # 4 Exhibit 099 # 5 Exhibit 100 # 6 Exhibit 101 # 7 List of 20 Largest Creditors 102 # 8 Exhibit 103 # 9 Exhibit 104 # 10 Exhibit 105 # 11 Exhibit 106 # 12 Exhibit 107 # 13 Exhibit 108 # 14 Exhibit 109 # 15 Exhibit 110 # 16 Exhibit 111 # 17 Exhibit 112 # 18 Exhibit 113 # 19 Exhibit 114 # 20 Exhibit 115 # 21 Exhibit 116 # 22 Exhibit 117 # 23 Exhibit 118 # 24 Exhibit 119 # 25 Exhibit 120 # 26 Exhibit 121 # 27 Exhibit 122 # 28 Exhibit 123 # 29 Exhibit 124 # 30 Exhibit 125 # 31 Exhibit 126 # 32 Exhibit 127 # 33 Exhibit 128 # 34 Exhibit 129 # 35 Exhibit 130 # 36 Exhibit 131 # 37 Exhibit 132 # 38 Exhibit 133 # 39 Exhibit 134 # 40 Exhibit 135 # 41 Exhibit 136 # 42 Exhibit 137 # 43 Exhibit 138 # 44 Exhibit 139 # 45 Exhibit 140) (Welker, Avery) |
| Vol. 28 010538 | 05/11/2026 | 4622 | (126 pgs; 28 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 141 # 2 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | Exhibit 142 # 3 Exhibit 143 # 4 Exhibit 144 # 5 Exhibit 145 # 6 Exhibit 146 # 7 Exhibit 147 # 8 Exhibit 148 # 9 Exhibit 149 # 10 Exhibit 150 # 11 Exhibit 151 # 12 Exhibit 152 # 13 Exhibit 153 # 14 Exhibit 154 # 15 Exhibit 155 # 16 Exhibit 156 # 17 Exhibit 157 # 18 Exhibit 158 # 19 Exhibit 159 # 20 Exhibit 160 # 21 Exhibit 161 # 22 Exhibit 162 # 23 Exhibit 163 # 24 Exhibit 164 # 25 Exhibit 165 # 26 Exhibit 166 # 27 Exhibit 167) (Welker, Avery) |
| Vol. 28 010664 | 05/11/2026 | 4623 | (72 pgs; 4 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 168 # 2 Exhibit 169 # 3 Exhibit 170) (Welker, Avery) |
| Vol. 29 010736 | 05/11/2026 | 4624 | (389 pgs; 24 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 171 # 2 Exhibit 172 # 3 Exhibit 173 # 4 Exhibit 174 # 5 Exhibit 175 # 6 Exhibit 176 # 7 Exhibit 177 # 8 Exhibit 178 # 9 Exhibit 179 # 10 Exhibit 180 # 11 Exhibit 181 # 12 Exhibit 182 # 13 Exhibit 183 # 14 Exhibit 184 # 15 Exhibit 185 # 16 Exhibit 186 # 17 Exhibit 187 # 18 Exhibit 188 # 19 Exhibit 189 # 20 Exhibit 190 # 21 Exhibit 191 # 22 Exhibit 192 # 23 Exhibit 193) (Welker, Avery) |
| Vol 30 011150 | 05/11/2026 | 4625 | (584 pgs; 13 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 194 # 2 Exhibit 195 # 3 Exhibit 196 # 4 Exhibit 197 # 5 Exhibit 198 # 6 Exhibit 199 # 7 Exhibit 200 # 8 Exhibit 201 # 9 Exhibit 202 # 10 Exhibit 203 # 11 Exhibit 204 # 12 Exhibit 205) (Welker, Avery) |
| Vol 31 011734 | 05/11/2026 | 4626 | (1469 pgs; 3 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 206 - Part 01 # 2 Exhibit 206 - Part 02) (Welker, Avery) |
| Vol 32 013203 Thru Vol 33 | 05/11/2026 | 4627 | (1685 pgs; 7 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 207 # 2 Exhibit 208 # 3 Exhibit 209 # 4 Exhibit 210 # 5 Exhibit 211 - Part 01 # 6 Exhibit 211 Part 02) (Welker, Avery) |
| Vol. 34 014888 | 05/11/2026 | 4628 | (461 pgs; 18 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 212 # 2 Exhibit 213 # 3 Exhibit 214 # 4 Exhibit 215 # 5 Exhibit 216 # 6 Exhibit 217 |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| | | | # 7 Exhibit 218 # 8 Exhibit 219 # 9 Exhibit 220 # 10 Exhibit 221 # 11 Exhibit 222 # 12 Exhibit 223 # 13 Exhibit 224 # 14 Exhibit 225 # 15 Exhibit 226 # 16 Exhibit 227 # 17 Exhibit 228) (Welker, Avery) |
| Vol 35 015349 | 05/11/2026 | 4629 | (156 pgs; 16 docs) Amended Exhibit List *Third Amended Exhibit List* filed by Creditor The Dugaboy Investment Trust (RE: related document(s) 4612 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 229 # 2 Exhibit 230 # 3 Exhibit 231 # 4 Exhibit 232 # 5 Exhibit 233 # 6 Exhibit 234 # 7 Exhibit 235 # 8 Exhibit 236 # 9 Exhibit 237 # 10 Exhibit 238 # 11 Exhibit 239 # 12 Exhibit 240 # 13 Exhibit 241 # 14 Exhibit 242 # 15 Exhibit 243) (Welker, Avery) |
| 015505 | 05/11/2026 | 4643 | (1 pg) Court admitted exhibits date of hearing 5/11/2026 (RE: related document(s) 4630 Hearing continued (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner Dugaboy Investment Trust.) Hearing to be held on 5/12/2026 at 09:00 AM Lubbock Judge Odell Ctrm for 4513,) (Noble, Nicholas) (Entered: 05/13/2026) |
| 015506 | 05/12/2026 | 4634 | (32 pgs; 2 docs) Amended Exhibit List *Fourth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4629 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 244) (Welker, Avery) |
| 015538 | 05/12/2026 | 4635 | (27 pgs; 2 docs) Amended Exhibit List *Fifth Amended Exhibit List* filed by Partner Dugaboy Investment Trust (RE: related document(s) 4634 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 245) (Welker, Avery) |
| 015565 | 05/12/2026 | 4645 | (1 pg) Court admitted exhibits date of hearing 5/12/2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and *Motion to Vacate* Filed by Partner Dugaboy Investment Trust) (Gaddis, John Michael)) (Noble, Nicholas). (Entered: 05/13/2026) |
| 015566 | 05/15/2026 | 4658 | (3 pgs) Amended Witness List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Harper, Geoffrey) |
| Vol. 36 015569 | 05/18/2026 | 4659 | (427 pgs; 47 docs) Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4605 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 246 # 2 Exhibit 248 # 3 Exhibit 249 # 4 Exhibit 250 # 5 Exhibit 251 # 6 Exhibit 252 # 7 Exhibit 253 # 8 Exhibit 254 # 9 Exhibit 255 # 10 Exhibit 260 # 11 Exhibit 261 # 12 Exhibit 262 # 13 Exhibit 263 # 14 Exhibit 264 # 15 Exhibit 265 # 16 |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| | | Exhibit 266 # 17 Exhibit 267 - Filed Under Seal # 18 Exhibit 268 - Filed Under Seal # 19 Exhibit 269 - File Under Seal # 20 Exhibit 270 - Filed Under Seal # 21 Exhibit 270 # 22 Exhibit 272 # 23 Exhibit 273 # 24 Exhibit 274 # 25 Exhibit 275 # 26 Exhibit 276 # 27 Exhibit 277 # 28 Exhibit 278 # 29 Exhibit 279 # 30 Exhibit 280 # 31 Exhibit 281 # 32 Exhibit 282 # 33 Exhibit 283 # 34 Exhibit 284 # 35 Exhibit 285 # 36 Exhibit 286 # 37 Exhibit 287 # 38 Exhibit 288 # 39 Exhibit 289 # 40 Exhibit 290 # 41 Exhibit 291 # 42 Exhibit 274 - Native Slipsheet # 43 Exhibit 256 - Native Slipsheet # 44 Exhibit 257 - Native Slipsheet # 45 Exhibit 258 - Native Slipsheet # 46 Exhibit 259 - Native Slipsheet) (Rose, Sydney) |
| VOL 37 05/18/2026<br>015996 | 4660 | (12 pgs; 2 docs) Motion to file document under seal. Exhibits 267-270 Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Exhibit A - Proposed Order) (Rose, Sydney) (Entered: 05/19/2026) |
| 05/19/2026<br>016008 | 4661 | (71 pgs; 6 docs) Support/supplemental document Additional Exhibits filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 247 # 2 Exhibit 256 # 3 Exhibit 257 # 4 Exhibit 258 # 5 Exhibit 259) (Rose, Sydney) |
| 05/20/2026<br>016079 | 4663 | (3 pgs) Order granting motion for entry of an order authorizing filing of confidential information under seal pursuant to section 107 of the bankruptcy code and federal rule of bankruptcy procedure 9018 (related document # 4660) Entered on 5/20/2026. (Hyden, Kara) |
| 05/20/2026<br>016082 –<br>016084 | 4664 | SEALED document regarding: Exhibit 267 - Exhibit 270 per court order filed by Partner Dugaboy Investment Trust (RE: related document(s) 4663 Order on motion to seal). (Attachments: # 1 Exhibit 268 # 2 Exhibit 269 # 3 Exhibit 270) (Rose, Sydney) |
| 05/21/2026<br>016085 | 4665 | (49 pgs; 4 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P. and the Highland Claimant Trust's Fourth Amended Witness and Exhibit List with Respect to Hearing to Be Held on May 11, 2026)* filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s) 4608 List (witness/exhibit/generic), 4611 List (witness/exhibit/generic), 4613 List (witness/exhibit/generic), 4614 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 98 # 2 Exhibit 99 # 3 Exhibit 300) (Annable, Zachery) |
| 05/21/2026<br>016134 | 4675 | (1 pg) Court admitted exhibits date of hearing May 21, 2026 (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) and Motion to Vacate Filed by Partner |

| | Date Filed | Docket No. | Description/Docket Text |
|---|---|---|---|
| Vol. 37 | | | Dugaboy Investment Trust (Gaddis, John Michael)) (Wimberley, Shelby) (Entered: 05/28/2026) |
| 016135 | 05/23/2026 | 4669 | (98 pgs; 2 docs) Amended Exhibit List Dugaboy's Seventh Amended Exhibit List filed by Partner Dugaboy Investment Trust (RE: related document(s) 4659 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit Exhibit 292 - Dugaboy Investment Trust's Closing Presentation (May 21, 2026)) (Welker, Avery) |
| Vol. 38 016233 | 05/28/2026 | 4673 | (257 pgs; 4 docs) Stipulation by Highland Capital Management, L.P. and Highland Claimant Trust and The Dugaboy Investment Trust. filed by Debtor Highland Capital Management, L.P. (RE: related document(s) 4513 Motion to Reconsider (related documents 4297 Order on motion to compromise controversy) *and Motion to Vacate*). (Attachments: # 1 Exhibit 55-A # 2 Exhibit 56-A # 3 Exhibit 57-A) (Hayward, Melissa) |
| 016490 | 06/15/2026 | 4678 | (14 pgs) Memorandum of opinion (RE: related document(s)4513 Motion to Reconsider filed by Partner Dugaboy Investment Trust). Entered on 6/15/2026 (Noble, Nicholas) |
| 016504 | 06/15/2026 | 4679 | (1 pg) Order denying motion to reconsider (related document # 4513) Entered on 6/15/2026. (Noble, Nicholas) |
| Vol. 39 016505 | 06/29/2026 | 4684 | (162 pgs; 2 docs) Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust (Attachments: # 1 Appendix) (Edney, Michael) |
| 016667 | 06/29/2026 | 4685 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s)4679 Order on motion to reconsider). Appellant Designation due by 07/13/2026. (Attachments: # 1 Exhibit)(Edney, Michael) |
| 016674 | 07/06/2026 | 4687 | (32 pgs; 2 docs) Response opposed to (related document(s): 4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust. (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 016706 | 07/09/2026 | 4688 | (23 pgs; 2 docs) Notice of Intent to Reply and Request for Hearing on Its Motion to Alter or Amend the Court's June 15, 2026 Order and Notice of Intervening Event filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4684 Motion to Reconsider(related documents 4679 Order on motion to reconsider) Filed by Partner Dugaboy Investment Trust |

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| Vol. 39 | | (Attachments: # 1 Appendix)). (Attachments: # 1 Attachment A) (Edney, Michael) |
| 07/10/2026 016729 | 4689 | (2 pgs) Order Denying Motion to Reconsider Order Denying Motion for Relief from Order and Motion to Vacate (related document 4684. Order Denying Motion for Relief from Order and Motion to Vacate Entered on 7/10/2026. (Okafor, M.) Modified text on 7/10/2026 (mdo). |
| 07/13/2026 016731 | 4693 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s) 4685 Notice of appeal. filed by Partner Dugaboy Investment Trust (RE: related document(s) 4679 Order on motion to reconsider). (Attachments: # 1 Exhibit)) (Whitaker, Sheniqua) |
| 07/24/2026 016733 | 4698 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)(Edney, Michael) |
| 07/28/2026 016742 | 4704 | (5 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02496-E. (RE: related document(s)4698 Notice of appeal . Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4689 Order on motion to reconsider). Appellant Designation due by 08/7/2026. (Attachments: # 1 Exhibit Ex. A - Order Denying Motion to Reconsider)) (Whitaker, Sheniqua) |

6. Exhibits 53 and 54 to Dugaboy's Motion for Relief from Order and Motion to Vacate under Federal Rule of Civil Procedure 60(b) [Docket Nos. 4513-56 and 4513-57], which are full-text copies of Judge Stacey G. Jernigan's novels He Watches All My Paths and Hedging Death that were lodged with the Bankruptcy Court;

7. The following sealed documents to be sent by paper copy to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 8009(f): Docket Nos. 4664 ("Exhibit 267"), 4664-1 ("Exhibit 268"), 4664-2 ("Exhibit 269"), 4664-3 ("Exhibit 270"), 4525 ("Exhibit I"), and 4525-1 ("Exhibit J"); and

8. Transcripts of all oral hearings and rulings listed below:

a. Transcript of hearing held April 24, 2026, before Judge Brad W. Odell [Docket No.

4562] re: Motion for protective Order;

b. Transcript of hearing held April 29, 2026 before Judge Brad W. Odell [Docket No. 4581] re: Motion to Continue Discovery Deadlines; and

c. Transcript of hearing held May 11, 12, and 21, 2026, before Judge Brad W. Odell [Docket Nos. 4655, 4662, and 4671] re: Motion for Relief from Order and Motion to Vacate.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Michael J. Edney*

Michael J. Edney
D.C. Bar No. 492024
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
T. (202) 739-3000
F. (202) 739-3001
michael.edney@morganlewis.com

Martha B. Stolley (*pro hac vice* forthcoming)
New York Bar No. 2965374
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178-0060
T. (212) 309-6000
F. (212) 309-6001
martha.stolley@morganlewis.com

Avery Joseph Welker
Texas Bar No. 24137706
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T. (713) 890-5000
F. (713) 890-5001
avery.welker@morganlewis.com

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
KING & SPALDING LLP
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Counsel for The Dugaboy Investment Trust*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Michael J. Edney*
Michael J. Edney

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

WILLKIE FARR & GALLAGHER LLP
Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |

**STIPULATION CONCERNING HIGHLAND EXHIBITS 55, 56, AND 57**

This stipulation (the "Stipulation") is made and entered into by and between Highland Capital Management, L.P. ("HCMLP"), the reorganized debtor in the above-referenced

[1] Highland's last four digits of its taxpayer identification number are (8357). The service address for Highland is 6333 E. Mockingbird Ln., Ste 147 #5045, Dallas, TX 75214.

bankruptcy case, and the Highland Claimant Trust (the "Claimant Trust," and together with HCMLP, "Highland"), on the one hand, and The Dugaboy Investment Trust ("Dugaboy", and together with Highland, the "Parties"), on the other hand, by and through their respective undersigned counsel.

**RECITALS**

**WHEREAS**, prior to the evidentiary hearing on Dugaboy's *Motion for Relief from Order and Motion to Vacate* [Docket No. 4513] (the "Motion to Vacate"), Highland included the deposition transcripts of Shawn Raver (Highland Ex. 55), Julie Diaz (Highland Ex. 56), and Torrey Littleton (Highland Ex. 57) (collectively, the "Subject Deposition Transcripts") on its initial Witness & Exhibit list [Docket No. 4608] (the "W&E list");

**WHEREAS**, prior to the evidentiary hearing, the parties met and conferred over the admissibility of the Subject Deposition Transcripts;

**WHEREAS**, in response, Highland provided Dugaboy with specific designations of each of the Subject Deposition Transcripts, copies of which are attached as **Exhibits 55-A, 56-A, and 57-A,** respectively, (collectively, the "Deposition Designations");

**WHEREAS**, during the evidentiary hearing on Dugaboy's Motion to Vacate, Highland read aloud the page and line numbers of the Deposition Designations of the Subject Deposition Transcripts and offered the Deposition Designations into evidence, not for the truth of the matters asserted therein, but to establish that the statements highlighted by the Deposition Designations were made to Dugaboy (and others present during the depositions);

**WHEREAS**, Dugaboy objected to the admission of the Deposition Designations for the reasons stated on the record (collectively, "Dugaboy's Objections");

**WHEREAS**, the Court overruled Dugaboy's Objections and admitted the Deposition Designations into evidence for the reasons set forth on the record,

**WHEREAS**, the Parties have conferred and, for the convenience of the Bankruptcy Court and any court that may review the record on Dugaboy's Motion to Vacate, agree that Highland may substitute the Deposition Designations for the full transcripts lodged on Highland's W&E list, subject in all respects to Dugaboy's Objections;

**NOW, THEREFORE**, it is hereby jointly stipulated and agreed as follows:

1. The Deposition Designations attached as Exhibits 55-A, 56-A, and 57-A, respectively, shall be deemed to replace Exhibits 55, 56, and 57, respectively on Highland's W&E list.

2. The Deposition Designations were admitted into evidence in connection with Dugaboy's Motion to Vacate, subject to Dugaboy's Objections, all of which are reserved.

3. The Parties agree that this Stipulation and the attached Deposition Designations are part of the evidentiary record on Dugaboy's Motion to Vacate.

4. This Stipulation may be executed in counterparts. A facsimile, electronic copy, or photocopy of this Stipulation and the signatures hereto shall have the same effect and may be accepted with the same authority as if it were an original.

5. The Parties agree that the Bankruptcy Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Stipulation and any order related thereto.

**SO STIPULATED AND AGREED:**

Dated: May 28, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Melissa S. Hayward*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

-and-

**WILLKIE FARR & GALLAGHER LLP**

Mark T. Stancil (admitted *pro hac vice*)
Joshua S. Levy (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
mstancil@willkie.com
jlevy@willkie.com

**KING & SPALDING LLP**

/s/ *John Michael Gaddis*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201
(214) 764-4600

*Attorneys for The Dugaboy Investment Trust*

**Exhibit 55-A**

# In the Matter Of:

HIGHLAND CAPITAL MANAGEMENT, LP

19-34054-SGJ11

## SHAWN RAVER

*June 20, 2025*

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE ) Chapter 11
)
HIGHLAND CAPITAL MANAGEMENT, L.P., ) Case No. 19-34054-SGJ11
)
REORGANIZED DEBTOR. )

*************************************************************
ORAL DEPOSITION OF

SHAWN RAVER

JUNE 20, 2025

(Reported Remotely)

*************************************************************

ORAL DEPOSITION of SHAWN RAVER, produced at the instance of the Defendant Dugaboy Investment Trust, and duly sworn, was taken in the above-styled and numbered cause on the 20th day of June, 2025, from 11:35 a.m. to 12:19 p.m., Central Time, via Zoom videoconference before Angelica G. Robles, CSR, in and for the State of Texas, reported by oral stenography remotely pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A P P E A R A N C E S:

FOR HIGHLAND CAPITAL MANAGEMENT, L.P. AND HIGHLAND CLAIM AND TRUST:

JOHN A. MORRIS
PACHULSKI STANG ZIEHL & JONES, LLP
1700 Broadway, 36th Floor
New York, New York 10019
Phone: (210) 561-7700
Email: jmorris@pszjlaw.com

FOR HIGHLAND LITIGATION TRUSTEE:

ROBERT S. LOIGMAN
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Email: robertloigman@quinnemanuel.com

FOR DUGABOY INVESTMENT TRUST:

MICHAEL J. LANG
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Phone: (214) 817-4500
Email: mlang@cwl.law

FOR HUNTER MOUNTAIN INVESTMENT TRUST:

LOUIS M. PHILLIPS
KELLY HART PITRE
400 Poydras Street, Suite 1812
New Orleans, Louisiana 70130
Phone: (504) 522-1812
Email: louis.phillips@kellyhart.com

FOR DALLAS FOUNDATION AND CROWN GLOBAL LIFE INSURANCE:

DAVID CURRY
OKIN ADAMS BARTLETT CURRY LLP
1113 Vine Street, Suite 240
Houston, Texas 77002
Phone: (713) 228-4100
Email: dcurry@okinadams.com

ALSO PRESENT:

Jeff Pomerantz

Drew York

Amelia Hurt

Dennis C. Sauter

I N D E X

Appearances.................................... 2

SHAWN RAVER
Examination by MR. LANG...................... 6
Examination by MR. CURRY..................... 15

Changes and Signature............................ 35

Reporter's Certification......................... 37

E X H I B I T S

DUGABOY INVESTMENT TRUST:


| No. | Description | Page |
| --- | --- | --- |
| 1 | Charitable DAF/CLO HoldCo Structure Chart | 11 |

P-R-O-C-E-E-D-I-N-G-S

THE REPORTER: We are now on the record. Today's date is June 20th, 2025, and the time is 11:35 a.m., Central Time. This is the oral, remote deposition of Shawn Raver who is located in Dallas, Texas.

These proceedings are held in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, case being In Re Highland Capital Management, LP, Case No. 19-34054-SGJ11.

My name is Angelica Robles, Texas CSR No. 11809, administering the oath and reporting the deposition remotely for Esquire Deposition Solutions. The witnesses been identified to me throughout attestation of Counsel.

Would all parties, starting with the Plaintiff's attorney, please state their appearances and locations for the record, and then I will swear in the witness.

MR. MORRIS: John Morris, Pachulski, Stang, Ziehl & Jones, for Highland Capital Management, LP and Highland Claim and Trust, and I'm located in New York.

MR. LANG: Michael Lang for Dugaboy Investment Trust, and I am in Dallas.

MR. PHILLIPS: Louis M. Phillips, Kelly Hart, representing -- sitting in, defending Mr. Raver,

representing Hunter Mountain Investment Trust, and I'm in New Mexico.

MR. LOIGMAN: This is Robert Loigman of Quinn, Emanuel representing the Highland Litigation Trustee. And I am in New York.

MR. CURRY: And this is David Curry from Okin, Adams, Bartlett & Curry, on behalf of the Dallas Foundation and Crown Global Insurance, LTD, and I am in Houston.

THE REPORTER: Mr. Raver, at this time please raise your right hand to be sworn in.

(The witness was sworn)

THE WITNESS: I do.

THE REPORTER: Thank you.

Please proceed, Counsel.

SHAWN RAVER,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. LANG:

Q. Please state your name for the record.
A. Shawn Raver.
Q. Mr. Raver, how are you employed?
A. I'm employed by CDM CFAD, LLC.
Q. Can you give me those letters again?
A. Yes. CDM CFAD, LLC.

Q. And what does that LLC do?
A. It is basically a charitable investment, you know, fund, for a lack of a better word. But, you know, charitable investment structure.
Q. And how is CDM CFAD, LLC related to Hunter Mountain?
MR. MORRIS: Objection to the form of the question.
A. So Hunter Mountain would be an affiliate several layers below, so indirect subsidiary.
Q. (By Mr. Lang) Were you involved in the negotiation of the proposed settlement agreement in the Highland bankruptcy between Highland Capital Management and Hunter Mountain?
A. Yes. In a supporting role.
Q. Okay. What did you do in a supporting role?
A. You know, just took part in, you know, some meetings, reviewed drafts of the settlement agreement, provided comments, if I had any. You know, that was about it.
Q. And are you aware of when the negotiations began?
A. I became involved early April, right at the beginning of April.
Q. When is the first time -- let me ask this: Who initiated the settlement discussions, if you know?

A. I don't know.
Q. Under the proposed settlement agreement, Hunter Mountain received a promissory note from Highland, the Dugaboy Note. Are you familiar with that?
A. I am.
Q. Okay. Has Hunter Mountain performed any valuation on the Dugaboy note?
A. We had engaged a valuation firm, and it is in process, but it's not finished as of today.
Q. Does Hunter Mountain have an estimated value of the Dugaboy note?
A. No.
Q. What about the Kirschner Claims? Does Hunter Mountain have an estimated value of the Kirschner Claims?
A. Not to my knowledge, no.
Q. Are you familiar with the structure of DAF, the DAF CLO HoldCo?
A. Generally, yes.
Q. Let me try and share my screen here. I hope you guys can see the flowchart. Do you see that?
A. I can.
Q. Is this an accurate depiction of the structure of the DAF, which is the Donor Advised Fund, as it exists today?
A. No.

MR. PHILLIPS: Hold on, Shawn. Objection, Mr. Lang, sort of like and even stronger than Mr. Morris's suggestion that we limit the scope of the deposition to your objection. The court has said that the objection is not -- your client is not able to supplement your objection. We're not going to allow it to be supplemented through evidence outside the scope of the objection. And, in fact, the objection doesn't relate to the Hunter Mountain side at all, that we can figure out. So let's not challenge the authority of Mr. Patrick to sign on behalf of Hunter Mountain. So while Mr. Morris was very lenient in allowing you additional -- in allowing you leeway, we're going to be less so because your objection doesn't address, as we read it, the entire Hunter Mountain side of the settlement.

MR. LANG: Okay. You know, my issue is somebody has raised this issue. And if you're trying to buy peace and to risk the whole thing being unwound because of some capacity issue, I was just trying to get an idea of what changed in this work chart.

MR. PHILLIPS: Well, you didn't raise that as a problem. And the party who raises the problem, we know does not have standing to raise anything in connection with this transaction.

MR. CURRY: Well, Louis, do we want to go

ahead and pause and get her on the phone, or do you want to just stop and redo this next week and waste everybody's time?

MR. PHILLIPS: No. I'm telling Mr. Lang that we're going to allow him some leeway but not much because his objection doesn't relate to any claim -- any suggestion or assertion about the Hunter Mountain side of the transaction.

MR. CURRY: Well, I don't want to do his job for him, but don't you think his client has an interest in not having to pay twice?

MR. PHILLIPS: I don't think -- well, his client -- whose client?

MR. CURRY: I said his. We're not being asked to anything. We're trying to make sure the money that's owed to us comes to us, but --

MR. PHILLIPS: I don't know who you are talking about having to pay twice.

MR. LANG: Let's sit through another deposition. That's all.

MR. PHILLIPS: I didn't hear that.

MR. CURRY: We'll just sit through another deposition. You're right.

MR. LANG: We'll sit through another deposition, that's all I was saying.

MR. PHILLIPS: I'm going to give you some leeway, but I'm just telling you, we're not going to allow for supplementation or amendment of the pleadings through evidence.
MR. LANG: Understood.
Q. (By Mr. Lang) So, Mr. Raver, can you tell me what has changed from the flowchart that you see in what I'm going to mark as Exhibit 1? Can you tell me what has changed between the organization chart as it exists here and how it looks today?
(Exhibit No. 1 marked)
A. The ownership of the Charitable DAF Fund, LP has changed.
Q. (By Mr. Lang) Okay. So on this flowchart, Charitable DAF HoldCo, Limited owned 100 percent of Charitable DAF Fund, LP, correct?
A. Yes.
Q. And Charitable DAF HoldCo, Limited no longer owns Charitable DAF Fund, LP?
A. Correct.
Q. Who owns Charitable DAF Fund, LP?
A. CDM CFAD, LLC.
Q. And does Charitable DAF HoldCo, Limited have any ownership interest, direct or indirect, you know, through whatever layers there are? Does it have any ownership

interest in Charitable DAF Fund, LP?
MR. PHILLIPS: Object to the form of the question.
A. No.
Q. (By Mr. Lang) Does Charitable DAF Fund, LP still own 100 percent of CLO HoldCo?
A. Yes.
Q. So, currently, just so I'm clear, the structure below -- does the structure below the Charitable DAF Fund, LP generally look the same?
A. Generally, yes, it looks the same.
Q. And then -- and then CDM CFAD, LLC now sits above Charitable DAF Fund, LP?
A. Yes.
Q. And who owns Hunter Mountain? Where do they fall?
A. They are below -- they are below CLO HoldCo, LTD. The direct owner of Hunter Mountain is Beacon Mountain, LLC.
Q. And who owns Beacon Mountain?
A. CLO HoldCo, LLC.
Q. There was a mention in Mr. Klos's deposition about a Liberty or Liberty HoldCo. Where do they fall?
A. It's another 100 percent subsidiary of CLO HoldCo, LTD.
Q. So they go across the line under CLO HoldCo?
MR. PHILLIPS: Object to the form of the

question.
A. Yeah, I think that's correct. Yeah.
Q. (By Mr. Lang) Which of -- which of the companies on the work chart on Exhibit 1 is in liquidation?
A. Charitable DAF HoldCo, LTD.
Q. And who currently owns, of the Hunter Mountain entities that are defined in the motion, Rand Advisors, LLC?
A. I'm sorry. Could you repeat that?
Q. There's a list of Hunter Mountain entities in the motion. They include Beacon Mountain, LLC, who we talked about, Rand Advisors, LLC, Rand PE Fund1, LLC, Rand PE Fund Management, Atlas IDF, LP, and Atlas IDF GP, LLC. Are you familiar with those entities?
MR. MORRIS: Object to the form of the question.
A. Yes.
Q. (By Mr. Lang) Okay. So who currently owns Rand Advisors, LLC?
A. Charitable DAF Holdings Corp.
Q. And who currently owns Rand PE Fund1, LP?
A. Atlas IDF, LP.
Q. And who currently owns Rand PE Fund Management, LLC?
A. Charitable DAF Holdings Corp.
Q. And Atlas IDF, LP, who owns that LP?

A. I think -- I always look at it as the sole limited partner as Crown Global, the insurance company on behalf of the two segregated annuity contracts.
Q. And then Atlas IDF GP, LLC is just a general partner of Atlas IDF?
A. Yes.
MR. LANG: I'll pass the witness to Mr. Curry.
MR. PHILLIPS: We have the same objection as Mr. Morris raised to Mr. Curry's participation. And in the spirit of cooperation, we will allow 15 minutes.
MR. CURRY: I'm going to take the time I need, Louis. If you instruct your witness to leave, we can either deal with it today, or we'll just re-notice him, so --
MR. PHILLIPS: That's fine. You can do whatever you do. I've told you what we're going to do, and then you can respond.
MR. CURRY: Are you saying you're going to leave in 15 minutes? Because I'll filibuster with you for 15 minutes and then completely have an obstruction issue.
MR. MORRIS: We're going to allow you to ask questions for 15 minutes and abide by the very agreement that your partner just did.
MR. CURRY: Well, that was on that deposition

back then, John. He didn't make that agreement as to this deposition, and we're not agreeing to the limitation. So objection noted. You guys do what you want to do.

EXAMINATION

BY MR. CURRY:

Q. Mr. Raver, my name is David Curry. I'm with the law firm of Okin, Adams. I represent the Dallas Foundation and Crown Global Life Insurance. Are you familiar with those two entities?

A. Generally, yes.

Q. As to Crown Global, I think we were just going through this chart in here. Are you aware of Crown Global's limited partnership interest in this structure?

A. No, not in the structure.

Q. No? How about in the Rand entity structures? So if you go down from Rand to Hunter Mountain.

MR. PHILLIPS: Object to the form of the question.

A. Yeah, can you be a little clearer? I don't know what you mean by Rand.

Q. (By Mr. Curry) Rand Advisors Fund.

A. So Rand Advisors is the investment manager for Atlas IDF, LP.

Q. Atlas IDF, LP, it's a limited partnership?

A. Yes.

Q. And who would be the limited partner?
A. Crown Global.
Q. Thank you. I want to back up just a little bit and just kind of get a little bit of background information, Mr. Raver. You say your current employer is CDM CFAD, LLC?
A. Yes.
Q. Is that correct?
A. Correct.
Q. When did you become employed there?
A. My employment below that -- or for that entity was in March of this year.
Q. March of '25?
A. Correct.
Q. Where were you employed before then?
A. The employment agreement was with Charitable DAF HoldCo, LTD, and it would cover all the DAF entities.
Q. So you were employed by Charitable DAF HoldCo, LTD?
A. Yes.
Q. The entity that's in liquidation in the Caymans?
A. Yes.
Q. Okay. What was your role there?
A. Chief Operating Officer and Associate General Counsel.
Q. Okay. So we talked earlier, and you said -- and

just looking here at Exhibit 1 that's up here, you said that this structure is no longer accurate. When did CDM CFAD acquire any interest in Charitable DAF Fund -- I mean, yeah, in the Charitable DAF Fund, LTD? I'm sorry. Alphabet soup. Sometimes it jumbles.

MR. MORRIS: Objection to the form of the question.

MR. PHILLIPS: Same objection.

MR. CURRY: Yeah. Let me rephrase it.

Q. (By Mr. Curry) I believe your testimony earlier was that Charitable DAF Fund, LP is owned by your employer, CDM CFAD, LLC. When did your employer acquire its interest in Charitable DAF Fund, LP?

A. I believe it was in March of 2025. I don't remember the exact date.

Q. Was it before or after you went to work for CDM CFAD?

A. I don't recall.

Q. You don't recall whether you were working for DAF HoldCo or CDM F -- we're just going to call it -- if we say CDM, can we all agree we know what we're talking about? It's a mouthful. Were you working at DAF HoldCo or at CDM when CDM acquired its interest in DAF Fund, LP?

A. I just don't remember the exact date. I don't know if it was concurrently or shortly thereafter that I

became --
Q. You were the CEO and General Counsel of DAF HoldCo, that was your testimony, correct?
MR. PHILLIPS: Objection; misstating prior testimony.
MR. CURRY: Then I'm giving him the opportunity to correct it.
MR. PHILLIPS: Objection to the form of the question.
Q. (By Mr. Curry) Up until March '25, your testimony earlier was that you were the CEO and General Counsel for DAF HoldCo, correct?
MR. PHILLIPS: Object to the form of the question.
Q. (By Mr. Curry) Correct? Mr. Raver, go ahead and answer out loud.
A. Correct.
Q. Thank you. Correct. And so you're telling me you don't know whether or not you went to work for the purchaser before or after the asset was sold?
A. I just don't remember the specific dates, and I don't know the --
(Speaking simultaneously)
Q. (By Mr. Curry) Did you represent DAF HoldCo as internal counsel? Did you participate in the negotiation of

the transaction transferring ownership of DAF Fund, LP from DAF HoldCo, LTD to CDM?

MR. MORRIS: Objection to the form of the question.

A. I was aware of it but I didn't -- I don't know if I -- I didn't participate, I guess, you know, in the restructuring.

Q. (By Mr. Curry) So as the CEO and General Counsel, your input was not sought into the structure of the transaction or the resulting structure? Is that your testimony, that you had no input?

MR. MORRIS: Objection to the form of the question.

A. I think you said CEO, which I wasn't.

Q. (By Mr. Curry) I'm sorry. COO.

A. Yeah, like I said, I was generally aware of it. I just don't recall, you know, how my input was requested. But, you know, I'm understandably aware of it.

Q. Did you -- as General Counsel, was it your responsibility to engage outside legal services?

MR. MORRIS: Objection to the form of the question.

MR. PHILLIPS: Objection to the form of the question.

Q. (By Mr. Curry) Let me -- all right -- Mr. Raver,

tell us your roles at DAF HoldCo. What were your titles?
MR. PHILLIPS: Objection to the form of the question.
A. Chief Operating Officer and Associate General Counsel.
Q. (By Mr. Curry) Okay. In your role as associate General Counsel at Charitable DAF HoldCo, LTD, were your responsibilities -- did they include engagement of outside counsel?
A. At times, yes.
Q. Yes? Were you asked to engage outside counsel in connection with the transaction between DAF HoldCo and CDM?
A. Not that I recall, no.
Q. Okay. Do you know if outside counsel was engaged?
A. I believe so, yes.
Q. Do you know who that was?
A. I don't recall. I'd have to -- yeah, I don't remember.
Q. Okay. Who was the General Counsel?
MR. MORRIS: Objection to the form of the question.
Q. (By Mr. Curry) Okay. So sitting here today, your testimony is that you did not participate in any of the negotiation or drafting of the documents underlying a transaction that occurred in or around March of '25 -- 2025

whereby Charitable DAF HoldCo, LTD -- well, I'm going to say it this way -- whereby CDM CFAD, LLC acquired the sole partnership or the sole ownership interest in Charitable DAF Fund? So that's the transaction. Mr. Raver, do you understand when I say transaction? Are we in agreement in what I'm talking about?

A. I believe so, yes.

Q. Okay. So your testimony today is that in your capacity as Chief Operating Officer or Associate General Counsel with Charitable DAF HoldCo, LTD, that you did not participate in the drafting or the negotiation of the transaction documents; is that correct?

A. I don't think I said I did not participate. Yeah, I don't know -- I was aware of the transaction. I was aware of the concerns and the reasoning for the transaction, and, you know, I was aware of the documents, but I didn't draft them. So I guess I participated. I just don't know how, you know, how much I participated. I was aware of the transaction and, you know, the reasoning for it.

Q. So you were aware of the transaction, aware of the reasoning for it -- and I'm not trying to misstate this; this is a question -- had some familiarity or engagement with the documents or -- because you said something about the documents. I didn't quite hear you. It was broken up. I'm trying to get that clarified.

A. Right. I was aware of the documentation and may have reviewed it. So I guess I participated to some level. I just -- you know, I didn't draft the documents. I didn't engage outside counsel for that transaction.
Q. At the time of that transaction, who owned CDM CFAD, LLC?
A. Tell me the transaction again. I mean, with the redemption or the change of ownership of Charitable DAF Fund?
Q. Yeah. The change in ownership.
A. At that point, CDM was owned 50 percent by Charitable DAF HoldCo, LTD and 50 percent by CDM -- or DFW Charitable Foundation. Sorry.
Q. Okay. And so it was a 50/50 ownership? How did Charitable DAF HoldCo, LTD inquire its interest in CDM CFAD?
MR. MORRIS: Objection to the form of the question.
A. My recollection is it contributed its interest in Charitable DAF Fund, LP.
Q. (By Mr. Curry) So before it contributed its 50 percent ownership interest to Charitable DAF HoldCo, LTD, was it 100 percent owned by DFW Charitable Foundation?
A. I don't recall.
Q. I'm sorry?
A. I don't recall.

Q. Okay. As we sit here today, who owns CDM CFAD?
A. DFW Charitable Foundation.
Q. Just to make sure -- there's a little bit of choppiness, Mr. Raver, when you first start talking. So I'm losing a lot of your -- the beginning of your answers. So if you can just try to be aware of that and speak a little bit more clearly. Was your answer there that currently, now, CDM CFAD is owned by DFW Charitable Foundation? Is that 100 percent?
A. Right. Yes. 100 percent.
Q. And I think you alluded to this earlier when you were asking me to clarify which transaction I was talking about, you mentioned the redemption. By that, did you mean the transaction in which the 50 percent ownership that Charitable DAF HoldCo had in CDM -- well, wait. Let me back up. When was the CDM CFAD transaction? When did that occur?
A. I believe it was the end of March of 2025.
Q. Okay. So let me back up because I want to make sure we're establishing a timeline correctly here.
So before -- before CDM CFAD contributed 50 percent interest into Charitable DAF HoldCo, right, we all agree that the structure for CLO HoldCo, LTD, would you agree, Mr. Raver, that the chart that's on the screen as Exhibit 1 was what was accurate --

MR. PHILLIPS: Object to the form of the question.
Q. (By Mr. Curry) -- before the CDM transaction?
A. Yes.
Q. Okay.
A. Well, let me correct. I think the GP was different. It was a different GP. It was not Charitable DAF GP, LLC at that time, so I need to correct that.
Q. Was it CDH GP, LTD?
A. Yes.
Q. And who formed that entity?
A. It would've been Cayman counsel. I don't know who specifically would have formed it.
Q. Okay. So noting that discrepancy -- there's another issue there -- so the GP's been replaced by a new entity, and -- but before Charitable DAF HoldCo acquires its 50 percent interest in CDM CFAD, it owned 100 percent Charitable DAF Fund, LP, correct?
A. Can you repeat that? I'm sorry.
Q. CDM CFAD, before it was inserted into the structure, so before it contributed its interest and before the March '25 transaction we were talking about before, Charitable DAF Fund, LP was owned 100 percent by Charitable DAF HoldCo, LTD, right, right here as it says on Exhibit 1?
A. Yes.

Q. That's correct as far as you know, right?
A. Yes.
Q. Do you have any reason to believe that it would have been incorrect at anytime before the transaction with CDM CFAD?
A. Not to my knowledge, no.
Q. No? Okay.
MR. PHILLIPS: David, we're three minutes over. I'm going to give you another two minutes. That will give you 20.
MR. CURRY: Thank you, Louis. I should be able to wrap it up. If you give me 25, we'll definitely be done without a fight.
Q. (By Mr. Curry) So, Mr. Raver, when CDM CFAD contributed its 50 percent interest into Charitable DAF, so at this point, Charitable DAF HoldCo would own CDM CFAD, 50 percent; it's jointly owned with DFW Charitable Foundation, correct?
A. Yes.
Q. And so when CDM CFAD contributed its 50 percent interest in itself, did it own any assets?
MR. PHILLIPS: Objection to the form of the question.
Q. (By Mr. Curry) Did CDM own any assets?
A. I'm not sure I understand the question.

Q. Do you know what assets are?
A. Yes.
Q. Do you know what ownership is?
A. Yes.
Q. Did CDM own any assets when it contributed its 50 percent interest into Charitable DAF HoldCo?
A. I don't know.
Q. Okay. CDM, at some point, acquired 100 percent ownership of Charitable DAF Fund, LP, correct?
A. Yes.
Q. Other than its ownership of Charitable DAF Fund, LP, does CDM own any assets, any other assets?
A. No.
Q. I'm sorry. I didn't hear you.
A. No.
Q. No? Okay. So initially -- and I want to make sure I have the steps correct. So initially, we have this chart up here, Exhibit 1. We have Charitable DAF HoldCo. It holds 100 percent Charitable DAF Fund. Charitable DAF HoldCo acquires a 50 percent interest in CDM CFAD and then transfers its interest of Charitable DAF Fund, LP to CDM. And at the end of that transaction, if we are looking back at Exhibit 1, and I want to make sure -- I think I understand this correctly, but I just want to make sure -- that Charitable DAF HoldCo, LTD, once -- so it now owns CDM

CFAD 50 percent, right, and no longer owns an interest in Charitable DAF Fund, LP; is that correct? That's the change that occurred? Before the redemption -- I understand there's another transaction. But before --
MR. PHILLIPS: Object to the form.
Q. (By Mr. Curry) -- the redemption, the structure would have been Charitable DAF HoldCo, LTD owning CDM CFAD, which then held the rights to Charitable DAF Fund, LP. Is that the resulting structure?
A. Yes.
Q. Yes? Okay. So the transaction through which Charitable DAF HoldCo, LTD transferred its interest, you said you were familiar with. What was the consideration that was received by DAF HoldCo for the transfer of the Charitable DAF Fund, LP interest?
A. It would've been the interest in CDM CFAD, LLC.
Q. Right. So they gave 50 percent of all their assets, what they didn't return?
MR. PHILLIPS: Object to the form of the question.
A. I'm not sure I follow. They contributed --
Q. Well, let me walk you through it. DAF owned -- DAF Fund HoldCo owned Fund, LP 100 percent. When CDM was inserted in between it, it owned 50 percent of CDM. The other 50 percent was owned by DFW. So now, because it only

owns 50 percent of the company that now owns all of the assets, it owns 50 percent of all the assets. Is that not correct?
MR. PHILLIPS: Object to the form of the question.
A. Yeah. I guess I just don't understand your question.
Q. (By Mr. Curry) What was the consideration given by CDM to DAF HoldCo in exchange for DAF HoldCo's 100 percent interest in DAF Fund, LP? What consideration was provided?
MR. PHILLIPS: Objection to the form of the question.
A. Again, my recollection, and I don't -- clearly don't recall all the steps of the restructuring, but they got an LLC interest for -- in consideration for its contribution.
Q. (By Mr. Curry) An LLC interest in -- sir, help me understand --
MR. PHILLIPS: 24-minute mark, David, so one more minute.
MR. CURRY: Well, sorry. We need some follow-up here.
MR. MORRIS: You're going to have one more minute. That's what we agreed to.

MR. PHILLIPS: Yeah. One more minute.

MR. CURRY: Well, we can press pause and call Judge Jernigan, or you guys can leave, and we'll note on the record that you're leaving over --

MR. MORRIS: You can do whatever you want. We gave you 15. Then we gave you 20. You said you only needed 25. We're done. One more minute. Go ahead.

MR. CURRY: Well, your witness is kind of giving me a little bit of issue here. And I notice that as we get to the questions that are important to what you guys are objecting on us, you're being the most obstructionist. So if you want to continue that, John, then I'm going to assume you're waving your argument to our standing.

(Speaking simultaneously)

MR. MORRIS: Don't be ridiculous, number one.

MR. CURRY: It's absurd as you're being, John.

MR. MORRIS: What I'm trying to do, David, is to abide by the very agreement that we just reached when you said 25 minutes would be enough. I'm just looking at the clock.

MR. CURRY: I just assumed that he would answer the questions. I didn't realize he would say he didn't know what assets were or what it meant to own something. We had to walk through a few more things.

MR. MORRIS: You've got 60 seconds. Go ahead.
MR. CURRY: Yeah.
Q. (By Mr. Curry) You -- Mr. Raver, you said that it was your understanding that what DAF HoldCo received in exchange for its 100 percent ownership of DAF Fund, LP, that the only thing it received was the LLC interest in CDM CFAD?
MR. PHILLIPS: Objection to form the question.
Q. (By Mr. Curry) That's it? That's the consideration? Because I'm trying to make sense of what you said.
A. I'm sorry. Can you repeat the question again? I'm not trying to delay. In all honesty --
Q. It's the same question that I've been asking that I'm trying to get answered.
A. In all honesty I didn't --
(Speaking simultaneously)
MR. PHILLIPS: All right. Let him finish. He's trying to answer.
MR. CURRY: Sorry. Sorry.
A. Yeah, in all honesty, I didn't review this restructuring, for purposes of your questioning because Crown Global has never had any ownership in this structure. So I guess I just wasn't expecting the questions.

Q. (By Mr. Curry) Well, my other client does. Let's back this up. So you worked at Charitable DAF HoldCo, LTD, right?
MR. MORRIS: Last question.
A. I did.
Q. (By Mr. Curry) It's a limited partnership, correct?
A. I think it's an exempted limited company.
Q. Limited company? Okay. Are you familiar with the limited company agreement?
MR. MORRIS: John --
Q. (By Mr. Curry) Are you familiar with the limited company agreement?
A. Generally, yes.
Q. Okay. Who -- the limited company economic interest, the participation interest, who --
MR. MORRIS: Louis, I really don't want to do this all day. It's your witness, but this is not --
MR. PHILLIPS: Yeah. I think we're done.
MR. CURRY: Hey, guys, you agreed to make him available for two hours, and it's only been an hour.
MR. PHILLIPS: Not to you.
MR. MORRIS: We didn't reach any agreement with you because you didn't have the courtesy of contacting us all --

MR. PHILLIPS: Right.
MR. CURRY: Yeah, John, because you've been assuming that we were affiliated with people that we're not. And you've been talking to them instead of getting back to us --
(Speaking simultaneously)
MR. MORRIS: They -- they --
MR. CURRY: -- you could have reached out to us.
MR. MORRIS: I sent you an e-mail earlier this week that you failed to respond to, true?
MR. CURRY: You're right. You asked me to file something and I haven't filed it. I'll get it filed.
(Speaking simultaneously)
MR. MORRIS: You don't know how -- you don't know how to serve a subpoena? Is this new to you? You don't know how to serve a subpoena?
(Speaking simultaneously)
MR. CURRY: I'll tell you what --
MR. MORRIS: You don't know how to reach out and say I'd like to take a deposition? You can say, I'd like to take a deposition. You can see --
(Speaking simultaneously)
MR. CURRY: You know what? That's fine, guys. I'll tell you what. Here's what we'll do --

(Speaking simultaneously)
MR. MORRIS: We're done.
MR. PHILLIPS: Yeah. Clearly -- clearly this a --
MR. CURRY: Fine. I didn't notice this deposition. I didn't participate in it. We'll see you guys Monday and Tuesday. We'll see you Monday and Tuesday.
And we're not doing it by Zoom, Louis. You are coming to Dallas.
MR. MORRIS: Right. Good luck.
MR. PHILLIPS: Good luck with that.
MR. CURRY: Hey, Louis, there's full knowledge of all this that's out there, right?
MR. MORRIS: Hey, let's not do this. I'm shutting this down.
MR. CURRY: I would assume -- hey, Louis. Louis, stop. This is a question for you.
(Speaking simultaneously)
MR. MORRIS: We're shutting this down. Madame Court Reporter, let's go off the record, please.
(Speaking simultaneously)
MR. PHILLIPS: Madame Court Reporter, let's go off the record, please.
MR. CURRY: Louis -- yeah, we can go off the record. Absolutely. Go off the record.

THE REPORTER: We are off the record at 12:19.

(Proceedings terminated at 12:19 p.m.)

CHANGES AND SIGNATURE

WITNESS NAME: SHAWN RAVER DATE: JUNE 20, 2025

PAGE LINE CHANGE REASON

Signature: ______________________ Date: ____________

I, SHAWN RAVER, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

______________________________
SHAWN RAVER

THE STATE OF _____________)
COUNTY OF ________________)

Before me, _________________________ on this day personally appeared SHAWN RAVER, known to me (or proved to me under oath or through ____________________, (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __________ day of ____________________, 2025.

_______________________________
Notary Public in and for
The State of __________________

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE ) Chapter 11
)
HIGHLAND CAPITAL MANAGEMENT, L.P., ) Case No. 19-34054-SGJ11
)
REORGANIZED DEBTOR. )

************************************************************
REPORTER'S CERTIFICATION
ORAL DEPOSITION OF SHAWN RAVER
JUNE 20, 2025

I, Angelica G. Robles, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, SHAWN RAVER, was duly sworn by the officer and the transcript of the oral deposition is a true record of the testimony given by the witness;

I further certify that pursuant to FRCP Rule 30(f)(1) that the signature of the deponent:

XXX was requested by the deponent or a party before the completion of the deposition and that the signature is to be before any notary public and returned within 30 days from the date of receipt of the transcript. If returned, the attached Changes and Signature Pages contains any changes and the reasons therefore;

___ was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for,

related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 21st day of June, 2025.

ANGELICA G. ROBLES, TEXAS CSR 11809
Expiration Date: 02-28-2027
Esquire Deposition Solutions
1700 Pacific Avenue, Suite 1000
Dallas, Texas 75204
Firm Registration No. 286

**1**

**1** 11:8,11 13:4 17:1 23:25 24:24 26:18,23

**100** 11:15 12:6,22 22:22 23:9,10 24:17,23 26:8,19 27:23 28:10 30:6

**11809** 5:11

**11:35** 5:3

**12:19** 34:2,3

**15** 14:11,20, 21,23 29:6

**19-34054-SGJ11** 5:9

**2**

**20** 25:10 29:6

**2025** 5:3 17:14 20:25 23:18

**20th** 5:3

**24-minute** 28:20

**25** 16:12 18:10 20:25 24:22 25:12 29:7,20

**5**

**50** 22:11,12, 21 23:14, 22 24:17 25:15,17, 20 26:6, 20 27:1, 17,24,25 28:1,2

**50/50** 22:14

**6**

**60** 30:1

**A**

**a.m.** 5:3

**abide** 14:23 29:19

**Absolutely** 33:25

**absurd** 29:16

**accurate** 8:22 17:2 23:25

**acquire** 17:3,12

**acquired** 17:23 21:2 26:8

**acquires** 24:16 26:20

**Adams** 6:7 15:7

**additional** 9:12

**address** 9:13

**administering** 5:11

**Advised** 8:23

**Advisors** 13:7,11, 18 15:21, 22

**affiliate** 7:9

**affiliated** 32:3

**agree** 17:21 23:23,24

**agreed** 28:25 31:20

**agreeing** 15:2

**agreement** 7:12,18 8:2 14:23 15:1 16:15 21:5 29:19 31:10,13, 23

**ahead** 10:1 18:15 29:7 30:2

**allowing** 9:12

**alluded** 23:11

**Alphabet** 17:4

**amendment** 11:3

**Angelica** 5:10

**annuity** 14:3

**answers** 23:5

**anytime** 25:4

**appearances** 5:16

**April** 7:22,23

**argument** 29:13

**assertion** 10:7

**asset** 18:20

**assets** 25:21,24 26:1,5,12 27:18 28:2 29:24

**associate** 16:23 20:4,6 21:9

**assume** 29:13 33:16

**assumed** 29:22

**assuming** 32:3

**Atlas** 13:12,21, 25 14:4,5 15:23,24

**attestation** 5:13

**attorney** 5:16

**authority** 9:10

**aware** 7:21 15:12 19:5,16, 18 21:14, 16,18,20 22:1 23:6

**B**

**back** 15:1 16:3 23:15,19 26:22 31:2 32:4

**background** 16:4
**bankruptcy** 5:7 7:13
**Bartlett** 6:7
**basically** 7:2
**Beacon** 12:17,18 13:10
**began** 7:21
**beginning** 7:23 23:5
**behalf** 6:7 9:10 14:2
**bit** 16:3,4 23:3,7 29:9
**broken** 21:24
**buy** 9:17

C

**call** 17:20 29:2
**capacity** 9:19 21:9
**Capital** 5:8,20 7:13
**case** 5:8,9
**Cayman** 24:12
**Caymans** 16:20
**CDH** 24:9
**CDM** 6:23,25 7:5 11:22 12:12 16:5 17:2,12, 17,20,21, 22,23 19:2 20:12 21:2 22:6,11, 12,15 23:1,8, 15,16,21 24:3,17, 20 25:5, 14,16,20, 24 26:5, 8,12,20, 21,25 27:7,16, 23,24 28:9 30:7
**Central** 5:4
**CEO** 18:2,11 19:8,14
**CFAD** 6:23,25 7:5 11:22 12:12 16:5 17:2,12, 17 21:2 22:6,15 23:1,8, 16,21 24:17,20 25:5,14, 16,20 26:20 27:1,7,16 30:7
**challenge** 9:9
**change** 22:8,10 27:2
**changed** 9:20 11:7,9,13
**charitable** 7:2,4 11:12,15, 16,18,19, 21,23 12:1,5,9, 13 13:5, 19,24 16:15,17 17:3,4, 11,13 20:7 21:1,3,10 22:8,12, 13,15,19, 21,22 23:2,8, 15,22 24:7,16, 18,23 25:15,16, 17 26:6, 9,11,18, 19,21,25 27:2,7,8, 12,15 31:2
**chart** 9:20 11:9 13:4 15:12 23:24 26:18
**Chief** 16:23 20:4 21:9
**choppiness** 23:4
**claim** 5:21 10:6
**Claims** 8:13,14
**clarified** 21:25
**clarify** 23:12
**clear** 12:8
**clearer** 15:19
**client** 9:5 10:10,13 31:1
**CLO** 8:17 12:6,16, 19,22,24 23:23
**clock** 29:21
**comments** 7:19
**companies** 13:3
**company** 14:2 28:1 31:8,9, 10,13,15
**completely** 14:21
**concerns** 21:15
**concurrently** 17:25
**connection** 9:23 20:12
**consideration** 27:13 28:8,10, 16 30:11
**contacting** 31:24
**continue** 29:12
**contracts** 14:3
**contributed** 22:18,20 23:21 24:21 25:15,20 26:5 27:21
**contribution** 28:17
**COO** 19:15
**cooperation** 14:11
**Corp** 13:19,24
**correct** 11:16,20 13:2 16:7,8,13

18:3,7, 12,15,17, 18 21:12 24:6,8,18 25:1,18 26:9,17 27:2 28:3 31:7

**correctly**
23:20 26:24

**counsel**
5:14 6:15 16:24 18:2,11, 25 19:8, 19 20:5, 7,9,11, 14,19 21:10 22:4 24:12

**court**
5:7 9:4 33:20,22

**courtesy**
31:24

**cover**
16:16

**Crown**
6:8 14:2 15:8,11, 12 16:2 30:24

**CSR**
5:10

**current**
16:5

**Curry**
6:6,7 9:25 10:9,14, 22 14:8, 12,19,25 15:5,6,21 17:9,10 18:6,10, 15,24 19:8,15, 25 20:6, 22 22:20 24:3 25:11,14, 24 27:6 28:8,18, 22 29:2, 8,16,22 30:3,4, 10,21 31:1,6, 12,20 32:2,8, 12,19,24 33:5,12, 16,24

**Curry's**
14:10

**D**

**DAF**
8:16,17, 23 11:12, 15,16,18, 19,21,23 12:1,5,9, 13 13:5, 19,24 16:15,16, 17 17:3, 4,11,13, 19,22,23 18:2,12, 24 19:1,2 20:1,7,12 21:1,3,10 22:8,12, 15,19,21 23:15,22 24:8,16, 18,23,24 25:15,16 26:6,9, 11,18,19, 21,25 27:2,7,8, 12,14,15, 22,23 28:9,10 30:5,6 31:2

**Dallas**
5:5,8,23 6:7 15:7 33:9

**date**
5:3 17:15,24

**dates**
18:21

**David**
6:6 15:6 25:8 28:20 29:18

**day**
31:18

**deal**
14:14

**defending**
5:25

**defined**
13:7

**delay**
30:14

**depiction**
8:22

**deposition**
5:4,12 9:3 10:20,23, 25 12:20 14:25 15:2 32:21,22 33:6

**DFW**
22:13,22 23:2,8 25:17 27:25

**direct**
11:24 12:17

**discrepancy**
24:14

**discussions**
7:25

**District**
5:7

**Division**
5:8

**documentation**
22:1

**documents**
20:24 21:12,16, 23,24 22:3

**Donor**
8:23

**draft**
21:16 22:3

**drafting**
20:24 21:11

**drafts**
7:18

**Dugaboy**
5:22 8:4, 7,11

**duly**
6:17

**E**

**e-mail**
32:10

**earlier**
16:25 17:10 18:11 23:11 32:10

**early**
7:22

**economic**
31:15

**Emanuel**
6:4

**employed**
6:22,23 16:9,14, 17

**employer**
16:5 17:11,12

**employment**
16:10,15

**end**
23:18 26:22

**engage**
19:20 20:11 22:4

**engaged**
8:8 20:14

**engagement**

20:8 21:22
**entire** 9:14
**entities** 13:7,9,13 15:9 16:16
**entity** 15:15 16:10,20 24:11,16
**Esquire** 5:12
**establishing** 23:20
**estimated** 8:10,14
**everybody's** 10:2
**evidence** 9:6 11:4
**exact** 17:15,24
**EXAMINATION** 6:18 15:4
**exchange** 28:9 30:6
**exempted** 31:8
**exhibit** 11:8,11 13:4 17:1 23:25 24:24 26:18,23
**exists** 8:23 11:9
**expecting** 30:25

**F**

**fact** 9:7
**failed** 32:11
**fall** 12:15,21
**familiar** 8:4,16 13:13 15:8 27:13 31:9,12
**familiarity** 21:22
**fight** 25:13
**figure** 9:9
**file** 32:13
**filed** 32:13
**filibuster** 14:20
**fine** 14:16 32:24 33:5
**finish** 30:19
**finished** 8:9
**firm** 8:8 15:7
**flowchart** 8:20 11:7,14
**follow** 27:21
**follow-up** 28:23
**form** 7:7 12:2,25 13:14 15:17 17:6 18:8,13 19:3,12,21,23 20:2,20 22:16 24:1 25:22 27:5,19 28:4,12 30:8
**formed** 24:11,13
**Foundation** 6:8 15:7 22:13,22 23:2,8 25:18
**full** 33:12
**fund** 7:3 8:23 11:12,16,19,21 12:1,5,9,13 13:11,22 15:21 17:3,4,11,13,23 19:1 21:4 22:9,19 24:18,23 26:9,11,19,21 27:2,8,15,23 28:10 30:6
**Fund1** 13:11,20

**G**

**gave** 27:17 29:6
**general** 14:4 16:23 18:2,11 19:8,19 20:4,7,19 21:9
**generally** 8:18 12:10,11 15:10 19:16 31:14
**give** 6:24 11:1 25:9,10,12
**giving** 18:6 29:9
**Global** 6:8 14:2 15:8,11 16:2 30:24
**Global's** 15:12
**Good** 33:10,11
**GP** 13:12 14:4 24:6,7,8,9
**GP's** 24:15
**guess** 19:6 21:17 22:2 28:6 30:25
**guys** 8:20 15:3 29:3,10 31:20 32:25 33:6

**H**

**hand** 6:11
**Hart** 5:24
**hear** 10:21 21:24 26:14
**held** 5:6 27:8
**hey** 31:20 33:12,14,16
**Highland** 5:8,20,21 6:4 7:13 8:3
**Hold** 9:1
**Holdco** 8:17 11:15,18,

23 12:6, 16,19,21, 22,24 13:5 16:16,17 17:20,22 18:3,12, 24 19:2 20:1,7,12 21:1,10 22:12,15, 21 23:15, 22,23 24:16,24 25:16 26:6,18, 20,25 27:7,12, 14,23 28:9 30:5 31:2

**Holdco's** 28:9

**Holdings** 13:19,24

**holds** 26:19

**honesty** 30:14,17, 22

**hope** 8:19

**hour** 31:21

**hours** 31:21

**Houston** 6:9

**Hunter** 6:1 7:6, 9,14 8:3, 6,10,13 9:8,11,14 10:7 12:15,17 13:6,9 15:16

**I**

**idea** 9:19

**identified** 5:13

**IDF** 13:12,21, 25 14:4,5 15:23,24

**important** 29:10

**include** 13:10 20:8

**incorrect** 25:4

**indirect** 7:10 11:24

**information** 16:4

**initially** 26:16,17

**initiated** 7:25

**input** 19:9,11, 17

**inquire** 22:15

**inserted** 24:20 27:24

**instruct** 14:13

**insurance** 6:8 14:2 15:8

**interest** 10:10 11:24 12:1 15:13 17:3,12, 23 21:3 22:15,18, 21 23:22 24:17,21 25:15,21 26:6,20, 21 27:1, 12,15,16 28:10,16, 18 30:7 31:16

**internal** 18:25

**investment** 5:23 6:1 7:2,4 15:22

**involved** 7:11,22

**issue** 9:16,17, 19 14:21 24:15 29:9

**J**

**Jernigan** 29:3

**job** 10:9

**John** 5:19 15:1 29:12,17 31:11 32:2

**jointly** 25:17

**Jones** 5:20

**Judge** 29:3

**jumbles** 17:5

**June** 5:3

**K**

**Kelly** 5:24

**kind** 16:4 29:8

**Kirschner** 8:13,14

**Klos's** 12:20

**knowledge** 8:15 25:6 33:13

**L**

**lack** 7:3

**Lang** 5:22 6:19 7:11 9:2, 16 10:4, 19,24 11:5,6,14 12:5 13:3,17 14:7

**law** 15:7

**layers** 7:10 11:25

**leave** 14:13,20 29:3

**leaving** 29:4

**leeway** 9:12 10:5 11:2

**legal** 19:20

**lenient** 9:11

**letters** 6:24

**level** 22:2

**Liberty** 12:21

**Life** 15:8

**limit** 9:3

**limitation** 15:2

**limited** 11:15,18, 23 14:1 15:13,24 16:1 31:6,8,9, 10,12,15

**liquidation** 13:4

16:20

**list**
13:9

**Litigation**
6:4

**LLC**
6:23,25 7:1,5 11:22 12:12,17, 19 13:7, 10,11,12, 18,23 14:4 16:5 17:12 21:2 22:6 24:8 27:16 28:16,18 30:7

**located**
5:5,21

**locations**
5:17

**Loigman**
6:3

**longer**
11:18 17:2 27:1

**losing**
23:5

**lot**
23:5

**loud**
18:16

**Louis**
5:24 9:25 14:13 25:11 31:17 33:8,12, 16,17,24

**LP**
5:9,20 11:12,16, 19,21 12:1,5, 10,13 13:12,20, 21,25 15:23,24 17:11,13, 23 19:1 22:19 24:18,23 26:9,12, 21 27:2, 8,15,23 28:10 30:6

**luck**
33:10,11

**M**

**Madame**
33:20,22

**make**
10:15 15:1 23:3,19 26:16,23, 24 30:11 31:20

**Management**
5:9,20 7:13 13:12,22

**manager**
15:22

**March**
16:11,12 17:14 18:10 20:25 23:18 24:22

**mark**
11:8 28:20

**marked**
11:11

**meant**
29:24

**meetings**
7:18

**mention**
12:20

**mentioned**
23:13

**Mexico**
6:2

**Michael**
5:22

**minute**
28:21,25 29:1,7

**minutes**
14:11,20, 21,23 25:8,9 29:20

**misstate**
21:21

**misstating**
18:4

**Monday**
33:7

**money**
10:15

**Morris**
5:19 7:7 9:11 13:14 14:10,22 17:6 19:3,12, 21 20:20 22:16 28:24 29:5,15, 18 30:1 31:4,11, 17,23 32:7,10, 15,20 33:2,10, 14,19

**Morris's**
9:2

**motion**
13:7,10

**Mountain**
6:1 7:6, 9,14 8:3, 6,10,14 9:8,11,14 10:7 12:15,17, 18 13:6, 9,10 15:16

**mouthful**
17:22

**N**

**needed**
29:7

**negotiation**
7:12 18:25 20:24 21:11

**negotiations**
7:21

**Northern**
5:7

**note**
8:3,4,7, 11 29:3

**noted**
15:3

**notice**
29:9 33:5

**noting**
24:14

**number**
29:15

**O**

**oath**
5:11

**Object**
12:2,25 13:14 15:17 18:13 24:1 27:5,19 28:4

**objecting**
29:11

**objection**
7:7 9:1, 4,5,7,8, 13 10:6 14:9 15:3 17:6,8 18:4,8 19:3,12, 21,23 20:2,20 22:16 25:22 28:12 30:8

**obstruction**
14:21

**obstructionist**
29:11

**occur**
23:17

**occurred**
20:25 27:3

**Officer**
16:23 20:4 21:9

**Okin**
6:7 15:7

**Operating**
16:23 20:4 21:9

**opportunity**
18:7

**oral**
5:4

**organization**
11:9

**owed**
10:16

**owned**
11:15 17:11 22:5,11, 22 23:8 24:17,23 25:17 27:22,23, 24,25

**owner**
12:17

**ownership**
11:12,24, 25 19:1 21:3 22:8,10, 14,21 23:14 26:3,9,11 30:6,24

**owning**
27:7

**owns**
11:18,21 12:15,18 13:6,17, 20,22,25 23:1 26:25 27:1 28:1,2

**P**

**P-R-O-C-E-E-D-I-N-G-S**
5:1

**p.m.**
34:3

**Pachulski**
5:19

**part**
7:17

**participate**
18:25 19:6 20:23 21:11,13 33:6

**participated**
21:17,18 22:2

**participation**
14:10 31:16

**parties**
5:15

**partner**
14:2,5,24 16:1

**partnership**
15:13,24 21:3 31:6

**party**
9:22

**pass**
14:7

**Patrick**
9:10

**pause**
10:1 29:2

**pay**
10:11,18

**PE**
13:11,20, 22

**peace**
9:18

**people**
32:3

**percent**
11:15 12:6,22 22:11,12, 21,22 23:9,10, 14,22 24:17,23 25:15,17, 20 26:6, 8,19,20 27:1,17, 23,24,25 28:1,2,10 30:6

**performed**
8:6

**Phillips**
5:24 9:1, 21 10:4, 12,17,21 11:1 12:2,25 14:9,16 15:17 17:8 18:4,8,13 19:23 20:2 24:1 25:8,22 27:5,19 28:4,12, 20 29:1 30:8,19 31:19,22 32:1 33:3,11, 22

**phone**
10:1

**Plaintiff's**
5:16

**pleadings**
11:3

**point**
22:11 25:16 26:8

**press**
29:2

**prior**
18:4

**problem**
9:22

**proceed**
6:15

**proceedings**
5:6 34:3

**process**
8:9

**promissory**
8:3

**proposed**
7:12 8:2

**provided**
7:19 28:11

**purchaser**
18:19

**purposes**
30:23

**Q**

**question**
7:8 12:3 13:1,15 15:18 17:7 18:9,14 19:4,13, 22,24 20:3,21 21:22 22:17 24:2 25:23,25 27:20 28:5,7,13 30:9,13, 15 31:4 33:17

**questioning**
30:23

**questions**
14:23 29:10,23 30:25

**Quinn**
6:4

R

**raise** 6:11 9:21,23
**raised** 9:17 14:10
**raises** 9:22
**Rand** 13:7,11, 17,20,22 15:15,16, 20,21,22
**Raver** 5:5,25 6:10,16, 21,22 11:6 15:6 16:5 18:15 19:25 21:4 23:4,24 25:14 30:4
**re-notice** 14:14
**reach** 31:23 32:20
**reached** 29:19 32:8
**read** 9:14
**realize** 29:23
**reason** 25:3
**reasoning** 21:15,19, 21
**recall** 17:18,19 19:17 20:13,17 22:23,25 28:15
**received** 8:3 27:14 30:5,7
**recollection** 22:18 28:14
**record** 5:2,17 6:20 29:4 33:20,23, 25 34:1
**redemption** 22:8 23:13 27:3,6
**redo** 10:2
**relate** 9:8 10:6
**related** 7:5
**remember** 17:15,24 18:21 20:18
**remote** 5:4
**remotely** 5:12
**repeat** 13:8 24:19 30:13
**rephrase** 17:9
**replaced** 24:15
**Reporter** 5:2 6:10, 14 33:20, 22 34:1
**reporting** 5:11
**represent** 15:7 18:24
**representing** 5:25 6:1, 4
**requested** 19:17
**respond** 14:18 32:11
**responsibilities** 20:8
**responsibility** 19:20
**restructuring** 19:7 28:15 30:23
**resulting** 19:10 27:9
**return** 27:18
**review** 30:22
**reviewed** 7:18 22:2
**ridiculous** 29:15
**rights** 27:8
**risk** 9:18
**Robert** 6:3
**Robles** 5:10
**role** 7:15,16 16:22 20:6
**roles** 20:1

S

**scope** 9:3,7
**screen** 8:19 23:24
**seconds** 30:1
**segregated** 14:3
**sense** 30:11
**serve** 32:16,17
**services** 19:20
**settlement** 7:12,18, 25 8:2 9:15
**share** 8:19
**Shawn** 5:5 6:16, 21 9:1
**shortly** 17:25
**shutting** 33:15,19
**side** 9:8,14 10:7
**sign** 9:10
**simultaneously** 18:23 29:14 30:18 32:6,14, 18,23 33:1,18, 21
**sir** 28:18
**sit** 10:19,22, 24 23:1
**sits** 12:12
**sitting** 5:25 20:22
**sold** 18:20
**sole** 14:1 21:2,3

**Solutions** 5:12
**sort** 9:2
**sought** 19:9
**soup** 17:4
**speak** 23:6
**speaking** 18:23 29:14 30:18 32:6,14, 18,23 33:1,18, 21
**specific** 18:21
**specificall y** 24:13
**spirit** 14:11
**standing** 9:23 29:13
**Stang** 5:19
**start** 23:4
**starting** 5:15
**state** 5:16 6:20
**States** 5:7
**steps** 26:17 28:15
**stop** 10:2 33:17
**stronger** 9:2
**structure** 7:4 8:16, 22 12:8,9 15:13,14 17:2 19:9,10 23:23 24:21 27:6,9 30:24
**structures** 15:15
**subpoena** 32:16,17
**subsidiary** 7:10 12:22
**suggestion** 9:3 10:6
**supplement** 9:5
**supplementa tion** 11:3
**supplemente d** 9:6
**supporting** 7:15,16
**swear** 5:17
**sworn** 6:11,12, 17

**T**

**talked** 13:10 16:25
**talking** 10:18 17:21 21:6 23:4,12 24:22 32:4
**telling** 10:4 11:2 18:18
**terminated** 34:3
**testified** 6:17
**testimony** 17:10 18:3,5,10 19:11 20:23 21:8
**Texas** 5:5,7,10
**thing** 9:18 30:7
**things** 29:25
**time** 5:3,4 6:10 7:24 10:3 14:12 22:5 24:8
**timeline** 23:20
**times** 20:10
**titles** 20:1
**today** 8:9,24 11:10 14:14 20:22 21:8 23:1
**Today's** 5:3
**told** 14:17
**transaction** 9:24 10:8 19:1,10 20:12,25 21:4,5, 12,14,15, 19,20 22:4,5,7 23:12,14, 16 24:3, 22 25:4 26:22 27:4,11
**transfer** 27:14
**transferred** 27:12
**transferrin g** 19:1
**transfers** 26:21
**true** 32:11
**Trust** 5:21,23 6:1
**Trustee** 6:4
**Tuesday** 33:7

**U**

**underlying** 20:24
**understand** 21:5 25:25 26:24 27:3 28:6,19
**understanda bly** 19:18
**understandi ng** 30:5
**Understood** 11:5
**United** 5:6
**unwound** 9:18

**V**

**valuation** 8:6,8

**W**

**wait** 23:15
**walk** 27:22 29:25
**waste**

10:2

**waving**
29:13

**week**
10:2
32:11

**witnesses**
5:13

**word**
7:3

**work**
9:20 13:4
17:16
18:19

**worked**
31:2

**working**
17:19,22

**would've**
24:12
27:16

**wrap**
25:12

**Y**

**year**
16:11

**York**
5:21 6:5

**Z**

**Ziehl**
5:20

**Zoom**
33:8

**Exhibit 56-A**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

--------------------------

In Re: Case No. 19-34054-sgj11

HIGHLAND CAPITAL MANAGEMENT,

L.P.,

Debtor. Chapter 11

--------------------------X.

REMOTE VIDEO-RECORDED DEPOSITION of

JULIE DIAZ

Sunday, June 22, 2025

1:37 p.m. Central Time

Reported Stenographically by:

Gail L. Inghram,

BA, RDR, CRR, RSA, CA-CSR No. 8635

WHEREUPON, the remote video-recorded deposition of JULIE DIAZ was held via video-conferencing on Sunday, June 22, 2025, beginning at approximately 1:37 p.m. Central Time, the proceedings being recorded stenographically by Gail Inghram, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Shorthand Reporter, and transcribed under her direction, there being present:

A P P E A R A N C E S:

[All parties appeared via remote videoconferencing.]

On behalf of Highland Capital Management, and the Highland Claimant Trust:

JOHN MORRIS, ESQ.
jmorris@pszjlaw.com
GREGORY V. DEMO, ESQ.
gdemo@pszjlaw.com
JEFFREY POMERANTZ, ESQ.
jpomerantz@pszjlaw.com
HAYLEY WINOGRAD, ESQ.
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES
780 Third Avenue, 34th Floor
New York, New York 10017-2024
310.277.6910

On behalf of Highland Litigation Trustee:

ROBERT S. LOIGMAN, ESQ.
robertloigman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue 22nd Floor
New York, New York 10010
212.849.7615

A P P E A R A N C E S (Cont'd):

On behalf of Defendant Dallas Foundation and Crown Global Life Insurance:

MATTTHEW OKIN, ESQ.
mokin@okinadams.com
DAVID CURRY, ESQ.
dcurry@okinadams.com
OKIN ADAMS BARTLETT CURRY LLP
1113 Vine Street, Suite 240
Houston, Texas 77002
713.228.4100

On behalf of Defendant Dugaboy Investment Trust:

MICHAEL LANG, ESQ.
mlang@cwl.law.com
CRAWFORD WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
214.817.4500

A P P E A R A N C E S (Cont'd):

On Behalf of Hunter Mountain Investment Trust:

LOUIS M. PHILLIPS, ESQ.

lphillips@kellyhart.com

AMELIA L. HURT, ESQ.

ahurt@kellyhart.com

KELLY HART & HALLMAN LLP

301 Main Street, Suite 1600

Baton Rouge, Louisiana 70801

225.381.9643

VIDEOGRAPHER:

PAUL D'AMBRA

ALSO PRESENT:

NATHAN HALL, Pachulski Stang Ziehl & Jones

JAMES SEERY

TORREY LITTLETON

SHAWN RAVER

- - -

I N D E X

- - -

EXAMINATION OF: PAGE

JULIE DIAZ

By Attorney Morris ...............8

E X H I B I T S

HIGHLAND: PAGE

Highland 1 Objection of the Dallas ..........63
Foundation and Crown Global to
Motion for Entry of An Order
Approving Settlement
(15 pages)

DEPOSITION SUPPORT INDEX

QUESTIONS INSTRUCTED NOT TO ANSWER:

PAGE LINE

(None)

REQUEST FOR PRODUCTION OF DOCUMENTS

PAGE LINE

(None)

STIPULATIONS

PAGE LINE

(None)

QUESTIONS MARKED

PAGE LINE

(None)

REPORTER'S NOTE:

QUOTATION MARKS ARE USED FOR CLARITY AND DO NOT NECESSARILY REFLECT A DIRECT QUOTE.

- - -

P R O C E E D I N G S

- - -

WHEREUPON,

JULIE DIAZ,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY ATTORNEY MORRIS:

Q. Good afternoon, Ms. Diaz. Can you hear me okay?

A. I can.

Q. My name is John Morris. I'm an attorney for Highland Capital Management, and we're here to take your deposition today in connection with the Dallas Foundation's objection to a certain settlement.

Are you aware of that?

A. Yes, I am.

Q. Have you ever been deposed before?

A. Yes, I have.

Q. Okay. So just some quick ground rules so we're on the same page.

I'm going to ask a series of questions, and it's very important that you allow me to finish my question before you begin the answer.

Is that fair?

A. Yes.

Q. I will try to allow you to finish your answer before I begin a question; but if I fail to do so, will you let me know that?

A. Yes, I will.

Q. If I ask a question that you don't understand, will you let me know that?

A. I will.

Q. If you need a break at any time, I'm happy to accommodate you; but I just ask that you not seek a break while a question is pending unless you need to consult with your lawyer about privilege questions.

Is that fair?

A. Yes.

Q. Are you affiliated with the Dallas Foundation?

A. Yes. I am the president and CEO.

Q. When did you become the president and CEO of the Dallas Foundation?

A. Formally, April 1st, 2024. Prior to that, I was interim CEO; and have been with the foundation for six years.

Q. Are you familiar with the company called Highland Capital Management, LP?

A. Yes, I am.

Q. Are you aware that Highland Capital Management, LP, filed for bankruptcy back in 2019?

A. Yes, I am.

Q. Are you aware that the Dallas Foundation recently filed in the bankruptcy court an objection to a proposed settlement between certain Highland affiliates and certain affiliates of Hunter Mountain Investment Trust?

A. Yes, I am.

Q. Are you aware of the parties to the settlement agreement that the Dallas Foundation has objected to?

A. Can you clarify that question.

Q. Can you identify the parties on the Highland side that are -- that executed the settlement agreement that the Dallas Foundation objected to?

A. No.

Q. Can you identify the parties -- withdrawn.

Are you aware that there are parties -- are you aware that Hunter Mountain Investment Trust is a party to the settlement agreement?

A. Yes, I am.

Q. Are you aware that a gentleman named Mark Patrick signed the agreement on behalf of the Hunter Mountain Investment Trust?

A. I'm aware of his involvement.

Q. But you're not aware as you sit here right now that Mr. Patrick signed on behalf of Hunter Mountain Investment Trust?

A. No.

Q. Can I refer to Hunter Mountain Investment Trust as "HMIT" for purposes of the deposition?

A. Yes, you may.

Q. Are you aware that there are other entities that are affiliated with HMIT that are also party to the settlement agreement?

A. Yes, I am.

Q. Can we generally refer to all of the affiliates of HMIT and HMIT itself as "the HMIT

entities" for purposes of today's deposition?
A. Yes.
Q. Did you review the Dallas Foundation's objection before it was filed?
A. Yes, I did.
Q. Were you responsible for authorizing its filing?
A. Yes.
Q. Are you aware that the objection was filed on behalf of an entity called Empower Dallas Foundation?
A. Yes.
Q. Are you familiar with that entity?
A. Yes, I am.
Q. What is the Empower Dallas Foundation?
A. Empower Dallas Foundation is a supporting organization that is sponsored by the Dallas Foundation. It's a grant-making organization that's been in existence for at least 10 years.
Q. Do you know who formed Empower Dallas Foundation?
A. Yes. I'm aware that it came from Jim Dondero.
Q. What do you mean that it came from Jim

Dondero?
A. Well, that the donation was made from Mr. Dondero.
Q. Did Mr. Dondero make a donation to Empower Dallas Foundation?
A. Yes.
Q. And does Empower Dallas Foundation fund the Dallas Foundation?
A. Technically, it is a -- we are a -- it is a supporting organization of the Dallas Foundation, which is an IRS entity for which it makes grant recommendations that then flow to a donor-advised fund that then the Dallas Foundation effectuates, basically, the grant.
Q. Do you know if the Dallas -- did I step on your words?
A. No.
Q. Do you know if the Dallas -- withdrawn.
Do you know if Empower Dallas Foundation had any contractual obligation to make donations to the Dallas Foundation?
A. I believe that through its charitable status, it is required to make contributions on a regular basis. And we also have governance that

oversees activity within all of our charitable funds.

Q. Is there an agreement of any kind between the Dallas Foundation and Empower Dallas Foundation?

A. Yes. We have a fund agreement.

Q. And under that fund agreement, is the Dallas Foundation entitled to receive contributions from Empower Dallas?

A. Yes. I don't know the technical language offhand.

Q. Do you know if Mr. Dondero plays any role in the management of Empower Dallas Foundation?

A. What do you mean by "management"?

Q. Does he have any involvement in --

A. Yes. As any fundholder, he would have involvement in making recommendations for grants he would like to put into the community, as all of our fundholders do.

Q. Does he play any other role, to the best of your knowledge, with respect to the Empower Dallas Foundation?

A. No.

Q. Are you familiar with --

A. Oh, sorry. May I correct myself?
The Empower Dallas Foundation does have its own governance, of which he is president of the foundation. I'm the vice president. And we have a treasurer. As with all of our supporting orgs, the Dallas Foundation has majority oversight.
Q. The Dallas Foundation has majority oversight of Empower Dallas Foundation?
A. Yes.
Q. And how does it exercise that oversight?
A. In voting.
Q. And who gets to vote?
A. The officers: the president, the vice president, and the treasurer.
Q. Of which entity?
A. Of the supporting organization, the Empower Dallas Foundation.
Q. Can you identify who those people are.
A. Jim Dondero is the president; I'm the vice president; and our CFO, Torrey Littleton, is the treasurer.
Q. How about the Okada Family Foundation? Are you familiar with that?

A. Oh, excuse me -- sorry.
I'm -- I need to correct myself. That is for Empower Dallas, because we have two funds I'm confusing. Empower Dallas Foundation, I am the president; Torrey is the treasurer; and we have a secretary.
For consent agendas, Jim Dondero plays an individual member role.
Q. Ma'am, what are you reading right now?
A. I'm looking at the structure of our supporting organizations.
Q. Can you just hold that up for me so I can see what you're looking at.
A. It literally lists that for all of them.
Q. Do you have any other documents with you today?
A. Just my notes.
Q. Can I ask you to put those away for now.
A. Oh, sure.
Q. How about the Okada Family Foundation; is that another supporting organization?
A. Yes, it is.
Q. And do you know if Mr. Dondero has any

involvement with that entity?
A. It does not have any involvement with that entity.
Q. Okay. Do you know if Mr. Dondero played any role in the Dallas Foundation's decision to object to the proposed settlement between the Highland entities and the HMIT entities?
A. Did not have any role.
Q. Did you ever speak to him about the objection?
A. I have spoken to him in the last six months.
Q. Did you ever speak with him about the objection?
A. No.
Q. Did you speak with him about any of the facts that are set forth in the objection?
A. No.
Q. Was Mr. Dondero a source for some of the facts that are set forth in the Dallas Foundation's objection?
A. No.
Q. Did Mr. Dondero or anyone acting on his behalf provide any information to the Dallas

Foundation that the Dallas Foundation used in its objection?

A. Repeat the question.

Q. Did Mr. Dondero or anybody you believe was acting on his behalf provide any information that the Dallas Foundation used in its objection?

A. I'll abstain from answering that.

Q. Excuse me?

A. I'd rather not answer that question.

Q. I appreciate that, but you have to.

A. Well, there's a lot of context around the formation of where we are today. So I have been engaged with our counterpart over the last six years, so I have a lot of information from working through our grant-making and the management of the assets over the past six years.

So in that same vein, I've learned a lot from many interested parties.

Q. Okay. So I ask you to listen carefully to my question, because it's rather precise.

Do you know if Mr. Dondero or anybody you believed was acting on his behalf provided the Dallas Foundation with any information that is -- that was used to prepare the objection?

A. No.
Q. Are you familiar with the objection?
A. I am familiar. I authorized it and read it.
Q. And it's your testimony that Jim Dondero wasn't the source of any information that's in that objection. Is that fair?
A. That is fair.
Q. Do you know where the idea of filing the objection originated?
A. I don't.
Q. Do you know whose idea, who came up with the idea to object to this -- withdrawn.
Do you know whose idea it was to object to the Highland/HMIT settlement?
ATTORNEY OKIN: Okay. Actually, Ms. Diaz, before you answer, just want to caution you that as long as it's not conveying advice of counsel, you can answer the question.
A. You'll have to repeat that. I don't understand that.
BY ATTORNEY MORRIS:
Q. Do you know who came up with the idea of objecting to the proposed Highland/HMIT settlement?

A. I believe it came out of discussions in another settlement.
Q. What settlement are you referring to?
A. In the Cayman Islands.
Q. What settlement is that?
A. Well, it has to do with the three large supporting orgs and an entity called DAF Holdco.
Q. Which three large supporting orgs are you referring to?
A. Kansas City Foundation; Santa Barbara Foundation; Highland Dallas Foundation; and really in a small way, North Texas Community Foundation. All --
Q. And I apologize. What did you just refer to those entities as? Supporting organizations?
A. Yes.
Q. The Kansas -- and you called it the Kansas City --
A. Foundation.
Q. -- Foundation, the Santa Barbara Foundation and the Dallas Foundation? And those are three additional supporting organizations of the Dallas Foundation?

A. Sorry. We have three -- four community foundations; right? Dallas Foundation, Santa Barbara Foundation, Kansas City Foundation, and North Texas Community Foundations.

The three -- Kansas City, Dallas and Highland -- I'm sorry -- Dallas, Kansas City, and Santa Barbara all have supporting organizations that were the result of contributions from Highland Capital in 2011.

Q. Do you know if Mr. Dondero has any relationship to the Dallas, Kansas City, or Santa Barbara Foundations that you just identified?

A. My understanding is they have -- he has the same structure of supporting org with Kansas City, Santa Barbara, and Dallas.

Q. Is he the president of each, to the best of your knowledge?

A. Yes.

Q. And are those the entities that commenced the Cayman Islands proceedings, to the best of your understanding?

A. Yes.

Q. Is it your understanding that Mr. Dondero directed those entities to do so?

A. No.
Q. Who directed those entities to do so, to the best of your knowledge?
A. CEOs of the organizations.
Q. And who are they?
A. Debbie Wilkerson is the CEO of Kansas City. Jackie Carrera is the CEO of Santa Barbara. Rose Bradshaw is the CEO of North Texas Community Foundation, although she did not enter in, in the formal filing. They have a very de minimis role in the asset.
Q. Are you aware that Mr. Dondero filed a declaration or an affidavit in the Cayman Islands in support of the Community Foundation's litigation that they commenced?
A. I did see that.
Q. Did you read it?
A. Yeah.
Q. Did you see any familiarity between that declaration and the Dallas Foundation's objection?
A. I think there were some similarities because of the nature of the activities that have been happening.
Q. Did you learn, when you read

Mr. Dondero's declaration in the Cayman Islands, that he's actually funding that litigation on behalf of the supporting organizations?

A. No, that's not when I learned that.

Q. That's not when you learned it or -- withdrawn.

Are you aware that he's funding that litigation?

A. Yes.

Q. When did you learn that he was funding that litigation?

A. Before we got into litigation.

Q. Is he funding this litigation on behalf of the Dallas Foundation?

A. Yes, he is.

Q. And how much money did he provide for the funding of this litigation?

A. We have not agreed on an amount. As with any of our fundholders', legal expenses will get paid through by the fund. So that's a very common business practice. And it would go until the legal issues ceased.

Q. But he's made a commitment to fund -- to personally fund the expenses of the Dallas Foundation in connection with this litigation; is

that right?
A. Yes.
Q. Are you aware of any particular reason that that's not disclosed in the Dallas Foundation's objection?
A. I'm not aware.
Q. Why did the Dallas Foundation file the objection on behalf of Empower Dallas Foundation?
A. Well, we filed the objection on behalf of both Empower and Okada Family Foundation, in essence, because the person who has been overseeing the activity ceased to communicate with us as of last fall. And there were enough irregularities in our communication and accounting leading up to then some pretty dramatic changes in valuations that raised a red flag for us.
Q. Who is the person that you're referring to?
A. Mark Patrick.
Q. And did the Empower Dallas Foundation ask the Dallas Foundation to file this objection on its behalf?
A. As fiduciaries of all of our charitable assets, we oversee the activity; and

when there is any irregular activity, we investigate.

Q. I appreciate that. I'm just asking you if the Empower Dallas Foundation asked the Dallas Foundation to file the objection on its behalf.

A. Well, since I am representative of the Empower Dallas Foundation, I don't have to ask anybody except ourselves to do that.

Q. And did you confer with Mr. Dondero about that decision?

A. I think we informed him.

Q. Did he review a copy of the objection before it was filed?

A. Not to my knowledge, no.

Q. Are you aware that the Dallas Foundation also filed the objection on behalf of certain segregated accounts held at Crown Global Life Insurance Limited?

A. Yes.

Q. Can I refer to Crown Global Life Insurance Limited as just "Crown Global"?

A. Yes.

Q. And can I refer to the segregated accounts that are identified in the Dallas

Foundation's objection as "the segregated accounts"?

A. Yes.

Q. And are you familiar with those segregated accounts?

A. At a high level.

Q. What's your understanding at a high level of what those segregated accounts are?

A. That the Crown Global assets are really insurance annuities that pay out to the fund; and that's the source of income for charitable purposes.

Q. Where does the income from the annuity flow to?

A. Flows to the supporting organizations.

Q. And then the supporting organizations have the proceeds from the annuity available for the foundations; is that fair?

A. Yes.

Q. And do you know who took out these insurance policies or these annuities? Which of the -- withdrawn.

Can you identify the supporting organization that funded the purchase of the annuities?

A. Empower Dallas Foundation and Okada Family Foundation.

Q. And is the cash that is thrown off from the annuities -- withdrawn.

To the best of your understanding, is the cash that's thrown off from the annuities the sole source of income for Empower Dallas Foundation and the Okada Foundation?

A. That's my understanding.

Q. Is it your understanding that the Dallas Foundation has not received anything of value from Empower Dallas Foundation or the Okada Family Foundation other than proceeds from the annuities?

A. That's my understanding.

Q. Do you know why the Dallas Foundation filed the objection on behalf of the segregated accounts at Crown Global?

A. Yes.

Q. Why did the Dallas Foundation file its objection on behalf of the segregated accounts?

A. As I said earlier, because there had been activity and essentially a write-down of 40 percent of value, we were concerned that there were activities within Crown Global for the

organizations that support that that we did not have any, you know, access to, vision or communication around.

Q. Does the Dallas Foundation have any relationship with Crown Global?

A. Yes.

Q. As it pertains to -- what relationship does the Dallas Foundation have with Crown Global?

A. Well, I don't understand on a transactional, but we get quarterly reports from them. They obviously send the proceeds to us. I mean, they are a fiduciary to us in the same way we are to others.

Q. Crown Global is?

A. Yeah.

Q. With respect to the disbursement of proceeds from the annuity?

A. Yes.

Q. Okay. So the proceeds from the annuity don't go to Empower Dallas or the Okada Family Foundation; they get remitted directly to the Dallas Foundation.

Do I have that right?

A. No. They go -- they go to the

supporting organizations. But in our governance that -- I refer to both as -- it flows into our finance office, and then they get allocated to the foundations.

Q. You mentioned that there was a 40 percent write-down in value. Is that with respect to the annuities?

A. I don't know all of the transactions that led up to that. But what we understood, there were a few -- sorry.

There are a few requests for us to approve that we didn't understand and sent them to our counsel, and then got the first-quarter report for March 30th, and it was significantly lower and we didn't know why.

So in asking for that, we found out there was a decline.

Q. And is that -- is it your understanding that it's the decline in value -- withdrawn.

Is it your understanding that it's the unexplained decline in value that caused the Dallas Foundation to file the objection on behalf of the segregated accounts?

A. Yes.

Q. Did anybody ask the Dallas Foundation to file the objection on behalf of the segregated accounts?
A. No.
Q. Can you identify the owner of the segregated accounts on behalf of -- on whose behalf the Dallas Foundation filed the objection?
Withdrawn. Too many words.
Do you know who owns the segregated accounts?
A. No. I won't guess.
Q. Are you aware that the owner of the segregated accounts is Crown Global?
A. Oh, yes.
Q. And so is that your understanding, that Crown Global --
A. Yes.
Q. -- owns the segregated accounts?
A. Yes.
Q. Did anybody from the Dallas Foundation seek Crown Global's consent and approval before filing the objection on behalf of the segregated accounts?
A. Yes.
Q. Yes?

And who at Crown Global gave the authorization, if you know?

A. Mr. -- the CEO and their chief legal, Hernandez -- Paul --

ATTORNEY OKIN: Let me interrupt here too, John. You're acting as though the objection was filed solely by the Dallas Foundation. We represent two clients here. We represent the Dallas Foundation and Crown Global.

And you're putting Ms. Diaz in a position where I think she thinks she has to justify having -- Crown Global's actions when they -- we represent them as well.

ATTORNEY MORRIS: Well, as I read the pleading that you filed, it said the Dallas Foundation -- I won't --

ATTORNEY OKIN: I think that's a --

ATTORNEY MORRIS: I'll ask the questions, and we'll --

ATTORNEY OKIN: Take a look at our signature block. It says clearly that we're doing it on behalf of the Dallas Foundation and Crown Global.

BY ATTORNEY MORRIS:

Q. Ms. Diaz, do you know if the Dallas

Foundation ever appeared in the Highland bankruptcy case before it filed this objection?

A. I do not believe so.

Q. To the best of your knowledge, the Dallas Foundation never filed a claim against Highland in the Highland bankruptcy case; correct?

A. No.

Q. To the best of your knowledge -- withdrawn.

Have you ever heard of the Highland Claimant Trust?

A. No.

Q. So is it fair to say that you have no reason to believe that the Dallas Foundation has any interest in the Highland Claimant Trust?

A. No. That is not -- that's not fair to claim.

Q. So is it your testimony that you believe the Dallas Foundation has a direct or indirect interest in the Highland Claimant Trust?

A. What you asked me was had we ever participated and did we then have any result from it.

I don't know the answer to that

question.
Q. I apologize if my questioning wasn't clear to you. Let me try again.
To the best of your knowledge, the Dallas Foundation has never appeared in the Highland bankruptcy case until it filed the objection that we're talking about today; correct?
A. I don't know the answer to that.
Q. But to the -- you have no knowledge that they ever did; is that fair?
A. I have no knowledge.
Q. Okay. And you have no knowledge that the Dallas Foundation ever filed a claim against Highland in the Highland bankruptcy case; correct?
A. I have no knowledge of that.
Q. And you have no knowledge that the Dallas Foundation has any interest of any kind in the Highland Claimant Trust; correct?
A. I do not agree with that statement.
Q. What knowledge do you have that the Dallas Foundation has an interest in the Highland Claimant Trust?
A. Because of the relationship between

Hunter Mountain and how it feeds up to Crown Global and, therefore, the supporting organizations.

Q. It might be my fault that I'm not being clear, but I'm really just focused on Highland right now. Has nothing to do with Crown Global --

A. Okay.

Q. -- or Hunter Mountain; it's just Highland.

A. Okay.

Q. Are you aware that as a result of the bankruptcy, an entity Called the Highland Claimant Trust was formed?

A. I was not, no.

Q. Okay. So if you weren't aware that an entity called the Highland Claimant Trust was formed, is it also fair to say you have no knowledge that the Dallas Foundation has an interest in the Highland Claimant Trust?

A. Okay.

Q. Okay. And does the Dallas Foundation have any contractual relationship with Highland Capital Management, LP?

A. No.

Q. Has the Dallas Foundation ever had a contractual relationship with Highland Capital Management, LP, to the best of your knowledge?
A. No.
Q. Does the Dallas Foundation have any contractual relationship with an entity called the Highland Claimant Trust, to the best of your knowledge?
A. No.
Q. And to the best of your knowledge, has the Dallas Foundation ever had a contractual relationship with an entity called the Highland Claimant Trust?
A. No.
Q. Do you have any reason to believe, as you sit here today, that Highland Capital Management, LP, owes any duties or obligations to the Dallas Foundation?
ATTORNEY OKIN: Object to form.
BY ATTORNEY MORRIS:
Q. You can answer.
A. Can you ask the question again.
Q. Sure.
As you sit here today, do you have any reason to believe that Highland Capital

Management, LP, owes any duties or obligations to the Dallas Foundation?

ATTORNEY OKIN: Object to form.

A. No.

BY ATTORNEY MORRIS:

Q. As you sit here today, do you have any reason to believe that Highland Capital Management, LP, ever had any duties or obligations that it owed to the Dallas Foundation?

ATTORNEY OKIN: Object to form.

A. No.

BY ATTORNEY MORRIS:

Q. Are you aware that if the settlement agreement between the Highland entities and the HMIT entities is approved, the HMIT entities will receive cash and other assets pursuant to the terms of the settlement agreement?

A. I'm assuming that there is assets within the agreement.

Q. Have you reviewed the settlement agreement yourself, Ms. Diaz?

A. No.

Q. Are you generally familiar with the terms of the settlement agreement?

A. At a high level.
Q. What's your understanding at a high level?
A. That once the settlement is complete, that Hunter Mountain will receive assets of some size that will flow up to Crown Global.
Q. Do you know if the requirement that the assets flow up to Crown Global is part of the settlement agreement that's before the Court and that the Dallas Foundation is objecting to?
A. That was our understanding.
Q. From the agreement itself?
A. I have not seen the settlement agreement.
Q. So you authorized an objection to a settlement agreement that you haven't seen; is that fair?
A. That's fair.
Q. Do you have any reason to believe that the Dallas Foundation has a right to recover any of the assets you just described that HMIT will receive if the settlement is approved by the Court?
ATTORNEY OKIN: Object to form.
A. Can you repeat the question.

BY ATTORNEY MORRIS:
Q. Do you have any reason to believe that the Dallas Foundation has a right to recover any portion of the assets that HMIT will receive if the settlement agreement is approved by the bankruptcy court?
ATTORNEY OKIN: Object to form.
A. My job is to protect the charitable assets under our organization's fiduciary compliance role; and so if there is any opportunity for assets to either be diminished or not move forward, it's my job to ensure that I've done everything I can to recover them.
BY ATTORNEY MORRIS:
Q. But do you have an understanding as to whether or not -- withdrawn.
I think you just testified that it's your understanding at a high level that HMIT will receive certain assets if the settlement agreement is approved.
Do I have that right?
A. Yes.
Q. Do you have an understanding that the Dallas Foundation is entitled to receive all or any portion of the assets that HMIT would receive

under the settlement agreement?

ATTORNEY OKIN: Object to form.

A. I don't know that.

BY ATTORNEY MORRIS:

Q. You don't know that?

A. (Shakes head.)

Q. Have you asked anybody whether the Dallas Foundation has a right to recover any portion of the assets that HMIT will receive under the settlement agreement?

ATTORNEY OKIN: Before you answer that, Ms. Diaz, I'll just remind you: Other than disclosing any of your conversations with counsel for you or for the foundation.

BY ATTORNEY MORRIS:

Q. But you can answer the question.

A. You'll have to ask the question again.

Q. No problem. I appreciate that.

Did you ever ask anybody whether the Dallas Foundation had a right to receive any of the assets that HMIT will receive under the settlement agreement?

A. Like somebody-who in your question?

Q. Anybody. Did you ever ask the question of anybody? Let's just start with "yes"

or "no."
A. Yes.
Q. And who did you ask?
A. I'll strike that, because it would be -- I couldn't tell you definitively I did that.
Q. Did Mr. Dondero tell you that the Dallas Foundation had a right to the assets that HMIT was going to receive under the settlement agreement?
A. No.
Q. And you don't recall asking that question of anybody; is that fair?
A. The only person I talked to this -- about these assets to is Mark Patrick.
Q. And did Mr. Patrick tell you that the Dallas Foundation had a right to recover any of the proceeds under the HMIT/Highland settlement agreement?
A. I don't know.
Q. Have you ever received any documents that lead you to believe that the Dallas Foundation has an ownership interest in any of the assets that HMIT will receive under the settlement agreement?

ATTORNEY OKIN: Object to form.
A. My understanding is that through the Hunter Mountain settlement, that those assets flow into the Atlas fund that I know Mark Patrick was managing. So indirectly.
BY ATTORNEY MORRIS:
Q. Is there a document that you reviewed that leads you to believe that the assets HMIT receives will go to the Atlas fund?
A. No.
Q. Can you identify with any specificity which Atlas entity you have in mind that's expected to receive the proceeds from the HMIT/Highland settlement?
A. No.
Q. Do you know if the Atlas entity that you just identified, does that have any obligation to disburse any of the assets it may receive from HMIT?
A. I don't know.
Q. Okay. Let's -- do you have any reason to believe that the Dallas Foundation will be impacted in any way if the settlement between Highland and the HMIT entities is approved?
A. As I said, because the Crown Global is

to disburse money that it receives from Atlas, then there would be an impact. That's why we filed the objection.

Q. Is it fair to say that the Dallas Foundation's concern is what happens to the assets that HMIT receives after the settlement is approved and it's not with the agreement itself?

A. I can't answer that.

Q. If Mark Patrick hadn't done anything to change any of the structure that's described in the Dallas Foundation's objection such that the Dallas Foundation's expectations as set forth in its objection were met, would the Dallas Foundation have any reason to object to this settlement?

ATTORNEY OKIN: Objection; form.

A. I don't know.

BY ATTORNEY MORRIS:

Q. Isn't the problem here that you're concerned about what happens to the money after it's received by HMIT?

A. I'm concerned that the case that's pending in the Cayman Islands shows that $300 million of charitable assets have vanished and that the same type of behavior is happening

in Crown Global and impacts those funds to the tune of $25 million.

Q. But that has nothing to do with Highland.

Fair enough?

A. I don't know.

Q. Do you have any basis to say that Highland has any involvement in anything you just described?

A. Well, I'm not a lawyer and, technically, I don't know how to answer that. But Highland has been involved from day one.

Q. Involved in what?

A. The original contribution to set up the supporting orgs with those shares; like I said, I -- all the different legal entities -- GPs, LPs, et cetera -- I leave you all to track.

Q. If the Court approved the settlement and Mark Patrick decided to give all of the proceeds to the Dallas Foundation, would the Dallas Foundation have any reason to object to the settlement?

ATTORNEY OKIN: Object to form.

A. I think we'd want to know more.

///

BY ATTORNEY MORRIS:
Q. What would you want to know?
A. What are the assets that we would be receiving? What would the structure be?
Q. Well, the assets are set forth in the settlement agreement; right? So there's no mystery about the assets.
Fair enough?
A. I don't know that. I don't know -- are they -- is it cash? Is it securities? What are the nature of the -- I would want to know a lot more before accepting all things like that.
Q. Do you know if Crown Global ever appeared in the Highland bankruptcy?
A. I don't know.
Q. Do you know if the segregated accounts ever filed a notice of appearance in the Highland bankruptcy?
A. I don't know.
Q. Do you know if Crown Global ever filed a claim against Highland in the Highland bankruptcy?
A. I don't know.
Q. Do you know if the segregated accounts ever filed a claim against Highland in the

Highland bankruptcy?
A. I don't know.
Q. Do you know if Crown Global has an interest in the Highland Claimant Trust?
A. No. No, I don't know.
Q. Do you know if the segregated accounts have an interest in the Highland Claimant Trust?
A. I don't know.
Q. Do you know if Crown Global has any contractual relationship with Highland?
A. I don't know.
Q. Do you know if Crown Global has any contractual relationship with the Highland Claimant Trust?
A. No.
Q. I'm going to take Mr. -- I think it's Mr. Littleton's deposition next.
A. Yep.
Q. Do you know if he is affiliated with Crown Global in any way?
A. No. He's an employee of the Dallas Foundation.
Q. Thank you.
Do you know if Crown Global has any right to recover any of the assets that HMIT and

the HMIT entities may receive under the settlement agreement?

ATTORNEY OKIN: Object to form.

A. I don't know.

BY ATTORNEY MORRIS:

Q. Have you asked that question of anybody?

ATTORNEY OKIN: Other than your lawyers, you can answer that, Ms. Diaz.

ATTORNEY MORRIS: Please --

BY ATTORNEY MORRIS:

Q. Was the answer "no," Ms. Diaz?

A. Ask the question again, please.

Q. Have you ever asked anybody whether Crown Global had the right to receive any of the assets that Highland will convey to HMIT under the settlement agreement?

A. No.

Q. We're using the phrase "HMIT entities" to mean the entities on whose behalf Mark Patrick signed the settlement agreement; right? Are we on the same page?

A. That's what you're telling me.

Q. Okay. Are you familiar with any of those entities?

A. Tell me what they are.
Q. Are you familiar with any of the Rand entities?
A. I'm familiar with Rand.
Q. And what's your familiarity with Rand?
A. Certainly it was another vehicle that flowed through to Atlas. And when Mr. Patrick came to see me last October, told me that there might be some issues with Rand and that structure might be changing. That's vague.
Q. Let's stick with the Hunter Mountain Investment Trust.
Are you aware of any assets that the Hunter Mountain Investment Trust owns today?
A. No.
Q. Was it your understanding that Mr. Patrick controlled Rand?
A. Yes.
Q. And is it your understanding that he controls Rand today?
A. Yes.
Q. And going back to Hunter Mountain Investment Trust, you're not aware of any assets that that entity holds today; correct?
A. No.

Q. Were you --

A. I'm assuming Rand is one of the assets, I guess.

Q. Were you ever -- did you ever know -- were you ever aware of any asset that HMIT owned?

A. Well, Atlas.

Q. It's your understanding --

A. Yeah, I feel like I'm being quizzed on Hunter Mountain Trust.

ATTORNEY OKIN: Let me interrupt here. John, two things.

One, if you want to show her an org chart so she can actually see these entities in a way that actually would help her remember them. Nobody can possibly keep them in their mind cold.

And, second, Ms. Diaz is not going to be our witness on this Hunter Mountain structure and the Rand structure. You can keep asking her questions about it and testing her memory on it, but I don't think you're going to find that the answers are going to be any different.

Mr. Littleton will talk to these issues, yes. I can't promise you he'll be able to answer every one of your questions. But to the extent you want somebody with the Dallas

Foundation's knowledge of the workings of that structure, he's the one to ask about that.

ATTORNEY MORRIS: I'll continue to ask the questions, but I appreciate that.

BY ATTORNEY MORRIS:

Q. Do you know if the Dallas Foundation ever received anything of value from any of the HMIT entities?

A. Crown Global.

Q. Crown Global is not an HMIT entity. So I'm asking you to just focus on the entities that Mark Patrick controlled, the Rand entities, the Atlas entities and Hunter Mountain.

Did any of those entities ever give anything of value to the Dallas Foundation?

A. Not directly that I'm aware of, no.

Q. Did any of those entities ever have any business dealings with the Dallas Foundation?

A. Only in the relationship with Crown Global.

Q. Do you have any understanding as to whether any of the HMIT entities owes any duties or obligations to the Dallas Foundation today?

ATTORNEY OKIN: Objection to form.

A. I don't know.

BY ATTORNEY MORRIS:
Q. I understand there was some corporate reorganization earlier this year. I think that's described in the Dallas Foundation's objection.
Is that just generally fair?
A. As it relates to Mr. Patrick?
Q. Yes.
A. (Nods head.)
Q. Okay. Do you have any reason to believe that before Mr. Patrick effectuated those changes, that any of the HMIT entities owed any duty or obligation to the Dallas Foundation?
ATTORNEY OKIN: Objection to form.
A. I don't know.
BY ATTORNEY MORRIS:
Q. Are you aware that HMIT filed a couple of years ago a motion in the bankruptcy court for permission to bring certain claims against Highland Capital Management and a gentleman named James Seery?
A. No.
Q. Nobody ever told you that; is that fair?
A. Fair.
Q. Are you aware that Highland contends

that the settlement agreement that it has entered into with the HMIT entities is the product of good-faith, arm's-length negotiations?

A. Am I aware? No.

Q. Do you have any knowledge of the nature of any negotiations between the Highland entities and the HMIT entities?

A. I'm aware that it's been going on for four years.

Q. I'm just talking about the settlement agreement now.

A. Okay.

Q. Do you have any knowledge of any facts concerning the negotiation of that particular settlement agreement?

A. No.

Q. Do you have any knowledge of any facts that might suggest that the settlement agreement was not the product of good-faith, arm's-length negotiations?

A. No.

Q. Do you have any reason to believe that the proposed settlement is unfair to Highland Capital Management, LP?

ATTORNEY OKIN: Object to form.

BY ATTORNEY MORRIS:
Q. You can answer, ma'am.
A. I don't know.
Q. Do you know whether the proposed settlement is unfair to the Highland Claimant Trust?
A. I don't know.
ATTORNEY OKIN: Object to form.
BY ATTORNEY MORRIS:
Q. You don't have a view on that; is that fair?
A. Yes.
Q. And is it fair that in connection with the preparation and the filing of the objection -- withdrawn.
The Dallas Foundation, in its objection, does not contend that the settlement is unfair to Highland Capital Management; is that correct?
A. I don't know.
Q. You reviewed and authorized the filing of the objection; isn't that right, ma'am?
A. Right.
Q. And you're familiar with the document that you authorized to be filed; fair?

A. Yes.
Q. And based on your recollection, do you recall the Dallas Foundation making any assertion or claim that the settlement agreement was unfair to Highland Capital Management, LP, or any of its affiliates?
A. The claim was that it was unfair to the supporting organizations.
Q. And how is the settlement agreement unfair to the supporting organizations?
A. Because we would -- well, what we claimed is that because of our lack of transparency of the flow of those funds and the changes in the fund recently, that the supporting organizations were losing their assets and any potential future assets.
Q. Is there any other basis that you're aware of by which the Dallas Foundation contends that the settlement agreement is unfair to it?
A. No.
Q. Does the Dallas Foundation contend that the settlement agreement is unfair to Hunter Mountain Investment Trust?
A. I don't know.
Q. As the person who authorized the

filing of the objection on behalf of the Dallas Foundation, do you have any reason to believe that the terms of the settlement are unfair to the Hunter Mountain Investment Trust?

A. I do not.

Q. Are you aware that under the settlement agreement, the HMIT entities and the Highland entities are releasing each other from all liabilities except for the liabilities arising under the settlement agreement?

A. I'm assuming that's what the settlement is intended to do.

Q. And the Dallas Foundation doesn't have any concern about the scope of the mutual releases; is that fair?

ATTORNEY OKIN: Objection to form.

A. I don't know.

BY ATTORNEY MORRIS:

Q. As the person who authorized the filing of the objection on behalf of the Dallas Foundation, do you recall there being any statement in the objection where the Dallas Foundation expressed any concern at all about the scope of the mutual releases that are in the settlement agreement?

ATTORNEY OKIN: Object to form. The document speaks for itself. I mean, if you want to show it to her and ask her to find it, that's fine.

BY ATTORNEY MORRIS:

Q. You can answer, ma'am.

A. I don't --

Q. I'm sorry?

A. I don't recall that.

Q. Okay. Thank you.

Are you aware of any facts that could give rise to a claim by the Dallas Foundation against any Highland entity?

ATTORNEY OKIN: Object to form.

A. Repeat the question.

BY ATTORNEY MORRIS:

Q. Are you aware of any facts that would support a claim by the Dallas Foundation against Highland Capital Management, LP, or the Highland Claimant Trust?

ATTORNEY OKIN: Object to form.

A. No.

BY ATTORNEY MORRIS:

Q. Do you understand the basis for the Dallas Foundation's objection?

A. Yes.
Q. Can you articulate that for me. What's your understanding of the basis of the Dallas Foundation's objection?
ATTORNEY OKIN: Object to form.
A. Our objection --
BY ATTORNEY MORRIS:
Q. Pardon me? What's that, ma'am?
ATTORNEY OKIN: I said I object to the form of the question.
Go ahead. You can answer.
A. Our objection is based on -- and I've said this before -- the fact that there's been irregular significant erosion of the assets to date by the party who seems to control a lot of the liquidity flows and oversight of the assets.
And so with the backdrop of all of the work we're doing in the Cayman Islands to recover 300-plus million dollars, this seemed not insignificant to protect the $25 million for these two supporting organizations.
So as this happens on Wednesday, what we've learned is that every opportunity we can to slow down decisions that are made give us time to understand where -- what is happening with these

charitable assets and where they are.
BY ATTORNEY MORRIS:
Q. Do you have any reason to believe that Mark Patrick does not have the authority to enter into the settlement agreement on behalf of each of the HMIT entities?
ATTORNEY OKIN: Object to the form of the question.
A. I don't know what authority he has to enter into that.
BY ATTORNEY MORRIS:
Q. Do you have any facts that you can share with me that suggest that Mr. Patrick does not have the legal authority to enter into the settlement agreement on behalf of any of the HMIT entities?
ATTORNEY OKIN: Object to the form of the question.
A. I don't.
BY ATTORNEY MORRIS:
Q. Is it your understanding that Mr. Patrick was required to obtain the Dallas Foundation or Crown Global's consent before entering into this settlement agreement?
A. I think what we would have appreciated

and what had been our business as usual was information prior to and during anything that involved the assets under our aegis.

Q. Do you know if any of the HMIT entities had an obligation or duty to provide information to the Dallas Foundation or Crown Global before entering into the settlement agreement?

ATTORNEY OKIN: Object to the form of the question.

A. I don't --

BY ATTORNEY MORRIS:

Q. I'm sorry. Ms. Diaz, you don't know?

A. I don't contractually know that. But whether it's authority that he was given or assumed, he should have communicated with us.

Q. Should he have communicated with you before filing a lawsuit against the Highland -- withdrawn.

Do you believe that Mr. Patrick should have communicated with the Dallas Foundation before filing a lawsuit on behalf of Hunter Mountain Investment Trust against Highland, Mr. Seery, and others?

A. I don't know.

Q. You don't have a view on that; is that fair?

A. Fair.

Q. I apologize if I asked this, but do you have any reason to believe that Mr. Patrick was required to obtain either the Dallas Foundation's or Crown Global's consent before entering into the settlement on behalf of the HMIT entities?

ATTORNEY OKIN: Object to form of the question.

A. I don't know.

BY ATTORNEY MORRIS:

Q. Do you have any reason to believe that the Dallas Foundation or Crown Global has -- withdrawn.

Do you know if the Dallas Foundation has a direct ownership interest in any of the HMIT entities that are party to the settlement agreement?

A. I don't believe so.

Q. Do you know if Crown Global has a direct ownership interest in any of the HMIT entities that are party to the settlement agreement?

A. I don't know.
Q. Do you know if the Dallas Foundation has an indirect ownership interest in any of the HMIT entities that are party to the settlement agreement?
A. Indirect ownership?
ATTORNEY OKIN: Object to the form of the question.
A. I don't know.
BY ATTORNEY MORRIS:
Q. Did you ever ask anybody?
A. No.
Q. No?
A. No.
Q. Do you know if Crown Global has an indirect ownership interest in any of the HMIT entities that are party to the settlement agreement?
ATTORNEY OKIN: Object to the form of the question.
A. I don't know.
BY ATTORNEY MORRIS:
Q. Do you know if the Dallas Foundation has any right to control any of the HMIT entities?

A. No.
Q. No, you don't know; or, no, they don't have that right?
A. No, we don't have that right.
Q. Do you know if Crown Global has the right to control any of the HMIT entities?
A. I don't know.
Q. Do you know if the Dallas Foundation has the right to approve transactions that are entered into by any of the HMIT entities?
A. I don't know.
Q. Do you know if Crown Global has the right to approve any transaction that's entered into by any of the HMIT entities?
A. I don't know.
Q. Do you know if Crown Global or the segregated accounts has any right to control any of the HMIT entities?
A. I don't know.
Q. Do you know if Crown Global or the segregated accounts has any right to approve transactions that any of the HMIT entities might enter into?
A. I don't know.
Q. Do you know if any of the HMIT

entities were required to obtain the segregated accounts' consent before entering into the settlement agreement?

ATTORNEY OKIN: Object to the form of the question.

A. I don't know.

ATTORNEY MORRIS: Okay. We're going to put up on the screen -- Nathan, can you please put up on the screen the Dallas Foundation's objection.

BY ATTORNEY MORRIS:

Q. And while we wait, Ms. Diaz, I will tell you that, you know, the good news with COVID -- or at least one piece of the good news -- is that we learned to do these remote depositions so people don't have to travel and it's much less expensive for clients.

The bad news is that I'm not in the room with you and we have to put documents on the screen, and sometimes that can be a little bit cumbersome.

The Dallas Foundation's objection is fairly lengthy. This is not a test at all. I am going to point to certain parts of the objection. But if you believe that you need to see any other

portion of the document, will you let me know that so that I give you a chance to be fully informed?

A. Yes.

ATTORNEY MORRIS: Okay. I think it's towards the end, Nathan, paragraph 32.

This will be -- let's just call it Highland 1.

(Whereupon, Exhibit Highland 1 was marked for identification and is attached hereto.)

BY ATTORNEY MORRIS:

Q. So we've got up on the screen paragraph 32 of the objection. And the third sentence states, "Unfortunately, it does not appear, however, that joint official liquidators are parties to or have authorized the settlement."

Do you see that?

A. I see it.

Q. Okay. Are you aware that joint official liquidators were appointed by a Cayman court?

A. Yes.

Q. Do you know the entity over which the

joint official liquidators were appointed?

A. I've met with them.

Entity?

ATTORNEY OKIN: Ms. Diaz, maybe you need the question repeated. You seem to be confused by the wrong part of it.

THE WITNESS: Okay.

ATTORNEY MORRIS: Thank you, Matt. That's fine. That's fine. I'll ask the question again.

BY ATTORNEY MORRIS:

Q. Can you identify the entity that's the subject of the Cayman Islands liquidation proceeding?

A. Yes; the DAF Holdco.

Q. Are you aware that all of the HMIT entities are Delaware corporations? Withdrawn.

Are you aware that all of the HMIT entities were formed under the laws of the State of Delaware?

A. Sounds familiar.

Q. And have you ever communicated with the joint official liquidators?

A. Yes.

Q. When did you do that?

A. Two weeks ago.
Q. Did you make them aware of Highland's motion to have the settlement between the Highland entities and the HMIT entities approved?
A. I'd have to look at my calendar.
Q. Do you need your calendar to refresh your recollection as to whether or not you informed them of the Highland settlement motion?
A. I would want to make sure that the day I met with them is clear in my mind as to this versus when we've talked to them.
Q. Fair enough.
A. As you can imagine, there's been a lot of detail around all of these cases.
Q. Sure. And I don't mean to be disrespectful at all, ma'am. I apologize if you took it that way.
Do you recall ever making the joint official liquidators aware of the Dallas Foundation's objection to the settlement motion?
A. As I said, I don't know if we've made them aware of the objection, except as it relates to ancillary activity that we're concerned about regarding Mark Patrick.
So this was filed on June 9th, and I

would want to make sure that I spoke with them before or after that; and I don't have that.

Q. Do you know if anybody provided a copy of the Dallas Foundation's objection to the joint official liquidators?

A. I don't know that.

Q. Did you ever consider doing that?

A. I will after today.

Q. Do you know if anybody asked the joint official liquidators to make an appearance in this case?

A. I don't know that.

Q. Did you ever ask the joint official liquidators to appear in this case?

A. We've already precluded that we don't know whether I've actually talked to them about this case, so that's moot; right?

Q. Okay. Do you believe that Mr. Patrick was required to obtain the joint official liquidators' authorization before entering into the settlement agreement?

A. I don't know that.

ATTORNEY OKIN: Object to the form of the question.

///

BY ATTORNEY MORRIS:

Q. I'm sorry, ma'am. What did you say?

A. I don't know that.

Q. Did you have any reason to believe that Mr. Patrick was required to obtain the joint official liquidators' consent before entering into this settlement agreement?

A. I don't know.

Q. Do you have any reason to believe that the joint official liquidators have any authority to reject the proposed settlement?

ATTORNEY OKIN: Object to the form.

A. I don't know.

BY ATTORNEY MORRIS:

Q. A little bit further down, towards the bottom of this paragraph, there's a reference, it says that the Court-appointed fiduciary, quote, may -- withdrawn.

It says:

"Indeed, many of Mr. Patrick's actions, including the insertion of newly created entities into the fund's structure for the apparent purpose of diverting charitable assets, will now be subject to the scrutiny of an

independent, Court-appointed fiduciary and may be subject to clawback or other avoidance actions in the Cayman liquidation or such other tribunal as has jurisdiction."

Do you see that?

A. No. You need to scroll down on the --

Q. It's just at the end of paragraph 32 here. It's the last sentence of 32.

A. And so what's your question?

Q. I just want to make sure that you and I are on the same page, because I'm going to ask some questions about this sentence.

A. Yeah.

Q. You're not an expert in Cayman Islands law; fair?

A. Fair.

Q. You're not a lawyer, are you?

A. Nope.

Q. You're not an expert on clawback or other avoidance actions, as that phrase is used in the Dallas Foundation's objection in paragraph 32; fair?

A. Fair.

Q. Do you have any understanding as to

what facts must be established to succeed in a clawback or other avoidance action?

A. Repeat the question.

Q. Do you have any understanding as to what facts somebody needs to prove in order to succeed on a clawback or other avoidance action?

A. Not in a corporate setting.

Q. Is there any other type of setting that would pertain to the Dallas Foundation's claims against Mr. Patrick?

A. No.

Q. Okay. Do you have a view as to the likelihood that the Dallas Foundation might succeed in clawing back or asserting another avoidance action to set aside the settlement agreement if it's approved by the bankruptcy court?

ATTORNEY OKIN: Object to form.

A. I don't know.

BY ATTORNEY MORRIS:

Q. And you don't have a view; is that fair?

A. No, I just really don't know --

Q. If we could --

A. -- whether we will.

Q. Okay. You would have to speculate; is that fair?

A. Yes.

ATTORNEY MORRIS: Can we scroll down to paragraph 33, please.

ATTORNEY OKIN: John, how much longer do you anticipate going? We talked about these being an hour and a half.

ATTORNEY MORRIS: Correct. And we started at exactly 2:37 New York time. I expect to finish at 4:07 New York time.

ATTORNEY OKIN: Are we doing additional questions from anybody else?

ATTORNEY MORRIS: Mr. Phillips, do you have any questions?

You're on mute, sir.

We'll be done in the 90 minutes.

ATTORNEY PHILLIPS: Not at this time.

ATTORNEY MORRIS: Okay. Thank you.

BY ATTORNEY MORRIS:

Q. So in paragraph 33, it says at the end, quote: "Even if approved by this Court, consummation of the settlement is not likely to buy the peace the debtor now seeks."

Do you see that?

A. Yes.
Q. Are you aware of anything in the Dallas Foundation's objection that suggests the Highland parties have done anything wrong here?
A. Repeat that question.
Q. Is there anything in the Dallas Foundation objection that you read and authorized to be filed that suggests that any of the Highland parties have done anything wrong?
ATTORNEY PHILLIPS: I'm going to object to that question because you said that she read and authorized it to be filed.
ATTORNEY MORRIS: I apologize. I apologize. Thank you.
BY ATTORNEY MORRIS:
Q. Let me start again, Ms. Diaz.
Do you recall whether there's anything in the Dallas Foundation objection that asserts that any of the Highland parties have done anything wrong in connection with the entry into the settlement agreement?
A. I don't recall.
Q. Are you aware of any facts that cause you to believe that any of the Highland entities did anything wrong in negotiating and entering

into the settlement agreement?
A. I don't know.
Q. If you're not aware of any facts suggesting that Highland has engaged in wrongdoing, do you know why the Dallas Foundation has informed the Court that consummation of the settlement is not likely to buy the peace the debtor now seeks?
ATTORNEY OKIN: Object to form.
A. I'll abstain from answering that.
BY ATTORNEY MORRIS:
Q. That's not a thing, respectfully.
ATTORNEY MORRIS: If -- Matt, if you want to just help your witness out.
ATTORNEY OKIN: You want me to give her the answer?
BY ATTORNEY MORRIS:
Q. Well, there's no abstention, so you have to answer the question, ma'am.
ATTORNEY OKIN: As best you can answer it, Ms. Diaz, answer it. If you can't answer it, tell him you can't answer it.
A. And I'll just say, when you say "Highland," you want to be more specific?
///

BY ATTORNEY MORRIS:
Q. Sure. Highland Capital Management, LP, the Highland Claimant Trust or the Highland Litigation Subtrust.
A. And so repeat the question.
Q. Okay. If you don't have any facts suggesting that they've done anything wrong, why did the Dallas Foundation inform the Court, at the end of paragraph 33, that consummation of the settlement is not likely to buy the peace the debtor now seeks?
ATTORNEY OKIN: Object to form.
BY ATTORNEY MORRIS:
Q. You can answer.
ATTORNEY OKIN: If you can answer it.
A. Again, I'll just repeat that the peace that the debtor seeks will be tainted because of the harm that will come to the Dallas Foundation.
BY ATTORNEY MORRIS:
Q. Anything else?
A. No.
Q. Is the Dallas Foundation considering bringing any claims against Highland, the Highland Claimant Trust or any of its fiduciaries?

A. (No audible response.)
Q. I'm sorry, ma'am. Did you answer?
A. I did. I said, "No."
Q. Thank you.
In paragraph 34 --
ATTORNEY MORRIS: Yeah, right there. Thank you Nathan --
BY ATTORNEY MORRIS:
Q. -- it says, quote: "There is ample evidence that Mr. Patrick has acted and is acting well outside the scope of his authority and fiduciary obligations."
Have I read that correctly?
A. Yes.
Q. Focusing solely on the settlement agreement, do you have any reason to believe that Mr. Patrick is acting outside of the scope of his authority in entering into the settlement agreement on behalf of each of the HMIT entities?
ATTORNEY OKIN: Object to form.
A. And I don't know.
BY ATTORNEY MORRIS:
Q. Okay. Focusing solely on the settlement agreement, do you have any reason to believe that Mr. Patrick is breaching his

fiduciary obligations by entering into the settlement agreement on behalf of each of the HMIT entities?

A. I don't know.

ATTORNEY MORRIS: Can we scroll up to paragraph 16, please.

Do you see paragraph 16 concerns material nonpublic inside information?

A. Yes.

Q. And was Mr. Dondero the source of the information in this particular paragraph?

A. No.

Q. Who was?

A. My attorneys.

Q. That's how you learned about it; is that fair?

A. Yes.

Q. Do you see there's a reference to a put option in the last line of this paragraph?

A. Yes.

Q. Are you generally familiar with that put option?

A. Yes.

Q. And do you know who the counterparty is for that put option?

A. No, I don't.
Q. You don't know?
A. No.
Q. Did you ever ask?
A. I'm sure when we --
ATTORNEY OKIN: Louis, you're not on mute, by the way.
BY ATTORNEY MORRIS:
Q. Go ahead, Ms. Diaz. I'm sorry.
A. I'm sure when we received the contribution, we asked. And you can ask our CFO that question.
My understanding from the original call in Labor Day weekend to our attorney was that we should call the put. That was a 10-year, I believe, and this would have been at year 7; and we didn't understand why he would be calling to ask that. And ...
Q. Has the Dallas Foundation exercised the put as of today?
A. Absolutely not.
Q. Why not?
A. We stopped all activity because this, again, was the beginning of, why is somebody doing that, not giving us the information, not

talking to us directly; and that -- and at advice of counsel, we -- we have been very careful with any of our activities to date.

Q. And do you know what material nonpublic inside information Mr. Patrick supposedly misused?

A. I'll just tell you the quote he gave us, which was Jim Dondero's spiraling out of control and you need to do this because nothing appears to be what it is.

Q. He didn't tell you who -- withdrawn.

Is that your basis for alleging that he had material nonpublic inside information --

A. I'll -- well, I guess, I can't abstain. I don't know.

Q. Do you have any other --

A. If my --

Q. I'm sorry.

A. Well, if my attorney says, "Don't do that," we don't do it.

Q. I appreciate that. I don't quarrel with you. I'm just trying to learn facts here.

Can you identify any information that you believe Mr. Patrick had that constitutes material nonpublic inside information, as that

phrase is used in the Dallas Foundation's
objections?
A. Right.
ATTORNEY OKIN: Hold on, John. I assume you're not -- I assume we're talking about information that's no longer nonpublic?
ATTORNEY MORRIS: If -- if you all want to mark this -- I don't know what it is, Matt, so I can't say. And it's not my information either. So I'm happy to mark it confidential if you really prefer.
ATTORNEY OKIN: I -- I don't even know if she knows the answer to the question.
A. I don't know the answer to that. But I will tell you that we quickly got a call from Skyview saying that Mark Patrick was no longer employed there and that that was confidential, yeah, insider information.
BY ATTORNEY MORRIS:
Q. Oh, so somebody at Skyview told you that; is that fair?
A. That's fair.
Q. And who was that at Skyview?
A. Well, it was an attorney for Skyview.
Q. Was it D.C. Sauder?

A. No. A woman.

Q. Okay. So a female attorney at Skyview told you that Mark Patrick had been terminated and that he had material nonpublic inside information.

Do I have that right?

A. That they were investigating him and understood that we had called the -- he had called -- told us to call the put option.

Q. Okay. But as you sit here today, you're not able to tell me what material nonpublic inside information Mr. Patrick supposedly had; fair?

A. Fair.

ATTORNEY MORRIS: Ma'am, thank you so much. I appreciate your time.

Matt, thank you for a professional deposition.

We'll see you all, I guess, in a little bit for the next deposition.

Thanks, folks.

THE COURT REPORTER: Do you want a copy of the transcript?

ATTORNEY OKIN: Yes, rushed, please. Whenever John gets it.

ATTORNEY PHILLIPS: Yes, expedited, like everybody else.

THE COURT REPORTER: Mr. Lang, do you want a copy of the transcript?

ATTORNEY LANG: Yes, please.

(Whereupon, at 3:08 p.m. Central Time, the proceedings concluded.)

INSTRUCTIONS TO DEPONENT

After reading this volume of your deposition, indicate any corrections or changes to your testimony and the reasons therefor on the Errata Sheet supplied to you and sign it. DO NOT make marks or notations on the transcript volume itself.

# E R R A T A

I wish to make the following changes, for the following reasons:

Page Line

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

_____ _____ CHANGE: _________________________________

REASON: ____________________________________________

C E R T I F I C A T I O N

I hereby certify that I have read the foregoing transcript of my deposition testimony, and that my answers to the questions propounded, with the attached corrections or changes, if any, are true and correct.

-----------------------------------
JULIE DIAZ

CERTIFICATE OF SHORTHAND REPORTER

I, Gail Inghram, Registered Diplomate Reporter, Certified Realtime Reporter, Realtime Systems Administrator, CA-Certified Shorthand Reporter No. 8635, and Notary Public, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.



Gail Inghram,
BA, RDR, CRR, RSA, CA-CSR No. 8635

**WORD INDEX**


< $ >
**$25** 43:2 56:20
**$300** 42:24

< 1 >
**1** 6:14 63:8, 9
**1:37** 1:16 2:11
**10** 12:20
**10010** 3:24
**10017-2024** 3:16
**10-year** 76:15
**11** 1:8
**1113** 4:10
**15** 6:18
**16** 75:6, 7
**1600** 5:9
**1700** 4:18
**19-34054-sgj11** 1:5
**1st** 10:1

< 2 >
**2:37** 70:10
**2011** 21:9
**2019** 10:9
**2024** 10:1
**2025** 1:15 2:10
**212.849.7615** 3:25
**214.817.4500** 4:20
**22** 1:15 2:10
**225.381.9643** 5:11
**22nd** 3:23
**2390** 4:18
**240** 4:10

< 3 >
**3:08** 80:6
**300-plus** 56:19
**301** 5:9
**30th** 29:14
**310.277.6910** 3:17
**32** 63:6, 14 68:8, 9, 23
**33** 70:5, 21 73:9
**34** 74:5
**34th** 3:15

< 4 >
**4:07** 70:11
**40** 27:24 29:6

< 5 >
**51** 3:23

< 6 >
**63** 6:14

< 7 >
**7** 76:16
**70801** 5:10
**713.228.4100** 4:12
**75201** 4:19
**77002** 4:11
**780** 3:15

< 8 >
**8** 6:6
**8635** 1:22 84:8, 21

< 9 >
**90** 70:17
**9th** 65:25

< A >
**able** 48:23 79:11
**Absolutely** 76:21
**abstain** 18:7 72:10 77:15
**abstention** 72:18
**accepting** 44:12
**access** 28:2
**accommodate** 9:15
**accounting** 24:15
**accounts** 25:18, 25 26:2, 5, 8 27:18, 21 29:24 30:3, 6, 10, 13, 18, 23 44:16, 24 45:6 61:17, 21 62:2
**acted** 74:10
**acting** 17:24 18:5, 23 31:6 74:10, 17
**action** 69:2, 6, 15
**actions** 31:12 67:21 68:3, 21
**activities** 22:23 27:25 77:3
**activity** 14:1 24:12, 25 25:1 27:23 65:23 76:23
**ADAMS** 4:9
**additional** 20:24 70:13
**Administrator** 84:7
**advice** 19:18 77:1
**aegis** 58:3
**affidavit** 22:13
**affiliated** 9:21 11:21 45:19
**affiliates** 10:14, 15 11:25 53:6
**affirmed** 8:6
**afternoon** 8:12
**agendas** 16:7
**ago** 50:17 65:1
**agree** 33:21
**agreed** 23:18
**agreement** 10:18, 23 11:6, 9, 22 14:3, 6, 7 36:15, 18, 20, 22, 25 37:9, 12, 14, 16 38:5, 20 39:1, 10, 22 40:10, 19, 25 42:7 44:6 46:2, 17, 21 51:1, 11, 15, 18 53:4, 9, 19, 22 54:7, 10, 25 57:5, 15, 24 58:8 59:20, 25 60:5, 18 62:3 66:21 67:7 69:16 71:21 72:1 74:16, 19, 24 75:2
**ahead** 56:11 76:9
**ahurt@kellyhart.com** 5:7
**alleging** 77:12
**allocated** 29:3
**allow** 9:2, 7
**AMELIA** 5:6
**amount** 23:18
**ample** 74:9
**ancillary** 65:23
**annuities** 26:10, 21, 25 27:4, 6, 14 29:7
**annuity** 26:13, 17 28:18, 21
**ANSWER** 7:3 9:4, 8 18:9 19:17, 19 32:25 33:9 35:21 39:11, 16 42:8 43:11 46:9, 12 48:24 52:2 55:6 56:11 72:16, 19, 20, 21, 22 73:14, 15 74:2 78:13, 14
**answering** 18:7 72:10
**answers** 48:21 83:8
**anticipate** 70:7
**anybody** 18:4, 22 25:9 30:1, 20 39:7, 19, 24, 25 40:13 46:7, 14 60:11 66:3, 9 70:13
**apologize** 20:15 33:2 59:4 65:16 71:13, 14
**apparent** 67:23
**appear** 63:16 66:14
**appearance** 44:17 66:10
**appeared** 3:2 32:1 33:5 44:14
**appears** 77:10
**appointed** 63:22 64:1
**appreciate** 18:10 25:3 39:18 49:4 77:21 79:16
**appreciated** 57:25
**approval** 30:21
**approve** 29:12 61:9, 13, 21
**approved** 36:16 37:22 38:5, 20 41:24 42:7 43:18 65:4 69:16 70:22
**Approving** 6:17
**approximately** 2:11
**April** 10:1
**arising** 54:10
**arm's-length** 51:3, 19
**articulate** 56:2
**aside** 69:15
**asked** 25:4 32:22 39:7 46:6, 14 59:4 66:9 76:11
**asking** 25:3 29:16 40:12 48:18 49:11
**asserting** 69:14

**assertion** 53:3
**asserts** 71:18
**asset** 22:11 48:5
**assets** 18:16 24:25 26:9 36:17, 19 37:5, 8, 21 38:4, 9, 11, 19, 25 39:9, 21 40:8, 15, 24 41:3, 8, 18 42:6, 24 44:3, 5, 7 45:25 46:16 47:13, 23 48:3 53:15, 16 56:14, 16 57:1 58:3 67:24
**assume** 78:5
**assumed** 58:16
**assuming** 36:19 48:2 54:11
**Atlas** 41:4, 9, 12, 16 42:1 47:7 48:6 49:13
**attached** 63:11 83:9
**Attorney** 6:6 8:11, 16 19:16, 22 31:5, 14, 17, 18, 20, 24 35:19, 20 36:3, 5, 11, 13 37:24 38:1, 7, 14 39:2, 4, 11, 15 41:1, 6 42:16, 18 43:23 44:1 46:3, 5, 8, 10, 11 48:10 49:3, 5, 24 50:1, 13, 15 51:25 52:1, 8, 9 54:16, 18 55:1, 5, 14, 16, 21, 23 56:5, 7, 9 57:2, 7, 11, 17, 20 58:9, 12 59:10, 13 60:7, 10, 19, 22 62:4, 7, 11 63:5, 12 64:4, 8, 11 66:23 67:1, 12, 14 69:18, 20 70:4, 6, 9, 12, 14, 18, 19, 20 71:10, 13, 15 72:9, 11, 13, 15, 17, 20 73:1, 12, 13, 15, 19 74:6, 8, 20, 22 75:5 76:6, 8, 14 77:19 78:4, 7, 12, 19, 24 79:2, 15, 24 80:1, 5
**attorneys** 75:14
**audible** 74:1
**authority** 57:4, 9, 14 58:15 67:10 74:11, 18
**authorization** 31:2 66:20
**authorized** 19:3 37:15 52:21, 25 53:25 54:19 63:17 71:7, 12
**authorizing** 12:6
**available** 26:17
**Avenue** 3:15, 23 4:18
**avoidance** 68:3, 21 69:2, 6, 15
**aware** 8:20 10:7, 11, 17 11:3, 4, 8, 11, 12, 20 12:9, 23 22:12 23:7 24:3, 6 25:16 30:12 34:12, 16 36:14 47:13, 23 48:5 49:16 50:16, 25 51:4, 8 53:18 54:6 55:11, 17 63:21 64:16, 18 65:2, 19, 22 71:2, 23 72:3

**< B >**
**BA** 1:22 84:21
**back** 10:8 47:22 69:14
**backdrop** 56:17
**bad** 62:18
**BANKRUPTCY** 1:1 10:8, 12 32:2, 6 33:6, 15 34:13 38:6 44:14, 18, 22 45:1 50:17 69:16
**Barbara** 20:11, 22 21:3, 7, 12, 16 22:8
**BARTLETT** 4:9
**based** 53:2 56:12
**basically** 13:14
**basis** 13:25 43:7 53:17 55:24 56:3 77:12
**Baton** 5:10
**beginning** 2:11 76:24
**behalf** 3:4, 19 4:3, 14 5:3 11:9, 13 12:10 17:25 18:5, 23 23:3, 14 24:8, 9, 23 25:6, 17 27:17, 21 29:23 30:2, 6, 7, 22 31:22 46:20 54:1, 20 57:5, 15 58:22 59:8 74:19 75:2
**behavior** 42:25
**believe** 13:23 18:4 20:1 32:3, 15, 20 35:15, 25 36:7 37:19 38:2 40:22 41:8, 22 50:10 51:22 54:2 57:3 58:20 59:5, 14, 21 62:25 66:18 67:4, 9 71:24 74:16, 25 76:16 77:24
**believed** 18:23
**best** 14:22 21:18, 22 22:3 27:5 32:4, 9 33:4 35:3, 7, 10 72:20
**bit** 62:20 67:15 79:20
**block** 31:21
**bottom** 67:16
**Bradshaw** 22:8
**breaching** 74:25
**break** 9:14, 16
**bring** 50:18
**bringing** 73:23
**business** 23:21 49:18 58:1
**buy** 70:24 72:7 73:10

**< C >**
**CA-Certified** 84:7
**CA-CSR** 1:22 84:21
**calendar** 65:5, 6
**call** 63:7 76:14, 15 78:15 79:9
**called** 10:5 12:10 20:7, 19 34:13, 17 35:6, 12 79:8, 9
**calling** 76:17
**CAPITAL** 1:6 3:4 8:16 10:5, 7 21:9 34:24 35:2, 16, 25 36:7 50:19 51:24 52:18 53:5 55:19 73:2
**careful** 77:2
**carefully** 18:20
**Carrera** 22:7
**Case** 1:5 32:2, 6 33:6, 15 42:22 66:11, 14, 17 84:16
**cases** 65:14
**cash** 27:3, 6 36:17 44:10
**cause** 71:23
**caused** 29:22
**caution** 19:17
**Cayman** 20:4 21:21 22:13 23:1 42:23 56:18 63:22 64:13 68:3, 15
**ceased** 23:22 24:12
**Central** 1:16 2:11 80:6
**CEO** 9:23, 25 10:2 22:6, 7, 8 31:3
**CEOs** 22:4
**certain** 8:19 10:14 25:18 38:19 50:18 62:24
**Certainly** 47:6
**CERTIFICATE** 84:2
**Certified** 2:14, 15 84:6
**certify** 83:6 84:10
**cetera** 43:17
**CFO** 15:22 76:11
**chance** 63:2
**change** 42:10 82:6, 8, 10, 12, 14, 16, 18, 20, 22
**changes** 24:16 50:11 53:14 81:3 82:3 83:9
**changing** 47:10
**Chapter** 1:8
**charitable** 13:23 14:1 24:25 26:12 38:8 42:24 57:1 67:24
**chart** 48:13
**chief** 31:3

**City** 20:11, 20 21:3, 5, 6, 11, 16 22:7
**claim** 32:5, 18 33:14 44:21, 25 53:4, 7 55:12, 18
**Claimant** 3:5 32:12, 16, 21 33:20, 24 34:14, 17, 20 35:7, 13 45:4, 7, 14 52:5 55:20 73:3, 24
**claimed** 53:12
**claims** 50:18 69:10 73:23
**clarify** 10:20
**CLARITY** 7:22
**clawback** 68:2, 20 69:2, 6
**clawing** 69:14
**clear** 33:3 34:5 65:10
**clearly** 31:21
**clients** 31:8 62:17
**cold** 48:15
**come** 73:18
**commenced** 21:21 22:15
**commitment** 23:23
**common** 23:21
**communicate** 24:12
**communicated** 58:16, 17, 21 64:22
**communication** 24:14 28:3
**community** 14:19 20:13 21:2, 4 22:9, 14
**company** 10:4
**complete** 37:4
**compliance** 38:10
**concern** 42:5 54:14, 23
**concerned** 27:24 42:20, 22 65:23
**concerning** 51:14
**concerns** 75:7
**concluded** 80:7
**confer** 25:10
**confidential** 78:11, 17
**confused** 64:6
**confusing** 16:4
**connection** 8:18 23:25 52:13 71:20
**consent** 16:7 30:21 57:23 59:7 62:2 67:6
**consider** 66:7
**considering** 73:22
**constitutes** 77:24
**consult** 9:17
**consummation** 70:23 72:6 73:9
**Cont'd** 4:1 5:1
**contend** 52:17 53:21
**contends** 50:25 53:18
**context** 18:11
**continue** 49:3
**contractual** 13:21 34:23 35:2, 6, 11 45:10, 13
**contractually** 58:14
**contribution** 43:14 76:11
**contributions** 13:24 14:9 21:8
**control** 56:15 60:24 61:6, 17 77:9
**controlled** 47:17 49:12
**controls** 47:20
**conversations** 39:13
**convey** 46:16
**conveying** 19:18
**copy** 25:13 66:3 79:23 80:4
**corporate** 50:2 69:7
**corporations** 64:17
**correct** 15:1 16:2 32:7 33:8, 16, 20 47:24 52:19 70:9 83:10 84:11
**corrections** 81:3 83:9
**correctly** 74:13
**counsel** 19:19 29:13 39:13 77:2 84:15
**counterpart** 18:13
**counterparty** 75:24
**couple** 50:16
**COURT** 1:1 10:12 37:9, 23 38:6 43:18 50:17 63:23 69:17 70:22 72:6 73:8 79:22 80:3
**Court-appointed** 67:17 68:1
**COVID** 62:14
**CRAWFORD** 4:17
**created** 67:22
**Crown** 4:3 6:15 25:18, 21, 22 26:9 27:18, 25 28:5, 9, 15 30:13, 16, 21 31:1, 9, 12, 23 34:2, 7 37:6, 8 41:25 43:1 44:13, 20 45:3, 9, 12, 20, 24 46:15 49:9, 10, 20 57:23 58:7 59:7, 15, 22 60:15 61:5, 12, 16, 20
**CRR** 1:22 84:21
**cumbersome** 62:21
**CURRY** 4:7, 9

**< D >**
**D.C** 78:25
**DAF** 20:8 64:15
**DALLAS** 1:3 4:3, 19 6:14 8:18 9:21, 25 10:11, 18, 23 12:3, 11, 15, 16, 18, 21 13:5, 7, 8, 10, 13, 15, 18, 20, 22 14:4, 8, 9, 13, 23 15:2, 6, 8, 9, 19 16:3, 4 17:5, 21, 25 18:1, 6, 24 20:12, 23, 25 21:2, 5, 6, 11, 16 22:20 23:14, 24 24:4, 7, 8, 21, 22 25:4, 5, 8, 16, 25 27:1, 7, 11, 12, 16, 20 28:4, 8, 21, 23 29:23 30:1, 7, 20 31:7, 9, 15, 22, 25 32:5, 15, 20 33:5, 14, 19, 23 34:19, 22 35:1, 5, 11, 18 36:2, 9 37:10, 20 38:3, 24 39:8, 20 40:8, 17, 22 41:22 42:4, 11, 12, 13 43:20, 21 45:21 48:25 49:6, 15, 18, 23 50:4, 12 52:16 53:3, 18, 21 54:1, 13, 20, 22 55:12, 18, 25 56:4 57:22 58:6, 21 59:6, 15, 17 60:2, 23 61:8 62:9, 22 65:19 66:4 68:22 69:9, 13 71:3, 6, 18 72:5 73:8, 18, 22 76:19 78:1
**D'AMBRA** 5:14
**date** 56:15 77:3
**DAVID** 4:7
**day** 43:12 65:9 76:14
**dcurry@okinadams.com** 4:8
**de** 22:11
**dealings** 49:18
**Debbie** 22:6
**Debtor** 1:8 70:24 72:8 73:11, 17
**decided** 43:19
**decision** 17:6 25:11
**decisions** 56:24
**declaration** 22:13, 20 23:1
**decline** 29:17, 19, 22
**Defendant** 4:3, 14
**definitively** 40:5
**Delaware** 64:17, 20
**DEMO** 3:8
**DEPONENT** 81:1
**deposed** 8:22
**DEPOSITION** 1:13 2:9 7:1 8:17 11:18 12:1 45:17 79:18, 20 81:3 83:7
**depositions** 62:16
**described** 37:21 42:10 43:9 50:4
**detail** 65:14
**DIAZ** 1:14 2:9 6:5 8:5, 12 19:17 31:10, 25 36:22 39:12 46:9, 12 48:16 58:13 62:12 64:4 71:16 72:21 76:9 83:12
**different** 43:16 48:21
**diminished** 38:11
**Diplomate** 2:14 84:5

**DIRECT** 7:23 32:20 59:18, 23
**directed** 21:25 22:2
**direction** 2:16
**directly** 28:22 49:16 77:1
**disburse** 41:18 42:1
**disbursement** 28:17
**disclosed** 24:4
**disclosing** 39:13
**discussions** 20:1
**disrespectful** 65:16
**DISTRICT** 1:2
**diverting** 67:24
**DIVISION** 1:3
**document** 41:7 52:24 55:2 63:1
**DOCUMENTS** 7:7 16:16 40:21 62:19
**doing** 31:22 56:18 66:7 70:12 76:25
**dollars** 56:19
**donation** 13:2, 4
**donations** 13:22
**Dondero** 12:24 13:1, 3, 4 14:12 15:21 16:7, 25 17:4, 20, 24 18:4, 22 19:6 21:10, 25 22:12 25:10 40:7 75:10
**Dondero's** 23:1 77:8
**donor-advised** 13:13
**dramatic** 24:16
**Dugaboy** 4:14
**duly** 8:6
**duties** 35:17 36:1, 8 49:22
**duty** 50:12 58:5

**< E >**
**earlier** 27:22 50:3
**effectuated** 50:10
**effectuates** 13:14
**either** 38:11 59:6 78:10
**EMANUEL** 3:22
**employed** 78:17 84:15
**employee** 45:21
**Empower** 12:10, 15, 16, 21 13:5, 7, 20 14:4, 9, 13, 23 15:2, 9, 19 16:3, 4 24:8, 10, 21 25:4, 8 27:1, 7, 12 28:21
**engaged** 18:13 72:4
**ensure** 38:12
**enter** 22:10 57:4, 10, 14 61:23
**entered** 51:1 61:10, 13
**entering** 57:24 58:7 59:8 62:2 66:20 67:6 71:25 74:18 75:1
**entities** 11:21 12:1 17:7, 8 20:16 21:20, 25 22:2 36:15, 16 41:24 43:16 46:1, 19, 20, 25 47:3 48:13 49:8, 11, 12, 13, 14, 17, 22 50:11 51:2, 7 54:7, 8 57:6, 16 58:5 59:9, 19, 24 60:4, 17, 25 61:6, 10, 14, 18, 22 62:1 64:17, 19 65:4 67:22 71:24 74:19 75:3
**entitled** 14:8 38:24
**entity** 12:10, 13 13:11 15:17 17:1, 3 20:7 34:13, 17 35:6, 12 41:12, 16 47:24 49:10 55:13 63:25 64:3, 12
**Entry** 6:16 71:20
**erosion** 56:14
**Errata** 81:5
**ESQ** 3:6, 8, 10, 12, 20 4:5, 7, 15 5:4, 6
**essence** 24:11
**essentially** 27:23
**established** 69:1
**et** 43:17
**everybody** 80:2
**evidence** 74:10
**exactly** 70:10
**EXAMINATION** 6:4 8:10
**examined** 8:8
**excuse** 16:1 18:8
**executed** 10:22
**exercise** 15:11
**exercised** 76:19
**Exhibit** 63:9
**existence** 12:19
**expect** 70:10
**expectations** 42:12
**expected** 41:13
**expedited** 80:1
**expenses** 23:19, 24
**expensive** 62:17
**expert** 68:15, 20
**expressed** 54:23
**extent** 48:25

**< F >**
**fact** 56:13
**facts** 17:18, 21 51:13, 17 55:11, 17 57:12 69:1, 5 71:23 72:3 73:6 77:22
**fail** 9:8
**fair** 9:5, 19 19:7, 8 26:18 32:14, 17 33:11 34:18 37:17, 18 40:13 42:4 43:5 44:8 50:5, 23, 24 52:11, 13, 25 54:15 59:2, 3 65:12 68:16, 17, 23, 24 69:22 70:2 75:16 78:21, 22 79:13, 14
**fairly** 62:23
**fall** 24:13
**familiar** 10:4 12:13 14:25 15:25 19:2, 3 26:4 36:24 46:24 47:2, 4 52:24 64:21 75:21
**familiarity** 22:19 47:5
**Family** 15:24 16:22 24:10 27:2, 13 28:22
**fault** 34:4
**feeds** 34:1
**feel** 48:8
**female** 79:2
**fiduciaries** 24:24 73:25
**fiduciary** 28:13 38:9 67:17 68:1 74:12 75:1
**file** 24:7, 22 25:5 27:20 29:23 30:2
**filed** 10:8, 12 12:4, 10 22:12 24:9 25:14, 17 27:17 30:7 31:7, 15 32:2, 5 33:6, 14 42:3 44:17, 20, 25 50:16 52:25 65:25 71:8, 12
**filing** 12:7 19:9 22:10 30:22 52:14, 21 54:1, 20 58:18, 22
**finance** 29:3
**financial** 84:17
**find** 48:20 55:3
**fine** 55:4 64:9
**finish** 9:3, 7 70:11
**first** 8:6
**first-quarter** 29:13
**flag** 24:17
**Floor** 3:15, 23
**flow** 13:12 26:14 37:6, 8 41:4 53:13
**flowed** 47:7
**Flows** 26:15 29:2 56:16
**focus** 49:11
**focused** 34:5
**Focusing** 74:15, 23
**folks** 79:21
**following** 82:3, 4
**follows** 8:8
**foregoing** 83:7 84:9, 10
**form** 35:19 36:3, 11 37:24 38:7 39:2 41:1 42:16 43:23 46:3 49:24 50:13 51:25 52:8 54:16 55:1, 14, 21 56:5, 10 57:7, 17 58:9 59:10 60:7, 19 62:4 66:23 67:12 69:18 72:9 73:12 74:20

**formal** 22:10
**Formally** 10:1
**formation** 18:12
**formed** 12:21 34:14, 18 64:19
**forth** 17:18, 21 42:12 44:5
**forward** 38:12
**found** 29:16
**Foundation** 4:3 6:15 9:22, 25 10:3, 12, 18, 23 12:11, 15, 16, 18, 22 13:5, 7, 8, 11, 14, 21, 22 14:4, 5, 8, 14, 23 15:2, 4, 6, 8, 9, 19, 24 16:4, 22 18:1, 6, 24 20:11, 12, 14, 21, 22, 23, 25 21:2, 3 22:9 23:14, 25 24:7, 8, 10, 21, 22 25:4, 5, 8, 17 27:1, 2, 8, 11, 12, 13, 16, 20 28:4, 8, 22, 23 29:23 30:1, 7, 20 31:7, 9, 16, 22 32:1, 5, 15, 20 33:5, 14, 19, 23 34:19, 22 35:1, 5, 11, 18 36:2, 10 37:10, 20 38:3, 24 39:8, 14, 20 40:8, 17, 23 41:22 42:14 43:20, 21 45:22 49:6, 15, 18, 23 50:12 52:16 53:3, 18, 21 54:2, 13, 21, 23 55:12, 18 57:23 58:6, 21 59:15, 17 60:2, 23 61:8 69:13 71:7, 18 72:5 73:8, 18, 22 76:19
**foundations** 21:2, 4, 12 26:18 29:4
**Foundation's** 8:18 12:3 17:5, 22 22:14, 20 24:5 26:1 42:5, 11, 12 49:1 50:4 55:25 56:4 59:7 62:9, 22 65:20 66:4 68:22 69:9 71:3 78:1
**four** 21:1 51:9
**fully** 63:2
**fund** 13:8, 13 14:6, 7 23:20, 23, 24 26:11 41:4, 9 53:14
**funded** 26:24
**fundholder** 14:17
**fundholders** 14:20 23:19
**funding** 23:2, 7, 10, 13, 17
**funds** 14:2 16:3 43:1 53:13
**fund's** 67:22
**further** 67:15
**future** 53:16

**< G >**
**Gail** 1:21 2:13 84:5, 21
**gdemo@pszjlaw.com** 3:9
**generally** 11:24 36:24 50:5 75:21
**gentleman** 11:8 50:19
**give** 43:19 49:14 55:12 56:24 63:2 72:15
**given** 58:15
**giving** 76:25
**Global** 4:3 6:15 25:18, 21, 22 26:9 27:18, 25 28:5, 9, 15 30:13, 16 31:1, 9, 23 34:2, 7 37:6, 8 41:25 43:1 44:13, 20 45:3, 9, 12, 20, 24 46:15 49:9, 10, 20 58:7 59:15, 22 60:15 61:5, 12, 16, 20
**Global's** 30:21 31:12 57:23 59:7
**go** 23:21 28:21, 25 41:9 56:11 76:9
**going** 9:1 40:9 45:16 47:22 48:16, 20, 21 51:8 62:7, 24 68:12 70:7 71:10
**Good** 8:12 62:13, 14
**good-faith** 51:3, 19
**governance** 13:25 15:3 29:1
**GPs** 43:17
**grant** 13:12, 14
**grant-making** 12:18 18:15
**grants** 14:18
**GREGORY** 3:8
**ground** 8:24
**guess** 30:11 48:3 77:14 79:19

**< H >**
**half** 70:8
**HALL** 5:18
**HALLMAN** 5:8
**happening** 22:24 42:25 56:25
**happens** 42:5, 20 56:22
**happy** 9:15 78:10
**harm** 73:18
**HART** 5:8
**HAYLEY** 3:12
**head** 39:6 50:8
**hear** 8:13
**heard** 32:11
**held** 2:9 25:18
**he'll** 48:23
**help** 48:14 72:14
**hereto** 63:11
**Hernandez** 31:4
**high** 26:6, 7 37:1, 2 38:18
**HIGHLAND** 1:6 3:4, 19 6:12, 14 8:16 10:5, 7, 14, 22 17:7 20:12 21:6, 9 32:1, 6, 11, 16, 21 33:6, 15, 20, 23 34:6, 10, 13, 17, 20, 23 35:2, 7, 12, 16, 25 36:7, 15 41:24 43:4, 8, 12 44:14, 17, 21, 25 45:1, 4, 7, 10, 13 46:16 50:19, 25 51:6, 23 52:5, 18 53:5 54:8 55:13, 19 58:18, 23 63:8, 9 65:4, 8 71:4, 9, 19, 24 72:4, 24 73:2, 3, 23, 24
**Highland/HMIT** 19:15, 24
**Highland's** 65:2
**HMIT** 11:17, 21, 25 17:7 36:16 37:21 38:4, 18, 25 39:9, 21 40:9, 24 41:8, 19, 24 42:6, 21 45:25 46:1, 16, 19 48:5 49:8, 10, 22 50:11, 16 51:2, 7 54:7 57:6, 15 58:4 59:9, 19, 23 60:4, 16, 24 61:6, 10, 14, 18, 22, 25 64:16, 18 65:4 74:19 75:3
**HMIT/Highland** 40:18 41:14
**hold** 16:12 78:4
**Holdco** 20:8 64:15
**holds** 47:24
**hour** 70:8
**Houston** 4:11
**Hunter** 5:3 10:15 11:4, 10, 14, 16 34:1, 9 37:5 41:3 47:11, 14, 22 48:9, 17 49:13 53:22 54:4 58:22
**HURT** 5:6
**hwinograd@pszjlaw.com** 3:13

**< I >**
**idea** 19:9, 12, 13, 14, 23
**identification** 63:10
**identified** 21:13 25:25 41:17
**identify** 10:21 11:1 15:20 26:23 30:5 41:11 64:12 77:23
**imagine** 65:13
**impact** 42:2
**impacted** 41:23
**impacts** 43:1
**important** 9:2
**including** 67:21
**income** 26:11, 13 27:7
**independent** 68:1

**INDEX** 7:1
**indicate** 81:3
**indirect** 32:21 60:3, 6, 16
**indirectly** 41:5
**individual** 16:8
**inform** 73:8
**information** 17:25 18:5, 14, 24 19:6 58:2, 6 75:8, 11 76:25 77:5, 13, 23, 25 78:6, 10, 18 79:5, 12
**informed** 25:12 63:3 65:8 72:6
**Inghram** 1:21 2:13 84:5, 21
**insertion** 67:21
**inside** 75:8 77:5, 13, 25 79:4, 12
**insider** 78:18
**insignificant** 56:20
**INSTRUCTED** 7:3
**INSTRUCTIONS** 81:1
**Insurance** 4:4 25:19, 22 26:10, 21
**intended** 54:12
**interest** 32:16, 21 33:19, 23 34:20 40:23 45:4, 7 59:18, 23 60:3, 16 84:17
**interested** 18:18
**interim** 10:2
**interrupt** 31:5 48:10
**investigate** 25:2
**investigating** 79:7
**Investment** 4:14 5:3 10:15 11:5, 10, 14, 17 47:12, 14, 23 53:23 54:4 58:23
**involved** 43:12, 13 58:3
**involvement** 11:11 14:16, 18 17:1, 2 43:8
**irregular** 25:1 56:14
**irregularities** 24:14
**IRS** 13:11
**Islands** 20:4 21:21 22:13 23:1 42:23 56:18 64:13 68:15
**issues** 23:22 47:9 48:23
**its** 12:7 13:23 15:3 18:1, 6 24:23 25:5 27:20 42:13 52:16 53:5 73:24 84:17

**< J >**
**Jackie** 22:7
**JAMES** 5:19 50:20
**JEFFREY** 3:10
**Jim** 12:23, 25 15:21 16:7 19:5 77:8
**jmorris@pszjlaw.com** 3:7
**job** 38:8, 12
**JOHN** 3:6 8:15 31:6 48:11 70:6 78:4 79:25
**joint** 63:16, 21 64:1, 23 65:18 66:4, 9, 13, 19 67:5, 10
**JONES** 3:14 5:18
**jpomerantz@pszjlaw.com** 3:11
**JULIE** 1:14 2:9 6:5 8:5 83:12
**June** 1:15 2:10 65:25
**jurisdiction** 68:5
**justify** 31:12

**< K >**
**Kansas** 20:11, 19, 20 21:3, 5, 6, 11, 16 22:7
**keep** 48:15, 18
**KELLY** 5:8
**kind** 14:3 33:19
**know** 9:9, 12 12:21 13:15, 18, 20 14:10, 12 16:25 17:4 18:22 19:9, 12, 14, 23 21:10 26:20 27:16 28:2 29:8, 15 30:9 31:2, 25 32:25 33:9 37:7 39:3, 5 40:20 41:4, 16, 20 42:17 43:6, 11, 24 44:2, 9, 11, 13, 15, 16, 19, 20, 23, 24 45:2, 3, 5, 6, 8, 9, 11, 12, 19, 24 46:4 48:4 49:6, 25 50:14 52:3, 4, 7, 20 53:24 54:17 57:9 58:4, 13, 14, 25 59:12, 17, 22 60:1, 2, 9, 15, 21, 23 61:2, 5, 7, 8, 11, 12, 15, 16, 19, 20, 24, 25 62:6, 13 63:1, 25 65:21 66:3, 6, 9, 12, 16, 22 67:3, 8, 13 69:19, 23 72:2, 5 74:21 75:4, 24 76:2 77:4, 15 78:8, 12, 14
**knowledge** 14:22 21:18 22:3 25:15 32:4, 9 33:4, 10, 12, 13, 17, 18, 22 34:19 35:3, 8, 10 49:1 51:5, 13, 17
**knows** 78:13

**< L >**
**L.P** 1:7
**Labor** 76:14
**lack** 53:12
**LANG** 4:15, 17 80:3, 5
**language** 14:11
**large** 20:7, 9
**law** 68:16
**laws** 64:19
**lawsuit** 58:18, 22
**lawyer** 9:17 43:10 68:18
**lawyers** 46:9
**lead** 40:22
**leading** 24:15
**leads** 41:8
**learn** 22:25 23:10 77:22
**learned** 18:17 23:4, 5 56:23 62:15 75:15
**leave** 43:17
**led** 29:9
**legal** 23:19, 22 31:3 43:16 57:14
**lengthy** 62:23
**level** 26:6, 8 37:1, 3 38:18
**liabilities** 54:9
**Life** 4:4 25:19, 21
**likelihood** 69:13
**Limited** 25:19, 22
**LINE** 7:4, 8, 13, 17 75:19 82:5
**liquidation** 64:13 68:4
**liquidators** 63:16, 22 64:1, 23 65:19 66:5, 10, 14, 20 67:6, 10
**liquidity** 56:16
**listen** 18:19
**lists** 16:14
**literally** 16:14
**Litigation** 3:19 22:15 23:2, 8, 11, 12, 13, 17, 25 73:4
**little** 62:20 67:15 79:20
**LITTLETON** 5:20 15:22 48:22
**Littleton's** 45:17
**LLP** 3:22 4:9 5:8
**LOIGMAN** 3:20
**long** 19:18
**longer** 70:6 78:6, 16
**look** 31:20 65:5
**looking** 16:10, 13
**losing** 53:15
**lot** 18:11, 14, 18 44:12 56:15 65:13
**LOUIS** 5:4 76:6
**Louisiana** 5:10
**lower** 29:15
**LP** 10:5, 8 34:24 35:3, 17 36:1, 8 51:24 53:5 55:19 73:3
**lphillips@kellyhart.com** 5:5
**LPs** 43:17

**< M >**
**Ma'am** 16:9 52:2, 22 55:6 56:8 65:16 67:2 72:19 74:2

79:15
**Madison** 3:23
**Main** 5:9
**majority** 15:7, 8
**making** 14:18 53:3 65:18
**MANAGEMENT** 1:6 3:4 8:16 10:5, 8 14:13, 15 18:16 34:24 35:3, 17 36:1, 8 50:19 51:24 52:18 53:5 55:19 73:2
**managing** 41:5
**March** 29:14
**Mark** 11:9 24:20 40:15 41:4 42:9 43:19 46:20 49:12 57:4 65:24 78:8, 10, 16 79:3
**MARKED** 7:16 63:10
**MARKS** 7:22 81:6
**material** 75:8 77:4, 13, 25 79:4, 11
**Matt** 64:8 72:13 78:9 79:17
**MATTTHEW** 4:5
**mean** 12:25 14:15 28:13 46:20 55:2 65:15
**member** 16:8
**memory** 48:19
**mentioned** 29:5
**met** 42:13 64:2 65:10
**MICHAEL** 4:15
**million** 42:24 43:2 56:19, 20
**mind** 41:12 48:15 65:10
**minimis** 22:11
**minutes** 70:17
**misused** 77:6
**mlang@cwl.law.com** 4:16
**mokin@okinadams.co m** 4:6
**money** 23:16 42:1, 20
**months** 17:13
**moot** 66:17
**MORRIS** 3:6 6:6 8:11, 15 19:22 31:14, 18, 24 35:20 36:5, 13 38:1, 14 39:4, 15 41:6 42:18 44:1 46:5, 10, 11 49:3, 5 50:1, 15 52:1, 9 54:18 55:5, 16, 23 56:7 57:2, 11, 20 58:12 59:13 60:10, 22 62:7, 11 63:5, 12 64:8, 11 67:1, 14 69:20 70:4, 9, 14, 19, 20 71:13, 15 72:11, 13, 17 73:1, 13, 19 74:6, 8, 22 75:5 76:8 78:7, 19 79:15
**Motion** 6:16 50:17 65:3, 8, 20
**Mountain** 5:3 10:15 11:4, 10, 14, 16 34:1, 9 37:5 41:3 47:11, 14, 22 48:9, 17 49:13 53:23 54:4 58:23
**move** 38:12
**mute** 70:16 76:7
**mutual** 54:14, 24
**mystery** 44:7

< N >
**name** 8:15
**named** 11:8 50:19
**NATHAN** 5:18 62:8 63:6 74:7
**nature** 22:23 44:11 51:6
**NECESSARILY** 7:22
**need** 9:14, 17 16:2 62:25 64:5 65:6 68:7 77:9
**needs** 69:5
**negotiating** 71:25
**negotiation** 51:14
**negotiations** 51:3, 6, 20
**neither** 84:15
**never** 32:5 33:5
**New** 3:16, 24 70:10, 11
**newly** 67:22
**news** 62:13, 15, 18
**Nods** 50:8
**nonpublic** 75:8 77:5, 13, 25 78:6 79:4, 12
**Nope** 68:19
**North** 20:13 21:4 22:8
**NORTHERN** 1:2
**Notary** 84:8
**notations** 81:6
**NOTE** 7:21
**notes** 16:18
**notice** 44:17

< O >
**object** 17:6 19:13, 15 35:19 36:3, 11 37:24 38:7 39:2 41:1 42:14 43:21, 23 46:3 51:25 52:8 55:1, 14, 21 56:5, 9 57:7, 17 58:9 59:10 60:7, 19 62:4 66:23 67:12 69:18 71:11 72:9 73:12 74:20
**objected** 10:19, 24
**objecting** 19:24 37:10
**Objection** 6:14 8:18 10:13 12:4, 9 17:11, 15, 18, 22 18:2, 6, 25 19:2, 7, 10 22:21 24:5, 8, 9, 22 25:5, 13, 17 26:1 27:17, 21 29:23 30:2, 7, 22 31:6 32:2 33:7 37:15 42:3, 11, 13, 16 49:24 50:4, 13 52:15, 17, 22 54:1, 16, 20, 22 55:25 56:4, 6, 12 62:10, 22, 24 63:14 65:20, 22 66:4 68:22 71:3, 7, 18
**objections** 78:2
**obligation** 13:21 41:18 50:12 58:5
**obligations** 35:17 36:1, 9 49:23 74:12 75:1
**obtain** 57:22 59:6 62:1 66:19 67:5
**obviously** 28:12
**October** 47:8
**offhand** 14:11
**office** 29:3
**officer** 84:8
**officers** 15:15
**official** 63:16, 22 64:1, 23 65:19 66:5, 10, 13, 19 67:6, 10
**Oh** 15:1 16:1, 21 30:14 78:20
**Okada** 15:24 16:22 24:10 27:1, 8, 12 28:21
**okay** 8:13, 24 17:4 18:19 19:16 28:20 33:13 34:8, 11, 16, 21, 22 41:21 46:24 50:9 51:12 55:10 62:7 63:5, 21 64:7 66:18 69:12 70:1, 19 73:6 74:23 79:2, 10
**OKIN** 4:5, 9 19:16 31:5, 17, 20 35:19 36:3, 11 37:24 38:7 39:2, 11 41:1 42:16 43:23 46:3, 8 48:10 49:24 50:13 51:25 52:8 54:16 55:1, 14, 21 56:5, 9 57:7, 17 58:9 59:10 60:7, 19 62:4 64:4 66:23 67:12 69:18 70:6, 12 72:9, 15, 20 73:12, 15 74:20 76:6 78:4, 12 79:24
**once** 37:4
**opportunity** 38:11 56:23
**option** 75:19, 22, 25 79:9
**Order** 6:16 69:5
**org** 21:15 48:12
**organization** 12:17, 19 13:10 15:18 16:23 26:24
**organizations** 16:11 20:17, 24 21:7 22:4

23:3 26:15, 16 28:1 29:1 34:3 53:8, 10, 15 56:21
**organization's** 38:9
**orgs** 15:6 20:7, 9 43:15
**original** 43:14 76:13
**originated** 19:10
**outcome** 84:17
**outside** 74:11, 17
**oversee** 24:25
**overseeing** 24:12
**oversees** 14:1
**oversight** 15:7, 9, 12 56:16
**owed** 36:9 50:11
**owes** 35:17 36:1 49:22
**owned** 48:5
**owner** 30:5, 12
**ownership** 40:23 59:18, 23 60:3, 6, 16
**owns** 30:9, 18 47:14

**< P >**
**p.m** 1:16 2:11 80:6
**PACHULSKI** 3:14 5:18
**Pacific** 4:18
**PAGE** 6:4, 12 7:4, 8, 13, 17 8:25 46:22 68:12 82:5
**pages** 6:18
**paid** 23:20
**paragraph** 63:6, 14 67:16 68:8, 23 70:5, 21 73:9 74:5 75:6, 7, 11, 19
**Pardon** 56:8
**part** 37:8 64:6
**participated** 32:23
**particular** 24:3 51:14 75:11
**parties** 3:2 10:17, 21 11:1, 4 18:18 63:17 71:4, 9, 19 84:16
**parts** 62:24
**party** 11:5, 22 56:15 59:19, 24 60:4, 17
**Patrick** 11:9, 13 24:20 40:15, 16 41:4 42:9 43:19 46:20 47:7, 17 49:12 50:6, 10 57:4, 13, 22 58:20 59:5 65:24 66:18 67:5 69:10 74:10, 17, 25 77:5, 24 78:16 79:3, 12
**Patrick's** 67:20
**PAUL** 5:14 31:4
**pay** 26:10
**peace** 70:24 72:7 73:10, 16
**pending** 9:16 42:23
**people** 15:20 62:16
**percent** 27:24 29:6
**permission** 50:18
**person** 24:11, 18 40:14 53:25 54:19
**personally** 23:24
**pertain** 69:9
**pertains** 28:7
**PHILLIPS** 5:4 70:14, 18 71:10 80:1
**phrase** 46:19 68:21 78:1
**piece** 62:14
**play** 14:21
**played** 17:5
**plays** 14:12 16:7
**pleading** 31:15
**Please** 46:10, 13 62:8 70:5 75:6 79:24 80:5
**PLLC** 4:17
**point** 62:24
**policies** 26:21
**POMERANTZ** 3:10
**portion** 38:4, 25 39:9 63:1
**position** 31:11
**possibly** 48:15
**potential** 53:16
**practice** 23:21
**precise** 18:21
**precluded** 66:15
**prefer** 78:11
**preparation** 52:14
**prepare** 18:25
**present** 2:16 5:17
**president** 9:23, 24 15:3, 4, 15, 16, 21, 22 16:5 21:17
**pretty** 24:15
**Prior** 10:1 58:2
**privilege** 9:18
**problem** 39:18 42:19
**proceeding** 64:14
**proceedings** 2:12 21:21 80:7 84:9, 11, 12
**proceeds** 26:17 27:13 28:12, 18, 20 40:18 41:13 43:20
**product** 51:2, 19
**PRODUCTION** 7:7
**professional** 79:17
**promise** 48:23
**proposed** 10:13 17:6 19:24 51:23 52:4 67:11
**propounded** 83:8
**protect** 38:8 56:20
**prove** 69:5
**provide** 17:25 18:5 23:16 58:5
**provided** 18:23 66:3
**Public** 84:8
**purchase** 26:24
**purpose** 67:23
**purposes** 11:17 12:1 26:12
**pursuant** 36:17
**put** 14:19 16:19 62:8, 9, 19 75:19, 22, 25 76:15, 20 79:9
**putting** 31:10

**< Q >**
**quarrel** 77:21
**quarterly** 28:11
**question** 9:3, 8, 11, 16 10:20 18:3, 9, 20 19:19 33:1 35:22 37:25 39:16, 17, 23, 25 40:13 46:6, 13 55:15 56:10 57:8, 18 58:10 59:11 60:8, 20 62:5 64:5, 9 66:24 68:10 69:3 71:5, 11 72:19 73:5 76:12 78:13
**questioning** 33:2
**QUESTIONS** 7:3, 16 9:2, 18 31:19 48:19, 24 49:4 68:13 70:13, 15 83:8
**quick** 8:24
**quickly** 78:15
**QUINN** 3:22
**quizzed** 48:8
**QUOTATION** 7:22
**QUOTE** 7:23 67:17 70:22 74:9 77:7

**< R >**
**raised** 24:16
**Rand** 47:2, 4, 5, 9, 17, 20 48:2, 18 49:12
**RAVER** 5:21
**RDR** 1:22 84:21
**read** 19:4 22:17, 25 31:14 71:7, 12 74:13 83:6
**reading** 16:9 81:2
**really** 20:13 26:10 34:5 69:23 78:11
**Realtime** 2:14 84:6
**reason** 24:3 32:15 35:15, 25 36:7 37:19 38:2 41:21 42:14 43:21 50:9 51:22 54:2 57:3 59:5, 14 67:4, 9 74:16, 24 82:7, 9, 11, 13, 15, 17, 19, 21, 23
**reasons** 81:4 82:4
**recall** 40:12 53:3 54:21 55:9 65:18 71:17, 22
**receive** 14:8 36:17 37:5, 22 38:4, 19, 24, 25 39:9, 20, 21 40:9, 24 41:13, 19 46:1, 15
**received** 27:11 40:21 42:21 49:7 76:10
**receives** 41:9 42:1, 6
**receiving** 44:4

**recollection** 53:2 65:7
**recommendations** 13:12 14:18
**record** 84:11
**recorded** 2:12
**recover** 37:20 38:3, 13 39:8 40:17 45:25 56:18
**red** 24:16
**reduced** 84:13
**refer** 11:16, 24 20:16 25:21, 24 29:2
**reference** 67:16 75:18
**referring** 20:3, 10 24:19
**REFLECT** 7:23
**refresh** 65:6
**regarding** 65:24
**Registered** 2:13 84:5
**regular** 13:25
**reject** 67:11
**related** 84:15
**relates** 50:6 65:22
**relationship** 21:11 28:5, 7 33:25 34:23 35:2, 6, 12 45:10, 13 49:19
**releases** 54:15, 24
**releasing** 54:8
**remember** 48:14
**remind** 39:12
**remitted** 28:22
**REMOTE** 1:13 2:8 3:2 62:15
**reorganization** 50:3
**Repeat** 18:3 19:20 37:25 55:15 69:3 71:5 73:5, 16
**repeated** 64:5
**report** 29:14
**Reported** 1:20
**Reporter** 2:14, 15 79:22 80:3 84:2, 6, 8
**REPORTER'S** 7:21
**reports** 28:11
**represent** 31:8, 13
**representative** 25:7
**REQUEST** 7:7
**requests** 29:11
**required** 13:24 57:22 59:6 62:1 66:19 67:5
**requirement** 37:7
**respect** 14:22 28:17 29:7
**respectfully** 72:12
**response** 74:1
**responsible** 12:6
**result** 21:8 32:23 34:12
**review** 12:3 25:13
**reviewed** 36:21 41:7 52:21
**right** 11:13 16:9 21:2 24:1 28:24 34:6 37:20 38:3, 21 39:8, 20 40:8, 17 44:6 45:25 46:15, 21 52:22, 23 60:24 61:3, 4, 6, 9, 13, 17, 21 66:17 74:6 78:3 79:6
**rise** 55:12
**ROBERT** 3:20
**robertloigman@quinnemanuel.com** 3:21
**role** 14:13, 21 16:8 17:5, 9 22:11 38:10
**room** 62:19
**Rose** 22:8
**Rouge** 5:10
**RSA** 1:22 84:21
**rules** 8:24
**rushed** 79:24

**< S >**
**Santa** 20:11, 22 21:3, 7, 12, 16 22:8
**Sauder** 78:25
**saying** 78:16
**says** 31:21 67:17, 19 70:21 74:9 77:19
**scope** 54:14, 24 74:11, 17
**screen** 62:8, 9, 20 63:13
**scroll** 68:7 70:4 75:5
**scrutiny** 67:25
**second** 48:16
**secretary** 16:6
**securities** 44:10
**see** 16:13 22:16, 19 47:8 48:13 62:25 63:19, 20 68:6 70:25 75:7, 18 79:19
**seek** 9:16 30:21
**seeks** 70:24 72:8 73:11, 17
**seen** 37:13, 16
**SEERY** 5:19 50:20 58:24
**segregated** 25:18, 24 26:1, 5, 8 27:17, 21 29:24 30:2, 6, 9, 13, 18, 22 44:16, 24 45:6 61:17, 21 62:1
**send** 28:12
**sent** 29:12
**sentence** 63:15 68:9, 13
**series** 9:1
**set** 17:18, 21 42:12 43:14 44:5 69:15
**setting** 69:7, 8
**Settlement** 6:17 8:19 10:13, 18, 23 11:5, 22 17:6 19:15, 25 20:2, 3, 5 36:14, 18, 21, 25 37:4, 9, 13, 16, 22 38:5, 19 39:1, 10, 22 40:9, 18, 25 41:3, 14, 23 42:6, 15 43:18, 22 44:6 46:2, 17, 21 51:1, 10, 15, 18, 23 52:5, 17 53:4, 9, 19, 22 54:3, 7, 10, 12, 25 57:5, 15, 24 58:7 59:8, 19, 24 60:4, 17 62:3 63:18 65:3, 8, 20 66:21 67:7, 11 69:15 70:23 71:21 72:1, 7 73:10 74:15, 18, 24 75:2
**Shakes** 39:6
**share** 57:13
**shares** 43:15
**SHAWN** 5:21
**Sheet** 81:5
**Shorthand** 2:15 84:2, 7
**show** 48:12 55:3
**shows** 42:23
**side** 10:22
**sign** 81:5
**signature** 31:21
**signed** 11:9, 13 46:21
**significant** 56:14
**significantly** 29:14
**similarities** 22:22
**sir** 70:16
**sit** 11:12 35:16, 24 36:6 79:10
**six** 10:3 17:12 18:14, 16
**size** 37:6
**Skyview** 78:16, 20, 23, 24 79:2
**slow** 56:24
**small** 20:13
**sole** 27:7
**solely** 31:7 74:15, 23
**somebody** 48:25 69:5 76:24 78:20
**somebody-who** 39:23
**sorry** 15:1 16:1 21:1, 6 29:10 55:8 58:13 67:2 74:2 76:9 77:18
**Sounds** 64:21
**source** 17:20 19:6 26:11 27:7 75:10
**speak** 17:10, 14, 17
**speaks** 55:2
**specific** 72:24
**specificity** 41:11
**speculate** 70:1
**spiraling** 77:8
**spoke** 66:1
**spoken** 17:12
**sponsored** 12:17
**STANG** 3:14 5:18
**start** 39:25 71:16
**started** 70:10
**State** 64:19

**statement** 33:21 54:22
**STATES** 1:1 63:15
**status** 13:24
**Stenographically** 1:20 2:13 84:13
**step** 13:16
**stick** 47:11
**STIPULATIONS** 7:12
**stopped** 76:23
**Street** 4:10 5:9
**strike** 40:4
**structure** 16:10 21:15 42:10 44:4 47:9 48:17, 18 49:2 67:23
**subject** 64:13 67:25 68:2
**Subtrust** 73:4
**succeed** 69:1, 6, 14
**suggest** 51:18 57:13
**suggesting** 72:4 73:7
**suggests** 71:3, 8
**Suite** 4:10, 18 5:9
**SULLIVAN** 3:22
**Sunday** 1:15 2:10
**supervision** 84:14
**supplied** 81:5
**SUPPORT** 7:1 22:14 28:1 55:18
**supporting** 12:17 13:10 15:6, 18 16:11, 23 20:7, 9, 16, 24 21:7, 15 23:3 26:15, 16, 23 29:1 34:2 43:15 53:8, 10, 14 56:21
**supposedly** 77:6 79:13
**sure** 16:21 35:23 65:9, 15 66:1 68:11 73:2 76:5, 10
**sworn** 8:6
**Systems** 84:7

< T >
**tainted** 73:17
**take** 8:17 31:20 45:16
**taken** 84:9, 12
**talk** 48:22
**talked** 40:14 65:11 66:16 70:7
**talking** 33:7 51:10 77:1 78:5
**technical** 14:10
**Technically** 13:9 43:11
**tell** 40:5, 7, 16 47:1 62:13 72:22 77:7, 11 78:15 79:11
**telling** 46:23
**terminated** 79:3
**terms** 36:18, 25 54:3
**test** 62:23
**testified** 8:8 38:17
**testify** 8:6
**testimony** 19:5 32:19 81:4 83:7
**testing** 48:19
**TEXAS** 1:2 4:11, 19 20:13 21:4 22:9
**Thank** 45:23 55:10 64:8 70:19 71:14 74:4, 7 79:15, 17
**Thanks** 79:21
**therefor** 81:4
**thing** 72:12
**things** 44:12 48:11
**think** 22:22 25:12 31:11, 17 38:17 43:24 45:16 48:20 50:3 57:25 63:5
**thinks** 31:11
**Third** 3:15 63:14
**three** 20:6, 9, 24 21:1, 5
**thrown** 27:3, 6
**Time** 1:16 2:12 9:14 56:24 70:10, 11, 18 79:16 80:7
**today** 8:17 16:17 18:12 33:7 35:16, 24 36:6 47:14, 20, 24 49:23 66:8 76:20 79:10
**today's** 12:1
**told** 47:8 50:22 78:20 79:3, 9
**TORREY** 5:20 15:22 16:5
**track** 43:17
**transaction** 61:13
**transactional** 28:11
**transactions** 29:8 61:9, 22
**transcribed** 2:15
**transcript** 79:23 80:4 81:6 83:7 84:10
**transparency** 53:13
**travel** 62:16
**treasurer** 15:5, 16, 23 16:5
**tribunal** 68:4
**true** 83:10 84:11
**Trust** 3:5 4:14 5:3 10:15 11:5, 10, 14, 17 32:12, 16, 21 33:20, 24 34:14, 17, 20 35:7, 13 45:4, 7, 14 47:12, 14, 23 48:9 52:6 53:23 54:4 55:20 58:23 73:3, 24
**Trustee** 3:19
**truth** 8:7
**try** 9:7 33:3
**trying** 77:22
**tune** 43:2
**two** 16:3 31:8 48:11 56:21 65:1
**type** 42:25 69:8
**typewriting** 84:14

< U >
**understand** 9:12 19:21 28:10 29:12 50:2 55:24 56:25 76:17
**understanding** 21:14, 22, 24 26:7 27:5, 9, 10, 15 29:19, 21 30:15 37:2, 11 38:15, 18, 23 41:2 47:16, 19 48:7 49:21 56:3 57:21 68:25 69:4 76:13
**understood** 29:9 79:8
**unexplained** 29:22
**unfair** 51:23 52:5, 18 53:4, 7, 10, 19, 22 54:3
**Unfortunately** 63:15
**UNITED** 1:1
**URQUHART** 3:22
**usual** 58:1

< V >
**vague** 47:10
**valuations** 24:16
**value** 27:12, 24 29:6, 19, 22 49:7, 15
**vanished** 42:24
**vehicle** 47:6
**vein** 18:17
**versus** 65:11
**vice** 15:4, 15, 22
**videoconferencing** 3:2
**video-conferencing** 2:10
**VIDEOGRAPHER** 5:13
**VIDEO-RECORDED** 1:13 2:8
**view** 52:10 59:1 69:12, 21
**Vine** 4:10
**vision** 28:2
**volume** 81:2, 6
**vote** 15:14
**voting** 15:13

< W >
**wait** 62:12
**want** 19:17 43:24 44:2, 11 48:12, 25 55:2 65:9 66:1 68:11 72:14, 15, 24 78:8 79:22 80:4
**way** 20:13 28:13 41:23 45:20 48:14 65:17 76:7
**Wednesday** 56:22
**weekend** 76:14
**weeks** 65:1

**Well** 13:*2* 18:*11* 20:*6* 24:*9* 25:*7* 28:*10* 31:*13*, *14* 43:*10* 44:*5* 48:*6* 53:*11* 72:*18* 74:*11* 77:*14*, *19* 78:*24*
**we're** 8:*17*, *25* 31:*21* 33:*7* 46:*19* 56:*18* 62:*7* 65:*23* 78:*5*
**we've** 56:*23* 63:*13* 65:*11*, *21* 66:*15*
**Wilkerson** 22:*6*
**WINOGRAD** 3:*12*
**wish** 82:*3*
**WISHNEW** 4:*17*
**withdrawn** 11:*2* 13:*19* 19:*13* 23:*6* 26:*22* 27:*4* 29:*20* 30:*8* 32:*10* 38:*16* 52:*15* 58:*19* 59:*16* 64:*17* 67:*18* 77:*11*
**witness** 48:*17* 64:*7* 72:*14*
**woman** 79:*1*
**words** 13:*16* 30:*8*
**work** 56:*18*
**working** 18:*15*
**workings** 49:*1*
**write-down** 27:*23* 29:*6*
**wrong** 64:*6* 71:*4*, *9*, *20*, *25* 73:*7*
**wrongdoing** 72:*5*

**< Y >**
**Yeah** 22:*18* 28:*16* 48:*8* 68:*14* 74:*6* 78:*18*
**year** 50:*3* 76:*16*
**years** 10:*3* 12:*20* 18:*14*, *16* 50:*17* 51:*9*
**Yep** 45:*18*
**York** 3:*16*, *24* 70:*10*, *11*

**< Z >**
**ZIEHL** 3:*14* 5:*18*

**WORD LIST**


< $ >
$25 (2)
$300 (1)

< 1 >
1 (3)
1:37 (2)
10 (1)
10010 (1)
10017-2024 (1)
10-year (1)
11 (1)
1113 (1)
15 (1)
16 (2)
1600 (1)
1700 (1)
19-34054-sgj11 (1)
1st (1)

< 2 >
2:37 (1)
2011 (1)
2019 (1)
2024 (1)
2025 (2)
212.849.7615 (1)
214.817.4500 (1)
22 (2)
225.381.9643 (1)
22nd (1)
2390 (1)
240 (1)

< 3 >
3:08 (1)
300-plus (1)
301 (1)
30th (1)
310.277.6910 (1)
32 (5)
33 (3)
34 (1)
34th (1)

< 4 >
4:07 (1)
40 (2)

< 5 >
51 (1)

< 6 >
63 (1)

< 7 >
7 (1)
70801 (1)
713.228.4100 (1)
75201 (1)
77002 (1)
780 (1)

< 8 >
8 (1)
8635 (3)

< 9 >
90 (1)
9th (1)

< A >
able (2)
Absolutely (1)
abstain (3)
abstention (1)
accepting (1)
access (1)
accommodate (1)
accounting (1)
accounts (20)
acted (1)
acting (6)
action (3)
actions (4)
activities (3)
activity (7)
ADAMS (1)
additional (2)
Administrator (1)
advice (2)
aegis (1)
affidavit (1)
affiliated (3)
affiliates (4)
affirmed (1)
afternoon (1)
agendas (1)
ago (2)
agree (1)
agreed (1)
agreement (59)
ahead (2)
ahurt@kellyhart.com (1)
alleging (1)
allocated (1)
allow (2)
AMELIA (1)
amount (1)
ample (1)
ancillary (1)
annuities (7)
annuity (4)
ANSWER (30)
answering (2)
answers (2)
anticipate (1)
anybody (16)
apologize (6)
apparent (1)
appear (2)
appearance (2)
appeared (4)
appears (1)
appointed (2)
appreciate (6)
appreciated (1)
approval (1)
approve (4)
approved (10)
Approving (1)
approximately (1)
April (1)
arising (1)
arm's-length (2)
articulate (1)
aside (1)
asked (8)
asking (5)
asserting (1)
assertion (1)
asserts (1)
asset (2)
assets (38)
assume (2)
assumed (1)
assuming (3)
Atlas (8)
attached (2)
Attorney (126)
attorneys (1)
audible (1)
authority (7)
authorization (2)
authorized (9)
authorizing (1)
available (1)
Avenue (3)
avoidance (5)
aware (42)

< B >
BA (2)
back (3)
backdrop (1)
bad (1)
BANKRUPTCY (15)
Barbara (7)
BARTLETT (1)
based (2)
basically (1)
basis (6)
Baton (1)
beginning (2)
behalf (35)
behavior (1)
believe (31)
believed (1)
best (12)
bit (3)
block (1)
bottom (1)
Bradshaw (1)
breaching (1)
break (2)
bring (1)
bringing (1)
business (3)
buy (3)

< C >
CA-Certified (1)
CA-CSR (2)

**calendar** *(2)*
**call** *(5)*
**called** *(10)*
**calling** *(1)*
**CAPITAL** *(17)*
**careful** *(1)*
**carefully** *(1)*
**Carrera** *(1)*
**Case** *(10)*
**cases** *(1)*
**cash** *(4)*
**cause** *(1)*
**caused** *(1)*
**caution** *(1)*
**Cayman** *(10)*
**ceased** *(2)*
**Central** *(3)*
**CEO** *(7)*
**CEOs** *(1)*
**certain** *(7)*
**Certainly** *(1)*
**CERTIFICATE** *(1)*
**Certified** *(3)*
**certify** *(2)*
**cetera** *(1)*
**CFO** *(2)*
**chance** *(1)*
**change** *(10)*
**changes** *(6)*
**changing** *(1)*
**Chapter** *(1)*
**charitable** *(8)*
**chart** *(1)*
**chief** *(1)*
**City** *(8)*
**claim** *(9)*
**Claimant** *(18)*
**claimed** *(1)*
**claims** *(3)*
**clarify** *(1)*
**CLARITY** *(1)*
**clawback** *(4)*
**clawing** *(1)*
**clear** *(3)*
**clearly** *(1)*
**clients** *(2)*
**cold** *(1)*
**come** *(1)*
**commenced** *(2)*
**commitment** *(1)*
**common** *(1)*
**communicate** *(1)*
**communicated** *(4)*
**communication** *(2)*
**community** *(6)*
**company** *(1)*
**complete** *(1)*
**compliance** *(1)*
**concern** *(3)*
**concerned** *(4)*
**concerning** *(1)*
**concerns** *(1)*
**concluded** *(1)*
**confer** *(1)*
**confidential** *(2)*
**confused** *(1)*
**confusing** *(1)*
**connection** *(4)*
**consent** *(6)*
**consider** *(1)*
**considering** *(1)*
**constitutes** *(1)*
**consult** *(1)*
**consummation** *(3)*
**Cont'd** *(2)*
**contend** *(2)*
**contends** *(2)*
**context** *(1)*
**continue** *(1)*
**contractual** *(7)*
**contractually** *(1)*
**contribution** *(2)*
**contributions** *(3)*
**control** *(5)*
**controlled** *(2)*
**controls** *(1)*
**conversations** *(1)*
**convey** *(1)*
**conveying** *(1)*
**copy** *(4)*
**corporate** *(2)*
**corporations** *(1)*
**correct** *(11)*
**corrections** *(2)*
**correctly** *(1)*
**counsel** *(5)*
**counterpart** *(1)*
**counterparty** *(1)*
**couple** *(1)*
**COURT** *(14)*
**Court-appointed** *(2)*
**COVID** *(1)*
**CRAWFORD** *(1)*
**created** *(1)*
**Crown** *(45)*
**CRR** *(2)*
**cumbersome** *(1)*
**CURRY** *(2)*

**< D >**
**D.C** *(1)*
**DAF** *(2)*
**DALLAS** *(160)*
**D'AMBRA** *(1)*
**date** *(2)*
**DAVID** *(1)*
**day** *(3)*
**dcurry@okinadams.co m** *(1)*
**de** *(1)*
**dealings** *(1)*
**Debbie** *(1)*
**Debtor** *(5)*
**decided** *(1)*
**decision** *(2)*
**decisions** *(1)*
**declaration** *(3)*
**decline** *(3)*
**Defendant** *(2)*
**definitively** *(1)*
**Delaware** *(2)*
**DEMO** *(1)*
**DEPONENT** *(1)*
**deposed** *(1)*
**DEPOSITION** *(11)*
**depositions** *(1)*
**described** *(4)*
**detail** *(1)*
**DIAZ** *(20)*
**different** *(2)*
**diminished** *(1)*
**Diplomate** *(2)*
**DIRECT** *(4)*
**directed** *(2)*
**direction** *(1)*
**directly** *(3)*
**disburse** *(2)*
**disbursement** *(1)*
**disclosed** *(1)*
**disclosing** *(1)*
**discussions** *(1)*
**disrespectful** *(1)*
**DISTRICT** *(1)*
**diverting** *(1)*
**DIVISION** *(1)*
**document** *(4)*
**DOCUMENTS** *(4)*
**doing** *(5)*
**dollars** *(1)*
**donation** *(2)*
**donations** *(1)*
**Dondero** *(20)*
**Dondero's** *(2)*
**donor-advised** *(1)*
**dramatic** *(1)*
**Dugaboy** *(1)*
**duly** *(1)*
**duties** *(4)*
**duty** *(2)*

**< E >**
**earlier** *(2)*
**effectuated** *(1)*
**effectuates** *(1)*
**either** *(3)*
**EMANUEL** *(1)*
**employed** *(2)*
**employee** *(1)*
**Empower** *(25)*
**engaged** *(2)*
**ensure** *(1)*
**enter** *(5)*
**entered** *(3)*
**entering** *(9)*
**entities** *(55)*
**entitled** *(2)*
**entity** *(19)*
**Entry** *(2)*
**erosion** *(1)*
**Errata** *(1)*
**ESQ** *(10)*
**essence** *(1)*
**essentially** *(1)*
**established** *(1)*
**et** *(1)*
**everybody** *(1)*

**evidence** (*1*)
**exactly** (*1*)
**EXAMINATION** (*2*)
**examined** (*1*)
**excuse** (*2*)
**executed** (*1*)
**exercise** (*1*)
**exercised** (*1*)
**Exhibit** (*1*)
**existence** (*1*)
**expect** (*1*)
**expectations** (*1*)
**expected** (*1*)
**expedited** (*1*)
**expenses** (*2*)
**expensive** (*1*)
**expert** (*2*)
**expressed** (*1*)
**extent** (*1*)

**< F >**
**fact** (*1*)
**facts** (*13*)
**fail** (*1*)
**fair** (*36*)
**fairly** (*1*)
**fall** (*1*)
**familiar** (*14*)
**familiarity** (*2*)
**Family** (*6*)
**fault** (*1*)
**feeds** (*1*)
**feel** (*1*)
**female** (*1*)
**fiduciaries** (*2*)
**fiduciary** (*6*)
**file** (*6*)
**filed** (*25*)
**filing** (*10*)
**finance** (*1*)
**financial** (*1*)
**find** (*2*)
**fine** (*3*)
**finish** (*3*)
**first** (*1*)
**first-quarter** (*1*)
**flag** (*1*)
**Floor** (*2*)
**flow** (*6*)
**flowed** (*1*)
**Flows** (*3*)
**focus** (*1*)
**focused** (*1*)
**Focusing** (*2*)
**folks** (*1*)
**following** (*2*)
**follows** (*1*)
**foregoing** (*3*)
**form** (*33*)
**formal** (*1*)
**Formally** (*1*)
**formation** (*1*)
**formed** (*4*)
**forth** (*4*)
**forward** (*1*)
**found** (*1*)
**Foundation** (*145*)
**foundations** (*5*)
**Foundation's** (*24*)
**four** (*2*)
**fully** (*1*)
**fund** (*11*)
**funded** (*1*)
**fundholder** (*1*)
**fundholders** (*2*)
**funding** (*5*)
**funds** (*4*)
**fund's** (*1*)
**further** (*1*)
**future** (*1*)

**< G >**
**Gail** (*4*)
**gdemo@pszjlaw.com** (*1*)
**generally** (*4*)
**gentleman** (*2*)
**give** (*6*)
**given** (*1*)
**giving** (*1*)
**Global** (*41*)
**Global's** (*4*)
**go** (*7*)
**going** (*13*)
**Good** (*3*)
**good-faith** (*2*)
**governance** (*3*)
**GPs** (*1*)
**grant** (*2*)
**grant-making** (*2*)
**grants** (*1*)
**GREGORY** (*1*)
**ground** (*1*)
**guess** (*4*)

**< H >**
**half** (*1*)
**HALL** (*1*)
**HALLMAN** (*1*)
**happening** (*3*)
**happens** (*3*)
**happy** (*2*)
**harm** (*1*)
**HART** (*1*)
**HAYLEY** (*1*)
**head** (*2*)
**hear** (*1*)
**heard** (*1*)
**held** (*2*)
**he'll** (*1*)
**help** (*2*)
**hereto** (*1*)
**Hernandez** (*1*)
**high** (*5*)
**HIGHLAND** (*82*)
**Highland/HMIT** (*2*)
**Highland's** (*1*)
**HMIT** (*54*)
**HMIT/Highland** (*2*)
**hold** (*2*)
**Holdco** (*2*)
**holds** (*1*)
**hour** (*1*)
**Houston** (*1*)
**Hunter** (*19*)
**HURT** (*1*)
**hwinograd@pszjlaw.com** (*1*)

**< I >**
**idea** (*5*)
**identification** (*1*)
**identified** (*3*)
**identify** (*8*)
**imagine** (*1*)
**impact** (*1*)
**impacted** (*1*)
**impacts** (*1*)
**important** (*1*)
**including** (*1*)
**income** (*3*)
**independent** (*1*)
**INDEX** (*1*)
**indicate** (*1*)
**indirect** (*4*)
**indirectly** (*1*)
**individual** (*1*)
**inform** (*1*)
**information** (*19*)
**informed** (*4*)
**Inghram** (*4*)
**insertion** (*1*)
**inside** (*6*)
**insider** (*1*)
**insignificant** (*1*)
**INSTRUCTED** (*1*)
**INSTRUCTIONS** (*1*)
**Insurance** (*5*)
**intended** (*1*)
**interest** (*13*)
**interested** (*1*)
**interim** (*1*)
**interrupt** (*2*)
**investigate** (*1*)
**investigating** (*1*)
**Investment** (*13*)
**involved** (*3*)
**involvement** (*6*)
**irregular** (*2*)
**irregularities** (*1*)
**IRS** (*1*)
**Islands** (*8*)
**issues** (*3*)
**its** (*13*)

**< J >**
**Jackie** (*1*)
**JAMES** (*2*)
**JEFFREY** (*1*)
**Jim** (*6*)
**jmorris@pszjlaw.com** (*1*)
**job** (*2*)
**JOHN** (*7*)
**joint** (*11*)
**JONES** (*2*)

jpomerantz@pszjlaw.com (1)
JULIE (5)
June (3)
jurisdiction (1)
justify (1)

< K >
Kansas (9)
keep (2)
KELLY (1)
kind (2)
know (122)
knowledge (21)
knows (1)

< L >
L.P (1)
Labor (1)
lack (1)
LANG (4)
language (1)
large (2)
law (1)
laws (1)
lawsuit (2)
lawyer (3)
lawyers (1)
lead (1)
leading (1)
leads (1)
learn (3)
learned (6)
leave (1)
led (1)
legal (5)
lengthy (1)
level (5)
liabilities (2)
Life (3)
likelihood (1)
Limited (2)
LINE (6)
liquidation (2)
liquidators (11)
liquidity (1)
listen (1)
lists (1)
literally (1)
Litigation (10)
little (3)
LITTLETON (3)
Littleton's (1)
LLP (3)
LOIGMAN (1)
long (1)
longer (3)
look (2)
looking (2)
losing (1)
lot (6)
LOUIS (2)
Louisiana (1)
lower (1)
LP (11)
lphillips@kellyhart.com (1)
LPs (1)

< M >
Ma'am (10)
Madison (1)
Main (1)
majority (2)
making (3)
MANAGEMENT (19)
managing (1)
March (1)
Mark (14)
MARKED (2)
MARKS (2)
material (6)
Matt (4)
MATTTHEW (1)
mean (6)
member (1)
memory (1)
mentioned (1)
met (3)
MICHAEL (1)
million (4)
mind (3)
minimis (1)
minutes (1)
misused (1)
mlang@cwl.law.com (1)
mokin@okinadams.com (1)
money (3)
months (1)
moot (1)
MORRIS (69)
Motion (5)
Mountain (19)
move (1)
mute (2)
mutual (2)
mystery (1)

< N >
name (1)
named (2)
NATHAN (4)
nature (3)
NECESSARILY (1)
need (8)
needs (1)
negotiating (1)
negotiation (1)
negotiations (3)
neither (1)
never (2)
New (6)
newly (1)
news (3)
Nods (1)
nonpublic (7)
Nope (1)
North (3)
NORTHERN (1)
Notary (1)
notations (1)
NOTE (1)
notes (1)
notice (1)

< O >
object (35)
objected (2)
objecting (2)
Objection (63)
objections (1)
obligation (4)
obligations (6)
obtain (5)
obviously (1)
October (1)
offhand (1)
office (1)
officer (1)
officers (1)
official (11)
Oh (5)
Okada (7)
okay (29)
OKIN (52)
once (1)
opportunity (2)
option (4)
Order (2)
org (2)
organization (6)
organizations (15)
organization's (1)
orgs (4)
original (2)
originated (1)
outcome (1)
outside (2)
oversee (1)
overseeing (1)
oversees (1)
oversight (4)
owed (2)
owes (3)
owned (1)
owner (2)
ownership (6)
owns (3)

< P >
p.m (3)
PACHULSKI (2)
Pacific (1)
PAGE (10)
pages (1)
paid (1)
paragraph (13)
Pardon (1)
part (2)
participated (1)
particular (3)
parties (11)
parts (1)

**party** *(7)*
**Patrick** *(31)*
**Patrick's** *(1)*
**PAUL** *(2)*
**pay** *(1)*
**peace** *(4)*
**pending** *(2)*
**people** *(2)*
**percent** *(2)*
**permission** *(1)*
**person** *(5)*
**personally** *(1)*
**pertain** *(1)*
**pertains** *(1)*
**PHILLIPS** *(5)*
**phrase** *(3)*
**piece** *(1)*
**play** *(1)*
**played** *(1)*
**plays** *(2)*
**pleading** *(1)*
**Please** *(7)*
**PLLC** *(1)*
**point** *(1)*
**policies** *(1)*
**POMERANTZ** *(1)*
**portion** *(4)*
**position** *(1)*
**possibly** *(1)*
**potential** *(1)*
**practice** *(1)*
**precise** *(1)*
**precluded** *(1)*
**prefer** *(1)*
**preparation** *(1)*
**prepare** *(1)*
**present** *(2)*
**president** *(10)*
**pretty** *(1)*
**Prior** *(2)*
**privilege** *(1)*
**problem** *(2)*
**proceeding** *(1)*
**proceedings** *(6)*
**proceeds** *(8)*
**product** *(2)*
**PRODUCTION** *(1)*
**professional** *(1)*
**promise** *(1)*
**proposed** *(6)*
**propounded** *(1)*
**protect** *(2)*
**prove** *(1)*
**provide** *(4)*
**provided** *(2)*
**Public** *(1)*
**purchase** *(1)*
**purpose** *(1)*
**purposes** *(3)*
**pursuant** *(1)*
**put** *(11)*
**putting** *(1)*

**< Q >**
**quarrel** *(1)*
**quarterly** *(1)*
**question** *(39)*
**questioning** *(1)*
**QUESTIONS** *(12)*
**quick** *(1)*
**quickly** *(1)*
**QUINN** *(1)*
**quizzed** *(1)*
**QUOTATION** *(1)*
**QUOTE** *(5)*

**< R >**
**raised** *(1)*
**Rand** *(9)*
**RAVER** *(1)*
**RDR** *(2)*
**read** *(8)*
**reading** *(2)*
**really** *(5)*
**Realtime** *(3)*
**reason** *(29)*
**reasons** *(2)*
**recall** *(7)*
**receive** *(17)*
**received** *(5)*
**receives** *(3)*
**receiving** *(1)*
**recollection** *(2)*
**recommendations** *(2)*
**record** *(1)*
**recorded** *(1)*
**recover** *(7)*
**red** *(1)*
**reduced** *(1)*
**refer** *(6)*
**reference** *(2)*
**referring** *(3)*
**REFLECT** *(1)*
**refresh** *(1)*
**regarding** *(1)*
**Registered** *(2)*
**regular** *(1)*
**reject** *(1)*
**related** *(1)*
**relates** *(2)*
**relationship** *(11)*
**releases** *(2)*
**releasing** *(1)*
**remember** *(1)*
**remind** *(1)*
**remitted** *(1)*
**REMOTE** *(4)*
**reorganization** *(1)*
**Repeat** *(8)*
**repeated** *(1)*
**report** *(1)*
**Reported** *(1)*
**Reporter** *(9)*
**REPORTER'S** *(1)*
**reports** *(1)*
**represent** *(3)*
**representative** *(1)*
**REQUEST** *(1)*
**requests** *(1)*
**required** *(6)*
**requirement** *(1)*
**respect** *(3)*
**respectfully** *(1)*
**response** *(1)*
**responsible** *(1)*
**result** *(3)*
**review** *(2)*
**reviewed** *(3)*
**right** *(31)*
**rise** *(1)*
**ROBERT** *(1)*
**robertloigman@quinn emanuel.com** *(1)*
**role** *(7)*
**room** *(1)*
**Rose** *(1)*
**Rouge** *(1)*
**RSA** *(2)*
**rules** *(1)*
**rushed** *(1)*

**< S >**
**Santa** *(7)*
**Sauder** *(1)*
**saying** *(1)*
**says** *(6)*
**scope** *(4)*
**screen** *(4)*
**scroll** *(3)*
**scrutiny** *(1)*
**second** *(1)*
**secretary** *(1)*
**securities** *(1)*
**see** *(13)*
**seek** *(2)*
**seeks** *(4)*
**seen** *(2)*
**SEERY** *(3)*
**segregated** *(20)*
**send** *(1)*
**sent** *(1)*
**sentence** *(3)*
**series** *(1)*
**set** *(6)*
**setting** *(2)*
**Settlement** *(84)*
**Shakes** *(1)*
**share** *(1)*
**shares** *(1)*
**SHAWN** *(1)*
**Sheet** *(1)*
**Shorthand** *(3)*
**show** *(2)*
**shows** *(1)*
**side** *(1)*
**sign** *(1)*
**signature** *(1)*
**signed** *(3)*
**significant** *(1)*
**significantly** *(1)*
**similarities** *(1)*
**sir** *(1)*
**sit** *(5)*
**six** *(4)*
**size** *(1)*
**Skyview** *(5)*

**slow** *(1)*
**small** *(1)*
**sole** *(1)*
**solely** *(3)*
**somebody** *(4)*
**somebody-who** *(1)*
**sorry** *(11)*
**Sounds** *(1)*
**source** *(5)*
**speak** *(3)*
**speaks** *(1)*
**specific** *(1)*
**specificity** *(1)*
**speculate** *(1)*
**spiraling** *(1)*
**spoke** *(1)*
**spoken** *(1)*
**sponsored** *(1)*
**STANG** *(2)*
**start** *(2)*
**started** *(1)*
**State** *(1)*
**statement** *(2)*
**STATES** *(2)*
**status** *(1)*
**Stenographically** *(3)*
**step** *(1)*
**stick** *(1)*
**STIPULATIONS** *(1)*
**stopped** *(1)*
**Street** *(2)*
**strike** *(1)*
**structure** *(9)*
**subject** *(3)*
**Subtrust** *(1)*
**succeed** *(3)*
**suggest** *(2)*
**suggesting** *(2)*
**suggests** *(2)*
**Suite** *(3)*
**SULLIVAN** *(1)*
**Sunday** *(2)*
**supervision** *(1)*
**supplied** *(1)*
**SUPPORT** *(4)*
**supporting** *(23)*
**supposedly** *(2)*
**sure** *(9)*
**sworn** *(1)*
**Systems** *(1)*

**< T >**
**tainted** *(1)*
**take** *(3)*
**taken** *(2)*
**talk** *(1)*
**talked** *(4)*
**talking** *(4)*
**technical** *(1)*
**Technically** *(2)*
**tell** *(10)*
**telling** *(1)*
**terminated** *(1)*
**terms** *(3)*
**test** *(1)*
**testified** *(2)*
**testify** *(1)*
**testimony** *(4)*
**testing** *(1)*
**TEXAS** *(6)*
**Thank** *(9)*
**Thanks** *(1)*
**therefor** *(1)*
**thing** *(1)*
**things** *(2)*
**think** *(11)*
**thinks** *(1)*
**Third** *(2)*
**three** *(5)*
**thrown** *(2)*
**Time** *(9)*
**today** *(14)*
**today's** *(1)*
**told** *(5)*
**TORREY** *(3)*
**track** *(1)*
**transaction** *(1)*
**transactional** *(1)*
**transactions** *(3)*
**transcribed** *(1)*
**transcript** *(5)*
**transparency** *(1)*
**travel** *(1)*
**treasurer** *(4)*
**tribunal** *(1)*
**true** *(2)*
**Trust** *(32)*
**Trustee** *(1)*
**truth** *(3)*
**try** *(2)*
**trying** *(1)*
**tune** *(1)*
**two** *(5)*
**type** *(2)*
**typewriting** *(1)*

**< U >**
**understand** *(8)*
**understanding** *(26)*
**understood** *(2)*
**unexplained** *(1)*
**unfair** *(9)*
**Unfortunately** *(1)*
**UNITED** *(1)*
**URQUHART** *(1)*
**usual** *(1)*

**< V >**
**vague** *(1)*
**valuations** *(1)*
**value** *(7)*
**vanished** *(1)*
**vehicle** *(1)*
**vein** *(1)*
**versus** *(1)*
**vice** *(3)*
**videoconferencing** *(1)*
**video-conferencing** *(1)*
**VIDEOGRAPHER** *(1)*
**VIDEO-RECORDED** *(2)*
**view** *(4)*
**Vine** *(1)*
**vision** *(1)*
**volume** *(2)*
**vote** *(1)*
**voting** *(1)*

**< W >**
**wait** *(1)*
**want** *(16)*
**way** *(7)*
**Wednesday** *(1)*
**weekend** *(1)*
**weeks** *(1)*
**Well** *(17)*
**we're** *(9)*
**we've** *(5)*
**Wilkerson** *(1)*
**WINOGRAD** *(1)*
**wish** *(1)*
**WISHNEW** *(1)*
**withdrawn** *(16)*
**witness** *(3)*
**woman** *(1)*
**words** *(2)*
**work** *(1)*
**working** *(1)*
**workings** *(1)*
**write-down** *(2)*
**wrong** *(6)*
**wrongdoing** *(1)*

**< Y >**
**Yeah** *(6)*
**year** *(2)*
**years** *(6)*
**Yep** *(1)*
**York** *(6)*

**< Z >**
**ZIEHL** *(2)*

**Exhibit 57-A**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

--------------------------

In Re: Case No. 19-34054-sgj11

HIGHLAND CAPITAL MANAGEMENT,
L.P.,

Debtor. Chapter 11

--------------------------X.

REMOTE VIDEO-RECORDED DEPOSITION of
TORREY LITTLETON
Sunday, June 22, 2025
3:30 p.m. Central time

Reported Stenographically by:
Gail L. Inghram,
BA, RDR, CRR, RSA, CA-CSR No. 8635

WHEREUPON, the remote video-recorded deposition of TORREY LITTLETON was held via video-conferencing on Sunday, June 22, 2025, beginning at approximately 3:30 p.m. Central Time, the proceedings being recorded stenographically by Gail Inghram, Registered Diplomate Reporter, Certified Realtime Reporter, Certified Shorthand Reporter, and transcribed under her direction, there being present:

A P P E A R A N C E S:

[All parties appeared via remote videoconferencing.]

On behalf of Highland Capital Management, and the Highland Claimant Trust:

JOHN MORRIS, ESQ.
jmorris@pszjlaw.com
GREGORY V. DEMO, ESQ.
gdemo@pszjlaw.com
JEFFREY POMERANTZ, ESQ.
jpomerantz@pszjlaw.com
HAYLEY WINOGRAD, ESQ.
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES
780 Third Avenue, 34th Floor
New York, New York 10017-2024
310.277.6910

On behalf of Highland Litigation Trustee:

ROBERT S. LOIGMAN, ESQ.
robertloigman@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue 22nd Floor
New York, New York 10010
212.849.7615

A P P E A R A N C E S (Cont'd):

On behalf of Defendant Dallas Foundation and Crown Global Life Insurance:

MATTTHEW OKIN, ESQ.
mokin@okinadams.com
DAVID CURRY, ESQ.
dcurry@okinadams.com
OKIN ADAMS BARTLETT CURRY LLP
1113 Vine Street, Suite 240
Houston, Texas 77002
713.228.4100

On behalf of Defendant Dugaboy Investment Trust:

MICHAEL LANG, ESQ.
mlang@cwl.law.com
CRAWFORD WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
214.817.4500

A P P E A R A N C E S (Cont'd):

On Behalf of Hunter Mountain Investment Trust:

LOUIS M. PHILLIPS, ESQ.
lphillips@kellyhart.com
AMELIA L. HURT, ESQ.
ahurt@kellyhart.com
KELLY HART & HALLMAN LLP
301 Main Street, Suite 1600
Baton Rouge, Louisiana 70801
225.381.9643

VIDEOGRAPHER:

PAUL D'AMBRA

ALSO PRESENT:

NATHAN HALL, Pachulski Stang Ziehl & Jones
JAMES SEERY
SHAWN RAVER
JULIE DIAZ

- - -

I N D E X

- - -

EXAMINATION OF: PAGE

TORREY LITTLETON

Attorney Morris ..................8

PREVIOUSLY MARKED EXHIBITS REFERENCED:

NUMBER PAGE

Exhibit Highland 1 ..........58

DEPOSITION SUPPORT INDEX

INSTRUCTION NOT TO ANSWER:

| PAGE | LINE |
|---|---|
| 67 | 21 |

REQUEST FOR PRODUCTION OF DOCUMENTS

PAGE LINE

(None)

STIPULATIONS

PAGE LINE

(None)

QUESTIONS MARKED

PAGE LINE

(None)

REPORTER'S NOTE:

QUOTATION MARKS ARE USED FOR CLARITY AND DO NOT NECESSARILY REFLECT A DIRECT QUOTE.

- - -

P R O C E E D I N G S

- - -

WHEREUPON,

TORREY LITTLETON,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY ATTORNEY MORRIS:

Q. Actually, I just want to start by apologizing to the witness that I did not tell him that Sunday depositions were casual. Thanks for dressing up.

A. I appreciate it. No worries.

Q. And for some of us, Mr. Littleton, every day is Sunday unless we're going to court.

It's nice to meet you, sir.

A. Same here.

Q. Can you hear me okay, sir?

A. Yes, I can hear you.

Q. Okay. Good afternoon. My name is John Morris. I'm an attorney at a law firm who represents Highland Capital Management, LP, and

the Highland Claimant Trust. And we're here today for your deposition in connection with the Dallas Foundation's objection to a certain proposed settlement agreement between Highland and some affiliates and some entities that are controlled by Mark Patrick.

Do you understand that?

A. Yes.

Q. Have you ever been deposed before, sir?

A. No. This is my first time.

Q. Okay. It's not -- just relax. It's a -- it's a formal process, but it's not a complicated process. I'm going to ask you a series of questions, and it's very important that you let me finish my question before you begin your answer. Okay?

A. Yes, sir.

Q. It's important that I allow you to finish your answer before I begin my next question; and if I fail to do that, will you let me know?

A. Yes, sir, I will.

Q. Do you understand that your testimony today is being transcribed by Gail, the court

reporter?
A. Yes.
Q. So everything you and I say is going to be written down verbatim, or that's the goal anyway.
Do you understand that?
A. Yes, I do.
Q. Okay. If there's a question that I ask that you don't understand, will you let me know and I'll try to rephrase it?
A. Yes.
Q. From time to time your lawyer might object to some of my questions. It will give -- it's formal, legal stuff, lawyer stuff. It gives me a chance to think about whether there's a legal infirmity in my question, and it gives me an opportunity to rephrase it if I want.
But unless he directs you not to answer, I'm going to ask you to answer the question anyway. Okay?
A. Okay.
Q. Just so you're not surprised by the process.
If you need a break for any reason at any time, let me know, and I'll try to

accommodate you as long as a question is not pending. Okay?

A. Yes.

Q. Are you affiliated with the Dallas Foundation, sir?

A. Yes, I am.

Q. In what capacity?

A. I am the CFO here at the Dallas Foundation.

Q. How long have you been the CFO of the Dallas Foundation?

A. I've been the CFO here since January 1st of 2022, but I've been with the organization for 13 years.

Q. And what are your duties and responsibilities as the CFO?

A. As the CFO, my main duty is to ensure the proper oversight and fiduciary stewardship of our charitable assets. That means having fiduciary oversight of our investments, our financial reporting, any legal aspects that may impact the foundation in any capacity.

I also serve as a board director as relates to some of our supporting organizations, part of our conversation here today with Empower

Foundation and the Okada Family Foundation.

Q. Are you a lawyer?

A. No, sir.

Q. Are you familiar with a company called Highland Capital Management, LP?

A. Yes, sir.

Q. Are you aware that that entity filed for bankruptcy a number of years ago?

A. Yes, sir.

Q. Are you aware that that entity used to be controlled by a gentleman named Jim Dondero?

A. Yes, sir.

Q. Okay. Are you aware that the Dallas Foundation recently filed an objection in the bankruptcy court overseeing Highland's bankruptcy and the objection pertaining to a proposed settlement agreement between Highland and certain affiliates and certain entities that are controlled by Mr. Patrick?

A. Yes, sir.

Q. Did you review that objection before it was filed?

A. Yeah, I read through the objections. But for the most part, I rely on our legal team to give us a summary and kind of walk us through

some of the pertinent details.
Q. Are you familiar with the entities that Mr. Patrick signed that agreement on behalf of?
A. Yeah; I believe it's the Hunter Mountain Investment Trust.
Q. Right. And you're aware that in addition to the Hunter Mountain -- can we refer to Hunter Mountain Investment Trust as "HMIT" today?
A. Yes.
Q. And are you aware that certain affiliates of HMIT are also party to the settlement agreement that is the subject of this proceeding?
A. I am.
Q. And can we refer to HMIT and those affiliates that are party to the agreement as "the HMIT entities"?
A. Yes.
Q. Okay. It's going to make our day a little bit quicker and a little bit easier.
A. Sure.
Q. Do you know who approved the filing of the objection on behalf of the Dallas Foundation?

A. Yeah, so it was approved by President Julie Diaz.
Q. Anybody else?
A. Then our legal team helped us kind of put together the objection.
Q. Do you know, have you ever met Jim Dondero?
A. I have never met him personally, no.
Q. Have you ever spoken with him?
A. I think I was on one conference call with him one time that I can recall.
Q. Okay. Do you know if he had any role in the preparation of the Dallas Foundation's objection?
A. I didn't have any exposure with Mr. Dondero. So, no, I do not know.
Q. Do you know where the idea of filing the objection originated? Like, whose idea was it?
A. Yes -- yes.
Q. Whose idea was it to file the objection?
A. Well, it's a combination of the Empower and Okada Foundation boards. Just looking at some of the investment activity that

transpired through the first quarter, we had some concerns about the activity. And a portion of that activity was the sale of Hunter Mountain interests through the Rand PE Fund I that ultimately rolled up to the Atlas, LP Fund, which impacted the economic value of the portfolio that's held by Crown Global.

Q. That's why the -- let's unpack that a little bit. I asked where did the -- who came up with the idea of objecting? Let's take that first.

A. Sure, sure. Yeah, I think it was the board of the foundations, so primarily Julie Diaz and myself just kind of thinking through the activity that we became aware of.

Q. And Mr. Dondero is a member of the board; right?

A. That's correct.

Q. And it's just the three of you; correct?

A. That's correct.

ATTORNEY OKIN: Object to form.

BY ATTORNEY MORRIS:

Q. The Dallas Foundation's objection refers to certain litigation pending in the

Cayman Islands.
Are you aware of that?
A. Yes.
Q. Are you aware that Mr. Dondero is funding that litigation on behalf of the supporting organizations that commenced it?
A. Yes, sir.
Q. And you're aware that he's funding this litigation on behalf of the Dallas Foundation; correct?
A. That's correct.
Q. Do you know why Empower Dallas Foundation and the Okada Family Foundation didn't just file the objection in their own name rather than having the Dallas Foundation do it for them?
ATTORNEY OKIN: Object to form.
A. I think we looked it as the Dallas Foundation is the supporting organization of the two entities. And we felt that the Dallas Foundation and our president, Julie Diaz, we just decided to file it under the foundation based on a recommendation from our legal counsel.
BY ATTORNEY MORRIS:
Q. Are you aware that the objection is also filed on behalf of Crown Global Life

Insurance, Limited?
A. Yes, sir.
Q. Okay. And what is Crown Global Life Insurance, Limited?
A. The Crown Global Life Insurance, Limited, is an issuer of insurance annuities.
Q. What -- what role does it play with respect to the Dallas Foundation?
A. Yeah, so it plays a role more so with the Empower Dallas and Okada Family Foundation. They each hold policies with Crown Global through the insurance annuities. So the legal contract is between Empower Dallas and Okada Family Foundation with Crown Global.
Q. And -- and is the withdrawn.
Does the annuity pay dividends or make other distributions?
A. Yeah, it makes distributions to the fund as fixed payments through the contract, yes, sir.
Q. And do those fixed payments go directly from Crown Global to Empower Dallas and the Okada Family Foundation respectively?
A. That's correct.
Q. And do you know what the annuities are

invested in?
A. I don't know the actual underlying investments. I know the annuities have within them the Atlas IDF, LP Fund, and that they -- what ultimately rolls up is the Rand Fund I, the Beacon Mountain and the Hunter Mountain, HMIT, ultimately rolls up.
Q. And is -- are the annuities the sole source of Empower Dallas and the Okada Family Foundation's income, to the best of your knowledge?
A. That's correct, yes, sir.
Q. And does a portion of that income then flow up to the Dallas Foundation?
A. Well, the income doesn't flow to the Dallas Foundation. What does happen is, as Empower and the Okada Family Foundations make recommendations, those recommendations flow to the Dallas Foundation, to the corresponding donor-advised fund; and then ultimately those donor-advised funds make the grants out to the community.
We typically don't get any of the income through the Crown Global vehicle -- the Dallas Foundation doesn't get any income through

the Crown Global vehicle.
Q. Is there anybody in the room with you right now?
A. No, sir.
Q. Do you have any device on other than the computer that we're sharing right now?
A. No. I have a fan on. Is it causing feedback?
Q. No, but I have a fan on too. Maybe it's --
A. Okay. Sorry. Yeah. Sorry about that.
Q. Do you have any notes or anything that you're reading from or that you're looking at?
A. No, sir, no.
Q. Okay. So there are these annuities. How did those annuities get funded? Do you know?
A. Yes. So back in 2015, I believe, in November of 2015, we funded the annuities with about $29 million. So contributions from -- I think it was about $22 million from the -- Mr. Dondero, and then I believe another $7 million from Mr. Okada, which ultimately were sent over to Crown Global to invest in the annuities.

Q. And under the annuities, they pay fixed amounts to both supporting organizations?
A. Yes, sir, that's correct.
Q. And is there any market risk that the supporting organizations have, or is this a -- is it your understanding that it's a contractual obligation of Crown Global to pay that fixed amount for some duration?
A. Yeah, I believe Crown Global takes the risk. They have to pay a fixed amount through the obligation. I believe they take an M&E expense, which compensates for the risk.
Q. What's that last piece? I missed --
A. The M&E expenses, it's part of their -- we receive their statements quarterly. They have an administrative fee that they take, and then they have what they call an M&E expense, which it was explained a while back that's a percentage that they take to compensate for the risk associated with insurance annuities.
Q. And is the annuity tied to a -- is it a fixed period of time, or is it tied to a particular event?
A. That, I cannot answer.
Q. Okay. But is it fair to say that the

supporting organizations paid money to Crown Royal -- Crown Global -- it's getting late. Sorry.

ATTORNEY OKIN: Sounds good.

THE WITNESS: No. Sounds good, yeah.

BY ATTORNEY MORRIS:

Q. Let me restate the question.

Is it your understanding that the supporting organizations paid money to Crown Global; and in exchange, they got annuities which produced a fixed stream of income for a period of time in the future? Is that right?

A. That's correct.

Q. Okay. And that the assets -- the segregated accounts themselves are owned by Crown Global; correct?

A. I believe the Atlas IDF Fund, I believe Crown Global has partnership interests in that particular fund. I don't think they have any ownership of the other underlying segregated accounts. Not that I'm aware of.

Q. Do the segregated accounts hold anything other than the annuities? Withdrawn.

Do the segregated accounts hold the annuities?

A. The segregated accounts, not to my knowledge do they hold the annuities. What I believe hold the annuities is the Atlas IDF, LP Fund holds the annuities.

Q. But Crown Global is the one who takes the risk with respect to the investments in the annuities; correct?

A. That's correct.

Q. And do they take the risk as well with respect to the value of Atlas, for example?

A. Yes, they do take the risk with the value of Atlas.

Q. So whether Atlas is worth a dollar or a billion dollars, Crown Global has the same obligation to the supporting organizations to pay the fixed stream of income that it agreed to when it sold the annuity to them; correct?

A. That's my understanding.

Q. Okay. So that regardless of the value of the segregated accounts, the supporting organizations are guaranteed to receive the exact same amount of money over time as long as Crown Global complies with its obligations in the annuity contract; correct?

A. Yes, sir.

Q. Okay. Do you know if the Dallas Foundation ever appeared in the Highland bankruptcy before it filed this objection?
A. No, sir, I don't believe we did.
Q. And as the CFO, is it fair to say that you know that the Dallas Foundation never filed a claim in the Highland bankruptcy?
A. Yes, sir.
Q. And do you also know that the Dallas Foundation does not have an interest in the Highland Claimant Trust that was formed as part of the plan of reorganization?
ATTORNEY OKIN: Object to form.
BY ATTORNEY MORRIS:
Q. Withdrawn. Let me lay a little bit of foundation.
Are you familiar with an entity called the Highland Claimant Trust?
A. Yes.
Q. Okay. Does the Dallas Foundation have, directly or indirectly, any interest in the Highland Claimant Trust?
ATTORNEY OKIN: Object to form.
A. What I could say is that it depends on the settlement with relationship with Hunter

Mountain and indirectly with the roll-up that the beneficial interest to Empower and Okada Foundation and how that settlement impacts the economic interest there. I think that's where the Dallas Foundation could indirectly have some interest. While we're not the sole ownership of the Crown Global policy, we do have a relationship with Empower Dallas and the Okada supporting organizations.

BY ATTORNEY MORRIS:

Q. Well, you don't have an interest in what, did you say? The annuities?

A. We do have an interest in the annuity contracts.

Q. The Dallas Foundation didn't fund the annuity contracts; correct?

A. No, we did not fund them. But --

Q. And the Dallas Foundation doesn't own the annuity contracts; correct?

A. No, we don't own the annuity contracts. But what we do is we do have a fiduciary responsibility for any relationship that they financially to protect, preserve and to grow these charitable assets. And, ultimately, the supporting organizations, they roll up into

our financial statements.
Q. Is it your understanding that Crown Global has a duty to distribute -- withdrawn.
Is it your understanding that Crown Global has a duty to make distributions to the Dallas Foundation?
A. No, sir. They make distributions to Empower and Okada supporting organizations.
Q. Do you have any reason to believe that Crown Global owes any duty at all to the Dallas Foundation with respect to the annuities?
ATTORNEY OKIN: Object to form.
A. There's no direct responsibility from Crown Global to the Dallas Foundation. But because of our relationship with Okada and Empower, there is an indirect relationship there, that we have an interest.
BY ATTORNEY MORRIS:
Q. And let's go beyond the annuities.
Do you know whether Crown Global has any direct duty to the Dallas Foundation for any reason?
ATTORNEY OKIN: Object to form.
A. I'm going to say not directly.

BY ATTORNEY MORRIS:
Q. Okay. Thank you.
Does the Dallas Foundation carry on its balance sheet any interest in the Highland Claimant Trust?
A. No, sir.
Q. Do you know if the Dallas Foundation has any contractual relationship with Highland Capital Management or the Highland Claimant Trust?
A. No, sir, we don't.
Q. Do you have any reason to believe today that Highland Capital Management or the Highland Claimant Trust owes any duties or obligations to the Dallas Foundation?
ATTORNEY OKIN: Object to form.
A. I wouldn't say there was any duties or obligations to the Dallas Foundation. But I do think we have, again, some interest in the settlements and how the funds originally were supposed to flow up to Empower and Okada.
Empower and Okada, they roll up to the Dallas Foundation's financial statements. So I think there is some indirect interest in Highland Capital Claimant Trust and the decisions that are

being made as it relates to the settlement.
BY ATTORNEY MORRIS:
Q. I'm going to respectfully move to strike and ask you to listen carefully to my question --
A. Yes, sir.
Q. -- and this will go very smoothly.
Do you have any reason to believe that Highland Capital Management or the Highland Claimant Trust owes any duties or obligations to the Dallas Foundation?
ATTORNEY OKIN: Objection; form.
THE WITNESS: My apologies.
ATTORNEY OKIN: Go ahead.
A. No, sir.
BY ATTORNEY MORRIS:
Q. Are you aware that if the settlement between the Highland entities and the HMIT entities is approved, that the HMIT entities will receive cash and other assets as set forth in the agreement?
A. Yes.
Q. Do you have any reason to believe that the Dallas Foundation has a right to receive any of the cash or other assets that would be

delivered to HMIT if the settlement is approved?

ATTORNEY OKIN: Object to form.

A. Like I say based on the facts is that the interest in HMIT were sold for a million dollars. So I believe the current structure as of now, the two supporting organizations would not receive any settlements. They would not have any economic benefit of the settlement payout.

Based on the historical structure, yes, I would have said yes. We had interest in that settlement that would ultimately impact the fair market values for Empower and Okada.

BY ATTORNEY MORRIS:

Q. Are you familiar with the fair market value of Empower and Okada?

A. So the fair market value is through the insurance annuity. So based on the --

Q. I'm sorry. Through the insurance what?

A. It's the insurance through Crown Global, so they produce a fund statement on a quarterly basis. We use that to state the fair market value.

Q. And is the fair market value based on anything other than the projected future income

stream that you described earlier?

A. I believe there is impact related to some of the sub accounts. One thing we do know is in February of 2025, we saw the fair market value increased by 918,000 due to the sale of Rand's interest in Hunter Mountain. So we do believe there are other assets that impact the fair market value.

Q. But that's the fair market value of the annuities; is that right?

A. The sale of the Rand -- the interest in the Hunter Mountain, the Rand?

Q. Yeah, yeah. Is what you're describing the fair market value of the annuities that flows up to the supporting organizations?

A. I believe we have a couple of investments that are within the Crown Global structure. I think you have insurance annuities, and then you have other assets that are also within that structure through the Atlas platform. The way I understand it, the Atlas platform allows for other alternative investments to be wrapped within the insurance annuities.

Q. Did the supporting organizations have an ownership interest in Crown Global?

A. Yeah. They hold the policy, right? The supporting organizations hold the policy through Crown Global, so absolutely.
Q. And the policy that you're referring to are the annuity policies?
A. The annuity policies, that's correct.
Q. And, again, just for clarity, it does not matter to the supporting organization what the value of the assets that are held by Crown Global is; what matters is the agreed-upon future flow of distributions; fair?
A. That's fair, yes, sir. Yes.
Q. Are you familiar at all with the structure of the Highland Claimant Trust?
A. Not with the Highland Claimant Trust, no. I'm familiar with the structure of the -- the Rand structure here as relates to the Empower Dallas, and then I'm familiar with the DAF Holdco structure.
Q. Are you familiar with the HMIT structure?
A. I'm familiar -- I know how the structure flows up to the Atlas IDF Fund.
Q. Have you reviewed any of the governing documents for HMIT or any of the Rand funds or

any of the Atlas funds? Have you ever reviewed the governing documents?

A. At a high level, I took a glance at the governing documents to get an understanding of the flow. I've seen organizational flow charts to kind of give me an idea of who owns what and how does it roll up ultimately to Crown Global.

Q. Do you have any knowledge as to what, if any, role Crown Global played in the Highland bankruptcy?

A. No, sir.

Q. So we've talked about the Rand and the Atlas entities and Hunter Mountain, and we've referred to those that signed on to the agreement as "the HMIT entities"; right?

A. Yes.

Q. Do you know why each of the HMIT entities was created? Do you know what purpose they served?

A. You know, I know that they create some vehicles that allow some different types of investments. I would imagine -- I don't know why the structures were created the way they were. We don't have that kind of insight. That's just

an assumption.
Q. Can you identify any assets that HMIT owns today?
A. No, sir.
Q. Were you ever able to identify any assets that HMIT owned?
A. No.
Q. In your duties as the CFO for the Dallas Foundation, did you ever make an inquiry as to what assets HMIT owned?
A. We made an inquiry to the Atlas structure unsuccessfully over the years because they were able to get to the underlying assets to have a clear understanding of the holdings; so, no, I couldn't tell you that I was successful in understanding the underlying assets.
Q. So you've been the CFO for three years now --
A. Yes, sir.
Q. -- and a half?
But you were with the organization for about six; right?
A. For 13, 13 total.
Q. Thank you.
So you've been with the organization

long before Mark Patrick ever had any role with respect to the HMIT entities; right?

A. Yes, sir.

Q. Okay. At any time that you've been with the Dallas Foundation, were you ever informed as to the assets that were held by HMIT?

A. No, sir.

Q. No; right?

A. That's correct -- no.

Q. Do you know today what assets are held by any of the HMIT entities?

A. No, sir.

Q. At any time during your tenure at the Dallas Foundation, were you ever informed as to what the assets were that any of the HMIT entities owned?

A. No, sir.

Q. Okay. And did you ever think that, as part of your duties and responsibilities working for the Dallas Foundation, that you needed to know that information?

A. Absolutely. Yeah, we inquired on multiple occasions to get our auditors comfortable with the investment vehicle.

Q. And you were never able to get that

information, is that right?
A. That's right.
Q. And that was true for the entire time of your tenure at the Dallas Foundation?
A. Yes, sir.
Q. Okay. In the course of your duties, did you ever communicate with anybody who was acting on behalf of HMIT?
A. I had some communications with Mark Patrick, but I don't think he was over HMIT at the time. I don't know. So it's kind of hard to understand the transfer of a trustee or ownership or oversight those accounts had.
So at a high level, he was probably the person I tried to communicate with if we had any questions around the valuations.
Q. But it wasn't necessarily because he was wearing the HMIT hat; it was because he wore a lot of hats. Is that fair?
A. That's fair, yes.
Q. During the course of your tenure at the Dallas Foundation, did you ever once say to yourself, I need to speak to the guy who's the head of HMIT?
A. No, we've never said that.

Q. Okay. Did you ever say to yourself at any time during your tenure at the Dallas Foundation, I need to speak to the head of any of the HMIT entities?

A. No, sir.

Q. Do you know if the Dallas Foundation ever received anything of value from HMIT directly?

A. I can't say directly, no. I just assumed it had rolled up. It was -- we had some value through the structure, I would imagine.

Q. Do you know if the Dallas Foundation ever received anything of value directly from any of the HMIT entities?

A. No, sir.

Q. Do you know if any of the -- withdrawn.

Do you have any reason to believe that any of the HMIT entities owes a duty or obligation to the Dallas Foundation today?

ATTORNEY OKIN: Object to the form.

A. I believe that there's going to be impact to our economic interest in Crown Global. I do believe there's a fiduciary obligation to the Dallas Foundation to have communication if

there are investment decisions that are being made that's going to impact that economic interest, positive or negatively.

BY ATTORNEY MORRIS:

Q. Sorry. I may not have heard it clearly.

But do you believe that Highland Capital Management or the Highland Claimant Trust owes a fiduciary duty to the Dallas Foundation?

A. Sorry. No. No. No. I thought you said HMIT. Sorry.

Q. You know what? I probably did. Let's do that.

A. Yeah.

Q. Did you believe -- do you believe that any of the HMIT entities owes a fiduciary duty to the Dallas Foundation?

ATTORNEY OKIN: Object to form.

A. Again, I'll just restate what I said.

If it's starting to impact the economic interest for the value of the Crown Global policies, I do think there's a fiduciary obligation to have a conversation to inform of any investment decisions that are being made that could have significant impact to that

value.
BY ATTORNEY MORRIS:
Q. Okay. Are you aware that HMIT filed a motion in the bankruptcy court a couple of years ago seeking permission to file a lawsuit against Highland Capital Management and others?
A. Yes, sir, I am aware of that.
Q. You are.
Did HMIT seek the Dallas Foundation's approval before filing that motion?
A. No, sir, not that I'm aware of.
Q. Do you believe that HMIT was required to seek the Dallas Foundation's approval before filing that lawsuit?
A. Again, I think it -- I don't know if "seek approval" is the right language I would use. But I do think informing the Dallas Foundation, that this could impact the economic interests of Empower and Okada Foundation.
Q. And nobody ever told you that; is that right?
A. That's correct.
Q. How did you learn about the lawsuit that HMIT commenced against Highland and others a couple of years ago?

A. Well, as we kind of got -- one, it was kind of some news that was -- that came about through some other research. Currently, as of today, we have our legal team working, pulling together facts so they kind of reiterated some of the facts that could impact the overall case. So I will just lean on our legal team to kind of bring us up to speed on this fact-finding.

Q. Do you know who authorized the filing of that motion?

A. From HMIT?

ATTORNEY OKIN: Object to form. Which motion do you mean, John?

ATTORNEY MORRIS: The same one we're talking about, the motion for permission from the bankruptcy court to sue Highland and other parties.

ATTORNEY OKIN: The one he told you he didn't even know about what was filed.

ATTORNEY MORRIS: Hey, Matt, he did tell me. He actually did tell me --

ATTORNEY OKIN: He told you he heard about it after, but go ahead.

BY ATTORNEY MORRIS:

Q. So...

A. Yes, sir, I believe it was Mr. Mark Patrick that filed them.
Q. That authorized the filing of that lawsuit?
A. Yes, sir.
Q. Do you think he did anything wrong in doing that?
ATTORNEY OKIN: Object to form.
A. What I can say is that it has impact -- it can potentially have some impact on the -- it's convoluted. I can't say he did anything wrong with filing that motion. But if it's going to impact the Empower and Okada Foundation, which is why I'm here today, is to represent those supporting orgs, you know, I think we have interest in the decisions that he's making, right?
BY ATTORNEY MORRIS:
Q. Okay. But we can agree that he never sought nor obtained the Dallas Foundation's approval to file that motion; correct?
A. Yes, sir, we can agree.
Q. And can we also agree that you only heard about that lawsuit after it was commenced or after the motion was filed?

A. Yes, sir.
Q. Okay. Have you read the settlement agreement that is the subject of the Dallas Foundation's objection?
A. Yeah, I've got some high-level facts related to the settlement agreement. We had a legal team kind of -- again, we leaned on them to kind of pull out some of the important facts that could impact the Empower and Okada Foundation.
Q. Do you know generally what HMIT is proposing to give and receive under the settlement agreement?
A. Yes, sir, generally, I do know. I believe they're trying to release liability on some of the claims. I think that's part of the settlement agreement. I'm also aware that there are future payouts that will be made to Hunter Mountain.
Q. And are you aware of other assets that Hunter Mountain might receive if the settlement agreement is pursued?
A. Yes.
Q. And what other assets are you aware of?
A. I know there's a large sum of assets,

you know, in the -- 300 million, I think that's the amount of it that I don't recall. But I couldn't go verbatim.

Q. It's not your understanding that there's $300 million worth of anything that's related to that agreement --

A. Oh, yeah, yeah, yeah. But, yeah, it's not -- it's not there -- I was thinking about there was some data around -- I apologize if I'm getting my facts confused.

Q. That's okay.

A. Yeah, actually, there's a -- as it relates to the Empower and Okada, I believe there was an impact of roughly 23-plus million dollars, potentially.

Q. But that has nothing to do with Highland; correct?

A. That's correct.

Q. And it has nothing to do with this settlement agreement; correct?

ATTORNEY OKIN: Object to form.

A. Well, I think if it has impact, ultimately, again, to Empower and Okada, again, we sold our interest in Highland Capital Management -- or Hunter Mountain for a million

dollars. So based on what we know is if there is a payout of $23 million, Empower and Okada, we won't benefit from it.

BY ATTORNEY MORRIS:

Q. So is it fair to say that the Dallas Foundation's concern is not with the terms of the settlement agreement itself but with the disposition of the assets that Hunter Mountain will receive if the settlement agreement is approved?

ATTORNEY OKIN: Object to form.

A. Well, the only thing I would say about that is we have individuals making some questionable decisions and, you know, with charitable assets. I believe Highland Dallas has entered into a settlement agreement with this individual. I think that's -- that's what I could say is somewhat problematic.

BY ATTORNEY MORRIS:

Q. What's problematic?

A. Oh, we have an individual that's shifting around charitable assets out of the responsibility of Empower and Okada; right? And, you know, Highland Capital has entered into an agreement with this individual. I think we all

understand the facts that are at play.
Q. Do you have any reason to believe that the settlement agreement was not the product of an arm's-length, good-faith negotiation between adverse parties?
ATTORNEY OKIN: Object to form.
A. I can't say anything. Yeah, I wasn't a part of those conversations, so I can't opine.
BY ATTORNEY MORRIS:
Q. And you don't have any facts that would suggest that the settlement agreement is anything other than the product of good-faith, arm's-length negotiations; correct?
ATTORNEY OKIN: Object to the form.
A. I wasn't part of the conversation, so I can't opine. But what I can state is that I believe there's significant impact to the Okada and Empower Dallas Foundation.
BY ATTORNEY MORRIS:
Q. And that's as -- not as a result of the settlement agreement, but as a result of what the Dallas Foundation contends was the restructuring that Mr. Patrick engaged in earlier this year; fair?
ATTORNEY OKIN: Object to form.

A. For the most part, I'd say that's fair.

BY ATTORNEY MORRIS:

Q. Okay. Do you have any concerns that the settlement agreement is not the product of arm's-length, good-faith negotiations?

A. I'd have to restate that, again, we have an individual who's moving around charitable assets. And, again, I think we understand the facts of restructuring, and the agreement was made to settle with this individual. So from our standpoint, again, it impacts the two supporting organizations that we are here representing.

So I think there's two things at play. The negotiations that you had with this individual, I can't opine whether or not that it wasn't done in good faith; but the impact of that settlement agreement does impact Okada and Empower Dallas.

Q. And that's because as a result of Mr. Patrick's restructuring, the Dallas Foundation is concerned that it may not have -- it may not receive as much as it would have indirectly had the restructuring not taken place; fair?

A. That's fair.
ATTORNEY OKIN: Object to form.
BY ATTORNEY MORRIS:
Q. Okay. Do you have any reason to believe that the proposed settlement is unfair to Highland Capital Management, LP?
A. Yeah, I don't have any reason to opine, no.
Q. Okay. Do you have any reason to opine as to whether or not the proposed settlement agreement is unfair to the Highland Claimant Trust?
A. No, sir.
Q. Do you have any reason to opine that the proposed settlement agreement is unfair to the Highland Litigation Subtrust?
A. No, sir.
Q. Do you have any reason to opine that the settlement agreement is unfair to Hunter Mountain Investment Trust?
A. No, sir. We can make good-faith settlements, given that there are facts that certain organizations or entities could be impacted, given what we've already talked about, what Mark Patrick has done with the

restructuring.
Q. So two things can be true, at the same time --
A. Two things can be true.
Q. Two things can be true at the same time; right, sir? The settlement agreement can be a fair and reasonable settlement that's the product of arm's-length and good-faith negotiations; while at the same time, the Dallas Foundation can still have concerns over the disposition of the assets that Hunter Mountain receives as a result of this restructuring; fair?
A. I think for the most part, that's fair. The only caveat I would add to that is if I'm negotiating with an individual that we know is causing harm to other organizations, I just say maybe we don't care about that. But from our standpoint, we do.
Q. Do you have any reason to believe that the proposed settlement is unfair to any of the HMIT entities?
A. No, sir.
Q. Are you aware that under the settlement agreement, the HMIT entities are releasing the Highland parties from any liability

other than that which arises out of the settlement agreement itself?

A. Yeah. I believe that was a part of the settlement. That's why we have the settlement. Yeah.

Q. Do you have any concern about the scope of the releases that the HMIT entities are providing?

ATTORNEY OKIN: Object to form.

BY ATTORNEY MORRIS:

Q. You can answer, sir.

A. No, sir; only as it impacts, how does it impact or potentially can impact lost income for Okada and Empower.

Q. Do you have any reason to believe that the granting of the releases in the proposed settlement agreement by the HMIT entities will have any impact at all on the supporting organizations?

ATTORNEY OKIN: Object to form.

A. Again, I think there's an economic interest in what does the settlement -- the loss of income streams to Empower and Okada, which we believe is true.

///

BY ATTORNEY MORRIS:
Q. I'm just focused on the releases now.
A. Sure.
Q. Do you have any reason to believe that the releases that the HMIT parties are granting under the proposed settlement will have any economic impact on the supporting organizations?
ATTORNEY OKIN: Object to form.
A. No, sir.
BY ATTORNEY MORRIS:
Q. Okay. Are you aware of any facts that could give rise to a claim by the Dallas Foundation against Highland?
ATTORNEY OKIN: Object to form.
A. Can you elaborate on that a little bit for me.
BY ATTORNEY MORRIS:
Q. Sure.
So I'm just -- I'm wondering if you know of any facts that might give rise to a claim or a cause of action by the Dallas Foundation against Highland Capital Management.
ATTORNEY OKIN: Object to form.
A. Not directly, no, sir.
///

BY ATTORNEY MORRIS:
Q. Okay. Are you aware of any facts that might give rise to a claim or cause of action that the Dallas Foundation could assert against the Highland Claimant Trust?
ATTORNEY OKIN: Object to form.
A. No, sir, not directly, no.
BY ATTORNEY MORRIS:
Q. Do you understand the basis for the Dallas Foundation's objection to the proposed settlement?
A. Absolutely, yes, I do.
Q. Can you describe for me in your own words what your understanding is of the basis of the objection.
A. Yeah. We are aware that we sold Rand PE Fund, which rolls up to the Atlas IDF Fund, sold its interest in the Hunter Mountain for a million dollars; and we believe that we have significant future economic payments that would be paid out to Hunter Mountain that Empower and Okada would no longer benefit from.
Q. Is it fair to say that the Dallas Foundation is concerned, not with the terms of the settlement agreement itself, but with the

possibility that it may not get its fair share of the consideration that the HMIT entities are to receive under the settlement agreement?

ATTORNEY OKIN: Object to form.

A. Yeah, for the most part, that's the key -- that's our concern.

BY ATTORNEY MORRIS:

Q. Okay. Do you understand that Mark Patrick has entered into the settlement agreement with the Highland entities on behalf of each of the HMIT entities?

A. That's my understanding.

Q. Do you have any reason to believe that the governing documents for the HMIT entities did not authorize Mr. Patrick to enter into the settlement agreement on behalf of each of the HMIT entities?

ATTORNEY OKIN: Object to form.

A. You know, what I would say to that is, you know, regardless of the governing documents, I do believe there's a fiduciary obligation that Mr. Patrick had to the supporting organizations, to inform us of any significant investment decisions that could impact the economic interest in the Crown Global vehicle.

So I just believe that, you know, just like any trustee investment advisor/control person, those are just normal conversations that we expect to have; and we not did not have that in this situation.

BY ATTORNEY MORRIS:

Q. Okay. Anything else?

A. No, sir.

Q. Okay. You don't believe that Mr. Patrick was required to obtain the Dallas Foundation's consent before entering into the settlement agreement; fair?

A. That's fair.

Q. And you don't have any reason to believe that the Dallas Foundation has any right or ability to prevent Mr. Patrick from entering into the settlement agreement on behalf of the HMIT entities; fair?

ATTORNEY OKIN: Object to form.

A. You know, I think there's two things can be true again. I think there's documentation which I haven't seen, but, again, there's a fiduciary obligation to the interested parties, I believe, just as any relationship with an investment advisor or control person.

BY ATTORNEY MORRIS:

Q. And in your view, does the fiduciary duty that you believe Mr. Patrick had as the representative of the HMIT entities, does that extend anywhere beyond the duty to inform?

ATTORNEY OKIN: Object to form.

A. Well, I'm just trying to think about -- you know, we advised $650 million of assets under management. We have advisors all the time, before they make any decisions on the sale of investments, we're informed about it. They kind of let us know if it's going to have impact to our portfolios. And that's just an expectation that we have of any investment advisor or control person.

BY ATTORNEY MORRIS:

Q. I appreciate that you have that expectation. Do you have an expectation that the HMIT entities needed to obtain the Dallas Foundation's consent before entering into the settlement agreement?

A. I'm not a legal person. But I would imagine if you have the documentation legally, I don't know if you had to get our consent. It's more so just a fiduciary obligation.

Q. And, legally, do you have any reason to believe that the Dallas Foundation has a legal right over transactions that Mark Patrick, in his capacity as the representative of any of the HMIT entities, wanted to enter into?

ATTORNEY OKIN: Object to form.

A. As an interested party, I think we have an ability to have conversations to see if this decision was made that negatively impacted the supporting organizations. I think we do have a right there to really understand why this decision was made. Why are we selling the interest for a million dollars? Why now? Why is the timing that happened now? Because if nothing happened, what we know is we would have benefited from the settlement payouts.

BY ATTORNEY MORRIS:

Q. Does the Dallas Foundation have a direct ownership interest in any of the HMIT entities?

A. Not a direct ownership, no, sir.

Q. Does the Dallas Foundation have any indirect ownership interest in any of the HMIT entities?

ATTORNEY OKIN: Object to form.

A. Not directly. The Dallas Foundation does not.
BY ATTORNEY MORRIS:
Q. So no direct interest -- withdrawn.
No direct ownership interest and no indirect ownership interest; fair?
ATTORNEY OKIN: Object to form.
A. We do have an interest in -- because the assets roll up to our balance sheet overall, they would present an audited financial statement. So we do have to understand the fluctuations in market value to explain not just to our board but to our auditors what's happened. So we do have indirect interest.
BY ATTORNEY MORRIS:
Q. And none of the HMIT entities appear as an asset on the Dallas Foundation's balance sheet; correct?
A. Not directly. But if they roll up and they feed into the Atlas IDF Fund, right, and then the Atlas IDF Fund, which is a part of the Crown Global annuities, feeds into our balance sheet, there is an indirect interest in HMIT.
Fair to say?
Q. Does any Atlas entity appear on the

Dallas Foundation balance sheet?
A. Yeah, through the Crown Global annuity. So if you look at the Crown Global statement, it lists an Atlas LP as the investment vehicle.
Q. Do you know if the Dallas Foundation has any right to control any of the HMIT entities?
ATTORNEY OKIN: Object to form.
A. No, we can't directly control the HMIT entities.
BY ATTORNEY MORRIS:
Q. Do you know if the Dallas Foundation has any right to approve or disapprove of any potential transaction that an HMIT entity was contemplating entering into?
A. Yeah, so with the Atlas IDF Fund, what I can say is the Empower and Okada, they do have the opportunity to consent.
We had some notes that were -- there were some notes that Mark Patrick wanted to sell in February. We had to get the consent of Crown Global in order to sell these notes; and we had -- we opined with Crown Global to withdraw consent, right?

So he did reach out to Crown Global for consent in which the Empower and Okada had an opportunity to provide our recommendation.

Q. Let's focus on the settlement agreement.

Do you have any reason to believe that Mr. Patrick was required to obtain the consent of the Dallas Foundation before he signed it on behalf of the HMIT entities?

ATTORNEY OKIN: Object to form.

A. No.

BY ATTORNEY MORRIS:

Q. Do you have any reason to believe that Mr. Patrick was required to obtain the consent of the supporting organizations before entering into the settlement agreement on behalf of the HMIT entities?

ATTORNEY OKIN: Object to form.

A. No, sir.

BY ATTORNEY MORRIS:

Q. Do you have any reason to believe that Mr. Patrick was required to obtain the consent of Crown Global before entering into the proposed settlement agreement on behalf of each of the HMIT entities?

ATTORNEY OKIN: Object to form.
A. No, sir.
BY ATTORNEY MORRIS:
Q. Do you have any reason to believe that Crown Global has any right to control any of the HMIT entities?
ATTORNEY OKIN: Object to form.
A. Not that I'm aware of, no.
BY ATTORNEY MORRIS:
Q. Do you have any reason to believe that -- we're going to move on.
So we're going to put up on the screen the Dallas Foundation's objection.
A. Yes, sir.
Q. It will just take a moment for my colleague to do that.
While he's doing that, let me just tell you that this can be a little bit of a cumbersome process. I'm doing this by Zoom. If there's any aspect of the document that you recall that you think you need to review to refresh your recollection or to put it in context, will you just let me know that so that I give you a full and fair opportunity to answer the questions?

A. Yes, sir.

ATTORNEY MORRIS: Okay. Can we go to paragraph 32, please.

(Previously marked Highland Exhibit 1 introduced by counsel.)

BY ATTORNEY MORRIS:

Q. So I've put up on the screen, Mr. Littleton, the portion of the Dallas Foundation's objection that was filed in this case.

And you're familiar with that document; is that right?

A. Yeah. I couldn't repeat it back to you verbatim, but I understand some of the high-level facts in this objection.

Q. You give me comfort when you say that. You should not be able to repeat verbatim what this document is. So --

ATTORNEY OKIN: And, Mr. Littleton, although he didn't say it this time, he did say it in the prior one: If you need to see any more of this in order to be able to answer his questions, be sure to point that out.

THE WITNESS: Absolutely.

ATTORNEY MORRIS: I actually did say

that. That's okay.
ATTORNEY OKIN: Did you say that this time? I know you said it last time.
ATTORNEY MORRIS: Sorry, I must be putting you to sleep.
ATTORNEY OKIN: That's a possibility.
BY ATTORNEY MORRIS:
Q. Looking at the third line, I'm just going to read this quote: "Unfortunately, it does not appear, however, that joint official liquidators are parties to or have authorized the settlement."
Do you see that sentence?
A. Yes, sir.
Q. Do you know the entity over which the joint official liquidators were appointed?
A. Yes, sir. It's the DAF Foundation Holdco.
Q. And that's in the Cayman Islands; is that right?
A. Yes, sir; that's correct.
Q. Are you aware that all of the HMIT entities are Delaware organizations?
A. Yes, sir; that's correct.
Q. Have you ever communicated with the

joint official liquidators?

A. No, not officially. We do have a planned communication this week.

Q. Do you know if anybody acting on behalf of the Dallas Foundation has ever informed the joint official liquidators of Highland's motion to have the settlement agreement approved?

A. No, sir.

Q. Do you know if anybody acting on behalf of the Dallas Foundation has provided a copy of the objection that's on the screen to the joint official liquidators?

A. Not that I'm aware of, sir.

Q. Do you have any reason to believe, as you sit here today, that the joint official liquidators have any knowledge of the settlement agreement that is going to be before the Court on Wednesday?

ATTORNEY OKIN: Object to form.

A. I can't directly say.

BY ATTORNEY MORRIS:

Q. Okay. You haven't had any communications with anybody in the world at any time that led you to believe that the joint official liquidators were informed of the

proposed settlement agreement or the Dallas Foundation's objection; fair?

A. That's fair, sir.

Q. Okay. Do you have any reason to believe that Mr. Patrick was required to obtain the authorization of the joint official liquidators before entering into this settlement agreement on behalf of the HMIT entities?

ATTORNEY OKIN: Object to form.

A. No, sir, I can't. I can't speak to that.

BY ATTORNEY MORRIS:

Q. Can you speak to whether or not the joint official liquidators have any right to veto or prevent the HMIT entities from entering into the settlement agreement?

A. Again, I'm not a legal person, so I can't really opine on the official capacity of the joint liquidators and what they're capable of doing and not doing. So I'm going to have to say, no, I can't answer that question.

Q. Further down in the paragraph it states that:

"Indeed, many of Mr. Patrick's actions, including the insertion of

newly created entities into the fund's structure for the apparent purpose of diverting charitable assets will now be subject to the scrutiny of an independent, Court-appointed fiduciary and may be subject to clawback or other avoidance actions in the Cayman liquidation or such other tribunal as has jurisdiction."

Have I read that correctly, sir?

A. Yes, sir, you have.

Q. Okay. You're not an expert in Cayman Islands law; correct?

A. No, sir.

Q. I think you said earlier you're not a lawyer. Right?

A. That's correct.

Q. Do you have any understanding as to what facts must be established in order to succeed in a clawback or avoidance action?

A. It would just be assumption of mine that I would have, whether it's a breach of contract, discovery of various actions decision-making. But, no, I can't give you a legal opinion.

Q. Do you have any view at all as to likelihood that the supporting organizations or the Dallas Foundation might succeed in clawing back or succeeding in other avoidance actions to set aside the settlement agreement if it's approved by the Court?

ATTORNEY OKIN: Object to form.

And I'll also just remind you, Mr. Littleton, to the extent it's implicated, don't go into attorney-client privileged information that you may have received.

A. Yeah, I can't -- I can't answer your question, Mr. Morris, on that one.

BY ATTORNEY MORRIS:

Q. Is it fair to say you'd have to speculate as to whether or not -- let me just finish the question.

Is it fair to say that you would have to speculate as to whether or not the Dallas Foundation or anybody else might succeed in clawing back or avoiding the settlement agreement if it's approved by the Court?

ATTORNEY OKIN: Object to form.

A. It would be my opinion. It would be speculation of how I feel, given the facts that

I've seen and just some of the impact that we've seen on our supporting organizations; and I would just leave it there.

ATTORNEY MORRIS: Okay. If we could scroll up to paragraph 33, please.

BY ATTORNEY MORRIS:

Q. Okay. The last sentence of paragraph 33 says: "Thus, even if approved by this Court, consummation of the settlement is not likely to buy the peace the debtor now seeks."

Do you see that?

A. Yes, sir.

Q. Do you have any reason to believe that the Highland parties have done anything wrong in entering into this proposed settlement agreement?

ATTORNEY OKIN: Object to form.

A. You know, what I would say is we have an individual, in Mr. Patrick, that's moving around charitable assets; and we -- Highland Capital or the Highland entities have settled -- have made a settlement agreement with this individual, knowing some of the facts of how the charities are being negatively impacted. That's -- that would be my comment there.

///

BY ATTORNEY MORRIS:
Q. I'm not asking about the impact on the charitable foundations, and I'm not asking about Mr. Patrick. I'm just asking if you have any facts that lead you to believe that Highland has engaged in any wrongdoing with respect to negotiation and entry into the proposed settlement agreement.
ATTORNEY OKIN: Object to form. He answered your question.
BY ATTORNEY MORRIS:
Q. You can answer, sir.
A. No, sir. I'll just leave it as I stated. That was my answer.
Q. All right. So I didn't hear any facts, so you don't have any facts. Is that fair?
ATTORNEY OKIN: Object to form; argumentative. Come on, John.
ATTORNEY MORRIS: Matt, I'm being --
ATTORNEY OKIN: You asked him if they did anything wrong. He told you they did something wrong by --
(Indiscernible cross-talk.)
THE COURT REPORTER: I'm sorry. I

can't understand you both when you are talking at the same time.

BY ATTORNEY MORRIS:

Q. Mr. Littleton, are you aware of any facts that cause you to believe that the Highland parties have done anything wrong in entering into this agreement?

ATTORNEY OKIN: Object to form.

A. Again, I would just state that we have an individual who is moving around charitable assets, and I think we all are aware of the facts of what has taken place. Now, whether we want to consider that as anything wrong, in quotations, that's up for opinion.

In terms of "facts" facts, I can't -- no, I'm going to say, no, I don't have facts that I can with share you, Mr. Morris.

BY ATTORNEY MORRIS:

Q. And you don't even have any facts that suggest Highland had any role in moving the assets around that you just described; fair?

A. Yeah, I don't understand that Highland has moved around the assets. But I think when you're making a deal knowing that the individual that I'm settling with has done some things that

are questionable, you know, I think that discussion can be up for debate, whether -- you know, charities are being impacted; significant dollars are not going to be going out to the community; there's a lot of uncertainty with these assets.

And we all know the facts. The facts are clearly outlined.

Q. Do you know why the Dallas Foundation contends that: "Even if approved by the Court, consummation of the settlement is not likely to buy the peace that the debtor now seeks"?

What's the basis for that, if you have any understanding at all?

A. That one there, sir, I'm not going to be able to answer that one for you.

Q. Are you aware of any potential claims that the Dallas Foundation is considering bringing against Highland Capital Management or the Highland Claimant Trust?

ATTORNEY OKIN: I'm going to instruct him not to answer that. To the extent that he would be aware of those, that would be --

ATTORNEY MORRIS: Why don't we just do "yes" or "no," Matt. Okay?

ATTORNEY OKIN: No. I think -- I think whether or not there are any claims and whether we're considering any claims is attorney-client privilege. It's not a "yes" or "no" or detail; it's a not answer.

ATTORNEY MORRIS: I'll ask him on Wednesday.

ATTORNEY OKIN: Okay.

BY ATTORNEY MORRIS:

Q. Let's go to -- yeah, paragraph 34 says that "there is ample evidence that Mr. Patrick has acted and is acting well outside the scope of his authority and fiduciary obligations."

Do you see that?

A. Yes, sir, I do.

Q. Okay. I want to focus solely on the negotiation and execution of the settlement agreement.

Focusing --

A. Yes, sir.

Q. Focusing solely on the settlement agreement, do you believe that Mr. Patrick acted outside of the scope of his authority to negotiate and enter into the settlement agreement on behalf of each of the HMIT entities?

ATTORNEY OKIN: Object to form of the question.

A. Again, I think it's something that I've stated a few times now. Two things can be true. I think we've already agreed on that.

BY ATTORNEY MORRIS:

Q. Which two things can be true here?

A. The good-faith conversation with the settlement; but at the same time, it could have a consequential impact on the Okada and Empower Dallas supporting organizations.

Q. Okay. Do you believe -- do you have any reason to believe that Mr. Patrick acted outside of his fiduciary obligations with respect to his negotiation and execution of the settlement agreement on behalf of the HMIT entities?

ATTORNEY OKIN: Object to form. Are you asking him personally or the organization that filed this?

ATTORNEY MORRIS: It's not a 30(b)(6) witness. I know the difference.

ATTORNEY OKIN: Just so we're clear.

A. Yeah, I do think there was a fiduciary obligation to inform and have a conversation with

the interested parties.
BY ATTORNEY MORRIS:
     Q.    Okay.  So, again, it's a duty to inform but nothing more; is that fair?
           ATTORNEY OKIN:  Object to form.
     A.    Yeah, yeah, again, I think it's, you know, something that we all expect to have, again, with our investment advisors, control persons, trustees.
BY ATTORNEY MORRIS:
     Q.    Okay.  Can we go to paragraph 16, please.
           Do you see paragraph 16 refers to material nonpublic information?
     A.    Yes, sir.  I see it.
     Q.    Do you know what material nonpublic information is being referred to there?
     A.    No, sir.
     Q.    Did you ever ask anybody?
     A.    No.  I didn't want to get involved in that conversation, no, sir.  I did not ask anybody.
     Q.    Do you know where -- withdrawn.
           Do you know the Dallas Foundation's source of information that enabled it to state,

upon information and belief, that the information provided was obtained by Mr. Patrick through his employment at Skyview and constituted MNPI?

ATTORNEY OKIN: Object to form.

A. No, sir, I was not -- no.

BY ATTORNEY MORRIS:

Q. You don't know where that information came from?

A. No, sir.

Q. The next sentence refers to a put option.

Do you see that?

A. Yes, sir.

Q. Did the foundation have a put option?

A. Yeah, the Highland Dallas Foundation had a put option agreement with the Dugaboy Investment Trust. I think we had 1.5 million shares of NexPoint Hospitality Trust. I think it was a contribution that was given in 2019 with the 7-year put option.

Q. And is that option now expired?

A. I believe it converted into a different investment vehicle now.

Q. So the Dallas Foundation never exercised that option; correct?

A. Correct.
Q. Why not?
A. We didn't have a -- we didn't feel we had any reason to exercise the put option.
Q. Did you ever do any analysis to try to determine what the economic impact would be on the Dallas Foundation if they actually exercised that put option?
A. We had some conversations with our internal investment advisor, and at the time his recommendation was not to make any changes or call the put option.
Q. Who was that advisor?
A. Madden & Associates at the time -- excuse me. Madden Asset Management.
Q. Do you have the shares to exercise the put today?
A. To be honest, Mr. Morris, there's a little bit of discovery we have to understand now that the shares have converted. I believe they converted to a different vehicle in April of this year.
Q. Are you aware that the Dallas Foundation lost $9 million by not exercising the put option before it converted?

ATTORNEY OKIN: Object to form.
A. I think we -- so we do have some information that we just need to understand thoroughly about what's happened now that the assets transferred into a different vehicle.
BY ATTORNEY MORRIS:
Q. Well, you're the CFO; right? And I think you said that your duty is to be responsible for the foundation's assets; right?
A. That's fair; yes, sir.
Q. Were you aware that the put was going to convert before it actually converted?
A. I was not aware of that. I was not informed of that.
Q. Were you ever told what the value would be to the Dallas Foundation if the Dallas Foundation exercised the put?
A. Yeah, I believe you're correct, it was in the ballpark range of $9 million.
Q. So is it fair to say that had the Dallas Foundation exercised the put, then it would have recovered $9 million?
A. Yeah, I think that's fair, yeah.
Q. What's the value of the shares that it received upon conversion? Do you know that?

A. No, I don't know that. We were just notified recently that the shares had converted.
Q. Is one of the reasons that you didn't exercise the put option is because Dugaboy, Mr. Dondero's family trust, was the counterparty?
ATTORNEY OKIN: Object to the form.
A. No, sir, that wouldn't be the reason.
BY ATTORNEY MORRIS:
Q. Do you think Mark Patrick breached his fiduciary duty by telling the Dallas Foundation that it should consider exercising a put that was worth $9 million?
ATTORNEY OKIN: Object to form.
A. You know, I think there was information that was not privy to individuals, so I don't know if we could rely on that information to make a decision.
BY ATTORNEY MORRIS:
Q. This was a put that was owned by the Dallas Foundation; do I have that right?
A. The Highland Dallas Foundation, supporting organization.
Q. And what's the relationship between the Dallas Foundation and the Highland Dallas Foundation?

A. Very similar to the relationship between Empower Dallas and Okada Dallas. The Highland Dallas Foundation is the supporting org that we have indirect oversight of.

Q. And if the Highland Dallas Foundation had exercised the put, would that have inured to the benefit of the Dallas Foundation?

ATTORNEY OKIN: Object to form.

A. It ultimately would have. What it would have benefited was the supporting organization to allow for more impactful grant-making. So you would have had $9 million of liquidity that could be pushed out into the community.

ATTORNEY MORRIS: Okay. How much time do I have left, Matt? I know you're watching.

ATTORNEY OKIN: I lost track, I was so enraptured by your questions.

18 minutes.

ATTORNEY MORRIS: You wouldn't be the first one.

Why don't we take a short break here. I've got 18 minutes left. If we could just take a five-minute break.

///

(Recess taken from 4:42 p.m. to 4:49 p.m.)

BY ATTORNEY MORRIS:

Q. Mr. Littleton, I think you answered this. If I did, I apologize.

Can you confirm for me that you've never communicated with the joint official liquidators?

A. Yes, sir. That is correct, other than emails to set up a conversation.

Q. Conversations that you did not participate in; is that right?

A. Yeah, just for -- yeah, just for some questions they wanted to ask of the Dallas Foundation's finance team.

Q. But did you participate -- so you spoke with the joint official liquidators' finance team?

A. No. They wanted to set up a call. That's the only time -- the only communication I've had.

Q. And you haven't had that call yet; is that right?

A. That's correct.

Q. And that call is going to be scheduled

for sometime in the future; fair?

A. Yes, sir.

ATTORNEY MORRIS: I have no further questions.

ATTORNEY PHILLIPS: No questions.

ATTORNEY OKIN: All right.

ATTORNEY MORRIS: Mr. Littleton, thank you very, very much for your time and patience.

Matt, thank you for arranging this on short notice.

Gail, do you need anything else from anybody?

THE COURT REPORTER: Okay. I have copies for Mr. Morris, Mr. Lang, Mr. Okin, and Mr. Phillips.

Anybody else?

ATTORNEY OKIN: Gail, we do want to read and sign both transcripts.

(Whereupon, at 4:50 p.m. Central Time the proceedings concluded.)

INSTRUCTIONS TO DEPONENT

After reading this volume of your deposition, indicate any corrections or changes to your testimony and the reasons therefor on the Errata Sheet supplied to you and sign it. DO NOT make marks or notations on the transcript volume itself.

E R R A T A

I wish to make the following changes, for the following reasons:

Page Line

_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________
_____ _____ CHANGE: ______________________________
REASON: ______________________________

C E R T I F I C A T I O N

I hereby certify that I have read the foregoing transcript of my deposition testimony, and that my answers to the questions propounded, with the attached corrections or changes, if any, are true and correct.

-----------------------------------
TORREY LITTLETON

CERTIFICATE OF SHORTHAND REPORTER

I, Gail Inghram, Registered Diplomate Reporter, Certified Realtime Reporter, Realtime Systems Administrator, CA-Certified Shorthand Reporter No. 8635, and Notary Public, the officer before whom the foregoing proceedings were taken, do hereby certify that the foregoing transcript is a true and correct record of the proceedings; that said proceedings were taken by me stenographically and thereafter reduced to typewriting under my supervision; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.



Gail Inghram,
BA, RDR, CRR, RSA, CA-CSR No. 8635

**WORD INDEX**


< $ >
**$22** 19:*21*
**$23** 42:*2*
**$29** 19:*20*
**$300** 41:*5*
**$650** 52:*8*
**$7** 19:*22*
**$9** 72:*24* 73:*19*, *22* 74:*12* 75:*12*

< 1 >
**1** 6:*13* 58:*5*
**1.5** 71:*17*
**10010** 3:*24*
**10017-2024** 3:*16*
**11** 1:*8*
**1113** 4:*10*
**13** 11:*14* 32:*23*
**16** 70:*11*, *13*
**1600** 5:*9*
**1700** 4:*18*
**18** 75:*19*, *23*
**19-34054-sgj11** 1:*5*
**1st** 11:*13*

< 2 >
**2015** 19:*18*, *19*
**2019** 71:*19*
**2022** 11:*13*
**2025** 1:*14* 2:*10* 29:*4*
**21** 7:*4*
**212.849.7615** 3:*25*
**214.817.4500** 4:*20*
**22** 1:*14* 2:*10*
**225.381.9643** 5:*11*
**22nd** 3:*23*
**2390** 4:*18*
**23-plus** 41:*14*
**240** 4:*10*

< 3 >
**3:30** 1:*15* 2:*11*
**30(b)(6** 69:*21*
**300** 41:*1*
**301** 5:*9*
**310.277.6910** 3:*17*
**32** 58:*3*
**33** 64:*5*, *8*
**34** 68:*10*
**34th** 3:*15*

< 4 >
**4:42** 76:*1*
**4:49** 76:*2*
**4:50** 77:*19*

< 5 >
**51** 3:*23*
**58** 6:*13*

< 6 >
**67** 7:*4*

< 7 >
**70801** 5:*10*
**713.228.4100** 4:*12*
**75201** 4:*19*
**77002** 4:*11*
**780** 3:*15*
**7-year** 71:*20*

< 8 >
**8** 6:*7*
**8635** 1:*22* 81:*8*, *21*

< 9 >
**918,000** 29:*5*

< A >
**ability** 51:*16* 53:*8*
**able** 32:*5*, *13* 33:*25* 58:*17*, *22* 67:*16*
**absolutely** 30:*3* 33:*22* 49:*12* 58:*24*
**accommodate** 11:*1*
**accounts** 21:*15*, *21*, *22*, *24* 22:*1*, *20* 29:*3* 34:*13*
**acted** 68:*12*, *22* 69:*13*
**acting** 34:*8* 60:*4*, *9* 68:*12*
**action** 48:*21* 49:*3* 62:*20*
**actions** 61:*25* 62:*7*, *23* 63:*4*
**activity** 14:*25* 15:*2*, *3*, *15*
**actual** 18:*2*
**ADAMS** 4:*9*
**add** 46:*14*
**addition** 13:*8*
**administrative** 20:*16*
**Administrator** 81:*7*
**adverse** 43:*5*
**advised** 52:*8*
**advisor** 51:*25* 52:*15* 72:*10*, *13*
**advisor/control** 51:*2*
**advisors** 52:*9* 70:*8*
**affiliated** 11:*4*
**affiliates** 9:*5* 12:*18* 13:*13*, *18*
**affirmed** 8:*6*
**afternoon** 8:*23*
**ago** 12:*8* 37:*5*, *25*
**agree** 39:*19*, *22*, *23*
**agreed** 22:*16* 69:*5*
**agreed-upon** 30:*10*
**agreement** 9:*4* 12:*17* 13:*3*, *14*, *18* 27:*21* 31:*15* 40:*3*, *6*, *12*, *16*, *21* 41:*6*, *20* 42:*7*, *9*, *16*, *25* 43:*3*, *11*, *21* 44:*5*, *10*, *18* 45:*11*, *15*, *19* 46:*6*, *24* 47:*2*, *17* 49:*25* 50:*3*, *9*, *16* 51:*12*, *17* 52:*21* 56:*5*, *16*, *24* 60:*7*, *17* 61:*1*, *8*, *16* 63:*5*, *21* 64:*15*, *21* 65:*8* 66:*7* 68:*18*, *22*, *24* 69:*16* 71:*16*
**ahead** 27:*14* 38:*23*
**ahurt@kellyhart.com** 5:*7*
**allow** 9:*19* 31:*22* 75:*11*
**allows** 29:*22*
**alternative** 29:*22*
**AMELIA** 5:*6*
**amount** 20:*8*, *10* 22:*22* 41:*2*
**amounts** 20:*2*
**ample** 68:*11*
**analysis** 72:*5*
**annuities** 17:*6*, *12*, *25* 18:*3*, *8* 19:*16*, *17*, *19*, *25* 20:*1*, *20* 21:*10*, *23*, *25* 22:*2*, *3*, *4*, *7* 24:*12* 25:*12*, *20* 29:*10*, *14*, *18*, *23* 54:*22*
**annuity** 17:*16* 20:*21* 22:*17*, *24* 24:*13*, *16*, *19*, *20* 28:*17* 30:*5*, *6* 55:*3*
**ANSWER** 7:*2* 9:*17*, *20* 10:*19* 20:*24* 47:*11* 57:*24* 58:*22* 61:*21* 63:*12* 65:*12*, *14* 67:*16*, *22* 68:*5*
**answered** 65:*10* 76:*4*
**answers** 80:*8*
**Anybody** 14:*3* 19:*2* 34:*7* 60:*4*, *9*, *23* 63:*20* 70:*19*, *22* 77:*12*, *16*
**anyway** 10:*5*, *20*
**apologies** 27:*13*
**apologize** 41:*9* 76:*5*
**apologizing** 8:*13*
**apparent** 62:*2*
**appear** 54:*16*, *25* 59:*10*
**appeared** 3:*2* 23:*2*
**appointed** 59:*16*
**appreciate** 8:*16* 52:*17*
**approval** 37:*10*, *13*, *16* 39:*21*
**approve** 55:*14*
**approved** 13:*24* 14:*1* 27:*19* 28:*1* 42:*10* 60:*7* 63:*6*, *22* 64:*8* 67:*10*
**approximately** 2:*11*
**April** 72:*21*
**argumentative** 65:*19*
**arises** 47:*1*
**arm's-length** 43:*4*, *13* 44:*6* 46:*8*
**arranging** 77:*9*
**aside** 63:*5*
**asked** 15:*9* 65:*21*
**asking** 65:*2*, *3*, *4* 69:*19*
**aspect** 57:*20*

**aspects** 11:*21*
**assert** 49:*4*
**asset** 54:*17* 72:*15*
**assets** 11:*19* 21:*14* 24:*24* 27:*20*, *25* 29:*7*, *19* 30:*9* 32:*2*, *6*, *10*, *13*, *16* 33:*6*, *10*, *15* 40:*19*, *23*, *25* 42:*8*, *15*, *22* 44:*9* 46:*11* 52:*9* 54:*9* 62:*3* 64:*19* 66:*11*, *21*, *23* 67:*6* 73:*5*, *9*
**associated** 20:*20*
**Associates** 72:*14*
**assumed** 35:*10*
**assumption** 32:*1* 62:*21*
**Atlas** 15:*5* 18:*4* 21:*17* 22:*3*, *10*, *12*, *13* 29:*20*, *21* 30:*23* 31:*1*, *14* 32:*11* 49:*17* 54:*20*, *21*, *25* 55:*4*, *17*
**attached** 80:*9*
**Attorney** 6:*7* 8:*11*, *24* 15:*22*, *23* 16:*16*, *23* 21:*4*, *6* 23:*13*, *14*, *23* 24:*10* 25:*13*, *19*, *24* 26:*1*, *16* 27:*2*, *12*, *14*, *16* 28:*2*, *13* 35:*21* 36:*4*, *18* 37:*2* 38:*12*, *14*, *18*, *20*, *22*, *24* 39:*8*, *18* 41:*21* 42:*4*, *11*, *19* 43:*6*, *9*, *14*, *19*, *25* 44:*3* 45:*2*, *3* 47:*9*, *10*, *20* 48:*1*, *8*, *10*, *14*, *17*, *23* 49:*1*, *6*, *8* 50:*4*, *7*, *18* 51:*6*, *19* 52:*1*, *6*, *16* 53:*6*, *17*, *25* 54:*3*, *7*, *15* 55:*9*, *12* 56:*10*, *12*, *18*, *20* 57:*1*, *3*, *7*, *9* 58:*2*, *6*, *19*, *25* 59:*2*, *4*, *6*, *7* 60:*19*, *21* 61:*9*, *12* 63:*7*, *14*, *23* 64:*4*, *6*, *16* 65:*1*, *9*, *11*, *18*, *20*, *21* 66:*3*, *8*, *18* 67:*21*, *24* 68:*1*, *6*, *8*, *9* 69:*1*, *6*, *18*, *21*, *23* 70:*2*, *5*, *10* 71:*4*, *6* 73:*1*, *6* 74:*6*, *8*, *13*, *18* 75:*8*, *15*, *17*, *20* 76:*3* 77:*3*, *5*, *6*, *7*, *17*
**attorney-client** 63:*10* 68:*4*
**audited** 54:*10*
**auditors** 33:*23* 54:*13*
**authority** 68:*13*, *23*
**authorization** 61:*6*
**authorize** 50:*15*
**authorized** 38:*9* 39:*3* 59:*11*
**Avenue** 3:*15*, *23* 4:*18*
**avoidance** 62:*7*, *20* 63:*4*
**avoiding** 63:*21*
**aware** 12:*7*, *10*, *13* 13:*7*, *12* 15:*15* 16:*2*, *4*, *8*, *24* 21:*21* 27:*17* 37:*3*, *7*, *11* 40:*16*, *19*, *23* 46:*23* 48:*11* 49:*2*, *16* 57:*8* 59:*22* 60:*13* 66:*4*, *11* 67:*17*, *23* 72:*23* 73:*11*, *13*

**< B >**
**BA** 1:*22* 81:*21*
**back** 19:*18* 20:*18* 58:*13* 63:*4*, *21*
**balance** 26:*4* 54:*9*, *17*, *22* 55:*1*
**ballpark** 73:*19*
**BANKRUPTCY** 1:*1* 12:*8*, *15* 23:*3*, *7* 31:*11* 37:*4* 38:*16*
**BARTLETT** 4:*9*
**based** 16:*21* 28:*3*, *9*, *17*, *24* 42:*1*
**basis** 28:*22* 49:*9*, *14* 67:*13*
**Baton** 5:*10*
**Beacon** 18:*6*
**beginning** 2:*11*
**behalf** 3:*4*, *19* 4:*3*, *14* 5:*3* 13:*3*, *25* 16:*5*, *9*, *25* 34:*8* 50:*10*, *16* 51:*17* 56:*9*, *16*, *24* 60:*5*, *10* 61:*8* 68:*25* 69:*16*
**belief** 71:*1*
**believe** 13:*5* 19:*18*, *22* 20:*9*, *11* 21:*17*, *18* 22:*3* 23:*4* 25:*10* 26:*12* 27:*8*, *23* 28:*5* 29:*2*, *7*, *16* 35:*18*, *22*, *24* 36:*7*, *15* 37:*12* 39:*1* 40:*14* 41:*13* 42:*15* 43:*2*, *17* 45:*5* 46:*19* 47:*3*, *15*, *24* 48:*4* 49:*19* 50:*13*, *21* 51:*1*, *9*, *15*, *24* 52:*3* 53:*2* 56:*6*, *13*, *21* 57:*4*, *10* 60:*14*, *24* 61:*5* 64:*13* 65:*5* 66:*5* 68:*22* 69:*12*, *13* 71:*22* 72:*20* 73:*18*
**beneficial** 24:*2*
**benefit** 28:*8* 42:*3* 49:*22* 75:*7*
**benefited** 53:*15* 75:*10*
**best** 18:*10*
**beyond** 25:*20* 52:*5*
**billion** 22:*14*
**bit** 13:*22* 15:*9* 23:*15* 48:*15* 57:*18* 72:*19*
**board** 11:*23* 15:*13*, *17* 54:*13*
**boards** 14:*24*
**breach** 62:*22*
**breached** 74:*9*
**break** 10:*24* 75:*22*, *24*
**bring** 38:*8*
**bringing** 67:*19*
**buy** 64:*10* 67:*12*

**< C >**
**CA-Certified** 81:*7*
**CA-CSR** 1:*22* 81:*21*
**call** 14:*10* 20:*17* 72:*12* 76:*19*, *22*, *25*
**called** 12:*4* 23:*17*
**capable** 61:*19*
**capacity** 11:*7*, *22* 53:*4* 61:*18*
**CAPITAL** 1:*6* 3:*4* 8:*25* 12:*5* 26:*9*, *13*, *25* 27:*9* 36:*8* 37:*6* 41:*24* 42:*24* 45:*6* 48:*22* 64:*20* 67:*19*
**care** 46:*17*
**carefully** 27:*4*
**carry** 26:*3*
**Case** 1:*5* 38:*6* 58:*10* 81:*16*
**cash** 27:*20*, *25*
**casual** 8:*14*
**cause** 48:*21* 49:*3* 66:*5*
**causing** 19:*7* 46:*16*
**caveat** 46:*14*
**Cayman** 16:*1* 59:*19* 62:*7*, *12*
**Central** 1:*15* 2:*11* 77:*19*
**certain** 9:*3* 12:*17*, *18* 13:*12* 15:*25* 45:*23*
**CERTIFICATE** 81:*2*
**Certified** 2:*14*, *15* 81:*6*
**certify** 80:*6* 81:*10*
**CFO** 11:*8*, *10*, *12*, *16*, *17* 23:*5* 32:*8*, *17* 73:*7*
**chance** 10:*15*
**CHANGE** 79:*6*, *8*, *10*, *12*, *14*, *16*, *18*, *20*, *22*
**changes** 72:*11* 78:*3* 79:*3* 80:*9*
**Chapter** 1:*8*
**charitable** 11:*19* 24:*24* 42:*15*, *22* 44:*8* 62:*3* 64:*19* 65:*3* 66:*10*
**charities** 64:*23* 67:*3*
**charts** 31:*6*
**claim** 23:*7* 48:*12*, *20* 49:*3*
**Claimant** 3:*5* 9:*1* 23:*11*, *18*, *22* 26:*5*, *9*, *14*, *25* 27:*10* 30:*14*, *15* 36:*8* 45:*11* 49:*5* 67:*20*
**claims** 40:*15* 67:*17* 68:*2*, *3*
**CLARITY** 7:*22* 30:*7*
**clawback** 62:*6*, *20*

**clawing** 63:3, 21
**clear** 32:14 69:23
**clearly** 36:6 67:8
**colleague** 57:16
**combination** 14:23
**Come** 65:19
**comfort** 58:16
**comfortable** 33:24
**commenced** 16:6 37:24 39:24
**comment** 64:24
**communicate** 34:7, 15
**communicated** 59:25 76:7
**communication** 35:25 60:3 76:20
**communications** 34:9 60:23
**community** 18:22 67:5 75:14
**company** 12:4
**compensate** 20:19
**compensates** 20:12
**complicated** 9:14
**complies** 22:23
**computer** 19:6
**concern** 42:6 47:6 50:6
**concerned** 44:22 49:24
**concerns** 15:2 44:4 46:10
**concluded** 77:20
**conference** 14:10
**confirm** 76:6
**confused** 41:10
**connection** 9:2
**consent** 51:11 52:20, 24 55:19, 22, 25 56:2, 7, 14, 22
**consequential** 69:10
**consider** 66:13 74:11
**consideration** 50:2
**considering** 67:18 68:3
**constituted** 71:3
**consummation** 64:9 67:11
**Cont'd** 4:1 5:1
**contemplating** 55:16
**contends** 43:22 67:10
**context** 57:23
**contract** 17:12, 19 22:24 62:23
**contracts** 24:14, 16, 19, 21
**contractual** 20:6 26:8
**contribution** 71:19
**contributions** 19:20
**control** 51:25 52:15 55:7, 10 57:5 70:8
**controlled** 9:6 12:11, 19
**conversation** 11:25 36:23 43:15 69:8, 25 70:21 76:10
**conversations** 43:8 51:3 53:8 72:9 76:11
**conversion** 73:25
**convert** 73:12
**converted** 71:22 72:20, 21, 25 73:12 74:2
**convoluted** 39:11
**copies** 77:14
**copy** 60:11
**correct** 15:18, 20, 21 16:10, 11 17:24 18:12 20:3 21:13, 16 22:7, 8, 17, 24 24:16, 19 30:6 33:9 37:22 39:21 41:17, 18, 20 43:13 54:18 59:21, 24 62:13, 17 71:25 72:1 73:18 76:9, 24 80:10 81:11
**corrections** 78:3 80:9
**correctly** 62:10
**corresponding** 18:19
**counsel** 16:22 58:5 81:15
**counterparty** 74:5
**couple** 29:16 37:4, 25
**course** 34:6, 21
**COURT** 1:1 8:18 9:25 12:15 37:4 38:16 60:17 63:6, 22 64:9 65:25 67:10 77:13
**Court-appointed** 62:5
**CRAWFORD** 4:17
**create** 31:21
**created** 31:19, 24 62:1
**cross-talk** 65:24
**Crown** 4:3 15:7 16:25 17:3, 5, 11, 14, 22 18:24 19:1, 24 20:7, 9 21:1, 2, 10, 16, 18 22:5, 14, 23 24:7 25:3, 6, 11, 15, 21 28:21 29:17, 25 30:3, 10 31:8, 10 35:23 36:22 50:25 54:22 55:2, 3, 23, 24 56:1, 23 57:5
**CRR** 1:22 81:21
**cumbersome** 57:19
**current** 28:5
**Currently** 38:3
**CURRY** 4:7, 9

**< D >**
**DAF** 30:18 59:17
**DALLAS** 1:3 4:3, 19 9:3 11:4, 8, 11 12:13 13:25 14:13 15:24 16:9, 12, 15, 17, 19 17:8, 10, 13, 22 18:9, 14, 16, 19, 25 23:1, 6, 9, 20 24:5, 8, 15, 18 25:7, 11, 15, 22 26:3, 7, 15, 18, 23 27:11, 24 30:18 32:9 33:5, 14, 20 34:4, 22 35:2, 6, 12, 20, 25 36:9, 17 37:9, 13, 17 39:20 40:3 42:5, 15 43:18, 22 44:19, 21 46:9 48:12, 21 49:4, 10, 23 51:10, 15 52:19 53:2, 18, 22 54:1, 17 55:1, 6, 13 56:8 57:13 58:8 60:5, 10 61:1 63:3, 19 67:9, 18 69:11 70:24 71:15, 24 72:7, 23 73:16, 21 74:10, 20, 21, 24 75:2, 3, 5, 7 76:14
**D'AMBRA** 5:14
**data** 41:9
**DAVID** 4:7
**day** 8:18 13:21
**dcurry@okinadams.com** 4:8
**deal** 66:24
**debate** 67:2
**Debtor** 1:8 64:10 67:12
**decided** 16:21
**decision** 53:9, 12 74:17
**decision-making** 62:24
**decisions** 26:25 36:1, 24 39:16 42:14 50:24 52:10
**Defendant** 4:3, 14
**Delaware** 59:23
**delivered** 28:1
**DEMO** 3:8
**depends** 23:24
**DEPONENT** 78:1
**deposed** 9:9
**DEPOSITION** 1:12 2:9 7:1 9:2 78:3 80:7
**depositions** 8:14
**describe** 49:13
**described** 29:1 66:21
**describing** 29:13
**detail** 68:5
**details** 13:1
**determine** 72:6
**device** 19:5
**DIAZ** 5:21 14:2 15:13 16:20
**difference** 69:22
**different** 31:22 71:23 72:21 73:5
**Diplomate** 2:14 81:5
**DIRECT** 7:23 25:14, 22 53:19, 21 54:4, 5
**direction** 2:16
**directly** 17:22 23:21 25:25 35:8, 9, 13

48:24 49:7 54:1, 19 55:10 60:20
**director** 11:23
**directs** 10:18
**disapprove** 55:14
**discovery** 62:23 72:19
**discussion** 67:2
**disposition** 42:8 46:11
**distribute** 25:3
**distributions** 17:17, 18 25:6, 8 30:11
**DISTRICT** 1:2
**diverting** 62:3
**dividends** 17:16
**DIVISION** 1:3
**document** 57:20 58:12, 18
**documentation** 51:21 52:23
**DOCUMENTS** 7:7 30:25 31:2, 4 50:14, 20
**doing** 39:7 57:17, 19 61:20
**dollar** 22:13
**dollars** 22:14 28:5 41:14 42:1 49:19 53:13 67:4
**Dondero** 12:11 14:7, 16 15:16 16:4 19:22
**Dondero's** 74:5
**donor-advised** 18:20, 21
**dressing** 8:15
**due** 29:5
**Dugaboy** 4:14 71:16 74:4
**duly** 8:6
**duration** 20:8
**duties** 11:15 26:14, 17 27:10 32:8 33:19 34:6
**duty** 11:17 25:3, 6, 11, 22 35:19 36:9, 16 52:3, 5 70:3 73:8 74:10

**< E >**
**earlier** 29:1 43:23 62:15
**easier** 13:22
**economic** 15:6 24:4 28:8 35:23 36:2, 21 37:18 47:21 48:7 49:20 50:24 72:6
**elaborate** 48:15
**emails** 76:10
**EMANUEL** 3:22
**employed** 81:15
**employment** 71:3
**Empower** 11:25 14:24 16:12 17:10, 13, 22 18:9, 17 24:2, 8 25:9, 17 26:21, 22 28:12, 15 30:17 37:19 39:13 40:9 41:13, 23 42:2, 23 43:18 44:19 47:14, 23 49:21 55:18 56:2 69:10 75:2
**enabled** 70:25
**engaged** 43:23 65:6
**enraptured** 75:18
**ensure** 11:17
**enter** 50:15 53:5 68:24
**entered** 42:16, 24 50:9
**entering** 51:11, 16 52:20 55:16 56:15, 23 61:7, 15 64:15 66:6
**entire** 34:3
**entities** 9:5 12:18 13:2, 19 16:19 27:18, 19 31:14, 16, 19 33:2, 11, 16 35:4, 14, 19 36:16 45:23 46:21, 24 47:7, 17 50:2, 10, 11, 14, 17 51:18 52:4, 19 53:5, 20, 24 54:16 55:8, 11 56:9, 17, 25 57:6 59:23 61:8, 15 62:1 64:20 68:25 69:17
**entity** 12:7, 10 23:17 54:25 55:15 59:15
**entry** 65:7
**Errata** 78:5
**ESQ** 3:6, 8, 10, 12, 20 4:5, 7, 15 5:4, 6
**established** 62:19
**event** 20:23
**evidence** 68:11
**exact** 22:21
**EXAMINATION** 6:5 8:10
**examined** 8:8
**example** 22:10
**exchange** 21:10
**excuse** 72:15
**execution** 68:17 69:15
**exercise** 72:4, 16 74:4
**exercised** 71:25 72:7 73:17, 21 75:6
**exercising** 72:24 74:11
**Exhibit** 6:13 58:4
**EXHIBITS** 6:11
**expect** 51:4 70:7
**expectation** 52:14, 18
**expense** 20:12, 17
**expenses** 20:14
**expert** 62:12
**expired** 71:21
**explain** 54:12
**explained** 20:18
**exposure** 14:15
**extend** 52:5
**extent** 63:9 67:22

**< F >**
**fact-finding** 38:8
**facts** 28:3 38:5, 6 40:5, 8 41:10 43:1, 10 44:10 45:22 48:11, 20 49:2 58:15 62:19 63:25 64:22 65:5, 16 66:5, 11, 15, 16, 19 67:7
**fail** 9:21
**fair** 20:25 23:5 28:12, 14, 16, 22, 24 29:4, 8, 9, 14 30:11, 12 34:19, 20 42:5 43:24 44:2, 25 45:1 46:7, 12, 14 49:23 50:1 51:12, 13, 18 54:6, 24 57:24 61:2, 3 63:15, 18 65:17 66:21 70:4 73:10, 20, 23 77:1
**faith** 44:17
**familiar** 12:4 13:2 23:17 28:14 30:13, 16, 18, 20, 22 58:11
**Family** 12:1 16:13 17:10, 13, 23 18:9, 17 74:5
**fan** 19:7, 9
**February** 29:4 55:22
**fee** 20:16
**feed** 54:20
**feedback** 19:8
**feeds** 54:22
**feel** 63:25 72:3
**felt** 16:19
**fiduciary** 11:18, 20 24:22 35:24 36:9, 16, 23 50:21 51:23 52:2, 25 62:5 68:13 69:14, 24 74:10
**file** 14:21 16:14, 21 37:5 39:21
**filed** 12:7, 14, 22 16:25 23:3, 6 37:3 38:19 39:2, 25 58:9 69:20
**filing** 13:24 14:17 37:10, 14 38:9 39:3, 12
**finance** 76:15, 18
**financial** 11:21 25:1 26:23 54:10 81:17
**financially** 24:23
**finish** 9:16, 20 63:17
**firm** 8:24
**first** 8:6 9:11 15:1, 11 75:21
**five-minute** 75:24
**fixed** 17:19, 21 20:2, 7, 10, 22 21:11 22:16
**Floor** 3:15, 23
**flow** 18:14, 15, 18

26:21 30:11 31:5
**flows** 29:14 30:23
**fluctuations** 54:12
**focus** 56:4 68:16
**focused** 48:2
**Focusing** 68:19, 21
**following** 79:3, 4
**follows** 8:8
**foregoing** 80:7 81:9, 10
**form** 15:22 16:16 23:13, 23 25:13, 24 26:16 27:12 28:2 35:21 36:18 38:12 39:8 41:21 42:11 43:6, 14, 25 45:2 47:9, 20 48:8, 14, 23 49:6 50:4, 18 51:19 52:6 53:6, 25 54:7 55:9 56:10, 18 57:1, 7 60:19 61:9 63:7, 23 64:16 65:9, 18 66:8 69:1, 18 70:5 71:4 73:1 74:6, 13 75:8
**formal** 9:13 10:14
**formed** 23:11
**forth** 27:20
**Foundation** 4:3 11:5, 9, 11, 22 12:1, 14 13:25 14:24 16:10, 13, 15, 18, 20, 21 17:8, 10, 14, 23 18:14, 16, 19, 25 23:2, 6, 10, 16, 20 24:3, 5, 15, 18 25:7, 12, 15, 22 26:3, 7, 15, 18 27:11, 24 32:9 33:5, 14, 20 34:4, 22 35:3, 6, 12, 20, 25 36:9, 17 37:18, 19 39:14 40:9 43:18, 22 44:22 46:10 48:13, 21 49:4, 24 51:15 53:2, 18, 22 54:1 55:1, 6, 13 56:8 59:17 60:5, 10 63:3, 20 67:9, 18 71:14, 15, 24 72:7, 24 73:16, 17, 21 74:10, 20, 21, 24, 25 75:3, 5, 7
**foundations** 15:13 18:17 65:3
**Foundation's** 9:3 14:13 15:24 18:10 26:23 37:9, 13 39:20 40:4 42:6 49:10 51:11 52:20 54:17 57:13 58:9 61:2 70:24 73:9 76:15
**full** 57:24
**Fund** 15:4, 5 17:19 18:4, 5, 20 21:17, 19 22:4 24:15, 17 28:21 30:23 49:17 54:20, 21 55:17
**funded** 19:17, 19
**funding** 16:5, 8
**funds** 18:21 26:20 30:25 31:1
**fund's** 62:1
**Further** 61:22 77:3
**future** 21:12 28:25 30:11 40:17 49:20 77:1

**< G >**
**Gail** 1:21 2:13 9:25 77:11, 17 81:5, 21
**gdemo@pszjlaw.com** 3:9
**generally** 40:10, 13
**gentleman** 12:11
**getting** 21:2 41:10
**give** 10:13 12:25 31:6 40:11 48:12, 20 49:3 57:24 58:16 62:24
**given** 45:22, 24 63:25 71:19
**gives** 10:14, 16
**glance** 31:3
**Global** 4:3 15:7 16:25 17:3, 5, 11, 14, 22 18:24 19:1, 24 20:7, 9 21:2, 10, 16, 18 22:5, 14, 23 24:7 25:3, 6, 11, 15, 21 28:21 29:17, 25 30:3, 10 31:8, 10 35:23 36:22 50:25 54:22 55:2, 3, 23, 24 56:1, 23 57:5
**go** 17:21 25:20 27:7, 14 38:23 41:3 58:2 63:10 68:10 70:11
**goal** 10:4
**going** 8:18 9:14 10:3, 19 13:21 25:25 27:3 35:22 36:2 39:13 52:12 57:11, 12 59:9 60:17 61:20 66:16 67:4, 15, 21 73:11 76:25
**Good** 8:23 21:4, 5 44:17
**good-faith** 43:4, 12 44:6 45:21 46:8 69:8
**governing** 30:24 31:2, 4 50:14, 20
**granting** 47:16 48:5
**grant-making** 75:12
**grants** 18:21
**GREGORY** 3:8
**grow** 24:24
**guaranteed** 22:21
**guy** 34:23

**< H >**
**half** 32:20
**HALL** 5:18
**HALLMAN** 5:8
**happen** 18:16
**happened** 53:14, 15 54:13 73:4
**hard** 34:11
**harm** 46:16
**HART** 5:8
**hat** 34:18
**hats** 34:19
**HAYLEY** 3:12
**head** 34:24 35:3
**hear** 8:21, 22 65:15
**heard** 36:5 38:22 39:24
**held** 2:9 15:7 30:9 33:6, 10
**helped** 14:4
**Hey** 38:20
**high** 31:3 34:14
**HIGHLAND** 1:6 3:4, 19 6:13 8:25 9:1, 4 12:5, 17 23:2, 7, 11, 18, 22 26:4, 8, 9, 13, 14, 24 27:9, 18 30:14, 15 31:10 36:7, 8 37:6, 24 38:16 41:17, 24 42:15, 24 45:6, 11, 16 46:25 48:13, 22 49:5 50:10 58:4 64:14, 19, 20 65:5 66:5, 20, 22 67:19, 20 71:15 74:21, 24 75:3, 5
**Highland's** 12:15 60:6
**high-level** 40:5 58:15
**historical** 28:9
**HMIT** 13:9, 13, 17, 19 18:6 27:18, 19 28:1, 4 30:20, 25 31:16, 18 32:2, 6, 10 33:2, 6, 11, 15 34:8, 10, 18, 24 35:4, 7, 14, 19 36:11, 16 37:3, 9, 12, 24 38:11 40:10 46:21, 24 47:7, 17 48:5 50:2, 11, 14, 17 51:18 52:4, 19 53:4, 19, 23 54:16, 23 55:7, 10, 15 56:9, 16, 25 57:6 59:22 61:8, 15 68:25 69:16
**hold** 17:11 21:22, 24 22:2, 3 30:1, 2
**Holdco** 30:18 59:18
**holdings** 32:14
**holds** 22:4
**honest** 72:18
**Hospitality** 71:18
**Houston** 4:11
**Hunter** 5:3 13:5, 8, 9 15:3 18:6 23:25 29:6, 12 31:14 40:17, 20 41:25 42:8 45:19 46:11 49:18, 21
**HURT** 5:6
**hwinograd@pszjlaw.com** 3:13

< I >
**idea** 14:*17*, *18*, *21* 15:*10* 31:*6*
**identify** 32:*2*, *5*
**IDF** 18:*4* 21:*17* 22:*3* 30:*23* 49:*17* 54:*20*, *21* 55:*17*
**imagine** 31:*23* 35:*11* 52:*23*
**impact** 11:*22* 28:*11* 29:*2*, *7* 35:*23* 36:*2*, *20*, *25* 37:*18* 38:*6* 39:*10*, *13* 40:*9* 41:*14*, *22* 43:*17* 44:*17*, *18* 47:*13*, *18* 48:*7* 50:*24* 52:*13* 64:*1* 65:*2* 69:*10* 72:*6*
**impacted** 15:*6* 45:*24* 53:*9* 64:*23* 67:*3*
**impactful** 75:*11*
**impacts** 24:*3* 44:*12* 47:*12*
**implicated** 63:*9*
**important** 9:*15*, *19* 40:*8*
**including** 61:*25*
**income** 18:*10*, *13*, *15*, *24*, *25* 21:*11* 22:*16* 28:*25* 47:*13*, *23*
**increased** 29:*5*
**independent** 62:*5*
**INDEX** 7:*1*
**indicate** 78:*3*
**indirect** 25:*17* 26:*24* 53:*23* 54:*6*, *14*, *23* 75:*4*
**indirectly** 23:*21* 24:*1*, *5* 44:*24*
**Indiscernible** 65:*24*
**individual** 42:*17*, *21*, *25* 44:*8*, *11*, *16* 46:*15* 64:*18*, *22* 66:*10*, *24*
**individuals** 42:*13* 74:*15*
**infirmity** 10:*16*
**inform** 36:*24* 50:*23* 52:*5* 69:*25* 70:*4*
**information** 33:*21* 34:*1* 63:*11* 70:*14*, *17*, *25* 71:*1*, *7* 73:*3* 74:*15*, *16*
**informed** 33:*6*, *14* 52:*11* 60:*5*, *25* 73:*14*
**informing** 37:*17*
**Inghram** 1:*21* 2:*13* 81:*5*, *21*
**inquired** 33:*22*
**inquiry** 32:*9*, *11*
**insertion** 61:*25*
**insight** 31:*25*
**instruct** 67:*21*
**INSTRUCTION** 7:*2*
**INSTRUCTIONS** 78:*1*
**Insurance** 4:*4* 17:*1*, *4*, *5*, *6*, *12* 20:*20* 28:*17*, *18*, *20* 29:*18*, *23*
**interest** 23:*10*, *21* 24:*2*, *4*, *6*, *11*, *13* 25:*18* 26:*4*, *19*, *24* 28:*4*, *10* 29:*6*, *11*, *25* 35:*23* 36:*3*, *21* 39:*16* 41:*24* 47:*22* 49:*18* 50:*24* 53:*13*, *19*, *23* 54:*4*, *5*, *6*, *8*, *14*, *23* 81:*17*
**interested** 51:*23* 53:*7* 70:*1*
**interests** 15:*4* 21:*18* 37:*19*
**internal** 72:*10*
**introduced** 58:*5*
**inured** 75:*6*
**invest** 19:*24*
**invested** 18:*1*
**Investment** 4:*14* 5:*3* 13:*6*, *9* 14:*25* 33:*24* 36:*1*, *24* 45:*20* 50:*23* 51:*2*, *25* 52:*14* 55:*4* 70:*8* 71:*17*, *23* 72:*10*
**investments** 11:*20* 18:*3* 22:*6* 29:*17*, *22* 31:*23* 52:*11*
**involved** 70:*20*
**Islands** 16:*1* 59:*19* 62:*13*
**issuer** 17:*6*
**its** 22:*23* 26:*4* 49:*18* 50:*1* 81:*17*

< J >
**JAMES** 5:*19*
**January** 11:*13*
**JEFFREY** 3:*10*
**Jim** 12:*11* 14:*7*
**jmorris@pszjlaw.com** 3:*7*
**JOHN** 3:*6* 8:*24* 38:*13* 65:*19*
**joint** 59:*10*, *16* 60:*1*, *6*, *12*, *15*, *24* 61:*6*, *14*, *19* 76:*7*, *17*
**JONES** 3:*14* 5:*18*
**jpomerantz@pszjlaw.com** 3:*11*
**JULIE** 5:*21* 14:*2* 15:*13* 16:*20*
**June** 1:*14* 2:*10*
**jurisdiction** 62:*9*

< K >
**KELLY** 5:*8*
**key** 50:*6*
**kind** 12:*25* 14:*4* 15:*14* 31:*6*, *25* 34:*11* 38:*1*, *2*, *5*, *7* 40:*7*, *8* 52:*12*
**know** 9:*22* 10:*10*, *25* 13:*24* 14:*6*, *12*, *16*, *17* 16:*12* 17:*25* 18:*2*, *3* 19:*17* 23:*1*, *6*, *9* 25:*21* 26:*7* 29:*3* 30:*22* 31:*18*, *19*, *21*, *23* 33:*10*, *21* 34:*11* 35:*6*, *12*, *16* 36:*12* 37:*15* 38:*9*, *19* 39:*15* 40:*10*, *13*, *25* 41:*1* 42:*1*, *14*, *24* 46:*15* 48:*20* 50:*19*, *20* 51:*1*, *20* 52:*8*, *12*, *24* 53:*15* 55:*6*, *13* 57:*23* 59:*3*, *15* 60:*4*, *9* 64:*17* 67:*1*, *3*, *7*, *9* 69:*22* 70:*7*, *16*, *23*, *24* 71:*7* 73:*25* 74:*1*, *14*, *16* 75:*16*
**knowing** 64:*22* 66:*24*
**knowledge** 18:*11* 22:*2* 31:*9* 60:*16*

< L >
**L.P** 1:*7*
**LANG** 4:*15*, *17* 77:*14*
**language** 37:*16*
**large** 40:*25*
**late** 21:*2*
**law** 8:*24* 62:*13*
**lawsuit** 37:*5*, *14*, *23* 39:*4*, *24*
**lawyer** 10:*12*, *14* 12:*2* 62:*16*
**lay** 23:*15*
**lead** 65:*5*
**lean** 38:*7*
**leaned** 40:*7*
**learn** 37:*23*
**leave** 64:*3* 65:*13*
**led** 60:*24*
**left** 75:*16*, *23*
**legal** 10:*14*, *16* 11:*21* 12:*24* 14:*4* 16:*22* 17:*12* 38:*4*, *7* 40:*7* 52:*22* 53:*2* 61:*17* 62:*25*
**legally** 52:*23* 53:*1*
**level** 31:*3* 34:*14*
**liability** 40:*14* 46:*25*
**Life** 4:*4* 16:*25* 17:*3*, *5*
**likelihood** 63:*2*
**Limited** 17:*1*, *4*, *6*
**LINE** 7:*3*, *8*, *13*, *17* 59:*8* 79:*5*
**liquidation** 62:*8*
**liquidators** 59:*11*, *16* 60:*1*, *6*, *12*, *16*, *25* 61:*7*, *14*, *19* 76:*8*, *17*
**liquidity** 75:*13*
**listen** 27:*4*
**lists** 55:*4*
**Litigation** 3:*19* 15:*25* 16:*5*, *9* 45:*16*
**little** 13:*22* 15:*9* 23:*15* 48:*15* 57:*18* 72:*19*

**LITTLETON** 1:13 2:9 6:6 8:5, 17 58:8, 19 63:9 66:4 76:4 77:7 80:12
**LLP** 3:22 4:9 5:8
**LOIGMAN** 3:20
**long** 11:1, 10 22:22 33:1
**longer** 49:22
**look** 55:3
**looked** 16:17
**looking** 14:25 19:14 59:8
**loss** 47:22
**lost** 47:13 72:24 75:17
**lot** 34:19 67:5
**LOUIS** 5:4
**Louisiana** 5:10
**LP** 8:25 12:5 15:5 18:4 22:3 45:6 55:4
**lphillips@kellyhart.com** 5:5

< M >
**M&E** 20:11, 14, 17
**Madden** 72:14, 15
**Madison** 3:23
**Main** 5:9 11:17
**making** 39:17 42:13 66:24
**MANAGEMENT** 1:6 3:4 8:25 12:5 26:9, 13 27:9 36:8 37:6 41:25 45:6 48:22 52:9 67:19 72:15
**Mark** 9:6 33:1 34:10 39:2 45:25 50:8 53:3 55:21 74:9
**MARKED** 6:11 7:16 58:4
**market** 20:4 28:12, 14, 16, 23, 24 29:4, 8, 9, 14 54:12
**MARKS** 7:22 78:6
**material** 70:14, 16
**Matt** 38:20 65:20 67:25 75:16 77:9
**matter** 30:8
**matters** 30:10
**MATTTHEW** 4:5
**mean** 38:13
**means** 11:19
**meet** 8:19
**member** 15:16
**met** 14:6, 8
**MICHAEL** 4:15
**million** 19:20, 21, 23 28:4 41:1, 5, 14, 25 42:2 49:19 52:8 53:13 71:17 72:24 73:19, 22 74:12 75:12
**mine** 62:21
**minutes** 75:19, 23
**missed** 20:13
**mlang@cwl.law.com** 4:16
**MNPI** 71:3
**mokin@okinadams.com** 4:6
**moment** 57:15
**money** 21:1, 9 22:22
**MORRIS** 3:6 6:7 8:11, 24 15:23 16:23 21:6 23:14 24:10 25:19 26:1 27:2, 16 28:13 36:4 37:2 38:14, 20, 24 39:18 42:4, 19 43:9, 19 44:3 45:3 47:10 48:1, 10, 17 49:1, 8 50:7 51:6 52:1, 16 53:17 54:3, 15 55:12 56:12, 20 57:3, 9 58:2, 6, 25 59:4, 7 60:21 61:12 63:13, 14 64:4, 6 65:1, 11, 20 66:3, 17, 18 67:24 68:6, 9 69:6, 21 70:2, 10 71:6 72:18 73:6 74:8, 18 75:15, 20 76:3 77:3, 7, 14
**motion** 37:4, 10 38:10, 13, 15 39:12, 21, 25 60:7
**Mountain** 5:3 13:6, 8, 9 15:3 18:6 24:1 29:6, 12 31:14 40:18, 20 41:25 42:8 45:20 46:11 49:18, 21
**move** 27:3 57:11
**moved** 66:23
**moving** 44:8 64:18 66:10, 20
**multiple** 33:23

< N >
**name** 8:23 16:14
**named** 12:11
**NATHAN** 5:18
**NECESSARILY** 7:22 34:17
**need** 10:24 34:23 35:3 57:21 58:21 73:3 77:11
**needed** 33:20 52:19
**negatively** 36:3 53:9 64:23
**negotiate** 68:24
**negotiating** 46:15
**negotiation** 43:4 65:7 68:17 69:15
**negotiations** 43:13 44:6, 15 46:9
**neither** 81:15
**never** 14:8 23:6 33:25 34:25 39:19 71:24 76:7
**New** 3:16, 24
**newly** 62:1
**news** 38:2
**NexPoint** 71:18
**nice** 8:19
**nonpublic** 70:14, 16
**normal** 51:3
**NORTHERN** 1:2
**Notary** 81:8
**notations** 78:6
**NOTE** 7:21
**notes** 19:13 55:20, 21, 23
**notice** 77:10
**notified** 74:2
**November** 19:19
**NUMBER** 6:12 12:8

< O >
**object** 10:13 15:22 16:16 23:13, 23 25:13, 24 26:16 28:2 35:21 36:18 38:12 39:8 41:21 42:11 43:6, 14, 25 45:2 47:9, 20 48:8, 14, 23 49:6 50:4, 18 51:19 52:6 53:6, 25 54:7 55:9 56:10, 18 57:1, 7 60:19 61:9 63:7, 23 64:16 65:9, 18 66:8 69:1, 18 70:5 71:4 73:1 74:6, 13 75:8
**objecting** 15:10
**objection** 9:3 12:14, 16, 21 13:25 14:5, 14, 18, 22 15:24 16:14, 24 23:3 27:12 40:4 49:10, 15 57:13 58:9, 15 60:11 61:2
**objections** 12:23
**obligation** 20:7, 11 22:15 35:20, 24 36:23 50:21 51:23 52:25 69:25
**obligations** 22:23 26:15, 18 27:10 68:13 69:14
**obtain** 51:10 52:19 56:7, 14, 22 61:5
**obtained** 39:20 71:2
**occasions** 33:23
**officer** 81:8
**official** 59:10, 16 60:1, 6, 12, 15, 25 61:6, 14, 18 76:7, 17
**officially** 60:2
**Oh** 41:7 42:21
**Okada** 12:1 14:24 16:13 17:10, 13, 23 18:9, 17 19:23 24:2, 8 25:9, 16 26:21, 22 28:12, 15 37:19 39:13 40:9 41:13, 23 42:2, 23 43:17 44:18 47:14, 23 49:22 55:18 56:2 69:10 75:2

**okay** 8:21, 23 9:12, 17 10:8, 20, 21 11:2 12:13 13:21 14:12 17:3 19:11, 16 20:25 21:14 22:19 23:1, 20 26:2 33:4, 18 34:6 35:1 37:3 39:19 40:2 41:11 44:4 45:4, 9 48:11 49:2 50:8 51:7, 9 58:2 59:1 60:22 61:4 62:12 64:4, 7 67:25 68:8, 16 69:12 70:3, 11 75:15 77:13
**OKIN** 4:5, 9 15:22 16:16 21:4 23:13, 23 25:13, 24 26:16 27:12, 14 28:2 35:21 36:18 38:12, 18, 22 39:8 41:21 42:11 43:6, 14, 25 45:2 47:9, 20 48:8, 14, 23 49:6 50:4, 18 51:19 52:6 53:6, 25 54:7 55:9 56:10, 18 57:1, 7 58:19 59:2, 6 60:19 61:9 63:7, 23 64:16 65:9, 18, 21 66:8 67:21 68:1, 8 69:1, 18, 23 70:5 71:4 73:1 74:6, 13 75:8, 17 77:6, 14, 17
**once** 34:22
**opine** 43:8, 16 44:16 45:8, 9, 14, 18 61:18
**opined** 55:24
**opinion** 62:25 63:24 66:14
**opportunity** 10:17 55:19 56:3 57:24
**option** 71:11, 14, 16, 20, 21, 25 72:4, 8, 12, 25 74:4
**order** 55:23 58:22 62:19
**org** 75:3
**organization** 11:14 16:18 30:8 32:21, 25 69:19 74:22 75:11
**organizational** 31:5
**organizations** 11:24 16:6 20:2, 5 21:1, 9 22:15, 21 24:9, 25 25:9 28:6 29:15, 24 30:2 44:13 45:23 46:16 47:19 48:7 50:22 53:10 56:15 59:23 63:2 64:2 69:11
**orgs** 39:15
**originally** 26:20
**originated** 14:18
**outcome** 81:17
**outlined** 67:8
**outside** 68:12, 23 69:14
**overall** 38:6 54:9
**overseeing** 12:15
**oversight** 11:18, 20 34:13 75:4
**owes** 25:11 26:14 27:10 35:19 36:9, 16
**owned** 21:15 32:6, 10 33:16 74:19
**ownership** 21:20 24:6 29:25 34:13 53:19, 21, 23 54:5, 6
**owns** 31:6 32:3

**< P >**
**p.m** 1:15 2:11 76:1, 2 77:19
**PACHULSKI** 3:14 5:18
**Pacific** 4:18
**PAGE** 6:5, 12 7:3, 8, 13, 17 79:5
**paid** 21:1, 9 49:21
**paragraph** 58:3 61:22 64:5, 8 68:10 70:11, 13
**part** 11:25 12:24 20:14 23:11 33:19 40:15 43:8, 15 44:1 46:13 47:3 50:5 54:21
**participate** 76:12, 16
**particular** 20:23 21:19
**parties** 3:2 38:17 43:5 46:25 48:5 51:23 59:11 64:14 66:6 70:1 81:16
**partnership** 21:18
**party** 13:13, 18 53:7
**patience** 77:8
**Patrick** 9:6 12:19 13:3 33:1 34:10 39:2 43:23 45:25 50:9, 15, 22 51:10, 16 52:3 53:3 55:21 56:7, 14, 22 61:5 64:18 65:4 68:11, 22 69:13 71:2 74:9
**Patrick's** 44:21 61:24
**PAUL** 5:14
**pay** 17:16 20:1, 7, 10 22:15
**payments** 17:19, 21 49:20
**payout** 28:8 42:2
**payouts** 40:17 53:16
**PE** 15:4 49:17
**peace** 64:10 67:12
**pending** 11:2 15:25
**percentage** 20:19
**period** 20:22 21:12
**permission** 37:5 38:15
**person** 34:15 51:3, 25 52:15, 22 61:17
**personally** 14:8 69:19
**persons** 70:9
**pertaining** 12:16
**pertinent** 13:1
**PHILLIPS** 5:4 77:5, 15
**piece** 20:13
**place** 44:24 66:12
**plan** 23:12
**planned** 60:3
**platform** 29:20, 21
**play** 17:7 43:1 44:14
**played** 31:10
**plays** 17:9
**please** 58:3 64:5 70:12
**PLLC** 4:17
**point** 58:23
**policies** 17:11 30:5, 6 36:22
**policy** 24:7 30:1, 2, 4
**POMERANTZ** 3:10
**portfolio** 15:6
**portfolios** 52:13
**portion** 15:2 18:13 58:8
**positive** 36:3
**possibility** 50:1 59:6
**potential** 55:15 67:17
**potentially** 39:10 41:15 47:13
**preparation** 14:13
**present** 2:16 5:17 54:10
**preserve** 24:23
**President** 14:1 16:20
**prevent** 51:16 61:15
**PREVIOUSLY** 6:11 58:4
**primarily** 15:13
**prior** 58:21
**privilege** 68:4
**privileged** 63:10
**privy** 74:15
**probably** 34:14 36:12
**problematic** 42:18, 20
**proceeding** 13:15
**proceedings** 2:12 77:20 81:9, 11, 12
**process** 9:13, 14 10:23 57:19
**produce** 28:21
**produced** 21:11
**product** 43:3, 12 44:5 46:8
**PRODUCTION** 7:7
**projected** 28:25
**proper** 11:18
**proposed** 9:4 12:16 45:5, 10, 15 46:20 47:16 48:6 49:10 56:23 61:1 64:15 65:7

**proposing** 40:11
**propounded** 80:8
**protect** 24:23
**provide** 56:3
**provided** 60:10 71:2
**providing** 47:8
**Public** 81:8
**pull** 40:8
**pulling** 38:4
**purpose** 31:19 62:2
**pursued** 40:21
**pushed** 75:13
**put** 14:5 57:12, 22 58:7 71:10, 14, 16, 20 72:4, 8, 12, 17, 25 73:11, 17, 21 74:4, 11, 19 75:6
**putting** 59:5

**< Q >**
**quarter** 15:1
**quarterly** 20:15 28:22
**question** 9:16, 21 10:8, 16, 20 11:1 21:7 27:5 61:21 63:13, 17 65:10 69:2
**questionable** 42:14 67:1
**QUESTIONS** 7:16 9:15 10:13 34:16 57:25 58:23 75:18 76:14 77:4, 5 80:8
**quicker** 13:22
**QUINN** 3:22
**QUOTATION** 7:22
**quotations** 66:13
**QUOTE** 7:23 59:9

**< R >**
**Rand** 15:4 18:5 29:11, 12 30:17, 25 31:13 49:16
**Rand's** 29:6
**range** 73:19
**RAVER** 5:20
**RDR** 1:22 81:21
**reach** 56:1
**read** 12:23 40:2 59:9 62:10 77:18 80:6
**reading** 19:14 78:2
**really** 53:11 61:18
**Realtime** 2:14 81:6
**reason** 10:24 25:10, 23 26:12 27:8, 23 35:18 43:2 45:4, 7, 9, 14, 18 46:19 47:15 48:4 50:13 51:14 53:1 56:6, 13, 21 57:4, 10 60:14 61:4 64:13 69:13 72:4 74:7 79:7, 9, 11, 13, 15, 17, 19, 21, 23
**reasonable** 46:7
**reasons** 74:3 78:4 79:4
**recall** 14:11 41:2 57:21
**receive** 20:15 22:21 27:20, 24 28:7 40:11, 20 42:9 44:23 50:3
**received** 35:7, 13 63:11 73:25
**receives** 46:12
**Recess** 76:1
**recollection** 57:22
**recommendation** 16:22 56:3 72:11
**recommendations** 18:18
**record** 81:11
**recorded** 2:12
**recovered** 73:22
**reduced** 81:13
**refer** 13:8, 17
**REFERENCED** 6:11
**referred** 31:15 70:17
**referring** 30:4
**refers** 15:25 70:13 71:10
**REFLECT** 7:23
**refresh** 57:22
**regardless** 22:19 50:20
**Registered** 2:13 81:5
**reiterated** 38:5
**related** 29:2 40:6 41:6 81:15
**relates** 11:24 27:1 30:17 41:13
**relationship** 23:25 24:8, 22 25:16, 17 26:8 51:24 74:23 75:1
**relax** 9:12
**release** 40:14
**releases** 47:7, 16 48:2, 5
**releasing** 46:25
**rely** 12:24 74:16
**remind** 63:8
**REMOTE** 1:12 2:8 3:2
**reorganization** 23:12
**repeat** 58:13, 17
**rephrase** 10:10, 17
**Reported** 1:20
**Reporter** 2:14, 15 10:1 65:25 77:13 81:2, 6, 8
**REPORTER'S** 7:21
**reporting** 11:21
**represent** 39:15
**representative** 52:4 53:4
**representing** 44:13
**represents** 8:25
**REQUEST** 7:7
**required** 37:12 51:10 56:7, 14, 22 61:5
**research** 38:3
**respect** 17:8 22:6, 10 25:12 33:2 65:6 69:14
**respectfully** 27:3
**respectively** 17:23
**responsibilities** 11:16 33:19
**responsibility** 24:22 25:14 42:23
**responsible** 73:9
**restate** 21:7 36:19 44:7
**restructuring** 43:23 44:10, 21, 24 46:1, 12
**result** 43:20, 21 44:20 46:12
**review** 12:21 57:21
**reviewed** 30:24 31:1
**Right** 13:7 15:17 19:3, 6 21:12 27:24 29:10 30:1 31:16 32:22 33:2, 8 34:1, 2 37:16, 21 39:17 42:23 46:6 51:15 53:3, 11 54:20 55:7, 14, 25 57:5 58:12 59:20 61:14 62:16 65:15 73:7, 9 74:20 76:12, 23 77:6
**rise** 48:12, 20 49:3
**risk** 20:4, 10, 12, 20 22:6, 9, 11
**ROBERT** 3:20
**robertloigman@quinnemanuel.com** 3:21
**role** 14:12 17:7, 9 31:10 33:1 66:20
**roll** 24:25 26:22 31:7 54:9, 19
**rolled** 15:5 35:10
**rolls** 18:5, 7 49:17
**roll-up** 24:1
**room** 19:2
**Rouge** 5:10
**roughly** 41:14
**Royal** 21:2
**RSA** 1:22 81:21

**< S >**
**sale** 15:3 29:5, 11 52:11
**saw** 29:4
**says** 64:8 68:10
**scheduled** 76:25
**scope** 47:7 68:12, 23
**screen** 57:12 58:7 60:11
**scroll** 64:5
**scrutiny** 62:4
**see** 53:8 58:21 59:13 64:11 68:14 70:13, 15 71:12
**seek** 37:9, 13, 16

**seeking** 37:5
**seeks** 64:10 67:12
**seen** 31:5 51:22 64:1, 2
**SEERY** 5:19
**segregated** 21:15, 20, 22, 24 22:1, 20
**sell** 55:21, 23
**selling** 53:12
**sent** 19:24
**sentence** 59:13 64:7 71:10
**series** 9:15
**serve** 11:23
**served** 31:20
**set** 27:20 63:5 76:10, 19
**settle** 44:11
**settled** 64:20
**settlement** 9:4 12:17 13:14 23:25 24:3 27:1, 17 28:1, 8, 11 40:2, 6, 12, 16, 20 41:20 42:7, 9, 16 43:3, 11, 21 44:5, 18 45:5, 10, 15, 19 46:6, 7, 20, 24 47:2, 4, 5, 17, 22 48:6 49:11, 25 50:3, 9, 16 51:12, 17 52:21 53:16 56:4, 16, 24 59:12 60:7, 16 61:1, 7, 16 63:5, 21 64:9, 15, 21 65:8 67:11 68:17, 21, 24 69:9, 16
**settlements** 26:20 28:7 45:22
**settling** 66:25
**share** 50:1 66:17
**shares** 71:18 72:16, 20 73:24 74:2
**sharing** 19:6
**SHAWN** 5:20
**sheet** 26:4 54:9, 18, 23 55:1 78:5
**shifting** 42:22
**short** 75:22 77:10
**Shorthand** 2:15 81:2, 7
**sign** 77:18 78:5
**signed** 13:3 31:15 56:8
**significant** 36:25 43:17 49:20 50:23 67:3
**similar** 75:1
**sir** 8:19, 21 9:10, 18, 23 11:5 12:3, 6, 9, 12, 20 16:7 17:2, 20 18:12 19:4, 15 20:3 22:25 23:4, 8 25:8 26:6, 11 27:6, 15 30:12 31:12 32:4, 19 33:3, 7, 12, 17 34:5 35:5, 15 37:7, 11 39:1, 5, 22 40:1, 13 45:13, 17, 21 46:6, 22 47:11, 12 48:9, 24 49:7 51:8 53:21 56:19 57:2, 14 58:1 59:14, 17, 21, 24 60:8, 13 61:3, 10 62:10, 11, 14 64:12 65:12, 13 67:15 68:15, 20 70:15, 18, 21 71:5, 9, 13 73:10 74:7 76:9 77:2
**sit** 60:15
**situation** 51:5
**six** 32:22
**Skyview** 71:3
**sleep** 59:5
**smoothly** 27:7
**sold** 22:17 28:4 41:24 49:16, 18
**sole** 18:8 24:6
**solely** 68:16, 21
**somewhat** 42:18
**Sorry** 19:11 21:3 28:18 36:5, 10, 11 59:4 65:25
**sought** 39:20
**Sounds** 21:4, 5
**source** 18:9 70:25
**speak** 34:23 35:3 61:10, 13
**speculate** 63:16, 19
**speculation** 63:25
**speed** 38:8
**spoke** 76:17
**spoken** 14:9
**standpoint** 44:12 46:18
**STANG** 3:14 5:18
**start** 8:12
**starting** 36:20
**state** 28:22 43:16 66:9 70:25
**stated** 65:14 69:4
**statement** 28:21 54:11 55:4
**statements** 20:15 25:1 26:23
**STATES** 1:1 61:23
**Stenographically** 1:20 2:13 81:13
**stewardship** 11:18
**STIPULATIONS** 7:12
**stream** 21:11 22:16 29:1
**streams** 47:23
**Street** 4:10 5:9
**strike** 27:4
**structure** 28:5, 9 29:18, 20 30:14, 16, 17, 19, 21, 23 32:12 35:11 62:2
**structures** 31:24
**stuff** 10:14
**sub** 29:3
**subject** 13:14 40:3 62:4, 6
**Subtrust** 45:16
**succeed** 62:20 63:3, 20
**succeeding** 63:4
**successful** 32:15
**sue** 38:16
**suggest** 43:11 66:20
**Suite** 4:10, 18 5:9
**SULLIVAN** 3:22
**sum** 40:25
**summary** 12:25
**Sunday** 1:14 2:10 8:14, 18
**supervision** 81:14
**supplied** 78:5
**SUPPORT** 7:1
**supporting** 11:24 16:6, 18 20:2, 5 21:1, 9 22:15, 20 24:9, 25 25:9 28:6 29:15, 24 30:2, 8 39:15 44:12 47:18 48:7 50:22 53:10 56:15 63:2 64:2 69:11 74:22 75:3, 10
**supposed** 26:21
**Sure** 13:23 15:12 48:3, 18 58:23
**surprised** 10:22
**sworn** 8:6
**Systems** 81:7

< T >
**take** 15:10 20:11, 16, 19 22:9, 11 57:15 75:22, 23
**taken** 44:24 66:12 76:1 81:9, 12
**takes** 20:9 22:5
**talked** 31:13 45:24
**talking** 38:15 66:1
**team** 12:24 14:4 38:4, 7 40:7 76:15, 18
**tell** 8:13 32:15 38:21 57:18
**telling** 74:10
**tenure** 33:13 34:4, 21 35:2
**terms** 42:6 49:24 66:15
**testified** 8:8
**testify** 8:6
**testimony** 9:24 78:4 80:7
**TEXAS** 1:2 4:11, 19
**Thank** 26:2 32:24 77:7, 9
**Thanks** 8:14
**therefor** 78:4
**thing** 29:3 42:12
**things** 44:14 46:2, 4, 5 51:20 66:25 69:4, 7
**think** 10:15 14:10 15:12 16:17 19:21

21:19 24:4 26:19, 24 29:18 33:18 34:10 36:22 37:15, 17 39:6, 16 40:15 41:1, 22 42:17, 25 44:9, 14 46:13 47:21 51:20, 21 52:7 53:7, 10 57:21 62:15 66:11, 23 67:1 68:1, 2 69:3, 5, 24 70:6 71:17, 18 73:2, 8, 23 74:9, 14 76:4
**thinking** 15:14 41:8
**Third** 3:15 59:8
**thoroughly** 73:4
**thought** 36:10
**three** 15:19 32:17
**tied** 20:21, 22
**time** 1:15 2:12 9:11 10:12, 25 14:11 20:22 21:12 22:22 33:4, 13 34:3, 11 35:2 46:3, 6, 9 52:10 58:20 59:3 60:24 66:2 69:9 72:10, 14 75:15 76:20 77:8, 20
**times** 69:4
**timing** 53:14
**today** 9:2, 25 11:25 13:10 26:13 32:3 33:10 35:20 38:4 39:14 60:15 72:17
**told** 37:20 38:18, 22 65:22 73:15
**TORREY** 1:13 2:9 6:6 8:5 80:12
**total** 32:23
**track** 75:17
**transaction** 55:15
**transactions** 53:3
**transcribed** 2:15 9:25
**transcript** 78:6 80:7 81:10
**transcripts** 77:18
**transfer** 34:12
**transferred** 73:5
**transpired** 15:1
**tribunal** 62:8
**tried** 34:15
**true** 34:3 46:2, 4, 5 47:24 51:21 69:5, 7 80:10 81:11
**Trust** 3:5 4:14 5:3 9:1 13:6, 9 23:11, 18, 22 26:5, 10, 14, 25 27:10 30:14, 15 36:8 45:12, 20 49:5 67:20 71:17, 18 74:5
**Trustee** 3:19 34:12 51:2
**trustees** 70:9
**truth** 8:7
**try** 10:10, 25 72:5
**trying** 40:14 52:7
**two** 16:19 28:6 44:12, 14 46:2, 4, 5 51:20 69:4, 7
**types** 31:22
**typewriting** 81:14
**typically** 18:23

**< U >**
**ultimately** 15:5 18:5, 7, 20 19:23 24:24 28:11 31:7 41:23 75:9
**uncertainty** 67:5
**underlying** 18:2 21:20 32:13, 16
**understand** 9:7, 24 10:6, 9 29:21 34:12 43:1 44:9 49:9 50:8 53:11 54:11 58:14 66:1, 22 72:19 73:3
**understanding** 20:6 21:8 22:18 25:2, 5 31:4 32:14, 16 41:4 49:14 50:12 62:18 67:14
**unfair** 45:5, 11, 15, 19 46:20
**Unfortunately** 59:9
**UNITED** 1:1
**unpack** 15:8
**unsuccessfully** 32:12
**URQUHART** 3:22
**use** 28:22 37:17

**< V >**
**valuations** 34:16
**value** 15:6 22:10, 12, 19 28:15, 16, 23, 24 29:5, 8, 9, 14 30:9 35:7, 11, 13 36:21 37:1 54:12 73:15, 24
**values** 28:12
**various** 62:23
**vehicle** 18:24 19:1 33:24 50:25 55:5 71:23 72:21 73:5
**vehicles** 31:22
**verbatim** 10:4 41:3 58:14, 17
**veto** 61:14
**videoconferencing** 3:2
**video-conferencing** 2:10
**VIDEOGRAPHER** 5:13
**VIDEO-RECORDED** 1:12 2:8
**view** 52:2 63:1
**Vine** 4:10
**volume** 78:2, 6

**< W >**
**walk** 12:25
**want** 8:12 10:17 66:12 68:16 70:20 77:17
**wanted** 53:5 55:21 76:14, 19
**watching** 75:16
**way** 29:21 31:24
**wearing** 34:18
**Wednesday** 60:18 68:7
**week** 60:3
**Well** 14:23 18:15 22:9 24:11 38:1 41:22 42:12 52:7 68:12 73:7
**we're** 8:18 9:1 19:6 24:6 38:14 52:11 57:11, 12 68:3 69:23
**we've** 31:13, 14 34:25 45:24 64:1 69:5
**WINOGRAD** 3:12
**wish** 79:3
**WISHNEW** 4:17
**withdraw** 55:24
**withdrawn** 17:15 21:23 23:15 25:4 35:17 54:4 70:23
**witness** 8:13 21:5 27:13 58:24 69:22
**wondering** 48:19
**words** 49:14
**wore** 34:18
**working** 33:19 38:4
**world** 60:23
**worries** 8:16
**worth** 22:13 41:5 74:12
**wrapped** 29:23
**written** 10:4
**wrong** 39:6, 12 64:14 65:22, 23 66:6, 13
**wrongdoing** 65:6

**< Y >**
**Yeah** 12:23 13:5 14:1 15:12 17:9, 18 19:11 20:9 21:5 29:13 30:1 33:22 36:14 40:5 41:7, 12 43:7 45:7 47:3, 5 49:16 50:5 55:2, 17 58:13 63:12 66:22 68:10 69:24 70:6 71:15 73:18, 23 76:13
**year** 43:24 72:22
**years** 11:14 12:8 32:12, 17 37:4, 25
**York** 3:16, 24

**< Z >**
**ZIEHL** 3:14 5:18
**Zoom** 57:19

**WORD LIST**

< $ >
**$22** (*1*)
**$23** (*1*)
**$29** (*1*)
**$300** (*1*)
**$650** (*1*)
**$7** (*1*)
**$9** (*5*)

< 1 >
**1** (*2*)
**1.5** (*1*)
**10010** (*1*)
**10017-2024** (*1*)
**11** (*1*)
**1113** (*1*)
**13** (*3*)
**16** (*2*)
**1600** (*1*)
**1700** (*1*)
**18** (*2*)
**19-34054-sgj11** (*1*)
**1st** (*1*)

< 2 >
**2015** (*2*)
**2019** (*1*)
**2022** (*1*)
**2025** (*3*)
**21** (*1*)
**212.849.7615** (*1*)
**214.817.4500** (*1*)
**22** (*2*)
**225.381.9643** (*1*)
**22nd** (*1*)
**2390** (*1*)
**23-plus** (*1*)
**240** (*1*)

< 3 >
**3:30** (*2*)
**30(b)(6** (*1*)
**300** (*1*)
**301** (*1*)
**310.277.6910** (*1*)
**32** (*1*)
**33** (*2*)
**34** (*1*)
**34th** (*1*)

< 4 >
**4:42** (*1*)
**4:49** (*1*)
**4:50** (*1*)

< 5 >
**51** (*1*)
**58** (*1*)

< 6 >
**67** (*1*)

< 7 >
**70801** (*1*)
**713.228.4100** (*1*)
**75201** (*1*)
**77002** (*1*)
**780** (*1*)
**7-year** (*1*)

< 8 >
**8** (*1*)
**8635** (*3*)

< 9 >
**918,000** (*1*)

< A >
**ability** (*2*)
**able** (*6*)
**absolutely** (*4*)
**accommodate** (*1*)
**accounts** (*8*)
**acted** (*3*)
**acting** (*4*)
**action** (*3*)
**actions** (*4*)
**activity** (*4*)
**actual** (*1*)
**ADAMS** (*1*)
**add** (*1*)
**addition** (*1*)
**administrative** (*1*)
**Administrator** (*1*)
**adverse** (*1*)
**advised** (*1*)
**advisor** (*4*)
**advisor/control** (*1*)
**advisors** (*2*)
**affiliated** (*1*)
**affiliates** (*4*)
**affirmed** (*1*)
**afternoon** (*1*)
**ago** (*3*)
**agree** (*3*)
**agreed** (*2*)
**agreed-upon** (*1*)
**agreement** (*57*)
**ahead** (*2*)
**ahurt@kellyhart.com** (*1*)
**allow** (*3*)
**allows** (*1*)
**alternative** (*1*)
**AMELIA** (*1*)
**amount** (*4*)
**amounts** (*1*)
**ample** (*1*)
**analysis** (*1*)
**annuities** (*26*)
**annuity** (*12*)
**ANSWER** (*16*)
**answered** (*2*)
**answers** (*1*)
**Anybody** (*11*)
**anyway** (*2*)
**apologies** (*1*)
**apologize** (*2*)
**apologizing** (*1*)
**apparent** (*1*)
**appear** (*3*)
**appeared** (*2*)
**appointed** (*1*)
**appreciate** (*2*)
**approval** (*4*)
**approve** (*1*)
**approved** (*10*)
**approximately** (*1*)
**April** (*1*)
**argumentative** (*1*)
**arises** (*1*)
**arm's-length** (*4*)
**arranging** (*1*)
**aside** (*1*)
**asked** (*2*)
**asking** (*4*)
**aspect** (*1*)
**aspects** (*1*)
**assert** (*1*)
**asset** (*2*)
**assets** (*34*)
**associated** (*1*)
**Associates** (*1*)
**assumed** (*1*)
**assumption** (*2*)
**Atlas** (*19*)
**attached** (*1*)
**Attorney** (*143*)
**attorney-client** (*2*)
**audited** (*1*)
**auditors** (*2*)
**authority** (*2*)
**authorization** (*1*)
**authorize** (*1*)
**authorized** (*3*)
**Avenue** (*3*)
**avoidance** (*3*)
**avoiding** (*1*)
**aware** (*32*)

< B >
**BA** (*2*)
**back** (*5*)
**balance** (*5*)
**ballpark** (*1*)
**BANKRUPTCY** (*9*)
**BARTLETT** (*1*)
**based** (*6*)
**basis** (*4*)
**Baton** (*1*)
**Beacon** (*1*)
**beginning** (*1*)
**behalf** (*22*)
**belief** (*1*)
**believe** (*62*)
**beneficial** (*1*)
**benefit** (*4*)
**benefited** (*2*)
**best** (*1*)
**beyond** (*2*)
**billion** (*1*)
**bit** (*7*)
**board** (*4*)
**boards** (*1*)

**breach** (*1*)
**breached** (*1*)
**break** (*3*)
**bring** (*1*)
**bringing** (*1*)
**buy** (*2*)

**< C >**
**CA-Certified** (*1*)
**CA-CSR** (*2*)
**call** (*6*)
**called** (*2*)
**capable** (*1*)
**capacity** (*4*)
**CAPITAL** (*16*)
**care** (*1*)
**carefully** (*1*)
**carry** (*1*)
**Case** (*4*)
**cash** (*2*)
**casual** (*1*)
**cause** (*3*)
**causing** (*2*)
**caveat** (*1*)
**Cayman** (*4*)
**Central** (*3*)
**certain** (*6*)
**CERTIFICATE** (*1*)
**Certified** (*3*)
**certify** (*2*)
**CFO** (*9*)
**chance** (*1*)
**CHANGE** (*9*)
**changes** (*4*)
**Chapter** (*1*)
**charitable** (*9*)
**charities** (*2*)
**charts** (*1*)
**claim** (*4*)
**Claimant** (*16*)
**claims** (*4*)
**CLARITY** (*2*)
**clawback** (*2*)
**clawing** (*2*)
**clear** (*2*)
**clearly** (*2*)
**colleague** (*1*)
**combination** (*1*)
**Come** (*1*)
**comfort** (*1*)
**comfortable** (*1*)
**commenced** (*3*)
**comment** (*1*)
**communicate** (*2*)
**communicated** (*2*)
**communication** (*3*)
**communications** (*2*)
**community** (*3*)
**company** (*1*)
**compensate** (*1*)
**compensates** (*1*)
**complicated** (*1*)
**complies** (*1*)
**computer** (*1*)
**concern** (*3*)
**concerned** (*2*)
**concerns** (*3*)
**concluded** (*1*)
**conference** (*1*)
**confirm** (*1*)
**confused** (*1*)
**connection** (*1*)
**consent** (*10*)
**consequential** (*1*)
**consider** (*2*)
**consideration** (*1*)
**considering** (*2*)
**constituted** (*1*)
**consummation** (*2*)
**Cont'd** (*2*)
**contemplating** (*1*)
**contends** (*2*)
**context** (*1*)
**contract** (*4*)
**contracts** (*4*)
**contractual** (*2*)
**contribution** (*1*)
**contributions** (*1*)
**control** (*6*)
**controlled** (*3*)
**conversation** (*7*)
**conversations** (*5*)
**conversion** (*1*)
**convert** (*1*)
**converted** (*6*)
**convoluted** (*1*)
**copies** (*1*)
**copy** (*1*)
**correct** (*36*)
**corrections** (*2*)
**correctly** (*1*)
**corresponding** (*1*)
**counsel** (*3*)
**counterparty** (*1*)
**couple** (*3*)
**course** (*2*)
**COURT** (*13*)
**Court-appointed** (*1*)
**CRAWFORD** (*1*)
**create** (*1*)
**created** (*3*)
**cross-talk** (*1*)
**Crown** (*45*)
**CRR** (*2*)
**cumbersome** (*1*)
**current** (*1*)
**Currently** (*1*)
**CURRY** (*2*)

**< D >**
**DAF** (*2*)
**DALLAS** (*116*)
**D'AMBRA** (*1*)
**data** (*1*)
**DAVID** (*1*)
**day** (*2*)
**dcurry@okinadams.com** (*1*)
**deal** (*1*)
**debate** (*1*)
**Debtor** (*3*)
**decided** (*1*)
**decision** (*3*)
**decision-making** (*1*)
**decisions** (*7*)
**Defendant** (*2*)
**Delaware** (*1*)
**delivered** (*1*)
**DEMO** (*1*)
**depends** (*1*)
**DEPONENT** (*1*)
**deposed** (*1*)
**DEPOSITION** (*6*)
**depositions** (*1*)
**describe** (*1*)
**described** (*2*)
**describing** (*1*)
**detail** (*1*)
**details** (*1*)
**determine** (*1*)
**device** (*1*)
**DIAZ** (*4*)
**difference** (*1*)
**different** (*4*)
**Diplomate** (*2*)
**DIRECT** (*7*)
**direction** (*1*)
**directly** (*12*)
**director** (*1*)
**directs** (*1*)
**disapprove** (*1*)
**discovery** (*2*)
**discussion** (*1*)
**disposition** (*2*)
**distribute** (*1*)
**distributions** (*5*)
**DISTRICT** (*1*)
**diverting** (*1*)
**dividends** (*1*)
**DIVISION** (*1*)
**document** (*3*)
**documentation** (*2*)
**DOCUMENTS** (*6*)
**doing** (*5*)
**dollar** (*1*)
**dollars** (*7*)
**Dondero** (*6*)
**Dondero's** (*1*)
**donor-advised** (*2*)
**dressing** (*1*)
**due** (*1*)
**Dugaboy** (*3*)
**duly** (*1*)
**duration** (*1*)
**duties** (*7*)
**duty** (*13*)

**< E >**
**earlier** (*3*)
**easier** (*1*)
**economic** (*12*)
**elaborate** (*1*)
**emails** (*1*)
**EMANUEL** (*1*)
**employed** (*1*)
**employment** (*1*)

**Empower** *(33)*
**enabled** *(1)*
**engaged** *(2)*
**enraptured** *(1)*
**ensure** *(1)*
**enter** *(3)*
**entered** *(3)*
**entering** *(10)*
**entire** *(1)*
**entities** *(48)*
**entity** *(6)*
**entry** *(1)*
**Errata** *(1)*
**ESQ** *(10)*
**established** *(1)*
**event** *(1)*
**evidence** *(1)*
**exact** *(1)*
**EXAMINATION** *(2)*
**examined** *(1)*
**example** *(1)*
**exchange** *(1)*
**excuse** *(1)*
**execution** *(2)*
**exercise** *(3)*
**exercised** *(5)*
**exercising** *(2)*
**Exhibit** *(2)*
**EXHIBITS** *(1)*
**expect** *(2)*
**expectation** *(3)*
**expense** *(2)*
**expenses** *(1)*
**expert** *(1)*
**expired** *(1)*
**explain** *(1)*
**explained** *(1)*
**exposure** *(1)*
**extend** *(1)*
**extent** *(2)*

**< F >**
**fact-finding** *(1)*
**facts** *(28)*
**fail** *(1)*
**fair** *(42)*
**faith** *(1)*
**familiar** *(10)*
**Family** *(8)*
**fan** *(2)*
**February** *(2)*
**fee** *(1)*
**feed** *(1)*
**feedback** *(1)*
**feeds** *(1)*
**feel** *(2)*
**felt** *(1)*
**fiduciary** *(16)*
**file** *(5)*
**filed** *(12)*
**filing** *(7)*
**finance** *(2)*
**financial** *(5)*
**financially** *(1)*
**finish** *(3)*
**firm** *(1)*
**first** *(5)*
**five-minute** *(1)*
**fixed** *(8)*
**Floor** *(2)*
**flow** *(7)*
**flows** *(2)*
**fluctuations** *(1)*
**focus** *(2)*
**focused** *(1)*
**Focusing** *(2)*
**following** *(2)*
**follows** *(1)*
**foregoing** *(3)*
**form** *(53)*
**formal** *(2)*
**formed** *(1)*
**forth** *(1)*
**Foundation** *(101)*
**foundations** *(3)*
**Foundation's** *(20)*
**full** *(1)*
**Fund** *(18)*
**funded** *(2)*
**funding** *(2)*
**funds** *(4)*
**fund's** *(1)*
**Further** *(2)*
**future** *(6)*

**< G >**
**Gail** *(7)*
**gdemo@pszjlaw.com** *(1)*
**generally** *(2)*
**gentleman** *(1)*
**getting** *(2)*
**give** *(10)*
**given** *(4)*
**gives** *(2)*
**glance** *(1)*
**Global** *(44)*
**go** *(10)*
**goal** *(1)*
**going** *(23)*
**Good** *(4)*
**good-faith** *(6)*
**governing** *(5)*
**granting** *(2)*
**grant-making** *(1)*
**grants** *(1)*
**GREGORY** *(1)*
**grow** *(1)*
**guaranteed** *(1)*
**guy** *(1)*

**< H >**
**half** *(1)*
**HALL** *(1)*
**HALLMAN** *(1)*
**happen** *(1)*
**happened** *(4)*
**hard** *(1)*
**harm** *(1)*
**HART** *(1)*
**hat** *(1)*
**hats** *(1)*
**HAYLEY** *(1)*
**head** *(2)*
**hear** *(3)*
**heard** *(3)*
**held** *(5)*
**helped** *(1)*
**Hey** *(1)*
**high** *(2)*
**HIGHLAND** *(59)*
**Highland's** *(2)*
**high-level** *(2)*
**historical** *(1)*
**HMIT** *(65)*
**hold** *(7)*
**Holdco** *(2)*
**holdings** *(1)*
**holds** *(1)*
**honest** *(1)*
**Hospitality** *(1)*
**Houston** *(1)*
**Hunter** *(18)*
**HURT** *(1)*
**hwinograd@pszjlaw.com** *(1)*

**< I >**
**idea** *(5)*
**identify** *(2)*
**IDF** *(8)*
**imagine** *(3)*
**impact** *(29)*
**impacted** *(5)*
**impactful** *(1)*
**impacts** *(3)*
**implicated** *(1)*
**important** *(3)*
**including** *(1)*
**income** *(10)*
**increased** *(1)*
**independent** *(1)*
**INDEX** *(1)*
**indicate** *(1)*
**indirect** *(7)*
**indirectly** *(4)*
**Indiscernible** *(1)*
**individual** *(11)*
**individuals** *(2)*
**infirmity** *(1)*
**inform** *(5)*
**information** *(12)*
**informed** *(6)*
**informing** *(1)*
**Inghram** *(4)*
**inquired** *(1)*
**inquiry** *(2)*
**insertion** *(1)*
**insight** *(1)*
**instruct** *(1)*
**INSTRUCTION** *(1)*
**INSTRUCTIONS** *(1)*
**Insurance** *(12)*
**interest** *(34)*
**interested** *(3)*
**interests** *(3)*

**internal** *(1)*
**introduced** *(1)*
**inured** *(1)*
**invest** *(1)*
**invested** *(1)*
**Investment** *(18)*
**investments** *(7)*
**involved** *(1)*
**Islands** *(3)*
**issuer** *(1)*
**its** *(5)*

**< J >**
**JAMES** *(1)*
**January** *(1)*
**JEFFREY** *(1)*
**Jim** *(2)*
**jmorris@pszjlaw.com** *(1)*
**JOHN** *(4)*
**joint** *(12)*
**JONES** *(2)*
**jpomerantz@pszjlaw.com** *(1)*
**JULIE** *(4)*
**June** *(2)*
**jurisdiction** *(1)*

**< K >**
**KELLY** *(1)*
**key** *(1)*
**kind** *(13)*
**know** *(76)*
**knowing** *(2)*
**knowledge** *(4)*

**< L >**
**L.P** *(1)*
**LANG** *(3)*
**language** *(1)*
**large** *(1)*
**late** *(1)*
**law** *(2)*
**lawsuit** *(5)*
**lawyer** *(4)*
**lay** *(1)*
**lead** *(1)*
**lean** *(1)*
**leaned** *(1)*
**learn** *(1)*
**leave** *(2)*
**led** *(1)*
**left** *(2)*
**legal** *(14)*
**legally** *(2)*
**level** *(2)*
**liability** *(2)*
**Life** *(4)*
**likelihood** *(1)*
**Limited** *(3)*
**LINE** *(6)*
**liquidation** *(1)*
**liquidators** *(12)*
**liquidity** *(1)*
**listen** *(1)*
**lists** *(1)*
**Litigation** *(5)*
**little** *(7)*
**LITTLETON** *(12)*
**LLP** *(3)*
**LOIGMAN** *(1)*
**long** *(4)*
**longer** *(1)*
**look** *(1)*
**looked** *(1)*
**looking** *(3)*
**loss** *(1)*
**lost** *(3)*
**lot** *(2)*
**LOUIS** *(1)*
**Louisiana** *(1)*
**LP** *(7)*
**lphillips@kellyhart.com** *(1)*

**< M >**
**M&E** *(3)*
**Madden** *(2)*
**Madison** *(1)*
**Main** *(2)*
**making** *(3)*
**MANAGEMENT** *(15)*
**Mark** *(9)*
**MARKED** *(3)*
**market** *(11)*
**MARKS** *(2)*
**material** *(2)*
**Matt** *(5)*
**matter** *(1)*
**matters** *(1)*
**MATTTHEW** *(1)*
**mean** *(1)*
**means** *(1)*
**meet** *(1)*
**member** *(1)*
**met** *(2)*
**MICHAEL** *(1)*
**million** *(18)*
**mine** *(1)*
**minutes** *(2)*
**missed** *(1)*
**mlang@cwl.law.com** *(1)*
**MNPI** *(1)*
**mokin@okinadams.com** *(1)*
**moment** *(1)*
**money** *(3)*
**MORRIS** *(79)*
**motion** *(9)*
**Mountain** *(19)*
**move** *(2)*
**moved** *(1)*
**moving** *(4)*
**multiple** *(1)*

**< N >**
**name** *(2)*
**named** *(1)*
**NATHAN** *(1)*
**NECESSARILY** *(2)*
**need** *(7)*
**needed** *(2)*
**negatively** *(3)*
**negotiate** *(1)*
**negotiating** *(1)*
**negotiation** *(4)*
**negotiations** *(4)*
**neither** *(1)*
**never** *(7)*
**New** *(4)*
**newly** *(1)*
**news** *(1)*
**NexPoint** *(1)*
**nice** *(1)*
**nonpublic** *(2)*
**normal** *(1)*
**NORTHERN** *(1)*
**Notary** *(1)*
**notations** *(1)*
**NOTE** *(1)*
**notes** *(4)*
**notice** *(1)*
**notified** *(1)*
**November** *(1)*
**NUMBER** *(2)*

**< O >**
**object** *(53)*
**objecting** *(1)*
**objection** *(22)*
**objections** *(1)*
**obligation** *(10)*
**obligations** *(6)*
**obtain** *(6)*
**obtained** *(2)*
**occasions** *(1)*
**officer** *(1)*
**official** *(12)*
**officially** *(1)*
**Oh** *(2)*
**Okada** *(33)*
**okay** *(51)*
**OKIN** *(71)*
**once** *(1)*
**opine** *(8)*
**opined** *(1)*
**opinion** *(3)*
**opportunity** *(4)*
**option** *(11)*
**order** *(3)*
**org** *(1)*
**organization** *(8)*
**organizational** *(1)*
**organizations** *(27)*
**orgs** *(1)*
**originally** *(1)*
**originated** *(1)*
**outcome** *(1)*
**outlined** *(1)*
**outside** *(3)*
**overall** *(2)*
**overseeing** *(1)*
**oversight** *(4)*
**owes** *(6)*

**owned** (*5*)
**ownership** (*9*)
**owns** (*2*)

**< P >**
**p.m** (*5*)
**PACHULSKI** (*2*)
**Pacific** (*1*)
**PAGE** (*7*)
**paid** (*3*)
**paragraph** (*7*)
**part** (*13*)
**participate** (*2*)
**particular** (*2*)
**parties** (*11*)
**partnership** (*1*)
**party** (*3*)
**patience** (*1*)
**Patrick** (*27*)
**Patrick's** (*2*)
**PAUL** (*1*)
**pay** (*5*)
**payments** (*3*)
**payout** (*2*)
**payouts** (*2*)
**PE** (*2*)
**peace** (*2*)
**pending** (*2*)
**percentage** (*1*)
**period** (*2*)
**permission** (*2*)
**person** (*6*)
**personally** (*2*)
**persons** (*1*)
**pertaining** (*1*)
**pertinent** (*1*)
**PHILLIPS** (*3*)
**piece** (*1*)
**place** (*2*)
**plan** (*1*)
**planned** (*1*)
**platform** (*2*)
**play** (*3*)
**played** (*1*)
**plays** (*1*)
**please** (*3*)
**PLLC** (*1*)
**point** (*1*)
**policies** (*4*)
**policy** (*4*)
**POMERANTZ** (*1*)
**portfolio** (*1*)
**portfolios** (*1*)
**portion** (*3*)
**positive** (*1*)
**possibility** (*2*)
**potential** (*2*)
**potentially** (*3*)
**preparation** (*1*)
**present** (*3*)
**preserve** (*1*)
**President** (*2*)
**prevent** (*2*)
**PREVIOUSLY** (*2*)
**primarily** (*1*)
**prior** (*1*)
**privilege** (*1*)
**privileged** (*1*)
**privy** (*1*)
**probably** (*2*)
**problematic** (*2*)
**proceeding** (*1*)
**proceedings** (*5*)
**process** (*4*)
**produce** (*1*)
**produced** (*1*)
**product** (*4*)
**PRODUCTION** (*1*)
**projected** (*1*)
**proper** (*1*)
**proposed** (*13*)
**proposing** (*1*)
**propounded** (*1*)
**protect** (*1*)
**provide** (*1*)
**provided** (*2*)
**providing** (*1*)
**Public** (*1*)
**pull** (*1*)
**pulling** (*1*)
**purpose** (*2*)
**pursued** (*1*)
**pushed** (*1*)
**put** (*20*)
**putting** (*1*)

**< Q >**
**quarter** (*1*)
**quarterly** (*2*)
**question** (*13*)
**questionable** (*2*)
**QUESTIONS** (*11*)
**quicker** (*1*)
**QUINN** (*1*)
**QUOTATION** (*1*)
**quotations** (*1*)
**QUOTE** (*2*)

**< R >**
**Rand** (*8*)
**Rand's** (*1*)
**range** (*1*)
**RAVER** (*1*)
**RDR** (*2*)
**reach** (*1*)
**read** (*6*)
**reading** (*2*)
**really** (*2*)
**Realtime** (*3*)
**reason** (*39*)
**reasonable** (*1*)
**reasons** (*3*)
**recall** (*3*)
**receive** (*10*)
**received** (*4*)
**receives** (*1*)
**Recess** (*1*)
**recollection** (*1*)
**recommendation** (*3*)
**recommendations** (*2*)
**record** (*1*)
**recorded** (*1*)
**recovered** (*1*)
**reduced** (*1*)
**refer** (*2*)
**REFERENCED** (*1*)
**referred** (*2*)
**referring** (*1*)
**refers** (*3*)
**REFLECT** (*1*)
**refresh** (*1*)
**regardless** (*2*)
**Registered** (*2*)
**reiterated** (*1*)
**related** (*4*)
**relates** (*4*)
**relationship** (*9*)
**relax** (*1*)
**release** (*1*)
**releases** (*4*)
**releasing** (*1*)
**rely** (*2*)
**remind** (*1*)
**REMOTE** (*3*)
**reorganization** (*1*)
**repeat** (*2*)
**rephrase** (*2*)
**Reported** (*1*)
**Reporter** (*10*)
**REPORTER'S** (*1*)
**reporting** (*1*)
**represent** (*1*)
**representative** (*2*)
**representing** (*1*)
**represents** (*1*)
**REQUEST** (*1*)
**required** (*6*)
**research** (*1*)
**respect** (*7*)
**respectfully** (*1*)
**respectively** (*1*)
**responsibilities** (*2*)
**responsibility** (*3*)
**responsible** (*1*)
**restate** (*3*)
**restructuring** (*6*)
**result** (*4*)
**review** (*2*)
**reviewed** (*2*)
**Right** (*38*)
**rise** (*3*)
**risk** (*7*)
**ROBERT** (*1*)
**robertloigman@quinnemanuel.com** (*1*)
**role** (*6*)
**roll** (*5*)
**rolled** (*2*)
**rolls** (*3*)
**roll-up** (*1*)
**room** (*1*)
**Rouge** (*1*)
**roughly** (*1*)
**Royal** (*1*)
**RSA** (*2*)

< S >
**sale** *(4)*
**saw** *(1)*
**says** *(2)*
**scheduled** *(1)*
**scope** *(3)*
**screen** *(3)*
**scroll** *(1)*
**scrutiny** *(1)*
**see** *(8)*
**seek** *(3)*
**seeking** *(1)*
**seeks** *(2)*
**seen** *(4)*
**SEERY** *(1)*
**segregated** *(6)*
**sell** *(2)*
**selling** *(1)*
**sent** *(1)*
**sentence** *(3)*
**series** *(1)*
**serve** *(1)*
**served** *(1)*
**set** *(4)*
**settle** *(1)*
**settled** *(1)*
**settlement** *(68)*
**settlements** *(3)*
**settling** *(1)*
**share** *(2)*
**shares** *(5)*
**sharing** *(1)*
**SHAWN** *(1)*
**sheet** *(6)*
**shifting** *(1)*
**short** *(2)*
**Shorthand** *(3)*
**sign** *(2)*
**signed** *(3)*
**significant** *(5)*
**similar** *(1)*
**sir** *(87)*
**sit** *(1)*
**situation** *(1)*
**six** *(1)*
**Skyview** *(1)*
**sleep** *(1)*
**smoothly** *(1)*
**sold** *(5)*
**sole** *(2)*
**solely** *(2)*
**somewhat** *(1)*
**Sorry** *(9)*
**sought** *(1)*
**Sounds** *(2)*
**source** *(2)*
**speak** *(4)*
**speculate** *(2)*
**speculation** *(1)*
**speed** *(1)*
**spoke** *(1)*
**spoken** *(1)*
**standpoint** *(2)*
**STANG** *(2)*
**start** *(1)*
**starting** *(1)*
**state** *(4)*
**stated** *(2)*
**statement** *(3)*
**statements** *(3)*
**STATES** *(2)*
**Stenographically** *(3)*
**stewardship** *(1)*
**STIPULATIONS** *(1)*
**stream** *(3)*
**streams** *(1)*
**Street** *(2)*
**strike** *(1)*
**structure** *(13)*
**structures** *(1)*
**stuff** *(2)*
**sub** *(1)*
**subject** *(4)*
**Subtrust** *(1)*
**succeed** *(3)*
**succeeding** *(1)*
**successful** *(1)*
**sue** *(1)*
**suggest** *(2)*
**Suite** *(3)*
**SULLIVAN** *(1)*
**sum** *(1)*
**summary** *(1)*
**Sunday** *(4)*
**supervision** *(1)*
**supplied** *(1)*
**SUPPORT** *(1)*
**supporting** *(30)*
**supposed** *(1)*
**Sure** *(6)*
**surprised** *(1)*
**sworn** *(1)*
**Systems** *(1)*

< T >
**take** *(9)*
**taken** *(5)*
**takes** *(2)*
**talked** *(2)*
**talking** *(2)*
**team** *(7)*
**tell** *(5)*
**telling** *(1)*
**tenure** *(4)*
**terms** *(3)*
**testified** *(1)*
**testify** *(1)*
**testimony** *(3)*
**TEXAS** *(3)*
**Thank** *(4)*
**Thanks** *(1)*
**therefor** *(1)*
**thing** *(2)*
**things** *(8)*
**think** *(50)*
**thinking** *(2)*
**Third** *(2)*
**thoroughly** *(1)*
**thought** *(1)*
**three** *(2)*
**tied** *(2)*
**time** *(31)*
**times** *(1)*
**timing** *(1)*
**today** *(12)*
**told** *(5)*
**TORREY** *(5)*
**total** *(1)*
**track** *(1)*
**transaction** *(1)*
**transactions** *(1)*
**transcribed** *(2)*
**transcript** *(3)*
**transcripts** *(1)*
**transfer** *(1)*
**transferred** *(1)*
**transpired** *(1)*
**tribunal** *(1)*
**tried** *(1)*
**true** *(10)*
**Trust** *(24)*
**Trustee** *(3)*
**trustees** *(1)*
**truth** *(3)*
**try** *(3)*
**trying** *(2)*
**two** *(10)*
**types** *(1)*
**typewriting** *(1)*
**typically** *(1)*

< U >
**ultimately** *(10)*
**uncertainty** *(1)*
**underlying** *(4)*
**understand** *(17)*
**understanding** *(13)*
**unfair** *(5)*
**Unfortunately** *(1)*
**UNITED** *(1)*
**unpack** *(1)*
**unsuccessfully** *(1)*
**URQUHART** *(1)*
**use** *(2)*

< V >
**valuations** *(1)*
**value** *(21)*
**values** *(1)*
**various** *(1)*
**vehicle** *(8)*
**vehicles** *(1)*
**verbatim** *(4)*
**veto** *(1)*
**videoconferencing** *(1)*
**video-conferencing** *(1)*
**VIDEOGRAPHER** *(1)*
**VIDEO-RECORDED** *(2)*
**view** *(2)*
**Vine** *(1)*
**volume** *(2)*

< W >

**walk** (*1*)
**want** (*6*)
**wanted** (*4*)
**watching** (*1*)
**way** (*2*)
**wearing** (*1*)
**Wednesday** (*2*)
**week** (*1*)
**Well** (*10*)
**we're** (*10*)
**we've** (*6*)
**WINOGRAD** (*1*)
**wish** (*1*)
**WISHNEW** (*1*)
**withdraw** (*1*)
**withdrawn** (*7*)
**witness** (*5*)
**wondering** (*1*)
**words** (*1*)
**wore** (*1*)
**working** (*2*)
**world** (*1*)
**worries** (*1*)
**worth** (*3*)
**wrapped** (*1*)
**written** (*1*)
**wrong** (*7*)
**wrongdoing** (*1*)

**< Y >**
**Yeah** (*41*)
**year** (*2*)
**years** (*6*)
**York** (*4*)

**< Z >**
**ZIEHL** (*2*)
**Zoom** (*1*)

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 15, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj11** |
| | § | |
| | § | |
| **Debtor.** | § | |

**MEMORANDUM OPINION**

Pending before the Court is a *Memorandum of Law in Support of the Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate* (the "Rule 60 Motion"). Dkt. No. 4513.[1] The Rule 60 Motion received objections from Highland Capital Management, L.P. and the Highland Claimant Trust (collectively, "Highland Capital") [Dkt. Nos. 4535, 4536], which were joined by Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC

---

[1] Unless otherwise stated, all "Dkt. No." references herein are to the above captioned case.

Supplemental exhibits to the Rule 60 Motion were filed at Dkt. No. 4521.

(collectively, the "HMIT Entities") [Dkt. No. 4537]. Over three days, the Court took evidence and heard arguments in support of each party's position. At the conclusion of trial, the Court took the Rule 60 Motion, and the admissibility of one exhibit, under advisement.

For the reasons stated herein, the Rule 60 Motion is denied. Additionally, the Court sustains Dugaboy Investment Trust's objection to the admission of Highland Capital's Exhibit 300.

## Background

1. The Court endeavors to give a short history of events that prompted the Rule 60 Motion. On October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed a voluntary chapter 11 petition, the venue for which was eventually transferred to this district. The Debtor confirmed a plan of reorganization on February 22, 2021, which, among other things, established the Highland Claimant Trust and a litigation sub-trust. Dkt. No. 1943. The Debtor's confirmed plan provided for the treatment of classes 10 and 11 that included Class B/C Limited Partnership Interest and Class A Limited Partnership Interest, respectively.[2]

2. Post-confirmation, on October 15, 2021, the litigation trustee of the Debtor's litigation sub-trust, Mark Kirschner, initiated an adversary proceeding against 20 defendants, including Nancy Dondero as trustee of the Dugaboy

[2] The plan defines the limited partnership interest as "the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest[,]" "the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust[,]" and "the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust." Dkt No. 1808 at 6, ¶¶ 33–36.

Investment Trust ("Dugaboy") and Hunter Mountain Investment Trust ("HMIT"). Case No. 21-03076, Dkt. No. 1, and as amended at Dkt. No. 158. Seeking to resolve their many differences, including the claims asserted by Mr. Kirschner, the Debtor and the HMIT Entities reached a settlement for which they sought this Court's approval. Dkt. Nos. 4216, 4217. According to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* ("9019 Motion"), HMIT's Class B/C Limited Partnership Interest "represented 99.50% of the Debtor's prepetition total equity[,]" and the remaining 0.50% represented the Class A Limited Partnership Interest.[3] Dkt. No. 4216, ¶¶ 5–6. The settlement agreement, filed separately from the 9019 Motion, includes broadly defined mutual releases, dismissal of pending litigation, cash payments to HMIT, valuation of HMIT's class 10 interest in Debtor's plan, and a transfer of claims alleged by Mr. Kirschner in Case No. 21-03076 to HMIT. Dkt. No. 4217-1. Mark Patrick, the administrator of HMIT, signed the settlement agreement on behalf of the HMIT Entities.

3. The 9019 Motion drew objections from several parties—Patrick Daugherty, Dugaboy, and Crown Global Life Insurance, Ltd. ("Crown Global") and The Dallas Foundation. Dkt Nos. 4229–31. Crown Global's and The Dallas Foundation's objection was the only objection that raised concerns about Mark Patrick's authority to sign the settlement agreement on behalf of the HMIT Entities. *See* Dkt. No. 4231. Prior to the 9019 Motion hearing, the HMIT Entities,

---

[3] *See supra* n.2.

Crown Global, The Dallas Foundation, Empower Dallas Foundation, the Okada Family Foundation, and the Debtor entered into a stipulation requiring inclusion of certain language in any order approving the 9019 Motion. Dkt. No. 4282. This stipulation was approved by the Court, Dkt. No. 4291, and resulted in Crown Global and The Dallas Foundation withdrawing their objection.

4. On June 25, 2025, the Court commenced a hearing on the 9019 Motion. At the hearing, Dugaboy raised for the first time the issue of Mr. Patrick's authority to execute the settlement agreement on behalf of the HMIT Entities. Despite Dugaboy's failure to raise this issue in its written objection, the Court received evidence of, both in favor and against, Mr. Patrick's authority to settle on behalf of the HMIT Entities. The 9019 Motion was approved the same day, and the Court entered an order to that effect on June 30, 2025 (the "9019 Order"). Dkt. No. 4297. On July 14, 2025, Dugaboy and Patrick Daugherty each appealed the 9019 Order to the District Court. *See* Dkt. Nos. 4310–11; Case No. 3:25-cv-01876-K, Dkt. No. 1 (N.D. Tex.).[4] This appeal is not resolved.[5]

---

[4] There were initially two district court appellate cases that were consolidated on August 8, 2025.

[5] Online the appeal appears closed, but the matter is stayed pending resolution of Appellee's Motion to Dismiss Appeal as Moot, and the District Court entered the following docket note:

> There appears to be no further reason at this time to maintain the file as open for statistical purposes. The Clerk is, therefore, instructed to submit a JS-6 form to the Administrative Office, thereby removing this case from the statistical records. <u>Nothing in this Order shall be considered a dismissal or disposition of this case</u>. Once the pending motion has been determined, the Court will lift the stay and reopen this matter. This case will proceed in the same manner as if this Order had not been entered.

Case No. 3:25-cv-01876-K, Dkt. No. 66 (N.D. Tex.) (emphasis in original).

**<u>Dugaboy's Rule 60 Motion and Highland Capital's Objection</u>**

5. About six months post-appeal, Dugaboy filed its Rule 60 Motion. Dkt. No. 4513. The Rule 60 Motion argues two reasons for vacating the 9019 Order: (1) newly discovered evidence demonstrates that the settlement was the product of fraud and misconduct; and (2) the presiding judge that entered the 9019 Order was without authority to do so because she was disqualified.[6] According to Dugaboy's Rule 60 Motion, Mark Patrick was without authority to settle on behalf of the HMIT Entities because he breached fiduciary duties owed to HMIT's charitable beneficiaries. Moreover, the scope and effect of Mr. Patrick's alleged misconduct could not have been discovered with due diligence prior to entry of the 9019 Order. Thus, under Rule 60(b)(2) and (3), the Court should vacate the 9019 Order.[7]

6. As newly discovered evidence, the Rule 60 Motion points to proceedings involving a charitable donor advised fund in the Grand Cayman Islands, over which joint official liquidators ("JOLs") were appointed. According to the JOLs, Mr. Patrick "effectuated the DAF restructuring and thereby fraudulently absconded with $270 million in charitable assets belonging to the charitable owners." Dkt. No. 4513 at 28. The DAF restructuring, said most succinctly, refers to

[6] Judge Stacey G.C. Jernigan presided over the 9019 Motion and entered the 9019 Order. Judge Jernigan voluntarily recused herself from deciding the Rule 60 Motion, and the matter was assigned to above-signed judge. At trial on the Rule 60 Motion, Dugaboy minimally argued that Judge Jernigan was disqualified from entering the 9019 Order. Throughout the trial, Dugaboy did not introduce any evidence on this issue. The Court deems this argument abandoned. *See Kovac v. Wray*, 363 F. Supp. 3d 721, 748–49 (N.D. Tex. 2019) ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived.") (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)).

[7] Fed. R. Civ. P. 60 is made applicable in bankruptcy proceedings by Bankruptcy Rule 9024.

a series of transactions undertaken by Mr. Patrick to dissolve certain charitable beneficiaries' interests in HMIT's assets. To Dugaboy, such conduct amounted to a breach of fiduciary duties that divested Mr. Patrick of his authority over the HMIT Entities. And because these alleged breaches occurred before the settlement was reached, the 9019 Order should be vacated.

7. Highland Capital's objection argues that none of Dugaboy's evidence of Mr. Patrick's alleged fraud or breaches of fiduciary duties is newly discovered. *See* Dkt. No. 4535. Dugaboy, Highland Capital contends, knew everything it needed to know about the relevant entity restructurings to challenge Mr. Patrick's authority to sign the settlement agreement on behalf of the HMIT Entities *before* June 25, 2025. And to the extent Dugaboy learned any additional information after this date, it could have timely moved for a new trial under Rule 59.[8] Dugaboy, thus, cannot meet the standard under Rule 60(b)(2).

8. Highland Capital also argues that Dugaboy cannot meet its burden under Rule 60(b)(3) because it fails to allege that an opposing party committed any fraud, misrepresentation, or misconduct in seeking entry of the 9019 Order. Lastly, based on the pending appeal of the 9019 Order, Highland Capital urges the Court to deny the Rule 60 Motion for lack of jurisdiction.

9. All parties were permitted limited discovery on these issues. At trial, the Court admitted hundreds of exhibits and heard testimony from five witnesses.

[8] Fed. R. Civ. P. 59 is made applicable in bankruptcy proceedings by Bankruptcy Rule 9023.

Before turning to the ultimate issue, the Court will first resolve admission of Highland Capital's Exhibit 300.

**Highland Capital's Exhibit 300**

10. The Court reserved at trial admission of Highland Capital's Exhibit 300. The exhibit is one page and is best described as a screenshot of a PDF page with the "Highlights Properties" pop-up displayed. The page comes from Dugaboy's Exhibit I that was filed under seal [Dkt. No. 4525] and Highland Capital's Exhibit 70 that was not filed under seal [Dkt. No. 4608-82]. Both are the Third Affidavit of Margot MacInnis, and neither was admitted at trial.

11. Highland Capital used its Exhibit 300 for impeachment purposes during its cross-examination of Margot MacInnis, who is one of the joint official liquidators in the proceeding pending in the Grand Cayman Islands. Primarily, the information contained in Highland Capital's Exhibit 300 is meant to demonstrate that counsel for James Dondero, the beneficiary of Dugaboy, was provided access to Ms. MacInnis's affidavit despite a Grand Cayman Islands court order that prohibited such access.

12. The Court denies admission of Highland Capital's Exhibit 300. The evidence is not relevant. Without this evidence, it is not more or less probable that Mark Patrick had authority to settle on behalf of the HMIT Entities, nor is it of consequence to determine the Rule 60 Motion.

13. Having resolved this issue, the Court now turns to the Rule 60 Motion.

## **Jurisdiction to Decide the Rule 60 Motion**

14. Filing an appeal is an event of jurisdictional significance. It confers jurisdiction upon the court to which the appeal is taken and divests the lower court of jurisdiction over aspects of the case involved in the appeal. *See, e.g.*, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Tex. Comptroller of Pub. Accts. v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 578–79 (5th Cir. 2002) ("[The *Griggs*] rule applies with equal force to bankruptcy cases.").

15. This Court is, therefore, without jurisdiction to reconsider and vacate the 9019 Order. That being said, Bankruptcy Rule 8008(a) states,

> If a party files a timely motion in the bankruptcy court for relief that the court lacks authority to grant because an appeal has been docketed and is pending, the bankruptcy court may: (1) defer considering the motion; (2) deny the motion; (3) state that it would grant the motion if the court where the appeal is pending remands for that purpose; or (4) state that the motion raises a substantial issue.

So, to the extent Bankruptcy Rule 8008(a) permits the Court to issue a ruling concerning a matter on appeal, the Court denies the Rule 60 Motion. *See In re Skyline Ridge, LLC*, No. 4:18-bk-01908-BMW, 2021 WL 1093928, at *9 (Bankr. D. Ariz. Mar. 15, 2021) (denying motion under Bankruptcy Rule 8008(a)(2)); *Geron v. Holding Cap. Grp., Inc. (In re PBS Foods, LLC)*, 549 B.R. 586, 597 (Bankr. S.D.N.Y. 2016) (same).

## **Relief Under Rule 60(b)**

16. Beginning where we must, Rule 60(b) states, in relevant part,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief.

The Fifth Circuit states that Rule 60(b) relief is "extraordinary" and compliance with the rule is strict. *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992).

17. To prevail under Rule 60(b)(2), the movant must present evidence that (1) was in existence at the time of trial; (2) not discovered until after trial; (3) is not cumulative; and (4) is material, such that a new trial would probably produce a different result. *Id.* at 1102–03. Evidence that is merely cumulative or impeaching, and clearly would not have produced a different result if presented before the original judgment, is not sufficient to sustain vacatur under Rule 60(b)(2). *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005).

18. "A Rule 60(b)(3) assertion must be proved by clear and convincing evidence, and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case or defense." *Longden*, 979 F.2d at 1103. There is no requirement under Rule 60(b)(3) that the information withheld be such that it alters the outcome of the case. *See Hesling*, 396 F.3d at 641. "The rule is remedial and should be liberally construed" to vacate judgments that were unfairly obtained. *Id.*

19. Lastly, Rule 60(b)(6) is the "grand reservoir" for relief from judgments where "appropriate to accomplish justice." *Harrell v. DCS Equip. Leasing Corp.*, 951

F.2d 1453, 1458 (5th Cir. 1992). A Rule 60(b)(6) motion is granted only if extraordinary circumstances are present. *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). Vacatur under Rule 60(b)(6), though, is mutually exclusive of the relief available in the other subsections of Rule 60(b). *Hesling*, 396 F.3d at 643. "The reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)." *Id.* Thus, where a party's Rule 60(b)(6) allegations are essentially identical to the Rule 60(b)(3) allegations of fraud or misconduct, relief under Rule 60(b)(6) is not appropriate. *See id.*

20. With this framework in mind, the Court explains its reasons for denying the Rule 60 Motion.

***The Alleged Evidence of Mark Patrick's Misconduct is not Newly Discovered.***

21. The Court agrees with Highland Capital that Dugaboy had, or could have obtained via discovery before trial on the 9019 Motion, all the facts necessary to challenge Mr. Patrick's authority to settle on behalf of the HMIT Entities. Reviewing James Dondero's Affidavit ("Dondero Affidavit"), filed April 16, 2025, in the Grand Court of the Cayman Islands, lends support for this conclusion.[9]

22. It is worth repeating that Mr. Dondero is a beneficiary of Dugaboy. And, on May 11, 2026, Highland Capital and Dugaboy filed a stipulation in which the parties agreed that "Dugaboy previously designated Mr. Dondero as agent on

[9] Admitted as Highland Capital Ex. 48. While not admitted into evidence, Dugaboy designated the Dondero Affidavit as Dugaboy Ex. 36.

Dugaboy's behalf for all purposes relating to the Relevant Litigation and Dugaboy's [Rule 60 Motion]." Dkt. No. 4615.

23. The Dondero Affidavit summarizes Mr. Dondero's allegations against Mr. Patrick that, in his reading of the HMIT trust agreement, automatically removed Mr. Patrick as administrator of the trust.[10] While it may be true that Dugaboy, and others, later came to know the magnitude and effect of Mr. Patrick's actions as described in the Dondero Affidavit, this is not newly discovered evidence that necessitates vacatur of the 9019 Order.

24. In ruling on a motion to stay the 9019 Order, Judge Jernigan characterized the challenges related to Mark Patrick's authority: "***Whatever the misdeeds may or may not be of Mark Patrick, they are not sufficiently intertwined with the Highland bankruptcy estate (or the Settlement Agreement) to justify a stay***. . . . Mark Patrick is merely a signatory for a counter-party to a settlement agreement with the bankruptcy estate (that counter-party being the former 99.5% equity owner of Highland, namely Hunter Mountain). Dkt. No. 4333 (emphasis in original).[11] This characterization is equally true here. Though allegations related to Mr. Patrick's "misdeeds" were distilled into a *Writ of Summons and Statement of Claim* filed in the Grand Cayman Islands court,[12] the information is not new.

[10] The HMIT Trust Agreement was admitted as Highland Capital's Ex. 1 and Dugaboy's Exs. 1, 20, and 219.

[11] Admitted as Highland Capital's Ex. 65.

[12] Admitted as Highland Capital's Ex. 63.

***Highland Capital Complied with Dugaboy's Discovery Requests Before Trial on the 9019 Motion.***

25. On June 10, 2025, Dugaboy's counsel served Highland Capital with interrogatories and requests for production.[13] None of the interrogatories or requests for production appear to directly seek information or documents about Mr. Patrick's authority to negotiate and sign the settlement agreement on behalf of the HMIT Entities. Nevertheless, James Seery, as Highland Capital's CEO and trustee of the Highland Claimant Trust, provided responses to Dugaboy's discovery requests. Mr. Seery testified at trial that this production included over 4000 pages of documents, the contents of which included organization documents for the HMIT Entities. At no time prior to trial on the 9019 Motion did Dugaboy challenge Highland Capital's discovery responses as insufficient.

26. The charitable beneficiaries at the center of Dugaboy's complaint were also deposed prior to trial on the 9019 Motion. President and CEO of The Dallas Foundation, Julie Diaz, was deposed on June 22, 2025.[14] Counsel for Dugaboy was present as Ms. Diaz's deposition. The same is true for the deposition of Torrey Littleton, who is CFO of The Dallas Foundation.[15] It was The Dallas Foundation, with Crown Global, that filed an objection to the 9019 Motion based on questions

[13] Admitted as Highland Capital's Ex. 53.

[14] Ms. Diaz's deposition transcript was admitted as Highland Capital's Ex. 56-A. At trial, only specific parts of Ms. Diaz's deposition were admitted as Highland Capital's Ex. 56. Afterward, Highland Capital and Dugaboy stipulated that Highland Capital "may substitute the Deposition Designations for the full transcripts lodged on [Highland Capital's] W&E list." Dkt. No. 4673.

[15] Ms. Diaz's deposition transcript was admitted as Highland Capital's Ex. 57-A. *See supra* note 14 for additional explanation.

surrounding Mr. Patrick's authority, and both witnesses were questioned on this topic. After these depositions, that objection was withdrawn.

27. Overall, there is no evidence, much less clear and convincing evidence, that Highland Capital withheld evidence from Dugaboy that prevented it from fully and fairly litigating its case prior to entry of the 9019 Order. Thus, Rule 60(b)(3) vacatur of the 9019 Order is not appropriate.

***Vacating the 9019 Order Will not Restore the Original Charitable Structure.***

28. The overwhelming majority of Dugaboy's arguments focused on Mr. Patrick's restructuring of entities related to HMIT's charitable beneficiaries (referred to during trial as the DAF restructuring). To be clear, this Court makes no findings about whether those restructurings were well-intended, appropriate, or otherwise. But in the context of the Rule 60 Motion, it is important to note that vacating the 9019 Order will not restore the prior HMIT structure or the charitable beneficiaries' structure. As much was admitted during multiple points at trial:

- On the Court's examination of Margot MacInnis, she testified that her analysis of the settlement is not complete, but any analysis of claims would inure to the benefit or detriment of HMIT or the DAF structure, not Highland Capital.[16]

- On cross/direct examination of Mark Patrick, he testified that he would still have full control over HMIT's assets even if the DAF restructuring were rescinded.[17]

[16] May 11, 2026, Trial Tr. 199:18–201:9.

[17] May 12, 2026, Trial Tr. 118:12–14.

- During closing argument, counsel for Dugaboy stated that vacating the 9019 Order would not impact the DAF restructuring in any way.[18]

With this in mind, there is no reason, as a Court of equity, to reassess whether the settlement was the product of arm's-length, good faith negotiations. Whatever Mr. Patrick did or did not do with his authority over HMIT assets and the charitable beneficiaries' structure, is not for this Court to decide.

29. And Rule 60(b)(6) relief is likewise inappropriate, because Dugaboy failed to articulate a "mutually exclusive" reason for vacating the 9019 Order. Duagboy's request for equitable relief is identical to its requests for relief under Rule 60(b)(3). This is insufficient and, thus, the request is denied.

**Conclusion**

The Court denies the Rule 60 Motion and does not admit Highland Capital's Exhibit 300. The Court will enter a separate order consistent with this memorandum opinion.

###End of Memorandum Opinion###

[18] May 21, 2026, Trial Tr. 208:13–17; 211:9–212:8.

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 15, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj11** |
| | § | |
| | § | |
| **Debtor.** | § | |

## ORDER

Consistent with the Memorandum Opinion issued on this date, it is hereby

ORDERED that the Motion for Relief from Order and Motion to Vacate[1] filed by the Dugaboy Investment Trust ("Dugaboy") [Dkt. No. 4513] is denied; and it is further

ORDERED that Dugaboy's objection to Exhibit 300, which was offered into evidence by Highland Capital Management, L.P. and the Highland Claimant Trust, is sustained.

### End of Order ###

---

[1] The full title of the pleading filed is Memorandum of Law in Support of the Dugaboy Investment Trust's Motion for Relief from Order and Motion to Vacate.