**Case No. 3:26-cv-02496-K**

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,**
***Debtor***

**THE DUGABOY INVESTMENT TRUST,**

***Appellant***

**v.**
**HIGHLAND CAPITAL MANAGEMENT, L.P., et al.,**
***Appellees***

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Case No. 19-34054-sgj11

# BRIEF OF APPELLEES HIGHLAND CAPITAL MANAGEMENT, L.P. AND HIGHLAND CLAIMANT TRUST

Mark T. Stancil (*pro hac vice*)
mstancil@willkie.com
Joshua S. Levy (*pro hac vice*)
jlevy@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street, N.W.
Washington, D.C. 20006
T: (202) 303-1000

John A. Morris (*pro hac vice*)
jmorris@pszjlaw.com
**PACHULSKI STANG ZIEHL & JONES LLP**
1700 Broadway, 36th Fl.
New York, NY 10019
T: (212) 561-7700
F: (212) 561-7777

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
**HAYWARD PLLC**
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
T: (972) 755-7100
F: (972) 755-7110

Jeffrey N. Pomerantz (*pro hac vice*)
jpomerantz@pszjlaw.com
Gregory V. Demo (*pro hac vice*)
gdemo@pszjlaw.com
Jordan A. Kroop (*pro hac vice*)
jkroop@pszjlaw.com
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA 90067
T: (310) 277-6910
F: (310) 201-0760

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Highland Capital Management, L.P. and the Highland Claimant Trust (together, "Highland" or "Appellees"), appellees in the above-referenced matter, pursuant to Federal Rule of Bankruptcy Procedure 8012 and Rule 8012.1 of the Local Bankruptcy Rules of the Northern District of Texas, hereby submit the following *Certificate of Interested Persons* (the "CIP"):

1. Highland Capital Management, L.P., appellee in this appeal and the reorganized debtor in the bankruptcy case captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Texas, and its counsel, John A. Morris, Jeffrey N. Pomerantz, Gregory V. Demo, and Jordan A. Kroop of Pachulski Stang Ziehl & Jones LLP; Mark T. Stancil and Joshua S. Levy of Willkie Farr & Gallagher LLP; and Melissa S. Hayward and Zachery Z. Annable of Hayward PLLC. Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held limited liability company. No publicly held corporation owns 10% or more of the interests in either entity.

2. Highland Claimant Trust, appellee in this appeal, and its counsel, John A. Morris, Jeffrey N. Pomerantz, Gregory V. Demo, and Jordan A. Kroop of Pachulski Stang Ziehl & Jones LLP; Mark T. Stancil and Joshua S. Levy of Willkie

Farr & Gallagher LLP; and Melissa S. Hayward and Zachery Z. Annable of Hayward PLLC.

3. The Dugaboy Investment Trust, appellant in this appeal, and its counsel Michael J. Edney, Martha B. Stolley, and Avery Joseph Welker of Morgan, Lewis & Bockius LLP; Steven H. Stodghill, Geoffrey S. Harper, and John Michael Gaddis of King & Spalding LLP; Michael Burrage of Whitten Burrage; and Johnny Sutton of Ashcroft Sutton.

4. Appellees reserve the right to amend or supplement this CIP as and if necessary or appropriate.

Dated: November 9, 2026

*/s/ Zachery Z. Annable*
Zachery Z. Annable

# TABLE OF CONTENTS

*Page*

STATEMENT REGARDING ORAL ARGUMENT ..... 1

PRELIMINARY STATEMENT ..... 1

JURISDICTIONAL STATEMENT ..... 2

STATEMENT OF ISSUES ..... 4

STANDARD OF REVIEW ..... 6

STATEMENT OF THE CASE ..... 6

SUMMARY OF ARGUMENT ..... 6

ARGUMENT ..... 9

I. THIS COURT LACKS APPELLATE JURISDICTION BECAUSE THE 59(e) DECISION IS NOT A "FINAL DECISION" THAT CAN BE SEPARATELY APPEALED ..... 9

II. IF THE COURT REACHES THE MERITS, IT SHOULD AFFIRM ..... 15

A. Judge Odell Did Not Err In Rejecting Dugaboy's Fraud Theory ..... 17

B. The Bankruptcy Court Applied The Correct Standard To The 9019 Settlement ..... 29

C. The Bankruptcy Court Did Not Abuse Its Discretion In Finding That Dugaboy Lacked "Newly Discovered" Evidence Under Rule 60(b)(2) ..... 31

D. Dugaboy's Claim That the Bankruptcy Court's Factual Findings Must Be Reviewed De Novo Is Forfeited and Foreclosed By Supreme Court Authority ..... 42

CONCLUSION ..... 44

## TABLE OF AUTHORITIES

**Cases** *Page(s)*

*In re Age Refin., Inc.*,
801 F.3d 530 (5th Cir. 2015) ....................16, 34

*In re ASARCO, L.L.C.*,
650 F.3d 593 (5th Cir. 2011) ....................5

*Banister v. Davis*,
590 U.S. 504 (2020)....................3, 6, 10, 12

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)....................27

*Cheseroni v. Nationwide Mut. Ins. Co.*,
402 A.2d 1215 (Del. Super. Ct. 1979)....................21

*Demahy v. Schwarz Pharma, Inc.*,
702 F.3d 177 (5th Cir. 2012) ....................15

*In re DePuy Orthopaedics, Inc.*,
888 F.3d 753 (5th Cir. 2018) ....................17

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ....................16

*Hesling v. CSX Transp., Inc.*,
396 F.3d 632 (5th Cir. 2005) ....................16, 27

*Hess v. Cockrell*,
281 F.3d 212 (5th Cir. 2002) ....................27, 28

*In re Jackson Brewing Co.*,
624 F.2d 599 (5th Cir. 1980) ....................34

*In re Josiahs Trucking, LLC*,
2025 WL 2214038 (Bankr. S.D. Tex. Aug. 4, 2025) ....................42

*Longden v. Sunderman*,
979 F.2d 1095 (5th Cir. 1992) ....................4, 7, 17, 23

*New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
174 F.3d 338 (3d Cir. 1999) ....................................................................21

*Osborne v. Belton*,
131 F.4th 262 (5th Cir. 2025) ..........................................................*passim*

*Procter & Gamble Co. v. Amway Corp.*,
376 F.3d 496 (5th Cir. 2004) ....................................................................27

*Rozier v. Ford Motor Co.*,
573 F.2d 1332 (5th Cir. 1978) ..................................................................16

*Stern v. Marshall*,
564 U.S. 462 (2011)....................................................................5, 8, 42

*Tolliver v. Northrop Corp.*,
786 F.2d 316 (7th Cir. 1986) ....................................................................15

*Trump v. Slaughter*,
609 U.S. 422 (2026)..........................................................................42, 43

*United States v. Garrett*,
15 F.4th 335 (5th Cir. 2021) .....................................................................32

*United States v. Scroggins*,
599 F.3d 433 (5th Cir. 2010) ....................................................................19

*Walker v. Transfrontera CV de SA*,
634 F. App'x 422 (5th Cir. 2015) .........................................................15, 16

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)..................................................................................41

*Willis v. Cleco Corp.*,
749 F.3d 314 (5th Cir. 2014) ....................................................................19

**Statutes**

28 U.S.C. § 158(a)(1).....................................................................................11

28 U.S.C. § 1291 ..........................................................................................10

**Rules**

Fed. R. Bankr. P. 8002(b)(1)(B) ....................................................................11

Fed. R. Bankr. P. 8002(b)(2)..........................................................................3

Fed. R. Bankr. P. 9014(c) ............................................................................35

Fed. R. Bankr. P. 9019 ..........................................................................*passim*

Fed. R. Bankr. P. 9023 ................................................................................40

Fed. R. Bankr. P. 9024 ................................................................................40

Fed. R. Civ. P. 42(a)(2) ...............................................................................12

Fed. R. Civ. P. 59(e)..............................................................................*passim*

Fed. R. Civ. P. 60(b)(2)...................................................................5, 7, 8, 28, 41

Fed. R. Civ. P. 60(b)(3)..........................................................................*passim*

Fed. R. Civ. P. 60(b)(6)........................................................................7, 27, 28

## STATEMENT REGARDING ORAL ARGUMENT

To facilitate expeditious resolution, the Court may wish to schedule consolidated oral argument on all related appeals arising from the Rule 9019 settlement.

## PRELIMINARY STATEMENT

This is the fourth appeal manufactured by Appellant The Dugaboy Investment Trust ("Dugaboy") from the bankruptcy court's approval of a May 19, 2025, settlement between Highland and Hunter Mountain Investment Trust ("HMIT") and its affiliates (collectively with HMIT, the "HMIT Entities") (the "9019 Settlement") under Federal Rule of Bankruptcy Procedure 9019. We assume the Court's familiarity with these cases through Dugaboy's appeal (the "9019 Appeal") of the bankruptcy court's June 30, 2025, order approving the 9019 Settlement (the "9019 Order"), and Dugaboy's appeal of the denial of its Motion for Relief from Order and Motion to Vacate (Dkt. 4513) (the "Rule 60(b) Motion") under Federal Rule of Civil Procedure 60(b) seeking to vacate that order.[1] After losing that Rule 60(b) Motion, Dugaboy both appealed the 60(b) Order and filed a motion in the bankruptcy court under Rule 59(e) seeking reconsideration of the denial of the Rule 60(b) Motion (the "Rule 59(e) Motion"). That motion failed too, and fourteen days later Dugaboy

[1] Capitalized terms used and not defined in this Preliminary Statement have the meanings ascribed to them below.

sought to appeal the Rule 59(e) denial separately from the then-pending Rule 60(b) Appeal.

But there is crystal-clear Fifth Circuit authority holding that an order denying Rule 59(e) reconsideration of a Rule 60(b) order is not a "final decision" that is separately appealable. Accordingly, this Court does not have jurisdiction over this appeal. The operative "final decision" is the Rule 60(b) Decision, which Dugaboy already separately appealed and separately briefed.

Even if this Court were to find that it somehow has jurisdiction, this case is almost entirely a rehash of a subset of Dugaboy's arguments in the Rule 60(b) Appeal. Those arguments are just as meritless here as they were last week.

## JURISDICTIONAL STATEMENT

This Court lacks appellate jurisdiction over this appeal, Case No. 3:26-cv-02496-K.

The United States Bankruptcy Court for the Northern District of Texas (Hon. Brad W. Odell) denied Dugaboy's motion for relief under Rule 60(b) on June 15, 2026 (the "Rule 60(b) Decision"). On June 29, 2026, Dugaboy filed (i) a notice of appeal from the Rule 60(b) Decision (R.016667–71) (the "Rule 60(b) NOA"), and (ii) the Rule 59(e) Motion that is the subject of this appeal (R.016505–666.) The bankruptcy court denied the Rule 59(e) Motion on July 10, 2026 (R.016729–30) (the "Rule 59(e) Decision"), upon which the Rule 60(b) NOA immediately became

"effective" to appeal the final judgment comprising the Rule 60(b) Decision (the "Rule 60(b) Appeal"). *See* Fed. R. Bankr. P. 8002(b)(2) ("If a party files a notice of appeal after the court announces or enters a judgment, order, or decree—but before it disposes of a[] motion [under Rule 59(e)]—the notice becomes effective when the order disposing of the last such remaining motion is entered."). The Rule 60(b) NOA was initially docketed as Civil Action No. 3:26-cv-02315-X and assigned to Judge Brantley Starr, who transferred it to this Court on October 9, 2026. Dugaboy filed its opening brief in the Rule 60(b) Appeal on October 1, 2026, and Appellees filed their responsive brief on November 2, 2026.

On July 24, 2026, Dugaboy filed a notice of appeal from the Rule 59(e) Decision (the "Rule 59(e) NOA"), which was initially docketed as Civil Action No. 3:26-cv-02496-D (the "Rule 59(e) Appeal"). It was originally assigned to Judge Ada Brown; following Judge Brown's voluntary recusal, the appeal was reassigned to Judge Sidney Fitzwater, who transferred it to this Court on October 9, 2026.

The Rule 59(e) Decision is not a final judgment from which an appeal separate from the Rule 60(b) Appeal may be taken. "When a party appeals an order denying a Rule 59(e) motion, 'the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment.'" *Osborne v. Belton*, 131 F.4th 262, 269 (5th Cir. 2025) (quoting *Banister v. Davis*, 590 U.S. 504, 509 (2020)). Here, the "prior determination" is the Rule 60(b) Decision; "'[t]he court

thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying [Rule 60(b)] decision.'" *Id.* (quoting *Banister*, 590 U.S. at 509).

In sum, because the Rule 60(b) Decision is a "final decision" into which the Rule 59(e) Decision is merged, this Court has no appellate jurisdiction over the improperly filed Rule 59(e) Appeal.

**STATEMENT OF ISSUES**

1. Whether the Rule 59(e) Appeal should be dismissed for lack of appellate jurisdiction, because binding Supreme Court and Fifth Circuit precedent hold that denial of a Rule 59(e) motion is not separately appealable.

2. Whether the bankruptcy court committed clear and manifest error in denying Dugaboy's motion for reconsideration under Rule 59(e), which raised the following questions:

   a. Whether the bankruptcy court correctly held that allegedly fraudulent conduct under Rule 60(b)(3) "'must be such as to prevent the losing party from fully and fairly presenting its case or defense'" (R.016498 (quoting *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992))), and then abused its discretion in finding that Dugaboy failed to prove by clear and convincing evidence that it was prevented from fully and fairly presenting

its case at the June 25, 2025 evidentiary hearing on the 9019 Settlement (the "9019 Hearing").

b. Whether the bankruptcy court should have adopted a novel heightened standard when reviewing a motion under Bankruptcy Rule 9019 because the estate is managed by "court-appointed administrators" (59(e) Br. at 40.)

c. Whether the bankruptcy court abused its discretion in finding that Dugaboy failed to adduce new evidence under Rule 60(b)(2) that could not have been timely discovered through the exercise of reasonable diligence, and that would have changed the outcome of the 9019 Order.

d. Whether the bankruptcy court lacked authority to enter final judgment under *Stern v. Marshall*, 564 U.S. 462 (2011), even though Dugaboy plainly forfeited any such argument, and, in any event, approval of the 9019 Settlement was squarely within bankruptcy courts' traditional domain.

## STANDARD OF REVIEW

The question of law as to whether this Court has appellate jurisdiction is reviewed *de novo*. *See In re ASARCO, L.L.C.*, 650 F.3d 593, 599 (5th Cir. 2011). If the Court considers any issue presented in Dugaboy's Rule 59(e) Appeal, it must apply an exceedingly high deferential standard of review *combining* the "clear error" standard applicable to Rule 59(e) motions *and* the abuse of discretion standard applicable to Rule 60(b) motions. (*See infra* Part II at 17–18.)

## STATEMENT OF THE CASE

Dugaboy's recitation of the factual and procedural history of this case is just as unhinged here as it was in Dugaboy's Rule 60(b) opening brief. We respectfully refer the court to Highland's Statement of the Case in its Rule 60(b) opposition brief. (Case 3:26-cv-02315-K, Dkt. 61 at 5–21.) The additional procedural history relevant to the Rule 59(e) Motion is set forth above in the Preliminary Statement and Jurisdictional Statement (*See supra* at 1–4.)

## SUMMARY OF ARGUMENT

I. This Court lacks jurisdiction. Under *Osborne v. Belton*, 131 F.4th 262, 269 (5th Cir. 2025), and *Banister v. Davis*, 590 U.S. 504, 509 (2020), an order denying Rule 59(e) reconsideration of a Rule 60(b) order is not a separately appealable "final decision"; it "merges with the prior determination." The only final decision here is the Rule 60(b) Decision, which Dugaboy has already appealed and

briefed. Consolidation cannot render a non-final order final, and Dugaboy is not entitled to a second opening brief. This appeal should be dismissed.

II. If the Court reaches the merits, it should affirm. Dugaboy's Rule 59(e) Motion merely repackaged a subset of its Rule 60(b) arguments, which fail under multiple layers of deference.

A. The bankruptcy court did not create a "categor[ical]" rule refusing to consider a settlement counterparty's conduct in assessing fraud under Rule 60(b)(3). Rather, the bankruptcy court correctly held that the fraud "'complained of must be such as to prevent the losing party from fully and fairly presenting its case.'" (R.016498 (quoting *Longden*, 979 F.2d at 1103).) The bankruptcy court further recognized, correctly, that the alleged fraud of which Dugaboy complains here—restructuring of the HMIT and DAF entities—did not enable or otherwise affect the Settlement and that Patrick was indisputably authorized to execute the 9019 Settlement regardless of the restructuring. Dugaboy's claim that Patrick automatically lost authority to act for HMIT is forfeited twice over and dead wrong. The bankruptcy court did not abuse its discretion in rejecting Dugaboy's "fraud" argument under Rule 60(b)(3) nor did it refuse to consider "extrinsic fraud." Dugaboy's complaints about Patrick's June 2025 deposition ignore the reams of evidence from which Dugaboy was able to press its belated objection. Dugaboy's claim that Highland obfuscated Patrick's

restructuring is demonstrably false. Finally, Dugaboy forfeited its Rule 60(b)(6) argument by omitting it from its brief in the Rule 60(b) Appeal, which is the only final decision in which that issue could be presented. The argument fails in any event because Dugaboy concedes that it merely restates its Rule 60(b)(2) and 60(b)(3) theories, and Rule 60(b)(6) is mutually exclusive of those provisions.

B. The bankruptcy court applied the correct Bankruptcy Rule 9019 standard. Dugaboy's plea to adopt a higher standard for settlements negotiated by court-appointed professionals is forfeited twice over and, in any event, unprecedented and ill-advised.

C. The bankruptcy court did not abuse its discretion in finding that Dugaboy failed to adduce "newly discovered evidence" under Rule 60(b)(2). The evidence overwhelmingly shows that Dugaboy knew about Patrick's restructuring and alleged self-dealing well before the 9019 Settlement. For example, the Dondero Affidavit described the restructuring, and the Dondero-backed Supervision Application detailed it step-by-step. Discovery and the 9019 Hearing then further examined these issues, followed by still more Dondero-backed litigation. The only information learned later was, as the bankruptcy court recognized, mere detail which Dugaboy could have, but failed to, seek in discovery—and which would not have changed the outcome of the 9019 Order in any event.

D. Dugaboy's *Stern v. Marshall* argument is nonsense—Bankruptcy Rule 9019 is wheelhouse Article I material. The unrelated Article II case Dugaboy cites adds nothing, and Dugaboy has waived any conceivable *Stern* argument.

## ARGUMENT

### I. THIS COURT LACKS APPELLATE JURISDICTION BECAUSE THE 59(e) DECISION IS NOT A "FINAL DECISION" THAT CAN BE SEPARATELY APPEALED

There is directly on-point Fifth Circuit authority holding that Dugaboy is not entitled to separately appeal the Rule 59(e) Decision. In *Osborne*, the defendant lost summary judgment and later filed a timely Rule 60(b) motion, which the district court denied. 131 F.4th at 265–66. As here, the defendant then "moved under Rule 59(e) for reconsideration of the district court's denial of his Rule 60(b) motion . . . and the district court similarly denied the Rule 59(e) motion." *Id.* The defendant filed a notice of appeal, which stated that he was "appealing the district court's order denying his Rule 59(e) motion." *Id.* at 267.

With the express goal of "provid[ing] guidance for future similar cases," the Fifth Circuit explained the effect of defendant's notice of appeal and whether the Rule 59(e) order was separately subject to review. *Id*. at 266; *see id*. at 266–69. The court first held that, "if a party designates a post-judgment order in his notice of appeal, any orders disposing of post-judgment motions between the time of the

underlying judgment and the specific post-judgment order designated in the notice of appeal should be construed as being included in the notice of appeal." *Id.* at 267–68. Accordingly, even though the defendant's notice of appeal referenced only the Rule 59(e) order, it was deemed also to reference the prior Rule 60(b) order. *Id.* at 268. And because the time for filing a notice of appeal from the Rule 60(b) order "resets if the party files a" timely Rule 59(e) motion and "began to run anew" when the Rule 59(e) motion was denied, the notice of appeal "was timely as to both the order denying his Rule 60(b) motion and the order denying his Rule 59(e) motion." *Id.* at 268–69.

The Court then turned to the threshold question of significance here, which is "whether the decisions timely appealed in the notice of appeal are otherwise reviewable under 28 U.S.C. § 1291." *Id.* at 269. That is: Can a party separately appeal the Rule 60(b) order *and* an order denying a Rule 59(e) motion seeking reconsideration of the same? Following recent Supreme Court guidance explaining the nature of Rule 59(e) motions, the Fifth Circuit answered that question in the negative.

The Court explained that, while "[a]n order denying a Rule 60(b) motion is . . . a 'final decision,' [a]n order denying a Rule 59(e) motion . . . is not treated the same way." *Id.* Rather, "[w]hen a party appeals an order denying a Rule 59(e) motion, 'the ruling on the Rule 59(e) motion merges with the prior determination,

so that the reviewing court ***takes up only one judgment***.'" *Id.* (emphasis added) (quoting *Banister*, 590 U.S. at 509). "'The court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision'"—*i.e.*, the Rule 60(b) Decision. *Id.* (quoting *Banister*, 590 U.S. at 509). The Court then confirmed that "it is thus appropriate for us to review ***only*** the order denying [defendant's] Rule 60(b) motion. ***The Rule 60(b) motion is a 'final decision' of the district court***." *Id.* (emphases added). The Court therefore did not separately review the denial of the Rule 59(e) motion and considered only "whether the district court abused its discretion in denying [defendant's] Rule 60(b) motion." *Id.*

That reasoning controls here. This Court's appellate jurisdiction under 28 U.S.C. § 158(a)(1) encompasses only "final judgments, orders, and decrees." For the reasons explained above, the Rule 59(e) Decision was not a "final decision"—only the Rule 60(b) Decision was a "final decision" that this Court can review. The Rule 59(e) Decision "merged" into the Rule 60(b) Decision, which Dugaboy previously and separately appealed in the Rule 60(b) Appeal.

Dugaboy's brief offers no plausible basis for this Court's jurisdiction. Dugaboy asserts that "[t]his Court has jurisdiction under 28 U.S.C. § 158(a)(1) over this Appeal from a final decision of the bankruptcy court." (Appellant's Opening Brief, No. 3:26-cv-02315-K, Dkt. 26 ("59(e) Br.") at 1.) But as explained above,

dispositive precedent holds that the Rule 59(e) Decision is not a "final decision" that this Court can separately review.

Dugaboy cannot claim surprise at how the rules work. Dugaboy acknowledges that, by operation of Bankruptcy Rule 8002(b)(1)(B), Dugaboy's "Notice of Appeal from the denial of the Rule 60(b) Motion" would "become effective upon disposition of the Rule 59(e) Motion." (59(e) Br. at 25.) Thus, Dugaboy knew it had a valid notice of appeal from the Rule 60(b) Decision on file that "became effective" when the Rule 59(e) Motion was denied and that the Rule 60(b) Decision is the only "final decision" over which this Court has jurisdiction. Like any other litigant, Dugaboy is responsible for knowing that Fifth Circuit and Supreme Court precedent squarely foreclose separately appealing the Rule 59(e) Decision.[2]

Perhaps aware of this issue, Dugaboy suggests that it is "only by a quirk of timing that Dugaboy's appeal did not encompass the bankruptcy court's denials of both its Rule 60(b) Motion and its Rule 59(e) Motion." (*Id.*) For the reasons explained above, however, the existence of separate Rule 60(b) and Rule 59(e) appeals is not a "quirk" of anything other than Dugaboy's failure to read or follow clear binding precedent. Dugaboy is effectively blaming the clerk's office for its

[2] It is irrelevant whether Dugaboy accidentally or deliberately overlooked the Fifth Circuit's decision in *Osborne* and the Supreme Court's decision in *Banister*, particularly because the rule in question goes to this Court's jurisdiction. We note that Dugaboy is represented by experienced counsel in this appeal, including two large national firms.

own decision to improperly appeal the Rule 59(e) Decision after having already filed the Rule 60(b) Appeal.

Dugaboy further suggests that "consolidat[ion]" is the appropriate remedy for what Dugaboy dismisses as "the overlap between the two appeals." (*Id.* at 3 n.1.) Dugaboy is wrong. Consolidation brings cases that "involve a common question of law or fact" before the same court, Fed. R. Civ. P. 42(a)(2), but cannot, of course, convert a non-final order into a "final order." So, consolidation was the appropriate *first step* to bring all of the appeals Dugaboy has generated out of the 9019 Order before this Court. Three of the four are pending in this court: the Rule 9019 Appeal (No. 3:25-cv-01876-K); the Rule 60(b) Appeal, and this Rule 59(e) Appeal. Dugaboy's appeal of Judge Jernigan's July 2025 order denying a stay of the 9019 Order remains pending before Judge Scholer (No. 3:25-cv-02072-S) (the "Stay Appeal").[3] But all consolidation can accomplish is to allow a single judge familiar with the case's background to assess each appeal, including whether each presents a "final decision" over which the Court has jurisdiction.

Moreover, Dugaboy's suggestion that Highland somehow inappropriately opposed Dugaboy's partial consolidation request is baseless (59(e) Br. at 25), although most of this is now water under the bridge. Highland has consistently urged

---

[3] Dugaboy filed its opening brief in that case on November 2, 2026. As Highland will explain in its response brief, the Court lacks appellate jurisdiction over the Stay Appeal as well.

that all four of Dugaboy's appeals arising from the 9019 Settlement meet the textbook criteria for consolidation and thus should be assigned to the same judge. All that Highland opposed was Dugaboy's strategic (and misguided) attempt to keep pieces of this case before different judges, apparently in hopes of maximizing the potential for disagreement or confusion.[4]

Finally, we note that it would be wholly inappropriate for Dugaboy's Rule 59(e) Appeal brief to be imported somehow into the Rule 60(b) Appeal. If Dugaboy wished to complain about some particular feature of the Rule 59(e) Decision as part of its attack on the Rule 60(b) Decision, it could (in theory[5]) have done so. But it did not. And Dugaboy has already filed its opening brief in the Rule 60(b) Appeal, raising seven purportedly discrete issues. Dugaboy is not entitled to a second round of briefing on almost entirely duplicative issues under the guise of a Rule 59(e) Appeal—particularly when Dugaboy's request to exceed the 13,000-word limit for its Rule 60(b) Appeal was denied. (*See* No. 3:26-cv-02315-K, Dkt. 44.) Moreover, allowing Dugaboy's brief to persist in some fashion could introduce uncertainty going forward as to whether an issue or argument was properly raised.

---

[4] Highland continues to believe it would make eminent practical sense for the Stay Appeal to be transferred to this Court as well, given the clear overlap of these three appeals with that one.

[5] We say "in theory," because Dugaboy's Rule 59(e) Motion was merely a rehash of the same arguments the bankruptcy court correctly rejected in the Rule 60(b) Decision, which is why the Rule 59(e) Decision summarily denied relief. As a result, there was nothing new or independent in the Rule 59(e) Decision that Dugaboy could have independently attacked as part of the final decision subject to review in the Rule 60(b) Appeal.

The appeal should be dismissed, and nothing in Dugaboy's Rule 59(e) opening brief can be deemed to have been raised in Dugaboy's Rule 60(b) opening brief.

Perhaps Dugaboy will argue that its Rule 59(e) NOA should likewise be deemed to encompass the Rule 60(b) Decision, such that *this* Rule 59(e) opening brief should be deemed its Rule 60(b) opening brief. But Dugaboy has quite explicitly said the opposite to this Court, explaining that its Rule 60(b) Appeal addresses the purported "many errors that led to the bankruptcy court declining to vacate the settlement approval," while this Rule 59(e) Appeal addresses only those that were supposedly "so plain that Dugaboy gave the bankruptcy court an opportunity to correct them, through a Rule 59(e) motion." (59(e) Br. at 3; *see also id.* at 25 ("this appeal addresses only" the "limited subset" of issues raised in the Rule 59(e) Motion).) In any event, if Dugaboy's Rule 59(e) opening brief *were* operative in some fashion vis-à-vis the Rule 60(b) Appeal, then Dugaboy's Rule 60(b) opening brief could not be—Dugaboy cannot possibly be rewarded with *two* opening briefs for failing to follow clear guidance from the Fifth Circuit and Supreme Court as to what constitutes a "final decision." The simplest remedy is also the clearly correct one: This appeal should be dismissed.

## II. IF THE COURT REACHES THE MERITS, IT SHOULD AFFIRM

Should this Court determine that it can exercise jurisdiction to review the Rule 59(e) Decision, it should affirm.

Judge Odell's decision was clearly correct, but we note that a trial court's refusal to reconsider the denial of Rule 60(b) relief is entitled to "discretion piled on discretion." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986) (discussing Rule 60(b) appeal); *see also Walker v. Transfrontera CV de SA*, 634 F. App'x 422, 426 n.3 (5th Cir. 2015). Indeed, Dugaboy's Rule 59(e) Appeal must wade through at least ***five layers of deference*** including that the bankruptcy court: (1) abused its discretion by denying Rule 59(e) relief, *see Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 181 (5th Cir. 2012); (59(e) Br. at 9); (2) also "abus[ed] its discretion in" denying Rule 60(b) relief, *Walker*, 634 F. App'x at 431; (3) committed clear error in its findings of fact after a three-day trial, *see In re Age Refining, Inc.*, 801 F.3d 530, 538 (5th Cir. 2015); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005); (4) such that Dugaboy established fraud by clear and convincing evidence, *see Hesling*, 396 F.3d at 641 (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)); (5) which would have changed the outcome of the underlying 9019 Order, *see Hesling*, 396 F.3d at 639 (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003)).

Here, Dugaboy's Rule 59(e) Motion did not even "add anything new to the Rule 60(b) considerations"; it merely repackaged "a limited subset" of them. *Walker*, 634 F. App'x at 431; (59(e) Br. at 25.) Indeed, Dugaboy has largely copied-and-pasted its Rule 60(b) appeal brief into its Rule 59(e) appeal brief with minor

reshuffling. Highland therefore likewise reproduces much of its opposition to Dugaboy's Rule 60(b) Appeal here with minor adaptations as needed.

### A. Judge Odell Did Not Err In Rejecting Dugaboy's Fraud Theory

#### i. The Bankruptcy Court Correctly Held That Fraud Alleged Under Rule 60(b)(3) Must "Prevent the Losing Party From Fully and Fairly Presenting Its Case"

Dugaboy claims that the bankruptcy court made a legal determination "that the misconduct and fraud of a settlement counterparty to the debtor is categorically not relevant to determining whether a debtor settlement should be approved." (59(e) Br. at 26; *see also id.* at 10, 27.) The bankruptcy court did no such thing. Rather, the bankruptcy court correctly observed that Rule 60(b)(3) concerns "fraud" that affects the underlying judicial proceeding in a particular manner, namely "'the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case or defense.'" (R.016498 (quoting *Longden*, 979 F.2d at 1103).) Indeed, Dugaboy itself acknowledges that the Rule 60(b)(3) test is "whether it prevented the losing party from fully and fairly presenting his case or defense." (59(e) Br. at 32 (quoting *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 790 (5th Cir. 2018) (cleaned up)).)

Instead, Dugaboy asserts that, in the bankruptcy court's view, "[o]nly fraud of the Debtor . . . is relevant to whether it should approve a debtor's settlement with a third party." (59(e) Br. at 3; *see id.* at 23, 27.) Dugaboy anchors that

mischaracterization in a single sentence of the decision below—that "[w]hatever Mr. Patrick did or did not do with his authority over [Hunter Mountain's] assets and the charitable beneficiaries' structure, is not for this Court to decide." (59(e) Br. at 27.) However, read in context, that sentence says nothing of the sort.

Judge Odell correctly determined (as had Judge Jernigan) that Patrick's alleged misconduct in the restructuring transactions had no effect on his authority to enter into the 9019 Settlement. Dugaboy effectively concurred, as its counsel conceded in closing argument, that unwinding the 9019 Settlement would not affect the restructuring. (R.016503.) Accordingly, Judge Odell correctly concluded that "[w]hatever Mr. Patrick did or did not do with his authority over HMIT assets and the charitable beneficiaries' structure, [was] not for [Judge Odell] to decide," (R.016503), because Rule 60(b)(3) addresses "fraud" that prevents a party from presenting its case in court. The bankruptcy court recognized this fundamental disconnect in Dugaboy's reasoning, because Dugaboy could not (and cannot) explain how Patrick's restructuring activities prevented Dugaboy from fairly challenging the merits of whether the 9019 Settlement satisfied Bankruptcy Rule 9019.[6]

[6] The testimony of Dugaboy's witness, Margot MacInnis, during the hearing on the Rule 60(b) Motion (the "Rule 60(b) Hearing") vividly highlighted that disconnect. She admitted that, even though she was one of the joint official liquidators (the "JOLs") of Charitable DAF Holdco, Ltd. ("DAF Holdco") appointed by the Grand Court of the Cayman Islands in Cause No. FSD 201 of 2025 (the "Cayman Proceeding") at Dondero's specific request, she did not bother to attend the 9019 Hearing; had made no effort to obtain the evidence adduced during that hearing; had no view

Dugaboy claims that "[b]ankruptcy courts, as courts of equity, have a duty to ensure that their proceedings are conducted fairly and free of fraud and misconduct." (59(e) Br. at 27–28 (citing cases).) On that point, Highland violently agrees. Yet Dugaboy overlooks that the 9019 Hearing *was* conducted free of fraud and misconduct, and Dugaboy ignores that the restructuring transactions did not grant Patrick any authority over HMIT—including the authority to enter into the 9019 Settlement—that he did not already have. Dugaboy cites another string of cases for the proposition that a court should not permit a non-debtor to commit misconduct in a bankruptcy court. (*Id.* at 29 (citing cases).) Here again, Highland agrees, and the bankruptcy court never suggested otherwise. Rather, it held that the "fraud" that Rule 60(b)(3) addresses must actually affect the bankruptcy proceeding by preventing the objecting party from presenting its case. (R.016502.) That is the correct standard.

Finally, Dugaboy adds the claim that "[t]he trust agreement automatically—without further action—removed an administrator who engaged in various specified forms of misconduct." (59(e) Br. at 48; *see also id.* at 12.) But Dugaboy leaves this assertion unexplained, never quoting the operative removal language and instead citing a single page of the HMIT's December 17, 2015 trust agreement (the "HMIT

(a year later) as to whether the 9019 Settlement was "good or bad" for DAF Holdco; and never mentioned HMIT in her direct testimony. (5/11/2026 Tr. 157:16–158:23, 194:21–196:3.)

Trust Agreement") and a three-page record range. (*Id.* at 12 (citing R.008490); *id.* at 48 (citing R.016539–41).) Where, as here, a party "asserts an argument on appeal, but fails to adequately brief it, [it] is deemed to have waived it." *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) (quoting *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010)). As in *Scroggins*, this argument appears merely "as an afterthought," and "the body of [Dugaboy's] brief does not discuss it in any depth." 599 F.3d at 447. Rather, "[t]he brief merely mentions it in conclusory sentences tacked to the end of paragraphs challenging other aspects" of the bankruptcy court's decision. *Id.*

Moreover, Dugaboy never raised this new "automatic-removal" argument in the 9019 Hearing, despite knowing of Patrick's purported fiduciary breaches.[7] For example, Dondero's affidavit sworn April 16, 2025, and filed in the Cayman Proceeding (the "Dondero Affidavit") claims that Patrick engaged in self-dealing and a litany of unauthorized and improper transactions. (R.008055.) As the bankruptcy court correctly found, this affidavit "summarizes Mr. Dondero's allegations against Mr. Patrick that, in his reading of the HMIT Trust Agreement, automatically removed Mr. Patrick as administrator of the trust." (R.016500; *see also infra* Section II.C.ii–iv (discussing a host of additional such evidence).) And

[7] In fact, Dugaboy raised its automatic-removal argument for the first time when it filed its reply brief on the eve of the Rule 60(b) Hearing. (R.005945, R.005974–77.)

Dugaboy indisputably had the HMIT Trust Agreement before the 9019 Hearing and could have presented this argument in timely fashion (if only it had dreamt it up by then). (R.006101.)

In any event, by its plain terms, the HMIT Trust Agreement does not work the way Dugaboy now imagines, such that Patrick's authority over HMIT spontaneously (and retroactively) evaporates upon the assertion of misconduct by a third party.

Dugaboy is presumably attempting to invoke the agreement's definition of "Honis Cause," which includes certain misconduct by "[John] Honis, in any capacity, . . . that is injurious to any of the Applicable Entities." (R.008490.) Critically, however, the definition further provides that "[a]ny determination of whether conduct constitutes Honis Cause pursuant to this Agreement ***shall be made in the reasonable discretion of the Partnership***," which in context refers to "Highland Capital Management, L.P." (*Id.* (emphasis added).) The agreement provides that upon the occurrence of Honis Cause, "the Administrator shall immediately be removed without any action by the Delaware Trustee or any other party." (R.008490, R.008495.) Dugaboy presumably believes Honis Cause also applies to Patrick.[8]

---

[8] Dugaboy is not a party to, or a beneficiary of, the HMIT Trust Agreement, nor is it a party to or a beneficiary of the Second Amended and Restated Limited Liability Company Agreement (the "Beacon Mountain LLC Agreement") of Beacon Mountain LLC ("Beacon Mountain"). (R.006080, R.006090–91, R.006138, R.006144.) Beacon Mountain is the explicit sole beneficiary of Hunter Mountain Investment Trust, and Beacon Mountain is also controlled by Patrick. (R.006089; R.006138, R.006143.) Dugaboy has no economic or managerial interest in or control

Dugaboy's argument fails at step one, because Highland has never "determine[d]" that Patrick's conduct triggered this provision. Dugaboy's position relies only on the removal provision, while ignoring the Highland-determination requirement. *See New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999) ("'[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context, and every portion of the contract deserves consideration.'" (quoting *Cheseroni v. Nationwide Mut. Ins. Co.*, 402 A.2d 1215, 1217 (Del. Super. Ct. 1979))). Moreover, the Highland-determination requirement works in harmony with the agreement's declaration that "[n]o one dealing with the Administrator need inquire concerning the validity of anything the Administrator *purports* to do or see to the application of any money paid upon the Administrator's order." (R.008495 (emphasis added).) And the language on which Dugaboy relies, which uses the passive phrase "shall immediately be removed," contemplates that someone (*i.e.*, Highland) must act and states only that no action is required "by the Delaware Trustee or any other *party*."

---

over either of these entities. Further, the Beacon Mountain LLC Agreement expressly provides that there are no third-party-beneficiaries to such agreement and prohibits strangers to the agreement, such as Dugaboy, from pursuing rights or remedies belonging to Beacon Mountain, including its rights as the sole beneficiary of Hunter Mountain. (R.006142.)

(R.008495, R.008490 (emphasis added).) Highland is neither the Delaware Trustee nor a "party" to the HMIT Trust Agreement.[9]

Last but not least, Dugaboy's belated "automatic removal" argument is directly contradicted by its repeated recognition and ratification of Patrick's authority. The bankruptcy court admitted eight agreements into evidence in which Dondero, Dugaboy, the JOLs, and other Dondero-affiliated entities recognized Patrick's authority to act (and continue to act) on behalf of HMIT and DAF entities—despite knowing of the restructuring transactions and Patrick's alleged self-dealing and breaches of fiduciary duties. (*See* R.005015–18, R.007929–32 (1/10/2025); R.007934–44 (6/27/2025); R.007946–49 (7/11/2025); R.007951–66 (7/31/2025); R.007973–91 (9/30/2025); R.007993–95 (12/3/2025); R.007997–8002 (12/8/2025); *see also* 5/12/2026 Tr. 118–28 (Patrick testifying he signed each agreement or directed counsel to sign it, and that neither Dondero nor anyone else ever challenged his authority to do so).)

[9] What is more, the term "Honis Cause" in the HMIT Trust Agreement is circumscribed to apply solely to John Honis by name, not to successor administrators. Even if "Honis Cause" operated as Dugaboy imagines, and Highland had removed Patrick (which it did not), Dugaboy would be no better off. The HMIT Trust is Agreement is clear that any replacement administrator must be appointed by Beacon Mountain, not Dugaboy, Dondero, the Supporting Organizations, or anyone else. (R.006085; *see* R.006081, R.006089.) Patrick controls Beacon Mountain, HMIT's sole beneficiary, and thus would designate his own successor as HMIT's administrator on behalf of Beacon Mountain. (R.006138–46; *see also* R.006093.) Dugaboy's theory—that a new administrator might somehow revisit the 9019 Settlement—therefore fails even on its own terms.

**ii. The Bankruptcy Court Did Not Refuse to Consider Evidence of "Extrinsic" Fraud**

Essentially rehashing a prior argument, Dugaboy claims that the bankruptcy court "categorically ignor[ed] the far more consequential misconduct and fraud—both extrinsic and intrinsic to the proceeding—by Mr. Patrick" (59(e) Br. at 27), contrary to Rule 60(b)'s coverage of "the underlying fraud that is 'extrinsic' to" the proceeding, (*id.* at 29–30). Not so. Yet again, Dugaboy offers no quotation from the opinion supporting that characterization, because the bankruptcy court said no such thing. In fact, as explained above, the bankruptcy court applied the correct standard that the fraud—whether it occurred inside the court (intrinsic) or outside the court (extrinsic)—must have affected the actual judicial proceeding in such a way as "'to prevent the losing party from fully and fairly presenting its case or defense.'" (R.016498 (quoting *Longden*, 979 F.2d at 1103).)

**iii. Patrick's Purported "Deceptive Conduct" Did Not Prevent Dugaboy From Presenting Its Case At The 9019 Hearing**

Dugaboy complains that Patrick's "asserted lack of recollection" about the revised ownership structure during his "June 2025" deposition warranted relief under Rule 60(b)(3). (59(e) Br. at 33–34.) The bankruptcy court did not abuse its discretion in rejecting this argument. Again, the question is not whether Patrick answered each *deposition question* to Dugaboy's satisfaction, but whether Dugaboy was prevented from "fully and fairly presenting its case or defense" *at the 9019*

*Hearing*. *Longden*, 979 F.2d at 1103. And, as exhaustively detailed in Highland's opposition to Dugaboy's Rule 60(b) Appeal (Highland Rule 60(b) Br., No. 3:26-cv-02315-K, Dkt. 61, at 31–39) and below (*infra* Section II.C.i–iii), Dugaboy had detailed evidence of the restructuring's particulars well in advance of the 9019 Hearing, regardless of how Patrick responded to any particular question in his deposition. Moreover, during the 9019 Hearing, the bankruptcy court specifically admonished Patrick to provide direct and complete answers, and Patrick complied. (R.009469–70 (6/25/2025 Tr. 182:7–183:2).) And there was ample documentary evidence and witness testimony presented at the 9019 Hearing detailing the restructuring. Dugaboy was more than able to present its case.

**iv. There is Zero Evidence Of "Discovery Misconduct" By Highland**

Judge Odell correctly found that "there is no evidence, much less clear and convincing evidence, that Highland Capital withheld evidence from Dugaboy that prevented it from fully and fairly litigating its case prior to entry of the 9019 Order." (R.016502.) Consistent with its inability to identify *any* evidence to support its argument, Dugaboy has utterly failed to show that this factual finding is clearly erroneous. Indeed, that finding is demonstrably correct, and Dugaboy's counsel should carefully reexamine this spurious accusation.

Dugaboy claims that, "[w]hen asked to produce documents pertinent to Mr. Patrick's authority, Highland produced documents addressing only the

*historical* Hunter Mountain structure, giving the false impression that assets continued to be held for the benefit of the original charitable owner, The Dallas Foundation." (59(e) Br. at 36.) Wrong. As described below (*infra* II.C.iii), among the reams of documents Highland produced in the 9019 Hearing discovery were all of the documents showing Patrick's authority over each of the HMIT signatories as of May 19, 2025, when the Settlement Agreement was signed. Those documents included the Beacon Mountain LLC Agreement, which governs Beacon Mountain (HMIT's sole beneficiary). That agreement expressly shows the *revised* HMIT structure, "dated as of the 12th day of February, 2025" and specifically recites that the new sole member, "CLO Holdco, LLC," "acquired all the membership interests" on February 12, 2025. (R.006138.) The documents did not convey a "false impression"; they accurately stated the facts, if only Dugaboy bothered to read them.

Dugaboy claims that James P. Seery, Jr. ("Seery"), Highland's CEO and the Highland Claimant Trustee, testified at the Rule 60(b) Hearing that, "prior to the settlement hearing in June 2025, he had reviewed only the historical organizational documents for Hunter Mountain rather than its then-current structure." (59(e) Br. at 36.) This one is wrong again twice over. First, Seery *did* state that prior to signing the Settlement he "looked at all 34 of th[e] [organizational] documents" identified in Highland's June 24, 2025, exhibit list to ensure that Patrick had authority for all HMIT signatories. (5/21/2026 Tr. 47:20–48:5.) But *nowhere* does Seery state that

those were "historical"—*i.e.*, pre-restructuring—documents. To the contrary, Dugaboy's counsel elicited testimony *confirming* that Seery specifically reviewed Exhibit 95, which is the February 12, 2025, Beacon Mountain LLC Agreement discussed above that describes the *revised* HMIT structure. (*Id.* 50:20–24.) Second, Seery *did not* testify that these were the "only" documents he reviewed, despite counsel's repeated attempts to elicit such a statement. (*See, e.g.*, *id.* 47:24 ("I believe that's *most* of them, if not all."); 48:3–5 ("I don't know if that's every document I looked at, but I looked at all 34 of those documents.").) In any event, Seery testified unequivocally that he reviewed documents sufficient to confirm that Patrick had authority on behalf of each HMIT signatory when he executed the 9019 Settlement on May 19, 2025. (*Id.* 29:12–30:1, 42:9–18, 43:4–44:2, 44:21–45:1, 53:10–13.)

Dugaboy's suggestion that "both Highland and Mr. Patrick" reinforced a "false impression" by "conceiving a settlement agreement with signatories for the Hunter Mountain side only from the stack of parent companies that had been in place before Mr. Patrick's transfer of Hunter Mountain into the Charitable DAF structure" (59(e) Br. at 37) is absurd. Dugaboy never explains why additional entities were needed as signatories—HMIT held a Class 10 interest under Highland's Fifth Amended Plan of Reorganization (the "Plan") and was an active litigant. Moreover, Dugaboy's theory makes no sense in light of the overwhelming evidence detailed above demonstrating that Dugaboy knew full well about the restructuring

transactions and that Patrick had full authority over each of the HMIT signatories. (*See supra* Sections II.A.i, II.A.iii–iv; *infra* Section II.C.)

**v. Dugaboy Forfeited Its Meritless Rule 60(b)(6) Argument**

The only portion of Dugaboy's Rule 59(e) appeal brief not copied from its Rule 60(b) appeal brief is Section I.D challenging the bankruptcy court's denial of relief under Rule 60(b)(6). (59(e) Br. at 38–39.) This is forfeited because Dugaboy failed to raise Rule 60(b)(6) in its appeal of the Rule 60(b) Decision, which is the only final decision where that issue could be presented. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (party "waived this argument by failing to raise it in its opening brief"). Indeed, Highland's opposition brief in the Rule 60(b) Appeal specifically noted this failure by Dugaboy. (Highland Rule 60(b) Br., No. 3:26-cv-02315-K, Dkt. 61, at 21 n.7.) Dugaboy cannot retroactively cure this failure in its Rule 59(e) appeal.

In any event, Dugaboy's belated Rule 60(b)(6) argument fails on the merits. As the bankruptcy court held, under Fifth Circuit precedent, "[v]acatur under Rule 60(b)(6)" requires "extraordinary circumstances" and "is mutually exclusive of the relief available in the other subsections of Rule 60(b)," so "where a party's Rule 60(b)(6) allegations are essentially identical to the Rule 60(b)(3) allegations of fraud or misconduct, relief under Rule 60(b)(6) is not appropriate." (R.016499 (citing *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002); *Hesling*, 396 F.3d at

643)); *accord BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). Because "Dugaboy failed to articulate a 'mutually exclusive' reason for vacating the 9019 Order," its "request for equitable relief is identical to its requests for relief under Rule 60(b)(3)," so "Rule 60(b)(6) relief is likewise inappropriate." (R.016503.) Dugaboy admits that "'the first five clauses of Rule 60(b) and the sixth ***are mutually exclusive***,'" and that it raised the exact same alleged "theft of charitable assets under Rules 60(b)(2) and 60(b)(3)" as "equitable arguments" under Rule 60(b)(6). (59(e) Br. at 38–39 (quoting *Hess*, 281 F.3d at 215) (emphasis added).) Thus, Dugaboy's late-breaking attempt to shoehorn those same allegations into Rule 60(b)(6) fails as a matter of law.

### B. The Bankruptcy Court Applied The Correct Standard To The 9019 Settlement

Dugaboy claims that the bankruptcy court "ignored its special responsibility to scrutinize" and "applied only the lightest touch in its review of the settlement," relying on cases suggesting that "debtors and counterparties can be counted on to look after their own interests." (59(e) Br. at 40.) Again, the bankruptcy court did no such thing. Tellingly, this entire section of Dugaboy's brief lacks a single quotation from the decision below. Its only record citation for this characterization is to the original 9019 Order—not the Rule 60(b) Decision. (59(e) Br. at 40 (citing R.000720); *see id.* at 19 (citing R.000718–21 as the order approving the Settlement).)

Dugaboy presumably takes issue with the bankruptcy court's statements that it declined "to reassess whether the settlement was the product of arm's-length, good faith negotiations" and that it was "not for this Court to decide" Patrick's motivations. (R.016503.) Those conclusions confirmed the findings at the 9019 Hearing and came on the heels of the bankruptcy court's findings that—as Patrick and Dugaboy's trial counsel agreed—"vacating the 9019 Order will not restore the prior HMIT structure or the charitable beneficiaries' structure." (R.016502.) Thus, read with even the slightest attention to context, the bankruptcy court's statements merely recognize that Dugaboy's motion suffers from a fatal disconnect between Patrick's alleged misconduct and the validity of the Settlement for purposes of the Rule 60(b) Motion.

Dugaboy then pivots to an admixture of arguing that a heightened standard should apply to 9019 settlements "[n]egotiated by [c]ourt-[a]ppointed [a]dministrators" and leveling *ad hominem* attacks against those professionals. (59(e) Br. at 39–42; *see, e.g.*, *id.* at 41 (asserting, without apparent irony, that Highland's managers "had a perverse interest in elongating the bankruptcy proceedings to increase fees").) The latter merits no response. As for the heightened-standard argument, it is forfeited twice over: Dugaboy never advanced that position in the 9019 Hearing or in the Rule 60(b) Hearing.

In any event, Dugaboy cites no case applying a different standard to settlements proposed by court-approved professionals, presumably because no court has ever done so. Moreover, Dugaboy's argument rests on the false premise that the professionals here lacked appropriate duties to maximize the value of the estate assets. (*See, e.g.*, Dkt. 1811, Ex. R (Claimant Trust Agreement) at §2.3(b)(i) (as modified by Dkt. 1875-4).) Likewise, Dugaboy's claim that Highland's managers "have no incentive to maximize the estate for the benefit of equity holders" (59(e) Br. at 14) ignores the fact that Highland's negotiating counterparty, HMIT, *was* the holder of 99.5% of Highland's prepetition equity. Dugaboy's real complaint is with the Plan itself, but that was confirmed and finalized on appeal long ago.

### C. The Bankruptcy Court Did Not Abuse Its Discretion In Finding That Dugaboy Lacked "Newly Discovered" Evidence Under Rule 60(b)(2)

Dugaboy claims that, after the 9019 Hearing, it obtained new evidence "of Mr. Patrick running off with the equity stake in Highland and a quarter billion dollars of other assets." (59(e) Br. at 42.) Dugaboy further claims these facts could not have been discovered until the JOLs, once appointed by the Cayman court, "stepped into the shoes of the Charitable DAF Fund, LP."[10] (59(e) Br. at 20; *see id.* at 42–43, 50.) The bankruptcy court did not abuse its discretion in rejecting Dugaboy's assertions;

[10] The JOLs were appointed solely to oversee DAF Holdco *not* Charitable DAF Fund, LP, the entity in which DAF Holdco holds only limited partnership interests and over which DAF Holdco has no control rights. (R.004438–39; R.004496–97; R.004896.)

indeed, given the overwhelming evidence demonstrating that Dugaboy/Dondero[11] knew the essential facts of Patrick's activities, it would have been an abuse of discretion to conclude otherwise.

**i. The Dondero Affidavit**

First, as noted above, the Dondero Affidavit was filed more than two months before the 9019 Hearing and averred that Patrick had sold the entire Hunter Mountain position for $1 million, that "no valuation . . . that [he] can imagine" could support that price, and that the sale "indicates a non-market, non-fiduciary reason." (R.008054–55.) Moreover, the Dondero Affidavit describes that transaction as just one "example" of "repeated reports and evidence of Mr[.] Patrick causing certain DAF entities to liquidate their assets, some at below-market value." (R.008054.) These allegations lie at the core of Dugaboy's purportedly "newly discovered" evidence of Patrick "running off with the equity stake in Highland and a quarter billion dollars of other assets" (59(e) Br. at 42.) Dugaboy disingenuously tries to downplay the Dondero Affidavit, asserting that it "simply did not address the fraud that formed the basis of Dugaboy's Rule 60(b) motion" and instead "covered only events that were venial sins in comparison." (*Id.* at 45.) Not so.

[11] Dugaboy designated Dondero as its agent "for all purposes relating to" litigation concerning Patrick's allegedly illicit activities, including the 9019 Hearing, the Cayman Proceeding, and its Rule 60(b) motion. (R.008468.) The Fifth Circuit has also affirmed Dondero's total control of Dugaboy. *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, No. 25-10999 at 2 (5th Cir. Mar. 17, 2025). There is thus no distinction between Dondero's and Dugaboy's knowledge.

For starters, Dondero cited all these allegations of wrongdoing in support of the Supporting Organizations' successful April 2025 request for judicial liquidation of DAF Holdco. As explained above (*see supra* Section II.A.i at 20–21), all of the allegations would have put Dugaboy on notice to raise its (flawed) automatic-removal theory under the HMIT Trust Agreement. Dugaboy's account of the Dondero Affidavit ignores entirely its concerns about increased expenses (*see* 59(e) Br. at 44–46), even though the Dondero Affidavit says explicitly that the increased expenses "reinforced my concern that Mr[.] Patrick is using the Control Position for his own enrichment rather than to benefit the Supporting Organizations and the causes they support." (R.008053.) Indeed, as Highland's counsel accurately observed, Dondero "alleges in his April declaration that Mr. Patrick began breaching his fiduciary duties as early as June 2023." (5/21/2026 Tr. 227:19–21.) Even if it were the only evidence in Dugaboy's possession before the Settlement, the Dondero Affidavit was more than enough. But there is so much more, and this Court may affirm on any basis supported by the record. *See United States v. Garrett*, 15 F.4th 335, 340 (5th Cir. 2021).

### ii. The Supervision Application

On May 2, 2025, nearly two months before the 9019 Hearing, the Supporting Organizations (of which Dondero was president, board member, and sole funder) filed their petition for court supervision of DAF Holdco's liquidation (the "Supervision Application") in the Cayman Islands. (R.004438–47.) That document eviscerates Dugaboy's claim that it could not possibly have understood in time that Patrick had "secretly restructured the Charitable DAF, transferred Hunter Mountain into it, and stole the assets" (59(e) Br. at 46; *see id.* at 42–43.)

For example, Dugaboy's claim that it did not know about "DFW Charitable Foundation, a sham charity that Mr. Patrick created in December 2024 and ran from his basement" (59(e) Br. at 15; *see id.* at 46), or that Patrick made it the DAF's new primary discretionary beneficiary, is directly contradicted by the Supervision Application:

> On 7 February 2025, Holdco allotted 318 participating shares to an entity named 'DFW Charitable Foundation' (DFW) – the effect being the substantial dilution of the Supporting Organisations' interest in the Company, from a cumulative holding of 100% of the Participation Shares to 48.9%. The Petitioners have since discovered that DFW is a Delaware company incorporated on 9 December 2024, registered to Mark Patrick's home address and Mark Patrick being the sole member. Mark Patrick is a director of and holds the Management Shares in HoldCo. DFW was purportedly granted charitable status by the State of Delaware on 7 February 2025, the same day it was allotted 318 participating shares in the Company.

(R.004440.) "Participation Shares" allow holders to receive the (purely discretionary) economic distributions from the DAF; "Management Shares" allow holders to appoint the directors who have sole control of whether, when, and in what amount to make distributions (and whether to change or eliminate holders of Participation Shares). (R.004976–77.) Thus, the paragraph above conclusively demonstrates Dondero's (and therefore Dugaboy's) awareness that the first step in the DAF restructuring was to establish DFW Charitable Foundation, which they knew Patrick created and operated from his home, as the DAF's primary beneficiary.

The Supervision Application then explains that, in the second step, Patrick had fully redeemed the Supporting Organizations' remaining discretionary interest. It explains that Patrick had caused a new "entity by the name of CDMCFAD, LLC"—which Dugaboy now claims to be part of an impenetrable "alphabet soup" (59(e) Br. at 14; *see id.* at 46)—to become the "sole investment" of DAF Holdco. (R.004440–41.) It further complains that the Supporting Organizations' interest in that entity had been "redeemed on 27 March 2025 and, on 2 April 2025, the proceeds available for distribution from this redemption were distributed in the amount of US$1,612,192" to the Supporting Organizations. (*Id.*) And it avers that as of "2 April 2025, [DAF Holdco] has no assets." (R.004441; *see also* 5/11/2026 Tr. 261:15–262:13.) At the Rule 60(b) Hearing, Dugaboy's witness, Lucy Bannon, vice president of the Supporting Organizations (and head of public relations for

Dondero's current asset-management business), conceded that "the supporting organizations were fully aware as of May 2nd, 2025" that CDMCFAD had been inserted into the DAF structure, and that they "were aware of the redemption." (5/11/2026 Tr. 261:15–262:13.)

### iii. The 9019 Motion, Discovery, And Hearing

The motion to approve the Settlement was filed on May 19, 2025.[12] Dugaboy objected on grounds unrelated to Patrick's authority, but The Dallas Foundation (funded by Dondero) claimed in its June 9, 2025 objection (the "Dallas Foundation Objection") that Patrick had "illicitly restructured the ownership of the HMIT Entities in a manner that seems to facilitate the diversion of millions of dollars in assets from the charitable entities that are the beneficial owners of the HMIT Entities." (R.008140.) The Dallas Foundation Objection recounted the details presented in the Supervision Application, including that Patrick had "formed in December 2024" a charity "based out of Mr. Patrick's home" (which was then issued Participation Shares); that Patrick had "caused the formation of another new entity, CDMCFAD, LLC" to be "secretly inserted into the charitable organization structure"; how the foundations' beneficial interest in Charitable DAF Fund, LP was

[12] The legal standard for approval of a Bankruptcy Rule 9019 settlement in a bankruptcy case is well known: a court may approve a settlement if it is fair, reasonable, and in the best interests of the estate. *See, e.g.*, *In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Approval or denial of a settlement is within the "sound discretion" of the bankruptcy court. *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980).

transferred to CDMCFAD; and how, "[o]n March 27, 2025, the Fund's interest in CDMCFAD was purportedly redeemed for proceeds totaling $1,612,192.00." (R.008149.) The objection also documented the surge in directors' fees, reaching $2.25 million in the first half of 2024. (R.008147.) So, the core facts of the "fraudulent restructuring" and self-dealing that Dugaboy now says were unknowable until the JOLs' July and December 2025 filings (59(e) Br. at 19–21; *see id.* at. 50–51), were disclosed by Dondero-affiliated entities weeks before the 9019 Hearing.

Every objector, including Dugaboy, exercised their discovery rights. *See* Fed. R. Bankr. P. 9014(c). Highland responded to Dugaboy's interrogatories and produced voluminous documents, including the HMIT signatories' organizational documents and all of Highland's communications with HMIT leading up to the 9019 Settlement. (R.016501; 5/21/2026 Tr. (Seery) 33:23–34:8, 34:20–35:3; 35:21–36:15.) Dugaboy never challenged Highland's discovery responses.

Notably, Highland's production included the LLC Agreement for HMIT's sole beneficiary, Beacon Mountain, which had been amended and restated on February 12, 2025, as part of Patrick's restructuring, because a DAF subsidiary called CLO Holdco, LLC had become Beacon Mountain's sole "Member." This is all laid out on the first page of the document, along with an explicit recital explaining that the new "Member acquired all the membership interests in [Beacon Mountain] from Rand PE Fund I, L.P., as of the Effective Date"—*i.e.*, February 12, 2025.

(R.006138, R.006144.) ***This document was admitted into evidence at the 9019 Hearing without objection.*** (*See* R.009330-1, R.009334 (6/25/2025 Tr. 43:6–44:3, 47:1–3) (evidence, including Ex. 95 (Dkt 4255-95), admitted without objection).)

Dugaboy had ample opportunity to obtain additional information on these issues. Dugaboy deposed Seery, David Klos (CFO/COO of HCMLP), Shawn Raver (the DAF's COO and Associate General Counsel), and Patrick. (*See* R.000591–92 (Dkt. 4243–46, 4259); 5/21/2026 Tr. 34:8–10.) Raver testified that the ownership of Charitable DAF Fund, LP had "changed," that CDMCFAD "now sits above" it, that Beacon Mountain is owned by CLO Holdco, LLC, and that CDMCFAD is owned by DFW Charitable Foundation. (Raver 6/20/2025 Dep. 11:6–13:2, 22:6–23:3; R.005157–59, R.005168–69.) Dugaboy then deposed Patrick, who confirmed that Beacon Mountain was owned by "[a]n entity called CLO HOLD CO LLC," which he understood was in turn owned by CLO Holdco, Ltd. (Patrick Dep. 6/23/2025 Tr. 10:25–11:7; R.005826–27.) Dugaboy now complains about Patrick's deposition answers, but Dugaboy cannot credibly deny that it fully understood the restructuring transactions and their consequences prior to the 9019 Hearing. In any event, Dugaboy never served discovery on the HMIT Entities and never moved to compel or otherwise objected. (R.016501.)

Highland deposed The Dallas Foundation's officers, who were directly "questioned on th[e] topic" of Patrick's authority. (5/21/2026 Tr. (Seery) 34:8–16;

R.016501–02.) Dugaboy's counsel attended those depositions. (R.007934–38.) The Dallas Foundation ultimately agreed to withdraw its objection *with prejudice* before the 9019 Hearing commenced.

In its written objection, Dugaboy did not challenge Patrick's authority or otherwise complain about the DAF restructuring transactions, but the bankruptcy court nonetheless permitted Dugaboy to make that argument at the 9019 Hearing over Highland's objections. And the subject was aired at length, including through the testimony of multiple witnesses[13] and the introduction of scores of exhibits, including the previously produced corporate documents demonstrating Patrick's unquestioned authority to sign the 9019 Settlement on behalf of the HMIT Entities.[14] Patrick himself testified to each link in that chain. (R.009460-61 (6/25/2025 Tr. 173:22–174:14).) He also explicitly testified that the entity through which the prior discretionary beneficiaries held their interests now "owns nothing." (R.009472 (6/25/2025 Tr. 185:22–25).)

It is particularly galling for Dugaboy to suggest that Highland somehow contributed to Dugaboy's (feigned) confusion. (*See supra* Section II.A.iv.) During

---

[13] (*See, e.g.*, R.009384–87 (6/25/2025 Tr. (Seery) 97:12–100:13); R.009458–81 (*id.* (Patrick) 171:7–194:22); R.009482–517 (*id.* (Dondero) 195:12–230:9).)

[14] (*See* R.009327–28 (6/25/2025 Tr. 40:7–41:10 (Highland counsel identifying "34 documents in evidence" establishing Patrick's authority, to which HMIT stipulated)); R.009333–34 (*id.* 46:6–47:3 (admitting Exs. 64–69 over Dugaboy's relevance objection and admitting Exs. 1–9, 11–56, 58–123, 126)); R.009384–85 (*id.* 97:13–98:23 (Seery identifying Exs. 70–104)).)

opening statements at the 9019 Hearing, Highland's counsel literally displayed and walked through a color-coded slide detailing the post-reorganized DAF structure, including the move of the HMIT interest:




(R.005198; R.009341–2 (6/25/2025 Tr. 60:25–61:19).) Dugaboy (and everyone else in court) knew full well how Patrick had restructured these entities.

### iv. The Texas Business Court Lawsuit

The bankruptcy court approved the 9019 Settlement on June 30, 2025, and the very next day Dondero's Supporting Organizations filed a lawsuit in the Texas Business Court against Patrick seeking appointment of a receiver. Demonstrating yet again that Patrick's alleged misconduct had been on full display leading up to and during the 9019 Hearing, this new lawsuit asserted that "Mark Patrick, *through a host of corporate manipulations, took over $270 million in cash* and assets that

supported some of the most important community-based charities in the country." (R.004453–54 (emphasis added).) The very next sentence relied on "Patrick's own testimony from just last Wednesday, June 25th," at the 9019 Hearing, at which he confirmed that "the Supporting Organizations, plaintiffs here, were left with 'nothing.'" (*Id.* (citing 6/25/2025 Tr. 185:22–25).)

The complaint then described the mechanics: "Through the mechanism of Charitable DAF GP, LLC (organized in Delaware) and later via a secretly incorporated entity, CDH GP, Ltd., Mark Patrick held the sole control position of what was a $270 million charitable fund (Charitable DAF Fund, LP) . . . . He did so in order to redirect the fund's beneficial ownership to a brand-new sham charitable organization controlled by him, DFW Charitable Foundation." (*Id.* ¶ 1.2; R.004454.) The petition then mapped out those transactions step by step over four pages. (*Id.* ¶¶ 5.41–5.50; R.004468–71.) The lawsuit was supported by a new Dondero affidavit, which largely tracked the April 2025 Dondero Affidavit (*see* R.004662–73), and expressly acknowledged that the Supporting Organizations' Cayman counsel had "alleged essentially the same facts" before the Cayman Islands Grand Court. (R.004472 (Highland Ex. 62); R.004692–93 (Highland Ex. 61; Dkt. 4521, Ex. H-6).)[15]

[15] On February 10, 2026, the Cayman Islands court denied the Supporting Organizations a proprietary injunction against Patrick and his entities. (R.003999–4054. The JOLs (still funded by Dondero) have appealed that decision. R.006089–93.)

Accordingly, every transaction in Dugaboy's catalog of supposedly "newly discovered" evidence (59(e) Br. at 14–17; *see id.* at 46, 51) was known within fourteen days of the bankruptcy court's order approving the 9019 Settlement.[16] The only data points that the JOLs (arguably) learned later are exactly how much compensation Patrick received and the content of specific emails he exchanged with counsel leading up to the restructuring. But as the bankruptcy court correctly found, those facts go only to "the magnitude and effect" of known conduct and are "not newly discovered evidence." (R.016500.) In any event, Dugaboy could have obtained this additional information through the exercise of "reasonable diligence" during the Bankruptcy Rule 9019 discovery process. Fed. R. Civ. P. 60(b)(2). But Dugaboy did not even serve discovery requests on the HMIT Entities, nor did it bother to make any inquiry concerning Patrick's compensation. Deliberate dereliction is not diligence.

### D. Dugaboy's Claim That the Bankruptcy Court's Factual Findings Must Be Reviewed De Novo Is Forfeited and Foreclosed By Supreme Court Authority

Dugaboy claims this Court must "review *de novo* the rulings or findings of fact of an Article I bankruptcy judge." (59(e) Br. at 52; *see also id.* at 9, 53–54.) That argument is forfeited and squarely contrary to Supreme Court authority.

[16] While Dugaboy already knew all the relevant facts within 14 days, the correct time period is 28 days because Dugaboy moved under Bankruptcy Rule 9024, which adopted the 28-day period from Rule 60—not Bankruptcy Rule 9023, which has a 14-day period.

In *Wellness International Network, Ltd. v. Sharif*, the Supreme Court held that "litigants may validly consent to adjudication by bankruptcy courts" of claims that would otherwise require adjudication by Article III courts. 575 U.S. 665, 674 (2015). The Court further held that such consent may be "implied" by a party's conduct and explained that such a rule is essential to "increasing judicial efficiency and *checking gamesmanship.*" *Id.* at 684–85 (emphasis added). Dugaboy has litigated this case for years, including throughout the entirety of the 9019 Hearing and these extensive Rule 60(b) proceedings, without objection. Dugaboy has thus plainly forfeited this thirteenth-hour attempt to dispute the bankruptcy court's authority.

Even if the Court considers this argument, Dugaboy has it dead wrong. Dugaboy acknowledges *Stern v. Marshall*'s holding that bankruptcy courts can enter final judgments (subject to more limited appellate review) where "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process," regardless of whether it is "core" or "non-core." (59(e) Br. at 53–54 (quoting 564 U.S. 462, 499 (2011)).) Dugaboy does not explain, nor could it, how this case offends *Stern*. The 9019 Settlement approved a consensual resolution of HMIT's disputed Class 10 interest and disposition of estate property. (R.001324–25.) Dugaboy's right to object to the 9019 Settlement—to which it was not a party—derives from the Bankruptcy Code and Bankruptcy Rule 9019 and is not a traditional common-law right protected by *Stern*. *See, e.g.*, *In re Josiahs Trucking, LLC*, 2025

WL 2214038, at *3 (Bankr. S.D. Tex. Aug. 4, 2025) (confirming that "[r]equests for authority to compromise disputes under [Rule] 9019" do not implicate *Stern*).

Dugaboy's curious invocation of *Trump v. Slaughter*, 609 U.S. 422 (2026), changes nothing. (59(e) Br. at 53.) That case concerned whether ***Article II*** of the Constitution requires that the President retain power to remove officers wielding the Executive Power, not the limits of Article I bankruptcy judges versus Article III judges. The historical footing of Article I bankruptcy courts is rock solid, and nothing in *Slaughter* puts the statutory carveout for "core" proceedings "further in doubt." (*Id.* at 53.)

## CONCLUSION

This separate appeal should be dismissed for lack of jurisdiction; alternatively, the bankruptcy court's decision denying Rule 59(e) relief should be affirmed.

Dated: November 9, 2026

Mark T. Stancil (admitted *pro hac vice*)
mstancil@willkie.com
Joshua S. Levy (admitted *pro hac vice*)
jlevy@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street, N.W.
Washington, D.C. 20006
T: (202) 303-1000

*/s/ Zachery Z. Annable*
Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
**HAYWARD PLLC**
10501 N. Central Expwy., Ste. 106
Dallas, TX 75231
T: (972) 755-7100
F: (972) 755-7110

*Counsel for Highland Capital Management, L.P. and the Highland Claimant Trust*

John A. Morris
jmorris@pszjlaw.com
**PACHULSKI STANG ZIEHL & JONES LLP**
1700 Broadway, 36th Fl.
New York, NY 10019
T: (212) 561-7700
F: (212) 561-7777

Jeffrey N. Pomerantz (admitted *pro hac vice*)
jpomerantz@pszjlaw.com
Gregory V. Demo (admitted *pro hac vice*)
gdemo@pszjlaw.com
Jordan A. Kroop (admitted *pro hac vice*)
jkroop@pszjlaw.com
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA 90067
T: (310) 277-6910
F: (310) 201-0760

## CERTIFICATE OF SERVICE

I hereby certify that, on November 9, 2026, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF system upon all parties receiving electronic notice in this case.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the portions excluded by Fed. R. Bankr. P. 8015(g), this document contains 10,309 words.

This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point type in footnotes).

*/s/ Zachery Z. Annable*
Zachery Z. Annable