**Case No. 3:26-cv-02496-K**

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,**
***Reorganized Debtor***

**THE DUGABOY INVESTMENT TRUST**

***Appellant***

**v.**

**HIGHLAND CAPITAL MANAGEMENT, L.P., et al.**

***Appellees***

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Case No. 19-34054-sgj11

# REPLY BRIEF OF APPELLANT THE DUGABOY INVESTMENT TRUST

**KING & SPALDING LLP**
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@kslaw.com
Steven H. Stodghill
Texas Bar No. 19261100
sstodghill@kslaw.com
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201
T: (214) 764-4600

**WHITTEN BURRAGE**
Michael Burrage
OBA No. 1350
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
T: (405) 516-7800
F: (405) 516-7859
mburrage@whittenburragelaw.com

*Additional counsel listed on the following page.*

## COUNSEL FOR APPELLANT

**ASHCROFT SUTTON**
Johnny Sutton
Texas Bar No. 19534250
P.O. Box 160368
Austin, Texas 78716
T: (512) 370-1800
F: (703) 247-5446
jsutton@ashcroftlawfirm.com

**LAW OFFICE OF ALEXEY TARASOV**
Alexey V. Tarasov
Texas Bar No. 24075140
5211 Reading Road
Rosenberg, TX 77471
T: (832) 623-6250
alexey@tarasovlaw.com

**MAZZARA PLLC**
Joseph N. Mazzara
Texas Bar No. 24136521
1704 N. Royal Ave
Front Royal, VA 22630
T: (540) 660-2142
joseph@mazzara.law

# TABLE OF CONTENTS


Table of Authorities ........ ii

Introduction ........ 1

I. The Timely Notices Preserve the Reconsideration Challenge. ........ 3

II. Highland's Layers of Deference Cannot Shield Legal Error. ........ 5

III. Earlier Allegations Lacked the Later Proof of Patrick's Bad Faith. ........ 7

A. The Emails Showed Misconduct the Earlier Allegations Did Not Establish. ........ 7

B. Dugaboy's Access to Evidence Must Be Assessed Against the July 14 New-Evidence Cutoff. ........ 9

C. The New Proof Would Have Changed Approval of This Settlement. ........ 12

IV. Highland's Production Did Not Resolve the Misconduct Attributable to HMIT. ........ 14

A. The Court Applied the Full-and-Fair-Presentation Test to Highland Alone. ........ 14

B. Concealment Deprived Dugaboy of Specific Opportunities to Test the Bargain. ........ 16

V. The Bankruptcy Court Erred in Failing to Decide Whether Patrick Triggered the Removal Clause. ........ 18

VI. The Settlement Required Independent Scrutiny of the Actual Exchange. ........ 23

VII. The Bankruptcy Court Applied the Wrong Test to Rule 60(b)(6). ........ 26

VIII. Highland's Forfeiture Objection Does Not Foreclose Dugaboy's Article III Challenge. ........ 28

Conclusion ........ 29

Certificate of Compliance ........ 31

Certificate of Service ........ 31

# TABLE OF AUTHORITIES

**United States Supreme Court cases**

*Banister v. Davis*,
590 U.S. 504 (2020)....4

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)....27

*Freytag v. Commissioner*,
501 U.S. 868 (1991)....28

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)....24–25

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)....14

*Stern v. Marshall*,
564 U.S. 462 (2011)....29

*Trump v. Slaughter*,
609 U.S. 422 (2026)....29

*Wellness International Network, Ltd. v. Sharif*,
575 U.S. 665 (2015)....28

**United States Courts of Appeals cases**

*Chilson v. Metropolitan Transit Authority*,
796 F.2d 69 (5th Cir. 1986)....6, 9

*Demahy v. Schwarz Pharma, Inc.*,
702 F.3d 177 (5th Cir. 2012)....5

*Government Financial Services One Ltd. Partnership v. Peyton Place, Inc.*,
62 F.3d 767 (5th Cir. 1995)....6, 13

*Hesling v. CSX Transportation, Inc.*,
396 F.3d 632 (5th Cir. 2005)....6, 16, 27

*Hess v. Cockrell*,
281 F.3d 212 (5th Cir. 2002). ....................................................................27

*Hewlett-Packard Co. v. Quanta Storage, Inc.*,
961 F.3d 731 (5th Cir. 2020). ....................................................................6

*Husky Ventures, Inc. v. B55 Investments, Ltd.*,
911 F.3d 1000 (10th Cir. 2018). ....................................................................4

*In re Age Refining, Inc.*,
801 F.3d 530 (5th Cir. 2015). ....................................................................23, 25

*In re DePuy Orthopaedics, Inc.*,
888 F.3d 753 (5th Cir. 2018). ....................................................................6, 18

*In re Foster Mortgage Corp.*,
68 F.3d 914 (5th Cir. 1995). ....................................................................23

*In re Mendoza*,
111 F.3d 1264 (5th Cir. 1997). ....................................................................6

*Jenkins v. LaSalle Southwest Corrections*,
No. 20-10533 (5th Cir. Jan. 10, 2025) (unpublished). ..................................27

*Longden v. Sunderman*,
979 F.2d 1095 (5th Cir. 1992). ....................................................................14–15

*Matter of AWECO, Inc.*,
725 F.2d 293 (5th Cir. 1984). ....................................................................24–25

*Osborne v. Belton*,
131 F.4th 262 (5th Cir. 2025). ....................................................................1, 3–4, 29

*Procter & Gamble Co. v. Amway Corp.*,
376 F.3d 496 (5th Cir. 2004). ....................................................................27

*Smith v. United States*,
561 F.3d 1090 (10th Cir. 2009). ....................................................................4

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004). ....................................................................5

**United States District Court cases**

*In re SBMC Healthcare, LLC*,
547 B.R. 661 (S.D. Tex. 2016)....................................................................14

**State court cases**

*DCV Holdings, Inc. v. ConAgra, Inc.*,
889 A.2d 954 (Del. 2005)......................................................................19, 23

**Constitutional provisions, statutes, and rules**

U.S. Const. art. II, § 2, cl. 2. ..........................................................................28

U.S. Const. art. III. ..........................................................................................28–29

28 U.S.C. § 158(a)(1). ..........................................................................................3

Fed. R. Bankr. P. 8002. ......................................................................................1, 3

Fed. R. Bankr. P. 8003. ......................................................................................3–5

Fed. R. Bankr. P. 8015. ........................................................................................31

Fed. R. Bankr. P. 9019. ..................................................................1, 14, 23–24, 26

Fed. R. Bankr. P. 9023. ....................................................................................3, 10

Fed. R. Bankr. P. 9024. ........................................................................................10

Fed. R. Civ. P. 59. ..........................................................................................1–5, 10

Fed. R. Civ. P. 60. ............................................. 1, 3–6, 9–11, 15–16, 18, 26–27, 29

Tex. R. Civ. P. 11 ..................................................................................................21

## Introduction

Highland calls *Osborne v. Belton*, 131 F.4th 262, 267–69 (5th Cir. 2025), "crystal-clear Fifth Circuit authority" requiring dismissal. Opp. 2–3. Not so. The Fifth Circuit did not dismiss the reconsideration challenge. It took a notice of appeal that named only a Rule 59(e) denial, read that notice to reach the underlying Rule 60(b) denial, and decided the merits. And Highland never mentions the Bankruptcy Rule—Rule 8002(b)(3)—that required Dugaboy to file the notice Highland calls "improper." This Court has appellate jurisdiction and should consolidate this appeal with the Rule 60(b) appeal or accept this briefing as supplemental briefing in that appeal.

Highland concedes the liquidators "(arguably) learned later" exactly how much Patrick paid himself and "the content of specific emails he exchanged with counsel leading up to the restructuring." Opp. 42. In those later-obtained emails, Patrick asked his attorneys to create a general partner "hard to find or track, or trace." R. 016579. Earlier disclosures did not reveal that instruction to conceal the new entity. The court had to assess its availability and significance to Highland's Rule 9019 settlement (the "Settlement") with Hunter Mountain Investment Trust ("HMIT" or "Hunter Mountain"), not equate knowledge of the restructuring with possession of all material proof.

The reconsideration motion identified three errors: conflating earlier allegations with later-obtained proof; treating Highland's production as an answer to misconduct by HMIT's representative; and treating the inability to restore the charitable entities as a reason to leave Settlement approval undisturbed. R. 016517–016533. Each concerned how the bankruptcy court applied the governing standards to evidence already before it, leaving unresolved whether Patrick's misconduct removed him before he signed and whether the Settlement was an arm's-length bargain. Rule 59(e) did not require Dugaboy to uncover another concealed email before asking the court to correct those errors.

Highland "violently agrees" that a bankruptcy court must keep its proceedings "free of fraud and misconduct," including misconduct by a non-debtor. Opp. 19.[1] Highland insists the bankruptcy court honored that duty and Dugaboy can offer "no quotation" showing otherwise. Opp. 24. Try this one: "[w]hatever Mr. Patrick did or did not do with his authority over [HMIT] assets and the charitable beneficiaries' structure, is not for this Court to decide." R. 016503. A court that declines to decide a question committed to its discretion has not exercised discretion. This Court should reverse the denial of relief and direct vacatur of the Settlement approval or alternatively remand for application of the correct standards to the evidence.

---

[1] "Br." (ECF 26) and "Opp." (ECF 35) cite printed pages. "Suppl. R." cites the supplemental record, No. 3:26-cv-02315-K, ECF 50-1. Dugaboy moved to add the May 2026 hearing transcripts here. ECF 36.

## I. The Timely Notices Preserve the Reconsideration Challenge.

Highland's "crystal-clear" authority defeats its dismissal argument. *Osborne*'s only notice of appeal designated the Rule 59(e) denial. 131 F.4th at 267. The Fifth Circuit read that notice to include the Rule 60(b) denial, held it timely as to both orders, and decided the merits. *Id.* at 267–69. Merger determined the scope of review. The appeal and its reconsideration grounds survived.

Dugaboy filed its Rule 59(e) motion under Bankruptcy Rule 9023 on June 29, 2026, the same day it noticed its Rule 60(b) appeal. R. 016516, 016667–016671. The bankruptcy court denied reconsideration on July 10. R. 016729–016730. Rule 8002(b)(3) required Dugaboy to "file a notice of appeal or an amended notice of appeal" to challenge that ruling. The July 24 notice did that, within fourteen days of the denial. R. 016733–016738. Jurisdiction rests on 28 U.S.C. § 158(a)(1); Rule 8002(b)(3) prescribes the notice needed.

Highland calls this an "improperly filed" appeal and a "decision to improperly appeal." Opp. 4, 13. But Highland has it backwards. Rule 8002(b)(3) permits a new notice as well as an amended one. Merger does not defeat review: Rule 8003(a)(7) forbids the very dismissal Highland seeks "for failure to properly identify the judgment or appealable order or decree" when, as here, a notice filed after that disposition identifies an order merged into it. Dugaboy's notice identified the denial

of Rule 59(e) reconsideration of the Rule 60 order. R. 016733–016738; Fed. R. Bankr. P. 8003(a)(4), (5)(B), (7).

The Tenth Circuit has entertained this sequence through a separately noticed reconsideration appeal. In *Smith v. United States*, 561 F.3d 1090, 1095–97 (10th Cir. 2009), a separate appeal designated the Rule 59(e) denial following a Rule 60(b) denial; the court consolidated it with the original-judgment appeal and exercised jurisdiction over both postjudgment rulings. *See also Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1009–10 (10th Cir. 2018) (requiring a new or amended notice of appeal). These decisions support preserving Dugaboy's separate reconsideration challenge alongside its Rule 60 appeal, consistent with *Osborne*'s merger rule.

Highland argues that "nothing in Dugaboy's Rule 59(e) opening brief can be deemed to have been raised." Opp. 15. Its cases say the opposite: the reviewing court "addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision." Opp. 3–4 (quoting *Banister v. Davis*, 590 U.S. 504, 509 (2020)). Merger permits one decision without erasing preserved grounds.

Highland calls consolidation the "appropriate first step" and the dispute "water under the bridge." Opp. 1, 13–14.[2] Dugaboy seeks review of preserved errors

[2] Competing consolidation motions are pending in related appeals before this Court. Highland seeks an unworkable combination of this appeal, the Rule 60(b) appeal, and a separate appeal on Dugaboy's motion to stay the Settlement approval with the

and agrees overlapping issues should be decided once. The Court should consolidate this appeal with the Rule 60(b) appeal under Rule 8003(b)(2) or, if it closes this docket, accept these briefs as supplemental briefing in the Rule 60 appeal.

## II. Highland's Layers of Deference Cannot Shield Legal Error.

Rule 59(e) permits correction of manifest errors of law or fact independently of newly discovered evidence. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). Review is for abuse of discretion, and legal error is an abuse. Dugaboy identified legal and factual errors in the bankruptcy court's June 15, 2026, treatment of the May 2026 hearing record. No further evidence was needed to demonstrate them. R. 016516–016517. The underlying Rule 60 requirements govern relief from the Settlement order.

Highland stacks "at least five layers of deference" and calls the result "discretion piled on discretion." Opp. 16. Highland's own merger theory removes the top layer: if the Rule 59(e) ruling merges into the Rule 60(b) decision, this Court reviews only one decision. Two more "layers," clear and convincing proof and a changed outcome, describe the movant's burden, not appellate review. And the

---

underlying appeal of the Settlement, despite vast differences in time frame and evidentiary record. ECF 16, 18, 20, 22. Highland unreasonably opposes Dugaboy's narrower proposal to consolidate only the Rule 59(e) and Rule 60(b) appeals due to their close overlap. No. 3:26-cv-02315-K, ECF 33, 34, 37.

changed-outcome requirement does not apply to Rule 60(b)(3), which reaches judgments unfairly obtained whether or not the withheld information would have altered the result. *Hesling v. CSX Transportation, Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).

Under Rule 60(b)(2), Dugaboy must identify new evidence that was not previously discoverable through reasonable diligence, is material and controlling, is more than cumulative or impeaching, and clearly would have produced a different result. *Government Financial Services One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 771–72 (5th Cir. 1995). Under subsection (3), the movant must establish by clear and convincing evidence opposing-party misconduct that prevented full and fair presentation but need not show it would have changed the outcome. *Hesling*, 396 F.3d at 639, 641; *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 790–92 (5th Cir. 2018).

Abuse-of-discretion review remains, and a court abuses its discretion when it misapplies the law or wrongly concludes that the law constrains its discretion. *Hewlett-Packard Co. v. Quanta Storage, Inc.*, 961 F.3d 731, 743 (5th Cir. 2020); *In re Mendoza*, 111 F.3d 1264, 1266 (5th Cir. 1997). The bankruptcy court's refusal to consider the effect of Patrick's misconduct rested on a mistaken view of the inquiry before it and was thus a clear abuse of its discretion. *Mendoza*, 111 F.3d at 1268; *see also Chilson v. Metropolitan Transit Authority*, 796 F.2d 69, 72 (5th Cir. 1986). The

reconsideration motion separately presented these errors under subsections (2) and (3). R. 016517–016531.

## III. Earlier Allegations Lacked the Later Proof of Patrick's Bad Faith.

### A. The Emails Showed Misconduct the Earlier Allegations Did Not Establish.

Dugaboy does not ask the Court to disregard what Dondero already knew. His April 2025 affidavit described an attempted kickback scheme, increased directors' fees, and an undervalued Hunter Mountain sale to an unknown buyer. R. 008052–008055. The bankruptcy court treated those allegations as foreclosing the automatic removal argument, but the affidavit never discussed the HMIT Trust Agreement or its removal provision. R. 016500, 016568–016577. The May 2025 Cayman Supervision Application identified Patrick's new entity, the dilution of the charities' interests, the CDMCFAD transfer and redemption, and Holdco's loss of its assets. R. 008061–008062. Those allegations did not establish when Dugaboy could obtain Patrick's internal and privileged communications or what value they added. R. 016579.

The Dallas Foundation and Crown Global's June 9, 2025, objection questioned Patrick's authority, and the hearing testimony and July 1, 2025, Texas Business Court petition described the restructuring. R. 008139, 008148–008151; Opp. 36–41. The Beacon agreement disclosed CLO Holdco, LLC's acquisition, and Patrick confirmed the ownership chain at the hearing. R. 006138, 006144, 009460–

009461. None of those revealed Patrick's secret instruction to counsel to make the new general partner difficult to trace. Knowledge of the transfers and suspicion of improper purpose did not make that later-obtained evidence cumulative.

The bankruptcy court called the new evidence a matter of "magnitude and effect." R. 016500. Patrick's February 2024 instruction sought a structure "hard to find or track, or trace" and "[s]trong litigation protection." R. 016579. His March 17, 2025, email proposed redeeming Holdco's only investment and dissolving it before the charities could present a winding-up petition, forcing them to seek reinstatement and pursue fiduciary claims. R. 012814. These instructions reveal efforts to hide the ownership chain and frustrate remedies, bearing on Patrick's authority and good faith.

Highland dismisses the compensation disclosures as details of known conduct. Opp. 42. The earlier affidavit reported $2.25 million in aggregate directors' fees for the first half of 2024. R. 008053. MacInnis later traced more than $18 million paid to Patrick and Murphy. R. 016638 (May 11, 2026 Hr'g Tr. 131:3–23). Patrick admitted receiving $10.5 million from the DAF in 2024 and described $850,000 plus $2.55 million for 2025, with the same expected for 2026. R. 016650–016651 (May 12, 2026 Hr'g Tr. 82:5–7, 83:1–17). Together with the later communications, those amounts did not merely sharpen the inquiry into Patrick's interests but revealed his corrupt purpose.

*Chilson* distinguished a later-created audit from the preexisting overpayments it revealed. 796 F.2d at 71–72. That court remanded for reconsideration under Rule 60(b)(2), without deciding whether diligence, materiality, or probable effect had been established. *Id*. Dugaboy's reconsideration motion drew the same line between the affidavit's allegations and the later-obtained proof. R. 016517.

**B. Dugaboy's Access to Evidence Must Be Assessed Against the July 14 New-Evidence Cutoff.**

The liquidators' powers threw open the company's records. Appointed on May 6, 2025, they were still investigating when the Settlement hearing occurred. R. 009477 (June 25, 2025 Hr'g Tr. 190:8–23). MacInnis explained she stepped into "the shoes of the company," replaced its directors, obtained its lawyers' records, and waived privilege for publicly disclosed documents. Suppl. R. 000335–000336, 000340 (May 11, 2026 Hr'g Tr. 76:21–77:19, 81:10–18). But this did not establish Dugaboy's access to every record the liquidators later obtained.

Highland acknowledged the distinction, qualifying its diligence argument because the liquidators obtained privileged communications "Dugaboy would not have been able to obtain," while disputing materiality. Suppl. R. 000765–000766 (May 21, 2026 Hr'g Tr. 231:22–232:10). Yet Highland scolds Dugaboy because it "did not even serve discovery requests on the HMIT Entities." Opp. 42. That would not have overcome privilege. Highland cannot fault Dugaboy for not requesting what it concedes Dugaboy could not obtain.

The liquidators' receipt did not put the records in Dugaboy's hands. MacInnis distinguished obtaining records from making them public. She identified the Delaware Chapter 15 filing and December 2025 Cayman injunction hearing as public disclosures. Suppl. R. 000337–000340 (May 11, 2026 Hr'g Tr. 78:4–81:18). Even liquidation committee members could use the information only to consult with the liquidators. Their confidentiality agreements prohibited sharing with other parties or filing in U.S. proceedings. Suppl. R. 000339 (May 11, 2026 Hr'g Tr. 80:2–20). The charities' knowledge cannot simply be attributed to Dondero or Dugaboy. Dondero testified that, after Patrick objected, the Cayman professionals and charities agreed to withhold information from him and his representatives. Suppl. R. 000679–000680 (May 21, 2026 Hr'g Tr. 145:20–146:4).

Highland incorrectly asserts that Bankruptcy Rule 9024 excludes consideration of newly discovered evidence obtained within 28 days of the Settlement approval. Opp. 42 n.16. Rule 9024 adopts Rule 60(b)(2), which refers to the time to move for a new trial under Rule 59(b). Rule 9023 adopts Rule 59 but shortens the deadline to 14 days. The relevant cutoff for newly discovered evidence was therefore July 14, 2025, fourteen days after the June 30 approval order, not July 28. R. 000718–000721.

MacInnis's July 15, 2025, Cayman affidavit quoted the "hard to find or track" email and described the work plan. R. 013238, 013260. That filing fell outside the

July 14 cutoff by one day, bringing it within Rule 60(b)(2). The June 4, 2025, Cayman filing of the confidential ValueScope valuation does not establish Dugaboy could obtain and use it before July 14. R. 012621–012625. MacInnis explained: "We made the documents in connection with the statement of claim public when we filed in Chapter 15." Suppl. R. 000337 (May 11, 2026 Hr'g Tr. 78:4–7). The valuation was filed in Delaware on July 21, after the July 14 cutoff. R. 008739. Asked whether the valuation was "one of the confidential documents that you were only able to gain access to by stepping into the shoes of the Charitable DAF Holdco," MacInnis answered, "Yes." R. 016632–016633 (May 11, 2026 Hr'g Tr. 125:24–126:6). The reconsideration motion presented those access restrictions, and the court did not address them. R. 016514–016515, 016531.

Highland points to its own document production and Dugaboy's failure to serve discovery on HMIT. Opp. 37–38, 42. Neither shows Dugaboy could have accessed the privileged communications MacInnis later obtained as liquidator. R. 016620–016622 (May 11, 2026 Hr'g Tr. 76:21–78:21). Likewise, the June 2025 depositions disclosed ownership changes but not the instruction to impede traceability. Dugaboy pursued the evidence: it deposed Patrick, and its counsel communicated with the liquidators before Settlement approval. R. 016607 (June 23, 2025 Dep. Tr. 13:11–18); R. 016639–016640 (May 11, 2026 Hr'g Tr. 172:23–173:23).

At the June 25 hearing, Dugaboy invoked the liquidators' request for 45 additional days and introduced their June 24 letter describing the ongoing investigation. R. 009315, 009476–009477 (June 25, 2025 Hr'g Tr. 28:17–25, 189:1–8, 189:22–23, 190:8–23). Dondero requested time for the liquidators to review the transaction and Settlement. R. 009492 (June 25, 2025 Hr'g Tr. 205:10–24). Dugaboy sought a stay on July 17, relying on the July 15 Cayman filing. R. 001328–001329. That request followed the fourteen-day cutoff; Dugaboy's earlier requests independently support diligence. The bankruptcy court erred in not considering those efforts and barriers to access.

### C. The New Proof Would Have Changed Approval of This Settlement.

The approval order found that the HMIT Entities participated in the Settlement and acquired estate property in good faith, without fraud or collusion. R. 000720 ¶¶ 4, 6. Seery explained that information about the entities' structure and responsibilities led Highland to expand the settling group to obtain the protection it wanted. R. 009376–009377, 009379 (June 25, 2025 Hr'g Tr. 89:6–90:6, 92:2–8). Patrick's control, the purposes for which he exercised it, and his authority thus concerned the protections the bankruptcy court approved. Because Patrick needed that authority to provide Seery's requested protections, the bankruptcy court erred in declining to address it.

The agreement allowed HMIT's $336,940,230.58 Class 10 interest and exchanged estate assets, litigation rights, and releases. R. 000721 ¶ 12; R. 008511–008515. It defined HMIT Released Parties to include current and former administrators, transferred litigation rights to HMIT, and released covered Highland claims. R. 008507, 008514–008516. Dugaboy preserved the contention that Patrick's interests affected that exchange. R. 000691–000692. Patrick's written instructions to impede traceability strengthened that contention. The bankruptcy court had to assess what those instructions revealed about the exchange of releases and litigation rights, and its dismissal of the alleged misconduct as unrelated was error.

The misconduct shown by that new evidence triggered Patrick's removal from HMIT before he signed the Settlement. R. 008490, 008495. Without Patrick's authority, the bankruptcy court could not approve the bargain. Even if the court construed the removal clause differently, it could not retain the same unqualified good-faith and no-collusion findings without assessing the concealed purpose and financial interests. The court had to decide whether Dugaboy's diligent efforts yielded material, controlling evidence that was more than cumulative or impeaching and clearly would have produced a different result, and it did not. *Peyton Place*, 62 F.3d at 771–72.

Highland defends an opinion the bankruptcy court didn't write. Opp. 33–41. To support its conclusion that the "new" evidence was known to Dugaboy before the June 2025 Settlement hearing, the court identified only Dondero's April 2025 affidavit, which was error for the reasons discussed in Part V below. R. 016499–016500. Highland's additional prehearing evidence did not prove Dugaboy's access to the later-discovered records. A reviewing court may affirm on another ground supported by the record but cannot make determinations requiring "exercise of discretion or fact-finding." *In re SBMC Healthcare, LLC*, 547 B.R. 661, 683 (S.D. Tex. 2016). Reasonable access, intent, and materiality remain disputed. When legal error prevents necessary findings, the usual remedy is remand. *Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982).

## IV. Highland's Production Did Not Resolve the Misconduct Attributable to HMIT.

### A. The Court Applied the Full-and-Fair-Presentation Test to Highland Alone.

The bankruptcy court applied the "fully and fairly" test to Highland alone. It found "no evidence, much less clear and convincing evidence, that Highland Capital withheld evidence from Dugaboy that prevented it from fully and fairly litigating its case prior to entry of the 9019 Order," and stopped. R. 016502; *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th Cir. 1992). It did not decide whether Patrick's misleading testimony and concealment of his purpose prevented that full and fair

presentation. Yet Patrick negotiated and signed for HMIT, the adverse Settlement party. His representative misconduct is attributable to HMIT as that of an "opposing party" under Rule 60(b)(3). R. 008524, 016529.

HMIT sought the Settlement's benefits. Through counsel, it urged approval and adopted Highland's arguments. R. 009349 (June 25, 2025 Hr'g Tr. 62:21–25). Patrick testified to his authority to act for HMIT and to its good-faith participation. R. 009475 (June 25, 2025 Hr'g Tr. 188:1–17). The approval order made findings concerning the HMIT Entities' conduct and acquisition of estate property. R. 000720 ¶¶ 4, 6–7. Rule 60(b)(3) addresses misconduct by an opposing party, not merely the party that filed the approval motion. The reconsideration motion expressly presented that distinction. R. 016529.

Highland recasts the bankruptcy court's refusal to police fraud as a faithful application of *Longden* to every kind of fraud, intrinsic and extrinsic. Opp. 17–19, 24; *Longden*, 979 F.2d at 1103. But the court never applied *Longden* to Patrick's fraud. This Court should not make disputed findings the bankruptcy court never made. Highland says Dugaboy "anchors" its argument in a "single sentence" of the court's opinion. Opp. 17–18. The opinion offers more. The court made "no findings about whether [Patrick's] restructurings were well-intended, appropriate, or otherwise." It quoted the prior judge's characterization of Patrick as "merely a signatory for a counter-party" and adopted it as "equally true here." R. 016500,

016502–016503. The question the bankruptcy court failed to address was how misconduct attributable to HMIT impaired the Settlement proceeding.

### B. Concealment Deprived Dugaboy of Specific Opportunities to Test the Bargain.

Dugaboy's Rule 60(b)(3) showing rests on Patrick's concealment of his conduct and Dugaboy's impaired ability to test that evidence. Rule 60(b)(3) does not require proof that disclosure would alter the outcome. *Hesling*, 396 F.3d at 641. Patrick professed uncertainty about the general partner's identity. R. 016607 (June 23, 2025 Dep. Tr. 13:11–18). His earlier instruction sought a structure "hard to find or track, or trace" and "[s]trong litigation protection." R. 016579. Counsel could have asked: Why should anyone struggle to trace the general partner and its owners? Whose interests required "litigation protection"? Did that purpose shape Patrick's negotiation of releases and acquisition of litigation claims? Those questions implicate the contractual removal trigger and the fairness of this compromise. R. 000691–000692, 005974–005977.

Patrick's evasive answers prompted the bankruptcy court to admonish him for "feigning confusion." R. 009469 (June 25, 2025 Hr'g Tr. 182:8–25). Patrick also reasserted his authority and good faith and denied that the transactions described in the liquidators' letter concerned the HMIT Entities. R. 009475, 009477–009478 (June 25, 2025 Hr'g Tr. 188:1–17, 190:8–191:10). The concealed communications would have allowed counsel to confront Patrick with his own words and challenge

his assurances of authority, good faith, and the absence of any HMIT connection to the charitable restructuring. R. 016579.

The evidence that Patrick engineered a revaluation of the charities' interests at pennies on the dollar illustrates the same loss of opportunity for examination. R. 012814, 013261–013265 ¶¶ 77–77.4. Knowing the approximately $1.6 million redemption price did not reveal how ValueScope reached it. The model relied on projected discretionary distributions, producing an implied 99.2% lack-of-control discount before a further 20% marketability discount. R. 008765–008766, 008807. MacInnis obtained the confidential report as Holdco's liquidator. R. 016632–016633 (May 11, 2026 Hr'g Tr. 125:24–126:6). The missing materials would have allowed Dugaboy to challenge the calculations and incentives underlying Patrick's account, rather than merely dispute the resulting price. R. 016522, 016527–016531.

Highland cites organizational documents, including Exhibit 95, to deny discovery misconduct. Opp. 26–27, 37–38. Exhibit 94 identifies Rand PE Fund I, L.P.–Series 1 as Beacon's 2015 member, and Exhibit 95 documents CLO Holdco, LLC's acquisition as of February 12, 2025. R. 006128, 006134, 006138, 006144. Neither resolves whether Patrick's misconduct triggered the Trust Agreement's removal provision before he signed the Settlement. R. 008490, 008495. These exhibits also omit Patrick's privilege-shielded instructions to make the transactions hard to track.

Under *DePuy*, the harm includes losing productive opportunities for examination; Dugaboy need not prove that the resulting testimony would have changed the outcome. 888 F.3d at 790–92. The bankruptcy court had to decide whether the concealed instructions, Patrick's answers, and his denial of any HMIT connection established misconduct and impairment of Dugaboy's presentation by clear and convincing evidence. It did not make that determination.

## V. The Bankruptcy Court Erred in Failing to Decide Whether Patrick Triggered the Removal Clause.

Dugaboy did not forfeit the argument against Patrick's authority, let alone "twice over." Opp. 7. Highland calls it an "afterthought," but the opening brief gave it a full section. Opp. 19–20; Br. 12, 47–49. The Rule 60 motion challenged Patrick's authority and alleged that fraud sustained his position. R. 000680, 000689. The reply developed automatic removal. R. 005974–005977. The bankruptcy court questioned waiver at the hearing but declined to resolve automatic removal based on the erroneous premises that Dugaboy knew of the new evidence prior to the Settlement hearing and that Patrick's misconduct had no connection to the Settlement. R. 016500, 016503. The Trust Agreement was available, but Dugaboy could not use it without the later-discovered proof of fraudulent purpose. The new evidence bears on whether the removal clause was triggered, not whether it existed. R. 016579.

Section 16 of the Trust Agreement provides that the administrator "shall immediately be removed without any action by the Delaware Trustee or any other

party." R. 008495. Patrick triggered that command before signing the Settlement. Highland insists removal required Highland's own prior approval. Opp. 21–23. The agreement says otherwise. The court questioned Highland's claim that Dugaboy waived its challenge to Patrick's authority: if the agreement makes removal automatic, "does waiver of the argument even matter?" Removal would be "a legal effect by the document." Suppl. R. 000774–000775 (May 21, 2026 Hr'g Tr. 240:22–241:3). But its decision did not answer that question. Dugaboy's later dealings with HMIT do not establish that an effective removal never occurred.

The Trust Agreement defines "Honis Cause" (named after the Trust's original administrator) as conduct "in any capacity" including fraud or bad faith injurious to an Applicable Entity, or "a breach of fiduciary duties." It identifies Highland as the "Limited Partnership." But the sentence invoking "reasonable discretion" refers to the "Partnership," a term the agreement never defines. R. 008490–008491. Dugaboy does not concede those terms are interchangeable. Sections 16 and 17 assign the Limited Partnership no removal role: a triggering event removes the administrator. R. 008495. Highland cannot turn that undefined term into a veto over removal. A contract must be read as a whole without rendering words meaningless. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005). Even if "Partnership" meant Highland, the definition itself designated misconduct as the trigger, not Highland's approval. Section 16 makes removal immediate and requires

no further action. R. 008490, 008495. Highland's being neither the Delaware Trustee nor a party does not change that trigger. Opp. 22–23. The court never resolved this construction.

Patrick sought to obscure the general partner's ownership. Diverting the benefit of HMIT's equity stake to DFW, which he controlled, breached his fiduciary duty to HMIT. R. 005976, 013238, 016579. Under Section 16, that conduct removed him immediately, before he signed the Settlement.

The no-inquiry provision excuses those dealing with the administrator from investigating his acts. A removed administrator still lacks authority. Opp. 22; R. 008495. "Honis Cause" still triggers removal for successor administrators, each of whom Section 17 deems to have assumed the original administrator's duties. R. 008495. Patrick's appointment invoked Sections 16 and 17. R. 006093. Highland's reading would exempt successor misconduct from removal. Opp. 23 n.9. Those provisions require construction on remand.

Highland's "recognition and ratification" argument turns on what each instrument did. Opp. 23.

**January 10, 2025: Intercreditor agreement.** The agreement addressed Class 10 payment arrangements and barred HCLOM from interfering with HMIT's settlement rights "as a holder of Class 10 interest." R. 007930 ¶ 5. The Settlement Agreement went further by transferring litigation claims and exchanging broad

releases among numerous entities. Its own Section 18 distinguishes those transactions from Class 10 allowance. R. 008514–008515, 008520. Highland cannot equate the January covenant with blanket assent to that broader exchange. Dondero signed for HCLOM; Dugaboy was not a party. Even if HCLOM's waiver reached the entire Settlement (it did not), it contains no waiver by Dugaboy or amendment of the Trust's removal provision. HMIT's right to settle does not establish who could bind it. R. 007929–007932, 008495.

Neither Dondero nor Dugaboy was a party or signatory to the next five agreements, which show no assent by them to Patrick's authority:

**January 10, 2025: Remittance agreement.** Scavo signed bridge-equity repayment and release terms for Small Bay; Patrick signed for its creditors. R. 005015–005018.

**June 27, 2025: Foundation stipulation.** The Foundation Parties withdrew their own objection with prejudice. R. 007934–007944.

**July 11, 2025: Texas Rule 11 agreement.** The Foundations obtained interim asset and governance restraints pending injunction proceedings. Preserving contested governance does not concede its validity or ratify Patrick's prior acts. R. 007946–007948.

**July 31, 2025: Cayman consent order.** Patrick's side agreed to preserve assets while the liquidators reserved the right to investigate and seek further relief. Those protections do not resolve Patrick's authority. R. 007951–007957.

**September 30, 2025: Credit amendment.** Patrick signed as CLO Holdco's director, not HMIT's administrator. The ratification clauses reaffirm loan obligations, guaranties, and collateral. R. 007973–007977, 007987.

Dugaboy's trustee joined the December 3 Liberty CLO stipulation through counsel and was named in the December 8 Atlas judgment. NexPoint alone undertook payment and waived appeal in Atlas. James Dondero was a party to neither. Neither instrument approved Patrick's authority or the Settlement. R. 007993–007995; R. 007997–008001.

These dealings do not, separately or together, establish Dugaboy's knowing ratification of Patrick's authority to execute the Settlement. Obtaining an adversary's compliance while pursuing claims does not adopt his challenged conduct. Neither does Patrick's testimony that Dugaboy paid HMIT on the assigned Note. Suppl. R. 000250–000251 (May 12, 2026 Hr'g Tr. 128:21–129:7). Performing a particular obligation does not accept Patrick's authority for every purpose. R. 005977–005979. Highland must identify who knowingly ratified what and how that conduct answers the removal provision. Stacking up unrelated agreements answers neither question.

Highland protests Dugaboy did not sign the Trust Agreement or benefit from it. Opp. 21 n.8. Dugaboy is not suing to enforce that agreement. The bankruptcy court had to assure itself of the signatory's continuing authority and of arm's-length bargaining free from fraud or collusion. *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Beacon's power to appoint a successor cannot turn mandatory removal into an empty formality. Asked whom he would appoint if removed under Section 16, Patrick answered: "Myself." Suppl. R. 000225 (May 12, 2026 Hr'g Tr. 103:1–6). If Patrick's misconduct required his removal, allowing him to reinstall himself through Beacon would defeat the provision requiring him to leave. Section 17's appointment power must be read together with Section 16's removal requirement. R. 008495; *see DCV Holdings*, 889 A.2d at 961–62. Beacon's appointment power does not establish a valid successor's approval of this bargain. The independent fairness challenge also remains.

## VI. The Settlement Required Independent Scrutiny of the Actual Exchange.

A bankruptcy court may approve a Rule 9019 compromise "only when the settlement is fair and equitable and in the best interest of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The court must weigh "the extent to which the settlement is truly the product of arms-length [sic] bargaining, and not of fraud or collusion." *Age Refining*, 801 F.3d at 540. That factor draws no line based on who committed the fraud. But here, the court expressly refused "to reassess

whether the settlement was the product of arm's-length, good faith negotiations." R. 016502–016503. The reconsideration motion challenged that refusal directly and identified the court's responsibility for the transfers it had approved. R. 016531–016533. That refusal concerns the ordinary Rule 9019 standard, not a heightened test or reopening of plan confirmation.

Court-appointed professionals negotiated for Highland. Patrick negotiated for HMIT while diverting its equity interest for himself. The bankruptcy court had to bring its "informed, independent judgment" to bear on that bargain. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). A court may not "reach for [the] stamp marked 'approved'" without an adequate factual foundation. *Matter of AWECO, Inc.*, 725 F.2d 293, 299–300 (5th Cir. 1984). Highland's objection that Dugaboy proposes a novel standard misses the point. Opp. 29–31. The ordinary Rule 9019 standard required closer scrutiny here because the alleged self-dealing undermined the assurance of arm's-length bargaining.

Dugaboy does not seek to reopen confirmation or disturb the Plan's priorities. Opp. 31. It challenges the later Settlement's allowance of a disputed interest and exchange of estate assets, releases, and litigation rights for Patrick's benefit based on flawed premises of authority and good faith. R. 000691–000692; Br. 38–39. The reported expenditures of more than $260 million in professional fees heightened the

need to scrutinize the Settlement's effect on the estate and residual stakeholders. Br. 13. Highland's reliance on fiduciary and contractual duties misses the point. Opp. 30–31. Fiduciary duties cannot substitute for the court's "informed, independent judgment" about the exchange and the fraud alleged to have shaped it. *TMT Trailer Ferry*, 390 U.S. at 424–25; *AWECO*, 725 F.2d at 299; *Age Refining*, 801 F.3d at 540. Authority to sign does not establish a fair bargain. Owing duties does not establish their fulfillment.

HMIT's ownership of 99.5% of Highland's prepetition equity does not answer Dugaboy's charge that Patrick diverted the value of that stake for his own benefit. Opp. 31. Dugaboy presented evidence that, before signing the Settlement, Patrick had cut The Dallas Foundation off from HMIT's economic interests by making DFW Charitable Foundation, which he controlled, the ultimate beneficial owner. R. 000658, 008140, 008143 ¶ 9, 008148–008149, 009192 ¶ 1(d); R. 009460–009461, 009470 (June 25, 2025 Hr'g Tr. 173:22–174:14, 183:4–11); R. 009472 (*id.* at 185:24–25) (Patrick testifying that the former holding company "owns nothing").

The Settlement also delivered the Kirschner claims to HMIT. R. 008513–008514. Dugaboy explained that the Kirschner claims gave Patrick a weapon to deter further inquiry into his misconduct, and that he moved at once to revive them and to freeze Dondero's other assets. R. 000691–000692. The new evidence challenged the account of Patrick's interests underlying approval of that transfer.

The court declined to vacate the 9019 Order because vacatur "will not restore the prior HMIT structure or the charitable beneficiaries' structure." R. 016502–016503; Opp. 30. Dugaboy never argued it would. Dugaboy's counsel at closing distinguished what the Settlement gave away: litigation rights and rights over when and how the estate distributes its cash. Suppl. R. 000742, 000745–000746 (May 21, 2026 Hr'g Tr. 208:13–17, 211:9–212:22). Other courts will decide whether to undo the restructuring. Dugaboy asks this Court to withdraw judicial approval from the Settlement.

On remand, the bankruptcy court can determine what relief remains available concerning the Settlement's releases, assigned claims, and distributions. Limits on that relief do not excuse its refusal to reconsider whether the Settlement should have been approved.

Highland's swipe at MacInnis for skipping the 9019 Hearing misses the point. Opp. 18–19 n.6. Dugaboy did not call her to grade the Settlement but to explain what the company's records showed and how she obtained them. The Settlement documents, Patrick's testimony, and his communications establish the connection to HMIT. The court failed to determine their effect on Settlement approval.

**VII. The Bankruptcy Court Applied the Wrong Test to Rule 60(b)(6).**

The court rejected Dugaboy's equitable ground as "identical" to its Rule 60(b)(3) claim. R. 016499, 016503 ¶ 29. But common facts do not foreclose

alternative grounds. *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002), rejects disqualification merely because another subsection was invoked. *Jenkins v. LaSalle Southwest Corrections*, No. 20-10533, slip op. at 5–6 (5th Cir. Jan. 10, 2025) (unpublished), explains that a timely movant may invoke alternative subsections on the "same factual basis"; the court must determine which applies.[3]

Like the movant in *Jenkins*, Dugaboy filed within a year. Subsection (3)'s deadline was no obstacle to relief. R. 000648, 000718. Dugaboy seeks Rule 60(b)(6) relief because continued approval of the Settlement rewards Patrick's diversion of hundreds of millions in charitable assets for his own benefit and protects a bargain made ***after that misconduct had automatically ended his authority as administrator***. R. 016514, 016532–016533. That last ground, by itself, falls outside subsections (1)–(5) and presents the extraordinary circumstances justifying relief. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025); *Hesling*, 396 F.3d at 643. Factual overlap alone does not preclude it. The court had to assess the asserted ground under the correct standard, and it did not.

Dugaboy avoided the opening-brief omission in *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004), by raising this ground in the

---

[3] Dugaboy also maintains its separately briefed recusal and discovery/evidentiary grounds. No. 3:26-cv-02315-K, ECF 48, Parts V, VII; ECF 63, Parts V–VI. Its recusal ground is distinct from the Settlement-based equitable ground addressed here.

reconsideration motion and its opening brief. R. 016531–016533; Br. 38–39. Merger concerns the scope of review; it cannot erase that preserved challenge. Opp. 28.

**VIII. Highland's Forfeiture Objection Does Not Foreclose Dugaboy's Article III Challenge.**

Dugaboy maintains its constitutional position that Article III requires *de novo* review of the bankruptcy court's rulings. Br. 52–54. Highland's forfeiture objection does not foreclose review. Opp. 42–44. *Freytag v. Commissioner*, 501 U.S. 868, 878–80 (1991), considered a structural Appointments Clause objection despite express consent because it implicated the adjudicator's authority and the proceeding's validity. Dugaboy likewise asks the Court to consider whether the deference Highland demands preserves adequate Article III control over the disputed findings.

Dugaboy's participation in the bankruptcy proceedings does not itself answer that question. *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 678–81 & n.10, 684–85 (2015), permits bankruptcy adjudication by knowing and voluntary consent under Article III supervision but rejects "using consent to excuse an actual violation of Article III." Consent bears on whether a violation exists. It cannot cure one. *Id.* at 680 n.10. Because the bankruptcy court made no findings on the dispositive questions, this Court need not reach Highland's forfeiture objection.

Highland relies on the Settlement's resolution of HMIT's Class 10 interest and disposition of estate property to defend the bankruptcy court's constitutional

authority. Opp. 43–44. But statutory authority over a "core" proceeding does not itself establish constitutional authority to enter a final judgment. *Stern v. Marshall*, 564 U.S. 462, 469 (2011). Dugaboy seeks independent Article III review. *Trump v. Slaughter*, 609 U.S. 422, 456, 464 (2026), reinforces that argument by analogy while reserving questions about non-Article III judges' tenure protections. Before deferring to disputed findings, the Court should address Dugaboy's constitutional objection to that deference.

The errors identified above independently warrant relief under ordinary appellate standards. This Court must correct erroneous legal premises even under abuse-of-discretion review, while reviewing factual findings for clear error. *Osborne*, 131 F.4th at 269. Deference cannot replace missing findings or collapse the distinct requirements of Rule 60(b)(2) and (3).

## Conclusion

The Court should reverse the denial of Rule 60 relief, as reaffirmed on reconsideration, and direct vacatur of the Settlement approval. Alternatively, it should remand for application of the correct standards to the evidence. In either event, it should consolidate the appeals or accept this briefing as supplemental briefing in the Rule 60 appeal.

Dated: November 23, 2026.

Respectfully submitted,

By: /s/ Geoffrey S. Harper

**WHITTEN BURRAGE**
Michael Burrage
OBA No. 1350
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
T: (405) 516-7800
F: (405) 516-7859
mburrage@whittenburragelaw.com

**KING & SPALDING LLP**
Thomas M. Melsheimer
Texas Bar No. 13922550
tmelsheimer@kslaw.com
Steven H. Stodghill
Texas Bar No. 19261100
sstodghill@kslaw.com
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@kslaw.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@kslaw.com
2601 Olive Street, Suite 2300
Dallas, TX 75201
T: (214) 764-4600

**ASHCROFT SUTTON**
Johnny Sutton
Texas Bar No. 19534250
P.O. Box 160368
Austin, Texas 78716
T: (512) 370-1800
F: (703) 247-5446
jsutton@ashcroftlawfirm.com

**MAZZARA PLLC**
Joseph N. Mazzara
Texas Bar No. 24136521
1704 N. Royal Ave
Front Royal, VA 22630
T: (540) 660-2142
joseph@mazzara.law

**LAW OFFICE OF ALEXEY TARASOV**
Alexey V. Tarasov
Texas Bar No. 24075140
5211 Reading Road
Rosenberg, TX 77471
T: (832) 623-6250
alexey@tarasovlaw.com

***Counsel for Appellant The Dugaboy Investment Trust***

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii) because it contains 6,498 words, excluding the portions exempted by Rule 8015(g).

I further certify that this brief complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman.

Date: November 23, 2026.

*/s/ Geoffrey S. Harper*

## CERTIFICATE OF SERVICE

I certify that on November 23, 2026, a true and correct copy of this brief was served electronically through the Court's CM/ECF system on all counsel registered to receive electronic notice in this case.

*/s/ Geoffrey S. Harper*